# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on December 8, 1995

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. **98-0057** |
| | ) | |
| | ) | VIOLATIONS |
| | ) | |
| | ) | 18 U.S.C. § 371 (Conspiracy); |
| | ) | 18 U.S.C. § 1001 (False |
| v. | ) | |
| | ) | Statements); |
| | ) | 18 U.S.C. § 2 (Willfully Causing |
| MARIA HSIA, | ) | The Commission Of An Offense) |
| | ) | |
| | ) | |
| A/K/A "HSIA LING," | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**FILED IN OPEN COURT**

**FEB 1 8 1998**

**CLERK, U.S. DISTRICT COURT**
**DISTRICT OF COLUMBIA**

FRIEDMAN, J. PLF



I N D I C T M E N T

The Grand Jury Charges:

INTRODUCTION

At all times relevant to this indictment:

1.   Defendant, **MARIA HSIA (aka "HSIA LING")**, was an immigration consultant who worked and resided in the Los Angeles, California area.

2.   The International Buddhist Progress Society ("IBPS"), doing business as the Hsi Lai Temple (the "Temple"), was incorporated under the laws of the State of California, with its headquarters in Hacienda Heights, California.

3.   IBPS was a tax-exempt religious organization pursuant to

Case Related To _____ CR 98-29 _____

Title 26, United States Code, Section 501(c)(3) of the Internal Revenue Code. As a tax-exempt organization, IBPS was prohibited from participating or intervening in any political campaign on behalf of any candidate for public office.

4.   The Federal Election Campaign Act, Title 2, United States Code, Section 431 et seq. ("FECA") specifically prohibited, among other things:

    a.   corporations from making contributions or expenditures in connection with the nomination and election of candidates for federal office (Title 2, United States Code, Section 441b(a));

    b.   any person from making a contribution in the name of another person or knowingly permitting his or her name to be used to effect such a contribution (Title 2, United States Code, Section 441f).

5.   In addition, the FECA, in particular Title 2, United States Code, Section 434, required that each treasurer of a political committee file periodic reports of receipts and disbursements to the Federal Election Commission ("FEC"). The reports identified each person who had made a contribution during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution. The reports also identified the mailing addresses and the occupations of such contributors, as well as the names of their employers.

6.   The FEC was an agency of the United States government,

2

headquartered in Washington D.C., and entrusted with the responsibility of enforcing the reporting requirements of the FECA and for directing, investigating and instituting civil enforcement actions with respect to violations of the FECA, including the provisions referred to in paragraphs 4 through 5, above. In addition, the FEC was responsible for making available to the public specific information about the amounts and sources of political contributions to federal candidates and their political committees.

7.    The Immigration and Nationality Act, Title 8, United States Code, Section 1101 et seq. ("INA"), and the regulations promulgated thereunder, provided, among other things, that:

a.    persons who are not citizens of the United States may apply to stay in the United States on a temporary or permanent basis by filing certain applications and documents with the Immigration and Naturalization Service ("INS");

b.    the INS reviews the applications and documents submitted and, if necessary, conducts further investigation, to determine whether to grant or deny the persons' applications;

c.    if a person applies for a religious worker (R-1) visa or a special immigrant religious worker visa, he or she is required, among other things, to be entering or remaining in the United States for the purpose of working for a bona fide nonprofit religious organization; that is, an organization exempt from taxation as described in section 501(c)(3) of the Internal Revenue Code as it relates to religious

3

organizations, or one that has never sought such exemption but establishes to the satisfaction of the INS that it would be eligible therefor if it had applied for tax exempt status.

8.   The INS was an agency of the United States government, headquartered in Washington D.C., and entrusted with the responsibility of administering and enforcing the requirements of the INA and all other laws relating to immigration, naturalization, and nationality, including the provisions referred to in paragraph 7, above.   In addition, the INS was responsible for investigating violations of the immigration and nationality laws.

COUNT ONE - CONSPIRACY

9.   The grand jury realleges paragraphs 1 through 8, above, as though fully set forth herein.

10.   From mid-1993 and continuing through 1996, in the District of Columbia and elsewhere, defendant **MARIA HSIA**, and IBPS, not named as a defendant herein, did knowingly and willfully combine, conspire, confederate, and agree with and among each other and with persons known and unknown to the grand jury, to defraud the United States and, in particular, the FEC and INS, agencies of the United States, by impairing, obstructing, impeding, and defeating the FEC's and INS's lawful functions and duties, in violation of Title 18, United States Code, Section 371.

