```
 1                   BEFORE THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2

 3     UNITED STATES OF AMERICA,         .
                                         .  Case Number 18-CR-32
 4              Plaintiff,               .
                                         .
 5        vs.                            .
                                         .  Washington, D.C.
 6     CONCORD MANAGEMENT AND            .  May 16, 2018
       CONSULTING LLC,                   .  1:59 p.m.
 7                                       .
                Defendant.               .
 8     - - - - - - - - - - - - - - - - -

 9
                        TRANSCRIPT OF STATUS CONFERENCE
10             BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                        UNITED STATES DISTRICT JUDGE
11

12     APPEARANCES:

13     For the Government:               JEANNIE SCLAFANI RHEE, AUSA
                                         LAWRENCE RUSH ATKINSON, AUSA
14                                       RYAN KAO DICKEY, AUSA
                                         U.S. Department of Justice
15                                       Special Counsel's Office
                                         950 Pennsylvania Avenue N.W.
16                                       Washington, D.C. 20530
                                         202-616-0900
17
       For the Defendant Concord
18     Management and Consulting LLC:    ERIC A. DUBELIER, ESQ.
                                         KATHERINE JOANNE SEIKALY, ESQ.
19                                       Reed Smith LLP
                                         1301 K Street N.W.
20                                       Suite 1000, East Tower
                                         Washington, D.C. 20005
21                                       202-414-9291

22     Official Court Reporter:          SARA A. WICK, RPR, CRR
                                         U.S. Courthouse, Room 4704-B
23                                       333 Constitution Avenue N.W.
                                         Washington, D.C. 20001
24                                       202-354-3284

25     Proceedings recorded by stenotype shorthand.
       Transcript produced by computer-aided transcription.
```

```
 1                        P R O C E E D I N G S

 2           (Call to order of the court.)

 3           THE COURTROOM DEPUTY:  Your Honor, this is Criminal

 4   Case Number 18-32, the United States of America versus Concord

 5   Management and Consulting LLC.

 6           Will counsel, please, approach the podium and identify

 7   yourselves for the record, as well as any additional parties at

 8   your table.

 9           MS. RHEE:  Good afternoon, your Honor.  Jeannie Rhee,

10   along with Rush Atkinson and Ryan Dickey, on behalf of the

11   United States.

12           THE COURT:  Good afternoon.

13           MS. RHEE:  Good afternoon.

14           MR. DUBELIER:  Good afternoon, your Honor.  Eric

15   Dubelier and Katherine Seikaly for Concord Management and

16   Consulting.

17           THE COURT:  Good afternoon.

18           Let me hear from the government.  Ms. Rhee, where do we

19   stand with discovery?  How are things proceeding?

20           MS. RHEE:  We had a meet and confer with defense

21   counsel on Friday.  We did not cover as much as we would have

22   liked.

23           One of the things that we have teed up is the need to begin

24   discovery.  We have a large volume of discovery.  We alerted

25   defense counsel that the items covered by Rule 16 are in the
```

1    volume of approximately 1.5 to 2 terabytes of data, covering

2    hundreds of facilities that comprise the defendant's operational

3    accounts, so therefore, both their statements as well as

4    materials for the defense that we are obligated and will, of

5    course, turn over pursuant to our Rule 16 obligation.

6         One of the outstanding items is that we do need to talk to

7    defense counsel about a proposed protective order.  There are

8    sensitivities with a significant portion of the material.

9              THE COURT:  Do you anticipate having classified

10   information at issue here?

11             MS. RHEE:  We would hope not, your Honor.  So we can

12   address that as the proceedings continue, but we are hopeful

13   that we will not.

14             THE COURT:  How quickly are you in a position to start

15   providing all of these terabytes of material?

16             MS. RHEE:  We are ready to commence as soon as we can

17   reach a mutually-agreed-upon protective order, and if we can't

18   reach a mutually-agreed-upon protective order, to tee that up

19   very quickly with the Court.

20             THE COURT:  Okay.  Is there anything else you would

21   like to raise?

