## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **CONCORD MANAGEMENT AND CONSULTING, LLC, ET AL.,** | **Crim. No. 18-cr-32-2 (DLF)** |
| **Defendant.** | |

## GOVERNMENT'S RESPONSE TO DEFENDANT CONCORD MANAGEMENT'S MOTION FOR *IN CAMERA* REVIEW OF GRAND JURY MATERIALS

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this response to the motion of Defendant Concord Management and Consulting LLC ("Concord Management") for *in camera* review of legal instructions provided to the grand jury, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). (ECF No. 11). Concord Management has asked the Court to review the grand jury's legal instructions to determine whether they might "support a motion to dismiss Count One" with respect to the charged *mens rea.* The government opposes the motion for two reasons. First, Concord Management has not shown any "particularized need" or "compelling necessity" to access the grand jury instructions, as required by the Supreme Court in *United States v. Proctor & Gamble*, 356 U.S. 677, 682–83 (1958). Second, the government opposes the motion because Concord Management's central premise — that Count One is defective for failing to allege a heightened standard of "willfulness" — is contrary to precedent in this Circuit, which holds that the *mens rea* of substantive crimes does not carry over to charges of conspiracy to defraud the United States. For these reasons, the government respectfully asks the Court to deny Concord Management's motion.

**STATEMENT**

On February 16, 2018, a federal grand jury returned an eight-count Indictment against thirteen individual and three corporate defendants alleging that they engaged in a multi-year conspiracy, operating out of Russia, to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government, through fraud and deceit, for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016. (ECF No. 1, ¶¶ 1–7).[1] The conspiracy included, according to the Indictment, a Russian organization that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election "and the political system in general." *Id*. at ¶ 10.

The Indictment described which lawful functions of government the defendants sought to obstruct, as well as the deceitful means: "In order to carry out their activities to interfere in U.S. political and electoral processes without detection of their Russian affiliation, Defendants conspired to obstruct the lawful functions of the United States government through fraud and deceit, including by making expenditures in connection with the 2016 U.S. presidential election without proper regulatory disclosure; failing to register as foreign agents carrying out political activities within the United States; and obtaining visas through false and fraudulent statements."

---

[1] Defendant Concord Management has characterized the Indictment as one "that has absolutely nothing to do with any links or coordination between any candidate and the Russian Government." (ECF No. 11, at 2). To the extent Defendant may be commenting on the scope of the Special Counsel's appointment, its comment overlooks that on May 17, 2017, Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III, as Special Counsel "*to investigate Russian interference with the 2016 presidential election* and related matters." Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017) (emphasis added) (capitalization omitted). The Indictment charges Defendant with conduct falling within the express scope of the Special Counsel's jurisdiction.

(ECF No. 1, ¶ 7). "Various federal agencies, including the Federal Election Commission, the

U.S. Department of Justice, and the U.S. Department of State, are charged with enforcing these

laws." *Id.* at ¶ 1. The agencies, according to the Indictment, *id.* at ¶¶ 25–27, performed the

following roles:

> The Federal Election Commission is a federal agency that
> administers the Federal Election Campaign Act ("FECA"). Among
> other things, FECA prohibits foreign nationals from making any
> contributions, expenditures, independent expenditures, or
> disbursements for electioneering communications. FECA also
> requires that individuals or entities who make certain independent
> expenditures in federal elections report those expenditures to the
> Federal Election Commission. The reporting requirements permit
> the Federal Election Commission to fulfill its statutory duties of
> providing the American public with accurate data about the financial
> activities of individuals and entities supporting federal candidates,
> and enforcing FECA's limits and prohibitions, including the ban on
> foreign expenditures.
>
> The U.S. Department of Justice administers the Foreign Agent
> Registration Act ("FARA"). FARA establishes a registration,
> reporting, and disclosure regime for agents of foreign principals
> (which includes foreign non-government individuals and entities) so
> that the U.S. government and the people of the United States are
> informed of the source of information and the identity of persons
> attempting to influence U.S. public opinion, policy, and law. FARA
> requires, among other things, that persons subject to its requirements
> submit periodic registration statements containing truthful
> information about their activities and the income earned from them.
> Disclosure of the required information allows the federal
> government and the American people to evaluate the statements and
> activities of such persons in light of their function as foreign agents.
>
> The U.S. Department of State is the federal agency responsible for
> the issuance of nonimmigrant visas to foreign individuals who need
> a visa to enter the United States. Foreign individuals who are
> required to obtain a visa must, among other things, provide truthful
> information in response to questions on the visa application form,
> including information about their employment and the purpose of
> their visit to the United States.

