# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

INTERNET RESEARCH AGENCY LLC, *et al*.,

     Defendants.

CRIMINAL NUMBER:

1:18-cr-00032-DLF

---

## DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S OPPOSITION TO THE SPECIAL COUNSEL'S MOTION FOR A PROTECTIVE ORDER UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 16(d)(1)

Defendant Concord Management and Consulting LLC (hereinafter "Defendant" or "Concord"), by counsel, respectfully opposes the Special Counsel's Motion for a Protective Order ("Mot."), and in support thereof states as follows:

### A.    Introduction

Having produced not one iota of discovery in this criminal case, the unlawfully appointed Special Counsel requests a special and unprecedented blanket protective order covering tens of millions of pages of unclassified discovery. Having made this special request based on a secret submission to the Court[1] and a hysterical dithyramb about the future of American elections, one would think that the Special Counsel would cite to case holdings that support this remarkable request.[2] But no, instead, the Special Counsel seeks to equate this make-believe electioneering

---

[1] There is no small irony that the Special Counsel has chosen to use secrecy as both a sword and a shield, happy to submit its secrets to the Court in support of its instant motion while at the same time refusing to submit its secret instruction to the grand jury to the Court for review. *See* ECF 20, Response to Defendant Concord Management's Motion for In Camera Review of Grand Jury Materials.

[2] While Fed. R. Crim. P. 16 provides for *ex parte* submissions, courts in this district disfavor this process even when dealing with classified information. *See United States v. Rezaq*, 899 F. Supp. 697 (D.D.C. 1995); *see also United States v. Libby*, 429 F. Supp. 2d 18, 21 (D.D.C. 2006); *United States v. George*,

case to others involving international terrorism and major drug trafficking, and relies only on irrelevant dicta from inapposite, primarily out-of-circuit cases.  In short, fake law, which is much more dangerous than fake news.

Moreover, if the Special Counsel has any lawful authority at all, which he does not, he certainly has no authority to conduct non-criminal alleged national security investigations related to future elections as he appears to admit he is unlawfully doing.  Mot. at 6-8.  The Special Counsel has also made baseless unilateral determinations without any involvement of the Court or any opportunity for Defendant to object about what evidence will be admissible at trial.  *Id.* at 6 ("Discovery in this case contains sensitive information about investigative techniques and cooperating witnesses that goes well beyond the information that will be disclosed at trial.").

Further, the Special Counsel attests to the Court that the defense has agreed "on many procedures designed to enable the government to turn over discovery," Mot. at 2, while failing to tell the Court the truth; that any such concessions were made as part of a concerted effort by undersigned counsel to reach a stipulated agreement of this issue, and absent that stipulation there is in fact no agreement at all.   Despite this fact, and as a courtesy to the Court only, Defendant Concord represents that it is willing to accept the draft protective order attached hereto as Exhibit A, which will permit it to protect its constitutional rights in defending this criminal case.[3]

---

786 F. Supp. 11, 17 (D.D.C. 1991).  Given the Special Counsel's statement that no classified information is contained in the discovery materials, and the fact that the Special Counsel is not seeking to withhold any of the discovery materials from production, there is no legitimate reason to prevent counsel for defendant from seeing the *ex parte* submission for purposes of opposing the protective order the Special Counsel is seeking.

[3] To the extent that the media seeks to intervene in this matter, Defendant Concord takes no position and intends to expend no resources defending the Special Counsel's position that all of the discovery in this case must be subject to a protective order.

### B.      The Special Counsel's Special Request

The Special Counsel seeks the unprecedented process of prohibiting defense counsel from sharing or discussing any discovery with any co-defendant—including the only person affiliated with Concord named in the Indictment—unless those individuals come to the United States to become hostages in this political game of tit-for-tat. *See* ECF 24-1, proposed Protective Order at ¶ 2.    Next, the Special Counsel seeks to create a special category of unclassified discovery (which, according to the Special Counsel impacts more than half of the ten million pages of documents) that cannot be shared by defense counsel with *anyone* without approval of the Court and a make-believe "firewall counsel" employed by the Special Counsel, thus exposing the entire defense strategy to the Special Counsel's Office in advance of trial. *See id* at ¶¶ 10-12. (note also ¶ 12, carrying over the hostage theme).

### C.      The Special Counsel's Grossly Misleading Use of Case Authority

The Special Counsel does not cite a single reported criminal case where officers and employees of a corporate defendant were prohibited from reviewing discovery materials, let alone a single case where any such review was subject to pre-approval by the Court or the government.  Nor does the Special Counsel cite a single reported criminal case where millions of pages of unclassified discovery were subject to a blanket protective order.  However, this only becomes apparent from actually reading the entirety of each of the cases used by the Special Counsel to mislead this Court.   The Special Counsel's pleading is representative of one important theme, that is, they have twice now tried to pull a fast one on the Court and cannot be trusted to accurately advise the Court of the relevant law. *See* Concord's Opp. to Special Counsel's Motion to Continue, ECF No. 8.

1.      **No reported court case has ever endorsed a blanket protective order of this magnitude for unclassified discovery**

To support restrictions on defense counsel's use of discovery materials, the Special Counsel cites to *United States v. Alderman*, 394 U.S. 165 (1969) and *United States v. O'Keefe*, No. 06-cr-0249, 2007 WL 1239204 (D.D.C. Apr. 27, 2007).  *See* Mot. at p. 4.  The quote from *Alderman* suggesting that the trial court should impose a protective order is dicta, and bore no relationship to the holding in the case related to the defendant's Fourth Amendment rights to obtain all recordings made at his home and on which his voice appeared.  Moreover, nothing in the Court's observation about the nature of a protective order suggested that it was approving an order as broad and onerous as what the Special Counsel has proposed here.  *Alderman*, 394 U.S. at 185.

