UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                        :

UNITD STATES OF AMERICA,                  :

                           - against -                       :    **ORDER**

JOAQUIN ARCHIVALDO GUZMAN          :    09 Cr. 466 (BMC) (S-4)
LOERA, *also known as* "El Chapo," "El
Rapido," "Chapo Guzman," "Shorty," "El
Senor," "El Jefe," "Nana," "Apa," "Papa,"
"Inge" "El Viejo," *and* "Joaquin Guzman-
Loera,"

                                Defendant.
------------------------------------------------------------ X

**COGAN**, District Judge.

      The Government seeks a protective order limiting the dissemination of the discovery material it intends to produce to defendant. Defendant has agreed to all but five of the conditions outlined in the proposed protective order. Specifically, at issue are the Government's positions that (1) information related to sensitive law enforcement techniques should be designated "Protected Material," as defined in the protective order; (2) foreign nationals should be subject to prior approval before they can be considered part of "Defense Counsel's Team," as defined in the protective order; (3) persons who are not members of Defense Counsel's Team should be subject to prior approval before they are permitted to view the Protected Material; (4) the Government should not be obligated to review information in the public domain on an ongoing basis to determine what material has become public and should no longer be designated as Protected Material; and (5) defense counsel should be prohibited from disseminating § 3500 material, even if that material is in the public domain.

Under Federal Rule of Criminal Procedure 16, a court may "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," as it relates to the production of pre-trial discovery. Fed. R. Crim. P. 16(d)(1). The party seeking a protective order has the ability to submit *ex parte* arguments to demonstrate good cause. See id. Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). A finding of harm "must be based on a particular factual demonstration of potential harm, not on conclusory statements." United States v. Gangi, No. 97-CR-1215, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998) (internal quotation marks omitted); see also United States v. Wecht, 484 F.3d 194, 211 (3d Cir. 2007) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." (internal quotation marks omitted)).

**1. Information Related to Sensitive Law Enforcement Techniques.**

The Government has met its burden of establishing good cause to support its categorization of information related to sensitive law enforcement techniques as Protected Material. Public disclosure of these techniques would significantly undermine the Government's ability to use these techniques in the future, thus significantly impeding ongoing and future investigations. See United States v. Smith, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) (finding protective order warranted where there were "ongoing investigations into criminal conduct related to the discovery materials . . . and[] public disclosure of some of [those] materials plausibly could undermine [those] investigations."). Defendant's arguments opposing this provision are unavailing given the countervailing need to protect ongoing and future investigations.

### 2. Prior Approval of Foreign Nationals Seeking to Join Defense Counsel's Team.

The Government has also established good cause regarding the need for prior approval of foreign nationals joining the Defense Counsel's Team. Given defendant's alleged history of using individuals, including professional individuals, to further his alleged enterprise, the risk presented by permitting foreign nationals, whether attorneys, investigators, or others who could be members or associates of the Sinaloa Cartel, to join the Defense Counsel's Team without appropriate vetting is significant. Thus, this prior approval requirement is necessary.

However, assigning this vetting to the very Government attorneys who are prosecuting defendant appears to be improper in that it permits a "potential spy in the defense camp" because the Government would be in the position to "learn[] privileged defense strategy" from the individuals defendant is interviewing or seeking to retain as part of his defense team. United States v. Massino, 311 F. Supp. 2d 309, 311 (E.D.N.Y. 2004) (internal quotation marks omitted). Accordingly, using a firewall attorney here is appropriate given the Sixth Amendment implications arising from the potential disclosure of defense strategy.

The Second Circuit has previously found the use of firewall counsel to be sufficient to protect Sixth Amendment rights. In United States v. Yousef, 327 F.3d 56 (2d Cir. 2003), the Second Circuit approved of the Government's use of a firewall attorneys to monitor the phone calls of a defendant as part of a separate investigation, noting that "[t]his firewall was intended to prevent information obtained in the course of the investigation that was privileged or that otherwise concerned [defendants'] trial strategy from being revealed to the trial prosecutors." 327 F.3d at 166. The Circuit further found, based on the Government's affirmation, "that the Government established an effective firewall to prevent disclosures to the Government's trial attorneys of trial strategies or confidential communications between [defendants] and their attorneys." Id. at 168.

3

The practice of using firewall counsel to protect various types of privilege, including the attorney-client privilege, is common among the district courts of the Second Circuit, as well. See, e.g., United States v. Simels, No. 08-CR-640 (JG), 2008 WL 5383138, at *2 (E.D.N.Y. Dec. 18, 2008); United States v. Winters, No. 06-CR-54, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006); United States v. Grant, No. 04-CR-207, 2004 WL 1171258, at *2-3 (S.D.N.Y. May 25, 2004).

