## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-DLF |
| INTERNET RESEARCH AGENCY, LLC, *et al*., | |
| Defendants. | |

### DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
### MOTION TO DISMISS THE INDICTMENT

Pursuant to Rule 12(b)(1) and 12(b)(3) of the Federal Rules of Criminal Procedure, Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully moves to dismiss the Indictment, ECF No. 1, in its entirety.  As set forth more fully in the accompanying memorandum of points and authorities, the Indictment should be dismissed for the following reasons:

1.  The Indictment fails to allege the crime of a defraud conspiracy that interferes with a lawful governmental function under 18 U.S.C. § 371 against Concord.

2.  The Indictment fails to allege the requisite *mens rea* to support the § 371 conspiracy to defraud charge against Concord.

3.  The Indictment's application of § 371's conspiracy to defraud clause is unconstitutionally vague as to Concord.

4.  The Indictment fails to allege deprivation of government property as required under a proper construction of § 371 (for preservation only).

A proposed order is filed with this Motion.

Dated: July 16, 2018                          Respectfully submitted,

                                              CONCORD MANAGEMENT
                                              AND CONSULTING LLC


                                         By:  /s/ Eric A. Dubelier
                                              Eric A. Dubelier (D.C. Bar No. 419412)
                                              Katherine J. Seikaly (D.C. Bar No. 498641)
                                              REED SMITH LLP
                                              1301 K Street, NW
                                              Suite 1000 – East Tower
                                              Washington, D.C. 20005-3373
                                              202.414.9200 (phone)
                                              202.414.9299 (fax)
                                              edubelier@reedsmith.com
                                              kseikaly@reedsmith.com

                                              James C. Martin[*]
                                              Colin E. Wrabley[*]
                                              REED SMITH LLP
                                              225 Fifth Avenue
                                              Pittsburgh, PA 15222-2716
                                              412.288.3131 (phone)
                                              412.288.3063 (fax)
                                              jcmartin@reedsmith.com
                                              cwrabley@reedsmith.com
                                              [*]*Admitted Pro Hac Vice*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | CRIMINAL NUMBER: |
| v. | | 1:18-cr-00032-DLF |
| INTERNET RESEARCH AGENCY, LLC, *et al*., | | |
| Defendants. | | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
MOTION TO DISMISS THE INDICTMENT**

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   THE INDICTMENT MAKES NO SPECIFIC INTENT ALLEGATIONS AS TO
      CONCORD WITH RESPECT TO ANY STATUTE OR REGULATION ...................... 4

III.  THE INDICTMENT PROVIDES NO ACTUAL NOTICE OF ANY
      ARGUABLY APPLICABLE STATUTES AND REGULATIONS. ............................... 6

IV.   LEGAL STANDARDS ............................................................................... 7

      A.    Motion To Dismiss Indictment ............................................................ 7

      B.    Conspiracy To Defraud ...................................................................... 9

V.    ARGUMENT ......................................................................................... 13

      A.    The Indictment Against Concord Should Be Dismissed Because It Fails
            To Allege The Crime Of A Defraud Conspiracy That Interferes With A
            Lawful Governmental Function Under § 371. ......................................... 13

      B.    The Indictment Against Concord Should Be Dismissed Because It Fails
            To Allege The Requisite *Mens Rea* To Support The § 371 Conspiracy To
            Defraud Charge Against Concord. ....................................................... 17

            1.    The Special Counsel was required—but failed—to allege that
                  Concord acted with the requisite willful intent. ......................... 19

                  a.    Controlling legal principles require the Special
                        Counsel to show that Concord acted willfully. ................... 19

                  b.    Existing case law supports the need for a willfulness
                        showing here. ............................................................ 26

            2.    The Special Counsel was required—but failed—to allege that
                  Concord specifically targeted the United States or its agencies. ..... 34

      C.    The Indictment Against Concord Should Be Dismissed Because The
            Special Counsel's Application Of § 371's Defraud Clause Is
            Unconstitutionally Vague. ................................................................ 38

      D.    The Indictment Against Concord Should Be Dismissed Because It Fails
            To Allege Deprivation Of Government Money Or Property As Required
            Under A Proper Construction Of § 371 (For Preservation Only). ............... 43

VI.   CONCLUSION ....................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
    522 U.S. 359 (1998)..................................................................................21

*Arthur Andersen LLP v. United States,*
    544 U.S. 696 (2005)..................................................................................40

*Az. Free Enter. Club's Freedom Club PAC v. Bennett,*
    564 U.S. 721 (2011)..................................................................................21

*Bluman v. Fed. Election Comm'n,*
    800 F. Supp. 2d 281 (D.D.C. 2011) .............................................. *passim*

*Bordenkircher v. Hayes,*
    434 U.S. 357 (1978)..................................................................................15

*Bryan v. United States,*
    524 U.S. 183 (1998)..................................................................................19

*Bryant v. Gates,*
    532 F.3d 888 (D.C. Cir. 2008) ................................................................42

*Buckley v. Valeo,*
    424 U.S. 1 (1976)................................................................................21, 42

*Burrage v. United States,*
    134 S. Ct. 881 (2014)................................................................................22

*Campaign Legal Ctr. v. Fed. Election Comm'n*
    No. 1:16–cv–00752 (TNM), 2018 WL 2739920 (D.D.C. June 7, 2018)...........................21, 42

*Cheek v. United States,*
    498 U.S. 192 (1991)..................................................................................19

*Citizens United v. Fed. Election Comm'n,*
    558 U.S. 310 (2010)............................................................................20, 21

*Crandon v. United States,*
    494 U.S. 152 (1990)..................................................................................14

*Dennis v. United States,*
    384 U.S. 855 (1963)............................................................................11, 35

*Dixson v. United States*,
    465 U.S. 482 (1984)........................................................................39

*Elonis v. United States*,
    135 S. Ct. 2001 (2015)....................................................................18

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012)............................................................12, 21, 22

*Gebardi v. United States*,
    287 U.S. 112 (1932)..........................................................................7

*Giaccio v. Pennsylvania*,
    382 U.S. 399 (1966)........................................................................39

*Grunewald v. United States*,
    353 U.S. 391 (1957)........................................................................10

*Hammerschmidt v. United States*,
    265 U.S. 182 (1924)........................................................................10

*Harrison v. United States*,
    7 F.2d 259 (2d Cir. 1925) ................................................................10

*Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*,
    138 S. Ct. 2448 (2018)....................................................................21

*Johnson v. United States*,
    135 S. Ct. 2551 (2015)........................................................39, 40, 45

*Jordan v. De George*,
    341 U.S. 223 (1951)........................................................................41

*Krulewitch v. United States*,
    336 U.S. 440 (1949)..........................................................................9

*Liparota v. United States*,
    471 U.S. 419 (1985)..................................................................12, 41

*Marinello v. United States*,
    138 S. Ct. 1101 (2018)....................................................................22

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016)..............................................................40, 43

*McNally v. United States*,
    483 U.S. 350 (1987)........................................................................42

*Mercy Hospital, Inc. v. Azar,*
   891 F.3d 1062 (D.C. Cir. 2018) ............................................................................41

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ...........................................................................................45

*Ratzlaf v. United States,*
   510 U.S. 135 (1994) ...........................................................................................19

*Rosemond v. United States,*
   572 U.S. 65 (2014) ...............................................................................................3

*Russell v. United States,*
   369 U.S. 749 (1962) .............................................................................................8

*In re Sealed Case,*
   223 F.3d 775 (D.C. Cir. 2000) .......................................................................15, 20

*Sessions v. Dimaya,*
   138 S. Ct. 1204 (2018) .............................................................................. *passim*

*Skilling v. United States,*
   561 U.S. 358 (2010) ...........................................................................................20

*Smith v. Goguen,*
   415 U.S. 566 (1974) ...........................................................................................41

*Tanner v. United States,*
   483 U.S. 107 (1987) ..........................................................................13, 34, 35, 39

*United States v. Alston,*
   77 F.3d 718 (3d Cir. 1996) ...........................................................................29, 30

*United States v. Alvarez,*
   567 U.S. 709 (2012) .............................................................................................2

*United States v. Bailey,*
   444 U.S. 394 (1980) ...........................................................................................18

*United States v. Barker Steel Co., Inc.,*
   985 F.2d 1136 (1st Cir. 1993) ............................................................................11

*United States v. Bass,*
   404 U.S. 336 (1971) ...........................................................................................39

*United States v. Borelli,*
   336 F.2d 376 (2d Cir. 1964) .................................................................................9

*United States v. Caldwell*,
    989 F.2d 1056 (9th Cir. 1993) ............................................................10, 11, 16, 40

*United States v. Childress*,
    58 F.3d 693 (D.C. Cir. 1995) ...............................................................................18

*United States v. Coplan*,
    703 F.3d 46 (2d Cir. 2012)........................................................................ *passim*

*United States v. Curran*,
    20 F.3d 560 (3d Cir. 1994)...........................................................................29, 30

*United States v. Davis*,
    863 F.3d 894 (D.C. Cir. 2017) .............................................................................31

*United States v. Goldberg*,
    105 F.3d 770 (1st Cir. 1997)..........................................................................11, 35, 40

*United States v. Haga*,
    821 F.2d 1036 (5th Cir. 1987) ..............................................................................13

*United States v. Hillie*,
    227 F. Supp. 3d 57 (D.D.C. 2017) .........................................................................8

*United States v. Hirsch*,
    100 U.S. 33 (1879)................................................................................................44

*United States v. Hopkins*,
    916 F.2d 207 (5th Cir. 1990) ...............................................................................24

*United States v. Hsia*,
    24 F. Supp. 2d 14 (D.D.C. 1998) ....................................................................24, 32

*United States v. Hsia*,
    176 F.3d 517 (D.C. Cir. 1999) ...........................................................24, 31, 32, 33

*United States v. Jackson*,
    33 F.3d 866 (7th Cir. 1994) ...........................................................................32, 33

*United States v. Kanchanalak*,
    41 F. Supp.2d 1 (D.D.C. 1999)........................................................................24, 25, 33

*United States v. Khalife*,
    106 F.3d 1300 (6th Cir. 1997) .......................................................................32, 33

*United States v. Klein*,
    247 F.2d 908 (2d Cir. 1957)................................................................................10

*United States v. Lanier,*
520 U.S. 259 (1997)................................................................................12, 41

*United States v. Licciardi,*
30 F.3d 1127 (9th Cir. 1994) ........................................................ *passim*

*United States v. Mariani,*
212 F. Supp. 2d 361 (M.D. Pa. 2002) ..................................................24

*United States v. Mathis-Gardner,*
110 F. Supp. 3d 91 (D.D.C. 2015)........................................................24

*United States v. McDaniel,*
538 F.2d 408 (D.C. Cir. 1976) ............................................................10

*United States v. Mendez,*
528 F.3d 811 (2008)............................................................................36

*United States v. Minarik,*
875 F.2d 1186 (6th Cir. 1989) ............................................11, 13, 26, 34

*United States v. Monteiro,*
871 F.2d 204 (1st Cir. 1989)..........................................................27, 28

*United States v. Moore,*
612 F.2d 698, 702-04 (D.C. Cir. 2010), *aff'd,* 568 U.S. 1104 (2012) ...............1, 17, 24, 27, 31

*United States v. Morosco,*
822 F.3d 1 (1st Cir. 2016)..........................................................18, 27, 28

*United States v. Nersesian,*
824 F.2d 1294 (2d Cir. 1987)..............................................................30

*United States v. Pappathanasi,*
383 F. Supp. 2d 289 (D. Mass. 2005) ..............................................36, 37

*United States v. Rosenblatt,*
554 F.2d 36 (2d Cir. 1977)..................................................................11

*United States v. Shoup,*
608 F.2d 950 (3d Cir. 1979)................................................................11

*United States v. Stevens,*
559 U.S. 460 (2010)............................................................................41

