# EXHIBIT B:

**Excerpts from Transcript of June 15, 2018 Hearing (Docketed at ECF No. 41)**

**Defendant Concord Management and Consulting LLC's**
**Motion to Dismiss the Indictment**
***United States v. Internet Research Agency LLC, et al.,***
**Criminal Action No. 18-00032-DLF**

```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2


 3   UNITED STATES OF AMERICA,          .
                                        .  Case Number 18-CR-32
 4              Plaintiff,              .
                                        .
 5       vs.                            .
                                        .  Washington, D.C.
 6   CONCORD MANAGEMENT AND             .  Jun 15, 2018
     CONSULTING LLC,                    .  10:03 a.m.
 7                                      .
                Defendant.              .
 8   - - - - - - - - - - - - - - - - -


 9                      TRANSCRIPT OF STATUS HEARING
                BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                    UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:              JEANNIE S. RHEE, AUSA
                                      MICHAEL R. DREEBEN, AUSA
13                                    L. RUSH ATKINSON, AUSA
                                      RYAN K. DICKEY, AUSA
14                                    U.S. Department of Justice
                                      Special Counsel's Office
15                                    950 Pennsylvania Avenue N.W.
                                      Washington, D.C. 20530
16                                    202-616-0900

17   For the Defendant Concord
     Management and Consulting LLC:  ERIC A. DUBELIER, ESQ.
18                                    KATHERINE J. SEIKALY, ESQ.
                                      Reed Smith LLP
19                                    1301 K Street N.W.
                                      Suite 1000, East Tower
20                                    Washington, D.C. 20005
                                      202-414-9291
21
     Official Court Reporter:         SARA A. WICK, RPR, CRR
22                                    U.S. Courthouse, Room 4704-B
                                      333 Constitution Avenue N.W.
23                                    Washington, D.C. 20001
                                      202-354-3284
24
     Proceedings recorded by stenotype shorthand.
25   Transcript produced by computer-aided transcription.
```

1    the transcripts.  We're not asking for the evidence that was put

2    in.

3                THE COURT:  I know.  You're asking for me to look in

4    camera, and I appreciate that that's a limited request.

5        However, there is -- breaching the secrecy of the grand

6    jury, it's not an easy thing to do.  And I don't think you've

7    made a showing at this point, without even winning on the

8    argument that willfulness is an essential element, that I need

9    to go there.

10               MR. DUBELIER:  Your Honor, I understand your position.

11   I respectfully disagree with you, but I understand the position

12   you're arguing.  And if we have to renew this at a later time

13   and we will tee it up with respect to the motion to dismiss, we

14   will do that as well.

15               THE COURT:  Okay.  Thank you, Mr. Dubelier.

16               MR. DUBELIER:  Thank you very much, your Honor.  I

17   appreciate it.

18               THE COURT:  Mr. Dreeben?

19               MR. DREEBEN:  Good morning, your Honor.

20               THE COURT:  Good morning.  Let me ask you, I know

21   we're not getting into the merits today and deciding the

22   ultimate issue.  But I'm curious, with respect to the conspiracy

23   to defraud the FEC and the conspiracy to defraud the DOJ with

24   respect to the Foreign Agents Registration Act, what is the

25   government's position on what ultimately the government must

1    prove to the jury?

2         MR. DREEBEN:  So the government's position on that,

3    your Honor, is that we need to prove a conspiracy to defraud the

4    United States.  We do not need to prove a criminal violation of

5    the underlying statute, and the elements of the underlying

6    statutes that your Honor has referred to are not an ingredient

7    in the case.

8         It's well-established in D.C. Circuit law, in the

9    *Kanchanalak* campaign finance case that Judge Friedman handled

10   that the elements of a conspiracy to defraud the United States

11   are formation of a conspiracy, the intent to obstruct, impede,

12   or interfere with functions of the government through deceit and

13   an overt act.  Those are the elements that we need to establish.

