# EXHIBIT C:

**Indictment from *United States v. Hopkins*, Criminal Action No. 89-00008-G (N.D. Tex.)**

**Defendant Concord Management and Consulting LLC's
Motion to Dismiss the Indictment
*United States v. Internet Research Agency LLC, et al.,*
Criminal Action No. 18-00032-DLF**

FORM OBD-34
SEP 1978
WARRANT TO ISSUE FOR
EACH DEFENDANT

No. _ _ _ _ _ _ _ _ _ _

# UNITED STATES _ _DISTRICT_ _ _ COURT

_ _ NORTHERN _ _ _ _ _   *District of* _ _ _TEXAS_ _ _ _ _ _ _

_ _ _ _ _DALLAS_ _ _ _ _ _ _   *Division*

## THE UNITED STATES OF AMERICA
*vs.*

_ ROBERT H. HOPKINS, JR._ _ _ _ _ _ _ _ _ _ _ _ _

_ E. MORTEN HOPKINS _ _ _ _ _ _ _ _

_ JOHN W. HARRELL_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

## INDICTMENT

18 USC 371; 1001,2; 657,2; 1006,2 - Conspiracy;
Concealment and Covering Up by Scheme and Device;
Misapplication; False Entries

### 47 COUNTS

*A true bill.*

DALLAS                                                    *Foreman.*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day*

*of* _ _ _ _ _ _ _ _ _ _ _ _ , *A.D. 19*_ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                          *Clerk.*

WARRANT TO ISSUE FOR EACH DEFENDANT
*Bail. $* _ _ _ _ _ _ _ _ _ _ _ _

UNITED STATES ~~DISTRICT JUDGE~~ Magistrate
No Magistrate Complaint                          GPO 863 525



U. S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 1 2 1989
NANCY DOHERTY, CLERK
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

---

UNITED STATES OF AMERICA     *
                        *    CR 3-89-008-G

v.                            *    CRIMINAL NO. _____
                         *

ROBERT H. HOPKINS, JR.     *
E. MORTEN HOPKINS        *
JOHN W. HARRELL          *

### INDICTMENT

The Grand Jury charges:

### COUNT 1

#### Conspiracy
[18 U.S.C. §371]

A.    INTRODUCTION

At times material to this indictment:

1. From in or about March 1982 through in or about December 1984, National Mortgage Corporation of America ("National") was a corporation organized under the laws of the State of Arkansas and doing business in the State of Texas; defendant ROBERT H. HOPKINS, JR. ("ROBERT HOPKINS"), was a principal shareholder and Chairman of the Board of Directors of National and his brother, defendant E. MORTEN HOPKINS ("MORTEN HOPKINS"), was President of National.

2. From in or about July 1982 through in or about June 1983, defendant ROBERT HOPKINS was a principal shareholder and

Chairman of the Board of Directors of Big Country Savings ("Big Country"), a corporation organized under the laws of the State of Texas, and defendant JOHN W. HARRELL ("JOHN HARRELL") was President of Big Country.

3.     Commodore Savings Association ("Commodore") was a corporation organized under the laws of the State of Texas in or about June 1983.  Commodore resulted from the merger of Big Country with First Security Savings of Abilene, Texas.  Defendant ROBERT HOPKINS was a principal shareholder and Chairman of the Board of Directors of Commodore from in or about June 1983 through in or about October 1985.  Defendant JOHN HARRELL was Vice-Chairman of the Board of Directors and Chief Executive Officer of Commodore from in or about July 1983 through in or about October 1985.  He became Chairman of the Board of Directors of Commodore in or about October 1985.  Defendant MORTEN HOPKINS succeeded defendant JOHN HARRELL as Vice-Chairman of the Board of Directors of Commodore in or about October 1985.

4.     National Political Action Committee ("NPAC") was a political action committee ("PAC") formed in or about April 1980 and terminated in or about April 1984.  NPAC was subject to the reporting provisions and campaign financing prohibitions of the Federal Election Campaign Act ("FECA").

