# EXHIBIT E:

**Indictment from *United States v. Mariani,* Criminal Action No. 97-00225-TIV (M.D. Pa.)**

**Defendant Concord Management and Consulting LLC's
Motion to Dismiss the Indictment
*United States v. Internet Research Agency LLC, et al.,*
Criminal Action No. 18-00032-DLF**

DMB:BB:nu

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

FILED
SCRANTON

v.    OCT -7 1997

PER _____
DEPUTY CLERK

RENATO P. MARIANI
MICHAEL L. SERAFINI
LEO R. DEL SERRA,
ALAN W. STEPHENS,
ROBERT GIGLIO and
FRANK SERAFINI,

Defendants.

CR.- 97-225

VIOLATIONS:

18 U.S.C. § 371, Conspiracy
(Counts 1 and 135);
18 U.S.C. § 1001, False Statements
(Counts 2-11);
2 U.S.C. § 441b(a) and 437g(d),
Prohibited Corporate Contributions
(Counts 12-13);
2 U.S.C. § 441f and 437g(d),
Conduit Campaign Contributions
(Counts 14-134);
18 U.S.C. § 1503, Obstruction of
Justice (Counts 136 and 138);
18 U.S.C. § 1512(b), Tampering with
a Witness (Count 137); and
18 U.S.C. § 1623, False Statements
Before Grand Jury (Counts 139-140).

## INDICTMENT

### COUNT ONE

THE GRAND JURY CHARGES:

#### I.  INTRODUCTION.

1.  At all times relevant to this indictment, defendant
**RENATO P. MARIANI** was the president, treasurer and 25%
shareholder of Empire Sanitary Landfill, Inc. ("Empire") and
Danella Environmental Technologies, Inc ("Danella").

2.  At all times relevant to this indictment, defendant
**MICHAEL L. SERAFINI** was the assistant secretary of Empire and the
assistant treasurer of Danella.  In addition, defendant

**MICHAEL L. SERAFINI** was a partner in a partnership trading as FMKF Company ("FMKF"), which had a financial connection to Empire.

3.   At all times relevant to this indictment, defendant **LEO R. DEL SERRA** was the comptroller of Empire.

4.   At all times relevant to this indictment, defendant **ALAN W. STEPHENS** was the operations manager of Empire.

5.   At all times relevant to this indictment, defendant **ROBERT GIGLIO** was the proprietor of a plumbing and heating business known as Robert Giglio Plumbing and Heating which was located in Old Forge, Pennsylvania, and was an unindicted co-conspirator in the conspiracy alleged in count one of this indictment.

6.   At all times relevant to this indictment, defendant **FRANK SERAFINI** was a Pennsylvania State Representative representing the 114th Legislative District which includes an area in the Middle District of Pennsylvania where Empire and Danella did business.   In addition, defendant **FRANK SERAFINI** was the uncle of defendant **MICHAEL L. SERAFINI** and was also a partner in FMKF.   **FRANK SERAFINI** was also an unindicted co-conspirator in the conspiracy alleged in count one of this indictment.

7.   At all times relevant to this indictment, Empire was a Pennsylvania corporation which operated a solid waste transfer, disposal and landfill business in Pennsylvania and New York.   As part of this business Empire operated a solid waste landfill commonly known as the Empire Landfill ("the landfill") in Taylor

-2-

Borough and Ransom Township within Lackawanna County, Pennsylvania, which is within the Middle District of Pennsylvania. A large percentage of the landfill's business was interstate in nature, that is a large portion of the waste dumped at the landfill had its origin outside of Pennsylvania, i.e., New Jersey and New York. Empire's administrative headquarters were located at the landfill site.

8. At all times relevant to this indictment, Danella was a Pennsylvania corporation which operated a solid waste collection and transportation business in Pennsylvania and New York. Danella also operated in Lackawanna County, Pennsylvania, within the Middle District of Pennsylvania, and its administrative headquarters were also located at the landfill site.

9. At all times relevant to this indictment, Bowser, Weaver and Cousounis, a law firm located in Philadelphia, Pennsylvania, operated a political action committee known as the Bowser, Weaver and Cousounis PAC ("the BWC PAC"). Charles Bowser, a partner in the law firm, was an attorney who represented Empire and Danella.

10. Dutko and Associates, Inc. ("Dutko") and the DCS Group were associated consulting firms located in Washington D.C. that were hired by Empire on January 1, 1995, for government relations and public relations services. One of Empire's objectives under the retainer agreement with Dutko was to have an impact on legislation and policies which could affect the flow of interstate waste to the landfill. Specifically, Empire desired to have an impact on the reconfiguration of the Interstate

-3-

Transportation of Municipal Solid Waste Act which was pending in the 104th Congress.

11. At all times relevant to this indictment, Empire was obligated to pay Frances Serafini, defendant **MICHAEL L. SERAFINI**, Kimberly Ann Serafini, and defendant **FRANK SERAFINI**, co-partners trading as FMKF, a royalty of $1.50 for each short ton (2,000 pounds) of waste disposed of at the landfill. Defendant **FRANK SERAFINI** was entitled to receive 50% of the royalty distribution and the remaining 50% was shared in equal amounts by the defendant **MICHAEL L. SERAFINI**, his mother, Frances Serafini, and his sister, Kimberly Ann Serafini.

12. By virtue of a stock purchase agreement dated December 13, 1996, the sole shareholders of Empire and Danella, defendant **RENATO P. MARIANI**, Carmen A. Danella and James D. Danella, sold all of the stock of Empire and Danella and ceased operating Empire and Danella as of that date.

13. At all times relevant to the indictment, the Federal Election Campaign Act, Title 2, United States Code, Section 431, et seq. ("the Campaign Act"), in particular, Title 2, United States Code, Section 441b(a) specifically prohibited corporations from making contributions or expenditures in connection with the nomination and election of candidates for federal office. Section 441b(a) also prohibited any officer of a corporation to consent to a prohibited contribution or expenditure.

14. At all times relevant to the indictment, the Campaign Act, in particular Title 2, United States Code, Section

-4-

441a(a)(1) specifically prohibited individuals from contributing more than $1,000 to any federal candidate per election and under Section 441a(a)(3) individuals are prohibited from making overall annual contributions in excess of $25,000.

15. At all times relevant to the indictment, the Campaign Act, in particular Title 2, United States Code, Section 441f, specifically prohibited any person from making a contribution in the name of another person or knowingly permitting his or her name to be used to effect such a contribution. Section 441f is violated if a person gives funds to a straw donor, known as a "conduit," for the purpose of having the conduit pass the funds on to a federal candidate as his or her own contribution. A violation also can occur if a person reimburses a donor who has already given to a candidate, thereby converting the donor's contribution to his or her own.

16. At all times relevant to this indictment, the Campaign Act, in particular Title 2, United States Code, Section 434, required that each treasurer of a political committee file periodic reports of receipts and disbursements, which reports were to identify each person who made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution.

17. At all times relevant to this indictment, the Federal Election Commission ("FEC") was an agency of the United States

government entrusted with the responsibility of enforcing the reporting requirements of the Campaign Act and for directing, investigating and instituting civil enforcement actions with respect to violations of the Campaign Act, including the provisions referred to in paragraphs 13 through 16 above. In addition, the FEC was and is responsible for making available to the public specific information about the amount and sources of political contributions to federal candidates and their political committees.

## II. THE CONSPIRACY.

18. Beginning at a time unknown to the grand jury, but at least as early as August 1994 and continuing thereafter to on or about December 13, 1996, in Lackawanna County, within the Middle District of Pennsylvania and elsewhere, the defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI, LEO R. DEL SERRA** and **ALAN W. STEPHENS** and others, both known and unknown to the grand jury, did knowingly and willfully combine, conspire, confederate and agree together and with each other:

A. to defraud the United States by impairing, impeding, defeating and obstructing the lawful functions and duties of the FEC in violation of Title 18, United States Code, Section 371.

B. to knowingly and willfully cause others to make false statements to the FEC in violation of Title 18, United States Code, Section 1001.

-6-

C.  to knowingly and willfully make, consent to, and cause to be made, corporate contributions to federal candidates and their political committees in violation of Title 2, United States Code, Section 441b.

D.  to knowingly and willfully make and cause to be made contributions to federal candidates and their political committees in the name of third persons ("conduits") in violation of Title 2, United States Code, Section 441f.

## III.  MANNER AND MEANS OF THE CONSPIRACY.

19.  The defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI, LEO R. DEL SERRA** and **ALAN W. STEPHENS** carried out the conspiracy in the following manner and by the following means:

### The Overall Scheme

20.  From at least as early as August 1994 and continuing until on or about December 13, 1996, the defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI, LEO R. DEL SERRA** and **ALAN W. STEPHENS** and their co-conspirators devised and executed a scheme whereby corporate money belonging to Empire would be used to make secret, disguised and illegal campaign contributions to various federal candidates and their political committees.

21.  In general, the defendants and their co-conspirators would identify candidates that they wished to support and thereafter would solicit campaign contributions from numerous conduits including Empire and Danella employees, Empire and

-7-

Danella business associates, as well as their own friends and family. The defendants and their co-conspirators would agree to reimburse those individuals for their contributions and thereafter would use corporate funds to reimburse those individuals and execute the scheme. In addition, the defendants themselves and their co-conspirators would act as conduits and reimburse themselves from corporate funds. The defendants and their co-conspirators would then disguise the use of the corporate funds for this illegal purpose in the books and records of the corporation by coding the reimbursements as office entertainment expenses or some other legitimate corporate expense.

22. The defendants' long standing pattern of using conduits to disguise illegal corporate contributions evidenced their intent to interfere with the accurate reporting of campaign contributions and to deliberately cause false information to be conveyed to the FEC. As a result of their scheme, the defendants and their co-conspirators did in fact interfere with the accurate reporting of numerous campaign contributions and did in fact cause false information to be conveyed to the FEC on numerous and separate occasions.

23. The political committees that received illegal corporate contributions during this time period and thereafter made false reports to the FEC included, but was not limited to: (1) Dole for President; (2) Clinton/Gore '96 Primary Committee; (3) Santorum '94; (4) Arlen Specter '96; (5) Haytaian-U.S. Senate '94; (6) Fox

-8-

for Congress; (7) Paxon for Congress; (8) Duhaime for Senate; (9) Friends of Max Baucus; and (10) Pallone for Congress. The total of the illegal campaign contributions for all ten campaigns referenced above was approximately $129,000.

## THE DOLE CONTRIBUTIONS

24.  In 1995, U.S. Senator Robert Dole was a candidate for President of the United States. The Dole for President Committee ("the Dole Committee") was a political committee authorized to support the candidacy of Senator Dole and as such was subject to the reporting provisions and campaign financing limitations of the Campaign Act.

25. In April 1995, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** were invited to support Senator Dole's candidacy and were asked to participate as members of the New Jersey Steering Committee, a fund-raising arm of the Dole Committee. A Steering Committee luncheon was scheduled for April 29, 1995 at the Newark Airport Hilton for the purpose of raising funds for Senator Dole.

