# EXHIBIT G:

**Information from *United States v. Mathis-Gardner*,
Criminal Action No. 11-00100-RJL (D.D.C.)**

**Defendant Concord Management and Consulting LLC's
Motion to Dismiss the Indictment
*United States v. Internet Research Agency LLC, et al.*,
Criminal Action No. 18-00032-DLF**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: |
| | ) | |
| | ) | Filed: |
| v. | ) | |
| | ) | Violations: |
| | ) | 18 U.S.C. § 371 |
| DARLENE MATHIS-GARDNER, | ) | Conspiracy to Defraud the United States |
| | ) | |
| | ) | 18 U.S.C. § 287 |
| Defendant. | ) | Making of False Claims Upon the United |
| | ) | States |
| _____ | ) | |

## INFORMATION

THE UNITED STATES, ACTING THROUGH ITS ATTORNEYS, CHARGES:

1. For the purposes of this Information, the "relevant period" is that period from in or about March 2007 until at least in or about January 2009. During the relevant period, Darlene MATHIS-GARDNER ("MATHIS-GARDNER" or "defendant") was the founder and president of Company A, a corporation with its principal place of business in Washington, D.C., that held itself out as a provider of interior design and furnishing services for commercial and government clients. During March 2007 to in or about August 2008, Company A was a Maryland corporation. During in or about August 2008 through the remainder of the relevant period, Company A was a District of Columbia corporation.

2. As Company A's president, MATHIS-GARDNER pursued new business for Company A from government clients. In or around December 2006, MATHIS-GARDNER learned of a contract to be let by the United States General Services Administration ("GSA") for

certain interior design and project management services. Over the next several months, she learned that the project involved a headquarters building being renovated for Immigration and Customs Enforcement ("ICE"), Department of Homeland Security. Upon award, the contract was identified by GSA as Contract No. GS-29F-T0003. The building was known as "Potomac Center North" ("PCN") and was located at 500 12th Street, SW, Washington, D.C. The GSA contract for the PCN interior design and project management services is referred to hereinafter as the "PCN contract."

3. During the relevant period, MATHIS-GARDNER retained Person A, a person with experience in retail store management, as a consultant to assist MATHIS-GARDNER in preparing a response to the RFQ (request for quotes) for the PCN contract, and to manage the project if awarded.

4. As a result of the charged offenses, ICE suffered a loss of $389,738.

5. Whenever this Information refers to any act, deed, or transaction of any company, it means that the company engaged in the act, deed, or transaction by or through its officers, directors, employees, agents or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs. Various individuals not made defendants in this Information participated as co-conspirators in the conspiracy charged in Count One herein and performed acts and made statements in furtherance thereof.

### COUNT ONE
### 18 U.S.C. § 371
### (Conspiracy)

Paragraphs 1 through 5 of this Information are incorporated by reference as if fully stated herein, and the following is further alleged:

6.  Beginning in or about March 2007 and continuing until in or about June 2007, in the District of Columbia and elsewhere, defendant,

**DARLENE MATHIS-GARDNER,**

did knowingly and unlawfully combine, conspire, confederate, and agree with other persons, both known and unknown to the United States, to defraud the United States by providing false and fraudulent information, documents, and representations to GSA in order to obtain the approximately $1.3 million PCN contract.

### THE CONSPIRACY AND ITS OBJECTS

7.  The charged conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and her co-conspirators, the substantial terms of which were to obtain through fraud and deceit an award of the PCN contract.

### MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that MATHIS-GARDNER, Company A, Person A, and others would, among other things, do the following:

8.  Knowingly and willfully provide to GSA, as part of Company A's bid proposal for the PCN contract, false and fraudulent information, documents, and representations regarding the background and qualifications of persons Company A had retained to perform work under the PCN contract;

9.  Knowingly and willfully provide to GSA as part of Company A's bid proposal for the PCN contract, false and fraudulent information, documents, and representations regarding past performance by Company A on other interior design projects and amounts paid to Company A for such performance; and

-3-

10. Knowingly and willfully create and submit fictitious invoices to GSA purporting to document Company A's past performance on projects similar to the PCN contract in their size and scope and the amounts paid by government and commercial clients for such projects, to justify Company A's bid proposal for the PCN contract.

