# EXHIBIT I:

**Indictment from *United States v. Trie*, Criminal Action No. 98-00029 (D.D.C.)**

**Defendant Concord Management and Consulting LLC's
Motion to Dismiss the Indictment
*United States v. Internet Research Agency LLC, et al.,*
Criminal Action No. 18-00032-DLF**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| **v.** | * **CRIMINAL NO. ▉98▉0029** |
| **YAH LIN "CHARLIE" TRIE, and** | * **GRAND JURY ORIGINAL** |
| **YUAN PEI "ANTONIO" PAN** | * |
| | * **VIOLATIONS:** |
| | * |
| | **18 U.S.C. Section 371** |
| | * **(Conspiracy to Defraud and to Impair and** |
| | **Impede the FEC)** |
| | * **18 U.S.C. Section 1341** |
| | **(Mail Fraud)** |
| | * **18 U.S.C. Section 1343** |
| | **(Wire Fraud)** |
| | * **18 U.S.C. Section 2** |
| | **(Aiding and Abetting)** |
| | * **18 U.S.C. Section 1001** |
| | **(False Statements)** |
| | * **18 U.S.C. Section 371** |
| | **(Conspiracy to Obstruct Justice)** |
| | * **18 U.S.C. Section 1512(b)(2)** |
| | **(Witness Tampering)** |
| | * **18 U.S.C. Section 1505** |
| | **(Obstruction of Congressional Investigation)** |

**\*\*\*\*\*\*\*\*\*\*\*\***

FRIEDMAN, J. PLF

B'

FILED IN OPEN COURT

JAN 2 8 1998

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## INDICTMENT

The Grand Jury for the District of Columbia charges that:

### Introductory Allegations

1.    At all times material to this Indictment, defendant **YAH LIN "CHARLIE"**

**TRIE** was a resident of  Little Rock, Arkansas, and Washington, D.C.

2.      At all times material to this Indictment, defendant **YAH LIN "CHARLIE" TRIE** owned and operated Daihatsu International Trading Corporation ("Daihatsu"), an Arkansas corporation purportedly in the import and export business, with its principal office in Little Rock, Arkansas, and, beginning in the fall of 1994, utilized an apartment at the Watergate South complex, 700 New Hampshire Avenue, Unit 121, in Washington, D.C.  ("Watergate South apartment") as an office.

3.      Beginning in the Fall of 1994, defendant **YAH LIN "CHARLIE" TRIE** was associated with  San Kin Yip International Trading Co. ("San Kin Yip"), an Arkansas corporation owned by a Macau resident, who was not a citizen of the United States nor a lawful permanent resident.  Beginning in the fall of 1994, San Kin Yip shared the Watergate South apartment with Daihatsu.

4.      Beginning in approximately April 1996, defendant **YAH LIN "CHARLIE" TRIE** owned and operated America-Asia Trade Center, Incorporated ("America-Asia"), a Washington, D.C. corporation, which shared the Watergate South apartment with Daihatsu and San Kin Yip.

5.      Beginning in approximately August 1995, **YUAN PEI "ANTONIO" PAN** began working for **YAH LIN "CHARLIE" TRIE**.  At some time thereafter, YUAN PEI "ANTONIO" PAN was the Chief Executive Officer of Daihatsu and Executive Director of America-Asia.  Prior to August 1995, **YUAN PEI "ANTONIO" PAN** was a director of Lucky Port Investments, Ltd., a foreign corporation, and Senior Vice

President of Lippo Group-Chinese Division.  **YUAN PEI "ANTONIO" PAN** was a Taiwanese national and not a citizen of the United States nor a lawful permanent resident.

6.       At all times material to this Indictment, the Federal Election Campaign Act, Title 2, United States Code, Section 431, et seq. ("FECA"), in particular, Title 2, United States Code, Section 441e, specifically prohibited "foreign nationals" from making contributions in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office; or soliciting, accepting or receiving any such contribution.  A "foreign national" is an individual who is not a citizen of the United States and who is not lawfully admitted for permanent residence or any association, corporation, organization, or other combination of persons organized under the laws of, or having its principal place of business in, a foreign country.

7.       At all times material to this Indictment, the FECA, in particular Title 2, United States  Code, Section 441f, specifically prohibited any person from making a contribution for the purpose of influencing any election for federal office, using the name of another person or knowingly permitting his or her name to be used to effect such a contribution, for example, by giving funds to a straw donor, known as a "conduit," for the purpose of having the conduit pass the funds on to a federal candidate as the

conduit's own contribution, or by reimbursing a "donor" who has already given to a candidate.

