**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-cr-32 (DLF)** |
| **INTERNET RESEARCH AGENCY, ET AL.,** | |
| **Defendants.** | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Michael R. Dreeben
Jeannie S. Rhee
Adam C. Jed
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT ...................................................................................................................... 2

    A.  The Statutory And Regulatory Framework ........................................................ 2

    B.  The Appointment And Jurisdiction Of The Special Counsel ............................... 5

    C.  The Indictment Of Concord For Conspiracy To Defraud.................................... 7

ARGUMENT ...................................................................................................................... 9

THE MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED BECAUSE
THE SPECIAL COUNSEL WAS VALIDLY APPOINTED AND IS VALIDLY
CONDUCTING THIS PROSECUTION

I.  The Appointment Of The Special Counsel As An Officer In The Department Of
    Justice Is Consistent With The Appointments Clause ................................................. 9

    A.  The Attorney General Has Statutory Authority To Appoint The Special
        Counsel As An "inferior Officer" ....................................................................... 10

        1.  Precedent establishes the Acting Attorney General's appointment authority.............. 11

        2.  Multiple statutes establish the Acting Attorney General's authority ......................... 13

        3.  No clear-statement rule applies to laws authorizing appointments
            under the Appointments Clause .................................................................................. 25

    B.  The Special Counsel Is Not A Principal Officer Under The Appointments Clause .......... 28

        1.  An inferior officer is one who reports to and is supervised by a
            superior officer.......................................................................................................... 28

        2.  The Special Counsel reports to and is supervised by the
            Attorney General and is therefore an inferior officer .............................................. 30

        3.  *Morrison* and *Sealed Case* foreclose Concord's principal-officer argument ............. 37

II.  The Special Counsel Regulations Are Valid And The Existence Of The
    Special Counsel Does Not Violate The Separation of Powers ................................... 41

III. The Indictment Should Not Be Dismissed Based On A Claim That
    The Special Counsel Regulations And Appointment Order Do Not Authorize
    This Prosecution........................................................................................................ 43

A.  Concord's Arguments Do Not Support A Challenge To The Indictment ........................... 43

   1.  The regulations and Appointment Order are not judicially enforceable .................... 43

   2.  Any violation would not undermine the Special Counsel's authority
       or warrant dismissal of the Indictment ......................................................... 44

B.  The Indictment Falls Within The Special Counsel's Authority ......................................... 45

CONCLUSION ....................................................................................................................... 49

# TABLE OF AUTHORITIES

**Cases**

*American Petroleum Inst. v. EPA*, 684 F.3d 1342 (D.C. Cir. 2012) ............................................. 33

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................................................................... 34

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ......................................................... 45

*Belt v. United States*, 73 F.2d 888 (5th Cir. 1934)......................................................................... 20

*Bond v. United States*, 134 S. Ct. 2077 (2014) ...................................................................... 25, 26

*Buckley v. Valeo*, 424 U.S. 1 (1976).............................................................................................. 9

*Burnap v. United States*, 252 U.S. 512 (1920)............................................................................. 26

*Chrysler Corporation v. Brown*, 441 U.S. 281 (1979).................................................................... 42

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ........................................................... 23

*Department of Transp. v. Association of Am. R.R.*, 135 S. Ct. 1225 (2015) ................................. 13

*Doe v. Hampton*, 566 F.2d 265 (D.C. Cir. 1977) ........................................................................ 33

*Edmond v. United States*, 520 U.S. 651 (1997)..................................................................... passim

*Ewert v. Bluejacket*, 259 U.S. 129 (1922)................................................................................... 20

*Franklin v. Massachusetts*, 505 U.S. 788 (1992).................................................................... 25, 26

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)....................... 25, 35

*Freytag v. Commissioner*, 501 U.S. 868 (1991)............................................................... 25, 26, 36

*Hale v. United States*, 25 F.2d 430 (8th Cir. 1928) ..................................................................... 20

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017)............................................. 14

*In re Grand Jury Subpoena*, 438 F.3d 1141 (D.C. Cir. 2005)....................................................... 44

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ........................................................................ 16, 17, 19

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) .................................................................. passim

*In re Shain*, 978 F.2d 850 (4th Cir. 1992) ................................................................................... 44

*INS v. Stanisic*, 395 U.S. 62 (1969)............................................................................................ 34

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012) ................................................................. 26, 30, 36

*Kucana v. Holder*, 558 U.S. 233 (2010) .............................................................. 25, 26

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ...................................................................... 9

*Marcum v. Marcum*, 62 F.2d 871 (D.C. Cir. 1932) ...................................................... 20

*May v. United States*, 236 F. 495 (8th Cir. 1916) ........................................................ 20

*Midtec Paper Corp. v. United States*, 857 F.2d 1487 (D.C. Cir. 1988) ........................................ 33

*Morrison v. Olson*, 487 U.S. 654 (1988) .............................................................. passim

*Myers v. United States*, 272 U.S. 52 (1926) .................................................................. 37

*Nader v. Bork*, 366 F. Supp. 104 (D.D.C. 1973) ........................................................... 35

*Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Svcs.*,
    80 F.3d 796 (3d Cir. 1996) ..................................................................... 25, 27

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018) ................................... 38

*Polm Family Found., Inc. v. United States*, 644 F.3d 406 (D.C. Cir. 2011) ................................. 34

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ......................... 38

*Sauber v. Gliedman*, 283 F.2d 941 (7th Cir. 1960) ....................................................... 20

*State of Russia v. Nat'l City Bank of N.Y.*, 69 F.2d 44 (2d Cir. 1934) ........................................ 20

*United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254 (D. Md. 1931) ................................. 20

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................................................ 41

*United States v. Atl. Comm'n Co.*, 45 F. Supp. 187 (E.D.N.C. 1942) ........................................ 20

*United States v. Barnett*, 346 F.2d 99 (5th Cir. 1965) .................................................... 19

*United States v. Blackley*, 167 F.3d 543 (D.C. Cir. 1999) ................................................. 44

*United States v. Caceres*, 440 U.S. 741 (1979) ...................................................... 24, 44

*United States v. Cohen*, 273 F. 620 (D. Mass. 1921) ...................................................... 20

*United States v. Craveiro*, 907 F.2d 260 (1st Cir. 1990) .................................................. 44

*United States v. Crosthwaite*, 168 U.S. 375 (1897) .................................................. 16, 17

*United States v. Eaton*, 169 U.S. 331 (1898) ............................................................... 40

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ........................................ 44

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ................................................. 37

*United States v. Germaine*, 99 U.S. 508 (1879) ......................................................... 25

*United States v. Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992) ................................... 27

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ................................................. 37

*United States v. Huston*, 28 F.2d 451 (N.D. Ohio 1928) ........................................... 20

*United States v. Lee*, 274 F.3d 485 (2002) ................................................................. 44

*United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006) ........................................ 38

*United States v. Manafort,* No. 1:18-cr-83, 2018 WL 3126380
  (E.D. Va. June 26, 2018) ...................................................................................... passim

*United States v. Manafort*, No. 17-cr-201, 2018 WL 2223656
  (D.D.C. May 15, 2018) ..................................................................... 43, 45, 47, 48

*United States v. Martins*, 288 F. 991 (D. Mass. 1923) ............................................... 20

*United States v. Milanovich*, 303 F.2d 626 (4th Cir. 1962) ........................................ 20

*United States v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006) .................................... 34

*United States v. Morse*, 292 F. 273 (S.D.N.Y. 1922) ................................................. 20

*United States v. Nixon*, 418 U.S. 683 (1974) ...................................................... passim

*United States v. Perkins*, 116 U.S. 483 (1886) .......................................................... 36

*United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994) ........................................... 44

*United States v. Powell*, 81 F. Supp. 288 (E.D. Mo. 1948) ....................................... 20

*United States v. Providence Journal*, 485 U.S. 693 (1988) ....................................... 24

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ............................... 17, 20

*United States v. Sheffield Farms Co.*, 43 F. Supp. 1 (S.D.N.Y. 1942) ........................ 20

*United States v. Wilson*, 413 F.3d 382 (3d Cir. 2005) ................................................ 44

*United States v. Winston*, 170 U.S. 522 (1898) ......................................................... 17

*Varnadore v. Sec'y of Labor*, 141 F.3d 625 (6th Cir. 1998) ..................................................... 15, 27

*Willy v. Admin. Review Bd.*, 423 F.3d 483 (5th Cir. 2005) ....................................................... 15, 27

*Yaselli v. Goff*, 12 F.2d 396 (2d Cir. 1926) ..................................................................................... 20

## Constitutional Provisions

U.S. Const. Art. II, § 2, cl. 2. ................................................................................................... 1, 9

## Statutes

5 U.S.C. § 301 ........................................................................................................... passim

5 U.S.C. § 553(a)(2) .................................................................................................................... 35

17 U.S.C. § 801(a) ....................................................................................................................... 27

26 U.S.C. § 7443(f) ...................................................................................................................... 36

28 U.S.C. § 503 .............................................................................................................................. 2

28 U.S.C. § 508 .............................................................................................................................. 6

28 U.S.C. § 509 ...................................................................................................................... passim

28 U.S.C. § 510 ...................................................................................................................... passim

28 U.S.C. § 515 ............................................................................................................................. 13

28 U.S.C. § 515(a) ................................................................................................................. passim

28 U.S.C. § 515(b) ................................................................................................................. passim

28 U.S.C. § 516 ......................................................................................................................... 2, 45

28 U.S.C. § 519 ............................................................................................................................. 45

28 U.S.C. § 533 .................................................................................................... 10, 13, 14, 15, 28

28 U.S.C. § 533(1) .......................................................................................................................... 2

28 U.S.C. § 546(a) ........................................................................................................................ 37

28 U.S.C. § 546(d) ........................................................................................................................ 37

28 U.S.C. § 547 ............................................................................................................................. 37

28 U.S.C. § 593(b) ........................................................................................................ 27

28 U.S.C. §§ 591-599 (expired) ...................................................................................... 2

49 U.S.C. § 323(a) ........................................................................................................ 15

Act of Apr. 17, 1930, Pub. L. No. 71-133, 46 Stat. 170 ............................................... 18

Act of Aug. 2, 1861, ch. 37, 12 Stat. 285 ..................................................................... 23

Act of Aug. 30, 1890, ch. 837, 26 Stat. 371 ................................................................. 20

Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854 ............................................... 20

Act of July 1, 1918, Pub. L. No. 65-181, 40 Stat. 634 .................................................. 23

Act of June 25, 1910, Pub. L. No. 61-266, 36 Stat. 703 ............................................... 23

Act of June 25, 1948, Pub. L. No. 80-773, § 3, 62 Stat. 869 ........................................ 18

Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305 .................................................. 20, 23

Act of June 30, 1906, Pub. L. No. 59-404, ch. 3935, 34 Stat. 816 ............................... 17

Act of Mar. 3, 1891, ch. 542, 26 Stat. 948 ................................................................... 20

Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133 ................................................................. 20

Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367 ............................................... 20

Act to establish the Department of Justice, ch. 150, § 17, 16 Stat. 162 (1870) ............ 16

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348 .............. 23

Ethics in Government Act of 1978, Pub. L. No. 95-521, §§ 601-602, 92 Stat. 1824 ............ 21, 28

Joint Res. of Feb. 8, 1924, Pub. Res. No. 68-4, 43 Stat. 5 ........................................... 21

Payne-Aldrich Tariff Act of 1909, Ch. 6, § 28, 36 Stat. 11 ..................................... 22, 23

U.S. Rev. Stat. 1878, § 366 .......................................................................................... 16

**Rules**

Fed. R. Crim. P. 52(a) .................................................................................................. 45

## Regulations and Administrative Materials

28 C.F.R. § 0.15(a) ................................................................................................ 6

28 C.F.R. § 600 ...................................................................................................... 2

28 C.F.R. § 600.1 ......................................................................................... 3, 47, 48

28 C.F.R. § 600.4(a) ................................................................................. 3, 6, 35, 38

28 C.F.R. § 600.4(b) ............................................................................... 3, 32, 48, 49

28 C.F.R. § 600.6 ............................................................................................. 37, 49

28 C.F.R. § 600.7(a) ............................................................................... 4, 32, 39, 45

28 C.F.R. § 600.7(b) ..................................................................................... passim

28 C.F.R. § 600.7(c) ................................................................................................ 4

28 C.F.R. § 600.7(d) .......................................................................... 4, 34, 35, 38, 39

28 C.F.R. § 600.8(a)(1) ........................................................................................... 4

28 C.F.R. § 600.8(a)(2) ................................................................................. 4, 34, 36

28 C.F.R. § 600.8(b) ..................................................................................... 4, 31, 49

28 C.F.R. § 600.8(c) ......................................................................................... 38, 40

28 C.F.R. § 600.9(a)(3) ..................................................................................... 4, 34

28 C.F.R. § 600.10 ......................................................................................... 5, 32, 44

28 C.F.R. § 603.1 .................................................................................................. 20

59 Fed. Reg. 5321 (Feb. 4, 1994) .......................................................................... 20

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) ............................ passim

