**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

INTERNET RESEARCH AGENCY LLC, *et al.*,

Defendants.

Criminal Action No. 18-00032 (DLF)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
MOTION TO DISMISS THE INDICTMENT BASED ON THE SPECIAL COUNSEL'S
UNLAWFUL APPOINTMENT AND LACK OF AUTHORITY TO INDICT CONCORD**

Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

*Counsel for Defendant Concord
Management and Consulting LLC*

[*] *Admitted Pro Hac Vice*

## <u>TABLE OF CONTENTS</u>

Page

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   ARGUMENT ............................................................................................... 2

    A.    The Special Counsel's appointment is unconstitutional because Congress did not authorize the Attorney General to appoint a private attorney as an inferior officer. ...................................................................... 2

        1.    The Special Counsel's appointment in this case is unprecedented. ............ 2

        2.    The various statutes cited by the Special Counsel do not vest the Attorney General with the authority to appoint a private attorney as an inferior officer. ...................................................................... 4

            a.    Section 515 does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer. .......................................................................... 5

            b.    Section 533(1) does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer. .......................................................................... 9

            c.    Section 301 does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer. ........................................................................ 11

        3.    Supposed "longstanding practice" cannot validate the appointment of a private attorney where there is no statutory authorization. ................ 14

    B.    The Special Counsel's appointment is unconstitutional because he is a principal officer appointed without advice and consent. ...................................... 18

        1.    The Special Counsel is not subject to meaningful supervision under any statute or the Special Counsel Regulations. ............................. 19

        2.    The Special Counsel can make final decisions without the prior approval of the Deputy Attorney General. ................................................ 23

        3.    The Special Counsel is removable only for cause, and the Attorney General's supposed ability to effectively remove him by terminating the investigation or rescinding the Regulations is inapposite. ............................................................................................. 24

4.      Neither *Morrison* nor *Sealed Case* controls the principal-officer issue................................................................................................... 26

C.      The Special Counsel's appointment is unconstitutional because as interpreted by the Special Counsel, his power and position violate the separation of powers. ........................................................................... 28

D.      The Special Counsel effectively concedes that the Indictment does not fall within the scope of the Appointment Order........................................................ 29

III.     CONCLUSION............................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Auer v. Robbins*,
    519 U.S. 452 (1997)...........................................................................................22

*Bank Markazi v. Peterson*,
    136 S. Ct. 1310 (2016)......................................................................................28

*Belt v. United States*,
    73 F.2d 888 (5th Cir. 1934) .............................................................................16

*Bergman v. United States*,
    565 F. Supp. 1353 (W.D. Mich. 1983) ...........................................................10

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979)..........................................................................................11

*Commonwealth of Pa., Dep't of Pub. Welfare v. U.S. Dep't of Health & Human*
    *Servs.*, 80 F.3d 796 (3d Cir. 1996)..................................................................13

*Dawson Chem. Co. v. Rohm & Haas Co.*,
    448 U.S. 176 (1980)..........................................................................................18

\*  *Edmond v. United States*,
    520 U.S. 651 (1997)................................................................................. *passim*

*Ewert v. Bluejacket*,
    259 U.S. 129 (1922)..........................................................................................15

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
    554 U.S. 33 (2008)..............................................................................................6

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010)..........................................................................25, 26, 27

*Freytag v. Comm'r*,
    501 U.S. 868 (1991)..........................................................................1, 23, 25

*Hale v. United States*,
    25 F.2d 430 (8th Cir. 1928) .............................................................................16

*Hamer v. Neighborhood Hous. Servs. of Chi.*,
    138 S. Ct. 13 (2017)..........................................................................................22

---

\*    Authorities upon which we chiefly rely are marked with asterisks.

*In re Persico*,
    522 F.2d 41 (2d Cir. 1975)...........................................................................................9, 16

*In re Sealed Case*,
    829 F.2d 50 (D.C. Cir. 1987)......................................................................... *passim*

*In re Sealed Case*,
    838 F.2d 476 (D.C. Cir. 1988), *rev'd by*
    *Morrison v. Olson*, 487 U.S. 654 (1988) ................................................................27

\* *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
    684 F.3d 1332 (D.C. Cir. 2012)...................................................................... *passim*

*Marcum v. Marcum*,
    62 F.2d 871 (D.C. Cir. 1932).......................................................................................15

*Masias v. Sec'y of HHS*,
    634 F.3d 1283 (Fed. Cir. 2011)....................................................................................23

*May v. United States*,
    236 F. 495 (8th Cir. 1916) ...........................................................................................16

*Morrison v. Olson*,
    487 U.S. 654 (1988)....................................................................................... *passim*

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
    138 S. Ct. 617 (2018)....................................................................................................22

*Rapanos v. United States*,
    547 U.S. 715 (2006)......................................................................................................16

*Sauber v. Gliedman*,
    283 F.2d 941 (7th Cir. 1960) .......................................................................................16

*St. Francis Med. Ctr. v. Azar*,
    894 F.3d 290 (D.C. Cir. 2018)......................................................................................22

*State of Russia v. Nat'l City Bank of N.Y.*,
    69 F.2d 44 (2d Cir. 1934) .............................................................................................16

*Taylor v. Kellogg Brown & Root Servs., Inc.*,
    658 F.3d 402 (4th Cir. 2011) .......................................................................................28

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018)....................................................................................................7

*UC Health v. NLRB*,
    803 F.3d 669 (D.C. Cir. 2015)........................................................................................4

*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*,
   132 F.3d 1252 (8th Cir. 1998) ...................................................................12

*United States v. Amazon Indus. Chem. Corp.*,
   55 F.2d 254 (D. Md. 1931) .......................................................................16

*United States v. Armstrong*,
   517 U.S. 456 (1996)..................................................................................28

*United States v. Atl. Comm'n Co.*,
   45 F. Supp. 187 (E.D.N.C. 1942)..............................................................16

*United States v. Cohen*,
   273 F. 620 (D. Mass. 1921) ......................................................................16

*United States v. Eaton*,
   169 U.S. 331 (1892)..................................................................................27

*United States v. Giangola*,
   No. 1:07-cr-00706, 2008 WL 3992138 (D.N.M. May 12, 2008) ............24

*United States v. Giordano*,
   416 U.S. 505 (1974)..................................................................................29

*United States v. Huston*,
   28 F.2d 451 (N.D. Ohio 1928)..................................................................16

\* *United States v. Janssen*,
   73 M.J. 221 (C.A.A.F. 2014) .......................................................... 12, 13, 14

*United States v. Libby*,
   429 F. Supp. 2d 27 (D.D.C. 2006) ...........................................................28

*United States v. Manafort*,
   No. 1:18-cr-00083, 2018 WL 3126380 (E.D. Va. June 26, 2018)...........28

*United States v. Martins*,
   288 F. 991 (D. Mass. 1923) ......................................................................16

*United States v. Milanovich*,
   303 F.2d 626 (4th Cir. 1962) ....................................................................15

*United States v. Morse*,
   292 F. 273 (S.D.N.Y. 1922)......................................................................16

*United States v. Nixon*,
   418 U.S. 683 (1974).......................................................................... *passim*

*United States v. Powell*,
　　81 F. Supp. 288 (E.D. Mo. 1948) .........................................................................16

*United States v. Rosenthal*,
　　121 F. 862 (C.C.S.D.N.Y. 1903) .........................................................................16

*United States v. Sheffield Farms Co.*,
　　43 F. Supp. 1 (S.D.N.Y. 1942)............................................................................16

*United States v. Stevens*,
　　559 U.S. 460 (2010).............................................................................................20

*Util. Air Regulatory Grp. v. EPA*,
　　134 S. Ct. 2427 (2014).........................................................................................23

*Varnadore v. Sec'y of Labor*,
　　141 F.3d 625 (6th Cir. 1998) ..............................................................................12

*Weyerhaeuser v. Hoyt*,
　　219 U.S. 380 (1911)...............................................................................................4

*Willy v. Admin. Review Bd.*,
　　423 F.3d 483 (5th Cir. 2005) ..............................................................................12

*Yaselli v. Goff*,
　　12 F.2d 396 (2d Cir. 1926)..................................................................................16

*Yates v. United States*,
　　135 S. Ct. 1074 (2015).........................................................................................10

*Zuber v. Allen*,
　　396 U.S. 168 (1969).............................................................................................16

## CONSTITUTION

\* U.S. Const. art. II, § 2, cl. 2 (Appointments Clause) ............................................ *passim*

## STATUTES

5 U.S.C. § 301 ....................................................................................................4, 11, 12

5 U.S.C. § 1211 ..............................................................................................................15

5 U.S.C. § 3106 ..............................................................................................................13

28 U.S.C. § 503 ..............................................................................................................12

