**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 18-cr-32 (DLF) |
| INTERNET RESEARCH AGENCY, ET AL., | |
| Defendants. | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Michael R. Dreeben
Jeannie S. Rhee
Adam C. Jed
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

Jonathan I. Kravis
Deborah A. Curtis
Jonathan I. Kravis
Kathryn L. Rakoczy
Assistant United States Attorneys
United States Attorney's Office
555 Fourth Street N.W.
Washington, D.C. 20530

*Attorneys for the United States of America*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

STATEMENT ............................................................................................................ 2

ARGUMENT ............................................................................................................. 3

    THE MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED
    BECAUSE THE INDICTMENT PLAINLY, CONCISELY, AND DEFINITELY
    STATES THE ESSENTIAL FACTS CONSTITUTING THE OFFENSE OF A
    CONSPIRACY TO DEFRAUD THE UNITED STATES ...................................................... 3

  I.   The Indictment Satisfies Fed. R. Crim. P. 7(c) Because It Alleges All The
      Elements Of A Defraud-Clause Section 371 Conspiracy And Describes The
      Essential Nature Of The Defendants' Alleged Conspiracy ........................................... 3

    A.  Applicable Legal Principles ..................................................................................... 3

    B.  The Indictment Adequately Alleges A Conspiracy To Defraud The United
       States ...................................................................................................................... 5

    C.  The Indictment Need Not Allege A Violation Of A Statute Beyond Section
       371 .......................................................................................................................... 8

    D.  The Indictment Need Not Allege That The Defendants Had A Willful *Mens
       Rea* ....................................................................................................................... 13

      1.  Willfulness is not an element of a Section 371 defraud-clause
         conspiracy ........................................................................................................ 13

        a.  Section 371 identifies the requisite *mens rea* as an intent to defraud
          the United States, not willfulness ............................................................. 14

        b.  Importation of a willfulness element into Section 371's defraud
          clause is not necessary to ensure that such a charge captures only
          criminal conduct ...................................................................................... 18

        c.  Following *Cheek* and *Ratzlaf*, the federal courts of appeals have
          consistently declined to graft a willfulness element onto Section
          371's defraud clause ................................................................................ 21

        d.  Concord's authorities do not support grafting a willfulness element
          onto Section 371's defraud clause ........................................................... 23

        e.  The Indictment's charges do not implicate protected speech .................. 29

2.  The Indictment adequately alleges that the conspirators specifically intended to defraud the United States or its agencies ..................................... 31

E.  The Indictment Need Not Allege A Deprivation Of Government Money Or Property.......................................................................................................... 35

II.  Section 371's Defraud Clause Is Not Unconstitutionally Vague Either On Its Face Or As Applied To The Conduct Alleged In The Indictment.............................. 38

CONCLUSION..................................................................................................................... 43

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. Securities and Exchange Commission*, 446 U.S. 680 (1980) ........................................ 16

*Abramski v. United States*, 134 S. Ct. 2259 (2014) ...................................................... 29

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946) .................................... 10

*Bates v. United States*, 522 U.S. 23 (1997) ................................................................ 15

*Bluman v. Federal Election Comm'n*, 800 F. Supp. 2d 281 (D.D.C. 2011), *sum aff'd,*
565 U.S. 1104 (2012) ................................................................................... 23, 24

*Blumenthal v. United States*, 332 U.S. 539 (1947) ........................................................ 5

*Bryan v. United States*, 524 U.S. 184 (1998) ................................................... 14, 20, 21

*Cheek v. United States*, 498 U.S. 192 (1991) ........................................................ 18, 20

*Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ........................ 10

*Crooks v. Mabus*, 845 F.3d 412 (D.C. Cir. 2016) ............................................................ 39

*Dealy v. United States*, 152 U.S. 539 (1894) ................................................................ 13

*Dean v. United States*, 556 U.S. 568 (2009) ................................................................ 17

*Dennis v. United States*, 384 U.S. 855 (1966) ...................................................... passim

*Elonis v. United States*, 135 S. Ct. 2001 (2015) ............................................................ 14

*Federal Election Commission v. California Medical Ass'n*, 502 F. Supp. 196 (N.D.
Cal. 1980) ................................................................................................................ 19

*Federal Election Commission v. Friends of Jane Harman*, 59 F. Supp. 2d 1046
(C.D. Cal. 1999) ........................................................................................................ 19

*Flytenow, Inc. v. F.A.A.*, 808 F.3d 882 (D.C. Cir. 2015) ................................................ 39

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) .................................................... 37

*Glasser v. United States*, 315 U.S. 60 (1942) ...................................................... passim

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .................................................................. 41

*Haas v. Henkel*, 216 U.S. 462 (1910) ...................................................................... 4, 37

*Hamling v. United States*, 418 U.S. 87 (1974) ............................................................................. 5

*Hammerschmidt v. United States*, 265 U.S. 182 (1924) ........................................................ passim

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ................................... 39

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ................................................ 15, 19, 39

*Illinois ex rel. Madigan v. Telemarking Assoc., Inc.*, 538 U.S. 600 (2003) ................................. 30

*In re Federal Election Campaign Act Litigation*, 474 F. Supp. 1044 (D.D.C. 1979) .................. 19

*In re Sealed Case*, 223 F.3d 775 (D.C. Cir. 2000) ....................................................................... 12

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ........................................................................ 38

*Kolender v. Lawson*, 461 U.S. 352 (1983) .................................................................................... 38

*Liparota v. United States*, 471 U.S. 419 (1985) .......................................................................... 14

*Lorillard v. Pons*, 434 U.S. 575 (1978) ........................................................................................ 37

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ................................................................... 42

*McFadden v. United States*, 135 S. Ct. 2298 (2015) .................................................................... 41

*McNally v. United States*, 483 U.S. 350 (1987) ................................................................ 4, 36, 41

*Morissette v. United States*, 342 U.S. 246 (1952) ........................................................................ 14

*Neder v. United States*, 527 U.S. 1 (1999) ................................................................................... 10

*United States v. Treadwell*, 760 F.2d 327 (D.C. Cir. 1985) .............................................. 1, 5, 8, 17

*Ocasio v. United States*, 136 S. Ct. 1423 (2016) .................................................................... 15, 32

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ....................................................................... 18, 20

*Rose v. Locke*, 423 U.S. 48 (1975) ............................................................................................... 38

*Russell v. United States*, 369 U.S. 749 (1962) ............................................................................... 5

*Salinas v. United States*, 522 U.S. 52 (1997) ......................................................................... 32, 42

*Shaw v. United States*, 137 S. Ct. 462 (2016) ........................................................................ 15, 17

*Skilling v. United States*, 561 U.S. 358 (2010) ....................................................................... 37, 41

*Staples v. United States*, 511 U.S. 600 (1994) ............................................................................. 14

*Tanner v. United States*, 483 U.S. 107 (1987) ............................................................. 3, 32, 35, 40

*United States v. Alston*, 77 F.3d 713 (3d Cir. 1996) .................................................... 27

*United States v. Alvarez*, 567 U.S. 709 (2012) ........................................................... 30

*United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087 (3d Cir. 1989) ........................................................................................................................... 27

*United States v. Apel*, 571 U.S. 359 (2014) ................................................................. 29

*United States v. Baker*, 626 F.2d 512 (5th Cir. 1980) ................................................ 12

*United States v. Ballistrea*, 101 F.3d 827 (2d Cir. 1996) ........................................... 12, 40

*United States v. Barker Steel Co., Inc.*, 985 F.2d 1123 (1st Cir. 1993) ...................... 10, 33, 40, 42

*United States v. Batchelder*, 442 U.S. 114 (1979) ..................................................... 16, 19

*United States v. Berry*, 683 F.3d 1015 (9th Cir. 2012) ............................................... 41

*United States v. Bramer*, 832 F.3d 908 (8th Cir. 2016) .............................................. 39

*United States v. Caldwell*, 989 F.2d 1056 (9th Cir. 1993) .......................................... 10

*United States v. Cella*, 37 App. D.C. 423 (1911) ....................................................... 34

*United States v. Cesare*, 581 F.3d 206 (3rd Cir. 2009) .............................................. 32

*United States v. Cohn*, 270 U.S. 339 (1926) .............................................................. 4

*United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998) ................................................ 10, 40

*United States v. Curran*, 20 F.3d 560 (3d Cir. 1994) ................................................. 26, 27

*United States v. Cyprian*, 23 F.3d 1189 (7th Cir. 1994) ............................................ 29

*United States v. Daly*, 756 F.2d 1076 (5th Cir. 1985) ................................................ 31

*United States v. Davis*, 863 F.3d 894 (D.C. Cir. 2017) .............................................. 5, 17, 41

*United States v. Derezinski*, 945 F.2d 1006 (8th Cir. 1991) ....................................... 21, 22, 29, 40

*United States v. Franklin-El*, 554 F.3d 903 (10th Cir. 2009) ...................................... 41

*United States v. Gaudin*, 515 U.S. 506 (1995) ........................................................... 11

*United States v. Greenberg*, 835 F.3d 295 (2d Cir. 2016) .......................................... 12

*United States v. Gricco*, 277 F.3d 339 (3d Cir. 2002) ................................................ 32, 33

*United States v. Gurary*, 860 F.2d 521 (2d Cir. 1988) .................................................. 33

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (en banc) ....................................... 7, 34

*United States v. Harmas*, 974 F.2d 1262 (11th Cir. 1992) ........................................... 16

*United States v. Helmsley*, 941 F.2d 71 (2d Cir. 1991) ................................................. 5

*United States v. Herring*, 916 F.2d 1543 (11th Cir. 1990) ........................................... 12

*United States v. Hester*, 598 F.2d 247 (D.C. Cir. 1979) ............................................. 15

*United States v. Hirsch*, 100 U.S. 33 (1879) ......................................................... 36

*United States v. Howard*, 245 F. Supp. 2d 24 (D.D.C. 2003) ....................................... 15

*United States v. Hsia*, 24 F. Supp. 2d 33 (D.D.C. 1998), *rev'd on other grounds*, 176
F.3d 517 (D.C. Cir. 1999) ...................................................................... 33, 34, 35

*United States v. Hurley*, 957 F.2d 1 (1st Cir. 1992) .................................................. 10

*United States v. Jackson*, 33 F.3d 866 (7th Cir. 1994) ........................................... 22, 23

*United States v. Janati*, 237 F. App'x 843 (4th Cir. 2007) .......................................... 41

*United States v. Johnson*, 383 U.S. 169 (1966) ...................................................... 4

*United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C.), *rev'd on other grounds*,
192 F.3d 1037 (D.C. Cir. 1999) .......................................................... 10, 11, 33, 34

*United States v. Khalife*, 106 F.3d 1300 (6th Cir. 1997) .......................................... 23, 28

*United States v. King*, 660 F.3d 1071 (9th Cir. 2011) ............................................. 12

*United States v. Lanier*, 520 U.S. 259 (1997) ...................................................... 38

*United States v. Lepowitch*, 318 U.S. 702 (1943) ................................................... 16

*United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994) ......................................... 28, 35

*United States v. Manton*, 107 F.2d 834 (2d Cir. 1939) ............................................. 17

*United States v. McKee*, 506 F.3d 225 (3d Cir. 2007) .............................................. 27

*United States v. Mellen*, 393 F.3d 175 (D.C. Cir. 2004) .......................................... 5, 17

*United States v. Mendez*, 528 F.3d 811 (11th Cir. 2008) ........................................... 35

*United States v. Middendorf*, 2018 WL 3443117 (S.D.N.Y. July 17, 2018) ................................ 40

*United States v. Monteiro*, 871 F.2d 204 (1st Cir. 1989) ................................................ 24

*United States v. Moore*, 612 F.3d 698 (D.C. Cir. 2010) ........................................... 12, 23

*United States v. Morosco*, 822 F.3d 1 (1st Cir.), *cert. denied*, 137 S. Ct. 251, 137 S. Ct. 403 (2016) ...................................................................................... 24, 25, 38, 39

*United States v. Pappathanasi*, 383 F. Supp. 2d 289 (D. Mass. 2005) ........................ 35

