# EXHIBIT C:

**Complaint Against the Australian Labor Party and Bernie 2016
(March 15, 2016)**

**Defendant Concord Management and Consulting LLC's
Motion for Discovery Regarding Selective Prosecution
*United States v. Internet Research Agency LLC, et al.,*
Criminal Action No. 18-00032-DLF**

RECEIVED
FEDERAL ELECTION COMMISSION

William L. O'Brien
State Representative
Hillsborough (NH) District 5   2014 APR -4 AM 6: 59
P.O. Box 154
Mont Vernon, NH 03057-0154

OFFICE OF GENERAL
COUNSEL

March 15, 2016

MUR # __7035__

Federal Election Commission
Office of the General Counsel
999 E Street N.W.
Washington, DC 20463

**Re: Complaint against the Australian Labor Party and Bernie 2016**

Dear Commissioners,

This letter constitutes a formal complaint filed under 52 U.S.C. § 30109(a)(1) of the Federal Election Campaign Act ("FECA"). In compliance with regulations, this complaint is filed by this original and three copies.

Based on information and belief as set forth below, the Australian Labor Party, a foreign political party espousing democrat socialist policies,[1] which also has international goals such as, in effect, seeking the dissolution of national borders to promote open immigration,[2] has violated the FECA and the regulations of the Federal Election Commission (the "Commission") that prohibit foreign contributions. *See* 52 U.S.C. § 30121(a)(1). Furthermore, by information and belief and as set forth below, the organizational campaign to elect Sen. Bernard Sanders as president, which organization is known as "Bernie 2016"[3] and which has registered with the Commission,[4] has violated the FECA and the Commission's regulations on accepting or receiving prohibited foreign contributions. *See* 52 U.S.C. § 30121(a)(2).

In response to these violations, I request that the Commission conduct an immediate investigation, make relevant findings, and impose appropriate sanctions, fines and remedial

---

[1] Australian Labor Party National Platform, page 202, https://cdn.australianlabor.com.au/documents/ALP_National_Platform.pdf (accessed March 14, 2016).

[2] *Id.* at page 143, *et seq.*

[3] https://go.berniesanders.com/page/content/splash (accessed March 14, 2016).

[4] http://www.fec.gov/fecviewer/CandidateCommitteeDetail.do?candidateCommitteeId=C00577130&tabIndex=1

1

measures to prohibit and preclude the further foreign financing of Bernie 2016 and to preclude other campaigns from allowing foreign participation in the selection of our president.

It is crucial that this requested investigation and the needed intervention by the Commission proceed with all immediate attention and reach a conclusion with all due deliberation in accordance with the schedule anticipated by the Commission's regulations. This foreign intervention into the presidential selection process may have had, and certainly will come to have, an extremely prejudicial effect on the democratic selection of the next president and, as time proceeds, this effect may well become irreparable. Indeed, the effect of this illegal reliance on foreign resources on the first-in-the-national presidential primary in New Hampshire is now beyond repair, but should not be beyond sanctions.

## I.   Paid Foreign Campaign Work in New Hampshire

### A. *Factual Background*

On February 25, 2016, a report from Project Veritas Action Fund featured several recorded conversations with people campaigning with Bernie 2016—the principal campaign committee for presidential candidate Bernie Sanders—prior to the New Hampshire primary. *See Australian Labor Party Assisting Democratic US Campaigns in Violation of Campaign Finance Laws,* YouTube, Feb. 25, 2016, https://www.youtube.com/watch?v=p7kPtWAzvU4 (hereinafter "Video"). These recordings featured foreign nationals—specifically, foreign nationals from Australia—stealing political yard signs and disclosing that they had replaced Hillary Clinton campaign literature with Sanders literature. *Id.* After a review of the footage, it appears these individuals were not volunteers.[5]

According to Australian citizen Rebecca Doyle, the Australian Labor Party ("ALP") provided support for their campaign work: "they pay for our flights, they pay for the cost of accommodation, which is just the staff house, and then we also get sixty dollars stipend a day." *Id.* at 04:56. According to another Australian national working on the Bernie 2016 campaign, Ben Kremer: "I couldn't afford to be here if [ALP] didn't pay for it." *Id.* at 07:00. Yet another – a third – Australian campaign worker, Sandeep Sarath, claimed the ALP "paid for our tickets." *Id.* at 07:30. The ALP also provided a "food allowance." *Id.* at 08:36.

Sarath also commented that three out of four of the New Hampshire "volunteers" were "full-time employees" of the Australian Labor Party. *Id.* at 11:30.

---

[5] Under the FECA and this Commission's interpretation of it, uncompensated volunteer services are not deemed contributions to a campaign. 11 C.F.R. § 100.74. However, compensated "volunteer" services are considered contributions. *See* Advisory Opinions 1981-51 (FEC Jan. 29, 1982); 1987-25 (FEC Sept. 17, 1987).

According to Kremer, Australian foreign nationals were also deployed to Nevada, New Hampshire, Iowa, South Carolina, and one other state. *Id.* at 06:48.

The candor, indeed, the brazen nature, of the disclosures of these violations did not end with statements by those Australian citizens paid by a foreign political party to work on the Sanders presidential campaign. Rich Pelletier, National Field Director for Bernie 2016,[6] confirmed their presence in New Hampshire, Nevada and Iowa. *Id.* at 10:00.

### B. *The Australian Labor Party and Bernie 2016 Violated FECA by Making, Accepting or Receiving Prohibited Foreign Contributions*

The ban on foreign contributions under FECA is broad and unequivocal:

> It shall be unlawful for—
> (1) a foreign national, *directly or indirectly*, to make--
> (A) a contribution or donation of money *or other thing of value* . . . in connection with a Federal, State, or local election;
> ***
> (2) a person to solicit, *accept*, or *receive* a contribution or donation described in subparagraph (A) . . . of paragraph (1) from a foreign national.

