**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-DLF |
| INTERNET RESEARCH AGENCY, LLC, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
<u>MOTION TO DISMISS THE INDICTMENT</u>**

Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

*Counsel for Defendant Concord
Management and Consulting LLC*

[*] *Admitted Pro Hac Vice*

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ....................................................................... 1

II.   ARGUMENT ................................................................................................ 4

    A.    The Special Counsel's Indictment Does Not Allege That Concord Had
        Any Knowledge Of The Unspecified "Lawful Governmental Functions"
        Or The Unnamed Statutes That Give Rise To Them. .............................. 4

        1.    Knowledge of the specific "lawful governmental functions" at
            issue is essential to the Special Counsel's § 371 *Klein* conspiracy
            charge here. ............................................................................... 5

        2.    The cases the Special Counsel cites for his *mens rea* position are
            inapposite. ................................................................................ 10

        3.    *Tanner*'s targeting requirement further underscores the flaws in the
            Special Counsel's *mens rea* argument. ..................................... 13

    B.    The Special Counsel's Indictment Does Not Allege A Legally Viable
        § 371 Defraud Conspiracy Against Concord. ...................................... 14

    C.    The Special Counsel's § 371's Defraud Conspiracy, As Charged Against
        Concord, Is Unconstitutionally Vague. ............................................... 22

III.  CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Tobacco Co. v. United States*,
    328 U.S. 781 (1946)..................................................................................................21

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005)....................................................................................................3

*Arthur Andersen LLP v. United States*,
    No. 04-368, 2005 WL 1106590 (Apr. 27, 2005) .....................................................2

*Bluman v. Fed. Elections Comm'n*,
    800 F.Supp.2d 281 (D.D.C. 2011).............................................................................8

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978)..................................................................................................17

*Bryan v. United States*,
    524 U.S. 184 (1998)..................................................................................................11

*Cheek v. United States*,
    498 U.S. 192 (1991).............................................................................................8, 12

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962) (cited Opp. 10) ......................................................................21

*Elonis v. United States*,
    135 S. Ct. 2001 (2015)................................................................................................3

*Flores-Figueroa v. United States*,
    556 U.S. 646 (2009)....................................................................................................3

*Hammerschmidt v. United States*,
    265 U.S. 182 (1924)..................................................................................................24

*Marchetti v. United States*,
    390 U.S. 39 (1968)....................................................................................................16

*Marinello v. United States*,
    138 S. Ct. 1101 (2018)...........................................................................................3, 4

*McDonnell v. United States*,
    136 S. Ct. 2355 (2016)..............................................................................................25

*Ratzlaf v. United States,*
510 U.S. 135 (1994)................................................................................................8

*Rosemond v. United States,*
134 S. Ct. 1240 (2014)............................................................................................3

*In re Sealed Case,*
223 F.3d 775 (D.C. Cir. 2000) ...............................................................16, 17, 18

*Skilling v. United States,*
561 U.S. 358 (2010)........................................................................................16, 25

*Tanner v. United States,*
483 U.S. 107 (1987)....................................................................................4, 13, 14

*United States v. Alvarez,*
567 U.S. 709 (2012)..............................................................................................15

*United States v. Barker Steel Co., Inc.,*
985 F.2d 1123 (1st Cir. 1993)........................................................................21, 23

*United States v. Caldwell,*
989 F.2d 1056 (9th Cir. 1993), *overruled on other grounds by Neder v. United
States*, 527 U.S. 1 (1999) ..............................................................................19, 22

*United States v. Childress,*
58 F.3d 693 (D.C. Cir. 1995) .................................................................................9

*United States v. Crop Growers Corp.,*
954 F. Supp. 335 (D.D.C. 1997) ..........................................................................16

*United States v. Cueto,*
151 F.3d 620 (7th Cir. 1998) .........................................................................21, 23

*United States v. Curran,*
20 F.3d 560 (3d Cir. 1994)................................................................................9, 10

*United States v. Davis,*
863 F.3d 894 (D.C. Cir. 2017) .............................................................................11

*United States v. Derezinski,*
945 F.2d 1006 (8th Cir. 1991) ....................................................10, 11, 12, 23

*United States v. Fowler,*
131 S. Ct. 2045 (2011)............................................................................................3

*United States v. Franklin-El,*
554 F.3d 903 (10th Cir. 2009) .............................................................................24

*United States v. Gaudin*,
    515 U.S. 506 (1995).................................................................................................19, 20

*United States v. Goldberg*,
    105 F.3d 770 (1st Cir. 1997)............................................................................................24

*United States v. Jackson*,
    33 F.3d 866 (7th Cir. 1994) ...............................................................................10, 11, 12

*United States v. Kanchanalak*,
    41 F. Supp. 2d 1 (D.D.C. 1999)..................................................................................20, 21

*United States v. Khalife*,
    106 F.3d 1300 (6th Cir. 1997) ...................................................................................10, 12

*United States v. Licciardi*,
    30 F.3d 1127 (9th Cir. 1994) ...............................................................................8, 9, 10, 14

*United States v. Mendez*,
    528 F.3d 811 (11th Cir. 2008) ........................................................................................14

*United States v. Moore*,
    612 F.3d 698 (D.C. Cir. 2010)......................................................................................19, 20

*United States v. Morosco*,
    822 F.3d 1 (1st Cir. 2016).................................................................................................23

*United States v. Murphy*,
    809 F.2d 1427 (9th Cir. 1987) ......................................................................................18, 19

*United States v. Porter*,
    591 F.2d 1048 (5th Cir. 1979) ........................................................................................19

*United States v. Rosengarten*,
    857 F.2d 76 (2d Cir. 1988)...............................................................................................21

*United States v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003).............................................................................................24

*United States v. Tagliaferri*,
    820 F.3d 568 (2d Cir. 2016).............................................................................................24

*United States v. Treadwell*,
    760 F.2d 327 (D.C. Cir. 1985).........................................................................................11

*United States v. Trie*,
    21 F. Supp. 2d 7 (D.D.C. 1998).....................................................................................9, 10

*United States v. Williams*,
    827 F.3d 1134 (D.C. Cir. 2016) ..............................................................................................2

**Statutes**

18 U.S.C. § 371 ............................................................................................................... *passim*

**Other Authorities**

Bradley Smith, *Were those payments really illegal?,* The Washington Post, Aug.
    23, 2018, *available at*
    http://thewashingtonpost.newspaperdirect.com/epaper/viewer.aspx ........................................4

G.K. Chesterton, *The Innocence of Father Brown* (1911) .............................................................1

Noel. J. Francisco & James Burnham, *Encouraging the Power to Dismiss
    Indictments: Courts should embrace the criminal analogue to the civil power
    to dismiss*, Corp. Counsel Bus. J. (Sept. 2016), https://tinyurl.com/yagrdwy8 ........................3

## I.    PRELIMINARY STATEMENT

In his opposition brief ("Opp."), ECF No. 56, the Special Counsel takes pains to clarify his charge of conspiracy to defraud the United States government.  That effort, however, simply underscores why his Indictment, as to Concord, is fatally defective.

The Special Counsel concedes that had he charged substantive Federal Election Campaign Act ("FECA") and Foreign Agents Registration Act ("FARA") violations, he would have to allege and prove Concord acted willfully.  To circumvent this impossible burden, the Special Counsel enters fairyland[1] and uses the defraud prong of 18 U.S.C. § 371 to charge a theory of liability that has never been used by the government before.  Under his novel approach, the Special Counsel claims he will only have to prove that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the Federal Election Commission ("FEC") or the Department of Justice ("DOJ") in a way that theoretically precluded those agencies from possibly ascertaining *whether* those substantive statutes were violated.  (Opp. 11).  As the Special Counsel posits, no awareness of a specific statute or regulation is needed, nor is any indication of who was required to notify the FEC about what, or who was supposed to register under FARA and why.  On the contrary, criminal liability under § 371 will follow because had unidentified federal agents known of the defendants' alleged Russian affiliation—which the defendants allegedly concealed from the United States— those agents "would naturally have initiated an investigation to ascertain whether the defendants were in fact complying with the election-contribution or agent-registration laws[.]"  (*Id.*).[2]

---

[1]    "I never said it was always wrong to enter fairyland.  I only said it was always dangerous." G.K. Chesterton, *The Innocence of Father Brown* at 205 (1911).

