**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-DLF |
| INTERNET RESEARCH AGENCY LLC, *et al*., | |
| Defendants. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN
SUPPORT OF ITS MOTION FOR DISCOVERY REGARDING SELECTIVE
PROSECUTION**

Only the government knows if it has selectively chosen to prosecute the defendants in this case instead of similarly situated persons. But in its Opposition, the Special Counsel argues a riddle. On the one hand, he states that Defendant Concord does not identify any similarly situated parties to use as a control group in assessing Concord's right to discovery in connection with a potential selective prosecution claim. On the other hand, however, the Special Counsel insists that the government's history of prosecuting campaign contribution violation cases unrelated to the 2016 presidential election demonstrates that other non-Russian persons have been prosecuted for similar conduct. The result is that while arguing against any discovery the Special Counsel unilaterally and selectively chooses and discloses dissimilar prosecutions to support the ultimate issue as to whether the prosecution in this case is unlawful. That concession alone supports that the government should be ordered to disclose all instances where individuals or entities similarly situated to the defendants here were prosecuted or not prosecuted.

**I.      Argument**

The Special Counsel makes essentially three arguments in its Opposition ("Opp."), each of which should be rejected by this Court.

1

**First**, he argues that the examples Concord has given of well-documented non-Russian attempted interference in the 2016 election were not an adequate control group for purposes of identifying "similarly situated" individuals as part of a selective prosecution claim. But the Special Counsel offers no legal basis for concluding that these examples—given the unique facts of this case where much foreign interference on social media will likely go unreported and occur out of the public view—fail to meet Concord's burden, particularly at the discovery stage.

**Second**, the Special Counsel identifies its own cherry-picked set of allegedly similar prosecutions, which he claims demonstrate that Concord was not singled out for prosecution in this case. Those references to cases involving allegedly unlawful campaign contributions, however, are easily distinguishable and further demonstrate how the Special Counsel continues to use the vague charging language in the Indictment to twist the law in an effort to suit his own ends.

**Third**, the Special Counsel argues that the Appointment Order purportedly authorizing his activities is not evidence of discriminatory intent (even though it specifically identifies Russia and no other nation or national origin), because that Order was issued in response to certain "assessments" by "the U.S. Intelligence Community." Opp. 1. This argument does nothing to mitigate the evidence of discriminatory intent because at the time of the Special Counsel's appointment, the Deputy Attorney General stated that he had made no determination of whether crimes had been committed or that any prosecution was warranted. Department of Justice Press Release No. 17-541, *Appointment of Special Counsel* (May 17, 2017). Yet, the Appointment Order specifically targets a single nationality—Russians—by referencing Russia three times in the one-page order. Moreover, the mere fact that Concord has put forth "some evidence" tending to show intent—by way of the Special Counsel's Appointment Order—is

sufficient at this stage of proceedings.  *United States v. Armstrong*, 517 U.S. 456, 468-70 (1996); *United States v. Hsia*, 24 F. Supp. 2d 33, 49 (D.D.C. 1998) (acknowledging that the standard for obtaining discovery "necessarily is lower than the 'clear evidence' standard required for dismissal of the indictment"), *reversed in part and appeal dismissed*, 176 F.3d 517 (D.C. Cir. 1999) (citing *Armstrong*, 517 U.S. at 470).  In sum, because the Special Counsel has done little more than dispute what it means to be "similarly situated" for purposes of this unprecedented prosecution, discovery is needed to determine whether there is a basis for Concord's potential selective prosecution claim.

The Special Counsel does not address, and as such concedes, that no case like this has ever been brought against anyone, that is, a Section 371 defraud prong conspiracy to allegedly interfere in an election (which is not a crime in and of itself) by posting information on social media.  Only the government knows if it has declined to prosecute similar cases (most likely because the Department of Justice operating in its normal manner, as opposed to through the Special Counsel, concluded in those instances that no crime was committed).

> **A.**   **The fact that the parties dispute the scope of "similarly situated" does not preclude discovery in support of Concord's selective prosecution motion**

The parties essentially dispute what it means to be "similarly situated" for purposes of the selective prosecution test in these unique circumstances.  The Special Counsel identifies certain factors that he believes distinguish the conduct identified in Concord's Motion from the conduct alleged in the Indictment.  Opp. 7-8.  Yet, in supporting its argument, the Special Counsel does little to show how these publicly-reported attempts at interference in the 2016 election by non-Russian individuals do not involve "roughly the same crime under roughly the same circumstances but against whom the law has not been enforced."  *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (internal quotation marks omitted).

In attempting to distinguish the conduct of Ukrainian officials who sought to support the campaign of candidate Hillary Clinton and disparage the campaign of then-candidate Trump, the Special Counsel argues that because social media posts critical of then-candidate Trump were made under their real identities the conduct does not involve "deception," which the Special Counsel argues is an essential element of conspiracy to defraud the United States under *Hammerschmidt*. Opp. at 7 (citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). In doing so, the Special Counsel entirely ignores the evidence cited in Concord's Motion that Ukrainian officials also disseminated unauthenticated documents in an effort to discredit the Trump campaign. Mot. 9.

