# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CONCORD MANAGEMENT & CONSULTING LLC,<br><br>*Defendant.* | Criminal Action No. 18-cr-0032-2 (DLF) |

## ORDER

Before the Court is Defendant Concord Management and Consulting LLC's Motion for Discovery Regarding Selective Prosecution, Dkt. 61.  For the reasons stated during the hearing held on October 15, 2018, the Court denies Concord's motion.

A criminal defendant must present "some evidence tending to show the existence of" (1) discriminatory effect and (2) discriminatory intent to prevail on a motion for discovery regarding a selective prosecution claim.  *United States v. Armstrong*, 517 U.S. 456, 468–69 (1996).  To show discriminatory effect, Concord must make a "credible showing of different treatment of similarly situated persons."  *Id.* at 470.  And persons are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them."  *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)).  To show discriminatory purpose, Concord must present credible evidence that the Special Counsel is prosecuting Concord "because of" its Russian nationality.  *Wayte v. United States*, 470 U.S. 598, 610 (1985).  Concord has not satisfied either requirement.

Concord relies on a host of media reports and a few miscellaneous court filings to show discriminatory effect. Media outlets reported that former Ukrainian government officials disseminated documents implicating Paul Manafort and posted social media messages criticizing then-candidate Donald Trump. Concord's Mot. at 8–9. Others reported a 2016 meeting between an envoy representing the Crown Princes of Saudi Arabia and Abu Dhabi, Donald Trump Jr., a Lebanese-American businessman, an Israeli social-media-manipulation specialist, and the founder of a private military contractor. *Id.* at 9–10. The discussions allegedly involved a proposed "online manipulation program designed to help elect then-candidate Trump by using thousands of fake accounts to promote him on Facebook." *Id.* at 9–10. Other news reports stated that a former MI6 intelligence agent acted as an anonymous source for media reports about candidate Trump and that he, among other things, disseminated a dossier of opposition research about Trump. *Id.* at 10–11. And yet another report alleged that Iran used Facebook to spread disinformation worldwide. *Id.* at 6 n.2. Concord also relies on a 2016 Federal Election Commission complaint that alleges that two Chinese nationals funneled illegal campaign contributions through a U.S. corporation. *Id.* at 13. And it relies on another complaint and a Federal Election Commission Conciliation Agreement that allege that the Australian Labor Party sent Australian nationals as delegates to serve as volunteers with the Bernie 2016 campaign organization. *Id.* at 14, Exs. C, D.

None of these allegations involves different treatment of "similarly situated persons." *Armstrong*, 517 U.S. at 470. True, Concord's examples involve foreign nationals and political candidates. But none of its examples is sufficiently similar to the conspiracy alleged here. Count one charges Concord, two other entities, and 13 individuals with conspiring to defraud the United States and interfere with the U.S. political system. It alleges that the co-conspirators,

among other things, created deceptive U.S. personas, social media pages, and social media groups to attract U.S. audiences and sow discord, used computer infrastructure to hide their Russian identities and affiliations, obtained visas under false pretenses, and destroyed emails to cover their tracks.  *See* Indictment ¶¶ 2–85.  And Concord has made no attempt to explain whether there are "legitimate prosecutorial factors," including insufficient evidence, that could explain why the other foreign nationals it has identified have not been charged to date.  *See Branch Ministries*, 211 F.3d at 14.   Put simply, Concord has not made the "credible showing of different treatment of similarly situated persons" required to obtain discovery.  *Armstrong*, 517 U.S. at 469.

To show discriminatory intent, Concord points to the Special Counsel's appointment order.  The order cites the Attorney General's "responsibility . . . to ensure a full and thorough investigation of the Russian government's efforts to interfere in the 2016 presidential election." Concord's Mot. Ex. A at 1 (Appointment Order), Dkt. 61-1.  And it establishes the Special Counsel's authority to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," which includes the investigation of "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."  *Id*.

But although the appointment order explicitly refers to the Russian government, it does not suggest that the Special Counsel is prosecuting Concord because Concord is Russian.  To the extent the appointment order suggests any prosecutorial motive at all, it suggests that the Special Counsel is prosecuting individuals and entities because of their involvement in "the Russian government's efforts to interfere in the 2016 presidential election," *id.*—not because of their Russian nationality.

Concord has shown neither discriminatory effect nor discriminatory intent. Accordingly, its motion for discovery is **DENIED**.

                                                                                          _____
                                                                                          DABNEY L. FRIEDRICH
                                                                                          United States District Judge

Date: October 16, 2018