```
 1                BEFORE THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLUMBIA

 3

 4    UNITED STATES OF AMERICA,        .
                                       .  Case Number 18-CR-32
 5              Plaintiff,             .
                                       .
 6         vs.                         .
                                       .  Washington, D.C.
 7    CONCORD MANAGEMENT AND           .  October 15, 2018
      CONSULTING LLC,                  .  10:02 a.m.
 8                                     .
                Defendant.             .
 9    - - - - - - - - - - - - - - - - -

10            TRANSCRIPT OF PRETRIAL MOTION HEARING
                 BEFORE THE HONORABLE DABNEY L. FRIEDRICH
11                 UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the Government:            JEANNIE S. RHEE, AUSA
                                     MICHAEL R. DREEBEN, AUSA
14                                   LAWRENCE RUSH ATKINSON, AUSA
                                     RYAN KAO DICKEY, AUSA
15                                   U.S. Department of Justice
                                     Special Counsel's Office
16                                   950 Pennsylvania Avenue N.W.
                                     Washington, D.C. 20530
17                                   202-616-0900

18                                   JONATHAN I. KRAVIS, AUSA
                                     U.S. Attorney's Office for the
19                                     District of Columbia
                                     555 Fourth Street N.W.
20                                   Washington, D.C. 20530
                                     202-252-6886
21
      For the Defendant Concord
22    Management and Consulting LLC: ERIC A. DUBELIER, ESQ.
                                     Reed Smith LLP
23                                   1301 K Street N.W.
                                     Suite 1000, East Tower
24                                   Washington, D.C. 20005
                                     202-414-9291
25              -- continued --
```

1    APPEARANCES (CONTINUED):

2                                      KATHERINE J. SEIKALY, ESQ.
                                       Reed Smith LLP
3                                      7900 Tysons One Place, Suite 500
                                       McLean, Virginia 22102
4                                      202-414-2919

5

6    Official Court Reporter:          SARA A. WICK, RPR, CRR
                                       U.S. Courthouse, Room 4704-B
7                                      333 Constitution Avenue N.W.
                                       Washington, D.C. 20001
8                                      202-354-3284

9

10   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              P R O C E E D I N G S
2         (Call to order of the court.)
3              THE COURTROOM DEPUTY:  Your Honor, this is Criminal
4    Case 18-32, the United States of America versus Concord
5    Management and Consulting LLC.
6         Will counsel, please, approach the podium and identify
7    yourselves for the record, as well as any additional parties at
8    your table.
9              MR. KRAVIS:  Good morning, your Honor.  Jonathan
10   Kravis, Assistant United States Attorney, on behalf of the
11   United States.  I have with me at counsel table Michael Dreeben
12   and Rush Atkinson from the Office of Special Counsel.
13             THE COURT:  Good morning, Mr. Kravis.
14             MR. KRAVIS:  Good morning, your Honor.
15             MR. DUBELIER:  Good morning, your Honor.  Eric
16   Dubelier and Katherine Seikaly for Concord Management.
17             THE COURT:  Good morning, Mr. Dubelier.
18        We are here on your two motions.  We have your motion to
19   dismiss the indictment on four separate grounds and your motion
20   for discovery relating to selective prosecution.  Let's start
21   first with the motion to dismiss the indictment.
22             MR. DUBELIER:  Then that's me, your Honor.  I will
23   grab my notes.
24             THE COURT:  All right.  You don't have Mr. Martin here
25   today?
```

1          MR. DUBELIER:  No.  I figured I would slug it out.

2          THE COURT:  All right.  Starting, Mr. Dubelier, with

3     your first argument, that the indictment fails to allege a

4     defraud conspiracy.  Count 1 alleges a conspiracy to defraud

5     three separate government agencies, and yet, Concord is arguing

6     that the indictment's defective because it doesn't identify

7     particular statutes and regulations that Concord violated with

8     the other conspirators.

9       That, to me, sounds like a challenge to an offense-based

10    conspiracy, not a defraud conspiracy as we have here.

11         MR. DUBELIER:  I don't actually think that's the

12    argument we made, your Honor, and I think that the Special

13    Counsel's Office kind of recrafted our argument, and that's

14    certainly what they argued.  We never said that a conspiracy to

15    defraud has to allege other underlying crimes.  We understand it

16    doesn't.  What we have alleged here is the indictment doesn't

17    charge a crime.  It charges conspiring to interfere with an

18    election.  And then it says part of that interference in the

19    election is defrauding these three government agencies.  There

20    is no statute of interfering with an election.  There just

21    isn't.

22         THE COURT:  But wait, wait.  The indictment does more

23    than that.  While it doesn't allege specific violations of FECA

24    or FARA, it certainly lays out that FECA bars foreign

25    involvement in elections, expenditures --

1          MR. DUBELIER:  It doesn't, your Honor, with all due

2     respect.  FECA doesn't just say it bars foreign involvement.

3     That's what the --

4          THE COURT:  Well, with respect to certain expenditures

5     that are alleged here.

6          MR. DUBELIER:  Well, no, those expenditures are not

7     alleged here; they're not alleged here.  The expenditures would

8     be direct contributions, or there would be a tiny little

9     category of electioneering expenditures, meaning expenditures

10    two months before an election that specifically advocate for the

11    defeat or the election of a specific candidate.  None of that is

12    alleged in the indictment.

13         And again, the Special Counsel repeats this as mantra that

14    FECA prohibits foreign involvement in U.S. elections.  It

15    doesn't.  It prohibits certain specific acts, none of which are

16    alleged here.

17         THE COURT:  Well, it does allege that FECA does

18    prohibit certain specific acts and that they knowingly and

19    intentionally conspired.

20         MR. DUBELIER:  Which acts?  How would we know that

21    from this indictment which acts those are?

22         THE COURT:  But again, that suggests to me that you

23    are asking for them to identify the specific violations of law

24    here.

25         MR. DUBELIER:  No, your Honor.  With all due respect,

1    we're not.  We're not saying they have to be specific violations

2    of law.  What did we do?  Whether or not it was illegal or

3    legal, what did we do that would ultimately give rise to an

4    investigation, which is their theory of liability here, of some

5    violation of these underlying statutes?  What did we do?

6         THE COURT:  Well, they say you conspired to defraud

7    the FEC, and I don't know that they at this stage need to

8    delineate with specificity exactly how you did that.

9         MR. DUBELIER:  Well, if they haven't delineated that

10   in the indictment, how do we know what we are charged with, and

11   what did the grand jury actually indict us with doing?  What did

12   the grand jury decide we had done that's a violation of law?

13      The Special Counsel's Office told them that we interfered

14   with an election.  There's no such crime.  It doesn't exist in

15   the United States Code, and there's no conspiracy to interfere

16   in a U.S. election, with two narrow exceptions that do not apply

17   here.  In the civil rights laws and in Title 18, there's a

18   statute that goes to specifically interfering with vote,

19   suppressing somebody's vote.  And there have been cases where

20   the government has charged people with interfering with

21   somebody's ability to vote, either in the context of civil

22   rights or in the context of Title 18.  That's not what is

23   charged here.

24        THE COURT:  Okay.  But you agree with me that the

25   indictment explains that FECA bars foreign nationals from making

1      certain contributions -- certain expenditures?

2              MR. DUBELIER:  Well, it says those words.  It doesn't

3      say what those expenditures are.

4              THE COURT:  And isn't that enough now at this stage to

5      put you on notice?

6              MR. DUBELIER:  Absolutely not, because they're

7      obligated to charge a crime.  That's not a crime.

8              THE COURT:  But they're not obligated to charge a

9      crime with respect to a conspiracy to defraud.  They are not

10     required to charge a separate crime.  The crime is a conspiracy

11     to defraud the FEC.

12             MR. DUBELIER:  Your Honor, the way the indictment is

13     worded, the crime is to interfere in the United States election

14     by allegedly defrauding the FEC or these other government

15     agencies.  It says "interfere in a government election."

16             THE COURT:  I agree that that's --

17             MR. DUBELIER:  There is no crime.

18             THE COURT:  That appears to be a purpose in the

19     indictment, but I don't know that that's the sole objective

20     here.  It alleges a conspiracy to defraud three separate

21     government agencies.  That's the crime alleged.

22             MR. DUBELIER:  With respect to the election, the

23     presidential election of 2016.

24             THE COURT:  Related to the election, yes.

25             MR. DUBELIER:  Yes.  There's no crime to interfere

1     with an election.

2              THE COURT:  But there is a crime to defraud a

3     government agency, and that's what's alleged.

4              MR. DUBELIER:  If it's properly charged.

5              THE COURT:  And you think it's not properly charged

6     because it's not specific enough about what specific crimes or

7     regulations Concord and the other co-conspirators violated?

8              MR. DUBELIER:  Well, it's not only not specific enough

9     with respect to that, but it's not specific enough because it

10    doesn't charge the required mens rea.

11             THE COURT:  All right.  We will get to that.  That's

12    the willfulness argument you are making.  All right.

13        With respect to the State Department, do you concede -- I

14    know you say that Concord wasn't a party to the conspiracy to

15    defraud the State Department.

16             MR. DUBELIER:  Yes.

17             THE COURT:  Do you concede that if Concord were a

18    party to that alleged conspiracy, Count 1 would have to survive

19    at least with respect to that object of the conspiracy?

20             MR. DUBELIER:  I was prepared to concede that until I

21    looked at that more carefully over the last couple of weeks,

22    your Honor, and I'm not going to concede that, and here's why:

23    Part of it relates to discovery that I can't talk about.  So I

24    can't talk about it publicly.  But I can tell you that the

25    system for -- this is a public record.  So I will stay out of

1    the discovery.  This is a public record.

2        When someone applies for a visa to enter the United States,

3    the government gives them a B1/B2 visa.  It doesn't matter what

4    they ask for.  They get a B1/B2 visa.  And with respect to --

5            THE COURT:  But they have to make certain statements

6    with respect to that application; correct?

7            MR. DUBELIER:  If the statements are material, there's

8    a separate statute in Title 18 that addresses that.  I can't

9    find any case where someone has been alleged to defraud the

10   State Department with respect to making an incorrect statement

11   in a visa application.  The reason I can't is because there's a

12   statute that addresses that in Title 18.

13           THE COURT:  But the government doesn't have to charge

14   the specific statute.  They can also charge a conspiracy to

15   defraud.

16           MR. DUBELIER:  If they did it for the first time here

17   ever in the history of the United States, because they haven't

18   identified any other case where that ever happened, to me, that

19   raises a serious issue as to whether or not that's a proper way

20   to charge the offense.

21       But in any event, your Honor, I will tell you that to date

22   we haven't received any discovery that goes to this issue of

23   what false representation was made in connection with a visa

24   application.  And the whole issue with the visa application

25   again is the United States making sure, number 1, someone's not

1    a terrorist and, number 2, they're going to go back.  When they

2    issue them the visa, they give them a B1/B2 visa.  It doesn't

3    matter what you apply for.  You get a B1/B2 visa.  That's what

4    you get.  That's what's put in your passport.

