# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

UNITED STATES OF AMERICA

v.

CONCORD MANAGEMENT &
CONSULTING LLC,

       *Defendant.*

</td><td>

Criminal Action No. 18-cr-32-2 (DLF)

</td></tr>
</table>

## MEMORANDUM OPINION

Concord Management and Consulting LLC moves to dismiss count I of the indictment—brought under the conspiracy statute, 18 U.S.C. § 371—on the grounds that it (1) fails to allege a defraud conspiracy under § 371 that interferes with a lawful government function; (2) fails to allege a mens rea of "willfulness"; (3) applies § 371's conspiracy-to-defraud clause to Concord in an unconstitutionally vague manner; and (4) fails to allege the deprivation of government property.  For the reasons that follow, the Court will deny Concord's motion.

## I.     BACKGROUND

On February 16, 2018, the grand jury returned an eight-count indictment against thirteen individuals and three corporate entities, including defendant Concord Management and Consulting LLC.  Indictment, Dkt. 1.[1]  Count I of the indictment—the sole count against Concord—charges that Concord and others "knowingly and intentionally conspired to defraud the United States by impairing, obstructing, and defeating the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in

---

[1] The Court has previously summarized the procedural history of this case.  *See United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 605–06 (D.D.C. 2018).  It repeats that history here only to the extent it relates to the instant motion.

administering federal requirements for disclosure of foreign involvement in certain domestic activities." *Id.* ¶ 9.  The indictment explains that U.S. law "bans foreign nationals from making certain expenditures or financial disbursements for the purpose of influencing federal elections[,] . . . bars agents of any foreign entity from engaging in political activities within the United States without first registering with the Attorney General," and "requires certain foreign nationals seeking entry to the United States to obtain a visa by providing truthful and accurate information to the government." *Id.* ¶ 1.  The indictment further states that "[v]arious federal agencies, including [the FEC, DOJ, and DOS], are charged with enforcing these laws." *Id.*

According to the indictment, Concord or its co-conspirators "interfere[d] with the U.S. political system" by, among other things, "posing as U.S. persons and creating false U.S. personas," "operat[ing] social media pages and groups" that "falsely claimed to be controlled by U.S. activists," "us[ing] the stolen identities of real U.S. persons to post" on social media, *id.* ¶ 4, "travel[ing] to the United States under false pretenses for the purpose of collecting intelligence," "procur[ing] and us[ing] computer infrastructure . . . to hide the Russian origin of their activities and to avoid detection by U.S. regulators and law enforcement," *id.* ¶ 5, "buying political advertisements on social media in the names of U.S. persons and entities," and "solicit[ing] and compensat[ing] real U.S persons" while "posing as U.S. grassroots entities and U.S. persons," *id.* ¶ 6.

To do all of this "without detection of their Russian affiliation," the defendants jointly "conspired to obstruct the lawful functions of the United States government through fraud and deceit, including by making expenditures in connection with the 2016 U.S. presidential election without proper regulatory disclosure; failing to register as foreign agents carrying out political

activities within the United States; and obtaining visas through false and fraudulent statements." *Id.* ¶ 7.

Concord allegedly contributed to this conspiracy by "spen[ding] significant sums," *id.* ¶ 3, "control[ling] funding," "recommend[ing] personnel," and "overs[eeing] [a co-defendant organization's] activities through reporting and interaction with [that organization's] management," *id.* ¶ 11.

Concord previously moved to dismiss the indictment based on Special Counsel Robert Mueller's "unlawful appointment and lack of authority." Dkt. 36. The Court held a hearing on the motion and denied it. *See Concord*, 317 F. Supp. 3d at 626. Concord now moves to dismiss count I on the merits. Dkt. 46. The Court held a hearing on October 15, 2018, requested supplemental briefing on October 18, 2018, Dkt. 68, and now resolves the motion.

## II.    LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Criminal Procedure, a party "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). That includes "a defect in the indictment or information" such as a "lack of specificity" or a "failure to state an offense." *Id.* 12(b)(3)(B)(iii), (v).

"When considering a motion to dismiss for failure to state an offense, the court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Hillie*, 289 F. Supp. 3d 188, 193 (D.D.C. 2018) (internal quotation marks omitted). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). The government "cannot cure a defective indictment" by clarifying the charges in "a bill

of particulars" or at "oral argument."  *United States v. Conlon*, 628 F.2d 150, 156 (D.C. Cir.

1980).  However, the "court must presume the allegations of the indictment to be true, and may

not dismiss an indictment on a determination of facts that should have been developed at trial."

*Hillie*, 289 F. Supp. 3d at 193 (internal quotation marks omitted).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and

fairly informs a defendant of the charge against which he must defend, and, second, enables him

to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling*

*v. United States*, 418 U.S. 87, 117 (1974).  Sufficiency "is not a question of whether [the

indictment] could have been more definite and certain," *United States v. Debrow*, 346 U.S. 374,

378 (1953), but of "whether it is fair to require the accused to defend himself on the basis of the

charge as stated," *Conlon*, 628 F.2d at 155.

When pleading a conspiracy charge, the government "cannot simply charge [the] offense

by using the general language of the statute or the common law, but must accompany the generic

language 'with such a statement of the facts and circumstances as will inform the accused of the

specific offense[] coming under the general description.'"  *United States v. Treadwell*, 760 F.2d

327, 337 (D.C. Cir. 1985) (quoting *Hamling*, 418 U.S. at 117–18).

## III.   ANALYSIS

To address Concord's challenges to the indictment, it is necessary to first identify the

"lawful government functions" that the defendants allegedly conspired to impair.  In doing so,

the Court "must construe the indictment in light of its principal purposes of clarity and notice"

and will "adhere to the indictment's plain language" even if some "language on which the

government relies may point to possible ambiguities."  *Hitt*, 249 F.3d at 1019–20.  The

government has at times described the relevant function broadly, as "regulat[ing] and

monitor[ing] the participation of foreign nationals in the American electoral process," Hr'g Tr. at 29; *see also id.* at 31, 33, 35–36, 42, or "promot[ing] transparency in the American political and electoral process," Hr'g Tr. at 49. Likewise, Concord has described the relevant function—to the extent one exists—as "electoral processes," Def.'s Reply at 23, Dkt. 62, or "administering an election," Def.'s Mot. to Dismiss at 2.

The text and structure of the indictment, however, point to a narrower set of functions. The indictment specifies the lawful government functions targeted by the conspiracy in two places: paragraph 9 and paragraphs 25 to 27.

Paragraph 9 serves as a capsule summary that distills the essence of the conspiracy and frames the allegations that follow. *See* Indictment ¶ 9. That paragraph—the heart of the conspiracy charge—alleges a conspiracy to impair three specific lawful functions of three specific agencies. *Id.* It alleges that the defendants conspired to impair the functions of the FEC, DOJ, and DOS "in *administering federal requirements for disclosure* of foreign involvement in certain domestic activities." *Id.* (emphasis added).

