```
 1            BEFORE THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF COLUMBIA

 3   UNITED STATES OF AMERICA,        .
                                      .  Case Number 18-CR-32
 4            Plaintiff,              .
                                      .
 5       vs.                          .
                                      .  Washington, D.C.
 6   CONCORD MANAGEMENT AND           .  January 7, 2019
     CONSULTING LLC,                  .  11:33 a.m.
 7                                    .
              Defendant.              .
 8   - - - - - - - - - - - - - - - -

 9
                   TRANSCRIPT OF STATUS CONFERENCE
10          BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                   UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:          JEANNIE S. RHEE, AUSA
                                  U.S. Department of Justice
14                                Special Counsel's Office
                                  950 Pennsylvania Avenue N.W.
15                                Washington, D.C. 20530

16                                JONATHAN I. KRAVIS, AUSA
                                  U.S. Attorney's Office
17                                555 Fourth Street N.W.
                                  Washington, D.C. 20530
18
                                  DEBORAH A. CURTIS, AUSA
19                                U.S. Department of Justice
                                  NSD Counterespionage Section
20                                600 E Street, 10th Floor
                                  Washington, D.C. 20004
21
                                  HEATHER ALPINO, AUSA
22                                U.S. Department of Justice
                                  National Security Division
23                                950 Pennsylvania Avenue N.W.
                                  Washington, D.C. 20530
24

25                  -- continued --
```

1    APPEARANCES (Continued):

2    For the Defendant Concord
     Management and Consulting LLC:   ERIC A. DUBELIER, ESQ.
3                                     Reed Smith LLP
                                      1301 K Street N.W.
4                                     Suite 1000, East Tower
                                      Washington, D.C. 20005
5
                                      KATHERINE J. SEIKALY, ESQ.
6                                     Reed Smith LLP
                                      7900 Tysons One Place, Suite 500
7                                     McLean, Virginia 22102

8

9    Official Court Reporter:         SARA A. WICK, RPR, CRR
                                      U.S. Courthouse, Room 4704-B
10                                    333 Constitution Avenue N.W.
                                      Washington, D.C. 20001
11                                    202-354-3284

12

13   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2     (Call to order of the court.)

3          THE COURTROOM DEPUTY:  Your Honor, this is Criminal

4     Case Number 18-32, United States of America versus Concord

5     Management and Consulting LLC.

6          Counsel, please approach the podium and identify yourselves

7     for the record, as well as any additional parties at your table.

8          MR. KRAVIS:  Good morning, your Honor.  Jonathan

9     Kravis from the U.S. Attorney's Office on behalf of the United

10    States.

11         THE COURT:  Good morning, Mr. Kravis.

12         MR. KRAVIS:  With me at counsel table are my

13    co-counsel in this matter, Deborah Curtis, also from the U.S.

14    Attorney's Office, Heather Alpino from the National Security

15    Division, and Jeannie Rhee from the Special Counsel's Office.

16         THE COURT:  Thank you, Mr. Kravis.

17         MR. KRAVIS:  Thank you.

18         MR. DUBELIER:  Good morning, your Honor.  Eric

19    Dubelier and Katherine Seikaly for Concord.

20         THE COURT:  Good morning, Mr. Dubelier.

21         All right.  I scheduled today's status conference for

22    several reasons.  First, I would like to set a hearing date to

23    hear argument on Concord's motion for approval to disclose

24    discovery pursuant to the protective order, which will be ripe

25    in late February.

1    Second, I want to discuss the firewall counsel process to

2    make sure that we are all on the same page.

3    Finally, I want to discuss Concord's pending motion to

4    compel discovery, which is now ripe.  In this motion, Concord

5    requests that I compel the Special Counsel to provide discovery

6    purportedly to show how the Special Counsel obtained

7    confidential information that Concord provided to the firewall

8    counsel.  Due to the 6(e) grand jury material that is the

9    subject of this motion, I will address the merits of the motion

10   in a sealed proceeding.

11   Mr. Dubelier, I will tell you now that I found your recent

12   filings, particularly the reply brief that you filed on Friday,

13   unprofessional, inappropriate, and ineffective.

14   In a few weeks, once Concord's motion for approval to

15   disclose sensitive discovery is ripe, I will again consider

16   arguments that Concord previously raised about the scope of

17   discovery that has been provided to its officers and employees.

