**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN SUPPORT OF ITS MOTION FOR APPROVAL TO DISCLOSE DISCOVERY PURSUANT TO PROTECTIVE ORDER**

Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this reply in support of its Motion for Approval to Disclose Discovery Pursuant to Protective Order.

It is best to start with what is not in dispute. First, no company or person has ever been indicted in any reported case in the United States for a § 371 conspiracy to defraud the United States based on alleged funding of social media content. Second, no court in any reported case has ever issued a protective order like the one here; that is, without having reviewed the discovery in question, prohibiting a corporate defendant from examining non-classified discovery without prior court approval.[1] Third, the government has provided no supporting case authority; and worse, incorrectly describes some of the distinguishable cases it seeks to rely upon.

In fact, rather than simply opposing Concord's motion to disclose discovery pursuant to the Protective Order, the government recasts the sought after relief as a motion to amend the

_____

[1] The Court has not addressed the government's gross over-designation of materials as sensitive.

protective order (which it is not) (Opp. at 5), accuses Concord of failing to make a particularized request (Opp. at 7) (which is neither required by law, nor requested by the Court), and ignores the Court's previous criticism of undersigned counsel by blowing a dog whistle at the feckless media[2] about a completely imaginary effort to undermine the Office of Special Counsel (Opp. at 2) (which even it cannot honestly believe).  And in so describing this alleged issue related to non-sensitive discovery (much of which is indiscriminate garbage from the internet), the government does not even take the time to get its facts straight and instead goes on a rant marked by calumny.

The government now says that employees or officers of Concord can view the sensitive discovery in the United States (as long as Firewall counsel has the opportunity to object in advance, whatever that means).  This ignores that Concord is a Russian company with no presence in the United States, has never operated in the United States, and at worst—even if the Indictment is accepted as true—provided funding for other Russian individuals who posted social media content that was viewed in the United States.  Neither Mr. Prigozhin (because he would be arrested), nor any other employee of Concord (because they would need a visa that would never be granted) can come to the United States.

According to the government, this is all okay because defense counsel has access to the discovery.  But the government's position is not okay because defense counsel knows nothing about the allegations in the indictment, and further is prohibited by the Protective Order from even discussing the sensitive discovery with the Defendant, making it impossible to assess the significance, if any, of the discovery to the defense of this case.

---

[2] " . . . [I]t takes something more than intelligence to act intelligently."  Fyodor Dostoyevsky, *Crime and Punishment* 235 (1866).

Finally, faced with a predicament of its own making, the government is providing secret *ex parte* communications to the Court in support of its opposition, making it impossible for Concord to fairly address the arguments. "The very word 'secrecy' is repugnant in a free and open society; and we are as a people inherently and historically opposed to secret societies, to secret oaths, and to secret proceedings."[3]

## A.   THERE IS NO REPORTED CASE LAW TO SUPPORT THE GOVERNMENT'S POSITION

The government does not cite to any case where a court restricted the viewing of discovery by a corporate defendant; to be clear, ***not one case***.   Instead, the government relies only on cases that are distinguishable for its argument that the possible misuse of discovery warrants limitations on a defendant regarding review.  Opp. 12-13.  For example, the opinion in *United States v. Fishenko*, No. 12-CR-626 (SJ), 2014 WL 5587191, *2-3 (E.D.N.Y. Nov. 3, 2014), involved access to classified information, of which the government has consistently maintained none exists in this case.  Moreover, the individual defendants were not prohibited from viewing the discovery.  Similarly, *United States v. Musa*, 833 F.Supp. 752, 757 (E.D. Mo. 1993), involved classified information, and the court *did not* require defense counsel to be present during individual defendants' review as stated by the government, but simply required someone from the staff of the defense team to operate the computer containing the classified information.

