**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION FOR A BILL OF PARTICULARS PURSUANT TO FED. R. CRIM. P. 7(f) AND INCORPORATED MEMORANDUM OF LAW**

Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this Motion and Memorandum of Law seeking an order directing the government to provide Defendant with a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).

## I.     Introduction

This case is a first of its kind, alleging that a foreign company with no presence in the United States conspired to defraud the United States by allegedly funding social media content directed at the 2016 American presidential election.  There is no allegation that the opinions expressed were *per se* false; nor would it be unlawful if they were.  Instead, according to the government, liability rests solely on the tenuous notion that foreign nationals are prohibited from making certain electioneering expenditures and under certain circumstances acting as foreign agents in the United States; and while it is not clear that Defendant Concord did either, the government claims Concord made it difficult for the Federal Election Commission and/or the Department of Justice to determine at the time whether Concord was violating any substantive

1

election or foreign agent registration statute or regulation.[1]  While providing no details about what the Concord corporate entity actually did, the Indictment simply states over and over again that the "Defendants and their co-conspirators" engaged in various acts, making it impossible to determine when and where the term "Defendants" includes Concord and who the co-conspirators are.

These vague and overly general allegations are insufficient to permit Concord to prepare adequately for trial.  First, the Indictment—which charges Concord only with conspiracy—references that Defendants (including Concord) conspired with persons "known and unknown to the Grand Jury," Indictment ¶¶ 2, 9, but fails to identify the names of these purported co-conspirators.   Second, the Indictment generally alleges that "Defendants and their co-conspirators" committed acts in furtherance of the alleged conspiracy, and the general assertion that Concord was the "primary source of funding" for its co-conspirators' alleged activities, and that Concord engaged in such vague pursuits as "recommend[ing] personnel and over[seeing] . . . activities," *id.* ¶ 11, but provides no details about what Concord actually did and when it did it.  Third, the Indictment does not identify a single employee of Concord who is alleged to have performed acts that would have bound Concord; and as to co-defendant Mr. Prigozhin, is devoid to any allegation about who or what he allegedly approved or supported. *Id.* ¶ 12.  Without more detail, Concord cannot defend itself at trial against allegations involving unknown co-

---

[1] This specific detail is not provided in the Indictment but was articulated in the government's Opposition to Defendant's Motion to Dismiss, Dkt. 56, 11 ("[T]he government will only have to prove that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the FEC or DOJ in a way that precluded those entities from ascertaining *whether* those substantive statutes were violated.  Thus, for example, if the government establishes that, had federal agents known of defendants' Russian affiliation—which the defendants deceptively concealed from the United States—those agents would naturally have initiated an investigation to ascertain whether the defendants were in fact complying with election-contribution or agent-registration laws, then the government has proved a Section 371 violation.") (emphasis original).

conspirators relating to unidentified social media accounts that it allegedly conspired to fund. Concord is entitled to this basic information under Rule 7(f).

To this point, the government has denied Concord's request for basic information on the sole ground that it is an improper attempt to preview the government's evidence. This is not the case. Rather, Concord, as a corporate defendant incapable of acting otherwise than through the actions of its employees and agents, is simply seeking to determine who did what, when, and where in order to assess whether any individual had requisite authority and, as such, may have bound or created liability for the corporate entity. As a corporate entity, Concord only possesses knowledge through those employees and agents who acted on its behalf. A bill of particulars is therefore necessary to provide Concord with the information needed to prepare its defense and avoid surprise at trial.

## II.    The Indictment

Concord was charged, along with several co-defendants, in one count of an eight-count Indictment on February 16, 2018. The only individual co-defendant allegedly connected to Concord is Mr. Prigozhin. *See* Indictment ¶ 12. The sum and substance of the conduct specifically alleged against Concord and Mr. Prigozhin is contained in the Indictment at ¶¶ 3, 11, and 12. No other indicted or identified conspirator is alleged to have been employed by Concord, and as such none could have bound the corporate entity.

