UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>**Defendant.** | **Crim. No. 18-CR-32-2 (DLF)**<br><br>**FILED UNDER SEAL** |

## GOVERNMENT'S MOTION FOR STATUS HEARING

The United States of America respectfully requests that the Court schedule a hearing on the motion of defendant Concord Management and Consulting LLC regarding sensitive discovery. Since the last hearing on this motion, the parties have made substantial progress toward devising a means by which Concord officers and employees could come to the United States to view a subset of the sensitive discovery. However, the parties have not been able to reach agreement on one significant issue, namely whether the defense should be permitted to discuss the substance of the sensitive discovery with individuals in Russia. Accordingly, the government requests that the Court schedule a hearing on this issue at its earliest convenience so that the parties can move forward on this matter.

**The March 7 Motions Hearing**

On June 29, 2018, the Court entered a protective order in this matter. Dkt. No. 42-1. The protective order provides, among other things, that discovery designated as sensitive by the government shall be disclosed only to United States defense counsel in the first instance. *Id.* ¶ 11. Sensitive discovery may not be transported outside the United States and may not be viewed outside the U.S. offices of Reed Smith without permission of the Court. *Id.* ¶¶ 14-15. The Court

1

found that these restrictions on the dissemination of sensitive discovery were supported by good cause shown.  Dkt. No. 42, at 3.

On December 20, 2018, Concord filed a motion requesting approval to disclose sensitive discovery to its officers and employees, Dkt. No. 77, which the government opposed, Dkt. No. 94.  On March 7, 2019, the Court held a hearing on the motion.  At that hearing, the government argued that the restrictions on the dissemination of sensitive discovery should remain in place based on the government's showing of good cause.  In particular, the government argued that allowing foreign nationals to review the entirety of the sensitive discovery would implicate significant national security interests.  As the government explained, an individual who had access to the entirety of the search warrant returns in the sensitive discovery could use that material to recreate the investigative measures by which the sensitive discovery was obtained.  Tr. 3/7/19, at 11:12.  In the hands of a foreign adversary, that information could be used to avoid detection in the future.  *Id.* at 11:17.

Because the government's national security interests relate principally to the information that can be gleaned from viewing the returns and the sensitive discovery as a whole, large portions of the sensitive discovery can be shown to Concord officers and employees under the right circumstances without violating those interests.  As the Court noted, this goal could be accomplished by removing a subset of non-relevant documents from the sensitive discovery and allowing Concord officers and employees to view the remainder.  *Id.* at 18:2-7; *id.* at 21:3-10.

As the government repeatedly emphasized at the hearing, that review of a subset of the sensitive discovery by officers and employees of Concord should be conducted pursuant to the restrictions on the dissemination of sensitive discovery set forth in the protective order.  *Id.* at 22:8-17; *see also id.* at 26:17-21 ("I think…that we would be able to work with the Court, work

2

with defense counsel to identify categories of documents within the sensitive discovery that could be shown to officers and employees of Concord under the restrictions and limitations that are set forth in the protective order."); *id.* at 35:3-6 ("It would be our understanding, of course, that officers and employees of Concord who are viewing the sensitive discovery are signing the memorandum of understanding.  They are subjecting themselves to the Court's jurisdiction."); *id.* at 45:9-13 ("What we are saying is that there…is material within the sensitive discovery— just about all of it, in fact—that can be viewed by Concord officers and employees under the restrictions on the viewing of sensitive information in the protective order.").

Those restrictions include the requirement that the sensitive discovery materials be viewed in the United States offices of Reed Smith.  *Id.* at 22:18-23; Dkt. No. 42-1 ¶¶ 15, 18. Those restrictions also include the provisions of the protective order that prohibit individuals who view the sensitive discovery, including the officers and employees of Concord who come to the United States, from discussing the content of that discovery outside the defense team without prior permission of the Court.  Dkt. No. 42-1 ¶¶ 12, 15.

After hearing the arguments of the parties, the Court concluded that review of a portion of the sensitive discovery by Concord officers and employees at the U.S. offices of Reed Smith "seems like…a workable solution."  *Id.* at 67:1-2.  The Court directed the parties to "spend some time talking about whether this is feasible."  *Id.* at 67:7.

After the Court gave this instruction, the defense raised another issue—whether defense counsel could "talk to Mr. Prigozhin about the" contents of the sensitive discovery.  *Id.* at 68:3. The Court responded as follows:

> I don't envision this being the end of the firewall process.  I do
> think that you're going to continue to press on Prigozhin.  But
> we're going to be looking at a much narrower set of documents, I

>hope, at that point, and I will have to consider and weigh those interests.
>
>But I don't want to do it, as I must now, with respect to 3.2 million documents, some of which are national security, some of which are personal information, some of which are law enforcement. I need more information to do that. Once we've whittled these documents down, the government will be able to tell me better, this is why we don't want this document discussed with him. And we will have to litigate that before firewall counsel.

