1                BEFORE THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF COLUMBIA

3    UNITED STATES OF AMERICA,          .
                                        .  Case Number 18-CR-32
4            Plaintiff,                 .
                                        .
5        vs.                            .
                                        .  Washington, D.C.
6    CONCORD MANAGEMENT AND             .  March 7, 2019
     CONSULTING LLC,                    .  10:10 a.m.
7                                       .
             Defendant.                 .
8    - - - - - - - - - - - - - - - -

9              PUBLIC TRANSCRIPT OF MOTION HEARING
                    (SEALED PORTIONS REDACTED)
10         BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                   UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
     For the Government:              JEANNIE S. RHEE, AUSA
13                                    LAWRENCE RUSH ATKINSON, AUSA
                                      U.S. Department of Justice
14                                    Special Counsel's Office
                                      950 Pennsylvania Avenue NW
15                                    Washington, D.C. 20530

16                                    JONATHAN I. KRAVIS, AUSA
                                      U.S. Attorney's Office
17                                    555 Fourth Street NW
                                      Washington, D.C. 20530
18
     For the Defendant Concord
19   Management and Consulting LLC:   ERIC A. DUBELIER, ESQ.
                                      Reed Smith LLP
20                                    1301 K Street NW
                                      Suite 1000, East Tower
21                                    Washington, D.C. 20005

22                                    KATHERINE J. SEIKALY, ESQ.
                                      Reed Smith LLP
23                                    7900 Tysons One Place, Suite 500
                                      McLean, Virginia 22102

24

25

1    Official Court Reporter:          SARA A. WICK, RPR, CRR
                                       U.S. Courthouse, Room 4704-B
2                                      333 Constitution Avenue N.W.
                                       Washington, D.C. 20001
3                                      202-354-3284

4

5    Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2        (Call to order of the court.)

 3             THE COURTROOM DEPUTY:  Criminal Action 18-32, United

 4   States of America versus Concord Management and Consulting LLC.

 5        Counsel, please come forward and identify yourselves for

 6   the record.  Thank you.

 7             MR. KRAVIS:  Good morning, Your Honor.  Jonathan

 8   Kravis on behalf of the United States.

 9             THE COURT:  Good morning, Mr. Kravis.

10             MR. KRAVIS:  With me at counsel table are Jeannie Rhee

11   and Rush Atkinson, also on behalf of the United States.

12             THE COURT:  Good morning.

13             MR. DUBELIER:  Good morning, Your Honor.  Eric

14   Dubelier and Katherine Seikaly for Concord Management and

15   Consulting.

16             THE COURT:  Good morning, Mr. Dubelier and

17   Ms. Seikaly.

18        All right.  We are here for argument on Concord's motion

19   for approval to disclose sensitive discovery materials to

20   Concord's officers and employees for purpose of preparing for

21   trial.

