IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS PURSUANT TO FED. R. CRIM. P. 7(f)**

Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this Reply in support of its Motion seeking a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).

**I.    Introduction**

The government's Opposition takes the wrong route from its inception. It overlooks the first-of-its-kind aspects of this case and relies on boilerplate statements of the law that are unconnected to the facts of this case. Instead, the cases it cites, many of which are narcotics cases which apply a different legal standard specific to the narcotics conspiracy statute, have nothing in common with the facts of this case. Rather than addressing Concord's specific arguments, the government reverts back to the standard refrain that Concord's motion is an attempt to preview the government's evidence, and the discovery the government has provided is sufficient to help Concord prepare for trial. Neither assertion withstands scrutiny. The Indictment has only minimal and vague allegations as to Concord, and the discovery provided to date, which includes approximately 3.2 million documents identified in blanket fashion as "sensitive," does not provide notice as to who at Concord specifically did what. Although the

1

government claims to have provided a "more detailed description of the discovery" in its supplemental filing, that "detail" consists of a mere *two sentences*—which, as discussed below, suffer from other problems as well.

The government's tactic of citing and relying on distinguishable cases for canned legal principles sidesteps and ignores the profound difficulties faced by Concord in defending this case.  But the law calls for a bill of particulars in these circumstances so that Concord can make its defense and the time has passed for the government's vague assertions in the place of its basic legal obligations.  Concord's Motion should be granted.

## II.     Argument

Rather than addressing each category of information Concord seeks on an individual basis, the government variously lumps those requests into one of two ill-fitting categories: evidence and discovery.  Having made its transformation, the government then fits Concord's requests into ones that courts frequently deny.  But this effort is flawed.  Concord is not seeking the government's evidence—it is seeking clarification of the allegations against it so it can effectively sort through and use the voluminous discovery provided.  *See United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) ("A bill of particulars properly includes clarification of the indictment if necessary.").  That clarification is necessary because the Indictment provides very little information about what Concord—a corporate defendant who can only be responsible for authorized acts of its officers or employees—specifically did, beyond vague pursuits such as "funding," "recommend[ing]," and "over[seeing]."  Indictment ¶ 11.  The remainder of the allegations in the Indictment generally describe "Defendants and their co-conspirators," with no further detail as to who specifically did what.

This lack of detail is underscored in the government's Opposition.  It devotes more than a page to describing the "eight-count, thirty-seven page indictment," but only one count charges

Concord. Opp. 1-2. And of that lengthy description, only two brief sentences discuss Concord specifically. *See* Opp. 2 ("With respect to Concord, the indictment alleges that the company 'was the Organization's primary source of ***funding*** for its interference operations.' . . . Concord also 'controlled funding, ***recommended*** personnel, and ***oversaw*** Organization activities through reporting and interaction with Organization management.'") (emphasis added). Further, the generic term "Defendants and thier co-conspirators" used throughout the Indictment adds another layer of confusion by improperly conflating Concord and a second, unrelated entity: the Internet Research Agency ("IRA"). All but one of the individual "Defendants" referred to throughout the Indictment are alleged to be IRA—not Concord—employees. Thus, even when making a concerted effort to identify conduct specific to Concord based on the language in the Indictment, the government cannot help but fall back on the same vague terms "funding," "recommend[ing]," and "over[seeing]," but doing so still leaves Concord with nothing. More is required to allow Concord to prepare for trial than "particularly enigmatic" allegations at issue here. *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998).

### A. Concord is not seeking the government's evidence

Using boilerplate language from cases discussing bills of particulars, the government tries to characterize Concord's requests as seeking to "preview the government's evidence by demanding detailed information about the conspiracy," and "details about the specific documentary evidence the government intends to use at trial." Opp. 6. This is a mischaracterization, as evidenced by the trio of non-binding cases on which the government hinges its arguments. Each of those cases is distinguishable and, consistent with its prior conduct in this case, the government fails to advise the Court of the different fact patterns, allegations, and circumstances that set those cases apart from the one-off facts here.

