UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CONCORD MANAGEMENT & CONSULTING LLC,<br><br>　　　*Defendant.* | Criminal Action No. 18-cr-32-2 (DLF) |

## MEMORANDUM OPINION & ORDER

Before the Court is defendant Concord Management & Consulting LLC's Motion for a Bill of Particulars, Dkt. 104. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.     BACKGROUND

The indictment charges Concord and others with conspiring to defraud the United States by impairing the lawful functions of three government agencies: the Federal Election Commission (FEC), the Department of Justice (DOJ), and the Department of State (DOS). Indictment ¶ 9.[1] According to the indictment, the conspirators' ultimate goal was to sow discord among U.S. voters through divisive social media posts and political rallies. *Id.* ¶ 6.

That goal, by itself, was not illegal. But the indictment alleges that the means used to achieve it were. The conspirators apparently believed that their divisive messages would fall on deaf ears unless they were perceived to come from U.S. nationals. So the conspirators resolved to obscure their Russian identities and affiliations from the public. *See, e.g., id.* ¶¶ 4, 6–7. The problem is that various federal laws require foreign nationals to disclose certain information

---

[1] The facts in this section are drawn solely from the allegations in the indictment.

about themselves and their activities to U.S. agencies. *Id.* ¶ 1. As relevant here, the Federal Election Campaign Act (FECA) requires disclosure of certain political expenditures; the Foreign Agent Registration Act (FARA) requires persons who engage in certain activities on behalf of foreign entities to register as foreign agents; and DOS requires foreign nationals wishing to enter the United States to provide truthful answers to questions on visa applications. *See id.* ¶¶ 25–27. If Concord and its conspirators had complied with these requirements, they would have had to disclose their Russian identities and affiliations to U.S. regulators, jeopardizing their ability to masquerade as U.S. nationals online.

Faced with this obstacle, the defendants and their co-conspirators agreed to impair the lawful functions of the FEC, DOJ, and DOS in "administering federal requirements for disclosure of foreign involvement in certain domestic activities." *Id.* ¶ 9; *see also id.* ¶¶ 25–27 (describing the disclosure requirements administered by each agency). The defendants and their co-conspirators impaired these functions directly by failing to report expenditures under FECA, failing to register as foreign agents under FARA, and providing false statements on visa applications. *Id.* ¶ 7. And they did so indirectly by using virtual private networks (VPNs) to conceal the Russian origins of their online activity, *id.* ¶ 39, and by destroying evidence to avoid detection by U.S. investigators, *id.* ¶ 58. Meanwhile, the conspirators conducted their "information warfare" efforts online, using fictitious U.S. personas and stolen U.S. identities to inflame public opinion on various political issues and candidates. *Id.* ¶ 10.

The indictment identifies fifteen of Concord's co-conspirators—two entities, Internet Research Agency (IRA) and Concord Catering, and thirteen individuals, *id.* ¶¶ 10–24—and provides a detailed description of the manner and means used to carry out the conspiracy, *id.* ¶¶ 29–58. It also lists at least 26 overt acts taken in furtherance of the conspiracy. *See id.* ¶¶ 59–

85. Despite these details, Concord seeks further clarification of the 85-paragraph indictment through a bill of particulars.

## II. LEGAL STANDARD

Under the Federal Rules of Criminal Procedure, an indictment need only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), but a "court may direct the government to file a bill of particulars" clarifying the allegations in the indictment, *id.* 7(f). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). "[I]f the indictment is sufficiently specific," however, "or if the requested information is available in some other form, then a bill of particulars is not required." *Id.*

"A bill of particulars properly includes clarification of the indictment, not the government's proof of its case." *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 174 (D.D.C. 2015) (internal quotation marks omitted). "[A] bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). In rare circumstances, a bill of particulars might be appropriate even if what it seeks is "an identification, within reasonable limits, of information [already] in the possession of the accused" or "information" that is "evidentiary in nature." *United States v. U.S. Gypsum Co.*, 37 F. Supp. 398, 402–03 (D.D.C 1941). But a bill of particulars is inappropriate if "by reasonable investigation in the light of information contained in the indictment, or otherwise furnished by the prosecution," the defendant could avoid "prejudicial[] surprise[]." *Id.* at 404.

