**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC

Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

**FILED UNDER SEAL PURSUANT
TO MAY 29, 2019 ORDER**

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
SUPPLEMENTAL BRIEF REGARDING ITS MOTION FOR SHOW CAUSE ORDER**

Pursuant to the Court's May 29, 2019 sealed order, ECF No. 137, Defendant Concord

Management and Consulting LLC ("Concord" or "Defendant"), through counsel, submits this

supplemental brief regarding its Motion for Show Cause Order, ECF No. 129.

## I.      INTRODUCTION

As set forth at the May 28, 2019 sealed hearing, Concord has established a prima facie

case that the government violated Rule 57.7(b). The Court has so found. *See* Sealed Minute

Order, May 23, 2019 (". . . it appears that a violation of Local Criminal Rule 57.7 has

occurred."). The Attorney General admitted he acted willfully by overriding Department of

Justice regulations to release as much of the Mueller Report as possible. *See Hr'g on Justice

Dep't Investigation of Russian Interference in 2016 Presidential Election Before the Senate

Judiciary Comm.* 116th Cong. (May 1, 2019), ECF No. 131-1 ("I was making a decision as to

whether or not to make [the Mueller Report] public and I effectively overrode the regulations,

used discretion to lean as far forward as I could to make that public . . ."). From AG Barr's

perspective, the most important thing to redact was grand jury material. Ex. A, Interview by Jan

Crawford, "CBS This Morning," with William Barr, Attorney General, U.S. Department of

Justice,      in      Anchorage,      AK      (May      30,      2019),      *available      at*

https://www.cbsnews.com/news/william-barr-interview-full-transcript-cbs-this-morning-jan-

crawford-exclusive-2019-05-31/ ("My intent was to get out as much as I could as quickly as I

could. To do that I would have to, as a matter of law, make sure that grand jury material was

redacted because regardless of the political posturing that's going on it's not lawful for me to just

make that public.") ("Barr's CBS Interview").

The government has not rebutted that prima facie case despite the opportunity to do so.

Despite the Court's May 23, 2010 Sealed Minute Order that the government "have present at the

hearing a representative who is familiar with the decision making process that informed the

redactions to the Mueller Report," *id.,* the government did not bring a representative from the

Office of the Deputy Attorney General and did not offer any contemporaneous record about how

the redaction decisions were actually made.   Instead the government provided, in the form of

argument, what it "believe[d] . . . may have happened" and "supposition," as opposed to facts.

Sealed Tr. of Mot. Hr'g, 40:12, 40:19, May 28, 2019 ("May 28 Hr'g Tr.").   And worse, this

supposition and belief was demonstrably wrong.

First, the government "suppos[ed]" that the exemptions listed in the FOIA version of the

Report may not have been complete because of the color coding that appeared in the original

version of the Report.   May 28 Hr'g Tr. 40:3-25.   This for the purpose of suggesting that

redactions were made to protect Concord's right to a fair trial.   But in the original (color-coded)

version of the Report, most of the redactions to the both IRA section and Stone section were

white and labeled "Harm to Ongoing Matter" or "HOM."   *See* Report 14-35, 51-59, *available at*

www.justice.gov/storage/report.pdf ("Mueller Report" or "Report").   In the FOIA version of the

Report, the redactions in the Stone section of the Report contain references to at least six

different FOIA exemptions, including (b)(7)(B), whereas the redactions in the IRA section refer to only three exemptions, and never (b)(7)(B). *Compare* Report, *with* FOIA-Processed Report on the Investigation into Russian Interference in the 2016 Presidential Election (March 2019), *available at* https://www.justice.gov/oip/available-documents-oip (the "FOIA Report"). There is no evidence that the color-coding process resulted in the FOIA version of the report not containing all of the relevant FOIA exemptions used by the Attorney General.[1]

Second, the government denied that the Mueller Report characterized the evidence against the Defendant as "strong or that the Special Counsel personally believes the evidence to be strong or personally has confidence." May 28 Hr'g Tr. 13:2-4. Again, demonstrably wrong. The Report states that "the Special Counsel's investigation established that Russia interfered in the 2016 presidential election principally through two operations," one of which was the allegations against the Defendant Concord. Report 1. The Report states that the SCO "determined that Russia's two principal interference operations in the 2016 U.S. presidential election [one of which was the alleged actions of Defendant Concord] violated U.S. criminal law." Report 9. The Report states as a fact that Concord's activities constitutes "active measures" conducted by Russian security services. Report 14 ("[Concord's] operations constituted 'active measures' . . . a term that typically refers to operations conducted by Russian security services aimed at influencing the course of international affairs.").[2] The Report states

