# Exhibit A

Filed Under Seal

# Barr interview full transcript

**JAN CRAWFORD:** Mr. Attorney General, thank you very much for sitting down with us. So, obviously we saw the special counsel yesterday make that statement, he analyzed 11 instances where there were possible obstruction and then said that he really couldn't make a decision-conclusion on whether or not the president had in fact committed obstruction because of the existing OLC opinion in the legal counsel's office. Do you agree with that interpretation that that legal opinion prevented him from making a conclusion?

**WILLIAM BARR:** I am not sure he said it prevented him. I think what he said was he took that into account plus a number of other prudential judgments about fairness and other things and decided that the best course was not for him to reach a decision. I personally felt he could've reached a decision but—

**JAN CRAWFORD:** Was there anything that would've stopped him in the regulations or in those ... that opinion itself, he could've — in your view he could've reached a conclusion?

**WILLIAM BARR:** Right, he could've reached a conclusion. The opinion says you cannot indict a president while he is in office but he could've reached a decision as to whether it was criminal activity but he had his reasons for not doing it, which he explained and I am not going to, you know, argue about those reasons but when he didn't make a decision, the Deputy Attorney General Rod Rosenstein and I felt it was necessary for us as the heads of the Department to reach that decision. That is what the Department of Justice does, that is why we have the compulsory powers like a grand jury to force people to give us evidence so that we can determine whether a crime has committed and in order to legitimate the process we felt we had to reach a decision.

**JAN CRAWFORD:** Well, I mean, he seemed to suggest yesterday that there was another venue for this and that was Congress.

**WILLIAM BARR:** Well, I am not sure what he was suggesting but, you know, the Department of Justice doesn't use our powers of investigating crimes as an adjunct to Congress. Congress is a separate branch of government and they can, you know, they have processes, we have our processes. Ours are related to the criminal justice process we are not an extension of Congress's investigative powers.

**JAN CRAWFORD:** Now you have testified that when you met with Mueller at the Justice Department, you had that meeting, that you were surprised that he told you then that he was not going to reach a conclusion on obstruction.

**WILLIAM BARR:** Yes, Rod and I were both surprised by that.

**JAN CRAWFORD:** Did you ask him, look, we need you to make a conclusion on this? You should make a conclusion.

**WILLIAM BARR:** I wouldn't say I really pressed him on it. I was interested in his thinking on it and he explained his position, said he was still thinking it through and- and- but I didn't really press him nor did Rod.

**JAN CRAWFORD:** So, but you left that meeting thinking that he wasn't going to have a conclusion?

**WILLIAM BARR:** That's right.

**JAN CRAWFORD:** Do you feel because he didn't do that, did he fulfill his responsibility as special counsel? If you look at regulations, it seems to anticipate that you would get a confidential report explaining why he made a decision to either prosecute or decline to prosecute. He didn't do that, seems to me.

**WILLIAM BARR:** Right but on the other hand he did provide us a report and what he viewed to be the relevant facts. And that allowed us as the, as the leaders of the department to make that decision.

**JAN CRAWFORD:** What is the fundamental difference? Why...I mean, he said he couldn't exonerate the president. That he had looked at the evil there - these 11 instances of possible obstruction. He couldn't exonerate the president, if he could he would've stated so. You looked at that evidence and you did. I mean, what is the fundamental difference between your view and his?

**WILLIAM BARR:** Well, I think Bob said that he was not going to engage in the analysis. He was, he was not going to make a determination one way or the other. And he also said that he could not say that the president was clearly did not violate the law, which of course is not the standard we use at the department. We have to determine whether there is clear violation of the law and so we applied the standards we would normally apply. We analyzed the law and the facts and a group of us spent a lot of time doing that and determined that both as a matter of law, many of the instances would not amount to obstruction.

**JAN CRAWFORD:** As a matter of law?

**WILLIAM BARR:** As a matter of law. In other words, we didn't agree with the legal analysis- a lot of the legal analysis in the report. It did not reflect the views of the department. It was the views of a particular lawyer or lawyers and so we applied what we thought was the right law but then we didn't rely on that. We also looked at all the facts, tried to determine whether the government could establish all the elements and as to each of those episodes we felt that the evidence was deficient.

**JAN CRAWFORD:** Before you became attorney general you wrote a memo to the justice department looking at the -- the question and the legal standards for obstruction and suggesting that the president has the authority to say back off of the Flynn investigation and could have fired James Comey under his executive authority, how much - I mean when you're talking about, can you explain that a little more. When you're talking about your judgment that no obstruction

occurred based on the evidence that Mueller produced and your understanding of the law, can you explain a little more why wasn't that obstruction?

