**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | **FILED UNDER SEAL** |
| Defendant. | **PURSUANT TO MAY 29, 2019 ORDER** |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S MOTION TO SHOW CAUSE**

Pursuant to the Court's May 29, 2019 sealed order, ECF No. 137, Defendant Concord Management and Consulting LLC ("Concord" or "Defendant"), through counsel, submits this Response to the Government's Supplemental Brief Regarding Defendant's Motion to Show Cause ("Government's Supplemental Brief" or "Gov't Supp. Br.").

**I.      INTRODUCTION**

The sum and substance of the government's argument is that its violation of L.Cr.R. 57.7(b) caused no harm to Defendant Concord, but if the government were punished swiftly and publicly, that punishment will interfere with Concord's right to a fair trial.  This is no argument at all; instead, it is shameful duplicity.

**II.      LAW AND ARGUMENT**

**A.      Deferring Proceedings on Contempt Benefits Only the Government and Will Result in Further Prejudice to Concord**

In its Supplemental Brief, the government argues that no further proceedings are necessary on Concord's Motion for Show Cause Order because there is no prejudice to Concord; but if the Court decides to hold any such proceedings, it should wait until after trial because of the risk of

prejudice to Concord.  The government concludes that punishment of it will cause harm to Concord that was not already caused by the government's violations regarding extrajudicial statements.  But the truth is that the government is only concerned with protecting itself from the shame of a public sanction, and as such it should just admit that and say so.[1]

The government repeats the arguments made at the May 28, 2019 hearing that the Mueller Report and AG Barr's statements could not possibly prejudice Concord's right to a fair trial.  Gov't Supp. Br. 4-5; Sealed Tr. of Mot. Hr'g 14:9 – 15: 9, 19:8 – 21:8, 42:20-25, May 28, 2019.  But this argument applies a no harm-no foul standard that does not exist in the law.  In its argument, the government refers to AG Barr's "March 28, 2019 letter to Congress," arguing that it distinguishes between the activities alleged in the two indictments involving Russian individuals and entities.  Gov't Supp. Br. 4.  First, the government has the wrong date; the letter is dated March 24, 2019.  *See* Ex. A, Letter from Att'y  Gen. William P. Barr to United States Senate, Comm. on the Judiciary and United States H.R., Comm. on the Judiciary 2 (March 24, 2019), *available at* www.documentcloud.org/documents/5779700-AG-March-24-2019-Letter-to-House-and-Senate.html.  Second, while the letter devotes separate paragraphs to the indictments in this case and in the *Netyksho* case, it also conflates the two by stating that the Mueller Report outlines "the Russian effort to influence the election and documents crimes committed by persons associated with the Russian government in connection with those efforts."  *Id.* at 2.  And while the letter makes reference to the charges in this case, it does not state that the charges are merely accusations and that the defendants are innocent until proven guilty, as required by DOJ policy.  *See id*.; Justice

---

[1] The government does not offer a sworn affidavit or declaration from anyone involved in the redaction decisions to support the speculation of the prosecutors regarding the redaction process.

Manual § 1-7.500 ("A news release issued before a finding of guilt should state that the charge is merely an accusation, and the defendant is innocent until proven guilty.").[2]

The government's argument that statements made well in advance of trial cannot result in prejudice is perplexing in light of its position that punishment for violation of Rule 57.7 would result in such prejudice. Gov't Supp. Br. 5. Still no trial date has been set, so by the government's own logic it would be impossible for public punishment now to interfere with a fair trial in the future. Moreover, for the reasons set forth in Concord's Supplemental Briefing, immediate contempt proceedings would not prejudice Concord or exacerbate prejudice caused by the government's statements. Concord's Supp. Br. Regarding its Mot. for Show Cause Order 6-11, 14, ECF No. 140 ("Concord Supp. Br.").

### B.     The Government's Willfulness Argument Is Premature

The government's willfulness argument is premature because it ignores the fact that negating the willfulness element of its violation requires exactly what Concord has been asking for all along—a public show cause hearing at which the government must present evidence related to Concord's motion. *Evidence* is required in order to rebut the inferences drawn from the conduct identified in Concord's Motion that the government's conduct violated Rule 57.7. *See In re Sealed Case*, 151 F.3d 1059, 1075 (D.C. Cir. 1998) (emphasizing that the burden of rebutting a prima facie case lies with the independent counsel "who must now come forward with evidence, in

