UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>Defendant. | Crim. No. 18-CR-32-2 (DLF)<br><br>**FILED UNDER SEAL** |

**GOVERNMENT'S RESPONSE TO CONCORD'S SUPPLEMENTAL BRIEF
REGARDING ITS MOTION TO SHOW CAUSE**

The United States of America respectfully submits this response to the supplemental brief filed by defendant Concord Management and Consulting LLC. Concord concedes (as it must) that the Court has ample discretion in deciding whether to defer further proceedings on this motion and in deciding whether any contempt referral or other sanctions are warranted. Concord contends that the Court should nonetheless conduct proceedings immediately and impose punitive sanctions on senior Department of Justice officials. Concord, however, offers no basis for why such steps are appropriate.

Concord assumes that a violation of Local Criminal Rule 57.7 occurred and offers no convincing reason to believe that any violation was sufficiently willful or wanton to justify a criminal contempt referral or other punitive sanctions. Concord correctly acknowledges that, at a minimum, sanctions would be appropriate only if clear and convincing evidence established that the government acted in bad faith—a burden that Concord does not seriously attempt to meet. Concord also fails to grapple with the fundamental principal that courts should exercise their

inherent authority with restraint and discretion and use tools such as punitive sanctions only where necessary to maintain decorum or to protect the fairness of the proceedings.

In all events, Concord offers no convincing reason why further proceedings should occur before trial.  Such proceedings would exacerbate any risk of prejudice by generating publicity on the very matters that are alleged to have been prejudicial.  Concord suggests that "punishment" might somehow mitigate any prejudice that has already occurred, but Concord fails to explain why "punishing" anyone would decrease, rather than increase, the risk of potential jurors focusing on that purported prejudicial information.

Indeed, Concord initiated this matter by alleging that by insufficiently shielding information about the Special Counsel's investigation, the government risked prejudicing Concord's right to a fair trial.  But Concord now affirmatively seeks publicity on the very matters that it previously alleged to be prejudicial.  In contrast to the Special Counsel's report and Attorney General's testimony, which addressed myriad issues, Concord would have this Court publicly focus on the particular statements that Concord asserts most likely posed a "reasonable likelihood" of prejudice and what (if anything) those statements added to the public record.  *See* L. Cr. R. 57.7(b).  Concord also asks the Court to unseal the prior proceedings on this issue.  Supp. Br. 12-15.  These positions call into question whether the handful of sentences that Concord cited really did create a reasonable likelihood of prejudice.  In any event, the focus of these proceedings should be on ensuring a fair and expeditious criminal trial, not with Concord's conducting a public relations campaign.

In sum, Concord's motion to show cause should be denied, and any potential risk of prejudice should be addressed through voir dire and an appropriate order issued under Local Criminal Rule 57.7(c) to supplement the order issued on May 29, 2019.  If the Court believes

that further proceedings may be appropriate, the government respectfully suggests that the Court defer those proceedings until after the conclusion of the trial in this case.

### A. The Court Should Defer Further Proceedings on the Defendant's Motion.

In the government's view, no further proceedings on Concord's motion to show cause are warranted. But in all events, any further proceedings should take place after trial. Holding such proceedings now would exacerbate any risk of prejudice by generating publicity on the very matters that are alleged to have been prejudicial.

Concord agrees (Supp. Br. 6) that the Court "ha[s] discretion to defer consideration" of this motion but asserts that the Court should not do so because "leaving the government's" asserted "misconduct unpunished causes ongoing harm in the public and the jury pool." This argument fails at every turn. Initially, it is question begging to declare that any "punishment" is warranted, as Concord offers no basis to believe that any possible violation of Local Criminal Rule 57.7 was willful or warrants a punitive sanction.

