**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT &
CONSULTING LLC,

    *Defendant.*

No. 18-cr-0032-2 (DLF)

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Concord Management and Consulting LLC's Motion for Approval

to Disclose Discovery Pursuant to Protective Order, Dkt. 77, and the government's Motion

Regarding Protective Order, Dkt. 141-2.  These motions follow several rounds of briefing on the

appropriate scope of a protective order that balances the government's national security, law

enforcement, and other interests against the defendant's interest in preparing a full defense for

trial.  For the reasons that follow, the Court will grant in part and deny in part both motions.

**I.  BACKGROUND**

  **A.  Factual and Procedural History**

On February 16, 2018, the grand jury returned an indictment charging Concord, a

Russian company, and 15 individual and corporate codefendants with conspiring to defraud the

United States by impairing the lawful functions of the Federal Election Commission, the

Department of Justice, and the Department of State.  Indictment ¶ 9, Dkt. 1.  At the outset of this

case, the government provided defense counsel with approximately 4 million documents and

sought to restrict access to approximately 3.2 million of those documents to protect certain

national security and law enforcement interests as well as the personal identifying information of

uncharged third parties and other individuals. *See, e.g.*, Concord's Mot. at 2; Mar. 7, 2019 Hr'g Tr. at 5, Dkt. 110; Gov't's Mot. for a Protective Order at 6–10, Dkt. 24.  Since then, the government also has provided defense counsel with a "key documents collection" of approximately 500 documents to facilitate counsel's preparation for trial.  Mar. 7, 2019 Hr'g Tr. at 7–8.  It continues to withhold a small subset of discovery that is not at issue here.  *Id.* at 9.

Over the past several months, the parties have proposed various protective orders designed to balance the government's interest in protecting sensitive discovery with Concord's interest in preparing a full defense.  Although the parties have made some progress toward a compromise, they remain unable to agree on a protective order that can remain in place through trial.  Concord argues that the government has not satisfied its burden to restrict discovery, that its proposed restrictions are unnecessary to protect the government's interests, and that the restrictions are unduly burdensome.  *See, e.g.*, Concord's Resp. at 6–7, 9–16, 19, Dkt. 145-2.  The government has asserted its good cause showing to restrict sensitive discovery in briefs, a sealed, ex parte supplement, and two ex parte, classified supplements.  *See* Gov't's Mot. for a Protective Order; Gov't's Ex Parte Submission, Dkt. 25-2; Gov't's Submission Related to a Permanent Protective Order, Dkt. 40; Gov't's Am. Opp'n, Dkt. 99; Gov't's Notice of Ex Parte, In Camera, Classified Filing (Jan. 30, 2019), Dkt. 95; Gov't's Mot. Regarding Protective Order; Gov't's Notice of Ex Parte, In Camera, Classified Filing (June 5, 2019), Dkt. 138; Gov't's Reply, Dkt. 152-2; Gov't's Suppl., Dkt. 159.

This dispute began in June 2018, when the government sought to restrict all sensitive discovery to the U.S. offices of Reed Smith, defense counsel's law firm.  Gov't's Mot. for a Protective Order at 12–13; *see also id.* Attach. 1 ¶¶ 13, 17, Dkt. 24-1.  Consistent with the approach taken in *United States v. Loera*, No. 09-cr-466, at 3–6 (E.D.N.Y. Mar. 21, 2017), the

government proposed that the Court appoint a "firewall counsel" to negotiate and litigate specific requests to disclose the sensitive discovery to others, including Concord officers and employees, Gov't's Mot. for a Protective Order at 3–4, 12–13.  The government argued that a firewall counsel—a government attorney walled off from the prosecution team—could inform the Court of the government's national security and other interests without revealing defense discovery requests or defense strategy to the prosecution team.  *Id.*  The government also argued that codefendants, including Concord officer Yevgeniy Prigozhin, should not be permitted to access any discovery unless they appear before the Court to answer the charges in the indictment.  *Id.* at 10–12.  Initially, Concord disputed both the government's proposed procedure for negotiating and litigating specific discovery requests through firewall counsel and its proposed restriction on codefendants' access to discovery.  Concord's Opp'n to the Special Counsel's Mot. at 3, 9–11, Dkt. 27.

