BEFORE THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           .
                                    .    Case Number 18-CR-32
            Plaintiff,              .
                                    .
      vs.                           .
                                    .    Washington, D.C.
CONCORD MANAGEMENT AND              .    January 11, 2019
CONSULTING LLC,                     .    9:04 a.m.
                                    .
            Defendant.              .
- - - - - - - - - - - - - - - - -


SEALED TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:                 JEANNIE S. RHEE, AUSA
                                    U.S. Department of Justice
                                    Special Counsel's Office
                                    950 Pennsylvania Avenue N.W.
                                    Washington, D.C. 20530

                                    JONATHAN I. KRAVIS, AUSA
                                    U.S. Attorney's Office
                                    555 Fourth Street N.W.
                                    Washington, D.C. 20530

                                    HEATHER ALPINO, AUSA
                                    U.S. Department of Justice
                                    National Security Division
                                    950 Pennsylvania Avenue N.W.
                                    Washington, D.C. 20530


                     -- continued --

1    APPEARANCES (Continued):

2    For the Defendant Concord
     Management and Consulting LLC:    ERIC A. DUBELIER, ESQ.
3                                      Reed Smith LLP
                                       1301 K Street N.W.
4                                      Suite 1000, East Tower
                                       Washington, D.C. 20005
5
                                       KATHERINE J. SEIKALY, ESQ.
6                                      Reed Smith LLP
                                       7900 Tysons One Place, Suite 500
7                                      McLean, Virginia 22102

8

9    Official Court Reporter:         SARA A. WICK, RPR, CRR
                                       U.S. Courthouse, Room 4704-B
10                                     333 Constitution Avenue N.W.
                                       Washington, D.C. 20001
11                                     202-354-3284

12

     Proceedings recorded by stenotype shorthand.
13   Transcript produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2       (Call to order of the court.)

3           THE COURTROOM DEPUTY:  Your Honor, this is Criminal

4   Case Number 18-32, the United States of America versus Concord

5   Management and Consulting LLC.

6       Will counsel please approach the podium and identify

7   yourselves for the record, as well as any additional parties at

8   your table.

9           MR. KRAVIS:  Good morning, your Honor.  Jonathan

10  Kravis on behalf of the United States.

11          THE COURT:  Good morning, Mr. Kravis.

12          MR. KRAVIS:  With me at counsel table are two of my

13  co-counsel in this matter, Heather Alpino from the National

14  Security Division of the Department of Justice and Jeannie Rhee

15  from the Office of Special Counsel.

16          THE COURT:  Thank you.

17          MR. DUBELIER:  Good morning, your Honor.  Eric

18  Dubelier and Katherine Seikaly for Defendant Concord.

19          THE COURT:  Good morning, Mr. Dubelier.

20      All right.  This is a continuation of the sealed hearing on

21  the defendant's motion to compel discovery, which I have sealed

22  because it will likely include a discussion of grand jury

23  material that is protected under Federal Rule of Criminal

24  Procedure 6(e) and of sensitive discovery materials covered by

25  the protective order.

1  I've received and reviewed the government's January 8th

2  ex parte filing.  The filing further substantiates the record on

3  the issue of the disclosure of confidential information provided

4  by Concord to the firewall counsel.

5  I don't expect today's hearing to take long, but I do have

6  a number of questions for both sides.  First for the government,

7  Mr. Kravis, are you speaking for the government today?

8  MR. KRAVIS:  Yes, your Honor.

9  THE COURT:  First, let me ask you, to the best of your

10  ability, can you describe for me the steps that the government

11  team has taken -- and to be clear, by "government," what I mean

12  is members of the Special Counsel's Office, the trial team,

13  agents, investigators, as well as firewall counsel and his

14  agents and investigators -- the steps you've taken to ensure

15  that confidential information that is supplied to the firewall

16  counsel by Concord is not shared with any of the other lawyers

17  in the Special Counsel's Office, the trial team, investigators,

18  and agents.

19  MR. KRAVIS:  Yes, your Honor.  So after the Court

20  first appointed Mr. McCullough to serve as firewall counsel in

21  this matter, the members of the prosecution team held a

22  conference call with Mr. McCullough and with the supervisor in

23  the National Security Division who would be supervising him in

24  his work as firewall counsel.  Both Mr. McCullough and that

25  supervisor were walled off or separated from both this criminal

1  case and any other matters -- any other criminal cases arising

2  out of the facts set forth in the -- the facts underlying the

3  allegations in the indictment.

