UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>**Defendant.** | **Crim. No. 18-CR-32-2 (DLF)**<br><br>**FILED UNDER SEAL** |

## GOVERNMENT'S MOTION REGARDING PROTECTIVE ORDER

The United States of America respectfully submits this filing regarding the protective order pursuant to the Court's instructions at the last status hearing. For the reasons set forth in the government's opposition to the motion of defendant Concord Management and Consulting LLC to modify the protective order, Doc. 94, and in the government's motion for a status hearing, the government maintains that the proper procedure for handling the sensitive discovery in this case is the procedure described by the Court at the March 7, 2019 hearing. That is, Concord officers and employees who wish to view the sensitive discovery should be required to do so in the United States, and discussions about the sensitive discovery should be confined to the United States. However, due to the defendant's announced unwillingness to participate in the aforementioned procedure, and in the interest of advancing this case forward to trial, the government proposes the following modification of the restrictions on the dissemination of sensitive discovery in the protective order. As discussed below, the contents of the emails collected through the majority of the search warrants executed on email accounts in this investigation may be reviewed in Russia (along with the basic subscriber information for these accounts), provided that the emails remain subject to the other provisions of the protective order. These materials constitute the vast majority

1

of the documents that the government intends to use as exhibits at trial. For the reasons discussed in this motion, and based on the specific information set forth in the government's *ex parte* filing accompanying this motion, five specific categories of documents enumerated below would continue to be subject to the restrictions set forth in the original protective order, including the restriction that these remaining documents may not be viewed or discussed outside the U.S. offices of Reed Smith LLP ("Reed Smith"). Should officers or employees of Concord wish to view or discuss these materials, they can do so at the offices of Reed Smith in the United States after obtaining the Court's permission. Further, should defense counsel identify any material within this remaining subset of the sensitive discovery that the defense believes is necessary to share with identified officers and employees of Concord in Russia, the defense can litigate the easing of those restrictions on a document-by-document (or category-by-category) basis, through firewall counsel if necessary. This proposal is as far as the government can accommodate the defense in this case while continuing to protect its considerable national security and law enforcement interests. A revised proposed protective order setting forth these conditions is attached to this filing.

## BACKGROUND

On June 29, 2018, this Court entered a protective order that included provisions restricting the disclosure of material designated by the government as sensitive. Doc. 42. The protective order barred any individual or entity—including Concord officer Yevgeniy Prigozhin—other than the U.S. defense team from accessing, sharing, or discussing sensitive discovery materials absent the Court's approval. Doc. 42-1, ¶ 11. The order further required that sensitive discovery materials be stored offline at the U.S. offices of Reed Smith and not be disclosed, transported, or transmitted outside the United States. *Id.* ¶¶ 14, 15, 18. The order also required that any person reviewing sensitive materials be accompanied at all times by a designated and identified employee of a U.S.

office of Reed Smith. *Id.* ¶ 15.

The Court explained that these restrictions were warranted based on its finding that "[t]he government has demonstrated good cause for restricting sensitive discovery." Doc. 42, at 3. The Court noted that the sensitive discovery "includes information describing the government's investigative techniques, identities of cooperating individuals and companies, and personal identifying information related to U.S. persons who were victims of identity theft." *Id.* "These substantial considerations," the Court concluded, "constitute ample good cause for the imposition of a protective order." *Id.*

Finally, the Court included in the protective order a provision that would allow defense counsel to "seek ex parte approval to disclose sensitive discovery materials to others, including . . . Concord's individual officers and employees (including Prigozhin)." *Id.* at 4. The protective order clarified that the government's position with respect to such requests would be litigated by a firewall counsel who is not a member of the prosecution team. *Id.* "This process for evaluating individualized discovery requests," the Court stated, "will enable the Court to carefully balance the government's weighty national security, law enforcement, and privacy concerns against Concord's right to discovery under Rule 16." *Id.* at 5.

