## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC

Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

## DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S RESPONSE TO THE GOVERNMENT'S MOTION REGARDING PROTECTIVE ORDER

Pursuant to the Court's April 10, 2019 order, Defendant Concord Management and Consulting LLC ("Concord" or "Defendant"), through counsel, submits this Response to the Government's Motion Regarding Protective Order ("Motion" or "Mot.").

### I.      INTRODUCTION

Eight weeks after the Court instructed the government to propose changes to the existing Protective Order and make a good cause showing with respect to its continuing desire to prohibit Defendant Concord from reviewing alleged sensitive discovery, Sealed Tr. of Status Conference, 60:1-9, Apr. 10, 2019 ("Apr. 10 Tr."), it has submitted a proposal the cornerstone of which is based on a factual impossibility, that is, that undersigned counsel maintains a law office in Russia. The fact that Reed Smith does not maintain any such office, of course, is publicly available information. The government's proposal is both impossible to execute and contrary to law; but it also raises serious doubts about the validity of every argument made, first by the Special Counsel, and then

1

by the U.S. Attorney, about the alleged national security and law enforcement interests the government claims are at issue.[1]

Further, the proposal is devoid of even a minimal understanding of the prosecution of corporate entities. The government writes that "Concord should be prepared to come to the United States to defend itself." Mot. 7. But it already has, in the manner in which Congress provided— through its counsel. Fed. R. Crim. P. 43(b)(1). Congress has never required through statute that a foreign corporate defendant must appear in the United States in the form of an individual to obtain discovery. There is no rule or regulation to this effect. This is simply an ignorant thing to say.

Moreover, the government's description and explanation of its proposal is vague and fails to provide with specificity any factual basis aimed at meeting its burden to continue withholding discovery from Defendant Concord.[2] As best undersigned counsel can understand, the proposal allows for ███████████████████ to be designated as "intermediate Sensitive materials," and to be transported to Russia and reviewed in Russia by officers and employees of Concord and potential witnesses so long as the materials are stored "in a locked room at the offices

---

[1] The government requested leave to file its Motion under seal, representing to the Court that the Motion "discusses the content of the sensitive discovery." Govt's Mot. Leave File Under Seal 1, June 5, 2019. However, the Motion itself does not discuss the content of sensitive discovery, other than in very general terms which have already been addressed in other public filings. Moreover, to the extent the government actually believes that its Motion describes the content of sensitive discovery, then the government has violated the terms of the Protective Order by serving it via email on undersigned counsel. *See* Protective Order ¶ 18, June 29, 2018, ECF No. 42-1.

[2] Once again, as has been the case from the outset of this discovery dispute, over Defendant's objection the government has provided the Court with a secret pleading containing secret arguments making it impossible for undersigned counsel to respond in full. *See* Gov't Notice of *Ex Parte*, *In Camera*, Classified Filing, June 5, 2019, ECF No. 138. The continuing danger in this procedure is that the Court will again misunderstand the government's ever-changing argument as it has done previously. *See* Apr. 10 Tr. 50:4-9.

of Reed Smith in Russia and would not be stored on any device that could be connected to or accessible from the Internet." Mot. 7-8. The government asserts that these materials comprise approximately half of the discovery materials produced to date, and that the majority of exhibits the government intends to introduce at trial come from these accounts. *Id.* 7. The government proposes to withhold "a small number" of these email accounts that "raise particular sensitivities." *Id.* 7 n.1. The government does not identify which accounts or even how many would be excluded, and states that the reasons for exclusion are set forth in its *ex parte* filing. *Id.*[3]

The government urges without any facts or argument that the remaining sensitive discovery would still be subject to the restrictions contained in the existing Protective Order, including that these materials cannot be reviewed outside of Reed Smith's U.S. offices and that counsel cannot even discuss these materials with anyone without specific permission from the Court, and only after the government itself has had a chance to weigh in on the request. The government loosely buckets this remaining discovery into six categories.[4] *Id.* 8.

The government fires across the bow of the Court asserting that this "proposal is as far as the government can accommodate the defense in this case while continuing to protect its considerable national security and law enforcement interests." *Id.* 2. Yet this assertion ignores the Court's role in this process and also suggests that regardless of what the Court orders the government will not comply. Moreover, the government suggests that its proposal is some type of compromise, ignoring the fact that it has defied the laws of criminal discovery for more than a

---

[3] Given the fact that undersigned counsel already has all of the accounts there is no reason whatsoever why the specific accounts the government proposes to continue to withhold from Concord are not identified now.

