# Exhibit C



FEDERAL ELECTION COMMISSION
Washington, DC  20463

August 24, 2012

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

ADVISORY OPINION 2012-27

Benjamin T. Barr, Esq.
Dan Backer, Esq.
Allen Dickerson, Esq.
National Defense Committee
6022 Knights Ridge Way
Alexandria, VA 22310

Dear Messrs. Barr, Backer, and Dickerson:

We are responding to your advisory opinion request on behalf of the National Defense Committee ("NDC"), concerning the application of the Federal Election Campaign Act, as amended (the "Act"), and Commission regulations to NDC's proposed plan to finance certain advertisements and ask for donations to fund its activities.

The Commission concludes that three of NDC's seven proposed advertisements would not expressly advocate the election or defeat of a clearly identified Federal candidate and two of the four proposed donation requests would not be solicitations of contributions under the Act. The Commission could not approve a response by the required four affirmative votes concerning the remaining advertisements and donation requests, or concerning NDC's other questions. *See* 2 U.S.C. 437c(c); 11 CFR 112.4(a).

*Background*

The facts presented in this advisory opinion are based on your letter and email received on July 26, 2012.

NDC is incorporated as a non-profit social welfare organization in the Commonwealth of Virginia. It is exempt from taxation under section 501(c)(4) of the Internal Revenue Code. 26 U.S.C. 501(c)(4). NDC focuses on issues that impact war veterans, veterans' affairs, national defense, homeland security, and national security.

AO 2012-27
Page 2

      NDC states that it is not under the control of any candidate.  NDC also states that it will not make any contributions to Federal candidates, political parties, or political committees that make contributions to Federal candidates or political parties, and that it is not affiliated with any group that makes contributions.  NDC states that it will not make any coordinated expenditures; its bylaws prohibit its members, officers, employees, and agents from engaging in activities that could result in coordination with a Federal candidate or political party.   Bylaws, art. VI, sec. 3 NDC also states that it will not accept any contributions from foreign nationals or Federal contractors.

      NDC plans to run seven advertisements, which it describes as "discuss[ing] public issues relevant to upcoming Federal elections, military voting, and policy positions of candidates for federal office that relate to National Defense's core mission."  NDC will run these advertisements on a variety of online and social media platforms, including, but not limited to, paid video placements via a commercial vendor.  The advertisements, described in the response to Question 1 below, will be in video format, and will include still photos, basic animation, and voice-overs.  NDC plans to spend just over $3,000 to produce and distribute these communications, of which $2,000 will be paid to a production company, and $1,000 will be used to distribute the advertisements on the Internet.  The production company will be responsible for creating the video format.

      NDC also plans to ask for donations from individuals through four separate donation requests, which are described in the response to Question 3 below.  NDC states that it has a larger budget to fund activities that are "dissimilar" to the activities described in its advisory opinion request, but that it is "unable to provide any details" about its overall budget or its other activities.

### Questions Presented

    (1) Will any of NDC's proposed speech constitute "express advocacy" and be subject to regulation?

    (2) Will the Commission continue to apply and enforce 11 CFR 100.22(b)?

    (3) Will any of NDC's donation communications be deemed "solicitations" and subject to regulation?

    (4) Will any of the activities described trigger the requirement to register and be regulated as a "political committee"?

### Legal Analysis and Conclusions

*Question 1.  Will any of NDC's proposed speech constitute "express advocacy" and be subject to regulation?*

      The Commission concludes that NDC's "Ethically Challenged," "Stop the Liberal Agenda," and "Don't Trust Harry Reid" advertisements are not express advocacy under

AO 2012-27
Page 3

11 CFR 100.22.   The Commission could not approve a response regarding the remaining advertisements by the required four affirmative votes.

Under the Commission's regulations, a communication expressly advocates the election or defeat of a clearly identified Federal candidate if it:

> [u]ses phrases such as 'vote for the President,' 're-elect your Congressman,' 'support the Democratic nominee,' 'cast your ballot for the Republican challenger for U.S. Senate in Georgia, 'Smith for Congress,' 'Bill McKay in '94,' 'vote Pro-Life' or 'vote Pro-Choice' accompanied by a listing of clearly identified candidates described as Pro-Life or Pro-Choice, 'vote against Old Hickory,' 'defeat' accompanied by a picture of one or more candidate(s), 'reject the incumbent,' or communications of campaign slogan(s) or individual word(s), which in context, can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. which say 'Nixon's the One,' 'Carter '76,' 'Reagan/Bush' or 'Mondale!'.

