Exhibit D



FEDERAL ELECTION COMMISSION
Washington, DC  20463

May 8, 2012

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

ADVISORY OPINION 2012-11

Benjamin T. Barr Esq.
Stephen R. Klein, Esq.
Wyoming Liberty Group
1740 H Dell Range Blvd. #459
Cheyenne, WY 82009

Dear Messrs. Barr and Klein:

We are responding to your advisory opinion request on behalf of Free Speech,
concerning the application of the Federal Election Campaign Act, as amended (the
"Act"), and Commission regulations to Free Speech's proposed plan to finance certain
advertisements and ask for donations to fund its activities.

The Commission concludes that: two of Free Speech's 11 proposed
advertisements would expressly advocate the election or defeat of a clearly identified
Federal candidate; four of the proposed advertisements would not expressly advocate the
election or defeat of a clearly identified Federal candidate; and two of the four proposed
donation requests would not be solicitations under the Act.  The Commission could not
approve a response by the required four affirmative votes about the remaining
advertisements and donation requests, or about Free Speech's status as a political
committee.  *See* 2 U.S.C. 437c(c); 11 CFR 112.4(a).

*Background*

The facts presented in this advisory opinion are based on your letter received on
February 29, 2012, and your email received on March 9, 2012.

Free Speech describes itself as "an independent group of individuals which
promotes and protects free speech, limited government, and constitutional
accountability."  Bylaws, Art. II.  It is an unincorporated nonprofit association formed

under the Wyoming Unincorporated Nonprofit Association Act, Wyo. Stat. Ann. 17-22-101 to 115 (2012), and a "political organization" under 26 U.S.C. 527 of the Internal Revenue Code.[1]  It currently has three individual members.

Free Speech will not make any contributions to Federal candidates, political parties, or political committees that make contributions to Federal candidates or political parties.  Nor is Free Speech affiliated with any group that makes contributions.  Free Speech also will not make any coordinated expenditures.[2]

Free Speech plans to run 11 advertisements, which it describes as "discuss[ing] issues concerning limited government, public policy, the dangers of the current administration, and their connection with candidates for federal office."  Free Speech will run these advertisements in various media, including radio, television, the Internet, and newspapers.  Free Speech currently plans to run the following ads, which are described more fully in response to question 1 below.

### Radio Advertisements

Free Speech plans to spend $1,000 on three advertisements to be aired on local radio station KGAB AM in Cheyenne, Wyoming.  These advertisements, which Free Speech calls "Environmental Policy," "Financial Reform," and "Health Care Crisis," will be aired 60 times between April 1 and November 3, 2012.  Free Speech currently plans to allocate its budget evenly among the three advertisements, spending $333.33 for each.

### Newspaper Advertisements

Free Speech plans to spend $500 on two advertisements that will appear in the *Wyoming Tribune Eagle* on May 12 and May 27, 2012.  Free Speech plans to spend $250 on each advertisement.  The advertisements – "Financial Reform" and "Health Care Crisis" – will include pictures as well as text.

---

[1] The Internal Revenue Code defines a political organization as "a party, committee, association, fund, or other organization (whether or not incorporated) organized and operated primarily for the purpose of directly or indirectly accepting contributions or making expenditures, or both, for [the tax-]exempt function" of "influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any Federal, State, or local public office or office in a political organization," or the election or selection of presidential or vice presidential electors.  26 U.S.C. 527(e).

[2] Free Speech's bylaws prohibit its members, officers, employees, and agents from engaging in activities that could result in coordination with a Federal candidate or political party.  Bylaws, Art. VI.  And members, officers, employees and agents have a duty to "ensure the independence of all speech by the Association about any candidate or political party . . . in order to avoid coordination."  Bylaws, Art. VI, Sec. 3.

AO 2012-11
Page 3

### *Internet Advertisements*

Free Speech plans to spend $500 on two advertisements that will appear on Facebook.  The advertisements will appear for a total of "200,000 impressions on Facebook within Wyoming network" between April 1 and April 30, 2012.  Free Speech plans to spend $250 on each advertisement.  The two advertisements, entitled "Gun Control" and "Environmental Policy," will include pictures as well as text.

