# Exhibit L

The SPEAKER pro tempore. The Clerk will report the next amendment in disagreement.

The Clerk read as follows:

Amendment No. 23: Page 11, line 12, strike out "as amended by the Flood Control Act, approved June 15, 1936 (49 Stat. 1508)" and insert "as amended and supplemented."

Mr. SNYDER of Pennsylvania. Mr. Speaker, I move to recede and concur in the Senate amendment numbered 23 with an amendment which I send to the desk and ask to have read.

The Clerk read as follows:

In lieu of the matter inserted by the Senate in place of the matter proposed by the House, insert the following: "As at present or subsequently amended and supplemented."

The SPEAKER pro tempore. The question is on agreeing to the motion of the gentleman from Pennsylvania.

The motion was agreed to.

The SPEAKER pro tempore. Without objection, motions to reconsider the several motions which have been agreed to will be laid on the table.

There was no objection.

REGISTRATION OF CERTAIN PERSONS DISSEMINATING PROPAGANDA

Mr. CELLER. Mr. Speaker, I call up the conference report on the bill (H. R. 1591) to require the registration of certain persons employed by agencies to disseminate propaganda in the United States, and for other purposes, and ask unanimous consent that the statement be read in lieu of the report.

The Clerk read the title of the bill.

The SPEAKER pro tempore. Is there objection to the request of the gentleman from New York that the statement be read in lieu of the report.

There was no objection.

The conference report and statement are as follows:

CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 1591) to require the registration of certain persons employed by agencies to disseminate propaganda in the United States, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its amendments numbered 2, 3, and 4.

That the House recede from its disagreement to the amendment of the Senate numbered 1 and agree to the same.

HATTON W. SUMNERS,
EMANUEL CELLER,
U. S. GUYER,
*Managers on the part of the House.*
KEY PITTMAN,
PAT MCCARRAN,
WM. E. BORAH,
*Managers on the part of the Senate.*

STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the bill (H. R. 1591) to require the registration of certain persons employed by agencies to disseminate propaganda in the United States and for other purposes, submit the following statement in explanation of the effect of the action agreed upon by the conferees and recommended in the accompanying conference report.

There were four Senate amendments to the bill, two of which were clerical.

The first amendment of the Senate reworded the definition of "foreign principal." The amendment is made apparent by printing the House provision in roman with matter stricken out by the Senate amendment enclosed in black brackets, and new matter added by the Senate amendment in italics, as follows:

"(c) The term 'foreign principal' means the government of a foreign country, a political party of a foreign country, a person [not a resident of the United States, or any foreign business or political organization] *domiciled abroad, or any foreign business, partnership, association, corporation, or political organization.*"

The House conferees agreed to this amendment.

The second amendment of the Senate added a new section to the bill authorizing an appropriation of $75,000 for the enforcement of the act. The Senate receded and this amendment has been omitted.

The third and fourth amendments of the Senate were merely changes of section numbers made necessary by the adoption of the second amendment. Inasmuch as the second amendment has been omitted, these amendments are unnecessary and have been omitted also.

HATTON W. SUMNERS,
EMANUEL CELLER,
U. S. GUYER,
*Managers on the part of the House.*

Mr. CELLER. Mr. Speaker, this bill was introduced as a result of recommendations of the special committee that was appointed in the Seventy-third Congress to investigate un-American activities in the United States. A very careful study was made of the organizations in this country which organizations aimed arbitrarily to group certain American citizens and persons in the United States and to inculcate such principles and teachings in these persons as to influence the internal and external political policies of our country.

Incontrovertible evidence has been submitted to prove that there are many persons in the United States representing foreign governments or foreign political groups who are supplied by such foreign agencies with funds and other materials to foster un-American activities and to influence the external and internal policies of this country, thereby violating both the letter and the spirit of international law, as well as the democratic basis of our own American institutions of government.

Evidence before the Special Committee on Un-American Activities disclosed that many of the payments for this propaganda service were made in cash by the consul of a foreign nation, clearly giving an unmistakable inference that the work done was of such a nature as not to stand careful scrutiny.

