```
 1                 BEFORE THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLUMBIA

 3   UNITED STATES OF AMERICA,        .
                                      .   Case Number 18-CR-32
 4              Plaintiff,            .
                                      .
 5        vs.                        .
                                      .   Washington, D.C.
 6   CONCORD MANAGEMENT AND           .   January 11, 2019
     CONSULTING LLC,                  .   9:04 a.m.
 7                                    .
                Defendant.            .
 8   - - - - - - - - - - - - - - - -

 9

10                PUBLIC TRANSCRIPT OF MOTION HEARING
                       (SEALED PORTIONS REDACTED)
11            BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                     UNITED STATES DISTRICT JUDGE

12

     APPEARANCES:
13

     For the Government:            JEANNIE S. RHEE, AUSA
14                                  U.S. Department of Justice
                                    Special Counsel's Office
15                                  950 Pennsylvania Avenue N.W.
                                    Washington, D.C. 20530
16
                                    JONATHAN I. KRAVIS, AUSA
17                                  U.S. Attorney's Office
                                    555 Fourth Street N.W.
18                                  Washington, D.C. 20530

19                                  HEATHER ALPINO, AUSA
                                    U.S. Department of Justice
20                                  National Security Division
                                    950 Pennsylvania Avenue N.W.
21                                  Washington, D.C. 20530

22
                            -- continued --
23

24

25
```

1    APPEARANCES (Continued):

2    For the Defendant Concord
     Management and Consulting LLC:  ERIC A. DUBELIER, ESQ.
3                                    Reed Smith LLP
                                     1301 K Street N.W.
4                                    Suite 1000, East Tower
                                     Washington, D.C. 20005
5
                                     KATHERINE J. SEIKALY, ESQ.
6                                    Reed Smith LLP
                                     7900 Tysons One Place, Suite 500
7                                    McLean, Virginia 22102

8

9    Official Court Reporter:        SARA A. WICK, RPR, CRR
                                     U.S. Courthouse, Room 4704-B
10                                   333 Constitution Avenue N.W.
                                     Washington, D.C. 20001
11                                   202-354-3284

