# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>**Defendant.** | Crim. No. 18-CR-32-2 (DLF) |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND MOTION FOR BILL OF PARTICULARS

The United States of America, by and through undersigned counsel, respectfully opposes the motion of defendant Concord Management and Consulting LLC, for a second bill of particulars. Concord seeks the same relief that this Court denied in its May 24, 2019 order granting in part and denying in part Concord's first motion for a bill particulars. Concord provides no sound reason for revisiting that decision.

Concord's argument also lacks merit. A district court has discretion to direct the filing of a bill of particulars where, despite the indictment and related disclosures, the allegations are too vague for a defendant to understand that charges, prepare a defense, and be protected from a retrial. In this case, the grand jury returned a detailed, 37-page Indictment that, among other things, identifies 15 co-conspirators, describes the manner and means of the conspiracy, and lists 26 overt acts in furtherance of the conspiracy. Pursuant to the Court's May 24 order, the government submitted a five-part bill that identified unindicted coconspirators, specified statutory and regulatory requirements that the defendants allegedly conspired to impair, and outlined the categories of acts that, in fact, required certain disclosures (crimes that are not charged here). And, as the Court is well aware, the government has provided voluminous

discovery, including identified hot documents. These sources of information provide Concord ample basis understand the allegations against it.

Concord nonetheless demands a specific statement from the government of which co-conspirators were required to file what kinds of disclosures and on behalf of whom. As Concord appears to acknowledge, however—and as this Court has already ruled—a bill of particulars should not be used to identify what coconspirator engaged in what conduct. That sweeps beyond the purpose of a bill, which Concord is now seeking to use as a means of discovery. Such a bill is particularly inappropriate now that the government has identified other coconspirators, identified the categories of activities that triggered disclosure and registration requirements, and provided Concord with voluminous relevant documentary material. *See* Doc. 176. Indeed, as Concord's motion reflects (*see* Doc. 181, at 9-24), Concord is far more interested in arguing about the legal theory for why any of the co-conspirators were required to disclose or register their influence activities than in discerning who is alleged to have done what. That is not the purpose served by a bill of particulars.

Despite Concord's repeated arguments, this is not a criminal prosecution under the Federal Election Campaign Act ("FECA") or Foreign Agents Registration Act ("FARA"). Concord is charged with the distinct crimes of conspiring to impair the lawful government functions of three federal agencies—the Federal Election Commission ("FEC"), Department of Justice ("DOJ"), and State Department ("DOS")—that monitor, police, and respond to foreign efforts to interfere in American affairs. Concord is not charged with conspiring to violate the disclosure and registration statutes that those agencies administer. To be sure, the government believes that those agencies' functions, including their policing various disclosure regimes, were the target of the conspiracy. And one of several means of carrying out that conspiracy was

failing to disclose certain information. But as this Court's May 24 order acknowledged, that does not mean that Concord may use a bill of particulars to spell out exactly who did what. And it certainly doesn't mean that Concord can use it to litigate or get discovery of the government's legal theories. Concord has all of the information that it needs to understand the charges and defend itself. The motion for a second bill of particulars should be denied.

## BACKGROUND

### A. The Indictment

On February 16, 2018, a grand jury returned an eight-count, 37-page Indictment against thirteen individuals and three corporate defendants. The Indictment alleges that the defendants engaged in a multi-year conspiracy, operating out of Russia, to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government, through fraud and deceit, for the purpose of interfering with the U.S. political and electoral processes. Doc. 1 ¶¶ 1–7. The Indictment alleges that the conspirators engaged in what they called "information warfare" to spread distrust about the U.S. political system and ultimately to influence the outcome of the 2016 presidential election. *Id.* ¶ 10c. Specifically the Indictment alleges that conspirators traveled to the United States to gather information about American politics and then sought to influence voters through the use of social media, purchasing advertisements, and sponsoring rallies. *Id.* ¶¶ 30 (travel to U.S.), 32-38, 42-47 (use of social media platforms), 48-50 (political advertisements), 51-57 (political rallies).