The Objects of the Conspiracy

11.   It was an object of the conspiracy that defendant **MARIA**

HSIA, and co-conspirator IBPS, and others known and unknown to the grand jury, defrauded the United States by taking actions which impaired, obstructed, impeded, and defeated the FEC's lawful functions and duties by preventing the FEC from learning that IBPS had made unlawful political contributions.

12.   It was an object of the conspiracy that the defendant **MARIA HSIA**, and co-conspirator IBPS, and others known and unknown to the grand jury, defrauded the United States by taking actions which impaired, obstructed, impeded, and defeated the INS's lawful functions and duties by preventing the INS from learning that IBPS had made unlawful political contributions.

## The Manner and Means of the Conspiracy

13.   Among the manner and means employed by defendant **MARIA HSIA**, co-conspirator IBPS, and other co-conspirators, to effect the conspiracy and to carry out its unlawful objects, were the following:

a.   From mid-1993 and continuing through 1996, defendant **MARIA HSIA**, and her co-conspirators, including IBPS, devised and executed a scheme whereby corporate money belonging to IBPS was used to make secret, disguised and illegal campaign contributions to federal, state, and local candidates and their political committees.

b.   Defendant **MARIA HSIA** and her co-conspirators, including IBPS, identified candidates and parties that they wished to support and thereafter solicited campaign contributions from

straw donors, known as "conduits," for the purpose of having the conduits pass on the funds to candidates as their own contributions.  These conduits included, but were not limited to, nuns, monks, and volunteers from IBPS.  Defendant **MARIA HSIA**, and her co-conspirators, including IBPS, used IBPS corporate funds to reimburse each conduit contributor in execution of the scheme.  In addition, defendant **MARIA HSIA** made campaign contributions in her own name knowing that IBPS would reimburse her.

      c.   By engaging in a long-standing pattern of using conduits to disguise illegal corporate contributions, defendant **MARIA HSIA** and co-conspirator IBPS concealed information from and caused false information to be conveyed to the FEC on numerous and separate occasions.  Defendant **MARIA HSIA** and co-conspirator IBPS concealed from the FEC that IBPS was the true source of certain political contributions.

      d.   Defendant **MARIA HSIA** and co-conspirator IBPS also concealed information from and caused false information to be conveyed to the INS on numerous and separate occasions.  Defendant **MARIA HSIA** and co-conspirator IBPS submitted documents to the INS that concealed that IBPS had engaged in political activities and made political contributions.  By their acts of concealment, defendant **MARIA HSIA** and co-conspirator IBPS sought to ensure that INS would permit nuns and monks and other persons associated with IBPS to enter or remain in the United States.

      e.   In furtherance of their scheme to defraud, defendant **MARIA HSIA** and co-conspirator IBPS concealed and covered-up their

illegal activities.   In particular, IBPS destroyed, altered, and created documents, and disguised in its books and records the fact that IBPS had used corporate funds to make political contributions.

### The June 1993 March Fong Eu Contribution

14.   In 1993, March Fong Eu was the Secretary of State of California.   The March Fong Eu Campaign Committee 1994 was a political committee authorized to support March Fong Eu's re-election effort for Secretary of State.

15.   In June, 1993, defendant **MARIA HSIA** made a $500 contribution to March Fong Eu's campaign.   Co-conspirator IBPS paid defendant **MARIA HSIA** in full for her contribution by issuing a $500 corporate check to **HSIA**.   The conduit contribution was provided to the March Fong Eu Campaign Committee 1994.

### The September 1993 DNC Contributions

16.   On or about September 27, 1993, the Democratic National Committee ("DNC") held a fund-raising event at an office on Wilshire Boulevard in Los Angeles, California, which the Vice-President of the United States, Albert Gore, Jr., attended.   The DNC was an authorized federal political committee and as such was subject to the reporting provisions and campaign financing limitations of the FECA.

17.   Prior to the September 1993 event, defendant **MARIA HSIA** contacted IBPS personnel and requested that IBPS solicit $5,000 in contributions towards the event.   Co-conspirator IBPS thereafter

collected $5,000 in contributions by obtaining checks from three individuals associated with IBPS.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account.  The conduit contributions were provided to the DNC.