22             MS. RHEE:  We anticipate filing in short order, your

23   Honor, a request for designation of this case as complex.

24   Obviously, just the volume of discovery alone would necessitate

25   that.  In addition to that, just the sweep of the charges, the

1    number of defendants, the national security and sensitivities

2    that are raised by this case would compel designation and

3    appropriate tolling.  Given that the defendants have filed a

4    motion already, obviously, the clock is tolled for purposes of

5    this hearing today.  We will get that motion in promptly.

6          THE COURT:  Okay.  When do you expect to file a

7    response to the defendant's pending motion?

8          MS. RHEE:  We will certainly file within the requisite

9    time period, and again, we anticipate doing that in due course.

10          THE COURT:  Okay.  Thank you.

11    Mr. Dubelier?

12          MR. DUBELIER:  Your Honor, I just want to make sure we

13    are clear on where I understand we are, because it's not exactly

14    consistent with what Ms. Rhee said.

15      We had a very brief call on Friday, initiated by the

16    government, and they told me they were going to give us 2

17    terabytes' worth of what they said was social media information

18    taken from -- Ms. Rhee used the same language in the call --

19    facilities.  When I asked, What does that mean?  Is that like a

20    social media account?  She indicated to me that that was

21    correct.  I said, What language is it in?  She said, Primarily

22    Russian.  I said, Have you translated it?  She said, No.  I

23    said, How do you know what's in it?  And then they didn't want

24    to talk anymore.

25      So we made a written discovery request in this matter five

1    weeks ago.  I understand the discovery obligation -- the

2    production obligation didn't kick in until we were arraigned.  I

3    get that.  But they've had a five-week ramp-up here where we

4    made detailed discovery requests and detailed requests with

5    respect to a bill of particulars.  And we have nothing, nothing,

6    no discovery, not even a response of we will get back to you on

7    the bill of particulars letter and we will get back to you on

8    the discovery letter.  And so now we're five weeks into an

9    appearance on this thing, and we are nowhere.

10            THE COURT:  Okay.

11            MR. DUBELIER:  I will also say, because I think it's

12   important for the Court to know, the special counsel didn't

13   raise anything about the protective order on Friday.  They

14   didn't raise that with us and discuss it with us.  They didn't

15   say anything about it.

16            THE COURT:  That's what I was going to ask you about.

17   Presumably, you have no objection to conferring with them about

18   the language of the protective order?

19            MR. DUBELIER:  No, not at all.  I absolutely would,

20   and I can't see why we wouldn't be able to agree on language for

21   a protective order, particularly if we are not dealing with

22   classified information.

23            THE COURT:  It sounds like that's the first step.  You

24   all need to get together, preferably in person, sit down, and

25   hash that out so that we can get discovery going.

1      MR. DUBELIER:  We are happy to do that.

2      THE COURT:  Okay.  Mr. Dubelier, you've referenced in

3  your pending motion a number of anticipated motions to dismiss.

4  Obviously, until you have had discovery, it's hard to predict

5  what the full range might be.  But are there others that you are

6  contemplating filing now?

7      MR. DUBELIER:  Yeah -- well, not at this moment, your

8  Honor, but if I could get my list, because I thought you might

9  ask.  So we are contemplating filing -- and again, this will be

10  driven by what the discovery looks like.  I think some of it is

11  discovery dependent, and some of it is not.

12      THE COURT:  Sorry.  What was that?  Some of it --

13      MR. DUBELIER:  Some of it is discovery dependent, and

14  some of it is not.  And that is, I think some of these motions

15  we are already working on, and whatever comes in discovery isn't

16  going to influence those motions.

17      THE COURT:  Do you agree with Ms. Rhee, by the way,

18  that your motion has tolled the Speedy Trial Act?

19      MR. DUBELIER:  Yes.  Absolutely.  Yes.

20      THE COURT:  All right.

21      MR. DUBELIER:  We anticipate filing a motion that the

22  use of Title 18, 371, is unconstitutional as applied.  We

23  anticipate filing a motion that the indictment fails to charge a

24  crime.  We anticipate filing a motion that there is a due

25  process violation with respect to instructions that were

1    provided to the grand jury.  We've already teed that up in the

2    motion before your Honor.  We anticipate a selective prosecution

3    motion.  We are going to challenge the authority of the special

4    counsel generally.  We are going to challenge the authority of

5    the special counsel specifically with respect to his power to

6    bring this case.  We're going to -- we anticipate filing a

7    motion for a bill of particulars, unless the special counsel

8    gives us what we asked for, and I don't anticipate that they

9    will.