The Indictment does not allege any violation, or even cite to specific statutory provisions, of

FECA, FARA, or the substantive offense of visa fraud.

The Indictment charges that defendants used a host of deceptive means, including surreptitious intelligence gathering in the United States by foreign agents and influence operations conducted through false online personas. (ECF No. 1, ¶¶ 10–11). Defendants operated through an elaborate organizational network of shifting organizational entities and shell corporations. *Id.* Sitting atop the organizational structure was Defendant Yevgeniy Viktorovich Prigozhin, who is alleged to have approved, supported, and funded the operations through other entities that he directly controls, particularly Defendant Concord Management and a second entity, Defendant Concord Catering. *Id.* at ¶ 12. Prigozhin and both Concord entities charged in the Indictment are currently under sanctions by the U.S. Department of Treasury.[2]

## ARGUMENT

### I. Defendant Concord Management Has Not Demonstrated a "Compelling Necessity" or "Particularized Need" to Break Grand Jury Secrecy

Proceedings before the grand jury are surrounded by strong secrecy protections that serve compelling, historically grounded purposes. *See U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681 & n.6 (1958)); *see also Costello v. United States*, 350 U.S. 359, 362 (1956) ("[T]he grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor."). "This 'indispensable secrecy

---

[2] Prigozhin and the two Concord entities were sanctioned by the United States in 2016 pursuant to Executive Order 13,661, which authorizes sanctions based on "the actions and policies of the Government of the Russian Federation with respect to Ukraine—including the [] deployment of Russian Federation military forces in the Crimea region of Ukraine." 79 Fed. Reg. 15,535 (Mar. 16, 2014); *see also* Press Release, Treasury Designates Individuals and Entities Involved in the Ongoing Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0114.aspx. On March 15, 2018, the Treasury Department designated Prigozhin and both Concord entities for another set of sanctions pursuant to Executive Order 13,694, which authorizes sanctions based on "malicious cyber-enabled activities." 80 Fed. Reg. 18,077 (Apr. 1, 2015); *see also* Press Release, Treasury Sanctions Russian Cyber Actors for Interference with the 2016 U.S. Elections and Malicious Cyber-Attacks, *available at* https://home.treasury.gov/news-releases/sm0312.

of grand jury proceedings,' . . . must not be broken except where there is a compelling necessity." *Procter & Gamble Co.*, 356 U.S. at 682 (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure provides a narrow exception: "The court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]"

To avail itself of the exception in Rule 6(e)(3)(E)(ii), Defendant Concord Management must demonstrate a "compelling necessity" and "particularized need" for disclosure of grand jury matters. *Procter & Gamble*, 356 U.S. at 682–83. In its motion, Concord Management notes that Count One of the Indictment charges that defendants "knowingly and intentionally conspired" to defraud the United States, while substantive "violations of the relevant federal campaign laws and foreign agent registration requirements" must be committed "knowingly and willfully." (ECF No. 11, at 3–4). According to Concord Management, "[t]he absence of the word 'willfully' in Count One of the Indictment establishes that Defendant has a particularized need to obtain the limited relief sought, that is, an *in camera* inspection of the legal instructions the Special Counsel provided to the grand jury." *Id*. at 3. Defendant further argues that the *mens rea*, as currently alleged, renders the Indictment "facially invalid because it fails to charge an essential element of the offense of conspiracy to defraud the United States . . . that is, that the Defendant acted willfully . . . ." *Id*.