The *O'Keefe* opinion cited by the Special Counsel related to a defense motion to compel discovery and had nothing at all to do with a protective order.  2007 WL 1239204, at *1.  Moreover, the Special Counsel declined to advise this Court that the *O'Keefe* Court, on the same day in a separate opinion, ***denied*** the government's *ex parte* application for a blanket protective order as sought by the Special Counsel in this case, and instead ordered the government to identify specific documents it intended to use at trial or that were material to the defense and to seek a protective order for those specific documents only.  *See United States v. O'Keefe*, Cr. No. 06-0249, 2007 WL 1239207, at *2 (D.D.C. Apr. 27, 2007).[4]

2.      **Analogies to cases involving violent crime fare no better**

In defense of his proposed "firewall counsel," the Special Counsel relies on an unpublished out-of-circuit protective order in the prosecution of the notorious "El Chapo,"

---

[4] It is difficult to believe that the Special Counsel's failure to advise the Court of this holding was an unintentional oversight.

alleged to be one of the biggest narcotics traffickers in the world and accused of bribing Mexican government officials and murdering competitors.  *See* Mot. at p. 4, fn. 2 (citing *United States v. Loera*, No. 1:09-cr-466 (E.D.N.Y. Apr. 3, 2017) (ECF No. 51). This unpublished order in that case provides no precedent or relevance, however, because it was premised upon the court's finding that the defendant had a documented history of using professionals, including lawyers, to further his alleged drug cartel activities.  *See* Ex. B, Order at p. 3, *Loera*, 1:09-cr-00466 (Mar. 21, 2017), ECF No. 51.  Surely the Special Counsel would have cited to a case in this circuit involving firewall counsel if any such case existed.

Instead, the Special Counsel doubles down on cases involving violent crime by pointing to three out-of-circuit cases in the prosecutions of the "American Taliban," the "Twentieth Hijacker," and Osama Bin Laden for the proposition that protective orders can be used to protect unclassified materials.  *See* Mot. at 5.  But in *United States v. Lindh*, 198 F. Supp.2d 739 (E.D.Va. 2002), the protective order was limited to only thirteen interview reports of alleged al Qaeda detainees, and required only that experts and witnesses sign memoranda of understanding to be filed *ex parte* with the court.  *Id.* at 742-43.  Moreover, the court took pains to emphasize the importance of balancing its limited protective order with the need to "ensur[e] that no inappropriate burden is imposed on defendant's right to prepare and present a full defense at trial."  *Id.* at 742.

The Special Counsel also points to an unpublished protective order entered in *United States v. Moussaoui*, No. 01-cr-455 (E.D.Va. Feb. 5, 2002), yet failed to attach it to his pleading, despite the fact that it is not available to the Court through Pacer.  Having obtained it from the court and reviewed it, however, it is of little assistance to the Special Counsel.  In that case involving the "Twentieth Hijacker," a terrorist involved in the biggest mass murder of American

citizens in modern history, the Court simply ordered that discovery could not be provided by defense counsel to expert witnesses without *ex parte* approval of the court; and "particularly sensitive discovery materials," could not be shown by defense counsel to any witnesses without *ex parte* prior approval of the court. *See* Ex. C, Protective Order for Unclassified but Sensitive Material, *United States v. Moussaoui*, 01-cr-455 (E.D. Va. Feb. 5, 2002).[5]

### 3. The Special Counsel's classified information cases go even farther afield

In a similar vein, the Special Counsel cites *Snepp v. United States*, 444 U.S. 507 (1980) for the proposition that publication of information about intelligence activities could harm the United States. Mot. at 6-7. But *Snepp* has nothing to do with protective orders in criminal cases, and instead addressed whether the defendant breached his contract with the CIA by publishing a book and, by doing so, he disclosed classified material.  There was no protective order in that case because the confidential information had already been published.  To bolster the irrelevance of *Snepp* the Special Counsel stretches to *CIA v. Sims*, 471 U.S. 159 (1985), *see* Mot. at p. 7, fn. 3; another civil case having nothing to do with protective orders where the issue was whether the CIA could refuse under FOIA to produce the names of classified intelligence sources that were protected by another statute.  Nor does *Kaplan v. Conyers*, 733 F.3d 1148 (Fed. Cir. 2013), help the Special Counsel's cause because in that employment case against the Department of Defense having nothing to do with protective orders the court simply cited to *Snepp* with no analysis. Similarly, the Special Counsel's reliance on *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) is ludicrous.  There, the court refused to compel the government to produce a small

---

[5] *United States v. Bin Laden*, 58 F. Supp. 2d 113 (S.D.N.Y. 1999), involved classified information which is not the case here.

amount of classified information because after *in camera* review that court determined that it was not relevant to the defense.

In any event, the Special Counsel's entire argument on this point is irrelevant because he concedes that the information at issue here is not classified.  Mot. at p. 6.

### 4.      No published case in this Circuit has adopted a blanket protective order like that proposed here

The Special Counsel continues his cruise through out of circuit cases containing no precedent with *United States v. Bundy*, No. 2:16-CR-046-GMN-PAL, 2016 WL 7030431 (D.Nev. Nov. 30, 2016); and *United States v. Luchko*, No. CRIM. A. 06-319, 2006 WL 3060985 (E.D. Pa. Oct. 27, 2006).  Mot. at 5.  Both cases stand for the unremarkable proposition that protective orders can be used when there is a large volume of sensitive information.  However, a careful reading of *Bundy* makes clear that the Magistrate Judge refused to issue the protective order proposed by the government.  *See Bundy*, 2016 WL 7030431, at *2.  Despite the existence of documented evidence that witnesses and law enforcement officers in that case had been threatened, the Court adopted the Magistrate Judge's simple protective order restricting the use of the discovery materials to defense of the case and requiring that confidential documents be filed under seal.  *Id.* at *2; *see also* Ex. D, Protective Order, *United States v. Bundy*, 2:16-cr-00046 (D. Nev. July 15, 2016), ECF No. 609.