Moreover, it appears to me that the prosecution of Guzman and the need to keep certain information protected present similar concerns and issues as those presented in a case where the Classified Information Procedures Act, 18 U.S.C. App. §§ 1-16, is invoked. There, for defense counsel to gain access to classified material to prepare their client's defense, defense counsel necessarily need to seek security clearance for themselves and for anyone else who "needs to know" the classified information, like experts witnesses or consultants. "Need to know" would normally be determined by the Assistant U.S. Attorneys prosecuting the case, but permitting this determination by the prosecution allows the prosecution to know what experts and consultants (and case strategy and proposed testimony) the defendant is seeking to present. In cases like those, a firewall attorney determining "need to know" and acting as the liaison between defense counsel and the neutral Litigation Security Group at the U.S. Department of Justice protects the integrity of the attorney-client privilege and defendant's Sixth Amendment rights. The reasons animating the designation of a firewall counsel there are similar to the ones animating the need for one here.

In opposing the designation of firewall counsel, the Government argues that the Assistant U.S. Attorneys prosecuting the instant action have a thorough knowledge of the case and are in a better position to identify vetting concerns, an argument the Government has explained in more

4

detail in an *ex parte* submission. Those arguments are not without force but are ultimately unpersuasive given that the counterweight is defendant's Sixth Amendment right to counsel. Nevertheless, although the Court recognizes that familiarity with this case is useful given its complexity, the Court notes that the Eastern District of New York is not the only office with knowledgeable Assistant U.S. Attorneys. Several other offices have pending indictments against defendant, and it seems that securing firewall counsel from, for example, the Southern District of California or the Western District of Texas, which have pending indictments, would both mitigate the Government's concern about familiarity and protect defendant's Sixth Amendment rights as much as is practicably possible. Alternatively, if the Government would like to keep the firewall in-house, the Government may remove an Eastern District of New York Assistant currently on the prosecution team, designate that Assistant as firewall counsel, and take all precautions necessary to wall that Assistant off from the prosecution team. To further assist the firewall Assistant in being sensitive to the security concerns, the prosecution team may provide the firewall Assistant with a list of names of persons of interest. Individuals appearing on this list would not be automatically denied access, but their identification would assist the firewall Assistant in determining whether there are, in fact, security concerns as to that individual that would preclude access.

      Consistent with the above, within 14 days, the Government is directed to submit to the Court the name and address of the proposed firewall Assistant U.S. Attorney. In terms of vetting procedure, should the designated firewall Assistant encounter any issue during vetting, that Assistant may notify only defendant *ex parte* (and the Court *ex parte*, as necessary). The firewall Assistant may not relate names or vetting results to anyone else without permission of the Court.

**3. Prior Approval of Non-Defense Counsel Viewing Protected Material.**

Similarly, the Government has also met its burden in establishing good cause regarding the need for prior approval of individuals who are not part of the Defense Counsel Team but who are seeking to view the Protected Material. The Court agrees that potential fact witnesses that defense counsel may interview present the greatest concern because they are persons likely to be associates of defendant or alleged members of the Sinaloa Cartel or other drug-trafficking enterprises. The risk of such individuals gaining access to cooperating witness identifying information or information regarding law enforcement techniques is too great. Therefore, prior approval is necessary, and the vetting is to be conducted through the firewall Assistant U.S. Attorney that the Government will designate.

**4. Review of Protected Material in the Public Domain.**

The Government need not scour the internet on a continuing basis so that Protected Material that has become public become designated public. Putting that obligation on the Government is burdensome, and the limited gain, if any, presented by such a responsibility does not overcome the burden. Discovery material remaining protected throughout the course of a litigation or prosecution is not uncommon. Defendant's suggestion that this Court adopt the obligation because it was adopted elsewhere is unpersuasive given that, comparatively, here the discovery involved is substantially more voluminous and the case as a whole is more complex than the cited examples.

**5. Dissemination of § 3500 Material.**

Finally, the Government has also demonstrated good cause to limit the dissemination of § 3500 material even where it has been made publicly available. The concern raised by disseminating public § 3500 in connection with this case is just that: It connects the testifying

6

witness with this case, suggesting that he is a potential witness or cooperator, thus raising the most serious security concerns. Limiting dissemination under these circumstances is warranted.

## CONCLUSION

Within 14 days, the Government is ordered to resubmit the proposed protective order, wherein it will identify by name and address of the designated firewall counsel.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       March 20, 2017