*United States v. Sunia,*
643 F. Supp. 2d 51 (D.D.C. 2009) ................................................7, 8, 14

*United States v. Thomas,*
 864 F.2d 188 (D.C. Cir. 1988) ............................................................42

*United States v. Trie,*
 21 F. Supp.2d 7 (D.D.C. 1998) ...............................................24, 25, 28

*United States v. Turner,*
 No. 06-0026, 2006 WL 1980252 (D.D.C. July 12, 2006) ......................24

*United States v. U.S. Gypsum Co.,*
 438 U.S. 422 (1978) .............................................................................13

*United States v. Wilson*
 160 F.3d 732 (D.C. Cir. 1998) .............................................................18

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar,*
 136 S. Ct. 1989 (2016) .........................................................................44

*Williams v. United States,*
 458 U.S. 279 (1982) .............................................................................14

*Wisconsin Cent. Ltd. v. United States,*
 138 S. Ct. 2067 (2018) ...................................................................26, 34

*Yates v. United States,*
 135 S. Ct. 1074 (2015) ...................................................................12, 40

**Statutes**

18 U.S.C. § 371 ..................................................................... *passim*

18 U.S.C. § 2 .................................................................................29, 31

18 U.S.C. § 1001 .....................................................................1, 23, 29, 31

22 U.S.C. § 611(c) ...............................................................................7

22 U.S.C. § 612(a) ...............................................................................7

22 U.S.C. § 618(a) ..............................................................................25

52 U.S.C. § 30104(f) .............................................................................7

52 U.S.C. § 30109(d) ...........................................................................25

52 U.S.C. § 30121(a)(1)(C) .....................................................................7

**Rules**

Fed. R. Crim. Proc. 12(b)(1) ...........................................................................................7

Fed. R. Crim. Proc. 12(b)(3)(B)(iii) & (v) .....................................................................7

**Regulations**

11 C.F.R. § 100.29(c)(1) ................................................................................................7

**Other Authorities**

Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405
     (1959), *available at*
     https://heinonline.org/HOL/Page?handle=hein.journals/ylr68&div=32&id=&p
     age=&collection=journals ...........................................................................................9

Covington, Election and Political Law, *A Review of Pending FARA Reform Bills* 1
     (Mar. 15, 2018), available at https://www.cov.com/-
     /media/files/corporate/publications/2018/03/a_review_of_pending_fara_refor
     m_bills.pdf .................................................................................................................20

John F. Kennedy, *Remarks on the 20th Anniversary of the Voice of America*,
     Department of Health, Education, and Welfare, Feb. 26, 1962, *available at*
     http://www.presidency.ucsb.edu/ws/?pid=9075. .........................................................3

U.S. Dep't of Justice, *Federal Prosecution of Election Offenses* (May 2007 7th Ed.),
     *available at*
     https://www.justice.gov/sites/default/files/criminal/legacy/2013/09/30/
     electbook-rvs0807.pdf ..............................................................................................1, 23

U.S. Dep't of Justice, *Federal Prosecution of Election Offenses* (Dec. 2017 8th
     Ed.), *available at* https://www.justice.gov/criminal/file/1029066/download ....................1, 23

I.     **PRELIMINARY STATEMENT**

"[W]e caution the government that seeking criminal penalties for violations of [laws regulating foreign nationals' political contributions or expenditures] will require proof of defendant's knowledge of the law." *Bluman v. Fed. Election Comm'n*, 800 F.Supp.2d 281, 292 (D.D.C. 2011) (citing *United States v. Moore*, 612 F.2d 698, 702–04 (D.C. Cir. 2010) (Kavanaugh, J., concurring)), *aff'd,* 568 U.S. 1104 (2012). "There are many aliens in this country who no doubt are unaware of the statutory ban on foreign *expenditures . . . .*" *Id.*

"[P]rosecution under [the Federal Election Commission Act's ("FECA")] criminal provision requires proof that the defendant was aware that his or her conduct was generally unlawful. When the conduct is charged under Section 371, however, the proof must also show that the defendant intended to disrupt and impede the lawful functioning of the FEC. Indeed, the crux of a Section 371 FECA case is intent on the part of the defendant to thwart the FEC. That is a higher factual burden than is required under 18 U.S.C. § 1001, and is arguably a greater factual burden than is required by Section 30109(d)." U.S. Dep't of Justice, *Federal Prosecution of Election Offenses* at 163 (Dec. 2017 8th Ed.), *available at* https://www.justice.gov/criminal/file/1029066/download.[1]

Faced with this clear and unambiguous case law and guidance, the Special Counsel's one-count indictment in this case against Concord Management and Consulting LLC ("Concord") for conspiracy to defraud under 18 U.S.C. § 371 was drafted in an attempt to plead around the massive burden on the Special Counsel to charge and prove, among other things, that: (1) Concord was aware of the existence of the Federal Election Commission ("FEC") and knew that a complex and technical scheme of U.S. election laws prohibited certain specific expenditures for political purposes by foreign nationals (while allowing others); (2) the FEC administered these complex and technical prohibitions by requiring reports to be filed in certain instances; (3) Concord or some other person or entity was required in this case to file some type of report; (4) in making any expenditures prohibited by the FEC, Concord intended to thwart the

---

[1]     Substantially similar language first appeared in the DOJ Manual over 10 years ago. *See* Ex. A, excerpts from U.S. Dep't of Justice, *Federal Prosecution of Election Offenses* at 188 (May 2007 7th Ed.), *available at* https://www.justice.gov/sites/default/files/criminal/legacy /2013/ 09/30/electbook-rvs0807.pdf.

FEC by failing itself—or causing another to fail—to file such a report; and (5) Concord engaged in such conduct willfully.  The Indictment contains no such allegations with respect to Concord.

Instead, this Indictment is unprecedented; never before has a foreign corporation such as Concord, with no presence in the United States, been charged criminally for allegedly funding the political speech of individuals on social media, at rallies, or in advertisements during a U.S. presidential election campaign.  Furthermore, Title 18 § 371's defraud prong has never been used to charge a conspiracy to interfere with the government function of administering an election where political speech, as opposed to political contributions, is the target of the indictment.  In short, the Special Counsel found a set of alleged facts for which there is no crime.  Instead of conceding that truth, however, the Special Counsel attempts to create a make-believe crime that is in fact no crime at all, much less one with the requisite *mens rea* of willfulness.

To begin with, there is no federal law prohibiting "interference" in a U.S. election.  *See* Indictment ("Ind.") ¶¶ 2-3, 7 (ECF No. 1).  Nor is there any federal law making it a crime to conspire to do so.  Just as critically, there is no federal election law or regulation prohibiting any person or group of persons, whether American or foreign, acting independently of a political candidate, from conveying political speech on social media, at political rallies, or in advertisements available for viewing in the United States.  Further, there is no law or regulation requiring that any such speech be accurate or truthful or that any U.S. or foreign person truthfully or accurately identify herself or himself when engaging in such speech—when it comes to political speech, one is free to pretend to be whomever he or she wants to be and to say whatever he or she wants to say.  *See United States v. Alvarez*, 567 U.S. 709, 722 (2012) (holding statute prohibiting false statements about the Medal of Honor to be unconstitutional).    The Special

Counsel concedes these facts by the absence in the Indictment of any statutory or regulatory citations other than § 371 itself.

Faced with the reality that no criminal offense covered the alleged conduct, the Special Counsel crafted an Indictment accusing Concord of "recommend[ing] personnel" and "overs[eeing]" activities, receiving budgets listing certain expenditures for advertisements promoting "social media groups," and providing "funding" from unspecified sources and for unspecified purposes. Ind. ¶¶ 11, 35. While the Special Counsel claims that this alleged conduct somehow interferes with the lawful functions of a United States agency in violation of the defraud prong of § 371, as noted above, no other statute or regulation is cited in Count One of the Indictment at all, let alone one that criminalizes this alleged conduct or prohibits the political speech that resulted from it. And the Special Counsel further maintains that Concord is responsible for this contrived crime despite the lack of any allegations that Concord had any knowledge of any FEC, Department of Justice ("DOJ"), or Department of State ("DOS") statutes or regulations. The lack of specificity in a charge is particularly fatal where, as here, protected political speech is implicated, because in this country we have long believed that:

> "We are not afraid to entrust the American people with unpleasant facts, foreign ideas, alien philosophies, and competitive values. For a nation that is afraid to let its people judge the truth and falsehood in an open market is a nation that is afraid of its people."[2]

In this case, where the Indictment alleges a conspiracy to defraud that purportedly interferes with the complex and technical statutory schemes that regulate U.S. elections and makes a felony out of a foreign national's alleged funding of conduct that includes protected

---

[2] John F. Kennedy, *Remarks on the 20th Anniversary of the Voice of America,* Department of Health, Education, and Welfare, Feb. 26, 1962, *available at* http://www.presidency.ucsb.edu/ws/?pid=9075.

speech, the Special Counsel was required to allege that Concord knew that its funding constituted a violation of law and intended that its conduct defraud the FEC and DOJ.[3]

But those allegations are absent and what remains is an unconstitutionally vague conspiracy charge that will not support an exercise of prosecutorial authority. "Today's vague laws . . . can invite the exercise of arbitrary power . . . by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223–24 (2018) (Gorsuch, J., concurring in part and concurring in the judgment). Concord respectfully requests that this Court check the arbitrary exercise of that power here and dismiss this defective Indictment.

## II. THE INDICTMENT MAKES NO SPECIFIC INTENT ALLEGATIONS AS TO CONCORD WITH RESPECT TO ANY STATUTE OR REGULATION

The Indictment begins with broad and acontextual statements that the United States, through its departments and agencies, regulates the activities of foreign individuals and entities to counteract "foreign influence" on U.S. elections. Ind. ¶ 1. It more particularly states that U.S. law bans foreign nationals from making certain expenditures or financial disbursements for the purpose of influencing federal elections, and further bars agents of any foreign entity from engaging in political activities within the U.S. without first registering with the Attorney General. *Id*. It also notes that the law requires certain foreign nationals seeking entry into the U.S. to obtain a visa by providing truthful information to the government. *Id*. The FEC, the DOJ, and the DOS are alleged to be charged with enforcing these laws (*id.*); the FEC with

---

[3]    The Indictment states that certain co-defendants obtained visas to enter the U.S. by claiming they were traveling for pleasure, and thus defrauded the DOS. *See* Ind. ¶ 30. But Concord is not alleged to have known anything about the visa application process or the representations made by the co-defendants.

respect to the reporting of expenditures (*id.* ¶ 25), the DOJ with respect to registrations with the Attorney General (*id.* ¶ 26), and the DOS with respect to visas (*id.* ¶ 27).

After these precatory observations, the Indictment describes defendant Internet Research Agency, labelled as "the Organization," which allegedly is engaged in operations "to interfere with elections and political processes." *Id.* ¶ 2. It then lists "Individuals" as defendants who allegedly work for the Organization in carrying out its operations. *Id.* These listed individual defendants are alleged to have "knowingly and intentionally conspired with each other . . . to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016." *Id.*

Concord is not named in the first two paragraphs. Rather, the first allegations regarding Concord appear in the next paragraph, where Yevgeny Viktorovich Prigozhin, and companies "he controlled, including Defendants Concord Management and Consulting LLC[,]" are alleged to have spent funds "to further the Organizations operations and to pay the other Defendants . . ." for their work in the Organization. *Id.* ¶ 3.

Concord is next mentioned in the Indictment's first count, labelled "Conspiracy to Defraud the United States." In one paragraph, Concord is designated as the Organization's "primary source of funding for its interference operations." It is also alleged that Concord "controlled funding, recommended personnel, and oversaw" the Organization's activities "through reporting and interaction" with Organization management. *Id.* at ¶ 11. No specificity is provided, however, on what any of these actions actually relate to or what Concord knew or believed in undertaking them.