14        It's a different crime because it's not saying that they

15   necessarily were required to file with the FEC or that they were

16   required to register with the Department of Justice.  What it is

17   saying is that the deception interfered with the regulatory

18   functions of those agencies to make the determination one way or

19   the other.

20        THE COURT:  But don't you have to show, on some level,

21   maybe not a knowledge of the particular legal provisions that

22   underlie the FECA and the FARA allegations, the specific

23   statutory provisions, while they may not need to know that,

24   don't they have to, on some level, in having an intent to

25   defraud, have some knowledge that they are doing something

1    wrong?

2         MR. DREEBEN:  Well, the wrongfulness of the act

3    consists of using deception to impair the government's

4    functions.  They do have to have a purpose.  It doesn't have to

5    be the major purpose or the exclusive purpose of deceiving the

6    government to impede its functions.  It could range all the way

7    up to they know that they're violating the law, but it could

8    also be that we know that the government has a regulatory

9    apparatus that exists to root out foreign influence on the

10   United States's processes, political processes without adequate

11   disclosure.  And thwarting that process through deceptive acts

12   is a way of impeding the regulatory functions of the United

13   States.

14        THE COURT:  Do they have to have some knowledge of how

15   that regulatory apparatus works to do that?

16        MR. DREEBEN:  Very little, I think.  What they need to

17   have is an intent to impair the regulatory apparatus.  They need

18   to know that there is in the United States, on some level,

19   regulation that's designed to prevent foreign influence from

20   operating in a covert, undisclosed manner that can thwart the

21   political system.  There's a ban on foreign involvement in

22   federal elections.  It has specific details.  There's a

23   requirement under the Foreign Agents Registration Act to make

24   disclosure before acting in certain specified political ways in

25   the United States.

1    I don't think the defendants here have to know the details

2    of how that works.  What they have to know is that it exists,

3    it's out there.  If they were unmasked as Russian agents posing

4    as Americans intervening in the political system, their entire

5    project would have failed.  They needed to fly under the radar

6    screen.

7        We've alleged that they engaged in a variety of deceptive

8    acts, ranging from lying on visa applications, to using proxy

9    servers in the United States to make their activities appear as

10   if they were going on here, to posing as U.S. citizens, real

11   U.S. persons in interacting with campaigns.  All of those means

12   of deception were both aimed at the political sphere and aimed

13   at avoiding regulatory oversight by the United States

14   government.

15       THE COURT:  Okay.  Mr. Dreeben, is your position here

16   inconsistent with the DOJ Policy Memorandum on Election Crimes

17   that suggests that the government needs to prove that the

18   defendant was aware that his or her conduct was unlawful?

19       MR. DREEBEN:  To the extent that that document, which

20   I think is a little cryptic and ambiguous, is read that way, and

21   I agree that it's susceptible to that reading, that's not the

22   litigating position of the United States.  We've taken the

23   position in briefs in opposition in the United States Supreme

24   Court and in litigating cases around the country that the

25   elements of a conspiracy to defraud are what I said.

1    I think that that manual, it gestures towards the idea that

2    you both need to show the elements of a campaign finance

3    violation and an intent to interfere with the government.  To

4    the extent that it's read that way, it isn't the position of the

5    United States.  The position of the United States is what we

6    have said explicitly to the Supreme Court, to the First Circuit

7    in a brief that was signed by the Assistant Attorney General for

8    the Criminal Division in 2016.

9    Willfulness is not an element of a 371 violation.  There

10   are not cases that describe it as an element of a 371 violation.

11   There's a legion of cases that describe the elements as I have

12   and have specifically said you don't need to have an underlying

13   illegality in a conspiracy to defraud.  The wrongful conduct is

14   deceiving the United States to thwart its regulatory objectives.

15   So if I were writing the election manual, I think I would

16   write it a little bit differently, but I don't think it ever

17   comes out and says willfulness is an element.  It's a

18   description of, perhaps, an overly cautious approach to

19   litigating these cases.  It's not the position that the

20   government takes in its legal filings.