5.     From in or about April 1984 through in or about June 1986, defendant ROBERT HOPKINS controlled an account with Commodore named "Robert H. Hopkins, Jr., Custodian for Various Employees."  Deposits made into this account were used for

INDICTMENT - Page 2

financial contributions in support of, or in opposition to, various individuals seeking elective office at the local, state, and federal levels. This financial activity was subject to the reporting provisions, and the campaign financing prohibitions, contained in the FECA more fully described immediately below:

a. PACs which financially supported candidates for federal offices were required by the FECA, and in particular Section 434 of Title 2, United States Code, to file periodic reports with the Federal Election Commission, which reports were to accurately reflect the identities of all individuals and entities which had given in excess of $200.00 to each such political committee in any given calendar year.

b. The FECA, and in particular Section 441a of Title 2, United States Code, prohibited, and rendered illegal, contributions to any federal candidate from any person that exceeded $1000.00 in connection with any election. For the purpose of this limitation on campaign contributions, the FECA, in particular Section 441a(a)(8) of Title 2, United States Code, provided that any and all payments to a political committee on behalf of a candidate were to be treated as contributions to that candidate.

c. The FECA, and in particular Section 441b of Title 2, United States Code, forbade, and rendered illegal, contributions and expenditures from the treasury assets of corporations made in connection with the nomination or election of candidates to federal offices.

d.   The FECA, and in particular Section 441f of Title 2, United States Code, forbade, and rendered illegal, contributions to the campaigns of federal candidates that were made in the names of individuals other than the person responsible for the contribution in question.

6.   In or about December 1984, Commodore acquired NMCA and on or about January 1, 1985, National was renamed Commodore Financial Services Corporation ("Commodore Financial"). Defendant ROBERT HOPKINS was a principal shareholder and Chairman of the Board of Directors of Commodore Financial from its beginning through in or about June 1986.

7.   East Texas First Political Action Committee ("ETF-PAC") was a PAC which was subject to the reporting provisions and campaign financing prohibitions of the FECA.

8.   The Federal Election Commission was an agency of the United States entrusted with the authority and responsibility to detect, investigate, and take enforcement action against violators of the FECA.   In addition, the Federal Election Commission was entrusted with the authority and responsibility, pursuant to Section 438(a)(4) of Title 2, United States Code, to make available to the public specific information concerning campaign contributions to political committees supporting candidates for federal office which had been filed in accordance with the provisions described in paragraph 5.a. above.

9.   The Federal Savings and Loan Insurance Corporation ("FSLIC") was an agency of the United States established to

INDICTMENT - Page 4

protect depositors by insuring deposits in member savings and loan institutions in amounts up to $100,000 per account.

10.   The Federal Home Loan Bank Board ("Bank Board") was an agency of the United States established to examine, regulate, and supervise savings and loan institutions insured by the FSLIC.  As part of its duties, the Bank Board governed the FSLIC and had the authority to examine insured institutions to assure that they were operated in a safe and sound manner and in conformity with applicable laws and regulations.

B.   THE CONSPIRACY AND ITS OBJECTS

11.   Beginning at a time unknown to the Grand Jury, but from on or about March 31, 1982 through on or about June 1, 1986, in the Dallas Division of the Northern District of Texas and elsewhere, defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL knowingly and willfully combined, agreed, and conspired, together and with others, both known and unknown to the Grand Jury, to (1) defraud the United States, in particular the Federal Election Commission, of and concerning its right to have its business and affairs conducted free from deceit, dishonesty, unlawful impairment, and obstruction, (2) defraud the United States, in particular the Bank Board, of and concerning its right to have its business and affairs conducted free from deceit, dishonesty, unlawful impairment, and obstruction, (3) defraud the United States, in particular the FSLIC, of and concerning its right to have its business and its affairs conducted free from

INDICTMENT - Page 5

deceit, dishonesty, unlawful impairment, and obstruction, and (4) commit certain offenses against the United States, namely:

(a)  to knowingly and willfully conceal and cover up, and cause to be concealed and covered up, by means of a scheme and device, a material fact in a matter within the jurisdiction of the Federal Election Commission, in violation of Title 18, United States Code, Section 1001;

(b)  to knowingly and willfully misapply, and cause to be misapplied, moneys and funds of Commodore, in amounts exceeding $100, with the intent to injure and defraud Commodore, in violation of Title 18, United States Code, Section 657.