26.  In the days prior to the Steering Committee luncheon, defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI, LEO R. DEL SERRA** and **ALAN W. STEPHENS** and others known and unknown contacted numerous individuals, including Empire and Danella employees, Empire and Danella business associates, and the defendants' own friends and family in an effort to raise funds for the Dole Committee. The donors were instructed to issue personal checks

-9-

payable to the committee in amounts of $1,000 or $2,000. The donors were then reimbursed for their contributions by Empire directly or Empire acting through defendant **MICHAEL L. SERAFINI**.

27. On April 29, 1995, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** attended the Steering Committee luncheon at the Newark Airport Hilton. During the event, they turned over a large envelope to officials of the Dole Committee which contained numerous conduit contributions. As a result, the defendants caused approximately $80,000 to be donated to the Dole Committee in the form of illegal conduit contributions.

28. The reimbursements for the conduits' contributions took several forms. Empire issued approximately nine corporate checks directly reimbursing approximately twenty individuals a total of $20,000. Defendant **MICHAEL L. SERAFINI** issued approximately thirty-four (34) personal checks from a checking account he held with Melinda Marcotte, reimbursing approximately fifty-three (53) individuals, including the BWC PAC, a total of $58,000. Defendant **RENATO P. MARIANI** then issued defendant **MICHAEL L. SERAFINI** an Empire corporate check to reimburse him for the $58,000, as well as to reimburse him for the expense of his own contribution of $1,000 and the $1,000 contribution of Melinda Marcotte.

29. Defendants **RENATO P. MARIANI**, **LEO R. DEL SERRA** and **ALAN W. STEPHENS** also acted as conduits regarding their contributions to the Dole Committee. Defendant **RENATO P. MARIANI** was reimbursed by Empire directly and defendants **LEO R. DEL SERRA**

-10-

and **ALAN W. STEPHENS** were reimbursed by defendant **MICHAEL L. SERAFINI**, who as stated above was ultimately reimbursed by Empire.

30.   Frank Serafini acted as a conduit regarding his $1,000 contribution to the Dole Committee and also solicited a $1,000 conduit contribution from his legislative aide, Thomas Harrison. Frank Serafini reimbursed Thomas Harrison from his own personal funds and was ultimately reimbursed for this $1,000 expense, as well as for his own $1,000 contribution by a $2,000 check issued by defendant **MICHAEL L. SERAFINI** payable to Frank Serafini.

31.   Robert Giglio was solicited by defendant **MICHAEL L. SERAFINI** to make a contribution to the Dole Committee and was also requested to seek contributions from his mother, Dolores Giglio, his sister, Mary McCormack, and his girlfriend, Ann Pompey.   Thereafter, all four individuals contributed $1,000 to the Dole Committee.   Robert Giglio reimbursed his family for their contributions and Empire issued Robert Giglio a corporate check, signed by defendant **MICHAEL L. SERAFINI** in the amount of $4,000, reimbursing him for his contribution and his family's contributions.

32.   On or about July 17, 1995, the Dole Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between April 1, 1995 and June 30, 1995.   As a result of the defendants' actions, that report falsely attributed approximately $75,000 in campaign contributions made by Empire as having been made by the conduits.

-11-

## THE CLINTON/GORE CONTRIBUTIONS

33. In September 1995, President William J. Clinton and Vice President Al Gore, Jr., were candidates for President and Vice President of the United States. The Clinton/Gore '96 Primary Committee ("the Clinton/Gore Committee") was a political committee authorized to support the candidacies of President Clinton and Vice President Gore and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

34. In September 1995, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** were invited to support President Clinton's and Vice President Gore's candidacies and were invited to attend the Pennsylvania Presidential Gala on September 18, 1995 at the Wyndham Franklin Plaza Hotel in Philadelphia, Pennsylvania.

35. In connection with this event, one or more of the defendants contacted numerous individuals employed by Empire in an effort to raise funds for the Clinton/Gore Committee. The donors were instructed to issue checks payable to the Clinton/ Gore Committee in the amount of $1,000. The donors were then reimbursed for their contributions by Empire acting through defendant **MICHAEL L. SERAFINI**.

36. As a result of the defendants' actions, ten conduits each issued a check for $1,000 for a total of $10,000 that was contributed to the Clinton/Gore Committee. Nine of those conduits were reimbursed by personal checks issued by defendant **MICHAEL L. SERAFINI** for which he was ultimately reimbursed by

-12-

Empire. One conduit, the defendant **LEO R. DEL SERRA**, was reimbursed directly by Empire.

37. On or about December 28, 1995, the Clinton/Gore Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between July 1, 1995 and September 30, 1995. As a result of the defendants' actions, that report falsely attributed approximately $10,000 in campaign contributions made by Empire as having been made by the conduits.

## THE SPECTER CONTRIBUTIONS

38. In January 1995, United States Senator Arlen Specter was a candidate for President of the United States. The Arlen Specter Presidential Exploratory Fund and Arlen Specter '96 ("the Specter Committees") were political committees authorized to support the candidacy of Senator Specter and as such were subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

39. In January 1995, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** were invited to support Senator Specter's candidacy and were invited to attend a private cocktail reception with Senator Specter on January 27, 1995 at the Hilton Hotel in Fort Lee, New Jersey. The cocktail reception was to be held immediately prior to the Bergen County Republican Organization Victory Gala which was held at the Palisadium in Cliffside Park, New Jersey.

40. In connection with the cocktail reception, one or more of the defendants contacted numerous individuals employed by

-13-

Empire and associated with Empire in an effort to raise funds for the Specter Committees. The donors were instructed to issue checks payable to the Arlen Specter Presidential Exploratory Fund in amounts of $1,000 or $2,000. The donors were then reimbursed for their contributions directly by Empire.

41. As a result of the defendants' actions, ten conduits each contributed $1,000 for a total of $10,000 that was contributed to the Specter Committees. Defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** also acted as conduits in connection with their contributions to the Specter Committees and were reimbursed directly by Empire.

42. On or about April 15, 1995, the Specter Committees filed a report with the FEC summarizing all of its receipts and disbursements for the period between November 1, 1994 and March 31, 1995. As a result of the defendants' actions, that report falsely attributed approximately $10,000 in campaign contributions made by Empire as having been made by the conduits.

## THE HAYTAIAN CONTRIBUTIONS

43. In October 1994, Chuck Haytaian was a candidate for United States Senator for New Jersey. Haytaian-U.S. Senate '94 ("the Haytaian Committee") was a political committee authorized to support the candidacy of Chuck Haytaian and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

44. In October 1994, defendants **RENATO P. MARIANI** and

-14-

**MICHAEL L. SERAFINI** were invited to support Chuck Haytaian's candidacy and were invited to attend a fundraiser on October 14, 1994, at the Hilton Hotel in Fort Lee, New Jersey.

45. In connection with the fundraising event, one or more of the defendants contacted numerous individuals employed by Empire in an effort to raise funds for the Haytaian Committee. The donors were instructed to issue checks payable to the Haytaian Committee in amounts of $1,000 or $2,000. The donors were then reimbursed for their contributions directly by Empire.

46. As a result of the defendants' actions, ten conduits each contributed $1,000 for a total of $10,000 that was contributed to the Haytaian Committee. Defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** also acted as conduits in connection with their contributions to the Haytaian Committee and were reimbursed directly by Empire.

47. On or about October 26, 1994, the Haytaian Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between October 1, 1994 and October 19, 1994. As a result of the defendants' actions, that report falsely attributed approximately $10,000 in campaign contributions made by Empire as having been made by the conduits.

## THE SANTORUM CONTRIBUTIONS

48. In December 1994, United States Senator Rick Santorum had been recently elected to the office of United States Senator for Pennsylvania. Santorum '94 ("the Santorum Committee") was a

-15-

political committee authorized to support the candidacy of Senator Santorum, as well as retire a debt accumulated from the recent election. As such, the Santorum Committee was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

49. In December 1994, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** were invited to support Senator Santorum and were invited to attend a fundraising event for Senator Santorum on December 14, 1994 at the Glenmaura Country Club in Moosic, Pennsylvania.

50. In connection with the fundraising event, one or more of the defendants contacted numerous individuals employed by Empire and associated with Empire in an effort to raise funds for the Santorum Committee. The donors were instructed to issue checks payable to the Santorum Committee in an amount of $1,000. The majority of donors were then reimbursed for their contributions directly by Empire.

51. As a result of the defendants' actions, approximately nine individuals each contributed $1,000 for a total of $9,000 that was contributed to the Santorum Committee. Six of those individuals acted as conduits and were reimbursed directly by Empire. Defendants **RENATO P. MARIANI** and **LEO R. DEL SERRA** also acted as conduits themselves in connection with their contributions to the Santorum Committee and were reimbursed directly by Empire.

52. On or about February 1, 1995, the Santorum Committee

-16-

filed a report with the FEC summarizing all of its receipts and disbursements for the period between November 29, 1994 and December 31, 1994. As a result of the defendants' actions, that report falsely attributed approximately $6,000 in campaign contributions made by Empire as having been made by the conduits.

## THE DUHAIME CONTRIBUTIONS

53.   In June 1995, Richard Duhaime was a candidate for United States Senator from New Jersey. Duhaime for Senate ("the Duhaime Committee") was a political committee authorized to support the candidacy of Richard Duhaime and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act. The Duhaime Committee also raised funds under the name "Campaign '96."

54.   In June 1995, defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** were invited to support Richard Duhaime and were invited to attend a fundraising event for Richard Duhaime on June 5, 1995 at the Tara Hotel and restaurant in Parsippany, New Jersey.

55.   In connection with the fundraising event, defendant **MICHAEL L. SERAFINI** and others unknown, contacted several individuals connected to Empire in an effort to raise funds for the Duhaime Committee. The donors were instructed to issue checks payable to Campaign '96 in the amount of $1,000. Three of the donors were reimbursed for their contributions directly by Empire. Robert Giglio acted as a conduit for his own

-17-

contribution and also reimbursed Dolores Giglio and Mary McCormack for their contributions. Empire then issued Robert Giglio a corporate check signed by defendant **LEO R. DEL SERRA**, reimbursing him for his contribution and his family's contributions to the Duhaime Committee.

56. As a result of the defendants' actions, five conduits each contributed $1,000 for a total of $5,000 that was contributed to the Duhaime Committee.

57. On January 29, 1996, the Duhaime Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between June 1, 1995 and December 31, 1995. As a result of the defendants' actions, that report falsely attributed approximately $5,000 in campaign contributions made by Empire as having been made by the conduits.

## THE PALLONE CONTRIBUTIONS

58. In August 1994, United States Representative Frank Pallone, Jr., was a candidate for election to the United States House of Representatives. Pallone for Congress ("the Pallone Committee") was a political committee authorized to support the candidacy of Representative Frank Pallone, Jr., and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

59. On August 29, 1994, the Pallone Committee held a fundraiser at La Fontana Ristorante in New Brunswick, New Jersey. In connection with that event, one or more of the defendants

-18-

contacted several individuals employed by Empire and doing business with Empire in an effort to raise funds for the Pallone Committee. The donors were instructed to issue checks payable to the Pallone Committee in the amount of $1,000. The donors were then reimbursed for their contributions directly by Empire.