## OVERT ACTS

In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by defendant and her co-conspirators in the District of Columbia and elsewhere:

11. In or about April 2007, MATHIS-GARDNER and Person A prepared a written supplement to Company A's proposal for the PCN contract that falsely overstated the background and qualifications of Company A to perform the PCN contract. Among other false and fraudulent information, the supplement represented that certain individuals had worked for Company A for years although some in fact had never worked there and others had worked there for less than the duration claimed. The supplement also represented that certain employees had particular security clearances and professional certifications when they did not. MATHIS-GARDNER arranged for the submission of the supplement to GSA in support of Company A's bid proposal.

12. In or about May 2007, MATHIS-GARDNER prepared and faxed written instructions to Person A that explained how to create fictitious invoices that were supposed to reflect Company A's past performance to GSA. MATHIS-GARDNER's instructions provided customer names, task descriptions, employee names, labor rates, and dollar values for Person A to use in creating the fictitious invoices with Company A's logo.

13. In or about May 2007, Person A created several false invoices on a computer as

directed by MATHIS-GARDNER. For example, Person A created a false invoice purporting to reflect approximately $1.25 million in work by Company A for Fannie Mae that had never been done. While Company A had a contractual relationship with Fannie Mae, no work had been ordered or performed under that arrangement. Person A also created a false invoice purporting to reflect approximately $1.1 million in work for the District of Columbia Department of Parks and Recreation, which contained false labor categories, task descriptions, and hourly rates for Company A's performance under the contract, falsely identified Company A as a prime contractor on the project when it had been a subcontractor, and substantially overstated the total amount that Company A had billed for its services on the contract. MATHIS-GARDNER arranged for copies of the false invoices to be transmitted to GSA.

14. In or about June 2007, based on the false and fraudulent information, documents, and representations that MATHIS-GARDNER had submitted, GSA awarded to Company A a prime contract for the PCN interior design and project management work with a total value of approximately $1.3 million.

ALL IN VIOLATION OF SECTION 371 OF TITLE 18 OF THE UNITED STATES CODE.

### COUNT TWO
### 18 U.S.C. § 287
### (False Claims Act)

Paragraphs 1 through 5 of this Information are incorporated by reference as if fully stated herein, and the following is further alleged:

15. As Company A's president, defendant exercised management authority over the invoices that Company A submitted between June 2007 and January 2009 for its work under the

-5-

PCN Contract. During that time period, in the District of Columbia and elsewhere, defendant,

**DARLENE MATHIS-GARDNER,**

made and presented to GSA, being a department or agency of the United States, false and fraudulent claims, knowing such claims to be false and fraudulent in that they materially overstated the number of hours of work performed by Company A's personnel. Among the false and fraudulent claims that defendant made and presented were the following invoices for Company A's work on the PCN Contract:

March 18, 2008     Invoice for period November 1, 2007 to November 30, 2007

March 18, 2008     Invoice for period December 1, 2007 to December 31, 2007

ALL IN VIOLATION OF SECTION 287 OF TITLE 18 OF THE UNITED STATES CODE.

_____
CHRISTINE A. VARNEY
Assistant Attorney General
Antitrust Division
United States Department of Justice

_____
SCOTT D. HAMMOND
Deputy Assistant Attorney General
Antitrust Division
United States Department of Justice

_____
LISA M. PHELAN
Chief
National Criminal Enforcement Section
Antitrust Division
United States Department of Justice

_____
MARY N. STRIMEL
MATTHEW LUNDER
Trial Attorneys
Antitrust Division
United States Department of Justice
450 5th Street, NW
Suite 11300
Washington, DC 20530
(202) 616-5949
mary.strimel@usdoj.gov