8.  At all times material to this Indictment, the Federal Election Commission ("FEC") was an agency of the United States government, headquartered in Washington, D.C., and entrusted with the responsibility of enforcing the reporting requirements of the FECA and for directing, investigating, and instituting civil enforcement actions with respect to violations of the FECA, including the provisions referred in paragraphs 6 and 7 above. In addition, the FEC was responsible for making available to the public specific information about the amounts and sources of political contributions to federal candidates and their political committees.

9.  At all times material to this Indictment, the FECA, in particular Title 2, United States Code, Section 434, required that each treasurer of a political committee file periodic reports of receipts and disbursements with the FEC. These reports identify each person who made a contribution during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution. The reports also list the mailing address and occupations of persons identified as contributors, as well as the names of their employers.

## The Democratic National Committee and the Trustee Program

10.   At all times material to this Indictment, the Democratic National Committee ("DNC") was a "political committee" subject to the terms of the FECA and related regulations.   The DNC was formed in 1848.   A major function of the DNC was to solicit campaign contributions and raise funds on behalf of the Democratic Party and on behalf of democratic candidates for state and federal office.

11.   At all times material to this Indictment, it was the policy of the DNC not to accept contributions made:

a.      by foreign nationals, foreign corporations or United States subsidiaries of foreign corporations unless the funds were generated in the United States and no foreign national participated in the decision to contribute; and/or

b.      in the name of another person.

12.   In or about 1988, the DNC established the Trustee Program for major supporters of the Democratic Party.  Through this program, the DNC would provide numerous benefits and privileges to its contributors, including access to White House officials, in exchange for contributions of pre-determined amounts.  The DNC required that all contributions be made in accordance with applicable law and regulations including its own internal policies.

13.   On or about June 30, 1994, the DNC invited defendant **YAH LIN "CHARLIE" TRIE**  to become a Trustee of the DNC, as a result of an aggregate

contribution of $100,000 he made to the DNC in or about May of 1994. Thereafter, defendant **YAH LIN "CHARLIE" TRIE** was given additional positions on DNC boards and councils based upon his commitment to raise or contribute substantial amounts of money to the DNC.

## The Conspiracy

14.    From in or about April 1994 and continuing to in or about September 1996, in the District of Columbia and elsewhere, defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN**, together with persons both known and unknown to the grand jury, did knowingly conspire and agree with others to:

a.    Devise and intend to devise a scheme and artifice to defraud the DNC and to obtain property from the DNC by means of false and fraudulent pretenses, representations and promises and used the mails and wires in violation of Title 18, United States Code, Sections 1341 and 1343;

b.    Defraud the United States by impairing, impeding, defeating and obstructing the lawful functions and duties of the FEC in violation of Title 18, United States Code, Section 371.

## Manner and Means of the Conspiracy

15.    It was part of the conspiracy that the defendants **YAH LIN "CHARLIE" TRIE, YUAN PEI "ANTONIO" PAN** and others acting at their request:

a.    Sought access to high level government officials in the United States for the purpose of promoting the defendants' private business activities here and abroad;

b.    Purchased access to high level government officials in the United States by contributing and soliciting contributions to the DNC;

c.    Channeled foreign money to the DNC through the use of straw or conduit contributions;

d.    Concealed the source of the money contributed by reimbursing conduits in cash and using multiple bank accounts;

e.    Received benefits from the DNC as a result of the fraudulent contributions and solicitation activities including, but not limited to, special seating at DNC functions, complimentary tickets to DNC events, membership in DNC committees and related entities, including the Trustee Program, the Democratic Business Leadership Forum and the DNC Finance Board of Directors, invitations to meetings and other events where White House personnel, including the President and Vice President of the United States, were in attendance, and administrative support of DNC employees;

f.    Received "credit" and recognition from the DNC as the solicitor of the contributions, thereby enabling defendant **YAH LIN "CHARLIE" TRIE** to meet the fundraising goals necessary to maintain his positions on DNC committees and related entities;

g.      Used membership in the DNC committees and related entities, including the  Trustee Program, the Democratic Business Leadership Forum and the DNC Finance Board of Directors to promote the defendants' private business activities;

h.      Deprived the DNC of the right to control how its money is spent; and

i.      Caused the DNC to file false campaign finance reports with the FEC.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

1.      In or about April 1994, defendant  **YAH LIN "CHARLIE" TRIE** requested a seat at the table of the President of the United States at the 1994 DNC Presidential Gala on June 22, 1994, in exchange for his contribution of $100,000 to the DNC.