## Other Authorities

123 Cong. Rec. S2103 (daily ed. Jan. 25, 1977) .................................................... 19

125 Cong. Rec. H5534 (daily ed. Mar. 20, 1979) ................................................... 19

*Application of Conflict of Interest Rules to the Conduct of Government
    Litigation by Private Attorneys*, 4B Op. O.L.C. 434 (1980) .................................. 21

*Assessing Russian Activities and Intentions in Recent US Elections* (Jan. 6, 2017),
  *available at* https://www.dni.gov/files/documents/ICA_2017_01.pdf ..................................... 46

*Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115 (1986) .............. 21

*Attorney Gen.'s Role As Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982) ............. 27

*Black's Law Dictionary* (10th ed. 2014) ..................................................................................... 13

*Charges of Hon. Oscar E. Keller Against the Att'y Gen. of the United States:
  Hearings on H. Res. 425 Before the H. Comm. on the Judiciary*, 67th Cong. (1922) .............. 19

*Compensation of Counsel.*, 13 Op. Att'y Gen. 580 (1871) .......................................................... 21

Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment
  of "Special Counsels"* (2002) ................................................................................................. 20

David Logan, Cong. Research Serv., *Historical Uses of a Special Prosecutor:
  The Administrations of Presidents Grant, Coolidge and Truman* (1973) ............................... 19

Donald C. Smalz, *The Independent Counsel: A View From Inside*, 86 Geo. L.J. 2307 (1998) .... 22

*First Session on Special Prosecutor: Hearings before the S. Comm. on the Judiciary*,
  93rd Cong., 1st Sess. (1973) ................................................................................................... 19

H.R. Doc. No. 383, 58th Cong., 2d Sess. (1904) .......................................................................... 19

H.R. Misc. Doc. No. 38, pt. 2, 48th Cong., 1st Sess. (1884) ........................................................ 19

H.R. Rep. No. 229, 71st Cong., 2d. Sess. (1930) .......................................................................... 18

H.R. Rep. No. 2901, 59th Cong., 1st. Sess. (1906) ....................................................................... 18

Jack Maskell, Cong. Research Serv., *Independent Counsels, Special Prosecutors,
  Special Counsels, and the Role of Congress* (2013) .................................................................. 5

John F. Berry & Ted Gup, *Inquiry Clears Carter Family's Peanut Business*,
  Wash. Post, Oct. 17, 1979 ....................................................................................................... 20

*Naval Court-Martial*, 18 Op. Att'y Gen. 135 (1885) ................................................................... 21

Office of the Deputy Att'y Gen., Order No. 3915-2017,
  *Appointment of Special Counsel to Investigate Russian Interference
  with the 2016 Presidential Election and Related Matters*, May 17, 2017,
  *available at,* https://www.justice.gov/opa/press-release/file/967231/download ............... passim

Press Release on Indictment (Feb. 16, 2018),
  *available at* https://www.justice.gov/opa/pr/grand-jury-indicts-
  thirteen-russian-individuals-and-three-russian-companies-scheme-interfere .......................... 45

Press Release, Appointment of Special Counsel (May 17, 2017),
  *available at* https://www.justice.gov/opa/pr/ appointment-special-counsel ........................ 6, 48

Press Release, Attorney General Sessions Statement on Recusal (Mar. 2, 2017),
  *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal. ....... 6

Press Release, Treasury Designates Individuals and Entities Involved in the Ongoing
  Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/
  press-releases/Pages/sm0114.aspx ............................................................................................. 8

Press Release, Treasury Sanctions Individuals and Entities In Connection with
  Russia's Occupation of Crimea and the Conflict in Ukraine,
  *available at* https://www.treasury.gov/press-center/press-releases/Pages/jl0688.aspx ............. 8

*Reauthorization of the Independent Counsel Statute, Part I: Hearings Before the*
  *Subcomm. On Commercial and Admin. Law, H. Comm. on the Judiciary*,
  106 Cong., 1st Sess. (1999) ...................................................................................................... 22

S. Rep. No. 170, 95th Cong., 1st Sess. (1977).................................................................................... 22

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence,
  *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017),
  *available a*t https://www.fbi.gov/news/testimony/hpsci-hearing-titled-
  russian-active-measures-investigation. .......................................................................... 5, 46, 47

Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic.,
  *Hearing on the Justice Department's Investigation of Russia's Interference in the*
  *2016 Presidential Election* (Dec. 13, 2017)................................................................................ 7

U.S. Department of Justice Order No. 518-73 (May 31, 1973),
  *available a*t https://www.fordlibrarymuseum.gov/museum/exhibits/watergate_files/
  content.php?section=2&page=c&doc=1 ................................................................................. 19

United States Attorneys' Manual,
  *available at* https://www.justice.gov/usam/united-states-attorneys-manual ................. 3, 31, 45

*United States Attorneys—Suggested Appointment Power of the Attorney General—*
  *Constitutional Law (Article II, § 2, cl. 2)*, 2 Op. O.L.C. 58 (1978)......................................... 37

## INTRODUCTION

The United States of America, by and through Special Counsel Robert S. Mueller, III, submits this opposition to the motion to dismiss the Indictment (Doc. 36) filed by defendant Concord Consulting and Management, LLC ("Concord").  The motion should be denied.

Concord asserts that the Indictment should be dismissed because, in its view, the Acting Attorney General's appointment of the Special Counsel violates the Constitution's Appointments Clause, U.S. Const. Art. II, § 2, cl. 2.  Concord also contends that the Department of Justice's Special Counsel regulations, 28 C.F.R. Part 600, are unlawful, and the Special Counsel's existence accordingly violates the separation of powers.  Finally, Concord asserts that the order appointing the Special Counsel violates the regulations and does not authorize this prosecution.  Those arguments lack merit.  The Appointments Clause permits Congress to vest the appointment of "inferior Officers" in the "Head[] of [a] Department."  U.S. Const. Art. II, § 2, cl. 2.  The Special Counsel was properly appointed pursuant to statutory authority vested in the Acting Attorney General.  Because the Special Counsel is an "inferior Officer" rather than a principal officer, *id.*, the Special Counsel's appointment is constitutionally valid.  Further, the Special Counsel regulations are binding and valid, and no separation of powers concerns are implicated here. Finally, Concord cannot base any legal challenge on the Department's regulations or the scope of the order, and in any event, the prosecution in this case falls squarely within the scope of Special Counsel's authority to investigate the Russian government's interference in the 2016 presidential election and to prosecute federal crimes arising from the investigation.  Because the Special Counsel has constitutional and statutory authority to conduct this prosecution, Concord's motion to dismiss the Indictment should be denied.

## STATEMENT

### A.     The Statutory And Regulatory Framework

The Attorney General is the head of the Department of Justice ("DOJ") and has exclusive authority (except as otherwise provided by law) to direct "the conduct [of] litigation" on behalf of the United States.  28 U.S.C. §§ 503, 516.  Congress has "vested" in the Attorney General virtually "[a]ll functions of other officers of the Department of Justice" (28 U.S.C. § 509), and empowered him to authorize other DOJ officials to perform his functions (28 U.S.C. § 510).  Congress has also authorized the Attorney General to commission attorneys "specially retained under authority of the Department of Justice" as "special assistant to the Attorney General or special attorney" and provided that "any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal  * * *  which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a) and (b).  Congress has also provided for the Attorney General to "appoint officials  * * * to detect and prosecute crimes against the United States." 28 U.S.C. § 533(1).  These statutes have authorized Attorneys General to appoint special counsels and define their duties.  *See*, *e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 (1974).

The Attorney General has promulgated regulations to provide an internal framework for certain special-counsel appointments.   28 C.F.R. §§ 600.1-600.10; *see also* 5 U.S.C. § 301 (authorizing the head of a department to issue regulations "for the government of his department" and "the distribution and performance of its business"); *Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999).  The Special Counsel regulations "replace[d]," *id.*, the independent counsel regime formerly provided in Title IV of the Ethics in Government Act, 28 U.S.C. §§ 591-599 (expired); *see Morrison v. Olson*, 487 U.S. 654 (1988).  The Independent Counsel Act had required the Attorney General in certain cases to ask a court to appoint independent counsels, who then

operated with significant statutory freedom from DOJ supervision.   The Special Counsel regulations, in contrast, provide for a wholly Executive Branch procedure for appointing a Special Counsel, and that official exercises discretion "within the context of established procedures of the Department," with "ultimate responsibility for the matter and how it is handled * * * continu[ing] to rest with the Attorney General."   64 Fed. Reg. at 37,038.   The regulations seek "to strike a balance between independence and accountability in certain sensitive investigations."   *Id.*

Under the regulations, a Special Counsel may be appointed when either a conflict of interest or "other extraordinary circumstances" makes it "in the public interest" to have a Special Counsel assume responsibility for criminal investigation of a person or matter.   28 C.F.R. § 600.1. A Special Counsel "will be provided with a specific factual statement of the matter to be investigated."   *Id.* § 600.4(a).   If the Special Counsel concludes that additional jurisdiction is necessary, he is required to consult with the Attorney General, with the Attorney General "determin[ing] whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."   *Id.* § 600.4(b).

The Special Counsel "shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports" (28 C.F.R. § 600.8(b)); *see also* United States Attorneys' Manual (USAM) § 1-13.100 (requiring "Urgent Reports" to Department leadership on "major developments in significant investigations and litigation"), *available at* https://www.justice.gov/usam/usam-1-13000-urgent-reports. Because Urgent Reports generally must be submitted in advance of a major development such as the filing of criminal charges (*id.* § 1-13.120), the notification requirement guarantees a "resulting opportunity for consultation" between the Attorney General and the Special Counsel about the

anticipated action, which "is a critical part of the mechanism through which the Attorney General can discharge his or her responsibilities with respect to the investigation." 64 Fed. Reg. at 37,040.

The Attorney General may ask for "an explanation for any investigative or prosecutorial step" (28 C.F.R. § 600.7(b)) and, if it is sufficiently "inappropriate or unwarranted under established Departmental practices," the Attorney General may determine that "it should not be pursued" (*id.*). "In conducting that review, the Attorney General will give great weight to," but is not bound by, "the views of the Special Counsel." *Id.* On the conclusion of the investigation, the Attorney General is to report to the Chairman and ranking minority member of the House and Senate Judiciary Committee if any such instances occurred. *Id.* § 600.9(a)(3).

The Attorney General establishes the Special Counsel's budget. 28 C.F.R. § 600.8(a)(1). Ninety days before the end of each fiscal year, the Special Counsel must report on the status of the investigation and submit a budget request. "The Attorney General shall determine whether the investigation should continue and, if so, establish the budget for the next year." *Id.* § 600.8(a)(2).

The Special Counsel must "comply with the rules, regulations, procedures, practices and policies of the Department of Justice," and he "shall consult with appropriate offices" about the Department's "established practices, policies and procedures." 28 C.F.R. § 600.7(a). The Special Counsel is subject to disciplinary action under the same standards as other Department officials. *Id.* § 600.7(c). By personal action of the Attorney General, the Special Counsel may be removed for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." *Id.* § 600.7(d).

The Special Counsel regulations, although binding on the Department of Justice while in force, *Nixon*, 418 U.S. at 695, are not the source of authority for appointing a Special Counsel. Rather, Attorneys General have often drawn on their statutory authority to appoint officers as

special counsels, without relying on any regulations.  *See* Jack Maskell, Cong. Research Serv., *Independent Counsels, Special Prosecutors, Special Counsels, and the Role of Congress* Summary (2013).  When the regulations are applied to a particular appointment, they provide internal procedures, not externally enforceable rights.  28 C.F.R. § 600.10.

### B.      The Appointment And Jurisdiction Of The Special Counsel

On March 20, 2017, then-FBI Director James B. Comey testified before the House Permanent Select Committee on Intelligence about the FBI's investigation into Russian interference with the 2016 presidential election.  In open session, Comey stated:

> I have been authorized by the Department of Justice to confirm that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts.

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017) ("Comey Testimony"), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation. Comey added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed." *Id.*

On May 17, 2017, Acting Attorney General Rod J. Rosenstein issued an order appointing Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters."  Office of the Deputy Att'y Gen., Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017 ("Appointment Order") (capitalization omitted),

*available at* https://www.justice.gov/opa/press-release/file/967231/download.[1]  Relying on "the authority vested" in the Acting Attorney General, "including 28 U.S.C. §§ 509, 510, and 515," the Acting Attorney General ordered the appointment of a Special Counsel "in order to discharge [the Acting Attorney General's] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election."  *Id.* (introduction).  "Considering the unique circumstances of this matter," the Acting Attorney General determined that "a Special Counsel is necessary in order for the American people to have full confidence in the outcome."  Press Release, Appointment of Special Counsel (May 17, 2017), *available at* https://www.justice.gov/opa/pr/appointment-special-counsel.