28 U.S.C. § 504 ..............................................................................................................12

28 U.S.C. § 504a ....................................................................................................................13

28 U.S.C. § 505 ......................................................................................................................13

28 U.S.C. § 506 ......................................................................................................................13

28 U.S.C. § 509 ......................................................................................................................19

28 U.S.C. § 510 ..........................................................................................................19, 28, 29

28 U.S.C. § 515 ................................................................................................................ *passim*

28 U.S.C. § 515(a) ............................................................................................................6, 8, 9

28 U.S.C. § 515 ..........................................................................................................5, 7, 9, 17

28 U.S.C. § 533(1) ........................................................................................................... *passim*

28 U.S.C. § 541 ......................................................................................................................13

28 U.S.C. § 542 ......................................................................................................................13

28 U.S.C. § 543 ......................................................................................................................17

28 U.S.C. § 543(a) ......................................................................................................9, 13, 16

28 U.S.C. § 547(1) ..................................................................................................................10

42 U.S.C. § 913 ......................................................................................................................13

Act of Aug. 30, 1890,
    ch. 837, 26 Stat. 371 ........................................................................................................14

Act of Feb. 25, 1903,
    Pub. L. No. 57-115, 32 Stat. 854 ...................................................................................14

Act of Feb. 27, 1925,
    ch. 364, 43 Stat. 1014 .......................................................................................................9

Act of June 3, 1948,
    Pub. L. No. 80-597, 62 Stat. 305 ...................................................................................14

Act of Mar. 3, 1901,
    ch. 853, 31 Stat. 1133 .....................................................................................................14

Act to Establish the Department of Justice,
    ch. 150, 16 Stat. 162 (1870) ........................................................................................7, 8

Consolidated Appropriations Act, 2018,
Pub. L. No. 115-141, 132 Stat. 348 ....................................................................15

Independent Counsel Reauthorization Act of 1987,
Pub. L. No. 100-191, 101 Stat. 1293 ...................................................................3

Rev. Stat. § 365 ........................................................................................................8

Rev. Stat. § 366 ...............................................................................................7, 8, 16

## RULES AND REGULATIONS

38 Fed. Reg. 14,688 (June 4, 1973) .......................................................................17

38 Fed. Reg. 30,738 (Nov. 7, 1973).......................................................................17

59 Fed. Reg. 5321 (Feb. 4, 1994) ..........................................................................17

28 C.F.R. § 600.7(b) ...................................................................................21, 22, 23

28 C.F.R. § 600.8(c)...............................................................................................27

## OTHER AUTHORITIES

Cong. Research Serv., *Historical Uses of a Special Prosecutor:
The Administrations of Presidents Grant, Coolidge and Truman*,
Rep. No. GGR-6 (1973) ........................................................................................17

Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment
of "Special Counsels,"* Rep. No. RL31246 (2002) ...............................................17

*Delegation of the Attorney General's Authority to Investigate Credit Card Fraud*,
7 Op. O.L.C. 172 (1983) ...............................................................................10–11

Dep't of Justice, *About DOJ*, www.justice.gov/about (last visited July 30, 2018) ........................8

H.R. Rep. No. 2901, 59th Cong., 1st Sess. (1906) .................................................8

*Officers of the United States Within the Meaning of the Appointments Clause*,
31 Op. O.L.C. 73 (2007)........................................................................................5

*Reauthorization of the Independent Counsel Statute, Part I: Hearings Before the
Subcomm. on Commercial and Admin. Law, H. Comm. on the Judiciary*, 106
Cong. 1st Sess. 1 (1999) .......................................................................................18

S. Rep. No. 100-123 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150............................................3

*The Attorney General's Role as Chief Litigator for the United States*,
6 Op. O.L.C. 47 (1982)........................................................................................29

## I.      PRELIMINARY STATEMENT

No statute cited by the Special Counsel, nor any of his cited cases, supports the unilateral conferral of federal prosecutorial authority on a private attorney by a Deputy Attorney General acting under his own mandate.  In fact, the Special Counsel's appointment is unprecedented and violates recognized and settled constitutional constraints embedded in the Appointments Clause. Embracing the Special Counsel's view that he was properly appointed would turn the separation-of-powers bulwark set forth in the Appointments Clause into a tool for arrogating unchecked power in the Executive Branch—the exact "danger" the Appointments Clause is designed to prevent.  *Freytag v. Comm'r*, 501 U.S. 868, 878–79 (1991).  Concord's motion to dismiss thus should be granted for the reasons it advances.

Contrary to the Special Counsel's argument, the constitutionality of his appointment is not settled by *United States v. Nixon*, 418 U.S. 683 (1974), and *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), because neither case was called on to address the delegation of prosecutorial authority on a fact pattern like this one under the statutes the Special Counsel cites.  Moreover, when the supposed statutory authorization for this particular delegation is unpacked and examined, the unconstitutionality of the Special Counsel's appointment is exposed for multiple reasons that cannot be displaced by his self-serving assertions about congressional oversight under Regulations that themselves lack the requisite statutory authorization and can be dispensed with by the Deputy Attorney General whenever he elects to do so.

Here, "this wolf comes as a wolf"[1]—a private attorney who clothes himself with the sovereign prosecutorial power of the United States, but who cannot point to a single congressional enactment which actually authorizes an appointment that confers the extraordinary

---

[1]      *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

and largely unfettered authority he claims to possess.  The Constitution does not tolerate this sort of unchecked aggrandizement by a single branch of Government.  To protect its fundamental separation-of-powers structure, this Court should grant Concord's motion to dismiss and so hold.

## II.   ARGUMENT

### A.   The Special Counsel's appointment is unconstitutional because Congress did not authorize the Attorney General to appoint a private attorney as an inferior officer.

The parties generally agree on the first principles that determine the validity of a Special Counsel's appointment as an inferior officer under the Appointments Clause.  That is, the prosecutorial function is lodged solely with the Attorney General and it cannot be delegated outside the Department of Justice ("DOJ") without statutory authorization.  The Special Counsel purports to find such statutory authorization in inapposite case law, a hodgepodge of statutes, historical practice, and congressional acquiescence.  On examination, however, the sum of the parts falls well short of what the Constitution requires.

#### 1.   The Special Counsel's appointment in this case is unprecedented.

Notably, the Special Counsel does not begin his argument with a textual analysis of the statutes he claims provide the authority for his appointment.  Instead, he cites to two judicial decisions—*Nixon*, 418 U.S. 683, and *Sealed Case*, 829 F.2d 50—that he contends settle the statutory-authorization issue in his favor.  *Nixon*, as Concord demonstrated in its opening memorandum ("Mem."), does not address the delegation issue based on a construction of the statutes it cites. (Mem. 23–24, ECF No. 36).  And the Court, as confirmed by the single descriptive sentence it devoted to the statutes, *see* 418 U.S. at 694, did not decide the delegation of appointment authority issue because the parties did not dispute it.  Thus, *Nixon* contains no historical analysis of the prosecutorial function or where it came from, what the language in the cited statutes specifically provides, or what it means to put prosecutorial authority in the hands of

a private attorney on a fact pattern like this one.  Rather, as the D.C. Circuit later noted in *Sealed*

*Case*, the *Nixon* Court simply "presupposed the validity" of the delegation of authority without

any affirmative analysis at all.  829 F.2d at 55 n.30.[2]

     For its part, *Sealed Case* did address a delegation of appointment authority issue, but

what it actually had to say on the validity of the delegation was fact-specific and provides no

help to the Special Counsel either.  In fact, the opposite is true—a careful reading of *Sealed Case*

is supportive of the argument Concord advances here.  When the Attorney General appointed

Lawrence Walsh to investigate Iran-Contra, Mr. Walsh already held a prosecutorial appointment

pursuant to statute—the Ethics in Government Act.  *See* 829 F.2d at 51–52.  And at the time,

DOJ considered persons holding such positions to be officers *within* DOJ.  *See* S. Rep. No. 100-

123, at 13 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2150, 2162 (explaining that the month of Mr.

Walsh's parallel appointment, it became known that DOJ believed that "independent counsels

[under the Ethics in Government Act] were to be considered Justice Department employees").[3]

The *Sealed Case* panel, moreover, placed great stock both in Mr. Walsh's original statutory

appointment and his resulting position ***within*** DOJ when considering the second, follow-on

delegation of authority to him by the Attorney General.  After quoting certain of the statutes at

issue here, the panel specifically found that "[t]ogether, these provisions . . . authorize [the

Attorney General] to delegate such functions and powers to others ***within the Department of***

---

[2]    In the aftermath of *Nixon*, Congress weighed in and supplied, through the 1978 Ethics in
Government Act, express statutory authorization for the appointment of independent counsel
where conflicts of interest existed.  This carefully crafted statute supplied the required
authorization for the delegation of prosecutorial authority that is missing today because the
statute was not renewed in 1999.  Relying on *Nixon* to supply the authority for the delegation in
this case ignores these intervening developments as well.