*United States v. Recognition Equip., Inc.*, 711 F. Supp. 1 (D.D.C. 1989) ................. 8, 13

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ................................................ 5

*United States v. Rosengarten*, 857 F.2d 76 (2d Cir. 1988) .......................................... 10

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc) ................................. 41

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) .................................................... 5

*United States v. Shoup*, 608 F.2d 950 (3d Cir. 1979) ................................................. 21

*United States v. Singhal*, 876 F. Supp. 2d 82 (D.D.C. 2012) ...................................... 34

*United States v. Starnes*, 583 F.3d 196 (3d Cir. 2009) ............................................... 27

*United States v. Stevens*, 559 U.S. 460 (2010) ......................................................... 30

*United States v. Tagliaferri*, 820 F.3d 568 (2d Cir. 2016) .......................................... 41

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) ......................................... 25, 26

*United States v. United States Gypsum Co.*, 438 U.S. 422 (1978) ............................... 15

*United States v. Vazquez*, 319 F.2d 381 (3d Cir. 1963) .............................................. 10

*United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014) ................................................ 5

*United States v. Vogt*, 910 F.2d 1184 (4th Cir. 1990) ............................................ 10, 16

*United States v. Wapnick*, 60 F.3d 948 (2d Cir. 1995) ................................................ 23

*United States v. Westbrooks*, 858 F.3d 317 (5th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 1323 (2018) ............................................................... 38, 39

*United States v. Williams*, 504 U.S. 36 (1992) ........................................................... 8

**Statutes**

15 U.S.C. § 77q .................................................................................................. 16

18 U.S.C. § 2 ........................................................................................ 11, 26, 27

18 U.S.C. § 76 .................................................................................................. 16

18 U.S.C. § 371 ......................................................................................... passim

18 U.S.C. § 1001 ................................................................................. 11, 26, 27

18 U.S.C. § 1344 .............................................................................................. 15

18 U.S.C. § 2339B ............................................................................................ 15

22 U.S.C. § 611 .................................................................................................. 7

22 U.S.C. § 612 .................................................................................................. 7

26 U.S.C. § 7206 .............................................................................................. 22

31 U.S.C. § 5312 .............................................................................................. 22

31 U.S.C. § 5321 .............................................................................................. 22

52 U.S.C. § 30101 .............................................................................................. 6

52 U.S.C. § 30104 .............................................................................................. 6

52 U.S.C. § 30109 ............................................................................................ 19

Rev. Stat. § 5440 ........................................................................................ 36, 37

Act of June 24, 1948, ch. 645, 62 Stat. 683 ................................................... 37

Act of March 2, 1867, ch. 169, § 30, 14 Stat. 471 ......................................... 36

Fed. R. Crim. P. 7 .............................................................................................. 1

Fed. R. Crim. P. 12 .......................................................................................... 35

**Other Authorities**

Memorandum from Richard C. Pilger, Director, Election Crimes Branch, Public
 Integrity Section of the Criminal Division (Aug. 6, 2018) ..................................................... 28

Noah Webster, *American Dictionary of the English Language* 347 (1864 ed.) ........................... 36

*Webster's Third New International Dictionary* (1986) .................................................................. 42

# INTRODUCTION

The United States of America, by and through Special Counsel Robert S. Mueller, III and United States Attorney for the District of Columbia Jessie K. Liu, submits this opposition to the motion to dismiss the Indictment (ECF No. 46) filed by defendant Concord Management and Consulting, LLC ("Concord").  The motion should be denied.

Concord claims that Count One of the Indictment should be dismissed because, in its view, that count fails to adequately allege a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.[1]  Specifically, Concord contends that the Indictment fails to allege a conspiracy to defraud that interferes with a lawful governmental function; omits the requisite *mens rea* (willfulness); charges no deprivation of government property or money; and is unconstitutionally vague.  Those arguments lack merit.

The Indictment satisfies Fed. R. Crim. P. 7(c) because it is a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  The Indictment alleges all the elements of a Section 371 conspiracy and explains the essential nature of the fraud contemplated by Concord and its co-conspirators.  Further, as to *mens rea*, the government need prove only that Concord "knowingly participated in the conspiracy with the intent * * * to defraud the United States," *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985), which the Indictment properly alleges.  Finally, the Indictment sufficiently places the defendants on notice of the prohibited conduct.  Far from charging Concord with "a contrived crime not specifically defined in any statute, without notice and under a standard known only to the Special Counsel," as Concord contends (at 13), the Indictment alleges the violation of a statute dating to 1867 that

---

[1] Concord asks (at 4) this Court to "dismiss this defective Indictment" but Concord is only charged in Count One.  Any reference in this opposition to the "Indictment" means just Count One.

the courts have construed as prohibiting precisely the unlawful conduct described in Count One, namely, a conspiracy to obstruct governmental functions by dishonest and deceitful means. Because the Indictment adequately alleges the requisite facts and elements of a conspiracy to defraud the United States pursuant to Rule 7(c), Concord's motion to dismiss should be denied.

## STATEMENT

On February 16, 2018, a grand jury returned an eight-count, thirty-seven-page Indictment against thirteen individuals and three corporate defendants. The Indictment alleges that the defendants engaged in a multi-year conspiracy, operating out of Russia, to defraud the United States by impairing, obstructing, and defeating the lawful functions of the U.S. government, through fraud and deceit, for the purpose of interfering with the U.S. political and electoral processes. ECF No. 1, ¶¶ 1–7. The conspiracy included a Russian organization, defendant Internet Research Agency LLC (the "Organization"), that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election and "the political system in general." *Id.* ¶ 10. The Indictment further alleges that defendant Yevgeniy Viktorovich Prigozhin approved, supported, and funded the Organization's operations through other entities that he directly controls, particularly defendant Concord Management and a second entity, defendant Concord Catering. *Id.* ¶¶ 3, 11-12.[2] Concord "was the Organization's primary source of funding for its interference operations." *Id.* ¶ 11. Concord also "controlled funding,

_____

[2] Prigozhin and both Concord entities charged in the Indictment were, at that time, under sanctions by the U.S. Department of Treasury for their involvement in the Russian government's activities in Ukraine. 12/20/16 Press Release, Treasury Sanctions Individuals and Entities In Connection with Russia's Occupation of Crimea and the Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/press-releases/Pages/jl0688.aspx (Prigozhin); 6/20/17 Press Release, Treasury Designates Individuals and Entities Involved in the Ongoing Conflict in Ukraine, *available at* https://www.treasury.gov/press-center/press-releases/Pages/sm0114.aspx (Concord sanctioned "for being owned or controlled by Yevgeniy Prigozhin").

recommended personnel, and oversaw Organization activities through reporting and interaction with Organization management." *Id.* In particular, when the defendants began in or around 2015 to purchase social media advertisements, spending thousands of dollars each month, "[t]hese expenditures were included in the budgets the Organization submitted to Concord." *Id.* ¶ 35.

To carry out their interference activities without detection of their Russian affiliation, the Indictment charges, the defendants "knowingly and intentionally" conspired to obstruct the lawful functions of the Federal Election Commission, the Department of Justice, and the Department of State. ECF No. 1, ¶¶ 7, 9. The Indictment further alleges that the defendants used a host of deceptive means to impede these entities' functions, including surreptitious intelligence gathering in the United States by foreign agents, influence operations conducted through false online personas, and fraudulent visa applications for entry to the United States. *Id.* ¶¶ 5, 7, 10-11.

## ARGUMENT

**THE MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED BECAUSE THE INDICTMENT PLAINLY, CONCISELY, AND DEFINITELY STATES THE ESSENTIAL FACTS CONSTITUTING THE OFFENSE OF A CONSPIRACY TO DEFRAUD THE UNITED STATES**

**I.     The Indictment Satisfies Fed. R. Crim. P. 7(c) Because It Alleges All The Elements Of A Defraud-Clause Section 371 Conspiracy And Describes The Essential Nature Of The Defendants' Alleged Conspiracy**

**A.     Applicable Legal Principles**

Section 371 makes it a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose," as long as one conspirator performs an overt act. Section 371 "is the descendant of and bears a strong resemblance to conspiracy laws that have been in the federal statute books since 1867." *Tanner v. United States*, 483 U.S. 107, 128 (1987). Conspiracies to defraud the United States encompass not only "cheating the Government out of property or money,

but also * * * interfering with or obstructing one of its lawful governmental functions by deceitful and fraudulent means." *United States v. Cohn*, 270 U.S. 339, 346 (1926); *see also United States v. Johnson*, 383 U.S. 169, 172 (1966) (same).  Indeed, for nearly a century, the Supreme Court has held that the statute's defraud clause "reaches 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.'" *Dennis v. United States*, 384 U.S. 855, 861 (1966) (quoting *Haas v. Henkel*, 216 U.S. 462, 479 (1910)); *see also Glasser v. United States*, 315 U.S. 60, 66 (1942); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).  A prohibited conspiracy to defraud thus encompasses agreements to obstruct a lawful function of the Government or its agencies by deceitful or dishonest means.  *Hammerschmidt*, 265 U.S. at 188.

The term "defraud" in Section 371 is broader than the same term in other statutes that aim to protect solely private or pecuniary interests.  *McNally v. United States*, 483 U.S. 350, 358 n.8 (1987).  Because "Section 371 is a statute aimed at protecting the Federal Government alone," it differs from, for example, the mail-fraud statute, which "had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to the Government's interests as property holder."  *Id.*  Section 371 reaches more broadly to prohibit conspiracies "to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."  *Hammerschmidt*, 265 U.S. at 188.

Consistent with Section 371's text and the statute's government-protective purpose, the D.C. Circuit has identified three essential elements of a conspiracy to defraud the United States: (1) two or more persons formed an agreement to defraud the United States; (2) the defendant knowingly participated in the conspiracy with the intent to defraud the United States; and (3) at

least one overt act was committed in furtherance of the common scheme.  *See United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017); *United States v. Mellen*, 393 F.3d 175, 180-81 (D.C. Cir. 2004) (Roberts, J.); *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).[3]  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself," *id.*, but there are some crimes "that must be charged with greater specificity," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).  A defraud-clause conspiracy charge, the court of appeals has held, requires such specificity.  The government must accompany Section 371's generic language "'with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'"  *Treadwell*, 760 F.2d at 337.  In other words, a Section 371 indictment must describe the "'essential nature of the plan.'"  *Id.* at 336 (quoting *Blumenthal v. United States*, 332 U.S. 539, 557 (1947)); *see also United States v. Shellef*, 507 F.3d 82, 104 (2d Cir. 2007) ("The 'indictment charging a defraud clause conspiracy [must] set forth with precision the essential nature of the alleged fraud.'" (quoting *United States v. Helmsley*, 941 F.2d 71, 90 (2d Cir. 1991)).

### B.      The Indictment Adequately Alleges A Conspiracy To Defraud The United States

The Indictment fulfills Rule 7(c)'s pleading requirements because it contains all "the elements of the offense," *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (citation and

---

[3] "[T]hese basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure." *Russell v. United States*, 369 U.S. 749, 765-66 (1962).

internal quotation marks omitted), and alleges in detail the essential nature of the defendants' scheme to defraud the United States.

First, tracking Section 371's language and *Hammerschmidt*'s construction of the defraud clause, the Indictment alleges that the defendants "knowingly and intentionally" formed an agreement "to defraud the United States by impairing, obstructing, and defeating the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in administering federal requirements for disclosure of foreign involvement in certain domestic activities." ECF No. 1, ¶ 9; *see Hammerschmidt*, 265 U.S. at 187-88. The Indictment goes on to identify the governmental functions of each of these agencies that the defendants are alleged to have agreed to impair, and how the defendants in fact impaired those functions by deceitful and dishonest means.