52 U.S.C. § 30121(a) (emphasis added). This ban was recently upheld even for foreign nationals financing the barest independent expenditure, which is typically afforded greater First Amendment protection than contributions. *See Bluman v. FEC*, 800 F.Supp.2d 281 (D.C. Cir. 2011) (upholding the ban against foreign expenditures under a strict scrutiny analysis), *aff'd*, 132 S.Ct. 1087 (2012).

The definition of "contribution" is also broad:

> (8)(A) The term "contribution" includes--
> (i) any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office; or
> (ii) the payment by any person *of compensation for the personal services of another person which are rendered to a political committee without charge for any purpose.*

52 U.S.C. § 30101(8)(A) (emphasis added). The Commission's regulations further provide that "[t]he payment for the personal services of another person if those services are rendered without charge to a political committee for any purpose, except for legal and accounting services . . . is a contribution." 11 C.F.R. § 100.54. FECA also includes an extensive list of exceptions to the term. *See* 52 U.S.C. § 30101(8)(B).

---

[6] *See* http://www.p2016.org/sanders/sandersorg.html (accessed March 14, 2016).

The Australian individuals in question are foreign nationals for purposes of FECA. They are not citizens of the United States or nationals of the United States, and not lawfully admitted for permanent residence. *See* 52 U.S.C. § 30121(b). The Australian Labor Party is, without doubt, a foreign national for all purposes under FECA as well. The money expended by ALP for travel to New Hampshire, housing in New Hampshire, and food in New Hampshire for the purpose of "volunteering" for Bernie 2016 are all prohibited contributions under FECA—in kind contributions of services and goods in connection with the 2016 presidential election. Bernie 2016 has accepted—or at least received—these contributions. All of this is in blatant contravention of the relevant and well-known FECA prohibition on foreign contributions.

The ALP's actions do not meet any exceptions to the term "contribution" described in 52 U.S.C. § 30101(8)(B). Assuming the ALP worked with someone else to provide housing, this use of real or personal property likely exceeded $1,000 in value. *See* 52 U.S.C. § 30101(8)(B)(ii); 11 C.F.R. § 100.75. Assuming the ALP qualifies for making unreimbursed payments for travel expenses, the cumulative value of plane tickets in this situation likely exceeded $1,000 in value for a single candidate in this election. 52 U.S.C.§ 30101(8)(B)(iv); 11 C.F.R. § 100.79. It is likely that by paying for the plane ticket for even *one* Australian "volunteer" ALP violated the contribution ban even under this exception, as the cost of plane tickets from Australia to the United States easily exceed $1,000 in cost.[7]

Finally, most disturbingly, Sandeep Sarath noted that three of four Australian "volunteers" for Bernie 2016 in New Hampshire were paid staff of the Australian Labor Party. One must wonder, given the enlightened sensibilities of the ALP, whether these staffers were utilizing vacation or earned leave time to "volunteer" for Bernie 2016, or if in fact, their contributions were made pursuant to their employer's expectations or perhaps dictates. *See* 11 C.F.R. § 100.54(c).

All of the facts recited are troubling in two ways.

First, Bernie 2016 appears to have coordinated an illegal scheme to accept illegal foreign national contributions. Agents of Bernie 2016 picked up the foreign nationals at the Manchester airport and gave them responsibilities in the campaign's field offices. *See* Video at 04:20. Moreover, with the frequent and unabashed public discussion of their reimbursement scheme by the ALP workers throughout the video, it is difficult to imagine Bernie 2016 was without knowledge of this financial arrangement. It cannot be argued with any credibility that the responsible officials of the camping receiving these illegal foreign contributions were any less aware of their illicit origination than was a stranger who the foreign nationals so candidly made their disclosures.

---

[7] For example, a flight leaving Sydney for New York on March 15, 2016 and returning on March 29, 2016 has an economy fare of (US)$4508.95.  See
https://www.orbitz.com/Details?action=UnifiedDetailsWidget@showDetails&rfrr=&c=02a0f332
-c8ee-4dae-ad62-009844861087&udpDisplayMode=normal (accessed on March 14, 2016).

Second, it appears that the ALP engaged in prohibited foreign intervention, perhaps in furtherance of its international goals of eliminating national borders, in a United States federal election by knowingly sending into the United States compensated agents who themselves were foreign nationals to promote the Bernie 2016 presidential campaign.  The ALP then compounded this violation by then paying the expenses of those foreign agents while they worked on this U.S. presidential campaign.

Project Veritas Action's report shows nothing less than a concerted effort by the ALP to financially influence the 2016 presidential election. The evidence easily indicates more than $10,000 of in-kind contributions to Bernie 2016 in New Hampshire alone, and hints that similar financial outlays were made by ALP in several other state primaries. By all reasonable accounts and calculations, Bernie 2016 is responsible for accepting—or at least receiving—tens of thousands of dollars in foreign in-kind contributions. And the ALP is responsible for prohibited intervention in a federal election.

I ask that the Commission conduct an investigation into these allegations, declare the respondents to have violated the FECA and FEC regulations, refer criminal violations to the Department of Justice, and impose sanctions appropriate for these violations.

Sincerely,

Rep. William L. O'Brien

Sworn and subscribed to before me, a notary public, by the said William L. O'Brien on March 15, 2016.

Notary Public

My commission expires:

Amanda M Boissonneault
Notary Public, State of New Hampshire
My Commission Expires Oct. 21, 2020