[2]    Who, the Court may wonder, is going to provide this evidence to support the Special Counsel's conjecture of what federal agents might have done, and how would it be anything
(continued)

The Special Counsel points to no statute requiring any defendant to disclose its Russian affiliation on social media and does not explain how it is that a foreign person or company would know to do so, and to whom and for what reason. The Special Counsel instead makes clear his belief that he need not show that Concord knew about the unspecified "regulatory functions" it supposedly conspired to interfere with or the laws that create them. He therefore urges the equivalent of strict and absolute liability for any person who engages in any allegedly deceptive act for any purpose that he, the Special Counsel, deems antithetical to the election process and worthy of investigation. (*Id.* 15). What is more, to ensure that there is no doubt about this *mens rea*-less burden of proof, the Special Counsel points to DOJ's after-the-fact memorandum saying that proof of willfulness for § 371 FEC defraud cases "is not the Department's position[,]"[3] (*Id.* App. A), leaving him free to charge without regard to DOJ's long-held contrary view.

As a review of recent Supreme Court cases reflects, the government persistently has advocated, without success, for a relaxed *mens rea* requirement in criminal cases, just as the Special Counsel advocates for what is, in essence, a no-*mens rea* requirement under § 371's defraud clause here. Indeed, the lead advocate for the Special Counsel, Mr. Dreeben, has been at the center of this failed strategy since as early as 2005, in arguing the cases (*Elonis, Arthur*

---

other than inadmissible opinion or speculation? *See United States v. Williams,* 827 F.3d 1134, 1160–62 (D.C. Cir. 2016) (reversing conviction based on lay opinion and purported expert testimony of federal agent). And all this evokes a similar argument made by Mr. Dreeben in *Arthur Andersen,* to which Justice Scalia responded, "And you want criminal liability to turn upon . . . [w]hether or not there is a reasonable possibility of an investigation. You want somebody to go to jail on how a jury decides that question." Oral Arg. Tr. 26:13–19, *Arthur Andersen LLP v. United States*, No. 04-368, 2005 WL 1106590, at *28 (Apr. 27, 2005).

[3]    This from Election Crimes Branch Director Richard Pilger, who in 2014 refused 34 times to answer questions from Congress about the IRS-Tea Party scandal. *See* Ex. A, Ltr. from Hon. D. Issa, Chair of the Oversight Committee of the House of Representatives to Attorney General Eric Holder (May 20, 2014).

*Andersen*) or in participating in the briefing (*Marinello, Rosemond, Fowler, Flores-Figueroa*),

**and losing every single case**.[4]

The Special Counsel nonetheless presses for liberality in the treatment of the Indictment's

allegations though it is certain to fail on any appeal.[5]  But liberality is no excuse for omitting

essential elements of criminal culpability like notice or *mens rea*, particularly in an area of the

law regarding campaign expenditures that the FEC's former chairman described as "murky[,]"

and where a civil fine, as opposed to a criminal prosecution, "would be the normal response."

---

[4]    *See Marinello v. United States*, 138 S. Ct. 1101, 1108–10 (2018) (rejecting government's argument that conviction under 26 U.S.C. § 7212 could rest on obstruction of general administrative duties carried out by the IRS and that it was not necessary for the government to prove that defendant was aware of a pending IRS action, and instead holding that obstruction must relate to an administrative proceeding of which the defendant was aware or reasonably foresaw, and reversing conviction); *Elonis v. United States*, 135 S. Ct. 2001, 2008–09 (2015) (rejecting government's argument that it was unnecessary for a jury instruction as to 18 U.S.C. § 875(c) require a finding that the defendant intended to communicate a true threat, and reversing conviction); *Rosemond v. United States*, 134 S. Ct. 1240, 1252 (2014) (rejecting government's argument that it was unnecessary to prove for a conviction under 18 U.S.C. § 924(c) that the defendant willfully associate himself with a drug crime by knowing in advance that another person had a gun and would use it, and reversing conviction); *United States v. Fowler*, 131 S. Ct. 2045, 2051–52 (2011) (rejecting government's argument that a "reasonable possible standard" was sufficient to convict a defendant under 18 U.S.C. § 1512(a)(1)(c) of killing a law enforcement person with intent to prevent communication by that person of a federal offense to a federal law enforcement officer, and reversing conviction); *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) (rejecting government's argument that "knowingly" did not modify all of the phrases in 18 U.S.C. § 1028A(a)(1), and reversing conviction holding that the government had to prove that defendant knew the identification document belonged to another person); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704-05 (2005) (rejecting government's argument that "knowingly" did not modify "corruptly persuades" in 18 U.S.C. § 1512(b)(2) and reversing conviction for failure of jury instruction to require dishonesty for a finding of guilt).

[5]    For the reasons articulated by now-Solicitor General Francisco, however, Concord questions the soundness and legal correctness of this permissive approach to pleading in criminal cases. *See* Noel. J. Francisco & James Burnham, *Encouraging the Power to Dismiss Indictments: Courts should embrace the criminal analogue to the civil power to dismiss*, Corp. Counsel Bus. J. (Sept. 2016), https://tinyurl.com/yagrdwy8 (observing that the great "difficult[y in] get[ting] a clean legal decision on the scope of criminal law before the jury has rendered its verdict" is "a serious problem that plays a starring role in federal prosecutors' seemingly never-ending efforts to expand the scope of vague federal criminal laws").

Bradley Smith, *Were those payments really illegal?,* The Washington Post, Aug. 23, 2018, at

A21, *available at* http://thewashingtonpost.newspaperdirect.com/epaper/viewer.aspx.   There is

nothing in the U.S. Criminal Code that required Concord to disclose its nationality to facilitate a

hypothetical government investigation into social media posts or candidate commentary or even

lies about candidates.   Calling Concord a co-conspirator in a § 371 defraud conspiracy does not

change any of that.

In sum and substance, the Special Counsel would place any person or entity of any

nationality who conceals its identity on social media in connection with election activity in

criminal jeopardy under § 371, and then would have the courts defer to prosecutorial discretion

when concerns are raised about the failure to specifically define lawful governmental functions

or provide some perceptible means of notice of their breach.   But the government is not entitled

to such deference because "[d]oing so risks allowing 'policemen, prosecutors, and juries to

pursue their personal predilections[.]'"   *Marinello*, 138 S. Ct. at 1108 (citation omitted).   Here,

the Special Counsel's effort to substitute his personal predilections for what is lawful and

unlawful where complex regulatory functions are concerned must be stopped by the Court, and

the Indictment against Concord should be dismissed.

## II.   ARGUMENT

### A.   The Special Counsel's Indictment Does Not Allege That Concord Had Any Knowledge Of The Unspecified "Lawful Governmental Functions" Or The Unnamed Statutes That Give Rise To Them.

Concord and the Special Counsel agree that conspiracy to defraud under § 371 is a

specific intent crime.   They also agree that under *Tanner v. United States*, 483 U.S. 107 (1987),

the "fraud" in a § 371 charge must be one specifically directed at the United States government.

The parties diverge over whether, in the context of this *Klein* conspiracy charge, the Special

Counsel must establish "willfulness"—*i.e.*, that Concord had knowledge of the law and the

government function it purportedly conspired to impede, and acted deceitfully and dishonestly to interfere with that lawful function. The Special Counsel claims that Concord, a foreign company with no presence in the United States, can be criminally culpable for conspiracy even if it is ignorant of the regulatory framework it is charged with conspiring to impede. He is wrong.

### 1. Knowledge of the specific "lawful governmental functions" at issue is essential to the Special Counsel's § 371 *Klein* conspiracy charge here.