Further, Concord did cite examples of individuals who met to discuss using fake (*i.e.* deceptive) Facebook accounts as part of an online manipulation program designed to help elect candidate Trump. Mot. 9-10. Yet the Special Counsel now suggests that even that is not enough, noting that "an offer does not amount to 'similar conduct' to the conduct charged in the indictment." Opp. 7. It is particularly ironic for the Special Counsel to now argue that Concord must identify individuals who actually **committed the underlying crime** in order to be "similarly situated" in the context of a § 371 defraud clause conspiracy when it has previously argued that the government does not need to allege an underlying substantive offense. Gov't Opp. to Defendant's Mot. to Dismiss (ECF No. 56) at 8-13.

The Special Counsel goes on to try to distinguish the example of Christopher Steele by stating, without citation to any legal authority, that "acting as an anonymous source for media articles is not similar to conducting information warfare against the United States." Opp. 8 (internal quotation marks omitted). Terminology aside, this is a distinction without a difference, as Steele allegedly used the media to influence the 2016 election while concealing his identity

and foreign nationality.  The Special Counsel then adds that Concord has not suggested how acting as an anonymous source "would implicate the lawful functions of any government agency," but completely ignores the fact that Steele was working on-and-off as a confidential human source for the FBI, and interacted with other U.S. federal officials—including officials from the DOJ, FBI, State Department, Central Intelligence Agency, and staff of members of Congress—in an effort to disseminate his unverified dossier of allegations against Trump, Russian officials, and others.  Mot. 10-11.  Contrary to the Special Counsel's statements, therefore, the conduct identified in Concord's motion in fact implicates the lawful function of **at least four** government agencies and two branches of government.  Moreover, Steele's ultimate goal was to publicly leak the information while remaining anonymous, which is far more egregious than private Russian individuals posting opinions on social media.

Finally, the Special Counsel attempts to distinguish the two instances Concord cites in which foreign nationals allegedly made illegal campaign contributions, even though those are the very same types of offenses, as discussed below, upon which the Special Counsel relies.  Indeed, the Special Counsel concedes, as he must, that there is at least one campaign contribution violation that "has not yet resulted in a criminal prosecution."  Opp. 8.  Surely, absent any legal argument by the Special Counsel and given the unprecedented nature of the allegations in the Indictment here, the examples Concord has cited of conduct by non-Russians that has gone unprosecuted meets the standard required to obtain discovery in furtherance of a selective prosecution claim.  *Hsia*, 24 F. Supp. 2d at 49.

### B.   The Special Counsel's claimed efforts to prosecute similar conduct are narrowly drawn and irrelevant

The Special Counsel claims that the government's "overall record of prosecutions in election-related cases" refutes Concord's argument for discovery.  Opp. 11.  Not so.  The cases

the Special Counsel identifies are easily distinguishable because they rely almost exclusively on allegations of illegal campaign contributions, not expenditures that are at issue here.  *See United States v. Whittlemore*, 776 F.3d 1074 (9th Cir. 2015) (U.S. citizen convicted of making excessive campaign contributions, making contributions in the name of another, and making a false statement to a federal agency); *United States v. Smukler*, --- F. Supp. 3d ---, No. 17-563-02, 2018 WL 3649555 (E.D. Pa. Aug. 1, 2018) (charges against U.S. citizen defendants for, *inter alia*, making illegal campaign contributions); Third Superseding Indictment, *United States v. Matsura*, No. 14-CR-388 (S.D. Cal. July 8, 2016) (charges against one foreign national and several U.S. citizens for illegal campaign contributions); Indictment, *United States v. Danielczyk*, No. 11-CR-85 (E.D. Va. Dec. 22, 2011) (charging executives of U.S.-based companies with conspiring to violate campaign finance law by making illegal campaign contributions).  The only case the SCO relies upon that involves campaign expenditures is *United States v. Benton*, 890 F.3d 697 (8th Cir. 2018), where the expenditure was a payment by Ron Paul's 2012 presidential campaign to a state senator in exchange for a political endorsement.  Thus, despite the Special Counsel's efforts to look farther back in time to find cases that show the government has prosecuted similar cases, he has found none.  Moreover, he has put forth no evidence of other cases (like the instances of non-prosecution cited by Concord) where a non-Russian individual or an entity has been prosecuted based on the use of social media or other media in an effort to influence a presidential election.