5        So what activity would the -- even if people who are

6    alleged to have done what they did here came to the United

7    States and did it, what's material in terms of a false statement

8    they made with respect to a visa application, material with

9    respect to a false statement, when they got a B1/B2 visa anyway,

10   that's what's put in their passport.

11            THE COURT:  All right.  But it is a direct violation

12   of law, you would agree, to make a false statement to the

13   Department of State, and that's a clear interference with the

14   Department of State's duties?

15            MR. DUBELIER:  No, your Honor.  It's against the law

16   to make a material false statement in a visa application.  I

17   will not submit to you that that's a 371 conspiracy to defraud

18   the State Department.

19       The Justice Department has never applied the statute that

20   way.  I can't find any case where that's ever been applied, nor

21   have they identified any case in their pleadings where that has

22   ever occurred.

23            THE COURT:  Okay.  Let me ask you this:  What if I did

24   determine that with respect to that object of the conspiracy,

25   that Count 1 stands, what would be the remedy here?  Would I

1    strike the other two objects?

2            MR. DUBELIER:  Yes.  I think what you would have to

3    do -- I don't know whether you would strike the other two --

4    because they're not objects.  I think you would strike those

5    portions of the indictment.

6            THE COURT:  Well, it's a three-object conspiracy,

7    isn't it?

8            MR. DUBELIER:  I don't know that they characterize the

9    three government agencies as objects.  That's up for them to

10   decide.  Whether they say it's an object or a purpose or what

11   the intent was, I don't know.  I think you would strike the

12   portions of the indictment other than that relating to the

13   alleged visa fraud.  We can have that trial tomorrow.  I will be

14   back at 10 a.m.  We can pick a jury.

15           THE COURT:  Okay.  Let me ask you about *In re:*

16   *Sealed*.  It's nice to have a sealed case on your side this time;

17   right?

18           MR. DUBELIER:  Yes.

19           THE COURT:  How do you think this affects my decision

20   here?

21           MR. DUBELIER:  Well, I don't think it's just *In re:*

22   *Sealed* that is in our favor here, and that is, you have four

23   circuit courts now, including D.C. Circuit with *In re:  Sealed*,

24   so it would be five circuit courts, that have read willfulness

25   into a 371 defraud conspiracy.  And we've cited all that case

1    law to you in our pleading.  There is nothing on the other side

2    other than the government relying on a 100-year-old Supreme

3    Court case which doesn't stand for the proposition that they

4    want it to stand for.

5         So specifically let me address that, if you would, your

6    Honor, and that's *Hammerschmidt,* which becomes the core of the

7    Special Counsel's argument.  So *Hammerschmidt* was decided in

8    1924.  371 wasn't even in existence.  So it addressed the

9    predecessor statute, which was Section 37 of the penal code at

10   the time.

11        What's fascinating about *Hammerschmidt* and what the Special

12   Counsel, even with their reliance on it, never advised you, the

13   Court, is that *Hammerschmidt* charged willful.  It's right in the

14   body of the case, recounts the wording of the charge.  It's a

15   371 defraud conspiracy, and it says willful.  The government

16   didn't point that out to you, and that's what they rely on,

17   because everything flows from *Hammerschmidt*.  Every single

18   argument they make to you and every case they rely on flows from

19   *Hammerschmidt*.  *Hammerschmidt* charged willfully.

20        Now, what *Hammerschmidt* held was the language of the

21   conspiracy statute cannot be given such wide meaning when

22   considering the case to which it was applied, which is exactly

23   one of the arguments we are making before your Honor.

24        So *Hammerschmidt* was an alleged conspiracy to get people to

25   refuse to register for the draft.  And what the Supreme Court

said is, that's crazy.  That's not a crime.  You're basically

urging people to engage in civil disobedience, and even though

failing to register for the draft may be a crime, you cannot

conspire to get other people to fail to register for the draft.

Very similar to the argument we are making here, and what's

important about *Hammerschmidt*, your Honor, is *Hammerschmidt*

relies on some very simple language years before in *Haas v.*

*Henkel*, another old Supreme Court case.  But what is important

about *Haas v. Henkel* and any reliance on that is, as I think the

Court knows, that wasn't a motion to dismiss the indictment.

That was a habeas corpus petition, and it was a determination of

whether or not an indictment was sufficient for removal purposes

only, not whether an indictment was sufficient to go forward.

There was never a motion to dismiss the indictment.  It was a

habeas corpus litigation.

And every case that the Special Counsel relies on flows

from the simple language in *Hammerschmidt*, even though the

government lost *Hammerschmidt*.  They take that cookie-cutter

language about what you have to prove in a 371 defraud

conspiracy, and they repeat it over and over again, in *Tanner*,

another case the government lost in the Supreme Court, in *Cohn*,

another case the government lost in the Supreme Court, in

*Dennis,* another case the government lost in the Supreme Court.

That's what they just keep repeating, these cases they lost that

are simply repeating the language of *Hammerschmidt*.

1      And I think it's very important, your Honor, then, let's

2  move to, then, what the core reliance here is in the D.C.

3  Circuit.  They rely on *Treadwell*.  Well, *Treadwell* is another

4  case which simply cuts and pastes the *Hammerschmidt* language.

5  But it's very important to look at the specific facts of

6  *Treadwell*.  *Treadwell* had a 371 defraud conspiracy but also had

7  mail fraud and wire fraud charges.

8      Am going too fast?  I'm sorry.  I tend to talk fast.

9      What's very, very important in *Treadwell*, your Honor, too,

10  and this is another thing that the Special Counsel failed to

11  point out to you, *Treadwell* charged willfulness in the

12  indictment.  The indictment language is cut and pasted into the

13  opinion.  We've tried, I should say, for a month to get the

14  actual indictment from the clerk's office, and we have not been

15  able to do so.  But you can see the language of the indictment

16  in the *Treadwell* opinion.  They charged willfully.  That's the

17  case that Special Counsel relies on, while arguing that it's not

18  necessary in this case for them to charge willfully.

19      What's very important about *Treadwell* is *Treadwell* is also

20  a one-off based on the facts.  So in *Treadwell*, the parties

21  agreed at the appellate level that evidence showed at trial that

22  two co-conspirators stole money from HUD.  The defendant in

23  *Treadwell* testified at trial.  And the real core of the opinion

24  is the Court said certainly the jury -- once the defendant

25  testifies, they either believe her or they don't believe her.

And in *Treadwell,* they didn't believe her, and certainly, they were permitted to not believe her.

*Treadwell* never claimed that she did not know the conduct that the co-defendants were engaging in was illegal, which is what we claim here.  She never claimed that, and in fact, she claimed to be an expert in dealing with HUD and government funding.

And so you clearly have circumstances in *Treadwell* where, first of all, it's problematic that they rely on it without advising the Court that the indictment in *Treadwell* charged willfulness, and secondarily, *Treadwell* is a one-off based on the facts, again after a conviction where a defendant has testified.

And I think as your Honor knows, at least in my experience, once a defendant testifies and you get convicted, it's nearly impossible to get a reversal because almost every court is going to say it was up to the jury to decide whether or not they were going to believe the defendant.

THE COURT:  Okay.  Mr. Dubelier, can you give me any D.C. Circuit authority requiring knowledge of the law absent a statutory willfulness requirement?

MR. DUBELIER:  I'm sorry, your Honor.  Could you ask the question again?

THE COURT:  Any D.C. Circuit authority requiring knowledge of the law absent a statutory willfulness requirement?

1    MR. DUBELIER:  No, but I can't give you any D.C.

2    Circuit authority to the contrary either.  And that is, the

3    Special Counsel doesn't have any authority to the contrary.

4    There is no binding authority on this issue in this circuit.

5    Four other circuits, there are, and we've cited the cases to

6    you, and we win in any one of those circuits.

7    THE COURT:  Well, they've got some on the other side

8    as well.  What are your four?  *Curran*, which has been disavowed

9    by the Third Circuit.

10    MR. DUBELIER:  Let me get to that page, your Honor.

11    We have the First Circuit cases *Monteiro* and *Morosco* and --

12    THE COURT:  Let's talk about those.  The more recent

13    one, the government actually argued that the district court went

14    too far in the instruction it gave, and the First Circuit didn't

15    address the argument.  They said it was interesting.

16    So you've got the older First Circuit case, and then you

17    have a Third Circuit case with *Curran* which has been disavowed

18    more recently, correct, in the *McKee* case?

19    MR. DUBELIER:  I don't think on this specific issue

20    disavowed.  I think that's too strong, your Honor.

21    THE COURT:  All right.  What else do you have?

22    MR. DUBELIER:  We have *Alston*, Third Circuit also.  We

23    have *Licciardi*, if I am pronouncing that right, in the Ninth

24    Circuit.

25    THE COURT:  All right.  Well, that case didn't really

1    discuss whether willfulness was required.  The problem there was

2    that the government failed to prove that the defendant had

3    specific intent to defraud the U.S.  So it's not really

4    willfulness.

5              MR. DUBELIER:  Well, I'm not sure how you charge

6    specific intent without using the word "willful."  How would you

7    do that?

8              THE COURT:  As they've done here, specific intent to

9    defraud the agencies.

10             MR. DUBELIER:  Well, but that's what willfulness is by

11   definition.

12             THE COURT:  It depends how you define "willfulness."

13   Is it a knowledge of the specific provision of law or a general

14   knowledge?

15             MR. DUBELIER:  You're right, it does depend how you

16   define it, and the courts are all over the place on this.

17             THE COURT:  But aren't you arguing that it should

18   be -- willfulness should be in the indictment here, and it

19   should be defined to include a knowledge of the legal

20   requirement?

21             MR. DUBELIER:  Yes, yes, we are, we are.  Because

22   otherwise, you would have the case you actually have here, and

23   that is, under the circumstances -- and your Honor, I want to

24   circle back.  We also have Second Circuit, *Nersesian*, which is

25   also cited in our pleading.

1      Rather than talk -- if the Court would allow me just for a

2  moment to diverge here, and rather than talk about in the

3  abstract, I will talk specifically about this case.

4      So as best I understand it -- and I'm not saying we

5  shouldn't talk about the other cases as well, but to apply the

6  rule that the Special Counsel is seeking in this particular

7  case, they've basically said we agreed to do something

8  deceptive, even if legal.  I think everybody agrees.  There's no

9  argument about that.  That's what they're saying.  That's one

10  element that they have to prove, that we did something that was

11  deceptive.

12      Here, specifically what they say is, we, a Russian company,

13  paid Russian people to pretend to be Americans on the Internet,

14  which is not illegal, but that's what they say the deception was

15  at its core.

16           THE COURT:  No, the deception is broader than that.

17  It also has to deal with the fact that they were supposed to

18  submit reports to the FEC and register with the DOJ as a foreign

19  agent.