Later, in a subsection entitled "Federal Regulatory Agencies," the indictment describes the relevant disclosure requirements in more detail. *See id.* ¶¶ 25–27. First, paragraph 25 explains that the FEC "administers the Federal Election Campaign Act ('FECA')," which requires the reporting of certain independent expenditures. *Id.* ¶ 25. Although this paragraph also mentions FECA's ban on foreign expenditures, it focuses on FEC's administration of FECA's "reporting requirements," which, when followed, "permit [the FEC] to fulfill its statutory duties of providing the American public with accurate data about the financial activities of individuals and entities supporting federal candidates, and enforcing FECA's limits and prohibitions, including the ban on foreign expenditures." *Id.* Second, paragraph 26 explains that

DOJ "administers the Foreign Agent Registration Act ('FARA')," which "establishes a registration, reporting, and disclosure regime for agents of foreign principals." *Id.* ¶ 26.  Finally, paragraph 27 explains that DOS issues "non-immigrant visas" to certain foreign nationals entering the United States and requires visa applicants to "provide truthful information in response to questions on the visa application form." *Id.* ¶ 27.

Portions of the indictment arguably support a broader reading.  For example, an introductory paragraph refers generally to the ban on certain foreign expenditures and the United States' interest in "prevent[ing], disclos[ing], and counteract[ing] improper foreign influence on U.S. elections." *Id.* ¶ 1.  The indictment also contains allegations of conduct designed to "avoid detection by U.S. regulators and law enforcement."  Indictment ¶ 5; *see also id.* ¶ 58.  But this language cannot be fairly read to allege the impairment of government functions distinct from or broader than the disclosure regimes delineated in paragraphs 9 and 25 to 27.

In sum, the text and structure of the indictment reveal that the government functions targeted by the conspiracy are alleged solely to be the "administ[ration]" of "federal requirements for disclosure." *Id.* ¶ 9.  The Court will now consider Concord's challenges to the indictment based on that understanding.

### A.      Failure to State an Offense Under § 371

Section 371 prohibits two distinct types of conspiracies: (1) conspiracies "to commit any offense against the United States" and (2) conspiracies "to defraud the United States, or any agency thereof[,] in any manner or for any purpose."  18 U.S.C. § 371.  The Supreme Court has "stated repeatedly" that the "defraud" clause of § 371 is not limited to common-law fraud but "reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Tanner v. United States*, 483 U.S. 107, 128 (1987) (internal quotation marks omitted) (collecting cases).  A conspiracy to impede the functions of a

government agency "need not aim to deprive the government of property" or "involve any detrimental reliance." *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993), *overruled on other grounds by Neder v. United States*, 527 U.S. 1, 8–9, (1999).  Nor must "the conspiracy's goal" or "the means used to achieve it" be "independently illegal." *Id.*  As long as the conspiracy aims to obstruct the lawful functions of a government agency through some form of "deceit, craft or trickery, or at least by means that are dishonest," *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), it falls within § 371's reach.

In short, a defraud-clause conspiracy requires four elements: "that (1) [the defendants] entered into an agreement, (2) to obstruct a lawful function of the government or an agency of the government, (3) by deceitful or dishonest means, and (4) at least one overt act was taken in furtherance of that conspiracy." *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 9 (D.D.C. 1999), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999).

### 1.  Obstruction of a Lawful Government Function

Concord argues that the indictment fails at the second element—the obstruction of a lawful government function—because it does not explain "what is meant—*under statute or regulation*—by a 'lawful government function'" with respect to the FEC or DOJ.[2]  Def.'s Mot. to Dismiss at 13–14 (emphasis added).  Although the indictment invokes FECA's disclosure requirements, *see* Indictment ¶¶ 7, 9, 25, and FARA's registration requirements, *see id.* ¶¶ 1, 7,

---

[2] With respect to DOS, Concord argues that it is not alleged to have known about the visa-related misrepresentations by its co-defendants and was therefore not a party to any conspiracy to impair the functions of DOS.  *See* Def.'s Mot. to Dismiss at 4 n.3; Hr'g Tr. at 8.  But the indictment expressly alleges that the "defendants"—including Concord—"knowingly and intentionally conspired" to impair the functions of DOS, Indictment ¶ 9, by "obtaining visas through false and fraudulent statements," *id.* ¶ 7.  At this stage, those allegations must be presumed true.  *Hillie*, 289 F. Supp. 3d at 193.

9, 26, it does not—according to Concord—allege that Concord "actually violated" or agreed to violate those requirements, Def.'s Mot. to Dismiss at 15.  In Concord's view, that omission is dispositive: the indictment cannot accuse Concord of conspiring to obstruct lawful government functions "without any identified or recognized statutory offense" because a conspiracy conviction cannot be "based strictly on lawful conduct" even if that conduct is "concealed from the government."  *Id.* (emphasis omitted).

Concord is correct that the indictment must identify the lawful government functions at issue with some specificity.  And it does.  *See* Indictment ¶¶ 9, 25–27.  A defraud-clause conspiracy need not, however, allege an agreement to violate some statutory or regulatory provision independent of § 371.[3]

Unlike the offense clause, which covers only "conspiracies to commit an offense specifically defined elsewhere in the federal criminal code," *Kanchanalak*, 41 F. Supp. 2d at 9, the defraud clause covers all conspiracies to defraud the United States "in any manner or for any purpose," § 371.  Thus, courts have repeatedly acknowledged that a conspiracy to impair or obstruct a lawful government function under § 371 need not involve the violation of any substantive provision other than § 371 itself.  *See, e.g.*, *United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998) (observing that "neither the conspiracy's goal nor the means used to achieve it need to

---

[3] Concord insists that it does *not* argue that a § 371 defraud-clause conspiracy requires an independent legal violation.  Hr'g Tr. at 4 ("We never said that a conspiracy to defraud has to allege other underlying crimes.  We understand it doesn't.").  Yet Concord faults the indictment for "charg[ing] conspiring to interfere with an election" when "[t]here is no statute of interfering with an election."  *Id.* at 4; *see also id.* at 6 (arguing there is "no such crime" as "interfer[ing] in a U.S. election").  And it argues that "this Court should dismiss the Special Counsel's charge because the transactions on which it is based do not violate FECA, FARA, or any other statute or regulation."  Def.'s Reply at 18 (alterations and internal quotation marks omitted).  These arguments make it necessary to clarify the role potential legal violations play in assessing the sufficiency of the indictment.

be independently illegal," *id.* at 635, and that "[a]cts which are themselves legal lose their legal

character when they become constituent elements of an unlawful scheme" under § 371, *id.* at

636) (internal quotation marks omitted)); *United States v. Barker Steel Co., Inc.*, 985 F.2d 1123,

1131 (1st Cir. 1993); *United States v. Vogt*, 910 F.2d 1184, 1200 (4th Cir. 1990); *United States v.

Rosengarten*, 857 F.2d 76, 78 (2d Cir. 1988); *United States v. Vazquez*, 319 F.2d 381, 384 (3d

Cir. 1963). Put simply, conspiracies to defraud the government by interfering with its agencies'

lawful functions are illegal because § 371 *makes* them illegal, not because they happen to overlap

with substantive prohibitions found in other statutes.