18   In June, when I initially considered the terms of the

19   protective order, I rejected the government's proposal to

20   restrict all discovery to co-defendants, including Prigozhin.  I

21   did, however, restrict Prigozhin's access and the access of

22   other Concord officers and employees to sensitive discovery

23   because I concluded, balancing national security, law

24   enforcement, and privacy interests against Concord's Fifth

25   Amendment due process right to prepare and present a full

defense at trial and Sixth Amendment right to the effective
assistance of counsel, I concluded that the sensitive discovery
should be restricted at least at that early stage of
proceedings.

But I made clear then, and I have made clear repeatedly
since then, in this case and in sealed proceedings involving
firewall counsel, that I would revisit this ruling after I
resolved Concord's pretrial motions and once a trial date was
set.

I have since issued several rulings on all of Concord's
pretrial motions, and I hope to discuss the timing for trial
date in this case at our next court date.

Mr. Dubelier, you will prevail on your motion for release
of sensitive discovery if and only if the facts and the law are
on your side.  Meritless personal attacks on the Special
Counsel, his attorneys, other members of the trial team, and
firewall counsel will play no role in my decision on your
motion, nor will inappropriate and what you clearly believe to
be clever quotes from movies, cartoons, and elsewhere.  Your
strategy is ineffective.  It's undermining your credibility in
this courthouse.  I will say it plain and simple, knock it off.

Before I seal these proceedings to discuss the merits of
Concord's motion to compel, I want to discuss the firewall
counsel process.

As I see it, motions to modify the terms of the protective

1    order and motions to disclose sensitive discovery to

2    co-defendants and to employees and officers of Concord should be

3    shared with the trial team and litigated in open court.  From

4    the outset of this case, it has been no secret that Concord's

5    defense team seeks to disclose sensitive discovery to Prigozhin

6    and to other Concord officers and employees.

7         Do you all agree that those matters should be litigated

8    publicly and in an open court?  Mr. Kravis?

9              MR. KRAVIS:  Yes, your Honor.

10             THE COURT:  Mr. Dubelier?

11             MR. DUBELIER:  Yes, your Honor.

12             THE COURT:  All right.  I will ask you, what about

13   motions to expand the defense trial team to include additional

14   lawyers, paralegals, translators, and the like?  Why shouldn't

15   these requests also be argued in open court?

16        I will hear first from the government.  My understanding,

17   Mr. Kravis, the protective order is -- I don't know if it's

18   drafted the way it should be on this issue.  It seems to

19   contemplate that motions to reveal sensitive discovery to

20   foreign attorneys would go through the firewall counsel process.

21   And I just wonder whether the protective order should be

22   modified or clarified to make clear that that should not be the

23   case.  Because as I understand it, the purpose of firewall

24   counsel in this case had a very singular purpose, and that was

25   to protect the defense from disclosure of sensitive pretrial

1    strategy.  And I don't understand why a motion by the defense to

2    share discovery with lawyers or paralegals or translators who

3    are overseas in any way reveals defense strategy.

4            MR. KRAVIS:  Right.  That is our understanding as

5    well.  The government's position is that those matters should be

6    litigated in open court between the parties.  The firewall

7    counsel was included in the protective order, as the Court just

8    noted, for the limited circumstance where there might be some

9    argument that would tend to reveal defense strategy and,

10   therefore, should not be disclosed to the trial team.  But the

11   matters that the Court has just identified don't seem to fall

12   into that category.  So we believe they should be litigated in

13   open court.

14           THE COURT:  Okay.  I don't think the protective order

15   as currently structured is clear on this point.  And I will hear

16   from Mr. Dubelier as well.  But it seems to me that there might

17   be occasions where the defense wants to share particular

18   documents with individuals who are overseas who also happen to

19   be attorneys.  And in those instances, the government should not

20   know, the trial team, that is, which specific documents the

21   defense wants to show those individuals.

22       But it seems to me that we can separate that inquiry.  And

23   with respect to whether the attorney, the paralegal, the

24   translator or whoever is overseas gets access to any documents

25   at all, that that can be litigated in open court.  And if we get

1   in a situation where we then have to talk about specific

2   documents going overseas, that's where firewall counsel can step

3   in.

4        It seems to me we need to bifurcate this process, and we

5   need to have open communication on attorneys, translators,

6   anyone that's not a potential trial witness in this case.