In *United States v. Lindh*, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002), the court did not prohibit defense counsel from sharing unclassified discovery with detainee witnesses as stated by the government, but instead required defense counsel to provide notice to the government and

---

[3] President John F. Kennedy, Address Before the American Newspaper Publishers Association, April 27, 1961.

the court prior to any such disclosure, which then would trigger the government "bear[ing] a substantial burden of demonstrating that disclosure of any specific protected information to a detainee shall not occur." *Id*. at 743. In *United States v. Moussaoui*, No. CRIM 01-455-A, 2002 WL 1311736 (E.D. Va. Jun. 11, 2002), the information kept from the individual defendant was specifically covered by a statute protecting aviation security (49 U.S.C. § 40119(b)), and the Court determined that the information was *not discoverable* under Fed. R. Crim. P. 16 or *Brady v. Maryland,* 373 U.S. 83 (1963).

Beyond that, the government fails to advise the Court that *United States v. Moore*, 322 Fed. Appx. 78, 83 (2d Cir. 2009), only prohibited a jailed defendant from possessing witness statements in his jail cell, and required defense counsel to be present while the statements were reviewed. The allegedly sensitive discovery in this case *contains no witness statements*. The government makes the same omission regarding *United States v. Workman*, No. 18-CR-00020, 2019 WL 276843, at *2 (W.D. Va. Jan. 22, 2019), which also involved only witness interviews and grand jury testimony that had to be reviewed in the presence of defense counsel. In *United States v. Russell*, No. 15-CR-30005-DRH, 2015 WL 6460134, at *2 (S.D. Ill. Oct. 27, 2015), again involving only witness statements, the court upheld a restriction on the individual defendants reviewing statements in their lawyer's office *because that is what the defendants had agreed to* in order to obtain early production of *Jencks* material. *United States v. Guerrero*, No. 09-CR-339, 2010 WL 1506548, at *12-13 (S.D.N.Y. 2010), similarly only involved *Jencks* material. Same for *United States v. Mitchell*, No. 15-CR-00040-JAW-3, 2016 WL 7076991, at *3 (D. Me. Dec. 5, 2016), where in the prosecution of a violent street gang drug conspiracy the court determined that any inconvenience caused by the six hours it would take the defendant to review witness statements, plea agreements, and immunity agreements in the presence of his

lawyers was outweighed by witness security concerns.  And even in that case the court required the government to make a specific and particularized showing of good cause for the restriction. *United States v. Fiel*, No. 10-CR-170-7-HEH, 2010 WL 3396803, at *1-2 (E.D. Va. Aug. 25, 2010), also involved only statements of witness and unindicted potential co-conspirators where the facility in which the defendant was detained would not permit him to possess hundreds of pages of interview reports and hundreds of hours of audio recordings.  Finally, in *United States v. Johnson*, 191 F. Supp. 3d 363, 373-75 (M.D. Pa. 2016), indicted and jailed drug co-conspirators were not prohibited from viewing discovery; instead, search warrant and wiretap applications and intercepted communications containing information regarding confidential sources had to be viewed in the presence of defense counsel.

None of these cases substantiate or support what the government is seeking here: restricting disclosure of over 3 million documents that have not been reviewed by the Court to confirm their designations as sensitive, and many of which at one time were in the public domain.

### B.   THE ABILITY OF DEFENSE COUNSEL TO VIEW DISCOVERY IS NOT A SUBSTITUTE FOR A DEFENDANT VIEWING DISCOVERY

It is frightening that the United States Department of Justice would sign a brief arguing that providing discovery to an attorney is a substitute for providing discovery to a defendant.  Of course there is no statute that provides for or even suggests any such result, which would be antithetical to the rights afforded by the Constitution and statutes to criminal defendants in America.  To cure this omission, the government seeks to rely on *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008) and *United States v. Tounisi*, No. 13-CR-328, 2013 WL 5835770 (N.D. Ill. Oct. 30, 2013), two cases involving classified information, for the proposition that the government's discovery obligation is satisfied once defense counsel

obtains the discovery.  But neither case states or even hints at the proposition the government advances.  In *Terrorist Bombings*, the court determined that four items of classified information were ***not discoverable*** under Rule 16, 552 F.3d at 125, so in that limited circumstance the provision of three of the four items to defense counsel under the Classified Information Procedures Act ("CIPA") satisfied the government's discovery obligation because the information was not discoverable in the first instance. *Id.* at 126.  In *Tounisi*, also pursuant to CIPA, the court simply required that the government consider declassification of particular documents at defense counsel's request and noted that it would address any particular issues as they arose.