Concord and Mr. Prigozhin are essentially alleged to have: (1) provided unspecified funding to co-defendant Internet Research Agency ("IRA"), ¶¶ 3, 35; (2) recommended unspecified personnel, overseen IRA operations in unspecified ways, and used multiple bank accounts, ¶ 11; (3) caused a person to hold a sign in front of the White House around Mr. Prigozhin's alleged birthday, ¶ 12; and (4) met with representatives of IRA, ¶¶ 13(a) and 14. None of these allegations inform Concord of the essential facts constituting a conspiracy to

defraud the United States as required by Fed. R. Crim. P. 7(c).  Nor do the allegations inform Concord of any actions specifically taken by its officers or employees.

### III.    Procedural Background

On April 11, 2018, undersigned counsel entered their appearances and sent a letter to the Special Counsel seeking a bill of particulars in response to a number of specific requests, all of which sought clarification of the allegations in the Indictment.  *See* Ex. A, April 11, 2018 Letter from E. Dubelier to J. Rhee.  On May 17, 2018, counsel for the government verbally indicated during an in-person meeting that the Special Counsel was unwilling to provide the requested information.  To be clear, the government provided no written response at all, nor did it provide a verbal response corresponding to the substance of any of the requests.  Thereafter, Concord sought and obtained an extension of time in which to file a motion for a bill of particulars.  Dkt. 13, 17.

Concord renewed its request for a bill of particulars on January 17, 2019, and asked that the Special Counsel provide a written response no later than January 22, 2019.  Ex. B, January 17, 2019 Email from K. Seikaly to J. Kravis.  The renewed request specified that Concord sought the materials identified in the April 11, 2018 letter, and specifically clarified (with citation to legal authority) that Concord was seeking the identity of all unindicted co-conspirators—a request that is commonly granted in this district.  *Id.*  In response, the government declined to provide any of the requested information, thus necessitating the instant motion.  Ex. C, January 22, 2019 Email from J. Kravis to K. Seikaly.  Again, the government provided no substantive written response—instead choosing to simply state that it was unwilling to provide anything at all.  Such a blanket denial is unlike what was provided in *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 145 (D.D.C. 2015), where a motion for bill of particulars was denied because "the government filed supplemental briefing providing . . . detailed information as to the

evidence produced to the defendants responsive to each of the seven categories identified in the defendants' motion."

The requests in Concord's letter generally fall into three broad categories.  First, Concord seeks the identity of all unindicted alleged co-conspirators referenced (but not identified) in the Indictment.  *See* Ex. A at ¶¶ 4, 6, 7, 9, 12, 15, 17, 18, 21, 28-50.  Second, Concord seeks the identification of the social media accounts and email addresses allegedly controlled by or posted by the alleged co-conspirators.  *See* Ex. A at ¶¶ 11, 32, 34, 36, 40, 41.  Third, the remainder of Concord's requests seek clarification of: (1) definitions, Ex. A at ¶¶ 2, 3, 5, 8, 10, 13, 14, 20, 42; (2) alleged expenditures, Ex. A at ¶ 35; (3) certain computer information, Ex. A at ¶¶ 39; and (4) the identities of other non-conspirators, Ex. A at ¶¶ 44, 49, 50.  As outlined below, this information is necessary for Concord to understand the charges against it and to present a full defense at trial, and falls squarely within the category of information that is an appropriate subject for a bill of particulars.

## IV.    Law

A bill of particulars "can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, prepare a defense, and perhaps also to be protected against retrial on the same charges."  *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).  The determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court.  *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006).  A bill of particulars is "especially appropriate" in cases where "portions of the indictment are difficult to follow," or are "particularly enigmatic and, without further elucidation, [a defendant] will be unable to effectively prepare his defense."  *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998); *see also United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006) (noting that a bill of particulars was appropriate in *Trie* because

of the "convoluted theory on which the defendant was indicted and the way in which the indictment was drafted").