*Id.* at 68:8-20. The Court further clarified that it was directing the parties to "get together and work out an agreement where two or three Concord officers or employees can come here and look at the documents," and "once that's happened" the defense could return to the Court "to say, That's not good enough, I need my client to see documents A, B, C, and D[,] [a]nd so the burden is on you at that point." *Id.* at 69:12-16.

**Post-Hearing Discussions**

Since the hearing, the government has been working diligently with defense counsel to fulfill the Court's instruction to "work out an agreement where two or three Concord officers or employees can come" to the United States offices of Reed Smith to review a portion of the sensitive discovery. *Id.* The government has agreed to identify a small subset of irrelevant material in the sensitive discovery to be removed from the set that is reviewed by the Concord employees who come to the United States. The government has further agreed that the defense's document vendor will create a separate database that will allow the Concord employees who come to the United States to review that subset of the sensitive discovery without having access to the entirety of the sensitive discovery. This protocol reflects significant concessions by the government.

4

However, the parties continue to disagree about the issue raised by the defense at the conclusion of the March 7 hearing, namely the transmission of information about the content of sensitive discovery to individuals in Russia.  The defense has advised the government that defense counsel would like to begin speaking immediately with individuals in Russia about the content of the sensitive discovery.  The defense has further advised that it believes the Concord employees who come to the United States to view a subset of the sensitive discovery should be permitted to discuss the content of the sensitive discovery with individuals in Russia upon their return.

The government opposes these requests at this time.  As the Court stated at the hearing, the first step in this process is to "work out an agreement where two or three Concord officers or employees can come" to the United States offices of Reed Smith to review a portion of the sensitive discovery.  *Id.* at 69:6-8.  That first step would begin to address defense counsel's stated need to discuss portions of the sensitive discovery with Concord officers and employees. Dkt. No. 77, at 6 ("Concord's officers and employees possess a critical first-hand understanding of its own business activities, and their input and insight about both is necessary for Concord to adequately prepare a defense."); *id.* at 7 ("[T]he only way to get fully accurate translations and prepare for trial is to speak to the individuals who allegedly wrote the documents.").  As the Court explained, once defense counsel has conferred with the Concord officers and employees who come to the United States about the contents of the sensitive discovery, then the defense can argue to the Court (through firewall counsel if necessary) that the defense still needs to show some documents to individuals in Russia. Tr. 3/7/19, at 69:12-16.  As the government argued at the hearing, simply allowing defense counsel or the Concord officers or employees who come to the United States to communicate with individuals in Russia about the content of the entirety of

the sensitive discovery at this stage would unduly risk the national security interests articulated by the government. *Id.* at 31:2-21.[1]

For these reasons, the government requests that the Court schedule a status hearing to address Concord's request to disclose information about the content of the sensitive discovery to individuals in Russia at this stage. Once that issue is resolved, the government expects that the parties will be able to devise a protocol for the review of a subset of the sensitive discovery by Concord employees at the U.S. offices of Reed Smith.

Respectfully submitted,

| | |
|---|---|
| ROBERT S. MUELLER, III<br>Special Counsel | JESSIE K. LIU<br>United States Attorney |
| By: /s/<br>Jeannie S. Rhee<br>L. Rush Atkinson<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530<br>Telephone: (202) 616-0800 | By: /s/<br>Jonathan Kravis<br>Deborah Curtis<br>Kathryn Rakoczy<br>555 Fourth Street NW<br>Washington, D.C. 20530<br>Telephone: (202) 252-6886 |

---

[1] As the government recognized at the hearing, the Concord officers or employees who come to the United States to view the sensitive discovery would likely return to Russia, where they would be beyond the jurisdiction of the Court to enforce the terms of the protective order. Tr. 3/7/19, at 30:9-20. That situation creates the risk that those individuals would discuss the content of the sensitive discovery with others in Russia upon their return, in violation of the protective order. *Id.* at 30:21-23. However, the risk that some individuals might violate the protective order does not justify abandoning the restrictions imposed by the protective order altogether. On the contrary, the Concord officers and employees who come to the United States should be required to abide by the terms of the protective order, including the prohibition on the dissemination of information about the content of the sensitive discovery to individuals outside the United States defense team without prior permission of the Court.

JOHN C. DEMERS
Assistant Attorney General for National Security

By: /s/
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

# CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2019 I caused a copy of the foregoing supplemental filing to be transmitted to Katherine Seikaly and Eric Dubelier, counsel of record for Concord Management and Consulting LLC, via email.

By: /s/
Jonathan Kravis
Assistant United States Attorney
555 Fourth Street NW
Washington D.C. 20530