22        Earlier this week, Concord filed a motion for bill of

23   particulars.  The government has not yet had an opportunity to

24   respond to that motion, and the briefing will not be complete

25   for some time.  At the conclusion of this hearing, I will talk
```

1       about setting a date for argument on that motion.

2           In June of 2018, when I entered the protective order in

3       this case, I found at that time that the government had

4       demonstrated good cause for restricting discovery based on

5       important national security, law enforcement, and privacy

6       concerns.  But I made clear then that I would revisit the scope

7       of the protective order once the parties had litigated pretrial

8       motions and a trial date had been set.

9           I have now ruled on almost all of Concord's pretrial

10      motions.  With the input of the parties, I would like to set a

11      trial date once I've ruled on Concord's remaining motions.

12          Since the protective order was entered, Concord has made

13      several requests to disclose discovery to individuals outside

14      the Concord defense team, including to its officers and

15      employees.  Concord has also requested to take sensitive

16      discovery documents to Russia.

17          I did not address these specific requests while Concord was

18      litigating pretrial motions that challenged the authority of the

19      Special Counsel to bring this case and the legal sufficiency of

20      the indictment.  But now that I've ruled in the government's

21      favor on these pretrial motions, I did invite Concord to argue

22      the instant motion in open court, because it is no secret that

23      Concord seeks to share discovery with Concord officers and

24      employees.

25          I have read the parties' briefs.  I have a number of

1    questions for both sides, some of which will need to be handled

2    in a sealed proceeding.  Both parties have filed information

3    under seal, and the government has submitted information ex

4    parte.  If at any point either side believes that our discussion

5    is touching on sealed or sensitive matters, please speak up.  My

6    goal here is to address as much as we can in open court, but

7    there are matters that we will need to address in a sealed

8    proceeding following this hearing.

9         Before I hear from Mr. Dubelier, I would first like to get

10   an update from the government about discovery and the status of

11   it.  Mr. Kravis, will you be speaking for the government?

12             MR. KRAVIS:  Yes, Your Honor.

13             THE COURT:  All right.  Can you summarize for me the

14   discovery that's been provided to date?  I understand from

15   defense counsel that there's roughly 4 million documents, I

16   believe, in total that have been provided to defense counsel.

17        Is that correct?

18             MR. KRAVIS:  I believe that number is approximately

19   correct, Your Honor, yes.

20             THE COURT:  And of that number, as I understand it,

21   the government has designated roughly 3.2 million of those

22   4 million documents as sensitive; is that correct?

23             MR. KRAVIS:  That is correct.  What I would say about

24   that is, the government has designated those documents as

25   sensitive because the government believes that there are

1    national security and law enforcement interests at stake in the

2    entirety of those accounts, or those accounts viewed as a whole.

3        The government's position is not that every single document

4    within those accounts is -- necessarily has to be limited to

5    defense counsel's eyes only.  But the government has designated

6    the entirety of those accounts as sensitive because the

7    government believes that the disclosure of an entire account

8    and, in addition, multiple entire accounts viewed side by side

9    would implicate important law enforcement and national security

10   interests.  And that's why the government entered into that

11   designation.

12       I say that only because I do not want to give the Court the

13   misimpression that the government believes that every single

14   document or piece of paper that has been produced under the

15   label of "sensitive discovery" necessarily has to be limited to

16   defense counsel's eyes only.  That's not our position.

17           THE COURT:  I understand.  But the current protective

18   order places tight restriction on roughly 3.2 million documents,

19   and that is that foreign nationals cannot access them.  They

20   cannot be transported outside the U.S.  They must be stored at

21   Reed Smith, and Reed Smith attorneys or employees must supervise

22   the review of these materials, absent a court order.

23           MR. KRAVIS:  Absent further order of the Court, yes,

24   Your Honor.

25           THE COURT:  In contrast, with respect to the

1    nonsensitive discovery materials, which are roughly 800,000, no

2    limitations have been placed on those, except that they may be

3    used only to defend this case; correct?

4          MR. KRAVIS:  That is correct.

5          THE COURT:  All right.  In your opposition, you

6    indicate that an investigation reveals that some of the

7    nonsensitive discovery materials were altered and disseminated

8    on the Internet as a part of a disinformation campaign aimed at

9    discrediting ongoing investigations.

10         Concord disputes this allegation in its reply, most of

11   which Concord has filed under seal, which I will address in the

12   sealed proceeding following this hearing.

13         Previously, I think Ms. Rhee had indicated at some point

14   that the government had also provided Concord's defense team

15   with roughly 4- or 500 key documents; is that correct?

16         MR. KRAVIS:  That is correct.  We have produced a key

17   documents collection that comes from the sensitive discovery,

18   and then we have also produced a key documents collection that

19   reflects key documents in the nonsensitive discovery.

20         THE COURT:  All right.  And roughly in total, how many

21   documents are we talking about?

22         MR. KRAVIS:  I believe that there -- actually, may I

23   have just a moment?  I want to confirm to make sure I've got

24   this right.

25         THE COURT:  Sure.

1          (Government counsel conferred.)

2          MR. KRAVIS:  The hot documents are roughly 500

3     documents total, and then in addition, we've also provided

4     translations for some of those documents.

5          THE COURT:  Okay.  So the 500 are split into sensitive

6     and nonsensitive?

7          MR. KRAVIS:  That's correct.

8          THE COURT:  Does the government anticipate adding

9     documents that are a part of the currently designated sensitive

10    materials to those key documents between now and trial?

11         MR. KRAVIS:  Among the sensitive discovery that has

12    been produced to the defense, the government believes that the

13    key documents designation that we've provided is up-to-date.

14         It is, of course, always possible that in preparing the

15    matter for trial and going back through those materials again,

16    we may see additional things that were not included the first

17    time.  But as of this point, that is up-to-date.

18         THE COURT:  Okay.  I do want to warn you, the time is

19    not now, but the time sufficiently in advance of trial, I will

20    make clear that if the government seeks to add documents out of

21    the sensitive discovery materials that are not already

22    designated as key documents, the government is going to have to

23    have a really good reason at that point.

24         And we're not there yet.  But I'm thinking months before

25    trial, I'm going to be really reluctant to allow the government

1    to take documents out of the sensitive discovery documents that

2    have not been identified as key documents and put them into the

3    key documents that the government intends to use at trial.

4         MR. KRAVIS:  Right.  So the key documents collection,

5    as it was provided to the defense, was intended to assist the

6    defense in identifying the documents that the government

7    believed were most material to the allegations in the

8    indictment.

9         The government had not intended that the key documents

10   collection would comprise every exhibit that the government

11   would introduce at trial.  We would, of course, be prepared to

12   provide the defense with an exhibit list in whatever pretrial

13   schedule the Court sets.

14        THE COURT:  All right.  Does the government anticipate