The government begins with *United States v. Butler*, 822 F.2d 1191 (D.C.Cir. 1987), to set forth the purpose of a bill of particulars. In *Butler*, the defendant asked for the times he entered and exited the conspiracy. *Id.* at 1193. The government provided the date ranges and the court concluded that the government's response, "furnished essentially the information that [defendant] had requested." *Id.* at 1193-94. By contrast, the government has provided nothing in response to Concord's requests. Next, the government cites to *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172 (D.D.C. 2015), for the law on when a bill of particulars should be denied. But *Lorenzana-Cordon* was a narcotics conspiracy case where the conspiracy provision of the Controlled Substances Act, as opposed to a Title 18 U.S.C. § 371 conspiracy, does not even require the indictment to list overt acts. *See id.* at 175. Further, in *Lorenzana-Cordon*, where defendants sought the names of the co-conspirators, the government had already provided thousands of pages of reports of drug seizures and intercepted telephone calls in addition to a Rule 404(b) notice and sentencing memorandum for a co-defendant that provided a road map of the government's case. *See id.* at 179. Next up is *United States v. Ramirez*, 54 F. Supp. 2d 25 (D.D.C. 1999), but the government fails to advise the Court that in that case the government was ordered to produce the type of information Concord is after here—specifically, the names of persons the government would claim at trial were co-conspirators, the approximate dates and locations of meetings and conversations, and the date each person joined the conspiracy. *Id.* at 30.

The government then relies on *United States v. Han*, 280 F. Supp. 3d 144 (D.D.C. 2017), a single-defendant securities fraud case in which the defendant asked the government to "identify with particularity the conduct" underlying the charges against that defendant, "for the 'basis' of the fraud allegations," and other specific details about the charges and false statements at issue.

4

*Id.* at 149. The circumstances in *Han* bear no similarity to this alleged sixteen-defendant international conspiracy involving an unknown number of unindicted co-conspirators. More importantly, however, the government fails to mention the most salient point about why the court refused the request in *Han*—specifically, the defendant "participated in ***two separate reverse-proffer sessions***, during which 'the Government discussed its case in detail and provided Defendant with a set of exemplar documents illustrating' the fraud." *Id.* No such discovery occurred here with Concord or any of the sixteen charged defendants.

The government then relies on *United States v. Brodie*, 326 F. Supp. 2d 83 (D.D.C. 2004), for an example of where a court denied a request for evidentiary details. That case involved a limited 3-person mortgage fraud conspiracy in which the court ordered the government to disclose the names of the other alleged co-conspirators referred to in the indictment. *Id.* at 91. In ordering that disclosure, the court cited—like Concord here—*United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998); and *United States v. Hsia*, 24 F. Supp. 2d 14, 30-31 (D.D.C. 1998). The *Brodie* court denied the remainder of the defendants' requests for a bill of particulars but offered no analysis, instead stating only that the "charges against the defendants are detailed and alleged with particularity," and that the "discovery provided by the government has been voluminous." *Id.* at 92. By stark contrast, the allegations in the Indictment are inadequate and provide no detail about what specific officers or employees of Concord are alleged to have done that could create liability for the corporate entity.

Finally, the government cites *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309 (D.D.C. 2012), a case that, as the government mis-frames it, would appear to be highly persuasive. Opp. 4 (quoting *Sanford* for the proposition that a bill of particulars "is intended to give the defendant

5

only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation . . .").[1] *Sanford* involved a conspiracy charge against a ship's owner and two of its officers involving illegally discharge of oil-contaminated sludge and bilge waste from a vessel at sea. *Id.* at 311. The superseding indictment at issue in that case included the end dates for the twenty voyages on which the illegal conduct allegedly occurred; identified the specific defendant alleged to have engaged in or directed the illegal conduct; and identified the specific nature of the illegal conduct. *Id.* at 314-15. The government provided in discovery the ship's records indicating who was on the crew and the locations of the vessel on each day of each voyage. *Id.* at 317. The court denied the requests for the precise location of the vessel at the time of each illegal discharge, the quantity of oil discharged, and the specific date of each illegal discharge. *Id.*

The grounds of denial in *Sanford* are, however, particularly illuminating as they relate to this case. First, with respect to the identities of co-conspirators, the court noted that the defendants could easily identify who was aboard the ship at the times identified in the indictment: "When a ship is in the middle of the sea, there is a finite number of people on board and a finite list of crew members. As the owner of the ship, Sanford is in the best position to know the full list of crewmembers aboard during the [alleged conspiracy]." *Id.* at 318. Here, no such limitation exists, as the Indictment potentially involves a cast of hundreds, spread out across the globe, engaged in myriad activities that had nothing to do with Concord. Second, the court in *Sanford* also took pains to note that the allegations specific to the two individual defendants were sufficient, because they were frequently identified by name, and there was "no mystery that

---

[1] The government fails to note that this quoted language is from an unpublished district court decision from the Middle District of Pennsylvania, *United States v. Baker*, No. 8-00075, 2010 WL 936537, at *2 (M.D. Pa. Mar. 15, 2010). *See Sanford*, 841 F. Supp. 3d at 316.