In deciding whether to order a bill of particulars, "the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial." *United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks omitted). Ultimately, "the determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court." *Butler*, 822 F.2d at 1194.

## III.  ANALYSIS

Concord has submitted a total of fifty-one separate requests for clarification. Distilling those requests into categories, Concord seeks a bill of particulars that:

- Identifies all unindicted co-conspirators known to the Government;

- Identifies the particular conspirator or conspirators who completed each conspiratorial act alleged in the indictment;

- Identifies certain statutory or regulatory provisions and violations alleged or alluded to in the indictment;

- Identifies certain bank accounts, social media accounts, email accounts, and VPNs referenced in the indictment;

- Provides information about corporate entities referenced in the indictment;

- Provides definitions for various terms used in the indictment;

- Clarifies the specific acts attributed to Concord in the indictment; and

- Identifies persons other than co-conspirators (including victims) referenced in the indictment.

*See* Concord's Mot. Ex. A., Dkt. 104-1.  The Court will address each category in turn.

### A. Identifying Unindicted Co-Conspirators

First, Concord seeks a list of all unindicted co-conspirators known to the government. The D.C. Circuit has not resolved whether and when a defendant is entitled to learn the identities of unindicted co-conspirators through a bill of particulars, and other Circuits and lower courts are divided on the subject. *Compare, e.g.*, *United States v. Crayton,* 357 F.3d 560, 568 (6th Cir. 2004) ("[T]he Government is not required to furnish the name of all other co-conspirators in a bill of particulars."); *United States v. Needham*, No. 04 CR.196 DAB, 2004 WL 1903061, at *3 (S.D.N.Y. Aug. 26, 2004) (observing that courts in the Second Circuit "have been highly reluctant to require a bill of particulars when a defendant has asked for specific identities of co-conspirators"), *with United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979) (observing that "[a] bill of particulars is a proper procedure for discovering the names of unindicted conspirators," and "[i]t is not uncommon for the trial judge to require the government to disclose their names"); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51–52 (D.D.C. 2007) (observing that, in this District, the "disclosure of the names of alleged co-conspirators is not uncommon in conspiracy cases, and particularly in cases alleging nonviolent offenses"); *see also United States v. Daosavanh*, No. 12-50008-011, 2012 WL 12902761, at *1 (W.D. Ark. Apr. 4, 2012) (noting a "split of authority regarding whether a motion for a bill of particulars is the proper procedure for discovering the names of unindicted co-conspirators"). In this Court's view, a bill of particulars is rarely the proper vehicle for obtaining the identities of unindicted co-conspirators. Typically, requesting this information amounts to a plea for discovery outside the carefully crafted discovery rules delineated by Congress and the Supreme Court, with the added tactical benefit of committing the government to specific factual positions before it has developed its case-in-chief or, in some cases, completed its investigation.

This case, however, is not the typical case. It involves three foreign corporate defendants, one of which employed "hundreds of individuals" in support of the conspiratorial objective. Indictment ¶ 10. The conspiracy targeted three separate U.S. agencies. *Id.* ¶ 9. And it was carried out largely on foreign soil by at least thirteen individuals who are beyond the jurisdiction of this Court. Although the government has provided the defense with extensive discovery, the volume of that discovery exceeds four million documents, and at the government's request, the Court has restricted access to the vast majority of those documents to protect national security concerns, pending investigations, and personally identifiable information. Finally, the theory of criminal liability in this case, while sound, is to some extent unprecedented—which is no surprise, given the unprecedented nature and scale of the operations alleged in the indictment. All of these factors, together, weigh in favor of ordering the disclosure of co-conspirator identities to reduce any potential for unfair surprise at trial.

The government counters that the indictment provides the defendants with sufficient details about the conspiracy charge to enable Concord to understand the charges and prepare its defense. The government further argues that Concord can discern the co-conspirators' identities through its own diligent investigation in combination with discovery materials the government has already produced. *See Sanford*, 841 F. Supp. 2d at 318 (denying disclosure of co-conspirator identities where the conspiracy took place entirely on a ship at sea and the defendant could focus its investigation on the "finite number of people on board"); *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 159–51 (D.D.C. 2015) (denying disclosure of co-conspirator identities where the government had already identified many, if not all, of the co-conspirators through wiretap recordings and text messages produced in discovery).