---

[1] Nor does the suggestion match what the Department of Justice told Judge Walton. During a May 2, 2019 hearing, the Department of Justice said that the May 6, 2019 version of the report with the FOIA exemptions would indicate "which FOIA exemptions [the government] believe[s] apply" to the redactions. Ex. B, Tr. of Status Conference, 4:17-5:6, Electronic Privacy Information Center v. Department of Justice, No. 19-810-RBW (D.D.C. May 2, 2019). There was no caveat that only the "strongest basis" for the redactions would be noted, as the government suggested here. *See* May 28 Hr'g Tr. 46:20-47:7.

[2] The Court argued that a footnote in a brief the government filed ten months ago previously connected Defendant Concord to the Russian government, and as such, a connection between

that the "[SCO's] Office concluded . . . that Prigozhin, his companies, and IRA employees violated U.S. law . . . ." Report 35. The Report highlights over twenty pages of alleged evidence. The notion that the Report does not contain the Special Counsel's characterization of the evidence and of Concord's guilt is completely at odds with the Report itself and subsequent statements of the government.

Third, at the hearing the government repeatedly stated that it considered L.Cr.R 57.7 in making redactions to the Concord portion of the report; but the actual evidence in the form of the FOIA version of the Mueller Report contains not one single redaction to support this statement. *See* FOIA Report. *Compare* May 28 Hr'g Tr. 10:23-11:6 (". . . the Office of the Deputy Attorney General did consult with other components within the Department . . . in an effort to ensure that the redactions in that section of the report were made consistent with the government's obligations, including its obligations under Rule 57.7"), *and id.* 16:12-16 ("But what I can say is that when the Office of the Deputy Attorney General made its determination about the redaction decisions in this section of the report, one of the reasons that some of the material was redacted was to comply with Local Rule 57.7," *with* FOIA Report (absent (b)(7)(B) FOIA exemption in the IRA section).

---

Concord and the Russian government was already made in the case. *See* May 28 Hr'g Tr. 33:19-34:8. The first problem here is that the government never made this argument on its own behalf, and as such, it creates an appearance that the Court is advocating on behalf of the government. Defendant Concord has raised this issue previously. Sealed Tr. of Mot Hr'g 24:25-25:7, Jan. 11, 2019. Similarly, the Court's denial of Defendant's Motion to Strike (ECF No. 135) before the government filed an opposition required by L.Cr.R. 47(b) creates an appearance that the Court is advocating on behalf of the government. Second, the statement was buried in a footnote of a pleading containing advocacy, not in a public report containing statements of evidence and conclusions of law. *See* Opp'n Def.'s Mot. Dismiss 2 fn. 2, Aug. 15, 2018, ECF No. 56. Finally, the statement has nothing to do with this pending case and instead involves alleged activity in Ukraine that is not alleged by the government to be criminal.

Fourth, the government stated at the hearing that "intense interest and [] intense pressure" created a "significant law enforcement interest" in releasing as much of the Mueller Report as possible. *See* May 28 Hr'g Tr. 16:23-25. But this is not true. There can be no legitimate "law enforcement interest" in the government releasing evidence and conclusions about a pending criminal case. The government's knowledge of this prohibition is evidenced by the redactions to the Stone portion of the report for the purpose of protecting Stone's right to a fair trial. Moreover, AG Barr admitted that the release of as much information as possible was for political purposes, that is, to satisfy "the body politic." *See* Barr's CBS Interview ("My intent was to get out as much as I could as quickly as I could . . . . I didn't think the body politic would allow us to go on radio silence for four weeks.").