**WILLIAM BARR:** Well let's take the firing of Comey for example I think we would have said as a matter of law, and I'm not relying on my - my legal memo that I wrote as a private citizen but really on the views within the department of the people who think about these things and are responsible for framing the views of the department, and I think we would have said that as a matter of law the obstruction statutes do not reach facially valid exercise of core presidential authority or official authority even, decisions by the attorney general in administering the executive branch or litigation. But we didn't rely on that, we then looked at that issue let's take the again the firing of Comey. One of the elements is that you have to show that the act objectively speaking will have the probable effect of obstructing a proceeding and we don't believe that the firing of an agency head could be established as having the probable effect, objectively speaking, of sabotaging a proceeding. There was also we would have to prove corrupt intent, the report itself points out that one of the likely motivations here was the president's frustration with Comey saying something publicly and saying a different thing privately and refusing to correct the record. So that would not have been a corrupt intent. So for each of these episodes we thought long and hard about it, we looked at the facts and we didn't feel the government could establish obstruction in these cases

**JAN CRAWFORD:** When you see some of the criticism and you've gotten quite a bit of it that you're protecting the president that you're enabling the president, what's your response to that?

**WILLIAM BARR:** Well, we live in a hyper-partisan age where people no longer really pay attention to the substance of what's said but as to who says it and what side they're on and what it's political ramifications are. The Department of Justice is all about the law, and the facts and the substance and I'm going to make the decisions based on the law and the facts and I realize that's intention with the political climate we live in because people are more interested in getting their way politically. so I think it just goes with the territory of being the attorney general in a hyper-partisan period of time.

**JAN CRAWFORD:** The four page summary that you wrote, did you ask in that March 5th meeting for the special counsel to kind of redact all the grand jury material?

**WILLIAM BARR:** Yes, not redact it but highlight it so we could redact it, we would, so, you know, the report was over 400 pages, I knew that it was voluminous and coming our way in a few weeks. My intent was to get out as much as I could as quickly as I could. To do that I would have to, as a matter of law, make sure that grand jury material was redacted because regardless of the political posturing that's going on it's not lawful for me to just make that public.

**JAN CRAWFORD:** Not even to Congress?

**WILLIAM BARR:** Not even--

**JAN CRAWFORD:** So you could even give Congress, which of course is demanding that and threatening to hold you in contempt because you're not giving them the full report

**WILLIAM BARR:** That's right, and so--

**JAN CRAWFORD:** But by law you can't?

**WILLIAM BARR:** Right, and so because we were not involved in the investigation we would have no way looking at the report of determining what was grand jury material and what wasn't, so we had for a period of weeks been asking the special counsel's office to highlight the stuff so we could quickly process it for release and I guess--

**JAN CRAWFORD:** For a period of weeks you had asked for this material?

**WILLIAM BARR:** Yeah even before the March 5 meeting we had asked or raised the subject--

**JAN CRAWFORD:** And what was the response?

**WILLIAM BARR:** And then at the March 5 meeting I made it explicit and then after the March 5th meeting we asked..

**JAN CRAWFORD:** And what was the response?

**WILLIAM BARR:** We thought it was being-- we thought it was being done and I do believe they were putting in more footnotes in that would be necessary ultimately in identifying the material but whether the wires were crossed or whatever it didn't come in a form that identified the 6E material.

**JAN CRAWFORD:** And that was a surprise to you when you got the report?

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** It was.

**WILLIAM BARR:** And it immediately meant that you know it was going to be a period of weeks before we could get the report out if I had my druthers I would have liked to get the report out as quickly as possible.

**JAN CRAWFORD:** So instead, you turned this four page summary?

**WILLIAM BARR:** Right, because I didn't think the body politic would allow us to go on radio silence for four weeks. I mean, people were camped outside my house and the department and every- there was all kinds of wild speculation going on. Former senior intelligence officials who were purporting to have it- or intimating that they had inside information were suggesting that the president and his family were going to be indicted and so forth--

**JAN CRAWFORD:** And saying that publicly?

**WILLIAM BARR:** Saying that publicly. There was all kind of wild and--

**JAN CRAWFORD:** And you knew that to be false?

**WILLIAM BARR:** Yes, and it was wild and irresponsible speculation going on which the very--

**JAN CRAWFORD:** Wild and irresponsible. The former intelligence officials' speculation--

**WILLIAM BARR:** Right, and talking heads and things like that, and these things affect the United States' ability to function in the world. We have an economy. It could affect the economy. It can affect - it can affect our foreign relations during very delicate period of time with, you know, serious adversaries in the world. So I felt- that in order to buy time, in order to get the report out, I had to state the bottom line just like you're announcing a verdict in a case. My purpose there was not to summarize every jot and tittle of the report and every, you know, angle that - that Mueller looked into. But, just state the bottom line which I did in the four page memo.