---

[2] The government urges the Court to consider the context of the statements, arguing that the "handful of sentences" that Concord has highlighted were part of a large volume of material and information involving the Mueller Report. Gov't Supp. Br. 5. But it was these damaging statements that were reported by the media. Concord's Mot. Show Cause Order 4-7, ECF No. 129 ("Concord's Motion"). Moreover, if the Court is to follow the government's logic and conclude that the legal significance of unlawful statements can be cured by surrounding them by a large volume of innocuous statements, then the Indictment against the Defendants should be dismissed because the allegedly election-related statements by IRA were a miniscule part of IRA's alleged social media activity.

whatever form the district court requires (including affidavits, depositions, production of documents, or live testimony) to rebut the inferences drawn from the news articles that established the prima facie case" of a leak of grand jury material); *Yohannes v. Republic Gardens*, 217 F. Supp. 2d 91, 94 (D.D.C. 2002) (making a contempt finding after conducting a show cause hearing and considering the evidence presented).   The argument the government sets forth in its supplemental brief is not sufficient to negate the willfulness requirement, because it is not evidence.

But even considered on its merits, the government's willfulness argument fails on both the facts and the law.   On the facts, the government points to AG Barr's April 18, 2019 letter to congressional leaders as evidence that the government considered Rule 57.7 when it decided to release the Report, and thus acted in "good faith" or with "benign intent."   Gov't Supp. Br. 9.   Of course, this argument ignores the fact that the letter was authored by one of the alleged contemnors and that it contains no explicit reference to L.Cr.R. 57.7.   *Id.* at 9-10.   Further, even if the government considered L.Cr.R. 57.7, the fact that the government ultimately ignored the rule is affirmative evidence of willfulness, not the other way around.   Moreover, the wording of the letter suggests that the redactions were made to prevent disclosure of sensitive discovery consistent with the Protective Order, and not in consideration of the Local Rule.[3]   And, it does nothing to address AG Barr's public statements about Concord.   *See* Concord's Motion 3.   As such, the government

---

[3] AG Barr's April 18, 2019 letter refers to "redactions [] required to protect grand-jury secrecy or to comply with judicial orders (i) protecting from public release sensitive discovery information or (ii) prohibiting public disclosure of information bearing upon ongoing investigations and criminal proceedings, including *United States v. Internet Research Agency LLC, et al.* and *United States v. Roger Jason Stone, Jr.*"   Of course, on April 18, 2019 there was no judicial order prohibiting public disclosure of information bearing upon ongoing investigations or criminal proceedings in this case, leaving the Protective Order as the only relevant judicial order.

offers no actual evidence to rebut the Court's conclusion that the conduct identified in Concord's Motion for Show Cause Order reflects a violation of Local Rule 57.7.

On the law, the government cites two cases in support of its "good faith" and "benign intent" argument, both of which it mischaracterizes. Gov't Supp. Br. 9-10. In *United States v. Koubriti*, 305 F. Supp. 2d 723 (E.D. Mich. 2003), the court did, in fact, publicly sanction then-Attorney General John Ashcroft for making statements implicating a criminal defendant in the September 11, 2001 terrorist attacks. In doing so, the court imposed sanctions despite AG Ashcroft's argument (like that of the government here) that he acted in good faith when trying to balance the competing interests between a matter of national importance and the criminal defendant's right to a fair trial. *Id.* at 764. Moreover, the court elected "to formally and publicly admonish the Attorney General," despite a personal apology and assurances that such incidents will not occur in the future. *Id.* at 764. Here, there is no apology at all; instead just a denial of the obvious. Notably, however, AG Ashcroft's assurances were strikingly similar to the government's promise in this case that it "will take great care moving forward to comply with Local Criminal Rule 57.7(b)." Gov't Supp. Br. 13. The *Koubriti* decision also cuts against the government's argument that further proceedings are unnecessary because "the alleged violation was undertaken by senior Department officials." *Id.* at 10. The *Koubriti* court was "firmly convinced that the statements at issue would warrant sanctions against any attorney who made them, regardless of his position. That the Attorney General made them, therefore, cannot deter the Court from its usual course." 305 F. Supp. 2d at 761.

The government also cites *In re Brown*, 454 F.2d 999 (D.C. Cir. 1971) to suggest that its conduct was not willful and thus not contemptuous. *See* Gov't Supp. Br. 9-10. *Brown* is completely inapposite, however, because it involved conduct by an attorney (practicing law before

a court without having been admitted to the bar of that court) that was *expressly permitted* by the court of appeals (which mistakenly issued an order that "was impeccable on its face" and included an "unequivocal" appointment).  454 F.2d at 1007.  Here, by contrast, no such judicial sanction has been given to the government's conduct—despite its effort to obtain what amounts to advisory opinions related to its ongoing conduct.  *See* Gov't Supp. Filing Regarding Def.'s Mot. Show Cause, May 22, 2019, ECF No. 134.  *Brown* thus provides no basis for excusing the government's conduct here.