It is also illogical to declare that further proceedings—whether they be a criminal contempt prosecution or briefing and a hearing on other sanctions—would prevent an "ongoing harm" as Concord suggests (Supp. Br. 6). Concord declares that "inaction" is a "silent endorsement" of the government's limited release of information. Supp. Br. 7; *accord* Supp. Br. 9 ("apparent endorsement"). It is fanciful to believe that any prospective juror is focused on a handful of statements about the Internet Research Agency and related matters from among all of the information that has been released as part of the Special Counsel's investigation; that any prospective juror would believe that the absence of a sanction constitutes judicial "endorsement"; that the effect of past statements would be different if the Court now declared that their release

risked prejudicing Concord; and that any such action would be more effective or prudent than conducting a careful voir dire.

Concord's suggestion (Supp. Br. 6) that the Court should address the "accura[cy]" of the statements at issue only underscores that further proceedings would increase any risk of prejudice. The government does not understand Concord's suggestion of inaccuracy to bear on its allegations of violating Local Criminal Rule 57.7 or on any applicable sanction. In the government's view, this motion should not be a vehicle for litigating the Special Counsel's conclusions or gathering more intelligence about how the government reached those conclusions. But if "accura[cy]" were the subject of further proceedings, the government would then be asked to provide further information about Concord, its alleged co-conspirators, and their activities—perhaps without the limitations of admissibility of evidence that would apply in a trial. That is not properly the subject of this collateral proceeding, and it certainly would not prevent any "ongoing harm" to Concord. Nor are those prudent steps to take before a criminal trial. Indeed, Concord's view that these proceedings should be aimed at "the jury pool" (Supp. Br. 6) only further counsels in favor of waiting until after a verdict before considering such steps.

**B. The Court Can (And Should) Decline To Initiate Contempt Proceedings.**

For the reasons set forth in its opposition to Concord's motion to show cause and in its supplemental brief, the government respectfully submits that it has not violated Local Criminal Rule 57.7(b). Concord assumes (Supp. Br. 1, 9) that the Department's redactions and other statements were inconsistent with Rule 57.7(b), based on language in a Minute Order issued before the May 29 hearing where the government had the opportunity to further address the issue and to respond to arguments that Concord made for the first time in its reply brief. But if a violation of the local rules occurred, that violation was unintentional and is not close to the kind

of willful and wanton violation that would warrant criminal contempt proceedings or other punitive sanctions. Concord concedes (Supp. Br. 9) that "the Court could decline to initiate a contempt proceeding" but, in a filing written before the government briefed the issue, Concord then faults the government for having "provided no reason" to do so. The government's supplemental brief explained why no basis exists for finding willfulness—a basic requirement of criminal contempt, 18 U.S.C. § 402; *In re Holloway*, 995 F.2d 1080, 1082 (D.C. Cir. 1993); *In re Brown*, 454 F.2d 999, 1007 (D.C. Cir. 1971). The government's supplemental brief also explained why, in any event, the alleged violation was not sufficiently wanton to justify a criminal prosecution against government officials who shielded substantial information related to this case but released a few statements that Concord claims may be prejudicial. Concord makes no serious argument to the contrary and, notwithstanding its repeated use of the words "contempt" and "punish," has essentially walked away from its demand for criminal contempt.

Concord instead now focuses on the Court's "inherent authority to impose sanction upon attorneys in a criminal case when necessary to maintain decorum and ensure the fair and efficient resolution of its cases." Supp. Br. 10; *see id.* at 9-11. But Concord does not explain why its allegations of misconduct meet the high standard for such sanctions. As Concord acknowledges (Supp. Br. 10), there must be "clear and convincing evidence" that a party "committed sanctionable misconduct that is tantamount to bad faith." *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011).[1] The government undertook an extensive process to prepare redactions, led by the

---

[1] The cases that Concord cites (Supp. Br. 10-11) are in accord. *See Shepherd v. ABC*, 62 F.3d 1469, 1478 (D.C. Cir. 1995) (explaining that there must be "clear and convincing" evidence and courts must act "with restraint and discretion"); *United States v. Wallace*, 964 F.2d 1214, 1218-19 (D.C. Cir. 1992) ("it is settled that a finding of bad faith is required for sanctions under the court's inherent powers" and even "negligent and careless" behavior "does not reach" lower thresholds such as "recklessness"); *Alexander v. FBI*, 541 F. Supp. 2d 274, 304 (D.D.C. 2008) (requiring finding of "bad faith"); *United States v. Slough*, 679 F. Supp. 2d 55, 60-61 (D.D.C.