Following a June 15, 2018 hearing on the government's motion, the Court imposed an uncontested interim protective order to permit the government to begin its production of discovery under Federal Rule of Criminal Procedure 16.  June 15, 2018 Hr'g Tr. at 27–29, Dkt. 41; Interim Protective Order, Dkt. 30.  It also expressed reluctance at limiting Concord officers' and employees' access to nonsensitive discovery.  June 15, 2018 Hr'g Tr. at 18–19.  After highlighting several areas of common ground, the Court directed the parties to confer and propose a joint protective order that identified any remaining disputes.  *Id.* at 30.

In late June 2018, the parties jointly proposed a protective order that contained only three disputed provisions.  *See* Parties' Contested Mot., Dkt. 37.  First, the parties disputed whether Concord officers and employees should be permitted to view sensitive discovery absent approval of the Court, and whether codefendants who had failed to appear should ever be permitted to

3

view sensitive discovery. *Id.* at 1. Second, the parties disputed whether individuals with access to sensitive discovery should be required to subject themselves to the jurisdiction of the Court by signing a memorandum of understanding. *Id.* at 2. Finally, the parties disputed whether viewers of sensitive discovery must be accompanied by either defense counsel or a Reed Smith employee. *Id.*

On June 29, 2018, the Court granted the government's motion in part and entered a restrictive protective order with the understanding that the order could be revisited at a later date, after Concord's facial challenges to the indictment were resolved and a trial was imminent. Mem. Op. & Order at 5, Dkt. 42; *see also* Mar. 7, 2019 Hr'g Tr. at 4, Dkt. 121. This protective order, which remains in effect, does not categorically deny codefendants access to discovery. Mem. Op. & Order at 2–3. Nor does it incorporate the proposed jurisdictional provision into the accompanying memorandum of understanding. *See* Protective Order ¶ 12, Dkt. 42-1; *id.* Mem. of Understanding. But the protective order does require individuals other than defense counsel, including Concord officers and employees, to obtain court approval before accessing any sensitive discovery. *Id.* ¶ 11. It also requires U.S. defense counsel (which the protective order defines to include Reed Smith employees, other counsel, and any e-discovery vendor employed by Reed Smith, *id.* ¶ 1) to store and view sensitive discovery at Reed Smith's U.S. offices and to accompany other individuals who are approved to view sensitive discovery, *id*. ¶¶ 11, 15. Finally, the protective order adopts a firewall counsel process that enables Concord to make discovery requests to an independent government attorney and to litigate any discovery disputes without the knowledge of the prosecution team. *Id.* ¶ 13; *see also* Mem. Op. & Order at 4.

Following the appointment of firewall counsel, Concord sought court approval to disclose select sensitive discovery to a number of individuals in Russia, including codefendant Prigozhin,

and firewall counsel objected.  Because the dispute did not appear to turn on any particular discovery request or to implicate defense strategy, the Court encouraged Concord to relitigate the scope of the protective order in open court with the prosecution team.  *See* Mar. 7, 2019 Tr. at 4.

Meanwhile, in late 2018, the government unsealed a criminal complaint in the Eastern District of Virginia that charged an accountant of the Internet Research Agency, a codefendant in this case, with conspiracy to defraud the United States by interfering with its political and electoral operations "from at least 2014 to the present."  Concord's Mot. Ex. A ¶ 14, Dkt. 77-1; *see also id.* Ex. A ¶¶ 8, 13.  Evidence related to this Eastern District of Virginia investigation has been produced as discovery in this case.  *See* Gov't's Mot. Regarding Protective Order at 8.