4  In that initial conference call -- and when I say "the

5  prosecution team," I am referring to myself and the other

6  assistant United States attorneys who have entered their

7  appearance in this case, as well as Ms. Alpino on behalf of the

8  National Security Division and the Special Counsel's Office

9  prosecutors who have entered their appearance in the case.

10  In that initial telephone conversation, we reviewed the

11  terms of the Court's order appointing the firewall counsel, as

12  well as the terms of the protective order that outlined firewall

13  counsel's responsibilities and obligations.

14  On that conference call, we agreed that when firewall

15  counsel needed information from the prosecution team, firewall

16  counsel would request that information of us, but we would in no

17  circumstance request any information of firewall counsel.  That

18  is, that the information exchanged between firewall counsel and

19  the prosecution team would go only one way.

20  Since that initial phone call, the communications between

21  the prosecution team and the firewall counsel have been in

22  writing.  I think all of those have been in e-mail.  And those

23  communications have exclusively concerned requests of the

24  firewall counsel for information.

25  For example, the firewall counsel has from time to time

1   requested information from the prosecution team about discovery,

2   asking for our records in terms of what was provided and on

3   which disk and so on and so forth.  Those requests have been

4   made in writing, and the responses have been made in writing.

5       No one on the prosecution team has requested any

6   information of firewall counsel about firewall counsel's

7   communications with defense counsel or about any other matter.

8       And in fact, the first time that the prosecution team

9   learned that defense counsel had had any communications with

10  firewall counsel at all was when defense counsel brought to the

11  attention of the prosecution team the matter that underlies the

12  defense motion to compel.

13      THE COURT:  All right.  So when there's a request by

14  Concord to provide confidential discovery materials to any

15  individual and firewall counsel needs to do his job to determine

16  whether this is an appropriate individual to receive the

17  information, does he have a set of agents and investigators he

18  uses for his purpose?

19      MR. KRAVIS:  My understanding is that firewall counsel

20  has his own resources and contacts within the intelligence

21  community that firewall counsel can use to gather any

22  information that firewall counsel needs to respond to any

23  defense counsel submission.

24      THE COURT:  And those are entirely separate

25  individuals --

1          MR. KRAVIS:   Right.

2          THE COURT:   -- than the agents and investigators that

3     deal with the Special Counsel's Office and the trial team?

4          MR. KRAVIS:   Yes, that is correct.  Firewall counsel

5     has not made and would not make a request either of the

6     prosecutors or of the agents working with the prosecution team

7     to obtain information about particular individuals, because

8     that -- that kind of request might tend to reveal something

9     about defense strategy, for example the identity of a particular

10    witness who was of interest to the defense or something like

11    that.

12         To the extent that firewall counsel has questions about

13    what has been produced in discovery, which disk was --

14    particular materials were on, that kind of thing, things that

15    are already in the possession of the prosecution team, firewall

16    counsel has made those requests of us.

17         To the extent that firewall counsel needs to gather

18    information to respond to defense requests for permission to

19    disclose sensitive discovery, firewall counsel has used other

20    resources that are outside the prosecution team.

21         THE COURT:   Okay.  And I understood from the outset

22    that that was the case, that the resources that the firewall

23    counsel would use in terms of agents and investigators would be

24    separate than those that are used by the Special Counsel's

25    Office and the trial team, but I did want to confirm that for

the record.

MR. KRAVIS: That's correct.

THE COURT: Mr. Kravis, I also want to confirm that I have the facts and the timeline correct with respect to this charge that's made in the motion to compel discovery.

As I understand it, on October 4th of 2018, the government turned over materials in discovery that Concord contends came from confidential information that Concord supplied to firewall counsel. I'm not going to refer to the content of your ex parte filing, but Exhibit A of your January 8th, 2019, ex parte filing is a grand jury subpoena that is dated August 30th of 2018.

MR. KRAVIS: Yes, your Honor.

THE COURT: Was this grand jury subpoena provided to the defense team along with the records that were produced pursuant to the subpoena?

MR. KRAVIS: I believe the answer to that is yes, this was produced in discovery.

THE COURT: All right. And was this discovery that was provided related to the subpoena marked sensitive?

MR. KRAVIS: I'm sorry. I don't understand the question.

THE COURT: Is it considered sensitive discovery in this case?

MR. KRAVIS: Yes, your Honor.

THE COURT: Sensitive under the protective order?

1          MR. KRAVIS:  Yes, your Honor.

2          THE COURT:  So it's the government's position that

3     this discovery was covered by paragraph 11 of the protective

4     order, which restricts disclosure of sensitive materials to

5     defense counsel as defined in paragraph 1 of the protective

6     order, and that includes, according to paragraph 1, Reed Smith

7     attorneys, Reed Smith vendors, other counsel approved by the

8     Court, and all of whom must be nationals of the United States;

9     is that correct?