On December 20, 2018, Concord filed a motion requesting approval to disclose sensitive discovery to its officers and employees, Doc. 77, which the government opposed, Doc. 94. On March 7, 2019, the Court held a hearing on the motion. At that hearing, the government argued that the restrictions on the dissemination of sensitive discovery should remain in place based on the government's showing of good cause. In particular, the government argued that allowing certain foreign nationals to review the entirety of the sensitive discovery would implicate significant national security and law enforcement interests. As the government explained, an

3

individual who had access to the entirety of the search warrant returns in the sensitive discovery could use that material to recreate the investigative measures by which the sensitive discovery was obtained. Tr. 3/7/19, at 11:12. In the hands of a foreign adversary, that information could be used to avoid detection and prosecution in the future. *Id.* at 11:17.

The government argued that these interests could be protected without violating the defendant's right to prepare an effective defense by allowing officers and employees of Concord to come to the United States to view relevant portions of the sensitive discovery in the offices of Reed Smith pursuant to the provisions of the protective order. *Id.* at 26:17-21 ("I think…that we would be able to work with the Court, work with defense counsel to identify categories of documents within the sensitive discovery that could be shown to officers and employees of Concord under the restrictions and limitations that are set forth in the protective order.").

After hearing the arguments of the parties, the Court concluded that review of a portion of the sensitive discovery by Concord officers and employees at the U.S. offices of Reed Smith "seems like…a workable solution." *Id.* at 67:1-2. The Court directed the parties to "spend some time talking about whether this is feasible." *Id.* at 67:7. The Court further clarified that it was directing the parties to "get together and work out an agreement where two or three Concord officers or employees can come here and look at the documents," and "once that's happened" the defense could return to the Court "to say, That's not good enough, I need my client to see documents A, B, C, and D[,] [a]nd so the burden is on you at that point." *Id.* at 69:12-16.

On March 27, 2019, the government filed a motion requesting a status hearing. In that motion, the government advised the Court that the parties had made significant progress in negotiating the terms under which Concord's officers and employees could view a portion of the sensitive discovery in the United States. The government further advised that the parties had been

unable to reach agreement on two issues: whether defense counsel should be permitted to speak with individuals in Russia about the content of the sensitive discovery and whether the officers and employees of Concord who come to the United States to view the sensitive discovery should be permitted to discuss the contents of the sensitive discovery with others upon their return to Russia.

The Court granted the government's motion, and on April 10, 2019, the Court held a status hearing. At the outset of the hearing, the Court identified four main areas of dispute with regard to the sensitive discovery. The first issue was "identifying an appropriate subset of otherwise sensitive discovery that excludes search warrant affidavits and enough of the full warrant returns to avoid the government's reverse engineering concern." Tr. 4/10/19, at 8:18-21. The second issue was "how that subset of sensitive discovery will be stored and viewed in the offices of Reed Smith." *Id.* at 8:23-24. The third issue was whether the Concord officers and employees who come to the United States may "discuss the contents of what they review with other Concord officer and employees after they return to Russia." *Id.* at 9:5-6. And the fourth issue was whether there are "some documents that are so important to the defense that at some point the documents themselves will have to be transmitted to Prigozhin and others in Russia." *Id.* at 9:13-15.

After the Court provided guidance on how to approach these issues and asked to hear from the parties, defense counsel announced that "no one from Concord is coming here." *Id.* at 17:18-19. The Court responded that Concord "can choose not to avail themselves of discovery, but there can be reasonable place and manner restrictions on where they review discovery, and I am telling you right now it is here in the United States at your offices." *Id.* at 18:2-5.

The Court then tasked the government with preparing a filing setting forth its position on how the protective order should operate up to and through a trial in this case. The Court noted that

5

one possible solution would be to cull from the sensitive discovery an "intermediate set" of documents receiving a level of protection that falls somewhere between the sensitive and non-sensitive discovery. *Id.* at 39:12.