[4] The government identifies five categories of documents on page 8 of the Motion but, as noted above, also proposes withholding an additional category of documents in footnote 1 on page 7.

year. If the government does not want Concord to see the discovery, it can dismiss the case. If the government wants to permit Concord to view certain sensitive discovery in Russia, it does not even need the Court for that, it can simply remove the imaginary designation it unilaterally applied to those materials in the first place. For the reasons set forth below, the government has not met its burden to maintain the existing restrictions on the alleged sensitive discovery, and Concord will not negotiate away its right to review the entirety of the discovery produced to undersigned counsel.

## II.    THE GOVERNMENT'S BACKGROUND SECTION

The Background section of the government's Motion is nothing more than revisionist history in an attempt to establish that the discovery dispute is not a mess of its own making (which it is). Concord will not waste the Court's time by responding point-by-point to all of the inaccuracies in the government's recounting of the procedural history of the Protective Order. However, it cannot go unsaid that the government's entire premise rests on the assertion that the Court based the existing Protective Order on "its finding that 'the government has demonstrated good cause for restricting sensitive discovery.'" Mot. 3 (citing Memorandum Opinion and Order, June 29, 2019, ECF No. 42). But this is not true. The government ignores that at the April 10, 2019 hearing, the Court specifically questioned that finding and the existing restrictions, stating that the Court's "understanding of the basis for the original protective order didn't conform with" what the government represented at the March 7, 2019 hearing because the Court "understood that the protective order was protecting a much greater percentage of truly sensitive documents." Apr. 10 Tr. 50:4-9. The Court further explained that it "approved this very broad protective order, . . . without really getting into the mess of the documents itself," and that the Court does not think that

it "did the job [it] need[ed] to do, if that's the protective order that is going to get us to trial." *Id.* 56:6-14.[5]

## III. ARGUMENT

### A. The Government's Proposal is Impossible to Execute and Contrary to Law

As noted, the government's latest proposal is simply impossible to execute because Reed Smith does not have an office in Russia, a fact that the vast investigative resources of the Department of Justice were apparently unable to uncover.[6]

In addition to being impossible, the government's proposal is also contrary to law. The government asserts that the proposed intermediate materials constitute approximately half of the discovery produced to date and that "the vast majority" of the exhibits the government intends to introduce at trial come from these accounts. Mot. 7. There are two fundamental problems with these assertions. The first is that a defendant's right to discovery is not limited to what the government intends to introduce at trial—a fact borne out by reading the plain language of Fed. R. Crim. P. 16. A defendant is entitled to present its own defense, and in order to do so, Rule 16 requires the government to produce items that are material to preparing the defense and that were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). The government has never

---

[5] The government also continues to ignore the Court's statement that when it entered the existing Protective Order, it "anticipated that by this time the government would have loosened its restrictions on sensitive discovery so that the number of sensitive discovery materials would be significantly smaller and the number of nonsensitive discovery materials would be significantly higher." Apr. 10 Tr. 5:21-25; *see also* Sealed Tr. of Mot. Hr'g, March 7, 2019, 10:24-11:1 ("Mar. 7 Tr."). In the year since the Protective Order was entered, the government has not re-designated any discovery materials whatsoever as non-sensitive, even when it has described those materials in public filings. *See* Concord's Mot. Approval Disclose Disc. Pursuant Protective Order 11-12, Dec. 20, 2018, ECF No. 77.

[6] Reed Smith's website very clearly identifies the specific locations of each of its 29 offices worldwide. *See* https://www.reedsmith.com/en/offices.

argued that the discovery materials it produced were not material; rather, it produced all of the discovery materials pursuant to Rule 16.[7] Now that the government has produced the discovery it is the Defendant who gets to decide what materials it wants to use at trial. This is particularly true with respect to exculpatory material, which the government does not even attempt to address in its proposal. *See* Mar. 7 Tr. 38:12-16 (undersigned counsel noting that the sensitive discovery contains exculpatory information and the government cannot make decisions about what documents Defendant will use at trial).