11 CFR 100.22(a).

Under the Commission's regulations, a communication also constitutes express advocacy if "[w]hen taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because— (1) [t]he electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and (2) [r]easonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action." 11 CFR 100.22(b).

### A.  "Ethically Challenged" Advertisement

> Nydia Velazquez.  Ethically challenged.  A key supporter of the Troubled Asset Relief Program.  Calls bailed-out Wall Street greedy one day, but takes hundreds of thousands from it the next. A leader you can believe in?  Call Nydia Velazquez and let's make sure we end the bailouts that bankrupt America.

The "Ethically Challenged" advertisement does not contain express advocacy under 11 CFR 100.22.

### B.  "Stop the Liberal Agenda" Advertisement

> Harry Reid: Willing to put America's service men and women at risk through his risky sequestration gamble.  Willing to put politics above common sense and protecting the men and women who defend our nation.  Stop the insanity, stop sequestrations, stop

AO 2012-27
Page 4

> Reid's twisted liberal agenda. This fall, get educated about Harry
> Reid, get engaged, and get active.

The "Stop the Liberal Agenda" advertisement does not contain express advocacy under 11 CFR 100.22.

### C.   *"Don't Trust Harry Reid" Advertisement*

> What kind of leader is Harry Reid?  Ineffective.  Ultra-liberal.
> Unrepresentative of Nevada values.  Harry Reid voted for
> increasing Tricare premiums to nickel and dime America's heroes.
> Veterans and service men and women know better than to trust
> Harry Reid.  This November: support new voices, support your
> military, support Nevada values.

The "Don't Trust Harry Reid" advertisement does not contain express advocacy under 11 CFR 100.22.

The Commission could not approve a response regarding the following advertisements by the required four affirmative votes:

### D.   *"Let's Make History" Advertisement*

> America needs a strong military capable of meeting the threats of
> tomorrow.  But Nydia Velazquez repeatedly introduced and
> supported bills like HR 3638 that would cut off funding for
> frontline troops.  Rather than standing up for America, Nydia
> Velazquez has been one of the least effective members of
> Congress.  This fall, let's make history by changing that.  Protect
> our freedom.  Defend our nation.  Learn about HR 3638.

### E.   *"ObamaCare" Advertisement*

> Nancy Pelosi and ObamaCare, what a pair!  Even though most
> Americans opposed ObamaCare, Pelosi maintained her support of
> socialized medicine.  But we can't let ObamaCare win.  Our proud
> patriotic voices must stand against ObamaCare and vote socialized
> medicine out.  Support conservative voices and public servants
> ready to end ObamaCare's reign.

### F.   *"Military Voting Matters" Advertisement*

> Military voting matters.  That's why Nancy Pelosi is such a
> disappointment for service men and women.  Instead of supporting
> express delivery of overseas military ballots, Pelosi favored
> sluggish postal unions.  Shouldn't military voices and votes
> matter?  Shouldn't yours?  Be heard this fall.

    G.   *"Military Voting Hindered" Advertisement*

> Our heroes on the front lines know that Obama's assault on
> America's military is putting their lives, the care of wounded
> warriors, and the GI and Veterans' benefits they were promised at
> risk.  Is that why Obama's Justice Department and Congressional
> liberals refuse to stand up for military voting rights?  Shouldn't
> those who dodge bullets for our freedom be free to vote their
> conscience and vote out those who won't keep their promises?
> Take a stand with us and make sure military voting is taken
> seriously.

*Question 2.  Will the Commission continue to apply and enforce 11 CFR 100.22(b)?*

    The Commission could not approve a response by the required four affirmative votes
about whether this question qualifies as an advisory opinion request.  *See* 2 U.S.C. 437c(c);
11 CFR 112.1(b), 112.4(a).

*Question 3.  Will any of NDC's donation communications be deemed "solicitations" and subject
to regulation?*

    Two of NDC's proposed donation requests – entitled "Strategic Stupidity" and "Fighting
Back" – will not constitute "solicitations."  *See  FEC v. Survival Educ. Fund*, 65 F.3d 285, 295
(2d Cir. 1995).  The Commission could not approve a response regarding the remaining
proposed donation requests by the required four affirmative votes.