### *Television Advertisements*

Free Speech plans to spend $8,000 on four advertisements that will appear on the local television network KCWY in Cheyenne, Wyoming.  The advertisements will appear approximately 30 times between May 1 and November 3, 2012.  Free Speech plans to spend $2,000 on each of the four advertisements.  The advertisements are entitled "Gun Control," "Ethics," "Budget Reform," and "An Educated Voter Votes on Principle."

In total, Free Speech plans to spend $10,000 to run the advertisements described above.  Free Speech "would like to speak out in similar ways in the future."

Free Speech has identified one individual donor willing to give it $2,000 or more, and would like to ask other individuals to donate more than $1,000 "to help support its speech."  Free Speech would also draw upon funds from its three members to pay for advertisements costing more than $2,000.  Free Speech, however, will not accept donations from individuals who are foreign nationals or Federal contractors.  Free Speech plans to ask for donations from individuals through four separate donation requests, which are described in response to question 2 below.

### *Questions Presented*

1. *Will Free Speech's proposed advertisements be "express advocacy"?*

2. *Will Free Speech's proposed donation requests be solicitations under the Act?*

3. *Will the activities described in this advisory opinion request require Free Speech to register and report to the Commission as a political committee?*

### *Legal Analysis and Conclusions*

*Question 1.  Will Free Speech's proposed advertisements be "express advocacy"?*

Under the Commission's regulations, a communication expressly advocates the election or defeat of a clearly identified Federal candidate if it "[u]ses phrases such as 'vote for the President,' 're-elect your Congressman,' 'support the Democratic nominee,' 'cast your ballot for the Republican challenger for U.S. Senate in Georgia, 'Smith for Congress,' 'Bill McKay in '94,' 'vote Pro-Life' or 'vote Pro-Choice' accompanied by a listing of clearly identified candidates described as Pro-Life or Pro-Choice, 'vote against

Old Hickory,' 'defeat' accompanied by a picture of one or more candidate(s), 'reject the incumbent,' or communications of campaign slogan(s) or individual word(s), which in context, can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. which say 'Nixon's the One,' 'Carter '76,' 'Reagan/Bush' or 'Mondale!'." 11 CFR 100.22(a).

Under the Commission's regulations, a communication also constitutes express advocacy if "[w]hen taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because-- (1) [t]he electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and (2) [r]easonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action." 11 CFR 100.22(b).

The Commission concludes that Free Speech's two "Financial Reform" advertisements are express advocacy under 11 CFR 100.22(a). The Commission further concludes that Free Speech's two "Health Care Crisis" advertisements, the "Gun Control" Facebook advertisement, and the "Ethics" advertisement are not express advocacy under 11 CFR 100.22.

  A.  *The "Financial Reform" Radio and Newspaper Advertisements*

> President Obama supported the financial bailout of Fannie Mae and Freddie Mac, permitting himself to become a puppet of the banking and bailout industries. What kind of person supports bailouts at the expense of average Americans? Not any kind we would vote for and neither should you. Call President Obama and put his antics to an end.[3]

The "Financial Reform" advertisements, which Free Speech proposes to air on the radio and run in newspapers, contain express advocacy under 11 CFR 100.22(a). This conclusion is supported by the Supreme Court's decision in *FEC v. Massachusetts Citizens For Life ("MCFL")*, 479 U.S. 238 (1986), which involved a flyer that included the phrase "EVERYTHING YOU NEED TO KNOW TO VOTE PRO-LIFE" and contained an exhortation to "VOTE PRO-LIFE" after identifying candidates who were pro-life. The Court held the flyer was express advocacy. Here, the "Financial Reform" advertisements state that "President Obama supported the financial bailout of Fannie Mae and Freddie Mac," and then ask "What kind of person supports bailouts at the expense of average Americans?" They answer the questions with "[n]ot any kind of person that we

---

[3] The script for the radio version of the Financial Reform advertisement is the same as the text of the print version. The only difference between the two, besides the format, is the newspaper advertisement's inclusion of a full-page picture of President Obama.

would vote for and neither should you."  Thus, the advertisements are express advocacy: they identify a candidate (President Obama) with a position on an issue (bailouts) and then state that the viewers should vote against those who take that issue position ("What kind of person supports bailouts …?  Not any kind we would vote for and neither should you.").  Such a formulation "provides in effect an explicit directive:  vote for these (named) candidates.  The fact that this message is marginally less direct than 'Vote for Smith' does not change its essential nature."  *MCFL*, 479 U.S. at 249.