As a result of such evidence this bill was introduced, the purpose of which is to require all persons who are in the United States for political propaganda purposes—propaganda aimed toward establishing in the United States a foreign system of government, or group action of a nature foreign to our institutions of government, or for any other purpose of a political propaganda nature—to register with the State Department and to supply information about their political propaganda activities, their employers, and the terms of their contracts.

This required registration will publicize the nature of subversive or other similar activities of such foreign propagandists, so that the American people may know those who are engaged in this country by foreign agencies to spread doctrines alien to our democratic form of government or propaganda for the purpose of influencing American public opinion on a political question.

Under the terms of the bill no foreign corporation engaged in honorable trade relations with this country will find it necessary to register, but whenever representatives are sent here to spread by word of mouth, or by the written word, the ideology, the principle, and the practices of other forms of government and the things for which they stand, then registry must be made. All that is required is to label the sources of pernicious propaganda.

There is nothing in the bill to offend any nation, group, or individual. The bill requires no registration of duly accredited diplomatic or consular officials of a foreign government who are so recognized by the Department of State of the United States. Likewise will the provisions of this measure have no reference to nor include any person performing only private, nonpolitical, financial, mercantile, commercial, or other activity in furtherance of bona fide trade or commerce of a foreign principal.

This bill does not in any way impair the right of freedom of speech, or of a free press, or other constitutional rights. On the other hand, this measure does provide that an alien coming to or in the United States for propaganda purposes of a political nature, and American citizens who accept foreign political propaganda employment, shall register; and this was found necessary, in a number of cases, through the revelations of the Committee on Un-American Activities.

We believe that the spotlight of pitiless publicity will serve as a deterrent to the spread of pernicious propaganda. We feel that our people are entitled to know the sources of any such efforts, and the person or persons or agencies carrying on such work in the United States.

Such propaganda is not prohibited under the proposed bill. The purpose of this bill is to make available to the American public the sources that promote and pay for the spreading of such foreign propaganda. Our National Food and Drug Act requires the proper labeling of various articles and safeguards the American public in the field of health. This bill seeks only to do the same thing in a different field, that of political propaganda. Propaganda efforts of such a nature are usually conducted in secrecy, which is essential to the success of these activities. The passage of this bill will force propaganda agents representing foreign agencies to come out in the open in their activities, or to subject themselves to the penalties provided in said bill.

This bill does not amend or repeal existing law.

Mr. Speaker, I shall be pleased to yield for questions if there are any.

Mr. Speaker, I move the previous question on the adoption of the conference report.

The previous question was ordered.

The conference report was agreed to, and a motion to reconsider was laid on the table.

### CAMPAIGN EXPENDITURES

Mr. O'CONNOR of New York. Mr. Speaker, I call up House Resolution 291.

The Clerk read as follows:

*Resolved,* That a special committee of seven be appointed by the Speaker of the House of Representatives to investigate and report to the House not later than January 3, 1939, the campaign expenditures of the various candidates for the House of Representatives in both parties, or candidates of parties other than or independent of the Democratic or Republican Parties, the names of persons, firms, associations, or corporations subscribing, the amount contributed, the methods of collection and expenditures of such sums, and all facts in relation thereto, not only as to subscriptions of money and expenditures thereof but as to the use of any other means or influences, including the promise or use of patronage, and all other facts in relation thereto that would not only be of public interest but would aid the Congress in necessary legislation or in deciding any contests which might be instituted involving the right to a seat in the House of Representatives.

The investigation hereby provided for in all the respects above enumerated shall apply to candidates and contests before primaries, conventions, and the contests and campaigns of the general election in 1938, or any special election held prior to January 3, 1939. Said committee is hereby authorized to act upon its own initiative and upon such information which in its judgment may be reasonable and reliable. Upon complaint being made before such committee, under oath, by any person, persons, candidates, or political committee setting forth allegations as to facts which, under this resolution, it would be the duty of said committee to investigate, said committee shall investigate such charges as fully as though it were acting upon its own motion, unless, after hearings on such complaints, the committee shall find that such allegations in said complaints are immaterial or untrue.