12

13   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S
 2           (Call to order of the court.)
 3           THE COURTROOM DEPUTY:  Your Honor, this is Criminal
 4   Case Number 18-32, the United States of America versus Concord
 5   Management and Consulting LLC.
 6       Will counsel please approach the podium and identify
 7   yourselves for the record, as well as any additional parties at
 8   your table.
 9           MR. KRAVIS:  Good morning, your Honor.  Jonathan
10   Kravis on behalf of the United States.
11           THE COURT:  Good morning, Mr. Kravis.
12           MR. KRAVIS:  With me at counsel table are two of my
13   co-counsel in this matter, Heather Alpino from the National
14   Security Division of the Department of Justice and Jeannie Rhee
15   from the Office of Special Counsel.
16           THE COURT:  Thank you.
17           MR. DUBELIER:  Good morning, your Honor.  Eric
18   Dubelier and Katherine Seikaly for Defendant Concord.
19           THE COURT:  Good morning, Mr. Dubelier.
20       All right.  This is a continuation of the sealed hearing on
21   the defendant's motion to compel discovery, which I have sealed
22   because it will likely include a discussion of grand jury
23   material that is protected under Federal Rule of Criminal
24   Procedure 6(e) and of sensitive discovery materials covered by
25   the protective order.
```

1          I've received and reviewed the government's January 8th

2     ex parte filing.  The filing further substantiates the record on

3     the issue of the disclosure of confidential information provided

4     by Concord to the firewall counsel.

5          I don't expect today's hearing to take long, but I do have

6     a number of questions for both sides.  First for the government,

7     Mr. Kravis, are you speaking for the government today?

8               MR. KRAVIS:  Yes, your Honor.

9               THE COURT:  First, let me ask you, to the best of your

10    ability, can you describe for me the steps that the government

11    team has taken -- and to be clear, by "government," what I mean

12    is members of the Special Counsel's Office, the trial team,

13    agents, investigators, as well as firewall counsel and his

14    agents and investigators -- the steps you've taken to ensure

15    that confidential information that is supplied to the firewall

16    counsel by Concord is not shared with any of the other lawyers

17    in the Special Counsel's Office, the trial team, investigators,

18    and agents.

19              MR. KRAVIS:  Yes, your Honor.  So after the Court

20    first appointed Mr. McCullough to serve as firewall counsel in

21    this matter, the members of the prosecution team held a

22    conference call with Mr. McCullough and with the supervisor in

23    the National Security Division who would be supervising him in

24    his work as firewall counsel.  Both Mr. McCullough and that

25    supervisor were walled off or separated from both this criminal

1    case and any other matters -- any other criminal cases arising

2    out of the facts set forth in the -- the facts underlying the

3    allegations in the indictment.

4         In that initial conference call -- and when I say "the

5    prosecution team," I am referring to myself and the other

6    assistant United States attorneys who have entered their

7    appearance in this case, as well as Ms. Alpino on behalf of the

8    National Security Division and the Special Counsel's Office

9    prosecutors who have entered their appearance in the case.

10        In that initial telephone conversation, we reviewed the

11   terms of the Court's order appointing the firewall counsel, as

12   well as the terms of the protective order that outlined firewall

13   counsel's responsibilities and obligations.

14        On that conference call, we agreed that when firewall

15   counsel needed information from the prosecution team, firewall

16   counsel would request that information of us, but we would in no

17   circumstance request any information of firewall counsel.  That

18   is, that the information exchanged between firewall counsel and

19   the prosecution team would go only one way.

20        Since that initial phone call, the communications between

21   the prosecution team and the firewall counsel have been in

22   writing.  I think all of those have been in e-mail.  And those

23   communications have exclusively concerned requests of the

24   firewall counsel for information.

25        For example, the firewall counsel has from time to time

requested information from the prosecution team about discovery,
asking for our records in terms of what was provided and on
which disk and so on and so forth.  Those requests have been
made in writing, and the responses have been made in writing.

No one on the prosecution team has requested any
information of firewall counsel about firewall counsel's
communications with defense counsel or about any other matter.

And in fact, the first time that the prosecution team
learned that defense counsel had had any communications with
firewall counsel at all was when defense counsel brought to the
attention of the prosecution team the matter that underlies the
defense motion to compel.

THE COURT:  All right.  So when there's a request by
Concord to provide confidential discovery materials to any
individual and firewall counsel needs to do his job to determine
whether this is an appropriate individual to receive the
information, does he have a set of agents and investigators he
uses for his purpose?

MR. KRAVIS:  My understanding is that firewall counsel
has his own resources and contacts within the intelligence
community that firewall counsel can use to gather any
information that firewall counsel needs to respond to any
defense counsel submission.

THE COURT:  And those are entirely separate
individuals --

1          MR. KRAVIS:  Right.

2          THE COURT:  -- than the agents and investigators that

3    deal with the Special Counsel's Office and the trial team?

4          MR. KRAVIS:  Yes, that is correct.  Firewall counsel

5    has not made and would not make a request either of the

6    prosecutors or of the agents working with the prosecution team

7    to obtain information about particular individuals, because

8    that -- that kind of request might tend to reveal something

9    about defense strategy, for example the identity of a particular

10   witness who was of interest to the defense or something like

11   that.

12         To the extent that firewall counsel has questions about

13   what has been produced in discovery, which disk was --

14   particular materials were on, that kind of thing, things that

15   are already in the possession of the prosecution team, firewall

16   counsel has made those requests of us.

17         To the extent that firewall counsel needs to gather

18   information to respond to defense requests for permission to

19   disclose sensitive discovery, firewall counsel has used other

20   resources that are outside the prosecution team.

21         THE COURT:  Okay.  And I understood from the outset

22   that that was the case, that the resources that the firewall

23   counsel would use in terms of agents and investigators would be

24   separate than those that are used by the Special Counsel's

25   Office and the trial team, but I did want to confirm that for

the record.

MR. KRAVIS: That's correct.

THE COURT: Mr. Kravis, I also want to confirm that I have the facts and the timeline correct with respect to this charge that's made in the motion to compel discovery.

As I understand it, on October 4th of 2018, the government turned over materials in discovery that Concord contends came from confidential information that Concord supplied to firewall counsel. I'm not going to refer to the content of your ex parte filing, but Exhibit A of your January 8th, 2019, ex parte filing is a grand jury subpoena that is dated August 30th of 2018.

MR. KRAVIS: Yes, your Honor.

THE COURT: Was this grand jury subpoena provided to the defense team along with the records that were produced pursuant to the subpoena?

MR. KRAVIS: I believe the answer to that is yes, this was produced in discovery.

THE COURT: All right. And was this discovery that was provided related to the subpoena marked sensitive?

MR. KRAVIS: I'm sorry. I don't understand the question.

THE COURT: Is it considered sensitive discovery in this case?

MR. KRAVIS: Yes, your Honor.

THE COURT: Sensitive under the protective order?

```
1            MR. KRAVIS:  Yes, your Honor.

2            THE COURT:  So it's the government's position that

3    this discovery was covered by paragraph 11 of the protective

4    order, which restricts disclosure of sensitive materials to

5    defense counsel as defined in paragraph 1 of the protective

6    order, and that includes, according to paragraph 1, Reed Smith

7    attorneys, Reed Smith vendors, other counsel approved by the

8    Court, and all of whom must be nationals of the United States;

9    is that correct?