To carry out their interference activities without detection of their Russian affiliation, the Indictment charges that the defendants "knowingly and intentionally" conspired to obstruct the lawful functions of the Federal Election Commission, the Department of Justice, and the Department of State, which monitor and police foreign influence activities. Doc. 1 ¶¶ 7, 9. The

Indictment further alleges that the defendants used a host of deceptive means to impede these entities' functions, including by making false statements on visa applications, *id.* ¶¶ 7, 27, 30, using false online personas, *id.* ¶¶ 32-34, 36, 40, creating and using U.S-based virtual computer infrastructure to "mask[] the Russian origin and control" of those false online identities, *id.* ¶¶ 5, 39, and failing to disclose and register their activities, including their expenditures advocating for or against identified candidates, *id.* ¶¶ 25, 26, 48, 51; *see id.* ¶¶ 32-57, 59-85.

### B. Concord's Motion To Dismiss Count One

On July 16, 2018, Concord filed a motion to dismiss Count One of the Indictment, arguing, *inter alia*, that the Indictment failed to identify a lawful government function that was the target of the conspiracy and that the Indictment failed to allege that the defendants acted willfully. Doc. 46. In opposition, the government argued that the Indictment adequately identified the lawful government functions at issue, and that the government was not required to allege that the defendants had actually violated FECA or FARA. Doc. 56, at 9. Instead, the government contended that, for a conspiracy to defraud the United States, the Indictment need only allege, and at trial the government need only prove, "that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the FEC or DOJ in a way that precluded those entities from ascertaining *whether* those substantive statutes were violated." *Id.* at 9-11; *see United States v. Rosengarten*, 857 F.2d 76, 78 (2d Cir. 1988) ("[T]he impairment or obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute."). With respect to

*mens rea*, the government argued that a conspiracy to defraud the United States does not require a showing of willfulness. Doc. 56, at 13.

After oral argument on the motion, the Court directed the government to file a supplemental brief answering the following questions:

- Should the Court assume for purposes of this motion that neither Concord nor its co-conspirators had any legal duty to report expenditures or to register as a foreign agent?

- Specifically, should the Court assume for purpose of this motion that neither Concord nor its co-conspirators knowingly or unknowingly violated any provision, civil or criminal, of FECA or FARA by failing to report expenditures or by failing to register as a foreign agent?

Doc. 68. In its supplemental brief, the government answered both questions in the negative. The government reiterated its position that "the Court need not decide whether the defendants had a legal duty to file reports with the FEC or to register under FARA because 'the impairment or obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute.'" Doc. 69, at 3 (quoting *Rosengarten*, 857 F.2d at 78). The government also maintained that the Indictment alleged numerous acts of deception, including but not limited to the failure to report under FECA or to register under FARA. *Id.* at 1, 3. The government further noted that the Indictment also alleged that the conspirators "agreed to engage in conduct that violated FECA's prohibitions on certain expenditures by foreign nationals." *Id.* at 2. Accordingly, the government concluded, the Court "need not and should not assume for purposes of the defendant's motion that those legal duties did not exist, or that the defendants did not agree to violate them." *Id.* at 4.

The Court denied Concord's motion to dismiss. Doc. 73. In a memorandum opinion accompanying its order, the Court explained that "Section 371 prohibits two distinct types of conspiracies," and that a "conspiracy to defraud the United States" "'reaches any conspiracy for