### The September 1994 Senator Kennedy Contributions

18.  In 1994, Senator Edward M. Kennedy of Massachusetts sought re-election to the United States Senate.  Kennedy for Senate was a federal political committee authorized to support the candidacy of Senator Kennedy and as such was subject to the reporting provisions and campaign financing limitations of the FECA.

19.  On or about September 8, 1994, a fund-raising event for Senator Kennedy was held at a residence in Beverly Hills, California.  Prior to the event, defendant **MARIA HSIA** contacted IBPS personnel and requested that IBPS solicit $5,000 in contributions towards the event.  Co-conspirator IBPS thereafter collected $5,000 in contributions by obtaining checks from three individuals associated with IBPS.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account.  The conduit contributions were provided to Kennedy for Senate.

### The September 1995 Clinton/Gore Contributions

20.  In 1995 and 1996, President William Jefferson Clinton sought re-election as the President of the United States.  During

that time, the Clinton/Gore '96 Primary Committee, Inc. ("Clinton/Gore '96") was a federal political committee authorized to support the candidacy of President Clinton and as such was subject to the reporting provisions and campaign financing limitations of the FECA.

21.  On or about September 21, 1995, a fund-raising event was held at the Century Plaza Hotel and Tower ("Century Plaza Hotel") in Los Angeles, California.  The Century Plaza event was sponsored by Clinton/Gore '96.  The cost to attend the event was $1,000 per person or $10,000 per ten-person table.

22.  During the spring and summer of 1995, defendant **MARIA HSIA** obtained contributions from two of her immigration clients in order to fill two $10,000 tables.  Shortly before the event, it appeared that one of the tables might not be filled.

23.  Defendant **MARIA HSIA** then contacted IBPS personnel and requested that IBPS solicit $10,000 in contributions towards the event.  Co-conspirator IBPS thereafter collected $2,500 checks from four individuals associated with IBPS, and provided the checks to defendant **HSIA**.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account.

24.  Defendant **MARIA HSIA** provided two of the $2,500 checks to one of her immigration clients to reimburse the client for contributions the client had made to Clinton/Gore '96.

The November 1995 Senator Kennedy Contributions

25.  On or about November 11, 1995, another fund-raising event

9

for Senator Edward M. Kennedy was held at a Los Angeles, California residence.  Kennedy for Senate 1994 and Kennedy for Senate 2000 were federal political committees authorized to support the candidacy of Senator Kennedy and as such were subject to the reporting provisions and campaign financing limitations of the FECA.

26.  Defendant **MARIA HSIA** was one of the hosts of the event. Prior to the event, defendant **HSIA** contacted IBPS personnel and requested that IBPS solicit $3,000 in contributions towards the event.   Co-conspirator IBPS thereafter collected $3,000 in contributions by obtaining checks from two individuals associated with IBPS.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account.   The conduit contributions were provided to Kennedy for Senate 1994 and Kennedy for Senate 2000.

### The February 1996 DNC Contributions

27.  On or about February 19, 1996, the DNC held a dinner at the Hay Adams Hotel in Washington, D.C., which President Clinton attended.  On or about February 20, 1996, the DNC held a breakfast at the Hay Adams Hotel, which Vice-President Gore attended.   The cost to attend these fund-raising events was $12,500 per person.

28.  In or about February, 1996, **MARIA HSIA** contacted IBPS personnel and requested that IBPS solicit $25,000 in contributions towards the Hay Adams events.   Co-conspirator IBPS thereafter collected $25,000 in contributions by obtaining checks from nine

individuals associated with IBPS.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account.  The conduit contributions were provided to the DNC.

### The February 1996 Don Knabe Contribution

29.  In 1996, Don Knabe ran for election as Los Angeles County Supervisor in a district which included the Hsi Lai Temple.  Knabe for Supervisor was a political committee authorized to support the election effort of Don Knabe for Los Angeles County Supervisor.

30.  On or about February 28, 1996, defendant **MARIA HSIA** made a $1,500 contribution to Don Knabe for Supervisor.  On or about February 29, 1996, co-conspirator IBPS reimbursed defendant **HSIA** in full for her contribution to Knabe's campaign with a check drawn on a corporate bank account.  The conduit contribution was provided to Knabe for Supervisor.