10         And of course, as discovery goes forward, I expect there

11    will be motions to compel with respect to discovery, but that's

12    way premature, because we just don't know what we're going to

13    get yet.

14         What I was most concerned about, your Honor, though, is

15    that, again based on the conversation we had Friday, I

16    anticipate that we are going to get this massive dump of social

17    media stuff that's in Russian.  This is an American court.

18    That's not what we've asked for.  If they want to give it to us,

19    that's fine.  We will deal with it.  But it's not what we've

20    asked for.

21         And what we would like to see get going is discovery we've

22    actually asked for that can help us defend our client in this

23    case, your Honor.

24              THE COURT:  Okay.  One other matter I would like you

25    all to discuss when you sit down to talk about this protective

order is how we're going to stagger these motions, because all

of these filed at once, it's not realistic.  So thinking through

a proposed order for me to consider would be helpful.

MR. DUBELIER:  We're happy to do that, your Honor, and

I think that makes a lot of sense.

THE COURT:  Okay.  Anything else, Mr. Dubelier?

MR. DUBELIER:  No, your Honor.

THE COURT:  Okay.  Ms. Rhee, would you like to

respond?

MS. RHEE:  Not surprisingly, we take issue with the

factual representation of the events as they occurred.  At the

initial appearance and arraignment, the government reached out

to defense counsel and proposed a sit-down meeting that very day

in the courthouse.  It was initially accepted and then rejected.

A phone call was set up for the Friday.  There were

discussions about discovery.  The government began the

conversation by saying, We have a lot of discovery, we would

like to figure out a way to start production to you.

We do anticipate filing a motion to designate the

complexity of the case.  There was an objection when we asked

for the position of defense counsel because an assertion was

made that the volume of the discovery constituted, as

Mr. Dubelier said here in court, a data dump, and that is not

what they asked for.  We will get to what they asked for, but it

is not a data dump, your Honor.  What we have teed up for

1   discovery is actually responsive and required under Rule 16,

2   because those operational accounts on social media platforms

3   comprise both the conduct and the statements of the defendants,

4   because the charged conduct is they, using false personas,

5   opened up those swarm of accounts and then posted content for

6   purposes of interfering in the 2016 U.S. presidential election.

7        So it is not irrelevant material that the government is

8   just dumping upon the defendants.  It is evidence of defendant's

9   conduct and constitutes defendant's statements.  And the fact

10  that it is so voluminous just underscores the vastness of the

11  defense conduct that's charged in this case rather than

12  extraneous information that is just being dumped upon the

13  defendants.

14       The reason why that Friday call ended so quickly without

15  the opportunity for the government to raise the issue of the

16  protective order is that Mr. Dubelier then brought up an issue

17  about the OFAC submissions that had been made by Reed Smith,

18  asked for positions when the government said that it was not in

19  a position to respond to the questions that Mr. Smith -- or that

20  Mr. Dubelier was positing on behalf of Reed Smith.  Defense

21  counsel hung up the phone and ended the call within nine

22  minutes, notwithstanding the fact that it had been scheduled for

23  an hour.

24       Again, the government doesn't want to raise those issues

25  for purposes of having a he said/she said, but rather, there is

1    still a lot yet to talk about, and we would like to have the

2    opportunity to do so.

3           THE COURT:  Okay.  Go ahead.

4        One moment, Mr. Dubelier.

5           MS. RHEE:  I think with respect to the content of a

6    sizable but minority portion of the discovery that is ready to

7    go, it is, in fact, in Russian, because in addition to the

8    accounts of the defendants on the social media platforms that

9    were in English that constituted the false persona political

10    activity that's charged in Count 1, there are additional

11    accounts on social media, including e-mail accounts and the

12    like, that were more internally operational.  And so those

13    communications are in Russian.  They also constitute, again,

14    defendant's statements and information material to the defense.