As an initial matter, the government agrees that the plain language of the statutory provisions Concord Management has identified in the Federal Election Campaign Act, 52 U.S.C. § 30109(d), and the Foreign Agent Registration Act 22 U.S.C. § 618(a), set forth a "willfulness"

standard with respect to knowledge. The government, however, did not charge Concord Management with substantive violations of FECA, FARA, or for that matter, visa fraud — an offense that requires only a "knowing" standard. *See* 18 U.S.C. § 1546. Concord Management is alleged to have conspired to defraud the United States, in violation of 18 U.S.C. § 371. As described in more detail below, the *mens rea* for that offense is intent to defraud the United States, not to willfully commit substantive offenses that are not charged in the Indictment.

Taken at face value, Defendant's request that the Court review the grand jury instructions *in camera* appears to be an attempt to support a future motion to dismiss Count One. But that motion can be pursued without resort to grand jury materials because the *mens rea* is apparent from the face of the Indictment. Under these circumstances, Defendant has not offered any "compelling necessity" or "particularized need" to review the legal instructions provided to the grand jury.

Members of this Court have not hesitated to deny motions for access to grand jury transcripts, including *in camera* review of legal instructions, under circumstances where defendants identified more compelling necessities than Defendant does here, but still failed to meet the "heavy burden" of breaking grand jury confidentiality. *See, e.g.*, *United States v. Apodaca*, 287 F. Supp. 3d. 21, 49–50 (D.D.C. 2017) (denying motion for *in camera* inspection of grand jury instructions where defendant claimed that extradition request contained an "incomplete statement of the law"); *United States v. Wright*, 234 F. Supp. 3d 45, 47–48 (D.D.C. 2017) (denying motion for disclosure of grand jury transcript where defendant questioned the date on which the grand jury was sworn, as well as "attempt" language in the indictment and the omission of the foreperson's signature on the publicly docketed indictment); *United States v. Trie*, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) (denying motion for disclosure of instructions given to grand jury where defendant alleged,

without supporting evidence, that government may have erred in defining "hard money" and "soft money" contributions under the Federal Election Campaign Act).

Defendant has not cited to any decision that has found a "compelling necessity" or "particularized need" to break grand jury secrecy under circumstances similar to those presented here, where a defendant seeks to challenge an element of a charged offense that is apparent from the face of an indictment. The cases relied on by Concord Management are distinguishable because they address legal instructions that became erroneous due to an intervening Supreme Court opinion, as in *United States v. Hoey*, No. 11-cr-337, 2014 WL 2998523 (S.D.N.Y. July 2, 2014); instructional errors that came to light through information obtained apart from the charging documents, as in *United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011), and *United States v. Bowling*, 108 F. Supp. 3d 343 (E.D.N.C. 2015); or factual, not legal, errors presented to the grand jury, as with *United States v. Naegele*, 367 B.R. 15 (D.D.C. 2007).[3]

The defendants in *Hoey* were charged with drug offenses, including the 20-year mandatory minimum enhancement for causing death or serious bodily injury. 2014 WL 2998523, at *1. After indictment but before trial, the Supreme Court decided *Burrage v. United States*, 571 U.S. 204

---

[3] The defendant in *Naegele* was charged with multiple counts of making false statements and one count of bankruptcy fraud. 367 B.R. at 16 (D.D.C. 2007); *see also United States v. Naegele*, 474 F. Supp. 2d 9, 10–11 (D.D.C. 2007) (concluding, based on factual misrepresentation presented to the grand jury, that "the Court has before it a rare example of a criminal defendant who can actually make a 'particularized and factually based' showing that grounds exist to support the proposition that irregularities may have occurred in the grand jury proceedings and may justify the dismissal of one or more counts of the indictment"). Shortly before trial, the government identified as an exhibit a Bankruptcy Court document signed by the defendant, which bore a post-indictment signature date. *See Naegele*, 367 B.R. at 16. The defendant moved for *in camera* review of the grand jury testimony, *id.*, and in response the government disclosed that it had not presented the signature page to the grand jury, *id.* at 17. The district court concluded that the misrepresentation, which may have been unintentional, did not "substantially influence[] the grand jury's decision to indict[.]" *Id.* at 20. The government agreed not to present that particular exhibit at trial, and the district court denied the motion to dismiss. *Id.* at 20–21.