In *Luchko*, unlike here, the government sought a protective order covering only a small number of interview reports, grand jury transcripts and search warrant affidavits.  *See Luchko*, 2006 WL 3060985 at *1.  And again, as in *Bundy*, the court eventually issued a protective order simply restricting discovery to preparation of the defense.  *See United States v. Luchko*, Cr. No. 06-319, 2007 WL 16511349 *12 (E.D. Pa. June 6, 2007).  While the *Luchko* court discussed the concept of a blanket protective order, as noted above that concept was rejected by Judge

Friedman of this Court in *United States v. O'Keefe*, 2007 WL 1239207 *2, and undersigned counsel has been unable to identify any published opinion in a criminal case in this circuit where the concept of a blanket protective was accepted by the court.[6]

Not yet ashamed, the Special Counsel plays the personal identifying information ("PII") card. *See* Mot at p. 9. However, undersigned counsel has already advised the Special Counsel that Defendant does not seek any personal identifying information that is irrelevant to the defense. The Special Counsel stated to undersigned counsel that it would not be possible to remove any such information from the discovery. But that is the Special Counsel's problem, not Concord's. And undersigned counsel will not accept any such information unless the Special Counsel can demonstrate that, in fact: 1) it is relevant to the defense of the case; 2) the Special Counsel intends to use the item in its case-in-chief at trial; or 3) the information was obtained from or belongs to Defendant. *See* Fed. R. Crim. P. 16(a)(1)(E). The Special Counsel's reliance on the out of circuit case *United States v. Johnson*, 191 F. Supp. 3d 363 (M.D. Pa. 2016) provides no cover. To the contrary, *Johnson*, a drugs and firearms case, returns to the concept of an umbrella protective order that is unheard of in published opinions in this district, and further addresses PII which we are not seeking unless it is relevant to the defense.[7]

---

[6] The Special Counsel's discussion of the Crime Victims' Rights Act is perplexing. *See* Mot. at 5-6. In any event, both cases relied upon by the Special Counsel involve attempts by the media to obtain the names of single crime victims and as such are completely irrelevant to the issue before the Court.

[7] The Special Counsel's description of the PII to undersigned counsel makes it difficult to understand how it could be relevant to the defense. The Special Counsel generally noted that some of the discovery contains financial account numbers of innocent individuals. As noted above, undersigned counsel refuses to accept or be responsible for any such irrelevant data. As to names, addresses and other personal information of the same or other individuals, undersigned counsel has no intention of making any such information public prior to trial.

**5.**     **Concord cannot be ordered to prevent its own officers and employees from viewing discovery**

As the Special Counsel reaches his shameful crescendo, he claims there is case law to support the argument that a corporate officer of Defendant Concord, Mr. Prigozhin, should not have access to discovery in this case because he is indicted and had not appeared. But alas, there is no such case, so the Special Counsel pivots to reliance on *Degen v. United States*, 517 U.S. 820 (1996); *In re Assets of Martin*, 1 F.3d 1351 (3d Cir. 1993), and *Williams v. Holbrook*, 691 F.2d 3 (1st Cir. 1982). Mot. at 11. So let us see what those cases actually say.

In *Degen* the Supreme Court **reversed** the court of appeals' holding that a criminal fugitive could not "seek benefits from the judicial system," Mot. at 11; that is, the Court concluded that a fugitive **could** contest a criminal forfeiture case from outside the United States. 517 U.S. at 828. This holding is absolutely contrary to the Special Counsel's argument in this case. In *Martin*, (a pre-*Degen* case that likely cannot withstand the holding in *Degen*), an out-of-circuit court dismissed the appeal of a defendant as to an order imposing a restraint on his assets where the defendant fled after conviction. 1 F.3d at 1356. And *Holbrooke* is a state prison habeas corpus petition case holding that a prisoner's escape **did not** estop her from subsequently raising constitutional claims. 691 F.2d at 13.

To wrap up this disingenuous mess the Special Counsel cites to two out-of-circuit cases—*United States v. Nabepanha*, 200 F.R.D. 480, 483 (S.D. Fla. 2001) and *United States v. Gorcyca*, No. 08-CR-9 (FB), 2008 WL 4610297 (E.D.N.Y. 2008)—and *United States v. Lorenzana-Cordon*, 197 F. Supp. 3d 1 (D.D.C. 2016), apparently hoping that the Court will not read any of these cases either.

In *Nabepanha*, a defendant who fled the United States after becoming aware of charges was personally denied discovery under the fugitive disentitlement doctrine. 200 F.R.D. at 483.

But there are several problems with this holding by a United States Magistrate Judge.  First, it has never been cited by any other court for the proposition that the fugitive disentitlement doctrine applies to preclude discovery to a person associated with a corporate defendant. Second, the court relied upon the proposition that mere absence does not render a person a fugitive; instead it must be shown that the defendant absented himself from the jurisdiction with the intent to avoid prosecution.  *See id.* at 482.  Here, the indictment does not allege that either Defendant Concord or Mr. Prigozhin were ever in the United States in the first place.  Third, Defendant Concord voluntarily appeared and is entitled to discovery.

In *Gorcyca*, the court refused to hear a motion to dismiss the indictment from a fugitive who had resisted extradition for seven years.  2008 WL 4610297, at *1.  The opinion states nothing about discovery or a protective order.  Finally in *Lorenzana-Cordon*, Judge Kollar-Kotelly of this Court refused to unseal the names of indicted fugitives where the defendant already had a copy of the entire indictment containing the names of all of the defendants from his extradition proceeding.  *See* 197 F. Supp. 3d at *3.  What this holding has to do with the Special Counsel's request to the Court remains a mystery.

In sum, none of the decisions cited by the Special Counsel involve facts even remotely similar to those at issue here, and should be rejected as such.

### D.    The Sum and Substance of the Actual Law

Defendant Concord has voluntarily appeared in Court and is entitled to discovery. *See generally* Fed. R. Crim. P. 16(a).  The Special Counsel concedes as much, yet has produced no case authority from this circuit to support a blanket protective order covering ten million pages of discovery, nor has he produced any out of circuit authority that is persuasive.  Instead, the Special Counsel ignored law from this district rejecting this concept.  *See O'Keefe*, 2007 WL 1239207 at *2 (ordering the government to disclose certain documents to each of the defendants

in the case, noting that it could "not circumvent its responsibilities by seeking a blanket protective order from this Court or by indiscriminately invoking [privacy laws]."").