The Indictment goes on to describe the "Manner and Means" of the alleged conspiracy and its "Overt Acts," none of which mention Concord, except that it purportedly was aware that "Organization-controlled social media groups" were spending money on social media sites. *Id.* ¶ 35. All other allegations are made generally as to all "Defendants," including those concerning tracking social media behavior of persons in the United States, creating hundreds of social media accounts that were used to develop fictitious U.S. personas into leaders of public opinion, concealing the identities of the social media and other web posters, and using the fictitious accounts and persons to make political advertisements and posts to influence the 2016 U.S. presidential election. *Id.* ¶¶ 4, 6, 28, 29, 32, 48, and 52.

## III.   THE INDICTMENT PROVIDES NO ACTUAL NOTICE OF ANY ARGUABLY APPLICABLE STATUTES AND REGULATIONS.

As far as arguably applicable statutes or regulations are concerned, the Indictment provides no actual notice of the complex statutes and regulations upon which it is based. Count One lacks any citation to any statute or regulation other than 18 U.S.C. § 371. The Indictment does not allege that any of the Defendants, including Concord, made any unlawful campaign "contributions" or "donations." Rather, the Indictment alleges generally that foreign nationals are prohibited from "making certain expenditures or financial disbursements for the purpose of influencing federal elections." Ind. ¶¶ 1, 7. It also alleges that foreign nationals are prohibited from making "any contributions, expenditures, independent expenditures, or disbursements for electioneering communications," and that persons who make "certain independent expenditures" are required to report those expenditures to the FEC. *Id.* ¶ 25. Once again, no specificity is

provided on what the "certain independent expenditures" might be.  Nor is Concord or any other

Defendant alleged to have made an unlawful expenditure.[4]

The Indictment further alleges that U.S. law prohibits "any foreign entity from engaging

in political activities within the United States" without registering with the Attorney General.

Ind. ¶¶ 1, 7 26.  But only "foreign agents" of "foreign principals" are required to register under

the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 611(c), 612(a), and the Indictment

does not allege that Concord fits either definition—indeed, it is impossible to determine who the

Special Counsel claims failed to register.[5]

## IV.   LEGAL STANDARDS

### A.   Motion To Dismiss Indictment

"A party may raise by pretrial motion any defense, objection, or request that the court can

determine without a trial on the merits."  Fed. R. Crim. Proc. 12(b)(1).  This includes "a defect in

the indictment or information" such as "lack of specificity" and "failure to state an offense."  *Id.*

12(b)(3)(B)(iii) & (v).  "In ruling on a motion to dismiss for failure to state an offense, a district

court is limited to reviewing the *face* of the indictment and, more specifically, the *language used*

to charge the crimes."  *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal

quotations and citation omitted).

---

[4]   While prohibitions do exist at 52 U.S.C. §§ 30121(a)(1)(C) and 30104(f) regarding certain funding, foreign nationals are not barred from issue advocacy through political speech such as what is described in the Indictment—they are only precluded from willfully making expenditures that expressly advocate the election or defeat of a particular candidate.  *See Bluman*, 800 F. Supp. 2d at 284, 292.  Furthermore, FEC regulations expressly carve out from the definition of "electioneering communications" an exemption for communications—like those allegedly at issue here—that are transmitted over the internet.  *See* 11 C.F.R. § 100.29(c)(1).

[5]   If Concord is a foreign principal, it was not required to register and cannot be charged with conspiracy to fail to register.  *See* 22 U.S.C. §§ 611(c), 612(a); *Gebardi v. United States*, 287 U.S. 112, 123 (1932).  And if Concord is an "agent" of a foreign principal, the Indictment fails to allege who the foreign principal actually was.

A "'valid indictment must: (1) allege the essential facts constituting the offense[,] (2) allege each element of the offense, so that fair notice is provided[,] and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense.'" *Sunia*, 643 F. Supp. 2d at 77 (citations and emphasis omitted). "[T]he first requirement … has its origins in the Grand Jury Clause," while the "second and third requirements … derive from the notice requirement of the Sixth Amendment and the Double Jeopardy clause of the Fifth Amendment, respectively." *Id.* at 77–78 (citation omitted). As this Court recently explained:

> No less an authority than the Supreme Court of the United States has repeatedly explained that careful drafting in the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury[,] and that [t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, in case any other proceedings are taken against [the defendant] for a similar offen[s]e, ... the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction[,].

*United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017) (internal quotations and citations omitted). Thus, "'[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant' of the 'protection which the guaranty of the intervention of a grand jury was designed to secure[,] [f]or a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.'" *Sunia*, 643 F. Supp. 2d at 77 (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)).

"When testing the sufficiency of the charges in an indictment, 'the indictment must be viewed as a whole and the allegations [therein] must be accepted as true at this stage of the proceedings." *Hillie,* 227 F. Supp. 3d at 71 (citation omitted). "The key question is whether the allegations in the indictment, if proven, are sufficient to permit a jury to conclude that the defendant committed the criminal offense as charged." *Id.* (citation omitted). "[A]n indictment

not framed to apprise the defendants with reasonable certainty[ ] of the nature of the accusation against him is defective, although it may follow the language of the statute." *Id.* (internal quotations and citations omitted).

### B.    Conspiracy To Defraud

The Indictment does not exist in a vacuum.  It involves a purported conspiracy to defraud under § 371 that allegedly implicates federal elections and political speech.  As discussed in more detail below, in these circumstances, extra care must be exercised in analyzing the Indictment's allegations to ensure that only unlawful conduct driven by criminal intent is charged and punished.  And where, as here, complex and technical regulatory schemes are implicated and free speech considerations also are in play, even greater rigor is called for in examining the Indictment's charges and in requiring the proper level of *mens rea* to support a felony offense.

Conspiracy is an "'elastic, sprawling and pervasive offense,' whose development exemplifies, in Judge Cardozo's phrase, the 'tendency of a principle to expand itself to the limit of its logic'—and perhaps beyond." *United States v. Borelli*, 336 F.2d 376, 380 (2d Cir. 1964) (Friendly, J.) (quoting *Krulewitch v. United States*, 336 U.S. 440, 445 (1949) (Jackson, J. concurring)).   Indeed, the terms "conspiracy" and "defraud," when used together, have a "peculiar susceptibility to a kind of tactical manipulation which shields from view very real infringements on basic values of our criminal law."   Abraham S. Goldstein, *Conspiracy to Defraud the United States*, 68 Yale L.J. 405, 409 (1959) *available at* https://heinonline.org/HOL/Page?handle=hein.journals/ylr68&div=32&id=&page=&collection=journals; *see also id.* at 461–63 ("defraud" has been subject to "an unprecedented degree of judicial expansion" rendering conspiracy to defraud the United States "a Kafkaesque crime").   Courts must therefore be closely attuned to the government's "attempts to broaden the already

pervasive and wide-sweeping nets of conspiracy prosecutions." *Grunewald v. United States*, 353 U.S. 391, 404 (1957). And the Supreme Court has explicitly "warned" that such efforts to expand the conspiracy net should be met with "disfavor." *Id.*

There is no better example of this dangerous expansion than the application of § 371's defraud clause—as in this case—to judicially created "*Klein*" conspiracies aimed at using dishonest means to interfere with "lawful governmental functions." *See United States v. Klein*, 247 F.2d 908, 916 (2d Cir. 1957). In that 60-plus-year-old ruling, the Second Circuit—following the Supreme Court's decision in *Hammerschmidt v. United States*, 265 U.S. 182 (1924)—held that § 371 criminalizes conspiracies not only directed at "cheating … the government out of property or money" but also those aimed at "interfer[ing] with or obstruct[ing] one of [the government's] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *Id.* at 916 (quoting *Hammerschmidt*, 265 U.S. at 188).[6]

With that judicial gloss, § 371's defraud clause has proven to be "a very broad provision, which subjects a wide range of activity to potential criminal penalties." *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993). It thus is no surprise that § 371 today remains the same "darling of the modern prosecutor's nursery" it was more than 90 years ago. *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925) (L. Hand, J.). It is, however, "regrettable that prosecutors should recurrently push to expand the limits of [§ 371] in order to have it encompass more and more activities which may be deeply offensive or immoral or contrary to state law but which Congress has not made federal crimes." *United States v. Licciardi*, 30 F.3d 1127, 1133

---

[6]   The D.C. Circuit has never endorsed *Klein* and has only cited it once for a single statement of law regarding double-jeopardy principles in the context of a multi-count indictment—not for its § 371 defraud-clause analysis or holding. *See United States v. McDaniel*, 538 F.2d 408, 414 (D.C. Cir. 1976).

(9th Cir. 1994). Consequently, the usual "'danger [of injustice] inherent in a criminal conspiracy charge'" is especially heightened for a *Klein* conspiracy charge because the "vagueness of the concept of interfering with a proper government function" carries with it "a special capacity for abuse . . . ." *United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997) (quoting *Dennis v. United States*, 384 U.S. 855, 860 (1963)); *see also United States v. Barker Steel Co., Inc.*, 985 F.2d 1136, 1137 (1st Cir. 1993) (Breyer, C.J., concurring in denial of rehearing *en banc*) (expressing concern with broad interpretations of § 371 that would "permit prosecutors to cast their criminal net too wide").

In particular, *Klein* conspiracy cases raise a precipitous "danger that prosecutors may use [§ 371] to punish activity not properly within the ambit of the federal criminal sanction." *United States v. Shoup*, 608 F.2d 950, 955–956 (3d Cir. 1979); *see also United States v. Minarik*, 875 F.2d 1186, 1191 (6th Cir. 1989) (observing that the "problem" of "loose interpretations of criminal fraud statutes which allow the fact situation to define the crime . . . is particularly acute under the 'defraud' clause of § 371 because *Hammerschmidt* stripped the word 'defraud' of its common law  roots . . . ."); *United States v. Rosenblatt*, 554 F.2d 36, 41 n.6 (2d Cir. 1977) (noting the "[t]he potential for abuse in allowing the government to manipulate prosecution by easy access to the conspiracy-to-defraud clause is clear"). Therefore, "indictments under the broad language of the general conspiracy statute must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." *Dennis*, 384 U.S. at 860 (citations omitted); *see also Caldwell*, 989 F.2d at 1061 (cautioning against reading § 371's defraud clause to "forbid all things that obstruct the government, or require citizens to do all those things that could make the government's job easier").

This cautionary approach to § 371 defraud conspiracies aligns with basic constitutional requirements of fair notice.  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Specifically, "'[t]he prohibition of vagueness in criminal statutes[]' . . . is an 'essential' of due process,  required by both 'ordinary notions of fair play and the settled rules of law.'"  *Dimaya*, 138 S. Ct. at 1212 (2018) (citations omitted); *see also Fox Television Stations*, 567 U.S. at 253 ("This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.") (citation omitted).  It "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes" and "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges."  *Dimaya*, 138 S. Ct. at 1212 (citations omitted).

Relatedly, the courts effectuate these constitutionally guaranteed fair notice principles through the "rule of lenity," "a sort of 'junior version of the vagueness doctrine,'" which directs that criminal statutes be applied "only to conduct clearly covered."  *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citations omitted); *see also Yates v. United States*, 135 S. Ct. 1074, 1088 (2015) (plurality op.) (invoking the rule that ambiguity should be resolved in favor of lenity). Like the void-for-vagueness doctrine, "the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."  *Liparota v. United States*, 471 U.S. 419, 427 (1985).  And the rule goes hand in hand with the need for a *mens rea* requirement.  *See id.* at 427 ("[R]equiring *mens rea* is in keeping with our longstanding

recognition of the principle that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'") (citations omitted); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978) (noting Court's previous reliance on the rule of lenity as a basis for "read[ing] a state-of-mind component into" a criminal statute).