21             THE COURT:  If there comes a time to instruct the jury

22   on this, is the instruction with respect to the objects that

23   involve the DOJ and the FEC in any way different than that that

24   involves the State Department?

25             MR. DREEBEN:  I don't think that it is, because in

each case it's not a question of whether the defendant was violating the substantive offense.  We could have charged a conspiracy to violate specific substantive statutes.  We chose to indict a conspiracy to defraud the United States that has multiple objectives and multiple means, all of which consist in deception.

So I would not suggest that the Court deviate from the standard jury instructions that focus on the elements of defrauding the United States as opposed to getting into the elements of the underlying crime.  That is one of the reasons why conspiracy to defraud the United States differs from the underlying offenses.

And again, Judge Friedman's opinion in *Kanchanalak* goes into this in some detail.  When the D.C. Circuit has recited the elements of a conspiracy to defraud in the *Treadwell* and *Davis* cases that we've cited, it doesn't say anything about underlying offenses.  Willfulness is not an express element of Section 371. I think my friend would have the burden of persuading the Court that there should be an implied element only as applied to certain kinds of activities in 371.  That doesn't appear on the face of the statute.  That's a very disfavored way to read criminal provisions as fluctuating in their meaning depending on the underlying conduct and reading elements in that aren't on the face of the statute.

The one point that I would like to respond to, if I may,

1    your Honor, is my opponent's suggestion that we've conceded what

2    we said to the grand jury.  We have not conceded anything about

3    what we did in front of the grand jury.  I agree with your Honor

4    that piercing grand jury secrecy requires a particularized need

5    and overcoming the presumption of regularity about grand jury

6    proceedings.  And it is something of a slippery slope to say

7    let's get into the grand jury proceedings, let's just start with

8    an in-camera review of jury instructions.

9         The grand jury instructions, even if -- assuming there were

10   some error in the grand jury instructions, it doesn't justify

11   dismissal of the indictment unless it's prejudicial, and that

12   would inevitably lead to the question of was there an injurious

13   influence on the grand jury proceedings which, by analogy to the

14   way a jury instruction error is analyzed for harmlessness at the

15   petit jury stage, you would have to look at the evidence and say

16   would any reasonable grand jury, given the evidence, have

17   returned the indictment notwithstanding any potential error in

18   the prosecutor's description of the offense.  And that really

19   opens up the entire grand jury proceeding.

20        So it's fine for Concord to say hey, we're just asking for

21   a very modest step here, but that modest step has no legal

22   significance unless you are prepared to go further and really

23   open up the grand jury proceedings to review.

24        And I agree with your Honor on sequencing.  The cases that

25   have typically denied motions for inspection of grand jury

1    instructions have said look, the indictment is valid on its

2    face.  The defendant has a burden of coming forward with some

3    evidence to overcome the presumption of regularity.  That's

4    usually pretty hard to do.  Occasionally, it has been done.

5         Here, I don't think there's anything.  It's just a reliance

6    on a legal theory.  And if your Honor decides the legal theory

7    in our favor, then I think it erases their claim.

8         THE COURT:  And if I decide in their favor, do you

9    think at that point they have a basis for me to look at the

10   grand jury --

11        MR. DREEBEN:  What we would have to persuade your

12   Honor at that point is, if you concluded that willfulness or

13   knowledge of illegality is an element, we would have to then go

14   back to the indictment and point to provisions from which it

15   could be inferred that the jury found that.  It doesn't say

16   willfulness expressly.  That's clear.  And if we lost that

17   battle, you would dismiss the indictment, and there would be no

18   need to look at the grand jury minutes.

19        So I don't really get their argument at this stage.

20   They've said that they're going to make a motion to dismiss on

21   the merits.  They haven't fully briefed it.  They're not asking

22   your Honor to decide it.  We're ready to brief it when the time

23   comes.  If your Honor resolves it one way or the other, I think

24   that it will moot out the need to consider this motion.

25        THE COURT:  Okay.  Thank you, Mr. Dreeben.