(c)  to knowingly and willfully make, and cause to be made, false entries in the books and records of Commodore, with intent to (1) deceive officers, agents, and examiners of the Bank Board and the FSLIC, and (2) injure and defraud Commodore, the Bank Board, and the FSLIC; in violation of Title 18, United States Code, Section 1006.

C.    THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means, among others, of this conspiracy were as follows:

12.  It was part of this conspiracy that defendants MORTEN HOPKINS and JOHN HARRELL would ask selected employees of National, Big Country and Commodore ("conduits") to make political contributions to a PAC supporting candidates for federal, state and/or local offices with the understanding that

defendant ROBERT HOPKINS had authorized full reimbursement to the conduits for their contributions.

13.  It was a further part of this conspiracy that each conduit would sign an authorization form requesting that a certain dollar amount be deducted from his/her particular pay check with the express understanding that every conduit who agreed to authorize such a payroll deduction for political contributions would receive a pay increase from his/her employer specifically given to fully reimburse this payroll deduction.

14.  It was a further part of this conspiracy that defendant ROBERT HOPKINS or his representative would request that the conduits sign documents requesting that contributions to specific candidates be given in the conduit's name.  The documents occasionally would be signed by the conduit after a particular donation on behalf of that conduit had already been disbursed at the direction of defendant ROBERT HOPKINS.  These documents would be generated to create the false and misleading impression that individual employees determined the amount of the donation and the identity of the recipient.

These deceptive practices caused by defendant ROBERT HOPKINS would allow him to make corporate contributions to political campaigns supporting candidates for federal offices by having them appear to have been made by the conduits in whose names they were given, thereby deceiving the Federal Election Commission.

15.  It was a further part of this conspiracy that from 1982 through 1984 the defendants ROBERT HOPKINS and MORTEN HOPKINS

would cause the treasurer of the PAC to which these contributions were given, NPAC, to report them to the Federal Election Commission as contributions made by the conduits, when in fact, as defendants ROBERT HOPKINS and MORTEN HOPKINS well knew, these contributions were made from National's corporate assets as a result of conduct by these defendants.

16. It was a further part of this conspiracy that the defendants, ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, would make, and cause to be made, contributions from assets of corporations controlled by ROBERT HOPKINS, including National, Big Country, and Commodore.

17. It was a further part of this conspiracy that the defendants, ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, would misapply, and cause to be misapplied, funds and moneys of Commodore by (1) causing disbursement of Commodore funds for purported salary increases when the funds were really used to reimburse selected individual employees for ongoing PAC payroll deductions, and (2) causing disbursement of Commodore funds to reimburse selected individual employees for lump sum donations these employees had made to the ETF-PAC.

18. It was a further part of this conspiracy that defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL would make, and cause to be made, false entries into the books and records of Commodore by causing the books and records to erroneously reflect that selected employees received regular salary increases and reimbursements for travel expenses, when

INDICTMENT - Page 8

such payments were always designed to be used for a different purpose, that is, to reimburse said employees for political contributions he or she had been urged to make.

19.  During the period 1982 through 1986, it was a further part of this conspiracy that ROBERT HOPKINS and MORTEN HOPKINS would cause to be used approximately $135,000 of moneys and funds of National, Big Country, and Commodore, respectively, for political purposes and would conceal that fact from the Federal Election Commission.

D.   THE OVERT ACTS OF THE CONSPIRACY

20.  In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed in the Northern District of Texas:

(a)  In early 1982 MORTEN HOPKINS had a conversation with Gwynne Autry regarding payroll deductions from her salary for political contributions and reimbursement from her employer for these deductions.

(b)  In early 1982 MORTEN HOPKINS had a conversation with Tyler Brown regarding payroll deductions from his salary for political contributions and reimbursement from his employer for these deductions.

(c)  In early 1982 MORTEN HOPKINS had a conversation with Bill Jackson regarding payroll deductions from his salary for political contributions and reimbursement from his employer for these deductions.

INDICTMENT - Page 9

(d)   In early 1982 MORTEN HOPKINS had a conversation with Tom Taylor regarding payroll deductions from his salary for political contributions and reimbursement from his employer for these deductions.

(e)   In or about October 1982, JOHN HARRELL had a conversation with Gary Matthews regarding payroll deductions from his salary for political contributions and reimbursement from his employer for these deductions.