60. As a result of the defendants' actions, three conduits each contributed $1,000 for a total of $3,000 that was contributed to the Pallone Committee. Defendant **LEO R. DEL SERRA** also acted as a conduit in connection with his contribution to the Pallone Committee and was reimbursed directly by Empire.

61. On October 17, 1994, the Pallone Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between July 1, 1994 and September 30, 1994. As a result of the defendants' actions, that report falsely attributed approximately $3,000 in campaign contributions made by Empire as having been made by the conduits.

## THE FOX CONTRIBUTIONS

62. In October 1994, United States Representative Jon Fox was a candidate for election to the United States House of Representatives. The Fox for Congress Committee ("the Fox Committee") was a political committee authorized to support the candidacy of Jon Fox and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

63. On or about October 27, 1994, one or more of the

-19-

defendants contacted several individuals connected with Empire in an effort to raise funds for the Fox Committee. The donors were instructed to issue checks payable to the Fox Committee in the amount of $1,000. Three of the donors were then reimbursed for their contributions directly by Empire.

64.   As a result of the defendants' actions, six individuals each contributed $1,000 for a total of $6,000 that was contributed to the Fox Committee. Three of those individuals acted as conduits and were reimbursed directly by Empire. Defendant **RENATO P. MARIANI** acted as one of those conduits in connection with his contribution to the Fox Committee.

65.   On or about December 12, 1994, the Fox Committee filed a report with the FEC summarizing all of the receipts and disbursements for the period between October 20, 1994 and November 28, 1994. As a result of the defendants' actions, that report falsely attributed approximately $3,000 in campaign contributions made by Empire as having been made by the conduits.

## THE BAUCUS CONTRIBUTIONS

66.   On or about June 20, 1995, United States Senator Max Baucus held a fundraising event at the offices of Dutko in Washington, D.C. Friends of Max Baucus ("the Baucus Committee") was a political committee authorized to support Max Baucus and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

67.   On or about June 16, 1995, defendant **MICHAEL L.**

-20-

**SERAFINI** directed Melinda Marcotte to issue a $1,000 check payable to the Baucus Committee. The contribution check was drawn on the joint checking account of defendant **MICHAEL L. SERAFINI** and Melinda Marcotte and was turned over to the Baucus Committee in connection with the June 20, 1995 fundraising event by an official of Dutko. The contribution was then reimbursed by an Empire check payable to defendant **MICHAEL L. SERAFINI**.

68.   On or about July 31, 1995, the Baucus Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between January 1, 1995 and June 30, 1995.   As a result of the defendants' actions, that report falsely attributed approximately $1,000 in campaign contributions made by Empire as having been made by the conduit.

## THE PAXON CONTRIBUTIONS

69.   In January 1996, the United States Representative Bill Paxon was a member of the United States House of Representatives. Paxon for Congress ("the Paxon Committee") was a political committee authorized to support Representative Bill Paxon and as such was subject to the reporting provisions and the campaign financing limitations of the Campaign Act.

70.   On February 5, 1996, a fundraising lunch for Representative Bill Paxon was held at the National Republican Congressional Committee headquarters in Washington D.C. Defendant **MICHAEL L. SERAFINI** was invited to support Representative Paxon in connection with this fundraiser.

-21-

71. Defendant **LEO R. DEL SERRA** contributed $1,000 to the Paxon Committee in connection with this event. The contribution check was turned over to the Paxon Committee by an official of Dutko. Defendant **LEO R. DEL SERRA** was then directly reimbursed by Empire for his contribution to the Paxon Committee.

72. On or about April 19, 1996, the Paxon Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between January 1, 1996 and March 31, 1996. As a result of the defendants' actions, that report falsely attributed approximately $1,000 in campaign contributions made by Empire as having been made by the conduit.

## OVERT ACTS

73. In furtherance of the conspiracy and to accomplish its unlawful objectives, the defendants and others both known and unknown committed the following overt acts, among others, in the Middle District of Pennsylvania and elsewhere:

74. On or about August 25, 1994, Empire issued three corporate checks payable to defendant **LEO R. DEL SERRA**, Charles P. Hunkele and John Reilly, each check in the amount of $1,000.

75. On or about August 25, 1994, defendant **LEO R. DEL SERRA** and John Reilly issued checks payable to the Pallone Committee, each check in the amount of $1,000.

76. On or about August 29, 1994, Charles P. Hunkele issued a check payable to the Pallone Committee in the amount of $1,000.

77. On or about August 29, 1994, Raymond J. Lesniak attended a fundraiser for Representative Frank Pallone, Jr., held at La Fontana Ristorante in New Brunswick, New Jersey, and delivered the **DEL SERRA**, Reilly and Hunkele checks to the Pallone Committee.

78. On or about October 17, 1994, the Pallone Committee filed a report with the FEC summarizing its receipts and disbursements for the period between July 1, 1994 and September 30, 1994.

79. On or about October 10, 1994, Empire issued six corporate checks payable to defendant **MICHAEL L. SERAFINI** ($1,000), defendant **LEO R. DEL SERRA** ($2,000), Stacey Selig ($2,000), Gary Butler ($2,000), James Thomas ($2,000), and Peter Blasi ($1,000).

80. On or about October 10 and 11, 1994, defendant **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA**, as well as Jo Ann Del Serra, Peter Blasi, Gary Butler, Marion Butler, Stacey Selig, Lou Selig, James Thomas and Carol Ann Thomas issued checks in amounts of $1,000 and $2,000 payable to the Haytaian Committee.

81. On or about October 26, 1994, the Haytaian Committee filed a report with the FEC summarizing its receipts and disbursements for the period between October 1, 1994 and October 19, 1994.

82. On or about October 27 and 28, 1994, defendant **RENATO P. MARIANI** and his wife, Joan Mariani, issued checks for $1,000 payable to the Fox Committee.

-23-

83. On or about November 17, 1994, Empire issued a corporate check payable to defendant **RENATO P. MARIANI** in the amount of $5,000.

84. On or about October 27, 1994, Empire issued a corporate check payable to Gary Butler in the amount of $1,000.

85. On or about October 27, 1994, Marion Butler issued a check payable to the Fox Committee in the amount of $1,000.

86. On or about December 12, 1994, the Fox Committee filed a report with the FEC summarizing its receipts and disbursements for the period between October 20, 1994 and November 28, 1994.

87. On or about December 13, 1994, Empire issued a corporate check payable to defendant **LEO R. DEL SERRA** in the amount of $2,000.

88. On or about December 14, 1994, Empire issued a corporate check payable to defendant **MICHAEL L. SERAFINI** in the amount of $2,000 and a corporate check to defendant **RENATO P. MARIANI** in the amount of $2,000.

89. On or about December 14, 1994, defendant **RENATO P. MARIANI**, Joan M. Mariani, defendant **LEO R. DEL SERRA**, Jo Ann Del Serra, Melinda Marcotte and Louis Serafini issued checks payable to the Santorum Committee in amounts of $1,000 and $2,000.

90. On or about February 1, 1995, the Santorum Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between November 29, 1994 and December 31, 1994.

91. On or about January 20, 1995, Empire issued five

-24-

corporate checks payable to defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA**, as well as Gary Butler, James Thomas and Stacey Selig, each check in the amount of $2,000.

92. Between on or about January 23, 1995 and January 26, 1995, defendant **LEO R. DEL SERRA**, as well as Melinda Marcotte, Jo Ann Del Serra, Gary Butler, Marion Butler, James Thomas, Carol Thomas, Stacey Selig, Lou Selig and Louis Serafini issued checks payable to the Specter Committee in the amounts of $1,000 and $2,000.

93. On or about April 15, 1995, the Specter Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between November 1, 1994 and March 31, 1995.

94. On or about April 25, 1995, defendant **MICHAEL L. SERAFINI** directed his secretary Stacey Selig to issue thirty-four (34) checks drawn on his joint checking account with Melinda Marcotte to the following persons and in the following amounts:

| Ck. No. | Amount | Payee |
|---------|--------|-------|
| 426 | $2,000 | Leo and Jo Ann Del Serra |
| 427 | $2,000 | Jim and Carol Thomas |
| 429 | $1,000 | Louis Serafini |
| 430 | $1,000 | Francis Serafini |
| 431 | $2,000 | Frank Serafini |
| 432 | $2,000 | Mike and Donna Kon |
| 433 | $2,000 | Alan and Linda Stephens |
| 434 | $2,000 | Vincent and Susan Burney |
| 438 | $2,000 | Patrick and Susan Coccia |
| 439 | $2,000 | John Reilly |
| 440 | $2,000 | Diane and Arthur Bray |
| 441 | $1,000 | Joan Hummel |
| 442 | $2,000 | Paul and Gail Hummel |
| 443 | $1,000 | Geralyn Zazzera |
| 444 | $2,000 | Stacey and Louis Selig |
| 445 | $2,000 | Kim and John Scrantino |

| 446 | $2,000 | Peter and Jane Blasi |
| 447 | $1,000 | Chris Banko |
| 448 | $2,000 | Donald and Robin Hallock |
| 449 | $1,000 | Lisa Marcotte |
| 450 | $1,000 | Tom Cook |
| 451 | $2,000 | Tom and Fay Gable |
| 452 | $2,000 | Gary and Marion Butler |
| 453 | $1,000 | Diane Bratlee |
| 454 | $1,000 | Vince Bernabei |
| 455 | $2,000 | Paul and Brenda Keen |
| 456 | $2,000 | Dan and Sheila Zeleniak |
| 457 | $1,000 | Mike McNinch |
| 458 | $1,000 | Vince Ciccone |
| 459 | $2,000 | Tom and Renee Bergamino |
| 460 | $5,000 | BWC Political Action Committee |
| 461 | $1,000 | Mark Genell |
| 462 | $2,000 | Angelo Genell |
| 463 | $1,000 | Vince Ciccone |

95. Between April 27, 1995 and April 28, 1995, each payee listed in overt act 94 issued a check to the Dole Committee in an amount of $1,000 or $2,000 except the BWC PAC which issued a check payable to the Dole Committee in the amount of $5,000 dated May 10, 1995.

96. On or about April 27, 1995, Empire issued a corporate check payable to Bieber and Associates, Inc., in the amount of $2,000 and a corporate check payable to William Gilchrist in the amount of $2,000.

97. On or about April 27, 1995, George Bieber issued a check payable to the Dole Committee in the amount of $2,000.

98. On or about April 27, 1995, Empire issued a corporate check payable to defendant MICHAEL L. SERAFINI in the amount of $75,343.93.

99. On or about April 28, 1995, William Gilchrist issued a check payable to the Dole Committee in the amount of $2,000.

-26-

100. On or about April 28, 1995, defendant **MICHAEL L. SERAFINI** issued a check drawn on his joint account with Melinda Marcotte payable to the Dole Committee in the amount of $2,000.