2.      On or about May 6, 1994, a co-conspirator caused an overseas wire transfer in the amount of $100,000 from Lucky Port Investments Ltd., a foreign corporation,  for which defendant **YUAN PEI "ANTONIO" PAN** was the Director, to the checking account of defendant **YAH LIN "CHARLIE" TRIE** at First Commercial Bank in Little Rock, Arkansas.

3.      On or about May 14, 1994, defendant **YAH LIN "CHARLIE" TRIE** wrote a personal check from his account at First Commercial Bank in Little Rock, Arkansas to the  DNC in the amount of $60,000.

4.      On or about May 14, 1994, defendant **YAH LIN "CHARLIE" TRIE** wrote a personal check from his account at First Commercial Bank in Little Rock, Arkansas  to the DNC in the amount of $20,000.

5.      On or about May 25, 1994,  defendant **YAH LIN "CHARLIE" TRIE** caused his wife to sign a check from their account at  First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $20,000.

6.      On or about June 21, 1994, defendant **YAH LIN "CHARLIE" TRIE** caused a check to be written from the account of Daihatsu at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $7,500.

7.      On or about June 22, 1994, defendant **YAH LIN "CHARLIE" TRIE** and a business associate from Macau attended the 1994 DNC Presidential Gala at the Washington Hilton Hotel in Washington, D.C. defendant **YAH LIN "CHARLIE" TRIE** sat with the President of the United States.

8.      On or about August 1, 1994, defendant  **YAH LIN "CHARLIE" TRIE** wrote a personal check from his account at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $20,000.

9.      On or about August 2, 1994, defendant  **YAH LIN "CHARLIE" TRIE** was Vice Chair of, and he and a business associate from Macau attended, a DNC fundraising event and birthday celebration for the President of the United States based upon his $20,000 contribution.

10.     In or about August 1994, defendant **YAH LIN "CHARLIE" TRIE** requested the DNC to arrange for a private tour of the White House for himself and his guests and a tour of the White House for approximately twenty individuals from China.

11.     In or about August 1994, defendant **YAH LIN "CHARLIE" TRIE** requested DNC employees to provide reference letters in support of his application to lease the Watergate South apartment, which was later used as an office for Daihatsu, San Kin Yip and America-Asia.

12.     In or about early September 1994, defendant **YAH LIN "CHARLIE" TRIE** became a Vice Chair of the DNC's Business Leadership Forum.

13.     On or about September 21, 1994, defendant **YAH LIN "CHARLIE" TRIE** attended an inaugural Vice Chair luncheon for the Business Leadership Forum with the Vice President of the United States.

14.     On or about October 11, 1994, defendant **YAH LIN "CHARLIE" TRIE** directed the incorporation of San Kin Yip in Little Rock, Arkansas.

15.     On or about October 20, 1994, a business associate from Macau wired $100,000 into a bank account established by defendant **YAH LIN "CHARLIE" TRIE** for San Kin Yip at First Commercial Bank in Little Rock, Arkansas.

16.     On or about October 20, 1994, defendant **YAH LIN "CHARLIE" TRIE** and a business associate from Macau attended a Business Leadership Forum dinner with the Vice President of the United States.

17. On or about October 20, 1994, defendant **YAH LIN "CHARLIE" TRIE** caused a check to be written from the account of San Kin Yip at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $15,000.

18. On or about October 24, 1994, defendant **YAH LIN "CHARLIE" TRIE** requested the DNC to arrange for a private White House tour for himself and three business associates.

19. In or about January 1995, defendant **YAH LIN "CHARLIE" TRIE** accepted a position on the DNC Finance Board of Directors and promised to raise $350,000.

20. On or about February 16, 1995, defendant **YAH LIN "CHARLIE" TRIE** attended a dinner honoring the DNC Managing Trustees, which was held at the White House with the President of the United States and the First Lady.

21. On or about June 21, 1995, defendant **YAH LIN "CHARLIE" TRIE** wrote a check on the account of Daihatsu at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $50,000.