"The Special Counsel," the Order stated, "is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

  (i)    any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

  (ii)   any matters that arose or may arise directly from the investigation; and

  (iii)  any other matters within the scope of 28 C.F.R. § 600.4(a).[2]

---

[1] Deputy Attorney General Rosenstein was and is serving as Acting Attorney General for the Russia investigation because, on March 2, 2017, the Attorney General recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States."  Press Release, Attorney General Sessions Statement on Recusal (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.  As the Attorney General noted, *id.*, the Deputy Attorney General in those circumstances exercises the authority of the Attorney General.  *See* 28 U.S.C. § 508; *see also* 28 C.F.R. § 0.15(a).

[2] Section 600.4 affords the Special Counsel "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses."  28 C.F.R. § 600.4(a).  The authority to prosecute "any matters that arose  * * *  from the investigation," Appointment Order ¶ (b)(ii), covers similar crimes that may have occurred during the course of the FBI's confirmed investigation before the Special Counsel's appointment.

Appointment Order ¶ (b).  "If the Special Counsel believes it is necessary and appropriate," the Order provided, "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters."  *Id.* ¶ (c).  Finally, the Acting Attorney General made applicable "Sections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations."  *Id.* ¶ (d).

The Acting Attorney General has conducted ongoing supervision of the Special Counsel's investigation in accordance with the regulatory framework.  *See* Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic., *Hearing on the Justice Department's Investigation of Russia's Interference in the 2016 Presidential Election*, at 29 (Dec. 13, 2017).  To the extent that the Special Counsel has uncovered evidence of other crimes beyond the original scope, the decision on how to allocate responsibility for further investigation has been "worked out with[in] the [D]epartment."  *Id.* at 40.  The Acting Attorney General has confirmed that he is "accountable" and "responsible for" the scope of the Special Counsel's investigation, and "know[s] what [the Special Counsel] is investigating."  *Id.* at 30-31.  Specifically, the Acting Attorney General has testified that he is "properly exercising [his] oversight responsibilities," with the resulting assurance "that the [S]pecial [C]ounsel is conducting himself consistently with [the Acting Attorney General's] understanding about the scope of his investigation."  *Id.* at 28.  "If [the Acting Attorney General] believed that the Special Counsel "was doing something inappropriate," the Acting Attorney General "would take action."  *Id.* at 33.

### C.    The Indictment Of Concord For Conspiracy To Defraud

On February 16, 2018, a grand jury returned an eight-count Indictment against thirteen individual and three corporate defendants alleging that they engaged in a multi-year conspiracy, operating out of Russia, to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government, through fraud and deceit, for the purpose of interfering with

the U.S. political and electoral processes, including the presidential election of 2016.  Doc. 1, ¶¶ 1-7.  The conspiracy included, according to the Indictment, a Russian organization that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election "and the political system in general."  *Id.* ¶ 10.

The Indictment alleges that, "[i]n order to carry out their activities to interfere in U.S. political and electoral processes without detection of their Russian affiliation, Defendants conspired to obstruct the lawful functions of the United States government through fraud and deceit, including by making expenditures in connection with the 2016 U.S. presidential election without proper regulatory disclosure; failing to register as foreign agents carrying out political activities within the United States; and obtaining visas through false and fraudulent statements." Doc. 1, ¶ 7.  The Indictment charges that the defendants used a host of deceptive means, including surreptitious intelligence gathering in the United States by foreign agents and influence operations conducted through false online personas.  *Id.* ¶¶ 10-11.  The Indictment further alleges defendant Yevgeniy Viktorovich Prigozhin approved, supported, and funded the operations through other entities that he directly controls, particularly defendant Concord Management and a second entity, defendant Concord Catering.  *Id.* ¶¶ 3, 11-12.  Prigozhin and both Concord entities charged in the Indictment were, at that time, under sanctions by the U.S. Department of Treasury for their involvement in the Russian government's activities in Ukraine.[3]

---

[3] Press Release, Treasury Sanctions Individuals and Entities In Connection with Russia's Occupation of Crimea and the Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/press-releases/Pages/jl0688.aspx (Prigozhin); Press Release, Treasury Designates Individuals and Entities Involved in the Ongoing Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0114.aspx (Concord sanctioned "for being owned or controlled by Yevgeniy Prigozhin").

**ARGUMENT**

**THE MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED BECAUSE THE SPECIAL COUNSEL WAS VALIDLY APPOINTED AND IS VALIDLY CONDUCTING THIS PROSECUTION**

Concord challenges the Indictment by claiming that the Acting Attorney General lacked the congressional authorization required under the Appointments Clause for him to appoint the Special Counsel; that in any event, the Special Counsel is a principal officer who cannot be appointed by the Head of a Department; that the Special Counsel regulations violate the separation of powers by improperly creating a Special Counsel and vesting him with excessive authority; and that the Appointment Order conflicts with the regulations and the Indictment falls beyond the Special Counsel's investigative and prosecutorial jurisdiction. None of those claims has merit.

**I.     The Appointment Of The Special Counsel As An Officer In The Department Of Justice Is Consistent With The Appointments Clause**

The Appointments Clause specifies how federal officers are appointed:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. Art. II, § 2, cl. 2. The Clause thus distinguishes between principal officers and "inferior Officers." By default, all officers must be nominated by the President and confirmed by the Senate. But Congress may "vest" the power to appoint "inferior Officers" in the President alone, courts, or a "Head[] of Department[]." It is undisputed that the Special Counsel is an officer and the Appointments Clause applies. *See Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (officers are those who "exercise[] significant authority pursuant to the laws of the United States") (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)).

Concord argues that the appointment of the Special Counsel violates the Appointments Clause for two alternative reasons.  First, if the Special Counsel is an "inferior Officer," Concord contends that Congress never "vest[ed]" the power to appoint him in the Attorney General.  *See* Doc. 36 at 7-26.  Second, Concord claims that the Special Counsel is actually a principal officer whose appointment Congress cannot delegate to the Attorney General.  *See id.* at 26-40.  Concord is wrong on both scores.  Under governing Supreme Court precedent, the Special Counsel is an "inferior Officer," who was validly appointed by the Acting Attorney General, exercising appointment power that Congress vested in the Attorney General.

### A.    The Attorney General Has Statutory Authority To Appoint The Special Counsel As An "inferior Officer"

The Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974), and the D.C. Circuit in *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), each held that the Attorney General has the authority under several statutes to delegate the power to prosecute particular matters to a special counsel.  In particular, 28 U.S.C. § 515(b) recognizes the "authority of the Department of Justice" to "specially retain[]" attorneys, who "shall be commissioned" as special assistants to the Attorney General or special attorneys.  Section 515(a) specifies that attorneys whom the Attorney General "specially appoint[s]" can have the same powers as U.S. Attorneys.    And 28 U.S.C. § 533 explicitly states that "[t]he Attorney General may appoint officials  * * *  to detect and prosecute crimes against the United States."  For more than a century, all three branches of government have recognized and approved the Attorney General's authority to appoint special counsels, and none has cast doubt on this oft-employed power.  The only court to confront the issue with respect to the Special Counsel here found authority for the Acting Attorney General's appointment.  And Concord's attempt to insert a "clear-statement rule" for appointment power fails, and in any event the test would be satisfied here.

### 1.   Precedent establishes the Acting Attorney General's appointment authority

In *United States v. Nixon*, the Attorney General appointed a special prosecutor to investigate offenses related to the 1972 presidential election, empowering the special prosecutor through expansive regulations.  418 U.S. at 694 & n.8.  In explaining that the special prosecutor had authority to act—because Congress had vested in the Attorney General the power to appoint and delegate power to the special prosecutor—the Court stated:

> Congress has vested in the Attorney General the power to conduct the criminal litigation of the United States Government.  28 U.S.C. § 516.  It has also vested in him the power to appoint subordinate officers to assist him in the discharge of his duties.  28 U.S.C. §§ 509, 510, 515, 533.  *Acting pursuant to those statutes*, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.

*Id.* at 694 (emphasis added).  The Court held that, as long as the regulation delegating power to the special prosecutor remained in place, it bound the entire Executive Branch.  *Id.* at 695-696.

Concord argues that *Nixon* turned on the authority of the special prosecutor under the regulations, not the appointment of the special prosecutor under the statute.  *See* Doc. 36 at 24.  But the Court began its analysis with statutory authority for good reason: the Attorney General cannot make an appointment (or delegate power) unless he has power himself.  Finding statutory authority for the Attorney General to appoint and delegate powers to the Special Prosecutor was thus necessary to the Court's decision to rely on the regulations at issue.

The D.C. Circuit reached the same conclusion about the Attorney General's statutory authority in *In re Sealed Case*, 829 F.2d at 55.  In *Sealed Case*, the Attorney General relied on now-lapsed authority under the Ethics in Government Act to appoint independent counsel Lawrence Walsh to investigate whether certain arms shipments and diversion of funds involved criminal conduct.  *Id.* at 51-52, 55-56.  To avoid a constitutional challenge to the Ethics in Government Act, the Attorney General gave Walsh a parallel appointment under 5 U.S.C. § 301

and 28 U.S.C. §§ 509, 510, and 515.  *See id.* at 52-53.  Oliver North challenged a subpoena issued

by the independent counsel's grand jury, arguing that the Attorney General's delegation was not

"lawful."  *Id.* at 55.  The D.C. Circuit disagreed, finding clear authority to create an independent

counsel:

> We have no difficulty concluding that the Attorney General possessed the statutory
> authority to create the Office of Independent Counsel: Iran/Contra and to convey to
> it the "investigative and prosecutorial functions and powers" described in 28 C.F.R.
> § 600.1(a) of the regulation. The statutory provisions relied upon by the Attorney
> General in promulgating the regulation are 5 U.S.C. § 301 and 28 U.S.C. §§ 509,
> 510, and 515.

829 F.2d at 55.  While noting that the provisions do not "explicitly authorize the Attorney General

to create an Office of Independent Counsel virtually free of ongoing supervision," the D.C. Circuit

"read them as accommodating the delegation at issue here."  *Id.*  In finding the power to "create"

the independent counsel office, *Sealed Case* necessarily found authority to "appoint" an

independent counsel.  *See id.* at 56 ("The Attorney General's power of appointment extends only

to the Department of Justice; hence the Office of Independent Counsel: Iran/Contra is 'within' the

Department, though free of ongoing supervision by the Attorney General.").

Concord suggests that the D.C. Circuit issued its opinion in *Sealed Case* "[w]ithout any

analysis."  Doc. 36 at 25.  But the fact that the Circuit had "no difficulty" reaching its conclusion

does not divest the opinion of precedential force.  And Concord is wrong to claim that *Sealed Case*

did not consider the Appointments Clause and that its reasoning rested on the facts of the case.

*See* Doc. 36 at 25.  The decision specifically rejected North's "conten[tion] that the Attorney

General's delegation of authority to the Independent Counsel violates the Appointments Clause of

the Constitution."  *Sealed Case*, 829 F.2d at 56.  And for an "inferior Officer," the Appointments

Clause issue turns on whether Congress gave the Attorney General statutory authority—not on

unspecified "unique facts" about a particular appointment.  *Cf.* Doc. 36 at 25.

*Nixon* and *Sealed Case* control the outcome here.  Those cases held that 28 U.S.C. §§ 509, 510, 515, and 533 give the Attorney General the authority to appoint and delegate criminal law enforcement functions in particular matters to a special counsel.  Here, the Acting Attorney General exercised that statutory authority to appoint the Special Counsel, whose mandate is, for these purposes, indistinguishable from those approved in *Nixon* and *Sealed Case*.

### 2.   Multiple statutes establish the Acting Attorney General's authority

#### a.   *The text of multiple laws give the Attorney General appointment power*

As *Nixon* and *Sealed Case* recognized, Section 515 gives the Attorney General authority to appoint "special attorneys" like the Special Counsel.[4]

Section 515(b) empowers the Attorney General to "commission[]" attorneys who are "specially retained under authority of the Department of Justice" as "special assistant[s] to the Attorney General" or "special attorney[s]."  28 U.S.C. § 515(b).  The commission is the "warrant or authority, from the government or a court, that empowers the person named to execute official acts."  *Black's Law Dictionary* 327 (10th ed. 2014); *cf. Department of Transp. v. Association of Am. R.R.*, 135 S. Ct. 1225, 1235 (2015) (Alito, J., concurring) ("to be an officer, the person should have sworn an oath and possess a commission").  Section 515(b) thus allows the Attorney General

---

[4] 28 U.S.C. § 515 provides:

(a) The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

(b) Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law. Foreign counsel employed in special cases are not required to take the oath. The Attorney General shall fix the annual salary of a special assistant or special attorney.

to vest authority in—that is, to appoint—"specially retained" attorneys as officers.  Section 515(a) further recognizes that the Attorney General can "specially appoint[]" attorneys and empower them to exercise, "when specifically directed by the Attorney General," all criminal (and civil) powers possessed by United States Attorneys.  Congress thus specified not only that the Attorney General could appoint special attorneys, but also that he could give special attorneys extensive powers.