[3]    Four months after *Sealed Case*, Congress amended the Ethics in Government Act to clarify
the independent counsel's independence from DOJ.  *See* Independent Counsel Reauthorization
Act of 1987, Pub. L. No. 100-191, § 2, 101 Stat. 1293, 1302.

*Justice*." 829 F.2d at 55 n.29 (emphases added). Even more telling, the *Sealed Case* court expressly confined its ruling to the unique circumstances before it, finding only that the various statutes "accommodate[ed] the delegation *at issue here*" but emphasizing that the statutes did "*not explicitly* authorize the Attorney General to create an Office of Independent Counsel *virtually free of ongoing supervision*[.]" 829 F.2d at 55 (emphases added).[4] Such explicit statutory authorization of the Special Counsel's claimed supervision-free status is exactly what he needs here, but as *Sealed Case* indicates, that authority does not exist in the statutes he cites.

For these reasons, *Nixon* and *Sealed Case* are not dispositive—on their specific facts or their narrow holdings. Neither opinion conclusively addressed the statutes cited by the Special Counsel and found that they plainly would support "by Law" the delegation of prosecutorial authority to a private attorney in the circumstances presented by this case. The analysis therefore has to turn to the statutes themselves and the fact pattern here, and when it does, the Special Counsel's inferior-officer argument collapses.

> **2.      The various statutes cited by the Special Counsel do not vest the Attorney General with the authority to appoint a private attorney as an inferior officer.**

In staking out his claim to statutory authorization, the Special Counsel focuses principally on 28 U.S.C. § 515. He then relies more perfunctorily on 28 U.S.C. § 533(1) and the Housekeeping Statute, 5 U.S.C. § 301. In the process, the Special Counsel modifies or over-reads the language in these statutes in an effort to make his appointment seem a matter of routine, but his altering and stretching of the statutory text speaks volumes. And he points to no

---

[4]      In expressly qualifying its finding on this issue, the *Sealed Case* panel took pains to ensure that its opinion would not in the future be improperly "'separated from its context and disassociated from the issues which the case involved' and then given controlling weight." *UC Health v. NLRB*, 803 F.3d 669, 684 (D.C. Cir. 2015) (Edwards, J., concurring) (quoting *Weyerhaeuser v. Hoyt*, 219 U.S. 380, 394 (1911)).

legislative history indicating that Congress ever intended that these statutes could be used by an Attorney General to delegate his vast prosecutorial powers to a private attorney accountable to no elected official or the Judiciary.

>   **a.      Section 515 does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer.**

The Special Counsel starts with § 515(b).  That subsection states in its entirety:

> Each attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law.  Foreign counsel employed in special cases are not required to take the oath.  The Attorney General shall fix the annual salary of a special assistant or special attorney.

The Special Counsel claims that the power to appoint a private attorney as an inferior officer is found in this subsection based on the following depiction: "Section 515(b) empowers the Attorney General to 'commission[]' attorneys who are 'specially retained under authority of the Department of Justice' as 'special assistant[s] to the Attorney General' or 'special attorney[s].'"  (Government's Opposition ("Opp.") 13, ECF No. 47) (brackets supplied by Special Counsel).  This would seem compelling if it was true, but it is dead wrong.  As demonstrated by the block quote above, that is not what § 515(b) says.  Section 515(b) contains no appointment empowerment at all—it simply says that certain already retained special attorneys shall be commissioned and take the oath of office.

The Special Counsel's manipulation of the statutory language ends the analysis before it starts.  But even so, empowering the "*Attorney General* to 'commission[]' attorneys," (*id.*) (brackets supplied by Special Counsel) (emphasis added), does not advance the analysis either. Neither the power to commission, nor the requirement that one commissioned take an oath, signifies that Congress has vested the authority to appoint an inferior officer. *See Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 122 (2007)

("[A]lthough the holder of an office usually receives a commission, that characteristic too, like an oath or pay, is incidental rather than essential. . . . [I]t does not follow that a person not commissioned does not hold an office, or, conversely, that only officers have commissions.").

The Special Counsel next turns to § 515(a).  That subsection states in its entirety:

> The Attorney General or any other officer of the Department of Justice, *or any attorney specially appointed by the Attorney General **under law**,* may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.  (Emphases added.)

As an initial matter, much of Concord's affirmative argument regarding the limiting language expressed in § 515(a) goes unrebutted.  The Special Counsel does not assert that he was an "officer of the Department of Justice" at the time of his appointment.  (Mem. 14).  Nor does he make any effort to refute Concord's showing that § 515(a)'s "under law" has the same meaning as "under any provision of law" and that application of settled rules of construction counsel that "under any provision of law" means a statute other than § 515(a).  (*Id.* 14–19).

Instead, the Special Counsel conveniently reduces the inquiry to whether "specially appointed by the Attorney General" is written in the past tense.  (Opp. 14).  With that narrowing, he then says that "appointed" is "not always" a past-tense verb—it could be a past participle.  (*Id.*).  But the Special Counsel does not argue why that would be the case here or why it would matter—either way, "appointed" is not an active verb that conveys appointment power; and even in its past-participle usage, "appointed" describes the present state of the official based on already completed action.  *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 39 (2008) ("past participle" is a "'verb form indicating past or completed action or time'") (citation omitted).  More importantly, the Special Counsel's argument ignores the remainder of the clause in question.  Section 515(a) still provides that "any attorney specially appointed by the

Attorney General under [any provision of] law" may engage in certain activities, and the natural reading of that clear language is that the individual in question must already have been appointed under a *different* statute. In sum, as the D.C. Circuit previously noted in *Sealed Case*, § 515 simply cannot be read as an explicit blanket authorization for the appointment of private counsel with the kind of unfettered discretion the Special Counsel claims now.

Unable to fairly rely on the statutory text, the Special Counsel turns to what he describes as § 515's "history" and asserts that this Court should rely on that to supply what the plain text does not. (Opp. 16–18). That is not something this Court can do. "Given the clarity of the [statutory] text, [the Court] need not consider such extra-textual evidence." *Trump v. Hawaii*, 138 S. Ct. 2392, 2412 (2018) (citation omitted). Beyond that, the Special Counsel has his history wrong. His history argument is directed specifically to § 515(b). He starts with what he says is the 1870 Act, ch. 150, 16 Stat. 162. (Opp. 16). But instead of quoting the Act, he elects instead to paraphrase its purposes and jump ahead eight years to the initial codification of certain portions of that Act as Rev. Stat. § 366. (*Id.*). The operative provision of the 1870 Act states:

> SEC. 17. *And be it further enacted*, That it shall not be lawful for the Secretary of either of the executive Departments **to employ** attorneys or counsel at the expense of the United States; but such Departments, when in need of counsel or advice, shall call upon the Department of Justice, **the officers of which** shall attend to the same; and no counsel or attorney fees shall hereafter be allowed to any person or persons, besides the respective district attorneys and assistant district attorneys, for services in such capacity to the United States, or any branch or department of the government thereof, unless hereafter authorized by law, and then only on the certificate of the Attorney-General that such services were actually rendered, and that the same could not be performed by the Attorney-General, or solicitor-general, **or the officers of the [D]epartment of [J]ustice**, or by the district attorneys. *And every attorney and counsel[l]or who shall be **specially retained**, under the authority of the Department of Justice, to assist in the trial of any case in which the government is interested, shall receive a commission from the head of said Department, as a special assistant to the Attorney-General, or to some one of the district attorneys, as the nature of the appointment may require, and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon **such officers** by law.*

1870 Act § 17, 16 Stat. at 164–65 (emphases added).

The 1870 Act thus juxtaposed the responsibilities of DOJ "officers," on the one hand, and the employment of counsel who are "specially retained," on the other.  The two classes are distinct: Congress intended to permit the Attorney General to retain special counsel in limited circumstances, as employees, not as "Officers of the United States" with the expansive powers the Special Counsel claims.  That important distinction is lost if one begins a textual analysis (as the Special Counsel does) with the 1878 version of Rev. Stat. § 366.  And, in fact, when one looks at Rev. Stat. *§ 365*, the intended distinction reappears.  *See* Rev. Stat. § 365 (codifying the "no compensation" rule established by the initial portions of 1870 Act § 17 and, as an exception thereto, requiring Attorney General certification that neither he, the Solicitor General, nor the "officers of the Department of Justice" could perform the legal services necessitating employment of special counsel).[5]  The officer/employee distinction is further confirmed by the 1906 Act that gave rise to § 515(a).  That Act likewise maintained a line between "any officer of" DOJ and "any attorney specially appointed" for a limited purpose, and the report of the House Judiciary Committee that accompanied the 1906 Act repeatedly reaffirmed that distinction.  *See* H.R. Rep. No. 2901, 59th Cong., 1st Sess., 1–2 (1906) (noting the distinction between "any officer in [the Attorney General's] Department" and "any attorney specially employed by him," and repeatedly describing the Attorney General's desire for legislation