As the Indictment alleges, the Federal Election Campaign Act (FECA) "prohibits foreign nationals from making any contributions, expenditures, independent expenditures, or disbursements for electioneering communications" and "requires that individuals or entities who make certain independent expenditures in federal elections" report them to the Federal Election Commission (FEC). ECF No. 1, ¶ 25; *see* 52 U.S.C. § 30104(c) (requiring persons who make "independent expenditures" of more than $250 in a calendar year to file reports with the FEC); *id.* § 30101(17) (defining "independent expenditure" to require express advocacy). These reporting requirements permit the FEC to "fulfill its statutory duties of providing the American public with accurate data about the financial activities of individuals and entities supporting federal candidates." ECF No. 1, ¶ 25. The Foreign Agent Registration Act (FARA), which is administered by the Department of Justice (DOJ), "requires, among other things, that persons subject to its requirements"—including agents of foreign principals (which includes foreign non-government

individuals and entities)—submit "periodic registration statements containing truthful information about their activities and the income earned from them" so that the government may "evaluate the statements and activities of such persons in light of their function as foreign agents." *Id.* ¶ 26; *see* 22 U.S.C. § 612(a) (prohibiting a person from acting as an agent of a foreign principal unless the person is registered with the Attorney General); *id.* § 611(b), (c), (o) (defining foreign principal to include non-government entities and individuals abroad who engage in certain specified acts within the United States). United States law also "requires certain foreign nationals seeking entry to the United States to obtain a visa by providing truthful and accurate information" about "their employment and the purpose of their visit"; the Department of State (DOS) is the federal agency responsible for the issuance of such non-immigrant visas. ECF No. 1, ¶¶ 1, 27. The Indictment alleges that the defendants agreed to impair these federal entities by "fraud and deceit," including "making expenditures in connection with the 2016 U.S. presidential election without proper regulatory disclosure"; "failing to register as foreign agents carrying out political activities within the United States"; and "obtaining visas through false and fraudulent statements." *Id.* ¶¶ 1, 7.[4]

---

[4] Although an indictment need not "put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed," *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (en banc) (per curiam), the Indictment further specifies a number of the defendants' deceptive practices. For example, the defendants did "not report their expenditures to the Federal Election Commission, or register as foreign agents with the U.S. Department of Justice" when the defendants "began to produce, purchase, and post advertisements on U.S. social media and other online sites expressly advocating for the election of then-candidate Trump or expressly opposing Clinton." ECF No. 1, ¶ 48. Likewise, without reporting their expenditures to the FEC or registering with DOJ, the defendants allegedly "staged political rallies inside the United States, and while posing as U.S. grassroots entities and U.S. persons, and without revealing their Russian identities," solicited and compensated "real U.S. persons to promote or disparage candidates." *Id.* ¶ 6. Further, certain defendants traveled to the United States "under false pretenses in order to collect intelligence for their interference operations." *Id.* ¶ 30. These defendants accomplished this travel by lying on their visa applications—"falsely claim[ing] they were traveling for personal reasons" and "not fully disclos[ing] their place of employment to hide the fact that they worked" for the Organization. *Id.*; *see also id.* ¶ 5.

With this detailed charging language, the Indictment informs the defendants of the "'essential nature' of the conspiratorial agreement." *Treadwell*, 760 F.2d at 337; *see*, *e.g.*, *United States v. Recognition Equip., Inc.*, 711 F. Supp. 1, 5 (D.D.C. 1989), *overruled in part*, *United States v. Williams*, 504 U.S. 36 (1992).

Second, the Indictment properly alleges the requisite *mens rea*, charging that the defendants "knowingly and intentionally" conspired to defraud the United States.  ECF No. 1, ¶¶ 2, 9.  As discussed below, that allegation captures the mental state of knowing fraudulent intent that Section 371 requires.  *See* Part I.D *infra*.

Finally, as required, the Indictment alleges that a defendant committed at least one overt act in furtherance of the defendants' common scheme to defraud the United States by obstructing the lawful functions of the FEC, DOJ, and DOS.  *See* 18 U.S.C. § 371.  Specifically, the Indictment alleges that the defendants committed 27 overt acts to further the conspiracy and effect its illegal "object" of "impairing, obstructing, and defeating the lawful governmental functions of the United States by dishonest means in order to enable the Defendants to interfere with U.S. political and electoral processes, including the 2016 U.S. presidential election."  ECF No. 1, ¶¶ 28, 59-85.

Giving the Indictment the careful scrutiny appropriate to charges under "the broad language of the general conspiracy statute," *Dennis*, 384 U.S. at 860, Concord's motion to dismiss should be denied.  Consistent with Rule 7(c), the Indictment is "sufficiently definite to inform [the defendants] of the charges against them," *Glasser*, 315 U.S. at 66, and its "allegation as to conspiracy to defraud * * * properly reflects the essence of the alleged offense," *Dennis*, 384 U.S. at 863.

### C.      The Indictment Need Not Allege A Violation Of A Statute Beyond Section 371

Despite the Indictment's detailed description of the defendants' intended fraud against the United States, Concord maintains (at 13-14) that Count One suffers from a "fatal structural flaw":

"it provides no indication of what is meant—under statute or regulation—by a 'lawful governmental function' as it relates to the FEC, the DOJ, or the FECA and FARA statutes." Instead, Concord asserts (at 14), the purportedly impeded governmental functions "exist only in the abstract" or are "locked up in the fertile mind of the Special Counsel, shrouded in secrecy." These claims are meritless.

Count One's allegations more than satisfy Concord's demand (at 16) that the Indictment "identify the 'governmental function' at issue." As explained *supra*, the Indictment provides significant detail concerning the federal laws governing election-expenditure disclosure obligations, foreign-agent registration requirements, and visa-application prerequisites. It also specifically identifies the federal agencies responsible for enforcing these laws. And the Indictment specifies how the defendants allegedly obstructed these agencies' functions by fraud and deceit.

Concord's real complaint (at 14-15) is that the Indictment does not "spell out with particularity how and why Concord has violated" a particular provision of either FECA or FARA, noting that these laws "are referred to but not cited in the Indictment." This argument misunderstands the essential nature of a conspiracy to defraud the United States in violation of Section 371. The indictment does not charge a conspiracy to commit an offense under Section 371's separate offense clause, which prohibits conspiring "to commit any offense against the United States." 18 U.S.C. § 371. It charges instead a conspiracy "to defraud the United States." *Id.* Regardless of whether the conduct contemplated by the defendants constituted or could be charged as separate crimes—or whether that conduct would not have been criminal apart from Section 371's defraud clause—the defendants' agreement to engage in the deceptive activities described in the Indictment violates Section 371 so long as the defendants' intent was to defraud

the United States by impeding a governmental function through deceit.  *Dennis*, 384 U.S. at 860-61.

The "gravamen" of a Section 371 conspiracy to defraud the United States is the combination of actors in using deception to defeat and impair the functions of the United States and its agencies.  *Dennis*, 384 U.S. at 860-61.  "It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns." *American Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *see also Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962) (same).  Accordingly, it is immaterial whether the defendants violated—or intended to violate—any statute other than Section 371.  "[T]he impairment or obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute." *United States v. Rosengarten*, 857 F.2d 76, 78 (2d Cir. 1988).  The "defraud clause does not depend on allegations of other offenses," *United States v. Barker Steel Co., Inc.*, 985 F.2d 1123, 1131 (1st Cir. 1993), and even otherwise "lawful activity may furnish the basis for a conviction under § 371," *United States v. Hurley*, 957 F.2d 1, 4 (1st Cir. 1992); *see also United States v. Cueto*, 151 F.3d 620, 636 (7th Cir. 1998) (same); *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993) (same), *overruled on other grounds*, *Neder v. United States*, 527 U.S. 1 (1999).  Thus, because a Section 371 conspiracy to defraud is itself a crime, a count of an indictment "drawn under it need refer to no other statute than § 371." *United States v. Vazquez*, 319 F.2d 381, 384 (3d Cir. 1963); *see also United States v. Vogt*, 910 F.2d 1184, 1200 (4th Cir. 1990) (same).

The decision in *United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C.), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999), exemplifies these principles.  In that case, the defendants were charged with multiple counts of causing political committees to make false statements to the

FEC in violation of 18 U.S.C. §§ 1001 and 2.  The defendants were also charged with conspiring to impede the lawful functions of the FEC in violation of Section 371.  The defendants argued (as Concord argues here) that the defraud-clause conspiracy charge was deficient "because they had no obligation to report their identity to the FEC or to reveal their identity to the political committees," and therefore "as a matter of law they could not have impaired or impeded any function of the FEC."  41 F. Supp. 2d at 10.  Invoking the principles set forth above, *Kanchanalak* rejected that argument, explaining that the indictment was legally sufficient because it "alleges a conspiratorial agreement to use deceptive or deceitful means to prevent the FEC from performing its lawful reporting function."  *Id.*

In the present case, as in *Kanchanalak*, the government will not have to ultimately prove that any particular defendant's conduct violated, for example, FECA or FARA.  Rather, the government will only have to prove that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the FEC or DOJ in a way that precluded those entities from ascertaining *whether* those substantive statutes were violated.  Thus, for example, if the government establishes that, had federal agents known of the defendants' Russian affiliation—which the defendants deceptively concealed from the United States—those agents would naturally have initiated an investigation to ascertain whether the defendants were in fact complying with the election-contribution or agent-registration laws, then the government has proved a Section 371 violation.  *Cf. United States v. Gaudin*, 515 U.S. 506, 509 (1995) (materiality in a prosecution under 18 U.S.C. § 1001 for making a false statement "in any matter within the jurisdiction of any department or agency" exists when the statement has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body") (citations and internal quotation marks omitted; tense of bracketed language altered); *United States v. Moore*,

612 F.3d 698, 701 (D.C. Cir. 2010) (false statement under Section 1001 "need not actually

influence an agency in order to be material").[5]  In such circumstances, the defendants' deception

about their affiliation would have forestalled (*i.e.*, impeded or obstructed) an agency's

investigation (*i.e.*, a lawful governmental function) even if that deception did not constitute

substantive violations of FECA or FARA.[6]

---

[5] Under Section 1001, a false statement can be within the jurisdiction of a federal agency even if it is not made directly to the government.  *See*, *e.g.*, *United States v. King*, 660 F.3d 1071, 1081 (9th Cir. 2011); *United States v. Herring*, 916 F.2d 1543, 1547 (11th Cir. 1990); *United States v. Baker*, 626 F.2d 512, 514 (5th Cir. 1980).  That principle—that fraudulent deception of the United States can occur through indirect, as well as direct means—applies equally under Section 371.  *See*, *e.g.*, *United States v. Ballistrea*, 101 F.3d 827, 832-33 (2d Cir. 1996) ("contention that the required element of 'obstruction' or 'interference' must involve actual contact between the defendant and the Government agency—for instance, through the making of misrepresentations to agency officials or the submitting of false information to the agency—finds no support in the case law") (collecting cases).  Moreover, the commission of a fraud does not require that the false statement was directed at the intended victim of the fraud.  *See United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016) (collecting cases rejecting "convergence" theory of mail and wire fraud).  Accordingly, the Indictment need not allege that the defendants' acts of deception included statements directed toward the FEC or DOJ, so long as the Indictment alleges, as it does, that a purpose of those acts of deception was to interfere with the lawful functions of the United States government.

[6] Concord contends (at 15) that the Court of Appeals has ruled to the contrary and found that a FECA violation is necessary to support *either* an offense-clause or a defraud-clause conspiracy.  A close reading of *In re Sealed Case*, 223 F.3d 775 (D.C. Cir. 2000), however, reveals that the dictum Concord refers to addressed the requirements of only an offense-clause conspiracy.  *In re Sealed Case* assessed the applicability of the crime-fraud exception to documents of a Republican National Committee (RNC) lawyer resisting compliance with a subpoena.  *Id.* at 776-78.  In finding that the crime-fraud exception did not apply, *In re Sealed Case* concluded that the conduct the RNC officials were accused of was "not criminal."  *Id.* at 779.  Further, the court reasoned, though the government had alleged that the RNC officials "'conspire[d] either to commit an[] offense against the United States or to defraud the United States,'" there could be "no finding of conspiracy" because the "transaction described by the government does not violate FECA."  *Id.*  As the opinion's next sentences demonstrate, however, this dictum refers only to an offense-clause conspiracy:  "Pure legal impossibility is always a defense.  For example, a hunter cannot be convicted of attempting to shoot a deer if the law does not prohibit shooting a deer in the first place.  Obviously a charge of conspiracy to shoot deer would be equally untenable."  *Id.* (citation and internal quotation marks omitted).