As Concord's opening brief establishes ("Mem."), ECF No. 46, given the § 371 *Klein* conspiracy charge the Special Counsel has leveled against Concord, the law requires the Special Counsel to establish that "Concord knew what 'lawful government functions' it was allegedly impeding or obstructing and how the relevant laws described those functions." (Mem. 22). This follows from the settled law requiring a showing of specific intent in defraud conspiracy cases (*id.* 18); Supreme Court precedent requiring such a degree of knowledge where, as here, complex and arcane regulatory schemes are implicated (*id.* 19–20); the chilling effect of the Special Counsel's sweeping theory of conspiracy liability where political speech involving a presidential election is involved (*id.* 20–21); the serious due process vagueness problems associated with discerning the meaning of "interference with lawful governmental functions" in this context (*id.* 21–23; *see also infra* at § C); and DOJ's long-settled view, embodied in its Guidelines for Federal Prosecution of Election Offenses (the "Guidelines"), that willfulness is required in a case like this one (*id.* 23–24).

The Special Counsel is dismissive of each one of these arguments and the reasons Concord advances for them. With respect to the DOJ Guidelines, for example, he points to DOJ's *post hoc* epiphany, the timing of which is suspect to say the least. Three days after the Special Counsel, in an August 3, 2018 hearing on Concord's Appointments Clause challenge, addressed the *mens rea* set forth in the Guidelines, Mot. Hr'g Tr. 31:4–20, ECF No. 52, and

nearly two months after this Court first quizzed the Special Counsel on that same topic,  Status Hr'g Tr. 10:15–11:8, ECF No. 41, DOJ issued a one-page "Memorandum" purporting to "clarif[y]" and then disavow the Guidelines' clearly stated position on *mens rea* that had prevailed since May 2007.  (Opp. App. A).  To substantiate its disavowal, the memorandum identifies a newly discovered ambiguity in an errant use of "also" which, DOJ claims, could be misread to make it appear as though the government understood willfulness to be a required part of a conspiracy to defraud charge in the election context.

For ten years before this epiphany, however, DOJ took a different view, and as Concord explained in its motion, the Guidelines' plain text makes it clear that the *mens rea* required for a § 371 defraud conspiracy would be "'a higher factual burden than is required under 18 U.S.C. § 1001,' which requires proof that a defendant act[ed] 'knowingly and willfully; that is, the defendant intended to cause the recipient to record false statements and knew, generally, that making such a false statement [w]as unlawful.'"  (Mem. 23 (quoting Guidelines at 162–63)). That statement, of course, conflicts with both the Special Counsel's position in this litigation and DOJ's hastily crafted memorandum.  Neither the Special Counsel nor DOJ explains how a § 371 defraud conspiracy could implicate a "higher factual burden" than a § 1001 charge if willfulness is not required.  Indeed, throughout the Special Counsel's opposition, he argues that a § 371 conspiracy to defraud charge involves a *lower mens rea* burden than statutes like § 1001 that contain express willfulness requirements.[6]  (Opp. 16–21).

---

[6]    To the extent the Special Counsel also argues that the Guidelines are irrelevant because they are not entitled to any legal deference (Opp. 29), that misapprehends Concord's point.   The Guidelines support Concord's position, not because they are entitled to any special legal significance, but rather because they underscore the validity of Concord's argument and the untested nature of the Special Counsel's position.   Indeed, it is remarkable that the Special Counsel can argue it is Concord that fundamentally misapprehends the law when the
(continued)

Next, the Special Counsel dismisses the level of "willfulness" Concord advocates because § 371 lacks any textual reference to "willfulness." (Opp. 14–15). But this glib rejoinder misses the point. Concord is not asking the Court to read a term into the statute that is not there, nor is it arguing that "willfulness" must be shown in all § 371 defraud conspiracy cases. And, Concord agrees that the defraud clause requires a showing of specific intent to enter into a conspiracy to defraud the United States government. (Mem. 22–23). Concord's position, to be clear, is that in the unique context of the *Klein* conspiracy the Special Counsel has charged—predicated upon allegations that Concord conspired to defraud the government by evading or obstructing lawful functions related to election and foreign agent registration laws—the Special Counsel must establish that "Concord knew what 'lawful government functions' it was allegedly impeding or obstructing and how the relevant laws described those functions." (Mem. 22). In this context, involving complex and arcane statutes and regulations, there is no basis to assume a Russian business entity, an ordinary citizen, or even someone with vague familiarity with the statutory scheme, would know what that lawful function might be. That is precisely what creates the need for a willfulness requirement before a criminal sanction can be imposed.

The rest of the Special Counsel's avoidance strategy is equally wide of the mark. He points out that some courts have upheld the use of *Klein* conspiracy charges and allowed the government to punish individuals criminally for allegedly conspiring to interfere with the government's "lawful functions." (Opp. 21–23). But he cites not a single D.C. Circuit case to support this argument. Moreover, his argument just begs the question. It provides no answer to what is required in *this* particular *Klein* conspiracy case, which indisputably implicates—by the

Guidelines—and indictment after indictment—revealed that up until August 6, 2018, DOJ had itself interpreted the law in the same fashion as Concord does. (Mem. 24–25 n.10).

terms of the Indictment itself—complex and arcane statutes and regulations that defy any clear definition, but which are said to create the "regulatory apparatus" with which Concord conspired to interfere.  Again, how can Concord (or anyone else) form the requisite specific intent to defraud the government by interfering with its lawful function unless it knew that governmental function existed and what it entailed?  And, although the Special Counsel believes otherwise, *Klein* conspiracies require culpability, and culpability depends on notice and knowledge of wrongdoing in this context as in any other.  *See, e.g., United States v. Licciardi*, 30 F.3d 1127, 1132 (9th Cir. 1994) (*mens rea* lacking where government failed to offer proof that the defendant knew about the wine-labelling regulations with which it allegedly conspired to interfere).

Moreover, contrary to the Special Counsel's critique, this conclusion does follow from *Bluman v. Fed. Elections Comm'n*, 800 F.Supp.2d 281 (D.D.C. 2011), *Cheek v. United States*, 498 U.S. 192 (1991), and *Ratzlaf v. United States*, 510 U.S. 135 (1994).  To be sure, those cases did not involve § 371 conspiracy to defraud charges, as the Special Counsel notes.  (Opp. 19–21).  But what they plainly stand for is that the government must establish the defendant was aware of the law to sustain criminal charges—especially novel ones like the Special Counsel's here—predicated on statutes or regulations that the ordinary citizen likely would neither know about nor understand.  (Mem. 19–20).  That concept is stage-center in this case, there is no colorable argument to the contrary, and the Special Counsel does not offer one.

Nonetheless, the Special Counsel attempts to distinguish these three cases by suggesting that there is no need for a heightened *mens rea* requirement here because the "wrongfulness" in such a case "consists of acting with the intent to defraud by using deception to impair the government's functions."  (Opp. 21).  This argument is circular on its face and deeply flawed.  It would result in criminal liability for any persons who did not accurately identify themselves on

social media while engaging in election activity, leaving it to the Special Counsel to handpick who he wants to prosecute.  It also blows a gaping *mens rea* hole—again, how could one have the requisite intent to defraud by interfering with the government's function unless he or she has knowledge of that function in the first place?  That hole widens further in this case where, as the Special Counsel himself describes it, the Indictment charges a *Klein* conspiracy premised almost exclusively on allegations of non-disclosure—in particular, alleged failures to report unspecified expenditures or alleged failures of unspecified persons or entities to register as foreign agents.[7] (Opp. 11; *infra* at 15–17).  Plainly, there is nothing inherently "wrongful" about a non-disclosure unless there was a legal duty to make a disclosure in the first place, and the defendants *knew* about that duty and conspired to take steps to evade it.  And the *mens rea* hole reaches mammoth proportions when one considers that here, the lawful function is unspecified and undefined until—long after the defendant's conduct occurred—the Special Counsel declares what he deems to be wrongful *through his indictment*.  Simply put, conspiracy law does not operate in this perverse fashion.  It instead demands a specific intent to share in an illicit purpose knowing, at the time of the conduct, that it involves wrongdoing.  *See United States v. Childress*, 58 F.3d 693, 707 (D.C. Cir. 1995).