The Special Counsel states that certain cases he cites involve "the very crime that Concord is accused of committing."  Opp. 12.  But this statement is demonstrably false.  Here, even according to the Special Counsel's own theory of the case, the only possible "conspiracy to defraud the United States by impairing the lawful functions of the [FEC]," *id.*, involves the

agency's alleged inability to timely investigate a narrowly defined category of suspected campaign expenditures by a foreign national.  The cases relied upon by the Special Counsel involve illegal campaign contributions to candidates and political parties, which are nowhere charged in this case.  *See Hsia*, 176 F.3d at 520 (illegal campaign contributions); *United States v. Braddock*, Nos. 98-3114, 98-3125, 2013 WL 4441531 (D. Conn. Aug. 14, 2013) (scheme to solicit illegal contributions and disguise them as lawful ones); Superseding Indictment, *United States v. Fieger*, No. 07-20414, at 7 (E.D. Mich. Jan. 7, 2008) (use of corporate funds to make prohibited campaign contributions and to disguise those prohibited contributions as legitimate payments); *United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C. 1999) (campaign contribution violations and false statements based on those contributions), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999); *United States v. Trie*, 23 F. Supp. 2d 55 (D.D.C. 1998) (same).  These cases bear no similarity at all to the conduct charged in the Indictment and so do nothing for the Special Counsel's argument that the government's prosecution history constitutes evidence that Concord has not been selectively prosecuted.

The Special Counsel also argues that Concord's articulation of "similarly situated" individuals who engaged in similar conduct is too narrow.  Opp. 11.  In support, it cites *United States v. Bourgeois*, 964 F.2d 935, 941 (9th Cir. 1992), for the proposition that "the relevant inquiry is the history of prosecutions over a reasonable period of time."  The reliance on this language in *Bourgeois* is misplaced for two reasons.  First, as discussed above, even looking at a broader timeframe, the Special Counsel has been unable to identify relevant similar prosecutions that have been brought against non-Russian individuals or entities that would refute Concord's claim of selective prosecution; and second, *Bourgeois* involved a selective prosecution claim alleging that a disproportionate number of African Americans were being prosecuted in felon-in-

possession cases, a situation where the court had a substantial amount of data available to it to assess the selective prosecution claim. *Id.* Indeed, the court acknowledged a fundamental difference between the facts of that case and those at play here, when it stated that "[a]s a felon in possession of a firearm, [the defendant's] situation differs from that of most defendants who raise meritorious selective prosecution claims. **Typically the crime charged is one rarely prosecuted**." *Id.* (emphasis added). Here, this is not a case that is rarely prosecuted; instead it is an unprecedented case charging a § 371 defraud conspiracy based on the allegedly deceptive use of social media in a presidential election by private foreign nationals.

In sum, the fact that the government can, and most certainly does, prosecute campaign contribution cases, has nothing to do with the question of whether the government has failed to prosecute other individuals—most notably, those identified in Concord's motion—who engaged in conduct that amounts to "roughly the same crime under roughly the same circumstances." *Khanu*, 664 F. Supp. 2d at 32.

### C.      Concord has produced sufficient evidence of discriminatory intent

As a final matter, the Special Counsel argues that Concord has not made a showing of improper intent by minimizing the importance of the Appointment Order, which authorized him to conduct an investigation into "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." The Special Counsel's efforts to now claim that he has broad discretion to pursue non-Russian individuals and entities are belied by previous statements to this Court, which concede that he does not have "open-ended authority" to investigate interference with the 2016 presidential election, but instead that the "investigative mission" was "organized social-media active measures that were emanating from Russia and funded by an individual and companies with close ties to the Russian government." Gov't Opp. to Defendant's Motion to Dismiss (ECF No. 47) at 46.

Moreover, the Special Counsel attempts to hide behind "concerns about disclosure of 'foreign-intelligence products and techniques,'" and relies upon *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 491 (1999). But that reliance is misplaced. *Reno*—a civil case claiming selective deportation—arose in the context of seeking immediate review of a deportation decision, and makes no mention of discovery in furtherance of the selective enforcement claim. *Id.* at 488-91. Moreover, the Court in *Reno* explicitly declined to consider the merits of the underlying selective prosecution claim, making that case even less applicable here. *See Reno v. Am.-Arab Anti-Discrimination Committee*, 524 U.S. 903 (1998) (granting certiorari "limited to the following question: 'Whether, in light of the Illegal Immigration Reform and Immigrant Responsibility Act, the courts below had jurisdiction to entertain respondents' challenge to the deportation proceedings prior to the entry of a final order of deportation?'").

Finally, the Special Counsel's argument misses the larger point that a party seeking discovery on a selective prosecution claim need not produce direct evidence of intent. *See United States v. Washington*, 705 F.2d 489, 494-95 (D.C. Cir. 1983). Indeed, such evidence is particularly hard to come by here, where neither the alleged crimes (which involve activities on social media outlets) nor the government's investigation of those crimes took place within the public's view. Accordingly, the indirect evidence in the Appointment Order is sufficient to require discovery at this point.

## II.      Conclusion

Concord has offered evidence of similar conduct related to efforts to influence the same election it is alleged to have interfered with, and the Special Counsel—despite expanding its search to include past elections over the course of many years—has failed to offer anything more in defense of its prosecution decision thank cases involving campaign contributions. Concord

has offered sufficient evidence as to both elements of the applicable test, and should be provided with discovery in furtherance of its selective prosecution claim.

Dated:   October 5, 2018

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/*Eric A. Dubelier*
Eric A. Dubelier
Katherine Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin*
Colin E. Wrabley*
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412-288-3131 (phone)
412-288-3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

*Admitted Pro Hac Vice*