20           MR. DUBELIER:  Who?

21           THE COURT:  Conspirators.

22           MR. DUBELIER:  Can you tell from the indictment who

23  was supposed to submit a report to the FEC?  I can't, and I

24  don't know who was supposed to register as a foreign agent.

25      And let me go off on the side for a second and talk about

1     that.  In the last 11 years, six cases, criminal cases under

2     FARA, six in the last 11 years.  They didn't even count before

3     then because there were none.  Then you've got in those six

4     cases two charged as conspiracies, and they were conspiracies to

5     violate FARA, not defraud the Department of Justice.

6          This is the first case ever where anyone has ever been

7     charged with defrauding the Department of Justice for a FARA

8     violation.  And if they can find one and tell me I'm wrong, I've

9     looked everywhere, and I cannot find it, no such case.  Never

10    happened before.  The real Department of Justice has never

11    charged that, nor have they ever charged this case, interfering

12    with an election, never, nor have they ever charged a foreign

13    national with making an improper campaign expenditure, never.

14    The real Department of Justice has never done that.  They've

15    charged campaign contribution cases, as your Honor knows, but

16    they have never charged what they've charged here.

17         And let me circle back to the question your Honor asked

18    about D.C. Circuit.  No, I don't have D.C. Circuit, but I have

19    *Shaw*, and you're familiar with *Shaw* because you drafted the

20    indictment, and you charged willfully.  You have the indictment.

21    You drafted it 20 years ago, and you charged willfully.  So I do

22    have a case.

23              THE COURT:  And there's been a lot of law since then.

24              MR. DUBELIER:  No law to contradict what's in *Shaw*,

25    none.  If at all, there are other circuits who now agree that on

1    this type of a 371 defraud conspiracy you need willful.

2         We've submitted to the Court, your Honor, we went and found

3    these indictments, there's seven or eight other indictments that

4    the real Department of Justice charged as campaign fraud

5    indictments, and they all, with two exceptions, use willfully in

6    there.   The only two exceptions are *Trie* and *Kanchanalak*, and I

7    can address both of those and why those shouldn't control.   But

8    we listed and attached the indictments to our pleading.

9         Every one of them charged willful, which happened to be

10   consistent with the Department of Justice policy and manual,

11   which even with the convoluted denial that they've now filed in

12   their opposition memorandum still applies.   They never -- that

13   manual today still says the burden of proof in a 371 is higher

14   than in a 1001 case, if it's related to an election violation.

15   A 1001 case is a specific intent crime.   It requires

16   willfulness.   If the burden is higher --

17             THE COURT:   All right.

18             MR. DUBELIER:   Yes, I'm sorry, your Honor.

19             THE COURT:   Why don't you address the cases out of

20   like the Sixth Circuit, *Khalife*, *Jackson* out of the Seventh,

21   *Cyprian* out of the Seventh, *Derezinski* out of the Eighth, and

22   those cases.

23             MR. DUBELIER:   Tax, tax, tax, tax, tax.

24             THE COURT:   And structuring, yes, where arguably

25   there's even a stronger argument that willfulness should be

1    included in the conspiracy to defraud.

2          MR. DUBELIER:  Oh, I wouldn't agree there's a stronger

3    argument, absolutely not.  Look at the language -- well, you

4    have now Justice Kavanaugh's language in *Bluman*.  The notion

5    that a foreign national would know anything about the election

6    regulations of the United States?

7          THE COURT:  I agree, they've got a heavy burden at

8    trial to prove that knowledge.  But at a motion to dismiss

9    stage, do they need to allege willfully?  That's the issue.

10          MR. DUBELIER:  Your Honor, let them identify a single

11    case in the D.C. Circuit that adopts *Klein* and *Klein* conspiracy.

12    There are none.  None.  And we pointed that out in our pleading,

13    and they don't rebut it.  They have failed to identify a single

14    case in this circuit where this circuit adopted *Klein*

15    conspiracy, even cited the case.

16          THE COURT:  All right.  What about with respect to

17    FECA civil penalties?  They don't require willfulness.  Does

18    that save the indictment?

19          MR. DUBELIER:  FECA civil penalties saving the

20    indictment?  I don't know how it would.  They don't argue that

21    it does, and I don't think you have any obligation to save it

22    for them.

23          THE COURT:  Well, they argue and they allege a

24    conspiracy to defraud the FEC, and that can presumably be

25    broader than specific criminal violations.  It can include civil

1    penalties as well.

2              MR. DUBELIER:  Yeah, I guess the question would be,

3    has FECA ever imposed a civil penalty against a foreign national

4    for an alleged campaign contribution within two months of an

5    election that advocated --

6              THE COURT:  I will give you, Mr. Dubelier, this is an

7    unprecedented case, for sure.  But as alleged, is the indictment

8    defective?

9              MR. DUBELIER:  It is, because let them then come

10   forward and say what did they tell the grand jury, how did they

11   get the indictment.  This is what this comes to, your Honor,

12   which you fairly, and I think fairly, so I'm not angry about it,

13   you fairly determined on our grand jury motion that it was

14   premature.  This goes down at its core.  We have a Fifth

15   Amendment right to be indicted by a grand jury, and that grand

16   jury process has to be proper.  And so they can't make up

17   something now that this indictment charges that the grand jury

18   didn't charge.

19             THE COURT:  No, no, no, and they don't -- they're

20   arguing that they don't have to charge willfully.  So it doesn't

21   really matter what the grand jury was instructed.  They're

22   saying they didn't need to.  They're admitting, I think, that

23   they didn't present willfulness as an element before the grand

24   jury.  So the indictment is deficient as alleged, or it's not,

25   and they say they don't need to prove willfulness.

1          MR. DUBELIER:  Well, then, the indictment is

2     deficient.

3          And your Honor, if I may, I was going through the core

4     elements of what, in essence, we're charged with.  You disagree

5     a little bit with me.  I will agree to disagree with you and

6     move on.  So at its core, they say we paid Russian people to

7     pretend to be somebody else.  That's what the case is about.  I

8     mean, they threw in the visa thing.  Again, find me a case ever

9     where the Department of Justice brought that case, and that's a

10    B1/B2 materiality issue.  Forget it.  I mean, that goes nowhere.

11         And with respect to the way they've constructed the FECA

12    violation and the way they've constructed the FARA violation,

13    never before ever have these cases been brought.

14         THE COURT:  Again, unprecedented, but nonetheless, not

15    necessarily infirm.

16         MR. DUBELIER:  I understand.  So let me go on.

17         So then they say -- well, they have to allege an overt act

18    in the indictment.  And so the core of the election violation,

19    as I understand it, is -- or the election theory or object is

20    Concord allegedly then paid a Russian person who pretended to be

21    an American on the Internet, and then there was the Internet

22    activity that follows from that.

23         And then according to them, their burden of proof according

24    to Mr. Dreeben would be on some level.  Those are his words.  On

25    some level, Concord knew that there was a regulation to prevent

1    foreign influence on elections.

2        And then their argument appears to be that the deception

3    itself proves the intent.  And that is, had we -- because the

4    Russian person pretended to be an American, that absolutely

5    equates with you're trying to defraud the U.S. government, not

6    you're just trying to defraud people on the Internet.

7        So that's the --

8        THE COURT:  You could be trying to do both; right?

9    And the cases say the object doesn't have to be the exclusive

10   one.

11       MR. DUBELIER:  Right, but if you're trying to defraud

12   American people, it's not a crime.  There's no crime there.

13       THE COURT:  No, but defrauding U.S. agencies is a

14   crime.  So they could be doing -- the principal purpose could

15   have been to defraud the United States people, but you can have

16   another purpose, which is to defraud the agencies, and that's

17   the crime.

18       MR. DUBELIER:  Right.  So if that's the theory of

19   liability here, what that means is that if two or more people,

20   whether they're Americans or foreign people, pretend to be

21   someone they are not on social media and the government wants

22   to, they can indict you for a 371 violation later.  All they

23   would have to say is it was important to the government to know

24   your true identity for some reason or another.

25       That's exactly what this case is.  And let's take a hard

1    example of that.  Let's take a hard example.  You're a rancher

2    in the west, and you disagree with the land management policies

3    of the federal government, and you're very vocal about it.  And

4    because of that, the government's worried, and the FBI or some

5    other agency thinks they need to keep an eye on you.  And you

6    don't want to have an eye kept on you.  So what you do is you go

7    create -- you go with someone else, because you have to have two

8    people.  You create fake social media, and you criticize the

9    government's land management policies on social media.  To them,

10   that's a 371 conspiracy.

11           THE COURT:  No, no, no.  Did you have a duty to report

12   something to the land management agency?

13           MR. DUBELIER:  There's no duty to report here.

14   There's no duty to report in this case.

15           THE COURT:  To the FEC, the DOJ.

16           MR. DUBELIER:  Your Honor, this is where we are lost.

17   Who report what?  There is no way you can figure out or I can

18   figure out from this indictment who was obligated to report

19   what.  They don't identify who the foreign agent is, who the

20   foreign entity represented by the agent is.  Who is supposed to

21   report something?  There is no obligation to report.  With FEC,

22   who was supposed to report something?  To who?  About what?

23       You cannot figure that out from this indictment.  You have

24   to boost them up and read into what they're saying now as to

25   what they say the actual activity is.  And that's not the

1    Court's job.  That's their obligation.

2             THE COURT:  Do the arguments you've made with respect

3    to the FEC and the Department of Justice apply equally?  Is it

4    the same analysis that I need to do with respect to those

5    objectives of the conspiracy?

6             MR. DUBELIER:  Yes; yes.  I think it is.  Because as I

7    think the Special Counsel concedes, the underlying statutes

8    require willfulness.  I know they don't have to allege a

9    violation of the underlying statute.

10            But your Honor, the most difficult part about this for me

11   is, it's blatantly obvious why they did what they did.  They

12   don't have the evidence to charge a substantive violation of

13   FARA or a substantive passport violation or a substantive FECA

14   violation, because there is no evidence anywhere that any of

15   these foreign people knew anything about any of these laws or

16   regulations, none.

17            And so the penultimate question becomes, can they look at

18   that case and circumvent those requirements and make up a new

19   crime that has never been charged in the history of the United

20   States, because that's what they've done.  And to let them go

21   forward on this, that's what you would have to say, I'm going to

22   let them do something that the real Department of Justice has

23   never done, it's contrary to what I did, meaning you, when you

24   were a prosecutor and you were faced with the exact same case.

25   You charged willfully.  It's contrary to all of those

1    indictments that we've given you where the real Department of

2    Justice charged willfully.

3         And the reason they did it is because these campaign

4    finance laws are complicated.  Most Americans don't even know

5    what the rules are.  And they want to make sure -- the real

6    Department of Justice wants to make sure that when they indict

7    somebody, they know that they can prove that the person knew

8    what they were doing was against the law, not simply it was

9    deceptive or not simply they were sneaky on the Internet.  I

10   mean, if this goes to you have to tell the truth on the Internet

11   in a political campaign, every politician in the United States

12   would be in prison.  So we know we're not going there.