In *Kanchanalak*, the court illustrated § 371's self-sufficiency in the context of a

conspiracy to impede the lawful functions of the FEC. There, the defendants argued that

"because they had no obligation to report their identity to the FEC . . . as a matter of law they

could not have impaired or impeded any function of the FEC." 41 F. Supp. 2d at 9. However,

the Court rejected that argument because the indictment "d[id] not charge the defendants with a

conspiracy to fail to reveal their names" but with a "conspiratorial agreement to use deceptive or

deceitful means to prevent the FEC from performing its lawful reporting function." *Id.* The

court emphasized that the government would still have to prove beyond a reasonable doubt "that

the defendants used deceitful or dishonest means," but it dismissed as "incorrect" the idea that

the defendants could be guilty of conspiring to impair or impede the FEC's functions only if they

violated an independent reporting requirement. *Id.*

As in *Kanchanalak*, the indictment does not charge Concord with a conspiracy to fail to

disclose independent expenditures to the FEC under FECA, or to fail to register as a foreign

agent with DOJ under FARA, or even to submit false statements on visa applications to DOS.

Rather, it charges Concord with conspiring to impede the functions of the FEC, DOJ, and DOS

through a myriad of deceptive means.  *See* Indictment ¶¶ 4–7, 9, 28, 30–32, 36, 38, 41, 43, 45, 47–49, 51–52, 56–57.  The key question, then, is not whether the defendants' agreed-upon conduct violated FECA or FARA—or any other statute—but whether it was *deceptive* and intended to frustrate the lawful government functions of the FEC, DOJ, or DOS.

       2.   Deceitful or Dishonest Means

Although the indictment need not allege the violation of a statute other than § 371, the reporting requirements of FECA and FARA might still be relevant to establishing deception. Section 371 does not "make it a federal crime to do *anything* . . . with the goal of making the government's job more difficult."  *Caldwell*, 989 F.2d at 1060.  It covers only agreements to obstruct government functions by "deceit, craft or trickery, or . . . means that are dishonest." *Hammerschmidt*, 265 U.S. at 188.  Of relevance here, a failure to disclose information can only be deceptive—and thus serve as the basis for a § 371 violation—if there is a legal duty to disclose the information in the first place.  *See United States v. Murphy*, 809 F.2d 1427, 1431 (9th Cir. 1987) ("Where the regulations implementing the Act [administered by the agency] do not impose a duty to disclose information, failure to disclose is not conspiracy to defraud the government.").  In the government's words, "when the only deceptive acts the government has alleged are a failure to disclose or a failure to report, well, then, you are going to have to show a duty to disclose or a duty to report.  Otherwise, the failure to do it isn't deceptive.  It's just complying with the law."  Hr'g Tr. at 47–48.

This need to establish deception explains the D.C. Circuit's decision in *In re Sealed Case*, 223 F.3d 775 (D.C. Cir. 2000), on which Concord relies.  There, the only possible basis for § 371 liability was a loan repayment that allegedly violated a ban on foreign contributions and required disclosure.  *Id.* at 777, 779.  The court noted that legal impossibility was clearly a defense to

conspiracy "in this context" and concluded that "[b]ecause the transaction described by the government d[id] not violate FECA, there c[ould] be no finding of conspiracy" under either the offense clause or the defraud clause of § 371.  *Id.* at 779.  Just as the government could not charge "conspiracy to shoot a deer" if "the law d[id] not prohibit shooting deer in the first place," the government could not charge a conspiracy based on payments that no law—including § 371—prohibited.  *Id.*  But *In re Sealed Case* did not question the longstanding consensus of other circuits that § 371 independently prohibits agreements to employ acts of deceit, craft, or trickery to interfere with an agency's lawful function.  It merely reflected the fact that lawful payments that do not deceive the government—or anyone else—do not implicate that prohibition.  *Cf. United States v. Jackson*, 33 F.3d 866, 870 (7th Cir. 1994) ("[T]he government *may* allege the violation of [a] specific statute to demonstrate a conspiracy to defraud the United States; but such an allegation is only a way of consummating the conspiracy which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense.") (alteration and internal quotation marks omitted)).

Here, the indictment alleges several forms of deceit, including both (1) failures to disclose information in violation of a legal duty and (2) affirmative misrepresentations and deceptive conduct.  Contrary to Concord's suggestion, *see* Def.'s Mot. to Dismiss at 6–7 & nn.4–5, the indictment *does* allege that the defendants agreed to violate a legal duty to make "proper regulatory disclosure[s]" to FEC and to "register as foreign agents" with DOJ, Indictment ¶ 7; *see also id.* ¶¶ 25–26, 48, 51.  As the indictment explains, FECA "requires that individuals or entities who make certain independent expenditures in federal elections report those expenditures

to the Federal Election Commission." *Id.* ¶ 25.[4]  In particular, FECA requires "[e]very person

. . . who makes independent expenditures in an aggregate amount or value in excess of $250

during a calendar year" to "file a statement" with the FEC.  52 U.S.C. § 30104(c).  And it defines

"independent expenditure[s]" to include "an expenditure by a person . . . expressly advocating

the election or defeat of a clearly identified candidate."  *Id.* § 30101(17).

The indictment also explains that FARA requires "agents of foreign principals" to

"submit periodic registration statements containing truthful information about their activities and

the income earned from them."  Indictment ¶ 26.  Specifically, FARA prohibits any person from

"act[ing] as an agent of a foreign principal unless he has filed with the Attorney General a true

and complete registration statement" that discloses any "political activity" performed on behalf

of the foreign principal.  22 U.S.C. § 612(a).  FARA defines "foreign principal" broadly to

include any entity "organized under the laws of or having its principal place of business in a

foreign country," *id.* § 611(b)(3), and it defines "political activities" to include "any activity"

believed or intended to "in any way influence . . . any section of the public within the United

States with reference to formulating, adopting, or changing the domestic or foreign policies of

the United States."  *Id.* § 611(o).

---

[4] The indictment also alleges that FECA prohibits foreign nationals from making "independent expenditures."  Indictment ¶ 25; *see also* 52 U.S.C. § 30121(a); 52 U.S.C. § 30101(17) (defining independent expenditures to include "an expenditure" that "expressly advocate[es] the election or defeat of a clearly identified candidate"); *Bluman v. FEC*, 800 F. Supp. 2d 281, 285 (D.D.C. 2011) (applying FECA's ban on foreign independent expenditures to a plaintiff who wanted to "print flyers supporting President Obama's reelection" and "distribute them in Central Park").  Despite this prohibition, the defendants allegedly purchased social media advertisements explicitly promoting candidate Donald Trump and denigrating candidate Hillary Clinton.  *See* Indictment ¶¶ 48, 50.  That these alleged purchases may have violated FECA's ban on foreign independent expenditures could be relevant to establishing the defendants' motive for failing to submit reports as required.  *See id.* ¶¶ 7, 48.