7             MR. KRAVIS:  Right.

8             THE COURT:  Do you agree?

9             MR. KRAVIS:  Yes, your Honor.

10            THE COURT:  All right.  So I will hear from

11  Mr. Dubelier, but I am inclined to have you all sit down after

12  this hearing and work through this, and let's make the necessary

13  modifications to the protective order.  And let's also discuss

14  matters such as the mechanics.  I think we've not been clear on

15  that from the outset on how the mechanics of firewall counsel

16  are going to operate in terms of how the defense is going to

17  communicate with firewall counsel.  I think we should address

18  issues of how documents are shared, both from the defense to

19  firewall counsel and also from -- to and from the Court.

20            MR. KRAVIS:  Yes, your Honor.

21            THE COURT:  I don't know whether these need to be

22  paper orders that I'm issuing.  I think to date we've been

23  handling stuff in a sealed file.  But I am concerned about

24  security breaches, and I think we ought to revisit how we're

25  dealing with discovery that is sensitive or motions related to

1    sensitive discovery that's going through the firewall process.

2              MR. KRAVIS:  Yes, your Honor.

3              THE COURT:  Mr. Dubelier, why shouldn't requests to

4    share sensitive discovery with attorneys, paralegals,

5    translators, other individuals who in no way will be witnesses

6    for Concord in this case at trial, why should that not be

7    litigated in open court?

8              MR. DUBELIER:  Your Honor, I'm not prepared to address

9    this or any of the other issues you've raised without consulting

10   with my client.  You've accused me of being unprofessional and

11   inappropriate --

12             THE COURT:  And I think you have been.

13             MR. DUBELIER:  All right.  Well, that's what you've

14   accused me of.  I need to go now and discuss that with my client

15   and see if my client wants to continue to retain me to represent

16   them in this matter, seeing that there appears to be some bias

17   on the part of the Court against me.

18             THE COURT:  There's no bias on the part of the Court,

19   Mr. Dubelier.

20             MR. DUBELIER:  Well, when you personally say to

21   someone in public that they're unprofessional and inappropriate,

22   I take that --

23             THE COURT:  And what have you been personally saying

24   about the Special Counsel and about the trial team in open

25   court?

1    MR. DUBELIER:  I've been telling the truth.  Every

2  pleading I've filed before this court, I've told the truth.

3    THE COURT:  Mr. Dubelier, you have had many

4  inappropriate remarks in your filings, and you know it.

5    MR. DUBELIER:  Your Honor, that's your opinion.

6  That's your opinion.  I disagree with you, but that's your

7  opinion.  You're entitled to it.  What I am entitled to do is

8  discuss that with my client before I can go any further.

9    THE COURT:  You are certainly entitled to discuss that

10  with your client, but I'm going to direct you and the government

11  to sit down and meet, once you've spoken with your client and

12  assuming you're still representing your client, and work through

13  some of these issues with the protective order.

14    MR. DUBELIER:  We tried to do that, your Honor, early

15  on, and the government's answer to everything is no.

16    THE COURT:  I'm directing them to sit down with you

17  again and try to work through some of these issues pursuant to

18  my order.  Understood?

19    MR. DUBELIER:  Yes, understood.  Meaning not to just

20  say no to everything?

21    THE COURT:  All right.  Finally, before I seal the

22  courtroom, let's talk about a motions hearing date to consider

23  Concord's motion for release of sensitive discovery.  I think

24  the motion will be ripe on February 20th.  I currently have a

25  trial scheduled that week.  I also have a judicial conference

1    the following week.  How would 10:00 a.m. on March 7th work for

2    you, Mr. Dubelier?

3              MR. DUBELIER:  Assuming I'm still representing the

4    client, that date will be fine.

5              THE COURT:  Okay.  Mr. Kravis?

6              MR. KRAVIS:  The date is fine for the government, your

7    Honor.

8              THE COURT:  And I will ask the members of the public

9    to leave the courtroom so that we can discuss the matter of

10   Concord's motion to compel, which implicates proceedings before

11   the grand jury.  I will ask the trial teams for the United

12   States and Concord to stay, as well as members of the Special

13   Counsel's Office who have worked on this matter and firewall

14   counsel.

15        (Courtroom cleared.)

16             THE COURT:  All right.  The courtroom is now sealed.

17   I have members of both trial teams, firewall counsel, and other

18   members of Special Counsel's Office who have worked on this

19   case.