The government flicks away the fact that these two cases dealt with classified information where the protections for defendants contained in CIPA applied.  But that fact is both material and absent here.  Specifically, if classified information is discoverable the government must either produce it, propose substitutions acceptable to the court, or dismiss the case.  *See generally* 18 U.S.C. App'x 3 § 4 (outlining generally the possible procedural mechanisms for discovery of classified information); *see also* 18 U.S.C. App'x 3 § 6(a) (procedure for court determination of discoverability); 18 U.S.C. App'x 3 § 6(c) (alternative procedure using a substituted statement or summary); 18 U.S.C. App'x 3 § 6(e) (dismissal of all or part of the indictment or information).  Nor does *United States v. Rezaq*, 156 F.R.D. 514 (D.D.C. 1994), support what the government is arguing here.  In *Rezaq*, the court found that the classified information at issue was being sought to support legal defenses, not to rebut facts, and as such there was no reason to disclose that information to the defendant. *Id.* at 524.  That is not the fact situation here and the government knows it.

There are no statutes or case law to support the notion proffered by the government that defense counsel's access to non-classified discovery is a substitute for a defendant's access to discovery. Despite this fact, the government states that the discovery problem is solved because defense counsel can use the sensitive discovery at trial. *See* Opp. 15. This reasoning is faulty for several reasons. First, there is no statute or case law holding such. Second, the Protective Order prohibits defense counsel from even discussing the sensitive discovery with the Defendant, making it impossible for Concord to participate in its own defense. Third, defense counsel has no ability to assess the authenticity of or the evidentiary objections to the admission of any document without understanding from the Defendant facts regarding the creation, storage and transmittal of any such document. Fourth, defense counsel has no ability to identify potential defense witnesses who can address or rebut particular documents without the assistance of the Defendant. Finally, if the government introduces sensitive documents in evidence at trial those documents will then be known to all of the defendants anyway.

C. **THERE IS NO BURDEN ON DEFENDANT TO MAKE ANY SHOWING, LET ALONE PARTICULARIZED NEED, IN ORDER TO REVIEW THE ALLEGEDLY SENSITIVE DISCOVERY[4]**

Under any circumstances, including in this case, the government bears the burden of proof of establishing good cause as to each and every document to justify any restriction at all on the discovery materials. *See United States v. Johnson,* 314 F. Supp. 3d 248, 252 (D.D.C. 2018).[5] The suggestion that Concord must make a particularized showing has no support in any statute or

---

[4] The government accuses Concord of failing to make a particularized request, Opp. 4, 7, 17, but Concord was simply following the Court's instructions to litigate whether or not Mr. Prigozhin and other Russians were entitled to access to any sensitive discovery at all. *See* Transcript of November 16, 2018 Sealed Telephonic Conference at 25:10-13.

[5] Concord relied on *Johnson* in its Motion for this same proposition, *see* Mot. 9-12; the government entirely ignores the substance of this opinion.

case law, as is obvious by the government's failure to cite to any such statute or case law.  *See* Opp. 7.

In *Johnson*, the government sought a protective order for body-worn camera footage of an officer of the Metropolitan Police Department.  Judge Bates made it abundantly clear that where the government makes a showing of good cause for a protective order, the government still bears the burden of making a particularized showing wherever a claim under the protective order is challenged.  *See Johnson*, 314 F. Supp. 3d at 252.  Judge Bates further declined to " . . . rewrite Rule 16 . . ." by acquiescing to the government's request to shift the burden to the defendant to redact from the camera footage portions covered by the protective order.  *Id.* at 254.