A defendant is entitled to a bill of particulars "as of right" when the bill is necessary to allow him to understand the charges and prepare a defense, "even though what is needed is an identification, within reasonable limits, of information in the possession of the accused, or the furnishing of information which in other circumstances would not be required because [it is] evidentiary in nature." *United States v. U.S. Gypsum Co.*, 37 F. Supp. 398, 402-03 (D.D.C. 1941).  It is not sufficient for the government to respond to a bill of particulars by merely pointing to "the voluminous discovery already provided . . . ." *Anderson*, 441 F. Supp. 2d at 19.

## V.    Argument

This motion tracks the requests Concord made in its April 11, 2018 letter.  First, it seeks the identities of the unindicted co-conspirators referenced in the Indictment—a request courts in this district commonly grant in cases like this one that involve complex conspiracy allegations and non-violent conduct.  Second, Concord seeks an order directing the government to specify exactly which social media accounts and email addresses were allegedly controlled by those co-conspirators and form the basis of the allegations in the Indictment.  Finally, Concord seeks definitions for the undefined terms used in the Indictment, details about the vague expenditures referenced in the Indictment, information about specific computer identification data (such as VPNs), and the identities of individuals referenced in the Indictment who are not alleged to be co-conspirators.  All three of these categories of information fall within the scope of Rule 7(f), and the government should be directed to produce a bill responding to Concord's request before trial in this matter.

### A. This Court routinely orders the government to disclose the names of alleged unindicted co-conspirators

This court has routinely granted motions for bills of particulars where the defendant seeks the identities of unindicted co-conspirators. *See United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999); *Trie*, 21 F. Supp. 2d at 22 (granting motion for bill of particulars with respect to identities of unindicted co-conspirators); *United States v. Bazezew*, 783 F. Supp. 2d 160, 168-69 (D.D.C. 2011) (same); *United States v. Palfrey*, 499 F. Supp. 2d 34, 52 (D.D.C. 2007) (same); *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same); *United States v. Karake*, 281 F. Supp. 2d 302, 310 (D.D.C. 2003) (same); *United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979) (same).

Such requests in this court are generally only denied in violent crime cases where identifying the co-conspirators well in advance of trial raises witness safety concerns. *See, e.g., United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 176 (D.D.C. 2015). Even then, at some point the names must be revealed to the defendant. *See id*. Here, the Indictment alleges a conspiracy to defraud based on the use of social media—not a violent crime—and as such the information should be revealed. *See Palfrey*, 499 F. Supp. 2d at 52 (recognizing that courts in this jurisdiction order disclosure of unindicted co-conspirator's identities "particularly in cases alleging nonviolent offenses").

The broad conspiracy charged in the Indictment repeatedly includes various activities allegedly undertaken by "Defendants and their co-conspirators," which includes "others known and unknown to the Grand Jury." *See generally* Indictment ¶¶ 30-85; *id*. ¶¶ 2, 9. These "co-conspirators" are not identified in the Indictment, making it impossible for Concord to identify who was involved in the alleged conduct, and specifically whether the government alleges that Concord itself engaged in the specified conduct. *See id*. In situations involving broad and

complex conspiracy allegations, a bill of particulars is often the only way for a corporate defendant to identify individuals who performed acts attributed to the corporation and thus to help the defendant prepare for trial.  *See United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (noting that often it is not readily apparent from an indictment who performed acts attributed to a corporation and a bill of particulars is appropriate even when the defendant is the corporation itself); *but see United States v. Ford Motor Co.*, 24 F.R.D. 65, 67-68 (D.D.C. 1959) (denying bill of particulars sought by a corporate defendant because the case did not involve "a situation that deals with branches of corporations that are spread throughout the country or even over a few states" and there was sufficient detail in the indictment).  Given the circumstances here, to the extent that the "co-conspirators" referenced in the Indictment are officers, employees, or agents of Concord, it is inconceivable that the government would not have to provide that information.