15   producing additional discovery in this case?

16        MR. KRAVIS:  Yes, there is a small amount of

17   additional discovery.

18        THE COURT:  And when do you intend to produce that?

19        MR. KRAVIS:  Some of that additional discovery we had

20   intended to produce once a trial date and trial schedule were

21   set, because there is a small amount of discovery that carries

22   witness security implications to it.

23        There is another small amount of discovery that we expect

24   that we may need to file a motion with the Court on.

25        THE COURT:  All right.  Does the government anticipate

1    filing a superseding indictment in this case?

2              MR. KRAVIS:  No, Your Honor.

3              THE COURT:  All right.  Because when I do set a trial

4    date, and I hope to do that in the not-too-distant future, I

5    want to set a firm one.  So I'm going to be pressing on the

6    government very hard at that time to make sure that it has

7    provided the discovery to the defense.

8              MR. KRAVIS:  Yes, Your Honor.

9              THE COURT:  All right.  Mr. Kravis, in June when I

10   determined that the government had shown good cause, at least at

11   that time good cause to justify the entry of a broad protective

12   order to protect the disclosure of sensitive documents because

13   they implicated national security, law enforcement, privacy

14   concerns, at that time I found good cause.  And the government

15   has supplemented that good cause determination with the more

16   recent filing, which adds additional bases.  But at that time

17   when I did that, I made clear that I viewed this as a very broad

18   protective order that would potentially change over time as we

19   got closer to trial.

20        So now here we are very close to finishing pretrial

21   motions, and I'm wondering, has the government made any effort

22   to go back and look at this large volume of documents and try to

23   separate those out that don't raise national security or law

24   enforcement concerns?  Because I would expect over time that the

25   number, the volume of those documents would diminish

1    dramatically over time as your investigation proceeds.

2          MR. KRAVIS:   And this goes back to what I was trying

3    to articulate a moment ago.   The government's law enforcement

4    and national security interests here relate principally to the

5    view of the accounts that were searched as a whole.   And the

6    reason for that is because when an individual looks at the

7    entirety of a search warrant return, the individual is then able

8    to see what the government was able to collect and was not able

9    to collect, where the gaps in the coverage were.

10         And once an individual can put several of those entirety of

11   search warrant productions together, they can then start to

12   recreate the investigative steps that were taken.   They can see

13   how the accounts were linked together, how the search of one

14   account led to another account, what the government collected,

15   and what the government did not collect.

16         And that information, particularly in the hands of a

17   foreign adversary, can be used to avoid detection in the future,

18   all of which is a very long-winded way of saying it's really not

19   feasible for the government to narrow the amount of sensitive

20   discovery, because the government's interest in the sensitive

21   discovery is with respect to the accounts as a whole.

22         And as we've articulated, I think, to the Court and also to

23   defense counsel, within that sensitive discovery, there will

24   likely be numerous documents, the content of which is not itself

25   particularly sensitive and the content of which the government

1    would not have an objection to Concord showing its officers and

2    employees.  And that was why we had advocated for the protective

3    order the Court entered that would allow Concord to seek on --

4    not even necessarily a document by document, but a group of

5    documents by group of documents basis permission to disclose the

6    sensitive discovery.

7         Our concern principally within the sensitive discovery is

8    with the disclosure of the search warrant returns on particular

9    accounts, the entirety of the return as a whole, and what that

10   information can reveal about investigative methods.

11        THE COURT:  All right.  Correct me if I'm wrong, but

12   isn't the vast majority of these documents, are they not

13   documents that were produced or in the possession of the

14   defendant?

15        MR. KRAVIS:  Yes.

16        THE COURT:  And fall under Rule 16; right?

17        MR. KRAVIS:  Yes, many of them are, which again is why

18   the content -- for many of them, not every one -- but for many

19   of them, the content is not -- the content of the documents

20   themselves is not the government's principal good cause

21   interest.

22        The government's principal good cause interest is in the

23   information, the information about investigative techniques and

24   collection techniques that can be gathered from viewing the

25   returns as a whole and viewing the entirety of the returns side

by side.  And that information, the information that can be
gleaned from viewing sort of the entirety of the sensitive
discovery or the entirety of particular returns, is not
information that Concord needs to show its officers and
employees in order to prepare for trial.

The content for most of the documents, the content is not
itself sensitive.  So that was why we had contemplated that
Concord would identify categories of documents or batches of
documents within the sensitive discovery that it intended to
show to particular officers and employees of Concord, and
depending upon the details of those requests, the government
would not necessarily anticipate objecting to those.

THE COURT:  Okay.  Well, the problem is, under
Rule 16, the burden of showing good cause is on the government,
right --

MR. KRAVIS:  Right.

THE COURT:  -- to keep documents and records from the
defendant?

MR. KRAVIS:  Well, I guess I would say two things
about that.  The first is, I do believe the government has made
the showing of good cause.  But we would submit that we have not
kept these records from the defendant.

THE COURT:  Well, you've given it to the counsel, but
in terms of anyone at Concord, any officer, any employee having
access to date, none have had that.

1    MR. KRAVIS:  We don't know.  I mean, we're not --

2    THE COURT:  What do you mean you don't know?

3    These have been restricted according to my protective

4    order, and they've been kept at Reed Smith, and the attorneys

5    have had access.

6    Are you aware of a breach with respect to sensitive --

7    MR. KRAVIS:  No, no.  I'm sorry.  That's not what I

8    meant to imply.  It was just that, to the extent there have been

9    proceedings that have involved firewall counsel, we, the

10   investigative team, are not privy to those.

11   THE COURT:  I will tell you, at this point the

12   documents have not been released to officers or employees.

13   MR. KRAVIS:  Understood.

14   THE COURT:  And in part, we are where we are because

15   Mr. Dubelier was making arguments about taking documents to

16   Prigozhin and to Russia that I thought could be handled in open

17   court to some degree.  We might get in there and be right back

18   where we started.

19   But it seemed to me that once I was done, you know, with

20   pretrial motions, which I'm almost done with, that it made sense

21   to revisit the scope of the protective order, which was

22   admittedly very broad when I entered it --

23   MR. KRAVIS:  Right.

24   THE COURT:  -- and explore with you, the government,

25   whether the protective order can be narrowed, explore with you

whether you can make a more particularized showing.

Because I do think under Rule 16, it is the government's burden to make a showing.  And at the outset, and again more recently, you've certainly shown good cause that there are national security and other interests at play here.  But based on the case law, my job is to balance those weighty government interests against the defendant's interest in presenting a full and fair defense at trial, and it's very difficult for me to do that in the abstract.

And I understand the government's position is that the onus should be on defense counsel to bring the documents to the Court, and then you are going to be very forthcoming and say yes, those can go, these can't go.  But I don't know under Rule 16 that the onus is on the defendant to come forward, because right now he doesn't have officers or employees helping him look at those sensitive documents to determine what might be helpful to them.