Defendants Rolando Ong Vano and James Pogue were responsible for maintaining the [log book] on behalf of Defendant Sanford Ltd. because they served as the Chief Engineers of the vessel, and supervised the engineering crewmembers." *Id.* (internal quotation marks omitted). Here, the Indictment is much more circumspect about Concord's role in a much broader conspiracy, and attributes nearly all of the allegations to "Defendants and their co-conspirators." Finally, and critically omitted from the government's description of the *Sanford* holding, the court noted that the government had provided defendants with a summary of the anticipated testimony in the case, and that defendants would have the opportunity to depose the witnesses prior to trial. *See id.* at 317. No such discovery has been provided or offered in this case.

### B. Discovery is not the panacea the government makes it out to be

The government points without any specificity to the discovery it has provided as offering the requested information in "some other form." Opp. 7. This argument overstates the utility of the government's dump of nearly four million documents, some seventy-five percent of which are marked as "sensitive," and cannot be shared or even discussed with Concord's officers or employees—the only individuals who can provide the needed context for interpreting those documents. Put another way, the government's reliance on the voluminous discovery is based on a presumption that defense counsel (without the aid of Concord's officers or employees) will be able to make heads or tails out of a collection of four million documents. Under these circumstances, that presumption is one of guilt—not innocence—and runs contrary to the most "bedrock[,] axiomatic and elementary principle . . . at the foundation of the administration of our criminal law." *In re Winship*, 397 U.S. 358, 363 (1970) (discussing the presumption of innocence) (internal quotation marks omitted); *see also Trie*, 21 F. Supp. 2d at 21 ("Not only does the government's position presume that the defendant knows what the government alleges

7

that he did and with whom he dealt and therefore has all the information he needs, a premise inconsistent with the presumption of innocence, but it smacks of gamesmanship.").

Moreover, the government has not responded to the substance of Concord's argument as it relates to discovery. Instead, it does exactly what this court has said it cannot do, that is, respond to a bill of particulars by pointing to "the voluminous discovery already provided . . . ." *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006). This is not enough in any case, but it is particularly deficient in the unique circumstances of this case, where the government has provided very little in the way of context to help Concord use the proffered discovery to help it understand the charges against it. *See Butler*, 822 F.2d at, 1193 (recognizing that a bill of particulars can be used to ensure that the defendant understands the charges and is able to prepare a defense).

The government also argues that the "key document collections" it provided pursuant to the Court's instruction are sufficient for Concord to understand the charges against it. Opp. 7, 8. This is either an overstatement of the nature of the key documents or the government misunderstands Concord's requests. As the government has stated repeatedly, the key documents provided relate to particular allegations in the Indictment and, as such, provide little insight beyond what is already in that document. *See, e.g.,* Transcript of March 7, 2019 Motion Hearing at 9:4-8 (prosecutor explaining that the key documents collection "was intended to assist the defense in identifying the documents that the government believed were most material to the allegations in the indictment"). In other words, the key documents are those that seem to support the specific allegations in the Indictment. By contrast, Concord is seeking information about what is alluded to but not specified in the Indictment, such as the "hundreds" of social media accounts, group pages, and email accounts that are alleged to have been part of the conspiracy

but not identified in the Indictment. Mot. 10. As such, it is disingenuous for the government to characterize a request to identify these accounts generally as an impermissible "preview" of the government's evidence at trial. Concord has not asked for specific postings or emails, nor information about when or where they were posted, but rather requests that the government identify the account and the persons who allegedly engaged in the activity related to it. *See, e.g.,* Dkt. 104-1 ¶¶ 32, 34, 36, and 40 (requesting the identity of the social media accounts, thematic group pages, Twitter accounts, and web-based email accounts, and the identity of all persons who engaged in the activity alleged in the Indictment).

Similarly, the government asserts that the discovery includes ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Government's Supplement 1, arguing that the information Concord seeks in its motion is available in some other form and a bill of particulars is not necessary. The problem with this argument is that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ So while the accounts the government alleges are implicated by the conspiracy may be buried in the discovery dump of four million documents, Concord should not be forced to waste pre-trial preparation time guessing which accounts the government believes were used by the conspirators. *See* Mot. 11. Moreover, this disparity, at root, illustrates the way in which the government has actually burdened Concord's trial preparation, by forcing it to navigate massive amounts of irrelevant and unnecessary information while trying to determine what is necessary.

As a final matter, the volume of discovery at issue here counsels in favor of a bill of particulars, not against it. As noted, Concord seeks to clarify the allegations against it, but merely pointing to millions of documents of discovery only serves to further muddy the water,

9

*see Anderson*, 441 F. Supp. 2d at 19, particularly where Concord enjoys a presumption of innocence. As noted above, by seeking a bill of particulars, Concord is trying to determine which accounts the government alleges were part of the conspiracy. Thus, when the government cites boilerplate language discussing "only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation," it ignores the problem caused at the opposite extreme—that is, so much information that the defendant is unable to conduct an investigation that helps it to prepare for trial. *Sanford*, 841 F. Supp. 2d at 316. That is the situation here, and a bill of particulars is necessary.