The indictment does contain a thorough description of the conspiracy, including its manner and means and at least twenty-six overt acts. Even so, Concord's ability to identify the co-conspirators is hampered by the unique circumstances of this case—most significantly, by the strict limitations the government has sought on the large volume of discovery. This factor coupled with the others already noted—the potentially large number of co-conspirators involved, the presence of multiple corporate defendants, and the nature and scope of the international conspiracy—make this the rare case in which the Court deems it appropriate to order the government to disclose the identities of Concord's co-conspirators before trial. But, following the practice of other courts, the Court will limit the bill of particulars to persons or entities that the government plans to identify as co-conspirators at trial. *See United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) (requiring disclosure of "the names of all persons the government would claim at trial were co-conspirators"). In other words, the government need not release co-conspirator identities except to the extent the government plans to identify the individuals as co-conspirators at trial.

**B.     Identifying the Co-Conspirators Responsible for Each Act in the Indictment**

In addition to seeking a master list of co-conspirators, Concord asks the government to go further and specify which conspirators committed each act alleged in the indictment. This request goes too far. *See United States v. Martinez*, 764 F. Supp. 2d 166, 174 (D.D.C. 2011) (an indictment "need not spell out which co-conspirator committed which conspiratorial act"); *Palfrey*, 499 F. Supp. 2d at 51 ("Although Defendant is entitled to the names of the alleged co-conspirators, . . . the Government is not required to disclose its evidence as to the details of the activities of those co-conspirators[.]"); *United States v. Bazezew*, 783 F. Supp. 2d at 168 (D.D.C. 2011) (granting request for "the identities of all persons the government claims to have been co-conspirators during the course of the alleged conspiracy" but denying request for "the identity of

7

all persons known by the government to have participated in each alleged overt act"). *But see United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (ordering "a bill of particulars identifying, for each relevant paragraph of the indictment, which co-conspirator performed the specified acts").

"Unlike discovery, a bill of particulars is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation and not to provide the defendant with the fruit of the government's investigation." *Sanford*, 841 F. Supp. 2d at 316 (alteration adopted and internal quotation marks omitted). "The Court must strike a prudent balance between the legitimate interests of the government and those of the defendants." *Id.* (internal quotation marks omitted). The detailed allegations in the indictment, combined with the list of co-conspirators the government plans to introduce at trial and the additional relief the Court orders herein, *infra* III.D & E, provide Concord with more than enough information to conduct its own investigation of the charges against it. That remains true notwithstanding the discovery challenges discussed above. Concord is not entitled to preview the government's evidence, and at this stage, the government need not disclose the precise details supporting the allegations in the indictment. *See Sanford*, 841 F. Supp. 2d at 317 ("[T]he general rule in conspiracy cases is that the defendant is not entitled to obtain detailed information about the conspiracy in a bill of particulars." (internal quotation marks omitted)); *see also United States v. Baker*, No. 08-cr-0075, 2010 WL 936537, at *1–6 (M.D. Pa. Mar. 15, 2010) (denying requests to identify individuals associated with particular paragraphs in the indictment because granting the requests would be tantamount to requiring the government to disclose its witness list and theory of the case). Accordingly, the

Court will deny Concord's request to the extent it seeks the identity of each co-conspirator associated with each paragraph of the indictment.

      **C.**      **Identification of Accounts and VPNs Allegedly Controlled by Concord or its Co-Conspirators**

The Court will also deny Concord's request to identify specific bank accounts, social media accounts, email accounts, and VPNs referenced in the indictment. The substance of the allegations relating to these accounts is clear from the indictment, and the precise manner in which the government plans to prove them at trial is beyond the scope of a bill of particulars. The specific accounts used and controlled "are not material to the charge" against Concord, *Sanford*, 841 F. Supp. 2d at 317, and serve only as evidence of the underlying expenditures or deception alleged in the indictment.