Fifth, the government argued that it interpreted a February 21, 2019 gag order directed at Stone as applying to the government because if it did not do so the government could make public statements about the case and if Stone were to reply he could be penalized. May 28 Hr'g Tr. 5:12-9:5. The reasoning here is inane because regardless of the gag order the government was prohibited by the same local rule it violated here from making public statements in the Stone case; and the government knew it, and as such heavily redacted that portion of the Report to protect Stone's right to a fair trial.[3]

---

[3] Moreover, the government has not referenced the February 21, 2019 Order in *Stone* in its public statements regarding the Stone section of the Report, suggesting that its statements here are pure revisionist history. In particular, the government did not reference the February 21, 2019 Order in either of its Notices Regarding the Report of the Special Counsel filed in the *Stone* case. *See* Government's Notice Regarding Report of the Special Counsel, United States v. Stone, No. 19-cr-18-ABJ (D.D.C. Apr. 17, 2019), ECF No. 85; Government's Second Notice Regarding Report of the Special Counsel, United States v. Stone, No. 19-cr-18-ABJ (D.D.C. May 22, 2019), ECF No. 116. The April 17, 2019 Notice, filed the day before the public release of the Mueller Report, refers only to the February 15, 2019 Order entered pursuant to Rule 57.7(c). Similarly, the May 6, 2019 letter releasing the FOIA version of the Mueller Report refers to a court order in the *Stone* case "prohibiting counsel for the parties from marking statements to the media or in

In summary, the government has provided zero evidence to rebut its violation of Local Rule 57.7, and given the opportunity at the hearing, instead of producing a person with knowledge as ordered by the Court, made arguments that are inconsistent with the available facts and evidence.

## II.   LAW AND ARGUMENT

In response to the questions posed by the Court in its May 29, 2019 Order, Concord's position is as follows:

> **A.     Can and should the Court defer consideration of Concord's motion for an order to show cause until after trial, to ensure a fair and impartial trial?**

The Court does have discretion to defer consideration of Concord's Motion for Show Cause Order, but should not do so here because leaving the government's misconduct unpunished causes ongoing harm to Concord in the public and the jury pool continuing to believe that the improper extrajudicial statements are accurate and lawful.

It has long been recognized and established that a court is vested with power to punish for contempt, both by the inherent nature and constitution of the court and by statute. *See* 18 U.S.C. § 3691. Courts may choose to "defer judgment until [] completion [of the trial] . . . without extinguishing his power," instead of punishing contempt immediately. *Sacher v. United States*, 343 U.S. 1, 11 (1952). However, where courts have deferred adjudication of contempt proceedings, it has been in circumstances where doing otherwise would disrupt the ongoing proceedings. *See United States v. Vachon*, 869 F.2d 653, 660 (1st Cir. 1989) (where contemptuous conduct took place during trial, court did not act unreasonably in waiting to punish

---

public settings that pose a substantial likelihood of material prejudice to the case," language that tracks the February 15, 2019 Order, not the February 21, 2019 Minute Order that restricts statements by Mr. Stone. *See* Letter from DOJ Office of Information Policy to Jason Leopold, Senior Investigative Report, BuzzFeed News (May 6, 2019), ECF No. 131-2.

direct contempt until after jury retired in order not to disrupt the trial); *United States v. Schiffer*, 351 F.2d 91, 94-95 (6th Cir. 1965) (same); *United States v. Koubriti*, 305 F. Supp. 2d 723, 725 (E.D. Mich. 2003) (where improper extrajudicial statements took place before and during trial and no formal motion was made, court decided to defer its disposition of contempt until after trial).

Here the Court is faced with circumstances different from situations where speedy contempt punishment would prejudice the aggrieved party and/or delay the trial. On the contrary, the Court's inaction in the present case—where there is no ongoing trial to disrupt, and where Concord's request for contempt has already been publicly filed—will cause even more prejudice to Concord by serving as a silent endorsement of the government's conduct. On the other hand, the Court's swift and appropriate adjudication of contempt would serve to neutralize the existing prejudice and ensure that Concord's right to a fair trial is not compromised even further.

The facts of this case are different from those in the two cases raised by the Court during the May 28, 2019 sealed hearing where contempt punishment was deferred until after trial. *See* May 28 Hr'g Tr. 35:18-36:7, 38:12-20. In *Koubriti*, the court was faced with a situation in which the defendants were arrested a few days after the September 11, 2001 attack and the Attorney General made comments prior to and *during* the trial that linked the defendants to the September 11 terrorists, which spurred a flurry of media activity. 305 F. Supp. 2d at 725, 727, 735. While the defendants "expressed the intention to seek an order to show cause why the Attorney General should not be held in contempt of Court," they did not file a formal motion until after the trial. *Id.* at 735. The court elected to defer its final disposition of the matter until

after the trial in order to avoid disruption of ongoing pretrial preparations and the conduct of the

trial itself. *Id.* at 725. The decision does not reflect an objection by defendants to this delay.