**JAN CRAWFORD:** You didn't say in that four-page memo that the report would not exonerate the president on obstruction. That line--

**WILLIAM BARR:** I said that, yes. In the- in the- in my four-page memo, I said that Mueller did not reach a decision. He gave both sides and that- and then I quoted that sentence which is, while we didn't find a crime, we didn't exonerate the president. That was in the four-page letter.

**JAN CRAWFORD:** The- did not- we would so clearly state the preface to that.

**WILLIAM BARR:** Yeah.

**JAN CRAWFORD:** That, that was not in there, and there was some criticism that in the summary, and the attorney- I mean, the special counsel himself wrote the letter saying, People are misunderstanding. There's been some confusion, that the summary had caused some confusion--

**WILLIAM BARR:** Right, right.

**JAN CRAWFORD:** That perhaps, and he didn't say this, but the- the response was that you were too soft on the president, that actually the special counsel was a little sharper on obstruction.

**WILLIAM BARR:** Well again, I wasn't trying to provide all the flavor and nooks and crannies of the report. I was just trying to state the bottom line, and the bottom line was that Bob Mueller identified some episodes. He did not reach a conclusion. He provided both sides of the issue, and he- his conclusion was he wasn't exonerating the president, but he wasn't finding a crime either. And, for the purposes of the point, I think that that was what was required for the body politic because actually most of the letter then goes on to explain how Rod Rosenstein and I reached a decision and the criteria we applied in finding no obstruction.

**JAN CRAWFORD:** He wrote the letter taking issue, saying there caused- you had caused confusion. Did that catch you off guard?

**WILLIAM BARR:** Yeah, sure. I was surprised he just didn't pick up the phone and call me given our 30 year relationship, but--

**JAN CRAWFORD:** Why didn't he?

**WILLIAM BARR:** I don't, I don't know, but, as I said it in the hearing, I thought it was- the letter was a little snitty and staff-driven--

**JAN CRAWFORD:** Staff-driven?

**WILLIAM BARR:** Yeah. I personally felt, but we had a good conversation--

**JAN CRAWFORD:** Because otherwise you would have picked up the phone?

**WILLIAM BARR:** Right, well, which I did, and we had a good conversation. And I think, I think the matter is now been fully vetted, and I think he was concerned that there should be more context and texture to his work given, and that in the absence of that, the vacuum had been filled with media reports that were then causing confusion, and he wanted it clarified by putting more of an explanation of his reasoning out. And I said that I didn't want to put out dribs and drabs, I wanted the whole report out. And then I wrote a letter again to Congress saying, look, I didn't- this is not intended to be a full summary. Bob's thinking is reflected in the report. Everyone's going to have access to it. They should look at that to determine, you know, what Bob's reasoning was. So that's where we let it sit till the report was released.

**JAN CRAWFORD:** You said that you had wanted to release the report in full, and you largely have with the grand jury material being, of course, the exception.

**WILLIAM BARR:** Right. And in the second volume that's one tenth of one percent of the report has been taken.

**JAN CRAWFORD:** You, I just want to be clear on this. How long and how many, you expected the special counsel's office to redact that material, so to point out what should be redacted --

**WILLIAM BARR:** Right. Right.

**JAN CRAWFORD:** So the four-page summary would have been unnecessary?

**WILLIAM BARR:** Correct.

**JAN CRAWFORD:** You expected, could you just tell us again, you expected to get the report with the grand jury material identified and then what was your plan?

**WILLIAM BARR:** My plan was to figure out how long it would take us to redact what had to be redacted.

**JAN CRAWFORD:** And what did you anticipate that would be?

**WILLIAM BARR:** And if we could readily, if we could readily identify the 6E material, I thought we could do it in a you know less than a week. And if I had been looking at a matter of days like that, then I probably would have just told people what the timeline is do people knew when it would be coming out when they would see it, but once I realized it was going to take 3 or 4 weeks, I felt I had to say something in the interim.

**JAN CRAWFORD:** But if you had had that material pointed out this would have all been different, you wouldn't have written the four-page summary?

**WILLIAM BARR:** Probably not no.

**JAN CRAWFORD:** I guess just to finish up on this topic then, when we saw the special counsel yesterday, you put out the statement that there wasn't really any kind of discrepancy in some of things that you had been saying.

**WILLIAM BARR:** Yeah, we both put out the statement.

**JAN CRAWFORD:** Was that the first time there had been a joint statement?

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** And why --

**WILLIAM BARR:** I believe so.

**JAN CRAWFORD:** -- And why was that necessary?

**WILLIAM BARR:** Well, because I think there was some people who let the facts interfere with their narrative and were trying to suggest that there was a difference of opinion about the role played by the OLC opinion, which simply wasn't true.