Notably, both of these cases actually support Concord's position that further proceedings are necessary before a contempt determination can be made.  In *Koubriti*, the court entered an order "directing the Attorney General to show cause in writing why he should not be compelled to appear for a hearing to address Defendants' motion."  305 F. Supp. 3d at 725.  As a result, the court was able to render its decision on the contempt motion with the benefit of a letter to the court from AG Ashcroft explaining the reasons for his actions, which was submitted "not only as the Attorney General to the United States, but also as an officer of the court."  *Id.* at 753 (internal quotation marks omitted).  Likewise, in *Brown*, the court issued a show cause order, "and the matter proceeded to hearing" where evidence was adduced with respect to the contempt issue.  454 F.2d at 1002.  In sum, more must be done before these proceedings can be put to rest.

Finally, the government's willfulness argument is particularly disingenuous because it is the same legal standard the government ignored in indicting this case.  While Concord's arguments regarding the complete absence of evidence of its awareness of United States election and FARA registration laws has been vigorously rejected by the government, the government now adopts the same position, claiming that the highest law enforcement officer in the land could not have possibly been aware that the government could violate L.Cr.R. 57.7 as it related to the release of arguably

one of the most significant and highly-anticipated documents in a generation, despite having

allegedly consulted with countless DOJ officials during the process.

### C. *Voir Dire* Will be Necessary, But is Insufficient Because it Ignores the Need to Punish the Government's Rule Violation.

*Voir dire* is not a sanction for a violation of this Court's local rules.  The cases the

government cites suggesting that *voir dire* is a sufficient remedy are unhelpful because they did

not arise in the context of using *voir dire* as an alternative to other judicially-imposed sanctions to

address prohibited extrajudicial statements.  *See Gentile v. State Board of Nevada*, 501 U.S. 1030

(1991) (appeal on First Amendment grounds from a post-trial state bar reprimand for making

extrajudicial statements); *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000) (First Amendment

challenge to court-imposed gag order); *Rosales-Lopez v. United States*, 451 U.S. 182 (1981)

(rejection of defendant's request to conduct *voir dire* related to possible racial or ethnic prejudice

against defendant); *Mu'Min v. Virginia*, 500 U.S. 415 (1991) (challenge to trial judge's refusal to

ask further questions of potential jurors about the contents of news reports to which they had been

exposed).  In sum, the government has identified no case holding that *voir dire* was an adequate

substitute for judicially-imposed sanctions where the court had found a violation of a court order

or local rule.

### D. Sanctions are Appropriate

The government concludes by stating that *no sanctions* are appropriate here by offering a

trust-us-we'll-do-better-next-time argument.  *See* Gov't Supp. Br. 13 ("No sanction is necessary

or appropriate to ensure that the government will take great care moving forward to comply with

Local Criminal Rule 57.7(b).").  But a promise not to commit further violations is not punishment

for the violations that have already occurred.

### E. The Government's Proposal for an Order Pursuant to L.Cr.R. 57.7(c) is Meaningless

After arguing against the imposition of any consequences for its violation of L.Cr.R. 57.7(b), the government responds to the Court's query by proposing an order that states: "Counsel for the parties are ordered to refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." Gov't Supp. Br. 14. But L.Cr.R. 57.7(b) prohibits statements where there is a "reasonable likelihood" that dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice, so the government seeks to raise the threshold for a violation set out in the local rule.[4]

Dated:  June 12, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

 /s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

---

[4] It is also worth noting that the government previews its intent to seek more advisory opinions from the Court as it considers removing any redactions from the Mueller Report, precisely what Concord argued against in its Motion to Strike, ECF No. 135.

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2019, I have caused a copy of the foregoing Response to the Government's Supplemental Brief Regarding Defendant's Motion To Show Cause to be filed under seal via CM/ECF and transmitted to the following counsel of record via email:

Jonathan Kravis
Deborah Curtis
Kathryn Rakoczy
U.S. Attorney's Office for the District of
Columbia
555 Fourth Street, NW
Washington, DC 20530

Jason B.A. McCullough
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530

By: */s/ Katherine J. Seikaly*
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, NW
Suite 1000 - East Tower
Washington, DC 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
kseikaly@reedsmith.com