5

Office of the Deputy Attorney General, with substantial input from the Special Counsel's Office, relevant U.S. Attorney's Offices (including the U.S. Attorney's Office for the District of Columbia), the National Security Division, members of the intelligence community, and experts within the Department on professional responsibility obligations. The Department redacted significant portions of the report discussing the conduct alleged in the Indictment in this case. *See, e.g.*, Report On The Investigation Into Russian Interference In The 2016 Presidential Election, Volume I, at 4, 14-35. In preparing those redactions, the Department carefully considered its obligations under Local Criminal Rule 57.7(b). No evidence—let alone clear and convincing evidence—suggests that the Department acted in bad faith.[2]

Concord's only attempt to suggest bad faith is its repeated observation (Supp. Br. 2-3 & n.1, 4, 5 & n.3) that in a lawsuit under the Freedom of Information Act ("FOIA"), the government redacted substantial material related to this case but did not defend those redactions under FOIA Exemption 7(B), which protects material that "would deprive a person of a right to a fair trial or an impartial adjudication." 5 U.S.C. § 552(b)(7)(B). For redactions in the parts of the report relevant to Concord, the government asserted Exemption 7(A), which protects material that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The government asserted Exemption 7(A) throughout the parts of the report

---

2010 ("It is clear, however, that the court may exercise this authority only in extreme circumstances.") (discussing dismissal of indictment); *see also In re Smothers*, 322 F.3d 438, 442-43 (6th Cir. 2003) (where attorney repeatedly arrived late to court, appropriate approach was "progressive discipline," such as starting with a verbal warning).

[2] Much of Concord's complaint rests not with litigation conduct or the particular government attorneys litigating this case, but with distinct acts of the Department. As suggested in the government's supplemental brief and as one of Concord's principal authorities explains, sovereign immunity would bar monetary sanctions against the government itself. *See Alexander v. FBI*, 541 F. Supp. 2d 274, 300-01 (D.D.C. 2008); *see also United States v. Horn*, 29 F.3d 754, 763-67 (1st Cir. 1994).

relevant to Concord based in part on Local Criminal Rule 57.7(b).  *See* Gov. Mot. for S.J., at 21, *Electronic Privacy Information Center v. DOJ*, No. 19-cv-810 (D.D.C. June 3, 2019) (Doc. 54); Mot. Ex. 1, at 23, 25 (Brinkmann Decl.)  (Doc. 54-3).

More to the point, Local Criminal Rule 57.7 and FOIA Exemption 7(B) are not the same. Local Criminal Rule 57.7(b)(1) prohibits release of information "if there is a *reasonable likelihood* that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  L. Cr. R. 57.7(b)(1) (emphasis added).  FOIA Exemption 7(B) permits (but does not require) the government to shield law enforcement information that "*would* deprive a person of a right to a fair trial or an impartial adjudication." 5 U.S.C. § 552(b)(7)(B) (emphasis added).  Exemption 7(B) "prevent[s] disclosures from conferring an unfair advantage upon one party to an adversary proceeding" and applies only when (1) "a trial or adjudication is pending or truly imminent," and (2) "it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings."  *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 101-02 (D.C. Cir. 1988) (citation omitted).  In light of this difference, the government believed that asserting Exemption 7(A) rather than Exemption 7(B) was the appropriate position to take with respect to the redactions of the report relevant to Concord in the FOIA litigation.  Regardless of Concord's apparent disagreement with those judgment calls, the government's use of particular exemptions when responding to a FOIA request does not mean that the Department wholly (and in bad faith) ignored Local Criminal Rule 57.7(b).