In December 2018, following the resolution of pretrial motions, Concord moved to disclose all sensitive discovery to Concord officers and employees in Russia.  *See* Concord's Mot. at 1.  In the course of briefing that motion, the government revealed that on October 30, 2018, a twitter user known as "@HackingRedstone" tweeted a link to a website that purported to contain the Special Counsel's discovery files.  Gov't's Am. Opp'n at 8–12; *see also* Concord's Reply at 12–15, Dkt. 105-2; *id.* Ex. B, Dkt. 105-3.  Because documents on the website contained documents provided in discovery as well as file folder names and structures that matched those used by the government and defense counsel to view discovery, the government alleges that an individual with access to nonsensitive discovery selectively released portions of the discovery, along with a number of irrelevant files, to discredit the Special Counsel's investigation.  Gov't's Am. Opp'n at 10–11. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████  No matter how the twitter user accessed the nonsensitive discovery, there is no

question that it was used improperly for purposes other than for the defense of this case. *See, e.g.*, Mar. 7, 2019 Hr'g Tr. at 56, 59–60.

On March 7, 2019, the Court held a partially sealed hearing at which both parties appeared receptive to a compromise that would permit certain preapproved Concord officers and employees to travel to the United States to view a substantial subset of the sensitive discovery at Reed Smith's U.S. offices. *See, e.g., id.* at 69–71, 74–76. But efforts to reach a compromise ultimately broke down, and the parties requested another hearing. *See* Gov't's Mot. for Status Hr'g, Dkt. 113-1; Concord's Resp. to Gov't's Mot. for Status Hr'g, Dkt. 116-2. At the conclusion of that hearing, the Court directed the government to propose a less restrictive protective order that would be less burdensome on the defense. *See* Apr. 10, 2019 Hr'g Tr. at 50–57, 60, Dkt. 128.

On June 5, 2019, the government moved for a new protective order that would substantially narrow the number of sensitive documents that must be viewed in the United States. *See* Gov't's Mot. Regarding Protective Order; *see also* Proposed Revised Protective Order, Dkt. 141-3. In support, the government filed an ex parte, classified addendum and a supplemental filing related to the Eastern District of Virginia investigation. *See* Gov't's Notice of Ex Parte, In Camera, Classified Filing (June 5, 2019); Gov't's Suppl. In July, the Court held a sealed hearing, *see* July 17, 2019 Hr'g Tr., Dkt. 153, and an ex parte hearing to discuss classified and sensitive facts in the government's ex parte filings. This Memorandum Opinion and Order resolves both Concord's earlier Motion for Approval to Disclose Discovery Pursuant to Protective Order and the government's most recent Motion Regarding Protective Order.

### B.      The Government's Proposed Protective Order

The government's proposed protective order includes three categories of discovery: nonsensitive discovery, intermediate sensitive discovery, and U.S. sensitive discovery.  The first category—nonsensitive discovery—would still be subject to minimal use and other restrictions not relevant here.  *See* Proposed Revised Protective Order ¶¶ 1–9.  But the second two categories—intermediate sensitive discovery and U.S. sensitive discovery—would effectively replace the current category of sensitive discovery and would be subject to restrictions that Concord challenges.

Intermediate sensitive discovery would consist of the majority of what is currently designated as sensitive discovery.  *See* Gov't's Mot. Regarding Protective Order at 7, 9; *see also* July 17, 2019 Hr'g Tr. at 40–41.  Under the proposed protective order, authorized individuals, including Prigozhin and other "individual officers and employees of [Concord] designated by defense counsel," Proposed Revised Protective Order ¶ 2, could view and discuss intermediate sensitive discovery in the Russian offices of Concord's vendor, *id.* ¶¶ 22–23; Gov't's Reply at 3 n.1.  But counsel or an employee of Reed Smith would "at all times" be required to accompany authorized viewers.  Proposed Revised Protective Order ¶ 23.  Viewers of intermediate sensitive discovery would also have to sign a memorandum of understanding stating that they have read the protective order and will not disclose the contents of the discovery, absent authorization from the government or the Court.  *Id.* ¶ 22; *id.* Mem. of Understanding ¶¶ 2, 4.  And the discovery would be stored in a locked room at the Russian offices of Concord's vendor and could not be viewed or stored on an internet-accessible device.  *Id.* ¶ 25; Gov't's Reply at 3 n.1.