10         MR. KRAVIS:  Yes, your Honor.

11         THE COURT:  Okay.  Thank you, Mr. Kravis.  Is there

12    anything else you would like to state for the record?

13         MR. KRAVIS:  The only thing I would like to add for

14    the record is that I believe that the government's sealed ex

15    parte submission establishes that

16

17

18          Further, I believe that the government's sealed ex parte

19    submission establishes -- so then one might wonder, as defense

20    counsel has wondered or posited in their motion, if the

21

22                                                          And

23    I believe the sealed ex parte submission further establishes the

24    reason for that, which is that

25

1

2

3

4     And so I think that those materials answer the questions

5     set forth in the defense's motion to compel, namely where did

6

7

8

9

10         THE COURT:  Understood.  Thank you, Mr. Kravis.

11         MR. KRAVIS:  Thank you, your Honor.

12         THE COURT:  Mr. Dubelier?

13         MR. DUBELIER:  Yes, your Honor.

14         THE COURT:  Mr. Dubelier, I'm troubled by several

15     things:  First, comments that you made to me during a

16     November 16th, 2018, call which I had with you and with firewall

17     counsel; second, your reference to the content of sensitive

18     discovery in your filings, specifically your December 27th,

19     2018, filing; third, your earlier attempts to work around the

20     firewall counsel process and take documents out of the United

21     States and turn them over to individuals that are not nationals

22     of the United States without notice to firewall counsel.

23         MR. DUBELIER:  I'm sorry, your Honor.  What was that

24     last thing you just said?

25         THE COURT:  You will recall, Mr. Dubelier, in August

1   with respect to this request, you initially came to the Court

2   with your attempt to include -- to provide sensitive discovery

3   to individuals.  And I asked, have you provided this to firewall

4   counsel.  And then I think that you made an effort to do so.

5   And we eventually got to the point where we are on this.  But

6   initially, I think you -- if my recollection serves me

7   correctly, initially, that came to me ex parte without even

8   firewall counsel being informed about the sum and total.  You

9   may have provided the names, but not the fact that you were

10  taking them to Russia, the documents.

11          MR. DUBELIER:  Your Honor, I never took any documents

12  to Russia.

13          THE COURT:  Of course you didn't, but you were

14  requesting that I approve --

15          MR. DUBELIER:  Correct.

16          THE COURT:  -- the taking of documents to Russia,

17  without informing firewall counsel.  As I read the protective

18  order, it clearly contemplates that you would provide the names

19  of individuals and the fact that you want to take documents out

20  of the country to Russia.

21          MR. DUBELIER:  I'm at a loss, your Honor, to

22  understand what you are accusing me of on this last point.  I

23  don't get it, of what I supposedly did wrong.

24          THE COURT:  So just a minute.  To make sure I

25  understand, when you initially came to me with the request to

1   provide information to five individuals in Russia --

2          MR. DUBELIER:  Right.

3          THE COURT:  -- take it out of the country --

4          MR. DUBELIER:  Right.

5          THE COURT:  -- my impression -- and perhaps there was

6   an inaccurate communication between the two of us.  But my

7   impression was that you had provided names but not informed

8   firewall counsel that you intended to take these materials out

9   of the country.

10         MR. DUBELIER:  May I consult with Ms. Seikaly for a

11  second?

12         THE COURT:  Sure.

13     (Defense counsel conferred.)

14         MR. DUBELIER:  So your Honor, as I understand this

15  from consulting with Ms. Seikaly, initially we provided firewall

16  counsel with just the names.

17         THE COURT:  That's my point.

18         MR. DUBELIER:  Right.  And then --

19         THE COURT:  And I said, does he know the full extent

20  of this request.

21         MR. DUBELIER:  Right.  And then as Ms. Seikaly reminds

22  me, she said, I gave him the names because that's what the

23  protective order requires.

24         THE COURT:  All right.

25         MR. DUBELIER:  If you would just hear me out, your

Honor, instead of -- you made a face at me.  You hold your hand up like you don't want to hear what I want to say.  I have an explanation.

THE COURT:  I want to hear.

MR. DUBELIER:  I want to explain.  Let me explain.

Ms. Seikaly informed me that she provided the names because that's specifically what the protective order required.  When she came to me and raised this issue after you raised it, I said, give him the whole thing.  So we gave him the whole thing.

That does not provide evidence or any suggestion that we have done anything wrong, your Honor.  We gave him the whole thing.  We were not trying to be sneaky or go sneak something out of the country.  I've abided by the terms of the protective order.  So --

THE COURT:  All right.