## ARGUMENT

The government's position continues to be that it is both reasonable and appropriate to require Concord officers and employees who wish to view and discuss the sensitive discovery to do so in the United States at the offices of Reed Smith.  As the government has argued, courts routinely restrict the location where sensitive discovery can be viewed by a defendant based on a showing of good cause.  In this case, the good cause justifying such a restriction is the harm to law enforcement and national security interests that would result from permitting a foreign adversary—and this foreign adversary, in particular—to have wholesale access to the information that can be extracted and deduced from the sensitive discovery.  That information would allow the foreign adversary to, among other things, reverse engineer the investigative techniques employed in this case so that it could change its behavior to avoid detection and prosecution in the future.  Moreover, the demonstrated exploitation of the non-sensitive discovery in a manner that is inconsistent with the terms of the protective order provides a further basis for keeping the sensitive discovery in the United States.  *See* Gov't Amended Opp. To Mot. Regarding Sensitive Discovery 8-13 (filed Feb. 1, 2019) (Doc. 99)  Finally, Concord has offered no reasonable explanation for why these proposed restrictions would unduly impair its right to present a defense. ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████ And while Concord's high-level officers may prefer to avoid the jurisdiction of this Court by coming to the United States, there is no legal authority that

supports modifying reasonable restrictions on the dissemination of sensitive discovery to suit the personal interests of Concord's officers. Having voluntarily entered an appearance in a criminal case in the United States, Concord should be prepared to come to the United States to defend itself.

However, the government recognizes that the Court has asked for a proposal to move beyond this discovery dispute as this case progresses to trial. The government is also mindful of the Court's suggestion that such a proposal could include the designation of an intermediate set of materials protected by restrictions that are greater than those imposed on the non-sensitive discovery but less than the restrictions on the sensitive discovery. Accordingly, the government recommends as follows.

The sensitive discovery currently comprises approximately ████████ ████ Those returns include materials ████████████████████████████████████████████████████████████████████████████████████ The government proposes to allow Concord officers and employees to view ██████████████████████████ in Russia, as well as ███████████████ for the accounts that were searched.[1] (These materials are described in the attached proposed modified protective order as "intermediate Sensitive materials.") The review of these materials would be conducted in a manner consistent

_____

████████████████████████████████████████████████████████████████████████████████████████

7

with the other provisions in the protective order regarding sensitive discovery. That is, the returns would be stored in a locked room at the offices of Reed Smith in Russia and would not be stored on any device that could be connected to or accessible from the Internet. The returns would be reviewed in the law firm offices in the presence of a designated employee of the law firm by individuals who have signed the memorandum of understanding. The intermediate Sensitive materials could not be replicated in any manner and could be discussed only with individuals who had signed the memorandum of understanding, and only for purposes of preparing Concord's defense.

The remaining sensitive discovery, which would not be made available in Russia, consists largely of: (1) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (2) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (3) returns from grand jury subpoenas ▉▉▉▉▉▉; (4) legal process (i.e., the search warrants, 2703(d) applications, and subpoenas themselves); and (5) evidence gathered in the course of another investigation in the Eastern District of Virginia. Those materials (described in the proposed modified protective order as "U.S. Sensitive materials") would remain subject to the restrictions on the dissemination and discussion of sensitive discovery set forth in the protective order. If defense counsel believes it is necessary to show Concord officers or employees, or discuss with Concord officers or employees, the content of any documents from within this subset of materials in order to prepare Concord's defense, then defense counsel can seek the permission of the Court to do so. If the defense believes that any such request would tend to reveal defense strategy, then defense counsel can seek permission of the Court to

litigate the request through firewall counsel rather than the trial team.[2] If the government intends to use any document from this remaining category of sensitive materials as an exhibit at trial, the government will advise the Court and defense counsel by the deadline set by the Court for the submission of exhibit lists by the parties in a pretrial scheduling order. At that time, the government will propose any modification of the protective order necessary to allow the defense to prepare for the government's use of the exhibit at trial.