But under the government's proposal, approximately one terabyte of discovery it produced would remain barred from view by or discussion with Defendant Concord. For those materials, the government argues—without any legal authority—that undersigned counsel would bear the burden of identifying specific documents it believes Concord should see in order to prepare for trial (without the benefit of Concord's input as to the significance of the documents), and seeking permission from the Court to do so, with an opportunity for the government to object. The Court has already determined that the government has not made a particularized showing required by the case law to shift the burden in this way. Mar. 7 Tr. 19:16-20:2. And nothing in the current Motion changes that because the Motion is pure argument and contains no facts whatsoever. *See United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018) (noting that even where blanket protective orders are permitted, courts require a particularized showing of good cause wherever a claim under the protective order is challenged).

Furthermore, by the government's own admission, the ⬛⬛⬛⬛⬛ contain only "the majority" of the government's trial exhibits. Mot. 10. With respect to the remaining exhibits

---

[7] Each and every letter from the government transmitting discovery to undersigned counsel begins with the phrase "Pursuant to Rule 16 of the Federal Rules of Criminal Procedure."

the government intends to use at trial, the government's solution is to wait until the Court enters a scheduling order requiring the submission of exhibit lists and at that point the government says it will propose a modification to the protective order "to allow the defense to prepare for the government's use of the exhibit at trial." Mot. 9. The government provides no case law to support this novel approach either. This proposal simply further interferes with undersigned counsel's ability to prepare for trial, rather than offering a solution to the "intractable issues we need to be resolving now," as the Court requested at the April 10 hearing. Apr. 10 Tr. 46:17-25; *see also id.* 55:12-16 (Court stating that it does not want to address these issues incrementally); 56:17-20, 57:4-10 (instructing the government to make a proposal that will allow parties to prepare for and conduct trial).

## B.   The Government's Proposal Contradicts the Arguments It Has Made Previously

According to the government, Concord is not only a defendant, but also a "foreign adversary," Mot. 6, ignoring the presumption of innocence afforded under U.S. criminal law. *See In re Winship,* 397 U.S. 358, 363 (1970) (calling the presumption of innocence "that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law") (internal quotation marks omitted). The Special Counsel's initial position regarding the Protective Order was that no sensitive discovery could be shared with any foreign national absent specific approval from the Court and that, in any event, Mr. Prigozhin could not view any sensitive discovery ever. *See* Govt's Mot. Protective Order 10-12, June 12, 2018, ECF No. 24. For approximately nine months, the Special Counsel, and then the U.S. Attorney, maintained that sending to Russia any of the materials it unilaterally designated as sensitive "unreasonably risk[ed] the national security interests of the United States." Govt's Am. Opp. Def.'s Mot. Approval Disclose Disc. Pursuant to Protective Order 1, Feb. 1, 2019, ECF No. 99.

Then, at the March 7, 2019 hearing, the government revealed for the very first time that the content of the materials is not sensitive at all, Mar. 7 Tr. 13:6-7, and instead "the government's principal interest here is in the disclosure of the accounts as a whole, the entirety of the return." *Id.* 17:12-13. According to the government's arguments on that day, the reason for this was that "once an individual can put several of those entirety of search warrant productions together, they can start to recreate the investigative steps that were taken." *Id.* 11:10-12. At the April 10 hearing, the government insisted that it needed to remove a subset of 5% to 10% of material from each account to prevent its adversary from learning the scope of its investigative resources. Apr. 10 Tr. 36:4-36:19; 37:16-37:20. *See also id.* 11:6-12:3; 34:7-34:17. The government also insisted that

But in the hearing on March 7, 2019, and in the subsequent hearing on April 10, 2019, the government never made the distinction it now makes between the type of account at issue, it simply asserted over and over again that the national security and law enforcement interest rested in the entirety of the accounts Mar. 7 Tr. 5:23-6:2; 28:15-21; 29:7-30:3; 33:22-34:3; 34:16-21; *see also* Apr. 10 Tr. 35:25-36:2: 37:21-38:2; 51:3-8.[8]

But now, under its current proposal, entire email accounts can be reviewed in Russia—apparently without any national security consequences—but the entirety of other types of electronic media accounts would remain subject to the highly restrictive requirements of the existing Protective Order. And the government gets to unilaterally pick which accounts fall into

each category. The government makes no effort to explain this extraordinary change from its prior

position ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████ Nor does the government offer an explanation about why email accounts should be

treated differently from other types of electronic media accounts. So the truth can only be that the

national security/law enforcement argument was grossly overstated from the beginning.[9]

**C.**  **The Government Fails to Make a Particularized Showing of Good Cause for Any Documents to Remain Subject to the Existing Protective Order**

The government identifies six categories of documents to exclude entirely from the

intermediate discovery set. Mot. 7-8. Yet the government has failed to provide a particularized

showing for why these specific categories of documents should be withheld from Concord.