    A.   *"Strategic Stupidity" Donation Request*

> Crippling America's military through sequestration is a strategic
> failure – and Senate Democrats have supported this insanity!  With
> your donation, we can speak out against the liberal dream of
> ending American Exceptionalism and decimating America's
> military.  We can stop the Democrats' madness.  Help send a
> message to misguided Senators like John Tester.  Support National
> Defense, and let's retire these failed policies.

    The "Strategic Stupidity" donation request will not constitute a solicitation for
contributions.  It states that donations will be used to "speak out against the liberal dream of
ending American Exceptionalism and decimating America's military" and to "retire these failed
policies." Although the donation request urges potential donors to "[h]elp send a message to
misguided Senators like John Tester," it does not "clearly indicat[e] that the contributions will be
targeted to the election or defeat of a clearly identified candidate for federal office."  *Survival
Educ. Fund*, 65 F.3d at 295; *see also* Advisory Opinion 2012-11 (Free Speech) (concluding that

AO 2012-27
Page 6

the "Strategic Speech" donation request, which also indicated an intention to "speak out against" certain policies with funds raised and "retire failed . . . policies," was not a solicitation). Accordingly, this donation request is not a solicitation under the Act.

B.   *"Fighting Back" Donation Request*

> Supporters of traditional constitutional values have celebrated our courts' defense of freedom, and planned how to make the most effective use of your support this fall.  Your donation to National Defense will beat back the liberal Obama agenda and bring about real change in Washington.  Help America fight back in print, on the air, and against liberal deep pockets.  Stand together.  Get organized.  Start now.

The "Fighting Back" donation request will not constitute a solicitation for contributions. It states that "this fall" funds requested "will beat back the liberal Obama agenda and bring about real change in Washington."   The request does not "clearly indicat[e] that the contributions will be targeted to the election or defeat of a clearly identified candidate for federal office."  *Survival Educ. Fund*, 65 F.3d at 294-95.  "[F]ight[ing] back in print, on the air, and against liberal deep pockets" could refer to advocacy regarding legislation or executive branch action.  Accordingly, this donation request is not a solicitation under the Act.

The Commission could not approve a response regarding the following proposed donation requests by the required four affirmative votes.

C.   *"Military Voices and Votes Must be Heard" Donation Request*

> Our heroes on the front lines know that Obama's assault on America's military is putting their lives, the care of wounded warriors, and the GI and Veterans benefits they were promised at risk.  Is that why Obama's Justice Department & Congressional liberals refuse to stand up for military voting rights?  Help those who dodge bullets for our freedom vote their conscience.  Support their right to vote out Obama – donate to National Defense so we can stand up for military voting rights this fall.

D.   *"America the Proud?" Donation Request*

> It used to be that America was a nation we could be proud of.  But today, an ultra-liberal Congress repeatedly ignores the value of our military.  Military voting, ignored.  Protecting military benefits, disregarded.  Veterans, left out in the cold.  And the Commander in Chief sits by.  In building a $1 billion war chest, the Commander in Chief makes sure liberals will win this fall, while crippling the military.  Let's put an end to this nonsense.  Donate to National

AO 2012-27
Page 7

Defense Committee today and let's roll back the Commander in
Chief's liberal agenda.

*Question 4.  Will any of the activities described trigger the requirements to register and be
regulated as a "political committee"?*

The Commission could not approve a response by the required four affirmative votes
about whether this question qualifies as an advisory opinion request.  *See* 2 U.S.C. 437c(c);
11 CFR 112.1(c), 112.4(a).

This response constitutes an advisory opinion concerning the application of the Act and
Commission regulations to the specific transaction or activity set forth in your request.  *See*
2 U.S.C. 437f.  The Commission emphasizes that, if there is a change in any of the facts or
assumptions presented, and such facts or assumptions are material to a conclusion presented in
this advisory opinion, then the requestors may not rely on that conclusion as support for its
proposed activity.  Any person involved in any specific transaction or activity which is
indistinguishable in all its material aspects from the transaction or activity with respect to which
this advisory opinion is rendered may rely on this advisory opinion.  *See* 2 U.S.C. 437f(c)(1)(B).
Please note the analysis or conclusions in this advisory opinion may be affected by subsequent
developments in the law including, but not limited to, statutes, regulations, advisory opinions,
and case law.  The cited advisory opinions are available on the Commission's Web site,
www.fec.gov, or directly from the Commission's advisory opinion searchable database at
http://www.fec.gov/searchao.

On behalf of the Commission,


(signed)
Caroline C. Hunter
Chair