Moreover, this conclusion is not altered by the final sentence:  "Call President Obama and put his antics to an end."  The advertisements contain two different statements directed at the viewer: (1) "Not any kind we would vote for and neither should you;" and (2) "Call President Obama and put his antics to an end."  These are two different statements that make two different points; however, the addition of the statement, "Call President Obama and put his antics to an end," does not negate the fact that the advertisements contain express advocacy under 11 CFR 100.22(a).  This is similar to *MCFL*, where the Court held that a "disclaimer" stating "[t]his special election edition does not represent an endorsement of any particular candidate" did not "negate [the] fact" that the flyer contained express advocacy.  *MCFL*, 470 U.S. at 249.

> B.    *The "Health Care Crisis" Radio and Newspaper Advertisements*

> President Obama supports socialized medicine, but
> socialized medicine kills millions of people worldwide.
> Even as Americans disapproved of ObamaCare, he pushed
> ahead to make socialized medicine a reality.  Put an end to
> the brutality and say no to socialized medicine in the
> United States.[4]

The "Health Care Crisis" advertisements, which Free Speech proposes to air on the radio and run in newspapers, are not express advocacy under 11 CFR 100.22.  These advertisements criticize President Obama's health care policy and provide Free Speech's views on the issue ("socialized medicine kills millions of people worldwide").  The advertisements have no electoral references.

> C.    *The "Gun Control" Facebook Advertisement*

> (Picture of handgun, 110 pixels wide by 80 pixels tall)
> (Title: Stand Against Gun Control)
>  Obama supports gun control.  Don't trust him.  Support
> Wyoming state candidates who will protect your gun rights.

---

[4] Like the script for the radio and print versions of the "Financial Reform" advertisements, the script for the two versions of the "Health Care Crisis" advertisements is the same.  The only difference between the two advertisements, besides the format, is the newspaper advertisement's inclusion of a "[f]ull picture of a family picture torn in half."

AO 2012-11
Page 6

     The "Gun Control" Facebook advertisement is not express advocacy under 11 CFR 100.22.  The advertisement criticizes President Obama's support of gun control and exhorts viewers to "[s]upport Wyoming state candidates."  The advertisement has no Federal electoral references.

     D.    *The "Ethics" Television Advertisement*

| Audio: | Video: |
|---|---|
| Who is President Obama? | Picture of President Obama shaking hands with Hugo Chavez. |
| He preaches the importance of high taxes to balance the budget, but nominates political elites who haven't paid theirs. | Fade to another picture of Obama giving State of the Union, superimposed "Obama Aims $1.4 Trillion Tax Increase at Highest Earners (San Francisco Chronicle, Feb. 14, 2011)" |
| He talks about budget and tax priorities, but passes a blind eye to nominees who don't contribute their fair share. | Cut to picture on left side of screen of Secretary of Treasury Timothy Geithner giving testimony, superimposed "Geithner apologizes for not paying taxes (CBS News, Feb. 18, 2009)" |
| Call President Obama and tell him you don't approve of his taxing behavior. | Picture fades in on right side of screen of Tom Daschle, superimposed "Tax Woes Derail Daschle's Bid for Health Chief (NPR, Feb. 3, 2009)" |
|  | Fade to picture of President Obama and Michelle Obama enjoying themselves in Hawaii. |

     The "Ethics" television advertisement is not express advocacy under 11 CFR 100.22.  The advertisement criticizes President Obama based on statements about his "budget and tax priorities" and his nominees' asserted lack of compliance with their tax obligations.  The advertisement exhorts viewers to "[c]all President Obama and tell him

AO 2012-11
Page 7

you don't approve of his taxing behavior." The advertisement contains no electoral references.