That special committee or any subcommittee thereof is authorized to sit and act during the adjournment of the Congress, and that said committee or any subcommittee thereof is hereby empowered to sit and act at such time and place as it may deem necessary; to require by subpena or otherwise the attendance of witnesses, the production of books, papers, and documents; to employ stenographers at a cost of not exceeding 25 cents per hundred words. The chairman of the committee or any member thereof may administer oaths to witnesses. Subpenas for witnesses shall be issued under the signature of the chairman of the committee or subcommittee thereof. Every person who, having been summoned as a witness by authority of said committee or any subcommittee thereof, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the investigation heretofore authorized, shall be held to the penalties as prescribed by law.

Mr. O'CONNOR of New York. Mr. Speaker, this is the usual resolution introduced toward the end of each session, by whichever party is in the majority, to appoint a committee of the House to watch over elections for Representatives in Congress. It is in the usual form.

Mr. SNELL. Mr. Speaker, will the gentleman yield?

Mr. O'CONNOR of New York. I yield.

Mr. SNELL. As I glance through the resolution it seems to be in the usual form, but I notice it contains a provision that the committee shall make a report. Has that always been in these resolutions?

Mr. O'CONNOR of New York. I am quite sure it has. Whether they actually did report, I cannot say.

Mr. SNELL. It gives them the right to report.

Mr. O'CONNOR of New York. The committee should report, of course. All committees should report.

Mr. SNELL. As I remember, the average committee set up for this purpose investigates a situation when complaint is made to them. I wonder, in light of some of the developments that have taken place during the past few months, if this resolution should not be even broader than it is at the present time. As far as I know, the greatest influence that has been used to carry elections and influence the voters is propaganda and influence from various departments here in Washington, especially the W. P. A. Why should not the resolution be broadened to include the right to look into and investigate the activities of some of the governmental departments in connection with the primaries and also elections?

Mr. O'CONNOR of New York. Offhand, my opinion is that the resolution is broad enough to do that. Personally, I think it is broad enough to do it. I sincerely hope complaints made to the committee along this line will be investigated.

Mr. SNELL. It seems to me that is of special importance in the light of the developments that have taken place in the last 2 months here in Washington.

Mr. O'CONNOR of New York. I agree with the gentleman.

Mr. SNELL. I am glad the gentleman himself thinks the resolution is broad enough to include any of those cases that are especially called to the attention of the committee.

Mr. BOILEAU. Mr. Speaker, will the gentleman yield?

Mr. O'CONNOR of New York. I yield.

Mr. BOILEAU. The language of the resolution on page 1, line 5, reads:

*The campaign expenditures of the various candidates for the House of Representatives in both parties.*

I suppose "both parties" means the Farmer-Labor Party and the Progressive Party. Then follows language stating:

*Or candidates of parties other than or independent of the Democratic or Republican Parties.*

If the interpretation is placed on it that I think properly should be placed upon the phrase "both parties" that would exclude investigation of the Republican and Democratic Parties. Personally I believe there is a little more need to investigate these parties and more justification for investigation of these parties than any of the other parties. It seems to me the gentleman has gone a long way in using unnecessary language in this particular clause, because if the thought was to investigate candidates of all parties why does not the resolution read "of the various candidates for the House of Representatives"?

Mr. O'CONNOR of New York. I am not the author of this resolution.

Mr. BOILEAU. But it has been reported out by the gentleman's committee. I am not finding fault with the chairman of the Committee on Rules. I am just pointing out a custom that I think is prevalent here in the House to an unnecessary and undue degree of talking about "both parties." It is ridiculous. There are a lot of people out in the Middle West to whom "both parties" means only Farmer Labor Party and Progressive Party.

Does not the gentleman think the resolution ought to be amended to read "to investigate, and so forth, the campaign expenditures of the various candidates of the House of Representatives"?

Mr. O'CONNOR of New York. It says "both parties or." I did not think the Farmer-Labor Party ever used any money to elect its representatives.

Mr. BOILEAU. I want to bring out the interpretation I place upon it. The only ones who would be investigated would be the Farmer-Laborites and the Progressives. It is stated "or candidates of parties other than or independent of the Democratic or Republican Parties." That clause excludes the Republicans and Democrats.