10           MR. KRAVIS:  Yes, your Honor.

11           THE COURT:  Okay.  Thank you, Mr. Kravis.  Is there

12   anything else you would like to state for the record?

13           MR. KRAVIS:  The only thing I would like to add for

14   the record is that I believe that the government's sealed ex

15   parte submission establishes that ███████████████████████████

16   █████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████.

18       Further, I believe that the government's sealed ex parte

19   submission establishes -- so then one might wonder, as defense

20   counsel has wondered or posited in their motion, if the

21   █████████████████████████████████████████████████

22   ████████████████████████████████████████████.  And

23   I believe the sealed ex parte submission further establishes the

24   reason for that, which is that ████████████████████████████

25   ████████████████████████████████████████████
```

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████.

　　　　And so I think that those materials answer the questions

set forth in the defense's motion to compel, namely where did

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████.

　　　　　　　　THE COURT:  Understood.  Thank you, Mr. Kravis.

　　　　　　　　MR. KRAVIS:  Thank you, your Honor.

　　　　　　　　THE COURT:  Mr. Dubelier?

　　　　　　　　MR. DUBELIER:  Yes, your Honor.

　　　　　　　　THE COURT:  Mr. Dubelier, I'm troubled by several

things:  First, comments that you made to me during a

November 16th, 2018, call which I had with you and with firewall

counsel; second, your reference to the content of sensitive

discovery in your filings, specifically your December 27th,

2018, filing; third, your earlier attempts to work around the

firewall counsel process and take documents out of the United

States and turn them over to individuals that are not nationals

of the United States without notice to firewall counsel.

　　　　　　　　MR. DUBELIER:  I'm sorry, your Honor.  What was that

last thing you just said?

　　　　　　　　THE COURT:  You will recall, Mr. Dubelier, in August

1   with respect to this request, you initially came to the Court

2   with your attempt to include -- to provide sensitive discovery

3   to individuals.  And I asked, have you provided this to firewall

4   counsel.  And then I think that you made an effort to do so.

5   And we eventually got to the point where we are on this.  But

6   initially, I think you -- if my recollection serves me

7   correctly, initially, that came to me ex parte without even

8   firewall counsel being informed about the sum and total.  You

9   may have provided the names, but not the fact that you were

10  taking them to Russia, the documents.

11          MR. DUBELIER:  Your Honor, I never took any documents

12  to Russia.

13          THE COURT:  Of course you didn't, but you were

14  requesting that I approve --

15          MR. DUBELIER:  Correct.

16          THE COURT:  -- the taking of documents to Russia,

17  without informing firewall counsel.  As I read the protective

18  order, it clearly contemplates that you would provide the names

19  of individuals and the fact that you want to take documents out

20  of the country to Russia.

21          MR. DUBELIER:  I'm at a loss, your Honor, to

22  understand what you are accusing me of on this last point.  I

23  don't get it, of what I supposedly did wrong.

24          THE COURT:  So just a minute.  To make sure I

25  understand, when you initially came to me with the request to

1    provide information to five individuals in Russia --

2              MR. DUBELIER:  Right.

3              THE COURT:  -- take it out of the country --

4              MR. DUBELIER:  Right.

5              THE COURT:  -- my impression -- and perhaps there was

6    an inaccurate communication between the two of us.  But my

7    impression was that you had provided names but not informed

8    firewall counsel that you intended to take these materials out

9    of the country.

10             MR. DUBELIER:  May I consult with Ms. Seikaly for a

11   second?

12             THE COURT:  Sure.

13          (Defense counsel conferred.)

14             MR. DUBELIER:  So your Honor, as I understand this

15   from consulting with Ms. Seikaly, initially we provided firewall

16   counsel with just the names.

17             THE COURT:  That's my point.

18             MR. DUBELIER:  Right.  And then --

19             THE COURT:  And I said, does he know the full extent

20   of this request.

21             MR. DUBELIER:  Right.  And then as Ms. Seikaly reminds

22   me, she said, I gave him the names because that's what the

23   protective order requires.

24             THE COURT:  All right.

25             MR. DUBELIER:  If you would just hear me out, your

Honor, instead of -- you made a face at me.  You hold your hand

up like you don't want to hear what I want to say.  I have an

explanation.

THE COURT:  I want to hear.

MR. DUBELIER:  I want to explain.  Let me explain.

Ms. Seikaly informed me that she provided the names because

that's specifically what the protective order required.  When

she came to me and raised this issue after you raised it, I

said, give him the whole thing.  So we gave him the whole thing.

That does not provide evidence or any suggestion that we

have done anything wrong, your Honor.  We gave him the whole

thing.  We were not trying to be sneaky or go sneak something

out of the country.  I've abided by the terms of the protective

order.  So --

THE COURT:  All right.