5

the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" Doc. 74, at 6 (quoting *Tanner v. United States*, 483 U.S. 107, 128 (1987)). Such a conspiracy, the Court explained, need not violate any other statute and requires only that the defendants conspired to obstruct a lawful government function by deceitful or dishonest means and at least one overt act in furtherance of the conspiracy occurred. *Id.* at 6-10. The Court thus rejected Concord's argument that its conduct violated no statute and that Concord therefore could not have "conspire[ed] to obstruct lawful government functions . . . because a conspiracy conviction cannot be 'based strictly on lawful conduct' even if that conduct is 'concealed from the government.'" *Id.* at 8 (quoting Concord's motion to dismiss). Rather, the Court made clear that "a conspiracy to impair or obstruct a lawful government function under § 371 need not involve the violation of any substantive provision other than § 371 itself." *Id.* at 8 (citing *United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998); *United States v. Barker Steel Co.*, 985 F.2d 1123, 1131 (1st Cir. 1993); *United States v. Vogt*, 910 F.2d 1184, 1200 (4th Cir. 1990); *Rosengarten*, 857 F.2d at 78; and *United States v. Vazquez*, 319 F.2d 381, 384 (3d Cir. 1963)). Thus, the Court explained, "the Indictment charges Concord with conspiring to impede the functions of the FEC, DOJ, and DOS through a myriad of deceptive means" and that "[t]he key question, then, is not whether the defendants' agreed-upon conduct violated FECA or FARA—or any other statute— but whether it was deceptive and intended to frustrate the lawful government functions of the FEC, DOJ, or DOS." *Id.* at 9-10.

With respect to the issue of the legal duties to report under FECA and to register under FARA, the Court explained that "the reporting requirements of FECA and FARA might still be relevant to establishing deception," and that "failure to disclose information" in contravention of a legal duty is "deceptive." *Id.* at 10. The Court noted that "the indictment alleges several

forms of deceit, including both (1) failures to disclose information in violation of a legal duty and (2) affirmative misrepresentations and deceptive conduct." *Id.* at 11. Specifically, the Court noted "alleg[ations] that the defendants agreed" not to disclose information about their activities that they were required by law to disclose. *Id.* at 11-12. The Court observed that "in theory," the government could prove its case without proving that any defendant had a duty to disclose or register under FECA or FARA given the "various other forms of deception alleged." *Id.* at 15. The Court, however, suggested that the government may face some difficulty in "connecting that deceit to the lawful government function of administering federal requirements for disclosure" without establishing that such duties existed. *Id.* (emphasis omitted). The Court therefore explained that "the government may ultimately have to prove that the defendants agreed to a course of conduct that, if carried out, would require disclosure to the FEC or DOJ." *Id.* at 15-16. With respect to the issue of *mens rea*, the Court explained that the "the government must show that Concord knew that it was impairing the 'lawful functions' of the FEC, DOJ, or DOS," but the government need not also show "that Concord knew with specificity 'how the relevant laws described those functions.'" *Id.* at 25 (citation omitted). "A general knowledge that U.S. agencies are tasked with collecting the kinds of information the defendants agreed to withhold and conceal would suffice." *Id.*

### C. Concord's First Motion for a Bill of Particulars

On March 4, 2019, Concord filed a motion for a bill of particulars setting forth 51 requests for information. Doc. 104. Among the information requested in Concord's motion was

7

the identity of "all Defendants and conspirators who were required to provide regulatory disclosure and/or register as foreign agents." Doc. 104-1 ¶ 12.

The Court granted in part and denied in part Concord's motion. Doc. 136. The Court ruled that Concord was entitled to a bill of particulars identifying the co-conspirators that the government planned to identify at trial. *Id.* at 4-7, 16. The Court further ordered the government to provide more information about the particular government functions at issue, namely: "the statutory or regulatory disclosure requirements whose administration the defendants allegedly conspired to impair," "each category of expenditures that the government intends to establish required disclosure to the FEC," and "each category of activities that the government intends to establish triggered a duty to register as a foreign agent under FARA." *Id.* at 16; *see id.* at 10-13. Finally, the Court ordered the government to "[c]larify whether the actions Prigozhin allegedly performed in paragraphs 12 and 13 of the indictment are alleged to have been performed on Concord's behalf." *Id.*