### The April 1996 DNC Contributions

31.  On or about April 29, 1996, the DNC held an event at the Hsi Lai Temple in Hacienda Heights, California.  Vice-President Gore attended the event.

32.  In or about March and April 1996, defendant **MARIA HSIA,** together with IBPS personnel and others, solicited contributions for the event.  Prior to the April 29, 1996 event, individuals associated with IBPS wrote approximately $45,000 in checks to the DNC.  Co-conspirator IBPS paid three of the individuals, who contributed a total of $10,000, in full for their contributions.

11

33.  On or about April 30, 1996, the day following the Temple event, defendant **MARIA HSIA** contacted IBPS personnel and requested that IBPS solicit $55,000 in contributions towards the event.  Co-conspirator IBPS thereafter collected $55,000 in contributions by obtaining $5,000 checks from eleven individuals associated with IBPS.  Co-conspirator IBPS provided the checks to defendant **HSIA** and a DNC fund-raiser.  In or about late April, 1996, through early May, 1996, co-conspirator IBPS reimbursed each of the eleven individuals in full with checks drawn on a corporate bank account. The conduit contributions were provided to the DNC.

## The July 1996 DNC Contributions

34.  On or about July 22, 1996, the DNC sponsored a fund-raising event at the Century Plaza Hotel in Los Angeles, California.  President Clinton attended the event.

35.  Prior to the event, defendant **MARIA HSIA** contacted IBPS personnel and requested that IBPS solicit $10,000 in contributions towards the event.  Co-conspirator IBPS thereafter collected $10,000 in contributions by obtaining checks from two individuals associated with IBPS.  Co-conspirator IBPS reimbursed each individual in full with checks drawn on a corporate bank account. The conduit contributions were provided to the DNC.

## The October 1996 Patrick Kennedy Contributions

36.  In 1996, Congressman Patrick J. Kennedy of Rhode Island sought re-election to the United States House of Representatives.

The Friends of Patrick J. Kennedy '96 (the "Patrick Kennedy Committee") was a federal political committee authorized to support candidacy of Congressman Kennedy and as such was subject to the reporting provisions and campaign financing limitations of the FECA.

37.   Defendant **MARIA HSIA** and the Patrick Kennedy Committee Finance Director agreed to schedule an event for Congressman Kennedy at the Temple on October 5, 1996.  Defendant **HSIA** agreed to raise $5,000 for the event.

38.   On or about October 5, 1996, following the event, defendant **HSIA** provided five $1,000 contributions to Congressman Kennedy's Finance Director, four she had solicited from others and one from herself.

39.   On or about October 5, 1996, co-conspirator IBPS provided defendant **HSIA** with five $1,000 checks drawn on a corporate bank account to reimburse **HSIA** and the four others for their contributions to the Patrick Kennedy Committee.  Defendant **HSIA** gave each of the conduits a $1,000 reimbursement check, and kept one reimbursement check for herself which she deposited into her personal bank account.

## Overt Acts in Furtherance of the Conspiracy

40.   In furtherance of the aforesaid conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

    a.   Between 1993 and 1996, co-conspirator IBPS provided

defendant **MARIA HSIA** with its Articles of Incorporation. The Articles included the following:

> No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

b.   Between 1993 and 1996, co-conspirator IBPS provided to defendant **HSIA** a letter from the Internal Revenue Service ("IRS") District Director which indicated, among other things, that (1) IBPS was exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code; and (2) IBPS should report to the IRS any change in operation, character or purpose of the organization so that the IRS can consider the effect of the change on IBPS's tax exempt status.

c.   Between 1993 and 1996, co-conspirator IBPS provided defendant **HSIA** with financial statements for IBPS that failed to itemize funds expended for political activities or contributions.

d.   Between 1993 and 1996, co-conspirator IBPS provided defendant **HSIA** with certain forms (Forms 199: "California Exempt Organization Annual Information Statement or Return") that indicated that IBPS had not participated in any political campaign.

e.   Between 1993 and 1996, defendant **HSIA** provided to the INS: IBPS's Articles of Incorporation, letters from the IRS District Director, IBPS's financial statements, and Forms 199. Defendant **HSIA** provided these items to INS in order to obtain INS approvals, including religious worker visas and special immigrant religious worker visas, for persons associated with IBPS to enter