15        The government did not translate literally every single

16    word of all of those accounts that were initially comprised in

17    Russian.  The government doesn't have an obligation to do so.

18        So again, insofar as that is another issue to talk through,

19    but the government's position is we will turn over our discovery

20    obligations in an orderly and timely way.

21           THE COURT:  And has any of that data been transcribed,

22    and if so, are you willing to provide that to the defendant?

23           MS. RHEE:  Oh, absolutely.  And we did say that, which

24    is, certainly information within those accounts that the

25    government intends and intended to bring in its case-in-chief

has already been translated.  And we will, of course, make that

available.

So I think other than that, your Honor, as the Court

proposes, we would like an opportunity to reinstitute

discussions, and we will get you a proposed order for the way in

which, ideally with consent of both parties, the proceeding

should commence.

THE COURT:  Again, it sounds like both parties are

willing to sit down, and I'm going to encourage you to do that

as soon as possible.  And if these issues can't get resolved,

you can bring them back to me.  But I'm inclined to set a status

for 30 days from now.  Check your calendars, but I was thinking

about June 15th.

MS. RHEE:  No objection, your Honor.

THE COURT:  Mr. Dubelier, you wanted to be heard?

MR. DUBELIER:  Yes, I did, your Honor, briefly.

First of all, your Honor, I don't want to start a long slog

like this with the Court thinking that I hung up the phone on

the prosecutors, and any suggestion in that regard is absolutely

false.  It is demonstrably false.

What I said to them, what we both said at the end of the

call was, Do you guys have anything else?  No.  Do you guys have

anything else?  No.  Okay.  Good-bye.  That's different from

hanging up the phone on somebody, and I resent the implication

that the special prosecutor has made to the Court that I would

1    hang up the phone on somebody.  I didn't do it.  It didn't

2    happen.  She knows it, and the two guys sitting at the table

3    know it, first.

4         Secondly, your Honor, I think what's important here is,

5    Ms. Rhee gets up, and she is talking about all kinds of stuff

6    that has nothing to do with my client.  We're not accused of

7    doing any of the things that she said -- that she just went

8    through a litany on.  We're supposedly paid for it, but all of

9    this, accounts that belong to the defendants -- and she throws

10   around the word "defendants."  One of the things we have to be

11   very precise about in this case, when we talk before the Court,

12   is exactly who the special counsel is talking about.  Yes, we're

13   charged with a conspiracy.  I understand that.

14        THE COURT:  And defendants are associated with your

15   client, the company; correct?

16        MR. DUBELIER:  No, that's not correct.  The individual

17   defendants?  No.  It's not even alleged that they are.  They're

18   alleged to be associated with something called an

19   "organization," which is a made-up thing by the special counsel.

20   They just made it up, and they called it an "organization."

21   We're not even alleged to be a part of the organization.  We're

22   alleged to have funded it.  But those people don't work for us.

23   It's not alleged that they work for us.

24        So again, I think it's very careful.  There are a lot of

25   defendants in this case.  It appears that we are the only one

1    who is going to show up.  So when we get up and start talking

2    about defendants, if Ms. Rhee is going to continue to do this,

3    and that is, ascribe stuff to my client that we didn't do and is

4    not alleged that we did, I'm going to get up and contradict

5    that, because I feel it's important to do that.

6              THE COURT:  Okay.

7              MR. DUBELIER:  With that, your Honor, I have nothing

8    else.  If it was -- I'm sorry.  I don't recall the June day.

9              THE COURT:  I was going to suggest June 15, but if

10   either counsel has a conflict, we can look at the 14th.

11             MR. DUBELIER:  June 15th works for us at any time

12   that's convenient for the Court.

13             THE COURT:  Okay.  Let's do 10:00, June 15th.

14             MR. DUBELIER:  Great.  Thank you very much, your

15   Honor.  I appreciate your time.

16             THE COURT:  Thank you.  Thank you all.

17         (Proceedings adjourned at 2:16 p.m.)

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


         I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.




/s/ Sara Wick_____        May 16, 2018_____

SIGNATURE OF COURT REPORTER          DATE