(2014), and held that the mandatory minimum sentence does not apply unless the drug use is a "but-for" cause of the death or injury. *Id.* at *1. The district court ordered *in camera* review of the grand jury instructions because the change in law was "not merely an evolutionary development or incremental change, but is a requirement that is non-obvious to the reader from the face of the statute." *Id*. at *3.

In *Stevens*, the defendant was indicted on charges of obstruction and false statements. 771 F. Supp. 2d at 559. The government moved to preclude the defendant from relying on the good faith advice of counsel, based on the incorrect assessment that obstruction is a general intent offense. *Id*. at 559–60. The defendant moved for *in camera* review of the grand jury instructions, which prompted the government to disclose that a grand juror had asked about advice of counsel. *Id*. at 564. The district court then reviewed the instructions, which revealed that the government incorrectly instructed grand jurors that reliance on the advice of counsel is an affirmative defense (when it actually negates the element of wrongful intent). *Id*. The court concluded that the "incorrect answer either substantially influenced the decision to indict or, at the very least, creates grave doubt as to that decision" and dismissed the indictment without prejudice. *Id*. at 568.

The defendants in *Bowling* were charged with fraud- and procurement-related offenses. 108 F. Supp. 3d at 345. The procurement charges turned on whether specific information (a government cost estimate) fell within a class that defendants were prohibited from disclosing to one another. *Id*. at 348. The district court concluded that it did not, a ruling that necessitated dismissal of the procurement charges. *Id*. at 352. The government, during oral argument on the motion to dismiss the remaining fraud charges, disclosed that it had instructed the grand jury that cost estimates fell within the class of prohibited information and that the fraud charges depended on that instruction. *Id*. at 352–53. The district court determined that the error "played a significant

8

and impermissible role in the grand jury's decision to indict," but dismissed those charges "without prejudice because the government's erroneous legal instruction to the grand jury was made in good faith." *Id*. at 352–53.

The defendants in each of the cases cited by Concord Management relied on information that was extrinsic to the indictments at issue: an intervening change in legal precedent in *Hoey* and statements by the government that called into question the accuracy of the grand jury's legal instructions in *Stevens* and *Bowling*. Here, in contrast, Defendant Concord Management can, and indeed has already committed to, seek dismissal of Count One based on language contained within the four corners of the Indictment. Supporting such a motion is not a recognized "compelling necessity" or "particularized need" and does not justify breaking the "indispensable secrecy of grand jury proceedings." *Johnson*, 319 U.S. at 513.

## II.     Count One Properly Charged a Conspiracy to Defraud the United States

Section 371 prohibits conspiracies either "to commit any offense against the United States," or "to defraud the United States, or any agency thereof in any manner or for any purpose" (a "defraud-clause" conspiracy). 18 U.S.C. § 371. Count One of the Indictment charges Concord Management with the latter conspiracy to defraud the United States and does not charge Concord Management with any underlying substantive offense. The Supreme Court, more than a century ago, held that a conspiracy to defraud the United States, as embodied in the predecessor of 18 U.S.C. § 371, "is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." *Haas v. Henkel*, 216 U.S. 462, 479 (1910). In *Hammerschmidt v. United States*, the Supreme Court defined such conspiracies as those intended "to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." 265 U.S. 182, 188 (1924). "It is not necessary that the government shall be subjected to property or pecuniary loss by

the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention." *Id.* Count One of the Indictment charges Defendant Concord Management with such a conspiracy.