The Special Counsel has produced no published case law to support its request for pre-screening of people who will obtain discovery, the designation of authorized persons to receive discovery on behalf of a corporate defendant, the bulk designation of millions of pages of discovery as unclassified but "sensitive," or the use of "firewall counsel."  Instead he relies solely on an unpublished protective order in a major narcotics case where there was evidence presented to the court that the defendant had used professionals, including lawyers, to further the activities of his drug cartel.  *See* Mot. at p. 4, fn. 2 (citing *Lorea*).  And even the protective order issued in that case, while providing for pre-screening of individuals not part of the defense team prior to obtaining discovery, contains no restriction on review of discovery by the defendant himself as is sought by the Special Counsel here.

### E.    Defendant Concord's Agreed-Upon Protective Order

The Special Counsel's requests are fashioned to deal with problems of his own making. He alone decided who and when to indict.  There are no statute of limitations issues apparent from the face of the Indictment.  He chose to indict a case while his investigation was apparently ongoing.  He must deal with the consequences or he can dismiss the case.

As a courtesy to the Court, Defendant Concord will not challenge the proposed protective order attached hereto as Exhibit A.  This order will allow undersigned counsel to communicate with the defense team, their client and potential witnesses without unlawful interference by the Special Counsel or the necessity of the Court having to rule every time counsel must discuss discovery with a potential witness.  This attached proposed order is all that is necessary for discovery of unclassified information, and strikes the appropriate balance between the Special Counsel investigation and Concord's right to prepare its defense and is consistent with a

protective order from this Court in similar circumstances.  *See* Ex E, Protective Order, *United States v. O'Keefe*, 1:06-cr-00249 (D.D.C. July 3, 2007), ECF. No. 57 (addressing discovery that includes both personal information and sensitive government information).

WHEREFORE, Defendant Concord respectfully requests that the Special Counsel's Motion for a Protective Order be denied, or in the alternative, if the Court deems that a protective order is necessary, that it enter the proposed order attached hereto as Exhibit A.

Dated:  June 14, 2018

Respectfully submitted,

CONCORD MANAGEMENT AND CONSULTING, LLC

By Counsel

/s/*Eric A. Dubelier*

Eric A. Dubelier
Katherine Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) all counsel of record registered with the CM/ECF system.

/s/   *Katherine J. Seikaly*
Katherine J. Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com

*Counsel for Concord Management and Consulting LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-DLF |
| INTERNET RESEARCH AGENCY LLC, *et al*., | |
| Defendants. | |

## PROTECTIVE ORDER

The Court finds good cause to institute a protective order to regulate discovery in this case, as provided in Fed. R. Crim. P. 16(d) and **HEREBY ORDERS**:

1.      All of the materials and information provided by the United States in preparation for, or in connection with, any stage of the proceedings in this case (collectively, "the materials") are subject to this Order and may be used by defense counsel (herein defined as counsel of record and any attorney, paralegal, investigator, translator, litigation support personnel, and secretarial staff employed or engaged by Reed Smith LLP who is assisting in the preparation of the defense) solely in connection with the defense of this criminal case, and for no other purpose, and in connection with no other proceeding, without further order of this Court.  The materials include all information provided by the United States in connection with discovery, regardless of form, and includes information provided physically, electronically, or orally.

2.      The United States shall remove from the materials all personally identifying information ("PII") that is not relevant to the defense.

3.      Defense counsel shall not disclose the materials or their contents directly or indirectly to any person or entity other than an authorized person as defined in this paragraph and

under the circumstances described in this Order.  Authorized persons shall be limited to: (a) persons employed or engaged by defense counsel to assist in the defense of the criminal case as set forth in paragraph 1 above; (b) persons who are interviewed as potential witnesses; (c) counsel for potential witnesses; (d) individual officers and employees of Defendant Concord Management and Consulting LLC ("Concord Management") who are assisting in the defense of this case; and (e) other persons to whom the Court may authorize disclosure.

4.      Defense counsel and authorized persons shall not copy or reproduce the materials except in order to provide copies of the materials for use in connection with this case by defense counsel and authorized persons.  Such copies and reproductions shall be treated in the same manner as the original materials.

5.      Defense counsel and authorized persons shall not disclose any notes or records of any kind that they make in relation to the contents of the materials, other than to authorized persons, and all such notes or records are to be treated in the same manner as the original materials.

6.      Before providing materials to an authorized person, defense counsel must provide the authorized person with a copy of this Order.

7.      A copy of this Order shall be kept with printed copies of the materials at all times. An electronic copy of this Order shall be available for review on any database housing the materials.

8.      Upon conclusion of all stages of this case, the materials and all copies made thereof shall be disposed of in one of two ways, unless otherwise ordered by the Court.  The materials may be (1) destroyed or (2) returned to the government.  The Court may require a certification as to the disposition of any such materials.

9.      To the extent any material is produced by the government to defense counsel by mistake, the government shall have the right to the return of such material and shall request any such return in writing.  Within five days of the receipt of a request to return such materials, defense counsel shall return all such material if in hard copy, and in the case of electronic materials, shall certify in writing that all copies of the specified material have been deleted from any location in which the material was stored.  Defense counsel shall have the right to file an objection with the Court to the return of any such material if such material is discoverable in this case.

10.      The restrictions set forth in this section of the Order do not apply to documents that are or become part of the public court record, including documents that have been received in evidence at other trials, nor do the restrictions in this Order limit defense counsel in the use of discovery materials in judicial proceedings in this case, except as provided below.

11.      Should the parties desire to offer into evidence or submit to the Court pre-trial any documents and information covered by this Protective Order, any such documents or information shall be filed under seal with the Clerk of the Court.  The government must then demonstrate to the Court a particularized basis for preventing disclosure.  If such a showing is not made, the documents or information shall be unsealed.