Section 371 defraud conspiracy cases raise manifest concerns that bring the rule of lenity to bear.  As the Supreme Court noted in its most recent treatment of § 371's defraud clause, "ambiguity concerning the ambit" of the clause "should be resolved in favor of lenity." *Tanner v. United States*, 483 U.S. 107, 131 (1987).  The *Tanner* Court "warned against loose interpretations of criminal fraud statutes which allow the fact situation to define the crime." *Minarik*, 875 F.2d at 1191; *see also United States v. Haga*, 821 F.2d 1036, 1040 n.17 (5th Cir. 1987) (reversing defraud conspiracy conviction where charge would have required "imparting such infinite elasticity to the second branch of section 371 [so as to] fl[y] in the face of rules governing the construction of penal statutes").

These overarching constitutional considerations are all in play as it relates to the Indictment before this Court.  Concord is charged as a co-conspirator for a contrived crime not specifically defined in any statute, without notice and under a standard known only to the Special Counsel.  Our Constitution will not tolerate a felony charge like this one; nor should this Court.

## V.     ARGUMENT

### A.     The Indictment Against Concord Should Be Dismissed Because It Fails To Allege The Crime Of A Defraud Conspiracy That Interferes With A Lawful Governmental Function Under § 371.

The Special Counsel's single charged count against Concord arises under § 371's conspiracy to defraud provision and its judicially created proscription against such conspiracies that "interfere with lawful governmental functions."  But the fatal structural flaw in the Indictment here is that it provides no indication of what is meant—under statute or regulation—

by a "lawful governmental function" as it relates to the FEC, the DOJ, or the FECA and FARA statutes referenced obliquely in the Indictment's allegations.

What falls within a "lawful function," of course, cannot exist only in the abstract or be locked up in the fertile mind of the Special Counsel, shrouded in secrecy.  It must be discernable to the outside world at the time a criminal indictment is handed down.  *See Dimaya*, 138 S. Ct. at 1212 (due process "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes") (citations omitted); *Williams v. United States*, 458 U.S. 279, 286 (1982) (courts are "reluctant to base an expansive reading [of criminal statutes] on inferences drawn from subjective and variable 'understandings'").[7]  To pass muster here, therefore, the Indictment would have to specify just how it is Concord interfered with a lawful governmental function that is embodied in a particular provision of the FECA or FARA and subject to enforcement by federal agencies.  That cannot be a matter of guesswork or speculation.  This Court must be able to say with certainty that the Indictment's allegations spell out with particularity how and why Concord has violated the law.  *See Sunia*, 643 F. Supp. 2d at 80 (indictment cannot stand where court "would have to 'guess as to what was in the minds of the grand jury at the time they returned the indictment,' . . . . [A]n exercise [that] is not permitted by the Fifth Amendment'") (citations omitted).  There is no such certainty in this case.

As for the statutes and regulations that conceivably regulate a foreign national's participation in a U.S. election and that are referred to but not cited in the Indictment, they are

---

[7]   Just as surely, the Special Counsel's expansive construction of "lawful function"—secret or otherwise—is entitled to no deference from this Court.  *See Crandon v. United States*, 494 U.S. 152, 177 (1990) (Scalia, J., concurring) (while the DOJ "has a very specific responsibility to determine for itself what this [criminal] statute means, in order to decide when to prosecute[,] we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference").

narrowly drawn and there is no indication that Concord could violate them, actually violated them, knew they were being violated, agreed with anyone to help violate them, or even knew what the statutes and regulations were or what they required or proscribed. *See In re Sealed Case*, 223 F.3d 775, 779 (D.C. Cir. 2000) (explaining that "there can be no finding of conspiracy" to commit an offense or defraud under § 371 based on election-law violations where the underlying wrongful "transaction described by the government does not violate FECA"). Concord is, in short, accused of being a co-conspirator in a felonious attempt to obstruct the functioning of a federal election without any identified or recognized statutory offense or any allegation of conscious criminal intent directed at the United States.  And, of course, Concord could not be guilty of felony conspiracy based strictly on ***lawful*** conduct, whether or not that lawful conduct was concealed from the government. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.") (citation omitted).

Turning to the Indictment's specific allegations as to Concord, there is more guesswork and speculation.  There is nothing in any statute or regulation promulgated by the FEC or DOJ that makes a felony out of providing funding to a foreign "Organization" for unspecified purposes related to unspecified elections or for "recommend[ing] personnel" to that Organization or for "overs[eeing] its activities" or reviewing budgets concerning unspecified advertising expenditures. Ind. ¶ 11, 35.  None of that, without more, is criminal conduct, much less criminal conduct that interferes with the lawful function of administering a U.S. election.

Undeterred, the Special Counsel asserts that the Indictment charges Concord with interference with the FEC or DOJ "to make determination[s] one way or the other." *See* <u>Ex. B</u>, Excerpted Pages of the Transcript of June 15, 2018 Hearing ("Hr'g Tr.") at 8:18–19 (ECF No.

41).  But the Indictment offers no elaboration of what any such determinations would be about or what is "one way" as opposed to the "other."  In short, the Indictment does not identify the "governmental function" at issue.  It would be preposterous to charge a felony with that sort of declaration divorced from any regulatory function at all.  Still undeterred, as the Special Counsel would have it, for a valid § 371 defraud conspiracy, he need only prove that Concord had general knowledge that a "regulatory apparatus . . . designed to prevent foreign influence from operating in a covert undisclosed manner that can thwart the political system . . . exists, it's out there."  *Id.* 10:21–22.  But there is no certainty here either.

These hopelessly vague assertions the Special Counsel makes about knowledge concerning the "regulatory apparatus" are not alleged anywhere in the Indictment.  More fundamentally, bare "covert" "thwart[ing]" of the "regulatory apparatus" governing a U.S. election will not support a § 371 defraud conspiracy.  In the absence of allegations specifically showing that Concord intended to interfere, or entered a conspiracy to interfere, with a lawful function relating to a U.S. election in a deceitful and dishonest manner, there is no basis for a § 371 defraud conspiracy charge whether elections were interfered with or not.  *See, e.g., Licciardi*, 30 F.3d at 1132 (finding that the government failed to prove the *mens rea* required for a § 371 defraud conviction when it made no effort to show the defendant conspired to cause false information be provided to a government agency, noting "[t]hat the incidental effects of [defendant's] actions would have been to impair the functions of the [agency] does not confer upon him the *mens rea* of accomplishing that object."); *Caldwell*, 989 F.2d at 1060–61 (the defendant has to engage in deceitful and dishonest activity or agree to conspire using deceitful and dishonest activity to impair a government function; impairment alone is not enough—it is not what makes the conduct wrongful).

There is, in short, a yawning gap between the specific allegations in this Indictment and what otherwise is necessary to charge Concord with a felony. The Special Counsel is purporting to charge Concord in the absence of any intent and for undertaking a conspiracy that is not prohibited by any identified regulatory function carried into effect by the FEC or DOJ under some specific statute. There is, however, no basis to charge anyone, including a foreign national, as a co-conspirator without a wrongful intent to engage in unlawful conduct specified in some statutory or regulatory scheme. Yet that is exactly what the Special Counsel is attempting here, evoking Judge Kavanaugh's admonition, in speaking for this Court in *Bluman*:

> [W]e caution the government that seeking criminal penalties for violations of [law regulating foreign nationals' political contributions or expenditures] will require proof of defendant's knowledge of the law. There are many aliens in this country who no doubt are unaware of the statutory ban on foreign *expenditures* . . . .

*Bluman*, 800 F. Supp. 2d at 292 (Kavanaugh, J.) (citing *Moore*, 612 F.3d at 702–04).

Simply put, whatever largess might exist in reading an indictment, it does not give the government, through a special counsel or otherwise, the right to pursue a foreign national for allegedly criminal conduct residing only in the mind of the drafter of the charge. The vague allegations aimed at Concord in this Indictment will not sustain a felony charge under § 371's defraud prong and, as a result, the Indictment must be dismissed.

### B. The Indictment Against Concord Should Be Dismissed Because It Fails To Allege The Requisite *Mens Rea* To Support The § 371 Conspiracy To Defraud Charge Against Concord.

The specific allegations in the Indictment also fail to allege a § 371 defraud conspiracy charge for an independent but equally fundamental reason—it fails to allege the required criminal intent. The Special Counsel has asserted, in writing and orally, that his Indictment under § 371, despite the DOJ's prosecutorial guidelines, need not charge Concord with willful conduct and that his Indictment does not do so. In his view, the needed unlawful intent is

something short of that, although there is no assurance on what it is.[8]  But he is wrong as a matter

of law.

Section 371 does not, by its terms, contain a specific *mens rea* requirement.  But it is well

settled that "'wrongdoing must be conscious to be criminal,'" and the Supreme Court thus

applies a "rule of construction" interpreting "'criminal statutes to include broadly applicable

scienter requirements, even where the statute by its terms does not contain them.'"  *Elonis v.*

*United States*, 135 S. Ct. 2001, 2003 (2015) (citations omitted).   In the context of conspiracy

generally, the law imposes a heightened *mens rea* standard of specific intent.  As the D.C. Circuit

has explained, the "'law of inchoate offenses such as attempt and conspiracy[]'" requires a

"'heightened mental state [which] separates criminality itself from otherwise innocuous

behavior.'"  *United States v. Childress*, 58 F.3d 693, 707 (D.C. Cir. 1995) (quoting *United States*

*v. Bailey*, 444 U.S. 394, 405 (1980)).   Thus, "conspiracy is a 'specific intent' crime[]" that, at a

minimum, "requires proof of specific intent to . . . advance or further the unlawful object of the

conspiracy.'"  *Id.* at 707–08 (citation omitted); *see also United States v. Wilson*, 160 F.3d 732,

737 (D.C. Cir. 1998) (conspiracy requires "'an agreement . . . to commit a specific offense, " and

"'knowing[] participat[ion] in  the conspiracy with the intent to commit the offense'") (citation

and omitted).  Moreover, where, as here, a § 371 *Klein* conspiracy alleges interference with the

---

[8]     At a June 15, 2018 hearing on Concord's Motion for *In Camera* Inspection of Legal
Instructions to the Grand Jury (ECF No. 11), counsel for the Special Counsel argued that the
DOJ Guidelines are "a little cryptic and ambiguous" but are "susceptible to [a] reading" that
willfulness is an element of a § 371 charge. Hr'g Tr. 10:19–21.  He went on to state, however,
that the Guidelines' articulation of the requisite *mens rea* is "not the litigating position of the
United States," and instead pointed to a 2016 brief submitted by the DOJ to the U.S. Court of
Appeals for the First Circuit signed by the Assistant Attorney General for the Criminal Division.
Hr'g Tr. 10:21–11:8.  As best undersigned counsel can determine, that brief is the one submitted
in *United States v. Morosco*, 822 F.3d 1 (1st Cir. 2016), where the First Circuit rejected the
United States' position and approved an instruction that included willfulness. *See infra* pp. 27–
28.

enforcement of complex, reticulated statutory functions carried out through conduct implicating

First Amendment considerations, the *mens rea* specifically required is "willfulness"—a standard

that includes "knowledge of the law[s]" that define those functions.  *Bluman*, 800 F. Supp. 2d at

292.  There are no such allegations here and the Indictment must be dismissed for this reason

also.

> **1.    The Special Counsel was required—but failed—to allege that Concord acted with the requisite willful intent.**
>
> > **a.    Controlling legal principles require the Special Counsel to show that Concord acted willfully.**

As the Supreme Court has made clear, the increasing "proliferation of statutes and

regulations sometimes ma[kes] it difficult for the average citizen to know and comprehend the

extent of the duties and obligations imposed by. . . ." law.  *Cheek v. United States*, 498 U.S. 192,

199-200 (1991).  The Supreme Court thus generally requires a showing of "willfulness" in

criminal cases where complex or technical statutes are implicated.  *Id.* at 201 (in criminal tax

cases, "willfulness" requires the government "to prove that the law imposed a duty on the

defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated

that duty"); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (in criminal cash-deposit

"structuring" cases, "willfulness" requires knowledge of the legal duty and a violation of it).[9]

This heightened *mens rea* showing applies with particular force in this case.