(f)   In or about October 1982, JOHN HARRELL had a conversation with Mike Gamble regarding payroll deductions from his salary for political contributions and reimbursement from his employer for these deductions.

(g)   In or about April 1984, ROBERT HOPKINS spoke with Charles Delphenis about terminating the NPAC.

(h)   In or about April 1984, ROBERT HOPKINS had a conversation with Ann Williams regarding the disposition of the funds in the NPAC account.

(i)   In or about April 1984, ROBERT HOPKINS caused a new account to be opened called "Robert H. Hopkins, Jr., Custodian for Various Employees."

(j)   In or about June 1985, MORTEN HOPKINS had a conversation with Tyler Brown regarding a $2,000.00 payment to the ETF-PAC.

(k)   In or about July 1985, JOHN HARRELL had a conversation with Gary Matthews regarding a $2,000.00 payment to the ETF-PAC.

INDICTMENT - Page 10

(l)   In or about June 1985, JOHN HARRELL caused a letter to be sent which transmitted $15,000.00 to the ETF-PAC.

(m)   In or about July 1985, JOHN HARRELL caused a letter to be sent which transmitted $10,000.00 to the ETF-PAC.

All in violation of Title 18, United States Code, Section 371.

COUNT 2

Concealment and Covering Up
by Scheme and Device
[18 U.S.C. §§1001,2]

1.    The Grand Jury realleges and incorporates herein as if
set forth in full paragraphs 1 through 4, 5.a. through 5.d., and
8 of Count 1 of this indictment and further alleges that:

2.    On or about January 18, 1984, in the Dallas Division of
the Northern District of Texas, defendants ROBERT HOPKINS and
MORTEN HOPKINS, in a matter within the jurisdiction of the
Federal Election Commission, did knowingly and willfully, by a
scheme and device, cause the treasurer of NPAC to conceal and
cover up a material fact, in that the defendants caused the
treasurer, in a "REPORT OF RECEIPTS AND DISBURSEMENTS," to inform
the Federal Election Commission that approximately $13,630.00 of
voluntary individual contributions from the earnings of various
individuals that had been made to NPAC, thereby concealing and
covering up that, as the defendants very well knew, the
individual contributors were used as conduits for contributions
actually made with moneys and funds of National, Big Country, and
Commodore, respectively.

A violation of Title 18, United States Code, Sections 1001
and 2.

INDICTMENT - Page 12

COUNT 3

Concealment and Covering Up
by Scheme and Device
[18 U.S.C. §§1001,2]

1.    The Grand Jury realleges and incorporates herein as if set forth in full paragraphs 1 through 4, 5.a. through 5.d., and 8 of Count 1 of this indictment and further alleges that:

2.    On or about April 17, 1984, in the Dallas Division of the Northern District of Texas, defendants ROBERT HOPKINS and MORTEN HOPKINS, in a matter within the jurisdiction of the Federal Election Commission, did knowingly and willfully, by a scheme and device, cause the treasurer of NPAC to conceal and cover up a material fact, in that the defendants caused the treasurer, in a "REPORT OF RECEIPTS AND DISBURSEMENTS," to inform the Federal Election Commission that approximately $20,165.00 were voluntary individual contributions from the earnings of various individuals that had been made to NPAC, thereby concealing and covering up that, as the defendants very well knew, the individual contributors were used as conduits for contributions actually made with moneys and funds of National, Big Country, and Commodore, respectively.

A violation of Title 18, United States Code, Sections 1001 and 2.

INDICTMENT - Page 13

COUNTS 4-17
Misapplication
[18 U.S.C. §§657,2]

1.   The Grand Jury realleges and incorporates herein as if set forth in full paragraphs 1 through 3, 5, 6, and 9 of Count 1 of this indictment and further alleges that:

2.   In or about the periods ("Inclusive Dates of Reimbursements") listed below for Counts 4 through 17, respectively, in the Dallas Division of the Northern District of Texas, defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, each connected in some capacity with Commodore, an institution having accounts insured by the FSLIC, with intent to injure and defraud Commodore, knowingly and willfully did misapply, and cause to be misapplied, moneys and funds of Commodore, causing approximately $14,517 of Commodore's moneys and funds to be used illegally to reimburse the individuals listed below for their political contributions made through the payroll deductions listed below.  These payroll deductions were made into a Commodore account controlled by defendant ROBERT HOPKINS named "Robert H. Hopkins, Jr., Custodian for Various Employees."