101. On or about April 29, 1995, Richard Bodner issued a check payable to the Dole Committee in the amount of $2,000.

102. On or about May 1, 1995, Empire issued a corporate check payable to Rick Bodner in the amount of $2,000.

103. On or about May 1, 1995, Thomas Earl issued a check payable to the Dole Committee in the amount of $2,000.

104. On or about May 1, 1995, Empire issued a corporate check payable to Thomas Earl in the amount of $2,000.

105. On or about April 27, 1995, defendant **MICHAEL L. SERAFINI** solicited a contribution for the Dole Committee from Robert Giglio and members of Giglio's family including Dolores Giglio, Mary McCormack and Ann Pompey. On or about April 27, 1995, Robert Giglio, Dolores Giglio, Mary McCormack and Ann Pompey each issued checks payable to the Dole Committee in the amount of $1,000.

106. On or about April 28, 1995, Empire issued a corporate check payable to **ROBERT GIGLIO** in the amount of $4,000.

107. On or about April 25, 1995, Charles P. Hunkele issued a check payable to the Dole Committee in the amount of $2,000,

108. On or about May 23, 1995, Empire issued a corporate check payable to Charles Hunkele in the amount of $2,000.

109. On or about April 27, 1995, Renato Mariani and Lucy Mariani (the defendant **RENATO P. MARIANI**'s mother and father)

-27-

issued a check payable to the Dole Committee in the amount of $2,000.

110. On or about May 5, 1995, Empire issued a corporate check payable to Lucy Mariani in the amount of $2,000.

111. On or about April 27, 1995, defendant **RENATO P. MARIANI** issued a check payable to the Dole Committee in the amount of $2,000.

112. On or about May 9, 1995, Empire issued a corporate check payable to defendant **RENATO P. MARIANI** in the amount of $2,000.

113. On or about April 28, 1995, Frank Ripa issued a check payable to the Dole Committee in the amount of $2,000.

114. On or about April 28, 1995, Empire issued a check payable to Malter International, a chemical supply business owned by Frank Ripa, in the amount of $2,000.

115. On or about April 27, 1995, Frank Serafini solicited a $1,000 contribution to the Dole Committee from his legislative aide, Thomas Harrison. Thomas Harrison then issued a check payable to the Dole Committee in the amount of $1,000 and gave it to Frank Serafini. Frank Serafini then directed Thomas Harrison to reimburse himself for the contribution by issuing himself a check drawn on the account of Frank A. Serafini and Louis Serafini. Thomas Harrison issued himself the reimbursement check and deposited it the next day into his bank account.

116. On or about July 17, 1995, the Dole Committee filed a report with the FEC summarizing all of its receipts and

-28-

disbursements for the period between April 1, 1995 and June 30, 1995.

117.    On or about June 16, 1995, defendant **MICHAEL L. SERAFINI** directed Melinda Marcotte to issue a check payable to the Baucus Committee from their joint checking account.  Melinda Marcotte then issued a check payable to the Baucus Committee in the amount of $1,000 and gave it to defendant **MICHAEL L. SERAFINI**.

118.    On or about July 5, 1995, Empire issued a corporate check payable to the defendant **MICHAEL L. SERAFINI** in the amount of $1,000.

119.    Between or about June 2, 1995 and June 5, 1995, Robert Giglio, Dolores Giglio and Mary McCormack each issued checks payable to Campaign '96 in the amount of $1,000.

120.    On or about June 2, 1995, Empire issued a corporate check payable to Robert Giglio in the amount of $3,500.

121.    On or about June 2, 1995, Maria Ciccone (defendant **LEO R. DEL SERRA'S** sister) issued a check payable to Campaign '96 in the amount of $1,000.

122.    On or about July 5, 1995, Empire issued a corporate check payable to defendant **LEO R. DEL SERRA** in the amount of $1,000.

123.    On or about July 5, 1995, Lou Selig issued a check payable to the Duhaime Committee in the amount of $1,000.

124.    On or about August 8, 1995, Empire issued a corporate check payable to Stacey Selig in the amount of $1,000.

-29-

125. On or about January 29, 1996, the Duhaime Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between June 1, 1995 and December 31, 1995.

126. On or about September 15, 1995, defendant **LEO R. DEL SERRA**, Ronald C. Banko, Marion L. Butler, Patrick Coccia, Thomas J. Cook, Donald F. Hallock, Lou Selig, James Thomas, Janine Thomas and Geralyn Zazzera each issued a check payable to the Clinton/Gore Committee in the amount of $1,000.

127. On or about September 15, 1995, Empire issued a corporate check payable to defendant **LEO R. DEL SERRA** in the amount of $1,000.

128. On or about September 15, 1995, Empire issued a corporate check payable to defendant **MICHAEL L. SERAFINI** in the amount of $12,041.13 which was signed by defendant **LEO R. DEL SERRA**.

129. On or about September 18, 1995, defendant **MICHAEL L. SERAFINI** issued checks to each of the individuals referenced in overt act 126 in the amount of $1,000 except defendant **LEO R. DEL SERRA**.

130. On or about December 28, 1995, the Clinton/Gore Committee filed a report with the FEC summarizing its receipts and disbursements for the period between July 1, 1995 and September 30, 1995.

131. On or about January 30, 1996, defendant **LEO R. DEL SERRA** issued a check payable to the Paxon Committee in the amount

-30-

of $1,000.

132. On or about January 30, 1996, Empire issued a corporate check payable to defendant **LEO R. DEL SERRA** in the amount of $1,000.

133. On or about April 19, 1996, the Paxon Committee filed a report with the FEC summarizing all of its receipts and disbursements for the period between January 1, 1996 and March 31, 1996.

134. On or about April 25, 1996, at the request of Empire's corporate counsel, Empire and Danella employees issued statements regarding the circumstances surrounding their contributions to the Dole Committee and those statements were false and misleading.

135. On or about April 26, 1996, defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** pressured and coerced an Empire employee to sign a false and misleading statement regarding the circumstances surrounding his contribution to the Dole Committee.

136. On or about May 3, 1996, defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** solicited phony invoices from two individuals who had contributed to the Dole Committee and were reimbursed by Empire.

In violation of Title 18, United States Code Section 371.

-31-

## COUNTS TWO THROUGH ELEVEN

**THE GRAND JURY FURTHER CHARGES:**

The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

On or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** as to all counts and **ALAN W. STEPHENS** as to count two only, and others known and unknown, in a matter within the jurisdiction of a department and agency of the United States, to wit, the FEC, knowingly and willfully caused the treasurers for the below listed political committees to (1) falsify, conceal and cover up by trick, scheme and device a material fact; (2) make materially false, fictitious and fraudulent statements and representations; and (3) make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, to wit, the defendants caused the treasurers for the below listed political committees to create and submit false reports to the FEC which indicated that lawful contributions were made by individuals to the respective political committees when in truth and fact, as the defendants well knew, it was Empire that had contributed to the respective political committees and not the conduits listed in the report filed with the FEC.

| Count | Date | Political Committee |
|-------|------|---------------------|
| 2 | July 17, 1995 | Dole Committee |
| 3 | December 28, 1995 | Clinton/Gore Committee |

-32-

| 4  | April 15, 1995    | Specter Committee  |
|----|-------------------|--------------------|
| 5  | October 26, 1994  | Haytaian Committee |
| 6  | February 1, 1995  | Santorum Committee |
| 7  | January 29, 1996  | Duhaime Committee  |
| 8  | December 12, 1994 | Fox Committee      |
| 9  | October 17, 1994  | Pallone Committee  |
| 10 | July 31, 1995     | Baucus Committee   |
| 11 | April 19, 1996    | Paxon Committee    |

In violation of Title 18, United States Code Section 1001 and

Title 18, United States Code Section 2.

-33-

## COUNT TWELVE

**THE GRAND JURY FURTHER CHARGES:**

The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

The defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** made and caused to be made illegal campaign contributions aggregating \$2,000 or more during calendar year 1994.

On or about the dates listed below, in the Middle District of Pennsylvania and elsewhere, the defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI**, being officers of Empire, and other officers unknown, did knowingly and willfully consent to numerous illegal campaign contributions being made by Empire to the below listed political committees in violation of the prohibition against corporate contributions contained in the Campaign Act.

| Date | Political Committee | Amount |
|------|---------------------|--------|
| August 29, 1994 | Pallone Committee | \$ 3,000 |
| October 10, 1994 | Haytaian Committee | 10,000 |
| October 28, 1994 | Fox Committee | 3,000 |
| December 14, 1994 | Santorum Committee | 6,000 |

In violation of Title 2, United States Code, Section 441b(a) and 437g(d) and 18 United States Code, Section 2.

-34-

## COUNT THIRTEEN

**THE GRAND JURY FURTHER CHARGES:**

The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

The defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI** made and caused to be made illegal campaign contributions aggregating $2,000 or more during calendar year 1995.

On or about the dates listed below, in the Middle District of Pennsylvania and elsewhere, the defendants **RENATO P. MARIANI** and **MICHAEL L. SERAFINI**, being officers of Empire, and other officers unknown, did knowingly and willfully consent to numerous illegal campaign contributions being made by Empire to the below listed political committees in violation of the prohibition against corporate contributions contained in the Campaign Act.

| Date | Political Committee | Amount |
|------|--------------------|--------|
| January 27, 1995 | Specter Committee | $10,000 |
| April 29, 1995 | Dole Committee | 80,000 |
| June 2, 1995 | Duhaime Committee | 5,000 |
| June 16, 1995 | Baucus Committee | 1,000 |
| September 18, 1995 | Clinton/Gore Committee | 10,000 |

In violation of Title 2, United States Code, Section 441b(a) and 437g(d) and 18 United States Code, Section 2.

-35-

## COUNTS FOURTEEN THROUGH ONE HUNDRED THIRTY-FOUR

**THE GRAND JURY FURTHER CHARGES:**

The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

The defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** made and caused to be made illegal campaign contributions aggregating $2,000 or more during each of calendar years 1994 and 1995. The defendant **ALAN W. STEPHENS** made and caused to be made illegal campaign contributions aggregating $2,000 or more during calendar year 1995.