22. On or about June 28, 1995, defendant **YAH LIN "CHARLIE" TRIE** attended the 1995 DNC Presidential Gala at the Sheraton Hotel in Washington, D.C.

23. On or about September 11, 1995, defendant **YAH LIN "CHARLIE" TRIE** attended a DNC dinner at the White House with the Vice President of the United States.

24.    On or about September 15, 1995, defendant **YAH LIN "CHARLIE" TRIE** attended a DNC Trustee dinner at the White House with the President of the United States.

25.    On or about October 31, 1995, defendant **YAH LIN "CHARLIE" TRIE** signed a letter   under   the title "Vice Chair, Democratic National Finance Committee" to officers of two Chinese corporations inviting them to a "special luncheon honoring the President of the United States."

26.    On or about November 9, 1995, defendant **YAH LIN "CHARLIE" TRIE** solicited a co-conspirator at a DNC fundraiser in Washington, D.C. to make a contribution to the DNC in the amount of $5,000 and subsequently reimbursed that co-conspirator in cash.

27.    On or about November 13, 1995, defendant **YAH LIN "CHARLIE" TRIE** solicited a co-conspirator at a fundraiser in Washington, D.C. to make a contribution to the DSCC in the amount of $2,000 and subsequently reimbursed that co-conspirator in cash.

28.    On or about December 7, 1995, defendant **YAH LIN "CHARLIE" TRIE** requested the DNC to arrange a meeting and photo opportunity with the President of the United States for himself and a guest from Indonesia.

29.    On or about December 17, 1995, defendant **YAH LIN "CHARLIE" TRIE** solicited a co-conspirator at a fundraiser in Washington, D.C. to make a contribution to

the Oregon State Democratic Party in the amount of $2,000 and subsequently reimbursed that co-conspirator in cash.

30.     On or about January 29, 1996, defendant YAH LIN "CHARLIE" TRIE attended a DNC Finance Board of Directors luncheon at the White House with the President of the United States.

31.     On or about February 6, 1996, defendant YAH LIN "CHARLIE" TRIE requested the DNC to arrange a private tour of the White House for the defendant YAH LIN "CHARLIE" TRIE and two business associates.

32.     On or about February 6, 1996, defendant YAH LIN "CHARLIE" TRIE and a business associate attended a DNC coffee at the White House with the President of the United States.

33.     On or about February 14, 1996, a co-conspirator caused a wire transfer in the amount of $150,000 from San Kin Yip Holdings Co. Ltd., Bank of China, Hong Kong Branch, into the bank account of defendant YAH LIN "CHARLIE" TRIE and a business associate from Macau at Riggs Bank in Washington, D.C.

34.     On or about February 19, 1996, two co-conspirators wrote checks made payable to the DNC in the amounts of $12,500 from their personal bank accounts in California at the direction of defendant YAH LIN "CHARLIE" TRIE, for which they were later reimbursed by defendant YUAN PEI "ANTONIO" PAN.

13

35.     On or about February 19, 1996, defendants **YAH LIN "CHARLIE" TRIE** and **YUAN PEI "ANTONIO" PAN**, and a business associate from Macau, attended a DNC fundraising dinner with the President of the United States at the Hay-Adams Hotel in Washington, D.C.

36.     On or about February 20, 1996, defendants **YAH LIN "CHARLIE" TRIE** and **YUAN PEI "ANTONIO" PAN**, and a business associate from Macau, attended a DNC breakfast meeting with the Vice President of the United States at the Hay-Adams Hotel in Washington, D.C.

37.     On or about February 22, 1996, defendant **YUAN PEI "ANTONIO" PAN** opened a bank account in his name at Amer-Asia Bank in Flushing, New York.  At that time, defendant **YUAN PEI "ANTONIO" PAN** deposited $25,200 in cash, and immediately purchased 5 cashiers checks in the amount of $5,000 each made payable to  the individuals referred to in Paragraph 34 above.

38.     On or about February 29, 1996, defendant **YAH LIN "CHARLIE" TRIE** caused his wife to write a check on the account of Daihatsu at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $12,500 for defendant **YAH LIN "CHARLIE" TRIE's** attendance at the February 19, 1996 Hay-Adams Hotel dinner.

39.     On or about March 11, 1996, defendant **YAH LIN "CHARLIE" TRIE** executed a Confidential Financial Disclosure Report in conjunction with his nomination to the Commission on U.S. Pacific Trade and Investment Policy.