Concord does not address Section 515(b).  As for Section 515(a), Concord claims that it cannot authorize appointments because of its use of the past tense.  According to Concord, Section 515(a) governs special attorneys who have already been appointed (under other authority) because it refers to "any attorney specially *appointed*."  Doc. 36 at 16-17.  Presumably, Concord would make the same argument about the phrase "[e]ach attorney specially *retained*" in Section 515(b).  But "appointed" and "retained" are not always past-tense verbs.  Here, they are part of participle phrases modifying "attorney."   And while they are *past* participles, "[p]ast participles  * * * are routinely used as adjectives to describe the present state of a thing."  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017); *see also id.* ("the term 'past participle' is a 'misnomer, since' it 'can occur in what is technically a present tense'" (quoting P. Peters, *The Cambridge Guide to English Usage* 409 (2004)) (alternations omitted)).  In fact, the main verbs in the statutes are in the present tense: the specially appointed attorney "may  * * * conduct" legal proceedings, and the attorney "shall be commissioned" with a title and "shall take the oath."  And those present-tense actions should occur together with the appointment, since it makes little sense to "appoint" a special attorney who has no commission or title, who has not taken the oath of office, and who has no power to act.

Further authority for the Attorney General's appointment power comes from Section 533.  Section 533 specifically confirms that "[t]he Attorney General may appoint officials—(1) to detect

and prosecute crimes against the United States."   28 U.S.C. § 533.   Beyond quoting *Nixon*'s

citation of Section 533 as one of the statutes justifying the appointment of the Watergate Special

Prosecutor, *see* Doc. 36 at 24, Concord does not mention Section 533 at all.   In *Edmond v. United*

*States*, 520 U.S. 651 (1997), the Supreme Court located the power to appoint Coast Guard judges—

who were "inferior Officers"—in a "default statute" that allowed the Secretary of Transportation

to "appoint and fix the pay of officers and employees of the Department of Transportation." *Id.* at

656-658, 666 (quoting 49 U.S.C. § 323(a)).   Section 533 is far more specific.

Even without these more specific appointment statutes, the Attorney General would have

that authority under the separate "housekeeping statute," 5 U.S.C. § 301, which grants the Attorney

General authority to "prescribe regulations for the government of his department, the conduct of

its employees, [and] the distribution and performance of its business."   At least two courts of

appeals have held that Section 301 provides statutory authority for a department head to create an

inferior office and "appoint its members."  *See Willy v. Admin. Review Bd.*, 423 F.3d 483, 492 (5th

Cir. 2005) (rejecting Appointments Clause challenge to Secretary of Labor's creation of

Administrative Review Board and appointment of its members); *Varnadore v. Sec'y of Labor*, 141

F.3d 625, 631 (6th Cir. 1998) ("[A]s required by the Appointments Clause, Congress has imbued

the Secretary with authority to appoint inferior officers.") (citing 5 U.S.C. § 301 and the

Department of Labor's organic statutes).

Thus, Concord's primary challenge to Section 515(a)—which reads its reference to

attorneys "under law" to refer to another, separate statutory authorization for the appointment

(Doc. 36 at 14-23)—must fail.  Even assuming that were so, 28 U.S.C. §§ 515(b) and 533 and 5

U.S.C. § 301, coupled with 28 U.S.C. §§ 509 and 510, would satisfy such a requirement.

**b.  *Section 515's history confirms that it provides appointment power***

The history of Section 515 reveals that its two subsections, by themselves, authorize the Attorney General to appoint special attorneys such as the Special Counsel.  Although Title 28 of the U.S. Code now groups Section 515(a) and (b) together, Congress originally enacted earlier versions of them decades apart, in separate laws.  The precursor to Section 515(b) came first, enacted in 1870 in the statute that created the Department of Justice.  *See* An Act to establish the Department of Justice, ch. 150, § 17, 16 Stat. 162, 164-65 (1870).  The 1870 Act centralized the federal government's legal work in the Department of Justice.  *See id.* §§ 3, 17, 16 Stat. at 162, 164-165.  In addition, "in reaction to abuses in the employment of outside counsel, including the payment of excessive fees and the sometime inferior quality of their services," Congress defined the Attorney General's power to retain counsel and restricted pay for legal services by special attorneys.  *In re Persico*, 522 F.2d 41, 57 (2d Cir. 1975).

Section 366 of the Revised Statutes (1878 ed.), which codified the original predecessor to Section 515(b), set the requirements for special attorneys:

> Every attorney or counselor who is specially retained under the authority of the Department of Justice, to assist in the trial of any case in which the Government is interested, shall receive a commission from the head of such Department, as a special assistant to the Attorney-General, or to some one of the district attorneys, as the nature of the appointment may require; and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law.

U.S. Rev. Stat. 1878, § 366 (Appointment and oath of special attorneys or counsel).  As the Supreme Court explained in 1897, the 1870 Act limited the Attorney General's "discretion to retain special attorneys by restricting their *compensation*."  *United States v. Crosthwaite*, 168 U.S. 375, 379-380 (1897); *see also id.* at 381 (collecting appropriations bills authorizing compensation for special assistant district attorneys).  But the statutory provisions "left to that officer [(i.e., the

Attorney General)] to determine whether the public interests required the *employment* of special counsel." *Id.* at 379 (emphasis added).  Thus, as the Court later stated, the Attorney General may, "if he deems it essential, employ special counsel."  *United States v. Winston*, 170 U.S. 522, 524-525 (1898).

The statute now codified at 28 U.S.C. § 515(a) was enacted in 1906, in response to *United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903).  Its purpose was to protect the Attorney General's authority to have special counsel he appointed be able to conduct grand jury proceedings.  *Rosenthal* held that a special assistant to the Attorney General, employed to conduct a criminal matter, could not conduct grand jury proceedings.  The court acknowledged that Section 366 "recogni[zed] the Attorney General's power, not elsewhere stated, to appoint a 'special assistant to the Attorney General,' 'to assist in the trial of any case.'"  *Id.* at 867.  But because Section 366 referred only to "trials," the court held that a special assistant could not conduct grand jury proceedings.  *See id.* at 865-868.  Congress responded in 1906 with a law whose "express purpose * * * was to overrule the broad holding in *Rosenthal*," explicitly giving "specially-retained outside counsel" all of the powers of a U.S. Attorney.  *In re Persico*, 522 F.2d at 59.  The 1906 Act, which was the predecessor for Section 515(a), provided:

> [T]he Attorney-General or any officer of the Department of Justice, *or any attorney or counselor specially appointed by the Attorney-General under any provision of law*, may, when thereunto specifically directed by the Attorney-General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought.

Act of June 30, 1906, Pub. L. No. 59-404, ch. 3935, 34 Stat. 816, 816-817 (emphasis added). The House Report accompanying the 1906 Act explained that "[t]here can be no doubt of the advisability of *permitting* the Attorney-General to employ special counsel in special cases."  H.R.

Rep. No. 2901, 59th Cong., 1st. Sess., 1 (1906). The purpose of the new law was to overrule *Rosenthal* and restore a special counsel's power to appear before the grand jury: "It seems eminently proper that such powers and authority be given by law. It has been the practice to do so in the past and it will be necessary that the practice shall continue in the future." *Id.*

Subsequent enactments confirm the Attorney General's appointment authority. In 1930, Congress amended the precursor to Section 515(b) (then codified at 5 U.S.C. § 315) to allow the Attorney General to designate "special attorneys" in addition to "special assistants to the Attorney General." *See* Act of Apr. 17, 1930, Pub. L. No. 71-133, 46 Stat. 170. Congress returned to the statute again in 1948, simplifying its wording. *See* Act of June 25, 1948, Pub. L. No. 80-773, § 3, 62 Stat. 869, 985-986. Despite the widespread use of special counsels before these enactments, *see* pp. 19-21, *infra*, Congress never questioned the Attorney General's power of appointment. To the contrary, the House Report accompanying the 1930 amendment explained that "[u]nder the present law whenever the Attorney General appoints attorneys to perform special services in the Department of Justice he must designate them as 'special assistants to the Attorney General.' This title has resulted in confusion and misunderstanding due to the prestige and authority which is indicated by it  * * * . The bill does not provide authority for any new appointments but merely permits commissions to issue to attorneys as special attorneys in those cases where the Attorney General feels that it is undesirable to use the title of 'special assistant to the Attorney General.'" H.R. Rep. No. 229, 71st Cong., 2d. Sess. 1 (1930).

**c.** ***The longstanding practice of appointing Special Counsels reinforces the conclusion that the Attorney General has authority to do so***

"Armed with the[] [1870] provisions, Attorneys General made extensive use of special attorneys. " *Persico*, 522 F.2d at 54.  These examples span nearly 140 years and include some of the most notorious scandals in the nation's history.  For example:

- In 1881, President Garfield required appointment of special counsel to assist in handling the "Star Route" case.  H.R. Misc. Doc. No. 38, pt. 2, 48th Cong., 1st Sess. 65-66, 122 (1884).

- President Theodore Roosevelt directed his Attorney General to appoint special prosecutors to investigate scandals on several occasions.  In 1903, two attorneys were appointed as special counsel to investigate corruption in the Post Office.  H.R. Doc. No. 383, 58th Cong., 2d Sess. 6, 197 (1904).  In 1905, Francis Heney was appointed special counsel to prosecute land fraud in Oregon.  *Charges of Hon. Oscar E. Keller Against the Att'y Gen. of the United States: Hearings on H. Res. 425 Before the H. Comm. on the Judiciary*, 67th Cong. 225 (1922) (testimony of William J. Burns).

- In 1952, President Truman's Attorney General appointed a special prosecutor to investigate allegations of corruption in the Department of Justice.  David Logan, Cong. Research Serv., *Historical Uses of a Special Prosecutor: The Administrations of Presidents Grant, Coolidge and Truman* 27-29 (1973).

- Attorney General Robert Kennedy appointed Leon Jaworksi as a special prosecutor to represent the United States in contempt proceedings brought against Mississippi Governor Ross Barnett for violating orders related to the admission of James Meredith to the University of Mississippi.  *United States v. Barnett*, 346 F.2d 99 (5th Cir. 1965); 123 Cong. Rec. S2103 (daily ed. Jan. 25, 1977) (testimony of Leon Jaworski).

- In 1973, President Nixon's Attorneys General appointed Archibald Cox and then Leon Jaworski as special prosecutors for Watergate.  U.S. Department of Justice Order No. 518-73 (May 31, 1973) (appointing Cox), *available at* https://www.fordlibrarymuseum.gov/museum/exhibits/watergate_files/content.php?section=2&page=c&doc=1; *First Session on Special Prosecutor: Hearings before the S. Comm. on the Judiciary* Pt. 2, 93rd Cong., 1st Sess. 450 (1973) (testimony of Robert Bork on appointment of Jaworski).

- In 1979, President Carter's Attorney General appointed a special counsel to investigate allegations of questionable financial dealings involving the President's family peanut warehouse.  125 Cong. Rec. H5534 (daily ed. Mar. 20, 1979)

(statement of Rep. Sensenbrenner); John F. Berry & Ted Gup, *Inquiry Clears Carter Family's Peanut Business*, Wash. Post, Oct. 17, 1979.

- President George H.W. Bush's second Attorney General appointed three special counsels from outside the Department of Justice during his 14-month tenure: Nicholas Bua to investigate the matter known as the "Inslaw Affair," which involved allegations against high-level Department of justice officials; Malcolm Wilkey to pursue allegations involving the House Bank; and Frederick Lacey to conduct a preliminary investigation of loans to Iraq.  Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment of "Special Counsels"* 3-4 (2002).

- In 1994, when the Ethics in Government Act briefly lapsed, President Clinton's Attorney General appointed a special counsel to investigate the Whitewater allegations against the President and his former business partners.  59 Fed. Reg. 5321 (Feb. 4, 1994); 28 C.F.R. § 603.1.

Numerous other special assistants to the Attorney General were appointed in less celebrated cases.[5]

Congress has also long demonstrated its understanding that the Attorney General has authority to appoint special counsels by repeatedly appropriating funds for the Attorney General to compensate them.  *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-410; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317.  And published opinions of the Attorney General, spanning more than a century, have recognized that authority.

---

[5] *See, e.g.*, *Ewert v. Bluejacket*, 259 U.S. 129, 133 (1922); *United States v. Milanovich*, 303 F.2d 626, 629 (4th Cir. 1962); *Sauber v. Gliedman*, 283 F.2d 941, 942 (7th Cir. 1960); *Belt v. United States*, 73 F.2d 888, 888 (5th Cir. 1934); *State of Russia v. Nat'l City Bank of N.Y.*, 69 F.2d 44, 48 (2d Cir. 1934); *Marcum v. Marcum*, 62 F.2d 871, 872 (D.C. Cir. 1932); *Hale v. United States*, 25 F.2d 430, 435 (8th Cir. 1928); *Yaselli v. Goff*, 12 F.2d 396, 398 (2d Cir. 1926), *aff'd*, 275 U.S. 503 (1927) (per curiam); *May v. United States*, 236 F. 495, 498 (8th Cir. 1916); *United States v. Powell*, 81 F. Supp. 288, 291 (E.D. Mo. 1948); *United States v. Atl. Comm'n Co.*, 45 F. Supp. 187, 190 (E.D.N.C. 1942); *United States v. Sheffield Farms Co.*, 43 F. Supp. 1, 2 (S.D.N.Y. 1942); *United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254, 256 (D. Md. 1931); *United States v. Huston*, 28 F.2d 451, 452 (N.D. Ohio 1928); *United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923); *United States v. Morse*, 292 F. 273, 276 (S.D.N.Y. 1922); *United States v. Cohen*, 273 F. 620, 620-621 (D. Mass. 1921); *Rosenthal*, 121 F. 862.