---

[5]    The Special Counsel also ignores the fact that from the date of the creation of the Office of the Attorney General in 1789 until 1870, "the increase in the amount of litigation involving the United States had required the very expansive retention of a large number of private attorneys to handle the workload."  Dep't of Justice, *About DOJ*, www.justice.gov/about (last visited July 30, 2018).  That prompted Congress to create DOJ in 1870, which now employs over 100,000 people.  The Special Counsel can point to no evidence that Congress intended to create his position in statutes originating almost 150 years ago under circumstances far different than exist today.

confirming his ability to "employ special counsel").  The distinction again was preserved in 1925 when Congress enacted legislation that would later serve as the basis for the "[f]oreign counsel" language found in the current § 515(b).  *See* Act of Feb. 27, 1925, ch. 364, tit. II, 43 Stat. 1014, 1029–30 (providing funds for "assistants to the Attorney General and to United States district attorneys *employed by* the Attorney General to aid in special cases[] . . . and for payment of foreign counsel *employed by* the Attorney General in special cases") (emphasis added).

As for the primary decision the Special Counsel cites for his misplaced historical analysis—*In re Persico*, 522 F.2d 41 (2d Cir. 1975) (Opp. 16, 17)—reality again undermines his description.  *Persico* addressed an appointment pursuant to 28 U.S.C. § 543(a), a statute that specifically authorized "by Law" the appointed role, thereby aligning with the language in § 515(a).  *Id.* at 56–57 (finding DOJ attorney in an organized crime "Strike Force" was appointed to "assist" a United States Attorney under § 543(a) because the United States Attorney reviewed and signed all indictments, and the Strike Force's work was coordinated with that of the United States Attorney).  The dispute in *Persico* also did not involve, as here, the appointment itself, but rather the authority of the appointed attorney to conduct grand jury proceedings.  *Id.* at 66.  The Special Counsel, in marked contrast, has no statute authorizing his appointment and he is not assisting a United States Attorney.  Accordingly, if the history of § 515(b) is to be the Court's guide, that history likewise does not support the appointment made in this case.

> **b.** **Section 533(1) does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer.**

The Special Counsel dedicates just a single paragraph to § 533(1) while chiding Concord for not mentioning the provision in its motion.  (Opp. 14–15).  But the section went unaddressed because it is nowhere to be found in the Regulations or the Appointment Order.  In any event, now that the Special Counsel has called it up, § 533(1) states that the "Attorney General may

appoint officials" "(1) to detect and prosecute crimes against the United States[.]"  In cursory form, the Special Counsel treats this language as boundless, providing the Attorney General with unlimited authority to appoint a private attorney to an office with the power and discretion he lays claim to.  The Special Counsel's construction is faulty and should not be followed.

To begin with, the Special Counsel does not develop a plain-language argument with respect to § 533(1) that supports his broad construction.  He cannot because the section makes no reference to attorneys and offers no indication that the word "official" refers to the delegation of prosecutorial authority to a private attorney outside DOJ.  And, it is apparent that § 533(1) was not intended as a delegation of authority to the Attorney General to appoint private attorneys to prosecute cases for DOJ.  Rather, it is just one of several provisions located in chapter 33 of title 28 of the United States Code, entitled: "FEDERAL BUREAU OF INVESTIGATION,"[6] and is intended to confer investigative and prosecutorial duties on the FBI "to take whatever steps are necessary to bring criminal charges against the suspect criminals."  *Bergman v. United States*, 565 F. Supp. 1353, 1395 (W.D. Mich. 1983) (citation omitted).  This prosecutorial "duty includes timely informing prosecutorial authorities in the Department of Justice that a crime has allegedly been committed."  *Id.*  Therefore, § 533(1)'s use of the word "prosecute" also cannot be expanded to mean that the Attorney General has the unfettered authority to appoint private attorneys as inferior officers and displace the normal authority of United States Attorneys to bring criminal proceedings in their respective districts.  *See* 28 U.S.C. § 547(1).

Finally, although § 533(1) has been on the books in one form or another since 1921, *see Delegation of the Attorney General's Authority to Investigate Credit Card Fraud*, 7 Op. O.L.C.

---

[6]    Statutory headings can "supply cues that Congress" did or did not intend a particular meaning.  *Yates v. United States*, 135 S. Ct. 1074, 1083 (2015).

172, 173 (1983), the Special Counsel cites no case, and no case has suggested, that it gives the Attorney General the authority to appoint a private individual to conduct an investigation or prosecution on behalf of the United States, let alone criminal proceedings in multiple districts against multiple defendants pursuant to an investigation with unlimited geographic scope. Indeed, if the Special Counsel was right, it would be impossible to explain much of the rest of the existing statutory scheme and the legislative history surrounding it. The statutory provisions relating to the delegation of prosecutorial authority are carefully crafted to deal with particular categories of appointments (*e.g.*, *infra* n.7), all with specific congressional approval. None of this would be necessary if § 533(1) had the sweep the Special Counsel now claims. Nor, as noted, would there have been any debate in Congress or the case law over private appointments because the section would have provided the ready answer. The Special Counsel's overly expansive construction of § 533(1) therefore should be seen for what it is: a *post hoc* effort to provide him with the specific authorization he now wants but does not have.

> c.   **Section 301 does not vest the Attorney General with the authority to appoint a private attorney as an inferior officer.**

As for the Special Counsel's reliance on 5 U.S.C. § 301 (Opp. 15)—like § 533(1), also not mentioned in the Appointment Order—there is no support for his appointment as an inferior officer there either. On its face, the so-called "Housekeeping Statute" does not provide any appointment authority at all. It states that "'[t]he head of an Executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business,'" but the Supreme Court clearly has held that § 301 does not even provide a department head with authority to promulgate substantive regulations—he or she may only issue rules of agency organization, procedure, or practice. *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).

This is not the first time § 301 has been invoked as a source of similar substantive authority. *See U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1255 (8th Cir. 1998) (rejecting DOJ's argument that § 301 authorized a regulation purporting to permit *ex parte* contacts with employees of an organization represented by counsel, finding it was "simply one more attempt to twist this simple administrative statute into an authorization for the promulgation of substantive rules"). The two cases the Special Counsel cites do not support a contrary result. Both involved the inapposite question of whether § 301 authorized the Secretary of Labor to establish an internal review board to render decisions on employee retaliation claims, whose decisions were then subject to judicial review. *See Willy v. Admin. Review Bd.*, 423 F.3d 483, 492 (5th Cir. 2005); *Varnadore v. Sec'y of Labor*, 141 F.3d 625, 631 (6th Cir. 1998). By comparison, the only analogous decision involving § 301 *rejected* the logic of the decisions cited by the Special Counsel. *See United States v. Janssen*, 73 M.J. 221, 224 (C.A.A.F. 2014). *Janssen* addressed whether Congress had vested the Secretary of Defense with authority to appoint a civilian to serve as an inferior officer—there, a military appellate judge. *Id.* The appellate court unanimously rejected the Government's reliance on § 301, finding that it "makes no sense in the face of the statutory structure that Congress has enacted for the Department of Defense." *Id.* at 225. That structure included various provisions expressly providing that certain officers were to be appointed by the President and confirmed by the Senate. It also encompassed specific provisions authorizing the Secretary of Defense to appoint certain officers.

A similar statutory structure exists here.[7] Thus, as in *Janssen*, "[t]his raises the obvious question of why Congress would go to the trouble of enshrining the positions in statute and

---

[7]    *Compare* 28 U.S.C. §§ 503 (providing that the Attorney General shall be appointed by the President with the advice and consent of the Senate), 504 (same as to Deputy Attorney General),
(continued)

providing for their appointment if, as the Government argues, the Secretary already has the authority under [the Housekeeping Statute] to do so." *Id.* And as in *Janssen*, the simple answer to that question is that Congress would not have wasted its time in doing so.

Accordingly, none of the statutes the Special Counsel cites can fairly be read to provide the appointment authority he claims no matter what standard of construction the Court applies. The Special Counsel contends that since the Excepting Clause of the Appointments Clause is driven by "administrative convenience," there is no need for a specific statute conferring appointment authority. (Opp. 25).[8] But this attempt to subordinate the Appointments Clause and the "default manner" of appointment it prescribes to second-class constitutional status is wrong on its face. It is also fundamentally at odds with the statutory scheme, which so deliberately centralizes the prosecutorial function in the Attorney General and DOJ and concomitantly requires Congress to speak clearly when it seeks to delegate the Attorney General's exclusive duties and authority (Mem. 11–12)—including even to a non-DOJ attorney the Attorney General merely wishes to "employ[.]" 5 U.S.C. § 3106.