In sum, just as Concord contends (at 14) that it must, the Indictment "spell[s] out with particularity how and why Concord has violated the law."  The Indictment alleges that the defendants violated Section 371—a "law"—by conspiring to defraud the United States.  It also details the governmental functions that the defendants agreed to impede by deceitful and dishonest means, which is the "gist" of a defraud-clause conspiracy, *Dealy v. United States*, 152 U.S. 539, 547 (1894).  Nothing more is required.  Concord's insistence on specific allegations about particular violations of either FECA or FARA thus fails.  *See Recognition Equip., Inc.*, 711 F. Supp. at 5 ("Since it tracks the elements of § 371, which is an independent offense not requiring a showing that any specific statute has been violated, the 'means' list does not have to describe the specific elements of any substantive offense other than § 371.").

## D.    The Indictment Need Not Allege That The Defendants Had A Willful *Mens Rea*

Concord additionally asserts (at 19-38) that the Indictment's *mens rea* allegations are deficient because the Indictment does not allege either that the defendants acted with the "requisite willful intent" or that Concord itself "specifically intended, through its alleged conduct, to defraud the United States."  These claims are erroneous and should be rejected.

### 1.   Willfulness is not an element of a Section 371 defraud-clause conspiracy

Concord contends (at 4, 19-34) that, because Count One is "predicated on a highly technical web of election, campaign-finance, and foreign-agent registration laws" (FECA and FARA) and those statutes "invoke a willfulness requirement," Count One must also invoke a willfulness requirement, specifically an allegation that Concord "knew that its funding constituted a violation of law and intended that its conduct defraud the FEC and DOJ."  Concord's theory is incorrect because Congress provided mental state requirements in Section 371 through its use of the terms "conspire" and "defraud."  Those terms require knowing participation in a conspiracy and intent to defraud.  Because those forms of intent provide the requisite level of culpability, there

is no license to read into the statute additional, heightened forms of intent that do not appear in its text.

### a. Section 371 identifies the requisite mens rea as an intent to defraud the United States, not willfulness

The elements of a federal criminal offense, including the mental state required to commit the offense, is a matter for determination by Congress. *Liparota v. United States*, 471 U.S. 419, 424 (1985). Ordinarily, the *mens rea* element of an offense can be determined by examining the text of the statute and the accumulated meaning of any common law terms that the statute incorporates. If a statute provides no express *mens rea* element, either textually or through interpretation of common law terms, Congress is nonetheless presumed to require some form of *mens rea*. *See Morissette v. United States*, 342 U.S. 246, 252 (1952). But in such instances, there is no presumption that a defendant must "know that his conduct is illegal before he may be found guilty." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015). To the contrary, because ignorance of the law is generally no excuse, the "conventional *mens rea* element," *Staples v. United States*, 511 U.S. 600, 605 (1994), is that a defendant "'know the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime," *Elonis*, 135 S. Ct. at 2009 (citation omitted). A heightened *mens rea* requirement demanding knowledge of the law therefore cannot be implied absent statutory text that provides for such a showing—which Congress generally expresses by use of the word "willfully." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998). When that word is absent from a statute, courts almost invariably will not impose a knowledge-of-illegality requirement. *See id.* at 193.

Section 371 makes it a crime for two or more persons to "conspire" to "defraud the United States, or any agency thereof in any manner or for any purpose." Because Section 371 does not contain a willfulness requirement, a conspiracy-to-defraud offense can be established by showing

that the defendant knowingly and intentionally agreed to a course of conduct intended to defraud the United States, *i.e.*, that he knowingly conspired, with the intent to defraud.  No showing is required that he acted with knowledge of the law governing the federal entities whose activities he conspired to obstruct through deception.  *See Bates v. United States*, 522 U.S. 23, 29 (1997) (courts should "ordinarily resist reading words or elements into a statute that do not appear on its face").[7]

The terms that Section 371 employs—"conspire" and "defraud the United States"— confirm that no willfulness requirement exists.  "Section 371's use of the term 'conspire' incorporates long-established principles of conspiracy law."  *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016).  "In a conspiracy, two different types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy."  *United States v. United States Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978); *see Ocasio,* 136 S. Ct. at 1429 (same).  Accordingly, where— as here—the object of a Section 371 conspiracy is to defraud the United States, the government need only prove a knowing entry into a conspiracy with intent to defraud, which "means to act knowingly and with the intention or the purpose to deceive or to cheat."  *United States v. Howard*, 245 F. Supp. 2d 24, 38 (D.D.C. 2003) (citation and internal quotation marks omitted); *see United States v. Hester*, 598 F.2d 247, 250 (D.C. Cir. 1979) (per curiam); *see also Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (under the federal bank fraud statute, 18 U.S.C. § 1344(1), a "scheme to defraud" a bank means "to deceive the bank and deprive it of something of value") (emphasis

---

[7] *Bates* illustrates the flipside of this point:  a statute that contains a "willfully" requirement does not implicitly require intent to defraud.  522 U.S. at 29-33; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 16-17 (2010) (refusing to import "specific intent" requirement into material support statute, 18 U.S.C. § 2339B, where "Congress plainly spoke to the necessary mental state for a violation of § 2339B, and it chose knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities").

omitted); *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 686 n.5, 696 (1980) (under the securities laws, 15 U.S.C. § 77q(a), a "scheme or artifice to defraud" requires knowing or intentional misconduct "to deceive, manipulate, or defraud"); *United States v. Lepowitch*, 318 U.S. 702, 704 (1943) (under false personation statute, 18 U.S.C. § 76, "the words 'intent to defraud'" do "not require more than the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct").

Section 371's structure supports this reading of the statute's terms. There are two independent ways of violating Section 371: conspiring "to commit any offense against the United States" and conspiring "to defraud the United States." Thus, "Section 371, though written as one criminal statute, proscribes two types of conspiracies." *Vogt*, 910 F.2d at 1200. Because Concord is charged with conspiring to defraud the United States, not with committing a substantive offense, the requisite mental state is the intent of "impairing, obstructing, or defeating the lawful function of any department of government" through deception. *Dennis*, 384 U.S. at 861 (citation and internal quotation marks omitted); *Hammerschmidt*, 265 U.S. at 187-88.

Though Concord suggests (at 25) that this construction of Section 371 will permit the government to "evade" FECA's and FARA's willfulness standards and "routinely" charge "offense-clause cases * * * as defraud-clause cases," it has long been recognized that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979). It is thus "permissible to prosecute under either the defraud clause or the offense clause regardless of whether there [i]s a specific statute describing the conduct alleged in the conspiracy." *United States v. Harmas*, 974 F.2d 1262, 1266 (11th Cir. 1992); *see also Glasser*, 315 U.S. at 66-67 (rejecting claim that Section 371 defraud-clause indictment was "defective" because,

though the indictment charged a conspiracy "requiring concerted action namely, bribery," the indictment did not also charge "as a substantive offense the giving or receiving of bribes" or "a conspiracy to give or accept bribes"; the indictment "charges 'a conspiracy to * * * defraud the United States, the scheme of resorting to bribery being averred only to be a way of consummating the conspiracy and which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense'") (quoting *United States v. Manton*, 107 F.2d 834, 839 (2d Cir. 1939)).

Consistent with Section 371's text and structure, the D.C. Circuit defines the requisite *mens rea* for a defraud-clause conspiracy as an intent to defraud.  In *Treadwell*, the court explained that, "[t]o establish a criminal conspiracy under Section 371," the government must prove the defendant "knowingly participated in the conspiracy with the intent * * * to defraud the United States."  760 F.2d at 333.  Similarly, in *Davis*, the Circuit declared that a defraud-clause conspiracy charge requires proof that a defendant "knowingly agreed with [the co-defendant] (or another person) to defraud the federal government of money or to deceptively interfere with the lawful functions of" a particular government agency.  863 F.3d at 901; *see also Mellen*, 393 F.3d at 180-81 (same). Neither decision suggested that any heightened degree of culpability might exist based on the type of governmental function that was deceptively obstructed.  Because the Indictment conforms to Section 371's statutory terms and governing D.C. Circuit authorities, Concord's motion to dismiss should be denied.[8]

---

[8] Concord invokes the rule of lenity (at 12-13), but that rule is properly invoked only when "there is a grievous ambiguity or uncertainty in the statute."  *Shaw*, 137 S. Ct. at 469 (citation and internal quotation marks omitted); *accord, e.g., Dean v. United States*, 556 U.S. 568, 577 (2009).  As described, Section 371's "statutory text and structure," *Dean*, 556 U.S. at 577, demonstrate that that provision does not contain a willfulness element and that the statute is not ambiguous, let alone grievously ambiguous.

### b.   Importation of a willfulness element into Section 371's defraud clause is not necessary to ensure that such a charge captures only criminal conduct

Despite Section 371's plain language and the D.C. Circuit's defraud-clause precedents, Concord asserts (at 19-20) that a special *mens rea* rule applies where the underlying conduct relates to election contributions or foreign-agent registration.  Relying on *Ratzlaf v. United States*, 510 U.S. 135 (1994), and *Cheek v. United States*, 498 U.S. 192 (1991), Concord contends that, "where, as here," a Section 371 conspiracy alleges "interference with the enforcement of complex, reticulated statutory functions," the *mens rea* "specifically required is 'willfulness'—a standard that includes 'knowledge of the law[s]' that define those functions."

Concord's argument rests on a misconception about the nature of a defraud-clause conspiracy.  The defraud clause of Section 371 describes a stand-alone criminal offense:  a conspiracy to defraud the United States.  A defraud-clause charge requires reference to no other criminal offense because deceiving the government to impair its functions is culpable conduct in itself.  Thus, a defraud-clause conspiracy does not require proof that a completed conspiracy would violate the underlying substantive law.  Likewise, a defendant can conspire to impair governmental functions through deception without comprehensively or accurately understanding the legal requirements being administered.  These attributes of a defraud-clause conspiracy refute Concord's suggestion that this Court must borrow the willfulness standards of FECA or FARA and import them into Count One.  Proving the charged defraud-clause conspiracy does not depend on proving that the defendant's underlying conduct would amount to a substantive FECA or FARA violation, and there is therefore no basis for importing those statutes' *mens rea* requirements.[9]

---

[9] In any event, a violation of the provisions that the FEC is charged with enforcing as part of its lawful functions does not require a showing of willfulness.  Indeed, when the FEC brings civil enforcement actions it is not required to show a willful violation of FECA, as willfulness is an element only of a criminal violation.  *See, e.g., Federal Election Commission v. California Medical*

Concord's willfulness theory would treat the same language in Section 371 as having different meanings depending on the underlying governmental function at issue. "There is no basis whatever in the text" of Section 371, however, "to read the same provisions in that statute as requiring [willfulness] in some circumstances but not others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 17 (2010). Further, no principle of law would justify giving the statutory phrase "defraud the United States" different meanings depending on the particular conduct charged. Indeed, any suggestion to that effect would mean that FECA and FARA impliedly repealed the relevant language in Section 371. But the Supreme Court has recognized that to establish an implied repeal, "it is not enough to show that the two statutes produce differing results when applied to the same factual situation. Rather, the legislative intent to repeal must be manifest in the positive repugnancy between the provisions." *Batchelder*, 442 U.S. at 122 (citations and internal quotation marks omitted). Concord has identified nothing in the text or history of FECA or FARA that establishes a "positive repugnancy" between those laws and Section 371's defraud clause. To the contrary, because a defraud-clause conspiracy does not require proof of a substantive criminal violation, there is not the slightest tension between these statutes.