While vigorously assailed by the Special Counsel (Opp. 25–28), § 371 defraud clause cases like *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), *United States v. Curran*, 20 F.3d 560 (3d Cir. 1994), and *Licciardi*, 30 F.3d 1127—cited by Concord (Mem. 28–30, 35–36)—make this very point.  Those cases underscore how and when § 371's "specific intent" requirement imposes a burden to prove that the defendant had knowledge of the government's

---

[7]  Similarly, how can a person be convicted of conspiring to commit visa fraud without proof that he or she knew that a tourist visa prohibited specific other alleged activity?

function at issue in a *Klein* conspiracy case.[8]   In each of those cases, the courts concluded that because the government had charged the defendant with conspiracy to defraud by causing false representations to be made to the government, the government was required to establish the defendant was aware of the reporting obligations to the government.[9]   *See Trie*, 21 F. Supp. 2d at 14 (government required to establish defendant was aware of the DNC's reporting obligation to the FEC); *Curran*, 20 F.3d at 570 (government required to establish defendant was aware of campaign treasurers' reporting obligation to the FEC); *Licciardi*, 30 F.3d at 1132 (government required to establish defendant was aware of wineries' reporting obligations to the ATF).[10]

## 2.   The cases the Special Counsel cites for his *mens rea* position are inapposite.

The Special Counsel's cited authorities are no more helpful to him than his meritless attacks on Concord's cases and arguments.   He leads with a trio of cases—*United States v. Derezinski*, 945 F.2d 1006 (8th Cir. 1991), *United States v. Jackson*, 33 F.3d 866 (7th Cir. 1994) and *United States v. Khalife*, 106 F.3d 1300 (6th Cir. 1997)—which he contends rejected the "willfulness" standard Concord advances.   (Opp.  21–23).   But these non-binding cases do no

---

[8]   *Trie, Curran,* and *Licciardi* also highlight the flaw in the Special Counsel's assertion that it would be wrong to read the *mens rea* requirement of the defraud clause differently depending on the circumstance of the specific charge.   (Opp. 19).   That is exactly what happened in those cases.   Because they involved *Klein* conspiracies, the courts correctly concluded the government was required to establish the defendant was aware of the government's involvement to establish a specific intent to defraud the government.

[9]   The Special Counsel mistakenly contends that Concord's quote from *Trie* referring to the need to prove knowledge of the reporting obligations does not relate to the § 371 charge.   (Opp. 26).   The relevant portion of the opinion addresses "Counts 1 and 9-11[,]" *Trie*, 21 F. Supp. 2d at 14, and Count 1 was the § 371 *Klein* conspiracy count, *id.* at 13.

[10]   The Special Counsel's attempt to distinguish *Licciardi* is particularly confusing because he acknowledges, as he must, that the Ninth Circuit required the government to establish the defendant "was aware of the relevant regulations and acted with the intent to frustrate them . . . ." (Opp. 28).   That is, of course, precisely the "willfulness" standard which Concord contends the Indictment must satisfy.   (Mem. 22).

such thing.[11]   Moreover, they are all tax cases having nothing to do with election law, foreign

agent registration or visa fraud, or the "willfulness" that Concord contends the Special Counsel is

required to establish in this case.

As background, "'willfully' is . . . 'a word of many meanings' whose construction is

often dependent on the context in which it appears."  *Bryan v. United States*, 524 U.S. 184, 191

(1998).   While the word "[m]ost obviously [] differentiates between deliberate and unwitting

conduct," in the "criminal law it also typically refers to a culpable state of mind."  *Id.* (citations

omitted).   In that regard, the word can refer to different mental states depending on the statutory

context of the charge.  *See id.* at 191–92 (distinguishing between various willfulness standards

the Supreme Court has applied).   In Concord's view, the "willfulness" the Special Counsel must

prove here is that "Concord knew what 'lawful government functions' it was allegedly impeding

or obstructing and how the relevant laws described those functions."  (Mem. 22).

The cases the Special Counsel cites do not address this type of willfulness and for good

reason—they each involve specific statutory frameworks, well-defined government functions,

and plainly unlawful conduct such that there was no risk of ensnaring innocent actors or lawful

conduct.[12]   *See Derezinski*, 945 F.2d at 1011 (finding defendants defrauded "the Treasury

Department in its lawful function of collecting income taxes"); *Jackson*, 33 F.3d at 869

(charging violations of "structuring" statutes and alleging conspiracy to defraud the specific IRS

---

[11]   The Special Counsel cites a few D.C. Circuit cases that he says support his *de minimis* view
of *mens rea*.  (Opp. 17) (citing *United States v. Davis*, 863 F.3d 894 (D.C. Cir. 2017); *United
States v. Treadwell*, 760 F.2d 327 (D.C. Cir. 1985)).   But all those cases did was state the general
requirement to show an "intent to defraud"—neither case considered, much less decided, the
level and type of *mens rea* needed in a *Klein* conspiracy/election-law case, and in *Davis*, the
court of appeals reversed a § 371 conviction due to prosecutorial misconduct. *See Davis*, 863
F.3d at 897–98.

[12]   Further, none of cases cited by the Special Counsel implicate the free speech considerations
that exist in this case.

functions of "collecting information relating to the defendants' access to large amounts of cash, to defendants' cash transactions in excess of $10,000, and to defendants' expenditures of large amounts of cash on identifiable assets"); *Khalife*, 106 F.3d at 1301 (similar).

*Derezinski* illustrates the profound differences. As the Special Counsel describes the case, "Derezinski was prosecuted under Section 371's defraud clause with impeding the IRS even though he might have been prosecuted under Section 371's offense clause with substantive tax offenses." (Opp. 21) (citing *Derezinski*, 945 F.2d at 1010). The mere fact that the defendant there was able to identify the specific government function he was alleged to have obstructed, as well as the substantive offenses for which he could have been charged, is a critical distinction. Additionally, *Khalife* and *Jackson* both involved concealment of material facts resulting in the filing of false tax returns. As such, both required proof that the co-conspirator agreed to accomplish an illegal objective against the United States and had the specific intent to impede tax collection—a clearly defined governmental function. *See Khalife*, 106 F.3d at 1303, 1306 (finding duty not to conceal transactions over $10,000 from the IRS was not "technical [or] difficult to discern"); *Jackson*, 33 F.3d at 869 (articulating the specific IRS function of collecting information related to transaction for use "in criminal, tax and regulatory investigations.").

Here, there is no federal law or regulation prohibiting "interference" in a U.S. election, much less a law that is "definite and knowable." *See Cheek*, 498 U.S. at 199–200. Moreover, the Indictment is devoid of any citation to any statute or regulation relating to elections or foreign agent registration, nor does it identify any specific activity that actually violated any such statute or regulation. Instead the Special Counsel argues that because co-conspirators of Concord allegedly pretended on social media to be Americans as opposed to Russians, that automatically equates to deceiving the DOJ and FEC. None of his cited cases support that result

- 12 -

and § 371, as the case law provides, does not criminalize conduct without specific facts supporting Concord's culpability either.

### 3.   *Tanner*'s targeting requirement further underscores the flaws in the Special Counsel's *mens rea* argument.

The Special Counsel does not dispute that the Supreme Court, under *Tanner*, requires that a § 371 defraud conspiracy must have as its target the government or its agencies.  (Opp. 31–33). He instead claims that the fraud on the government need not be the *sole* object of the conspiracy, so long as it is more than just a foreseeable consequence or collateral effect.  (*Id.* 32–33).  And, he insists, the "Indictment meets these standards because it charges that the defendants conspired to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit 'for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016.'"  (*Id.* 33 (quoting Indictment, ¶ 2)).  But none of this solves the Special Counsel's *Tanner* problem.

A defraud conspiracy admittedly can involve multiple objects and the government need only establish that at least one object of the conspiracy was to defraud the United States government or its agencies.  But this does not get the Special Counsel where he needs to go. Rather, as explained above, the fundamental issue in dispute is whether the conspiracy to defraud charge the Special Counsel has constructed in the Indictment requires the Special Counsel to establish "willfulness"—*i.e.*, knowledge of the government's involvement and the regulatory apparatus with which Concord is charged with conspiring to obstruct.  The rule in *Tanner* is material to that issue because it underscores the flaws in the Special Counsel's position that there is no such willfulness requirement.  (Mem. 34–38).  The only way Concord could conspire to defraud the United States government or its agencies is if Concord had knowledge of the FEC, DOJ and Department of State regulatory schemes it stands accused of conspiring to obstruct.