13            THE COURT:  And I agree, at trial, if this case

14   survives, they're going to have to show that Concord and others

15   conspired and had the specific intent to defraud the FEC, the

16   DOJ, and the State Department.  And they're going to have to

17   show some knowledge of those regulatory apparatuses.

18            MR. DUBELIER:  So then the question becomes, your

19   Honor -- with all due respect, I agree with you, but then it's

20   that ambiguous what is some knowledge?  What does that mean?

21            THE COURT:  Well, let me hear from Mr. Dreeben on

22   that.

23            MR. DUBELIER:  Right.  But the difficulty on that,

24   your Honor, again is that's what they have to indict.  We are

25   entitled to an indictment on that, not what they make up after

1    the fact.  And if they didn't charge the grand jury with respect

2    to what their burden was of proof, then they've got an

3    indictment that they never would have gotten if they had told

4    the grand jury the truth.

5         Now, I'm not suggesting to you that they believed what they

6    were doing in the grand jury was wrong when they were doing it.

7    What I believe is they all got together and thought this is the

8    way around it, this is the way we get around willfulness.  We

9    come up with an indictment that the real Department of Justice

10   has never ever indicted in the history of the United States, and

11   we do it this way.

12        THE COURT:  Okay.  All right.

13        Mr. Dreeben, I will give you a chance to respond.  I'm

14   going to hear from whoever is arguing for the government now.

15        MR. DREEBEN:  I'm going to have Mr. Kravis here.

16        THE COURT:  Okay.  Lucky Mr. Kravis.

17        All right.  Mr. Kravis, at the outset, can you clarify for

18   me, Count 1 alleges, as I see it, a single conspiracy with three

19   separate objects; is that correct?

20        MR. KRAVIS:  I would describe it as a defraud clause

21   conspiracy that identifies three different lawful government

22   functions that were alleged to have been interfered with by the

23   defendants.

24        THE COURT:  All right.  Did the grand jury and, if

25   this case survives, will a jury need to unanimously agree with

respect to one of those objects?  What word did you use if not object?

MR. KRAVIS:  The particular lawful government functions.

THE COURT:  Do they have to agree with respect to one of the lawful government functions?

MR. KRAVIS:  I believe that they would, that the jury would have to be unanimous as to the lawful government function that's interfered with.  In this case, of course, the overt act in the indictment are alleged not just to be individual acts directed to individual lawful government functions but as a part of a larger conspiracy to defraud that included defrauding several different federal government agencies at the same time and interfering with several different lawful government functions, several different regulatory functions.

THE COURT:  Okay.  And walk me through the government's theory with respect to the impairment of each government function, starting with the FEC.

MR. KRAVIS:  Yes, your Honor.  So as alleged in paragraph 1 of the indictment and, again, starting at paragraph 25, the indictment alleges that the Federal Election Commission regulates and monitors the participation of foreign nationals in the American electoral process.  That regulation includes barring foreign nationals from making certain expenditures, from making independent expenditures for the purpose of influencing

federal elections.  The indictment at paragraphs 1 and 25
alleges that the defendants interfered with that lawful
government function through the numerous deceptive acts that are
catalogued in the overt acts of the indictment.

The indictment also alleges that the election act has
certain reporting requirements and that the defendants did not
report, and that would also be relevant to the conspiracy to
defraud.

THE COURT:  So as Mr. Dubelier points out, who -- the
indictment doesn't delineate which defendants had the duty to
report.

MR. KRAVIS:  Well, I believe the allegation -- the
allegation in the indictments are -- the allegation in the
indictment is that particular defendants and other unindicted
co-conspirators were making posts on -- using American social
media accounts using false U.S. personas, using computer
infrastructure to hide the Russian origin of the posts, using
fake e-mail accounts that created the names of U.S. persons,
using the names of false U.S. persons.  Those individuals
were -- the indictment alleges, were engaging in those deceptive
acts in order to, with a purpose of impairing the lawful
government functions of the FEC.

The government, as the Court pointed out in its earlier
questioning, is not required to show that those activities
actually violated the Federal Election Campaign Act.  What the

1    government is required to show is that those defendants engaged

2    in that deceptive activity with a purpose -- it doesn't have to

3    be the only purpose or the primary purpose, but with a purpose

4    of interfering with that lawful government function, with the

5    lawful government function of the FEC to monitor and regulate

6    the participation of foreign nationals in the electoral process.

7         In addition --

8              THE COURT:  So wait, wait.  On that, so someone in

9    that group needed to report that to the FEC?

10             MR. KRAVIS:  The government is not required to show

11   that any defendant or any co-conspirator had actually violated

12   the election act.

13             THE COURT:  No, I understood that, but don't you need

14   to show that they had a legal duty to report?

15             MR. KRAVIS:  No, your Honor, because the deceptive

16   activity that's alleged in the indictment does not merely

17   include a failure to report.  It also includes the use of a

18   computer infrastructure to hide the source of the posts.  It

19   includes the use of false social media accounts, false e-mail

20   accounts, the use of false American personas, the use of false

21   organizations.  All of that is deceptive activity.

22             THE COURT:  Understood.  But you've alleged that

23   Concord and others had a specific intent to defraud the FEC.

24             MR. KRAVIS:  Yes.

25             THE COURT:  Correct?

1          MR. KRAVIS:  Yes.

2          THE COURT:  And how can that be if they didn't have a

3     legal duty?

4        Now, I understand that you may -- your theory may be that

5     you don't have to have the specific knowledge of what that legal

6     duty was.  But don't you -- a failure not to report, a failure

7     not to disclose, isn't that dependent on having a legal duty to

8     do so?

9          MR. KRAVIS:  It is not, because in this circumstance,

10    in this case, this indictment, the deceptive conduct that is

11    charged, the deceptive conduct that is alleged is not merely a

12    failure to disclose or a failure to report.  It is affirmative

13    steps taken by the conspirators to engage in deception, to

14    engage in concealment to frustrate the lawful government

15    functions of the FEC and the FARA unit and the State Department.

16       All of those acts of deception are violations of the

17    defraud clause of Section 371, just as in a *Klein* conspiracy

18    case the government is not required to show a violation of the

19    underlying tax law or a violation of the underlying structuring

20    law.  The *Jackson* case we cited in our brief stands for that

21    proposition.  In a different context, outside the tax context,

22    the *Morosco* case from the First Circuit stands for that

23    proposition.

24       There does not have to be a violation of an underlying

25    statute or regulation.  What there does have to be is deceptive

conduct that is engaged in with a purpose of interfering with a lawful government function.

Here, the alleged lawful government functions involve -- two of them are the FEC and the FARA unit's obligation to monitor and regulate the activity, the participation of foreign nationals in the American political and electoral process.  As long as the defendants engaged -- and this is what the indictment alleges.  As long as the defendants engaged in their deceptive conduct with a purpose, a purpose of interfering with those functions, then they have committed a 371 violation.

THE COURT:  Right.  So to have that purpose --

MR. KRAVIS:  Yes.

THE COURT:  -- you would agree with me that the defendants have to have some knowledge of what those lawful functions are?

MR. KRAVIS:  Yes, they have to have some knowledge that there is a lawful government function there.  Otherwise, you can't have the -- you can't have the purpose of interfering with something you don't know about.

THE COURT:  And thus, I would think that the government's theory would be that they had some knowledge as foreigners that they should be revealing the fact that they are foreigners, that they also should be reporting, that the FEC needs to know -- certain foreign expenditures, you've said, are barred; correct?

1            MR. KRAVIS:  Yes.

2            THE COURT:  And if you're going to show specific

3      intent to defraud the FEC, you're going to have to show some

4      knowledge that they had of these legal requirements, aren't you?

5            MR. KRAVIS:  So your Honor, I agree with the first

6      part but not the second part.  The Section 371 and the cases

7      interpreting it do require knowledge of a lawful government

8      function.  And the reason they require that is because the mens

9      rea of a defraud clause conspiracy is an intent to or purpose of

10     frustrating or interfering with a lawful government function.

11     You can't have the intent to interfere with a lawful government

12     function if you have no awareness that there is a lawful

13     government function.

14         But having an awareness of a lawful -- or knowledge of a

15     lawful government function is not the same thing as saying I

16     knew I had a legal obligation and I disobeyed it.  Because as

17     the cases that we've discussed illustrate and as the *Klein* cases

18     show, you don't actually have to be violating an underlying

19     statute or regulation.

20         What the defendants have to be aware of and what the

21     government will have to show at the trial -- and again, this is

22     all alleged in the indictment.  This is a question for trial

23     now.  But what the government will have to show at trial is that

24     the defendants knew that the federal government, one of its

25     lawful government functions, one of the things the federal

government does is that it monitors and regulates the
participation of foreign nationals in the American political
process.

There's no case, there's no statute that requires the
defendants to know the name of the agency, the name of the
statute, or which regulations or the specifics.  They just have
to know that there is a lawful government function here, and
they are acting, they are engaging in deception with a purpose
of impairing that function.  Just as in a *Klein* conspiracy case,
to prove a defraud clause conspiracy to interfere with the
lawful functions of the IRS, the government is not required to
show that the defendants were aware of their specific tax duties
or that they were aware of which provision of the tax code was
at issue.  All the government has to show is that they were
acting with a purpose of interfering with the regulatory
activities of the IRS.

In *Jackson* --

THE COURT:  So how do you show that absent some
general knowledge of the legal requirements?

MR. KRAVIS:  Well, your Honor, I think in this case,
for example, the nature of the deception that is alleged in the
indictment, the nature of the deceptive acts are such that a
trier of fact can conclude that those deceptive acts were
directed not solely at the American people but also at American
government institutions.

1          For example, in addition to creating false social media

2     personas and false social media accounts, the defendants are

3     alleged -- and this appears at paragraphs 5 and 39 of the

4     indictment -- to have used computer infrastructure and

5     manipulating computer infrastructure to conceal the fact that

6     these social media posts and e-mails and communications were

7     coming from Russia, to make it appear that they were coming from

8     the United States.

9          That is the sort of deceptive activity, the sort of

10     concealment that is not directed towards someone who is just

11     reading a Facebook message who wouldn't see the server where

12     it's coming from.  That is deception that is directed at a

13     higher level.  That is the kind of evidence from which a trier

14     of fact could conclude that the defendants are acting to deceive

15     not just the American people but also the American institutions

16     that monitor and regulate foreign national participation in the

17     American political process.

18               THE COURT:  So let me ask you this:  To rule in your

19     favor, do I have to accept your theory that Concord impaired the

20     FEC and DOJ by making it more difficult for them to identify

21     potential violations and decide whether to investigate?

22               MR. KRAVIS:  Well, there are also the allegations

23     about the Department of State.