Despite these disclosure requirements, Concord or its co-conspirators allegedly "produce[d], purchase[d], and post[ed] advertisements on U.S. social media and other online sites expressly advocating for the election of then-candidate Trump or expressly opposing Clinton" and "did not report their expenditures to the [FEC], or register as foreign agents with [DOJ]." Indictment ¶ 48; *see also id.* ¶ 35 (defendants "spen[t] thousands of U.S. dollars every month" on "advertisements on online social media sites" and included those expenditures in budgets submitted to Concord). Further, the defendants allegedly "organized and coordinated political rallies in the United States" and "did not register as foreign agents with [DOJ]." *Id.* ¶ 51. This failure to disclose information to the United States—in the face of a legal obligation to do so—qualifies as "deceit, craft or trickery," *Hammerschmidt*, 265 U.S. at 188, regardless of whether it could be criminally prosecuted as a standalone offense.

Concord argues that the alleged failures to report or register cannot be considered, either because they are not identified with enough specificity in the indictment, Def.'s Mot. to Dismiss at 6–7; Def.'s Resp. to Gov't's Supp. Br. at 2–4, Dkt. 71, or because they would ordinarily only support criminal penalties if done "willfully," Def.'s Resp. to Gov't's Supp. Br. at 4. Both arguments are unpersuasive. First, the indictment need not provide a detailed account of the manner and means the defendants used in accomplishing the object of the conspiracy. *See Glasser v. United States*, 315 U.S. 60, 66 (1942). The indictment alleges that the defendants agreed to a course of conduct that would violate FECA and FARA's disclosure requirements, *see* Indictment ¶¶ 7, 25–27, 48, 51, and provides specific examples of the kinds of expenditures and activities that required disclosure, *see id.* ¶¶ 48–57. At this stage, that is more than enough. Second, the question is not whether the defendants' failure to report was *criminal* but whether it violated a legal duty and was therefore *deceptive*. Those questions are analytically distinct. The

substantive FECA and FARA provisions that require disclosure are separate from FECA and

FARA's enforcement provisions.  *Compare* 52 U.S.C. § 30104(c), *and* 22 U.S.C. § 612(a)

(requiring disclosure), *with* 52 U.S.C. § 30109(d), *and* 22 U.S.C. § 618(a) (establishing criminal

penalties for certain willful violations of disclosure requirements).  Further, FECA's enforcement

provisions impose civil penalties for even non-willful failures to report, *see FEC v. California

Medical Ass'n*, 502 F. Supp. 196, 203 (N.D. Cal. 1980); thus, describing such failures as

"lawful" is as inaccurate as it is irrelevant.

        In addition to non-disclosure, the indictment alleges that the defendants made affirmative

misrepresentations by submitting false statements on visa applications to DOS.[5]  *See id.*  ¶¶ 5, 7,

30.  The indictment further alleges that the defendants destroyed evidence "to avoid detection

and impede investigation by U.S. authorities," *id.* ¶ 58, and used "computer infrastructure" to

"hide the Russian origin of their activities" and "avoid detection by U.S. regulators and law

enforcement," *id.* ¶ 5; *see also id.* ¶ 39.  This affirmative conduct also qualifies as deception that,

together with the defendants' evasion of legal reporting requirements, was allegedly calculated

---

[5] Concord argues that the false statements to DOS were not "material" and thus could not have constituted visa fraud if charged under 18 U.S.C. § 1546(a).  *See* Hr'g Tr. at 9–10.  But even if that is the case, it does not make a difference.  Because the indictment charges a defraud-clause conspiracy and not an offense-based conspiracy, the government does not need to prove materiality.  The false statements alleged are not relevant because they violate another criminal statute but because they are *deceptive* and intended to impair DOS's lawful function of "administering federal requirements for disclosure of foreign involvement in certain domestic activities."  Indictment ¶ 9.  As visa applicants, the defendants were expressly required to "certif[y]" that their "answers [we]re true and correct to the best of [their] knowledge and belief," and they were instructed that "[a]ll declarations made in [their] application[s] [we]re unsworn declarations made under penalty of perjury."  U.S. Dep't of State, Consular Elec. Application Ctr., Online Nonimmigrant Visa Application (DS-160) (accessed November 5, 2018), https://travel.state.gov/content/dam/visas/PDF-other/DS-160_Example.pdf.  To submit false answers to direct questions in the face of these instructions qualifies as deception designed to impair DOS's information-gathering function, which is precisely the sort of fraud § 371 prohibits.

"to obstruct the lawful functions of the United States government" and thereby enable the defendants "to carry out their activities to interfere in U.S. political and electoral processes without detection of their Russian affiliation."  *Id.* ¶ 7; *see also id.* ¶ 28.

The government insists that, at trial, it will not have to prove that any defendant had a legal duty to file reports with the FEC or to register with DOJ.  *See* Hr'g Tr. at 31–33; Gov't's Supp. Br. at 4.  The government acknowledges that it would "have to show a duty to disclose or a duty to report" if "the *only* deceptive acts" alleged in the indictment were "a failure to disclose or a failure to report."  Hr'g Tr. at 47–48 (emphasis added).  But it argues that the various other forms of deception alleged—namely, impersonating U.S. persons and entities online, using stolen identities to hide the source of online payments, using computer infrastructure to evade detection, and destroying evidence—make it unnecessary to establish deceit through a failure to report or disclose.  *Id.* at 31–33; Gov't's Supp. Br. at 3–4;.

In theory, the government is correct.  The difficulty for the government, however, is not *identifying* deceit—of which there is plenty—but *connecting* that deceit to the lawful government function of "administering federal requirements for disclosure," which the defendants allegedly conspired to impair.  When coupled with a duty to report, the various acts of deception immediately directed at private parties become relevant as a way to avoid detection for failing to comply.  But it is difficult to see how the defendants' deception would impair agencies' ability to "administer" disclosure requirements if those requirements did not apply to the defendants' conduct.  To be sure, not *all* conspiracies to defraud the United States by impairing the lawful functions of the FEC and DOJ must allege a legal duty to report or register.  But because this indictment alleges a conspiracy to impair those agencies' functions of "administering federal requirements for disclosure," Indictment ¶ 9, the government may ultimately have to prove that

the defendants agreed to a course of conduct that, if carried out, would require disclosure to the FEC or DOJ.[6]

At bottom, Concord's concerns amount to a single attack: that the government has charged Concord based on conduct that is *not illegal*.  *See* Def.'s Mot. to Dismiss at 15, 17.  If that were true, Concord would of course prevail.  "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  And "[p]ure legal impossibility is always a defense" to conspiracy.  *In re Sealed Case*, 223 F.3d at 779 (internal quotation marks omitted). But Concord cannot escape the fact that the course of deceptive conduct alleged *is* illegal because § 371 makes it illegal.  The indictment need not allege a violation of any other statute.