20        Mr. Kravis, I will ask you to begin by identifying all of

21   the government attorneys in the courtroom and their role in this

22   case.

23             MR. KRAVIS:  Your Honor, in addition to the lawyers

24   with me at counsel table that I previously introduced, Luke

25   Jones and Kathryn Rakoczy from the U.S. Attorney's Office are

also present in the courtroom.  Although we've never met in

person, I'm not certain but I believe that firewall counsel is

present in the courtroom.  And in the front row are two FBI

special agents who have been working on this matter through the

Special Counsel's Office.

THE COURT:  Okay.  Thank you.  And we have

Mr. Dubelier and Ms. Seikaly for Concord in the courtroom as

well.

Before we address the merits of the motion to compel, I

want to hear from counsel for both sides why members of the

government's trial team and Special Counsel's Office who have

worked on this case cannot be privy to the full requests that

Concord made to firewall counsel on August 23rd of 2018.

Mr. Dubelier, is there a reason why members of the trial

team cannot be aware of who the individuals are in that request?

MR. DUBELIER:  Your Honor, I am not prepared to

address this today.  I wasn't aware, when you scheduled this

status hearing, that we were going to have a motion hearing.  If

I had been aware, I would have been prepared.  I'm not prepared

to address it.

THE COURT:  Okay.  When can you consult with your

client and be prepared?

MR. DUBELIER:  I don't know.  He's in Russia.  I may

have to go see him.

THE COURT:  Go see him to reach him?

1      MR. DUBELIER:  I've never been accused by a federal
2  judge of being unprofessional and ineffective and whatever else
3  you said about me before.
4      THE COURT:  I said your tactics were ineffective.
5      MR. DUBELIER:  You accused me, your Honor, and that's
6  never happened to me before in 38 years of practicing law.  So I
7  need to go deal with that with my client.
8      THE COURT:  You may go deal with that, and we will set
9  this for a future sealed proceeding in order to address the
10  merits of the pending motion to compel.
11      In the meantime, I will ask the government to provide to me
12  ex parte, I would like for you to provide me with information.
13  You've represented in your papers that you became aware of the
14  individual not through firewall counsel but through other means,
15  and I would like you to file, in an abundance of caution, not
16  because I think that there is any evidence whatsoever of
17  wrongdoing here, but for the record, I would like for you to
18  file an ex parte filing addressing that issue.
19      Understood?
20      MR. KRAVIS:  Yes, your Honor.
21      THE COURT:  And I would like for you to hand deliver
22  that to me.
23      MR. KRAVIS:  Yes, your Honor.
24      THE COURT:  Can you do that by tomorrow?
25      MR. KRAVIS:  Yes, your Honor.

```
 1              THE COURT:  All right.  And Mr. Dubelier, I'm going to

 2    ask you to let me know by tomorrow -- I presume you can contact

 3    your client in the next 24 hours -- when you will be able to

 4    address this.

 5              MR. DUBELIER:  Your Honor, my client speaks only

 6    Russian, and I can't talk to him over an open telephone line.

 7    So it's not that simple.  It's not me simply picking up a phone

 8    and calling him and having a telephone conversation like I would

 9    with a normal client.

10        So I will do everything I can to communicate with him,

11    explain what I have been accused of by the Court, and so he can

12    make a decision as to whether or not he wants me to continue.

13              THE COURT:  And you can get a copy of the transcript

14    so it's perfectly clear what I said.

15              MR. DUBELIER:  That's right, we can get a copy of the

16    transcript and translate it.

17              THE COURT:  All right.  I will ask you to do that as

18    soon as possible, preferably by the close of business tomorrow.

19              MR. DUBELIER:  I can tell you that I can't imagine

20    that happening before the close of business tomorrow, and I

21    think it's an unreasonable request from the Court to put that

22    date on me.  I will do it as soon as I possibly can do it.

23              THE COURT:  Okay.  Very well.  I'm just asking for you

24    to move quickly to do so so that we can schedule a sealed

25    hearing in this matter.
```

1          MR. DUBELIER:  I understand that.

2          THE COURT:  Okay.  Anything else we need to address?

3          MR. KRAVIS:  Nothing from the government.  Thank you,

4    your Honor.

5       (Proceedings adjourned at 11:49 a.m.)

1    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, Sara A. Wick, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    /s/ Sara A. Wick                    January 7, 2019

10   SIGNATURE OF COURT REPORTER         DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25