The exact same situation exists here.  That is, the Court ordered protection for over 3 million items of discovery and defense counsel has requested disclosure of that discovery to the Defendant; and as such the burden is now on the government to make a particularized showing as to each item.  There is simply no case law in this circuit to the contrary.

Further, the government entirely ignores Concord's argument that the government itself has described some of the supposedly sensitive discovery in great detail in a public filing, yet the government has made no effort to re-designate those very same documents as non-sensitive. *See* Mot. 12-13.  Regardless of whether there are ongoing investigations that implicate some portion of the sensitive discovery (to which Concord cannot possibly respond because the government claims to have explained this in its *ex parte* submission), *see* Opp. 8, the government fails to explain why defense counsel cannot even discuss, much less disclose, particular documents that the government describes in a public filing, including identifying specific individuals who supposedly sent the documents, the date of those documents, specific dollar amounts contained in the documents, and even quoting from those documents.  *See* Dkt. 77-1 ¶¶ 21(a)-(j).

### D.     AT A MINIMUM, THE GOVERNMENT HAS GROSSLY OVER-DESIGNATED DISCOVERY AS SENSITIVE

Without providing any detail whatsoever about the actual data contained in the sensitive discovery, the government boldly states that all 3 million documents "implicate[] significant national security and law enforcement interests."  Opp. 6.  This cannot be true.

The government provides two alleged justifications for this unprecedented position.  First it says that the sensitive discovery identifies uncharged individuals and entities who are still engaging in interference.  That is certainly not the case for all 3 million documents.  Further, if this was a legal basis to withhold discovery from a defendant then the government could manipulate discovery in every conspiracy case by simply alleging the existence of unindicted co-conspirators.[6]  The unreported out-of-circuit case relied upon, *United States v. Fiel*, No. 10-CR-170-7-HEH, 2010 WL 3396803 (E.D.Va. Aug. 25, 2010), does not help.   *Fiel* involved investigative reports and intercepted communications, none of which is contained in the sensitive discovery in this case.   Moreover, the *Fiel* court did not deny the defendant access to the discovery.

Second, the government claims that the sensitive discovery identifies investigative sources and methods that must be kept secret.  This is certainly not apparent from the materials themselves, which appear to have been gathered through search warrants and subpoenas. Further, this cannot be true for all 3 million documents.  And, again, none of the cases cited by the government support restricting Defendant's access to 3 million documents in this case.  In *United States v. El-Mezain*, 664 F.3d 467, 518 (5th Cir. 2011), the government intercepted tens

---

[6] Despite its refusal to date to do so, the government is required by the law of this court to disclose to the Defendant the names of the unindicted co-conspirators.  *See, e.g., United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998); *United States v. Bazezew*, 783 F. Supp. 2d 160, 168-69 (D.D.C. 2011).

of thousands of Arabic language wire communications.  The government prepared English language summaries of the conversations relevant to the case, declassified those summaries and provided them to defense counsel and defendants.  *Id*.  This was a massive effort involving 9,600 communications.  *Id*.  The government also provided the remaining non-relevant conversations to defense counsel.  *Id*.  The only relevant issue on appeal was whether or not the trial court should have compelled the government to declassify the non-relevant intercepts so that the defendants could review them, and the court determined that was not required.  In *United States v. Yunis*, 867 F.2d 617 (D.C.Cir. 1989), both the trial court and the appellate court reviewed the classified information in question and determined it was not helpful to the defense.  In *United States v. Hausa*, 232 F. Supp. 3d 257 (E.D.N.Y. 2017), again involving classified information, the challenge was to the completeness of substitutions provided to the defense, and the defense could provide not a single example of how allegedly omitted information was relevant.