In *Hsia*, the court recognized that "[g]iven the large number of acts attributed to co-conspirators in the indictment . . . Ms. Hsia's preparation for trial will be unnecessarily complicated without knowing which acts were performed by which co-conspirators."  *Hsia*, 24 F. Supp. 2d at 31 (citing *Trie*, 21 F. Supp. 2d at 21).  As such, the court ordered the government to identify, "for each relevant paragraph of the indictment, which co-conspirator performed the specified acts."  *Id.*  Moreover, the *Hsia* court ordered the government to reveal which corporate employees performed those acts attributed to an alleged corporate co-conspirator, *id.*, and to specify which lawful functions of a government agency (the Immigration and Naturalization Service) were allegedly impeded and how they were impeded.  *Id.* at 32; *see also United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979) (in broad-ranging conspiracy indictment against various high-ranking members of the Church of Scientology requiring government to identify

unindicted co-conspirators and provide overt acts by any unnamed co-conspirator that the government will prove at trial by which it alleges the defendants sought to commit the charged crimes) (citing *United States v. Baker*, 262 F. Supp. 657, 674 (D.D.C. 1966)); *see also Ramirez*, 25 F. Supp. 2d at 30 (in broad narcotics conspiracy requiring government to provide names of all alleged co-conspirators regardless of whether they will be called as trial witnesses); *Trie*, 21 F. Supp. 2d at 22 (in multi-year conspiracy with a large number of co-conspirators requiring government to immediately disclose the names of all unindicted co-conspirators); *Rogers*, 617 F. Supp. at 1028 (where indictment alleged that defendants committed the acts charged "together with others both known and unknown to the Grand Jury," finding defendants' request for identification of such persons to be proper, particularly where the government sought to hold defendants liable for the acts of the co-conspirators).  This is precisely the type of information Concord is requesting here.

Because Concord is a corporation, it is even more important for it to know the identities of those individuals who have allegedly acted on its behalf—because it possesses no knowledge independent of its agents, employees, and officers.  *See United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012) (in appeal of conviction based on pre-trial discovery issues, noting that "[a]n organization has no self-knowledge of its own conduct, since it acts through its agents, and must be afforded an opportunity to learn what of its employees' conduct is being used against it at trial").  Accordingly, it is necessary for Concord to learn this information, particularly because "[i]t is only by learning what statements can be attributed to it as an organization that a corporate defendant can defend itself at trial."  *Maury*, 695 F.3d at 248 (citing Fed. R. Crim. P. 16(A)(1)(C) Advisory Committee Notes to 1994 Amendments).

**B.**      **The identification of social media and email accounts is necessary to allow Concord to adequately prepare for trial**

The Indictment alleges that as part of the alleged conspiracy "Defendants and their co-conspirators . . . created hundreds of social media accounts," "thematic group pages on social media sites," and "registered and controlled hundreds of web-based email accounts hosted by U.S. email providers under false names so as to appear to be U.S. persons and groups." ¶¶ 32, 40. The Indictment identifies a total of fifteen social media accounts and group pages and two email addresses, but not the "hundreds" of accounts that the government alleges the Defendants created and used as part of the conspiracy. Without knowing precisely which social media accounts, group pages, and email accounts the government asserts were part of the alleged conspiracy, it will be impossible for Concord to prepare a defense against these allegations.

In light of the government's theory of liability in this unique case, these social media accounts and email addresses can be analogized to false statements. That is, the government claims that Defendants' alleged use of these allegedly fake social media accounts and email addresses were the "Manner and Means of the Conspiracy" and the way in which the Defendants allegedly defrauded the United States. *See* Indictment ¶¶ 29-58. In the context of false statement cases, case law in this district is clear that the government must specifically identify those false statements, and details such as what about them is false, who made them, approximately when they were made, and how the defendant caused them to be made. *Trie*, 21 F. Supp. 2d at 21; *see also United States v. Brown*, No. 07-75, 2007 WL 2007513, at *16 (D.D.C. July 9, 2007) (granting defendants' motion for a bill of particulars "such that Defendants shall be on notice of the specific alleged actions and specifically worded false statements on which the Government shall rely in proving its case"); *Anderson*, 441 F. Supp. 2d at 19-21 (concluding that a defendant "is entitled to know precisely which allegedly false statements the