MR. KRAVIS:  Well, I mean, I guess what I would say about that is that this is not -- this is not a situation where -- as it was, for example, in the *Johnson* case that the defense cites, where we have provided discovery to the defense and said, There are some materials in here that we actually care about and some materials that we don't, we've designated it all sensitive, you figure out what's important and come back to us when you've done it.

1      We've articulated a slightly different interest, which is

2  an interest in the protection of disclosure of the accounts, the

3  accounts as a whole.  There are a finite number of documents

4  within these accounts that actually relate to Concord, that

5  actually relate to Concord officers and employees.  We have made

6  a first effort at identifying some of those documents in the hot

7  document collections.

8      For those documents --

9      THE COURT:  Wait.  I missed you there.  So if all of

10  these are records, documents of the defendant and you're saying

11  that some pertain to officers and employees, what -- I thought

12  that they all did.

13      MR. KRAVIS:  I don't think it would be correct to say

14  that they are records -- I don't think it would be correct to

15  say that they are records of the defendant.  I'm sorry.  I'm

16  trying to be as forthcoming as possible with the Court about

17  this, but we are now talking about the content of the sensitive

18  discovery.

19      THE COURT:  No, I understand.  Some of this we can

20  continue under seal, if necessary.

21      But it's hard for me in the abstract, without any better

22  understanding of what these documents are, to weigh competing

23  interests.  And I understand that's the government's proposal,

24  to set up firewall counsel and have that process handle it.  But

25  again, I don't know that the burden is on the defendant to come

1   forward.   It seems like the burden is on the government to come

2   forward and say these need to be protected and here's why.

3   Maybe not document by document, because they are so voluminous,

4   and maybe there are documents that are similar in nature such

5   that you could make a showing with respect to a category of

6   documents that would give me more confidence in what they are.

7   But I don't know how I do an individualized determination with

8   respect to the 3.2 million documents.

9          MR. KRAVIS:   Again, I don't think it's a question of

10  individualized determination of the documents or particular

11  documents within the accounts being designated as sensitive.

12  The government's principal interest here is in the disclosure of

13  the accounts as a whole, the entirety of the return.   When you

14  see an entire search warrant return, you are then able to see

15  what the government did collect and didn't collect, which you're

16  not able to see if you say here are 300 or 3,000 e-mails that we

17  found within the whole.   And --

18         THE COURT:   What about not disclosing the return and

19  some subset of those documents?   Why doesn't that achieve the

20  same goal?

21         MR. KRAVIS:   I think that is always what we had

22  envisioned, that some subset of the information -- that some

23  subset of the information would be -- that Concord would be

24  providing some subset of this information to its individual

25  officers and employees to review without showing them the

1   entirety of the return and, as Concord has requested, without

2   showing them the entirety of all the returns --

3   THE COURT:  Why isn't it the government's burden to

4   pull out some subset of documents, the return and some other

5   documents, such that they're not getting the full panoply of the

6   return and then providing that to defense counsel to share with

7   Concord?

8   MR. KRAVIS:  Well, to an extent, we can do that.  So

9   we can say, for example, here are the documents in the accounts

10   identified as sensitive discovery that we have found that appear

11   to contain evidence relevant to the charges in the indictment or

12   that appear to contain evidence relevant to the activities of

13   Concord and so on and so forth.  But we are a little bit limited

14   in that effort, because we don't know exactly what Concord's

15   defenses may be and exactly what their interests in the material

16   may be.

17   And so they may have --

18   THE COURT:  Again, the default is not that the

19   defendant has to come forward.  It's that the government has to

20   provide it absent good cause.

21   Why can't you make a cut that would still preserve the

22   government's interests here, which is not to provide every

23   single document of the return such that the other side can do

24   the kinds of analysis that you're concerned about that would

25   affect national security?

1        Is there not some smaller chunk that the government could

2   peel off of each return and not provide the actual return itself

3   and achieve that goal?

4        MR. KRAVIS:  Yes.  And the collection of the key

5   documents was a first effort to do that.  We can certainly kind

6   of, for lack of a better way to put it, broaden the scope of the

7   identification --

8        THE COURT:  Well, I'm looking at 500 documents versus

9   3.2 million, and it's heavily on the government's side here in

10  terms of protecting government interests.

11       And I am not suggesting by my questioning that I'm prepared

12  to let any document that affects national security go to someone

13  who shouldn't have it for national security reasons or go to a

14  country that shouldn't have it.  I'm not making that

15  determination here.

16       All I'm saying is, based on what the government has shown

17  so far, I don't feel as though the government's made the

18  particularized showing that the case law requires such that I

19  have to put the onus on Mr. Dubelier to come forward and explain

20  why withholding that smaller set of documents is going to impair

21  his ability to defend his client.

22       And I can't do that in the abstract.  You're saying I can

23  do it in the sealed proceeding with firewall counsel.  But

24  again, that's only if Mr. Dubelier comes forward with documents.

25  And it seems to me that a defendant -- its employees and

1    officers should have some access to this to help him determine

2    what might be critical to the defense.

3              MR. KRAVIS:  Well, I guess I would say a couple things

4    about that.  The first thing is that that request has never been

5    brought to -- has never been brought to our attention or has

6    never been brought to my attention of, Look, here are the

7    returns, you've designated all of these as sensitive, we want to

8    find the e-mails or the communications that relate to Concord's

9    business, can you help us figure out which ones those are so

10   that we can provide some of them without revealing the entirety

11   of the accounts.

12        That's not the relief that Concord has requested in this

13   motion, for example.

14              THE COURT:  To be fair, it is a broad motion, but this

15   is one I invited in open court, because I felt like we were

16   getting into arguments that could be aired publicly about how

17   you wanted to deal with documents.  And to be fair, he has also

18   objected, I think, across the board to what he perceives as an

19   overcategorization of materials as sensitive materials.  So he,

20   in effect, has challenged the protective order and the breadth

21   of the protective order.

22        And so I think it does swing back to you and to me to

23   ensure that the protective order is as narrow and as permissible

24   as possible for the defendant to receive documents under

25   Rule 16.

1          So I think he has challenged the categorization across the

2     board.  He says that much of this is not sensitive.

3               MR. KRAVIS:  So if the issue is identifying within

4     the -- within the sensitive discovery accounts particular sets

5     of documents that may be relevant to the case so that Concord

6     could show that subset of documents to its officers and

7     employees without revealing the entirety of the accounts or

8     without revealing the entirety of all the accounts, we are

9     certainly willing to work with the Court and work with defense

10    counsel to do that.

11         But our understanding at the beginning had been that

12    defense counsel really didn't want to do it that way.  Our

13    understanding, at least, was that their view was that the

14    identification of those relevant documents would tend to reveal