      **C.    This Court routinely orders the government to disclose the names of alleged unindicted co-conspirators**

To the extent that the government addresses co-conspirators' identities as a stand-alone category of information, that argument, too, lacks merit. As to the alleged facts, the government proclaims that "the unindicted co-conspirators referenced in the indictment are the officers and employees of Concord and the [IRA] who participated in the alleged criminal conduct." Opp. 8. There are two fundamental problems with this argument. First, it ignores the presumption of innocence to which Concord is entitled, and instead impermissibly presumes that Concord participated in the alleged conspiracy with all of the alleged conspirators and knows what they allegedly did. *Trie*, 21 F. Supp. 2d at 21. Second, and relatedly, it assumes that Concord is intimately familiar with IRA, an unrelated legal entity and co-defendant, such that Concord would know who was an officer or employee of IRA at any particular time.

As to the law, the government offers only the *Sanford* case for the proposition that this Court has denied a bill of particulars motion seeking co-conspirator identities. However, as discussed, *Sanford* was unique because it involved vessels at sea; thus, the corporate defendant was "keenly aware of the identities of the crewmembers of its vessel,"—indeed, as the vessel's

owner, it was "in the best position to know the full list of crewmembers aboard." 841 F. Supp. 2d at 318. No such limitation exists here, nor are the identities of far-flung co-conspirators readily identifiable to a Russian company that had absolutely no contact with those individuals.

The government's reliance on *United States v. Bazezew*, 783 F. Supp. 2d 160 (D.D.C. 2011), serves to further underscore Concord's point. As the government notes, the court granted a bill of particulars motion in that case because the indictment "'provide[d] very little information' and alleged 'only a single overt act' by each defendant." Opp. 8 (quoting *Bazezew*, 783 F. Supp. 2d at 168). As noted above, the same is true here, where the government failed to identify more than one paragraph in its "eight-count, thirty-seven page indictment" that implicated Concord, Opp. 1, and even then, "provide[d] very little information" about Concord beyond vague and ambiguous conduct alleged in the Indictment. *Bazezew*, 783 F. Supp. 2d at 168. In fact, while the *Bazezew* court noted that allegations of a single overt act by each defendant was insufficient, the Indictment here does not include even that; there is not a single overt act attributed specifically to Concord. Under those circumstances, Concord cannot adequately prepare for and avoid surprise at trial.

### D. The government offers no clarity as it relates to definitions

The final category of information the government addresses is definitions for the "unnecessarily vague" terms used in the Indictment. *United States v. Hubbard*, 474 F. Supp. 64, 80 (D.D.C. 1979). Notably, the government does not offer an explanation for how "significant funds," "sow[ing] discord in the U.S. political system," "derogatory information," and "disparaging Hillary Clinton" are adequately specific, and instead makes the boilerplate statement that they are "sufficiently clear" as a basis for why the government owes no further explanation. Opp. 9-10. Just because the government says it is so does not make it so. Merely

insisting that these terms are adequately defined does not offer the clarity needed for Concord to prepare for trial—nor does it meet Rule 7's requirements. *Bazezew*, 783 F. Supp. 2d at 168.

The government again misdirects when it argues that Concord's request for clarity with respect to terms like "interfere with elections and political processes," "impairing, obstructing and defeating the lawful functions of the government," and "interfering with the U.S. political and electoral processes," is improper because the Court determined in connection with Concord's Motion to Dismiss that the Indictment identifies the lawful government functions at issue. Opp. 10. The government ignores Concord's broader point that these phrases include unnecessarily vague terms like "interfering" and "defeating," which should be defined. Moreover, the government's argument that the Indictment survived a motion to dismiss confuses the standard for dismissing the indictment with the clarity needed for a defendant to adequately prepare for trial. *See, e.g., United States v. Brown*, No. 07-75, 2007 WL 2007513, at *16 (D.D.C. July 9, 2007) (granting motion for bill of particulars while recognizing that the indictment contained sufficient detail to withstand a motion to dismiss).

### III. Conclusion

The government's Opposition to Concord's Motion relies upon nothing more than boilerplate statements about bills of particulars generally and the government's own *ipse dixit*. This tactic deprives Concord of the ability to adequately understand the charges against it and to use that understanding to prepare for trial. In these circumstances, the law demands more and it should. A defendant, whether individual or corporate, is entitled to know the basic particulars of the case against it. This case is no exception and Concord's Motion should be granted.

Dated:  April 8, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/*Eric A. Dubelier*
Eric A. Dubelier
Katherine Seikaly
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com