Moreover, the government appears to have fully complied with its obligations under *Brady* and Rule 16. In doing so, it has produced over four million documents that almost certainly contain the account information Concord seeks. The Court recognizes that sorting through this large volume of materials is no easy task, particularly given the restrictions on access and dissemination in place under the current protective order.[2] But the government has mitigated this potential problem by voluntarily disclosing roughly 500 key documents it deems most relevant to the allegations in the indictment. Hr'g Tr. Mar. 7, 2019 at 7–9, Dkt. 108. Concord complains that this key document set "support[s]" only "the specific allegations in the Indictment" and thus merely tells Concord what it already knows. Concord's Reply at 8, Dkt.

---

[2] As the Court has repeatedly stressed, the current protective order was always intended as a temporary measure to facilitate early review by Concord's counsel while the parties resolved extensive pretrial motions. Now that this case is progressing to trial, the parties are briefing—and the Court will soon reassess—the terms of that protective order and any changes that may be necessary to enable Concord to prepare adequately for trial.

122. But, if so, that is a virtue, not a vice. If the government is not planning to rely on evidence beyond the scope of the specific allegations in the indictment, then it is difficult to see how Concord could be unfairly surprised by such evidence at trial. Put differently, the fact that the government's key documents set relates exclusively to the specific allegations in the indictment is a strong indication that the indictment itself has provided sufficient detail to put Concord on notice of the charges against it.

At any rate, even if the information Concord seeks is not currently contained in the key documents set, the government has agreed to disclose its entire exhibit list several months before trial, Hr'g Tr. Mar. 7, 2019 at 33, and the Court intends to order it to do so. If the specific accounts and VPNs Concord seeks will be introduced at trial, it is highly likely that they will be identified in either the key documents set or the Government's exhibit list well in advance of trial.

In short, the combination of the detailed allegations in the indictment, the extensive discovery already produced, the government's key documents set, and the government's forthcoming exhibit list make it implausible that Concord will be blindsided by specific account information for the first time at trial. Because this information is evidentiary in nature and is already—or soon will be—available in multiple forms, the government need not disclose it in a bill of particulars.

        D.      **Identification of FECA and FARA Violations**

Next, Concord seeks information related to the FECA and FARA provisions referenced in the indictment. *See* Indictment ¶¶ 9, 25–26. In particular, it asks the Government to (1) identify any conspirators who were required to report expenditures to the FEC or register as a foreign agent with DOJ, (2) identify the statutes and regulations described in paragraphs 25 to 27

of the indictment, and (3) clarify whether Concord or its agents are alleged to have violated FECA or FARA.  Concord's Mot. Ex. A ¶¶ 12, 23–26.

The Court will grant these requests in part, though not quite as Concord frames them.  In connection with Concord's second motion to dismiss the indictment, the parties and the Court invested significant time analyzing the government's theory of criminal liability and, specifically, the role that FECA and FARA violations play in the analysis.  Ultimately, the Court held that while the government was not necessarily *required* to allege FECA and FARA violations to establish a defraud-clause conspiracy, the indictment *did* allege such violations as one of several forms of deceptive conduct aimed at the United States.  *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 48–51 (D.D.C. 2018).[3]  In addition, the Court emphasized that the Government may ultimately have to prove these violations at trial to show that the deceptive acts directed at private parties were *also* intended to impair the FEC's and DOJ's functions "in administering federal requirements for disclosure." *Id.* at 51.  The Court reasoned that, while defraud-clause conspiracies do not formally depend on violations of other statutes, it would be difficult to tie the deceptive acts alleged in this case to FEC's and DOJ's administration of FECA's and FARA's disclosure requirements if those requirements did not actually apply to the conspirators.

---

[3] When the Court uses the word "violations," it does not mean *willful* violations that would support criminal penalties in the absence of an underlying defraud-clause conspiracy.  Instead, it refers generally to the failure to comply with FECA's and FARA's mandatory disclosure requirements.  Concord suggested at the motion to dismiss stage that the two concepts cannot or should not be separated in this case, but the Court disagreed.  *See Concord*, 347 F. Supp. 3d at 50 (explaining that the "substantive FECA and FARA provisions that require disclosure are separate from FECA and FARA's enforcement provisions," which limit criminal penalties to willful violations, and observing that FECA's enforcement provisions impose civil penalties for non-willful violations).