At the same time, having waited until after the trial, the court lost an important ability to

add a remedial aspect to its contempt punishment:

> The trial in this case having already concluded, any sanction would not be
> designed to ensure future compliance with the Court's orders. Nor is there any
> way, under the circumstances, to meaningfully "compensate" the parties for any
> "losses" that might have been incurred as a result of the Attorney General's
> conduct. Rather, any sanction imposed at this juncture would be wholly punitive
> in nature, designed to "vindicate the authority of the court by punishing past acts
> of disobedience." Moreover, if it were determined that punishment was
> warranted under § 401(3), the Attorney General could do nothing at this point to
> "cure" any past violation and avoid this result.

*Id.* at 741–42 (citations omitted). Unlike the *Koubriti* court, this Court is not faced with a

potential disruption of an ongoing trial, and has a pending public Motion to Show Cause Order

before it.

The present facts are also different from the facts in *In re Morrissey*, 168 F.3d 134 (4th

Cir. 1999). In *Morrissey*, an attorney discussed a witness in a pending criminal trial at a press

conference approximately a month before the trial. *Id.* at 137. The trial judge responded by

issuing a first show cause order the next day and holding a hearing the following week where the

court "promised harsh punishment for future violators."[4] *Id.* Two weeks before the trial the

same attorney again made public statements about the case, and the court issued a second show

cause order. *Id.* The attorney's contempt trial was held several months after the criminal trial of

his client had concluded. *Id.* The attorney was convicted and punished by imprisonment and

suspension of his law license for two years. *Id.* While the *Morrissey* court was reviewing a First

Amendment challenge to the local rule and did not address its reasons for the delay in contempt

---

[4] There is no indication in the record that the show cause hearing or the judicial statement were
sealed.

adjudication, it is likely that the delay was to avoid disruption of the criminal trial—had the court acted immediately, and made the same findings, the criminal trial likely would have had to be postponed, the criminal defendant would have had to find another attorney on the eve of the trial, and his attorney's guilt may have been imputed to the defendant thus creating prejudice.

Justice requires that the Court to act now, when it can still meaningfully punish the wrongful conduct, and craft a punitive measure which will minimize prejudice to Concord and ensure that Concord receives a fair trial.  Delaying adjudication, on the other hand, creates a risk of further prejudice to Concord by serving as an apparent endorsement by the Court of the government's violation.[5]

**B.      If the Court concludes that the government has violated Local Criminal Rule 57.7(b), does the Court have discretion to decline to initiate contempt proceedings and to instead address the violation through alternative means, such as a Rule 57.7(c) Order, targeted voir dire questioning, and/or the Court's inherent disciplinary authority?**

Defendant Concord moved for a show cause order based on the government's violation of L.Cr.R. 57.7.  Motion for Show Cause Order, Apr. 25, 2019, ECF No. 129. The Court agreed that the government violated the local rule. *See* Sealed Minute Order, May 23, 2019.  As a technical matter the Court could decline to initiate a contempt proceeding and impose some other form of punishment, but the government has provided no reason why the Court should do so. The Court has discretion to impose sanctions on AG Barr and SC Mueller for violating L.Cr.R. 57.7(b) by exercising its inherent authority to control proceedings and ensure that all parties follow the Court's local rules.  Available sanctions run the gamut from outright dismissal of the

---

[5] Notably, at the May 28, 2019 hearing, the government did not argue that AG Barr's public statements did not violate Rule 57.7(b), but instead simply minimized them, characterizing them as "loose" and "ambiguous" language.  May 28 Hr'g Tr. 19:23, 20:8-9, 20:24-21:8.  In doing so, the government ignores the numerous instances of media reports that Concord cited in its Motion for Show Cause Order that seized upon the damaging conclusions in the Report.

Indictment, the imposition of fines, public admonishment, and/or requiring the government to provide Defendant Concord with the un-redacted Mueller Report.