**JAN CRAWFORD:** The difference is your views on obstruction and--

**WILLIAM BARR:** -- Well the difference was this so --

**JAN CRAWFORD:** I understand what you're saying and I guess, I guess you focused on the role the OLC memo, opinion played--

**WILLIAM BARR:** --Right--

**JAN CRAWFORD:** --In the statement?

**WILLIAM BARR:** The so-called discrepancy was that I had, I had testified earlier that Bob had assured me that he had not reached a decision that there was a crime committed but was not willing to pursue it simply because of the OLC opinion and that remains the fact. That's what his position is. That's consistent with what he said yesterday. And it certainly is consistent with the joint release we put out. The confusion arose because what Bob Mueller's position was was that the OLC opinion coupled with other things as a prudential matter made him feel that he shouldn't even get into the analysis of whether something was a crime or not and that's a different question than --

**JAN CRAWFORD:** Right, because you...just because there's evidence of obstruction or crime was committed doesn't mean the person is going to be charged or indicted or found to have committed that crime.

**WILLIAM BARR:** Right and he didn't' even get into that analysis. In other words, what I was discussing earlier was, was Bob, did Bob make a decision there was a crime and the only reason he wasn't saying that was because of the OLC opinion. The fact is Bob did not make a decision that there was a crime. He didn't get into the analysis at all. Part of the reason for that was his judgment about the OLC opinion coupled with other things he just didn't think it was proper exercise of his authority. So it's a totally different issue and that's why, that's why both us feel that this idea that there's been a discrepancy over the OLC opinion is simply wrong.

**JAN CRAWFORD:** Did you watch him give the statement yesterday?

**WILLIAM BARR:** I watched a re-run of it, yeah.

**JAN CRAWFORD:** Anything new or different?

**WILLIAM BARR:** No I mean to me it was a reiteration of some of the key elements of his report. I think he wanted to stress a number of things that were in the report. There had been a lot of commentary about his work. I had made some critical remarks about it. So I think it's quite understandable he wanted to hammer home a few of the key points that were in the report and I thought that that was fine.

**JAN CRAWFORD:** He said he's not going to be testifying.

**WILLIAM BARR:** That's right.

**JAN CRAWFORD:** Do you think he should?

**WILLIAM BARR:** You know, I think as I said, you know, it's up to Bob, but I think the line he's drawing which is that he's going to stick what he said in the report is the proper line for any Department official.

**JAN CRAWFORD:** But you've testified under oath, answered questions under oath. He took no questions yesterday. Is that sufficient?

**WILLIAM BARR:** Yes, I think it's sufficient because, you know, he was handling a specific investigation and normally we don't, we allowed our prosecutors and have them interrogated about how they handled a particular case. I think --

**JAN CRAWFORD:** But you wouldn't have objected if he wanted to testify?

**WILLIAM BARR:** I wouldn't have objected if he wanted to testify. I do think that his view that he should stick to what is in the report is consistent with the department's views of these things.

**JAN CRAWFORD:** So the last thing that he said yesterday was to remind us that Russia tried to sway our election. He said there were multiple systematic efforts to interfere and that deserves the attention of every American. How's the Justice Department working now to ensure this doesn't happen again in 2020?

**WILLIAM BARR:** Yes, we do have. I think an increasingly robust program that is focusing on foreign influence in our election process. The FBI obviously has the lead in that and I've been briefed on it on a regular basis and I think it's a very impressive effort but, we are ramping up. I talked recently to the director of the FBI about putting together a special high-level group to make sure we're totally prepared for the upcoming elections.

**JAN CRAWFORD:** And the high level group would be? Who would that include?

**WILLIAM BARR:** Well, it would include the FBI, the Department of Justice, DHS and intelligence agencies.

**JAN CRAWFORD:** Do you think enough was done in 2016?

**WILLIAM BARR:** Enough was done in 2016? Probably not. You know, I think Bob Mueller did some impressive work in his investigation, you know, identifying some of the Russian hackers and their influence campaign and you sort of wonder if that kind of work had been done starting in 2016, things could have been a lot different.

**JAN CRAWFORD:** Right because it's just hard to understand why it wasn't taken more seriously.

**WILLIAM BARR:** Right.

**JAN CRAWFORD:** Why do you think it was not?

**WILLIAM BARR:** I have no idea. That's one of the things I'm interested in looking at you know--

**JAN CRAWFORD:** --As part of the review?

**WILLIAM BARR:** Yes. In other words, you know, there are statements being made that people were warned back in April--

- 9 -

**JAN CRAWFORD:** --of 2016--

**WILLIAM BARR:** Right and I don't have any reason to doubt that, but I'm wondering what exactly was the response to it if they were alarmed. Surely the response should have been more than just, you know, dangling a confidential informant in front of a peripheral player in the Trump Campaign.