Concord has argued that the Department's position in the FOIA litigation supports a finding of bad faith here because the Department invoked Exemption 7(B) in defending the redactions in the report related to *United States v. Roger Stone*, No. 19-CR-18.  That is not so.

As explained in the government's brief in the FOIA case (and discussed at the May 28 hearing in this case), when the government asserted Exemption 7(B) over information related to *Stone*, the government considered, *inter alia*, the upcoming trial date in *Stone* and the specific orders entered in *Stone*. *See* Doc. 54, at 23-26; Doc. 54-3 at 27-28; *see also* Doc. 54, at 53-54 (arguing that the orders in the *Stone* case act as an injunction); Doc. 54-1, at 45 (similar). Concord calls this argument "inane" because it says that "regardless of the gag order the government was prohibited by the same local rule it violated here from making public statements in the Stone case." Supp. Br. 5. That is also not so. As the government explained at the May 29 hearing (in response to an argument that Concord raised for the first time in its reply brief), an order has been entered in the *Stone* case that is significantly more restrictive than Local Criminal Rule 57.7(b). *See* Minute Order Dated Feb. 21, 2019, *United States v. Roger Stone*.

In any event, inherent sanction authority must be used "with restraint and discretion." *Shepherd v. ABC*, 62 F.3d 1469, 1478 (D.C. Cir. 1995); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *Roadway Express v. Piper*, 447 U.S. 752, 764-67 (1980). And as Concord's description of that power acknowledges, sanctions should be used only when they are "necessary" to maintaining control over the litigators. *See* Supp. Br. 10. This is not an example of an irresponsible attorney who refuses to abide by court orders or flouts court rules. The government is entitled to a presumption of good faith, *see United States v. Armstrong*, 517 U.S. 456, 464 (1996), and takes seriously its obligations to the Court, the defendant, and the applicable rules. The government appreciates the concerns raised by the Court and has communicated those concerns to Department leadership. The Department will exercise significant caution moving forward. No punitive sanction is warranted.

### C. The Government Does Not Oppose An Order Under Local Rule 57.7(c).

The government does not oppose an order in this case further restricting extrajudicial statements of parties and attorneys under Local Rule 57.7(c).

Rather than request such an order, Concord instead argues for more publicity, asking (Supp. Br. 12-15) the Court to unseal the filings and transcript related to this matter. The government recognizes the importance of conducting judicial proceedings in public view. The government also recognizes the compelling interest in protecting the integrity and fairness of criminal proceedings and the difficulties that can arise in cases that garner substantial public attention. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070-75 (1991); *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966); *United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000); *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 611-12 (2d Cir. 1988). As discussed, publicity may exacerbate the very risks of prejudice that Concord claims to have triggered Local Criminal Rule 57.7. The Court directed the parties to address three discrete issues, and this filing is not the proper forum to begin a new round of briefing about other issues, such as unsealing court documents. It is also exceedingly difficult to evaluate the risks of unsealing these matters while they remain ongoing. The government respectfully suggests that once the Court determines how this matter will proceed, the parties should then file supplemental briefs about unsealing the relevant briefs and transcript(s).

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS<br>Assistant Attorney General for National Security | JESSIE K. LIU<br>United States Attorney |
| By: /s/_____<br>Heather N. Alpino | By: /s/_____<br>Jonathan Kravis |

| | |
|---|---|
| U.S. Department of Justice | Deborah Curtis |
| National Security Division | Kathryn Rakoczy |
| 950 Pennsylvania Ave. NW | 555 Fourth Street NW |
| Washington, D.C. 20530 | Washington, D.C. 20530 |
| Telephone: (202) 514-2000 | Telephone: (202) 252-6886 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2019, I caused a copy of the foregoing filing to be transmitted to Katherine Seikaly and Eric Dubelier, counsel of record for Concord Management and Consulting LLC, via email.

By: /s/
Jonathan Kravis
Assistant United States Attorney
555 Fourth Street NW
Washington D.C. 20530