U.S. sensitive discovery, which constitutes about 25% of the total discovery produced to date, would remain subject to the current protective order's most stringent provisions.  July 17,

2019 Hr'g Tr. at 40–41.  Under the proposed protective order, only U.S. defense counsel (including Reed Smith employees and any e-discovery vendor engaged by Reed Smith) could view and discuss the discovery, absent Court approval, and counsel could do so only at Reed Smith's U.S. offices.  Proposed Revised Protective Order ¶¶ 1, 12, 15–16.  In addition, counsel would be required to accompany viewers of U.S. sensitive discovery at all times, and all viewers would have to sign a memorandum of understanding.  *Id.* ¶¶ 16–17.  Finally, U.S. sensitive discovery would be stored in a locked room in Reed Smith's U.S. offices, and it could not be viewed or stored on an internet-accessible device.  *Id.* ¶ 20.

The proposed protective order would also preserve the role of firewall counsel in negotiating and litigating Concord's specific discovery requests on a case-by-case basis.  *Id.* ¶ 14.  Consistent with the current protective order, firewall counsel could object to Concord's discovery requests and inform the Court of the government's national security, law enforcement, and other interests, but it could not disclose Concord's discovery requests or strategy to the prosecution team.  *Id.*

## II.   LEGAL STANDARD

Although there is "no general constitutional right to discovery in a criminal case," *United States v. Celis*, 608 F.3d 818, 831 (D.C. Cir. 2010) (internal quotation marks omitted), Federal Rule of Criminal Procedure 16 entitles a defendant to relevant discovery.  Rule 16 provides, among other things, that "[u]pon a defendant's request, the government must disclose to the defendant" certain relevant oral, written, and recorded statements of the defendant.  Fed. R. Crim. P. 16(a)(1)(A) & (B).  It also provides that these disclosure requirements apply to organizational as well as individual defendants.  *Id.* 16(a)(1)(C).

At the same time, Rule 16 provides that courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *Id.* 16(d)(1). The advisory committee notes to Rule 16 elaborate that courts fashioning protective orders should, "take[] into account . . . the protection of information vital to the national security," "[a]mong [other] considerations." *Id.* advisory committee's note (1966 amendment); *see also Celis*, 608 F.3d at 833 ("The protective order and its management by the district court reflect an appropriate balancing of interests in the relevant case-specific context."); *United States v. Williams Cos.*, 562 F.3d 387, 395 (D.C. Cir. 2009) ("[D]isclosures the government would be required to make under Rule 16 . . . turn[] on a balancing of interests."). As the Supreme Court has made clear, "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969); *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (same).

Heeding this guidance, district courts have issued "umbrella" protective orders to manage "large amount[s] of sensitive information." *United States v. Jimmy Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018) (collecting cases). In addition to facilitating the management of "large-scale discovery" involving sensitive documents, such orders "permit[] . . . [d]efendants to review the documents without prior censorship or redaction by the Government" and avoid "subsequent discovery disputes involving" issues like "claims of privilege [and] wrongful redaction[s]." *United States v. Lamont Johnson*, 191 F. Supp. 3d 363, 372 (M.D. Pa. 2016) (internal quotation marks omitted).

Although the government need not "demonstrate to the court in the first instance on a document-by-document basis that each item [subject to a protective order] should be protected,"

*id.* at 368 (internal quotation marks omitted), it must make a "threshold showing of good cause" to restrict the defense's access to discovery, *Jimmy Johnson*, 314 F. Supp. 3d at 252 (internal quotation marks omitted); *see also United States v. Bulger*, 283 F.R.D. 46, 52–54 (D. Mass. 2012).  Good cause for a protective order "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (internal quotation marks omitted); *see also id.* ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing." (internal quotation marks omitted)).  If the government makes this showing, "the court has relatively unconstrained discretion to fashion an appropriate protective order." *Jimmy Johnson*, 314 F. Supp. 3d at 251.  Yet it must be careful not to impose a protective order that is "broader than is necessary to accomplish [its] goals." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002).