MR. DUBELIER:  Go ahead.  I mean, with all due respect, go ahead, criticize me and say whatever you have to say.

THE COURT:  All right, Mr. Dubelier.  The bottom line here is, firewall counsel was informed.  But it did trouble me that initially when I received the request, it came to me with a request that included both names and the fact that you wanted to take a trip to Russia to provide sensitive discovery to these individuals.

And at the outset, my recollection is, consistent with what

1    you've just said, that you had disclosed the fact that you

2    wanted to reveal sensitive discovery to individuals, and you had

3    provided those names to firewall counsel, but that he was

4    unaware that those individuals were going to be in Russia and

5    you were going to take the documents to Russia.

6         So I'm not accusing you of wrongdoing, but as I stated in

7    the public hearing, I want counsel on both sides to sit down and

8    review this protective order.   It is not operating, I think on

9    either side, as intended.

10        MR. DUBELIER:   Your Honor, we are already doing that.

11        THE COURT:   Great.   I'm pleased to hear that.   So I

12   think there does need to be clarity in the protective order.

13   Whether your reading of the protective order and the specific

14   terms of the protective order is a fair one, I haven't gone

15   through line by line, but I think it certainly violates the

16   spirit of the protective order to tell firewall counsel, we want

17   to disclose these names and not tell them you're taking them to

18   Russia, taking the documents to Russia.

19        Maybe that was an innocent mistake.   I don't mean to accuse

20   you of misconduct.   But part of this, I think, is the lack of

21   clarity in the protective order.   So I am not accusing you of

22   misconduct here.   I'm just saying, I was troubled by the way in

23   which the firewall process has been handled, and I'm not -- I'm

24   pointing fingers at both sides here.   All right?   We need to

25   have, I think, more transparency in the process.   And to the

1    extent things can be handled with the trial team and not with

2    firewall counsel alone, we should try to do so, and let's all

3    try to get on the same page here, Mr. Dubelier.

4        I do appreciate that an ambiguous protective order is

5    difficult for you all to follow.  I've asked you all repeatedly

6    and I've asked firewall counsel, have you all sat down and

7    figured out the mechanics.  And each time I'd ask you that

8    question, Mr. Dubelier, you would apologize and say, you know,

9    sorry, your Honor, we haven't done so, but we will get on that.

10   It never happened, and as a result, this process has not

11   functioned as intended.

12       So I am pleased to hear you all are coming together and

13   working through the issues with this protective order.  I want

14   you to do it, or I can do it myself.  But you all know much

15   better where the problems are here, and I think that this whole

16   episode that we're dealing with today illustrates the issues

17   with the protective order.  So I am pleased to hear that, and

18   thank you for working cooperatively to do that.

19           MR. DUBELIER:  Your Honor, I just want to make clear,

20   because at some point this transcript, I assume, is going to be

21   made public.  You're not accusing me of seeking to circumvent

22   the protective order.  There is no possibility that I could have

23   ever taken any evidence outside the country without firewall

24   counsel knowing.  That is inconceivable.  It never could have

25   happened.

1    THE COURT:  I'm saying, I'm troubled by the way the

2    process has worked.  All right?

3        MR. DUBELIER:  Okay.  That's fair.

4        THE COURT:  I'm not accusing you --

5        MR. DUBELIER:  Fair enough.  I'm troubled, too.  So

6    that's fair; that's fair.

7        THE COURT:  So Mr. Dubelier, let's move on to the

8    November 16th, 2018, telephone conference with firewall counsel.

9        MR. DUBELIER:  Okay.  Your Honor, if I may say, with

10   all due respect to the Court, if this is -- I'm satisfied with

11   what's occurred and the representations that they've made.

12   That's all we asked for.

13       And I will tell you again, with the Court characterizing

14   our motion as, your words, a charge made by us, we never made a

15   charge.  We simply advised what the facts were and asked for an

16   answer.  I went to them first.  In all fairness, I went to them.

17   And I didn't go behind the firewall counsel's back.  I copied

18   him on the e-mail to the special counsel, and I just asked him,

19   can you explain how this happened.

20       Now, maybe I didn't use perfect wording and language, and

21   maybe they felt threatened because I characterized it as a

22   remarkable coincidence or something, and they didn't like me

23   using those words.

24       But I simply went to them and said, just tell me how

25   Atkinson ▮▮▮▮▮▮▮▮ and if he didn't get it from the firewall

counsel or anybody working for the firewall counsel, that's all
they had to say, and they didn't say that.

THE COURT:  Well, I have not seen the exchange of
e-mails between you and the government, firewall counsel and the
trial team, with respect to this issue and the e-mails on
October 5th.