This proposal appropriately balances the government's national security and law enforcement interests against the defendant's right to present a defense for several reasons.

*First*, this proposal fulfills Concord's stated needs with respect to discovery. In its motion to disclose sensitive discovery, Concord argued that its "officers and employees possess a critical first-hand understanding of its own business activities, and their input and insight about both is necessary for Concord to adequately prepare a defense." Doc. 77, at 6. Concord further argued that "the only way to get fully accurate translations and prepare for trial is to speak to the individuals who allegedly wrote the documents." *Id.* at 7. This proposal allows Concord to accomplish both of these goals by permitting review of the content of the majority of the sensitive discovery by Concord officers and employees in Russia.

*Second*, this proposal protects the government's national security and law enforcement interests in the sensitive discovery by withholding from review in Russia materials that could be used by this foreign adversary to, among other things, reverse engineer the government's investigative techniques. In particular, search warrant affidavits, 2703(d) applications, 2703(d)

---

[2] In response to any such request, the government (through the trial team or firewall counsel) will take the position that, in the first instance, any review of these materials by Concord officers or employees, as well as any discussion of these materials with Concord officers or employees, should take place in the United States.

9

returns, grand jury subpoenas, and grand jury subpoena returns would tend to disclose the investigative methods used by law enforcement, ███████████████████████████████ ███████████████████████████████████████████. The content of the emails from many of those accounts will be made available for review in Russia under the government's proposal. Moreover, as noted above, the majority of the government's trial exhibits will consist of documents from those email accounts. Therefore, withholding ████████ ██████████████████████████████ from review in Russia is a reasonable accommodation of the government's law enforcement and national security interests. The remaining material withheld from review in Russia implicates other significant national security and law enforcement interests and contains very little content that is relevant to this case.³ Moreover, if the defense deems it necessary to discuss any of that remaining sensitive discovery with individuals in Russia, this proposal would allow the defense to seek court permission to do so.

*Third,* by creating this intermediate category of sensitive discovery, as the Court suggested at the last status hearing, this proposal would allow the parties to prepare for and conduct a trial. The vast majority of the government's anticipated trial exhibits are contained in the emails that would be sent to Russia. And the handling of the few trial exhibits that might come from the remaining sensitive discovery can be addressed on a document-by-document basis.

* * * * *

This proposed modification to the protective order reflects the government's best effort to narrow the restrictions on the dissemination of sensitive discovery while still protecting the

---

³ The fifth category of material described above concerns an ongoing investigation in another jurisdiction. The government proposes to withhold that material from transmission to Russia to avoid compromising that investigation.

national security and law enforcement interests implicated by these materials. This proposal also reflects a significant concession by the government, namely the transmission to Russia of a substantial number of sensitive documents, notwithstanding the fact that the defense has simply abandoned a far more reasonable alternative without adequate explanation or justification. The government therefore respectfully requests that the Court grant its motion to modify the protective order so that this case can go to trial.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS<br>Assistant Attorney General for National Security | JESSIE K. LIU<br>United States Attorney |
| By: /s/<br>Heather N. Alpino<br>U.S. Department of Justice<br>National Security Division<br>950 Pennsylvania Ave. NW<br>Washington, D.C. 20530<br>Telephone: (202) 514-2000 | By: /s/<br>Jonathan Kravis<br>Deborah Curtis<br>Kathryn Rakoczy<br>555 Fourth Street NW<br>Washington, D.C. 20530<br>Telephone: (202) 252-6886 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2019, I caused a copy of the foregoing filing to be transmitted to Katherine Seikaly and Eric Dubelier, counsel of record for Concord Management and Consulting LLC, via email.

By: /s/
Jonathan Kravis
Assistant United States Attorney
555 Fourth Street NW
Washington D.C. 20530