Instead, the government presents its position as some sort of grand bargain wherein because it

agreed to allow some materials to be transported to Russia for review it should be allowed to keep

other material from the Defendants' view indefinitely. But as the Court has acknowledged, the

government bears the burden of showing good cause as it relates to the imposition of a protective

order. Mar. 7 Tr. 15:2-3, 18:18-20, 54:23-55:1; *see Johnson*, 314 F. Supp. 3d at 253. The injury

to the party seeking to limit discovery must be shown "with specificity;" and "[b]road allegations

of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good

cause showing." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (internal quotation

marks and citations omitted); *see also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("A

---

[9] The government's inconsistencies are further apparent from its struggle with auxiliary verbs with respect to the alleged harm to national security. Note the interchangeable and confusing use of "would," Mot. 3, 6; "could," Mot. 4, 9; and "would tend to," Mot. 10.

finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements.") (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035, at 264–65 (1970)); *United States v. Carriles*, 654 F. Supp. 2d 557, 565 (W.D. Tex. 2009) ("However, a motion for a protective order ordinarily 'contemplates a particular and specific demonstration of fact.'") (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (1978)). *See* Apr. 10 Tr. 27:8-10 (agreeing that the government has to make a particularized showing); Mar. 7 Tr. 19:16-21 ("I don't feel as though the government's made the particularized showing that the case law requires . . ."), 54:24-25.[10]

1.          ████████████████

The government describes the first category as ████████████████████████████

████████████   Mot. 8.   As best undersigned counsel can determine, this category contains approximately ████████ items. ██████████████████████████████████████████████████

██████████████████████████████████████████████████[11]  The government offers

no explanation and states no facts or substantive argument for why these materials should be treated differently from the email accounts that the government now says can go to Russia.  These ████████████████ simply contain ████████████, the same as an email account containing electronic mail and attachments.

---

[10] To the extent the government takes the position that the particularized showing for each category of documents is contained in its *ex parte* filing, this would be directly contrary to the Court's clear instruction that the government include its "arguments and logic of [its] opinion" in a manner to which Concord could respond, even though the supporting facts could be included in an *ex parte* filing. Apr. 10 Tr. 63:20-64:3. The government's Motion contains no "logic" whatsoever.

[11] As noted below, the government's fourth category consists of "legal process (i.e., the search warrants, 2703(d) applications, and subpoenas themselves)."

The government does not explain why the entirety of these accounts should be excluded from Concord's view in Russia when the government made no such distinction at the March 7, 2019 or the April 10, 2019 hearings wherein it admitted to the Court that for most of the discovery the content itself is not actually sensitive. Mar. 7 Tr. 13:6-7 ("the content is not itself sensitive"); 12:19-21 ("the content of the documents themselves is not the government's principal good cause interest"). Instead, the government offers a single sentence that the material "implicates other significant national security and law enforcement interests and contains very little content that is relevant to this case." Mot. 10. But that sentence is all but meaningless as it provides no explanation for this assertion and nothing to which Concord can respond, and it certainly does not constitute a particularized showing with respect to these materials. *See Anderson*, 805 F.2d at 7 ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."). Furthermore, the investigative method that the government used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was a search warrant, the exact same investigative method used to capture both ▮▮▮▮▮▮▮▮▮ that the government has agreed can be transmitted to Russia and portions of the non-sensitive discovery. The government does not explain why the return of one search warrant needs to be more protected than the return from another or how doing so protects national security or law enforcement interests.

Given the public availability of the above information, it is impossible for the Court to conclude from the existing record that the balance between the national security and law enforcement interests at stake and Concord's right to present a full defense at trial weighs in favor of the government. *See* Mar. 7 Tr. 15:5-9.

2.

The second category is which the government describes as including

Mot. 8. This description is so vague that it is virtually unintelligible and it certainly does not tell the Court what materials make up this category. As best undersigned counsel can determine, this category contains approximately items. As with the first category, the government offers no explanation for why this material should be treated differently from the email data, or why something less than the entirety of the accounts cannot be viewed by Concord in Russia. And again, (1) the investigative method is precisely the same method used to capture the email data the government now says can go to Russia; (2) the government recently consented to the release of information confirming that it and (3)

Further, the government produced in the non-sensitive discovery

In this regard,

the fact that

—has already been disclosed

to Concord within the non-sensitive discovery.   This discrepancy highlights the seemingly

arbitrary designations the government has made for the same types of materials captured through

the same investigative techniques.   The government's failure to advise the Court of this fact also

demonstrates the danger in allowing the government to make arguments *ex parte*, without any

rebuttal from Concord.