The Commission could not approve a response regarding the following advertisements by the required four affirmative votes:

E.      *The "Environmental Policy" Radio Advertisement*

President Obama opposes the Government Litigation Savings Act. This is a tragedy for Wyoming ranchers and a boon to Obama's environmentalist cronies. Obama cannot be counted on to represent Wyoming values and voices as President. This November, call your neighbors. Call your friends. Talk about ranching.

F.      *The "Environmental Policy" Facebook Advertisement*

(Picture of a Wyoming ranch, 110 pixels wide by 80 pixels tall)
(Title: Learn About Ranching)
Obama's policies are a tragedy for Wyoming ranchers, and he does not represent our values. This November, learn about ranching.

G.      *The Gun Control Television Advertisement*

| Audio:<br>Guns save lives. | Video:<br>Newspaper clippings with headlines describing self-defense with firearms fade in, piling up one atop another. |
|---|---|
| That's why all Americans should seriously doubt the qualifications of Obama, an ardent supporter of gun control. | Clippings dissolve to a picture of President Obama, and one newspaper headline below him: "President Obama defends attorney general regarding ATF tactics (LA Times, Oct. 6, 2011)" |
| This fall, get enraged, get engaged, and get educated. And support Wyoming state candidates who will protect your gun rights. | Dissolves to a picture of the Wyoming state flag, panning down to the Wyoming Capitol Building. |

AO 2012-11
Page 8

H.    *The Budget Reform Television Advertisement*

| AUDIO: | Video: |
|---|---|
| Congresswoman Lummis supported the Repeal Amendment, which would have restored fiscal sanity to our federal debt. | Picture of Representative Lummis, superimposed "Tea Party Pushes Amendment to Veto Congress (AOL News, Dec. 1, 2010)" |
| Congresswoman Lummis is brave in standing against the political elite and deserves your support.  Make your voice heard. | Small videos of Representative Lummis fade in, speaking on news programs, meeting with people, etc. |
| Do everything you can to support Congresswoman Lummis this fall and work toward fiscal sanity. | Wyoming flag fades in the background, returning to original picture of Rep. Lummis. |

I.    *The Educated Voter Votes on Principle Television Advertisement*

| Audio: | Video: |
|---|---|
| Across America, millions of citizens remain uninformed about the truth of President Obama. | Picture of President Obama shaking hands with Hugo Chavez. |
| Obama, a President who palled around with Bill Ayers. | Picture of Bill Ayers in Weather Underground days, superimposed "Bill Ayers Dishes on Hosting a Fundraiser for Barack Obama (Big Government, Nov. 29, 2011)." |
| Obama, a President who was cozy with ACORN. | "House votes to Strip Funding for ACORN (Fox News, Sept. 17, 2009)" |
| Obama, a President destructive of our natural rights. | Video of an ATF raid, fade to a video of TSA scanning individuals in line for airport. |

AO 2012-11
Page 9

| | |
|---|---|
| Real voters vote on principle. Remember this nation's principles. | Fades to still shot of the Bill of Rights, superimposed "Remember this nation's principles." |

*Question 2. Will Free Speech's proposed donation requests be solicitations under the Act?*

Two of Free Speech's proposed donation requests – entitled "Strategic Speech" and "Checking Boxes" – will not be solicitations under the Act.  The Commission could not approve a response regarding the remaining two proposed donation requests – entitled "War Chest" and "Make Them Listen" – by the required four affirmative votes. *See* 2 U.S.C. 437c(c); 11 CFR 112.4(a).

The Act defines the term "contribution" to include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office."  2 U.S.C. 431(8)(A)(i); *see also* 11 CFR 100.52(a).  The Act requires "any person" who "solicits any contribution through any broadcasting station, newspaper, magazine, outdoor advertising facility, mailing, or any other type of general public political advertising" to include a specified disclaimer in the solicitation.  2 U.S.C. 441d(a); *see also* 11 CFR 110.11(a)(3).  Requests for funds that "clearly indicate[] that the contributions will be targeted to the election or defeat of a clearly identified candidate for federal office" are solicitations under the Act.  *FEC v. Survival Education Fund*, 65 F.3d 285, 295 (2d Cir. 1995) (analyzing communications for purposes of 2 U.S.C. 441d(a)).