MR. DUBELIER:  Go ahead.  I mean, with all due

respect, go ahead, criticize me and say whatever you have to

say.

THE COURT:  All right, Mr. Dubelier.  The bottom line

here is, firewall counsel was informed.  But it did trouble me

that initially when I received the request, it came to me with a

request that included both names and the fact that you wanted to

take a trip to Russia to provide sensitive discovery to these

individuals.

And at the outset, my recollection is, consistent with what

you've just said, that you had disclosed the fact that you

wanted to reveal sensitive discovery to individuals, and you had

provided those names to firewall counsel, but that he was

unaware that those individuals were going to be in Russia and

you were going to take the documents to Russia.

So I'm not accusing you of wrongdoing, but as I stated in

the public hearing, I want counsel on both sides to sit down and

review this protective order.  It is not operating, I think on

either side, as intended.

MR. DUBELIER:  Your Honor, we are already doing that.

THE COURT:  Great.  I'm pleased to hear that.  So I

think there does need to be clarity in the protective order.

Whether your reading of the protective order and the specific

terms of the protective order is a fair one, I haven't gone

through line by line, but I think it certainly violates the

spirit of the protective order to tell firewall counsel, we want

to disclose these names and not tell them you're taking them to

Russia, taking the documents to Russia.

Maybe that was an innocent mistake.  I don't mean to accuse

you of misconduct.  But part of this, I think, is the lack of

clarity in the protective order.  So I am not accusing you of

misconduct here.  I'm just saying, I was troubled by the way in

which the firewall process has been handled, and I'm not -- I'm

pointing fingers at both sides here.  All right?  We need to

have, I think, more transparency in the process.  And to the

1   extent things can be handled with the trial team and not with

2   firewall counsel alone, we should try to do so, and let's all

3   try to get on the same page here, Mr. Dubelier.

4        I do appreciate that an ambiguous protective order is

5   difficult for you all to follow.  I've asked you all repeatedly

6   and I've asked firewall counsel, have you all sat down and

7   figured out the mechanics.  And each time I'd ask you that

8   question, Mr. Dubelier, you would apologize and say, you know,

9   sorry, your Honor, we haven't done so, but we will get on that.

10  It never happened, and as a result, this process has not

11  functioned as intended.

12       So I am pleased to hear you all are coming together and

13  working through the issues with this protective order.  I want

14  you to do it, or I can do it myself.  But you all know much

15  better where the problems are here, and I think that this whole

16  episode that we're dealing with today illustrates the issues

17  with the protective order.  So I am pleased to hear that, and

18  thank you for working cooperatively to do that.

19            MR. DUBELIER:  Your Honor, I just want to make clear,

20  because at some point this transcript, I assume, is going to be

21  made public.  You're not accusing me of seeking to circumvent

22  the protective order.  There is no possibility that I could have

23  ever taken any evidence outside the country without firewall

24  counsel knowing.  That is inconceivable.  It never could have

25  happened.

1      THE COURT:  I'm saying, I'm troubled by the way the

2  process has worked.  All right?

3      MR. DUBELIER:  Okay.  That's fair.

4      THE COURT:  I'm not accusing you --

5      MR. DUBELIER:  Fair enough.  I'm troubled, too.  So

6  that's fair; that's fair.

7      THE COURT:  So Mr. Dubelier, let's move on to the

8  November 16th, 2018, telephone conference with firewall counsel.

9      MR. DUBELIER:  Okay.  Your Honor, if I may say, with

10  all due respect to the Court, if this is -- I'm satisfied with

11  what's occurred and the representations that they've made.

12  That's all we asked for.

13      And I will tell you again, with the Court characterizing

14  our motion as, your words, a charge made by us, we never made a

15  charge.  We simply advised what the facts were and asked for an

16  answer.  I went to them first.  In all fairness, I went to them.

17  And I didn't go behind the firewall counsel's back.  I copied

18  him on the e-mail to the special counsel, and I just asked him,

19  can you explain how this happened.

20      Now, maybe I didn't use perfect wording and language, and

21  maybe they felt threatened because I characterized it as a

22  remarkable coincidence or something, and they didn't like me

23  using those words.

24      But I simply went to them and said, just tell me how

25  Atkinson ███████████ and if he didn't get it from the firewall

1   counsel or anybody working for the firewall counsel, that's all

2   they had to say, and they didn't say that.

3          THE COURT:  Well, I have not seen the exchange of

4   e-mails between you and the government, firewall counsel and the

5   trial team, with respect to this issue and the e-mails on

6   October 5th.

7          But my understanding from reading the filings that have

8   come before me is that you made some sort of suggestion of a

9   breach in the wall --

10          MR. DUBELIER:  Your Honor, I did not, and that's not a

11   fair characterization.  I simply set forth what the facts were