The Court, however, denied several portions of Concord's request. With respect to Concord's requests that the government be required to "specify which conspirators committed each act alleged in the indictment," the Court held that "[t]his request goes too far." *Id.* at 7. The Court explained that "[t]he detailed allegations in the indictment, combined with the list of co-conspirators the government plans to introduce at trial and the additional relief the Court order[ed] [t]herein provide Concord with more than enough information to conduct its own investigation of the charges against it." *Id.* at 8 (citation omitted). The Court further explained that "Concord is not entitled to preview the government's evidence, and at this stage, the government need not disclose the precise details supporting the allegations in the indictment." *Id.* As relevant here, although the Court ordered the government to provide further information

8

about the activities that would trigger disclosure under FECA and FARA and the specific legal requirements at issue, the Court also held that "[t]o the extent Concord requests additional information about possible FECA and FARA violations—for instance, which entities or individuals allegedly violated FECA and FARA—its request is denied" for the same reasons that it is not entitled to the identities of each co-conspirator who committed each act in the Indictment. *Id.* at 13.

On July 5, 2019, the government filed a bill of particulars. Doc. 146-2; *see* Doc. 176 (publicly-filed redacted bill of particulars). As relevant here, the bill of particulars stated that the conspirators are alleged to have impaired the administration of the following requirements:

- The FECA requirement that persons who make independent expenditures of more than $250 in a calendar year must file reports with the FEC. 52 U.S.C. § 30104(c); 11 C.F.R. § 109.10; *see* 52 U.S.C. § 30101(17) (defining "independent expenditure"); 11 C.F.R. § 100.22 (regulation interpreting "independent expenditure").

- FECA's prohibition on expenditures or independent expenditures by foreign nationals. 52 U.S.C. § 30121; 11 C.F.R. § 110.20; *see Bluman v. Federal Election Commission*, 800 F. Supp. 2d 281, 284 (D.D.C. 2011) (interpreting Section 30121 to bar foreign nationals "from making expenditures to expressly advocate the election or defeat of a political candidate").

- The FARA requirement that an agent of a foreign principal register if that agent engages in political activities within the United States on behalf of a foreign principal or acts within the United States as a public relations counsel, publicity agent, information-service employee, or political consultant for, or in the interests of, such foreign principal. 22 U.S.C. § 612(a), (b); 28 C.F.R. §§ 5.400, 5.402; *see* 22 U.S.C. § 611(c).

- The FARA requirement that an agent of a foreign principal file copies with the Attorney General of any "informational materials" transmitted in the United States "for or in the interests of" the foreign principal, and to

> put a conspicuous identifying statement on such informational materials.
> 22 U.S.C. § 614(a), (b); 28 C.F.R. §§ 5.400, 5.402.

Doc. 176, at 1-2.

The bill of particulars further identified the following categories of expenditures that required disclosure to the FEC:

- Payments to purchase advertisements that expressly advocated the election or defeat of a particular candidate in the 2016 U.S. presidential election. 52 U.S.C. §§ 30104(c), 30121; 11 C.F.R. § 109.10.
- Payments to promote political rallies in the United States. 52 U.S.C. §§ 30104(c), 30121.

Doc. 176, at 2.

Finally, the bill of particulars identified the following categories of activities that triggered a duty to register under FARA:

- Travel to the United States under false pretenses at the direction and under the control of the conspirators in order to collect intelligence to further their interference operations. 22 U.S.C. § 612(a); *see* 22 U.S.C. §§ 611(c)(1)(ii); *see also* 22 U.S.C. § 611(g), (h), (p).
- The use of social media platforms, political advertising, and political rallies to influence public opinion on political matters and to interfere in the 2016 U.S. presidential election. 22 U.S.C. § 612(a); *see* 22 U.S.C. § 611(c)(1)(i), (ii), (iv); *see also* 22 U.S.C. § 611(g), (h), (o).

Doc. 176, at 2-3.