14

or remain in the United States.

f.  On or about June 4, 1993, co-conspirator IBPS issued a corporate check to defendant **HSIA** in the amount of $500.

g.  On or about June 9, 1993, defendant **HSIA** issued a check to March Fong Eu in the amount of $500.

h.  In or about September, 1993, defendant **HSIA** requested that co-conspirator IBPS solicit $5,000 in political contributions to the DNC.  On or about September 27, 1993, three persons associated with IBPS issued checks to the DNC totalling $5,000.

i.  On or about September 27, 1993, co-conspirator IBPS issued corporate checks to the three persons noted in paragraph (h), above.

j.  On or about January 31, 1994, defendant **HSIA** caused the DNC to file a report with the FEC in Washington, D.C., which falsely indicated that the three persons noted in paragraph (h), above, were the true sources of $5,000 in contributions to the DNC.

k.  In or about September, 1994, defendant **HSIA** requested that co-conspirator IBPS solicit $5,000 in political contributions to Senator Edward Kennedy's campaign.  On or about September 6, 1994, three persons associated with IBPS issued checks to Kennedy for Senate totalling $5,000.

l.  On or about September 6, 1994, co-conspirator IBPS issued corporate checks to the three persons noted in paragraph (k), above.

m.  On or about October 19, 1994, defendant **HSIA** caused Kennedy for Senate to file a report with the FEC in Washington,

D.C., which falsely indicated that the three persons noted in paragraph (k), above, were the true sources of $5,000 in contributions to Kennedy for Senate.

n.   In or about September, 1995, defendant **HSIA** requested that co-conspirator IBPS solicit $10,000 in political contributions to Clinton/Gore '96.   On or about September 20, 1995, four persons associated with IBPS issued $2,500 checks and provided them to IBPS.

o.   On or about September 20, 1995, co-conspirator IBPS issued $2,500 corporate checks to the four persons noted in paragraph (n), above.

p.   In or about late September, 1995, defendant **HSIA** gave two of the $2,500 corporate checks to one of her immigration clients.   Co-conspirator IBPS and defendant **HSIA** agreed that **HSIA** could retain the other two $2,500 corporate checks.

q.   In or about November, 1995, defendant **HSIA** requested that co-conspirator IBPS solicit $3,000 in political contributions to Senator Edward Kennedy's campaign.   On or about November 10, 1995, two persons associated with IBPS issued checks to Senator Kennedy's campaigns totalling $3,000.

r.   On or about November 10, 1995, co-conspirator IBPS issued corporate checks to the two persons noted in paragraph (q), above.

s.   On or about February 5, 1996, defendant **HSIA** caused Kennedy for Senate 1994 and Kennedy for Senate 2000 to file reports with the FEC in Washington, D.C., which falsely indicated that the

two persons noted in paragraph (q), above, were the true sources of $3,000 in contributions to Kennedy for Senate 1994 and Kennedy for Senate 2000.

    t.   In or about February, 1996, defendant **HSIA** requested that co-conspirator IBPS solicit $25,000 in political contributions to the DNC.   Between on or about February 16, 1996 through on or about February 19, 1996, nine persons associated with IBPS issued checks to the DNC totalling $25,000.

    u.   On or about February 16, 1996, co-conspirator IBPS issued corporate checks to the nine persons noted in paragraph (t), above.

    v.   On or about April 15, 1996, defendant **HSIA** caused the DNC to file a report with the FEC in Washington, D.C., which falsely indicated that the nine persons noted in paragraph (t), above, were the true sources of $25,000 in contributions to the DNC.

    w.   On or about February 28, 1996, defendant **HSIA** issued a check to Knabe for Supervisor in the amount of $1,500.

    x.   On or about February 29, 1996, co-conspirator IBPS issued a corporate check to defendant **HSIA** in the amount of $1,500.

    y.   In or about March, 1996, defendant **HSIA**, representatives from IBPS, and others, met with Vice-President Gore at the White House.   At the meeting, representatives from IBPS invited Vice-President Gore to visit the Temple in April, 1996.

    z.   In or about April, 1996, defendant **HSIA** requested that co-conspirator IBPS solicit political contributions to the DNC