The essential elements of a conspiracy to defraud the United States consist of the following: (1) two or more persons formed an agreement to defraud the United States; (2) the defendant knowingly participated in the conspiracy with the intent to defraud the United States; and (3) at least one overt act was committed in furtherance of the common scheme. *See United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985); *United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012), *cert. denied*, 571 U.S. 819 (2013). The agreement to defraud must be one to obstruct a lawful function of the Government or its agencies by deceitful or dishonest means. *Coplan*, 703 F.3d at 60–61; *see United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017) (explaining that a charge under the defraud clause requires proof that a defendant "knowingly agreed with [the co-defendant] (or another person) to defraud the federal government of money or to deceptively interfere with the lawful functions of" a particular government agency). The *mens rea* is a specific intent to defraud the United States, not willfulness. *See United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997), *cert. denied*, 522 U.S. 1045 (1998); *United States v. Jackson*, 33 F.3d 866, 871–72 (7th Cir. 1994), *cert. denied*, 514 U.S. 1005 (1995). The *mens rea* requirements of particular substantive crimes, in short, do not carry over to defraud-clause prosecutions. *See, e.g.*, *Jackson*, 33 F.3d at 870–72 (government need not establish the level of willfulness required to

prove a "structuring" offense when it charges the same behavior as a conspiracy to defraud); *Khalife*, 106 F.3d at 1303 (same).[4]

Concord Management, in its motion, attempts to distinguish this line of cases, arguing that "[w]hile there is case law to support the argument that some Section 371 conspiracies to defraud do not require proof of *mens rea* required for related substantive offenses, . . . the law relating to such conspiracies which are based on complex regulatory offenses allows less leeway." (ECF No. 11, at 6–7). Defendant is incorrect. In the most common type of defraud-clause charge, a *Klein* conspiracy to impede the tax-collecting functions of the Internal Revenue Service, the government is not required to establish the heightened level of willfulness set forth by the tax statutes. *See, e.g.*, *United States v. Derezinski*, 945 F.2d. 1006, 1012 (8th Cir. 1991) (district court not required to instruct jury that defendant "had a duty of disclosure to the IRS or that he intentionally violated that duty," because "the Government prosecuted [defendant] under a general conspiracy statute, not a criminal tax statute, and because 'willfulness' is not an express element of section 371.").The heightened *mens rea* does not carry over to the defraud-clause conspiracy, even though the

---

[4] Concord Management cites (ECF No. 11, at 6) *United States v. Curran*, 20 F.3d 560, 571 (3d Cir. 1994), as a case purportedly requiring the jury to find an underlying unlawful act that was intended by the defendant when the government had charged a conspiracy to defraud the FEC. *See also United States v. Alston*, 77 F.3d 713, 719 (3d Cir. 1996) (applying *Curran* in a case involving structuring of financial transactions). But the *Curran* court's brief discussion of the defraud clause largely tracked its analysis of the substantive offense at issue there, an analysis that the D.C. Circuit rejected in *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000). And more recently the Third Circuit itself has limited the holding in *Curran* to the particular charges at issue there, "tandem violations of §§ 1001 and 2(b) in the 'federal election law context.'" *United States v. Starnes*, 583 F.3d 196, 211–12 (3d Cir. 2009) ("To the extent that [the defendant's] brief can be read to argue that the government was required to prove that he actually knew of § 1001(a), we reject that argument."). The Third Circuit has also recognized that willfulness generally "is not an element of the crime of conspiring to defraud the United States," *United States v. McKee*, 506 F.3d 225, 243 n.14 (3d Cir. 2007), and has thus reserved whether in a defraud-clause prosecution based on interference with the Internal Revenue Service the government would have to prove that the defendant "acted willfully," *id.*

Supreme Court has recognized that tax law is a complex regulatory framework that requires the government to allege willfulness for substantive tax offenses. *See Check v. United States*, 498 U.S. 192, 199–201 (1991) ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."). By the same logic, a charge of defrauding the United States that includes interfering and obstructing the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State, would not require the government to charge or prove willfulness as required by FECA and FARA.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Defendant Concord Management's motion for *in camera* review of the legal instructions provided to the grand jury.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: June 1, 2018                     By:    /s/ Jeannie S. Rhee
                                               Jeannie S. Rhee
                                               L. Rush Atkinson
                                               Ryan K. Dickey
                                               U.S. Department of Justice
                                               Special Counsel's Office
                                               950 Pennsylvania Avenue NW
                                               Washington, D.C. 20530
                                               Telephone: (202) 616-0800

                                               *Attorneys for the United States of America*