12.      Nothing contained in this Order shall preclude any party from applying to this Court for further relief or for modification of any provision hereof.

_____
Date

_____
HON. DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                 :

UNITD STATES OF AMERICA,             :
                                                 :
                                                 :
                - against -                   :   **ORDER**
                                                   :

JOAQUIN ARCHIVALDO GUZMAN      :   09 Cr. 466 (BMC) (S-4)
LOERA, *also known as* "El Chapo," "El      :
Rapido," "Chapo Guzman," "Shorty," "El      :
Senor," "El Jefe," "Nana," "Apa," "Papa,"      :
"Inge" "El Viejo," *and* "Joaquin Guzman-      :
Loera,"                                              :
                                             :
                             Defendant.      :

----------------------------------------------------------- X

**COGAN**, District Judge.

      The Government seeks a protective order limiting the dissemination of the discovery

material it intends to produce to defendant. Defendant has agreed to all but five of the conditions

outlined in the proposed protective order. Specifically, at issue are the Government's positions

that (1) information related to sensitive law enforcement techniques should be designated

"Protected Material," as defined in the protective order; (2) foreign nationals should be subject to

prior approval before they can be considered part of "Defense Counsel's Team," as defined in

the protective order; (3) persons who are not members of Defense Counsel's Team should be

subject to prior approval before they are permitted to view the Protected Material; (4) the

Government should not be obligated to review information in the public domain on an ongoing

basis to determine what material has become public and should no longer be designated as

Protected Material; and (5) defense counsel should be prohibited from disseminating § 3500

material, even if that material is in the public domain.

Under Federal Rule of Criminal Procedure 16, a court may "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," as it relates to the production of pre-trial discovery. Fed. R. Crim. P. 16(d)(1). The party seeking a protective order has the ability to submit *ex parte* arguments to demonstrate good cause. See id. Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). A finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." United States v. Gangi, No. 97-CR-1215, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998) (internal quotation marks omitted); see also United States v. Wecht, 484 F.3d 194, 211 (3d Cir. 2007) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." (internal quotation marks omitted)).

**1. Information Related to Sensitive Law Enforcement Techniques.**

The Government has met its burden of establishing good cause to support its categorization of information related to sensitive law enforcement techniques as Protected Material. Public disclosure of these techniques would significantly undermine the Government's ability to use these techniques in the future, thus significantly impeding ongoing and future investigations. See United States v. Smith, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) (finding protective order warranted where there were "ongoing investigations into criminal conduct related to the discovery materials . . . and[] public disclosure of some of [those] materials plausibly could undermine [those] investigations."). Defendant's arguments opposing this provision are unavailing given the countervailing need to protect ongoing and future investigations.

2

**2. Prior Approval of Foreign Nationals Seeking to Join Defense Counsel's Team.**

The Government has also established good cause regarding the need for prior approval of foreign nationals joining the Defense Counsel's Team. Given defendant's alleged history of using individuals, including professional individuals, to further his alleged enterprise, the risk presented by permitting foreign nationals, whether attorneys, investigators, or others who could be members or associates of the Sinaloa Cartel, to join the Defense Counsel's Team without appropriate vetting is significant. Thus, this prior approval requirement is necessary.

However, assigning this vetting to the very Government attorneys who are prosecuting defendant appears to be improper in that it permits a "potential spy in the defense camp" because the Government would be in the position to "learn[] privileged defense strategy" from the individuals defendant is interviewing or seeking to retain as part of his defense team. United States v. Massino, 311 F. Supp. 2d 309, 311 (E.D.N.Y. 2004) (internal quotation marks omitted). Accordingly, using a firewall attorney here is appropriate given the Sixth Amendment implications arising from the potential disclosure of defense strategy.

The Second Circuit has previously found the use of firewall counsel to be sufficient to protect Sixth Amendment rights. In United States v. Yousef, 327 F.3d 56 (2d Cir. 2003), the Second Circuit approved of the Government's use of a firewall attorneys to monitor the phone calls of a defendant as part of a separate investigation, noting that "[t]his firewall was intended to prevent information obtained in the course of the investigation that was privileged or that otherwise concerned [defendants'] trial strategy from being revealed to the trial prosecutors." 327 F.3d at 166. The Circuit further found, based on the Government's affirmation, "that the Government established an effective firewall to prevent disclosures to the Government's trial attorneys of trial strategies or confidential communications between [defendants] and their attorneys." Id. at 168.

The practice of using firewall counsel to protect various types of privilege, including the attorney-client privilege, is common among the district courts of the Second Circuit, as well. See, e.g., United States v. Simels, No. 08-CR-640 (JG), 2008 WL 5383138, at *2 (E.D.N.Y. Dec. 18, 2008); United States v. Winters, No. 06-CR-54, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006); United States v. Grant, No. 04-CR-207, 2004 WL 1171258, at *2-3 (S.D.N.Y. May 25, 2004).

Moreover, it appears to me that the prosecution of Guzman and the need to keep certain information protected present similar concerns and issues as those presented in a case where the Classified Information Procedures Act, 18 U.S.C. App. §§ 1-16, is invoked. There, for defense counsel to gain access to classified material to prepare their client's defense, defense counsel necessarily need to seek security clearance for themselves and for anyone else who "needs to know" the classified information, like experts witnesses or consultants. "Need to know" would normally be determined by the Assistant U.S. Attorneys prosecuting the case, but permitting this determination by the prosecution allows the prosecution to know what experts and consultants (and case strategy and proposed testimony) the defendant is seeking to present. In cases like those, a firewall attorney determining "need to know" and acting as the liaison between defense counsel and the neutral Litigation Security Group at the U.S. Department of Justice protects the integrity of the attorney-client privilege and defendant's Sixth Amendment rights. The reasons animating the designation of a firewall counsel there are similar to the ones animating the need for one here.