---

[9]    In *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court declined to apply the *Cheek/Ratzlaf* definition of "willful" principally because there was no "danger of convicting individuals engaged in apparently innocent activity" since the "jury found that this petitioner knew that his conduct was unlawful" and the statute was not complex or technical—it proscribed selling firearms without a license.  *Id.* at 195.  The Court thus construed "willful" to mean that the defendant "acted with knowledge that his conduct was unlawful"—though not "that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Id.* at 193–94.  *Bryan* thus does not control here, though under any circumstances, the Special Counsel at the very least would have to meet the *Bryan* standard in this case.

Here, the Special Counsel has charged a newly conjured up election-law felony of conspiracy predicated on a highly technical web of election, campaign-finance, and foreign-agent registration laws.  "Campaign finance regulations now impose 'unique and complex rules' on" regulated parties.  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 334 (2010).  Indeed, as the D.C. Circuit's decision in *In re Sealed Case*, 223 F.3d 775 (D.C. Cir. 2000), illustrates, the FECA provisions applicable to foreign nationals are particularly arcane, leading two judges of this Court to issue rulings on those provisions later reversed by the court of appeals.

For its part, "FARA is a complex and broadly worded criminal statute. . . .  The breadth of the statute, its criminal penalties, the absence of interpretive guidance, and the growing attention paid to the 1930s era law by federal prosecutors combine to create dangerous and difficult-to-manage risks for multinational companies, lobbying firms, and public relations firms."  Covington, Election and Political Law, *A Review of Pending FARA Reform Bills* 1 (Mar. 15, 2018) available at https://www.cov.com/-/media/files/corporate/publications/2018/03/ a_review_of_pending_fara_reform_bills.pdf.  Just as "[t]here are many aliens in this country who no doubt are unaware of the statutory ban on foreign *expenditures*," *Bluman*, 800 F. Supp. 2d at 292, there are many aliens—inside this country and out—who no doubt are unaware of the complex and technical requirements of campaign-finance laws, the FECA, and the FARA.  This complexity alone supports a heightened *mens rea* standard for a foreign national who is implicated in a conspiracy that is not even based on an existing statutory requirement.

But the need for a heightened showing of willfulness is even more manifest given the extant constitutional problems raised by § 371 defraud conspiracy charges implicating core political speech.  *See Skilling v. United States*, 561 U.S. 358, 406 (2010) ("'[t]he elementary rule

is that every *reasonable construction* must be resorted to, in order to save a statute from unconstitutionality'") (citation omitted).   There is no question under the First Amendment regarding "the primary importance of speech itself to the integrity of the election process[,]" *Citizens United*, 558 U.S. at 334, especially "political" speech, which "'occupies the highest rung of the hierarchy of First Amendment values[.]'"   *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2476   (2018) (citations omitted).   Any "intrusion by the government into the debate over who should govern goes to the heart of First Amendment values." *Az. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 750 (2011).   The First Amendment also "extends equally to the right to receive information . . . ." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 386–87 (1998).   At bottom,

> [w]hen Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought.  This is unlawful.  The First Amendment confirms the freedom to think for ourselves.

*Citizens United*, 558 U.S. at 356.   "When speech is involved," moreover, "rigorous adherence to" fair notice "requirements . . . is necessary to ensure that ambiguity does not chill protected speech."  *Fox Television Stations*, 567 U.S. at 253–54; *see also Buckley v. Valeo*, 424 U.S. 1, 41 n.48 (1976) ("[V]ague laws may not only trap the innocent by not providing fair warning or foster arbitrary and discriminatory application but also operate to inhibit protected expression by inducing citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked") (citations and internal quotation marks omitted); *Campaign Legal Ctr. v. Fed. Election Comm'n*, No. 1:16–cv–00752 (TNM), 2018 WL 2739920, at *8 (D.D.C. June 7, 2018) (in the election context, "vagueness and notice concerns carry special weight, since courts must be especially vigilant to prevent the chilling of First Amendment speech").

Given the Indictment's allegations, the indiscriminate application of § 371 to Concord "risk[s] the lack of fair warning and related kinds of unfairness" that has led the Supreme Court "to 'exercise' interpretive 'restraint'" when determining the reach of a criminal statute. *Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) (citations omitted); *see also id.* at 1109 (noting that Court has "'traditionally exercised restraint in assessing the reach of a federal criminal statute'") (citation omitted); *see also Dimaya*, 138 S. Ct. at 1212; *Fox Television Stations*, 567 U.S. at 253; *supra* at Part IV.B.  A vague description of the requisite intent in a criminal case "cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials or with the need to express criminal laws in terms ordinary persons can comprehend."  *Burrage v. United States*, 571 U.S. 204, 134 S. Ct. 881, 892 (2014) (citation omitted).

The result compelled by these overarching constitutional principles with respect to a § 371 defraud conspiracy is plain enough: where an indictment purports to charge in a complex and technical regulatory environment like U.S. elections and likewise threatens to sweep in core political speech as part of the offense, the indictment must spell out how and why the targeted individual or entity knew it was violating the law.  Given the vagueness of the § 371 "*Klein*" conspiracy as charged, and the serious constitutional concerns it raises, the Special Counsel must, at a minimum, show that Concord knew what "lawful governmental functions" it was allegedly impeding or obstructing and how the relevant laws described those functions.  Still more particularly, the Special Counsel was required to allege facts in the Indictment to show that Concord knew about the relevant statutory schemes—the so-called "regulatory apparatus" referred to by the Special Counsel at the June 15, 2018 hearing—and, by dishonest and deceitful means, conspired to impede specific statutes or regulations that are a part of that apparatus and

thereby interfered with the lawful functioning of the 2016 presidential election.  *Supra* at Part V.A.

Seemingly, until this case, the government itself agreed that election-based conspiracies like the one charged here required a showing of willfulness as just described.  In its recently updated "Guidelines for Federal Prosecution of Election Offenses," the DOJ made clear that charges of conspiracy to defraud under § 371 based on election offenses require proof that the defendant "was aware that his or her conduct was generally unlawful" *and* "***must also show***" that the defendant intended to disrupt and impede the lawful functioning of the FEC."  *See* Dep't of Justice, *Federal Prosecution of Election Offenses*, 162–63 (Dec. 2017 8th Ed.) (the "DOJ Guidelines") (emphasis added).  Thus, the Guidelines require proof that the defendant intended to disrupt and impede the FEC *in addition to* willfulness, defined as the awareness of unlawfulness required for an underlying offense of FECA.

The Guidelines specifically note that this standard is "a higher factual burden than is required under 18 U.S.C. § 1001," which requires proof that a defendant act "knowingly and willfully; that is, the defendant intended to cause the recipient to record false statements and knew, generally, that making such a false statement as unlawful."  *Id.* at 162–63.  While the DOJ Guidelines were updated in December 2017, this position has remained constant for at least ten years.  *See* Ex. A, Dep't of Justice, *Federal Prosecution of Election Offenses*, 187–88 (May 2007 7th Ed.) (excerpt containing substantially similar language as the Eighth Edition). The Guidelines are, moreover, consistent with Judge Kavanaugh's opinions in *Bluman* and *Moore*. *See Bluman*, 800 F. Supp. 2d at 292 ("[W]e caution the government that seeking criminal penalties for violations of [laws regulating foreign nationals' political contributions or expenditures] will require proof of defendant's knowledge of the law."); *Moore*, 612 F.3d at 704

(Kavanaugh, J., concurring) (explaining that "the Supreme Court's precedents arguably require district courts in § 1001 cases to give a willfulness instruction that requires proof that the defendant knew his conduct was a crime").

In reviewing indictments brought by the government under § 371's conspiracy to defraud clause in the FEC context, time and again the government followed through on the DOJ Guidelines and alleged "willfulness" consistent with the Guidelines.[10]   Yet now, the Special

_____

[10]   *See, e.g.,* Ex. C, Indictment at 5, ¶ 11, *United States v. Hopkins*, 916 F.2d 207 (5th Cir. 1990) (No. 3–89–008) (charging that defendants "knowingly and willfully combined, agreed, and conspired, together and with others, both known and unknown to the Grand Jury, to [] defraud the United States, in particular the Federal Election Commission, of and concerning its right to have its business and affairs conducted free from deceit, dishonesty, unlawful impairment, and obstruction"); Ex. D, Indictment at 4, ¶ 10, *United States v. Hsia*, 24 F. Supp. 2d 63 (D.D.C. 1998), *rev'd in part, appeal dismissed in part*, 176 F.3d 517 (D.C. Cir. 1999) (No. 98–0057) (charging that defendants "did knowingly and willfully combine, conspire, confederate, and agree with and among each other and with persons known and unknown to the grand jury, to defraud the United States and, in particular, the FEC and INS, agencies of the United States, by impairing, obstructing, impeding, and defeating the FEC's and INS's lawful functions and duties, in violation of Title 18, United States Code, Section 371"); Ex. E, Indictment at 6, ¶ 18, *United States v. Mariani,* 212 F. Supp. 2d 361 (M.D. Pa. 2002) (No. 97–225) (charging that defendants "did knowingly and willfully combine, conspire, confederate and agree together and with each other. . .to defraud the United States by impairing, impeding, defeating and obstructing the lawful functions and duties of the FEC in violation of Title 18, United States Code, Section 371"); Ex. F, Indictment at 3, ¶ 7(a), *United States v. Turner*, No. 06-0026, 2006 WL 1980252 (D.D.C. July 12, 2006) (charging that defendants "did combine, conspire, confederate, agree, and have a tacit understanding to knowingly and willfully defraud the United States by impairing, impeding, defeating the lawful functions and duties of the OPM and the FEGLI program"); Ex. G, Information at 3–4, ¶¶ 6, 8–10, *United States v. Mathis-Gardner*, 110 F. Supp. 3d 91 (D.D.C. 2015) (No. 11–100) (charging that defendant "did knowingly and unlawfully combine, conspire, confederate, and agree with other persons, both known and unknown to the United States, to defraud the United States by. . . .[k]nowingly and willfully provid[ing]. . . false and fraudulent information, documents, and representations").

While the government did not specifically charge "willfulness" in its § 371 defraud charges in *United States v. Kanchanalak*, 41 F. Supp.2d 1 (D.D.C. 1999) and *United States v. Trie*, 21 F. Supp.2d 7 (D.D.C. 1998), *see infra* at pp. 28-29, the indictments in those cases both charged other counts that included willfulness, so the juries in both cases presumably were given "willfulness" instructions.  *See* Ex. H, Superseding Indictment at 24, ¶ 2, and 27, ¶ 2, *United States v. Kanchanalak* (charging substantive FECA violations and causing false statements, all of which included willfulness); Ex. I, Indictment at 28, ¶ 2, 31, ¶ 2, *United States v. Trie* (charging

(continued)

Counsel walks away from that settled departmental practice to avoid what he cannot allege or prove.

The Special Counsel likely will offer the rejoinder that Concord is trying to convert his charged defraud conspiracy under § 371 into one charged under the statute's "offense" prong because the FECA and FARA statutes that govern contributions and registration invoke a willfulness requirement.[11]   But that rejoinder is misdirected.   For one thing, to the extent these particular statutes in the relevant regulatory schemes provide for a willfulness burden of proof, that is in keeping with constitutional principles and provides further support for the burden that must overlay § 371 defraud conspiracies built on such schemes.   The existence of that statutory burden, in any event, certainly provides no reason to *lower* the bar where a defraud conspiracy is concerned and, more fundamentally, the bar cannot be lowered.