| COUNT | Inclusive Dates of Reimbursements | Employee | Amount Reimbursed/ Payroll Deductions |
|---|---|---|---|
| 4 | 08/01/84 through 06/01/86 | Bryce Fowler | $1,204.00 |
| 5 | 08/01/84 through 06/01/86 | Tom Dawson | $1,118.00 |
| 6 | 08/01/84 through 06/01/86 | Gwynne Autry | $1,118.00 |
| 7 | 08/01/84 through 06/01/86 | William E. Gilliland | $1,118.00 |
| 8 | 08/01/84 through 06/01/86 | Sylvia Coats | $1,247.00 |
| 9 | 08/01/84 through 06/01/86 | Bonita Grogan | $1,419.00 |
| 10 | 08/01/84 through 06/01/86 | June Nelson | $1,089.00 |
| 11 | 08/01/84 through 06/01/86 | Linda Barnett | $1,204.00 |
| 12 | 01/01/85 through 06/01/86 | Robin Bennett | $ 850.00 |
| 13 | 01/01/85 through 06/01/86 | Tyler Brown | $ 850.00 |
| 14 | 01/01/85 through 06/01/86 | Teresa Bowling | $ 850.00 |
| 15 | 01/01/85 through 06/01/86 | E. Morten Hopkins | $ 850.00 |
| 16 | 01/01/85 through 06/01/86 | Tom Taylor | $ 800.00 |
| 17 | 01/01/85 through 06/01/86 | Gary W. Spross | $ 800.00 |

All in violation of Title 18, United States Code, Sections 657 and 2.

INDICTMENT - Page 15

COUNTS 18-25
Misapplication
[18 U.S.C. §§657,2]

1.   The Grand Jury realleges and incorporates herein as if set forth in full paragraphs 1 through 3 and 6, 7 and 9 of Count 1 of this indictment and further alleges that:

2.   On or about the dates listed below under the heading "Date of Reimbursement," for Counts 18 through 25, respectively, in the Dallas Division of the Northern District of Texas, defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, each connected in some capacity with Commodore, an institution having accounts insured by the FSLIC, with intent to injure and defraud Commodore, knowingly and willfully did misapply, and cause to be misapplied, moneys and funds of Commodore, causing approximately $15,000 of Commodore's moneys and funds to be used illegally to reimburse the individuals listed below for their contributions to ETF-PAC in the amounts listed below:

| COUNT | Date of Reimbursement | Employee | Amount |
|-------|----------------------|----------|--------|
| 18 | June 26, 1985 | David R. Farmer | $1,000.00 |
| 19 | June 27, 1985 | Tyler Brown | $2,000.00 |
| 20 | June 27, 1985 | William E. Gilliland | $2,000.00 |
| 21 | July 5, 1985 | Robbie L. Cook | $2,000.00 |
| 22 | July 5, 1985 | Gary D. Matthews | $2,000.00 |
| 23 | July 6, 1985 | Mike Gamble | $2,000.00 |
| 24 | July 8, 1985 | Joe Collins | $2,000.00 |
| 25 | July 8, 1985 | Gary W. Spross | $2,000.00 |

INDICTMENT - Page 16

All in violation of Title 18, United States Code, Sections 657 and 2.

COUNTS 26-39
False Entries
[18 U.S.C. §§1006,2]

1.    The Grand Jury realleges and incorporates herein as if set forth in full paragraphs 1 through 3, 5, 6, 9 and 10 of Count 1 of this indictment and further alleges that:

2.    In or about the periods ("Inclusive Dates of Reimbursements") listed below for Counts 26 through 39, respectively, in the Dallas Division of the Northern District of Texas, defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, each connected in some capacity with Commodore, an institution having accounts insured by the FSLIC, with intent to (1) deceive the Bank Board and (2) injure and defraud Commodore, knowingly and willfully did cause false entries to be made in the books and records of Commodore, in that the defendants caused payroll records of Commodore (Commodore's general ledger and employee expense records relating to the below listed "Payroll Deductions") to show that the entire dollar figure designated as regular earnings for each pay period for the below listed employees was actually disbursed as earnings, when in truth and in fact, as the defendants well knew, the entire dollar figure designated as regular earnings for the below listed employees was not disbursed as earnings, but instead a portion of the earnings disbursements for each of the below listed employees was used to repay the employees the amounts listed below which had been deducted from their pay to provide moneys for political purposes.