On or about the dates listed below, in the Middle District of Pennsylvania and elsewhere, the defendants **RENATO P. MARIANI, MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** as to all counts and the defendant **ALAN W. STEPHENS** as to counts 14 through 89 only, and others known and unknown, knowingly and willfully made and caused to be made contributions to the below listed political committees in the name of the individuals listed below rather than in the name of the true source of the contribution:

| Count | Conduit | Political Committee | Amount | Date |
|-------|---------|--------------------|--------|------|
| 14 | Ronald Banko | Dole | $1,000 | 04/28/95 |
| 15 | Rene Bergamino | Dole | $1,000 | 04/28/95 |
| 16 | Thomas Bergamino | Dole | $1,000 | 04/28/95 |
| 17 | Vincent Bernabei | Dole | $1,000 | 04/28/95 |
| 18 | George Bieber | Dole | $1,000 | 04/27/95 |
| 19 | Sandra Bieber | Dole | $1,000 | 04/27/95 |
| 20 | Jane Blasi | Dole | $1,000 | 04/27/95 |
| 21 | Peter Blasi | Dole | $1,000 | 04/27/95 |
| 22 | Richard Bodner | Dole | $1,000 | 04/29/95 |
| 23 | Brenda Bodner | Dole | $1,000 | 04/29/95 |

| Count | Conduit | Political Committee | Amount | Date |
|---|---|---|---|---|
| 24 | BWC PAC | Dole | $5,000 | 05/10/95 |
| 25 | Diane Bratlee | Dole | $1,000 | 04/27/95 |
| 26 | Arthur Bray | Dole | $1,000 | 04/28/95 |
| 27 | Diane Bray | Dole | $1,000 | 04/28/95 |
| 28 | Susan Burney | Dole | $1,000 | 04/28/95 |
| 29 | Vincent Burney | Dole | $1,000 | 04/28/95 |
| 30 | Gary Butler | Dole | $1,000 | 04/28/95 |
| 31 | Marion Butler | Dole | $1,000 | 04/28/95 |
| 32 | Maria Ciccone | Dole | $1,000 | 04/28/95 |
| 33 | Vincent Ciccone | Dole | $1,000 | 04/28/95 |
| 34 | Patrick Coccia | Dole | $1,000 | 04/27/95 |
| 35 | Susan Coccia | Dole | $1,000 | 04/27/95 |
| 36 | Thomas Cook | Dole | $1,000 | 04/28/95 |
| 37 | Jo Ann Del Serra | Dole | $1,000 | 04/28/95 |
| 38 | Leo Del Serra | Dole | $1,000 | 04/28/95 |
| 39 | Susan Earl | Dole | $1,000 | 05/01/95 |
| 40 | Thomas Earl | Dole | $1,000 | 05/01/95 |
| 41 | Fay Gable | Dole | $1,000 | 04/28/95 |
| 42 | Thomas Gable | Dole | $1,000 | 04/28/95 |
| 43 | Angelo Genell | Dole | $1,000 | 04/28/95 |
| 44 | Tracy Genell | Dole | $1,000 | 04/28/95 |
| 45 | Mark Genell | Dole | $1,000 | 04/28/95 |
| 46 | Dolores Giglio | Dole | $1,000 | 04/27/95 |
| 47 | Robert Giglio | Dole | $1,000 | 04/27/95 |
| 48 | Josephine Gilchrist | Dole | $1,000 | 04/28/95 |
| 49 | William Gilchrist | Dole | $1,000 | 04/28/95 |
| 50 | Donald Hallock | Dole | $1,000 | 04/28/95 |
| 51 | Robin Hallock | Dole | $1,000 | 04/28/95 |
| 52 | Thomas Harrison | Dole | $1,000 | 04/27/95 |
| 53 | Elaine Hummel | Dole | $1,000 | 04/28/95 |
| 54 | Paul Hummel | Dole | $1,000 | 04/28/95 |
| 55 | Joan Hummel | Dole | $1,000 | 04/28/95 |
| 56 | Donna Hunkele | Dole | $1,000 | 04/25/95 |
| 57 | Charles Hunkele | Dole | $1,000 | 04/25/95 |
| 58 | Brenda Keen | Dole | $1,000 | 04/28/95 |
| 59 | Paul Keen | Dole | $1,000 | 04/28/95 |
| 60 | Donna Kon | Dole | $1,000 | 04/28/95 |
| 61 | Michael Kon | Dole | $1,000 | 04/28/95 |
| 62 | Lisa Marcotte | Dole | $1,000 | 04/27/95 |
| 63 | Melinda Marcotte | Dole | $1,000 | 04/28/95 |
| 64 | Joan Mariani | Dole | $1,000 | 04/28/95 |
| 65 | Renato P. Mariani | Dole | $1,000 | 04/28/95 |
| 66 | Lucy Mariani | Dole | $1,000 | 04/27/95 |
| 67 | Renato Mariani | Dole | $1,000 | 04/27/95 |
| 68 | Mary McCormack | Dole | $1,000 | 04/27/95 |
| 69 | Michael McNinch | Dole | $1,000 | 04/27/95 |
| 70 | Ann Pompey | Dole | $1,000 | 04/27/95 |
| 71 | John Reilly | Dole | $1,000 | 04/27/95 |
| 72 | Marilyn Reilly | Dole | $1,000 | 04/27/95 |

-37-

| Count | Conduit | Political Committee | Amount | Date |
|-------|---------|---------------------|--------|------|
| 73 | Frank Ripa | Dole | $1,000 | 04/28/95 |
| 74 | Dorothy Ripa | Dole | $1,000 | 04/28/95 |
| 75 | Kim Scarantino | Dole | $1,000 | 04/28/95 |
| 76 | John Scarantino | Dole | $1,000 | 04/28/95 |
| 77 | Lou Selig | Dole | $1,000 | 04/27/95 |
| 78 | Stacey Selig | Dole | $1,000 | 04/27/95 |
| 79 | Frances Serafini | Dole | $1,000 | 04/27/95 |
| 80 | Frank Serafini | Dole | $1,000 | 04/27/95 |
| 81 | Louis Serafini | Dole | $1,000 | 04/27/95 |
| 82 | Michael L. Serafini | Dole | $1,000 | 04/28/95 |
| 83 | Alan Stephens | Dole | $1,000 | 04/28/95 |
| 84 | Linda Stephens | Dole | $1,000 | 04/28/95 |
| 85 | Carol Thomas | Dole | $1,000 | 04/27/95 |
| 86 | James Thomas | Dole | $1,000 | 04/27/95 |
| 87 | Geralyn Zazzera | Dole | $1,000 | 04/28/95 |
| 88 | Daniel Zeleniak | Dole | $1,000 | 04/28/95 |
| 89 | Sheila Zeleniak | Dole | $1,000 | 04/28/95 |
| 90 | Ronald Banko | Clinton/Gore | $1,000 | 09/15/95 |
| 91 | Marion Butler | Clinton/Gore | $1,000 | 09/15/95 |
| 92 | Patrick Coccia | Clinton/Gore | $1,000 | 09/15/95 |
| 93 | Thomas J. Cook | Clinton/Gore | $1,000 | 09/15/95 |
| 94 | Leo R. Del Serra | Clinton/Gore | $1,000 | 09/15/95 |
| 95 | Donald Hallock | Clinton/Gore | $1,000 | 09/15/95 |
| 96 | Lou Selig | Clinton/Gore | $1,000 | 09/15/95 |
| 97 | Carol Ann Thomas | Clinton/Gore | $1,000 | 09/15/95 |
| 98 | Janine Thomas | Clinton/Gore | $1,000 | 09/15/95 |
| 99 | Geralyn Zazzera | Clinton/Gore | $1,000 | 09/15/95 |
| 100 | Gary Butler | Specter | $1,000 | 01/23/95 |
| 101 | Marion Butler | Specter | $1,000 | 01/23/95 |
| 102 | Jo Ann Del Serra | Specter | $1,000 | 01/23/95 |
| 103 | Leo Del Serra | Specter | $1,000 | 01/23/95 |
| 104 | Michael L. Serafini | Specter | $1,000 | 01/26/95 |
| 105 | Stacey Selig | Specter | $1,000 | 01/26/95 |
| 106 | Lou Selig | Specter | $1,000 | 01/26/95 |
| 107 | Louis Serafini | Specter | $1,000 | 01/26/95 |
| 108 | James Thomas | Specter | $1,000 | 01/25/95 |
| 109 | Carol Ann Thomas | Specter | $1,000 | 01/25/95 |
| 110 | Peter Blasi | Haytaian | $1,000 | 10/11/94 |
| 111 | Gary Butler | Haytaian | $1,000 | 10/11/94 |
| 112 | Marion Butler | Haytaian | $1,000 | 10/11/94 |
| 113 | Leo Del Serra | Haytaian | $1,000 | 10/11/94 |
| 114 | Jo Ann Del Serra | Haytaian | $1,000 | 10/11/94 |
| 115 | Lou Selig | Haytaian | $1,000 | 10/11/94 |
| 116 | Stacey Selig | Haytaian | $1,000 | 10/11/94 |
| 117 | Michael L. Serafini | Haytaian | $1,000 | 10/10/94 |
| 118 | James Thomas | Haytaian | $1,000 | 10/10/94 |
| 119 | Carol Ann Thomas | Haytaian | $1,000 | 10/10/94 |
| 120 | Leo R. Del Serra | Santorum | $1,000 | 12/14/94 |
| 121 | Jo Ann Del Serra | Santorum | $1,000 | 12/14/94 |
| 122 | Melinda Marcotte | Santorum | $1,000 | 12/14/94 |

-38-

| Count | Conduit | Political Committee | Amount | Date |
|-------|---------|---------------------|--------|------|
| 123 | Renato P. Mariani | Santorum | $1,000 | 12/14/94 |
| 124 | Joan Mariani | Santorum | $1,000 | 12/14/94 |
| 125 | Louis Serafini | Santorum | $1,000 | 12/14/94 |
| 126 | Maria Ciccone | Duhaime | $1,000 | 06/02/95 |
| 127 | Dolores Giglio | Duhaime | $1,000 | 06/03/95 |
| 128 | Robert Giglio | Duhaime | $1,000 | 06/05/95 |
| 129 | Mary McCormack | Duhaime | $1,000 | 06/02/95 |
| 130 | Lou Selig | Duhaime | $1,000 | 07/05/95 |
| 131 | Marion Butler | Fox | $1,000 | 10/27/94 |
| 132 | Renato P. Mariani | Fox | $1,000 | 10/28/94 |
| 133 | Joan Mariani | Fox | $1,000 | 10/27/94 |
| 134 | Melinda Marcotte | Baucus | $1,000 | 06/16/95 |

In violation of Title 2, United States Code, Section 441f and

437g(d) and 18 United States Code, Section 2.

-39-

## COUNT ONE HUNDRED THIRTY-FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

### I.   INTRODUCTION.

1.   The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

2.   On or about February 8, 1996, a seven count indictment was filed in the United States District Court for the Eastern District of Pennsylvania ("the Eastern District case") which charged defendant **RENATO P. MARIANI** and his uncle, Carmen Danella (a 50% shareholder in Empire and Danella), with various criminal tax offenses.  Count one charged both defendants with a conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service.  Counts two, three and four charged Carmen Danella alone with filing false individual income tax returns for the years 1989 and 1992 and aiding and assisting in the preparation of a false corporate income tax return for Plymouth Transport, Inc., for the year 1988.  Counts five, six and seven charged both the defendant **RENATO P. MARIANI** and Carmen Danella with aiding and assisting in the preparation of false corporate income tax returns for Empire for the years 1988, 1989 and 1991.

3.·   The indictment charged that defendant **RENATO P. MARIANI** and Carmen Danella directed an attorney named John G. Kaufman to

-40-

prepare 16 phony invoices totaling $759,190.30 for legal services never rendered for Empire and two other companies under those individuals' control. It was further alleged that defendants **RENATO P. MARIANI** and Carmen Danella caused the phony invoices to be paid by checks drawn on the accounts of Empire and the other two companies. It was also alleged that defendant **RENATO P. MARIANI** and Carmen Danella directed Kaufman to negotiate the checks and kick-back 80% of the cash proceeds to them. Finally, it was alleged that part of the conspiracy to defraud the IRS was that the phony invoices were recorded and deducted as legitimate professional services, thereby reducing taxable income.