40.     On or about May 12, 1996, defendant **YAH LIN "CHARLIE" TRIE** wrote a check from his personal account at First Commercial Bank in Little Rock, Arkansas to the DNC in the amount of $10,000 for his attendance at the DNC Presidential Dinner at the Carlton Hotel in Washington, D.C.

41.     On or about May 13, 1996, defendant **YAH LIN "CHARLIE" TRIE** attended a DNC Presidential dinner at the Carlton Hotel in Washington, D.C.

42.     In or about July 1996, defendant **YAH LIN "CHARLIE" TRIE** requested a DNC employee to arrange for hotel rooms at the Democratic National Convention  in Chicago, Illinois scheduled for August 1996.

43.     On or about August 7, 1996, a co-conspirator caused a wire transfer in the amount of $200,000 from Compania de Investimento e Fomento Predail Goodwill, Bank of China, Macau Branch, into the bank account of defendant **YAH LIN "CHARLIE" TRIE** and a business associate from Macau at Riggs Bank in Washington, D.C.

44.     On or about August 15, 1996, defendant **YAH LIN "CHARLIE" TRIE** solicited a co-conspirator in California to make a conduit contribution to the DNC in the amount of $10,000 and subsequently reimbursed that co-conspirator.

45.     On or about August 15, 1996, a co-conspirator caused a wire transfer in the amount of $10,000 to be made to the account of another co-conspirator (referenced in Paragraph 44 above) from the account of San Kin Yip at Riggs Bank in Washington, D.C., as reimbursement for the $10,000 contribution to the DNC.

15

46.    On or about August 15, 1996, a co-conspirator caused a wire transfer in the amount of $80,000 from the account of defendant **YAH LIN "CHARLIE" TRIE** and a business associate from Macau at Riggs Bank in Washington, D.C. to an account at the American International Bank in Los Angeles, California.

47.    On or about August 15, 1996, defendant **YUAN PEI "ANTONIO" PAN** received $80,000 in cash in Los Angeles, California.

48.    In or about August 1996, defendant **YUAN PEI "ANTONIO" PAN** solicited a co-conspirator in California to make two conduit contributions to the DNC in the amount of $5,000 each and subsequently reimbursed that co-conspirator in cash.

49.    In or about August 1996, defendant **YUAN PEI "ANTONIO" PAN** solicited a co-conspirator in California to make a conduit contribution to the DNC in amount of $10,000 and subsequently reimbursed that co-conspirator in cash.

50.    In or about August 1996, defendant **YUAN PEI "ANTONIO" PAN** solicited a co-conspirator in California to make a conduit contribution to the DNC in amount of $10,000 and subsequently reimbursed that co-conspirator in cash.

51.    In or about August 1996, defendant **YUAN PEI "ANTONIO" PAN** solicited a co-conspirator in Ohio to make a conduit contribution to the DNC in amount of $10,000 and subsequently reimbursed that co-conspirator in cash.

52.    In or about August 1996, defendant **YAH LIN "CHARLIE" TRIE** solicited a co-conspirator at the Watergate South apartment in Washington, D.C.  to make a conduit

16

contribution to the DNC in the amount of $10,000 and subsequently reimbursed that co-conspirator in cash.

53.   On or about August 18, 1996, defendant **YAH LIN "CHARLIE" TRIE** hand-delivered contribution checks to the DNC at a hotel room in New York, New York.

54.   On or about August 18, 1996, defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN**, and a business associate from Macau, attended a DNC party in New York, New York honoring the birthday of the President of the United States.

(Conspiracy to Defraud and Impair and Impede the FEC,
in violation of 18 U.S.C. § 371)

## COUNT TWO

1.      The allegations contained in paragraphs One through Thirteen of Count One of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.       From in or about April 1994, until in or about September 1996, in the District of Columbia, and elsewhere defendants **YAH LIN "CHARLIE" TRIE** and **YUAN PEI "ANTONIO" PAN** knowingly devised and intended to devise a scheme and artifice to defraud the DNC, and to obtain from the DNC property by means of false and fraudulent pretenses, representations and promises, well knowing that the pretenses, representations, and promises would be and were false when made.

### The Scheme to Defraud the DNC

3.      It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** sought access to high level government officials in the United States for the purpose of promoting their private business activities here and abroad.

4.      It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** purchased access to high level government officials in the United States by contributing and soliciting contributions to the DNC.

18

5.      It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** channeled foreign money to the DNC through the use of straw or conduit contributions.