*See Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 442-443 & n.5 (1980) (Appendix); *Naval Court-Martial*, 18 Op. Att'y Gen. 135, 136 (1885) ("it was provided (sec. 17) that such special counsel as might be from time to time required by any Department should be appointed by the Attorney-General only"); *Compensation of Counsel.*, 13 Op. Att'y Gen. 580, 583 (1871) ("[T]he Secretary of War has no authority to employ * * * counsel without the consent of the Attorney-General, and * * * if such counsel be not legal officers of the United States, it is necessary that they shall be specially commissioned under the provisions of the act.").

Against this historical record evidencing the Attorney General's appointment authority, Concord points to three statutes in which Congress "clearly and expressly confer[red] authority to appoint special or independent counsels" and suggests these statutes would have been unnecessary if Section 515 conferred the authority to do so.  Doc. 36 at 17-19.  That claim is incorrect.  Two of those statutes provide authority quite unlike Section 515.  A 1924 statute to prosecute the Teapot Dome scandal "authorized and directed" the *President* to "appoint, by and with the advice and consent of the Senate, special counsel" "anything in the statutes touching the powers of the Attorney General of the Department of Justice to the contrary notwithstanding."  Joint Res. of Feb. 8, 1924, Pub. Res. No. 68-4, 43 Stat. 5, 6.  And the Ethics in Government Act of 1978 (now lapsed) directed the Attorney General to ask *a division of the D.C. Circuit* to appoint an independent "special prosecutor" (later renamed an "independent counsel") for allegations against high-level government officials.  *See* Pub. L. No. 95-521, §§ 601-602, 92 Stat. 1824 (codified at 28 U.S.C. §§ 49, 591-594).

Those statutes do not cast doubt on the authority conferred by Section 515.  They vested the appointment power in actors other than the Attorney General:  the President and the courts. Indeed, the Teapot Dome statute was enacted because "Congress did not trust then-Attorney General Harry Daugherty," and it represented "the first and only time that the appointment of a special prosecutor was to be with the advice and consent of the Senate.  Previously, all special prosecutors were appointed either directly by the President or at the direction of the President by the Attorney General."  Donald C. Smalz, *The Independent Counsel: A View From Inside*, 86 Geo. L.J. 2307, 2315-2316 (1998).  With respect to the Ethics in Government Act, the lead Senate Report began by recounting prominent special prosecutors appointed by Attorneys General—highlighting their lack of independence, but raising no questions about the Attorney General's power to appoint them.  *See* S. Rep. No. 170, 95th Cong., 1st Sess., 2-3, 6-7 (1977).  And when Congress allowed the Ethics in Government Act expire in 1999, then-Deputy Attorney General Eric Holder assured Congress that if there were "a credible allegation raised against" a "high administration official," the Attorney General "has the ability  * * *  to appoint a special prosecutor and have that person conduct an investigation." *Reauthorization of the Independent Counsel Statute, Part I: Hearings Before the Subcomm. On Commercial and Admin. Law, H. Comm. on the Judiciary*, 106 Cong., 1st Sess. 1, 107 (1999).

As for Concord's other cited statute, the Payne-Aldrich Tariff Act of 1909 allowed the Attorney General to "employ and retain  * * *  special attorneys and counselors at law in the conduct of customs cases." Ch. 6, § 28, 36 Stat. 11, 108.  The appointment authority under the Payne-Aldrich Tariff Act is similar to Section 515, but that lone example casts no doubt on the Attorney General's authority under other provisions.  The Act approved a new Assistant Attorney General and five additional attorneys to represent the government in the classification and

litigation work that was sure to accompany the new tariffs.  36 Stat. at 108.  The Act also created a new U.S. Court of Customs Appeals.  *See id.* at 105-108.  Since it was creating a new customs division in the Department of Justice, which would be litigating before a new court, it is not surprising that Congress explicitly provided that the Attorney General could keep the division fully staffed, instead of relying on his general authority under Section 515.  The existence of overlapping appointment authority does not imply that Section 515 provided none.  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both.") (citation omitted).[6]

Indeed, after enactment of the Payne-Aldrich Tariff Act, Congress made separate appropriations for "special attorneys and counselors at law in the conduct of customs cases" and for "assistants to the Attorney General  * * *  employed by the Attorney General to aid in special cases," demonstrating that it viewed these as separate categories.  *See, e.g.*, Act of June 25, 1910, Pub. L. No. 61-266, 36 Stat. 703, 747, 750; Act of July 1, 1918, Pub. L. No. 65-181, 40 Stat. 634, 681, 683; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317.  Congress continues to appropriate money today for the Office of Special Counsel.  *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348.  As these appropriations confirm, Attorneys General have often appointed, and Congress has funded, special counsel, especially in sensitive investigations.  Yet

---

[6] Concord also points to an 1861 law that allowed the Attorney General to "employ and retain" assistants to "the district-attorneys."  Doc. 36 at 19 (citing Act of Aug. 2, 1861, ch. 37, § 2, 12 Stat. 285, 286).  That law, which predated the authority later embodied in Section 515, did not authorize "special assistants to the Attorney General," so it is difficult to see how it could support Concord's argument that Congress's enactment of specific appointment laws creates doubt about whether Section 515 gave general power to the Attorney General to appoint assistants to him.

Concord's argument means that every branch of government overlooked that none of these special counsels had authority to exist.  That argument strains credulity.

* * *

In sum, text, history, and longstanding practice confirm that the Attorney General has statutory authority to appoint a special counsel.  And the only judicial decision to address the Acting Attorney General's authority to appoint the Special Counsel conducting *this* investigation confirms that conclusion.  As the district court explained in *United States v. Manafort*, No. 1:18-cr-83, 2018 WL 3126380 (E.D. Va. June 26, 2018) (*Manafort EDVA*):

> Congress has authorized the Attorney General to appoint subordinates to assist in discharging these duties when necessary.  *See* [28 U.S.C.] §§ 509, 510, 515, 533. In this regard, Congress enabled the Attorney General to "specially retain[]" attorneys "commissioned as special assistant to the Attorney General or special attorney" and to authorize these special assistants to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings."  *Id.* § 515. Precisely this occurred here  * * *  .  Accordingly, the Acting Attorney General acted within his statutory authority when he appointed the Special Counsel and as such, the Special Counsel had legal authority to investigate and prosecute this case.

*Id.* at *12 (second alteration in original).  That conclusion is correct and equally applies here.[7]

---

[7] The *Manafort* Court's conclusion that no Appointments Clause challenge could succeed was integral to the decision's holdings.  2018 WL 3126380, at *12.  First, in rejecting Manafort's claim that the Special Counsel regulations were judicially enforceable, the Court emphasized that "the constitutional and statutory provisions at issue here empower the Attorney General to appoint a special assistant and to authorize that assistant to conduct criminal litigation on behalf of the U.S. government," and for that reason, internal DOJ procedures that were not compelled by the Constitution or statute need not be enforced by a court.  *Id.* (citing *United States v. Caceres*, 440 U.S. 741, 749 (1979)).    Second, in distinguishing Manafort's reliance on *United States v. Providence Journal*, 485 U.S. 693 (1988)—which Manafort cited in arguing that a prosecutor whose appointment was inconsistent with a DOJ regulation could not represent the United States in court—the *Manafort* Court stated that "a violation of the Special Counsel regulations would not deprive the Special Counsel of the requisite legal authority to investigate and prosecute this matter because the Special Counsel's appointment was consistent with both the Constitution and relevant federal statutes."  *Id.* at *14.  Thus, even though Manafort had not raised an Appointments Clause challenge, *id.* at *12, the Court addressed and resolved the issue.

### 3. No clear-statement rule applies to laws authorizing appointments under the Appointments Clause

Concord argues that the Appointments Clause requires a "clear and unambiguous statement" in a statute to vest appointment of "inferior Officers" in the "Head of [a] Department[]." Doc. 36 at 10-13. No sound principle justifies that suggestion; the authorities on which Concord relies do not support it; and, in any event, a clear-statement rule would be satisfied here.

A clear-statement rule would make little sense in this context. In permitting Congress to repose appointment power for "inferior Officers" in Heads of Departments, the Appointment Clause's "obvious purpose is administrative convenience." *Edmond*, 520 U.S. at 660 (citing *United States v. Germaine*, 99 U.S. 508, 510 (1879)). But requiring a clear statement for each delegation of appointment authority "would be legislatively unworkable and defeat the purpose of the relaxed requirements for 'inferior officer' appointments. The Framers of the Constitution created the classification of 'inferior officers' because they foresaw that 'when offices became numerous, and sudden removals necessary,' nomination by the President and confirmation by the Senate 'might become inconvenient.'" *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Svcs.*, 80 F.3d 796, 805 (3d Cir. 1996) (quoting *Germaine*, 99 U.S. at 510).

Concord's concerns about separation of powers have no relevance here. Doc. 36 at 12-13 (citing *Bond v. United States*, 134 S. Ct. 2077, 2088-2090 (2014); *Kucana v. Holder*, 558 U.S. 233, 237 (2010); *Franklin v. Massachusetts*, 505 U.S. 788, 800-801 (1992); *Freytag v. Commissioner*, 501 U.S. 868, 882 (1991)). The power to appoint the Special Counsel remains within the Executive Branch, exercised by an official who is accountable to the President—the Attorney General, who is removable at will. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010). *Freytag*'s concerns about "the danger of one branch's aggrandizing its power at the expense of another branch" and "preventing the diffusion of the appointment power," 501 U.S. at

878, thus do not apply here; an acting member of the Cabinet is delegating his own authority to someone he selects.  Limits on jurisdiction-stripping in *Kucana*, skepticism towards reviewing the President's actions for "abuse of discretion" in *Franklin*, and the presumption against altering the federal-state balance discussed in *Bond* are even more removed. Concord offers no reason why this Court should read a clear-statement rule into the Appointments Clause.

Concord also offers no authority for doing so.  He first points to *Burnap v. United States*, 252 U.S. 512 (1920).  Doc. 36 at 10.  There, the Court considered a petition from a landscape architect who claimed he had been improperly removed by the Chief of Engineers within the War Department, arguing that only the Secretary of War could appoint and remove him.  *See Burnap*, 252 U.S. at 514, 519-521.  Concord quotes a passage that noted that "[t]here is no statute which provides *specifically by whom* the landscape architect in the office of public buildings and grounds shall be appointed."  *Id.* at 518 (emphasis added).  That passage had nothing to do with the standard for delegations under the Appointments Clause.  It merely highlighted uncertainty about the key question in that case—who was supposed to appoint and remove the landscape architect.  Indeed, *Burnap* cuts against any heightened requirement of clear statement for a law authorizing appointments.  *Burnap* explained that a statute authorizing a department head to "employ" specified positions "confer[s] the power of appointment upon the heads of departments."  *Id.* at 518.  "The term 'employ' is used as the equivalent of appoint."  *Id.* at 515 (citing *Department Clerks—Delegation of Power*, 21 Op. Att'y Gen. 355, 356 (1896)); *cf.* Doc. 36 at 19 (citing "employ and retain" statutes as examples of appointment statutes)

Concord next invokes *Morrison v. Olson*, 487 U.S. 654 (1988), and *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012), arguing that they "*required* a statute that clearly and specifically provided the authority to appoint the

officer whose status is under scrutiny." Doc. 36 at 10 (emphasis added).  The statutes in *Morrison* and *Intercollegiate Broadcasting* did explicitly delegate appointment authority.  *See* 28 U.S.C. § 593(b) (1982); 17 U.S.C. § 801(a).  But nothing in those decisions suggests that the explicit grant of authority was required, or even relevant.  *Morrison* quoted the authorizing statute only once, and *Intercollegiate Broadcasting* did not quote it at all.  Far more pertinent is *Edmond*, whose reliance on a "default statute" made clear that Congress need not "clearly and specifically" grant specific authority to appoint each officer.  520 U.S. at 656.  Lower courts agree that "Article II 'does not require that a law specifically provide for the appointment of a particular inferior officer.'" *Willy*, 423 F.3d at 491 (quoting *Pa. Dep't of Pub. Welfare*, 80 F.3d at 804-805); *see also Varnadore*, 141 F.3d at 631.