The Special Counsel further claims that *Edmond v. United States*, 520 U.S. 651 (1997) "made clear that Congress need not 'clearly and specifically' grant specific authority to appoint

504a (same as to Associate Attorney General), 505 (same as to Solicitor General), 506 (same as to Assistant Attorneys General), *and* 541 (same as to United States Attorneys), *with id.* §§ 542 (providing for Attorney General appointment of assistant United States attorneys), *and* 543(a) (same as to attorneys "to assist United States Attorneys").

[8]    The Special Counsel, quoting from *Commonwealth of Pa., Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 80 F.3d 796 (3d Cir. 1996) (Opp. 25), similarly argues that requiring a clear statement would "defeat the purpose of the relaxed requirements for 'inferior officer' appointments." But that case did not involve anything like the issue raised here— whether a statute provided authority to the Attorney General to appoint a private attorney as a "special counsel" with the prosecutorial powers of a super-United States Attorney. And the statute before the Third Circuit in that case—42 U.S.C. § 913—gave the HHS Secretary "carte blanche" appointment power, broadly providing that "[t]he Secretary is authorized to appoint and fix the compensation of such officers and employees[.]" 80 F.3d at 805.

each officer." (Opp. 27). But that is not at all what *Edmond* says. The Court there held that a statute providing that the "Secretary of Transportation may appoint . . . officers . . . of the Department of Transportation [(DOT)]" adequately conveyed appointment authority over judges of the Coast Guard Court of Criminal Appeals because they were indisputably DOT "officers." *Id.* at 656. But this is precisely what is lacking here—a statute specifically providing that the Attorney General "may appoint" a private attorney to a position—a "Special Counsel" with independent jurisdiction—that is covered by one of the categories mentioned in the appointment statute. *See also Janssen*, 73 M.J. at 224 ("[W]e interpret *Edmond* to require statutory language specifically granting the head of a department the power to appoint inferior officers.").

### 3.     Supposed "longstanding practice" cannot validate the appointment of a private attorney where there is no statutory authorization.

With no authorizing statute, the Special Counsel is left to assert that "longstanding practice" validates his appointment and cures any constitutional concerns. (Opp. 19–24). But past practice cannot create statutory authority that does not exist. And, in any case, there is no past practice that authorizes the unconstitutional delegation in this case.

For example, the myriad historical appropriations statutes that the Special Counsel cites (Opp. 20, 23) merely reinforce the conclusion that the statutory predecessors to what is now § 515 were intended to permit the Attorney General to retain special counsel in limited circumstance as mere employees, not as "Officers of the United States."[9]   As for the only

---

[9]     *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409–10 (providing funds "[t]o enable the Attorney-General to employ special counsel to assist" with land dispute in Supreme Court); Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181 (providing funds "[t]o enable the Attorney-General to employ a special attorney for the Mission Indians of [S]outhern California"); Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 904 (providing funds "to be expended under the direction of the Attorney-General in the employment of special counsel and agents of the Department of Justice to conduct proceedings, suits, and prosecutions under" certain antitrust statutes); Act of June 3, 1948, Pub. L. No. 80-597, 62 Stat. 305, 316–17 (appropriating funds for (continued)

contemporary appropriations statute cited by the Special Counsel, he claims that it demonstrates that "Congress continues to appropriate money today for the Office of Special Counsel." (Opp. 23 (citing Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348 ("2018 Act")). True, but the "OFFICE OF SPECIAL COUNSEL" to which the 2018 Act refers transparently is *not* the Special Counsel's Office before this Court—the suggestion of an equivalency between the two is baseless. *See* 132 Stat. at 577 (providing funds to the "OFFICE OF SPECIAL COUNSEL" whose primary mission is to protect federal employees from prohibited personnel practices); 5 U.S.C. § 1211 (establishing office and providing that head thereof, also known as the "Special Counsel," shall be appointed by the President with the advice and consent of the Senate).

The cases the Special Counsel relegates to a lengthy footnote without any parenthetical explanations (Opp. 20 n.5) also do not support the conclusion that in enacting the antecedents to § 515, Congress intended to permit the Attorney General to appoint private attorneys as inferior officers. In fact, on analysis, the manner in which these cases are presented is misleading. Among other things, they include a 1932 decision issued by what is now the D.C. Circuit in which the court addressed a divorce dispute where one of the parties happened to be a "special assistant to the Attorney General," and where—not surprisingly—no question was raised under the Appointments Clause. *See Marcum v. Marcum*, 62 F.2d 871, 872 (D.C. Cir. 1932). That latter (and only relevant) feature is common to every decision cited by the Special Counsel.[10]

---

"employment of special attorneys" in customs-related matters, as well as "[f]or compensation of special attorneys and assistants to the Attorney General and to the United States district attorneys not otherwise provided for, employed by the Attorney General to aid in special matters and cases, and for payment of foreign counsel employed by the Attorney General in special cases").

[10]    *See Ewert v. Bluejacket*, 259 U.S. 129, 133, 135–36 (1922) (addressing dispute over acquisition of "Indian land" made in violation of a federal statute by an attorney who was "specially employed" as a "special assistant to the Attorney General"); *United States v. Milanovich*, 303 F.2d 626, 629 (4th Cir. 1962) (affirming conviction of individual prosecuted for
(continued)

And, even if these cases pointed to the conclusion the Special Counsel claims—and plainly they

do not—such a supposed "verdict of quiescent years cannot be invoked to baptize a statutory

gloss that is otherwise impermissible." *Zuber v. Allen*, 396 U.S. 168, 185 n.21 (1969); *see also*

*Rapanos v. United States*, 547 U.S. 715, 752 (2006) (plurality op.) (rejecting "adverse

---

larceny from a naval base, which conviction was obtained by a "special assistant to the Attorney General"); *Sauber v. Gliedman*, 283 F.2d 941, 942 (7th Cir. 1960) (affirming judgment in favor of a "Special Assistant to the Attorney General" in a civil action brought by a criminal defendant who alleged that the special assistant made defamatory comments to the press); *Belt v. United States*, 73 F.2d 888, 888–89 (5th Cir. 1934) (rejecting criminal defendants' argument that the failure of a "special assistant to the Attorney General" to file a copy of his oath and appointment letter with the district court clerk should result in reversal of their convictions); *State of Russia v. Nat'l City Bank of N.Y.*, 69 F.2d 44, 48 (2d Cir. 1934) (granting United States' motion to prosecute an appeal related to civil claims assigned to it and observing that counsel for the United States had served as counsel for the assignor in the district court and had since been designated "Special Assistants to the Attorney General"); *Hale v. United States*, 25 F.2d 430, 435 (8th Cir. 1928) (finding 1906 Act expressly permitted a "special assistant to the Attorney General" to appear before a grand jury investigating a potential murder in "Indian country"); *Yaselli v. Goff*, 12 F.2d 396, 398 (2d Cir. 1926) (affirming judgment in favor of a "Special Assistant to the Attorney General" in a civil action brought by a former criminal defendant who alleged that the special assistant had conspired to obtain his employment in order to pursue the defendant criminally); *May v. United States*, 236 F. 495, 498–99 (8th Cir. 1916) (finding 1906 Act expressly permitted a "special assistant to the Attorney General" to appear before a grand jury investigating the illegal sale and manufacture of oleomargarine); *United States v. Powell*, 81 F. Supp. 288, 291 (E.D. Mo. 1948) (finding 1906 Act, then codified at 5 U.S.C. § 310, expressly permitted a "Special Assistant to the Attorney General" to appear before a grand jury investigating alleged election offenses); *United States v. Atl. Comm'n Co.*, 45 F. Supp. 187, 190–91 (E.D.N.C. 1942) (doing same in case involving alleged antitrust violations); *United States v. Sheffield Farms Co.*, 43 F. Supp. 1, 2 (S.D.N.Y. 1942) (same); *United States v. Amazon Indus. Chem. Corp.*, 55 F.2d 254, 256 (D. Md. 1931) (doing same in case involving alleged prohibition violations); *United States v. Huston*, 28 F.2d 451, 453 (N.D. Ohio 1928) (describing a "Special Assistant to the Attorney General" as a "functionary" distinguishable from an "officer of the Department of Justice"); *United States v. Morse*, 292 F. 273, 277 (S.D.N.Y. 1922) (finding 1906 Act expressly permitted a "Special Assistant to the Attorney General" to appear before a grand jury investigating mail fraud); *United States v. Cohen*, 273 F. 620, 620–21 (D. Mass. 1921) (dismissing informations charging crimes because the letter appointing a "special assistant to the Attorney General" did not expressly authorize its recipient to file informations); *United States v. Rosenthal*, 121 F. 862, 868 (C.C.S.D.N.Y. 1903) (finding Rev. Stat. § 366 did not authorize a specially retained attorney to appear before a grand jury). One of the decisions cited by the Special Counsel's footnote is inapposite for the same reason *Persico* in inapposite. *See United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923) (addressing appearance before a grand jury of an attorney appointed to assist a United States Attorney under what is now 28 U.S.C. § 543(a)).

possession"-like argument for interpretation that would "insulate[] disregard of statutory text from judicial review[,]" which "deservedly has no precedent in our jurisprudence").