Moreover, *Cheek* and *Ratzlaf* do not assist Concord's claim that a willfulness requirement should be read into Section 371. Those cases do not address Section 371, and their holdings depend

---

*Ass'n*, 502 F. Supp. 196, 203 (N.D. Cal. 1980) (explaining that knowledge of the facts "is sufficient to create civil liability" under FECA, while willfulness must be shown to impose enhanced penalties); *In re Federal Election Campaign Act Litigation*, 474 F. Supp. 1044, 1047 (D.D.C. 1979) (faulting complaint filed with FEC for failing to allege that defendant acted "[k]nowingly"); *Federal Election Commission v. Friends of Jane Harman*, 59 F. Supp. 2d 1046, 1052 (C.D. Cal. 1999) (civil enforcement action based on defendant "knowingly accept[ing]" unlawful campaign contributions); *cf.* 52 U.S.C. § 30109(d)(1)(A) (imposing criminal penalties for "knowingly and willfully" violating certain provisions of FECA); *id.* § 30109(a)(5)(B) (imposing enhanced penalties in civil proceedings for willful violations). Accordingly, there is no reason why a defraud-clause conspiracy charging deceptive conduct intended to interfere with those lawful functions should require a showing of willfulness.

on statutory factors that are absent here:  express willfulness elements and schemes that raise the risk of penalizing persons for "innocent errors made despite the exercise of reasonable care." *Cheek*, 498 U.S. at 205 (citation and internal quotation marks omitted).  In *Cheek*, the Supreme Court recognized that the "proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws."  *Id.* at 199-200.  Accordingly, *Cheek* held, the standard for "the statutory willfulness requirement" of the tax offenses at issue was the "'voluntary, intentional violation of a known legal duty,'" and the district court thus erred in instructing the jury that it should "disregard evidence of Cheek's understanding that, within the meaning of the tax laws, he was not a person required to file a return or to pay income taxes[.]"  *Id.* at 201, 203 (citation omitted).  Similarly *Ratzlaf* held that, where the "statutory formulation [of the anti-structuring offense] under which Ratzlaf was prosecuted * * * call[ed] for 'willful[ness]' on the actor's part," the "jury had to find he knew the structuring in which he engaged was unlawful."  510 U.S. at 140, 149.  In so holding, *Ratzlaf* rejected the suggestion that "structuring is so obviously 'evil' or inherently 'bad' that the 'willfulness' requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring."  *Id.* at 146.  Both *Cheek* and *Ratzlaf* thus "involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct."  *Bryan*, 524 U.S. at 194.  "As a result," the Supreme Court "held that th[o]se statutes 'carv[e] out an exception to the traditional rule' that ignorance of the law is no excuse and require that the defendant have knowledge of the law."  *Id.* at 194-95 (citation and footnote omitted).

Neither *Cheek* nor *Ratzlaf* supports Concord's contention that this Court must specially graft a willfulness element onto Section 371 where the impaired regulatory functions relate to either election contributions or foreign-agent registration.  In contrast to the tax and structuring

offenses in those cases, Section 371 does not contain an express willfulness element, *i.e.*, a congressionally-designated element that connotes an act "undertaken with a 'bad purpose.'" *Bryan*, 524 U.S. at 191 (citation omitted).  The absence of such an element is understandable because, by definition, a conspiracy under the defraud clause must be deceptive or deceitful.  *See Hammerschmidt*, 265 U.S. at 187-88.  The wrongfulness of the conspiracy consists of acting with the intent to defraud by using deception to impair the government's functions.  Because such deceptive conduct aimed at disrupting governmental functions is inherently wrongful, Section 371 does not require additional proof that the defendant intended to act unlawfully to ensure that individuals engaged in innocent conduct are not ensnared by a Section 371 charge.  There is thus no justification for amending Section 371 by adding a non-statutory, willfulness element.  In the context of a defraud-clause conspiracy, the "agreement itself, along with other evidence of criminal or fraudulent purposes, demonstrates that the parties to it (1) manifested a disposition to criminal activity and (2) posed an enhanced danger to the community by their concerted, mutually enforcing actions."  *United States v. Shoup*, 608 F.2d 950, 957 (3d Cir. 1979).

### c.  Following **Cheek** *and* **Ratzlaf***, the federal courts of appeals have consistently declined to graft a willfulness element onto Section 371's defraud clause*

Numerous courts of appeals' decisions since *Cheek* and *Ratzlaf* have declined to import a willfulness element into Section 371, even in the context of defraud-clause conspiracies predicated on inherently complex tax and structuring offenses.  Those decisions confirm the government's position that no willfulness requirement exists here.

In *United States v. Derezinski*, 945 F.2d 1006 (8th Cir. 1991), Derezinski was prosecuted under Section 371's defraud clause with impeding the IRS even though he might have been prosecuted under Section 371's offense clause with substantive tax offenses.  *Id.* at 1010.  Like Concord, Derezinski argued that his indictment was "defective because it charged him under the

general defraud clause of Section 371 when the Government was actually trying to prosecute him for conspiring to commit two specific offenses"—concealing assets (26 U.S.C. § 7206) and circumventing the reporting requirements of financial institutions (31 U.S.C. §§ 5312, 5321).  945 F.2d at 1010.  The *Derezinski* court rejected this claim.  "While it may be true that the Government could have also charged Derezinski under the specific offense clause of section 371, it is well settled that when conduct violates more than one criminal statute, the Government may choose which statute it will apply."  *Id.*  Further, relying on *Cheek*, Derezinski contended that because the tax statute defining the specific offense required a showing of willfulness, the government had to prove the same level of willfulness when pursuing a conviction under Section 371's defraud clause. *Id.* at 1012.  *Derezinski* concluded, however, that "*Cheek* does not apply to this case because the Government prosecuted Derezinski under a general conspiracy statute, not a criminal tax statute, and because 'willfulness' is not an express element of section 371."  *Id.*

In like fashion, following *Ratzlaf*, numerous defendants have unsuccessfully argued that a willfulness standard should be imported into any Section 371 defraud-clause charge premised on a structuring offense.  In *United States v. Jackson*, 33 F.3d 866 (7th Cir. 1994), for example, a grand jury charged the defendants with conspiring to defraud the United States by impeding the IRS's function of collecting information about the defendants' over-$10,000 cash transactions— information, the indictment further alleged, that was "'useful in criminal, tax and regulatory investigations.'"  *Id.* at 869 (citation omitted).  In affirming the defendants' defraud-clause convictions, the Seventh Circuit emphasized that "a § 371 conspiracy to defraud the United States is an independent violation that need not be based on the violation of another substantive statute." *Id.* at 870.  Accordingly, the government "was not required to demonstrate knowledge of illegality, as *Ratzlaf* requires."  *Id.*  "*Ratzlaf*'s holding concerning the meaning of 'willfully violating' in the

antistructuring laws * * * has no bearing on the defendants' § 371 convictions; § 371 contains no such language." *Id.* at 871.  Rather, to prove a defraud-clause conspiracy, the government need only show an "'intent to commit the substantive offense, i.e., to defraud the United States.'" *Id.* at 872 (citation omitted); *see also United States v. Khalife*, 106 F.3d 1300, 1302-03 (6th Cir. 1997) (holding that "intent element of § 371 does not require the government to prove that the conspirators were aware of the criminality of their objective"; Section 371 "contain[s] no language connoting willfully," and the "proper *mens rea*" is an "intent to commit the substantive offense, i.e., to defraud the United States") (citations, emphasis, and internal quotation marks omitted); *United States v. Wapnick*, 60 F.3d 948, 952-53 (2d Cir. 1995) (following *Jackson* and declining to reverse defendant's defraud-clause conviction based on *Ratzlaf* —"a conspiracy conviction under § 371 does not require that the government prove a violation of a separate substantive statute").[10]

### d. Concord's authorities do not support grafting a willfulness element onto Section 371's defraud clause

Concord asserts (at 26-34) that numerous federal authorities "support[] the need for a willfulness showing here."  But the authorities Concord cites do not make the case for a willfulness *mens rea*.

Concord repeatedly invokes (at 1, 7, 17, 19, 20, 23-24, 27, 31, 32) Judge Kavanaugh's majority opinion in *Bluman v. Federal Election Comm'n*, 800 F. Supp. 2d 281 (D.D.C. 2011), *sum aff'd,* 565 U.S. 1104 (2012), and his concurring opinion in *United States v. Moore*, 612 F.3d 698

---

[10] Concord's effort to distinguish these cases fails.  Concord concedes (at 33) that *Khalife* and *Jackson* did not "require[] proof that the defendant knew it was violating the particular underlying substantive statute for purposes of a § 371 defraud conspiracy," but nevertheless maintains that those cases are consistent with its position because "both required proof that each co-conspirator agreed to accomplish an illegal objective against the United States and had the specific intent to impede lawful tax collection."  But the same is true of the indictment in this case, which alleges that the defendants intentionally conspired to impede the lawful functions of three federal government agencies.  ECF No. 1, ¶ 9.

(D.C. Cir. 2010), but neither addresses Section 371. *Bluman*—a civil case—assessed the constitutionality of the ban on non-citizens' political expenditures and cautioned that, when the government "seek[s] criminal penalties for violations of *th[at] provision*" (which requires a defendant "act 'willfully'"), the government must prove the defendant's "knowledge of the law." 800 F. Supp. 2d at 292 (citation omitted; emphasis added). Similarly, *Moore* concerned a violation of Section 1001, which "proscribes only those false statements that are 'knowingly *and willfully*' made.'" 612 F.3d at 702 (Kavanaugh, J., concurring) (emphasis added). Accordingly, Judge Kavanaugh opined, the government must prove that "the defendant knew his conduct was a crime." *Id.* at 704. Because Count One need not allege a violation of a substantive offense other than Section 371 and that statute does not contain an express "willful" element, *Bluman* and *Moore* contribute nothing to Concord's *mens rea* argument.

Equally unavailing are Concord's two First Circuit authorities (at 27-28), neither of which addresses the necessity of proof of willfulness in a Section 371 prosecution. Rather, in both cases, the district court apparently assumed the propriety of a willfulness instruction, and the defendants argued only that those instructions did not go far enough. In *United States v. Monteiro*, 871 F.2d 204 (1st Cir. 1989), the defendant was charged with both a defraud-clause conspiracy and substantive tax-code violations, which made it a crime to "'willfully aid[] or assist[]'" in the preparation of fraudulent tax documents. *Id.* at 208 (citation omitted). As to both charges, the district court instructed the jury that it had to find the defendant acted "'with specific intent to do something the law forbids.'" *Id.* (citation omitted). On appeal, however, the defendant complained that the willfulness instruction failed to charge the "'voluntary, intentional violation of a known legal duty,'" a claim that *Monteiro* rejected. *Id.* (citation omitted). In *United States v. Morosco*, 822 F.3d 1 (1st Cir.), *cert. denied*, 137 S. Ct. 251, 137 S. Ct. 403 (2016), both the government and

the defendant "asked the judge to tell the jury that a section-371 conviction requires proof that the defendant acted 'willfully,' *i.e.*, with 'bad purpose, either to disobey or to disregard the law.'" *Id.* at 20 (citation omitted). On appeal, however, the defendant claimed that the jury should also have been instructed that it had to find that the defendant knew his "actions were not just improper" but "'criminal.'" *Id.* at 21. Though acknowledging the United States' argument that the trial court's instruction "actually required prosecutors to prove 'a level of *mens rea*' higher than what the statute demands," *Morosco* declined to address this contention, reasoning that it was not relevant to the "*mens-rea* issue" actually raised by the defendant. *Id.* In neither *Monteiro* nor *Morosco* did the First Circuit consider whether willfulness was an element of a defraud-clause conspiracy.