This is precisely what the Ninth and Eleventh Circuits held in *Licciardi*, 30 F.3d 1127 and *United States v. Mendez*, 528 F.3d 811 (11th Cir. 2008). (Mem. 35–37). Those courts both held that under *Tanner*, the only way the government could sustain a *Klein* defraud conspiracy charge was by establishing that the defendant knew of the *government's* involvement and the *government's* regulatory apparatus with which the defendant conspired to interfere. *See Licciardi*, 30 F.3d at 1132 (charge could not be sustained because the government failed to prove the defendant conspired to impair the ATF as opposed to the wineries at which the defendant's actions were directed); *Mendez*, 528 F.3d at 811 (charge could not be sustained because the facts "do not show that [the defendant] even knew the federal government was . . . involved in the issuance of Florida [commercial driver's licenses], let alone that the United States was the ultimate intended target of the conspiracy"). For the Special Counsel now to argue, as he does, that these cases are inapplicable because he has purportedly alleged that an "object" of the conspiracy was the impairment of the government's function is just more circular logic. *Tanner*—and *Licciardi* and *Mendez*—confirm the need for the Special Counsel to show that Concord knew of the *government's* role in the regulatory process.

### B. The Special Counsel's Indictment Does Not Allege A Legally Viable § 371 Defraud Conspiracy Against Concord.

Beyond the Indictment's failure to allege the requisite *mens rea*, it further fails to aver a defraud conspiracy supported by the statutory text or judicial precedent. The Special Counsel insists he has done enough, pointing to the Indictment's conclusory recitation of the statutory elements of a § 371 conspiracy, as though that is sufficient at the pleading stage to show an intent to interfere through dishonest means. But the Special Counsel's own description of the sweeping breadth of § 371 betrays his argument and confirms why dismissal is warranted.

- 14 -

For starters, the Special Counsel does not, because he cannot, dispute Concord's contention that the Indictment fails to allege Concord violated (or even could violate) the statutes and regulations referenced in the Indictment, or that Concord "knew they were being violated, agreed with anyone to help violate them, or even knew what the statutes and regulations were or what they required or proscribed." (Mem. 14–15). Nor can the Special Counsel identify any law that bars false or falsely attributed political speech, and he fails entirely to address the import of *United States v. Alvarez*, 567 U.S. 709 (2012). (Mem. 2). And, the Special Counsel further fails to contest Concord's showing that recommending personnel, overseeing activities, receiving budgets, and providing funding—as the Indictment alleges Concord did—are not criminal activities, and even if they were, the Indictment's spare description is insufficiently specific to give Concord the requisite notice of the charge against it. (Mem. 3; *infra* at § C). Perhaps most fundamentally, none of the conduct the Indictment attributes to Concord forms the basis for the Special Counsel's § 371 defraud conspiracy charge against Concord.

Instead, the Special Counsel claims, his conspiracy theory against Concord is this:

> The government will only have to prove that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the FEC or DOJ in a way that precluded those entities from ascertaining *whether* those substantive statutes were violated.

(Opp. 11). After this tautology, the Special Counsel then offers the following illustration of his expansive theory as tied to the alleged facts of this case:

> [F]or example, if the government establishes that, had federal agents known of the defendants' Russian affiliation—which the defendants deceptively concealed from the United States—those agents would naturally have initiated an investigation to ascertain whether the defendants were in fact complying with the election-contribution or agent-registration laws, then the government has proved a Section 371 violation.

(*Id.*). And this is true, the Special Counsel implicitly acknowledges, even if defendants "were in fact complying with the election-contribution or agent-registration laws" at issue.

- 15 -

While this reasoning may be consistent with or similar to unsuccessful arguments Mr.

Dreeben has made in the past to the Supreme Court, here the Special Counsel cites no case or

any other authority that has ever endorsed this unprecedented and expansive theory of criminal

conspiracy culpability.  And it is clear why that is so—the Special Counsel's litany simply does

not make out a crime.  His theory would assign criminal felony culpability to one who, although

lacking any legal duty to disclose or self-report his lawful conduct and ethnic/country-of-origin

"affiliation," failed to disclose or report that conduct or affiliation simply because that non-

disclosure might thwart or prevent an investigation of conduct or affiliation that turns out to be

entirely lawful.  But one cannot commit a felony under U.S. law—particularly a conspiracy

felony—because he fails to disclose, or agrees with others to shield from disclosure, his or their

"affiliation" *where no law requires such disclosure.  See In re Sealed Case*, 223 F.3d 775, 779

(D.C. Cir. 2000).  Nor, similarly, does a criminal conspiracy lie in some agreement to withhold

information that the law does not require be disclosed, relating to underlying conduct that is

lawful.  And, this conspiracy theory raises serious Fifth Amendment due process and privilege

against self-incrimination concerns by attempting to criminalize the failure to disclose

information—in the absence even of a legal duty to do so[13]—itself a reason to reject the Special

Counsel's dangerous theory.  *See Skilling v. United States*, 561 U.S. 358, 406 (2010) ("'The

elementary rule is that every reasonable construction must be resorted to, in order to save a

statute from unconstitutionality'") (citations omitted).

---

[13]  *See, e.g., Marchetti v. United States*, 390 U.S. 39 (1968) (recognizing self-incrimination
privilege as a constitutional defense in certain circumstances to charges of violating criminal
self-reporting statutes); *United States v. Crop Growers Corp.*, 954 F. Supp. 335, 345 (D.D.C.
1997) (noting that "where a statute or regulation imposes *no* duty whatever to disclose
information, due process concerns require that criminal liability not be based on omission of
such information" and holding defendant not culpable for making false statements under 18
U.S.C. § 1001 by failing to disclose campaign contributions made in violation of FECA).

Under the Special Counsel's theory, the only way Concord could avoid conspiracy culpability would be through some type of an affirmative disclosure of its "Russian affiliation" and that of the other defendants.[14]   That, however, would impose a legal burden not required by either FECA or FARA, which the Special Counsel does not dispute.   More perniciously, it creates a crime that reasonable persons would be incapable of ascertaining *ex ante*—reasonable persons would correctly believe that the conduct deemed criminal by the prosecutor after the fact was *lawful* when committed precisely because it was not prohibited.   And "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]"   *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citation omitted).   To the Special Counsel, liability flows merely from election activity where the person or entity does not accurately identify themselves on social media.   No U.S. law prohibits that; and any such activity does not become criminal just because the Special Counsel decides to call it a conspiracy.

Settled § 371 defraud conspiracy precedents further expose the serious flaws in the Special Counsel's theory.   The D.C. Circuit's decision in *In re Sealed Case*, 223 F.3d 775, is squarely on point.   There, the government argued that various Republican National Committee (RNC) officials conspired "to defraud the United States" in violation of § 371's defraud clause by "failing to disclose" a particular transaction supposedly in violation of FECA.   223 F.3d at 776–77.   The court of appeals rejected the government's contention.   It first noted that the "government alleges that RNC 'conspire[d] either to commit an[] offense against the United States or to defraud the United States' in violation of 18 U.S.C. § 371."   *Id.* at 779.   It then found that, "[c]ontrary to the government's assertion that impossibility as a matter of law is not a

---

[14]   With the proviso that disclosure to whom and in what forum or format remains a mystery unanswered by the Special Counsel.

defense to conspiracy, it clearly is in this context.   Because the transaction described by the government does not violate FECA, there can be no finding of conspiracy."   *Id.*

The parallels in this case are apparent.   Like the government in *Sealed Case*, the Special Counsel asserts a conspiracy to defraud based on a failure to disclose information not required by law to be disclosed.   And as in *Sealed Case*, the Special Counsel cannot show that any of the alleged conduct of the parties here violated the FECA or FARA provisions the Special Counsel refers to in the Indictment.   It follows, then, that under *Sealed Case*, this Court should dismiss the Special Counsel's charge because the "transaction[s]" on which it is based do "not violate FECA[,]" FARA, or any other statute or regulation.[15]   *Id.*   The simple fact is, according to the Special Counsel's theory, had Concord or any other defendant acted alone, there could have been no crime charged here.   Because multiple defendants allegedly acted together, that alone, according to the Special Counsel, creates a crime where none existed.   But as *Sealed Case* holds, § 371 does not criminalize lawful conduct just because persons joined together to do it.