24               THE COURT:  No, I know.  But let's focus on FEC and

25     DOJ.

1          MR. KRAVIS:  Right.

2          THE COURT:  Is the government's only theory here is

3   that the defendants made it more difficult for them to

4   investigate?

5          MR. KRAVIS:  Well, I don't think it's just make it

6   more difficult.  The defendants engaged in affirmative acts of

7   deception and that a purpose of those acts of deception was to

8   interfere with the lawful government functions of the FARA unit

9   and the FEC.  Just as in a *Klein* conspiracy case, what the

10  government has to show is that the defendant is engaged in

11  deceptive conduct and that a purpose of that deceptive conduct

12  is to interfere with the lawful investigative functions of the

13  IRS.  There doesn't have to be a violation of an underlying

14  statute or regulation.

15      And there's a reason for that.  There's a good reason for

16  that, which is that the defraud clause in Section 371 is aimed

17  at a harm that is different than the harms that are regulated by

18  the underlying statutes themselves.  In this sense, the defraud

19  clause of Section 371 is akin to an obstruction statute.  371

20  defraud clause is regulating or attacking the harm of

21  interfering with the functions, including the investigative

22  functions, of the United States.

23      In other words, the defraud clause is directed at a harm

24  that's different from the harms that are regulated by the

25  underlying statutes.  That's why the government doesn't have to

1   show a violation of the underlying statutes.  The defraud clause

2   prohibits conduct that has a different harm, an obstructive

3   conduct, and that harm occurs whether an underlying regulation

4   or statute was violated or not.

5       If you're engaging in deceptive conduct and the purpose of

6   your deceptive conduct is to interfere with the government's

7   lawful functions, you are engaging in a harm, you are committing

8   a crime, regardless of whether you are also violating an

9   underlying substantive statute or regulation.

10      As the courts that have confronted this question have

11  recognized, a contrary holding would basically read the defraud

12  clause out of Section 371.  If the defraud clause required a

13  violation of an underlying statute or regulation, then the

14  defraud clause would essentially collapse into the offense

15  clause.

16      Now, Mr. Dubelier argued in his argument that the case law

17  in other circuits does require some further showing by the

18  government to establish a violation of Section 371.  With all

19  respect, I think that is not correct.  And in fact, the case law

20  is to the contrary.  The cases that the Court mentioned during

21  the defense's argument, *Jackson*, *Derezinski*, and *Khalife*, all

22  expressly reject this proposition.

23      In fact, in *Jackson*, the Seventh Circuit recognized that

24  the defendant's conduct didn't even violate any underlying

25  statute or regulation at all.  That was an antistructuring case.

It's the one where they're going around spending money in

amounts that are lower than the reporting requirements.  And

what the defendants -- one of the defendants argued on the

appeal was, they said look, the statute that made these

structuring transactions a crime, that statute didn't take

effect until after the conduct that I was alleged to have

engaged in in the indictment, so the government didn't plead any

violation of an underlying statute or regulation, and the

Seventh Circuit said that is incorrect because the government

doesn't have to show that you violated any particular statute or

regulation.  What they have to show is that you acted

deceptively with the intent to defraud the IRS, and that is

exactly what the government has to show here.

THE COURT:  And I guess that's where I'm getting hung

up, is how are you going to show the intent to defraud -- and I

want to back up in a minute.  We didn't talk about the DOJ.  But

the intent to defraud the FEC and the DOJ.  I get the Department

of State.  That's a clear direct violation.

While again, it might not require knowledge of the specific

legal provision, criminal or civil, you've still got to show

knowledge --

MR. KRAVIS:  Yes.

THE COURT:  -- of those agencies and what they do.

How are you going to do that?  Just changing the way the

computer systems work, it seems to me that won't get you there.

1          MR. KRAVIS:  I agree only partly with that

2     formulation.  The government does have to show -- does have to

3     show some knowledge, because you can't act with an intent to

4     impair a lawful government function if you don't know about the

5     lawful government function.  But that's the level at which the

6     knowledge is required.  It's knowledge that the federal

7     government has this regulatory function.  It's not that they are

8     aware of the Federal Election Commission.

9          THE COURT:  Well --

10         MR. KRAVIS:  It's an awareness that the federal

11    government regulates and monitors in this area, knowledge that

12    the federal government regulates and monitors in this area, that

13    that is a function of what the federal government does.  There's

14    no requirement that you have to know anything more specific than

15    that.  And the reason for that is because, at the end of the

16    day, the mens rea requirement, the sort of bottom line mens rea

17    requirement of the defraud clause is not willfulness.  There's

18    no element of knowledge of the law.  It is just that intent to

19    defraud.

20         So this is just a question of what level of knowledge do

21    you have to have in order to have that intent to defraud, and

22    the answer is you have to know about the lawful government

23    function.  That's the requirement.  It's not a requirement about

24    a specific -- knowing about a specific agency or --

25         THE COURT:  Right.  But without the government showing

1    some general knowledge that there are these regulations and

2    there's these specific statutes, they don't necessarily know

3    exactly what they are, but without some general knowledge of the

4    laws that these agencies enforce, how does the government --

5    without getting into your case-in-chief, how does the government

6    show that specific intent to interfere with them?

7         MR. KRAVIS:  I think the answer is that the government

8    is not required to show an awareness of the specific agencies or

9    the specific statutes.  They're required to show a knowledge of

10   the lawful government function.  And I think that the

11   defendant's knowledge of the lawful government functions here

12   can be inferred from the nature of the deceptive conduct that

13   they were engaged in.

14        I mentioned the computer infrastructure a moment ago.

15   There's also the allegations in the indictment about the

16   destruction of evidence after the fact.  That is a classic

17   example of the kind of evidence, the kind of circumstantial

18   evidence that the government can use to prove knowledge or use

19   to prove a guilty mind.  It's well-established in the

20   Section 371 case law that the government is not required to

21   present direct evidence of an improper purpose.  That can be

22   inferred from circumstantial evidence, and that can include the

23   nature of the deceptive activity.  It can also include

24   after-the-fact obstruction.  And it can include the specific

25   nature of the deceptive conduct that's alleged.

1    THE COURT:  But all of this that you are telling me

2    here makes me think that your theory basically does boil down to

3    did the defendants make it more difficult for the government to

4    identify and investigate potential wrongdoing.  That, to me,

5    seems to be your theory here.

6        MR. KRAVIS:  Right.  I guess the --

7        THE COURT:  Is that it?

8        MR. KRAVIS:  The part that I am sort of quibbling with

9    is the "make it more difficult."  I think the defendants have to

10    know that it is a part of the United States government's lawful

11    function to monitor and regulate the conduct of foreign

12    nationals in the American political and electoral processes and

13    that they acted, they engaged in affirmative acts of deception

14    with the intent to impair or frustrate those lawful functions.

15        THE COURT:  Right, with the intent to impair the

16    lawful functions.  That's what I'm hung up on.

17        MR. KRAVIS:  Yes.

18        THE COURT:  With your argument, it seems to me that

19    you could charge a 371 conspiracy in a lot of cases where you

20    don't quite get there on the substantive offense, you don't

21    quite get there, and yet, you charge with a 371 because you say

22    whatever deception there is made it harder to go investigate and

23    prove that underlying offense.  And so you can't meet the

24    elements of the substantive offense, and you charge 371.

25        MR. KRAVIS:  Well, I do think that 371 is charged in

cases where the defendants have interfered with the investigative function of a regulatory agency, and in those instances, the government is not required to show a violation of an underlying statute or regulation.

But as the Supreme Court recognized in *Batchelder*, sometimes conduct violates more than one federal criminal statute.  And in this case, in the case of Section 371, there are maybe -- the same conduct may implicate multiple statutes. 371, the defraud clause in this sense is not unlike a federal obstruction statute in the sense that it is directed at the efforts to interfere with those investigative functions.  And there's nothing particularly unusual about that.  There are times when federal criminal statutes with different levels of intent may implicate the same conduct.

But Section 371 also -- I mean, the Court phrased it as the government just doesn't quite get there.  Section 371 also has requirements that those underlying statutes do not.  Section 371 requires deception.  FECA and FARA, for example, don't have an element that requires deception.  371 defraud clause requires a purpose or an intent of interfering with a lawful government function.  That's not the intent requirement of those statutes.

So I guess I'm not sure I agree with the Court's formulation that the defraud clause is something the government can use when it just doesn't quite get there.  It's just a statute that regulates sort of overlapping conduct --

1          THE COURT:  It seems like you're arguing that, as long

2     as there's some obstruction, too, that you can link the two

3     together and charge 371.

4          MR. KRAVIS:  Well, this is -- and this is, I think,

5     often the government's theory in the traditional *Klein*

6     conspiracy cases where the defendant is engaged in deceptive

7     conduct for the purpose of interfering with the IRS's function

8     of collecting taxes.  And what the government has to show in

9     those cases is that the defendant is engaging in deceptive

10    conduct for the purpose of interfering with the investigative

11    function of the IRS, not required to show that the defendant

12    actually violated the tax statutes or the defendant knew about

13    the specific tax provisions that would apply to their conduct,

14    because it's directed at a different harm.

15         THE COURT:  But here, you're saying you don't even

16    have to show an intent to interfere with a particular agency

17    like the FEC; they just have to know generally there's some

18    government function they're interfering with.

19         MR. KRAVIS:  Well, they have to know that part of the

20    lawful functions -- the conspiracy to -- the indictment charges

21    a conspiracy to defraud the United States.  So that's what the

22    government has to show at trial, is the defendants acted with

23    the intent to defraud the United States, the intent to interfere

24    with the lawful government functions of the United States.  They

25    do have to know that the United States government has a lawful

1    government function in this area.  Otherwise, they can't be

2    acting with a purpose of frustrating it or a purpose of

3    impairing it.

4         But that's the level at which the government has to prove

5    the defendant's knowledge or awareness.  It doesn't have to get

6    down to the level of they're aware of the Federal Election

7    Commission or they're aware of --

8              THE COURT:  Not even the agency, not just the name,

9    but they're separate agencies, they don't have to know any of

10   that, just the United States as a whole?

11             MR. KRAVIS:  Well, the United States has this lawful

12   government function.  And again, that can be proved from

13   circumstantial evidence, the nature of the deceptive activity,

14   acts of obstruction, and the kind of circumstantial evidence

15   from which the government often proves a defendant's guilty

16   mind.

17        But there's no requirement that the government get down to

18   the level of showing the defendants knew about the particular

19   agencies or knew about the particular statutes.  There's no case

20   that says that.  There's no statute that says that, because the

21   bottom-line requirement is not as it would be in a case where

22   the statute charged included the term "willful."  It's not a --

23   there's not an element of defraud clause conspiracy that is

24   knowledge of the law.  That's a willfulness statute.  The

25   defraud clause doesn't use that term, and the *Klein* conspiracy

1    cases and others have rejected it.

2         So this isn't about the defendant's knowledge of the law.

3    It's about their intent to impair a lawful government function.

4    It's all that's required --

5              THE COURT:  So they have to have knowledge of the

6    function?