**B.     Mens Rea**

1.   Whether § 371 Requires Willfulness in this Case

Section 371 does not contain an express mens rea requirement.  But "[s]ection 371's use of the term 'conspire' incorporates long-recognized principles of conspiracy law." *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016).  "In a conspiracy, two different types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 433 n.20 (1978); *see also United States v. Haldeman*, 559 F.2d 31, 112 (D.C. Cir. 1976) ("[T]he specific intent required for the crime of conspiracy is . . . the intent to advance or further the unlawful object of the conspiracy.").  Where the unlawful object of the conspiracy is to defraud the United States, the mens rea logically required is that

---

[6] The same analysis does not apply to the allegations relating to DOS because they do not involve a failure to disclose information but rather affirmative misrepresentations to DOS.

"the defendant knowingly participated in the conspiracy with the intent . . . to defraud the United States." *Treadwell*, 760 F.2d at 333. And where the fraud is in turn premised on the interference with lawful government functions, as here, the mens rea required is that the defendant "knowingly agreed" with another "to deceptively interfere with the lawful functions of the [targeted agency]." *United States v. Davis*, 863 F.3d 894, 901 (D.C. Cir. 2017).

Concord resists this conclusion, arguing that at least in cases like this one—where First Amendment concerns are implicated, where the government functions allegedly obstructed are rooted in complex statutory schemes, and where the course of conduct agreed to relates to statutory offenses that would require willfulness if charged—a higher mens rea is required. *See* Mot. to Dismiss at 17–19. Specifically, Concord argues that a "willfulness" standard applies and requires the government to allege the defendant's "knowledge of the law[s]" that define the government functions targeted by the conspiracy. *Id.* at 19.

To support that standard, Concord relies first on two Supreme Court cases that interpreted statutes that—unlike § 371—contained an express "willfulness" requirement. *See Cheek v. United States*, 498 U.S. 192, 193, 201 (1991) (interpreting "willfully" in a criminal tax provision to require knowledge of the law); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (interpreting "willfully" in a criminal antistructuring provision to require the government to show that the defendant "knew the structuring in which he engaged was unlawful"). But these decisions were not meant to "dishonor the venerable principle that ignorance of the law generally is no defense to a criminal charge." *Ratzlaf*, 510 U.S. at 149; *see also Cheek*, 498 U.S. at 609 (affirming that "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system" and observing that "[t]his common-law rule has been applied by the Court in numerous cases construing criminal statutes"). These

17

decisions merely acknowledged that, "[i]n particular contexts, . . . *Congress* may decree otherwise." *Ratzlaf*, 510 U.S. at 149 (emphasis added); *see also Cheek*, 498 U.S. at 609 (noting that "*Congress* has . . . softened the impact of the common-law presumption [that every person knows the law] by making specific intent to violate the law an element of certain federal criminal tax offenses" and describing the use of "the statutory term 'willfully'" as "carving out an exception to the traditional rule" (emphasis added)).  Indeed, the Court in *Ratzlaf* cautioned that even the express use of the word "[w]ilful" does not necessarily require knowledge of the law, as that word "is a word of many meanings, and its construction is often influenced by its context." 510 U.S. at 141 (alterations and internal quotation marks omitted).  Instead of reflexively assuming that willfulness required knowledge of the law, the Court proceeded to examine the relevant statutory structure and to consider whether the prohibition was limited to inherently nefarious activity or captured otherwise-innocent conduct.  *Id.* at 142–46.

Concord focuses on the complexity of FECA and FARA and the fact that their criminal enforcement provisions require willfulness.  *See* Def.'s Mot. to Dismiss at 20, 25–26.  But the government has not charged Concord with violating FECA or FARA, but with violating § 371. The difference matters.  Unlike FECA, FARA, and the tax and structuring statutes interpreted in *Cheek* and *Ratzlaf*, § 371 does not contain an express willfulness requirement.  And because every defraud-clause conviction requires the use of "deceit, craft or trickery, or . . . means that are dishonest," *Hammerschmidt*, 265 U.S. at 188, "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated [the Supreme Court's] decisions in the tax cases and *Ratzlaf*" is either not present or seriously diminished, *Bryan v. United States*, 524 U.S. 184, 195 (1998).

It is no surprise, then, that other circuits have refused to graft a willfulness requirement onto § 371.  *See United States v. Khalife*, 106 F.3d 1300, 1303 (6th Cir. 1997); *United States v. Jackson*, 33 F.3d 866, 871 (7th Cir. 1994); *United States v. Derezinski*, 945 F.2d 1006, 1012 (8th Cir. 1991).  Indeed, courts have repeatedly rejected requests, like Concord's, to borrow willfulness requirements from related substantive statutes even when the defraud conspiracy is premised on interfering with an agency's administration of those statutes.

In *Derezinski*, for example, the defendant argued that his conviction for conspiring to interfere with the IRS's lawful function of assessing and collecting taxes could not stand because the government had not proven that he had intentionally violated a known legal duty, as the substantive criminal tax statutes would have required.  *See* 945 F.2d at 1012.  But the Eighth Circuit rejected that argument, holding that "*Cheek* d[id] not apply . . . because the Government prosecuted [the defendant] under a general conspiracy statute, not a criminal tax statute, and because 'willfulness' is not an express element of section 371."  *Id.*

Likewise, in *Jackson*, the defendants argued that their "§ 371 conspiracy convictions were dependent on violations of the antistructuring laws" and thus required a showing of willfulness under *Ratzlaf*.  33 F.3d at 869.  But the Seventh Circuit found that contention "misplaced because the government did not have to demonstrate that the defendants violated the antistructuring laws" and "*Ratzlaf*'s holding concerning the meaning of 'willfully violating' in the antistructuring laws . . . ha[d] no bearing on the defendants' § 371 convictions."  *Id.* at 871.

So too, in *Khalife*, the Sixth Circuit dismissed the argument "that the *Ratzlaf* intent requirement applies to a § 371 conspiracy to defraud based upon structuring activities."  106 F.3d at 1302.  The court reasoned that "because there is no 'substantive' offense underlying a § 371 conspiracy to defraud," it was "unnecessary to refer to any substantive offense when

charging a § 371 conspiracy to defraud" and equally "unnecessary to prove the elements of a related substantive offense." *Id.*[7]

Concord points to two circuits—the First and the Third—that have arguably bucked this trend. *See* Def.'s Mot. to Dismiss at 27–29.[8]  But the First Circuit cases cited did not actually reach whether the government was required to show willfulness.  They merely considered—and rejected—the argument that a jury instruction that *included* a willfulness charge had to go even further and explain that a conviction would specifically require the violation of a known legal duty.  *See United States v. Morosco*, 822 F.3d 1, 19–21 (1st. Cir. 2016), *cert. denied*, 137 S. Ct. 251 (2016); *United States v. Monteiro*, 871 F.2d 204, 208 (1st. Cir. 1989).  In *Morosco*, the court was particularly transparent about the limits of its holding.  There, the government argued that the willfulness instruction given at trial "actually required prosecutors to prove a level of mens rea higher than what [§ 371] demands."  822 F.3d at 20 (internal quotation marks omitted).