Here, again, there is no classified information, and the Court has not reviewed the discovery in question, the government has not argued that the discovery is not relevant, and the government has over-designated materials as sensitive and made no effort to propose any compromise position.

### E.    THE GOVERNMENT'S SOLUTION IS NO SOLUTION AT ALL

The government states that this discovery dispute is a "problem of Concord's own making," because Mr. Prigozhin has not voluntarily appeared in the United States, a country he has never set foot in and in which he has no business operations, to report to jail for an alleged conspiracy charge that has never been brought previously by the Department of Justice against any individual, whether foreign or U.S. national.  *See* Opp. 16.  The government's statement is both ridiculous and disingenuous.  It was the Special Counsel who decided to indict a Russian legal entity with no presence in the United States in addition to numerous individuals, none of

whom were within the reach of U.S. law enforcement.  Surely the Special Counsel was aware that Concord could appear through U.S. counsel because Congress has determined that a corporation, whether foreign or domestic, can appear in a criminal case through counsel only. Fed. R. Crim. P. 43(b)(1).  Further, surely the Special Counsel was also aware that no statute or case law requires a foreign corporation that appears through counsel in a criminal case to send a representative to the United States to review discovery. [7]  Any such requirement would have the practical effect of requiring a hostage in order for a legal entity to defend a criminal case.  Lastly, no statute or case law empowers the Court or the government to select which corporate representatives are permitted to review discovery.

Moreover, no Russian national can enter the United States for any purpose without a visa, 8 C.F.R. § 212.1 (visa documentation required); 8 C.F.R. § 217.2 (outlining visa waiver program not applicable to Russia), let alone for the purpose of viewing discovery in a criminal case with respect to which the government claims any disclosure will harm the national security of the United States.[8]  The current wait time for an interview to obtain for any such visa, which would never be granted, is approximately 300 days.  Ex. A, *Visa Appointment Wait Times*, U.S.

---

[7] Media reporting indicates that the Special Counsel was aware both that Concord could appear through counsel and that indicting Concord could result in Russians obtaining discovery.  For example, in November 2018, CNN reported that "[s]ome Justice Department lawyers raised concerns about charging [Concord], for fear it could force the government to share information in discovery that would end up with the Russians[,]" and that "[s]ome DOJ lawyers have groused that the Mueller team should have taken a less risky course by focusing the indictment against the Russian nationals, without the companies and entities.  That's because the individuals wouldn't likely respond to the charges and subject themselves to U.S. legal process[,]" adding that "[t]he behind-the-scenes doubts were discussed among Justice Department lawyers, some of whom were consulted by the Mueller team before the charges were brought."  Evan Perez, Pamela Brown, Sara Murray & Laura Jarrett, *Trump reviewing his answers to Mueller as he changes who oversees the Russia investigation*, CNN.com, Nov. 8, 2018, https://amp.cnn.com/cnn/2018/11/08/politics/trump-reviewing-answers-mueller/index.html.

[8] Imagine that visa interview.  *See* https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html#apply (visa application requires in-person interview for applicants aged 14-79).

Department of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/wait-times.html (last visited Feb. 19, 2019).  Assuming for purposes of argument that there is a Concord representative who is knowledgeable about the allegations in the Indictment and could obtain a visa in a year from now to enter the United States, that person would be subject to potential arrest and indictment and/or detention as a material witness, thus providing the government with its hostage.  Conversely, if a Concord representative having no knowledge of the allegations in the Indictment were to obtain a visa in a year from now, that person would be unable to assist in the defense because he would be prohibited, as is defense counsel, from discussing anything about the discovery with any Russian national who may have knowledge about the case.  As such, there can be no dispute that this is a problem solely of the Special Counsel's making.