government relies on in each paragraph, the way in which the government alleges them to be false, and when *approximately* they were allegedly made"). This is because a "defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide that information." *Trie,* 21 F. Supp. 2d at 21. The reasoning is equally applicable here. Concord should not be forced to waste time guessing which social media or email accounts the government contends support the allegations in the Indictment, when the government knows precisely those accounts on which it relies. Furthermore, in order to allow Concord to prepare for trial, the government should inform Concord to whom the social media account allegedly belonged.

### C.    This Court should order the government to respond to the remainder of Concord's requests

The government should also be ordered to provide definitions for the undefined terms used in the Indictment, details about the vague expenditures referenced in the Indictment, information about specific computer identification data (such as VPNs), and the identities of individuals who are not alleged to be co-conspirators (such as a volunteer for the Trump campaign, "real U.S. persons," and "Campaign Officials"). Each of these categories of information will similarly allow Concord to adequately prepare for, and avoid surprises at, the trial in this matter.

Definitions are appropriate subjects of a bill of particulars motion, especially when the terms can be characterized as "unnecessarily vague." *Hubbard*, 474 F. Supp. at 80. Here, Concord has sought clarity about the terms used in the Indictment—vague terms such as "improper foreign influence," "political activities," "interfere with elections and political

processes," "impairing," "interfering," "computer infrastructure," "strategic goal to sow discord," "derogatory information," disparaging," "certain domestic activities," "interference operations," and "approved and supported." *See generally*, Ex. A.  These terms have no legal meaning, and by virtue of their inclusion in the Indictment, they force Concord to speculate what their meaning might be.

With respect to expenditures, the language of the Indictment creates confusion over what this legal term means.  The term "expenditure" has a specific definition as used in the Federal Election Campaign Act ("FECA"), *see id.* ¶ 25, but the government uses the same term to refer to payments made to "promote ORGANIZATION-controlled social media groups," *id.* ¶ 35, funding of both "political ***and social*** advertisements," *id.* ¶ 58 (emphasis added).  Not all of these references include alleged violations of FECA.  In order to adequately prepare for trial—and to know which alleged "expenditures" allegedly interfered with a government function and for what reason—more detail is necessary.  Moreover, to the extent that Concord is alleged to have been the "source of funding" for these expenditures, *id.* ¶ 11, it needs more detail in order to adequately respond to the charges.

Finally, computer information including VPNs, Indictment ¶ 39, and the identities of non-conspirators including the volunteer for the Trump campaign, *id.* ¶ 54, the "real U.S. persons," *id.* ¶ 55, and the "Campaign Officials," *id.* ¶¶ 76, 78, 79, are necessary to allow Concord to prepare for trial.  This information is similar to the information that was ordered to be disclosed in *Trie*, where this Court required the government to provide "further elucidation" about the "particularly enigmatic" terms of the indictment.  21 F. Supp. 2d at 21.  In *Trie*, like in this case, the indictment was long and complicated, involved a large number of individuals (including some that the defendant never interacted with and thus could not identify), and the

information in the indictment required the defendant to "guess[]" which portions of the discovery were relevant to the charges. *Id.* In those circumstances, this Court required the government to provide additional detail which would allow the defendant to effectively prepare for trial; the same result is appropriate here.

### VI. Conclusion

In seeking the particulars of the allegations in the Indictment, Concord is not asking that the government explain the manner in which it will prove its allegations, but rather for an explanation of the allegations themselves so as to allow it to prepare a defense and avoid surprise at trial. For the reasons set forth above, Concord respectfully requests that the Court direct the Special Counsel to prepare a bill of particulars setting forth the information requested in Exhibit A.