15    defense strategy, and so they wouldn't -- that would not be

16    something they would want to do with us, which is why the

17    firewall counsel position was created.

18         We're willing to work with the Court, to work with defense

19    counsel, to work with our own selves to identify materials

20    within the sensitive discovery that -- where disclosure may be

21    warranted.  How that disclosure happens, of course, is then a

22    further question, but --

23              THE COURT:  I understand.  And I will hear from

24    Mr. Dubelier eventually on that point.  But if I understand your

25    position, the government may well not object to large swaths of

1   these 3.2 million sensitive documents being declared not

2   sensitive, as long as some portion is held back as sensitive.

3            MR. KRAVIS:  Sorry.  Can I have just one moment?

4            THE COURT:  Absolutely.

5        (Government counsel conferred.)

6            MR. KRAVIS:  I guess what I would say there is that I

7   didn't mean to suggest what the government is proposing is that

8   large swaths of the documents be designated "nonsensitive."  The

9   protective order still -- contains restrictions on how those

10  sensitive documents are handled and disseminated, and the

11  government believes that those restrictions continue to be

12  appropriate.

13      What I was trying to say was, we would have no problem

14  working to identify documents within the sensitive discovery

15  that we believe may be appropriate for Concord to show

16  particular officers and employees under the right set of

17  circumstances.  I'm not --

18           THE COURT:  Let's talk about what is the right set of

19  circumstances.  Is that in the offices of Reed Smith here in the

20  United States, I assume?

21           MR. KRAVIS:  That was the proposal -- that was the

22  proposal in the first instance, and we do believe that that

23  restriction is appropriate.

24           THE COURT:  To your knowledge, does Concord have

25  officers or employees who could travel here and not be arrested?

1          MR. KRAVIS:  I don't know the answer to that question.

2          THE COURT:  All right.  Let's assume for a moment --

3          MR. KRAVIS:  Well, I'm sorry.  That's not quite right.

4    In one of Concord's earlier filings, they had said that the

5    officers that they were talking about were Mr. Prigozhin and

6    another person who was -- who worked in their legal department.

7    To my knowledge -- in an earlier filing, they had said those

8    were the officers that we're talking about in terms of showing

9    them the sensitive discovery.  To my knowledge, the person in

10   the legal department who was not identified by name, I don't

11   believe that that is an indicted defendant.

12         THE COURT:  All right.  So you do believe that there

13   are officers or employees who could get a visa here in a timely

14   fashion and view the documents at Reed Smith and not risk being

15   arrested?

16         MR. KRAVIS:  My understanding from Concord's prior

17   filings on this matter is that there are officers of Concord who

18   are not indicted defendants in this case.

19         The issue of the timeliness of the visas was one that had

20   not been brought, at least, to my attention until Concord filed

21   its reply.  I am aware there are programs out there that allow

22   for expedited consideration of visas in certain circumstances --

23         THE COURT:  Would the government -- the trial team

24   assist with that to ensure that there would be an expedited

25   visa?

MR. KRAVIS:  We would certainly work to make the appropriate inquiries.  I'm not familiar enough with that program to say exactly what we would and would not be able to accomplish.  We're certainly willing upon request to try to assist in that process.  Of course, if it doesn't work, we would try something else.

But the issue of, well, this isn't going to work because they can't get visas, was one that wasn't brought to our attention until Concord's reply.

THE COURT:  With respect to some set of documents -- let's assume for a moment that the defense can show that they need Prigozhin to see some set of documents in order for the company to defend itself.  Now, that would be an argument that I would hear from defense counsel, but let's assume for a moment that they convince me that that's the case.

He's under indictment, so presumably would be arrested when he sets down here in the United States.  And is it the government's position that that is the price the corporation has to pay in order to get discovery in this case, that the company has to subject the officer to arrest?

MR. KRAVIS:  Well, I'm not sure I would phrase it as "the price they pay."  I would say two things about this.

The first is, to the extent that Concord has officers or employees who have personal preferences or personal interests about coming to the United States or not coming to the United

States, we don't believe that that is a factor the Court

considers in balancing the interests here.  The interests are

the government's good cause showing versus Concord's ability to

present a defense, not the personal preferences or interests of

its individual officers.

THE COURT:  But can a company make an officer or

employee come to the United States and be subject to arrest in

order to get discovery it needs to defend itself?

MR. KRAVIS:  Can the company force the officer to do

that?  I don't know.  I mean, I would expect the answer is

probably no.

But what I would say is that I think that that is a

situation -- it is analogous to a situation where a company

under indictment has a key officer who pleads the Fifth and

chooses not to cooperate with the corporation's investigation.

The individual officers who make up a corporation may have

personal interests and personal preferences that are not

squarely aligned with the litigation interests of the

corporation itself.

But that is not -- that issue does not warrant the Court's

intervention and does not warrant relaxing what are otherwise

reasonable restrictions on the dissemination of the discovery

based on the government's showing of good cause.

But the other thing I would say about this is that the

protective order always allowed Concord to request permission to

provide sensitive discovery to officers and employees in Russia.
So the government's initial view is that just saying, well, the
officer or employee doesn't want to come to the United States
for their own personal reasons, our view is that that's not
sufficient -- that is not a sufficient showing to relax the
restrictions on sensitive discovery in the protective order.
But in the last instance, that would be a determination that
would be made by the Court.

The government does believe that it would be appropriate
for Concord to provide the Court and the government, either the
investigative team or the firewall counsel, with a little bit
more information about exactly what the proposal is, how the
documents would be safeguarded, where they would be taken, who
they would be shown to, whether they would be left in Russia or
brought back to the United States.  We believe that all of those
restrictions are still appropriate for the sensitive discovery.

But I think it is also true that we would be able to work
with the Court, work with defense counsel to identify categories
of documents within the sensitive discovery that could be shown
to officers and employees of Concord under the restrictions and
limitations that are set forth in the protective order.

THE COURT:  Is it the government's position that
Prigozhin, under no circumstances, no matter what document it
is, would ever get that document in the U.S. or in Russia?
Let's say he did come here.

1          MR. KRAVIS:  No, that's not our position.

2          THE COURT:  It's not?

3          MR. KRAVIS:  No, no.  Our position is that we believe

4    the restrictions on the viewing and the dissemination of the

5    sensitive discovery are appropriate based on the government's

6    good cause showing.  We can help to identify documents,

7    categories of documents within the sensitive discovery that

8    could be shown to officers and employees of Concord in the

9    Washington offices of Reed Smith under the terms that are set

10   forth in the protective order, because the protective order

11   includes other restrictions as well.  It involves signing the

12   memorandum of understanding.  It involves where the documents

13   are stored.  It involves who accompanies the person viewing the

14   sensitive discovery.

15       We continue to believe that those restrictions are

16   appropriate, but we do believe that we can help to identify

17   categories of documents where viewing by Concord officers and