In other words, it will be difficult for the government to establish that the defendants intended to use deceptive tactics to conceal their Russian identities and affiliations from the United States if the defendants had no duty to disclose that information to the United States in the first place. For that reason, the specific laws—and underlying conduct—that triggered such a duty are critical for Concord to know well in advance of trial so it can prepare its defense.

The indictment alleges that the defendants agreed to a course of conduct that would violate FECA's and FARA's disclosure requirements, *see* Indictment ¶¶ 7, 25–26, 48, 51, and provides specific examples of the kinds of expenditures and activities that required disclosure, *see id.* ¶¶ 48–57. *Concord*, 347 F. Supp. 3d at 50. But the indictment does not cite the specific statutory and regulatory disclosure requirements that the defendants violated. Nor does it clearly identify which expenditures and activities violated which disclosure requirements. Accordingly, the Court will order the government to:

- Identify any statutory or regulatory disclosure requirements whose administration the defendants allegedly conspired to impair, along with supporting citations to the U.S. Code, Code of Federal Regulations, or comparable authority.

- With respect to FECA, identify each *category* of expenditures that the government intends to establish required disclosure to the FEC. *See, e.g.*, Indictment ¶ 48 (alleging that the defendants or their co-conspirators "*produce[d], purchase[d], and post[ed] advertisements on U.S. social media and other online sites* expressly advocating for the election of then-candidate Trump or expressly opposing Clinton") (emphasis added)). The government must also identify for each category of expenditures which disclosure provisions the defendants or their co-conspirators allegedly violated.

- With respect to FARA, identify each *category* of activities that the government intends to establish triggered a duty to register as a foreign agent under FARA. *See, e.g., id.* ¶ 48 (same); *id.* ¶ 51 (alleging that the defendants or their co-conspirators "*organized and coordinated political rallies* in the United States" (emphasis added)). The government must also identify for each category of activities which disclosure provisions the defendants or their co-conspirators allegedly violated.

To the extent Concord requests additional information about possible FECA and FARA violations—for instance, which entities or individuals allegedly violated FECA and FARA—its request is denied for the reasons stated in II.B.[4]

### E. Concord's Remaining Requests for Clarification

Lastly, Concord asks the government to provide information about corporate entities referenced in the indictment, to define certain terms used in the indictment, to clarify certain activities allegedly undertaken by Concord, and to identify certain individuals other than co-conspirators referenced in the indictment. The Court will deny most of these requests.

*First*, Concord requests detailed information about certain corporate entities referenced in the indictment, including their place and date of incorporation and a list of their incorporators. *See* Concord's Mot. Ex. A. ¶¶ 1, 19. This information is evidentiary in nature and immaterial to the charges in the indictment. Further, Concord can obtain this information on its own from public records or through its own reasonable investigation. The Court will therefore deny this request.

*Second*, Concord asks the government to define various terms used in the indictment. The Court will deny this request because the terms Concord seeks to define are either plain on their face or become clear through context. For example, "disparaging Hillary Clinton" has an obvious meaning. *Id.* ¶ 10. And other terms that might be ambiguous if read in isolation—such as "significant funds," *id.* ¶ 5, "computer infrastructure," *id.* ¶ 8, or "certain domestic activities," *id.* ¶ 13—are merely used to summarize more detailed allegations contained elsewhere in the indictment, *compare* Indictment ¶¶ 5, 8, 13, *with id.* ¶ 11 (explaining that Concord funded a

---

[4] The Court also denies Concord's request for additional information about statutes and regulations related to the issuance of visas, as the visa-fraud allegations in the indictment are sufficiently clear to put Concord on notice of the charges as they relate to DOS.

"monthly budget" in excess of $1,250,000); *id.* ¶¶ 39–40 (describing the conspirators' use of "virtual private networks" and "email accounts hosted by U.S. email providers" to obscure the Russian origins of their online activity); *id.* ¶¶ 25–27 (elaborating on the domestic activities that require disclosure to the FEC, DOJ, and DOS on reports, registration statements, and visa applications).