The Court has the inherent authority to impose sanctions upon attorneys in a criminal case when necessary to maintain decorum and ensure the efficient and fair resolution of its cases. *See United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992); *see also Alexander v. FBI*, 541 F. Supp. 2d 274, 303 (D.D.C. 2008) ("Federal courts are endowed with a wide array of inherent powers to protect their integrity and prevent abuses of the judicial process." (Internal quotation marks omitted)). That inherent authority includes the ability to impose sanctions "for bad faith conduct" upon a showing of clear and convincing evidence that the sanctioned individual committed "misconduct that is tantamount to bad faith." *Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (citing *Wallac*e, 964 F.2d at 1219) (recognizing that "it is settled that a finding of bad faith is required for sanctions under the court's inherent powers"). That conduct, in turn, must have "some connection [to] a process of the court in the litigation before it." *Alexander*, 541 F. Supp. 2d at 303. While the Court is not required to impose a lesser sanction before imposing one that is particularly harsh (like holding a party in criminal contempt or dismissing an indictment), it certainly has the authority to do so. *See Shepherd v. ABC*, 62 F.3d 1469, 1479 (D.C. Cir. 1995); L.Cr.R. 57.23(b) and 57.26(a) (subjecting attorneys to the disciplinary jurisdiction of the Court for any alleged misconduct).

In criminal cases involving prosecutorial misconduct, this Court has recognized that dismissal of the indictment with prejudice may be an appropriate sanction. *See United States v. Slough*, 679 F. Supp. 2d 55, 60-61 (D.D.C. 2010). While dismissal is an extreme remedy, other lesser sanctions are also available, including: an admonishment from the court regarding compliance with court rules and orders; directing the attorney to make an apology on the record;

referral of the matter to the appropriate disciplinary authority; a public reprimand by the Court; or imposition of a fine. *See In re Smothers*, 322 F.3d 438, 442-43 (6th Cir. 2003) (discussing alternatives to criminal contempt where attorney had repeatedly been late to court appearances). However doing nothing, delaying, or doing something under seal, amounts to simply shielding the government's misconduct from public view despite the prejudice to Concord's right to a fair trial.

Regardless of the sanction the Court chooses, however, it should be publicly imposed now because doing so will minimize the prejudice to Concord and thus preserve its right to a fair trial. Specifically, sanctioning the government's conduct now will highlight the impropriety of the government's statements and potentially remove any taint that may have infected the jury pool as a result of those statements. Allowing the government to escape swift public punishment creates an appearance of bias where the Court has allowed a never-before-brought theory of criminal liability to proceed against the Defendant while at the same time declining to punish the government's clear violation of law.

C.     **If the Court enters an order regulating the parties' public statements about this case pursuant to Local Criminal Rule 57.7(c), what terms should that order contain? Specifically, how should the Court address the Mueller Report, which has already been disseminated publicly in its current form and which may or may not be disseminated with certain redactions removed, pending the resolution of negotiations between the Department of Justice and Congress and various other court matters?**

A Rule 57.7(c) order is unnecessary in this case because the provisions of Rule 57.7(b) are sufficient to ensure a fair trial—assuming the government abides by its obligations going forward. Nevertheless, the Court's May 29, 2019 Order is, for all intents and purposes, an order entered pursuant to Rule 57.7(c), and Concord believes its terms are appropriate in light of the government's misconduct. However, Defendant Concord believes that the May 29, 2019 Order,

the parties' supplemental briefing, and any subsequent hearings or orders should be unsealed. The Court's *sua sponte* decision to place these proceedings under seal is not supported by good cause and should not remain in place because it undermines the entire purpose of L.Cr.R. 57.7, which is to ensure that any party—including the government—cannot unilaterally negate the right to a fair trial by making improper public statements about a case with impunity.

L.Cr.R. 17.2(a) states that criminal proceedings shall be public. *Id.* ("Unless otherwise provided by law or by this Rule, all criminal proceedings, including preliminary examinations and hearings on pretrial motions, shall be held in open court and shall be available for attendance and observation by the public…"). This right of access is not extinguished simply because it arises in the context of a contempt proceeding. *See In re Oliver*, 333 U.S. 257, 266 (1948). L.Cr.R. 17.2(b) provides that closure of the Court must come at the request of or agreement by the defendant, which has not occurred here. *Id.* In fact, Concord has specifically objected to sealing the proceedings related to its show cause motion. May 28 Hr'g Tr. 26:18-20 ("I want the truth to be in the public record. This has nothing to do with getting headlines about anything. It's the truth in the public record.").