**JAN CRAWFORD:** I want to talk to you about the investigation. Um, because your, that's suggesting that was obviously inadequate, but when you talk to Director Wray about appointing this high level group and efforts to ensure that this doesn't happen again in 2020, has he expressed any concern to you that the kind of review that you are now going to undertake, or this investigation of the investigation, that that could hamper these efforts in 2020?

**WILLIAM BARR:** We've discussed how important it is that that not be allowed to happen and we are both very cognizant of that and--

**JAN CRAWFORD:** ---You have discussed that with him?

**WILLIAM BARR:** Oh yes, and I think he is being very supportive and we're working together on, you know, trying to reconstruct what happened. People have to understand, you know, one of the things here is that these efforts in 2016, these counter-intelligence activities that were directed at the Trump Campaign, were not done in the normal course and not through the normal procedures as a far as I can tell. And a lot of the people who were involved are no longer there.

**JAN CRAWFORD:** So when we are talking about the kind of the-- well you have used the word spy. You have testified that you believe spying occurred.

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** Into the Trump campaign.

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** You've gotten some criticism for using that word.

**WILLIAM BARR:** Yeah, I mean, I guess it's become a dirty word somehow. It hasn't ever been for me. I think there is nothing wrong with spying, the question is always whether it is authorized by law and properly predicated and if it is, then it's an important tool the United States has to protect the country.

**JAN CRAWFORD:** On using the word, I mean, do you understand, and I know that some of the, some former intelligence chiefs have said that the president has made that word somewhat pejorative, that there is spying, this is a witch hunt, this is a hoax, and so your use of that word makes it seem that you are being a loyalist.

**WILLIAM BARR:** You know, it's part of the craziness of the modern day that if a president uses a word, then all of a sudden it becomes off bounds. It's a perfectly good English word, I will continue to use it.

**JAN CRAWFORD:** You're saying that spying occurred. There's not anything necessarily wrong with that.

**WILLIAM BARR:** Right.

**JAN CRAWFORD:** As long as there's a reason for it.

**WILLIAM BARR:** Whether it's adequately predicated. And look, I think if we -- we are worried about foreign influence in the campaign? We should be because the heart of our system is the peaceful transfer of power through elections and what gives the government legitimacy is that process. And if foreign elements can come in and affect it, that's bad for the republic. But by the same token, it's just as, it's just as dangerous to the continuation of self-government and our republican system, republic that we not allow government power, law enforcement or intelligence power, to play a role in politics, to intrude into politics, and affect elections.

**JAN CRAWFORD:** So it's just as dangerous- So when we talk about foreign interference versus say a government abuse of power, which is more troubling?

**WILLIAM BARR:** Well they're both, they're both troubling.

**JAN CRAWFORD:** Equally?

**WILLIAM BARR:** In my mind, they are, sure. I mean, republics have fallen because of Praetorian Guard mentality where government officials get very arrogant, they identify the national interest with their own political preferences and they feel that anyone who has a different opinion, you know, is somehow an enemy of the state. And you know, there is that tendency that they know better and that, you know, they're there to protect as guardians of the people. That can easily translate into essentially supervening the will of the majority and getting your own way as a government official.

**JAN CRAWFORD:** And you are concerned that that may have happened in 2016?

**WILLIAM BARR:** Well, I just think it has to be carefully look at because the use of foreign intelligence capabilities and counterintelligence capabilities against an American political campaign to me is unprecedented and it's a serious red line that's been crossed.

**JAN CRAWFORD:** Did that happen?

**WILLIAM BARR:** There were counterintelligence activities undertaken against the Trump Campaign. And I'm not saying there was not a basis for it, that it was legitimate, but I want to see what that basis was and make sure it was legitimate.

- 11 -

**JAN CRAWFORD:** So--

**WILLIAM BARR:** That's one of the, you know, one of the key responsibilities of the Attorney General, core responsibilities of the Attorney General is to make sure that government power is not abused and that the right of Americans are not transgressed by abusive government power. That's the responsibility of the Attorney General.

**JAN CRAWFORD:** You know the- I guess- we've spent the last two years or more talking about and hearing about Russian interference into the elections and what occurred there. And so now we're shifting to talking about actually investigating, reviewing that investigation and the people who did that. So I guess in making this turn can you help us understand, I mean what's- what is the concern? What have you seen, what's the basis for that?

**WILLIAM BARR:** Well I don't want to get you know, too much into the facts because it's still under review. But I think it's important to understand what basis there was for launching counterintelligence activities against a political campaign, which is the core of our second amendment- I'm sorry, the core of our first amendment liberties in this country. And what was the predicate for it? What was the hurdle that had to be crossed? What was the process- who had to approve it? And including the electronic surveillance, whatever electronic surveillance was done. And was everyone operating in their proper lane? And I've selected a terrific career prosecutor from the department who's been there over thirty years, he's now the U.S. attorney.