An umbrella protective order does not eliminate the government's burden to make a particularized showing of good cause.  "[A]fter delivery of the documents, the [defendant has] the opportunity to indicate precisely which documents it believe[s] not to be confidential," and the government must then make a "particularized showing" as to those documents. *Jimmy Johnson*, 314 F. Supp. 3d at 252 (internal quotation marks omitted).  At that point, the court must determine whether the defendant's interest in preparing a full defense outweighs the government's interests in restricting discovery.  *See Celis*, 608 F.3d at 833 (district courts must balance the competing interests of the defense and the government).

## III.   ANALYSIS

The dispute before the Court is not *whether* the defense may access the discovery in this case.  The government has provided defense counsel with all but a limited set of discovery.  July

17, 2019 Hr'g Tr. at 57–58; *see In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 126 (2d Cir. 2008) ("[The] production of materials to a party's attorney alone falls within the common meaning of 'discovery.'").  The dispute now before the Court centers on *where* and *how* counsel and others, including Concord's officers and employees, may view and discuss the 3.2 million documents of sensitive discovery that defense counsel has been provided.

Since the start of this litigation, the contested discovery issues have narrowed substantially.  Concord does not object to the government's proposed restrictions on nonsensitive discovery.  Nor does it object to most of the government's proposed restrictions on the newly defined intermediate sensitive discovery.  Instead, Concord argues that the government has not shown good cause to restrict defense counsel's ability to discuss intermediate sensitive discovery outside of Reed Smith's U.S. offices and the Russian offices of Concord's vendor.  July 17, 2019 Hr'g Tr. at 64–65; *see also* Proposed Revised Protective Order ¶ 23; Gov't's Reply at 3 n.1. Concord also objects to the discussion and other restrictions on U.S. sensitive discovery as well as the volume of documents the government proposes to categorize as U.S. sensitive.  Concord's Resp. at 9–16, 19.  Concord concedes, however, that "legal process" discovery, which includes search warrants, grand jury subpoenas, and similar documents, may continue to be designated as U.S. sensitive discovery at this time.  *Id*. at 14.

For the reasons that follow, the Court concludes that the proposed protective order is appropriate to "expedite the flow of discovery in [this] case[] involving a large amount of sensitive information." *Jimmy Johnson*, 314 F. Supp. 3d at 252 (internal quotation marks omitted).  It is narrowly tailored, and the government has established good cause, at least as an initial matter, to restrict access to both categories of sensitive discovery to protect significant national security, law enforcement, and other governmental interests.

A.      **The Government's Good Cause Showing**

It is well established that protective orders are appropriate where the disclosure of

discovery could jeopardize the national security of the United States, compromise an ongoing

investigation, or infringe on the privacy of uncharged third parties and others associated with a

case.  *See, e.g.*, *Lindh*, 198 F. Supp. 2d at 742 (collecting cases and explaining that "courts in this

district and elsewhere, in similar circumstances, have granted protective orders regarding

unclassified, but sensitive material vital to national security" (internal quotation marks omitted));

*Loera*, No. 09-cr-466, at 2 (imposing a protective order where the public disclosure of sensitive,

but unclassified, information could reveal law enforcement techniques and impede ongoing and

future investigations); *United States v. Morris*, No. 17-cr-107, 2018 WL 3546198, at *1–2 (D.

Minn. July 24, 2018) (same where disclosure of witnesses' personal identifying information

could threaten their safety); *Lamont Johnson*, 191 F. Supp. 3d at 370–71 (same where disclosure

of unclassified discovery could compromise future investigations and infringe the privacy of

third-party witnesses and others associated with the case); *United States v. Fiel*, No. 10-cr-170-7,

2010 WL 3396803, at *1 (E.D. Va. Aug. 25, 2010) (same where disclosure of unclassified

discovery could "jeopardize the safety of the agents in the investigation" and "jeopardize the

government's investigation or cause embarrassment to uncharged persons").