But my understanding from reading the filings that have
come before me is that you made some sort of suggestion of a
breach in the wall --

MR. DUBELIER:  Your Honor, I did not, and that's not a
fair characterization.  I simply set forth what the facts were
and asked them to explain.  And when they refused to explain, I
took that as them being evasive.

Your Honor, let me just say one additional thing.  Look,
sometimes it's difficult to sit in other people's shoes.  Right?
So I can't sit in their shoes.  You can't sit in mine.  I can't
sit in yours.  But you have to take this in the context of,
Ms. Seikaly and my experience in the private sector has been
that prosecutors have not always told the whole truth to us.
And that's demonstratively provable, and I could refer you to
other judges in this courthouse which would say yes, that is the
case, prosecutors have not always told the truth to us.
Usually, it's a self-inflicted wound of somebody made a mistake,
and then they're trying to cover up the mistake instead of just
taking responsibility for it.

1    So that's the context in which we see something like this.

2    So we see it.  We simply said, these are the facts, can you

3    explain this to us.  And rather than them explaining it, they

4    basically say, there's no breach of the protective order and

5    we're not going to tell you anything else about it.

6        To me, that raises a red flag, and that's why we raised it

7    with the Court.  I don't think it's fair to characterize what we

8    said as an accusation against them.  All we ever wanted was an

9    explanation.

10       If Mr. Kravis had told me two months ago -- and I don't

11   want to pick on him because I don't even know if he was involved

12   in the case two months ago.  I can't even remember.  I think our

13   e-mail was with the Special Counsel's Office and the firewall

14   counsel.  I really can't remember if Mr. Kravis was on the

15   e-mail.  But if he had told me two months ago what he told you

16   just now from the podium, it would have been over with.

17            THE COURT:  But Mr. Dubelier, you and I both know, as

18   former federal prosecutors, the government has no obligation to

19   tell you                                          And for you to

20   insist that they reveal to you that this relates to

21            you're not entitled to that under *Brady* Rule 16 or

22   anything else.

23       And when they tell you, as I understand from their filings,

24   when they tell you that there hasn't been a breach of the wall

25   between firewall counsel and the trial team and then this issue

comes up again on the phone with me and firewall counsel gives

additional assurances that there's not an issue and then you

bring this up and not in a sealed pleading as you did -- and I

commend you initially for raising this in a sealed pleading.

But I wish you had filed a sealed pleading back on October 5th.

If you were really troubled, that's when you should have filed

the sealed pleading, not wait until I requested supplemental

briefing on a motion to dismiss that's a difficult legal issue

that I'm considering, and you lob that in in a sealed pleading

weeks after you are troubled by the lack of response from the

government.  You filed that sealed initially.  All right?  It

comes in sealed.

Second, we have a sealed call with firewall counsel where

it's discussed further.  Then I hear nothing more until an

unsealed pleading that gets lobbed in most recently.

MR. DUBELIER:  Well, your Honor, let me say two

things.  First of all, with respect to that, you were satisfied,

based on the call we had with firewall counsel.  I was not.

THE COURT:  Well, come back to me.

MR. DUBELIER:  And the reason I wasn't, your Honor,

and you were not particularly friendly to me in that call

either, because you characterized it as me attacking them, not

simply laying out facts but me attacking them, and my

characterization of that call was, you took their side against

me in that call.  So that's my perception from where I stand.

1    Let me also say, your Honor, this issue with they're not

2    obligated to tell me about a ▮▮▮▮▮▮▮▮▮▮▮▮ they

3    already did.

4         THE COURT:  You forced them.  I congratulate you for

5    getting out the fact that ▮▮▮▮▮▮▮▮▮▮

6         MR. DUBELIER:  I didn't force them.  They had already

7    provided in sensitive discovery ▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There's

9    no secret about that.

10        THE COURT:  Well, then, why do you -- what did you

11   expect them to tell you?  What would have satisfied you?

12        MR. DUBELIER:  What I expected them to tell me is, you

13   know what, we talked to Rush Atkinson, and Rush said ▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  That's all.  That's all.

16   Because again, your Honor, go back to -- put yourself -- if

17   you can.  I'm not asking you to, because it's not always a great

18   place to live, but put yourself in my shoes just for a second.

19   We have experience that tells us that we don't always get

20   straight answers on these things.

21        The first time we exercise use of this protective order,

22   which we have objected to from the very beginning, six days

23   later, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  we then go back and find in

25   discovery ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Now, that creates a complicated problem for me as a lawyer, I think. That's problematic because I'm prohibited from the protective order from even discussing it with my client, and then I have to figure out, how am I going to deal with this, and is this simply a coincidence.