3.     <u>Returns from Grand Jury Subpoenas</u>

The third category constitutes returns from grand jury subpoenas                    Mot.

8.  The government makes no effort to explain why these materials are different from the materials

collected by search warrants.   As best undersigned counsel can determine, most of the grand jury

subpoenas were used to collect information from financial institutions, internet service and other

communications providers, and social media companies and this category contains approximately

81,000 items.   To the extent that this data relates to financial or other types of accounts allegedly

controlled by any of the defendants it is essential that Concord have access to this evidence.   It

appears that

.  This material is crucial

and as such is also crucial for review by

the Defendant itself, not just counsel. The government has not provided a particularized showing

necessary to continue the strict requirements of the Protective Order, or even attempted to explain

the national security concern. *See* Mot. 9-10 (explaining in a single sentence that

#### 4.    Legal Process

The fourth category contains the legal process used in the investigation, including search

warrants (and presumably the supporting affidavits), 2703(d) applications, and grand jury

subpoenas. As best undersigned counsel can determine, this category contains 262 documents.

As noted above, the government's Motion does not make a particularized showing regarding these

documents and instead lumps them together with the grand jury                         *See* Mot. 9-

10. Nevertheless, undersigned counsel does not believe at this time that it is necessary to share

these materials with the Defendant and as such is willing to accept for the time being that this

limited category of documents remains subject to the existing Protective Order with the

understanding that once the review of discovery is complete undersigned counsel can seek

approval from the Court to disclose these materials if necessary.[12]

---

[12] While undersigned counsel is willing to put this category of documents on hold for the time
being, the alleged sensitivity of these documents is grossly overstated.

5.    Evidence Related to Another Matter

The fifth category is "evidence gathered in the course of another investigation in the

Eastern District of Virginia." Mot. 8.  For this category, the government proposes withholding

this information from Concord "to avoid compromising that investigation." *Id.* 10 n.3.  It is not

possible for undersigned counsel to determine which documents in the sensitive discovery are in

this category because no documents are identified as relating to any other case.  The government

offers no explanation as to what types of documents fall into this category (e.g., email accounts,

iCloud accounts, Google Drive accounts), nor what the volume is.



6.    

Finally, the sixth category of documents consists of the returns from search warrants

executed on

The government implies that the reason for distinguishing these accounts from the others is set forth in its *ex parte* filing. *Id.* Obviously, Concord cannot respond to these arguments. However, Concord notes that including an entire argument only in the *ex parte* filing is directly contrary to the Court's instruction that the government file as much as it can in a fashion that Concord could respond to and that arguments and logic of the government's position needs to be fleshed out in a filing that undersigned counsel could see. April 10 Tr. 63:20-64:3; *see also United States v. Libby*, 429 F. Supp. 2d 18, 21 (D.D.C. 2006) ("Thus, courts routinely express their disfavor with *ex parte* proceedings and permit such proceedings only in the rarest of circumstances."). Nevertheless, for these ▆▆▆▆▆▆▆▆▆▆ the government unlawfully proposes shifting the burden back to defense counsel in order to make any use of the documents to prepare for or during trial.

### D.   Other Flaws in the Government's Proposal

The government's proposed revisions to the protective order are objectionable for two additional reasons.

1.   The Government's Proposal Does Not Address All of the Sensitive Discovery Produced to Date

These six categories, plus the documents that the government proposes to include in the intermediate materials, does not account for all of the sensitive discovery produced to date, and the government leaves it to defense counsel to guess as to the status of those additional materials. The government tacitly acknowledges this when it says that the "remaining sensitive discovery, which would not be made available in Russia, consists *largely* of" the categories addressed above. Mot. 8 (emphasis added). In particular, undersigned counsel has identified ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ that are not accounted for in the government's proposal.