> *A.    The "Strategic Speech" Donation Request*

> This fall, 23 Democrat incumbents are up for election in the U.S. Senate.  Seven have already decided to retire, but some, like John Tester of Montana, haven't gotten the message.  With your donation, we'll strategically speak out against the expansion of government-run healthcare and so-called 'clean energy' boondoggles like Solyndra, which Senators like Tester fully support.  It's time to retire failed socialist policies.

The donation request clearly indicates how the funds requested will be spent:  by "strategically speak[ing] out against the expansion of government-run healthcare and so-called 'clean energy' boondoggles like Solyndra."  Although the donation request identifies Senator Tester as supporting these initiatives and as an incumbent Senator up for re-election who has not "gotten the message" that he should retire, it lacks language "clearly indicating that the contributions will be targeted to the election or defeat of a clearly identified candidate for federal office."  *Survival Education Fund*, 65 F.3d at 295.  Accordingly, this donation request is not a solicitation under the Act.  *Survival Education Fund*, 65 F.3d at 294-95.

AO 2012-11
Page 10

     B.     *The "Checking Boxes" Donation Request*

         'Leading from behind,' President Obama takes advice from socialist staffers, usually choosing from a checklist of oppressive, debt-driven policies without even considering freedom-based and fiscally-conscious alternatives. Checking the right box on the November ballot is important, but like Obama's memos it's just not enough. Take the lead in making the message of Free Speech heard: your donation will inform real American leadership.

     The donation request clearly indicates how the funds requested will be spent: "making the message of Free Speech heard" by "inform[ing] real American leadership." Although the request clearly identifies President Obama and refers to the November ballot, it lacks language "clearly indicating that the contributions will be targeted to the election or defeat of a clearly identified candidate for federal office." *Survival Education Fund*, 65 F.3d at 294-95. Accordingly, this donation request is not a solicitation under the Act.

     The Commission could not approve a response regarding the following proposed donation request by the required four affirmative votes:

     C.     *The "Make Them Listen" Donation Request*

         In 2010, the Tea Party movement ushered in an historic number of liberty-friendly legislators. But President Obama and his pals in Congress didn't get the message: Stop the bailouts. No socialized healthcare. End oppressive taxes. But we won't be silenced. Let's win big this fall. Donate to Free Speech today.

     D.     *The "War Chest" Donation Request*

         Friends of freedom celebrated when the Supreme Court decided Citizens United. Now, more than ever, we can make the most effective use of your donations this coming fall. Donations given to Free Speech are funds spent on beating back the Obama agenda. Beating back Obama in the newspapers, on the airways, and against his $1 billion war chest.

AO 2012-11
Page 11

*Question 3.  Will the activities described in this advisory opinion request require Free Speech to register and report to the Commission as a political committee?*

The Commission could not approve a response to Question 3 by the required four affirmative votes.  *See* 2 U.S.C. 437c(c); 11 CFR 112.4(a).

This response constitutes an advisory opinion concerning the application of the Act and Commission regulations to the specific transaction or activity set forth in your request.  *See* 2 U.S.C. 437f.  The Commission emphasizes that, if there is a change in any of the facts or assumptions presented, and such facts or assumptions are material to a conclusion presented in this advisory opinion, then the requestors may not rely on that conclusion as support for its proposed activity.  Any person involved in any specific transaction or activity which is indistinguishable in all its material aspects from the transaction or activity with respect to which this advisory opinion is rendered may rely on this advisory opinion.  *See* 2 U.S.C. 437f(c)(1)(B).  Please note the analysis or conclusions in this advisory opinion may be affected by subsequent developments in the law including, but not limited to, statutes, regulations, advisory opinions, and case law.

On behalf of the Commission,


(signed)
Caroline C. Hunter
Chair