12   and asked them to explain.  And when they refused to explain, I

13   took that as them being evasive.

14          Your Honor, let me just say one additional thing.  Look,

15   sometimes it's difficult to sit in other people's shoes.  Right?

16   So I can't sit in their shoes.  You can't sit in mine.  I can't

17   sit in yours.  But you have to take this in the context of,

18   Ms. Seikaly and my experience in the private sector has been

19   that prosecutors have not always told the whole truth to us.

20   And that's demonstratively provable, and I could refer you to

21   other judges in this courthouse which would say yes, that is the

22   case, prosecutors have not always told the truth to us.

23   Usually, it's a self-inflicted wound of somebody made a mistake,

24   and then they're trying to cover up the mistake instead of just

25   taking responsibility for it.

1    So that's the context in which we see something like this.

2    So we see it.  We simply said, these are the facts, can you

3    explain this to us.  And rather than them explaining it, they

4    basically say, there's no breach of the protective order and

5    we're not going to tell you anything else about it.

6        To me, that raises a red flag, and that's why we raised it

7    with the Court.  I don't think it's fair to characterize what we

8    said as an accusation against them.  All we ever wanted was an

9    explanation.

10       If Mr. Kravis had told me two months ago -- and I don't

11   want to pick on him because I don't even know if he was involved

12   in the case two months ago.  I can't even remember.  I think our

13   e-mail was with the Special Counsel's Office and the firewall

14   counsel.  I really can't remember if Mr. Kravis was on the

15   e-mail.  But if he had told me two months ago what he told you

16   just now from the podium, it would have been over with.

17           THE COURT:  But Mr. Dubelier, you and I both know, as

18   former federal prosecutors, the government has no obligation to

19   tell you ███████████████████████.  And for you to

20   insist that they reveal to you that this relates to ██████████

21   ██████████ you're not entitled to that under *Brady* Rule 16 or

22   anything else.

23       And when they tell you, as I understand from their filings,

24   when they tell you that there hasn't been a breach of the wall

25   between firewall counsel and the trial team and then this issue

1   comes up again on the phone with me and firewall counsel gives

2   additional assurances that there's not an issue and then you

3   bring this up and not in a sealed pleading as you did -- and I

4   commend you initially for raising this in a sealed pleading.

5   But I wish you had filed a sealed pleading back on October 5th.

6   If you were really troubled, that's when you should have filed

7   the sealed pleading, not wait until I requested supplemental

8   briefing on a motion to dismiss that's a difficult legal issue

9   that I'm considering, and you lob that in in a sealed pleading

10  weeks after you are troubled by the lack of response from the

11  government.  You filed that sealed initially.  All right?  It

12  comes in sealed.

13       Second, we have a sealed call with firewall counsel where

14  it's discussed further.  Then I hear nothing more until an

15  unsealed pleading that gets lobbed in most recently.

16            MR. DUBELIER:  Well, your Honor, let me say two

17  things.  First of all, with respect to that, you were satisfied,

18  based on the call we had with firewall counsel.  I was not.

19            THE COURT:  Well, come back to me.

20            MR. DUBELIER:  And the reason I wasn't, your Honor,

21  and you were not particularly friendly to me in that call

22  either, because you characterized it as me attacking them, not

23  simply laying out facts but me attacking them, and my

24  characterization of that call was, you took their side against

25  me in that call.  So that's my perception from where I stand.

1    Let me also say, your Honor, this issue with they're not

2    obligated to tell me about a ███████████████████████ they

3    already did.

4         THE COURT:  You forced them.  I congratulate you for

5    getting out the fact that ████████████████████████.

6         MR. DUBELIER:  I didn't force them.  They had already

7    provided in sensitive discovery ████████████████████████████

8    ████████████████████████████████████████████████.  There's

9    no secret about that.

10        THE COURT:  Well, then, why do you -- what did you

11   expect them to tell you?  What would have satisfied you?

12        MR. DUBELIER:  What I expected them to tell me is, you

13   know what, we talked to Rush Atkinson, and Rush said ████████

14   ███████████████████████████████████████████████████

15   ██████████████████████████████.  That's all.  That's all.

16        Because again, your Honor, go back to -- put yourself -- if

17   you can.  I'm not asking you to, because it's not always a great

18   place to live, but put yourself in my shoes just for a second.

19   We have experience that tells us that we don't always get

20   straight answers on these things.

21        The first time we exercise use of this protective order,

22   which we have objected to from the very beginning, six days

23   later, ████████████████████████████████████████████████████

24   █████████████████████████████ we then go back and find in