**ARGUMENT**

**A. Concord Provides No Basis for The Court To Reconsider Its Prior Decision Denying the Relief That Concord Seeks.**

Initially, Concord's motion for a second bill of particulars requests relief that this Court has already denied, and Concord provides no sound basis for the Court to reconsider that decision. In its first motion for a bill of particulars, Concord sought the same information that it is seeking now—the identity of "all Defendants and conspirators who were required to provide

regulatory disclosure and/or register as foreign agents." Doc. 104-1 ¶ 12. Although the Court granted Concord's motion in part, the Court denied Concord's request to "specify which conspirators committed each act alleged in the indictment." Doc. 136, at 8. And while the Court ordered the government to provide more information about the particular government functions that the defendants allegedly conspired to impair—including the disclosure requirements at issue and categories of activities that triggered such requirements, along with supporting citations (*id.* at 10-13, 16)—the Court denied Concord's requests for "additional information about possible FECA and FARA violations," including "which entities or individuals allegedly violated FECA and FARA." *Id.* at 13.

While the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration of interlocutory orders, the Court has applied the Federal Rules of Civil Procedure to such motions, granting reconsideration if "justice requires." *See, e.g.*, *United States v. Lieu*, No. 17-cr-50, 2018 WL 5045335, at *2 (D.D.C. Oct. 17, 2018) (citing *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015)); *United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C. 2014). Whether "justice requires" reconsideration generally depends on whether the Court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not out of reasoning but out of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Lieu*, 2018 WL 5045335, at *3 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); *see also United States v. Hemingway*, 930 F. Supp. 2d 11, 12-13 (D.D.C. 2013); *Slough*, 61 F. Supp. 3d at 108. Ultimately, "[t]he burden is on the moving party to show that reconsideration is

appropriate and that harm or injustice would result if reconsideration were denied." *Hemingway*, 930 F. Supp. 2d at 13.

Concord provides no sound reason for the Court to reconsider its prior decision. The Court understood Concord's request and correctly applied settled law to a decision that "rests within the [Court's] sound discretion." *See United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006). That holding was based, in part, on the well-established principle that an indictment "need not spell out which co-conspirator committed which conspiratorial act," *United States v. Martinez*, 764 F. Supp. 2d 166, 174 (D.D.C. 2011), *cited in* Doc. 136, at 7, as well as a careful review of the Indictment.

Although Concord repeatedly cites and quotes from this Court's May 24 decision about a bill of particulars, Concord does not appear to acknowledge that the Court denied a materially identical request. Concord instead suggests (Doc. 181, at 8-9) that the ordinary principles governing bills of particulars do not apply to "[c]rime[s] of [o]mission." As discussed below, that argument is meritless. But it is also not an argument that Concord previously made when seeking a bill. Nor is it an argument that Concord supports with any relevant authority. The Court's failure to consider an argument that Concord never made and that is not supported by governing authority is not a basis for reconsidering its prior decision. Nor does that contention or Concord's other arguments explain why Concord waited nearly three months after the Court ruled on its initial motion to revisit the issue. *Cf. United States v. Tajideen*, 319 F. Supp. 3d 445, 466 n.12 (D.D.C. 2018) (filing a motion long after the indictment and without explaining why "lend[s] additional support to the Court's conclusion " that the motion should be denied); *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 146 n.6 (D.D.C. 2015) ("A motion for a bill of particulars is contemplated under the Federal Rules of Criminal Procedure to be filed

promptly after the initiation of a criminal case"); *United States v. Homaune*, 898 F. Supp. 2d 153, 165 (D.D.C. 2012) (denying untimely motion for bill of particulars "with no explanation for why his request took so long").[1]