17

in connection with Vice-President Gore's April 29, 1996 visit to the Temple.  In or about April, 1996, fourteen persons associated with IBPS issued checks to the DNC totalling $65,000.

aa.  In or about April, 1996, co-conspirator IBPS issued corporate checks to the fourteen persons noted in paragraph (z), above.

bb.  On or about July 15, 1996, defendant **HSIA** caused the DNC to file a report with the FEC in Washington, D.C., which falsely indicated that the fourteen persons noted in paragraph (z), above, were the true sources of $65,000 in contributions to the DNC.

cc.  In or about July, 1996, defendant **HSIA** requested that co-conspirator IBPS solicit $10,000 in political contributions to the DNC.  On or about July 22, 1996, two persons associated with IBPS issued checks to the DNC totalling $10,000.

dd.  On or about July 22, 1996, co-conspirator IBPS issued corporate checks to the two persons noted in paragraph (cc), above.

ee.  On or about October 15, 1996, defendant **HSIA** caused the DNC to file a report with the FEC in Washington, D.C., which falsely indicated that the two persons noted in paragraph (cc), above, were the true sources of $10,000 in contributions to the DNC.

ff.  In September, 1996, defendant **HSIA** telecopied a letter to the Abbess of the Temple, suggesting that co-conspirator IBPS contribute to several upcoming political events in California.

18

One event was to be held at the Temple for Congressman Patrick Kennedy in October, 1996.

gg.   In or about late September or early October, 1996, defendant **HSIA** requested that co-conspirator IBPS solicit $5,000 in political contributions to Congressman Kennedy's campaign.   Co-conspirator IBPS declined to find conduits or straw donors to contribute.

hh.   In or about early October, 1996, defendant **HSIA** solicited an attorney for a $1,000 contribution to Congressman Kennedy's campaign, and asked that the attorney solicit a $1,000 contribution from her boyfriend.

ii.   In or about early October, 1996, defendant **HSIA** solicited her business partner for $1,000 contributions to Congressman Kennedy's campaign.

jj.   On or about October 5, 1996, defendant **HSIA** received $1,000 contributions from four persons:   the above-mentioned attorney, the attorney's boyfriend, and **HSIA's** business partner and his wife.   Defendant **HSIA** also made a $1,000 contribution to Congressman Kennedy's campaign.

kk.   On or about October 5, 1996, defendant **HSIA** provided the five $1,000 contributions listed in paragraph (jj), above, to Congressman Kennedy's Finance Director.

ll.   On or about October 5, 1996, co-conspirator IBPS provided defendant **HSIA** with five $1,000 corporate checks.

mm.   On or about October 5, 1996, defendant **HSIA** provided two of the $1,000 IBPS checks to the above-mentioned attorney.

nn.  On or about October 7, 1996, defendant **HSIA** provided two of the $1,000 IBPS checks to her business partner.

oo.  On or about October 7, 1996, defendant **HSIA** deposited the remaining $1,000 IBPS check into her personal bank account.

pp.  On or about October 24, 1996, defendant **HSIA** caused the Friends of Patrick Kennedy '96 to file a report with the FEC in Washington, D.C., which falsely indicated that defendant **HSIA** and the four persons noted in paragraph (jj), above, were the true sources of $5,000 in contributions to the Friends of Patrick Kennedy '96.

qq.  In or about November, 1996, and thereafter, co-conspirator IBPS destroyed documents relating to its participation in political campaigns, including contributions made in concert with defendant **HSIA**.

rr.  In or about November, 1996, and thereafter, co-conspirator IBPS altered the memorandum lines of numerous checks it had issued to conduit contributors, including defendant **HSIA**.

ss.  In or about November, 1996, and thereafter, co-conspirator IBPS altered its general ledgers to reflect that the reimbursement checks it had issued to conduit contributors were loans made by **IBPS**.  (Conspiracy, in violation of Title 18, United States Code Section 371).

## COUNT TWO - FALSE STATEMENTS

41.  The grand jury realleges paragraphs 1, 4 through 6, and

20 through 21, above, as though fully set forth herein.

42.  On or about July 18, 1995, Clinton/Gore '96 filed a report with the FEC which listed all of the receipts and disbursements of Clinton/Gore '96 for the period between April 1, 1995 and June 30, 1995, and which falsely indicated that contributions totalling $4,000 had been received from four individuals, when in fact those individuals were not the actual contributors.