In opposing the designation of firewall counsel, the Government argues that the Assistant U.S. Attorneys prosecuting the instant action have a thorough knowledge of the case and are in a better position to identify vetting concerns, an argument the Government has explained in more

detail in an *ex parte* submission. Those arguments are not without force but are ultimately unpersuasive given that the counterweight is defendant's Sixth Amendment right to counsel. Nevertheless, although the Court recognizes that familiarity with this case is useful given its complexity, the Court notes that the Eastern District of New York is not the only office with knowledgeable Assistant U.S. Attorneys. Several other offices have pending indictments against defendant, and it seems that securing firewall counsel from, for example, the Southern District of California or the Western District of Texas, which have pending indictments, would both mitigate the Government's concern about familiarity and protect defendant's Sixth Amendment rights as much as is practicably possible. Alternatively, if the Government would like to keep the firewall in-house, the Government may remove an Eastern District of New York Assistant currently on the prosecution team, designate that Assistant as firewall counsel, and take all precautions necessary to wall that Assistant off from the prosecution team. To further assist the firewall Assistant in being sensitive to the security concerns, the prosecution team may provide the firewall Assistant with a list of names of persons of interest. Individuals appearing on this list would not be automatically denied access, but their identification would assist the firewall Assistant in determining whether there are, in fact, security concerns as to that individual that would preclude access.

Consistent with the above, within 14 days, the Government is directed to submit to the Court the name and address of the proposed firewall Assistant U.S. Attorney. In terms of vetting procedure, should the designated firewall Assistant encounter any issue during vetting, that Assistant may notify only defendant *ex parte* (and the Court *ex parte*, as necessary). The firewall Assistant may not relate names or vetting results to anyone else without permission of the Court.

### 3. Prior Approval of Non-Defense Counsel Viewing Protected Material.

Similarly, the Government has also met its burden in establishing good cause regarding the need for prior approval of individuals who are not part of the Defense Counsel Team but who are seeking to view the Protected Material.  The Court agrees that potential fact witnesses that defense counsel may interview present the greatest concern because they are persons likely to be associates of defendant or alleged members of the Sinaloa Cartel or other drug-trafficking enterprises.  The risk of such individuals gaining access to cooperating witness identifying information or information regarding law enforcement techniques is too great.  Therefore, prior approval is necessary, and the vetting is to be conducted through the firewall Assistant U.S. Attorney that the Government will designate.

### 4. Review of Protected Material in the Public Domain.

The Government need not scour the internet on a continuing basis so that Protected Material that has become public become designated public.  Putting that obligation on the Government is burdensome, and the limited gain, if any, presented by such a responsibility does not overcome the burden.  Discovery material remaining protected throughout the course of a litigation or prosecution is not uncommon.  Defendant's suggestion that this Court adopt the obligation because it was adopted elsewhere is unpersuasive given that, comparatively, here the discovery involved is substantially more voluminous and the case as a whole is more complex than the cited examples.

### 5. Dissemination of § 3500 Material.

Finally, the Government has also demonstrated good cause to limit the dissemination of § 3500 material even where it has been made publicly available.  The concern raised by disseminating public § 3500 in connection with this case is just that:  It connects the testifying

witness with this case, suggesting that he is a potential witness or cooperator, thus raising the most serious security concerns. Limiting dissemination under these circumstances is warranted.

## CONCLUSION

Within 14 days, the Government is ordered to resubmit the proposed protective order, wherein it will identify by name and address of the designated firewall counsel.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
March 20, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,       )
                                )
v.                              )       Crim. No. 01-455-A
                                )
ZACCARIAS MOUSSAOUI             )

<u>PROTECTIVE ORDER FOR UNCLASSIFIED BUT SENSITIVE MATERIAL</u>

UPON the application of the United States;

IT IS HEREBY ORDERED pursuant to Rule 16(d) of the Federal Rules of Criminal

Procedure that the government shall segregate the discovery materials it produces to the

defendant and his counsel of record[1] into two categories: (1) general discovery materials not

produced prior to the date of this Order, and (2) particularly sensitive discovery materials.  The

category to which particular discovery materials belong shall be clearly identified by the

government;

IT IS FURTHER ORDERED that "general discovery materials" shall not be further

disseminated[2] by the defendant or his counsel of record to any individuals, organizations or other

entities, other than: (i) members of the defense team (co-counsel, paralegals, investigators,

translators, litigation support personnel, the defendant, and secretarial staff) and (ii) experts

retained to assist in the preparation of the defense.  Notice of proposed dissemination to defense

experts shall be provided directly to the Court *ex parte* and under seal and no dissemination to

---

[1]        Counsel of record means Frank W. Dunham, Jr., Esq. and Gerald T. Zerkin , Esq.
from the Office of the Federal Public Defender and Edward B. MacMahon, Jr., Esq.

[2]        "Disseminated" means to provide a copy of the particular piece of discovery or
quotations from it.



such experts shall be made until approved by the Court. Each of the individuals to whom disclosure is made pursuant to the above provision shall be provided a copy of this protective order and will be advised that he or she shall not further disseminate the materials except by the express direction of counsel of record. In addition, the undersigned counsel of record for the defendant, any co-counsel, and any defense investigator may show (but not provide copies of) any of such general discovery materials to witnesses or potential witnesses, if it is determined that it is necessary to do so for the purpose of preparing the defense of the case;

IT IS FURTHER ORDERED that "particularly sensitive discovery materials" shall not be further disseminated by the defendant or his counsel of record to any individuals, organizations or other entities, other than (1) members of the defense team (co-counsel, paralegals, investigators, translators, litigation support personnel, the defendant, and secretarial staff); and (ii) experts retained to assist in the preparation of the defense. Notice of proposed dissemination to defense experts shall be provided to the Court *ex parte* and under seal and no dissemination to such experts shall be made until approved by the Court. Each of the individuals to whom disclosure is made pursuant to the above provision shall be provided a copy of this protective order and will be advised that he or she shall not further disseminate the materials except by the express direction of counsel of record or co-counsel. In addition to the unmarked copy, the government shall provide a hard copy of any sensitive discovery material appropriately so marked. It is expressly understood that the undersigned attorneys of record for the defendant may not show any of such particularly sensitive discovery materials to witnesses or potential witnesses. The defendant may seek relief from these provisions as to a particular item or items of discovery by providing notice to the Court of intent to show particular identified item(s) to a

witness and the purpose in doing so.  The Notice shall be under seal.  No disclosure of the

item(s) to the witness(es) shall be made until the Court so permits.