For another, if anyone is blurring the line between § 371's offense and defraud clauses, it is the Special Counsel—on the one hand, he vaguely suggests Concord has conspired to interfere with the government's administration of the FECA and FARA statutory schemes; on the other, he says he is not charging Concord with violating those schemes.   Hr'g Tr. 8:14-19.   The reason for this approach seems clear—to try to evade the willfulness standard that must be met to show violations of the FECA and FARA provisions referenced in an offense-clause conspiracy case. But allowing this would permit offense-clause cases to be routinely charged as defraud-clause cases, and Congress could not have intended to draft a criminal statute like § 371 that creates two distinct ways the criminal offense could be committed, but where one could potentially swallow up the other.   *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018) (rejecting

---

false statements and aiding and abetting, and conspiracy to obstruct justice, all of which included willfulness).

[11]   *See* 22 U.S.C. § 618(a); 52 U.S.C. § 30109(d).

government's interpretation of two distinct terms in statute that would "simply obliterate" the distinction thus "promis[ing] a graver surplusage problem of its own"); *Minarik*, 875 F.2d at 1193 (underscoring courts' "responsibility to keep that definition [of 'defraud' under § 371] from engulfing the statute itself and obliterating the carefully drawn relationship between the two clauses" in § 371).

In this case, for reasons that are as immutable as they are profound, proof of willfulness must be shown.  And, since the requisite allegations are missing from the Indictment against Concord, the Indictment as to Concord should be dismissed.

**b.**     **Existing case law supports the need for a willfulness showing here.**

No case has specifically addressed whether a willfulness *mens rea* is required in a § 371 defraud conspiracy case like this one.  But that is only because of the novelty of this Indictment. In circumstances where, as here, complex regulations are implicated against a foreign national with no presence in the United States, and the threat of punishing innocent conduct is extant, courts frequently have expressed the need for a heightened *mens rea* requirement.  And even in those cases favored by the Special Counsel in his prior briefing, which he erroneously believes serve to relax the standard for criminal intent—requiring only some vague proof that Concord knew "on some level" the existence of some unspecified "regulatory apparatus" governing foreign nationals who participate in some fashion in United States elections (Hr'g Tr. 9:17–22)— the concerns over the proof of *mens rea* are evident, just as they should be in any conspiracy case.  It is simply impossible for any person, whether a foreign national or a U.S. citizen, to have any knowledge of, let alone understand, the Special Counsel's imaginary "on some level" *mens rea* standard.  Further, none of the cases relied upon by the Special Counsel provide any reason not to impose a willfulness requirement in this case.

Starting with the cases that require a heightened *mens rea* requirement, this Court in *Bluman*, 800 F. Supp. 2d at 292, explicitly "caution[ed] the government that seeking criminal penalties for violations of [laws regulating foreign nationals' political contributions or expenditures] will require proof of defendant's knowledge of the law." *See also Moore*, 612 F.3d at 704 (Kavanaugh, J., concurring) (explaining that "the Supreme Court's precedents arguably require district courts in [18 U.S.C.] § 1001 cases to give a willfulness instruction that requires proof that the defendant knew his conduct was a crime").

The First Circuit has issued two relevant decisions on the requisite *mens rea* requirement in § 371 defraud conspiracy cases.  First, in *United States v. Monteiro*, 871 F.2d 204 (1st Cir. 1989), the court of appeals affirmed a jury instruction in a § 371 defraud-clause case based on tax offenses that required willfulness, defined as:

> [A]ct[ing] or participat[ing] voluntarily and intentionally, and with specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, to act or participate with the bad purpose either to disobey or to disregard the law.  So if a Defendant, or any other person, with an understanding of the unlawful character of a plan, knowingly encourages, advises or assists, for the purpose of furthering the undertaking or scheme, he thereby becomes a willful participant-a conspirator.

*Id.* at 208.  The instruction is consistent with the standard Concord advances here.  It requires the alleged co-conspirator to willfully and knowingly join a conspiracy that is aimed at deceitfully and dishonestly interfering with something the co-conspirator knows the law forbids.

The Special Counsel previously argued to this Court that its *mens rea* position was consistent with that of the DOJ asserted in a brief filed in *United States v. Morosco*, 822 F.3d 1 (1st Cir. 2016).  Hr'g Tr. 11:5–8.  There, the First Circuit approved an instruction in a § 371 defraud case resting on interference "with the proper operation of [a HUD] program."  *Morosco*, 822 F.3d at 20.  The court recognized that with charges related to the HUD statute—as is true in

this context—there was a danger that innocent conduct would be criminalized through undisciplined use of a § 371 defraud charge.  The court therefore approved an instruction—as it had in *Monteiro*—that included a willfulness requirement on two levels; one for joining the conspiracy and a second for interfering with and obstructing the proper operation of the HUD program with the purpose of disregarding or disobeying the law.  Importantly, the court refused to accept DOJ's argument that willfulness was not required for a § 371 defraud charge, characterizing DOJ's argument as "interesting as the government's thought may be."  *Id.* at 20–21.

By the same token, in *United States v. Trie*, even though the conspiracy to defraud count did not use the word "willful," this Court required willfulness as part of a criminal indictment under § 371 in the context of an alleged election conspiracy.  21 F. Supp. 2d 7, 15 (D.D.C. 1998).  In count one of the indictment there, the government alleged that the defendant conspired to defraud the United States under § 371 by making various fraudulent contributions without satisfying applicable reporting obligations.  *Id.* at 13.  Defendant moved to dismiss the § 371 count on grounds that the government was required to prove the defendant knew of the reporting obligations.  Based in part on the complexity of the federal election laws invoked and its concern—consistent with due process—that innocent conduct might be ensnared, the court concluded that the government was required to show the "defendant knew of the [political party] treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful."  *Id.* at 14.

The Third Circuit's decisions in *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994) and *United States v. Alston*, 77 F.3d 718 (3d Cir. 1996), likewise support a willfulness requirement in a case like this one.  In *Curran*, the Third Circuit applied the *Ratzlaf* standard in the context of a

§ 371 defraud conspiracy to interfere with the FEC.   There, the defendant was convicted of conspiring to defraud the United States under § 371 by interfering with the FEC's reporting requirements, in addition to substantive offenses of causing election campaign treasurers to submit false reports to the FEC under 18 U.S.C. §§ 2(b) and 1001.   *Curran*, 20 F.3d at 562.

The Third Circuit vacated the convictions, finding that the heighted willfulness standard in *Ratzlaf* applied because the conduct of making a contribution in the name of another is "not obviously evil or inherently bad."   *Curran*, 20 F.3d at 569 (internal quotations omitted).   Thus, the lower court's jury instruction that merely contained the word "willfully" was deficient.   *Id*. at 569–71.   Rather, a jury must find the defendant agreed to commit an unlawful act combined with intent to commit the underlying offense.   *Id*. at 571.   The court also prescribed that on remand "the instructions on intent as to the conspiracy count must track those applicable to the substantive counts."   *Id*.   The concerns that drove *Curran* to its holding on the offense prong are the same ones that drive the analysis on the defraud prong in this case.

Two years later, in *Alston,* 77 F.3d 713, the Third Circuit again applied the heightened willfulness standard to a § 371 defraud conspiracy in the context of structuring transactions.   The government argued that the § 371 defraud conspiracy charge did not require the *Ratzlaf* level of *mens rea* because the defendant was guilty of participating in a "*Klein*" conspiracy, which, it contended, does not require proof of knowledge of illegality.   *Id*. at 715, 720.   The court rejected the government's position, finding it could not discern any difference between the government's "defraud scenario" and the substantive structuring offense for which the defendant had been acquitted.   *Id*. at 720.   The court held that "to obtain a conviction under either the 'defraud' or 'offense' clauses of § 371, the government had to prove that Alston knew that his structuring activities were illegal."   *Id*. at 721.   *Alston*, like *Curran*, finds ready analogy to this case.

Finally, in *Licciardi*, 30 F.3d 1127, the defendant grape broker allegedly defrauded a wine producer and was charged under the conspiracy to defraud clause of § 371 because of the regulatory involvement of a federal agency, the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), in the wine industry. *Id.* at 1128–29.  The court applied a willfulness standard to the § 371 defraud conspiracy explaining: "It might have been easy for the government to establish that Licciardi was familiar with the federal regulations on the labelling of wine and that it was a necessary part of his plan of deceit that [the defrauded wine producer] provide information to the government that would frustrate these regulations[,]" but the government did not do so.  *Id.* at 1132[12]; *see also United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987) (holding that government had to prove in § 371 defraud-clause case that defendant "had specific knowledge of the reporting requirements and intended to cause them to be evaded") (citations omitted).  That level of familiarity likewise is precisely what is required in this case.

Nevertheless, and as noted, the Special Counsel has insisted that a § 371 conspiracy to defraud can be proved as to Concord without any evidence of willfulness—that is, without any evidence that Concord acted with a deceitful and dishonest intent to impede any specific "regulatory functions" or in knowing that those "regulatory functions" applied to United States elections.  *See* ECF No. 20 at 10-11 & n.4 (discussing cases).  But none of the cases the Special Counsel cites in his effort to water down the *mens rea* requirement are on point.  Each one, on its own facts, demands a showing of *mens rea* in a § 371 conspiracy to defraud that goes beyond a

---

[12]   The Ninth Circuit ultimately upheld the § 371 conspiracy to defraud conviction based on a second related substantive conspiracy conviction for which, the court found, there was sufficient evidence of *mens rea*.  *See Licciardi*, 30 F.3d at 1133.  No such basis exists for the § 371 defraud conspiracy charge against Concord.

vacuous claim that a defendant knew it was interfering with a lawful governmental function, labeled generically here as a "regulatory apparatus," related to a "United States election."

For example, the D.C. Circuit's decision in *United States v. Davis*, 863 F.3d 894 (D.C. Cir. 2017), does not speak to the *mens rea* issue.  The court there merely stated that the government had to show that a defendant "knowingly agreed," and there was no dispute over *mens rea*.  For another, *United States v. Hsia*, 176 F.3d 517 (D.C. Cir. 1999), likewise does not address the *mens rea* needed in this case and does not compel the conclusion that a willfulness standard is not required.   There, the government brought a six-count indictment against defendant for causing false statements to be made to the FEC in connection with political contributions—one count for conspiracy to defraud under § 371 and five substantive counts under 18 U.S.C. §§ 2 and 1001.  The district court dismissed the latter five counts but refused to dismiss the § 371 count, and the government appealed.

On appeal, the D.C. Circuit reversed the dismissal of the five substantive counts for making false statements in violation of 18 U.S.C. §§ 2 and 1001, concluding that under those provisions, "the government need not prove that Hsia knew her acts to be unlawful[.]"  *Hsia*, 176 F.3d at 522.  Rather, the court found, the government need only show that the defendant knew that the statements were false and the defendant intentionally caused the statements to be made by another.  *Id*.[13]  The court did not, however, render any substantive ruling on the § 371 count— which defendant had cross-appealed—finding instead that it lacked jurisdiction to consider it.

---

[13]   Even this finding, beside the point in this § 371 case, is on shaky ground, as Judge Kavanaugh pointed out in *Moore*, 612 F.3d at 704 (Kavanaugh, J., concurring) (noting that "*Hsia* referenced a 1994 Third Circuit opinion [*Curran*] that predated the Supreme Court's clarifying decisions in *Bryan* and later cases," and that, as a result, *Hsia*'s *mens rea* ruling may need to be reconsidered).  Judge Kavanaugh went on to say that "in a case where the issue is raised, the Supreme Court's precedents arguably require district courts in § 1001 cases to give a willfulness instruction that requires proof that the defendant knew his conduct was a crime."  *Id*.

*Id.* at 526–27.  And in fact, the underlying indictment alleged that all of the defendant's alleged violations were knowing ***and*** willful.  *See United States v. Hsia*, 24 F. Supp. 2d 14, 20–21 (D.D.C. 1998); *see also* Ex. D, *Hsia* Indictment, *supra* note 10 at 4, ¶ 10.  Further, more recently in *Bluman*, this Court made clear that seeking criminal penalties for violation of FECA's prohibition on certain conduct by foreign nationals requires proof of the defendant's knowledge of the law.  *Bluman*, 800 F. Supp. 2d at 292.