INDICTMENT - Page 18

| COUNT | Inclusive Dates of Reimbursements | Employee | Payroll Deductions |
|---|---|---|---|
| 26 | 08/01/84 through 06/01/86 | Bryce Fowler | $1,204.00 |
| 27 | 08/01/84 through 06/01/86 | Tom Dawson | $1,118.00 |
| 28 | 08/01/84 through 06/01/86 | Gwynne Autry | $1,118.00 |
| 29 | 08/01/84 through 06/01/86 | William E. Gilliland | $1,118.00 |
| 30 | 08/01/84 through 06/01/86 | Sylvia Coats | $1,247.00 |
| 31 | 08/01/84 through 06/01/86 | Bonita Grogan | $1,419.00 |
| 32 | 08/01/84 through 06/01/86 | June Nelson | $1,089.00 |
| 33 | 08/01/84 through 06/01/86 | Linda Barnett | $1,204.00 |
| 34 | 01/01/85 through 06/01/86 | Robin Bennett | $ 850.00 |
| 35 | 01/01/85 through 06/01/86 | Tyler Brown | $ 850.00 |
| 36 | 01/01/85 through 06/01/86 | Teresa Bowling | $ 850.00 |
| 37 | 01/01/85 through 06/01/86 | E. Morten Hopkins | $ 850.00 |
| 38 | 01/01/85 through 06/01/86 | Tom Taylor | $ 800.00 |
| 39 | 01/01/85 through 06/01/86 | Gary W. Spross | $ 800.00 |

All in violation of Title 18, United States Code, Sections 1006 and 2.

INDICTMENT - Page 19

COUNTS 40-47
False Entries
[18 U.S.C. §§1006,2]

1.   The Grand Jury realleges and incorporates herein as if set forth in full paragraphs 1 through 3 and 6, 7, 9 and 10 of Count 1 of this indictment and further alleges that:

2.   On or about the dates listed below under the heading "Dates of Reimbursements," for Counts 40 through 47, respectively, in the Dallas Division of the Northern District of Texas, defendants ROBERT HOPKINS, MORTEN HOPKINS, and JOHN HARRELL, each connected in some capacity with Commodore, an institution having accounts insured by the FSLIC, with intent to (1) deceive the Bank Board and (2) injure and defraud Commodore, knowingly and willfully did cause false entries to be made in the books and records of Commodore, in that the defendants caused Commodore's general ledger to show reimbursements to the below listed employees for business expenses, when in truth and in fact, as the defendants very well knew, these reimbursements actually were made to repay the employees for their contributions, in the amounts listed below, to the ETF-PAC, which the employees had made at the urging and with the knowledge of the defendants.

| COUNT | Date of Reimbursement | Employee | Amount |
|-------|----------------------|----------|--------|
| 40 | June 26, 1985 | David R. Farmer | $1,000.00 |
| 41 | June 27, 1985 | Tyler Brown | $2,000.00 |

INDICTMENT - Page 20

| COUNT | Date of Reimbursement | Employee | Amount |
|---|---|---|---|
| 42 | June 27, 1985 | William E. Gilliland | $2,000.00 |
| 43 | July 5, 1985 | Robbie L. Cook | $2,000.00 |
| 44 | July 5, 1985 | Gary D. Matthews | $2,000.00 |
| 45 | July 6, 1985 | Mike Gamble | $2,000.00 |
| 46 | July 8, 1985 | Joe Collins | $2,000.00 |
| 47 | July 8, 1985 | Gary W. Spross | $2,000.00 |

All in violation of Title 18, United States Code, Sections 1006 and 2.

A TRUE BILL:

_____
FOREPERSON

_____
MARVIN COLLINS
United States Attorney

_____
DAVID L. JARVIS
Assistant United States Attorney

_____
MARK ADLER
Trial Attorney, Fraud Section
Criminal Division

INDICTMENT - Page 21