4. One of the issues in the investigation and prosecution of the Eastern District case was to determine what motive defendant **RENATO P. MARIANI** and Carmen Danella had for raising clean cash and what they did with the more than $600,000 they allegedly received in the course of the scheme.

5. On Thursday, April 25, 1996, newspaper articles appeared in the Wall Street Journal and the Washington Post reporting that numerous employees of Empire and their relatives contributed nearly $50,000 to Senator Dole's presidential campaign a week before a trash transportation bill Empire was lobbying to change was brought to the Senate floor. The newspaper stories also referenced the fact that Empire's two principal owners, Carmen Danella and defendant **RENATO P. MARIANI** were under indictment in the Eastern District case.

-41-

6. The newspaper stories noted that an Assistant U.S. Attorney handling the Eastern District case would not comment on whether the cash generated from the Eastern District scheme was used to finance political contributions. The newspaper stories also noted that Senator Dole had requested the FEC to investigate reports earlier in the week relative to a similar scheme involving a Massachusetts corporation.

7. Immediately following the April 25, 1996 newspaper stories, prosecutors in the Eastern District case commenced an investigation to determine if there was any connection between the Eastern District case and the facts alleged in the newspaper stories. Prosecutors in the Eastern District case directed IRS agents to interview Empire and Danella employees and their spouses regarding the circumstances surrounding their Dole contributions to the Dole Committee. Within the next several days, numerous Empire and Danella employees and their spouses were contacted by the IRS. With one exception, each and every individual contacted either denied being reimbursed for their contribution or refused to be interviewed.

8. On or about April 29, 1996, the U.S. Attorney's Office for the Middle District of Pennsylvania opened its file on this matter and the first round of grand jury subpoenas were issued on May 3, 1996 to various individuals including Empire employees and their spouses.

## II. THE CONSPIRACY.

9. Beginning on or about April 25, 1996 and continuing until

-42-

on or about the date of this indictment, in Lackawanna County, within the Middle District of Pennsylvania and elsewhere, the defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** and others both known and unknown to the grand jury, did knowingly and willfully combine, conspire, confederate and agree together and with each other to:

A. Corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in violation of Title 18, United States Code, Section 1503.

B. Tamper with a witness in violation of Title 18, United States Code, Section 1512.

### III. MANNER AND MEANS OF THE CONSPIRACY.

10. The defendants, **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** carried out the conspiracy in the following manner and by the following means:

11. On or about April 25, 1996, a meeting was held at Empire which included Empire's attorney, Brian Cali, and numerous Empire and Danella employees who had contributed to the Dole Committee a year earlier. The topic of the meeting was the recent newspaper articles and the circumstances surrounding the employees' contributions.

12. At the April 25, 1996 meeting, Brian Cali requested that the attendees prepare written statements regarding the circumstances surrounding their contributions to the Dole

-43-

Committee. It was the intent of the defendants that these letters be used in connection with the pending criminal proceeding in the Eastern District of Pennsylvania and/or the incipient grand jury investigation in the Middle District of Pennsylvania. At least twenty-one pre-typed forms on the Empire letterhead were distributed to the conduits for this purpose.

13. As a result of the meeting, at least twenty-one Empire and Danella employees prepared false and/or misleading statements indicating, among other things, that they were not reimbursed for their contributions or were not reimbursed by Empire for their contributions. Not one statement included the fact that defendant **MICHAEL L. SERAFINI**, an officer of the corporation, solicited the contributions and issued personal checks reimbursing the contributors. Nor did the statements include the fact that defendant **MICHAEL L. SERAFINI** was reimbursed by Empire for his expense in reimbursing the conduits.

14. One individual who refused to sign such a statement was subsequently visited by defendant **LEO R. DEL SERRA** and then by defendant **MICHAEL L. SERAFINI** and was coerced into signing a statement which he believed to be false and misleading and which defendants **LEO R. DEL SERRA** and **MICHAEL L. SERAFINI** knew was false and misleading.

15. Thereafter, defendant **MICHAEL L. SERAFINI** contacted two individuals who acted as paid consultants for Empire and who had previously been solicited by Empire to contribute to the Dole Committee. Both individuals had previously received

-44-

reimbursement checks drawn on the Empire account in connection with their contributions. Neither individual was informed what the purpose of the meeting was.

16. On May 3, 1996, a meeting was held at the landfill and attending were defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** and the two consultants. The purpose of the meeting was to discuss the Dole Committee contributions and the furor that had erupted as a result of the pending investigations.

17. During the course of the meeting, defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** invited the two consultants to submit phony invoices to Empire which could thereafter be used by the defendants in the course of the pending Eastern District case and/or the pending grand jury investigation in the Middle District of Pennsylvania and any trials that might result therefrom. It was the intent of the defendants that the phony invoices be used to legitimatize the Empire corporate checks that had been previously issued to reimburse those individuals for their conduit contributions to the Dole Committee.

## III. OVERT ACTS.

18. In furtherance of the conspiracy and to accomplish its unlawful objectives, the defendants and others, both known and unknown, committed the following overt acts in the Middle District of Pennsylvania and elsewhere.

19. On or about April 25, 1996, Brian Cali held a meeting at the Empire landfill and requested numerous conduits to prepare

-45-

written statements regarding the circumstances surrounding their contributions to the Dole Committee.

20.  On or about April 26, 1996, defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** coerced one Empire employee into signing a statement which that employee believed to be false and misleading and which defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** knew was false and misleading.

21.  On or about May 3, 1996, defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** invited two individuals who had previously been reimbursed for their contributions to the Dole Committee by Empire to submit phony invoices to Empire.

In violation of Title 18, United States Code Section 371.

-46-

## COUNT ONE HUNDRED THIRTY-SIX

**THE GRAND JURY FURTHER CHARGES:**

1. The allegations contained in paragraphs 1 through 136 of count one of this indictment, as well as the allegations contained in paragraphs 1 through 21 of count 135 of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

2. On or about April 26, 1996, in the Middle District of Pennsylvania and elsewhere, the defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in United States of America v. Carmen Danella and Renato Mariani, No. 96-055 in the U.S. District Court for the Eastern District of Pennsylvania by coercing a prospective witness to sign a false and misleading statement regarding the circumstances surrounding his contribution to the Dole Committee.

In violation of Title 18, United States Code, Section 1503 and 18 United States Code, Section 2.

-47-

## COUNT ONE HUNDRED THIRTY-SEVEN

**THE GRAND JURY FURTHER CHARGES:**

1. The allegations contained in paragraphs 1 through 136 of count one of this indictment, as well as the allegations contained in paragraphs 1 through 21 of count 135 of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

2. On or about April 26, 1996, in the Middle District of Pennsylvania and elsewhere, the defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** did knowingly intimidate and attempt to intimidate, corruptly persuade and attempt to corruptly persuade and engage in misleading conduct toward a person whose identity is known to the grand jury with the intent (1) to influence, delay and prevent the testimony of that person in an official proceeding; (2) to cause or induce that person to withhold testimony from an official proceeding; and (3) to hinder, delay or prevent the communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense; the official proceeding being a federal grand jury proceeding in the Middle District of Pennsylvania and a pending case in the United States District Court for the Eastern District of Pennsylvania entitled United States of America v. Carmen Danella and Renato Mariani, No 96-055, by coercing a prospective witness to sign a false and misleading statement regarding the circumstances surrounding his contribution to the

-48-

Dole Committee.

In violation of Title 18, United States Code, Section 1512(b) and 18 United States Code, Section 2.

## COUNT ONE HUNDRED THIRTY-EIGHT

**THE GRAND JURY FURTHER CHARGES:**

1. The allegations contained in paragraphs 1 through 136 of count one of this indictment, as well as the allegations contained in paragraphs 1 through 21 of count 135 of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

2. On or about May 3, 1996, in the Middle District of Pennsylvania and elsewhere, the defendants **MICHAEL L. SERAFINI** and **LEO R. DEL SERRA** did corruptly endeavor to influence, obstruct and impede the due administration of justice in a federal grand jury proceeding in the Middle District of Pennsylvania by requesting two individuals whose identities are known to the grand jury to submit phony invoices to Empire which could thereafter be used by the defendants in the course of that grand jury proceeding or any trials resulting therefrom to legitimatize the Dole Committee contribution reimbursement checks previously issued by Empire to those two individuals.

In violation of Title 18, United States Code, Section 1503 and 18 United States Code, Section 2.

-50-

## COUNT ONE HUNDRED THIRTY-NINE

**THE GRAND JURY FURTHER CHARGES:**

1.   The allegations contained in paragraphs 1 through 136 of count one of this indictment are hereby repeated, realleged and incorporated by reference as though fully set forth herein.

2.   On or about April 9, 1997, in the Middle District of Pennsylvania, the defendant **ROBERT GIGLIO** while under oath and testifying in a proceeding before Grand Jury No. 95-1, a grand jury of the United States in the Middle District of Pennsylvania, knowingly did make false material declarations, that is to say:

3.   At the time and place aforesaid, the grand jury was conducting an investigation to determine whether violations of Title 2, United States Code, Section 431, et seq. ("the Campaign Act") had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations.   It was material to the said investigation that the grand jury ascertain if **ROBERT GIGLIO** was reimbursed in any way in connection with any political contributions he ever made or whether he otherwise acted as a conduit or caused others to act as conduits.

4.   At the time and place alleged, **ROBERT GIGLIO**, appearing as a witness under oath at a proceeding before the grand jury, knowingly made the following declarations in response to

-51-

questions with respect to the material matter alleged in

paragraph 3 as follows:

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Q. Well, let's start with the Dole campaign contribution, tell me the circumstances that led you to contribute to Senator Dole's campaign, how did it happen that you decided to contribute?

A. Michael asked me to make a donation to his campaign. He asked me to ask my sister, my mother, she was my fiancé at the time, to have her, all three and myself write a check for the campaign.

Q. And did he tell you he would reimburse you?

A. No, he didn't.

Q. Did he reimburse you?

A. No, he didn't.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Q. Now, the next, tell me about the next transaction where you made a contribution you said to Campaign '96, the person named Dunaine?

A. Yes.

Q. Tell us how that arose?

A. He asked me to do the same thing again.

Q. What did he say?

A. I have one more contribution I would like you to make. And I said well, what do you want me to do? He said just ask, I believe there is only two checks that are made to that one. Mine and it is either my wife or my mother's, I don't think there is three, there is only two.