6.      It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** concealed the source of the money contributed by reimbursing conduits in cash and using multiple bank accounts.

7.      It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** received benefits from the DNC as a result of the fraudulent contributions and solicitation activities including, but not limited to,  special seating at DNC functions, complimentary tickets to DNC events, membership in DNC committees and related entities, including the  Trustee Program, the Democratic Business Leadership Forum and the DNC Finance Board of Directors, invitations to meetings and other events where White House personnel, including the President and Vice President of the United States, were in attendance, and administrative support of DNC employees.

8.      It was part of the scheme and artifice to defraud that defendant **YAH LIN "CHARLIE" TRIE** received "credit" and recognition from the DNC as the solicitor of the contributions, thereby enabling him to meet the fundraising goals necessary to maintain his positions on DNC committees and related entities.

9.     It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** used defendant **YAH LIN "CHARLIE" TRIE's** membership in the DNC committees and related entities, including the Trustee Program, the Democratic Business Leadership Forum and the DNC Finance Board of Directors to promote the defendants' private business activities.

10.    It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** deprived the DNC of the right to control how its money is spent.

11.    It was part of the scheme and artifice to defraud that defendants **YAH LIN "CHARLIE" TRIE and YUAN PEI "ANTONIO" PAN** caused the DNC to file false campaign finance reports with the FEC.

12.    On or about June 21, 1994, in the District of Columbia and elsewhere,

**YAH LIN "CHARLIE" TRIE,**

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly cause to be delivered by express mail to the DNC in Washington, D.C. a check payable to the DNC in the amount of $7,500 from

the account of Daihatsu at First Commercial Bank from the U.S. Post Office in Little

Rock, Arkansas.

(Mail Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1341 and 2)

## COUNT THREE

1.     The allegations contained in paragraphs One through Eleven of Count Two of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.     On or about August 4, 1994, in the District of Columbia and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly cause to be delivered by express mail to the DNC in Washington, D.C. a check payable to the DNC in the amount of $20,000 from the account of defendant **YAH LIN "CHARLIE" TRIE**  and his wife at First Commercial Bank  from the U.S. Post Office in Little Rock, Arkansas.

(Mail Fraud and Aiding and Abetting,
18 U.S.C. §§ 1341 and 2)

<u>COUNT FOUR</u>

1.     The allegations contained in paragraphs One through Eleven of Count Two of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.     On or about August 26, 1994, in the District of Columbia and elsewhere,

**YAH LIN "CHARLIE" TRIE,**

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of a wire in interstate commerce, writings, signs, signals, pictures and sounds, to wit: the facsimile transmission of a memorandum from Little Rock, Arkansas to an employee at the DNC in Washington, D.C.

(Wire Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1343 and 2)

## COUNT FIVE

1.      The allegations contained in paragraphs One through Eleven of Count Two of the   Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about November 9, 1995, in the District of Columbia and elsewhere,

**YAH LIN "CHARLIE" TRIE,**

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of a wire in interstate commerce, writings, signs, signals, pictures and sounds, to wit: a telephone call from the Watergate South apartment in Washington, D.C. to an individual in Gaithersburg, Maryland.

(Wire Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1343 and 2)

## COUNT SIX

1.      The allegations contained in paragraphs One through Eleven of Count Two of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about August 15, 1996, in the District of Columbia and elsewhere,

**YAH LIN "CHARLIE" TRIE and
YUAN PEI "ANTONIO" PAN,**

defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of a wire in interstate commerce, writings, signs, signals, pictures and sounds, to wit:  the wire transfer of funds in the amount of $80,000 from an account in the name of defendant **YAH LIN "CHARLIE" TRIE** and a business associate from Macau maintained at Riggs Bank in Washington, D.C.  to an account at American International Bank in Los Angeles, California.

(Wire Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1343 and 2)

## COUNT SEVEN

1.      The allegations contained in paragraphs One through Eleven of Count Two of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about August 15, 1996, in the District of Columbia and elsewhere,

**YAH LIN "CHARLIE" TRIE and
YUAN PEI "ANTONIO" PAN,**

defendants herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of a wire in interstate commerce, writings, signs, signals, pictures and sounds, to wit:   the wire transfer of funds in the amount of $10,000 from an account in the name of San Kin Yip  maintained at Riggs Bank in Washington, D.C. to an account held by an individual in  California.