Last, Concord invokes authorities interpreting 28 U.S.C. § 516 and § 519, which are even further afield.  *See* Doc. 36 at 11 (citing *United States v. Hercules, Inc.*, 961 F.2d 796 (8th Cir. 1992); *Attorney Gen.'s Role As Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982)).  Those statutes declare that, "[e]xcept as authorized by law," the Department of Justice conducts all litigation involving the federal government, and the Attorney General must supervise that litigation.  *Hercules* explains that these statutes disfavor implied repeals of the Attorney General's "exclusive authority and plenary power to control the conduct of litigation in which the United States is involved," and courts thus require "a clear and unambiguous directive from Congress" before finding the Attorney General's "statutory authority" diminished.  961 F.2d at 798.  The Office of Legal Counsel opinion similarly points to case law "narrowly constru[ing]" statutes granting litigating authority to other agencies.  *See Attorney Gen.'s Role*, 6 Op. O.L.C. at 55-56.  But granting the Attorney General the option to appoint a special counsel—who remains in the

Department of Justice, and handles only proceedings "specially directed by the Attorney General," 28 U.S.C. § 515(a)—augments the Attorney General's power, not diminishes it.

Finally, even if a clear-statement rule applied, it would be amply satisfied here. Section 515(b) provides a time-honored source of clear authority. *See* pp. 10-24, *supra.* And Concord does not address Section 533, which states that "[t]he Attorney General may appoint officials * * * to detect and prosecute crimes against the United States." Concord's statutory challenges to the Acting Attorney General's authority to appoint the Special Counsel therefore must fail, even under its own approach.

### B.   The Special Counsel Is Not A Principal Officer Under The Appointments Clause

Concord alternatively argues that the Special Counsel "is a principal Officer within the meaning of the Appointments Clause and therefore was required to be appointed by the President and confirmed by the Senate." Doc. 36 at 26. That argument cannot be reconciled with nearly 140 years of practice of special counsel appointments made without presidential nomination or Senate confirmation; analysis under the Appointments Clause; or binding precedent.

#### 1.   An inferior officer is one who reports to and is supervised by a superior officer

In *Morrison*, the Supreme Court held that an independent counsel appointed by a Special Division of the D.C. Circuit pursuant to the Ethics in Government Act of 1978 "clearly falls on the 'inferior officer' side" of the principal/inferior officer line. *Morrison*, 487 U.S. at 671. The Court explained that "[s]everal factors lead to this conclusion." *Id.* First, the independent counsel was "subject to removal by a higher Executive Branch official." *Id.* Although removal required good cause, *id.* at 663, the Attorney General's power "indicates that she is to some degree 'inferior' in rank and authority," *id.* at 671. Second, the independent counsel was empowered "to perform only certain, limited duties[:] * * * investigation and, if appropriate, prosecution for certain federal

crimes." *Id.*  The independent counsel was not given "any authority to formulate policy for the Government or the Executive Branch * * * [or] any administrative duties outside those necessary to operate her office."  *Id.* at 671-672.  Third, the independent counsel's office was "limited in jurisdiction" because the independent counsel could "only act within the scope of the jurisdiction that has been granted by the Special Division pursuant to a request by the Attorney General."  *Id.* at 672.  And finally, the independent counsel's position was temporary "in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over the office is terminated, either by the counsel herself or by action of the Special Division." *Id.*  These factors were "sufficient to establish that [an independent counsel] is an 'inferior' officer in the constitutional sense."  *Id.*

In *Edmond*, the Supreme Court held that civilian members of the Coast Guard Court of Criminal Appeals "are 'inferior Officers' within the meaning of" the Appointments Clause.  520 U.S. at 666.  Although two of the *Morrison* factors—narrow jurisdiction and limited tenure—did not apply to Coast Guard judges, the Court explained that *Morrison* did not set forth "a definitive test for whether an officer is 'inferior' under the Appointments Clause."  *Id.* at 661.  Rather, the Court found it "evident that 'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  *Id.* at 663.  Because the Judge Advocate General exercised administrative oversight over the Coast Guard Court of Criminal Appeals, which included the power to remove judges without cause, *id.* at 664, and the Court of Appeals for the Armed Forces could reverse the Coast Guard Court of Criminal Appeals' decisions, *id.* at 664-665, the Court concluded that the judges were "'inferior Officers,'" *id.* at 666.

In *Intercollegiate Broadcasting System*, the D.C. Circuit applied *Morrison* and *Edmond* to conclude that Copyright Royalty Judges "as currently constituted are principal officers who must be appointed by the President and confirmed by the Senate."  684 F.3d at 1340.  The court of appeals interpreted *Morrison* as "seem[ing] to rest on a premise that levels of significance [of an officer's authority] may play some role in the divide between principal and inferior," a premise the court found the Supreme Court to have rejected in *Edmond*.  *Id.* at 1337.  In the court of appeals' view, *Edmond* instead focused on three factors: whether the officer was (1) "subject to the substantial supervision and oversight" of a principal officer, (2) removable without cause, and (3) able to render a final decision on behalf of the United States.  *Id.* at 1338.  Because Copyright Royalty Judges had "vast discretion over  * * *  rates and terms," *id.* at 1339, could be removed "only for misconduct or neglect of duty," *id.* at 1340, and could not have their rate determinations reversed or corrected by anyone else within the executive branch, *id.*, the Circuit concluded that Copyright Royalty Judges are principal officers, *id.*

### 2.  The Special Counsel reports to and is supervised by the Attorney General and is therefore an inferior officer

Under *Edmond* and *Intercollegiate Broadcasting*—as well as *Morrison* and precedent applying it, *see* pp. 37-41, *infra*—the Special Counsel is an "inferior Officer" because the Acting Attorney General supervises the Special Counsel's work, may remove him from office, and may review and countermand his decisions.

### a.  *The Special Counsel is subject to supervision and oversight*

First, the Special Counsel is "subject to the substantial supervision and oversight" of the Attorney General.  *Intercollegiate Broad.*, 684 F.3d at 1338. The Special Counsel's existence depends on the Acting Attorney General, who appointed him, defined the scope of his authority, and delegated to him powers that are otherwise vested in the Attorney General alone.  *See* 28

U.S.C. §§ 509, 510; Appointment Order (introduction and ¶¶ (a)-(d)).  And Section 509, which "vest[s] in the Attorney General" "[a]ll functions of other offices of the Department of Justice," ensures that the Attorney General has statutory authority to supervise the Special Counsel— contrary to Concord's unsupported suggestion that no such authority exists (Doc. 36 at 30).

The regulations made applicable to the Special Counsel provide further direction and supervision.  *See* Appointment Order ¶ (d).  These regulations ensure "that ultimate responsibility for the matter [the Special Counsel is appointed to investigate and, if appropriate, prosecute] and how it is handled will continue to rest with the Attorney General."  *Office of Special Counsel*, 64 Fed. Reg. 37,038, 37,038 (July 9, 1999).

The regulations, among other things, require the Special Counsel (1) to report to the Acting Attorney General on a regular basis, and (2) to follow departmental review and approval procedures, including not taking any action prohibited by the Acting Attorney General. "Upon request," the Special Counsel must "provide an explanation for *any* investigative or prosecutorial step" to the Acting Attorney General. 28 C.F.R. § 600.7(b) (emphasis added).  Furthermore, the Special Counsel is required to "notify the [Acting] Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent reports."  *Id.* § 600.8(b).  Those guidelines require advance reports of "major developments in significant investigations and litigation," USAM § 1-13.100, *available at* https://www.justice.gov/ usam/usam-1-13000-urgent-reports.

In addition to providing the Acting Attorney General with the information necessary to conduct significant oversight of his investigation, the Special Counsel is also subject to the Acting Attorney General's supervision.  The Special Counsel must "comply with the rules, regulations, procedures, practices and policies of the Department of Justice," including "compliance with

required review and approval procedures by the designated Departmental component[s]." 28 C.F.R. § 600.7(a). The regulations further require the Special Counsel to obtain approval from the Acting Attorney General if he "concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his * * * investigation." 28 C.F.R. § 600.4(b). And the Special Counsel may not take action that the Acting Attorney General finds "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id.* § 600.7(b). The regulations thus "explicitly acknowledge the possibility of review of specific decisions reached by the Special Counsel." *Office of Special Counsel*, 64 Fed. Reg. at 37,038.

Concord makes two arguments in an attempt to minimize the significance of the regulations, both of which lack merit. First, Concord asserts that, because the regulations are not enforceable by private parties, they are invalid, thus leaving "*no* objective legal basis for direction and supervision of the Special Counsel: only such direction and supervision, if any, that the [Acting] Attorney General elects, at his sole discretion—unreviewable by the Judiciary—to exercise." Doc. 36 at 30. But that argument confuses two separate issues: whether the regulations are binding on the Department of Justice and whether they may be enforced in court. As the Supreme Court's decision in *United States v. Nixon* makes clear, "[s]o long as this [special prosecutor] regulation is extant it has the force of law," and "the Executive Branch is bound by it." 418 U.S. at 694-695. While the Special Counsel regulation specifically provides that it does not create enforceable rights "in any matter, civil, criminal, or administrative," 28 C.F.R. § 600.10, that does not detract from its binding character on the actions of the Special Counsel and Acting Attorney General. *Nixon*, 418 U.S. at 694-695. And if Concord were right that the regulations do

not count at all in Appointments Clause analysis (*see* Doc. 36 at 30), the Attorney General would have the same plenary authority he has over other officers in the Department of Justice, *see* 28 U.S.C. § 510—which would further refute Concord's argument.

Concord's second argument—that the regulations "do[] not authorize the [Acting] Attorney General to countermand steps taken by the Special Counsel[,]" Doc. 36 at 32—is equally unfounded.  According to Concord (*id.* at 31-33), because 28 C.F.R. § 600.7(b) uses the word "should" rather than the word "shall," the regulation does not allow the Acting Attorney General to prevent the Special Counsel from taking any actions, including those that are "inappropriate or unwarranted under established Departmental practices." But the regulation's use of the word "should" rather than "shall" is not dispositive.  *Doe v. Hampton*, 566 F.2d 265, 281-282 (D.C. Cir. 1977) ("We of course recognize that the provision in question employs the directory 'should be' rather than the mandatory 'shall' or 'must', but this should not be automatically determinative of the issue."); *American Petroleum Inst. v. EPA*, 684 F.3d 1342, 1348-1349 (D.C. Cir. 2012) ("The use of the phrase 'should be' rather than 'shall' suggests but does not necessarily mean the Guidelines are not binding.").  Rather, the context of the regulation and the Attorney General's intent in promulgating it inform its meaning.  *See, e.g.*, *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1500 (D.C. Cir. 1988).

Both the Attorney General's intent in promulgating the regulations and the context for § 600.7(b)'s use of the word "should" make clear that § 600.7(b) gives the Acting Attorney General authority to countermand a special counsel when the regulation's terms are met.  The intent of the regulations is to ensure that "ultimate responsibility" for how a special counsel investigation "is handled will continue to rest with the Attorney General."  *Office of Special Counsel*, 64 Fed. Reg. at 37,038—which implies some directive authority.  *See, e.g.*, *United States v. Montgomery*, 462

F.3d 1067, 1070 n.2 (9th Cir. 2006) ("A court might be especially disposed to use 'should' as gentler way for one court to tell another court what it ought to do.").  And context confirms that the Attorney General's determination will govern the Special Counsel's action by requiring the Attorney General to notify Congress at the conclusion of the investigation if he "concludes that a proposed action by a Special Counsel should not be pursued," 28 C.F.R. § 600.7(b), *see also id.* § 600.9(a)(3).  Under Concord's view, § 600.7(b) merely requires the Attorney General to inform Congress that he disagreed with an action that a special counsel took anyway—a requirement that makes little sense.

Even if § 600.7(b)'s use of "should" rather than "shall" were thought ambiguous, notwithstanding that regulation's design and context, the Department of Justice understands § 600.7(b) to preclude a Special Counsel from taking any action that Acting Attorney General determines "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued."  Because that interpretation is not "'plainly erroneous or inconsistent with the regulation,'" it "is controlling."  *Polm Family Found., Inc. v. United States*, 644 F.3d 406, 409 (D.C. Cir. 2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *see also INS v. Stanisic*, 395 U.S. 62, 70-72 (1969).

### b.  *The Special Counsel is removable by the Attorney General*

The several ways in which the Special Counsel may be removed also supports the conclusion that he is an inferior officer.  The Special Counsel is directly removable for "misconduct * * * or for other good cause, including violation of Departmental policies."  28 C.F.R. § 600.7(d).  The Special Counsel may also be removed by the Attorney General's decision to terminate the investigation.  The regulations provide that, 90 days before the beginning of each fiscal year, the Special Counsel must provide a status report and a budget request, and "[t]he Attorney General shall determine whether the investigation should continue."  *Id.* § 600.8(a)(2).  Termination of the

investigation would automatically terminate the Special Counsel's office. And given the regulation's intention that the investigation have a defined factual focus, *see id.* § 600.4(a), Special Counsels appointed under the regulation can be expected to have a limited time horizon and the investigation a definite endpoint.[8]

Concord focuses only on the "good cause"-removal provision of § 600.7(d), erroneously urging that this factor reinforces its claim that the Special Counsel is a principal officer. Doc. 36 at 35. Concord notes that the Coast Guard judges in *Edmond* were removable without cause, 520 U.S. at 664, and the members of the Public Company Accounting Oversight Board in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010), became removable at will after the Court invalidated restrictions on the Securities and Exchange Commission's authority to remove them.