The Special Counsel also lays out what at first glance is an impressive looking bullet list of past instances where he says the Attorney General used special attorneys over a span of nearly 140 years.  (Opp. 19–20).  However, the Special Counsel provides no context whatsoever for the particular statutory basis used in any instance.  And for good reason.  Indeed, for example, the appointment in *Nixon* actually *undermines* the Special Counsel's reliance on §§ 515 and 533(1) given that neither the Attorney General nor the Acting Attorney General cited those statutes as sources of appointment authority.[11]  Moreover, none of the cited examples involved anything like a private attorney given unconstrained discretion to engage in a roving commission without geographic bounds or meaningful oversight, free to investigate anyone—including, without his express consent, the President himself.[12]  The examples cited thus have no import here.

The Special Counsel lastly relies on a snippet of testimony given by then-Deputy Attorney General Holder to the House Judiciary Committee during its consideration of whether to reauthorize the Ethics in Government Act.  (Opp. 22).  That is inapposite too.  First, courts must be "'extremely wary of testimony before committee hearings . . . save for precise analyses

---

[11]  *See, e.g.*, DOJ Order No. 51773, 38 Fed. Reg. 14,688 (June 4, 1973); DOJ Order No. 551-73, 38 Fed. Reg. 30,738 (Nov. 7, 1973); *see also, e.g.*, Final Rule, 59 Fed. Reg. 5321 (Feb. 4, 1994) (purporting to create an independent counsel position and citing as authority § 543—which the Special Counsel rightly does not rely on here—not §§ 515 or 533(1)).

[12]  *See, e.g.*, Cong. Research Serv., *Independent Counsel Law Expiration and the Appointment of "Special Counsels,"* Rep. No. RL31246, at 4 (2002) ("These special counsels [referring to three individuals employed by Attorney General Barr] were intended to conduct only what would be considered 'preliminary reviews' of the matters, and reported to the Attorney General without conducting any prosecutions on their own."); Cong. Research Serv., *Historical Uses of a Special Prosecutor: The Administrations of Presidents Grant, Coolidge and Truman*, Rep. No. GGR-6, at 33 (1973) (explaining attorney designated by Attorney General McGrath was unceremoniously dismissed "as an employee of" DOJ the day grand jury proceedings were scheduled to start).

of statutory phrases by the sponsors of the proposed laws.'"   *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 224 (1980) (citation omitted).   Second, the Special Counsel ignores the context surrounding the quoted testimony—in particular, Mr. Holder's earlier response to concerns raised by two congressmen that "[w]hen the act lapsed previously, we reverted to the Attorney General using the ***inherent authority*** that she had, and that is how Mr. Fisk[e] was appointed" in 1994 to investigate Whitewater.   *Reauthorization of the Independent Counsel Statute, Part I: Hearings Before the Subcomm. on Commercial and Admin. Law, H. Comm. on the Judiciary*, 106 Cong. 1st Sess. 1, 107 (1999) (emphases added).   But the Special Counsel here expressly disavows that the Attorney General has any such "inherent authority," unmoored from congressional authorization.   (Opp. 4 ("The Special Counsel regulations . . . are not the source of authority for appointing a Special Counsel."); *id.* 11 ("[T]he Attorney General cannot make an appointment (or delegate power) unless he has power himself" conferred by statute)).

In the end, the Special Counsel's attempt to create statutory authorization for his appointment runs headlong into one hard truth: he does not have a statute that authorizes the delegation of prosecutorial power he purportedly was given to bring this case, and there is no basis to justify his appointment on the grounds he is a properly appointed inferior officer.   The Indictment he signed therefore should be dismissed on this ground alone.

### B.   The Special Counsel's appointment is unconstitutional because he is a principal officer appointed without advice and consent.

As with the inferior-officer analysis, the parties start with broad agreement on the precedents that govern the analysis of whether the Special Counsel is a principal officer. Looking to a selected few of these cases, the Special Counsel contends he is not a principal officer, but at every turn his reasoning does not withstand scrutiny.   He ignores the authority he claims for himself, as well as his assertions that the Regulations are enforceable (or not) at the

Deputy Attorney General's election.  He also ignores the Regulations' text and the circumstances purporting to govern the Special Counsel's appointment.  When the governing precedents and record are fairly considered, the Special Counsel's principal-officer status is apparent.

> **1.     The Special Counsel is not subject to meaningful supervision under any statute or the Special Counsel Regulations.**

The Special Counsel acknowledges that the extent to which he is subject to meaningful supervision by superior officers in DOJ is significant to the principal-officer calculus under *Edmond* and *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332 (D.C. Cir. 2012).  (Opp. 29–30).  He claims he is subject to such supervision under both the Special Counsel Regulations, which he says have a "binding character," and 28 U.S.C. §§ 509 and 510.  The record does not support his argument.

The statutory provisions on which the Special Counsel relies—§§ 509 and 510—do not describe whatever "supervision" the Attorney General may exercise over the Special Counsel. Neither provision mentions the supervision or oversight of appointed officials, and § 510 provides only for delegation of authority.  With respect to the Regulations, the Special Counsel asserts that they have a "binding character on the actions of the Special Counsel and Deputy Attorney General" and that Concord's claim to the contrary "confuses two separate issues: whether the regulations are binding . . . and whether they may be enforced in court."  (Opp. 32). There is, however, nothing "separate" about these two issues, and there is nothing genuinely "binding" about the Regulations in a way that supports the Special Counsel's argument here.  In essence, the Special Counsel argues that while he and the Deputy Attorney General must follow the Regulations, there is nothing anyone can do, including this Court, if they do not.

The Special Counsel leaves out much of the description of the Regulations he provided to this Court just a few months ago in *Manafort*.  There, when useful to do so, he said the

Regulations "can simply provide a helpful framework for the Attorney General to use in establishing the Special Counsel's role" and claimed they were "on par with many other internal guidance documents promulgated to regulate DOJ procedures." *United States v. Manafort*, No. 1:17-cr-00201-ABJ (D.D.C. Apr. 2, 2018), Doc. No. 244 at 6, 31. Their function, he continued, was merely to "allocate[] prosecutorial authority within" DOJ. *Id.* at 30–31. He did say the Regulations have the "force of law," *id.* at 30, but he never explained what that meant—though, as he does here, he stressed that the Regulations were ***not*** judicially enforceable and that the Deputy Attorney General and DOJ can determine internally, in their sole, unreviewable discretion, whether any Regulation was violated and what the remedy for such a violation would be. *Id.* at 31–32. In fact, the Special Counsel claimed the Attorney General has "discretion[]" whether "to apply the Special Counsel regulations when making a Section 515 appointment" ***at all***. *Id.* at 6. Thus, by his own analysis, the Special Counsel, in an unchecked fashion, exercises broad prosecutorial authority whose dimensions are controlled solely by the Executive Branch, with neither the Judiciary nor Congress having any say in the matter whatsoever—up to and including rescinding the Regulations altogether. (Opp. 35 n.8).

An attempt to exercise such unbridled authority without Presidential appointment or Senate confirmation is exactly where the Appointments Clause intercedes. The Clause, no less than any other constitutional provision (Mem. 30), "protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010) (citation omitted); *see also Morrison*, 487 U.S. at 727 (Scalia, J., dissenting) ("Constitution gives . . . the people . . . more protection than" ""[t]rust us'").

The Regulations, on their own terms, further confirm the Special Counsel's near-total independence in exercising his broad powers.  For example, they bear out that there is no meaningful supervision of the Special Counsel's conduct by the Deputy Attorney General. Concord previously described in detail each relevant provision of the Regulations, demonstrating that they impose "no meaningful, substantive oversight or supervision by the Attorney (or Deputy Attorney) General."  (Mem. 31–32).  In particular, Concord described the very limited scope of the key provision—28 C.F.R. § 600.7(b)—looking closely at its specific terms and how they function together as a whole.  (*Id.*).  The Special Counsel, for his part, points to regulatory provisions that merely require him to make informational reports to the Attorney General and generally comply with DOJ guidelines, and one provision that does require the Attorney General's approval—but only to expand the Special Counsel's already expansive jurisdiction. (Opp. 31–32).  As for § 600.7(b), the Special Counsel restates his position from *Manafort* that the provision gives the Deputy Attorney General "authority to countermand a special counsel when the regulation's terms are met."  (Opp. 33).  But the argument he makes for that atextual construction ignores the full text of § 600.7(b) and has nothing to commend it.