Concord's reliance (at 28) on *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), is similarly misplaced. *Trie* rejected the very argument advanced by Concord in its motion, denying a pretrial motion to dismiss a Section 371 defraud-clause conspiracy that did not allege willfulness. In denying that motion, the court explained that, because the defendant was charged with impeding the lawful functions of the FEC by causing a political committee to file false campaign finance reports, the government would have to prove at trial that the defendants were aware of the political committee's reporting obligations. *Id.* at 14. Proof of such awareness was required in that case because the government's theory of criminal liability was that the defendants had impaired the lawful functions of the FEC by causing others to engage in deceptive conduct. To obtain a conviction on that theory, the government would be required to establish that the defendants were aware that the conduct they caused others to commit was deceptive, that is, the defendants were aware that their actions would cause the political committees to make false statements. But *Trie* did not hold that the government was required to plead in its indictment or prove at trial the element of willfulness—on the contrary, *Trie* rejected that very argument in denying the defendants' motion

to dismiss the Section 371 charge for failure to allege willfulness.  The quotation from *Trie* cited by Concord (at 28) for the contrary proposition ("the court concluded that the government was required to show the 'defendant knew of the [political party] treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful'") comes from a different section of the opinion addressing the elements of a violation of 18 U.S.C. §§ 1001 and 2.  *Trie*, 21 F. Supp. 2d at 14 (making the observation cited by Concord in a paragraph that begins, "Counts 9-11 of the indictment charge Mr. Trie with causing the DNC to make false statements in its reports to the FEC in violation of 18 U.S.C. § 1001 (false statements) and 2 (aiding and abetting)").  As *Trie* noted, Sections 1001 and 2 (unlike Section 371) both contain the word "willfully."  *Id.* (emphasizing the word "willfully" in Section 1001 in italics).

Concord also cites (at 28-29) *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994), but omits mention of the limitations imposed on that authority by the Third Circuit itself.  In *Curran*, the grand jury charged the defendant with causing election-campaign treasurers to submit false reports to the FEC, in violation of 18 U.S.C. §§ 2(b) and 1001.  20 F.3d at 562.  The grand jury also charged the defendant with a defraud-clause conspiracy "based on the same conduct."  *Id.*  In reversing the defendant's Section 1001 convictions, *Curran* concluded that the government had "the burden of proving that defendant knew of the campaign treasurers' obligation to submit contribution reports" to the FEC, and that the jurors should have been so instructed, but were not. *Id.* at 570.  And, relying on a single *offense-clause* authority, *Curran* summarily reasoned that the defendant's Section 371 conviction also had to be overturned because the "trial court essentially incorporated the instruction on intent it had used for the substantive counts" into the conspiracy charge and, in order to prove a conspiracy, "'the government must show an agreement to commit an unlawful act combined with intent to commit the underlying offense.'"  *Id.* at 571 (quoting

*United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1100 (3d Cir. 1989)).   In light of the scant and questionable foundation supporting *Curran*'s reasoning, it is not surprising that the Third Circuit has subsequently confined its reach to the charges at issue there, "tandem violations of §§ 1001 and 2(b) in the 'federal election law context,'" two statutes that (unlike Section 371) contain the term "willfully."   *United States v. Starnes*, 583 F.3d 196, 211-12 (3d Cir. 2009) (quoting *Curran*, 20 F.3d at 567-69).   Indeed, in a further retreat from *Curran*, the Third Circuit has also recognized that willfulness generally "is not an element of the crime of conspiring to defraud the United States," and has thus reserved whether in a defraud-clause prosecution based on interference with the IRS the government would have to prove that the defendant "acted willfully."   *United States v. McKee*, 506 F.3d 225, 243 n.14 (3d Cir. 2007).[11]

---

[11] Concord relies (at 28-29) on another Third Circuit authority, *United States v. Alston*, 77 F.3d 713 (3d Cir. 1996), but *Alston* simply applied *Curran* in a case involving structuring of financial transactions.  *See id.* at 719 ("Both logic and our decision in *Curran* dictate our holding here."). Moreover, the defraud-clause conspiracy charged in *Alston* consisted of "nothing more than structuring," and the government's proof at trial supporting the defraud-clause charge consisted of exactly "the same body of evidence" supporting the structuring conspiracy, a charge of which Alston was acquitted after trial.  *Id.* at 720.  The Third Circuit found significant the fact that the defraud-clause conspiracy and the structuring conspiracy were identical, and limited its holding accordingly:   "Although we do not foreclose the possibility of convicting a defendant under § 371's 'defraud' clause based on charges *in addition to* or *different from* pre-1994 acts of structuring, as we have just discussed, the present indictment * * * charged no more or less than a straight-out structuring conspiracy."  *Id.* at 721.  As discussed *supra*, *Alston*'s conclusion that a defraud-clause conspiracy identical to a structuring conspiracy requires proof of willfulness is inconsistent with the Supreme Court's repeated admonition that the same conduct can be criminalized by multiple statutes with different elements.   But in any event *Alston* is distinguishable from this case in that the defraud-clause conspiracy in Count One is not "nothing more than" a conspiracy to violate a single statute requiring willfulness.  On the contrary, Count One alleges that the defendants (including Concord) engaged in a variety of deceptive and deceitful acts intended to impede the lawful governmental functions of multiple federal agencies.  Therefore, the indictment in this case does not present the circumstance presented by *Alston*, where the defraud-clause conspiracy "charged no more or less than a straight-out" conspiracy to violate a single criminal statute requiring willfulness.  *Id.*

Finally, *United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994), does not support Concord's effort to read a willfulness element into Section 371.  In *Licciardi*, the Ninth Circuit reversed the defendant's defraud-clause conspiracy conviction on the ground that the evidence at trial failed to establish that a purpose of the conspiracy (rather than merely its "incidental effects") was to impair the functions of the federal government.  *Id.* at 1132.  In so holding, the Ninth Circuit reasoned that "[i]t might have been easy for the government to establish that Licciardi" was aware of the relevant regulations and acted with the intent to frustrate them, but the government did not present evidence to that effect at trial.  *Id.*  As explained below, the indictment in this case does allege (and the evidence at trial will show) that, consistent with *Licciardi*, a purpose of the conspiracy charged in Count One was to defeat the lawful governmental functions of the FEC, DOJ, and DOS.  But *Licciardi* did not purport to hold that willfulness was an element of a defraud-clause conspiracy charged under Section 371.

Concord cites the Department of Justice's *Federal Prosecution of Election Offenses* handbook (at 23-25) for the proposition that "the government itself agree[s] that election-based conspiracies like the one charged here required a showing of willfulness."  While the handbook might be susceptible of this interpretation, the Department recently issued a clarification to address that ambiguity and make clear that it is "not the Department's position" that a jury in a Section 371 defraud-clause prosecution must find both willfulness and the intent to disrupt a federal agency function.  *See* Memorandum from Richard C. Pilger, Director, Election Crimes Branch, Public Integrity Section of the Criminal Division (Aug. 6, 2018) (attached as Appendix A).  "The Department's position regarding the required intent for a conspiracy to defraud the United States is that the jury must find the intent to disrupt and impede the lawful function of a federal agency through deceitful means."  *Id.* (citing *Khalife*, 106 F.3d at 1303; *United States v. Cyprian*, 23 F.3d

1189, 1201 (7th Cir. 1994); *Derezinski*, 945 F.2d at 1012).   That is consistent with the longstanding litigating position of the United States on the interpretation of Section 371:   in all manner of Section 371 litigation, the United States has consistently advocated that a defraud-clause conspiracy does "not require proof of willfulness."   U.S. Br., *United States v. Basile*, 2014 WL 1118045, at \*39 (5th Cir. 2014).[12]   In any event, the "Government's reading of a criminal statute" in Justice Department guidance documents like the handbook "is [not] entitled to any deference" by the courts because it may reflect, for example, "overly cautious legal advice," *United States v. Apel*, 571 U.S. 359, 369 (2014); *see also Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014) ("criminal laws are for courts, not for the Government, to construe").

### e.   The Indictment's charges do not implicate protected speech

Finally, Concord's willfulness argument is not advanced by observing that the Indictment's allegations relate to the 2016 election, as Concord claims (at 20-22).   Although Concord maintains (at 2) that, "when it comes to political speech, one is free to pretend to be whomever he or she wants to be and to say whatever he or she wants to say," the Indictment does not "target" such "political speech."   Rather, the Indictment targets the defendants' participation in a conspiracy to

---

[12] *See also*, *e.g.*, U.S. Br., *United States v. Morosco*, 2016 WL 199268, at \*27 (1st Cir. 2016) (Criminal Division brief:   "Here, Section 371 required proof that the defendant conspired with others to impair or impede a lawful government function through deceitful means.   Because such conduct is inherently wrongful, and because Section 371 does not expressly or implicitly require 'willful' action, the statute does not require proof that the defendant intended to act unlawfully."); U.S. Br., *United States v. Flowers*, 2003 WL 22715930, at \*13 n.2 (9th Cir. 2003) ("The District Court's instructions deviated from the standard definition of conspiracy to defraud the United States, which does not require the government to prove willfulness."); U.S. Br., *United States v. Stacey*, 2003 WL 23303138, at \*19 n.5 (9th Cir. 2003) ("In order to establish a conspiracy to defraud the United States, the government need only establish an intent to defraud and not the intent necessary to commit another substantive offense."); U.S. Br., *United States v. Khalife*, 1995 WL 17849650, at \*14 (6th Cir. 1995) ("statute prohibiting conspiracies 'to defraud the United States' does not require proof that defendants knew their conduct was unlawful").

obstruct governmental functions by deceitful means, conduct that is not protected by the First Amendment.

The Indictment's allegations focus not on the defendants' speech but their numerous deceptive acts.  Those acts, the Indictment charges, were designed to mask the defendants' Russian affiliation and, in turn, impede the lawful functions of the FEC, DOJ, and DOS.  Thus, the Indictment alleges, the defendants:  deployed "false[hoods]" on their visa applications, which allowed certain defendants to travel to the United States under "false pretenses in order to collect intelligence" (ECF No. 1, ¶ 30); created "fictitious U.S. personas" on social media sites (*id.* ¶¶ 32, 43, 48); used numerous Twitter accounts, which they "falsely claimed" to be controlled by U.S. entities (*id.* ¶ 36); used stolen U.S. identities to maintain social media accounts and to purchase advertisements (*id.* ¶ 41); and purchased space on computer servers located in the United States to "hide their Russian identities" (*id.* ¶ 39).  By these myriad fraudulent means—and not by means of any protected political speech—the Indictment charges, the defendants endeavored to impede the lawful governmental functions of the relevant government agencies.

These allegations do not implicate the First Amendment because "fraud" is one of the "historic and traditional categories" of content-based speech restrictions that can generally be prohibited.  *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality op.) (citation and internal quotation marks omitted); *see also United States v. Stevens*, 559 U.S. 460, 468-69 (2010); *Illinois ex rel. Madigan v. Telemarking Assoc., Inc.*, 538 U.S. 600, 612 (2003).  Indeed, the Supreme Court has recognized, those criminal statutes that "protect the integrity of Government processes"—such as laws prohibiting individuals from falsely representing that one is speaking on the government's behalf or from impersonating a government official—are beyond the First Amendment's scope because they "implicate fraud or speech integral to criminal conduct."  *Alvarez*, 567 U.S. at 721-

30

22 (plurality op.).   The Indictment's allegations similarly do not implicate the First Amendment because they involve the defendants' deceptive efforts to obstruct the lawful functions (*i.e.*, government processes) of several government entities.  *See United States v. Daly*, 756 F.2d 1076, 1081-82 (5th Cir. 1985) (rejecting defendant's claim that his "very prosecution" pursuant to Section 371 for impeding the IRS "violated his First Amendment right to the freedom of speech"— "an illegal course of conduct is not protected by the First Amendment merely because the conduct was in part initiated, evidenced, or carried out by means of language").