Other courts have reached similar conclusions.   In *United States v. Murphy*, 809 F.2d 1427 (9th Cir. 1987), for example, the Ninth Circuit affirmed the dismissal of an indictment that charged a *Klein* conspiracy to defraud the IRS by impeding the government from collecting data on certain currency transactions.   At issue there was the defendants' alleged failure to disclose the source of funds used in a structured transaction subject to the Currency Reporting Act.   This nondisclosure, the government claimed, impeded the "lawful functions" of the Treasury

---

[15]   In a footnote, the Special Counsel states conclusorily that the holding in *Sealed Case* is "dictum," but he offers nothing to support that claim.   (Opp. 12 n.6).   He also suggests that a so-called "close reading" of *Sealed Case* shows that the court of appeals' holding that there can be no conspiracy since the underlying conduct did not violate FECA "addressed the requirements of only an offense-clause conspiracy."   (*Id.*).   But there is no basis for this claim, either—and it belies the clear context of the surrounding paragraph in which the holding is found.

Department and the IRS in the collection of data on currency transactions in excess of $10,000. *Murphy*, 809 F.2d at 1431.  But because the defendants reported the structured transaction as required by the Act, and the Act did not require disclosing the source of the funds involved, the court found volunteering information about the allegedly illegal source was immaterial.  *Id.* at 1431–1432 (reasoning that where regulations "do not impose a duty to disclose information, failure to disclose is not conspiracy to defraud the government.") (citations omitted).

*United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979), also is in accord.  There, the government charged that doctors had conspired to defraud the United States "of its right to have the Medicare program conducted honestly, fairly and free from deceit" by failing to send their patients' blood samples to automated labs and accepting the lower reimbursements that would come with it.  *Id.* at 1055–56.  The Fifth Circuit found the indictment failed to allege a § 371 defraud conspiracy because "[t]he doctors were under no duty at the time of the events in question to send their patients' blood samples to automated labs" and "no statute or regulation placed these doctors on notice that they could receive payment for their work in drawing and handling blood samples [o]nly by directly billing the patient, billing the Medicare carrier or billing a third party insuror."  *Id.* at 1056–57; *see also United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993) ("[N]ot disclosing something that one has no independent duty to disclose isn't conspiracy to defraud, even if it impedes the [government]") (citing *Murphy* 809 F.2d at 1431–32), *overruled on other grounds by Neder v. United States*, 527 U.S. 1, 8–9 (1999).  The Special Counsel has no answer to these cases or the principles that underlie them.

The Special Counsel's cited authorities, meanwhile, do not support his novel and expansive theory of § 371 defraud conspiracy culpability.  He offers two "cf." cites—*United States v. Gaudin*, 515 U.S. 506 (1995) and *United States v. Moore*, 612 F.3d 698 (D.C. Cir.

2010)—to support his non-disclosure/interference with investigation theory. (Opp. 11–12). But neither case involved § 371: they involved 18 U.S.C. § 1001, a non-conspiracy provision that criminalizes knowingly or willfully making materially false statements to the government. Section 1001 has little in common with § 371. Indeed, both cases the Special Counsel cites addressed questions about the scope of "materiality" as it related to statements made to government agencies. *See Gaudin*, 515 U.S. at 508–09; *Moore*, 612 F.3d at 699–700. But materiality is not at issue here—although the Special Counsel's analogy to fraud cases involving a question of whether a statement to the government was sufficient to give rise to criminal liability undercuts his argument that this Court need not consider whether a violation of the underlying regulations took place. The Special Counsel cannot have it both ways.

The Special Counsel also relies heavily on *United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C. 1999), a § 371 defraud conspiracy case involving campaign donations. (Opp. 10–11). But *Kanchanalak* actually supports Concord's position, not the Special Counsel's. First, the indictment there specifically alleged that the defendant knew about the specific FEC functions with which it conspired to interfere. *Kanchanalak*, 41 F. Supp. 2d at 3. It alleged that the defendant wrote false statements on an RSVP card submitted along with a donation to then-U.S. Senator John Glenn's campaign. The card explicitly stated that the information requested (but falsely provided by the defendant) was "required by the Federal Election Commission," so there was no doubt that the defendant was aware of the FEC and the legal requirement to provide certain truthful information. *Id.* at 8–9. Second, the defraud conspiracy in *Kanchanalak* involved an alleged "agreement to make contributions that *were prohibited by* the Federal Election Campaign Act 'without being detected by the FEC or the public,'" *id.* at 10 (emphasis

added)—the precise agreement *not* pled in the Indictment here.[16]   Moreover, even if

*Kanchanalak* is read as the Special Counsel proposes, the case never went to trial and none of the

issues were ever considered by an appellate court.

Bereft of any credible support, the Special Counsel retreats to euphemisms, variously

claiming that Concord misunderstands the difference between § 371's offense and defraud

clauses; that even "lawful activity" can support a § 371 defraud conspiracy; and that a § 371

defraud conspiracy need not refer to any other statute.   (Opp. 9–10).   This is just more

misdirection.   The Special Counsel is wrong to suggest (Opp. 9) that Concord does not fully

appreciate the distinctions between § 371's offense and defraud clauses.   (Mem. 25).   As for the

Special Counsel's insistence that "lawful activity" can support a defraud conspiracy and no other

statutes are needed, that is beside the point *in this case*.   There still is a need for allegations

showing culpability.   And, because the Special Counsel rests his defraud conspiracy charge

against Concord on statutes and regulations that are not cited in the Indictment, and the supposed

"lawful governmental functions" they give rise to, he must show how those statutes are

implicated by the conduct alleged, and how that conduct "interfered with" the administration of

those statutes.   In the end, the Special Counsel's theory—if adopted—would "make it a federal

---

[16]   The Special Counsel's other cases are of the same ilk. *American Tobacco Co. v. United States*, 328 U.S. 781 (1946) and *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) (cited Opp. 10) were Sherman Act antitrust conspiracy cases and did not address § 371. *United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998) (cited Opp. 10, 40) did involve a § 371 charge, but the conduct there—intentional acts by an attorney that "were prohibited by the rules of professional responsibility and the canons of legal ethics[,]" and designed to obstruct investigation and prosecution of gambling and racketeering crimes by the FBI and the grand jury—were clearly unlawful. *United States v. Rosengarten*, 857 F.2d 76 (2d Cir. 1988) (Opp. 10), and *United States v. Barker Steel Co., Inc.*, 985 F.2d 1123 (1st Cir. 1993) (Opp. 10, 33, 40, 42) involved conspiracies to evade federal income tax and procure numerous minority business "set aside" contracts through explicit false representations directed to government agencies, respectively.   The fraudulent interference, in other words, was inescapably clear.   Not so here.

crime to do *anything*, even that which is otherwise permitted, with the goal of making the government's job more difficult." *Caldwell*, 989 F.2d at 1060.  As the Ninth Circuit found in *Caldwell*, however, that is not what Congress intended.  *Id.* at 1060–61.

### C.    The Special Counsel's § 371's Defraud Conspiracy, As Charged Against Concord, Is Unconstitutionally Vague.

The Special Counsel makes little effort to delineate the boundaries—if there even are any ascertainable to the ordinary citizen—around conduct that "interferes with a lawful governmental function."  If anything, his brief doubles down on the limitless breadth of that vague, judicially engrafted construct, pointing to dictionary definitions that define "function" to encompass anything an agency does—any action "for which a thing exists" or for which an agency is "fitted" or "used."  (Opp. 42).  Thus, under the Special Counsel's definition, an impediment to *anything* the government or its agencies do would be criminal so long as there is some deceit connected to it—exactly what troubled Judge Kozinski and the Ninth Circuit in *Caldwell*.[17]  The Special Counsel dismisses this serious constitutional concern with the notion that Concord's alleged conduct is "clearly proscribed" by § 371.  (Opp. 39).  This does not hold water.