7              MR. KRAVIS:  They have to have knowledge of the

8    function.  They have to know that the federal government

9    regulates in this area, but they don't have to have a more

10   specific knowledge than that, because all the government has to

11   prove they did, all they're charged with doing is engaging in

12   deception to interfere with that lawful government function.  It

13   doesn't matter if they knew it was the FEC or the DOJ or some

14   other agency.  They know that there is a lawful government

15   function here, and they are acting with a purpose of interfering

16   with it.

17             THE COURT:  And you're going to prove that knowledge

18   of the special function by all their acts of deception,

19   circumstantial evidence, no direct evidence, circumstantial

20   evidence that all the deceptive stuff suggests that they had to

21   know that the stuff needed to be reported with the FEC, that

22   they had to know they need to register as a foreign agent?

23             MR. KRAVIS:  Right.  So I don't want to get too far

24   into the government's sort of case-in-chief.  I think what I

25   would say is that the allegations in the indictment are

1    sufficient to show that the government will be able to prove the

2    level of knowledge necessary to demonstrate an intent to

3    interfere with the lawful government function, which is, of

4    course, what the indictment charges, because at the end of the

5    day we are here on a motion to dismiss the indictment.  The

6    indictment charges that level of intent.  The indictment charges

7    that it was an object of the conspiracy to interfere with those

8    lawful government functions and not merely, as the defense

9    suggests, an incidental effect of that conduct.  And those

10   allegations are more than sufficient to allege a violation of

11   the defraud clause.

12          THE COURT:  Okay.  So I take it that your position is

13   even if Concord didn't violate any reporting requirements to the

14   FEC, the DOJ, your theory would still allow for a conviction

15   based on the other deceptive acts like the third-party stuff,

16   social media stuff, ID theft, all of that?

17          MR. KRAVIS:  Exactly.

18          THE COURT:  It could stand alone?

19          MR. KRAVIS:  Exactly.  And that is what distinguishes

20   this case from the cases cited for the first time in the

21   defendant's reply brief, *United States versus Murphy* and *Porter,*

22   and also from the D.C. Circuit's decision in *In re:  Sealed*

23   case.  What those cases stand for is when the only deceptive

24   conduct that the government is charging, when the only deceptive

25   acts the government has alleged are a failure to disclose or a

1    failure to report, well, then, you are going to have to show a

2    duty to disclose or a duty to report.  Otherwise, the failure to

3    do it isn't deceptive.  It's just complying with the law.

4         In this case, by contrast, the deceptive activity is not

5    just a failure to report.  The failure to report is also, of

6    course, relevant conduct, but the acts of deception alleged in

7    the indictment go way beyond that to include the creation and

8    use of the false social media personas, the creation of the

9    false e-mail accounts, the use of the computer infrastructure,

10   the destruction of evidence, and the allegation that all of

11   those acts of deception were not just sort of spontaneous

12   one-off activities but were a part of a coordinated, well-

13   funded, orchestrated campaign that had as a purpose impairing

14   the lawful functions of the United States government, that those

15   weren't just actions that people engaged in spontaneously, they

16   were a coordinated effort of the conspirators.

17        THE COURT:  It's hard to see how not revealing

18   identities at political rallies and not revealing identities on

19   social media, how that is evidence of intent to interfere with a

20   U.S. government function as opposed to to confuse voters.

21        MR. KRAVIS:  Well, I mean, I guess I would say two

22   things about that.  The first thing is, it's not just a matter

23   of not revealing.  It is affirmatively misrepresenting, both at

24   the level that a user would see, the name of the Facebook

25   account, the language that's used, English, not Russian, and

1    also at the level of the computer infrastructure that's being

2    used to send the messages, using networks to make it appear as

3    though the messages are coming from the United States when, in

4    fact, they're coming from Russia, information that a voter or a

5    reader wouldn't see.  The people who would see that would be

6    investigative agencies who are going and looking as to where

7    these messages are actually coming from.

8         But I would also point out here that to the extent that

9    Concord is arguing that the defendant's conduct was intended to

10   deceive the American electorate as opposed to being intended to

11   deceive the federal government, first of all, I think that's an

12   issue for the trier of fact at trial, to decide what inferences

13   to draw from the deceptive conduct, but second, in this case,

14   when we're talking about these particular regulatory activities,

15   those aren't really two different things, because what FECA and

16   the FARA unit are there to do, in part, is to promote

17   transparency in the American political and electoral process, to

18   make sure that Americans know when foreign nationals are

19   participating in American politics and American elections.

20        So to the extent that the defendants are trying to deceive

21   American voters, it follows logically that they're also trying

22   to deceive the agencies that tell American voters about when

23   foreign nationals are participating in the political and

24   electoral process.  In other words, the intent to deceive the

25   American voter goes hand in hand with the intent to frustrate or

1     impair the transparency functions of the FEC and the FARA unit.

2          THE COURT:  Okay.  *In re:  Sealed*, you've mentioned.

3     You've dismissed that as dicta.  I'm not so sure I agree.  It

4     seems to me it was necessary to the Court's decision that the

5     crime fraud exemption didn't apply to determine that there was

6     no conspiracy to defraud.

7          So how is that dicta, and do you have any other basis to

8     distinguish *In re:  Sealed*?

9          MR. KRAVIS:  Yes, to both.  So on the first point, I

10    think the point that we were making in the brief is not so much

11    that the statement was dicta but that the language quoted by the

12    defense is more directly addressed -- appears to be directly

13    addressed to the offense clause aspect of the case and not to

14    the defraud clause.  They say look, if it's not a crime to shoot

15    a dear, you can't be convicted of conspiring to shoot a dear.

16    That seems to be language that's directed at the offense clause

17    rather than the defraud clause.  There's no further language

18    analyzing the defraud clause independently of that.

19         But second, the other thing I would say about *In re:*

20    *Sealed* case is, as I mentioned earlier with respect to the cases

21    cited for the first time in the defendant's reply brief, *Sealed*

22    case, which arose in a very different procedural context, is one

23    where the only deception that was alleged by the government was

24    this failure to register with the FEC.

25         So what the D.C. Circuit, I think, is saying in part in

that opinion is look, if the only deceptive conduct you're

alleging is the failure to register with the FEC, then you

better have a duty to register with the FEC, otherwise the

failure to register can't really be considered deceptive conduct

or done with the intent to impair a lawful government function.

In this case, by contrast, the deceptive conduct is not

just a failure to register.  It is also all of the other things

that I've mentioned, the use of the computer infrastructure, the

use of the false personas on social media, the use of the false

e-mail accounts to communicate with American voters in the

campaign, as well as the after-the-fact destruction of evidence.

That conduct alleged in the indictment takes the facts of this

case well beyond *Sealed* case where the only deceptive conduct

that was alleged was a duty to disclose.

In addition to *Sealed* case, the defense points to several

other cases from other circuits that it claims support its

position, but none of them actually does.

First of all, on the First Circuit cases, *Monteiro* and

*Morosco*, *Morosco*, the indictment alleged -- the indictment

brought by, as the defense would say, the real Department of

Justice alleged a knowing violation and not a willful violation.

And the Court, the First Circuit in *Morosco* upheld that

conviction.

The other First Circuit case, *Monteiro*, did not actually

address whether willfulness was required.  The government got

1    the willfulness instruction at trial, on appeal argued that they

2    didn't even need that, and the First Circuit said, we don't have

3    to address that argument that the District Court should have

4    given a jury instruction that was lower on intent because we're

5    just going to affirm on the instruction that was given.

6        *Licciardi*, another case cited by the defense for this

7    proposition, did not concern willfulness.  That's the

8    winegrowers case, and it's about whether the defendants had as a

9    purpose interfering with the functions of ATF as opposed to just

10   defrauding the consumers, the people who are buying the grapes.

11   That's not a case about willfulness.  And in any event, in this

12   case the government has alleged in the indictment and will prove

13   at trial that the defendants had as a purpose interfering with

14   government functions and not just defrauding private

15   individuals.

16       The last case they've cited from the Second Circuit,

17   *Nersesian,* is of the same vein.  It's about proving the intent

18   to interfere with the lawful government functions, and it's not

19   about willfulness at all.

20       By contrast, the cases that we've cited, *Jackson*,

21   *Derezinski*, and *Khalife*, squarely address this issue, and they

22   all squarely hold that willfulness is not a required element.

23   As the defense pointed out, those are tax cases, but that is

24   instructive, because the level of intent required for a

25   substantive criminal violation of the tax statute is the same as

1      required for the election act and for FARA.  And so those cases

2      are on point in terms of what the government has to prove about

3      the defendant's level of intent.

4              THE COURT:  Okay.  If I disagree with the government's

5      position that the indictment does not involve protected speech

6      at all, do you have an alternative argument for why the First

7      Amendment doesn't require willfulness or some other narrower

8      construction of the lawful government functions here?

9              MR. KRAVIS:  Well, the first thing I would say about

10     that is the defense doesn't cite any case and the government's

11     not aware of any that stands for the proposition that the Court

12     should read a willfulness element into the defraud clause

13     because of some kind of First Amendment concern.  It's not

14     clear -- even if there were a First Amendment implication, it's

15     not clear why willfulness would then be the thing that's

16     imported.

17         As the facts of this case illustrate, lawful government

18     functions are often regulated by statutes, civil and criminal,

19     that have different levels of intent.  The defense doesn't

20     explain how the Court would go about selecting the right level

21     of intent if the defense were correct that the defraud clause's

22     level of intent varies, depending on the lawful government

23     function at issue.

24         FECA's enforcement of its civil penalty provision is also a

25     lawful government function, and that doesn't require a showing

of willfulness.  In addition, filing a false campaign report can be a violation of 18 U.S.C. 1519, which also does not have a willfulness component to it.

So one of the problems with the defense's argument about the varying level of intent in the defraud clause is that they don't explain how to identify the level of intent that the Court would select even for a particular lawful government function.

On the First Amendment point, the *Bluman* case, which the defense cites repeatedly in their briefs, squarely addressed one of the government functions that is alleged in the indictment, namely the prohibition on foreign nationals making independent expenditures, expenditures that expressly advocate the election or defeat of a candidate in a particular federal election.  And *Bluman* held that that prohibition does not violate the First Amendment, and that is one of the lawful government functions that is alleged in the indictment.

Given that holding in *Bluman*, I don't see how the defense can argue that the Court should read a heightened intent element into the defraud clause in light of any kind of First Amendment concern.

But in addition, the indictment here does not allege that the defendants committed a crime by engaging in speech.  It alleges that the defendants engaged in deceptive conduct, including the use of the computer infrastructure to hide the source of the posts, the creation of false profiles on social

media, the creation of false e-mail accounts.  Those are not
acts of political speech.  They are acts of deception.