---

[7] The court went on to assess and approve the government's decision to bring a defraud-clause conspiracy even though the defendants' conduct was covered by a specific offense defined by Congress. *Id.* at 1303–06.  Concord has not (quite) argued that the government should have brought an offense-clause conspiracy or individual substantive charges instead of a defraud-clause conspiracy.  But it does accuse the government of "try[ing] to evade the willfulness standard that must be met to show violations of the FECA and FARA provisions referenced" in a way that "would permit offense-clause causes to be routinely charged as defraud-clause cases" and cause one clause to "potentially swallow up the other."  Def.'s Mot. to Dismiss at 25.  The Supreme Court, however, has rejected similar arguments, reasoning that "[t]he fact that the [alleged] events include" conduct that violates another criminal statute "does not, in and of itself, make the conspiracy-to-defraud clause of § 371 unavailable to the prosecution."  *Dennis v. United States*, 384 U.S. 855, 862–63 (1966); *see also United States v. Batchelder*, 442 U.S. 114, 124–25 (1979) ("[The Supreme Court] has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.").

[8] Concord also describes the Ninth Circuit's decision in *United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994), as applying a willfulness standard, *see* Def.'s Mot. to Dismiss at 30, but that decision held only that the government failed to prove the defendant's specific intent to defraud the United States, *see* 30 F.3d at 1132, and is therefore addressed below, *infra* III.B.2.

While the court found that argument "[i]nteresting," it had no occasion to consider it since "the only mens-rea issue relevant" was "the one [the defendant] raise[d]"—"that the judge should have said more than he did." *Id.* at 20–21.  Because the court rejected that claim, it did not reach whether the willfulness instruction was overkill, as the government argued, or necessary.

It is true that the Third Circuit has required willfulness in a defraud-clause conspiracy based on interference with the FEC.  In *United States v. Curran*, the defendant arranged for his employees to make donations to various political candidates in their own names and promised to reimburse them.  20 F.3d 560, 562–63 (3d Cir. 1994).  The government charged the defendant with two different offenses.  First, it charged him with violating a combination of 18 U.S.C. § 1001, which prohibits the making of false statements to the government, and 18 U.S.C. § 2(b), which prohibits willfully causing another to commit a criminal act, on the theory that he willfully caused his employees to conceal their identities from campaign treasurers, who in turn falsely reported the source of those contributions to the FEC.  *Id.* at 556–67.  Second, it charged him with a defraud-clause conspiracy based on "impeding the [FEC]'s performance through obstruction and interference with the Commission's reporting requirements, and by causing fictitious statements to be made on reports required to be sent to the commission."  *Id.* at 571.  In addressing the first set of charges, the court found that the overlay of the aiding-and-abetting statute and the false-statement statute required the government to prove that the defendant "knew that the campaign treasurers were bound by the law to accurately report the actual source of the contributions" and that "the defendant knew that his actions were unlawful."  *Id.* at 570–71.  Later, in addressing the conspiracy charge, the court summarily stated that "[t]he comments we have previously made . . . on intent apply to the conspiracy count as well" because, "[i]n order to prove a conspiracy, the government must show an agreement to commit an unlawful act

21

combined with intent to commit the underlying offense." *Id.* (internal quotation marks omitted). The court apparently assumed that the defraud-clause conspiracy turned on the fate of the §§ 1001-plus-2(b) charge and required the same level of "willfulness" as a result. *See United States v. Trie*, 21 F. Supp. 2d 7, 16 n.6 (D.D.C. 1998) ("The Section 371 conspiracy count in *Curran* was apparently also based on Sections 2(b) and 1001."). But, in doing so, the court essentially treated the defraud-clause conspiracy as if it were an offense-clause conspiracy—a practice roundly rejected by other courts. In any event, *Curran* is not binding, nor is it persuasive in light of contrary authority from other circuits.

Concord highlights another decision from a judge on this court that arguably required the government to prove willfulness in a conspiracy to interfere with the FEC. *See Trie*, 21 F. Supp. 2d 7. But like *Curran*, that case involved a tandem §§ 1001 and 2(b) charge as well as a defraud-clause conspiracy charge, *id.* at 13, and it is difficult to discern where the court's §§ 1001 and 2(b) analysis ends and its § 371 analysis begins, *see id.* at 14–15 (mentioning conspiracy count in the relevant section heading and introductory paragraph but subsequently focusing on §§ 1001 and 2(b)). In a footnote, the court explained that, "[t]o the extent that the [defraud-clause conspiracy] [wa]s based on . . . a variant of the aiding and abetting theory, the government would be required to prove the same degree of intent as it does for the substantive offense itself." *Id.* at 15 n.6. However, since the court denied the defendant's motion to dismiss, it left the door open for the government to prove alternative theories of conspiratorial liability at trial, *id.* at 15 & n.6. The decision is therefore of little help to Concord.

Concord also points to longstanding DOJ Guidelines taking the position that a conspiracy to thwart the functions of the FEC under § 371 requires *both* "that the defendant was aware of the substantive FECA requirement he or she violated, and that he or she violated it

notwithstanding this active awareness of wrongdoing" *and "also* . . . that the defendant intended to disrupt and impede the lawful functioning of the FEC."  Def.'s Mot. to Dismiss Ex. A. at 4, Dkt. 46-1 (emphasis added); *see also id.* (explaining that the "intent on the part of the defendant to thwart the FEC" is "a higher factual burden than is required under 18 U.S.C. § 1001").  These Guidelines appear to assume that conspiracies to impair the lawful functions of the FEC require willfulness.  But the parties agree that the DOJ Guidelines are not entitled to legal deference, *see* Gov't Opp'n at 29; Def.'s Reply at 6 n.6, and the view expressed in the Guidelines appears to contradict the government's frequent litigating position, *see* Gov't Opp'n at 29 & n.12 (citing briefs filed in various courts from 1995 to 2016).  Although the Court is unmoved by the DOJ's decision to "clarify[y]" the Guidelines in the middle of briefing on this motion, *see* Gov't Opp'n App'x A., Dkt. 56-1, it is equally unmoved by the position originally expressed.