### F.   THE ALLEGED MISHANDLING OF NON-SENSITIVE DISCOVERY

The government alleges that over 1,100 files contained on a now-inaccessible webpage match those produced as non-sensitive discovery, and then leaps to the conclusion that the non-sensitive discovery was "mishandled" and the person who posted the files was trying to undermine the Special Counsel.  *See* Opp. 8-13.  But the government's description of this event is both inaccurate and misleading.  The truth of this matter is as follows:[9]







████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

Moreover, the government's statement that "the person who created the webpage used their knowledge of the non-sensitive discovery to make it appear as though the irrelevant files contained on the webpage were the sum total evidence of 'IRA and Russian collusion' gathered by law enforcement in this matter in an apparent effort to discredit the investigation," candidly, is crazy. Only one entity could be harmed by an alleged hack of or leak from the non-sensitive discovery database, and that is Concord, not the Special Counsel. That is evidenced by the government using this alleged incident to support its effort from the outset of this litigation to deny the Defendant Concord access to the sensitive discovery.

Finally, none of this matters at all to the pending Motion because Concord has proposed a review mechanism that would completely prohibit access by any unauthorized person. *See* Ex. C (filed under seal).

### G.     THE CONSTITUTIONAL SAFEGUARDS THAT COMPEL RELIEF ARE UNADDRESSED BY THE GOVERNMENT

Concord's Motion identified the stakes at issue with respect to the prohibition on the Defendant's review in Russia of the discovery materials.   The Sixth Amendment, Equal Protection, and Due Process clauses all compel that Concord's employees should be permitted to review the discovery—without the burden and penalties extant to doing so in the United States—so that Concord can mount the defense the Constitution safeguards to all defendants, no matter their alleged crime or nationality.   To do otherwise would be to deprive the Defendant of counsel's full and fair participation in the preparation and trial of the case.   *See, e.g., Strickland v. Washington,* 466 U.S. 668, 691 (1984) (recognizing counsel's "duty to make reasonable investigations" in order to meet Sixth Amendment requirements for effective assistance); *Geders v. United States*, 425 U.S. 80, 88-91 (1976) (17-hour recess during which defendant was prohibited from talking to counsel "about anything" deprived defendant of his Sixth Amendment right to confer with counsel); *Herring v. New York*, 422 U.S. 853, 865 (1975) (denial of closing argument deprived defendant of Sixth Amendment right to full participation of counsel).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"   *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted).   To the extent the Protective Order presents an impediment to that defense—and it does under the government's construct—relief must be made available to meet constitutional demands.   *See Offutt v. United States*, 348 U.S. 11, 17 (1954) (the "fair administration of justice" requires the precept of neutrality); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (multiple unfair trial rulings deprived defendant of Due Process).   Remarkably, the government does not address this compulsion, but the guarantees remain and the prosecution has a duty to see that they are fulfilled.   *See Berger v. United States*, 295 U.S. 78, 87 (1935) (recognizing that government

prosecutors have a duty to see that "justice shall be done"); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802-03 (1987) (citing *Berger* and recognizing the need for disinterested prosecutors).

## H.   REVISED   PROPOSAL   FOR   DISCLOSURE   OF   SENSITIVE INFORMATION

The Defendant is providing as Exhibit C, under seal, a revised proposal for disclosure of sensitive discovery because of the objections lodged by the government to the initial proposal. Defendant has no objection to the government responding to this revised proposal only in writing in advance of the hearing scheduled for March 7, 2019.

## I.   CONCLUSION

Despite the burden placed on the government when it wants to restrict discovery in any manner, as noted in Concord's Motion and above, the government has borne no burden whatsoever in this case with respect to designating millions of pages of discovery as allegedly sensitive, or compromising in any way that satisfies Concord's constitutional rights to present a defense at trial.  Concord respectfully requests that the Court grant its Motion.

Dated:  February 20, 2019                    Respectfully submitted,

                                             CONCORD MANAGEMENT AND
                                             CONSULTING LLC

                                             By Counsel,

/s/*Eric A. Dubelier*
Eric A. Dubelier
Katherine Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com