Dated:  March 4, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/*Eric A. Dubelier*
Eric A. Dubelier
Katherine Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

# EXHIBIT A



Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA 22102-5979
Tel +1 703 641 4200
Fax +1 703 641 4340
reedsmith.com

**Eric A. Dubelier**
Direct Phone:  +1 202 414 9291
Email:  edubelier@reedsmith.com

April 11, 2018

**Via Electronic Mail**

Jeannie Sclafani Rhee
United States Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue, NW
Washington, DC  20005

**Re:** _United States v. Concord Management and Consulting, LLC, Case Number 1:18-cr-00032-DLF_

Dear Ms. Rhee:

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, we hereby request on behalf of our client Concord Management and Consulting LLC ("Concord") that the Government provide a Bill of Particulars in response to the requests set forth below (paragraph numbers refer to the paragraphs in the above-noted Indictment).

1.     With respect to the charged and captioned Defendant "Concord Catering," (a) the date of incorporation, (b) the location of incorporation, (c) the name(s) of the incorporators.

2.     With respect to ¶ 1, define: (a) "improper foreign influence," (b) "political activities."

3.     With respect to ¶ 2, define: (a) "interfere with elections and political processes," (b) "impairing, obstructing and defeating the lawful functions of the government," and (3) "interfering with the U.S. political and electoral processes."

4.     With respect to ¶ 2, identify by name all alleged conspirators known to the government.

5.     With respect to ¶ 3, define: "significant funds," and (b) "to further the Organization's operations."

6.     With respect to ¶ 3, identify by name the "other uncharged Organization employees."

7.     With respect to ¶ 4, identify by name the Defendants and co-conspirators who engaged in this alleged activity.

8.     With respect to ¶ 5, define: (a) "computer infrastructure," and (b) "collecting intelligence."

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

EME_ACTIVE-568996521.1



9.      With respect to ¶ 5, identify by name all Defendants and conspirators who "hid[ ] the Russian origin of their activities to avoid detection by U.S. regulators and law enforcement."

10.      With respect to ¶ 6, define: (a) "strategic goal to sow discord in the U.S. political system," (b) "derogatory information," (c) "disparaging Hillary Clinton."

11.      With respect to ¶ 6, identify all alleged political advertisements, political rallies, compensation to real U.S. persons, unwitting individuals associated with the Trump Campaign, and political activists.

12.      With respect to ¶ 7, identify all Defendants and conspirators who were required to provide regulatory disclosure and/or register as foreign agents.

13.      With respect to ¶ 9, define: "certain domestic activities."

14.      With respect to ¶ 11, define: (a) "related Russian entities," (b) "primary source of funding," (c) "interference operations."

15.      With respect to ¶ 11, specifically identify all: (a) funds provided, (b) personnel recommended, and (c) activities overseen.  Further identify the names of each individual acting for or on behalf of Defendant Concord who allegedly engaged in these alleged activities.

16.      With respect to ¶ 11, identify all criminal statutes that prohibit "interference operations," as alleged.

17.      With respect to ¶ 11a, identify all of the "multiple components" of the alleged "Project Lakhta," and identify every Defendant, conspirator or other person who engaged in the alleged activity on behalf of Concord.

18.      With respect to ¶ 11b, identify every Defendant, conspirator or other person who engaged in the alleged activity on behalf of Concord; and identify specifically who was paid funds and/or bonuses.

19.      With respect to ¶ 11c, provide bank names and account numbers for each of the listed entities.  Further, provide the place and date or incorporation and the names of the incorporators for each of the listed entities.

20.      With respect to ¶ 12a, define: "approved and supported," and clarify whether it is alleged that Defendant Prigozhin engaged in such conduct on behalf of Defendant Concord.

21.      With respect to ¶ 12b, identify the "real U.S. person," identify the specific Defendant or conspirator who communicated with the "real U.S. person," provide the dates and times of any such communications, identify the Defendant or conspirator who stated "is a leader here and our boss . . . our funder," and clarify whether it is alleged that any such communications were made on behalf of Defendant Concord.

April 11, 2018
Page 3

22.      With respect to ¶¶ 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, identify each any every communication between the named Defendants and either Defendant Concord, or any owner, officer, employee and/or agent thereof.