18   employees would be appropriate under those circumstances.

19       Should the Court decide that it is appropriate for some

20   subset of the sensitive documents to travel to Russia, Concord

21   has the opportunity to make that motion with the Court and to

22   make that showing, and the protective order as it is currently

23   written allows for all of that.

24          THE COURT:  Assume for a moment there's a Concord

25   officer or employee who comes to the United States to view

documents in the office of Reed Smith.

In your view, does that employee get -- this is not one who is under indictment.  Does that employee get access to all the 3.2 million sensitive discovery documents?

MR. KRAVIS:  No, I don't think that is what the -- I don't think that is what the protective order -- I don't think that is what the protective order contemplates.

THE COURT:  Obviously, you can, through firewall counsel, argue that limitations should be placed.

MR. KRAVIS:  Right.

THE COURT:  But I'm trying to understand how this might play out.  If there is an officer or employee who comes here and goes to the offices of Reed Smith, is it -- how much is going to be withheld?

MR. KRAVIS:  I think, again, the government's interests with respect to the sensitive material was in -- for the most part is in the viewing of the accounts -- in the viewing of the accounts as a whole and the information that could be gleaned from looking at the entirety of a search warrant return, from looking at the entirety of the sensitive discovery.

There are particular documents or particular categories of documents that are appropriate for -- that are particularly appropriate for an officer or employee of Concord to view in the Washington, D.C., offices of Reed Smith.  The protective order

1   allows for the review of those appropriate documents in that

2   fashion.

3            THE COURT:  I guess I'm trying to get a sense as to

4   what rough percentage of documents you think a Concord employee

5   or officer could look at in the offices of Reed Smith.

6        We're looking at 3.2 million.  Is it your hot docs?

7            MR. KRAVIS:  No.  It would be a broader category of

8   documents.  For the most part, it could include anything that is

9   relevant to the allegations in the indictment, as long as it's

10  not revealing the entirety of the accounts.

11       The number of actual relevant documents that would fit the

12  interest that has been articulated by Concord in showing its

13  officers and employees their documents to try to gather

14  information from them about what they understood a particular

15  document to mean or what they understood a particular

16  communication to convey, that would be a much smaller

17  subcategory of the sensitive documents.

18       I think for the most part, the government would not --

19  again, depending on the officer or employee we are talking

20  about, the government would not have -- likely not have

21  objection to almost all of those relevant documents being made

22  available to be viewed by that officer or employee in the Reed

23  Smith Washington, D.C., offices.

24       There may be a few instances where the government would ask

25  that headers be removed or metadata not be viewed, because that

might tend to reveal methods of collection.  But I think that's a relatively small subset of the documents that we are talking about.

I think that there are -- this is a very long-winded way of saying, I think that there are not very many documents, if any, in the sensitive discovery where the government would say this just cannot be viewed by a Concord officer or employee, even under the circumstances --

THE COURT:  You think that that officer or employee could access the vast majority of sensitive documents, with some modifications?

MR. KRAVIS:  Yes, yes, yes, under the terms that I've described in protecting the interests that I've tried to articulate.

THE COURT:  And that officer or employee would have an unlimited amount of time to look at these documents and then go back to Russia?

MR. KRAVIS:  Yes.

THE COURT:  Beyond the jurisdiction of this court?

MR. KRAVIS:  Yes.

THE COURT:  And share whatever he or she gleaned from those documents in Russia?

MR. KRAVIS:  Yes, yes.

THE COURT:  All right.  In that case, how different would it be to have some sort of video conference system from

1    the office of Reed Smith to that same individual in Russia?

2         MR. KRAVIS:  I just think the ability to secure those

3    kinds of communications into Russia is very, very limited.  And

4    so the assurances that the Court could have and that the

5    government could have that the information is being shown only

6    to the person who is on the other side of the communication,

7    when we are talking about Russia, it's just very, very low.

8         And part of what the protective order contemplated was that

9    the Court and the government could be assured that the

10   particular officers and employees of Concord who were designated

11   to view sensitive discovery pursuant to orders of the Court,

12   that they were the only people that were actually looking at the

13   discovery.  The protective order contemplated that we could be

14   assured of that because there were requirements about defense

15   counsel providing the access and monitoring the access.

16        There were provisions that were put in place to make sure

17   that there isn't also someone else who is looking at the

18   material who is not authorized by the Court to see it and the

19   government was not told about.  And those restrictions just fall

20   away when we start talking about electronic transmission of

21   information into Russia.

22        THE COURT:  All right.  I do want to talk about the

23   proposal Concord has made, but we're going to have to do that

24   under seal.

25        MR. KRAVIS:  Can I add one -- I want to add one caveat

to what I was talking about with respect to the sensitive

discovery.

The sensitive discovery also includes the process itself,

like the affidavits in support of the warrants, the warrants

themselves for 2703(d) orders, the applications and the orders.

The government views those materials as falling into a different

category.  Those are materials where we would object to any

officer or employee of Concord seeing those.

In those materials, the interests that I talked about and

identifying methods of collection, what's gathered, what's not

gathered, investigative steps, it's very, very high.  And the

need for any particular fact witness to see an affidavit is

very, very low.  To the extent that Concord has an interest in

mounting legal challenges to a particular legal process, they

can do that without showing the affidavit itself to an officer

or employee of Concord.

I'm adding that just as a caveat to what I was saying

before about the government's interests with respect to the

content of the sensitive discovery.

THE COURT:  All right.  And in terms of documents that

the government intends to introduce in its case-in-chief, I know

you would abide by whatever order the Court enters, but what do

you envision?

Obviously, we don't want to be in a situation where we have

a trial date and we have hundreds of potential jurors ready to

1    serve and get in a situation where there's a surprise.  At some

2    point, the documents that you intend to introduce in your

3    case-in-chief will become public and will be flying around the

4    world.

5              MR. KRAVIS:  Yes.

6              THE COURT:  And that can't happen during trial.  Do

7    you agree, or do you think that --

8              MR. KRAVIS:  I'm sorry?

9              THE COURT:  How much advance notice does the

10   government believe would be appropriate in a case like this to

11   provide exhibits in advance of trial?  How far in advance of

12   trial would the government be willing to provide its exhibits?

13             MR. KRAVIS:  I mean, depending on how quickly the

14   Court were to set the trial date, we could provide trial

15   exhibits several months in advance of the trial date itself.

16             THE COURT:  And again, recognizing that once you do,

17   those documents are out there.

18             MR. KRAVIS:  Yeah, we recognize that.  There may be a

19   very limited category of documents where we believe that some

20   redactions are appropriate to protect the interests that I've

21   talked about.

22        But for the vast majority of the discovery that we are

23   talking about, the law enforcement interests are in the sort of

24   view you get of the return as a whole, when you look at the

25   entirety of the return or you look at the affidavit or you stack