*Third*, Concord asks for clarification of its own role in the conspiracy. According to the indictment, Concord (1) provided funding, (2) recommended personnel, and (3) oversaw Internet Research Agency activities. *Id.* ¶ 11. To clarify these allegations, Concord asks the government to identify all "funds provided," "personnel recommended," and "activities overseen," and to identify each person alleged to have engaged in these activities on behalf of Concord. Concord's Mot. Ex. A. ¶ 15. The Court will deny the first two of these requests. The allegations related to funding are clear: Concord paid the Internet Research Agency's monthly budget, which exceeded 1,250,000 U.S. dollars, Indictment ¶ 11, and included "thousands of U.S. dollars" spent on social media advertisements, *id.* ¶ 35. As for recommending personnel, the substance of the allegation is clear, and Concord is not entitled to a preview of the evidence the Government will use to prove it. Likewise, paragraphs 12 and 13 describe activities Yevgeniy Viktorovich Prigozhin oversaw. *Id.* ¶¶ 12–13. However, it is unclear from the indictment whether Prigozhin engaged in these activities on Concord's behalf. To address this potential source of confusion, the Court will order the Government to clarify whether Prigozhin engaged in the activities described in paragraphs 12 and 13 of the indictment on Concord's behalf. And if Prigozhin did not act on Concord's behalf, the Court will direct the government to clarify which "activities" Concord is alleged to have overseen and the manner in which it oversaw them.

*Finally*, Concord requests the identification of individuals other than co-conspirators (including victims) referenced in the indictment. This information is not necessary to clarify the charges against Concord or to enable Concord to prepare for trial. Instead, it amounts to a request for a detailed preview of the government's evidence. Ordering the government to provide this information now would, in effect, force the government to hand over its witness list many months before trial. *See Baker*, 2010 WL 936537, at *1–6 (denying similar requests for the same reason). Moreover, some of the unidentified victims, such as "Campaign Official 1" and "Campaign Official 2" can be easily identified in the discovery materials or through Concord's own investigation because the indictment specifies the email address the defendants and their co-conspirators allegedly used to contact these officials. *See* Indictment ¶¶ 76, 78. Concord's final request will therefore be denied.

Although the Court has analyzed Concord's requests by category, it has reviewed each of Concord's 51 requests and finds that every request not specifically granted in this decision is either beyond the scope of a bill of particulars, sufficiently addressed by the allegations in the indictment, or available to Concord in another form. Accordingly, any remaining requests not already addressed in this opinion will be denied.

The Court recognizes that ordering a bill of particulars risks committing the government to positions that might change as it discovers new information. *See Jackson v. United States*, 359 F.2d 260, 263 n.1 (D.C. Cir. 1966) (explaining that a variance between a bill of particulars and evidence at trial may result in a reversal of the defendant's conviction on appeal). To address that concern, the Court will allow the government to supplement its bill of particulars if it obtains new information after responding to the order below. *See United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998).

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Concord's Motion for a Bill of Particulars, Dkt. 104, is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that the government shall provide a Bill of Particulars on or before July 7, 2019. The Bill of Particulars must:

1. Identify all unindicted co-conspirators that the government intends to establish as co-conspirators at trial;

2. Identify all statutory or regulatory disclosure requirements whose administration the defendants allegedly conspired to impair, along with supporting citations to the U.S. Code, Code of Federal Regulations, or comparable authority;

3. Identify each category of expenditures that the government intends to establish required disclosure to the FEC, along with supporting citations to the U.S. Code, Code of Federal Regulations, or comparable authority;

4. Identify each category of activities that the government intends to establish triggered a duty to register as a foreign agent under FARA, along with supporting citations to the U.S. Code, Code of Federal Regulations, or comparable authority;

5. Clarify whether the actions Prigozhin allegedly performed in paragraphs 12 and 13 of the indictment are alleged to have been performed on Concord's behalf. If they are not, identify the "activities" overseen by Concord and describe the manner in which Concord oversaw them.

**ORDERED** that the remainder of Concord's request for a bill of particulars is **DENIED**.

_____
DABNEY L. FRIEDRICH
United States District Judge

May 24, 2019