Courts have long recognized that the "operations of the courts and the judicial conduct of judges are matters of utmost concern." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978). To that end, courts recognize a "strong presumption"[6] in favor of the public's right of access to court proceedings. *See, e.g., In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001)

_____

[6] This case is distinguishable from cases involving grand jury matters, where Federal Rule of Criminal Procedure 6(e), and the related Local Criminal Rule 6.1 both mandate secrecy. *See, e.g. In re Grand Jury Subpoena No. 7409*, No. 18-41, 2019 WL 2169265, at *2 (D.D.C. Apr. 1, 2019) ("Given that this case is about a grand jury subpoena, these proceedings have largely been conducted under seal."); *Levine v. United States*, 362 U.S. 610, 617 (1960) ("Unlike an ordinary judicial inquiry, where publicity is the rule, grand jury proceedings are secret."). Because Concord's Motion has nothing to do with grand jury proceedings, those rules and the cases interpreting them do not apply.

(internal quotation marks omitted); *In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (noting that "what transpires in the court room is public property").  Public access is essential because "the means used to achieve justice must have the support derived from public acceptance of both the process and its results." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 570-71 (1980) (plurality opinion).  The right of access also allows the public "to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982); *see also Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) (stating that public access to criminal proceedings "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system").  The public's awareness of court proceedings and concurrent oversight role take on even greater importance where, as here, a prosecutor's judgment is called into question.  *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1036 (1991) ("Our system grants prosecutors vast discretion at all stages of the criminal process . . . . The public has an interest in its responsible exercise.") (citations omitted).

In order to overcome the presumption that court proceedings are to be open to the public, this Court must find that good cause for such closure exists.  "Where there is a First Amendment right of access to a judicial proceeding, the presumption [of access] can be overridden only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011) (internal quotation omitted); *see also* L.Cr.R. 17.2(b).  Here, good cause is lacking for two reasons.

First, during the May 28, 2019 hearing, neither the government nor the Court offered a compelling interest for why proceedings related to Concord's Motion to Show Cause had to be under seal beyond the Court noting a possibility (without elaboration) that proceeding publicly could further harm Concord's right to a fair trial and the due administration of justice.  May 28 Hr'g Tr. 26:8-11.  As courts have recognized, however, such "'stereotyped and conclusory statements'. . . do not establish good cause."  *See Romero v. Drummond Co.*, 480 F.3d 1234, 1247 (11th Cir. 2007) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).  But, even if the Court's proffered reasons did rise to the level of a compelling interest, Concord is willing to waive any further perceived prejudice that accrues due to holding public proceedings regarding its Motion for Show Cause Order.  *Id*. at 36:8, 38:21-39:1.

Second, Concord disagrees that proceeding publicly will harm its right to a fair trial by creating further prejudice.  To the contrary, the harm has already occurred, and sealing the proceedings related to Concord's Motion to Show Cause only diminishes the impropriety of the government's conduct by preventing a public airing of that conduct.  As the Supreme Court has recognized, "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence."  *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). Accordingly, public acknowledgement of the government's violation of the Local Rule—not more silence—will neutralize the harm that has already been caused. Put another way, the only way to remove the taint that may have infected the jury pool as a result of the government's conduct is to make the public aware of the fact that such statements were unlawful.

In sum, neither party moved to seal these proceedings, Concord objects to the sealing of the proceedings, and Concord disagrees that unsealing the proceedings will cause it further harm.

Under these circumstances the sealing of these proceedings or the imposition of any sanction against the government simply protects the government's violation of the rule of law from public scrutiny.

Dated:   June 5, 2019                                         Respectfully submitted,

                                                              CONCORD MANAGEMENT AND
                                                              CONSULTING LLC

                                                              By Counsel

                                                               /s/ *Eric A. Dubelier*
                                                              Eric A. Dubelier (Bar No. 419412)
                                                              Katherine Seikaly (Bar No. 498641)
                                                              Reed Smith LLP
                                                              1301 K Street, N.W.
                                                              Suite 1000 – East Tower
                                                              Washington, D.C. 20005
                                                              202-414-9200 (phone)
                                                              202-414-9299 (fax)
                                                              edubelier@reedsmith.com
                                                              kseikaly@reedsmith.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2019, I have caused a copy of the foregoing Supplemental Brief Regarding Defendant Concord Management and Consulting LLC's Motion for Show Cause Order to be filed under seal via CM/ECF and transmitted to the following counsel of record via email:

Jonathan Kravis
Deborah Curtis
Kathryn Rakoczy
U.S. Attorney's Office for the District of
Columbia
555 Fourth Street, NW
Washington, DC 20530

Jason B.A. McCullough
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530

By: */s/ Katherine J. Seikaly*
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, NW
Suite 1000 - East Tower
Washington, DC 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
kseikaly@reedsmith.com