**WILLIAM BARR:** But he has, over the years, been used by both Republican and Democratic attorney generals to investigate these kinds of activities. And he's always gotten the most laudatory feedback from his work. So there's no doubt in my mind that he's going- he's going to conduct a thorough and fair review of this. And we're working closely with the intelligence agencies, the bureau and the agency and others to help us reconstruct what happened. And I want to see, what were the standards that were applied. What was the evidence? What were the techniques used? Who approved them? Was there a legitimate basis for it?

**JAN CRAWFORD:** The Inspector General is looking at only, it is my understanding, a small part of this? Is that correct? the FISA warrant?

**WILLIAM BARR:** Yeah, I wouldn't say small but he's looking at a discrete area that is- that is you know, important, which is the use of electronic surveillance that was targeted at Carter Page.

**JAN CRAWFORD:** And could he have… could you have just said I want to expand this investigation? Why did you feel it was necessary to turn to John Durham?

**WILLIAM BARR:** Well the inspector general at the department, Mike Horowitz, who you know is a superb government official he has limited powers. He doesn't have the power to compel testimony, he doesn't have the power really to investigate beyond the current cast of characters at the Department of Justice. His ability to get information from former officials or from other agencies outside the department is very limited

**JAN CRAWFORD:** So he wouldn't have been able to go and try to speak with some of the former officials who are making these decisions, necessarily?

**WILLIAM BARR:** Right

**JAN CRAWFORD:** If they are not in the department anymore.

**WILLIAM BARR:** Right

**JAN CRAWFORD:** Um, what's the status of Huber's investigation in Utah? I think the former Attorney General Sessions had asked him to look at this.

**WILLIAM BARR:** Right, so Huber had originally been asked to take a look at the FISA applications and the electronic surveillance but then he stood back and put that on hold while the Office of Inspector General was conducting its review, which would've been normal for the department. And he was essentially on standby in case Mr. Horowitz referred a matter to him to be handled criminally. So he has not been active on this front in recent months and so Durham is taking over that role. The other issues he's been working on relate to Hillary Clinton. Those are winding down and hopefully we'll be in a position to bring those to fruition.

**JAN CRAWFORD:** So he won't be involved in this really at all then?

**WILLIAM BARR:** No.

**JAN CRAWFORD:** This is his role, it's done?

**WILLIAM BARR:** Right.

**JAN CRAWFORD:** And now Durham is going to pick up--

WILL BARR: Yes, right.

**JAN CRAWFORD:** --this. So again, just to go, just so that I think so people can more fully understand this, I mean have you, and I know it's early in the investigation, but when we are talking about the basis for this and why you think it is important and obviously any kind of government abuse of power, I mean, you were in the CIA in the '70s. You can see how that can have....

**WILLIAM BARR:** Right, when I, when I joined the CIA almost 50 years ago as an intern and this was during the Vietnam, civil rights era and there had been a lot...there were a lot of pending investigations of the CIA and there the issues were what was- when was it appropriate for intelligence agencies, the FBI too was under investigation. You know, the penetration of civil rights groups because at the time there was concerns about contacts with, you know, communist funded front groups and things like that and you know how deeply could you get into civil rights groups or anti-Vietnam war groups. A lot of these groups were in contact with foreign adversaries, they had some contact with front organizations and so forth and there were a lot of

- 13 -

rules put in place and those rules are under the attorney general. The attorney general's responsibility is to make sure that these powers are not used to tread upon first amendment activity and that certainly was a big part of my formative years of dealing with those issues. The fact that today people just seem to brush aside the idea that it is okay to you know, to engage in these activities against a political campaign is stunning to me especially when the media doesn't seem to think that it's worth looking into. They're supposed to be the watchdogs of, you know, our civil liberties.

**JAN CRAWFORD:** What have you seen? What evidence? What makes you think, I need to take a look at this? I mean, what have you seen in the summer of 2016?

**WILLIAM BARR:** Well, I'll say at this point is that it, you know, I- like many other people who are familiar with intelligence activities, I had a lot of questions about what was going on. I assumed I'd get answers when I went in and I have not gotten answers that are well satisfactory, and in fact probably have more questions, and that some of the facts that- that I've learned don't hang together with the official explanations of what happened.

**JAN CRAWFORD:** What do you mean by that?

**WILLIAM BARR:** That's all I really will say. Things are just not jiving, and I'm not saying at this stage that--

**JAN CRAWFORD:** Was it a timeline?

**WILLIAM BARR:** There was a timeline, there's some timeline--

**JAN CRAWFORD:** I mean, there's a concern that this may have happened before we realized that the investigation was initiated in July. I mean, what...

**WILLIAM BARR:** I don't want to get into those details at this point. I would just say that, you know...

**JAN CRAWFORD:** But you said there's a timeline concern.

**WILLIAM BARR:** Well I won't, I won't confirm that, but I'll just say that, you know, there's some questions that I think have to be answered, and I have a basis for feeling there has to be a review of this.