The sensitive discovery here implicates these interests.  It includes "[i]nformation related

to sensitive law enforcement or intelligence collection techniques," "[i]nformation related to

ongoing investigations, including information that could identify the targets of such

investigations," and "[i]nformation that could lead to the identification of potential witnesses."

Proposed Revised Protective Order ¶ 10.  Throughout these proceedings, the government has

explained how foreign adversaries could use this discovery to reverse engineer the investigative

measures used and to avoid detection and prosecution in the future. *See, e.g.*, Gov't's Mot. Regarding Protective Order at 3–4, 6. As the D.C. Circuit put it, "Things that [might] not make sense to the District Judge [or others] would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents reveal[] about sources and methods." *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). The government's ex parte filings provide concrete examples of the ways in which unrestricted access to sensitive discovery could jeopardize the nation's security.[1] *See* Gov't's Notice of Ex Parte, In Camera, Classified Filing (June 5, 2019); Gov't's Notice of Ex Parte, In Camera, Classified Filing (Jan. 30, 2019); Gov't's Ex Parte Submission at 2–6.

The risk that the discovery in this case could be misused is far from hypothetical. As discussed, a Twitter user publicly disclosed information that came from nonsensitive discovery produced in this case. A similar incident involving sensitive discovery could have severe consequences for the national security of the United States, as the government's ex parte filings have demonstrated. This genuine risk provides further support for the government's good cause showing with respect to both intermediate sensitive and U.S. sensitive discovery.

---

[1] Concord has repeatedly objected to the government's submission of ex parte filings. *See, e.g.*, Concord's Mot. at 16–18. But as the Court has previously explained, *see, e.g.*, July 17, 2019 Hr'g Tr. at 6–7, Rule 16(d)(1) expressly provides that "[t]he court may permit a party to show good cause by a written statement that the court will inspect ex parte," Fed. R. Crim. P. 16(d)(1). An ex parte proceeding is appropriate, for example, "if any adversary proceeding would defeat the purpose of the protective . . . order." *Id.* advisory committee's note (1975 enactment). Here, the Court has determined that the government's ex parte submissions are necessary to protect the national security and law enforcement interests that the proposed protective order is designed to protect.

1.      *The Restrictions on the Discussion of Intermediate Sensitive Discovery*

Concord argues that there is no legal basis for barring counsel from discussing intermediate sensitive discovery with various individuals outside of Reed Smith's U.S. offices and the Russian offices of its vendor.  July 17, 2019 Hr'g Tr. at 64–65; Concord's Resp. at 19. The Court disagrees.

The government has articulated good cause for the discussion restriction in its public, sealed, and ex parte filings.  And although the discussion restriction is burdensome, courts have gone further to protect similarly weighty governmental interests.  Indeed, courts have outright *barred* counsel from discussing certain discovery with their clients.  *See, e.g.*, *United States v. Moussaoui*, 591 F.3d 263, 289 (4th Cir. 2010) (collecting cases upholding restrictions on defense counsel's ability to communicate with their clients); *In re Terrorist Bombings*, 552 F.3d at 127 ("[I]n certain contexts there can be an important need to protect a countervailing interest, which may justify a restriction on the defendant's ability to consult with his attorney if the restriction is carefully tailored and limited." (internal quotation marks omitted)); *Morris*, 2018 WL 3546198, at *1–2 (barring defense counsel from disclosing certain discovery to their clients); *see also United States v. Tounisi*, No. 13-cr-328, 2013 WL 5835770, at *1–2 (N.D. Ill. Oct. 30, 2013) (barring defense counsel from revealing classified discovery to her client unless she submitted it for declassification review and the Federal Bureau of Investigations declassified it).  The government's proposed protective order does *not* bar counsel from discussing intermediate sensitive discovery with Concord officers and employees or with any other individuals.  It merely restricts these discussions to two locations: the Russian offices of Concord's vendor and Reed Smith's U.S. offices.  The proposed protective order also permits counsel to seek accommodations to this and other restrictions through proceedings involving firewall counsel.

At least as an initial matter, the Court is persuaded that the government has made a sufficient good cause showing to support the discussion restriction that applies to intermediate sensitive discovery.