Now, Mr. Kravis gave an explanation that makes it sound like a remarkable coincidence. And that's okay. Coincidences happen, and I'm satisfied. Mr. Kravis is a federal prosecutor working in the U.S. Attorney's Office, holding the same position I used to hold. He got up here and explained it in a way that has not been explained. It wasn't explained this way by firewall counsel. It wasn't explained this way by the Special Counsel's Office. I'm satisfied.

THE COURT: All right. I would encourage you in the future, if similar instances arise, the approach you should use is the approach that you used back in November but, I submit, a little late. And I find it a little curious that you wait until I'm asking for supplemental briefing on a legal issue that's unrelated to this matter to alert me of this issue. The time to do it is back in early October when you're concerned. And I'm not going to question your intent there. You're legitimately concerned, and you want to make sure that the government is acting appropriately. That's the time to file that motion and

1  file that motion under seal if it relates to grand jury.

2      As you can tell, I'm going to try to be very transparent

3  here and unseal things that have been sealed that shouldn't be

4  sealed.  I have no intention of keeping things under seal that

5  should be open to the public.  All right?

6      In the future, if you have a real concern about government

7  misconduct, come to me then, not later, three, four weeks later

8  when I'm considering a difficult legal issue.  That's not the

9  time to drop this.  But come, file the motion under seal, and if

10 you think it shouldn't be under seal, we can discuss at that

11 point whether it's appropriate for it to remain under seal.  But

12 that's the time to do it, and it's not to play games with the

13 Court, and it's not to play games with the public.  All right?

14 Let's keep it under seal until we know there's not an issue.

15     And it bothers me when you're walking close to the line

16 disclosing sensitive discovery.  Your reference in the most

17 recent December 27th pleading

18 frankly, I'm shocked that the government hasn't raised that,

19 because to me that's a problem, and it's a problem not because I

20 care about, you know,

21

22            The point is, it refers to sensitive discovery in a

23 specific way in which, if the government is concerned about

24

25                                    and that's a big reason

1   for, as you correctly note, I'm sure, there's in your view a

2   vast overclassification of sensitive discovery, I'm guessing --

3   I don't know the discovery like you and the government, but I'm

4   guessing that that's vastly overcategorized in your view, not

13   So I want you to be careful about trying to abide by the

14   terms of the protective order.  I get that you think it's overly

15   broad.  I fully appreciate that.  You're going to raise

16   compelling arguments.  You have already in a motion, and the

17   government is going to have to respond, and you get a chance to

18   reply, and we're going to have a hearing on a really difficult

19   legal issue where I have to balance competing interests.

20   And I did it early in the case, and I recognize it's a very

21   broad protective order, and it needs to be revisited, and it

22   will be revisited, and we're going to do that on March 7th.  But

23   until then, you are bound by the terms of the protective order,

24   like it or not.  I've ruled.  So don't walk close to the line in

25   revealing in public pleadings things that should not be

1    revealed.  All right?

2          MR. DUBELIER:  Your Honor, are you accusing me of

3    playing games with the Court?  Because you've said it twice, I'm

4    playing games with the Court and playing games with the public.

5    I just want to know if that's what I'm being accused of.

6          THE COURT:  No, you're not being accused of that,

7    Mr. Dubelier.  But just refrain from -- to say something in

8    public about

9

10

11          MR. DUBELIER:  First of all, it's not; it's not

12    disclosing that.

13          THE COURT:  Wait.  You referred to

14

15          MR. DUBELIER:  That's right.

16          THE COURT:  Now, I would agree with you if you're just

17

18

19

20

21          MR. DUBELIER:  Your Honor, I will tell you, I don't

22    think that's a close call.  So we will agree to disagree on

23    that.  I respect the Court's position on it.  I disagree with

24    you.

25          But why do you have to advocate that for them?

1        THE COURT:  I want to protect the orders I've imposed

2    in this case.  And one is a protective order.  I have an

3    independent duty to protect 6(e) and protect information that's

4    barred by my protective order, regardless of what they do.

5        MR. DUBELIER:  But that's the relief they asked you

6    for.  They asked you for that relief.  You gave it to them.

7    They can advocate that if they think there's a problem.

8        THE COURT:  Mr. Dubelier, I am going to enforce orders

9    that I enter in this courtroom, and I am going to follow the

10   Federal Rules of Criminal Procedure, including 6(e).  And if I

11   think something is getting close to the line, I'm going to flag

12   it.  I think I have an independent responsibility to make sure

13   the Federal Rules of Criminal Procedure and my orders are

14   followed.  All right?