2. The Government Proposes Additional Modifications to the Protective Order Not Supported by its Motion

Without any explanation to the Court or undersigned counsel, the government attempts to make additional modifications to the existing Protective Order. In particular, the government's revised protective order requires that when defense counsel seeks authorization from the Court to disclose sensitive materials to authorized persons it must either serve its motion on the prosecution team or set forth the basis for serving the motion on Firewall Counsel rather than the prosecution team. *See* Proposed Revised Protective Order ¶¶ 13-14. The government never discussed any such revision with undersigned counsel and has not provided any support for it in its Motion. Undersigned counsel objects to any such revision because any motion to disclose the sensitive materials to authorized individuals (other than potentially increasing the number of document reviewers and translators assisting defense counsel in the United States) would necessarily reveal defense strategy. Requiring defense counsel to justify that belief in each instance to Firewall Counsel would unnecessarily impinge upon defense counsel's strategy and create an undue burden.

While making this unexplained change to the terms of the Protective Order, the government does not bother to address other obvious problems or those for which the Court has specifically requested clarification. For example, ¶ 16 of the Proposed Revised Protective Order prohibits defense counsel and any authorized person from discussing sensitive discovery outside of the U.S. offices of Reed Smith. Additionally, the Court has requested clarification of the precise procedures for requests made to it and Firewall Counsel regarding authorization to disclose sensitive discovery, but the government does not offer any such suggestions, nor has it contacted defense counsel to meet and confer on this issue.

**E.**

Concord's position regarding the proposal to view discovery in the United States has been consistent throughout these proceedings. *See* Def.'s Reply Supp. Mot. Permit Disclosure Disc. Pursuant to Protective Order, Feb. 20, 2019, ECF No. 103 (explaining objections to proposal that Concord officers and employees be forced to come to the United States to view sensitive discovery); Mar. 7 Tr. 40:24-41:1 (Concord employees and officers coming here is a "nonstarter"). The fact that undersigned counsel agreed to follow the Court's instructions to engage in discussions with the government about the possibility of viewing discovery within the United States after the government for the first time revealed its position regarding the entirety of accounts, does not suggest that Concord or undersigned counsel had ever agreed to the proposal. Moreover, Concord has been clear with the Court and the government about the multiple reasons why this proposal is objectionable. *See, e.g.*, Concord's Resp. Govt's Mot. Status Hr'g 2-3, Apr. 1, 2019 (filed under seal) (listing six specific objections to the proposal).

**F.      Concord's Position With Respect to the New Category of Intermediate Sensitive Discovery**

Concord's position is that if the Court accepts in part the government's proposal and then determines what discovery materials should constitute the intermediate sensitive discovery materials, undersigned counsel, working with its IT vendor, will segregate those materials, confirm the necessary technical specifications, and create a database or similar export containing both the

materials and the defense work product with respect to that data. Undersigned counsel will engage a vendor acceptable to the Court to transmit and host the data in Russia, to be viewed on a computer not accessible by the internet and maintained in a locked workspace. That vendor will require each Russian person given access to the database to sign a copy of the Memorandum of Understanding attached to the Protective Order ("MOU"), which will be maintained by defense counsel and made available to the Court upon a specific request. Defendant Concord does not agree that any and all discussions among individuals who view the intermediate discovery materials will take place in the chosen vendor's workspace. There is no legal precedent for such a draconian restriction, and it will be impossible to enforce. Further, Defendant Concord does not agree that simply discussing the materials with a Concord officer or employee requires that person to sign an MOU. Upon the Court's ruling, undersigned counsel will work with the government to propose revisions to the Protective Order consistent with the Court's ruling and finalize the necessary technical requirements for the handling of this data.

### III.    CONCLUSION

For the reasons stated above, the government has proposed an impossible solution to a problem it created, and has contradicted without explanation the arguments it has made previously regarding the national security interests purportedly addressed by the restrictions in the Protective Order. For the more than 700,000 documents the government proposes to still keep from Concord in Russia the government has not made the particularized showing the Court stated is required.

Dated:   July 3, 2019                                  Respectfully submitted,

                                                      CONCORD MANAGEMENT AND
                                                      CONSULTING LLC

                                                      By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2019, I have caused a copy of the foregoing Response to the

Government's Motion Regarding Protective Order to be filed under seal with the Clerk's office

and transmitted to the following counsel of record via hand delivery:

Jonathan Kravis
Deborah Curtis
Kathryn Rakoczy
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

Jason B.A. McCullough
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530

By: */s/ Katherine J. Seikaly*
    Katherine J. Seikaly (D.C. Bar No. 498641)
    REED SMITH LLP
    1301 K Street, NW
    Suite 1000 - East Tower
    Washington, DC 20005-3373
    202.414.9200 (phone)
    202.414.9299 (fax)
    kseikaly@reedsmith.com