25   discovery ███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████.

Now, that creates a complicated problem for me as a lawyer,
I think.  That's problematic because I'm prohibited from the
protective order from even discussing it with my client, and
then I have to figure out, how am I going to deal with this, and
is this simply a coincidence.

Now, Mr. Kravis gave an explanation that makes it sound
like a remarkable coincidence.  And that's okay.  Coincidences
happen, and I'm satisfied.  Mr. Kravis is a federal prosecutor
working in the U.S. Attorney's Office, holding the same position
I used to hold.  He got up here and explained it in a way that
has not been explained.  It wasn't explained this way by
firewall counsel.  It wasn't explained this way by the Special
Counsel's Office.  I'm satisfied.

THE COURT:  All right.  I would encourage you in the
future, if similar instances arise, the approach you should use
is the approach that you used back in November but, I submit, a
little late.  And I find it a little curious that you wait until
I'm asking for supplemental briefing on a legal issue that's
unrelated to this matter to alert me of this issue.  The time to
do it is back in early October when you're concerned.  And I'm
not going to question your intent there.  You're legitimately
concerned, and you want to make sure that the government is
acting appropriately.  That's the time to file that motion and

file that motion under seal if it relates to grand jury.

As you can tell, I'm going to try to be very transparent here and unseal things that have been sealed that shouldn't be sealed.  I have no intention of keeping things under seal that should be open to the public.  All right?

In the future, if you have a real concern about government misconduct, come to me then, not later, three, four weeks later when I'm considering a difficult legal issue.  That's not the time to drop this.  But come, file the motion under seal, and if you think it shouldn't be under seal, we can discuss at that point whether it's appropriate for it to remain under seal.  But that's the time to do it, and it's not to play games with the Court, and it's not to play games with the public.  All right? Let's keep it under seal until we know there's not an issue.

And it bothers me when you're walking close to the line disclosing sensitive discovery.  Your reference in the most recent December 27th pleading ██████████████████████ frankly, I'm shocked that the government hasn't raised that, because to me that's a problem, and it's a problem not because I care about, you know, ████████████████████████ ███████████████████████████████████████████████ ████████.  The point is, it refers to sensitive discovery in a specific way in which, if the government is concerned about ████████████████████████████████████████████ ██████████████████████████████ and that's a big reason

1    for, as you correctly note, I'm sure, there's in your view a

2    vast overclassification of sensitive discovery, I'm guessing --

3    I don't know the discovery like you and the government, but I'm

4    guessing that that's vastly overcategorized in your view, not

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████

8       █████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████████

12   ███████████████████████████.

13       So I want you to be careful about trying to abide by the

14   terms of the protective order.  I get that you think it's overly

15   broad.  I fully appreciate that.  You're going to raise

16   compelling arguments.  You have already in a motion, and the

17   government is going to have to respond, and you get a chance to

18   reply, and we're going to have a hearing on a really difficult

19   legal issue where I have to balance competing interests.

20       And I did it early in the case, and I recognize it's a very

21   broad protective order, and it needs to be revisited, and it

22   will be revisited, and we're going to do that on March 7th.  But

23   until then, you are bound by the terms of the protective order,

24   like it or not.  I've ruled.  So don't walk close to the line in

25   revealing in public pleadings things that should not be

revealed.  All right?

MR. DUBELIER:  Your Honor, are you accusing me of playing games with the Court?  Because you've said it twice, I'm playing games with the Court and playing games with the public. I just want to know if that's what I'm being accused of.

THE COURT:  No, you're not being accused of that, Mr. Dubelier.  But just refrain from -- to say something in public about ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████.

MR. DUBELIER:  First of all, it's not; it's not disclosing that.

THE COURT:  Wait.  You referred to ██████████████ ████████████████████████████████.

MR. DUBELIER:  That's right.

THE COURT:  Now, I would agree with you if you're just ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████.

MR. DUBELIER:  Your Honor, I will tell you, I don't think that's a close call.  So we will agree to disagree on that.  I respect the Court's position on it.  I disagree with you.

But why do you have to advocate that for them?

1          THE COURT:  I want to protect the orders I've imposed

2    in this case.  And one is a protective order.  I have an

3    independent duty to protect 6(e) and protect information that's

4    barred by my protective order, regardless of what they do.

5          MR. DUBELIER:  But that's the relief they asked you

6    for.  They asked you for that relief.  You gave it to them.