Concord's declaration (Doc. 181, at 4-6, 7 n.5, 24) that the government "changed" or "shifted" "its theory of liability" is also misguided. The Indictment—which is the basis for seeking a bill of particulars—alleges that the conspirators were required to disclose and to register under FECA and FARA but does not charge that the failure to do so constituted independent crimes. In litigating this case, the government has maintained that it need not prove the elements of criminal FECA or FARA violations—crimes the require more than a mere failure to disclose (as Concord itself has argued, Doc. 40, at 19-25). Contrary to Concord's argument, whether there was a "violation" of FECA or FARA or the "elements" of such crimes were met, (Doc. 181, at 4), is distinct from whether "defendants had a legal duty to register and file reports with the FEC and DOJ" (*id.* at 5). The government has also consistently maintained that it could prove its case without proving that any defendant had a duty to disclose or register under FECA or FARA given the "various other forms of deception alleged." Doc. 73, at 15 (Court summarizing the government's position). In all events, Concord's present motion asserts (Doc. 181, at 5) that the government "changed" its theory in an October 15, 2018 hearing, and an October 23, 2018 filing—months before Concord initially sought a bill of particulars (Doc. 104) and the Court adjudicated Concord's request (Doc. 136). Even if the government's theory had shifted (which it has not), Concord was well aware of that position when it sought and the Court

---

[1] To the extent Concord suggests (*see* Doc. 181, at 6-8) that the August 9 bill of particulars itself is a relevant changed circumstance, that contention is misguided. As discussed below, the government's theory of this case has remained consistent. But if the bill "limited the scope of the alleged unlawful conduct" as Concord states (*id.* at 7), that would only weaken the need for the information that Concord requests.

ruled on the first motion for a bill of particulars. Concord's allegation provides no reason to revisit an issue that has already been decided.

### B. Concord's Request for a Second Bill of Particulars Does Not Meet The Applicable Legal Standard.

Concord's request for a bill of particulars "identifying which Defendant(s) were required to file under FECA and register under FARA and on behalf of whom" lacks merit.

Rule 7(f)'s authority to order a bill of particulars is committed to the Court's sound discretion. *See Mejia*, 448 F.3d at 445 (emphasizing that Rule 7(f) provides that a court "may direct" the filing of a bill). A bill of particulars is appropriate only where the indictment's charging language and any related disclosures by the government are so general as to fail to advise a defendant of the specific acts he is accused of committing. *See United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 315-16 (D.D.C. 2012). Where charging language is overly general, a bill of particulars achieves three related purposes: it supplies the information necessary for a defendant to understand the charges against him and to prepare for trial, it prevents prejudicial surprises at trial, and it ensures the defendant is in possession of a sufficiently precise description of the allegations against him to permit him to assert his rights under the Double Jeopardy Clause should a second prosecution for the same alleged acts arise. *See Mejia*, 448 F.3d at 445.

By contrast, the bill of particulars is not an investigative or discovery tool to be wielded by a defendant when the indictment and related disclosures by the government adequately apprise him of the specific acts of which he is accused. *See United States v. Ramirez*, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). It is not designed to give the defense a "preview [of] the government's theories or evidence," *id.*, or to "provide a method to force the prosecution to connect every dot in its case," *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017). A defendant seeking a bill of particulars must therefore show that the information sought is

necessary to remedy an indictment that is otherwise too general to apprise him of the specific acts of which he is accused. *See Sanford Ltd.*, 841 F. Supp. 2d at 316 ("Defendants are not entitled to a bill of particulars as a matter of right since the test is whether such particulars are 'necessary.'"); *United States v. Fruchter*, 104 F. Supp. 2d 289, 312 (S.D.N.Y. 2000) (question is one of necessity, not whether it would be "helpful"). If "the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193. Indeed, even where necessary particulars are not apparent on the face of an indictment, if the government has disclosed them in another form—such as in discovery or pretrial-motion practice—the need for a bill of particulars is obviated. *See id.* at 1193-1194; *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 147–48 (D.D.C. 2015).