43.  On or about July 18, 1995, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the FEC, defendant **MARIA HSIA** knowingly and willfully caused the submission of a material false statement to the FEC, in that defendant **HSIA** caused Clinton-Gore '96, a federal political committee, to file with the FEC a report for Clinton-Gore '96 that listed the following individuals (identified below by check number) as contributors to Clinton/Gore '96 in the following amounts, on the following dates, when, as defendant **HSIA** knew, in truth and in fact, the individuals named in the report were not the actual contributors:

| Contributor Falsely Identified in FEC Report (by Check #) | Amount | Date |
|---|---|---|
| Check #741 | $1,000 | 6/26/95 |
| Check #0098 | $1,000 | 6/26/95 |
| Check #2544 | $1,000 | 6/26/95 |
| Check #209 | $1,000 | 6/26/95 |

(False Statements and Willfully Causing The Commission Of An Offense, in violation of Title 18, United States Code Section 1001, and Title 18, United States Code Section 2).

## COUNT THREE - FALSE STATEMENT

44.  The grand jury realleges paragraphs 1, 4 through 6, and 20 through 21, above, as though fully set forth herein.

45.  On or about October 17, 1995, Clinton/Gore '96 filed a report with the FEC which listed all of the receipts and disbursements of Clinton/Gore '96 for the period between July 1, 1995 and September 30, 1995, and which falsely indicated that contributions totalling $10,000 had been received from ten individuals, when in fact those individuals were not the actual contributors.

46.  On or about October 17, 1995, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the FEC, defendant **MARIA HSIA** knowingly and willfully caused the submission of a material false statement to the FEC, in that defendant **HSIA** caused Clinton-Gore '96, a federal political committee, to file with the FEC a report for Clinton-Gore '96 that listed the following individuals (identified below by check number) as contributors to Clinton-Gore '96 in the following amounts, on the following dates, when, as defendant **HSIA** knew, in truth and in fact, the individuals named in the report were not the actual contributors:

| Contributor Falsely Identified in FEC Report (by Check #) | Amount | Date |
|---|---|---|
| Check #332 | $1,000 | 8/25/95 |
| Check #188 | $1,000 | 9/1/95 |
| Check #766 | $1,000 | 9/1/95 |
| Check #1746 | $1,000 | 9/1/95 |
| Check #1111 | $1,000 | 9/1/95 |
| Check #543 | $1,000 | 9/1/95 |
| Check #0201 | $1,000 | 9/1/95 |
| Check #212 | $1,000 | 9/1/95 |
| Check #1213 | $1,000 | 9/1/95 |
| Check #594 | $1,000 | 9/1/95 |

(False Statements and Willfully Causing The Commission Of An Offense, in violation of Title 18, United States Code Section 1001, and Title 18, United States Code Section 2).

## COUNT FOUR - FALSE STATEMENT

47.   The grand jury realleges paragraphs 1, 4 through 6, 27 through 28, and 40(t)-(v), above, as though fully set forth herein.

48.   On or about April 15, 1996, the DNC filed a report with the FEC which listed all of the DNC's receipts and disbursements for the period between January 1, 1996 and March 31, 1996, and which falsely indicated that contributions totalling $25,000 had been received from nine individuals, when in fact those individuals were not the actual contributors.

23

49.  On or about April 15, 1996, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the FEC, defendant **MARIA HSIA** knowingly and willfully caused the submission of a material false statement to the FEC, in that defendant **HSIA** caused the DNC, a federal political committee, to file with the FEC a report for the DNC that listed the following individuals (identified below by check number) as contributors to the DNC in the following amounts, on the following dates, when, as defendant **HSIA** knew, in truth and in fact, the contributions had been made by IBPS:

| Contributor Falsely Identified in FEC Report (by Check #) | Amount | Date |
|---|---|---|
| Check #667 | $3,000 | 2/23/96 |
| Check #223 | $3,000 | 2/23/96 |
| Check #600 | $3,000 | 2/23/96 |
| Check #137 | $3,000 | 2/23/96 |
| Check #107 | $3,000 | 2/23/96 |
| Check #0486 | $3,000 | 2/23/96 |
| Check #194 | $2,500 | 2/23/96 |
| Check #304 | $2,500 | 2/23/96 |
| Check #0269 | $2,000 | 2/23/96 |

(False Statements and Willfully Causing The Commission Of An Offense, in violation of Title 18, United States Code Section 1001, and Title 18, United States Code Section 2).