IT IS FURTHER ORDERED that all such discovery materials are to be provided to the

defense, and used by the defense, solely for the purpose of allowing the defendant to prepare his

defense and that none of the discovery materials produced by the government to the defense shall

be disseminated to the media;

IT IS FURTHER ORDERED that none of the discovery materials produced by the

government to the defense shall be disseminated to the media by the government;

IT IS FURTHER ORDERED that any papers to be served upon the Court by either party

which include discovery materials or refer to the contents of particularly sensitive materials shall

be filed under seal;

IT IS FURTHER ORDERED that any papers to be served upon the Court in response to

papers served in conformity with the preceding paragraph also be filed under seal;

FINALLY, IT IS ORDERED that nothing in this Order shall preclude the government

from seeking a further protective order pursuant to Rule 16(d) as to particular items of discovery

material.

LEONIE M. BRINKEMA
U.S. DISTRICT COURT JUDGE
EASTERN DISTRICT OF VIRGINIA

3

WE ASK FOR THIS:                    SEEN AND AGREED:

Paul J. McNulty                     Frank W. Dunham, Jr.
United States Attorney              Federal Public Defender


Robert A. Spencer                   Frank W. Dunham, Jr.
Kenneth M. Karas
David J. Novak
Assistant United States Attorneys

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

Plaintiff,

v.

CLIVEN BUNDY, et al.,

Defendants.

Case No. 2:16-cr-00046-GMN-PAL

**PROTECTIVE ORDER**

The government filed a Motion for Protective Order (ECF Nos. 354, 357). The Defendants opposed entry of a protective order. In a separate written order, the court reviewed and considered the moving and responsive papers and explained why it found good cause to issue a protective order restricting dissemination of pretrial discovery produced by the government. The court also found the government's form of proposed protective order lacked clarity. This order replaces the Temporary Protective Order (ECF No. 392) entered on an interim basis while briefing on the motion was completed.

**IT IS ORDERED** that:

1. All materials produced by the government in discovery in this case, including, but not limited to: grand jury transcripts, agency reports, witness statements, memoranda of interviews, and any documents and tangible objects produced by the government shall be treated as confidential documents. Information and documents in the public domain are not confidential documents.

2. "Public domain" means information which is published and which is generally accessible or available to the public, *see United States v. Gowadia*, 760 F.3d 989, 996 (9th Cir. 2014):

    a. Through information available through the internet;

1

b. At libraries open to the public or from which the public can obtain documents;

c. Through sales at newsstands and bookstores;

d. Through subscriptions which are available without restriction to any individual who desires to obtain or purchase the published information;

e. Through second class mailing privileges granted by the U.S. Government;

f. Through patents available at any patent office;

g. Through unlimited distribution at a conference, meeting, seminar, trade show, or exhibition, generally accessible to the public, in the United States;

h. Through fundamental research in science and engineering at accredited institutions of higher learning in the United States where the resulting information is ordinarily published and shared broadly in the scientific community;[1] and

i. Through public release (*i.e.*, unlimited distribution) in any form (*e.g.*, not necessarily in published form) after approval by the cognizant United States government department or agency.

3. All materials provided by the government in discovery may be utilized by the defendants and their counsel solely in connection with the defense of this case, and Case No. 3:16-cr-00051-BR in District of Oregon for those defendants who are also charged in that district, and for no other purpose.

4. Discovery materials and any of their contents shall not be disclosed either directly or indirectly to any person or entity other than the defendants, defendants' counsel in this criminal case and the District of Oregon case, persons assisting in the defense of this criminal case, and persons who are interviewed or consulted during the course of

---

[1]  Fundamental research is defined to mean basic and applied research in science and engineering where the resulting information is ordinarily published and shared broadly within the scientific community, as distinguished from research the results of which are restricted for proprietary reasons or specific United States government access and dissemination controls.  University research will not be considered fundamental research if: (i) The University or its researchers accept other restrictions on publication of scientific and technical information resulting from the project or activity, or (ii) The research is funded by the United States government and specific access and dissemination controls protecting information resulting from the research are applicable.

the investigation and preparation of this case. Any notes or records of any kind that defense counsel or defendants may make relating to the contents of discovery provided by the government shall not be disclosed to anyone other than the defendants' counsel and persons employed to assist the defense.

5. Discovery materials shall not be copied or reproduced except to provide copies of the material for use by each defendant and defense counsel and such persons counsel employs to assist in the defense, and such copies and reproductions shall be treated in the same manner as the original.

6. The restrictions set forth in this order do not apply to documents that are publicly filed in the court's record, including hearings transcripts, trial transcripts, documents that are received in evidence, or documents that are otherwise in the public domain.

7. Confidential documents, as defined by this order, shall not be filed on the public docket by any party seeking the court's review of such confidential documents as an exhibit to a motion or brief. Instead, the party shall (i) file its underlying brief or motion in CM/ECF on the public docket, and (ii) separately file the confidential documents in CM/ECF under seal as "Sealed Exhibit(s)" and link the sealed exhibit(s) to the underlying brief or motion. This order authorizes filing confidential documents under seal and no further application for a sealing order shall be required.

8. Counsel shall follow the court's electronic filing procedures for filing under seal any confidential documents attached as an exhibit to a motion, brief, or pleading. *See, e.g.*, LR IA 10-5; LR IC 2-2.