Beyond this, the analysis in *Hsia* was narrowly drawn around political contributions—the specific subject of a statute—and involved a series of actions by the defendant to find straw donors and funnel money with the intent to avoid the statutory requirements.  While the government was not required to prove that the defendant knew her conduct was unlawful, it did require a *mens rea* consistent with § 371's defraud prong; that is, that she knew that she was intentionally causing others to make false statements for the purpose of evading what the contribution statute required.  *Hsia*, 176 F.3d at 522; *see also Hsia*, 24 F. Supp. 2d at 21 (noting charge required proof of knowledge and willfulness).

Another trio of cases cited by the Special Counsel (Doc. No. 20 at 10)—*United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012), *United States v. Khalife*, 106 F.3d 1300 (6th Cir. 1997) and *United States v. Jackson*, 33 F.3d 866 (7th Cir. 1994) (cited at ECF No. 20 at 10)—are tax-avoidance conspiracy cases that, like *Hsia*, do not provide that a willfulness standard must be rejected in this context.  *Coplan*, for example, involved tax evasion using tax shelters that the defendant knew concealed information from the Internal Revenue Service ("IRS") that was required to be disclosed and thus made false statements on a tax return.  To sustain a conspiracy conviction, the court noted that the substantive offense required a willful non-payment with the intent to evade a lawful tax payment.  All the co-conspirators, moreover, needed to possess that

intent and the court reversed the conviction of the targeted co-conspirator (Shapiro) precisely because the proof did not show that he had the specific intent to violate the law. The court's evaluation of the evidence is in keeping with the *mens rea* requirement Concord urges.[14]

As for *Khalife* and *Jackson*, neither case implicates the regulatory complexities or free speech considerations that exist in a case like this one. And they also do not give the government a free pass on the *mens rea* requirement, either. Both cases involved concealment of material facts resulting in the filing of false tax returns. Although neither case required proof that the defendant knew it was violating the particular underlying substantive statute for purposes of a § 371 defraud conspiracy, both required proof that each co-conspirator agreed to accomplish an illegal objective against the United States and had the specific intent to impede lawful tax collection.[15] *See Khalife*, 106 F.3d at 1303; *Jackson*, 33 F.3d at 872

Unlike these cases, there are no allegations specific to Concord that it violated any statutory provision or regulation governing U.S. elections, that it knew of any statutes regulating U.S. elections, or that it joined a conspiracy with an awareness that any such statute or regulation would be violated. Concord stands accused of interfering with the proper functioning of a U.S. election, but in contrast with *Hsia*, *Coplan*, *Khalife*, or *Jackson*, the Indictment makes no attempt to explain what is meant by proper functioning in light of the FECA, the FARA, or any other statute or regulation. Again, "proper functioning" cannot simply be administration of underlying statutes, because if that was the case, every violation of federal law would also be a § 371

---

[14]   Indeed, as for *Coplan* specifically, it is more notable for Judge Cabranes's cogent deconstruction for the Second Circuit of the viability of *Klein* conspiracies under the plain text of § 371, discussed more fully below. *Infra* at Part V.D.

[15]   At the June 15 hearing, the Special Counsel also invoked *United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C. 1999), where the court laid out the elements of proof for a § 371 defraud conspiracy. But nothing in that case addressed, much less rejected, the need to prove willfulness in an election cases like this one.

defraud conspiracy, thereby improperly "obliterat[ing]," § 371's distinct use of "offense" and "defraud." *Wisconsin Cent. Ltd.*, 138 S. Ct. at 2073. *See also Minarik*, 875 F.2d at 1193 (courts must reject interpretation of "defraud" that would "engulf[] the statute itself and obliterat[e] the carefully drawn relation between the two clauses"). Nor, moreover, is concealment alone—without interference with "lawful governmental functions"—a § 371 "*Klein*" defraud conspiracy, especially where the covert activity involves speech. And there are no allegations on how it was that Concord, a foreign national, knew something unlawful was going on or that its conduct was furthering an unlawful purpose with respect to any program or statutory scheme overseen by the United States. None of the Special Counsel's cited cases endorse that result and this Court should not do so either.

In this proceeding, specific allegations showing willfulness are necessary to ensure that Concord is being charged because it knew it was violating a law relating to U.S. elections. Otherwise, it is threatened with punishment for conduct that does not defraud the United States in violation of § 371 in the manner the Indictment generically claims. This is also why Concord previously sought discovery of the grand jury instructions and why it is imperative that this Court find that willfulness is a required element of the Special Counsel's proof.

> **2.      The Special Counsel was required—but failed—to allege that Concord specifically targeted the United States or its agencies.**

Requiring willfulness alone is not sufficient to save this Indictment—the Special Counsel also must point to allegations that Concord specifically intended, through its alleged conduct, to defraud the United States itself, or one of its agencies. *See Tanner*, 483 U.S. at 130 (a § 371 conspiracy to defraud is "most importantly" defined by the "*target* of the conspiracy"). But as to Concord, the Indictment alleges only that it provided funding for unspecified purposes to foreign persons, recommended personnel, and reviewed budgets containing advertising expenditures

apparently linked to those persons, but with no indication that Concord specifically targeted the United States or its agencies in undertaking that conduct.  And whether Concord could have surmised or even intended that its alleged conduct might influence those who voted in the 2016 presidential election is beside the point.  Influencing voters is one thing and targeting the federal government or its agencies is another—the difference is fatal to this Indictment under *Tanner* and its progeny.  Section 371 defraud conspiracies extend only to those who act with the specific intent of targeting the United States and its exercise of its sovereign and lawful functions.

Thus, as the Supreme Court explained in *Tanner*,  "[t]he conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy but also—and most importantly—by the *target* of the conspiracy." *Id.* at 130.  "Section 371 covers conspiracies to defraud 'the United States or any agency thereof,' a phrase that [even] the Government concedes fails to describe [private parties]." *Id.*  Following *Tanner*, courts repeatedly have acknowledged that the purported deception of the United States government "has to be a *purpose* or *object* of the conspiracy, and not merely a foreseeable consequence of the conspiratorial scheme." *Goldberg*, 105 F.3d at 773 (citing *Dennis*, 384 U.S. at 861).  It is not enough that the defendant allegedly conspired to take some generic action or even conspired to defraud a private actor and, in doing either, engaged in deception that foreseeably hindered the government's lawful functions.  To the contrary, there is no criminal violation of § 371 unless an object of the conspiracy was the use of deception to interfere with the government's lawful function.

Three post-*Tanner* cases—*Licciardi*, 30 F.3d 1127, *United States v. Mendez*, 528 F.3d 811 (2008), and *United States v. Pappathanasi*, 383 F. Supp. 2d 289 (D. Mass. 2005)—illustrate this particular limitation.  *Licciardi* involved a grape broker's conspiracy to defraud wine

- 35 -

producers by passing off less expensive wine grapes as more expensive varieties. *Licciardi*, 30 F.3d at 1129–30.  As part of the fraudulent scheme, the broker had grape growers remove the field tags from the inferior grapes so they could more easily be passed off as their more expensive counterparts. *Id.*  The scheme impaired the ATF's lawful regulatory function because the wineries were required to use field tags to file reports with the ATF and because the scheme caused the wineries to sell wines that were mislabeled with the wrong grape type in violation of federal regulations the ATF was charged with enforcing. *Id.* at 1129, 1131.  While the grape broker had been convicted of conspiracy to defraud under § 371, the Ninth Circuit concluded that the conviction under the theory the government had advanced was erroneous because the government had not established that the broker had the requisite *mens rea* required under *Tanner*. *Id.* at 1132.  The Ninth Circuit noted that the defendant "was far from innocent morally or in terms of the law of California[,]" but explained that under *Tanner* that was not the issue. *Id.* at 1131–32.  To the contrary, the question before it was whether there was evidence of a conspiracy to defraud to the United States government—something the government had failed to establish at trial. *Id.*  The court nevertheless went on to affirm the conviction on alternative grounds because there was sufficient evidence of a second unlawful object of the conspiracy— namely, an intent to commit mail fraud. *Id.* at 1132.

*Mendez*, in turn, involved a truck driver who had conspired to use a fraudulent qualification record to obtain a commercial driver's license from the State of Florida. *Mendez*, 528 F.3d at 813–14.  The driver's fraud ultimately impaired the United States Department of Transportation's ("DOT") lawful function because it had the effect of allowing the defendant to circumvent the DOT's minimum rules and regulations for obtaining a commercial driver's license. *Id.* at 814–15.  Although the defendant had been convicted of conspiracy to defraud

under § 371 based upon the facts to which he had stipulated, the Eleventh Circuit vacated the conviction as "precisely what the *Tanner* Court meant to prevent." *Id.* at 815. It found significant that the "facts to which the parties stipulated do not show that [the defendant] even knew the federal government was involved in the issuance of Florida [commercial driver's licenses], let alone that the United States was the ultimate intended target of [the defendant's] conduct." *Id.* It thus reasoned that "under *Tanner*, there was no basis for the district court to find that [the defendant] was guilty beyond a reasonable doubt of defrauding the United States under 18 U.S.C. § 371." *Id.* at 815–16.

For its part, *Pappathanasi* involved a kickback scheme between executives at a creamery and Dunkin' Donut franchisees whereby the creamery would inflate invoices to the franchisees and then give the franchisees "rebates" of the excess charges back to franchisees in the form of unreported checks and cash. *Pappathanasi*, 383 F. Supp. 2d. at 290. The government had charged that this scheme amounted to a conspiracy to defraud the United States by helping the franchisees defraud the IRS by overstating expenses and understating income. *Id.* at 291. The district court, however, concluded that the charge had to be dismissed because the government was unable to come up with sufficient evidence to establish that the object of the alleged conspiracy was a scheme to defraud the IRS by helping franchisees misreport information to the IRS and evade their tax obligations. *Id.* at 291–92. While the court acknowledged that there was evidence that some franchisees had indeed used the kickback scheme for this purpose, that was not sufficient as the government was required to "prove the purpose of the conspiracy was to interfere with the proper functioning of the IRS and that any fraud was not merely a foreseeable consequence of a conspiratorial agreement." *Id.* at 291–93. Because the government's evidence of any such direct intent to interfere with the IRS's function was lacking, the court granted

defendants' motion for acquittal and dismissed the § 371 charge. *Id.* at 294–95.

Together, these cases demonstrate how, following the Supreme Court's holding in *Tanner*, a § 371 conspiracy to defraud requires more than just conduct, even fraud, which ultimately can be linked to an impairment of a lawful function of the United States government. Rather, an object of the conspiracy must be the specific intent to defraud the United States government or its agencies and an element of the charge is that the defendant committed to engage in fraud that it knew would be specifically directed at the United States government or its agencies and was and intended to interfere with the government's lawful function. Those specific allegations are, however, missing from the Indictment as to Concord. Dismissal of the Indictment is required for this independent reason as well.

### C. The Indictment Against Concord Should Be Dismissed Because The Special Counsel's Application Of § 371's Defraud Clause Is Unconstitutionally Vague.

As noted above, according to the Special Counsel, to sustain the Indictment, he need only show that, through "deceptive acts," Concord interfered with some undescribed government "regulatory apparatus … that exists to root out foreign influence on the United States's [sic] processes[.]" Hr'g Tr. 9:6–13; *see also supra* at Part V.A. With respect to those "processes," moreover, he maintains that Concord need only have known "that there is in the United States, on some level, regulation that's designed to prevent foreign influence from operating in a covert, undisclosed manner that can thwart the political system." Hr'g Tr. 9:8–21. Adoption of this standard in this case would not, however, pass constitutional muster. Indeed, any jury instruction articulating this standard would authorize the government to prosecute anyone for conspiring to do anything that the government unilaterally determines—after the fact—"interferes" with its myriad "functions." That is not and cannot be the law and the Indictment should be dismissed for this reason also.