Q. What did he ask you to do?

A. He asked me to make that contribution.

Q. Did you ask him who the heck Dunaine is and why am I contributing to this guy?

-52-

A. No, he just said he wanted to get his checks to somebody, to Campaign '96 is all he told me.

Q. Did you even know what office the guy was running for?

A. No, I didn't.

Q. Do you even know today what office he ran for?

A. Senate, yeah.

Q. Senate?

A. Senator, isn't it Senator?

Q. Is it U.S. Senator, State Senator?

A. I don't know.

Q. Do you know what state he is from?

A. Jersey.

Q. New Jersey?

A. Yeah.

Q. How is it that you know that?

A. Because I saw it. They gave me a sticker now that I remember it.

Q. Who gave you the sticker?

A. Michael.

Q. So how much money did you donate to Dunaine Senate '96 Campaign?

A. I believe it is $2,000.

Q. And the $2,000 was you for a thousand and your wife, you were already married at that time?

A. No, I am, it is my girlfriend.

Q. Your girlfriend. Okay. So it would be a thousand for you and a thousand for Ann Pompey?

A. Right, or it could be my mother.

Q. Dolores?

-53-

A.    Dolores, I am not sure.

Q.    And did you have any discussion with Michael regarding
      reimbursement for this New Jersey Senate, Senate
      hopeful that you were now contributing $2,000 to?

A.    No.

Q.    He never mentioned to you that he would reimburse you?

A.    No.

Q.    And he never did reimburse you?

A.    No.

Q.    Did anyone reimburse you?

A.    No.

Q.    Did the corporation reimburse you?

A.    No.

                    *  *  *  *  *  *  *  *  *  *  *  *  *  *

Q.    And you have never been reimbursed in your life for any
      contribution you have ever made?

A.    No.

                    *  *  *  *  *  *  *  *  *  *  *  *  *  *

Q.    And what do you remember being discussed, what did they
      say to you?

A.    They asked me about the donations, that's it, and I
      told them what I did.

Q.    The same thing that you told us here?

A.    Yeah.

Q.    That you made the donations at the request of Michael?

A.    Right.

Q.    And that you were not reimbursed . . .

A.    Right.

-54-

Q.     . . . by the corporation?

A.     <u>Right</u>.

Q.     And you weren't reimbursed by him personally?

A.     <u>Right</u>.

\* \* \* \* \* \* \* \* \* \* \* \* \*

5.    The aforesaid underscored testimony of **ROBERT GIGLIO** as he then and there well knew and believed, was false in that Empire issued **ROBERT GIGLIO** a check on April 28, 1995 in the amount of $4,000 which was signed by defendant **MICHAEL L. SERAFINI** and which reimbursed him, his mother, his sister and his girlfriend for their contributions to the Dole Committee and Empire issued him another check on June 2, 1995 in the amount of $3,500 which was signed by defendant **MICHAEL L. SERAFINI** and which reimbursed him, his mother and his sister for their contributions to the Duhaime Committee.

In violation of Title 18, United States Code, Section 1623.

-55-

## COUNT ONE HUNDRED FORTY

**THE GRAND JURY FURTHER CHARGES:**

1.  The allegations contained in paragraphs 1 through 136 of
count one of this indictment are hereby repeated, realleged and
incorporated by reference as though fully set forth herein.

2.  On or about September 9, 1997, in the Middle District of
Pennsylvania, the defendant **FRANK SERAFINI**, while under oath and
testifying in a proceeding before Grand Jury 97-1, a grand jury
of the United States of the Middle District of Pennsylvania,
knowingly did make false material declarations, that is to say:

3.  At the time and place aforesaid, the grand jury was
conducting an investigation to determine whether violations of
Title 2, United States Code, Sections 431, et seq. ("the Campaign
Act") had been committed, and to identify the persons who had
committed, caused the commission of, and conspired to commit such
violations.  It was material to the said investigation that the
grand jury ascertain if **FRANK SERAFINI** was reimbursed in any way
in connection with any political contributions he ever made, or
whether he otherwise acted as a conduit, or caused others to act
as conduits.

4.  At the same time and place alleged, **FRANK SERAFINI**,
appearing as a witness under oath at a proceeding before the
grand jury, knowingly made the following declarations in response
to questions with respect to the material matter alleged in
paragraph 3 as follows:

-56-

\* \* \* \* \* \* \* \* \* \* \* \* \*

Q.   And did you bring any documents pursuant to the
     subpoena that required your appearance here today?

A.   I don't have the documents, I don't have documents with
     me but the subpoena, because the subpoena didn't
     require any.  The way I read the subpoena, I have a
     copy of it, all documents relative to political
     contributions you were reimbursed for, <u>and I was not</u>
     <u>reimbursed for any contributions</u>.

\* \* \* \* \* \* \* \* \* \* \* \* \*

Q.   Well, then why wouldn't he reimburse you for your Dole
     contribution under the same rationale?

A.   Because I wanted to contribute to Bob Dole.

Q.   And you didn't want to fix his car?

A.   Not necessarily, would you?

Q.   I don't know.

A.   And $2,000 for a thousand dollar contribution.

Q.   $2,000 for what?

A.   $2,000 . . .

Q.   What was that last statement?

A.   $2,000 this check is for, if I see it correctly?

Q.   Right.

A.   And my check here is for a thousand dollar
     contribution?

Q.   Right.  So you are saying you don't know what the other
     thousand dollars is for?

A.   <u>I would not relate it to that, in my mind</u>.

Q.   What would you relate?

A.   In my mind.

Q.   What would you relate it for?

-57-

A.     To something else, whether it was fixing his car,
       whether it is something else. It could be something
       else and that's just what I am saying to you now,
       because when he asked me for a thousand dollar
       contribution I wrote a check for a thousand dollars, I
       found no problem with that, I was happy to be able to
       do it.

                    * * * * * * * * * * * * *

Q.     Is there any check that you received that reimbursed
       you other than that $2,000 check for your contribution?

A.     No.

Q.     Is there another check that you are aware of that is
       connected to this investigation, to this Dole
       contribution, other than the $2,000?

A.     Not other than what you have shown me today, no.

                    * * * * * * * * * * * *

Q.     And you have no knowledge, as you sit here today, or is
       it accurate that as you sit here today you have no
       knowledge why Michael issued that check to you for
       $2,000.

A.     I still think the $2,000 would have been just around
       the time that I was fixing his car, the transmission
       was gone, I was fixing it, it is just about that amount
       of money that would have paid for the repair. It could
       have been for a number of things, but it certainly does
       not relate to me contributing to Bob Dole.   I
       contribute quite frequently to candidates and those
       kind of amounts.

                    * * * * * * * * * * * * *

Q.     I am going to wrap this up. I want to make sure we are
       absolutely on the same page here, there is no
       misunderstanding. It is your testimony under oath, as
       you sit here today, that as far as you're concerned, as
       far as you know, there is no connection between the
       check that you wrote to Dole for President dated April
       27 of '95 for $1,000, check 3781, and the check that

                              -58-

you received from the Michael Serafini-Melinda Marcotte account dated April 25th of '95 for $2,000, it is your testimony that there is no connection between these two items:

A.   <u>In my mind I can honestly say that there is no connection between those two checks, the thousand and the two thousand.</u>  In my, I mean in my mind I know I contributed to Bob Dole because I wanted to contribute to him without reimbursement.  The $2,000, I truly believe I cashed that check and spent it to, for another reason, I am assuming it was when I was fixing his vehicle.

Q.   Are you drawing any distinctions when you answer that question similar to the distinctions you drew when you were interviewed by Frank Schultz regarding whether or not people were hallucinating, or were a hundred percent incorrect that you were receiving a per ton fee from Empire landfill, are you drawing a similar kind of fine line distinction here?

A.   Let me say this.  When I am talk to Frank Schultz I am not under oath.  Frank Schultz questions me and I give him an answer.  There is no fine line distinctions here as there was when, as there is when I talk to Frank Schultz.  Frank Schultz is an entirely different person, he is not a U.S. Attorney.

\* \* \* \* \* \* \* \* \* \* \* \*

5.   The aforesaid underscored testimony of **FRANK SERAFINI**, as he then and there well knew and believed, was false in that (1) Defendant **MICHAEL L. SERAFINI** issued a check dated April 25, 1995 payable to **FRANK SERAFINI** in the amount of $2,000 which was subsequently negotiated on May 1, 1995 and which reimbursed **FRANK SERAFINI** for his $1,000 contribution to the Dole Committee and also reimbursed him for the expense of reimbursing Thomas Harrison, his former legislative aide, $1,000 for a contribution Thomas Harrison made to the Dole Committee in the amount of

-59-

$1,000 which was solicited by **FRANK SERAFINI** and reimbursed by **FRANK SERAFINI**; and (2) There were at least two other checks connected to this transaction other than what was displayed during the grand jury proceeding, i.e., a $1,000 check dated April 27, 1995 drawn on the account of Thomas G. or Maureen J. Harrison payable to the Dole Committee which was solicited and received by **FRANK SERAFINI**, and a $1,000 check dated April 27, 1995 drawn on the account of Frank A. Serafini and Louis Serafini payable to cash which was used to reimburse Thomas Harrison for his Dole Committee contribution.

In violation of Title 18, United States Code, Section 1623.

David M. Barasch
United States Attorney

A TRUE BILL:

Foreperson

Dated: _10/7/97_

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

\* \* MAILING CERTIFICATE OF CLERK \* \*

Re:   3:97-cr-00225   USA v. Mariani


True and correct copies of the attached were mailed by the clerk
to the following:

Mark E. Cedrone, Esq.
Carroll & Cedrone
The Curtis Center, #750
Philadelphia, PA   19106

Howard B. Klein, Esq.
1700 Market St.
Suite 2632
Philadelphia, PA   19103

Robert E. Welsh JR., Esq.
Welsh & Recker, P.C.
Suite 3402
1818 Market St.
Philadelphia, PA   19103

Anna M Durbin, Esq.
50 Rittenhouse Place
Ardmore, PA   19003-2276

Joseph D. Mancano, Esq.
Britt, Hankins, Schaible & Moughan
Two Penn Center Plaza
15th and JFK Boulevard
Suite 515
Philadelphia, PA   19102

Sal J. Cognetti Jr., Esq.
Foley, Cognetti & Comerford
700 Scranton Electric Building
507 Linden Street
Scranton, PA   18503-1666

```
cc:
Judge                        (  )
Magistrate Judge             (  )
U.S. Marshal                 (  )
Probation                    (  )
U.S. Attorney                (  )
Atty. for Deft.              (  )
Defendant                    (  )
Warden                       (  )
Bureau of Prisons            (  )
Ct Reporter                  (  )
Ctroom Deputy                (  )
Orig-Security                (  )
Federal Public Defender      (  )
Summons Issued               (  )  with N/C attached to complt. and served by:
                                   U.S. Marshal ( )    Pltf's Attorney ( )
Standard Order 93-5          (  )
Order to Show Cause          (  )  with Petition attached & mailed certified mail
                                   to:  US Atty Gen   ( )  PA Atty Gen ( )
                                        DA of County  ( )  Respondents ( )
Bankruptcy Court             (  )
Other_____         (  )
                                             MARY E. D'ANDREA, Clerk
```