(Wire Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1342 and 2)

## COUNT EIGHT

1.      The allegations contained in paragraphs One through Eleven of Count Two of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about August 16, 1996, in the District of Columbia and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain property by false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of a wire in interstate commerce, writings, signs, signals, pictures and sounds, to wit:   a telephone call from the Watergate South apartment in Washington, D.C. to a business office in Rockville, Maryland.

(Wire Fraud and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1343 and 2)

27

## COUNTS NINE THROUGH ELEVEN

1.      The allegations contained in paragraphs One through Thirteen of Count One of the Indictment are incorporated herein by reference as though fully set forth in these Counts of the Indictment.

2.      On or about the dates set forth below, in the District of Columbia, and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, in a matter within the jurisdiction of a department and agency of the United States, knowingly and willfully caused another to (1) falsify, conceal and cover up by trick, scheme and device a material fact; (2) make materially false, fictitious and fraudulent statements and representations; and (3) make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries, to wit: the defendant caused the treasurer for the DNC to create and submit false reports to the FEC which indicated that lawful contributions were made by individuals to the DNC when in truth and fact, as the defendant well knew, it was another person and entity that had contributed to the DNC and not the conduits listed in the report filed with the FEC.

28

| Count | Date | Political Committee |
|---|---|---|
| 9 | 01/22/96 | DNC Services Corporation/Democratic National Committee |
| 10 | 04/15/96 | DNC Services Corporation/Democratic National Committee |
| 11 | 10/15/96 | DNC Services Corporation/Democratic National Committee |

(False Statements and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1001 and 2)

29

## COUNT TWELVE

### Introductory Allegations

1.      In or about December 1996, the U.S. Senate was authorized to conduct an investigation of illegal or improper activities in connection with the 1996 federal election campaigns.

2.      Prior to December 1996, a federal grand jury was convened in the District of Columbia to investigate, among other things, illegal or improper activities in connection with campaign contributions made by defendant **YAH LIN "CHARLIE" TRIE** and others.

3.      In or about December 1996, defendant **YAH LIN "CHARLIE" TRIE** retained a law firm in connection with grand jury and congressional investigations into alleged federal election law violations.

4.      On or about February 13, 1997, the U.S. Senate issued a subpoena to the Custodian of Records of  Daihatsu seeking records that referred or related to, among other things, political contributions and the DNC.

5.      In or about June 25, 1997, the federal grand jury sitting in the District of Columbia issued a grand jury subpoena to an employee of defendant **YAH LIN "CHARLIE" TRIE** seeking documents related to, among other things, political contributions made by defendant **YAH LIN "CHARLIE" TRIE**.

## The Conspiracy

6.      From in or about December 1996 continuing through October 1997, the exact dates being to the grand jury unknown, in the District of Columbia, the State of Arkansas, and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, did knowingly and willfully conspire and agree with other persons whose names are to the grand jury both known and unknown, to commit offenses against the United States, that is, (1) to corruptly influence, obstruct, and impede and endeavor to influence, obstruct and impede the due administration of justice, in violation of 18 U.S.C. Section 1503; (2) to corruptly impede and endeavor to impede the due and proper exercise of the power of inquiry under which any inquiry and investigation was being had before the United States Senate, and any committee of the United States Senate and any joint committee of the Congress, in violation of 18 U.S.C. Section 1505; and, (3) to corruptly persuade another person with the intent to cause and induce said person to withhold a record and document from an official proceeding and to alter, destroy, mutilate and conceal an object with the intent to impair the object's integrity and availability for use in an official proceeding,  in violation of 18 U.S.C. Section 1512(b)(2).

## Manner and Means of the Conspiracy

7.      It was part of the conspiracy that defendant **YAH LIN "CHARLIE" TRIE** and his co-conspirator(s) did utilize the telephones for the purpose of communicating with his co-conspirator(s) about the alteration, destruction, mutilation and concealment of documents.

8.      It was further part of the conspiracy that defendant **YAH LIN "CHARLIE" TRIE** and his co-conspirator(s) did attempt to conceal from law enforcement and others the alteration, destruction, mutilation and concealment of records by causing false statements to be made to the United States Senate and to federal law enforcement.