But the Supreme Court has "expressed no doubt that when [C]ongress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest." *United States v. Perkins*, 116 U.S. 483, 485

---

[8] The Special Counsel regulations could also be revoked at the Acting Attorney General's sole discretion, thus permitting termination of the Special Counsel at will. *See Nixon*, 418 U.S. at 696 (noting that "it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority"); *Sealed Case*, 829 F.2d at 56 (noting that "the Independent Counsel: Iran/Contra serves only for so long as the March 5, 1987, regulation remains in force. Subject to generally applicable procedural requirements, the Attorney General may rescind this regulation at any time, thereby abolishing the Office of Independent Counsel: Iran/Contra."); *Office of Special Counsel*, 64 Fed. Reg. at 37,041 (the regulations governing the Special Counsel were promulgated as rules "relat[ing] to matters of agency management or personnel" and "therefore exempt from the usual requirements of prior notice and comment and a 30-day delay in the effective date," implying that the regulations' removal restriction could likewise be amended or eliminated without notice-and-comment rulemaking. *See* 5 U.S.C. § 553(a)(2)); *but see Nader v. Bork*, 366 F. Supp. 104, 108-109 (D.D.C. 1973) (finding revocation of regulation establishing the Watergate Special Prosecutor regulation arbitrary and unreasonable). Whatever the outcome of that analysis, the existing means of removing a Special Counsel under the regulation confirm that he is an inferior officer.

(1886); *see Morrison*, 487 U.S. at 693 n. 27 (citing *Perkins*); *id.* at 724 n.4 (Scalia, J., dissenting) (same). Although "good cause" removal in combination with the other factors may support a finding of principal officer status, *see, e.g.*, *Intercollegiate Broadcasting*, 684 F.3d at 1339-1340, it does not mandate such a finding standing alone. The independent counsel found to be an inferior officer in *Morrison* was removable only for good cause, indeed, on a narrower standard than applies here. 487 U.S. at 686-693. So were the special trial judges of the Tax Court found to be inferior officers in *Freytag*, 501 U.S. at 882; *see* 26 U.S.C. § 7443(f). In *Morrison*, the factors of limited duties, jurisdiction, and tenure supported that conclusion, 487 U.S. at 671-672, and, as discussed below, the same factors are present here. And, as noted above, the regulations provide an additional, concrete termination mechanism:  the unconstrained power of the Attorney General to allow an investigation to expire at the end of the fiscal year. 28 C.F.R. § 600.8(a)(2).

### c. *The Special Counsel's decisionmaking authority is subject to review and correction*

Finally, the Special Counsel is not a principal officer because he does not have unlimited authority to make final decisions on behalf of the United States. *See* 28 C.F.R. § 600.7(b). The Acting Attorney General's review of Special Counsel decisionmaking is "narrower" than plenary review, but "[t]his limitation upon review does not  * * *  render the [Special Counsel a] principal officer[]." *Edmond*, 520 U.S. at 665. "What is significant is that the [Special Counsel] ha[s] no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers." *Id.*

Concord asserts that the Special Counsel has the authority to make final decisions on behalf of the United States because the regulations "nowhere require the Special Counsel to obtain the approval or permission of the Attorney General before making final decisions about who to investigate, indict, and prosecute." Doc. 36 at 35. That is also true for United States Attorneys,

28 U.S.C. § 547, who are nonetheless inferior officers.  *See Myers v. United States*, 272 U.S. 52, 159 (1926); *United States v. Hilario*, 218 F.3d 19, 25-26 (1st Cir. 2000); *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999); *United States Attorneys—Suggested Appointment Power of the Attorney General—Constitutional Law (Article II, § 2, cl. 2)*, 2 Op. O.L.C. 58, 59 (1978) ("U.S. Attorneys can be considered to be inferior officers"); *see also* 28 U.S.C. § 546(a), (d) (providing for appointment of a U.S. Attorney by the Attorney General or a court if the office is vacant).  And the Special Counsel has "the investigative and prosecutorial functions of any United States Attorney."  28 C.F.R. § 600.6.  Few inferior-officer positions require a supervisor to review every single decision.  Thus, that the Special Counsel need not obtain Acting Attorney General approval of every decision cannot transform the Special Counsel into a principal officer, requiring presidential appointment and Senate confirmation.

### 3.  *Morrison* and *Sealed Case* foreclose Concord's principal-officer argument

The conclusion that a Special Counsel is not a principal officer is also compelled by binding precedent.  The Supreme Court in *Nixon* characterized the Watergate Special Prosecutor as a "subordinate officer[], appointed "to assist [the Attorney General] in the discharge of his duties."  418 U.S. at 694.  And when Appointments Clause challenges to independent counsels arose in *Morrison* and *Sealed Case*, the Supreme Court and D.C. Circuit held that the independent counsels in question were inferior officers based on reasoning that equally applies here.

The statutory independent counsel at issue in *Morrison* was subject to *less* oversight and supervision than is the Special Counsel here:  the independent counsel was not required to explain her investigative or prosecutorial steps to the Attorney General, and the Attorney General had no authority to countermand the independent counsel's actions.  *Compare Morrison*, 487 U.S. at 662-665, *with* 28 C.F.R. § 600.7(b).  As for the factors identified in *Morrison*, both an independent counsel and a Special Counsel may be removed by the Attorney General for good cause, *Morrison*,

487 U.S. at 671; 28 C.F.R. § 600.7(d); both have "certain, limited duties," *Morrison*, 487 U.S. at 671; *e.g.*, Appointment Order ¶¶ (b) & (c); both may "only act within the scope of th[eir] jurisdiction," *Morrison*, 487 U.S. at 672, *see* 28 C.F.R. § 600.4(a), (b); and both are "appointed essentially to accomplish a single task, and when that task is over the office is terminated, either by the counsel [him]self or by action of the [Acting Attorney General.]" *Morrison*, 487 U.S. at 672; 28 C.F.R. § 600.8(c).  Thus, the *Morrison* factors "establish that [the Special Counsel] is an 'inferior' officer in the constitutional sense." 487 U.S. at 672; *see Manafort EDVA*, 2018 WL 3126380, at *3 n.5 (citing *Morrison* for the proposition that "[t]he Special Counsel appears quite plainly to be an inferior officer.  He is required to report to and is directed by the Deputy Attorney General."); *United States v. Libby*, 429 F. Supp. 2d 27, 44 (D.D.C. 2006) (explaining that special counsel Patrick Fitzgerald "falls squarely into the mold of *Morrison*, where the Supreme Court concluded that the independent counsel was an inferior officer.  The factors employed in *Morrison* to reach that conclusion are equally applicable here.").

Concord claims that *Morrison* "has been supplanted by *Edmond*" and thus that its "reasoning should not be viewed as controlling."  Doc. 36 at 26, 36.  But the Supreme Court has never said so.  *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *cf. PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 96 (D.C. Cir. 2018) (en banc) (noting, in another context, that *Morrison* "remains valid and binding precedent.").  Concord also attempts to distinguish *Morrison*, claiming that the independent counsel's duties, jurisdiction, and tenure were more limited than the Special Counsel's.  Doc. 36 at 36-38.  But Concord's attempt to "characteriz[e] the Independent Counsel in *Morrison* as an insignificant inferior officer * * * [is], at best, strained."  *PHH Corp.*, 881 F.3d at 113 (Tatel, J., concurring).  While Concord stresses that Morrison's specific inquiry was "limited  * * *  to looking at then Assistant Attorney General

Theodore Olson and testimony he gave to Congress on a particular date," Doc. 36 at 36, in determining that the independent counsel was an inferior officer, the Supreme Court focused solely on the statutory structure of the office, not on Morrison's particular investigation.  *See Morrison*, 487 U.S. at 671-72.  Concord effectively concedes the point, urging elsewhere that Appointments Clause challenges should focus on the statutory and regulatory structure rather than the particular matter at issue.  Doc. 36 at 29-30.

Concord's other attempts to distinguish *Morrison* also fail.  Concord minimizes the independent counsel's duties and jurisdiction by asserting that they were "narrowly restricted by statute to investigating and prosecuting 'certain federal crimes' by specific categories of persons." Doc. 36 at 36; *see id.* at 38.  Those categories, however, encompassed the authority to investigate "the President and Vice President, Cabinet level officials, certain high-ranking officials in the Executive Office of the President and the Justice Department, the Director and Deputy Director of Central Intelligence, the Commissioner of Internal Revenue, and certain officials involved in the President's national political campaign," and to prosecute these individuals for "violations of 'any Federal criminal law other than a violation classified as a Class B or C misdemeanor or an infraction.'"  *Morrison*, 487 U.S. at 660 n.2.  Concord's argument (Doc. 36 at 37) that the Special Counsel exercised "authority to formulate policy" by indicting this case on a new legal theory is factually wrong, but in any event it overlooks that the Special Counsel is required to comply with Department policy, *see* 28 C.F.R. § 600.7(a), can be removed for "violation of departmental policies," *id.* § 600.7(d), and may be overruled for serious departures from "established Departmental practices," *id.* § 600.7(b).  Concord's suggestion (Doc. 36 at 38) that there was no "determination by the Attorney General that an appointment of a Special Counsel was warranted in the first place" cannot be squared with the Acting Attorney General's Appointment Order

making that precise determination.  And, contrary to Concord's assertion (*id.* at 39), the regulations governing the Special Counsel's investigation specifically contemplate a "conclusion of the Special Counsel's work," when he must "provide the Attorney General with a confidential report explaining the prosecution or declination decisions reached by the Special Counsel."  28 C.F.R. § 600.8(c).

The D.C. Circuit's binding opinion in *Sealed Case*—which Concord does not address in its principal/inferior officer analysis—likewise compels the conclusion that the Special Counsel is an inferior officer for Appointments Clause purposes.  As previously noted (p. 11-12, *supra*), the Attorney General, invoking his authority under 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515, created the "Office of Independent Counsel: Iran/Contra" and delegated to Lawrence Walsh the authority to investigate that matter and prosecute crimes arising from it.  *Sealed Case*, 829 F.2d at 51-52, 55-56.  In rejecting North's Appointments Clause challenge, the D.C. Circuit concluded that Walsh was "'charged with the performance of the duty of the superior [*i.e.*, the Attorney General] for a limited time and under special and temporary conditions," and "[a]s such  * * * remains an 'inferior Officer' whom the Attorney General, as the 'Head[] of [a] Department[ ],' may appoint under the express terms of the Appointments Clause."  *Id.* at 56-57 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)) (alterations in *Sealed Case*).  Because the Special Counsel here was appointed pursuant to the same statutory authority as Walsh, and was tasked with an investigation that is similarly limited in scope, *Sealed Case* mandates the conclusion that the Special Counsel is an "inferior Officer."

* * *

In sum, both squarely applicable precedent in *Morrison* and *Sealed Case* and analysis under general Appointments Clause principles leads to the same conclusion:  the Special Counsel is an

"inferior Officer" who may be appointed by the Acting Attorney General pursuant to his longstanding statutory authority to appoint officers in the Department of Justice.

## II.     The Special Counsel Regulations Are Valid And The Existence Of The Special Counsel Does Not Violate The Separation of Powers

Concord next argues that the special counsel regulations "are unlawful and invalid and, consequently, the Special Counsel position violates core separation-of-powers principles." Doc. 36 at 40. Concord begins by positing a separation-of-powers problem if the Special Counsel regulations are *not* binding (Doc. 36 at 40; *see also id.* at 47-48), then proceeds to find a separation-of-powers problem if they are because, he says, they are unauthorized by statute (*id.* at 40-43). Neither submission withstands analysis.

If the regulations were not binding, Special Counsels would occupy the same position as any other official in the Department: subject to the Attorney General's plenary control with respect to the scope of delegated authority. And the Attorney General's decisions about how and whether to delegate authority to the Special Counsel, *see* 28 U.S.C. § 510, would receive the same presumption of regularity that applies to other exercises of prosecutorial discretion. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Nothing in that regime would offend the separation of powers. But as discussed above, the regulations do have force in structuring the actions of the Special Counsel: so long as the regulations are in place and made applicable to a Special Counsel—as they were here—they bind the Executive Branch. *See Nixon*, 418 U.S. at 695-696.

Concord next argues (Doc. 36 at 40-43) that the "Special Counsel position" violates the separation of powers even if the regulations are binding and enforceable, because the Attorney General lacks statutory authority to promulgate the regulations and so they "provide no check on the Special Counsel's expansive jurisdiction." *Id.* at 41. But the Attorney General had ample authority to issue the regulations. Under the "housekeeping statute," 5 U.S.C. § 301, the Attorney

General has authority to "prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business." As the Supreme Court explained in *Chrysler Corporation v. Brown*, 441 U.S. 281, 309 (1979), Section 301 is "a grant of authority to [an] agency to regulate its own affairs."  The Attorney General properly relied on that statute and others to promulgate the special counsel regulation, which clearly regulates the Department's "own affairs."  *See Office of Special Counsel*, 64 Fed. Reg. at 37,042 (invoking authority under 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515-519).  In *Sealed Case*, the D.C. Circuit noted that the Supreme Court in *Nixon* "presupposed the validity of a regulation appointing the Special Prosecutor, a position indistinguishable from the [special counsel] at issue" and had "no difficulty concluding that the Attorney General possessed the statutory authority to create the Office of Independent Counsel: Iran/Contra and to convey to it the 'investigative and prosecutorial functions and powers' described in  * * *  the regulation."  829 F.2d at 55 & n.30.