In fact, the Special Counsel never quotes, even once, the key phrase at the end of § 600.7(b), emphasized as follows: "If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General ***shall notify Congress*** . . . ."  But "shall notify Congress" is the only remedial step the provision mentions in circumstances where the "Attorney General concludes that a proposed action by a Special Counsel should not be pursued."  Had the drafters of the Regulations wished to confer the far broader power to "countermand" an action of the Special Counsel, they easily could have done so—and, one must assume, would have used express language to that effect.  (Mem. 33).  The preamble statement

the Special Counsel points to—that "ultimate responsibility" for handling a special counsel's investigation "will continue to rest with the Attorney General"—does nothing to change this. (Opp. 33). It does not call for some power to countermand the decisions of the Special Counsel, especially in light of the Regulations' clear provision (§ 600.7(b)) that the Attorney General does *not* have "day-to-day supervision" over the Special Counsel.  And no "'speculation as to Congress' intent'" based on that vague preamble statement can "'replace the actual text'" of the Regulations.  *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 20 (2017) (citations omitted); *St. Francis Med. Ctr. v. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018) (refusing to look to preamble because it "lacks the force and effect of law" and the regulation was "clear") (citations omitted).

Unable to live with what the text provides, the Special Counsel appeals to "common sense" as a means to read something into § 600.7(b) that is not there.  As he puts it, requiring only that the "Attorney General . . . inform Congress that he disagreed with an action that a special counsel took anyway . . . makes little sense."  (Opp. 34).  There are two problems with this argument—both fundamental.  The Court's job is to follow § 600.7(b)'s plain meaning—not "rewrite" or delete text in the name of achieving a supposedly more "sensible" policy more to the Special Counsel's "liking."  *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018) (citation omitted).  There also is no reason to look askance at reporting to Congress should the Special Counsel run off the rails.  Congress can take the information provided, exercise its own judgment, and formulate a response, and it has no conflict in doing so.[13]

---

[13]   The Special Counsel's plea for deference under *Auer v. Robbins*, 519 U.S. 452 (1997) to support his redrafting is meritless.  (Opp. 34).  As shown, there is nothing ambiguous about § 600.7(b) and deference is not a license to rewrite the provision to align with the Special Counsel's litigating position in this case, particularly where such deference would permit one
(continued)

Finally, without citing a single case, the Special Counsel claims that because the Deputy Attorney General had the power to appoint the Special Counsel, that means the Deputy Attorney General has "statutory authority to supervise the Special Counsel."  (Opp. 30–31)  But if the Special Counsel was correct, every "Officer" appointed pursuant to a valid grant of appointment authority would be subject to meaningful supervision under *Edmond* and *Intercollegiate*— inherent in the power to appoint, according to the Special Counsel, is the power to meaningfully supervise.  That cannot be right, and there is no case supporting this contention.  To the contrary, in case after case, courts scrutinize the specific statutory framework, if any, governing the nature and extent of supervision over the "Officer" in question.  *See*, *e.g.*, *Edmond*, 520 U.S. at 664; *Intercollegiate*, 684 F.3d at 413–14; *Masias v. Sec'y of HHS*, 634 F.3d 1283, 1294–95 (Fed. Cir. 2011).  Appointment alone does not equate with meaningful supervision under these binding precedents.

**2.    The Special Counsel can make final decisions without the prior approval of the Deputy Attorney General.**

Along with his virtually supervision-free mandate, the Special Counsel can make final and binding prosecutorial decisions without prior approval from the Deputy Attorney General. (Mem. 34–35).  The Special Counsel responds with the conclusory statement that he simply has no power to render a final decision on behalf of the United States unless permitted to do so by "other Executive officers."  (Opp. 36).  But he does nothing more to defend what he says.  First, the Indictment in this case contains only the Special Counsel's name and signature—no person appointed by the President and confirmed by the Senate appears there.  (ECF No. 1 at p. 37).

---

branch to aggrandize its own power in derogation of the Appointments Clause's avowed purpose. *See Freytag*, 501 U.S. at 878–79 (rejecting government's "request that this Court defer to the Executive Branch's" view of Appointments Clause); *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014) (agency has no power to "rewrite clear" terms).

Second, the Special Counsel appears to agree with Concord's statement that the Regulations—to the extent the Deputy Attorney General elects to apply them and not rescind them—do **not** require prior approval before the Special Counsel makes "final decisions about who to investigate, indict, and prosecute." (Opp. 36). He says that fact just makes the Special Counsel akin to United States Attorneys, who, according to the Special Counsel, also can make such final decisions without approval, but "who are nonetheless inferior officers." (Opp. 36–37). But that analogy does not fit (Mem. 9)—and it certainly does not erase the Special Counsel's concession about his expansive final-decision-without-approval authority.[14] United States Attorneys are geographically restricted and lack authority to make final consequential decisions regarding who to investigate, indict, and prosecute without pervasive supervision. The Special Counsel's significant final decisionmaking authority, not subject to any meaningful supervision, thus strongly supports the Special Counsel's principal-officer status under controlling precedent.

> **3.  The Special Counsel is removable only for cause, and the Attorney General's supposed ability to effectively remove him by terminating the investigation or rescinding the Regulations is inapposite.**

The final *Edmond/Intercollegiate* factor—removability—likewise strongly supports the conclusion that the Special Counsel is a principal officer given that the Special Counsel can only be removed for good cause under the Regulations. The Special Counsel does not dispute that, under *Intercollegiate*, his good-cause protection from removal supports a finding of his

---

[14]   The Special Counsel simply ignores that United States Attorneys (i) require appointment by the President and confirmation by the Senate, (ii) are subject to the Attorney General's "pervasive" supervision, and (iii) must obtain the Attorney General's approval before taking numerous actions. *United States v. Giangola*, No. 1:07-cr-00706-JB, 2008 WL 3992138, at *9–10 (D.N.M. May 12, 2008); (*see also* Mem. 9).

principal-officer status. (Opp. 36).[15] Instead, he attempts to shift the focus to purported *de facto* "termination mechanism[s]"—the Deputy Attorney General's supposed authority under the Regulations, which he says may or may not be binding in his sole discretion, to end the Special Counsel's investigation or rescind the Regulations in their entirety, thus allowing him to fire the Special Counsel at will. (Opp. 35–36 & n.8). Once again, however, he cites no case that supports reliance on such claimed "termination mechanisms" in this context, and, indeed, the case law looks to whether the law permits for-cause or at-will termination of the officer at issue—not whether a superior officer can simply obliterate the officer's position or office in its entirety. *See, e.g., Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 486 (2010); *Morrison*, 487 U.S. at 671; *Intercollegiate*, 684 F.3d at 414–15. With respect in particular to the Deputy Attorney General's power not to continue an investigation, that hardly can be equated with the kind of congressionally authorized at-will removal outlined by statute in the three cases just cited. And by the very terms of the Regulations, the power to discontinue an investigation the Special Counsel references is limited to particular and brief time periods—the last 90 days of the year—while at-will removal in the three cited cases can occur at any time.

The Special Counsel's claim that the Deputy Attorney General could in the future simply rescind the Regulations and fire the Special Counsel—something the Deputy Attorney General has promised he will not do—cannot be leveraged into an Appointments Clause trump card

---

[15]  Even though Concord does not argue otherwise, the Special Counsel insists that good-cause removal does not, "standing alone," "mandate" a finding of principal officer status, claiming that in *Morrison* and *Freytag*, the Supreme Court found officers to be "inferior" despite similar limitations on their removal. (Opp. 36). But *Freytag* did not consider the principal-officer question, 501 U.S. at 880, and the Court there ***never even mentioned*** the fact that the judges could only be removed for cause. And *Morrison*, as noted below, does not control the principal-officer analysis in this case; did not treat removability as significant a factor as it now is under *Edmond* and its progeny; and there were numerous features of the independent counsel that rendered her an inferior officer that do not mark the Special Counsel here.

either.  Otherwise, every agency with regulations that provide for the hiring and firing of officers could unilaterally render its officers "inferior" by the mere threat that it could revoke those regulations at any time with the stroke of a pen.  But that is no different than saying a statute that provides for only for-cause removal of an officer does not support principal-officer status because Congress has the power to, and could, just repeal that statute in the future.  Constitutionality must be determined here by the existing, objective sources of law that govern an officer's removal, not some hypothetical future circumstance where those objective sources of law may not exist.  Otherwise, the Appointments Clause would lose its constitutional force.