* * * * *

In sum, Count One is sufficient because it alleges (1) that Concord knowingly and intentionally participated in a conspiracy to engage in deceptive conduct, and (2) that a purpose of that deceptive conduct (although neither the only nor the primary purpose) was to frustrate lawful governmental functions.[13]

### 2. The Indictment adequately alleges that the conspirators specifically intended to defraud the United States or its agencies

Concord additionally contends (at 34-38) that "a § 371 conspiracy to defraud requires more than just conduct, even fraud, which ultimately can be linked to an impairment of a lawful

---

[13] Count One also charges that the defendants conspired to impede DOS's function "in administering federal requirements for disclosure of foreign involvement in certain domestic activities," including by "obtaining visas through false and fraudulent statements."  ECF No. 1, ¶¶ 7, 9.  Concord understandably does not contend that willfulness is an element of visa fraud. Thus, the Indictment's visa-related allegations alone preclude this Court from dismissing Count One in its entirety.  And, although Concord maintains (at 4 n.3) that the Indictment does not allege that Concord itself knew "about the visa application process or the representations made by the co-defendants," such specific allegations are unnecessary so long as the Indictment contains all the elements and describes the essential nature of the defendants' fraudulent scheme, which it does. *See Glasser*, 315 U.S. at 66-67.  Any proof issues about Concord's specific knowledge of the agreement's scope, including the visa-related actions of Concord's co-conspirators, thus could only justify this Court's grant of an in-trial or post-trial motion for judgment of acquittal, not a motion to dismiss the Indictment.

function."   Rather, it claims that the government must show that a defendant "committed to engag[ing] in fraud that [he] knew would be specifically directed at the United States government or its agencies."   But, Concord claims (at 34-35), the Indictment "alleges only" that Concord "provided funding for unspecified purposes to foreign persons, recommended personnel, and reviewed budgets containing advertising expenditures * * * but with no indication that Concord specifically targeted the United States or its agencies in undertaking that conduct."   To the extent that Concord suggests that it must have performed or agreed to perform the fraudulent conduct itself, its position contradicts basic principles of conspiracy law.   *See Salinas v. United States*, 522 U.S. 52, 63-64 (1997) ("The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other."); *accord Ocasio*, 136 S. Ct. at 1429-30.   And to the extent that Concord suggests that targeting the United States must have been the sole or primary object of the conspiracy, its position contradicts the law interpreting Section 371.

"The conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly—by the *target* of the conspiracy," which the statute identifies as "'the United States or any agency thereof.'"   *Tanner*, 483 U.S. at 130.   The impairment of a lawful governmental function, however, need "not be the sole or even a major objective of the conspiracy."   *United States v. Gricco*, 277 F.3d 339, 348 (3d Cir. 2002) (Alito, J.), *overruled on other grounds*, *United States v. Cesare*, 581 F.3d 206 (3rd Cir. 2009).   Nor need it be an "objective that is sought as an end in itself."   *Id.*   Indeed, the "intent to defraud the United States may be incidental to another primary motivation or purpose."   *United States v. Gurary*, 860 F.2d 521, 525 (2d Cir. 1988).   The

government need only show that impeding a governmental function "was one of the conspiracy's objects and not merely a foreseeable consequence or collateral effect." *Gricco*, 277 F.3d at 348.

The Indictment meets these standards because it charges that the defendants conspired to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit "for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016." ECF No. 1, ¶ 2.  It further alleges that, in order to carry out these interference activities without detection of the defendants' Russian affiliation, the "conspiracy had as its object" the impairment of the functions of the FEC, DOJ, and DOS, the government entities charged with "administering federal requirements for disclosure of foreign involvement in certain domestic activities." *Id.* ¶¶ 7, 9, 28.  The defendants' acts of fraud and deceit included making expenditures in connection with the 2016 election "without proper regulatory disclosure"; failing to register as foreign agents carrying out political activities within the United States; and obtaining visas "through false and fraudulent statements." *Id.* ¶¶ 7, 9.  By "clearly alleg[ing] that the object of the conspiracy was to obstruct specific functions of specific agencies," identifying the "functions" of those agencies, and describing particular acts that thwarted those agencies' functions, the Indictment satisfies Rule 7(c).  *United States v. Hsia*, 24 F. Supp. 2d 33, 53 (D.D.C. 1998), *rev'd on other grounds*, 176 F.3d 517 (D.C. Cir. 1999); *see also Barker Steel Co.*, 985 F.2d at 1135-36; *Kanchanalak*, 41 F. Supp. 2d at 10.

Concord does not contest that the Indictment sufficiently alleges a United States target, but claims (at 38) that Count One must be dismissed because it fails to identify the specific evidence demonstrating *Concord*'s knowledge that the conspiracy was "directed" at the government. "Although an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the

Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (en banc) (per curiam); *see also United States v. Singhal*, 876 F. Supp. 2d 82, 93 (D.D.C. 2012). As explained *supra*, the Indictment contains all the essential elements of the Section 371 offense, including that the "*Defendants* * * * knowingly and intentionally conspired to defraud the United States by impairing, obstructing, and defeating the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in administering federal requirements for disclosure of foreign involvement in certain domestic activities." ECF No. 1, ¶ 9 (emphasis added). Nothing more is required. *See Kanchanalak*, 41 F. Supp. 2d at 10; *Hsia*, 24 F. Supp. 2d at 53; *see also United States v. Cella*, 37 App. D.C. 423, 427 (1911) ("It is true that the particular part to be assumed or undertaken by each conspirator in the consummation of the unlawful scheme is not set forth [in the indictment]; but this is unnecessary.").

Similarly, to the extent that Concord intimates (at 35) that the Indictment is deficient because the defendants' actual goal was to influence private parties (*i.e.*, United States voters) that is not a reason to dismiss Count One. On the contrary, as discussed above, even if the defendants' primary reason for engaging in deceptive and deceitful conduct was to influence private parties, that conduct nevertheless establishes a defraud-clause conspiracy so long as another reason for the defendants' conduct was to impair lawful governmental functions. That the defendants engaged in deceptive and deceitful conduct to obtain *both* the objective of influencing private parties and the objective of impairing governmental functions makes perfect sense, as the defendants may not have been able to influence private parties unfettered had they subjected themselves to regulation by the federal government. Concord's voters-as-target argument is thus a proof issue for trial, a

point that Concord's own authorities (at 35-38) make.   None of those courts dismissed an indictment pursuant to Fed. R. Crim. P. 12.   Instead, those courts concluded that the government's proof—adduced either at a jury trial or in a bench trial via stipulated facts—failed to show that the defendants intended to thwart a governmental function.   *See United States v. Mendez*, 528 F.3d 811, 815 (11th Cir. 2008) (per curiam) ("The facts to which the parties stipulated do not show that Mendez even knew the federal government was * * * involved in the issuance of Florida [commercial driver's licenses], let alone that the United States was the ultimate intended target of Mendez's conduct."); *Licciardi*, 30 F.3d at 1132 (government "failed to prove its case against Licciardi for conspiracy to defraud the United States by impairing the functions" of the Bureau of Alcohol, Tobacco and Firearms because government "did not make the effort to show that Licciardi had 'conspired to cause'" a private party "to provide false information to the BATF") (quoting *Tanner*, 483 U.S. at 132); *United States v. Pappathanasi*, 383 F. Supp. 2d 289, 291-95 (D. Mass. 2005) (granting post-trial, Rule 29 motion where government's evidence failed to show that "a purpose of the conspiracy was to interfere with the proper functioning of the IRS").

At trial, the government "will have the burden of proving the existence of a conspiratorial agreement and the obstruction of a function" of the FEC, DOJ, or DOS, "but the indictment sufficiently alleges a Section 371 conspiracy."   *Hsia*, 24 F. Supp. 2d at 53.

### E.   The Indictment Need Not Allege A Deprivation Of Government Money Or Property

Though conceding (at 43-44) that this Court is bound by *Hammerschmidt*, which held that Section 371 "extends to conspiracies to defraud aimed at interfering with 'lawful governmental functions' even where the government is not deprived of 'property or money,'" Concord asserts that that decision's "atextual" construction of Section 371 is "plainly wrong."   This claim is meritless.

As support for its "plainly wrong" contention, Concord cites (at 44) a pre-*Hammerschmidt* decision that described the fraud prohibited by the statutory predecessor to Section 371 as only fraud "against the coin" and "cheating the government of its land or other property," *United States v. Hirsch*, 100 U.S. 33, 35 (1879). This assertion, however, ignores that the Supreme Court has repeatedly recognized and reaffirmed the construction of the conspiracy statute's defraud clause subsequently adopted in *Hammerschmidt*. Thus, whatever the import of the 1879 decision in *Hirsch*, the Court has thereafter—in 1942, 1966, and 1987—consistently embraced a definition of fraud that encompasses interference with a lawful governmental function. *See*, *e.g.*, *Glasser*, 315 U.S. at 66; *Dennis*, 384 U.S. at 861; *McNally*, 483 U.S. at 358 n.8. Concord also suggests (at 44) that *Hammerschmidt* ignored the "settled common-law meaning" of defraud—"to deprive another of property rights by dishonest means." But when the initial version of the conspiracy statute— which prohibited conspiring "to defraud the United States in any manner whatever," Act of March 2, 1867, ch. 169, § 30, 14 Stat. 471, 484—was enacted, none of the definitions of "defraud" listed in Noah Webster's leading contemporary dictionary was limited to circumstances involving money or property. *See* Noah Webster, *American Dictionary of the English Language* 347 (1864 ed.) ("Webster"). The primary definition was instead "[t]o deprive *of right* by fraud, deception, or artifice." *Id.* (emphasis added). One of Webster's alternative definitions of "defraud"—"[t]o defeat or frustrate wrongfully," Webster 347—was potentially even more expansive. And Congress's inclusion in the conspiracy statute of the modifier "in any manner whatever" (which was later expanded to "in any manner or for any purpose," Rev. Stat. § 5440; 18 U.S.C. § 371) demonstrated its intention that the term "defraud" be given its broadest possible meaning.

In any event, even if this Court were not bound by *Hammerschmidt*, Concord's attempt to re-litigate its holding is misplaced. Congress long ago adopted for itself the definition that

precedent provided.  In 1948, when Congress codified the current conspiracy statute, *see* Act of June 24, 1948, ch. 645, 62 Stat. 683, 701 (enacting 18 U.S.C. § 371), the Supreme Court's interpretation of the phrase "defraud the United States in any manner or for any purpose" was already well established.  See *Haas*, 216 U.S. at 479-80; *Hammerschmidt*, 265 U.S. at 187-88; *Glasser*, 315 U.S. at 66.  By deciding to incorporate that language into Section 371, Congress manifested its intent also to incorporate the preexisting definition provided by the Supreme Court's decisions.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)).  Congress made no relevant change here.  If anything, the language of Section 371—which prohibits conspiring "to defraud the United States, *or any agency thereof* in any manner or for any purpose," 18 U.S.C. § 371 (emphasis added)—is even broader than the language of the conspiracy statute when *Hammerschmidt* was decided, which did not specifically mention agencies, *see* 265 U.S. at 185 (quoting Rev. Stat. § 5440).[14]

---

[14] Concord additionally contends (at 43) that *Hammerschmidt*'s holding has been "eroded" by *Skilling v. United States*, 561 U.S. 358 (2010).  *Skilling*, however, addressed a different statute, namely 18 U.S.C. § 1346, which expanded the scope of certain substantive fraud offenses to include schemes "to deprive another of the intangible right of honest services."   To avoid vagueness concerns with that phrase—not the term "to defraud"—*Skilling* construed Section 1346 to cover "only bribery and kickback schemes."   561 U.S. at 368; *see id.* at 399-413.  *Skilling* reasoned that Congress had intended, in enacting Section 1346, to codify the courts of appeals' pre-*McNally* understanding of the relevant fraud statutes and that bribes and kickbacks were the "core" conduct clearly prohibited by the pre-*McNally* cases.  *Id.* at 399-413.  Plainly, *Skilling*'s vagueness concerns about a congressional attempt to resurrect a set of circuit decisions that "were not models of clarity or consistency," *id.* at 405, do not apply here, where Congress has codified longstanding and clear statutory-interpretation decisions of the Supreme Court.

## II.     Section 371's Defraud Clause Is Not Unconstitutionally Vague Either On Its Face Or As Applied To The Conduct Alleged In The Indictment

Concord finally contends (at 40) that the Indictment should be dismissed because, "even on its face," Section 371's defraud clause "could be construed expansively to extend to all the myriad ways in which the government regulates and operates on a daily basis." Further, Concord raises an apparent as-applied challenge, asserting (at 4) that Count One "is an unconstitutionally vague conspiracy charge." These arguments fail.