---

[17]    Judge Kozinski, in *Caldwell*, spelled out his concerns about the dangers of § 371's *Klein*-conspiracy formulation and the need for common-sense limits:

> Under the government's theory, a husband who asks his wife to buy him a radar detector would be a felon-punishable by up to five years in prison and a fine of $10,000-because their actions would obstruct the government function of catching speeders.  So would a person who witnesses a crime and suggests to another witness (with no hint of threat) that they not tell the police anything unless specifically asked about it.  So would the executives of a business that competes with a government-run enterprise and lowers its prices to siphon off the government's customers.  So would co-owners of land who refuse to sell it for use as a military base, forcing the government to go to the extra trouble of condemning it.  So would have Elliot Richardson and William Ruckelshaus, had they agreed with each other to quit if asked by President Nixon to fire Archibald Cox.

*Caldwell*, 989 F.2d at 1059–60.

There is no "clear" proscription in § 371 and there is no way to describe a defraud conspiracy without some particularized context, as case after case illustrates. The FECA and FARA statutes that provide the backdrop of the Special Counsel's allegations are byzantine and complex even to expert U.S. lawyers, much less to foreign entities, and the Special Counsel does not contend otherwise. That calls for more precision in charging, not less. To lift the conspiracy charge beyond vagueness here, the Special Counsel needs a specified lawful function articulated in the statutes he cites, along with proof that Concord (or any other defendant) knew about that "function" or the laws that give rise to it, when it acted in pursuit of the § 371 conspiracy. But he alleges none of that and asserts he is not constitutionally required to do so.

The Special Counsel's cited cases do not support his assertions that his charge against Concord clears the vagueness hurdle. Those cases, in fact, illustrate the stark contrast between the non-descript "function" of "electoral processes" charged here, and the concrete "functions" other courts have found to pass muster. *See, e.g.*, *Barker Steel*, 985 F.2d at 1137 (identifying a specific government program—the Minority Business Enterprise program—that defendant targeted and wrongfully secured the benefit of through deceit); *United States v. Morosco*, 822 F.3d 1, 5 (1st Cir. 2016) (finding that defendants "target[ed] a legitimate HUD function—namely, assessing the physical condition . . . of CHA's federally-funded properties"); *Derezinski*, 945 F.2d at 1011 (finding defendants defrauded "the Treasury Department in its lawful function of collecting income taxes"); *Cueto*, 151 F.3d at 635-36 (impeding FBI's targeted investigation into an illegal gambling outfit). This case thus brings into sharp focus the "danger inherent in a criminal conspiracy charge" and the "special capacity for abuse" in a *Klein* conspiracy case due to the "vagueness of the concept of interfering with a proper government function." *United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997) (citation omitted).

Undeterred, the Special Counsel relies on what he calls the "longstanding construction" of the defraud clause, "clarified" in *Hammerschmidt v. United States*, 265 U.S. 182 (1924), to support his unconstitutional expansion of § 371.  (Opp. 40).  But *Hammerschmidt* provides no insight into the application of the defraud clause to complex statutory schemes like those involved in this case.  The Special Counsel also seeks refuge in his asserted view that at least the "requirements of a fraudulent scheme to impede a governmental function are no less clear than the requirements of other fraud statutes[,]" (Opp. 41), but this, too, gets him nowhere.  His claimed analogy is ill-fitting because, as judicially construed, § 371's defraud clause does not look like a fraud proscription at all—"interference with lawful governmental functions" more closely resembles an obstruction of justice prohibition than it does the fraud statutes the Special Counsel cites.  As for those fraud statutes, they are, in fact, far more clear and targeted than the Special Counsel's § 371's *Klein*-conspiracy construct in this case.  *See, e.g., United States v. Tagliaferri*, 820 F.3d 568, 571 (2d Cir. 2016) (Investment Advisers Act, which prohibits specific persons from "engag[ing] in certain transactions"); *United States v. Franklin-El*, 554 F.3d 903, 910–11 (10th Cir. 2009) (health care fraud statute, which proscribes "knowing[] and willful[]" fraud on specific "health care benefit program[s]").[18]

Nor, contrary to the Special Counsel's fallback claim, does § 371's *mens rea* requirement—as he conceives it—solve his vagueness problem.  (Opp. 41).  As noted above, the Special Counsel's view of *mens rea* is cramped—so long as one acts with the purpose to deceive the government in order to impair its "regulatory functions" as the Special Counsel chooses to

---

[18]   The Special Counsel's reliance on *United States v. Rybicki* 354 F.3d 124 (2d Cir. 2003), is perplexing given that the statutory phrase at issue there—"scheme or artifice to deprive another of the intangible right of honest services"—later was narrowed by the Supreme Court to avoid vagueness concerns.  *Id.* at 127; *See also Skilling*, 561 U.S. at 369.  (Opp. n.14).

delineate them, that is sufficient, even where those functions are unknown to the defendant or the law.  How this minimal knowledge somehow reveals the shrouded meaning of "interference with lawful government functions," the Special Counsel nowhere explains.  Nor can he.  There is nothing self-defining about that phrase in this context at all.  The Special Counsel dismisses the relevance of the Supreme Court's vagueness holding in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), but to no avail.  As the Special Counsel notes, the government argued there that the term "official act" encompassed "nearly any activity by a public official."  *Id.* at 2367.  But that is no different than what the Special Counsel argues here, defining "governmental function" as encompassing not just any "action" for which a federal agency is "responsible," but also any "action" for which an agency is "fitted" or "used" or "for which [an agency] exists."  (Opp. 42). Simply put, that definition is no more enlightening to an ordinary person (much less a foreign business entity) than was the definition of "official act" found wanting in *McDonnell*.

## III.    CONCLUSION

For all these reasons, the Indictment of Concord should be dismissed.

Dated: August 31, 2018                                  Respectfully submitted,

                                                        CONCORD MANAGEMENT
                                                        AND CONSULTING LLC

James C. Martin*                          By:    /s/ Eric A. Dubelier
Colin E. Wrabley*                                Eric A. Dubelier (D.C. Bar No. 419412)
REED SMITH LLP                                   Katherine J. Seikaly (D.C. Bar No. 498641)
225 Fifth Avenue                                 REED SMITH LLP
Pittsburgh, PA  15222-2716                       1301 K Street, NW
(412) 288-3131 (phone)                           Suite 1000 – East Tower
(412) 288-3063 (fax)                             Washington, DC  20005-3373
jcmartin@reedsmith.com                           202.414.9200 (phone)
cwrabley@reedsmith.com                           202.414.9299 (fax)
* *Admitted pro hac vice*                        edubelier@reedsmith.com
                                                 kseikaly@reedsmith.com

# EXHIBIT A

DARRELL E. ISSA, CALIFORNIA
CHAIRMAN

JOHN L. MICA, FLORIDA
MICHAEL R. TURNER, OHIO
JOHN J. DUNCAN, JR., TENNESSEE
PATRICK T. McHENRY, NORTH CAROLINA
JIM JORDAN, OHIO
JASON CHAFFETZ, UTAH
TIM WALBERG, MICHIGAN
JAMES LANKFORD, OKLAHOMA
JUSTIN AMASH, MICHIGAN
PAUL A. GOSAR, ARIZONA
PATRICK MEEHAN, PENNSYLVANIA
SCOTT DesJARLAIS, TENNESSEE
TREY GOWDY, SOUTH CAROLINA
BLAKE FARENTHOLD, TEXAS
DOC HASTINGS, WASHINGTON
CYNTHIA M. LUMMIS, WYOMING
ROB WOODALL, GEORGIA
THOMAS MASSIE, KENTUCKY
DOUG COLLINS, GEORGIA
MARK MEADOWS, NORTH CAROLINA
KERRY L. BENTIVOLIO, MICHIGAN
RON DeSANTIS, FLORIDA