It is true that part of the deception also involved
communications that referenced American politics and referenced
American elections.  But, as FECA and FARA say, the federal law
just treats foreign nationals' participation in American
elections and American politics differently.  It just treats
foreign nationals' participation in American elections and
American politics differently from the way it treats the
participation in those processes of American persons.  And one
of the lawful government functions of the FEC and one of the
lawful government functions of the FARA unit is to monitor and
regulate that difference, to police that boundary.

When the defendants engaged in deceptive conduct with the
intent to impair those functions, they committed a crime,
regardless of whether they violated those underlying statutes
and regardless of whether they acted willfully.

THE COURT:  Okay.  All the different types of deceit
you've mentioned here today, the only one that seems to me that
the government has that suggests a specific intent to defraud
the United States is the deceit related to the computer
infrastructure.

Is there anything else?  I know it's a motion to dismiss
the indictment, and this is more of an issue for trial.  But can
you give me anything else here?

1          MR. KRAVIS:   So I would direct the Court's attention

2     to paragraph 58(d) of the indictment.   This is -- well,

3     actually, all of paragraph 58, which alleges that "in order to

4     avoid detection and impede investigation by U.S. authorities of

5     defendants' operations, defendants and their co-conspirators

6     deleted and destroyed data, including e-mails, social media

7     accounts, and other evidence of their activities."

8          That paragraph, one of the subparagraphs quotes an e-mail

9     that mentions "the FBI busted our activity" and the destruction

10    of records because the FBI busted the activity.   I think that is

11    a classic kind of evidence from which the government argues

12    that -- it's circumstantial evidence, but it is evidence that

13    the defendants acted with a corrupt intent or a guilty state of

14    mind.

15         But there is one other part of the indictment that I would

16    direct the Court to, which is paragraph 10 and also paragraph --

17    well, I will start with paragraph 10, which alleges that the

18    activities of the defendants were not just -- I'm sorry,

19    paragraphs 10, 37, and 38.   I knew I had them somewhere.   Which

20    alleges not just that these were individual sort of one-off acts

21    of deception but, rather, that this was a coordinated campaign

22    in which the falsity of the posts were monitored and critiqued

23    and regulated, in which the false social media activity was

24    tracked and adjusted, in which the money was moved in a way that

25    was done to conceal where it was coming from and where it was

1    going to, the fact that the computer infrastructure was done not

2    just in a sort of haphazard one-off fashion, but in a

3    coordinated, structured way.

4        All of that, those allegations, that is evidence of a

5    guilty state of mind.  It's not just any one particular

6    deceptive act.  It's that all of these deceptive actions were

7    done in a coordinated, concerted fashion, and that shows that

8    the defendants were acting not just to try to deceive the

9    readers of their social media posts, but also that they were

10   acting to impair the United States government from investigating

11   their activity.

12            THE COURT:  Okay.  Thank you.

13            MR. KRAVIS:  Thank you, your Honor.

14            THE COURT:  Mr. Dubelier, you can respond to his

15   arguments but also any further points you want to make on your

16   last two arguments.

17            MR. DUBELIER:  Thank you, your Honor.  There's a lot

18   here.

19        When I was going through with the Court and you stopped me

20   in the middle, but I think I wound up getting through it, of

21   what I thought the elements of the offense were, this is exactly

22   what I predicted, and that is, the evidence of intent is the

23   deception, and that's all they have.  There's nothing more than

24   that.

25        And what that means is, that means that anybody, even an

1    American who goes on the Internet, pretends to be somebody

2    different than they are, and says something about an election

3    can be indicted under 371, because the government argues you

4    don't have to have an underlying investigation or an ongoing

5    investigation, you don't have to have an underlying crime,

6    because it's the responsibility of the FEC to monitor and

7    regulate elections.  So it would be in the interest of the FEC

8    to know when someone is saying something about a political

9    candidate on the Internet, whether or not it's true.  And then

10   how can they determine that if they don't know who the person

11   is?

12        So their theory of liability opens up to indictment any

13   single person who goes on the Internet and pretends to be

14   somebody different than they actually are and says something

15   about an election.  They can be indicted under 371.

16        Now, not only has this case that they've indicted never

17   happened before, but nobody over there at that Department of

18   Justice would dare bring a criminal case based on that theory of

19   liability under 371.  The supervisors from the Department of

20   Justice ought to be over here listening to this argument,

21   because this argument is beyond belief.  This is what this case

22   comes down to now.

23        If Congress wanted to prohibit any foreign involvement in

24   an election, they could do it, but they didn't do that.  They

25   carved out what you can't do.  They never said to foreign people

1    you can't talk and say what you want to say about a political

2    candidate in the United States.  You can do that.  Any foreign

3    person can come here to the United States and say whatever they

4    want to say, and they could come here and get on the Internet

5    and pretend to be somebody else and say whatever they want to

6    say.  The law has never --

7          THE COURT:  Well, to be fair, it's more than that.

8    They talked about a number of acts of deception, including the

9    computer infrastructure and moving money and a lot of additional

10    factors, not just speaking.

11         MR. DUBELIER:  Yeah, that's all they talk about,

12    computer infrastructure.  What does that mean?  That you make it

13    appear that an e-mail comes from somewhere as opposed to coming

14    from somewhere else.  So what?  People do that every day.

15    That's not illegal.  It's not illegal.  There's no law that says

16    you can't do that.

17       This comes down to, fundamentally, they want to be able to

18    regulate what people say on the Internet, and then somebody's

19    going to apply some standard of proof or truth against that,

20    that you've got to be who you really are on the Internet?

21       If Congress wanted to say foreign nationals are not allowed

22    to talk about a U.S. election, they could do it, but they

23    haven't done that.  If Congress wanted to say you can't

24    interfere with a U.S. election, they could pass a statute and

25    say that, and then they could list under "interfere" all the

1    different types of interference that are prohibited.  They

2    haven't done that.

3         And that's why in this case this Special Counsel made up a

4    crime to fit the facts that they have.  And that's the

5    fundamental danger with the entire Special Counsel concept, that

6    they operate outside the parameters of the Department of Justice

7    in a way that is absolutely inconsistent with the consistent

8    behavior of the Department of Justice in these cases for the

9    past 30 years.  Put willfulness in the indictment.  Everybody

10   else does.

11             THE COURT:  Not everybody else.

12             MR. DUBELIER:  Two cases where it didn't happen.

13             THE COURT:  No, There are more than two.

14             MR. DUBELIER:  No, two election cases, your Honor.

15             THE COURT:  But I don't think you can restrict it to

16   election cases only.

17             MR. DUBELIER:  Well, I think that's what we're talking

18   about.  We're talking about FEC, conspiracy to violate the

19   FEC -- I'm sorry, conspiracy to interfere with the FEC.  There's

20   a specific -- as you know, there's a particular unit at the

21   Department of Justice that deals with that.  Not any U.S.

22   Attorney's Office can go off and do that.  You've got to go

23   through the Department of Justice.

24        And they have consistently, with only two exceptions, used

25   the word "willfully" in charging the case.  The only two

1    exceptions, *Trie* where Judge Friedman of this court read

2    willfully into it.

3            THE COURT:  No, no, no, that's not fair.  He said to

4    the extent that the conspiracy to defraud depended on the 1001

5    and aiding and abetting theory, that they need to meet the same

6    standard.  But I think he left open the door for other theories.

7            MR. DUBELIER:  Well, we didn't have a trial.  So we

8    don't ultimately know what he was going to charge the jury in

9    *Trie*, but it seems to me that the jury instruction was going to

10   be you have to prove that they know what regulation they

11   violated.

12       And that's certainly what Justice Kavanaugh said in *Bluman*.

13   If they want to get up here and argue about *Bluman*, you can't

14   take half of *Bluman*.  You can't say well, we want *Bluman* for

15   this reason but we don't want it for the other reason.  And what

16   Justice Kavanaugh said in *Bluman*, along with two other judges of

17   this court, if you are going to indict a foreign national for

18   these type of violations, you will have to prove that they know

19   what the law was that they were violating.

20           THE COURT:  Or the offense, because willfulness is a

21   part of the offense.  This is not an offense-based conspiracy.

22   This is a conspiracy to defraud.  So I don't know that that

23   helps you that much.

24           MR. DUBELIER:  Well, I will respectfully disagree with

25   you on that one, your Honor.  I will, because this whole concept

now we're into, this world of FEC and FARA unit regulate and

monitor certain activity, and so the theory here -- it's shifted

a little, I think, with Mr. Kravis's argument.  Let's go back to

what they actually said in their papers and what Mr. Dreeben has

said previously.

What they say is essentially, if any federal agency would

have instituted an investigation had they known that the people

saying this stuff on the Internet were actually Russian, then

they've proved a violation of 371.  That's what they've said in

their papers.  That's the example that they gave.

They've argued that case at the Supreme Court already, and

they've lost it.  They've lost the case.  Not on a 371 defraud

case, but let's look at some of the other cases almost identical

on the facts in terms of theory of intent.

Look at *Fowler*, which we cited in our brief, which

Mr. Dreeben was on the brief there, and the government lost 7 to

2.  There, the Solicitor General argued to affirm a conviction

for federal witness tampering without any evidence that the

defendant intended to prevent a communication with a federal

officer.

So basically what you have, that was a horrible case on the

facts.  You have a man who kills a police officer.  Why it

wasn't charged under state law of murdering a police officer, I

have no idea.  But it was charged under federal law under the

theory that that police officer would have, if he had lived,

have reported that that defendant was committing a federal

crime, and that would be a basis for conviction for tampering

with a federal witness.  That wasn't even a close call, 7-2 at

the Supreme Court.  Absolutely no evidence that that person who

committed that horrible crime and killed a police officer had

any idea.  There wasn't even any proceeding or investigation

going that the state police officer could have reported to

anybody about.  They still -- the Department of Justice went up

to the Supreme Court and argued that should be a conviction.

*Flores-Figueroa*, which was 9-0 at the Supreme Court,

another case where Mr. Dreeben was on the brief.  There, the

Solicitor General's Office argued to affirm a conviction for

identity theft without proof that the defendant knew the

identity documents he possessed actually belonged to another

person as opposed to being counterfeit.  So the statute says you

possess an identity document that belongs to someone else.

There was no evidence of that, no evidence at all.  And 9 -- I'm

sorry.  That one was 9-0 at the Supreme Court.  The Supreme

Court said reverse the conviction, because there was no

evidence -- that person could have believed that they possessed

counterfeit identification documents as opposed to

identification documents that belong to someone else.

Here's why these cases matter.  They are simply saying,

without any evidence, that deception equals intent.  That's it.

And that's what they must have told the grand jury, because if

they didn't tell the grand jury that, not only couldn't you get

a jury conviction here, you could never even get an indictment.

They must have told the grand jury deception equals intent.

That's the argument that Mr. Kravis made.  Every time you

went back to him and said -- and I understand we're not arguing

sufficiency of the evidence, we're not arguing -- we're not

there yet.