Concord's remaining argument—that the indictment implicates protected speech—fares no better.  There is no doubt that speech is of "primary importance . . . to the integrity of the election process," *Citizens United*, 558 U.S. 310, 334 (2010), or that political speech "occupies the highest rung of the hierarchy of First Amendment values," *Janus v. Am. Fed'n of State, Cnty. and Mun. Emps., Counsel 31*, 138 S. Ct. 2448, 2476 (2018) (internal quotation marks omitted).  However, the indictment does not focus on the defendants' speech, or its content, but on a course of deceptive conduct.  *See, e.g.*, Indictment ¶¶ 4–7, 30, 32, 36, 39, 41, 43, 48, 51.  Although the Supreme Court made clear in *United States v. Alvarez* that "false statements" are not automatically unprotected, 567 U.S. 709, 717–22 (2012) (plurality opinion), it distinguished such statements from "fraud," which involves "legally cognizable harm," *id.* at 719, and remains one of the few historical categories of unprotected speech, *id.* at 717.  Indeed, the Court approved of statutes prohibiting false statements to government officials, perjury, impersonating an officer,

and pretending to speak on behalf of the government because such statutes "implicate fraud or speech integral to criminal conduct." *Id.* at 721. Consistent with these principles, the Fifth Circuit in *United States v. Daly* rejected a claim that a conspiracy to defraud the United States by impeding and impairing the lawful functions of the IRS implicated the First Amendment. 756 F.2d 1076, 1082 (5th Cir. 1985). It explained that § 371 "punish[es] actions, not speech," and "an illegal course of conduct is not protected by the First Amendment merely because the conduct was in part initiated, evidenced, or carried out by means of language." *Id.* The same is true here. The conspiracy to defraud does not implicate the First Amendment merely because it involved deceptive statements like claiming to represent U.S. entities, claiming to be U.S. persons, and providing false statements on visa applications.[9]

Although the § 371 conspiracy alleged does not require willfulness, the parties' disagreement may be narrower than it first appears. The government concedes that § 371 requires the specific intent to carry out the unlawful object of the agreement—in this case, the obstruction of lawful government functions. Gov't's Opp'n at 16 ("Because Concord is charged with conspiring to defraud the United States, . . . the requisite mental state is the intent of impairing, obstructing, or defeating the lawful function of any department of government through deception." (internal quotation marks omitted)). Further, the government agrees that to form the intent to impair or obstruct a government function, one must first be aware of that function. *See* Hr'g Tr. at 40 ("[Y]ou can't act with an intent to impair a lawful government function if you don't know about the lawful government function."). Thus, Concord is correct—

---

[9] Even if the indictment did implicate protected speech, the United States' "compelling interest . . . in limiting the participation of foreign citizens in activities of American democratic self-government, and in thereby preventing foreign influence over the U.S. political process," *Bluman*, 800 F. Supp. 2d at 288, might well sustain the charge against Concord.

and the government does not dispute—that the government "must, at a minimum, show that Concord knew what 'lawful governmental functions' it was allegedly impeding or obstructing." Def.'s Mot. to Dismiss at 22; Def.'s Reply at 5. Here, as alleged in the indictment, the government must show that Concord knew that it was impairing the "lawful functions" of FEC, DOJ, or DOS "in administering federal requirements for disclosure of foreign involvement in certain domestic activities." Indictment ¶ 9. But Concord goes too far in asserting that the Special Counsel must *also* show that Concord knew with specificity "how the relevant laws described those functions." Def.'s Mot. to Dismiss at 22; Def.'s Reply at 5. A general knowledge that U.S. agencies are tasked with collecting the kinds of information the defendants agreed to withhold and conceal would suffice. Concord will have further opportunities—with jury instructions and in trial and post-trial motions, if any—to ensure that the government proves enough knowledge to support a specific intent to thwart at least one of the three government functions alleged in the indictment. *See* Indictment ¶ 9. But at this stage, the government has alleged the requisite intent, *see id.* ¶¶ 2, 7, 9, 28, and no more is required.

2.   Whether the Indictment Adequately Alleges a Conspiracy "Targeting" the United States Under *Tanner*

Concord argues that, even if willfulness is not required, the indictment must still be dismissed because it fails to allege a specific intent to target the United States, as opposed to private parties. In *Tanner*, the Supreme Court explained that the defraud-clause conspiracies "criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly— by the *target* of the conspiracy," which must be the United States. 483 U.S. at 130. Where the fraud is premised on the impairment of lawful government functions, "an agreed-upon objective must be to impede the [government agency]." *United States v. Gricco*, 277 F.3d 339, 348 (3d

Cir. 2002), *overruled on other grounds*, *United States v. Cesare*, 581 F.3d 206 (3d Cir. 2009).

Impeding the government agency, however,  "need not be the sole or even a major objective of

the conspiracy" or "an objective that is sought as an end in itself."  *Id.*  And "the objectives of the

conspiracy may sometimes be inferred from the conduct of the participants," so long as the

evidence is "sufficient to prove beyond a reasonable doubt that impeding the [agency] was one

of the conspiracy's objects and not merely a foreseeable consequence or collateral effect."  *Id.*

Here, the indictment alleges that Concord and its co-defendants "knowingly and

intentionally conspired with each other . . . to defraud the United States by impairing,

obstructing, and defeating the lawful functions of the government . . . for the purpose of

interfering with the U.S. political and electoral processes."  Indictment ¶ 2; *see also id.* ¶ 28.  The

indictment further alleges that

> [i]n order to carry out their activities to interfere in U.S. political and electoral
> processes without detection of their Russian affiliation, Defendants conspired to
> obstruct the lawful functions of the United States government through fraud and
> deceit, including by making expenditures in connection with the 2016 U.S.
> presidential election without proper regulatory disclosure; failing to register as
> foreign agents carrying out political activities within the United States; and
> obtaining visas through false and fraudulent statements.

*Id.* ¶ 7.  The indictment therefore alleges that at least *one* of the defendants' objectives was to

obstruct the lawful functions of the government.  That this objective served the more ultimate

goal of impacting voters and influencing U.S. elections did not make the United States any less

of a "target."

The authorities cited by Concord are not to the contrary.  Each involved a challenge to

the sufficiency of the evidence—not the allegations in the indictment.  *See United States v.*

*Mendez*, 528 F.3d 811 (11th Cir. 2008) (per curiam) (challenge to sufficiency of the evidence on

appeal); *Licciardi*, 30 F.3d 1127 (same); *United States v. Pappathanasi*, 383 F. Supp. 2d 289,

290 (D. Mass. 2005) (post-trial Rule 29 motion).  And in each case, the court found that the government had shown only that the incidental *effect* of the defendants' conduct was to impair lawful government functions but had failed to prove that the defendants had the *intent* to impair those functions.

In *Licciardi*, the defendants set up a scheme to pass off certain wine grapes as similar-looking but more-expensive varieties.  30 F.3d at 1129–30.  The government brought a defraud-clause conspiracy on the theory that the vineyards that purchased the second-tier grapes would then submit false reports to the Bureau of Alcohol, Tobacco, and Firearms based on the defendants' misrepresentations.  *Id.* at 1331.  But while impairing the agency's function in enforcing reporting and labeling requirements may have been the "incidental effect[]" of the defendant's actions, the government did not offer any proof that the defendant had the "mens rea of accomplishing that object."  *Id.* at 1332.  The court noted that "[i]t might have been easy for the government to establish that [the defendant] was familiar with the federal regulations on the labeling of wine and that it was a necessary part of his plan of deceit that [the buyer] provide information to the government that would frustrate these regulations," but the court could not "speculate as to what the government might have proved when it did not make the effort."  *Id.* *Licciard* did not hold that familiarity with the labeling regulations was the *only* way to prove an intent to frustrate the agency's functions; it merely applied *Tanner*'s holding that a defraud-clause conspiracy premised on deceiving an intermediary must still show the "mens rea of defrauding the United States."  *Id.*  And it observed that one relatively straightforward way of making that showing would have been to introduce evidence that the defendant was aware of certain laws that made the transmission of false statements to the government inevitable.