23.      With respect to ¶¶ 25, 26, 27, identify the statute and regulations that support the allegations.

24.      With respect to ¶ 25, state whether it is alleged that Defendant Concord, or any owner, officer, employee or agent thereof, violated the FECA statute or related regulations, and if so, how.

25.      With respect to ¶ 26, state whether it is alleged that Defendant Concord, or any owner, officer, employee or agent thereof, violated the FARA statute or related regulations, and if so, how.

26.      With respect to ¶ 27, state whether it is alleged that Defendant Concord, or any owner, officer, employee or agent thereof, violated any statute or related regulations related to the issuance of visas, and if so, how.

27.      With respect to ¶ 28, identify all statutes and regulations that prohibit "impairing, obstructing and defeating the lawful governmental functions of the United States . . . [by] interfer[ing] with U.S. political and electoral processes."

28.      With respect to ¶¶ 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58: specifically identify for each and every allegation the name of the owner, officer, employee or agent of Defendant Concord who engaged in and/or had contemporaneous knowledge of the alleged activity.

29.      With respect to ¶ 29, identify all "group(s)," and identify all persons who engaged in the alleged activity.

30.      With respect to ¶ 30d, identify the co-conspirator.

31.      With respect to ¶ 31, identify the "real U.S. person," and identify all persons who engaged in the alleged activity.

32.      With respect to ¶ 32, identify all "social media accounts," and identify all persons who engaged in the alleged activity.

33.      With respect to ¶ 33, identify the person(s) who provided the alleged instructions and directions.

34.      With respect to ¶ 34, identify all "thematic group pages," and identify all persons who engaged in the alleged activity.

35.      With respect to ¶ 35, identify all alleged expenditures, including but not limited to the dates and amounts, and identify all persons who engaged in the alleged activity.

April 11, 2018
Page 4

36.     With respect to ¶ 36, identify all alleged Twitter accounts, and identify all persons who engaged in the alleged activity.

37.     With respect to ¶ 37, identify all persons who engaged in the alleged activity.

38.     With respect to ¶ 38, identify all persons who provided the alleged "feedback and directions."

39.     With respect to ¶ 39, identify all alleged "VPNs," and identify all persons who engaged in the alleged activity.

40.     With respect to ¶ 40, identify all alleged "web-based email accounts," and identify all persons who engaged in the alleged activity.

41.     With respect to ¶ 41, identify all alleged PayPal accounts, and identify all persons who engaged in the alleged activity.

42.     With respect to ¶ 42, define, "began to monitor," and identify all persons who engaged in the alleged activity.

43.     With respect to ¶¶ 43, 43a, 43b, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, provide all instances of the alleged activity and identify all persons who engaged in the alleged activity.

44.     With respect to ¶ 54c, identify the volunteer for the Trump campaign.

45.     With respect to ¶¶ 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85: specifically identify for each and every allegation the name of the owner, officer, employee or agent of Defendant Concord who engaged in and/or had contemporaneous knowledge of the alleged activity.

46.     With respect to ¶¶ 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85: identify all persons who engaged in the alleged activity.

47.     With respect to ¶ 59, identify the statute that prohibits the "illegal object."

48.     With respect to ¶ 70, identify "T.W."

49.     With respect to ¶¶ 53, 65, 72, 73, 74, 77, 80, 81, 82, 84: identify the "real U.S. person(s)".

50.     With respect to ¶¶ 76, 78, 79, identify the "Campaign Official 1," "Campaign Official 2," and "Campaign Official 3."

51.     With respect to ¶ 85, identify the offense that Defendants allegedly conspired to violate.

**Reed**Smith

April 11, 2018
Page 5


      In light of the requirement in Federal Rule of Criminal Procedure 7(f) that a motion for a bill of particulars must be filed before or within 14 days after arraignment, we kindly request a response by April 18, 2018.