1    the returns next to each other.  And that interest is not

2    necessarily implicated by the viewing of any particular document

3    as a trial exhibit in open court.

4              THE COURT:  Okay.  So the vast -- the national

5    security interests hinge on the scope of the discovery that's

6    provided, as opposed to --

7              MR. KRAVIS:  That is true for most of the sensitive

8    discovery.  Again, I want to add the caveat that I mentioned

9    earlier about the process itself, like the affidavits, the

10   applications, the orders, the warrants, there may be a small

11   number of documents where the metadata on the document or header

12   on the document reveals some information about the investigative

13   technique used to acquire it that the government would consider

14   sensitive for purposes of reviewing it in discovery prior to

15   trial.

16        But for most of the documents, most of the sensitive

17   discovery, the law enforcement and national security interests

18   at stake go to the information that can be gathered when the

19   account is viewed in its entirety and when the entirety of the

20   account is stacked up next to the entirety of another account

21   and so on and so forth.

22             THE COURT:  All right.  Thank you.  Anything else you

23   want to add?

24             MR. KRAVIS:  There was one other thing I wanted to add

25   with respect to the Court's questions about officers and

employees of Concord coming to the United States and then

returning to Russia.

It would be our understanding, of course, that officers and

employees of Concord who are viewing the sensitive discovery are

signing the memorandum of understanding.  They are subjecting

themselves to the Court's jurisdiction.

THE COURT:  Not while they're in Russia.

MR. KRAVIS:  Well, while they're in the United States,

and that they're signing the memorandum of understanding.

THE COURT:  Understood.

MR. KRAVIS:  Thank you, Your Honor.

THE COURT:  Mr. Dubelier?

MR. DUBELIER:  Wow, I don't know where to start,

because we're in a different place we were based on the

pleadings.

So for the first time, I think, we learned a half hour ago

that not all 3.2 million documents in the sensitive discovery

are sensitive, and instead, it's this conceptual thing, that if

you look at them in their entirety, that could be sensitive, but

if you look at them individually, then they're not necessarily

sensitive.

That is completely different from what was represented to

us for the past eight months by the government, and I really

think under these circumstances, Mr. Kravis needs to go back and

do his homework on what was represented by the government when

1    we first started litigating this case.

2         I will also tell Your Honor, and Your Honor knows, we tried

3    to test the protective order by taking a crummy 80 documents and

4    giving them to firewall counsel six months ago and saying, We

5    wanted to share those 80 documents with our client.  And

6    firewall counsel said, No, you can't share any of these with any

7    Russian person.

8         That's why we're here today, because we hit a wall on that.

9    I don't want to get in trouble here about talking about the

10   sealed discussions we had about all that.  But we hit a wall and

11   recognized this is going --

12             THE COURT:  But to be fair, at the outset, I said

13   issues of documents going to Russia, issues of documents going

14   to Prigozhin we're going to handle post-pretrial motions,

15   because, Mr. Dubelier, you challenged the authority of the

16   Special Counsel to bring this case.

17             MR. DUBELIER:  Yep.

18             THE COURT:  You challenged the indictment.  Had you

19   prevailed on either motion, there would be no trial.

20             MR. DUBELIER:  Uh-huh.

21             THE COURT:  So I don't know that it's fair to say that

22   firewall counsel's position was one that would last throughout

23   this endeavor.  At the pretrial stage, I sent a pretty clear

24   message that I'm not entertaining -- to you in the closed

25   proceeding, I'm not entertaining documents going to Russia or

1    documents going to Prigozhin while these motions are pending.

2         So I don't know what communications you've had with him,

3    but it certainly wasn't my expectation in those proceedings to

4    approve documents going to Russia or to Prigozhin, but I did

5    intend to potentially approve of documents being released at the

6    offices of Reed Smith.

7         And I thought I made that clear at the outset, and I know

8    there's confusion.  But just to be fair, I think that may well

9    be where he was coming from as well.

10        So we are at a different stage here.  We're almost in

11   pretrial prep.  There is no trial date.  You have not been

12   prejudiced.  So moving forward, yes, I hear you.

13             MR. DUBELIER:  Your Honor, I also get what you're

14   saying, with a caveat, though.  The caveat is, we have been done

15   with the pretrial motions for some time.  And you ordered the

16   parties to brief, and we briefed, and nowhere in those briefs,

17   nowhere did Mr. Kravis or anybody else in the government say,

18   Wait a minute, not all of the 3.2 million documents are

19   sensitive, if they're looked at in their entirety they might be

20   sensitive, but we're not saying that none of those 3.2 million

21   documents can be shared with the defense.  We learned that for

22   the first time 20 minutes ago.

23        So that's not the briefing that we had.  They in no way

24   raised that issue within the briefing.  They maintained their

25   position in their briefing that the 3.2 million documents could

1    not be shared with a Russian person outside the United States.

2    And now they're saying something different.

3    And I think the key here is what you said to them.  The

4    burden is not on us.  There is no burden on us.  There is no

5    case law that puts any burden on us.  And you can rely on Judge

6    Bates's opinion in the *Johnson* case, but you don't have to rely

7    on that alone.  We've cited other cases to the Court.  There is

8    no burden on us to do anything.

9    And this notion now where they seem to be hedging that,

10   okay, we identified 500 or so key documents, we're happy to go

11   back and identify additional relevant documents.  This has

12   nothing to do with their determinations of relevance.  This

13   sensitive discovery is chock-full of exculpatory information.

14   They can't make those decisions.  We get to determine, in

15   talking to our client, what documents within that document set

16   we want to use.

17   And this comes down to, they have to come to you and say

18   these are the documents that are truly sensitive and cannot be

19   shared and these are the ones that aren't.  And if they

20   overdesignate -- it sounds like they concede they overdesignated

21   in the beginning of the case.  Well, now they have to go back

22   and redesignate, and we have to know, of the 3.2 million

23   documents, which ones can we share with our client, and let them

24   tell us which ones we can share.

25   This notion that we have to pick out the ones we want to

share and then go case by case to firewall counsel and say we
want to share this and this is the person we want to share it
with, there is not a case ever in the history of the United
States that put a requirement on a corporate defendant ever.
They've not cited a single case to this effect.  There is no
case where even a judge could decide who of a corporate
defendant was allowed to see discovery materials.

And so for the first time, it seems, the burden should be
on them.  It was all along, but now the burden is on them.  They
have to come and tell us, of the 3.2 million, what we can share
and what we can't share.  Now, when they then create the
category of what we can't share, then we have to come argue
about that, because we're not going to agree, of course.

I'm not suggesting to the Court that I'm going to take some
irrational crazy position here.  And that is, there are search
warrant affidavits in the sensitive discovery.  I may or may not
agree with them that it might not be necessary to share that
with the client.  I'm not sure.  That's a subset of the
3.2 million documents.  There's a subset.  There's search
warrant affidavits in there.

If in the beginning they had come to us and said, We don't
want you to share the search warrant affidavits but you can
share everything else, we never would have been in this
position, and we wouldn't have wasted eight months of our
inability to communicate with our client about the evidence.

1    Because remember, Your Honor, the protective order doesn't