**JAN CRAWFORD:** You've said, you've said the time frame between the election and the inauguration, you've said this publicly, was kind of strange. Some strange things may have happened.  What concerns you there? Specifically, the meeting at Trump Tower.

**WILLIAM BARR:** I don't want to- I don't want to get into that.

**JAN CRAWFORD:** Okay. Yes. So kind of going back to what we were talking about with Director Wray, I mean obviously you've seen this like the people are raising concerns that this is

going to undermine FBI morale. The rank and file- what are we saying here- but you said in recent Senate testimony, "this is not launching an investigation of the FBI frankly to the extent there were any issues at the FBI, I do not view it as a problem that's endemic to the FBI. I think there was probably a failure among a group of leaders there at the upper echelon."

**WILLIAM BARR:** That's right.

**JAN CRAWFORD:** So there was probably a failure among a group of leaders there at the upper echelon?

**WILLIAM BARR:** Correct. In other words, I don't believe this is a problem you know, rife through the bureau.

**JAN CRAWFORD:** What suggests to you there was a failure in the upper echelon at the FBI?

**WILLIAM BARR:** Because I think the activities were undertaken by a small group at the top which is one of the- probably one of the mistakes that has been made instead of running this as a normal bureau investigation or counterintelligence investigation. It was done by the executives at the senior level. Out of head quarters--

**JAN CRAWFORD:** And you're talking about James Comey, McCabe?

**WILLIAM BARR:** I'm just not going to get into the individual names at this point. But I just view that- I don't view it as a bureau wide issue. And I will say the same thing for other intelligence agencies. And they're being very cooperative in helping us.

**JAN CRAWFORD:** They're being cooperative?

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** You're working with the DNI, the head of CIA. I want to ask you about something- just declassification. But the president has tweeted and said publicly that some in the upper echelon, Comey, McCabe, etc., committed treason. I mean do you agree with that?

**WILLIAM BARR:** Well, I- as a lawyer I always interpret the word treason not colloquially but legally. And you know the very specific criteria for treason- so I don't think it's actually implicated in the situation that we have now. But I think what he--

**JAN CRAWFORD:** Legally.

**WILLIAM BARR:** Right.

**JAN CRAWFORD:** You don't think that they've committed treason?

**WILLIAM BARR:** Not as a legal matter, no.

**JAN CRAWFORD:** But you have concerns about how they conducted the investigation?

**WILLIAM BARR:** Yes but you know, when you're dealing with official government contact, intent is frequently a murky issue. I'm not suggesting that people did what they did necessarily because of conscious, nefarious motives. Sometimes people can convince themselves that what they're doing is in the higher interest, the better good. They don't realize that what they're doing is really antithetical to the democratic system that we have. They start viewing themselves as the guardians of the people that are more informed and insensitive than everybody else. They can- in their own mind, they can have those kinds of motives. And sometimes they can look at evidence and facts through a biased prism that they themselves don't realize.

**WILLIAM BARR:** That something objectively as applied as a neutral principle across the board really you know, shouldn't be the standard used in the case but because they have a particular bias they don't see that. So that's why procedures and standards are important and review afterward is an important way of making sure that government power is being conscientiously and properly applied. It doesn't necessarily mean that there are people- you know, that people have crossed lines have done so with corrupt intent or anything like that.

**JAN CRAWFORD:** But it seems like you have a concern that there may have been a bias by top officials in the FBI as they looked at whether to launch and conduct this investigation?

**WILLIAM BARR:** Well it's hard to read some of the texts with and not feel that there was gross bias at work and they're appalling. And if the shoe were on the other--

**JAN CRAWFORD:** Appalling.

**WILLIAM BARR:** Those were appalling. And on their face they were very damning and I think if the shoe was on the other foot we could be hearing a lot about it. If those kinds of discussions were held you know when Obama first ran for office, people talking about Obama in those tones and suggesting that "Oh that he might be a Manchurian candidate for Islam or something like that." You know some wild accusations like that and you had that kind of discussion back and forth, you don't think we would be hearing a lot more about it?

**JAN CRAWFORD:** You- I guess when you said that there were things done that were not the typical run of business, ad hoc, small group, it's not how these counterintelligence operations normally work. I think that maybe Comey and others might say well this was such an extraordinary thing we had to keep it so closely held. So we had to do it differently what's your response to that? Is that legit?

**WILLIAM BARR:** Well it might be legit under certain circumstances but a lot of that has to do with how good the evidence was at that point. And you know Mueller has spent two and half years and the fact is there is no evidence of a conspiracy. So it was bogus, this whole idea that the Trump was in cahoots with the Russians is bogus

**JAN CRAWFORD:** So did you ask the president for authority to declassify?

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** You asked the president?