        2.     *The Restrictions on U.S. Sensitive Discovery*

The Court also concludes that the government has sufficiently narrowed the scope of U.S. sensitive discovery and shown good cause for continued restrictions on that discovery.  In its briefing and in response to the Court's questioning at the ex parte, classified hearing, the government has described with specificity various categories of U.S. sensitive discovery, and it has agreed to further narrow the scope of several of these categories by redesignating certain emails and subpoena returns as intermediate sensitive discovery that may be viewed in Russia. *See, e.g.*, Gov't's Reply at 3 n.2; Gov't's Suppl. ¶ 1.  It has provided "specific examples and articulated reasoning" that show how disclosure of the remaining U.S. sensitive discovery "will work a clearly defined and serious injury to the [government]." *Wecht*, 484 F.3d at 211.  And based on the ex parte record, the possibility that sensitive information might be deduced from various websites, public court documents, or nonsensitive discovery does not, as Concord argues, undermine the government's good cause showing.  *See* Concord's Resp. at 10–16.

The proposed restrictions are also appropriately tailored to the sensitivity of the discovery.  Courts regularly require sensitive discovery to be viewed in a particular location in the presence of counsel, and only after viewers agree (by signing a memorandum of understanding) not to misuse the discovery.  *See, e.g.*, *United States v. Workman*, No. 18-cr-00020, 2019 WL 276843, at *2 (W.D. Va. Jan. 22, 2019) (permitting the defendant to view sensitive discovery only in the presence of counsel); *Loera*, No. 09-cr-466, at 2–3, 6 (requiring individuals not part of the defense team and foreign nationals seeking to join the defense team to

obtain prior court approval to view discovery that could reveal sensitive law enforcement

techniques); *Lamont Johnson*, 191 F. Supp. 3d at 366, 373–75 (requiring defense counsel to keep

sensitive discovery confidential, requiring incarcerated defendants to view that discovery only in

the presence of defense counsel, prohibiting the defendants from retaining the discovery at a jail,

and requiring counsel to obtain prior court approval and a signed memorandum of understanding

before disclosing the discovery to third parties assisting the defense); *United States v. Fishenko*,

No. 12-cv-626, 2014 WL 5587191, at *3 (E.D.N.Y. Nov. 3, 2014) (permitting the defendant to

view classified discovery only in the inmate isolation cells of the Eastern District of New York

with the assistance of a paralegal or counsel with the necessary security clearance); *Fiel*, 2010

WL 3396803, at *1–2 (limiting access to sensitive discovery to defense counsel and those

assisting in the defense, and permitting the defendant to view the discovery only for a

"reasonable number of days" at a particular lockup facility); *Lindh*, 198 F. Supp. 2d at 742–43

(requiring viewers of sensitive discovery implicating national security to sign a memorandum of

understanding and prohibiting disclosure of the discovery to detainee witnesses absent notice to

the government and Court approval); *see also United States v. Moore*, 322 F. App'x 78, 83 (2d

Cir. 2009) ("The district court was within its discretion in preventing defendant's unsupervised

possession of [discovery] material, which included statements by cooperating witnesses, to

protect such witnesses from intimidation and retribution.").  The location restriction on U.S.

sensitive discovery is particularly justified here given that the Court cannot enforce the terms of

the protective order outside of the United States.

　　　　To be sure, the discussion restriction on U.S. sensitive discovery remains highly

restrictive.  But it is not absolute.  As noted, Concord officers and employees may, with Court

approval, view and discuss the discovery in Reed Smith's U.S. offices.  Counsel also may seek
modifications of the discussion restriction through firewall counsel.

In sum, the Court finds that both the scope of and the restrictions on U.S. sensitive
discovery are justified to protect the government's weighty national security and law
enforcement interests.  Not only has the government articulated a good cause basis, with
supporting evidence, for the U.S. sensitive discovery category, additional factors—namely, the
court's inability to enforce the terms of the protective order outside of the United States and the
misuse of nonsensitive discovery in this case—support the proposed restrictions on U.S.
sensitive discovery.  *See Lamont Johnson*, 191 F. Supp. 3d at 374 ("[G]iven the sensitive nature
of the covered documents, Defendants' 'just trust us' approach is simply inadequate as a matter
of law.").