15       I'm not trying to, you know, gang up on you here.  I want

16   you to be --

17       MR. DUBELIER:  Your Honor, I think you are, because

18   you told me the other day to knock it off, and you didn't really

19   say what "it" was, but you said knock it off.

20       THE COURT:  I clearly said what "it" is.  Throwing the

21   F-bomb in a pleading?  I don't think that that's --

22       MR. DUBELIER:  I didn't say that word in a pleading.

23   I didn't say that word.

24       THE COURT:  All right.  Mr. Dubelier --

25       MR. DUBELIER:  We blanked it out.  I didn't write that

1    word in a pleading.

2          THE COURT:  And you don't think it's obvious to anyone

3    who reads the pleading what you're saying?  It's unnecessary,

4    Mr. Dubelier.  It is not persuasive.  And my point is, you're

5    wasting my time, your time, the government's time including

6    stuff in your pleadings that's not persuasive.  I'm just telling

7    you, that is not going to make a difference to me.

8          MR. DUBELIER:  Your Honor, look, I don't know how to

9    say this, because I want to make sure I'm being properly

10   respectful, and I am respectful of you as the judge and as a

11   federal judge.  But I'm not so sure that I have any confidence

12   that I can persuade you of anything, honestly, from the way this

13   Court -- the way the case has gone up to now.

14          THE COURT:  I think I've taken your legal arguments

15   very seriously, Mr. Dubelier.  Do you disagree with that?

16          MR. DUBELIER:  Yeah, I do.

17          THE COURT:  You don't think that I've considered your

18   legal arguments that you've raised?

19          MR. DUBELIER:  I don't know.  You say taken them very

20   seriously.  I don't know what that means.  I've never been a

21   judge.

22          THE COURT:  I've written some 40-, 50-page opinions

23   addressing each of your legal arguments.  I think I've taken

24   them very seriously.

25          MR. DUBELIER:  Look, I'm not trying to make this

1    personal between me and you.

2         THE COURT:  I don't either.

3         MR. DUBELIER:  It's not.  But when it's knock it off,

4    you are playing with the Court or playing with the public or you

5    are accusing them of doing this and accusing them of doing that,

6    it sure sounds like to me you're picking on us.  And maybe it's

7    just me personally.  Maybe it's nothing against my client at

8    all; you just don't like me.  But that's what it sounds like to

9    me.  All right?

10        Look, your Honor, I'm prepared to move on.  I'm satisfied

11   by the relief.  I'm satisfied by the order the Court issued the

12   other day to tell them to give you an answer.  Mr. Kravis has

13   gotten up.  It's ex parte, but as far as I'm concerned, he

14   provided enough where I can go back now and explain this in a

15   way that everybody on our side of this will understand it.  So

16   I'm prepared to move on.

17        THE COURT:  I'm prepared to move on after we address

18   this November 16th telephone status conference.

19        MR. DUBELIER:  Oh, okay.  I thought we had done that.

20        THE COURT:  No.

21        MR. DUBELIER:  Okay.

22        THE COURT:  All right.  So I want to -- do you have a

23   copy of that transcript?

24        MR. DUBELIER:  No, I don't.

25        THE COURT:  Would you like one?

1          MR. DUBELIER:  No, that's okay.  I will take your word

2     for it.

3          THE COURT:  I am looking at pages 22 and 23 of the

4     transcript.  And during that call, you told me and

5     Mr. McCullough -- and this is a quote.  You said, "I said that I

6     now have to deal with Russian individuals who are assisting in

7     the defense of this case who don't want their name to appear in

8     any public domain for fear that

9

10

11          MR. DUBELIER:  We haven't told any Russian person

12     about this.

13          THE COURT:  Let me continue.  So Mr. McCullough said

14     to you, "It's not clear to me why they would have that

15     understanding, as that is information that should not have been

16     shared with anyone."

17          And you said, "I don't even know what you're talking

18     about."

19          I then said, "Your allegation, Mr. Dubelier, was filed

20     under seal in 18-32."  This, again, is the sealed filing that

21     you submitted in connection with the supplemental briefing that

22     I ordered in connection with the motion to dismiss.

23          I said,

24

25

1      Mr. Dubelier, "How does anyone know?  No one does know

2  that, just us."

3      The Court, "So why are you saying

4

5

6      Mr. Dubelier, "Because they believed that before that ever

7  happened."

8      The Court, "Because they believed what?"

9      Mr. Dubelier, "They believed that before this ever

10  happened."

11      The Court, "Well, based on what?"

12      Mr. Dubelier, "Culture.  I don't know what to tell you."

13      So Mr. Dubelier, I'm going to ask you again, and this is

14  important to me and my rulings on how sensitive disclosure is

15  handled moving forward.