7    They can advocate that if they think there's a problem.

8          THE COURT:  Mr. Dubelier, I am going to enforce orders

9    that I enter in this courtroom, and I am going to follow the

10   Federal Rules of Criminal Procedure, including 6(e).  And if I

11   think something is getting close to the line, I'm going to flag

12   it.  I think I have an independent responsibility to make sure

13   the Federal Rules of Criminal Procedure and my orders are

14   followed.  All right?

15       I'm not trying to, you know, gang up on you here.  I want

16   you to be --

17         MR. DUBELIER:  Your Honor, I think you are, because

18   you told me the other day to knock it off, and you didn't really

19   say what "it" was, but you said knock it off.

20         THE COURT:  I clearly said what "it" is.  Throwing the

21   F-bomb in a pleading?  I don't think that that's --

22         MR. DUBELIER:  I didn't say that word in a pleading.

23   I didn't say that word.

24         THE COURT:  All right.  Mr. Dubelier --

25         MR. DUBELIER:  We blanked it out.  I didn't write that

1    word in a pleading.

2            THE COURT:  And you don't think it's obvious to anyone

3    who reads the pleading what you're saying?  It's unnecessary,

4    Mr. Dubelier.  It is not persuasive.  And my point is, you're

5    wasting my time, your time, the government's time including

6    stuff in your pleadings that's not persuasive.  I'm just telling

7    you, that is not going to make a difference to me.

8            MR. DUBELIER:  Your Honor, look, I don't know how to

9    say this, because I want to make sure I'm being properly

10   respectful, and I am respectful of you as the judge and as a

11   federal judge.  But I'm not so sure that I have any confidence

12   that I can persuade you of anything, honestly, from the way this

13   Court -- the way the case has gone up to now.

14           THE COURT:  I think I've taken your legal arguments

15   very seriously, Mr. Dubelier.  Do you disagree with that?

16           MR. DUBELIER:  Yeah, I do.

17           THE COURT:  You don't think that I've considered your

18   legal arguments that you've raised?

19           MR. DUBELIER:  I don't know.  You say taken them very

20   seriously.  I don't know what that means.  I've never been a

21   judge.

22           THE COURT:  I've written some 40-, 50-page opinions

23   addressing each of your legal arguments.  I think I've taken

24   them very seriously.

25           MR. DUBELIER:  Look, I'm not trying to make this

1    personal between me and you.

2              THE COURT:  I don't either.

3              MR. DUBELIER:  It's not.  But when it's knock it off,

4    you are playing with the Court or playing with the public or you

5    are accusing them of doing this and accusing them of doing that,

6    it sure sounds like to me you're picking on us.  And maybe it's

7    just me personally.  Maybe it's nothing against my client at

8    all; you just don't like me.  But that's what it sounds like to

9    me.  All right?

10        Look, your Honor, I'm prepared to move on.  I'm satisfied

11   by the relief.  I'm satisfied by the order the Court issued the

12   other day to tell them to give you an answer.  Mr. Kravis has

13   gotten up.  It's ex parte, but as far as I'm concerned, he

14   provided enough where I can go back now and explain this in a

15   way that everybody on our side of this will understand it.  So

16   I'm prepared to move on.

17             THE COURT:  I'm prepared to move on after we address

18   this November 16th telephone status conference.

19             MR. DUBELIER:  Oh, okay.  I thought we had done that.

20             THE COURT:  No.

21             MR. DUBELIER:  Okay.

22             THE COURT:  All right.  So I want to -- do you have a

23   copy of that transcript?

24             MR. DUBELIER:  No, I don't.

25             THE COURT:  Would you like one?

1          MR. DUBELIER:  No, that's okay.  I will take your word

2     for it.

3          THE COURT:  I am looking at pages 22 and 23 of the

4     transcript.  And during that call, you told me and

5     Mr. McCullough -- and this is a quote.  You said, "I said that I

6     now have to deal with Russian individuals who are assisting in

7     the defense of this case who don't want their name to appear in

8     any public domain for fear that ████████████████████████████

9     ████████████████████████████████████████████████████████████

10    ██████████████████████████████████

11         MR. DUBELIER:  We haven't told any Russian person

12    about this.

13         THE COURT:  Let me continue.  So Mr. McCullough said

14    to you, "It's not clear to me why they would have that

15    understanding, as that is information that should not have been

16    shared with anyone."

17         And you said, "I don't even know what you're talking

18    about."

19         I then said, "Your allegation, Mr. Dubelier, was filed

20    under seal in 18-32."  This, again, is the sealed filing that

21    you submitted in connection with the supplemental briefing that

22    I ordered in connection with the motion to dismiss.

23         I said, ██████████████████████████████████████████████

24    ████████████████████████████████████████████████████████████

25    ████████████████████████████████████

1 Mr. Dubelier, "How does anyone know?  No one does know

2 that, just us."

3 The Court, "So why are you saying ███████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████