This Court's May 24 ruling was based on the well-established principle that an indictment "need not spell out which co-conspirator committed which conspiratorial act." *United States v. Martinez*, 764 F. Supp. 2d 166, 174 (D.D.C. 2011), *cited in* Doc. 136, at 7; *see* Doc. 136, at 7-8 (citing additional cases). Concord attempts to distinguish these cases by arguing that it is accused of a "crime of omission," and therefore it needs more information to defend itself. Doc. 181, at 8. That argument fails at every step.

As an initial matter, even if Concord were charged with a "crime of omission" (which it is not), Concord cites no authority—and the government is aware of none—for the proposition that the standard for obtaining a bill of particulars is different when a defendant is charged with a crime of omission. Nor does Concord's position make sense as a matter of logic. Where, as here, a defendant has "detailed allegations" of the relevant conduct and a "list of co-conspirators the government plans to introduce at trial," the defendant is positioned "to conduct its own investigation" of facts and legal theories. *See* Doc. 136, at 8 (denying the same request).

15

Whether the conduct at issue is an act, an omission, or a mixture of the two, the issue with respect to a bill of particulars is the same—whether the defendant can understand the charges and mount a defense.

Concord also is not charged with a "crime of omission." As Concord well knows, the Indictment charges Concord with conspiracy to defraud the United States. Entering into a conspiracy is an act, not an omission. The Indictment alleges conduct in furtherance of that conspiracy, particular forms of deception, and government functions that were the object of the conspiracy. In addition to many acts of intelligence gathering and election interference, the Indictment alleges both affirmative acts of deception and the failure to disclose information in contravention of a legal duty. *See, e.g.*, Doc. 1 ¶ 30 (travel to the United States "under false pretenses"); *id.* ¶¶ 39-40 (use of U.S. computer infrastructure "[t]o hide their Russian identities and Organization affiliation"); *id.* ¶ 41 (use of stolen U.S. identities); *id.* ¶ 58 (destruction of evidence). Indeed, the lawful government functions identified in the Indictment include the enforcement of prohibitions on certain *affirmative conduct*. *Id.* ¶ 25 ("Among other things, FECA prohibits foreign nationals from making any contributions, expenditures, independent expenditures, or disbursements for electioneering communications."). The Indictment also alleges that the conspirators engaged in other affirmative conduct (such as purchasing political advertisements and staging political rallies) without making the requisite filings, thereby interfering with other lawful government functions. And the Indictment alleges that the conspirators affirmatively engaged in prohibited conduct, namely certain expenditures by foreign nationals that are prohibited by FECA. The fact that the object of the conspiracy included not disclosing information that had to be disclosed does not, in any sense, make the crimes charged here a "crime of omission." Indeed, as this Court has indicated, perhaps the most significant

16

relevance of the registration requirements is to "connect[]" the alleged acts of deceit to certain "lawful government functions," not as the core criminal conduct itself. Doc. 73, at 15 (emphasis omitted).[2]

Contrary to Concord's assertions (Doc. 181, at 8), the Indictment does not charge the mere "*absence* of conduct." Concord's reliance (*id.* at 8-9) on *Lambert v. California*, 355 U.S. 225 (1957), only underscores the flaw in its argument. *Lambert* concerned whether a party could be held criminally liable for failing to register as a felon, based on a past conviction, where she had no knowledge of the requirement. *Lambert* is about notice regarding what conduct is illegal, not notice regarding charges against a defendant. Even Concord's strained analogy misses the mark. *Lambert* was required to register based on a past conviction and had no basis to know of the registration requirement. Concord has a detailed Indictment, a bill of particulars that identifies categories of conduct and specific statutes and regulations—including applicable definitions and subsections—and ample discovery. Indeed, Concord's prolonged analogy to *Lambert* underscores that Concord is using this motion not to apprise itself of the charges in this case but as part of its continued effort to relitigate this Court's decision about the requisite *mens rea* for a conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

More to the point, Concord is able to identify the relevant conduct. Indeed, much of Concord's second motion for a bill of particulars makes legal arguments applying Concord's understanding of FECA and FARA to the conduct alleged in the Indictment and described in discovery. *See* Doc. 181, at 9-24. Although the government respectfully disagrees with

---

[2] Because part of administering a disclosure requirement is policing who does and does not have to disclose, deception that impairs the government's ability to make those decisions and act accordingly impairs a lawful government function. Therefore, a conspiracy to deprive the FEC and DOJ of their ability to evaluate conduct and act accordingly is illegal, even if those agencies would or should ultimately have concluded that disclosure was not required.