24

COUNT FIVE - FALSE STATEMENT

50.  The grand jury realleges paragraphs 1, 4 through 6, 31 through 33, and 40(y)-(bb), above, as though fully set forth herein.

51.  On or about July 15, 1996, the DNC filed a report with the FEC which listed all of the DNC's receipts and disbursements for the period between April 1, 1996 and June 30, 1996, and which falsely indicated that contributions totalling $65,000 had been received from fourteen individuals, when in fact those individuals were not the actual contributors.

52.  On or about July 15, 1996, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the FEC, defendant **MARIA HSIA** knowingly and willfully caused the submission of a material false statement to the FEC, in that defendant **HSIA** caused the DNC, a federal political committee, to file with the FEC a report for the DNC that listed the following individuals (identified below by check number) as contributors to the DNC in the following amounts, on the following dates, when, as defendant **HSIA** knew, in truth and in fact, the contributions had been made by IBPS:

| Contributors Falsely Identified in FEC Report (by Check #) | Amount | Date |
|---|---|---|
| Check #221 | $5,000 | 4/30/96 |
| Check #195 | $5,000 | 4/30/96 |
| Check #140 | $5,000 | 4/30/96 |

25

| | | |
|---|---|---|
| Check #102 | $5,000 | 4/30/96 |
| Check #121 | $5,000 | 4/30/96 |
| Check #243 | $5,000 | 4/30/96 |
| Check #0509 | $5,000 | 4/30/96 |
| Check #497 | $5,000 | 4/30/96 |
| Check #0702 | $5,000 | 4/30/96 |
| Check #1016 | $5,000 | 4/30/96 |
| Check #1646 | $5,000 | 4/30/96 |
| Check #227 | $5,000 | 4/30/96 |
| Check #1808 | $2,800 | 4/30/96 |
| Check #141 | $2,200 | 4/30/96 |

(False Statements and Willfully Causing The Commission Of An Offense, in violation of Title 18, United States Code Section 1001, and Title 18, United States Code Section 2).

## COUNT SIX - FALSE STATEMENT

53. The grand jury realleges paragraphs 1, 4 through 6, 36 through 39, and 40(ff)-(pp) above, as though fully set forth herein.

54. On or about October 24, 1996, the Patrick Kennedy Committee filed a report with the FEC which listed all of the Patrick Kennedy Committee's receipts and disbursements for the period between October 1, 1996 and October 16, 1996, and which falsely indicated that contributions totalling $5,000 had been received from four individuals and defendant, MARIA HSIA, when in

fact those individuals were not the actual contributors.

55.  On or about October 24, 1996, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the FEC, defendant **MARIA HSIA** knowingly and willfully caused the submission of a material false statement to the FEC, in that defendant **HSIA** caused the Patrick Kennedy Committee, a federal political committee, to file with the FEC a report for the Patrick Kennedy Committee that listed the following individuals (identified below by check number) as contributors to the Patrick Kennedy Committee in the following amounts, on the following dates, when, as defendant **HSIA** knew, in truth and in fact, the contributions had been made by IBPS:

| Contributor Falsely<br>Identified in<br>FEC Report (by Check #) | Amount | Date |
|---|---|---|
| Check #1214 | $1,000 | 10/5/96 |
| Check #1011 | $1,000 | 10/5/96 |
| Check #341 | $1,000 | 10/5/96 |
| Check #342 | $1,000 | 10/5/96 |
| **MARIA HSIA** (Check #199) | $1,000 | 10/5/96 |

(False Statements and Willfully Causing The Commission Of An Offense, in violation of Title 18, United States Code Section 1001, and Title 18, United States Code Section 2).

A TRUE BILL:

_Dorothy _____
Foreperson

_Wilma A. Lewis / KS_
Attorney of the United States in
and for the District of Columbia

Eric L. Yaffe
Dabney Langhorne
Trial Attorneys
Public Integrity Section
Campaign Financing Task Force
Criminal Division
U.S. Department of Justice
1001 G Street, N.W.
Washington, D.C.  20001
202-307-0655

28