9. Counsel shall redact all personal identification information from motions or briefs filed with the court in strict compliance with Fed. R. Crim. P. 49.1 and LR IC 6-1. This includes:

    a. Personal identifying information of any individual, including, without limitation, any person's date of birth, social security number, residence or business address, telephone numbers, email addresses, driver's license

///

1                 number, professional license number, family members' names, or criminal

2                 histories;

3         b.  Financial information of any individual or business, including, without

4             limitation, bank account numbers, credit or debit card numbers, account

5             passwords, contact information, and taxpayer identification numbers; and

6         c.  Medical records or other patient information of any individual covered by the

7             Health Insurance Portability and Accountability Act of 1996 (HIPAA);

8   10. Defendants' counsel shall inform anyone to whom any confidential documents are

9       disclosed, and that individual's attorney, if any, that the disclosure is made pursuant

10      to the terms of this order. Before having access to confidential documents,

11      defendants' counsel shall provide each of these individuals with a copy of this order,

12      and shall direct each of these individuals to comply with the terms of this order. The

13      individual must sign a copy of this order, and by doing so, acknowledges that he or

14      she has read, understands, and is bound by the terms of this order.

15   11. This order may be modified by the agreement of the parties with the permission of the

16      court, or by further order of the court. Any agreement of the parties shall be

17      memorialized in writing in a stipulation and proposed order.

18   12. Before filing a motion to modify, the parties shall meet and confer in a good faith

19      effort to resolve any dispute about the need to modify this protective order. *See* LR

20      IA 1-3(f) (governing the parties' meet and confer obligations).

21   Dated this 15th day of July, 2016.

22

23                                     _____

24                               PEGGY A. LEEN
                                UNITED STATES MAGISTRATE JUDGE

25

26

27

28

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

JUL 0 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No 1:06-cr-00249-PLF |
| | ) | |
| MICHAEL JOHN O'KEEFE, SR. and | ) | |
| SUNIL AGRAWAL, | ) | |
| | ) | |
| Defendants. | ) | |

**PROTECTIVE ORDER**

Upon consideration of the parties' Joint Motion for a Stipulated Protective Order,

IT IS HEREBY ORDERED THAT:

1.  All documents that the government provides to defendants pursuant to the

Court's April 27, 2007 Memorandum Opinion and Order ("April 27 Order"), and which contain

either (i) personal information—including but not limited to records of contacts with family

members, doctors, or other personal contacts, social security numbers, home telephone numbers,

residential addresses, or personal email addresses—or (ii) sensitive government information—

including but not limited to U.S. Department of State and diplomatic and consular office records

pertaining to the issuance or refusal of visas or permits to enter the United States, official foreign

correspondence, law enforcement materials, or materials implicating national security

concerns—(hereinafter "Protected Material") are and remain the property of the United States.

2.  To facilitate the discovery process, the government may designate as

protected all documents provided to the defendants pursuant to the Court's April 27 Order. The

government will notify defendants, through their counsel of record, when any Protected Material

is being provided subject to this Order by clearly indicating on both (i) the box, envelope, CD,

DVD, or other production medium and (ii) the accompanying production index and cover letter

that such materials are "SUBJECT TO PROTECTIVE ORDER." Should a defendant object to the designation of a specific document or category of documents designated by the government as Protected Material, that defendant will request, in writing, that the government reconsider or narrow its designation. If the government does not agree to such a request, the defendant may ask the Court, with notice to the government and an opportunity for the government to respond, to resolve the matter. The government will then be required to demonstrate to the Court a sufficient and particularized basis for preventing the public disclosure of the contested material. However, any material for which the applicability of this Order is contested, shall remain protected under this Order until such time as the Court resolves the matter.

3.      Inadvertent failure to designate protected documents that are entitled to protection under this Order shall not constitute a waiver to a claim that such materials are covered by this Order. Upon learning of an inadvertent disclosure of materials that were not properly designated as protected, the government may immediately advise the counsel of record to whom such disclosure was made, from which point, such counsel will treat the material as protected pursuant to this Order.

4.      Protected Material may be utilized by the defendants and their counsel solely in connection with the defense of this case and for no other purpose and in connection with no other proceeding.

5.      Any Protected Material, or protected information contained therein, shall not be disclosed to any person or entity, except that protected information may be disclosed to defendants, defense counsel, persons employed by defense counsel to assist in the defense, including clerical, paralegal, or other support staff, and other persons necessary to the preparation of the defense, including potential witnesses, their counsel, and experts.

6.      Defense counsel shall provide all persons that are provided access to any Protected Material or its contents with a copy of this Order, and each such person shall indicate their understanding of this Order and their commitment to abide by its terms by signing a copy thereof.

7.      No copies or reproductions may be made of the Protected Material, except so as to provide copies of the materials for use by the defendants, their counsel, and persons employed by them, and such other persons necessary to the preparation of the defense.  Such copies and reproductions shall be treated in the same manner as the original Protected Material.

8.      All disclosure restrictions provided for in this Order are limited to discovery and do not apply to Protected Material filed with the Court or offered as evidence at trial or a hearing.  However, if counsel wish to use or refer to Protected Materials (or a portion thereof) in a filing, a hearing, or at trial, counsel shall confer, to determine whether they can agree upon redactions in order to address any privacy or government sensitivity concerns.  If counsel cannot agree, they shall raise the matter with the Court for resolution.  The Court shall not restrict from public disclosure material which a defendant seeks to file with the Court or offer in a hearing or as evidence at trial unless the government demonstrates to the Court a particularized basis for preventing disclosure, and the Court makes specific findings justifying nondisclosure.  Contested material may not be publicly used by counsel until the Court resolves the matter.

9.      Upon the conclusion of the proceedings in this case, including any appeals, the Protected Material and all copies or reproductions made thereof shall be either (i) returned to the United States, or (ii) destroyed.  If the documents are not returned, counsel shall deliver a certification to the United States Attorney's Office indicating that any protected

material or copy thereof which has not been returned has been destroyed under the supervision of

such attorneys.

SO ORDERED.

Dated: _7 3|o7_

_____
PAUL L. FRIEDMAN
United States District Court Judge