To begin with, how could anyone, let alone a foreign national company with no presence in the United States, be on notice of a prosecutor or court created a "some level" of intent requirement?   And beyond that: what "regulatory apparatus," what "foreign influence on the United States's [sic] [political] processes … without adequate disclosure," what "covert manner?"   And with respect to these euphemisms, what level of knowledge and intent to deceive is required and with respect to what?   The Special Counsel's vacuous articulation plainly defies, on every level, the "discernable meaning" a criminal statute like § 371 must have—"'after if not before it is judicially construed'" (*Tanner*, 483 U.S. at 132 (quoting *Dixson v. United States*, 465 U.S. 482, 512 (1984) (O'Conner J., dissenting))—to support a felony conspiracy conviction.

Specifically, the Due Process Clause requires more and precludes criminal punishment under a criminal law that "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citation omitted); *see also Dimaya*, 138 S. Ct. at 1212 (same); *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966) ("arbitrary enforcement" means that a law leaves government actors "free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case").   The void-for-vagueness "doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not."   *Dimaya*, 138 S. Ct. at 1212 (citation omitted); *see also United States v. Bass*, 404 U.S. 336, 348 (1971) ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.").

Pursuant to this bedrock constitutional directive, the Supreme Court has "become accustomed to using the Due Process Clause to invalidate" or strictly construe criminal statutes

"on the ground of 'vagueness.'"  *Johnson*, 135 S. Ct. at 2566–67 (Thomas, J., concurring) (citing cases); *see also Dimaya*, 135 S. Ct. at 1212; *McDonnell v. United States*, 136 S. Ct. 2355, 2367 (2016); *Yates*, 135 S. Ct. at 1074.  This Court should do the same and reject the Special Counsel's charge that Concord engaged in a criminal conspiracy to defraud the United States by interfering with some amorphous and undefined "lawful governmental function" or the government's "regulatory apparatus" in the context of a U.S. election.

First, even on its face, "the defraud clause of section 371[,]" with its judicially engrafted interference with "lawful governmental function" prong, "has a special capacity for abuse because of the vagueness of the concept of interfering with a proper government function." *Goldberg*, 105 F.3d at 775.  "Lawful governmental function" is not self-defining and could be construed expansively to extend to all the myriad ways in which the government regulates and operates on a daily basis.  *See Caldwell*, 989 F.2d at 1060 ("The federal government does lots of things, more and more every year, and many things private parties do can get in the government's way.").  And it goes without saying that any "Government promise[] to use" § 371's defraud clause "responsibly" is no basis to uphold its application to Concord in this case. *United States v. Stevens*, 559 U.S. 460, 480 (2010) (citation omitted).

Second, that the "interference with lawful governmental function" was written into § 371 by the courts only exacerbates the vagueness concerns here.  Statutory detail in defining crimes is required not just to protect individual due process rights—it is also to ensure that it is Congress, not the courts or the executive branch, which creates and defines federal crimes.  *See Liparota*, 471 U.S. at 424 (federal crimes are "solely creatures of statute"); *Lanier*, 520 U.S. at 267 n.6 ("Federal crimes are defined by Congress, not the court") (citations omitted).  "[L]egislators may not 'abdicate their responsibilities for setting the standards of the criminal

law,' by leaving to judges the power to decide "'the various crimes includable in [a] vague phrase[.]'" *Dimaya*, 138 S. Ct. at 1227 (Gorsuch, J., concurring) (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974); *Jordan v. De George*, 341 U.S. 223, 242 (1951) (Jackson, J., dissenting)). "For 'if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large[,] [t]his would, to some extent, substitute the judicial for the legislative department of government.'" *Id.* (citation omitted).

Third, while the Supreme Court has acknowledged that statutory "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute," *Lanier*, 520 U.S. at 266 (citations omitted), "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope," *id.* at 266 (citations omitted), and adding clarity to a statute "by judicial gloss" is no license to courts to insert language into a statute that Congress did not put there. *See Mercy Hospital, Inc. v. Azar*, 891 F.3d 1062, 1070 (D.C. Cir. 2018) ("We can only interpret statutes, not rewrite them."). Here, the Supreme Court, in *Hammerschmidt*, extended § 371 beyond its text to encompass fraud conspiracies that are not within the statute's ambit and where there is no apparent support for that construction in the history or text in the first place. Quite the contrary: as Judge Cabranes explained at length in *Coplan*, 703 F.3d 46, Congress elected only to use the term "defraud," which at common law had a settled, narrow meaning: "to deprive another of property rights by dishonest means." *Id.* at 59; *McNally v. United States*, 483 U.S. 350, 358 (1987) (common-law fraud required wronging another "in his property rights by dishonest methods or schemes").

Fourth, these concerns are acute here given the dangerous First Amendment implications—both for speakers and listeners—of the Special Counsel's charge and allegations in the context of a U.S. presidential campaign. *Supra* at Part V.B.1.a. "When the criminal penalty at issue applies to activity that furthers First Amendment interests, . . . the court is obliged to review the challenged enactment" and its application "with particular care." *United States v. Thomas*, 864 F.2d 188, 194 (D.C. Cir. 1988) (Starr, J.); *see also Campaign Legal Ctr.*, 2018 WL 2739920, at \*8 (in the election context, "vagueness and notice concerns carry special weight, since courts must be especially vigilant to prevent the chilling of First Amendment speech"). "Indeed, when the [application of law] threatens exercises of otherwise permissible First Amendment rights, [it] must provide more notice and allow less discretion than for other activities." *Thomas*, 864 F.2d at 194 (citation omitted); *see also Bryant v. Gates*, 532 F.3d 888, 893 (D.C. Cir. 2008) ("Our concern about vagueness is elevated when the law regulates speech because it may 'operate to inhibit protected expression by inducing citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.'") (citation omitted). Vagueness problems are "particularly treacherous where, as here, the violation of its terms carries criminal penalties and fear of incurring these sanctions may deter those who seek to exercise protected First Amendment rights." *Buckley*, 424 U.S. at 76–77.

Ultimately, whatever may have been true on other fact patterns, the extension of § 371's defraud prong in the manner contemplated by the Special Counsel lacks any basis in the statute's text, is not determinable, *ex ante*, by a foreign national like Concord, contains no discernable definition of "interference with a lawful governmental function" in the context of a U.S. election, raises serious First Amendment concerns and, as a result, that will not pass constitutional muster. The Supreme Court's recent decision in *McDonnell*, 136 S. Ct. 2355, makes the point.

There, the Supreme Court unanimously rejected the government's vague and expansive interpretation of the term "official act" in the federal bribery statute.  Unlike here, the statutory text included the term "official act" and even provided a definition.  But that did not satisfy the Court, which proceeded to adopt a narrow, specific, and discernable definition of the term, consistent with constitutional vagueness concerns.  "[U]nder the Government's interpretation," the Court reasoned, "'official act' is not defined 'with sufficient definiteness that ordinary people can understand what conduct is prohibited,' or 'in a manner that does not encourage arbitrary and discriminatory enforcement.'"  *McDonnell*, 136 S. Ct. at 2373 (citation omitted).  The "'standardless sweep'" of the government's reading, the Court continued, could subject public officials "to prosecution, without fair notice, for the most prosaic interactions[,]" and "'[i]nvoking so shapeless a provision to condemn someone to prison'" raised serious due process concerns that could be avoided with a "more constrained interpretation[.]"  *Id.* (citations omitted).  So too here.  The Special Counsel's proposed "standardless sweep" cannot support this Indictment any more than it could in *McDonnell*.  Any effort to embrace the Special Counsel's approach here would compel dismissal of the Indictment as well.

> **D.    The Indictment Against Concord Should Be Dismissed Because It Fails To Allege Deprivation Of Government Money Or Property As Required Under A Proper Construction Of § 371 (For Preservation Only).**

Finally, although the Supreme Court held in *Hammerschmidt* that § 371 extends to conspiracies to defraud aimed at interfering with "lawful governmental functions" even where the government is not deprived of "property or money," that atextual interpretation is plainly wrong as a matter of statutory construction, *see Coplan*, 703 F.3d at 59–62; has been eroded by more recent Supreme Court decisions that hew more closely, as they should, to the text of criminal statutes, *id.*; and is entitled to minimal, if any, *stare decisis* effect at the Supreme Court.

Although the Court may deem itself presently bound by the holding in *Hammerschmidt*, Concord raises this challenge here to preserve it for any later appellate proceedings in the case.

Judge Cabranes's analysis in *Coplan* cogently makes the case.  Surveying the history of § 371 and its defraud clause, he demonstrated that not long after the enactment of § 371's predecessor, the Supreme Court "described the prohibited fraud as 'any fraud against [the United States].  It may be against the coin, or consist in cheating the government of its land or other property.'"  *Coplan*, 703 F.3d at 59 (quoting *United States v. Hirsch*, 100 U.S. 33, 35 (1879)).  This, in turn, was fully consistent with Congress's use of the term "defraud," whose settled common-law meaning was "to deprive another of property rights by dishonest means."  *Id.* at 59 (citations omitted); *see also Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1999 (2016) (noting "settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses" and that "the term 'fraudulent' is a paradigmatic example of a statutory term that incorporates the common-law meaning of fraud") (citations omitted).

It nevertheless was true, Judge Cabranes acknowledged, that since *Hirsch*, the Supreme Court had expanded § 371 to include *Klein* conspiracies.  *Coplan*, 703 F.3d at 60.  For its part, the government in *Coplan* rested its defense of that expansive construction not on any principle of statutory construction but, rather, on *stare decisis* and the fact that the Supreme Court had not overruled *Hammerschmidt*.  And ultimately, because bound by *Hammerschmidt* and *Dennis*, Judge Cabranes was forced to reject the defendants' challenge to the scope of "defraud," despite the identified "infirmities in the history and deployment of the statute[.]"  *Id.* at 61.

Concord acknowledges *Hammerschmidt* and *Dennis*, which the Supreme Court has not overturned.  It therefore makes this argument to preserve it on appeal, if necessary.  While *stare*

*decisis* could lead the Supreme Court to maintain its adherence to *Hammerschmidt* and *Dennis*, *see Pearson v. Callahan*, 555 U.S. 223, 233 (2009) (noting that "considerations of *stare decisis* weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation") (citation omitted), there are good reasons, given the deficiencies in the Court's reasoning in those cases, to believe it will—and should—not.  *Id.* at 234 (*stare decisis* not properly accorded where a precedent or rule "was 'badly reasoned' or . . . has proved to be 'unworkable[]'") (citation omitted); *see also Johnson*, 135 S. Ct. at 2563 ("*[S]tare decisis* does not matter for its own sake.  It matters because it 'promotes the evenhanded, predictable, and consistent development of legal principles.  Decisions under [§ 371's *Klein* conspiracy gloss] have proved to be anything but evenhanded, predicable, or consistent.") (citation omitted).

## VI.   CONCLUSION

The Indictment of Concord cannot withstand scrutiny under controlling law and should be dismissed.

Dated: July 16, 2018                                  Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC


By: /s/ Eric A. Dubelier
    Eric A. Dubelier (D.C. Bar No. 419412)
    Katherine J. Seikaly (D.C. Bar No. 498641)
    REED SMITH LLP
    1301 K Street, N.W.
    Suite 1000 – East Tower
    Washington, D.C. 20005-3373
    202.414.9200 (phone)
    202.414.9299 (fax)
    edubelier@reedsmith.com
    kseikaly@reedsmith.com

    James C. Martin (Admitted *Pro Hac Vice*)
    Colin E. Wrabley (Admitted *Pro Hac Vice*)
    REED SMITH LLP

- 45 -

225 Fifth Avenue
Pittsburgh, P.A. 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com