DATE: _____

BY: _____
        Deputy Clerk

CRIMINAL CASE COVER SHEET        MIDDLE DISTRICT OF PENNSYLVANIA        U.S. DISTRICT COURT

**Place of Offense:**

City __Taylor, PA__

**Related Case Information:** In Re: Grand Jury Misc. No. 95-98

County/Parish __Lackawanna__

Superseding Indictment_____    Docket Number_____

Same Defendant_____    New Defendant_____

Magistrate Judge Case Number_____

Search Warrant Case Number_____

R 20/R 40 from District of _____

**Defendant Information:**

Juvenile _____Yes    __XX__No    If Yes, Matter to be sealed: _____Yes    __XX__No

Defendant Name_____Renato P. Mariani_____

Alias Name _____

Address    41 December Drive

Dunmore, PA 18512

Birthdate_____    SS #_____    Sex _____    Race_____    Nationality_____

AGENT:_____Y

**DEFENSE COUNSEL:**    Name__Mark Cedrone_____    Phone__215-925-2500__

Address__Suite 750, The Curtis Center, Independence Square West,

Philadelphia, PA 19106

**U.S. Attorney Information:**

AUSA__Bruce D. Brandler_____    Bar #_____

Interpreter _____Yes _____No    List Language and/or Dialect:_____

**Location Status:**

Arrest Date_____

___ Already in Federal Custody as of _____ in _____

___ Already in State Custody
___ On Pretrial Release

| U.S.C. Citations | $\times$ Indictment | _____ Information |
|---|---|---|
| Total # of Counts: 134 | | ___ Petty ___ Misdeameanor ___ Felony |

| | Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|---|
| Set 1 | 18 USC 371 | Conspiracy | 1 |
| Set 2 | 18 USC 1001 | False Statements | 10 |
| Set 3 | 2 USC 441b | Prohibited Corporate Contribution | 2 |
| Set 4 | 2 USC 441f | Conduit Contributions | 121 |

(May be continued on reverse)

Date: 10/7/97                          Signature of AUSA: _____

JS 45 (1/96)

District Court Case Number (To be filled in by deputy clerk): _____

| | Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|---|
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |

**Place of Offense:**

City___Taylor, PA_____

**Related Case Information:** In Re: Grand Jury Misc. No.

                                                        95-98

County/Parish___Lackawanna___     Superseding Indictment_____ Docket Number_____

                                  Same Defendant_____     New Defendant_____

                                  Magistrate Judge Case Number_____

                                  Search Warrant Case Number_____

                                  R 20/R 40 from District of _____

**Defendant Information:**

   Juvenile _____Yes  __XX__No   If Yes, Matter to be sealed: _____Yes   __XX_No

Defendant Name_____Michael L. Serafini_____

Alias Name _____

Address   2209 Summit Point Drive _____

          Scranton, PA 18508 _____

Birthdate_____ SS #_____   Sex _____ Race_____ Nationality_____

AGENT:_____Y

**DEFENSE COUNSEL:** **Name** Howard Klein _____   **Phone** 215-564-4060_____

          **Address** Suite 2632, 1700 Market St., Philadelphia, PA 19103 _____

**U.S. Attorney Information:**

AUSA____Bruce D. Brandler_____   Bar #_____

Interpreter _____Yes _____No   **List Language and/or Dialect:**_____

**Location Status:**

Arrest Date_____

___ Already in Federal Custody as of _____ in _____

___ Already in State Custody
___ On Pretrial Release

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 1  18 USC 371 | Conspiracy | 2 |
| Set 2  18 USC 1001 | False Statements | 10 |
| Set 3  18 USC 1503 | Obstruction of Justice | 2 |
| Set 4  18 USC 1512 | Tampering with a witness | 1 |

(May be continued on reverse)

Date: 10/7/97     Signature of AUSA: _____

JS 45 (1/96)

District Court Case Number (To be filled in by deputy clerk): _____

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 5  2 USC 441b | Prohibited Corporate Contributions | 2 |
| Set 6  2 USC 441f | Conduit Contributions | 121 |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |
| Set 16 | | |
| Set 17 | | |
| Set 18 | | |
| Set 19 | | |
| Set 20 | | |
| Set 21 | | |
| Set 22 | | |
| Set 23 | | |

CRIMINAL CASE COVER SHEET          MIDDLE DISTRICT OF PENNSYLVANIA          U.S. DISTRICT COURT

**Place of Offense:**

City_____Taylor, PA_____          **Related Case Information:** IN RE: Grand Jury Misc. No. 95-98

County/Parish___Lackawanna_____          Superseding Indictment_____  Docket Number_____

Same Defendant_____  New Defendant_____

Magistrate Judge Case Number_____

Search Warrant Case Number_____

R 20/R 40 from District of _____

**Defendant Information:**

Juvenile _____Yes    $^{X}$ No    If Yes, Matter to be sealed: _____Yes    $^{X}$ No

Defendant Name_____ Leo R. Del Serra _____

Alias Name          731 Second St. _____

Address          West Pittston, PA 18643 _____

Birthdate_____  SS #_____  Sex _____ Race_____ Nationality_____

AGENT:_____ Y

DEFENSE COUNSEL: Name_____ Robert Welsh _____  Phone  215-972-6430 _____

Address____ · 1818 Market St., Suite 3402, Philadelphia, PA 19103 _____

**U.S. Attorney Information:**

AUSA__Bruce D. Brandler_____          Bar #_____

Interpreter _____Yes  $^{XX}$ No    List Language and/or Dialect:_____

Location Status:

Arrest Date_____

____ Already in Federal Custody as of _____ in _____

____ Already in State Custody

____ On Pretrial Release

U.S.C. Citations          __X__ Indictment          _____ Information

Total # of Counts:___78___          ____ Petty   ____ Misdeameanor   ____ Felony

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 1 __18 USC 371__ | Conspiracy | 1 |
| Set 2 __18 USC 1001__ | False Statements | 1 |
| Set 3 __2 USC 441f__ | Conduit Contributions | 76 |
| Set 4 _____ | | |

(May be continued on reverse)

Date:_____          Signature of AUSA:_____

JS 45 (1/96)

District Court Case Number (To be filled in by deputy clerk):_____

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 5 _____ | | |
| Set 6 _____ | | |
| Set 7 _____ | | |
| Set 8 _____ | | |
| Set 9 _____ | | |
| Set 10_____ | | |
| Set 11_____ | | |
| Set 12_____ | | |
| Set 13_____ | | |

**Place of Offense:**

City___Taylor, PA_____

**Related Case Information:** In RE: Grand Jury Mis. No. 95-98

County/Parish____Lackawanna_____

Superseding Indictment_____ Docket Number_____

Same Defendant_____ New Defendant_____

Magistrate Judge Case Number_____

Search Warrant Case Number_____

R 20/R 40 from District of _____

**Defendant Information:**

Juvenile _____Yes    <u>X</u>___No    If Yes, Matter to be sealed: _____Yes    <u>X</u>_No

Defendant Name_____ROBERT GIGLIO_____

Alias Name    _____

Address    210 Taylor St _____

Old Forge, PA 18518

Birthdate_____ SS #_____ Sex _____ Race_____ Nationality_____

AGENT:_____Y

**DEFENSE COUNSEL:** Name_____Joseph Mancano_____    **Phone**___215-569-6900_____

Address__2 Penn Center Plaza, Suit 515, 15th St & J.F.K. Blvd.

Philadelphia, PA 19102

**U.S. Attorney Information:**
AUSA__Bruce D. Brandler_____    Bar #_____

Interpreter _____Yes _____No    **List Language and/or Dialect:**_____

**Location Status:**

Arrest Date_____

____ Already in Federal Custody as of _____ in _____

____ Already in State Custody
____ On Pretrial Release

U.S.C. Citations                    XX    Indictment

Total # of Counts: _____    ___ Petty    ___ Misdeameanor    ___ Felony

| | Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|---|
| Set 1 | 18 USC 1623 | False statements before grand jury | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |

(May be continued on reverse)

Date: 10/7/97                    Signature of AUSA: _____

JS 45 (1/96)

District Court Case Number (To be filled in by deputy clerk): _____

| | Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|---|
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |
| Set 16 | | | |
| Set 17 | | | |
| Set 18 | | | |
| Set 19 | | | |
| Set 20 | | | |
| Set 21 | | | |
| Set 22 | | | |
| Set 23 | | | |

CRIMINAL CASE COVER SHEET _____ MIDDLE DISTRICT OF PENNSYLVANIA _____ U.S. DISTRICT COURT

**Place of Offense:**
City_____Scranton, PA_____

County/Parish_____Lackawanna_____

**Related Case Information:** In Re: Grand Jury Misc. No.
95-98

Superseding Indictment_____  Docket Number_____

Same Defendant_____  New Defendant_____

Magistrate Judge Case Number_____

Search Warrant Case Number_____

R 20/R 40 from District of _____

**Defendant Information:**
Juvenile _____Yes  ___X__No

**If Yes, Matter to be sealed:** _____Yes  _X__No

Defendant Name_____Frank Serafini_____

Alias Name _____

Address  603 Main St.

Moosic PA 18507

Birthdate_____ SS #_____    Sex _____ Race_____ Nationality_____

AGENT:_____  Y

**DEFENSE COUNSEL: Name**_Sal Cognetti_____    **Phone**__717-346-0745____

Address___Suite 800, Scranton Electoric Bldg., Scarnton, PA 18503____

**U.S. Attorney Information:**
AUSA_____Bruce D. Brandler_____    Bar #_____

Interpreter _____Yes ____No    List Language and/or Dialect:_____

**Location Status:**

Arrest Date_____

___ Already in Federal Custody as of _____ in _____

___ Already in State Custody
___ On Pretrial Release

Total # of Counts: _____    _____ Petty    _____ Misdeameanor    ___ Felony

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 1 _18 USC 1623_ | _False Statements before grand jury_ | 1 |
| Set 2 _____ | _____ | _____ |
| Set 3 _____ | _____ | _____ |
| Set 4 _____ | _____ | _____ |

(May be continued on reverse)

Date: _10/7/97_    Signature of AUSA: _Blackle_

JS 45 (1/96)

District Court Case Number (To be filled in by deputy clerk): _____

| Index Key/Code | Description of Offense Charged | Count(s) |
|---|---|---|
| Set 5 _____ | _____ | _____ |
| Set 6 _____ | _____ | _____ |
| Set 7 _____ | _____ | _____ |
| Set 8 _____ | _____ | _____ |
| Set 9 _____ | _____ | _____ |
| Set 10 _____ | _____ | _____ |
| Set 11 _____ | _____ | _____ |
| Set 12 _____ | _____ | _____ |
| Set 13 _____ | _____ | _____ |
| Set 14 _____ | _____ | _____ |
| Set 15 _____ | _____ | _____ |
| Set 16 _____ | _____ | _____ |
| Set 17 _____ | _____ | _____ |
| Set 18 _____ | _____ | _____ |
| Set 19 _____ | _____ | _____ |
| Set 20 _____ | _____ | _____ |
| Set 21 _____ | _____ | _____ |
| Set 22 _____ | _____ | _____ |
| Set 23 _____ | _____ | _____ |