9.      It was further part of the conspiracy that defendant **YAH LIN "CHARLIE" TRIE** and his co-conspirator(s) did alter, destroy, mutilate and conceal documents responsive to subpoenas issued by the United States Senate and by a federal grand jury.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

1.      In or about December 1996, defendant **YAH LIN "CHARLIE" TRIE** called a co-conspirator in Rockville, Maryland and discussed a campaign contribution made by the co-conspirator at the direction of defendant **YAH LIN "CHARLIE" TRIE** in August, 1996.

32

2.     In or about January 1997, defendant **YAH LIN "CHARLIE" TRIE** called a co-conspirator in Little Rock, Arkansas to discuss the pending grand jury and congressional investigations and the documents of Daihatsu.

3.     In or about March 7, 1997, a co-conspirator left a message on a telephone answering machine located in Washington, D.C. for the purpose of contacting defendant **YAH LIN "CHARLIE" TRIE** about a U.S. Senate subpoena served on Daihatsu.

4.     In or about March 1997, defendant **YAH LIN "CHARLIE" TRIE** called a co-conspirator in Little Rock, Arkansas and asked the co-conspirator to get rid of documents responsive to the U.S. Senate subpoena.

5.     In or about March 1997, a co-conspirator falsely told the attorneys for Daihatsu and for the defendant **YAH LIN "CHARLIE" TRIE** that all documents responsive to the subpoena issued by the U.S. Senate were available for their review and inspection in Little Rock, Arkansas.

6.     In or about June 1997, a co-conspirator left a message for defendant **YAH LIN "CHARLIE" TRIE** on a telephone answering machine located in Washington, D.C.

7.     On or about October 21, 1997, a co-conspirator falsely told agents of the Federal Bureau of Investigation at a meeting in Washington, D.C. that all documents responsive to a federal grand jury subpoena dated June 25, 1997 had been produced.

8.      On or about October 22, 1997, after producing a number of additional documents on that date, a co-conspirator falsely told agents of the Federal Bureau of Investigation at a meeting in Washington, D.C. that all documents responsive to a federal grand jury subpoena dated June 25, 1997 had been produced.

(Conspiracy to Obstruct Justice,
in violation of 18 U.S.C. § 371)

34

## COUNT THIRTEEN

1.      The allegations contained in paragraphs One through Five of Count Twelve of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      In or about January, 1997, in the District of Columbia, the State of Arkansas, and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, did corruptly persuade another person with the intent to cause and induce said person to withhold a record and document from an official proceeding and to alter, destroy, mutilate and conceal an object with the intent to impair the object's integrity and availability for use in an official proceeding, to wit: by telling and instructing another person to alter, destroy, mutilate, and conceal documents.

(Witness Tampering and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1512(b)(2) and 2)

35

## COUNT FOURTEEN

1.      The allegations contained in paragraphs One through Five of Count Twelve of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about March 7, 1997, in the District of Columbia, the State of Arkansas, and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, did corruptly impede and endeavor to impede the due and proper exercise of the power of inquiry under which any inquiry and investigation was being had before the United States Senate, and any committee of the United States Senate and any joint committee of the Congress, to wit: by instructing another person to alter, destroy, mutilate, conceal and otherwise fail to produce documents responsive to a subpoena issued by the United States Senate Committee on Governmental Affairs.


(Obstruction of Congressional Investigation and Aiding and Abetting, in violation of 18 U.S.C. §§ 1505 and 2)

## COUNT FIFTEEN

1.      The allegations contained in paragraphs One through Five of Count Twelve of the Indictment are incorporated herein by reference as though fully set forth in this Count of the Indictment.

2.      On or about June 27, 1997, in the District of Columbia, the State of Arkansas, and elsewhere,

### YAH LIN "CHARLIE" TRIE,

defendant herein, did corruptly persuade another person with the intent to cause and induce said person to withhold a record and document from an official proceeding and to alter, destroy, mutilate and conceal an object with the intent to impair the object's integrity and availability for use in an official proceeding, to wit: by telling and instructing another person to alter, destroy, mutilate, and conceal documents responsive

37

to a federal grand jury subpoena issued by the United States District Court for the

District of Columbia.

(Witness Tampering and Aiding and Abetting,
in violation of 18 U.S.C. §§ 1512(b)(2) and 2)

A TRUE BILL:

Wilma A. Lewis
United States Attorney for the
  District of Columbia

Foreperson

Thomas W. McNamara
Sandra Wilkinson
Trial Attorneys
U.S. Department of Justice
Campaign Financing Task Force
1001 G Street, NW
Washington, D.C.  20001
(202)307-0708

Date:  January 28, 1998