Concord suggests that when the Attorney General issued the Special Counsel regulations, he improperly circumvented Congress's decision to allow the Ethics in Government Act's independent-counsel provisions to expire.  Doc. 36 at 42-43.  That suggestion errs in equating the two regimes; the two are worlds apart.  Unlike the former independent-counsel provisions, the appointment of a regulatory Special Counsel involves action by the Executive Branch (not a court); a Special Counsel's jurisdiction is defined by the Attorney General; a Special Counsel's actions are supervised by the Attorney General; and the lifespan and scope of the investigation at all times stay within the Attorney General's control.  No separation-of-powers are concerns implicated when a principal officer in the Executive Branch appoints an inferior officer over whom he retains supervisory authority.  Accordingly, even assuming that Congress's letting one law expire would

somehow restrict an agency's independent regulatory authority, the lapse of the independent-counsel statute did not foreclose the Special Counsel regulations.

## III.    The Indictment Should Not Be Dismissed Based On A Claim That The Special Counsel Regulations And Appointment Order Do Not Authorize This Prosecution

Concord argues (Doc. 36 at 44-49) that the Appointment Order does not properly authorize the Special Counsel to prosecute this case.  As a threshold matter, Concord has no right to enforce the Special Counsel regulations or terms of the Appointment Order.  And, in any event, the Acting Attorney General properly assigned to the Special Counsel the responsibility to investigate Russian interference in the 2016 presidential election, including the matters charged here.

### A.    Concord's Arguments Do Not Support A Challenge To The Indictment

#### 1.  The regulations and Appointment Order are not judicially enforceable

Internal rules and orders governing the allocation of responsibilities within the Department of Justice are not judicially enforceable.  Questions about allocation of prosecutorial power are resolved within DOJ—here, through the Acting Attorney General's appointment and ongoing supervision of the Special Counsel.  They are not to be adjudicated in criminal cases.

The Special Counsel regulations "do not create rights that an individual under investigation may enforce in court."  *United States v. Manafort*, No. 17-cr-201, 2018 WL 2223656, at *7 (D.D.C. May 15, 2018) (*Manafort DC*); *see id.* at *10-*14; *accord Manafort EDVA*, No. 18-cr-83, 2018 WL 3126380, at *11-*14.  "[T]hose regulations are not substantive rules that create individual rights," but rather are "internal rules" that govern "'agency management or personnel' and 'agency organization, procedure, or practice.'"  *Manafort DC*, 2018 WL 2223656, at *10-*11 (quoting *Office of Special Counsel*, 64 Fed. Reg. at 37,041).  They are "intended solely to guide the Attorney General and other Department personnel."  *Id.* at *11.  Internal agency rules, when not required by the Constitution or a statute, are generally not enforceable in a criminal case.  *See United States v.*

*Caceres*, 440 U.S. 741, 749-754 (1979).  The Special Counsel regulations are explicit on that point. 28 C.F.R. § 600.10 ("The regulations in this part are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative.").  It follows that the Appointment Order assigning certain investigative and prosecutorial responsibilities to the Special Counsel under the regulations also may be not invoked by Concord here.

The Special Counsel regulations and Appointment Order are on par with other internal regulations, guidance, and orders that regulate the Department of Justice.  The D.C. Circuit, like other courts of appeals, has held that such internal rules do not confer rights on criminal defendants and are therefore not enforceable.  *See In re Grand Jury Subpoena*, 438 F.3d 1141, 1152-1153 (D.C. Cir.) (media regulations), *cert. denied*, 545 U.S. 1150 (2005); *United States v. Blackley*, 167 F.3d 543, 548-549 (D.C. Cir.) (USAM), *cert. denied*, 528 U.S. 868 (1999).[9]  Accordingly, they cannot form the basis of a motion to dismiss.

### 2. Any violation would not undermine the Special Counsel's authority or warrant dismissal of the Indictment

Even if some regulatory error occurred in assigning this area of investigation to the Special Counsel, it would not support the remedy of dismissing the Indictment.  The Special Counsel is still a DOJ attorney with statutory authority to represent the government.  *See Manafort EDVA*,

---

[9] *See also United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (Petite policy limiting dual prosecution); *United States v. Lee*, 274 F.3d 485, 492-493 (8th Cir.) (death penalty protocol), *cert. denied*, 537 U.S. 1000 (2002); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (USAM); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir.) (policy memorandum requiring consultation before bringing certain charges), *cert. denied*, 513 U.S. 904 (1994); *In re Shain*, 978 F.2d 850, 853 (4th Cir. 1992) (regulations governing journalist subpoenas); *United States v. Craveiro*, 907 F.2d 260, 263-264 (1st Cir.) (required pre-trial notice of intent to seek sentence enhancement), *cert. denied*, 498 U.S. 1015 (1990).

2018 WL 3126380 at *12-*14; *see also Manafort DC*, 2018 WL 2223656, at *18 n.17 ("any [regulatory] error defendant alleges in assigning the matter to the Special Counsel does not deprive this Court of jurisdiction"). Federal criminal proceedings are conducted by "officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516; *see id.* § 519. As discussed, the Special Counsel is such an officer. He is a "special assistant to the Attorney General," *id.* § 515(b), and authorized to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings," *id.* § 515(a).

Additionally, any regulatory error here would be harmless. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); Fed. R. Crim. P. 52(a). The Acting Attorney General reviewed and authorized the Indictment of Concord. *See* 28 C.F.R. § 600.7(a) (Special Counsel must comply with DOJ rules, regulations, procedures, and policies); USAM § 1-13.100 (requiring "Urgent Reports" to Department leadership on "major developments in significant investigations and litigation"); *see also* Press Release on Indictment (Feb. 16, 2018), *available at* https://www.justice.gov/opa/pr/grand-jury-indicts-thirteen-russian-individuals-and-three-russian-companies-scheme-interfere (quoting Acting Attorney General). In light of the ongoing supervision by the Acting Attorney General—who unquestionably has prosecutorial authority—any error in assigning the case to the Special Counsel would be harmless.

## B.  The Indictment Falls Within The Special Counsel's Authority

Even if Concord's arguments were justiciable and could support the remedy he seeks, they fail on the merits because the Special Counsel had authority to obtain the Indictment.

1. Concord argues (Doc. 36 at 48-49) that because the Indictment does not include allegations about the Russian government or links to the Trump Campaign, it falls outside of the authority conferred by the Appointment Order. That claim fails.

The Appointment Order authorizes an investigation into "the Russian government's efforts to interfere in the 2016 presidential election," including "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." Appointment Order (introduction) & ¶ (b)(i); *see* Comey Testimony (confirming prior FBI investigation). An investigation into the Russian government's efforts to interfere in the 2016 presidential election would inevitably cover organized, Russia-based social-media campaigns targeting the election to determine how they are funded and controlled—and what connections they had to the Russian government, if any. Before the appointment of the Special Counsel, the American government had already identified non-governmental Russian actors that played a role in Russia's election-interference efforts. The unclassified January 2016 Intelligence Community Assessment ("ICA") described Russia's "[m]ultifaceted" campaign that included "third-party intermediaries[] and paid social media users or 'trolls.'" *Assessing Russian Activities and Intentions in Recent US Elections* at 2 (Jan. 6, 2017), *available at* https://www.dni.gov/files/documents/ICA_2017_01.pdf. The ICA explained that "a network of quasi-government trolls  * * *  serve[ed] as a platform for Kremlin messaging," *id.* at 3, and specifically referred to "the so-called Internet Research Agency of professional trolls located in Saint Petersburg," its prior role "supporting Russian actions in Ukraine," and its "likely financier," who "is a close Putin ally with ties to Russian intelligence," *id.* at 4; *see also* p.8 & n.3, *supra* (describing sanctions imposed on Prigozhin and Concord for supporting Russian government activities in Ukraine). Concord's activities fall squarely within this investigatory focus.

The Appointment Order does not limit the Special Counsel to indicting individuals and entities that are part of or tied to the Russian government. Because investigation of the social-media attack was authorized, so was prosecution. The Appointment Order defined the Special

Counsel's prosecutorial authority separately from his investigatory authority.  "If the Special Counsel believes it is necessary and appropriate," the Order provided, "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." Appointment Order ¶ (c).  Concord's argument "misunderstands the structure of the May 17 Appointment Order and the difference between the Special Counsel's investigative and prosecutorial authority."  *Manafort EDVA*, 2018 WL 3126380 at *8.  Having permissibly investigated Concord's conduct, the Special Counsel was "authorized to prosecute federal crimes that arise out of his authorized investigation."  *Id.*; *see Manafort DC*, 2018 WL 2223656, at *10.

2.  Concord additionally argues (Doc. 36 at 45-47), that under 28 C.F.R. § 600.1, the Acting Attorney General could not appoint a Special Counsel to prosecute Concord.  That contention lacks merit.

a.  Concord contends that the appointment violates Section 600.1 because then-Director Comey's March 2017 testimony "confirmed the existence only of a *counter-intelligence* investigation," while Section 600.1 addresses appointing a Special Counsel when a criminal investigation is warranted.  Doc. 36 at 45 (Concord's emphasis).  But the appointment clearly encompassed an ongoing criminal investigation.  When Comey publically confirmed to the House Permanent Select Committee on Intelligence that the FBI was investigating Russian interference into the 2016 presidential election "as part of [its] counterintelligence mission," he made clear that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed."  Comey Testimony.  And the Acting Attorney General plainly determined that a criminal investigation was warranted when the Appointment Order stated that "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters."  Appointment Order ¶ (c).

b. Concord next urges (Doc. 36 at 45-46) that under Section 600.1, the Special Counsel could not have been assigned to investigate or prosecute Concord because there was no "need for a criminal investigation into Concord" or "conflict of interest or extraordinary circumstance * * * supporting a criminal investigation into Concord." *Id.* That claim is unfounded.

Section 600.1's "[g]rounds for appointing a Special Counsel" are not defendant-specific. Rather, the Acting Attorney General "will appoint a Special Counsel when he or she determines that criminal investigation of a person *or matter* is warranted," when "investigation or prosecution of that person *or matter* * * * would present a conflict of interest for the Department or other extraordinary circumstances," and where "it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the *matter*." 28 C.F.R. § 600.1 (emphases added). Here, the core "matter" to be investigated was Russian interference in the election, including links and/or coordination to individuals associated with the Trump Campaign. *See* Appointment Order (introduction); *id.* ¶ (b). And "[c]onsidering the unique circumstances of this matter," the Acting Attorney General determined that "a Special Counsel is necessary in order for the American people to have full confidence in the outcome." Press Release, Appointment of Special Counsel (May 17, 2017), *available at* https://www.justice.gov/opa/pr/appointment-special-counsel.

c. Concord briefly suggests (Doc. 36 at 46-47) that under Section 600.4, the Acting Attorney General could not authorize the Special Counsel to investigate "any matters that arose or may arise directly from the investigation," Appointment Order ¶ (b)(ii). That is the same argument that the district court rejected in the *Manafort* prosecution in this District. *See Manafort DC*, 2018 WL 2223656, at *14-*17; *see also Manafort EDVA*, 2018 WL 3126380 at *9-*11 (rejecting a challenge to ¶ (b)(ii) by relying on the Acting Attorney General's application of the procedures of 28 C.F.R. § 600.4(b) to that provision). Paragraph (b)(ii) is not as "expansive" as Concord claims

(Doc. 36 at 46) but rather affords the Special Counsel limited flexibility, while preserving the Acting Attorney General's authority to clarify the Special Counsel's jurisdiction during regular consultation (*see* 28 C.F.R. §§ 600.6, 600.8(b)), or to add additional jurisdiction where "necessary in order to fully investigate and resolve the matters assigned," *id.* § 600.4(b).

But in any event, the government's investigation of Concord does not depend on any kind of "expansive" or open-ended authority.  Rather, as discussed, investigating organized social-media active measures that were emanating from Russia and funded by an individual and companies with close ties to the Russian government was part of the central investigative mission specifically assigned by the Acting Attorney General.

## CONCLUSION

For the reasons stated above, the government requests the Court, the government respectfully requests that the Court deny Concord's motion to dismiss (Doc. 36).

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel

Dated: July 16, 2018                    By:      */s/ Michael R. Dreeben*
                                                 Michael R. Dreeben
                                                 Jeannie S. Rhee
                                                 Adam C. Jed
                                                 U.S. Department of Justice
                                                 Special Counsel's Office
                                                 950 Pennsylvania Avenue NW
                                                 Washington, D.C. 20530
                                                 Telephone: (202) 616-0800

                                                 *Attorneys for the United States of America*