### 4.    Neither *Morrison* nor *Sealed Case* controls the principal-officer issue.

The foregoing analysis confirms the Special Counsel's principal-officer status.  Unable to show otherwise, the Special Counsel reaches back to two decisions that no longer set forth the governing standard for analyzing principal-officer status: *Morrison*, 487 U.S. 654, and *Sealed Case*, 829 F.2d 50.  As for *Morrison*, the Special Counsel insists he is no different from the independent counsel in that case—if anything, that he is less independent and powerful—but that blinks reality.  He claims the independent counsel was subject to less oversight because the Attorney General could not countermand her actions like he can the Special Counsel's.  (Opp. 37).  Yet, as discussed, no such countermanding authority exists here either.  *Supra* at 21–22.  Moreover, supervision was not even relevant to the Court's analysis in *Morrison*—contrary to the pivotal importance of that factor under *Edmond*/*Intercollegiate*.  The Special Counsel also points to the fact that, like the independent counsel in *Morrison*, he is subject to for-cause removal. (Opp. 34).  But what he fails to point out is that under *Edmond*, *Free Enterprise Fund*, and *Intercollegiate*, removability is more significant to the principal-officer analysis than it was under *Morrison*—the Special Counsel's for-cause removal protection thus tilts much more sharply toward a finding of principal-officer status than it did in *Morrison*.

The Special Counsel points (Opp. 39) to the individuals and crimes the independent counsel in *Morrison* could investigate, but these plainly pale in comparison to the limitless investigatory scope permitted by the Regulations here.  He also states in conclusory fashion that Concord is wrong to say the Special Counsel has "authority to formulate policy" as evidenced by his newfangled charge against Concord, but he fails to explain why—nor can he.  Indeed, by his own admission (June 15 Hr'g Tr. 10:19–22, ECF No. 41), that charge ***does*** depart from established DOJ guidelines and it *is* unprecedented.  (ECF No. 46).  If that does not constitute formulation of DOJ policy, it is hard to see what would.  Finally, on tenure, the Special Counsel points (Opp. 40) to § 600.8(c) of the Regulations, which vaguely contemplates a "conclusion of the Special Counsel's work."  Yet, that provision does not come close to specifying any time or other trigger for an investigation's conclusion, and the Deputy Attorney General could, according to the Special Counsel, just disregard or rescind the Regulation anyhow.

*Sealed Case*, 829 F.2d 50, is in the same vein as *Morrison*.  Decided before *Edmond*, *Morrison*, and *Free Enterprise Fund*, *Sealed Case* quickly fell into desuetude, cited only once by the D.C. Circuit—early in 1988 in the case the Supreme Court later reversed in *Morrison*.  *See In re Sealed Case*, 838 F.2d 476 (D.C. Cir. 1988).  No other appellate court has cited *Sealed Case* for its Appointments Clause analysis, and, in light of *Morrison*—and *Edmond*, *Free Enterprise*, and *Intercollegiate*—it is easy to see why.  Citing an 1898 Supreme Court decision, *United States v. Eaton*, 169 U.S. 331, *Sealed Case* applied a now-outmoded, one-factor analysis— whether Mr. Walsh, the independent counsel at issue there, was charged with performing duties "'for a limited time and under special and temporary conditions.'"  829 F.2d at 56–57.  That was understandable, since *Edmond*, *Free Enterprise Fund*, *Morrison*, and *Intercollegiate* had yet to be decided.  But it also shows why the decision no longer is binding, having been overtaken by

those Supreme Court decisions—and a D.C. Circuit decision that follows them.  In the end, what really matters is what the Special Counsel does not dispute—that *Edmond* and *Intercollegiate* control here, and under those precedents, the Special Counsel is a principal officer.[16]

**C.     The Special Counsel's appointment is unconstitutional because as interpreted by the Special Counsel, his power and position violate the separation of powers.**

The Special Counsel claims (Opp. 41) there is no separation-of-powers issue whether the Regulations are valid and binding or not.  As he would have it, with or without the Regulations, he is no different from any other officer to whom power is delegated by the Attorney General under 28 U.S.C. § 510.   And, he claims, whether that "routine delegation" of power raises separation-of-powers concerns is effectively entitled to deference under the "presumption of regularity" as an exercise of "prosecutorial discretion."   (Opp. 41 (citing *United States v. Armstrong*, 517 U.S. 456 (1996)).   This is just more misdirection.   The statutory and constitutional analyses invoked here are not exercises of "prosecutorial discretion" where the Executive Branch is owed deference—they rest with the Judiciary, which decides what the law is.  *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1322–23 (2016) (citation omitted).   And if the law does not provide the necessary express authorization for the delegation of authority, there is no prosecutorial discretion to exercise in the first place.  *Armstrong* does not say otherwise.

---

[16]     The Special Counsel cites two district court decisions to support his application of *Morrison*.  (Opp. 38 (citing *United States v. Manafort*, No. 1:18-cr-83, 2018 WL 3126380 (E.D. Va. June 26, 2018); *United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006)).  But *Morrison*'s Appointments Clause analysis was not briefed in *Manafort* or necessary given the court's independently dispositive rulings, 2018 WL 3126380, at *7–11, and the court in that case thus should not have reached out to address any constitutional issue, *see Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 412 (4th Cir. 2011) (citation omitted).  As for *Libby*, the special counsel there was "essentially removable at will," 429 F. Supp. 2d at 44, and the district court did not even "confront" any analysis under *Edmond*, *id.* at 45.

That case involved selective prosecution, an issue not raised by the present motion, and it is not a license to insert words into a statute that are not there.

Nor, on its own terms, does § 510 authorize the delegation of authority the Special Counsel lays claim to. The Supreme Court has emphasized that "Congress does not always contemplate that duties assigned to the Attorney General may be freely delegated [under § 510]," especially where the conditions set forth in the statutory scheme are ignored. *United States v. Giordano*, 416 U.S. 505, 514 (1974). It is unreasonable to think Congress intended, through § 510, to authorize the Attorney General to all but abdicate his ultimate prosecutorial duty to a private attorney-turned-Special Counsel—in an investigation of this magnitude—without delineating with precision the constraints and conditions limiting that investigation and ensuring effective oversight. And "[w]hile the Attorney General may delegate some litigating authority [to federal agencies], he may not delegate the ***ultimate responsibility*** which is by law vested exclusively in the Attorney General[,]" *The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 59 (1982) (emphases added)—to control and direct the United States' litigation. Contrary to the Special Counsel's claim, therefore, his own description of his unregulated delegation of prosecutorial authority creates separation-of-powers issues all on its own. He has aggrandized powers for himself through an unprecedented delegation that the Attorney General is not free to endorse. This over-reach, too, supports dismissal.

### D. The Special Counsel effectively concedes that the Indictment does not fall within the scope of the Appointment Order.

Finally, as for the validity of the Indictment under the terms of the Appointment Order and the Regulations, the Special Counsel claims that his "investigation into the Russian government's efforts to interfere in the 2016 presidential election . . . would inevitably cover" non-Russian government private social-media activity in Russia. (Opp. 46). In other words: the

specific jurisdiction described in the Appointment Order is meaningless; the standard is whether something not mentioned in the grant of jurisdiction "inevitably" would be swept up, apparently as determined by the Special Counsel himself.  That is no standard at all.  The Special Counsel also relies on a January 2017 Intelligence Community Assessment describing conduct like that alleged against Concord here, and claims that it provided an "investigatory focus" covering Concord's activities.  (Opp. 46).  This is a *non sequitur*.  The question is whether the investigation of Concord falls within the Appointment Order—not whether Concord's alleged conduct is like that described in a U.S. intelligence finding released more than 4 months before the Special Counsel was appointed.  As for the Indictment of Concord itself, the Special Counsel asserts that since his investigation of Concord was authorized, any indictment resulting from that investigation necessarily is authorized.  (Opp. 46–47).  As noted, however, the investigation of Concord itself strayed well outside the Appointment Order's boundaries.  The Special Counsel's logic thus builds from an erroneous premise and dismissal is warranted on this ground, too.

## III.    CONCLUSION

The Appointments Clause should be given its intended force and effect in this proceeding as it would in any other.  The Indictment of Concord is unconstitutional and should be dismissed.

Dated: July 30, 2018

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)

By: /s/ Eric A. Dubelier
     Eric A. Dubelier (D.C. Bar No. 419412)
     Katherine J. Seikaly (D.C. Bar No. 498641)
     REED SMITH LLP
     1301 K Street, N.W.
     Suite 1000 – East Tower
     Washington, D.C. 20005-3373
     202.414.9200 (phone)
     edubelier@reedsmith.com

[*]*Admitted Pro Hac Vice*