A penal statute is void for vagueness only if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam). Nor is a statute unconstitutionally vague simply because "trained lawyers" must "consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty" what the statute forbids. *Id.* at 50. Instead, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute[.]" *United States v. Lanier*, 520 U.S. 259, 266 (1997); *see also Morosco*, 822 F.3d at 5 ("Of course the requisite fair warning can come from judicial decisions construing the law.").

Recently, the Supreme Court clarified that a "vague" criminal statute is not otherwise "constitutional merely because there is *some* conduct that falls within the provision's grasp." *Johnson v. United States*, 135 S. Ct. 2551, 2561 (2015) (emphasis added). Following *Johnson*, then, Section 371's defraud clause is not necessarily "saved by the fact that some conduct clearly falls within" its prohibition. *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *vacated on other grounds*, 138 S. Ct. 1323 (2018). "But as several circuits have held, *Johnson* did

not change the rule that a defendant whose conduct is clearly prohibited cannot be the one making that challenge." *Id.* (citing decisions from seven circuits); *see also United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (per curiam) ("Though Bramer need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct."); *Crooks v. Mabus*, 845 F.3d 412, 417 (D.C. Cir. 2016); *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 895 (D.C. Cir. 2015).[15]

Concord "is in no position to assert a facial vagueness challenge" to Section 371, *Flytenow, Inc.*, 808 F.3d at 895, because Concord has failed to show that the defraud clause is vague as applied to the particular conduct charged in the Indictment. To the contrary, that conduct is "clearly proscribed," *id.*, by Section 371. As noted above, "to defraud the United States" means to "interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *See supra.* The Indictment alleges that, in order to mask their Russian affiliation from those federal agencies charged with enforcing laws governing disclosure of foreign involvement in certain domestic activities, defendants used fraudulent and deceitful means, including making expenditures in connection with the election without regulatory disclosure, failing to register as foreign agents, and obtaining visas through false statements. The defendants' agreement, which aimed to impair the proper functioning of the FEC, DOJ, and DOS, for the purpose of interfering with United States electoral processes and which involved multiple forms of dishonest behavior, thus falls squarely within the longstanding understanding of Section 371's defraud-the-United States prohibition. *See Morosco*, 822 F.3d at 5-7 (Section 371 is not

---

[15] "[W]hen a statute 'interferes with the right of free speech or association, a more stringent vagueness test'" applies. *Humanitarian Law Project*, 561 U.S. at 19 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Contrary to Concord's contention (at 42), however, the application of Section 371's defraud clause to defendants' conduct does not threaten any First Amendment rights. *See* Part I.D.1.e *supra.*

unconstitutionally vague as applied to conspiracy to obstruct HUD agency's inspection function);
*Cueto*, 151 F.3d at 635-36 (Section 371 is not unconstitutionally vague as applied to efforts to
impair an FBI investigation and impede a grand jury); *Derezinski*, 945 F.2d at 1010-11 (Section
371 is not unconstitutionally vague as applied to conspiracy to hide taxable income from the IRS);
*United States v. Middendorf*, 2018 WL 3443117, at *6 (S.D.N.Y. July 17, 2018) (Section 371 is
not unconstitutionally vague as applied to conspiracy to obstruct SEC in execution of its regulatory
and enforcement functions); *see also Barker Steel Co.*, 985 F.2d at 1134-35 (finding no notice
problem where Information's allegations "involved deceit and trickery to benefit the defendants
by hampering a lawful government function").[16]

Even if Concord were permitted to raise a facial challenge to Section 371, the defraud
clause's longstanding construction to prohibit deceptive conduct that aims to obstruct federal
agency functions is not vague.  In 1924, *Hammerschmidt* "clarified the meaning of conspiracy to
defraud," *Cueto*, 151 F.3d at 635.  The fraud covered by the statute reaches any conspiracy for the
purpose of impairing, obstructing or defeating the lawful function of any department of the
Government.  *Hammerschmidt*, 265 U.S. at 188; *see also Tanner*, 483 U.S. at 128.  "[I]t is settled"
that a defendant must at least employ "dishonest means" in executing his scheme.  *Glasser*, 315
U.S. at 66; *see also Hammerschmidt*, 265 U.S. at 188.  Moreover, because the statute is "designed
to protect the integrity of the United States and its agencies," *United States v. Ballistrea*, 101 F.3d
827, 831 (2d Cir. 1996) (citation and internal quotation marks omitted), it reaches schemes beyond

---

[16] Concord points (at 38-39) to statements made by the government at an earlier hearing addressing
whether the Court should review any instructions given to the grand jury.  The issue here, however,
is whether the Indictment adequately states an offense.  Any concerns or disagreements about how
to articulate the precise basis for liability under the statute should be resolved in framing jury
instructions.   The adequacy of the Indictment does not turn on counsel's statements at any earlier
hearing addressing a different issue.

those that deprive the government of money or property, *see McNally*, 483 U.S. at 358 n.8; *see also Davis*, 863 F.3d at 901 (same).  Judicial decisions have thus provided specific requirements that explicate the basis of liability for defrauding the United States in terms that ensure ordinary persons will understand what conduct is prohibited.  These requirements of a fraudulent scheme to impede a governmental function are no less clear than the requirements of other fraud statutes, which the courts have consistently upheld in the face of vagueness challenges like Concord's.  *See*, *e.g.*, *United States v. Tagliaferri*, 820 F.3d 568, 575 n.6 (2d Cir. 2016) (per curiam) (securities fraud statute); *United States v. Berry*, 683 F.3d 1015, 1024-25 (9th Cir. 2012) (Social Security fraud statute); *United States v. Franklin-El*, 554 F.3d 903, 910-11 (10th Cir. 2009) (health care fraud statute); *United States v. Rybicki*, 354 F.3d 124, 144-45 (2d Cir. 2003) (en banc) (mail and wire fraud statutes); *see generally United States v. Janati*, 237 F. App'x 843, 847 (4th Cir. 2007) (per curiam) (unpublished) ("courts have uniformly rejected vagueness challenges to * * * mail, bank, and securities fraud statutes").

Moreover, Concord's vagueness challenge to Section 371's defraud clause is particularly unpersuasive in light of the culpable state of mind required to violate the statute:  an intent to defraud, meaning an intentional effort to deceive the government in order to impair or defeat regulatory functions.  Under the Supreme Court's "precedents, a scienter requirement in a statute 'alleviate[s] vagueness concerns,' 'narrow[s] the scope of [its] prohibition[,] and limit[s] prosecutorial discretion.'" *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 150 (2007)).  Statutes with *mens rea* requirements requiring a bad purpose are particularly unlikely to support a constitutional vagueness claim.  *See, e.g., Skilling v. United States*, 561 U.S. 358, 412 (2010).  Because Section 371 requires a specific intent to defraud, Concord's facial vagueness challenge fails.  *See Franklin-El*, 554 F.3d at 911 (rejecting

vagueness attack because, *inter alia*, health care fraud statute "requires a specific intent to defraud or misrepresent").[17]

Concord nonetheless claims (at 40) that Section 371 provides inadequate notice because "'governmental function' is not self-defining." By its plain terms, however, Section 371 prohibits persons from conspiring to defraud the United States "or any agency thereof." And a "function" is the "action for which a person or thing is specially fitted, used, or responsible or for which a thing exists." *Webster's Third New International Dictionary* 920 (1986). A person reading Section 371 in light of *Hammerschmidt*'s "governmental function" construction would thus be on notice that he could not conspire to obstruct the actions for which a federal agency is responsible. *See Barker Steel Co.*, 985 F.2d at 1131 ("Conspiracy to thwart the operation and purpose of a government program through deceit and trickery is prohibited by § 371."). In any event, a "statute can be unambiguous without addressing every interpretative theory offered by a party. It need only be 'plain to anyone reading the Act' that the statute encompasses the conduct at issue." *Salinas*, 522 U.S. at 60 (citation omitted). As construed by the Supreme Court, Section 371 plainly forbids persons from conspiring to obstruct an agency's operations by deceitful means, which the Indictment charges the defendants did here.

---

[17] This fair-notice conclusion is not contradicted by *McDonnell v. United States*, 136 S. Ct. 2355 (2016), as Concord contends (at 42-43). *McDonnell* construed "official act" as used in the bribery statute, which prohibits *quid pro quo* corruption. The government argued that the term "official act" encompasses "nearly any activity by a public official," including "arranging a meeting, contacting another public official, or hosting an event—without more—concerning any subject[.]" *Id.* at 2367. *McDonnell* held that the government's interpretation of "official act" was not defined with sufficient definiteness that ordinary people could understand what conduct is prohibited. *Id.* at 2367-68. *Hammerschmidt*'s construction of Section 371's defraud clause, however, reaches only fraud that is designed to impair, impede, or defeat government functions. Ordinary citizens would readily understand that dishonest or deceitful efforts to obstruct governmental functions constitutes culpable behavior.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny

Concord's motion to dismiss (ECF No. 46).

Respectfully submitted,

ROBERT S. MUELLER III                     JESSIE K. LIU
Special Counsel                            United States Attorney


By:  /s/                                   By:  /s/
Michael R. Dreeben                         Jonathan I. Kravis
Jeannie S. Rhee                            Deborah A. Curtis
Adam C. Jed                                Kathryn L. Rakoczy
U.S. Department of Justice                 Assistant United States Attorneys
Special Counsel's Office                   United States Attorney's Office
950 Pennsylvania Avenue NW                 555 Fourth Street, N.W.
Washington, D.C. 20530                     Washington, D.C. 20530
Telephone: (202) 616-0800                  (202) 252-7566

*Attorneys for the United States of America*

Dated:  August 15, 2018

# Appendix A

August 6, 2018 Memorandum
Richard C. Pilger, Director, Election Crimes Branch,
Public Integrity Section, Department of Justice
Clarification for Federal Prosecution of Election Offenses
(8th Ed. 2017)

Government's Opposition
To Defendant Concord Management and Consulting LLC's
Motion to Dismiss the Indictment

*United States v. Internet Research Agency LLC, et al.,*
Criminal Action No. 18-00032-DLF



**U.S. Department of Justice**

Criminal Division

*Washington, D.C. 20530*

August 6, 2018

<u>MEMORANDUM</u>

TO:                    All District Election Officers

FROM:              Richard C. Pilger
                         Director, Election Crimes Branch
                         Public Integrity Section

SUBJECT:        Clarification for *Federal Prosecution of Election Offenses* (8th Ed. 2017)

      Please note the following clarification in the monograph *Federal Prosecution of Election Offenses* (8th Ed. 2017) at page 163.  In the discussion of intent for proving a conspiracy to defraud the United States under 18 U.S.C. § 371, the monograph could be read to suggest that the jury must find two different forms of *mens rea*.  Specifically, because of the word "also" in the second sentence on page 163, the monograph could be read to suggest that jury instructions should require the jury to find both willfulness and "also" the specific intent to disrupt a federal agency function.  That is not the Department's position.  The Department's position regarding the required intent for a conspiracy to defraud the United States is that the jury must find the intent to disrupt and impede the lawful function of a federal agency through deceitful means.  *E.g. United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997); *United States v. Cyprian*, 23 F.3d 1189, 1201 (7th Cir. 1994); *United States v. Derezinski*, 945 F.2d 1006, 1012 (8th Cir. 1991).  *See also United States v. Ballistrea*, 101 F.3d 827, 831-32 (2d Cir. 1996) (approving a specific Ninth Circuit instruction in conspiracy to defraud the Food and Drug Administration); *United States v. Barker Steel Co.*, 985 F.2d 1123, 1127-28 (1st Cir. 1993) (approving a specific information's language charging conspiracy to defraud the Department of Transportation, Environmental Protection Agency, and General Services Administration); *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit*, § 8.21 & Comment, pp. 170-71 (2018) (agreement to "obstruct the lawful function of [a federal agency] by deceitful or dishonest means" is itself analogous to the intent of "willfulness" in formulating any necessary good faith instruction).