ONE HUNDRED THIRTEENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY  (202) 225–5074
FACSIMILE  (202) 225–3974
MINORITY  (202) 225–5051

http://oversight.house.gov

ELIJAH E. CUMMINGS, MARYLAND
RANKING MINORITY MEMBER

CAROLYN B. MALONEY, NEW YORK
ELEANOR HOLMES NORTON,
DISTRICT OF COLUMBIA
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
STEPHEN F. LYNCH, MASSACHUSETTS
JIM COOPER, TENNESSEE
GERALD E. CONNOLLY, VIRGINIA
JACKIE SPEIER, CALIFORNIA
MATTHEW A. CARTWRIGHT, PENNSYLVANIA
L. TAMMY DUCKWORTH, ILLINOIS
ROBIN L. KELLY, ILLINOIS
DANNY K. DAVIS, ILLINOIS
PETER WELCH, VERMONT
TONY CARDENAS, CALIFORNIA
STEVEN A. HORSFORD, NEVADA
MICHELLE LUJAN GRISHAM, NEW MEXICO
VACANCY

LAWRENCE J. BRADY
STAFF DIRECTOR

May 20, 2014

The Honorable Eric H. Holder, Jr.
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Mr. Attorney General:

The Committee on Oversight and Government Reform continues to examine the Internal Revenue Service's targeting of conservative tax-exempt applicants. On April 23, 2014, seventeen Members of the Committee wrote to you requesting material concerning the Department's apparent role in targeting tax-exempt applicants and its coordination with the IRS on potential prosecutions of tax-exempt applicants. Because you have failed to comply with this request for documents and because the Department has obstructed the Committee's oversight, the Committee has no choice but to issue a subpoena compelling your cooperation with this important matter.

On April 23, 2014, the Committee wrote to you concerning the apparent coordination between the Department's Election Crimes Branch and the IRS about prosecuting tax-exempt applicants for making false statements on their application forms.[1] In particular, former IRS official Lois Lerner wrote to her colleagues about a call received from Richard Pilger, the Director of the Department's Election Crimes Branch. Ms. Lerner wrote:

> He wanted to know who at IRS the DOJ folks could talk to about Sen. Whitehouse idea at the [Senate Judiciary Subcommittee] hearing that DOJ could piece together false statement cases about applications who "lied" on their 1024s – saying they weren't planning on doing political activity, and then turning around and making large visible political expenditures.[2]

---

[1] Letter from Darrell Issa et al., H. Comm. on Oversight & Gov't Reform, to Eric H. Holder, Jr., U.S. Dep't of Justice (Apr. 23, 2014).
[2] E-mail from Lois Lerner, Internal Revenue Serv., to Nikole Flax, Internal Revenue Serv. (May 8, 2013).  [IRSR 209282]

The Honorable Eric H. Holder, Jr.
May 20, 2014
Page 2

The Committee's letter requested that the Department produce three categories of documents by May 5, 2014.[3]  As of today, however, the Department has produced no documents in response to this request.

In addition to the Department's failure to produce documents, the Department obstructed the Committee's oversight work during its transcribed interview of Mr. Pilger.  During the interview, a Justice Department lawyer directed Mr. Pilger to not answer questions posed by Committee staff an astounding 34 times.  Although the Committee's letter clearly articulated the Committee's broad concerns,[4] the Department's lawyer refused to allow Mr. Pilger to answer questions on procedural and substantive matters relevant to the Committee's oversight.[5]  The Department unilaterally, and without the agreement of the Committee, limited the scope of the interview to Mr. Pilger's interactions with Ms. Lerner.

Among other topics, the Department's lawyer refused to allow Mr. Pilger to answer questions about conversations within the Department in wake of *Citizens United v. Federal Election Commission*,[6] Mr. Pilger's interactions with the Federal Election Commission about *Citizens United*,[7] or whether Mr. Pilger had communicated with any IRS official since Lois Lerner's apology for the targeting on May 10, 2013.[8]  These matters are highly relevant to the Committee's investigation of the IRS targeting, and the Department's refusal to allow Mr. Pilger to provide this information unduly impedes the Committee's oversight obligations.

The Department's lawyer even refused to allow Mr. Pilger to answer basic questions about how he prepared for the interview, which are used to assess the accuracy and integrity of Mr. Pilger's testimony.[9]  The Department's refusal is highly troublesome in light of an offhand remark from Mr. Pilger later in the interview that, in fact, he had coordinated with Public Integrity Section Chief Jack Smith in preparation for the interview.  The following exchange occurred during the interview:

| Q: | My question was about after you met with Ms. Lerner in May of 2013, did you have any discussions [or] communications with Mr. Smith, about not following up with Ms. Lerner because of the publication of the IRS targeting? |
| --- | --- |
| A: | Other than in preparation for this hearing, no.  I am sorry, this interview. |

---

[3] Letter from Darrell Issa et al., H. Comm. on Oversight & Gov't Reform, to Eric H. Holder, Jr., U.S. Dep't of Justice (Apr. 23, 2014).

[4] *See id.*

[5] *See, e.g.*, Transcribed interview of Richard Pilger, U.S. Dep't of Justice, in Wash., D.C., at 31 (May 6, 2014) ("Mr. Pilger is here and available, as a career prosecutor, to talk about his communications, interactions with Ms. Lerner concerning tax-exempt organizations and the surrounding circumstances.").

[6] *Id.* at 139-40.

[7] *Id.* at 140-41.

[8] *Id.* at 164.

[9] *Id.* at 33-35.

The Honorable Eric H. Holder, Jr.
May 20, 2014
Page 3

| | |
|---|---|
| Q: | You had conversations with Mr. Smith in preparation of this interview? |
| Justice Department Lawyer: | I am going to instruct you not to answer questions concerning your preparation for the interview. |
| Committee Counsel: | He opened the door for this question. |
| Justice Department Lawyer: | I am instructing him not to answer. |
| Mr. Pilger: | Again, as a Department employee, you have heard counsel for the Department's directions.[10] |

The Department also refused to allow Mr. Pilger to answer questions about highly relevant facets of the Committee's oversight of the Executive Branch. For example, the Department's lawyer directed Mr. Pilger to not answer questions about whether the Department is investigating the IRS's targeting of tax-exempt applications. The Department's lawyer stated:

| | |
|---|---|
| Q: | Sir, do you have any reason to believe the Department's investigation of IRS targeting is open and ongoing? |
| Justice Department Lawyer: | Don't answer the question. |
| Q: | Mr. Pilger? |
| A: | I will respect the direction of Agency counsel. |
| Q: | Sir, on January 13, 2014, the *Wall Street Journal* reported that unnamed law enforcement officials said the FBI would not file criminal charges as a result of the Department's investigation. Sir, do you know how . . . the *Journal* received that information? |
| Justice Department Lawyer: | Don't answer that question. |
| Q: | Mr. Pilger? |
| A: | I'll respect the direction of the Agency's counsel. |

---

[10] *Id.* at 115.

The Honorable Eric H. Holder, Jr.
May 20, 2014
Page 4

| Q: | Mr. Pilger, did you leak that information to the *Wall Street Journal*? |
| --- | --- |
| Justice Department Lawyer: | Don't answer that question. |
| Q: | Mr. Pilger? |
| A: | I'll respect the direction of Agency counsel.[11] |

The Department's lawyer also directed Mr. Pilger to not answer questions about whether the Department has investigated the conservative group, True the Vote, in response to requests from Democratic Members of Congress.[12]

The Department's refusal to allow Mr. Pilger to testify about matters highly relevant to the Committee's investigation unnecessarily delays and frustrates the Committee's Constitutional oversight obligations. The Department's obstruction in this regard, coupled with its failure to produce any relevant material to date, leads the Committee to conclude the Department is not seriously committed to cooperating with the Committee's investigation on the Committee's terms. Therefore, the Committee is issuing the attached subpoena for the production of all documents requested by the Committee on April 23, 2014.

Thank you for your attention to this important matter.

Sincerely,

Darrell Issa
Chairman

Enclosure

cc:   The Honorable Elijah E. Cummings, Ranking Minority Member

---

[11] *Id.* at 162-63.
[12] *Id.* at 165-68.