But it doesn't change the fact of what they had to indict,

were we indicted for a real crime or not, and we were not

indicted for a real crime.  We were indicted for something that

the Special Counsel's Office has made up to fit the facts.  They

don't like what happened, and what they're riding on here is I

have a client that, you know, is not very appealing; right?

There's no real public appeal.  There's no court appeal.  Who

likes my client?  And that's what they're riding on, that they

can simply go to a grand jury first and deprive us of a right to

be indicted for a real crime and then go to a petit jury and say

look at all the sneaky things they did, because they were

sneaky, they knew that they were interfering with the monitor

and regulatory functions of the FEC and FARA.

That's crazy.  You can't have a conviction on that.  And I

am 100 percent certain that we prevail on that at a higher

level, if we don't prevail in front of a jury.

Why should we have to go through that?  The important point

here, your Honor, is I have never argued in these papers and I'm

1    not arguing to you now that they can't fix this.  Maybe they

2    can.  It's not my obligation to tell them how to fix it.

3    They've got to figure that out for themselves.  And it's not

4    your obligation to tell them how to fix it.  But it's your

5    obligation, I think, to call them out and say you didn't do this

6    right, you're wrong, and so you want to go back and try and fix

7    it and do it again, maybe you can, maybe you can't.

8        I'm not saying they can't fix it.  What I'm telling you,

9    your Honor, is they did it wrong.  The way they did this case,

10   they did it wrong.  They made up a crime that didn't exist.

11   They failed to charge the grand jury with a willfulness

12   component.  And essentially what they did is they went before a

13   grand jury.  They put in a bunch of deceptive conduct.  And they

14   told the grand jury, that is a 371 violation, probable cause of

15   a 371 violation, intent to defraud, based on no case law to

16   support this, none, and based on no prior similar conduct by the

17   United States Department of Justice.

18              THE COURT:  Okay.  Mr. Dubelier, any arguments you

19   would like to make in addition to those in your papers with

20   respect to the vagueness argument or the deprivation of money or

21   property argument?

22              MR. DUBELIER:  No, your Honor, I would submit those.

23              THE COURT:  All right.  You won't be arguing the next

24   motion?

25              MR. DUBELIER:  No.  Ms. Seikaly will.

1        THE COURT:  Okay.  Ms. Seikaly?

2        MR. DUBELIER:  Thank you, your Honor.

3        MS. SEIKALY:  Good morning, your Honor.

4        THE COURT:  Good morning.

5        MS. SEIKALY:  Katherine Seikaly for defendant, Concord

6   Management.  You have been very generous with your time today on

7   the first motion.  So I will try to keep this short, and I am

8   happy to answer any questions you have.  But I do want to make a

9   few points from our motion.

10      Only the government knows whether the Special Counsel

11  improperly focused solely on conduct by Russian nationals in

12  bringing this indictment.  We filed our motion because, in our

13  view, the Special Counsel has followed the terms of the

14  appointment order and focused solely on allegations of election

15  interference by Russians.  And in fact, the Special Counsel has

16  stated as much in other briefing, which we pointed out in our

17  papers, and actually echoed this position just last week before

18  your Honor in the sentencing proceedings in a related case.

19      So by doing so, it appears that the Special Counsel has

20  engaged in selective prosecution, and that is a decision to

21  prosecute based solely on the national origin of the defendants,

22  and this is an impermissible motive.

23      Oh, go ahead.

24      THE COURT:  Let's talk about the appointment order.

25  In my view, it doesn't reflect an intent to prosecute Russian

1    nationals because they are Russian, but rather, it targets

2    individuals and entities tied to the Russian government's

3    alleged interference with the 2016 presidential election.

4        So given that the FBI presented a credible threat from a

5    specific government, why is this any evidence of discriminatory

6    purpose here?  It seems to me not the case.

7            MS. SEIKALY:  It seems to us, again based on publicly

8    reported information, which is really all we have, or publicly

9    available information, that the entire government was focused on

10   the Russian government and individuals and entities tied to the

11   Russian government.  And so I think that shows that from the

12   very beginning everybody was focused there.

13           And I agree with --

14           THE COURT:  But why shouldn't they be?  It's a

15   credible threat.  Isn't that good law enforcement?  You've got a

16   credible threat that a foreign government is involved in

17   interfering with the election and doing other things, that you

18   shouldn't investigate that?

19           MS. SEIKALY:  Yes, I agree with your Honor.  I'm not

20   saying that there should not have been an investigation of that

21   credible threat.  I think what we're saying here is, it seems to

22   have been to the exclusion of any other nationality engaging in

23   similar conduct.

24           THE COURT:  The Special Counsel has charged

25   non-Russians in the investigation, to be sure.

1          MS. SEIKALY:  That's true, but not with anything

2     related to election interference, which again was the initial --

3          THE COURT:  But there was no credible threat of any

4     other country involved in interference.

5          MS. SEIKALY:  Well, we've pointed in our papers to

6     examples that were publicly reported that do involve other

7     foreign nationals that seem to have gotten no investigation and

8     certainly no prosecution related to those.

9          THE COURT:  But do you even know that?

10         MS. SEIKALY:  We don't know that, your Honor.  But

11    again, based on -- only the government knows that, and that's

12    why we are seeking discovery, because we think the examples we

13    gave do rise to the level of some evidence of focusing solely on

14    a particular national origin and to the exclusion of others.

15         THE COURT:  I don't see how you can say newspaper

16    articles are some evidence at this point.  It seems to me you've

17    got a rigorous burden to meet, and you've not met it here.

18         MS. SEIKALY:  Well, we disagree with that.  The burden

19    for discovery is certainly lower than if we were making an

20    actual motion to dismiss based on a selective prosecution, and

21    the information is solely within the hands of the government.

22         THE COURT:  So let me ask you this:  Who was the

23    decisionmaker, when I try to determine whether there's been any

24    sort of discriminatory purpose or intent here?  Am I looking at

25    the Special Counsel?

1          MS. SEIKALY:  I think you would look at the Special

2     Counsel, but I think if you broaden it to the Department of

3     Justice, you end up with the same results.  If the Special

4     Counsel's Office had identified evidence of other foreign

5     nationals, they certainly could have referred it to another

6     agency.  But the point would be the same, which is that no

7     prosecution has been brought against any other foreign

8     nationals.

9          THE COURT:  Okay.  You and Mr. Dubelier say repeatedly

10    that this is an unprecedented investigation.

11         MS. SEIKALY:  We say that.

12         THE COURT:  Doesn't that automatically preclude your

13    request for relief here?

14       You've got to show -- in terms of showing discriminatory

15    effect, you've got to show the same crime in the same manner,

16    and you've also got to show that there are not legitimate

17    prosecutorial reasons not to bring those cases.

18       So why don't you fail on that alone?

19         MS. SEIKALY:  Well, I think we are not saying that the

20    conduct itself is unprecedented.  I think we say that the

21    prosecution, the indictment, and the --

22         THE COURT:  But the conduct, you don't think, is

23    unprecedented.  You have evidence that the sort of large-scale

24    scheme to defraud that's alleged here exists?  These other

25    examples you give from the newspapers, to me, don't seem to be

1    akin to this indictment.

2         MS. SEIKALY:  Fair enough, your Honor.  All we do have

3    is the publicly reported and publicly released information.  And

4    point taken that none of that rises to the scope that has been

5    alleged in connection with this indictment.

6         But all of the information that relates to the allegations

7    in this indictment and that conduct come from the government.

8    So if the government has additional information about other

9    foreign nationals and has chosen not to prosecute or bring an

10   indictment, then --

11        THE COURT:  I know.  But that's not how the case law

12   works.  It's not a fishing expedition to try to find it.  You've

13   got to come forward with some evidence.

14        MS. SEIKALY:  That's true, and the evidence we have is

15   the public --

16        THE COURT:  The newspaper articles, even if I take

17   them as true, to me, they do not seem to be similarly situated

18   to the defendants here.

19        MS. SEIKALY:  Well, that is what we have.  That is

20   what we've submitted to the Court.  I think if you read them

21   closely, certainly the one we've referred to in our brief

22   recently regarding social media campaign based out of Iran that

23   has been for a significant number of years, including directed

24   at the United States, I think that potentially would fit the

25   bill there, too.

1        But your Honor, we have submitted what we have, and if

2    that's not sufficient, then we understand.

3              THE COURT:  Okay.  Thank you.

4              MS. SEIKALY:  Thank you.

5              THE COURT:  Mr. Kravis, anything you would like to add

6    here?

7              MR. KRAVIS:  Nothing to add, your Honor, only that

8    this -- the defense's position which they've articulated in both

9    the opening and the reply of only the government knows is not

10   the standard, and the standard is a rigorous burden on them for

11   a reason, which is that a presumption of regularity attaches to

12   prosecutorial decisionmaking and also that discovery can be

13   particularly intrusive into the federal investigation and

14   charging process.

15             THE COURT:  All right.  Thank you.

16             MR. KRAVIS:  Thank you, your Honor.

17             THE COURT:  So I will take the motion to dismiss under

18   advisement.  I will deny the motion for discovery on a claim of

19   selective prosecution.  I don't find that Concord has met either

20   prong.  I don't believe Concord has presented evidence intending

21   to show the existence of either discriminatory effect or

22   discriminatory intent.  Therefore, I will deny that motion.

23        I'm going to take this under advisement, and I'm inclined

24   to have the courtroom deputy reach out to you if I do end up

25   denying the motion to dismiss and this case survives.  Then I

1   will have him reach out to you to try to coordinate the next

2   court date.  I have a feeling that if this case survives, that

3   Mr. Dubelier will be interested in arguing some public motions

4   relating to discovery and, perhaps, the scope of the protective

5   order and whether other charged defendants should have access to

6   discovery in this case.

7       Am I right, Mr. Dubelier?

8           MR. DUBELIER:  Keep going, Judge.  Thank you.  Yes.

9           THE COURT:  But rather than set a date now, not

10  knowing when I will issue my ruling, I think it's more prudent

11  to wait for that decision, and if there's a need to schedule a

12  future court date, I will have my courtroom deputy reach out to

13  you to do so.

14      And I will ask that you all, in connection with that, meet

15  and confer to propose -- to the extent additional briefing is

16  needed on any of these issues, propose something for me to

17  consider.

18      All right.  Anything else we need to address?

19          MR. DUBELIER:  Not for us, your Honor.  Thank you.

20          MR. KRAVIS:  Not from the government.  Thank you, your

21  Honor.

22          THE COURT:  All right.  Thank you.

23      (Proceedings adjourned at 11:36 a.m.)

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Sara A. Wick, certify that the foregoing is a

4     correct transcript from the record of proceedings in the

5     above-entitled matter.

6

7

8

9     /s/ Sara Wick                    October 16, 2018

10    SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25