Similarly, in *Mendez*, the defendant used a fraudulent record to obtain a commercial driver's license from Florida. 528 F.3d at 813–14. The defendant's fraud had the effect of impairing the United States Department of Transportation, which set the minimum requirements for obtaining a commercial driver's license. *See id.* at 815. However, the government did not produce any "evidence that [the defendant] even knew of any connection between a Florida [commercial driver's license] and the federal government," much less "that the United States was the ultimate intended target of [the defendant's] conduct." *Id.* Applying *Tanner* and *Licciardi*, the court reversed the conviction. *Id.* at 815–18. Again, the court did not hold that the government had to allege familiarity with any particular law in the indictment; it merely concluded that the government failed to prove that the defendant had any idea that his actions would mislead the federal government.

Finally, in *Pappathanasi*, the defendant was "accused of conspiring with Dunkin' Donuts franchisees" to overstate expenses, conceal taxable income, and ultimately defraud the IRS. 383 F. Supp. 2d at 291. The government was required to "prove that a purpose of the conspiracy was to interfere with the proper functioning of the IRS and that any fraud was not merely a foreseeable consequence of [the] conspiratorial agreement." *Id.* But after reviewing the evidence, the court concluded that the government failed to meet its burden at trial. *Id.* at 296. In reaching that conclusion, the court carefully reviewed, and found no fault with, the grand jury's allegations in the superseding indictment;[10] it merely found that the government failed to prove those allegations at trial. *See id.* at 292–300.

---

[10] Indeed, the court denied two pre-trial motions to dismiss the indictment. *Pappathanasi*, 383 F. Supp. 2d at 290.

These cases establish only that the government will have to show—through direct or circumstantial evidence—that Concord had the intent to impair one of the three specific lawful functions alleged in the indictment. *See* Indictment ¶ 9. Whether it can do so successfully or not, the indictment has alleged that intent, and no more is required at this stage.

### C.      Vagueness

The Due Process Clause prevents the enforcement of a criminal statute that "fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2016). But the Supreme Court has stressed that the void-for-vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision," *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam), and "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute," *United States v. Lanier*, 520 U.S. 259, 266 (1997).

The charge against Concord falls well within § 371's prohibition—recognized and reaffirmed by the Supreme Court since at least 1924—on conspiracies to impair the lawful government functions of the United States through "deceit, craft or trickery." *Hammerschmidt*, 265 U.S. at 188; *see also Tanner*, 483 U.S. at 128 (collecting cases). Thus, Concord had "fair notice" that § 371 and its judicial gloss would punish a conspiracy to impair the lawful functions of the FEC, DOJ, and DOS.

Indeed, courts have repeatedly rejected vagueness challenges to § 371 as applied to conspiracies, like this one, to impair lawful government functions. *See Morosco*, 822 F.3d at 5–7 (§ 371 not unconstitutionally vague as applied to conspiracy to obstruct the Department of Housing and Urban Development's inspection function); *Cueto*, 151 F.3d at 635–36 (§ 371 not unconstitutionally vague as applied to conspiracy to impair the FBI's investigation function, the

grand jury's indictment function, and the federal district court's judicial function); *United States v. Middendorf*, 2018 WL 3443117, at *6 (S.D.N.Y. July 17, 2018) (§ 371 not unconstitutionally vague as applied to conspiracy to obstruct the SEC's "regulatory and enforcement functions"). Concord attempts to distinguish these authorities on the ground that the government functions involved were more "concrete" than those involved here.  *See* Def.'s Reply at 23.  But in doing so, Concord challenges the broad straw-man function of "electoral processes," *id.*, and ignores the specific regulatory functions alleged in the indictment, Indictment ¶ 9 (the defendants conspired to impair the FEC's, DOJ's, and DOS's functions in "administering" certain "federal requirements for disclosure"); *see also id.* ¶ 25 (FEC administers FECA's "reporting requirements"); *id.* ¶ 26 (DOJ administers FARA, which requires the submission of "periodic registration statements"); *id.* ¶ 27 (DOS is "responsible for the issuance of non-immigration visas to foreign individuals").  These functions are no different in kind from those that have previously passed constitutional muster.  And for the reasons already stated, Concord is not aided by invoking the First Amendment, since the charges against it do not implicate speech, but rather a course of fraudulent conduct that merely *used* speech to defraud the United States.

Two further reasons counsel against finding § 371 unconstitutionally vague.  First, the state of mind required—an intent to defraud the United States by impairing its lawful government functions— "alleviates vagueness concerns, narrows the scope of [the statute's] prohibition, and limits prosecutorial discretion."  *McFadden v. United States*, 135 S. Ct. 2298, 2307 (2015) (alterations and internal quotation marks omitted); *see also United States v. Franklin-El*, 554 F.3d 903, 911 (10th Cir. 2009) (upholding the constitutionality of a health-care fraud statute in part because it "requires a specific intent to defraud or misrepresent," and observing that "[t]he constitutionality of an arguably vague statutory standard is closely related

to whether that standard incorporates a mens rea requirement").  Second, the requirement that the defendants employ some "deceit, craft or trickery, or . . . means that are dishonest," *Hammerschmidt*, 265 U.S. at 188, ensures that only culpable conduct is covered by § 371. Concord invokes the Ninth Circuit's concerns in *Caldwell* that defraud-clause conspiracies risk capturing innocent conduct, *see* Def.'s Reply at 22 & n.17 (quoting *Caldwell*, 989 F.2d at 1059– 60), but the court notably did not address those concerns through the void-for-vagueness doctrine.  Rather, it embraced the protection for innocent conduct imbedded in § 371 itself, by insisting that the jury be instructed that deceit or dishonesty is an essential element of the crime. *See id.* at 1059–61.

For these reasons, the Court finds that § 371 is not unconstitutionally vague as applied to Concord in the indictment.

### D.   Failure to Allege Deprivation of Property

Lastly, Concord argues for preservation purposes only that *Hammerschmidt*'s holding interpreting § 371 to extend to conspiracies to defraud the United States by interfering with lawful government functions should be overruled and that § 371 should be limited to frauds that deprive the government of money or property.  *See* Def.'s Mot. to Dismiss at 43–45.

As Concord acknowledges, this Court must follow Supreme Court precedent, which has long applied § 371 to conspiracies to defraud the United States by impairing its lawful government functions.  *See Dennis*, 384 U.S. at 861; *Hammerschmidt*, 265 U.S. at 188; *see also Tanner*, 483 U.S. at 128 ("[W]e have stated repeatedly that the fraud covered by [§ 371] reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." (internal quotation marks omitted)).  Because the theory of fraud in this case falls squarely within the scope of § 371 as interpreted by the Supreme Court, this Court will not dismiss the indictment.

**CONCLUSION**

For the foregoing reasons, the Court will deny Concord's motion to dismiss the

indictment.  A separate order consistent with this decision accompanies this memorandum

opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

November 15, 2018