Very truly yours,

Eric A. Dubelier

# EXHIBIT B

| From: | Seikaly, Kate J |
|---|---|
| Sent: | Thursday, January 17, 2019 2:08 PM |
| To: | Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov) |
| Cc: | jsr@usdoj.gov; lra@usdoj.gov; Alpino, Heather (NSD) (JMD); Rakoczy, Kathryn (USADC); Curtis, Deborah (USADC) |
| Subject: | Concord |
| Attachments: | April 11 Request for Bill of Particulars.PDF |

Jonathan,

On April 11, 2018, we sent the attached letter requesting a bill of particulars.  On May 17, 2018, Ms. Rhee stated that the government would not be providing any of the information requested.  Nevertheless, we request a written response to our letter and specifically an explanation of your position as to whether or not we are entitled to the information requested.

To avoid any confusion, our request related to paragraph 2 of the Indictment for the names of all alleged conspirators known to the government is intended as a request for the identity of all unindicted co-conspirators.  As you know, it is the practice of courts in this district to grant requests for this information.  *See, e.g.*, *U.S. v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979); *U.S. v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998); *U.S. v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999); *U.S. v. Karake*, 281 F. Supp. 2d 302, 310 (2003); *U.S. v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004).

Given that we sent our request more than eight months ago, we would appreciate a written response by 5 pm on Tuesday, January 22.

Thanks,
Kate


**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

# EXHIBIT C

| From: | Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov> |
|---|---|
| Sent: | Tuesday, January 22, 2019 4:00 PM |
| To: | Seikaly, Kate J |
| Cc: | jsr@usdoj.gov; lra@usdoj.gov; Alpino, Heather (NSD) (JMD); Rakoczy, Kathryn (USADC); Curtis, Deborah (USADC) |
| Subject: | RE: Concord |

Hi Kate,

Thank you for bringing this matter to my attention.  We do not intend to provide a bill of particulars.  The indictment states the charges with sufficient precision to allow Concord to understand the charges, prepare a defense, and avoid retrial on the same charges.  The categories of information requested in your letter appear designed to preview the government's evidence, which is not the purpose of a bill of particulars.

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
202-252-6886

From: Seikaly, Kate J <KSeikaly@ReedSmith.com>
Sent: Thursday, January 17, 2019 2:08 PM
To: Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>
Cc: jsr@usdoj.gov; lra@usdoj.gov; Alpino, Heather (NSD) (JMD) <Heather.Alpino@usdoj.gov>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Curtis, Deborah (USADC) <DCURTIS4@usa.doj.gov>
Subject: Concord

Jonathan,

On April 11, 2018, we sent the attached letter requesting a bill of particulars.  On May 17, 2018, Ms. Rhee stated that the government would not be providing any of the information requested.  Nevertheless, we request a written response to our letter and specifically an explanation of your position as to whether or not we are entitled to the information requested.

To avoid any confusion, our request related to paragraph 2 of the Indictment for the names of all alleged conspirators known to the government is intended as a request for the identity of all unindicted co-conspirators.  As you know, it is the practice of courts in this district to grant requests for this information.  *See, e.g.*, *U.S. v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979); *U.S. v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998); *U.S. v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999); *U.S. v. Karake*, 281 F. Supp. 2d 302, 310 (2003); *U.S. v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004).

Given that we sent our request more than eight months ago, we would appreciate a written response by 5 pm on Tuesday, January 22.

Thanks,
Kate

Kate Seikaly
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | CRIMINAL NUMBER: |
| v. | | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | | |
| Defendant. | | |

**PROPOSED ORDER**

Upon consideration of Defendant Concord Management and Consulting LLC's Motion for a Bill of Particulars Pursuant to Fed. R. Crim. P. 7(f) and Incorporated Memorandum of Law, any opposition thereto, it is hereby

ORDERED that the motion is GRANTED,

IT IS FURTHER ORDERED that the government shall provide a Bill of Particulars responding to each request set forth in Exhibit A to the Motion.

_____          _____
Date                                                              DABNEY L. FRIEDRICH
                                                                      United States District Judge