2    simply say you can't share the documents.  It says you can't

3    even talk about them.  I've been prohibited for eight months

4    from having a conversation with the client about any of these

5    sensitive documents.  And the sensitive documents are the core

6    of the case.

7    Let me also say, so the Court is not under any

8    misimpression, because I think Mr. Kravis -- I don't think he

9    purposely misspoke, but what he said is not accurate.

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ██████████████████████████████████████

14   ██████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ██████████████████████████████████████████████

17   ████

18   MR. KRAVIS:  I'm sorry, Your Honor.  I apologize for

19   interrupting.  I think that conversation is best had --

20   THE COURT:  All right.

21   MR. DUBELIER:  Let me put that issue aside, and we can

22   circle back to it when you usher the folks out.

23   Your Honor, I want to go briefly to the issue of people

24   coming here.  Look, we said it in our pleading, and we will say

25   it again, it's a nonstarter.  I really believe it's a

1    nonstarter.  I would like us more to focus on the proposal we

2    presented to the Court under seal on that issue, because we

3    think it's the equivalent of the people coming here, that is, in

4    terms of the ability to protect the documents.

5        I understand the government's issue about the electronic

6    access to the documents.  And regardless of what our vendor

7    does, it's never going to be foolproof, and I would never

8    represent to the Court that it would be foolproof.  So there are

9    practical problems with that.

10       But we do believe the proposal we presented to the Court

11   under seal, as a practical matter, moots out that issue.

12               THE COURT:  We will discuss that in a minute.

13               MR. DUBELIER:  Okay.  Your Honor, the only other thing

14   I want to touch on briefly is setting a trial date.  We do want

15   a trial date, but I think we're far away from being done with

16   all the pretrial motions.

17               THE COURT:  Tell me what I have coming.

18               MR. DUBELIER:  Motions to suppress evidence, which we

19   can't fully assess until we have the ability to talk to our

20   client about the documents.  We've got, I think, *Daubert*

21   motions.  And that is, within the sensitive discovery, there are

22   documents which, at least from our reading of them, contain

23   expert opinion-type information that would require a person with

24   expertise to testify about it.  It largely goes to the methods

25   used by the people that were subpoenaed to collect stuff.  I

1    don't want to go into too much detail on that, but there are

2    reports in there that are, for all intents and purposes, expert

3    reports that would require someone with expertise to testify

4    about.

5         We asked the government eight months ago to identify who

6    the experts were, and to date, they haven't done it.  I don't

7    know whether their position is going to be they're not going to

8    have expert testimony, that they've given us the reports but

9    they're not going to try to admit the reports, but we will have

10   that.

11        And I think finally, Your Honor, there is very complicated,

12   very complicated evidentiary issues that if they're not resolved

13   pretrial, we could take a four-week trial and make it a

14   four-year trial.  And that is, just by way of example, let's say

15   theoretically -- because I'm talking theoretically.  I don't

16   want to talk about actual evidence.  But let's say

17   ██████████████████████████████████████████████████████████

18   ████████████████████████████████████████████

19        THE COURT:  Let's hold up.  I think the government is

20   getting uncomfortable, even with your hypothetical.

21        MR. DUBELIER:  Let me try and dumb it down in a way --

22   let's say they subpoenaed an account, and they say it belonged

23   to somebody.  And we can figure that out by -- the indictment is

24   public.  You presume, then, for every paragraph in the

25   indictment, they have some evidence to support what they allege.

1    So just assume for purposes of argument, on a paragraph of the

2    indictment when they say there was an Internet account that did

3    X, Y, Z, that they have evidence to support that.

4         Well, the question becomes, whose account is that, and

5    whose records exist in that account?  And so the government's

6    position, based on the discovery they've given us, is that those

7    records would be business records of the provider.  For

8    instance, Google, they're business records of Google.  And there

9    are certificates in the discovery that say these are business

10   records of Google.

11        There's no case law that is getting those documents in

12   evidence as business records of Google.  They're not.  Those

13   documents belong to the person who had the account.  They're not

14   business records of Google.  They don't come in under a business

15   record exception by virtue of the fact that they were in

16   Google's possession.

17        But all of the case law on this, Your Honor, is in the last

18   two or three years, certainly litigated well after I left the

19   government.  But we've looked at that law, and it's unsettled,

20   and it gets very, very document-specific.  And if those issues

21   are not litigated pretrial, once we know what the government's

22   evidence list is going to be, we're going to get bogged down in

23   a lot of, you know, dead time, I think, in terms of --

24             THE COURT:  All right.  I'm not going to rush to set a

25   trial date before we're ready, because when we set one I want it

1    to be a firm date.  But we can talk about briefing once we get

2    through this discovery round.

3              MR. DUBELIER:  So Your Honor, I don't think I have

4    anything else that I can say publicly.

5              THE COURT:  All right.  I understand that I have to

6    take a brief break.

7         Mr. Kravis, would you like to respond to anything he had to

8    say publicly?

9              MR. KRAVIS:  Yes, Your Honor, very briefly.

10        The government is not saying, as Mr. Dubelier just

11   suggested, that the vast majority of the sensitive discovery is

12   not actually sensitive.  That is not the government's position.

13   We are not saying that those documents should be -- that there

14   are any documents in the sensitive discovery that should be

15   exempted from the restrictions imposed by the protective order.

16        What we are saying is that there are categories of

17   documents within the sensitive discovery that can be viewed by

18   officers and employees of Concord pursuant to the restrictions

19   in the protective order.

20        Those are not the same thing.  And I think that Concord's

21   filings and their arguments continue to falsely conflate those

22   two things.  Saying that Concord's officers -- that particular

23   officers and employees of Concord can view particular categories

24   of documents within the sensitive discovery is not the same

25   thing as saying that those documents are nonsensitive.  And the

1    reason for that is because the way in which the government

2    acquired those documents is highly sensitive, and that is the

3    basis or part of the basis for the government's good cause

4    showing.

5         So I just want to clarify, the government is not conceding

6    that a whole bunch of -- that the discovery was overdesignated

7    as sensitive.  The government is not conceding that a whole

8    bunch of the sensitive documents are actually not sensitive.

9         What we are saying is that there are -- there is material

10   within the sensitive discovery -- just about all of it, in

11   fact -- that can be viewed by Concord officers and employees

12   under the restrictions on the viewing of sensitive information

13   in the protective order.

14        I just want to make that clarification.  Thank you.

15             THE COURT:  Thank you.  We will take a brief recess in

16   order to clear the courtroom and do whatever else the clerk

17   needs to do.  Five-minute recess.

18        (Recess taken from 11:10 a.m. to 11:22 a.m.)



19

20

21

22

23

24

25





































































1

2

3

4

5

6

7

8

9          (Proceedings adjourned at 12:09 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, Sara A. Wick, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.

6

7

8

9  /s/ Sara A. Wick                 March 8, 2019

10  SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```