**WILLIAM BARR:** Yes and also you know, the direction of the intelligence agencies to support our efforts.

**JAN CRAWFORD:** So did you discuss this with the DNI and head of the CIA?

**WILLIAM BARR:** Yes.

**JAN CRAWFORD:** And what's their response?

**WILLIAM BARR:** That they're going to be supportive.

**JAN CRAWFORD:** And so you won't will you declassify things without reviewing it with them it seems like you have the authority to do that?

**WILLIAM BARR:** Well in an exceptional circumstance I have that authority but obviously I intend to consult with them. I'm amused by these people who make a living by disclosing classified information, including the names of intelligence operatives, wringing their hands about whether I'm going to be responsible in protecting intelligence sources and methods. I've been in the business as I've said for over 50 years long before they were born and I know how to handle classified information and I believe strongly in protecting intelligence sources and methods. But at the same time if there is information that can be shared with the American people without jeopardizing intelligence sources and methods that decision should be made and because I will be involved in finding out what the story was I think I'm in the best decision to make that decision

**JAN CRAWFORD:** I know you've seen some of the criticism and the push back on- on this. Do you have any concerns that doing this investigation, talking about de-classifying certain materials- that that's undermining your credibility or the credibility of the department?

**WILLIAM BARR:** No I- I don't. I think it's- actually the reaction is somewhat strange. I mean normally--

**JAN CRAWFORD:** Strange?

**WILLIAM BARR:** Sure.

**JAN CRAWFORD:** Their reaction?

**WILLIAM BARR:** Well the media reaction is strange. Normally the media would be interested in letting the sunshine in and finding out what the truth is. And usually the media doesn't care that much about protecting intelligence sources and methods. But I do and I will.

**JAN CRAWFORD:** You are only the second Attorney General in history who's served twice. I think the first one was back in 1850.

**WILLIAM BARR:** Right.

**JAN CRAWFORD:** But you are working for a man who is- I mean you are an establishment figure in a way. You've had a long career in Washington but you are working for a man who is not establishment. And some of his tweets about officials and the rule of law, how do you react when you see those? Are you on Twitter? Do you read his tweets?

**WILLIAM BARR:** No, I am not on Twitter and every once in a while a tweet is brought to my attention but my experience with the president is, we have- we have a good working, professional working relationship. We, you know, we talk to each other and if he has something to say to me I figure he'll tell me directly. I don't look to tweets for, you know, I don't look at them as directives or as official communications with the department.

**JAN CRAWFORD:** But when you came into this job, you were kind of, it's like the US Attorney in Connecticut, I mean, you had a good reputation on the right and on the left. You were a man with a good reputation. You are not someone who is, you know, accused of protecting the president, enabling the president, lying to Congress. Did you expect that coming in? And what is your response to it? How do you? What's your response to that?

**WILLIAM BARR:** Well in a way I did expect it.

**JAN CRAWFORD:** You did?

**WILLIAM BARR:** Yeah, because I realize we live in a crazy hyper-partisan period of time and I knew that it would only be a matter of time if I was behaving responsibly and calling them as I see them, that I would be attacked because nowadays people don't care about the merits and the substance. They only care about who it helps, who benefits, whether my side benefits or the other side benefits, everything is gauged by politics. And as I say, that's antithetical to the way the department runs and any attorney general in this period is going to end up losing a lot of political capital and I realize that and that is one of the reasons that I ultimately was persuaded that I should take it on because I think at my stage in life it really doesn't make any difference.

**JAN CRAWFORD:** You are at the end of your career, or?

**WILLIAM BARR:** I am at the end of my career. I've you know--

**JAN CRAWFORD:** Does it, I mean, it's the reputation that you have worked your whole life on though?

**WILLIAM BARR:** Yeah, but everyone dies and I am not, you know, I don't believe in the Homeric idea that you know, immortality comes by, you know, having odes sung about you over the centuries, you know?

- 19 -

**JAN CRAWFORD:** So you don't regret taking the job?

**WILLIAM BARR:** No.

**JAN CRAWFORD:** Not even today?

**WILLIAM BARR:** I'd rather, in many ways, I'd rather be back to my old life but I think that I love the Department of Justice, I love the FBI, I think it's important that we not, in this period of intense partisan feeling, destroy our institutions. I think one of the ironies today is that people are saying that it's President Trump that's shredding our institutions. I really see no evidence of that, it is hard, and I really haven't seen bill of particulars as to how that's being done. From my perspective the idea of resisting a democratically elected president and basically throwing everything at him and you know, really changing the norms on the grounds that we have to stop this president, that is where the shredding of our norms and our institutions is occurring.

**JAN CRAWFORD:** And you think that happened even with the investigation into the campaign, potentially?

**WILLIAM BARR:** I am concerned about that.