B.      **The Cumulative Effect of the Protective Order**

Viewed in its totality, the government's proposed protective order strikes the appropriate
balance between the weighty interests of the government and the defense.  As explained, defense
counsel already has access to all but a limited subset of discovery.  In addition, the vast majority
of the produced discovery can be viewed and discussed in Russia by members of the defense
team and others, including Concord officers and employees.  *See* July 17, 2019 Hr'g Tr. at 40–
41.  The most sensitive category of discovery (U.S. sensitive discovery) can be viewed by U.S.
counsel and, with Court approval, by other individuals, including Concord officers and
employees, at Reed Smith's U.S. offices.  *See* Proposed Revised Protective Order ¶¶ 12–13, 16.
The proposed protective order also permits Concord to negotiate and, if necessary, litigate

modifications to the sensitive discovery restrictions in sealed proceedings with firewall counsel.[2]
*See id.* ¶¶ 13–14.  Should the government seek to admit any of the U.S. sensitive discovery as
exhibits at trial, the Court will order, as the government has proposed, *see* Gov't's Mot.
Regarding Protective Order at 9, an appropriate amendment to the protective order.

In response to a previous, more restrictive proposal, Concord argued that the proposed
restrictions on sensitive discovery would "effectively deprive Concord of its constitutionally[]
guaranteed right to effective assistance of counsel" by, among other things, preventing counsel
from discussing the discovery with Concord officers and employees.  Concord's Mot. at 18; *see
also id.* at 5–8.  In support, it argued that at least one Concord officer, Prigozhin, would not
willingly come to the United States for fear that he would be arrested for his involvement in the
charged conspiracy.  Concord's Reply at 10–12.  Even assuming this consideration is legally
relevant, the Court has reason to believe that other Concord officers and employees can travel to
the United States.  *See, e.g.*, July 17, 2019 Hr'g Tr. at 49–50.  Moreover, the proposed protective
order does not bar all discussions between defense counsel and Concord officers and employees;
it merely limits discussions to certain locations.  And as noted, the protective order permits
defense counsel to negotiate and, if necessary, litigate modifications to the protective order.  *Cf.
In re Terrorist Bombings*, 552 F.3d at 115, 118, 123–28 (rejecting constitutional challenges to a
protective order barring disclosure of classified discovery to individuals without a security
clearance, including the defendant, where the district court adequately addressed the defense's

---

[2] The government originally proposed that defense counsel "set forth the basis for serving [any
discovery] motion on Firewall Counsel rather than on the prosecution team" whenever it sought
to litigate a dispute with firewall counsel.  Proposed Revised Protective Order ¶ 14.  Both parties
now agree that this provision is unnecessary, *see* July 17, 2019 Hr'g Tr. at 14; Concord's Resp.
at 17, so the Court will not impose it.  But the Court will require Concord to make such a
showing on a case-by-case basis if Concord attempts to litigate issues with firewall counsel that
do not implicate defense strategy.

objections on a case-by-case basis).  It is enough, at this point, to conclude that the government's

proposed restrictions are necessary in light of its "threshold showing of good cause." *Jimmy*

*Johnson*, 314 F. Supp. 3d at 252 (internal quotation marks omitted).

## CONCLUSION

For these reasons, it is

**ORDERED** that Concord Management and Consulting LLC's Motion for Approval to

Disclose Discovery Pursuant to Protective Order, Dkt. 77, and the government's Motion

Regarding Protective Order, Dkt. 141-2, are **GRANTED IN PART** and **DENIED IN PART**.  It

is further

**ORDERED** that, on or before August 9, 2019, the parties shall jointly submit a

protective order that amends the government's proposal, *see* Proposed Revised Protective Order,

Dkt. 141-3, consistent with this Memorandum Opinion and Order.

DABNEY L. FRIEDRICH
United States District Judge

August 7, 2019