16      MR. DUBELIER:  Uh-huh.

17      THE COURT:  Have you disclosed any sensitive discovery

18  materials to any person or entity other than those authorized to

19  have access to the sensitive discovery materials?

20      MR. DUBELIER:  No.

21      THE COURT:  And to your knowledge, has anyone on your

22  defense team disclosed sensitive discovery materials to any

23  person or entity other than those authorized to have access to

24  sensitive discovery materials?

25      MR. DUBELIER:  No.

1          THE COURT:  All right.  Thank you.

2     Is there anything else you would like to add, Mr. Dubelier?

3          MR. DUBELIER:  No, your Honor, nothing.

4          THE COURT:  So I am pleased to hear that you all are

5     making, it sounds like, progress on addressing the mechanics of

6     the firewall counsel process.

7          I think it would be helpful -- I don't know what you

8     envision, but for me it would be helpful to have a document that

9     talks about the mechanics of this process, including how the

10    documents are shared between the defense team, firewall counsel,

11    the trial team, if ever appropriate.  As I've said publicly, I

12    think it makes sense to have requests to share information with

13    attorneys, paralegals, translators, that provided to the trial

14    team.  I don't see any issue of confidentiality there with

15    respect to Concord.  And then again, I want to address how those

16    materials are provided to and from the Court.  All right?

17         So if you could do that.  I'm not imposing any deadlines on

18    you all.  I know you all are already dealing with a lot.  But if

19    you all could work through that, that would be helpful for me

20    and give me some assurances that we're not going to have these

21    misunderstandings in the future.

22         MR. DUBELIER:  Your Honor, just so the Court is aware,

23    what Mr. Kravis and I have agreed is he's going to send me a

24    redline of what we think needs to be tweaked to have a better

25    understanding.  He said today, maybe today, maybe Monday.  And

1    then we will get back to them.  And then we can certainly

2    supplement whatever we agree on in terms of making changes

3    with -- I think what we will take now is your guidance that

4    maybe we ought to look a little more carefully than simply a

5    redline and maybe there's some more explaining that needs to be

6    done in the body of the document itself to make it clearer for

7    both sides.

8              THE COURT:  And I appreciate that.  Make your best

9    effort.  And to the extent I see areas that I still don't think

10   provide enough clarity, I will suggest them to you.  This can be

11   a conversation.  I know this is a unique situation.  We're

12   trying to make a process that works and is clear to everyone.

13   So I will appreciate your joint comments, and if I have further

14   questions, then maybe I will arrange a telephone status

15   conference or something where we can walk through those.

16             MR. DUBELIER:  Your Honor, also just so the Court is

17   aware, and I think the government would agree with me on this, I

18   don't think either side sees us using this until the Court has

19   ruled on the motion for discovery anyway.

20             THE COURT:  All right.  So maybe this doesn't make

21   sense for you all to waste a lot of time right now until we've

22   slogged through that motion and I've resolved that.  I'm fine

23   waiting.  As long as this process is on hold until I rule, I

24   think that that makes sense, as long as you all aren't needing

25   to use it in the interim.

1    MR. DUBELIER:  We certainly don't anticipate that we

2  would need to use it.  I can't imagine the government, but I

3  will let them speak for themselves.  Thank you.

4    THE COURT:  All right.  Mr. Kravis, are you

5  comfortable putting this on hold until after I've resolved the

6  pending motion?

7    MR. KRAVIS:  I think that we will continue to work on

8  the redline and get something to defense counsel, because

9  Mr. Dubelier is correct, at this point the ball is in our court.

10  Just because of the nature of the process we're talking about,

11  the trial team doesn't have any insight into what the defense's

12  plans are for using this mechanism.  So if their view is that

13  this won't come into play until after the pending motion is

14  resolved, then we can hold off on finally resolving it.  But I

15  do think it would be helpful for us to continue discussing the

16  matter in the interim so that we are ready to promptly present

17  something to the Court once the sensitive discovery motion is

18  resolved.

19    THE COURT:  All right.  Thank you.

20    MR. KRAVIS:  Thank you, your Honor.

21    THE COURT:  Anything else, Mr. Dubelier?

22    MR. DUBELIER:  No, your Honor.  Thank you.

23    THE COURT:  All right.  Thank you all.

24    (Proceedings adjourned at 9:44 a.m.)

25

1

2   CERTIFICATE OF OFFICIAL COURT REPORTER

3       I, Sara A. Wick, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6

7

8

9   /s/ Sara Wick                    January 14, 2019

10  SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25