6 Mr. Dubelier, "Because they believed that before that ever

7 happened."

8 The Court, "Because they believed what?"

9 Mr. Dubelier, "They believed that before this ever

10 happened."

11 The Court, "Well, based on what?"

12 Mr. Dubelier, "Culture.  I don't know what to tell you."

13 So Mr. Dubelier, I'm going to ask you again, and this is

14 important to me and my rulings on how sensitive disclosure is

15 handled moving forward.

16 MR. DUBELIER:  Uh-huh.

17 THE COURT:  Have you disclosed any sensitive discovery

18 materials to any person or entity other than those authorized to

19 have access to the sensitive discovery materials?

20 MR. DUBELIER:  No.

21 THE COURT:  And to your knowledge, has anyone on your

22 defense team disclosed sensitive discovery materials to any

23 person or entity other than those authorized to have access to

24 sensitive discovery materials?

25 MR. DUBELIER:  No.

1        THE COURT:  All right.  Thank you.

2     Is there anything else you would like to add, Mr. Dubelier?

3        MR. DUBELIER:  No, your Honor, nothing.

4        THE COURT:  So I am pleased to hear that you all are

5  making, it sounds like, progress on addressing the mechanics of

6  the firewall counsel process.

7     I think it would be helpful -- I don't know what you

8  envision, but for me it would be helpful to have a document that

9  talks about the mechanics of this process, including how the

10 documents are shared between the defense team, firewall counsel,

11 the trial team, if ever appropriate.  As I've said publicly, I

12 think it makes sense to have requests to share information with

13 attorneys, paralegals, translators, that provided to the trial

14 team.  I don't see any issue of confidentiality there with

15 respect to Concord.  And then again, I want to address how those

16 materials are provided to and from the Court.  All right?

17    So if you could do that.  I'm not imposing any deadlines on

18 you all.  I know you all are already dealing with a lot.  But if

19 you all could work through that, that would be helpful for me

20 and give me some assurances that we're not going to have these

21 misunderstandings in the future.

22        MR. DUBELIER:  Your Honor, just so the Court is aware,

23 what Mr. Kravis and I have agreed is he's going to send me a

24 redline of what we think needs to be tweaked to have a better

25 understanding.  He said today, maybe today, maybe Monday.  And

then we will get back to them.  And then we can certainly

supplement whatever we agree on in terms of making changes

with -- I think what we will take now is your guidance that

maybe we ought to look a little more carefully than simply a

redline and maybe there's some more explaining that needs to be

done in the body of the document itself to make it clearer for

both sides.

THE COURT:  And I appreciate that.  Make your best

effort.  And to the extent I see areas that I still don't think

provide enough clarity, I will suggest them to you.  This can be

a conversation.  I know this is a unique situation.  We're

trying to make a process that works and is clear to everyone.

So I will appreciate your joint comments, and if I have further

questions, then maybe I will arrange a telephone status

conference or something where we can walk through those.

MR. DUBELIER:  Your Honor, also just so the Court is

aware, and I think the government would agree with me on this, I

don't think either side sees us using this until the Court has

ruled on the motion for discovery anyway.

THE COURT:  All right.  So maybe this doesn't make

sense for you all to waste a lot of time right now until we've

slogged through that motion and I've resolved that.  I'm fine

waiting.  As long as this process is on hold until I rule, I

think that that makes sense, as long as you all aren't needing

to use it in the interim.

1     MR. DUBELIER:  We certainly don't anticipate that we

2  would need to use it.  I can't imagine the government, but I

3  will let them speak for themselves.  Thank you.

4     THE COURT:  All right.  Mr. Kravis, are you

5  comfortable putting this on hold until after I've resolved the

6  pending motion?

7     MR. KRAVIS:  I think that we will continue to work on

8  the redline and get something to defense counsel, because

9  Mr. Dubelier is correct, at this point the ball is in our court.

10  Just because of the nature of the process we're talking about,

11  the trial team doesn't have any insight into what the defense's

12  plans are for using this mechanism.  So if their view is that

13  this won't come into play until after the pending motion is

14  resolved, then we can hold off on finally resolving it.  But I

15  do think it would be helpful for us to continue discussing the

16  matter in the interim so that we are ready to promptly present

17  something to the Court once the sensitive discovery motion is

18  resolved.

19     THE COURT:  All right.  Thank you.

20     MR. KRAVIS:  Thank you, your Honor.

21     THE COURT:  Anything else, Mr. Dubelier?

22     MR. DUBELIER:  No, your Honor.  Thank you.

23     THE COURT:  All right.  Thank you all.

24     (Proceedings adjourned at 9:44 a.m.)

25

1  CERTIFICATE OF OFFICIAL COURT REPORTER

2

3  I, Sara A. Wick, certify that the foregoing is a

4  correct transcript from the record of proceedings in the

5  above-entitled matter.

6

7

8

9  /s/ Sara Wick                    August 26, 2019

10  SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25