17

Concord's analysis of those issues, the question for present purposes is whether Concord is entitled to a supplemental bill of particulars. Concord dresses up its legal arguments about the applicability of FECA and FARA in bill of particulars garb by arguing that FECA and FARA are inapplicable and then declaring that "it is not possible for Concord to determine" who was required to provide notice or register. *See id.* Any defendant who takes issue with the applicability of a statute to the conduct alleged could say the same thing. That is not a proper basis for a bill of particulars. And some of Concord's arguments on this issue again confuse whether conspirators acted willfully—which is not an element of the crime charged here—with whether there was any legal duty to disclose based on the election-related activities described in the Indictment. *See, e.g.,* Doc. 181, at 16-17 (urging that "a violation of FECA" depends upon knowledge that a specific form had to be filed and "willfully fail[ing] to file it") (citing 52 U.S.C. § 30109(d) (describing criminal penalties under FECA)).[3] If anything, Concord's obvious elicitation of further detail about the government's legal theories confirms that the motion should be denied. *See generally Sang Han*, 280 F. Supp. 3d at 149 (a bill does not "provide a method to force the prosecution to connect every dot in its case"); *see, e.g., United States v. NYNEX Corp.*, 781 F. Supp. 19, 22 (D.D.C. 1991) ("The details requested by NYNEX go basically to matters of

---

[3] The government notes that Concord's FECA argument misinterprets the Indictment in another important respect. Concord argues that the only FEC function that the defendants allegedly conspired to impair was administering the FECA disclosure requirements. Doc. 181, at 5. That is not so. The Indictment also alleges that the conspirators interfered with the FEC's function of enforcing the statutory prohibition on certain expenditures by foreign nationals. *See* Doc. 1 ¶¶ 1, 25 (explaining the FECA prohibits foreign nationals from making any contributions, expenditures, independent expenditures, or disbursements for electioneering communications" and that "[t]he reporting requirements" also aid the FEC in "enforcing FECA's limits and prohibitions, including the ban on foreign expenditures."). In its bill of particulars, the government identified the foreign expenditure ban as one of the regulatory activities impaired by the conspirators. Doc. 176, at 2. Accordingly, the government can prevail at trial by showing that Concord was part of a conspiracy to interfere with the FEC's lawful function of enforcing FECA's ban on expenditures by foreign nationals.

evidence and to the government's legal theory, and they therefore need not be set out by way of a bill of particulars."); *United States v. Poindexter*, 725 F. Supp. 13, 35 n.42 (D.D.C. 1989) ("The particulars defendant requests go essentially only to the evidentiary details and the government's legal theory, and they therefore need not be spread upon the record by a bill of particulars.").

## CONCLUSION

For the foregoing reasons, Concord's motion for a second bill of particulars should be denied.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS | JESSIE K. LIU |
| Assistant Attorney General for National Security | United States Attorney |
| | |
| By: /s/ | By: /s/ |
| Heather N. Alpino | Jonathan Kravis |
| U.S. Department of Justice | Deborah Curtis |
| National Security Division | Kathryn Rakoczy |
| 950 Pennsylvania Ave. NW | Luke Jones |
| Washington, D.C. 20530 | 555 Fourth Street NW |
| Telephone: (202) 514-2000 | Washington, D.C. 20530 |
| | Telephone: (202) 252-6886 |