```
 1              BEFORE THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLUMBIA

 3   UNITED STATES OF AMERICA,      .
                                    .  Case Number 18-CR-32
 4          Plaintiff,              .
                                    .
 5       vs.                        .
                                    .  Washington, D.C.
 6   CONCORD MANAGEMENT AND         .  August 20, 2019
     CONSULTING LLC,                .  10:03 a.m.
 7                                  .
            Defendant.              .
 8   - - - - - - - - - - - - - - - -

 9             PUBLIC TRANSCRIPT OF STATUS CONFERENCE
                   (SEALED PORTIONS REDACTED)
10         BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                  UNITED STATES DISTRICT JUDGE
11
12   APPEARANCES:

13   For the Government:           JONATHAN I. KRAVIS, AUSA
                                   KATHRYN RAKOCZY, AUSA
14                                 LUKE JONES, AUSA
                                   U.S. Attorney's Office
15                                 555 Fourth Street Northwest
                                   Washington, D.C. 20530
16
                                   HEATHER ALPINO, AUSA
17                                 U.S. Department of Justice
                                   National Security Division
18                                 950 Pennsylvania Avenue Northwest
                                   Washington, D.C. 20530
19   For Defendant Concord
     Management and Consulting LLC:  ERIC A. DUBELIER, ESQ.
20                                 Reed Smith LLP
                                   1301 K Street Northwest
21                                 Suite 1000, East Tower
                                   Washington, D.C. 20005
22
                                   KATHERINE J. SEIKALY, ESQ.
23                                 Reed Smith LLP
                                   7900 Tysons One Place
24                                 Suite 500
                                   McLean, Virginia 22102
25
```

1    Official Court Reporter:            SARA A. WICK, RPR, CRR
                                        333 Constitution Avenue Northwest
2                                       U.S. Courthouse, Room 4704-B
                                        Washington, D.C. 20001
3                                       202-354-3284

4
     Proceedings recorded by stenotype shorthand.
5    Transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                         P R O C E E D I N G S
```

(Call to order of the court.)

THE COURTROOM DEPUTY:  This is Criminal Case Year 2018-032, United States of America versus Concord Management and Consulting LLC, defendant number 2.

Counsel, please come forward and introduce yourselves for the record, beginning with the government.

MR. KRAVIS:  Good morning, Your Honor.  Jonathan Kravis on behalf of the United States.  With me at counsel table are Kathryn Rakoczy and Luke Jones, also from the D.C. U.S. Attorney's Office, and Heather Alpino from the National Security Division.

THE COURT:  Good morning.

MR. DUBELIER:  Good morning, Your Honor.  Eric Dubelier and Katherine Seikaly for defendant.

THE COURT:  Good morning.

All right.  So the purpose of today's status hearing is to discuss the schedule for further proceedings.  I would also like to hear about the status of the modified protective order I understand the parties are working on.  I anticipate that any issues relating to the mechanics of the firewall counsel process will need to be discussed in a sealed courtroom at the conclusion of the hearing.

Mr. Kravis, will you be speaking for the government today?

MR. KRAVIS:  Yes, Your Honor.

1          THE COURT:  All right.  Have you had a chance to take

2    a look at my proposed template for further proceedings in this

3    case?

4          MR. KRAVIS:  I have, Your Honor, and with the Court's

5    permission, I would like to yield the podium to Mr. Dubelier to

6    talk first on scheduling.  He and I have been discussing this

7    matter, and he has some views on this which I think are

8    reasonable, and we agreed that he would sort of take the first

9    crack at addressing the schedule.

10          THE COURT:  All right.  Mr. Dubelier?

11          MR. DUBELIER:  Your Honor, we have discussed this at

12    length, and we figured, as I think the Court would agree, if we

13    start with a trial date and work backwards, everything kind of

14    falls in place.

15          It is our belief we would be unable to start a trial in

16    this matter until April of 2020, which I know is later than what

17    the Court had expressed at earlier hearings.  Mr. Kravis had no

18    objection to that and agreed and thought it was reasonable, that

19    that would be a reasonable amount of time for both sides to get

20    ready.

21          THE COURT:  When in April?

22          MR. DUBELIER:  We would be able to start the first

23    day, whatever a Monday is in the first week in April.

24          I do have one personal reason for trying to avoid the end

25    of May in that I have a college graduation for one of my

1    daughters.

2         And so when we preliminarily discussed this, we both seemed

3    to believe we can get this done in a month, you know, four weeks

4    or less.  And so --

5              THE COURT:  Does that include jury selection?

6              MR. DUBELIER:  You know, I don't think Mr. Kravis and

7    I talked about that specifically.  And the jury selection thing,

8    I don't really know, Your Honor, what to expect when we start

9    this.  I mean, you know, we could get people who know nothing

10   about this, or we could wind up with 100 or more people that

11   have all decided whether or not there was Russian interference

12   in the election.

13        And so I would say no, we didn't factor that in, and I

14   don't think there is any way for any of us to predict is it

15   going to take a day to pick the jury or could it take two weeks

16   to pick the jury.

17             THE COURT:  I hope closer to a day than two weeks.

18             MR. DUBELIER:  I'm sorry?

19             THE COURT:  I hope closer to a day than two weeks.

20             MR. DUBELIER:  Oh, so do I.  I mean, I hope it is a

21   half a day.

22             THE COURT:  Mr. Dubelier, I will hear from Mr. Kravis

23   on how long he expects the government's case-in-chief to be.

24   But if you present a defense, do you have a sense as to how long

25   that might go?

1          MR. DUBELIER:  I think primarily the defense is going

2     to be defending against the government's evidence in their

3     case-in-chief.  That's the way I envision it now.  So I factored

4     that in in terms of whether I thought we could get this done in

5     four weeks.

6        Mr. Kravis was very candid with me in that this is a heavy

7     document case.  So there is a lot of just entering documents in

8     evidence, and I think the Court -- Mr. Kravis and I both feel

9     very, very strongly about evidentiary issues being resolved

10    before we start the trial so we are not up at the bench arguing

11    every time a document wants to come in.

12         THE COURT:  Absolutely.  And the other point I want to

13    make here, if I do agree with your proposal to start the trial

14    as late as April, I am going to expect you all to front-end the

15    legal issues.  Jury instructions, for one, I expect to be

16    extremely complicated and a lot of protracted arguments about

17    that.  There is no reason why we can't start thinking about that

18    now.

19         MR. DUBELIER:  Your Honor --

20         THE COURT:  The same with a lot of the motions in

21    limine.  You have suggested you may file some motions that could

22    exclude a big chunk of the government's case.  I don't want to

23    be in a situation where I am making legal rulings close to trial

24    and there is a potential that this big jury pool that is being

25    brought in here to serve on an extended trial is going to be

1 delayed.

2  So I am just warning, in terms of this template which I am

3 going to ask you all to fill in -- and I don't expect you to do

4 it today but maybe by the end of the week, early next week -- I

5 do want you to think about that.  Jury instructions, motions in

6 limine, let's get them done, and it is going to make your trial

7 prep easier.

8  MR. DUBELIER:  Your Honor, Mr. Kravis and I both

9 discussed the motions in limine issue.  The unique thing in this

10 case is that the government is only going to be using a tiny,

11 tiny fraction of the discovery they provided to us.  And what we

12 want to try and avoid, make work for us and the Court, is filing

13 motions in limine as to documents that they have no intention to

14 use in the first place or even categories of documents.

15  And so what we discussed is if the April trial date was

16 workable for the Court, Mr. Kravis indicated that he could get

17 us an exhibit list in early January.  Then we know, okay, these

18 are the documents from which accounts they are going to use.  We

19 are going to know immediately what the evidentiary issues are,

20 and we should be able to file our motions in limine maybe by --

21 if he got it to us in early January, by the end of January, and

22 they can be fully briefed.

23  THE COURT:  But to be clear, your motions to suppress,

24 I am not waiting on that exhibit list.

25  MR. DUBELIER:  Well, the complexity with the motion to

1 suppress -- we have come up with another solution for that as

2 well, if it is agreeable with the Court.  The fundamental

3 problem with the motion to suppress is we still can't talk to

4 the client about the documents that are subject to this.

5   And here is what we would like to propose to the Court:  As

6 soon as the intermediate discovery gets to Russia -- and it is

7 not there yet.  We are working out the details of how to

8 transfer it and, you know, dotting the Is and crossing the Ts

9 with the government.  But as soon as it gets there, we then can

10 discuss those issues with the client.

11   What Mr. Kravis and I agreed is that we would give him a

12 list of any accounts where we thought we might arguably have

13 standing to object with respect to a motion to suppress, and

14 then he should fairly quickly be able to come back to us and say

15 whether or not they are going to use any documents from those

16 accounts.  And if they're not, there is no reason to file a

17 motion to suppress.  It is just a waste of our time and a waste

18 of the Court's time.

19   THE COURT:  When is the discovery going to get to

20 Russia?

21   MR. DUBELIER:  Well, I don't know the -- I will have

22 to defer to Ms. Seikaly and Mr. Kravis to talk to you about that

23 because I am not involved in the details of that.  I think what

24 we are still discussing are -- I think the basic process is

25 agreed to and how the stuff is going to be maintained and where

1    it is going to be.

2         I think what is still open is how it is going to be

3    transferred, and that's -- there's, apparently, three options

4    that have been proposed.  I would rather not speak about those

5    publicly.  But we are still working through that to determine

6    what option is going to work best for the security of the data

7    and making sure it gets to where it needs to go.

8              THE COURT:  Okay.  But you have identified the

9    categories that are going?

10             MR. DUBELIER:  Well, we generally -- I think both

11   sides generally understand what is covered, but we still have to

12   be able to confirm 100 percent with the government that what

13   they say can go is what we are going to send.  And so that's a

14   technical matching data process that we have to go through, and

15   it is not something that is going to take months.  It is going

16   to take weeks.

17             THE COURT:  I guess I just don't understand why that

18   process can't happen with firewall with respect to a small set

19   of these documents that you need to get to the bottom of for

20   purposes of filing your motions.

21             MR. DUBELIER:  Your Honor, I think the problem with

22   that is that it's make-work really for everybody, including you,

23   in terms of wanting to accelerate resolving this specific issue.

24   We may very well be before you with no motions to suppress

25   evidence at all, once we can sit down with the client and work

through the specific accounts where we might have standing.

And as the Court knows -- I am not trying to beat around the bush here.  We are a corporate defendant.  ███████████ ████████████████████████████████████████████████ ███████████████████████████     And so that raises a complicated legal issue with respect to standing.

And so what we would need ultimately to do is sit down with each individual person whose accounts they have and determine whether or not, based on certain factual issues that we don't know the answer to, whether we can craft a standing argument. Then what we are prepared to do is give that list to the government and say, are you going to use anything out of any of these accounts?

THE COURT:  How many possible motions to suppress are we talking about?

MR. DUBELIER:  Oh, that's -- I don't want to mislead the Court, and I don't want to appear evasive.  The search warrants -- typically in this case, the search warrants will cover multiple accounts.  So it is just a question, I would guess, of which particular search warrant an account falls in. And that is, it is theoretically possible -- let's say we have five accounts that we think we have standing.  They may all be attached to the same search warrant, or they may be different search warrants.  We just don't know that.

THE COURT:  You don't know this already?

1          MR. DUBELIER:  No.

2          THE COURT:  You don't?

3          MR. DUBELIER:  No, I don't.

4          THE COURT:  Because they haven't given you the

5    information that tells you which materials are tied to which

6    search warrant?

7          MR. DUBELIER:  Oh, no, we know that.  But Your Honor,

8    the complexity here again, as you know, it's we are unable to

9    either talk to the client or any individual whose data has been

10   taken.  So we can't even ask the basic questions that we would

11   have to have answers to to determine whether or not we can file

12   a motion to suppress the evidence.

13         THE COURT:  How many questions are there?  Why don't

14   we get firewall counsel in here, and let's get approval for you

15   to ask those questions and go ask them.  What are we waiting

16   for?

17         MR. DUBELIER:  What we are waiting for is the

18   intermediate sensitive discovery to get to where it needs to be.

19   So then we can have those discussions.  And if that is going to

20   happen within a two- to three-week period of time, we are

21   wasting firewall counsel's time, your time, and our time to try

22   and accelerate a motion to suppress -- again, assuming the Court

23   agrees to an April trial date, have a motion to suppress nine

24   months in advance of trial.  Maybe we will have it eight months

25   or seven months in advance of trial where we can narrow the

1   issues.  That is, we can work with the government -- and I will

2   say, over the last three or four weeks, Mr. Kravis has been

3   incredibly accommodating in terms of issues that we have raised

4   and issues we have discussed.

5       I know Your Honor is going to get to this eventually, but

6   just to preview it, we have agreement on the protective order.

7   We think we can file that today or tomorrow morning.

8           THE COURT:  Great.

9           MR. DUBELIER:  And so -- and that required both sides

10  giving on stuff, and we were able to have a constructive

11  conversation where both sides gave.

12          THE COURT:  All right.  Have you all gone through this

13  template?

14          MR. DUBELIER:  Yes.

15          THE COURT:  Let's put aside whether I accept the

16  April 1 trial date or not.  What are you envisioning in terms of

17  these deadlines?  How much in advance are you envisioning

18  motions in limine, for example, jury instructions?  Have you

19  gotten into the weeds?

20          MR. DUBELIER:  Well, we didn't sit and decide on dates

21  to fill in on each blank.  But I can tell you generally from

22  what we discussed is that the motions in limine are primarily

23  evidentiary issues that are going to be driven by what the

24  government ultimately decides to use.  So if we have an April

25  trial date and the government gives us an exhibit list in mid-

1    January, we should be able to file motions in limine by the end

2    of January.  And then you would have the normal briefing process

3    back and forth.  So it would seem to me the Court would be

4    taking that up some time in February.

5         With respect to the motions to suppress evidence, again, we

6    may not file one.  But if we can get within the next two to

7    three weeks the data transferred, I am then going to have to go

8    over there, and we have to sit down and have a conversation

9    about what we have.  I don't see why those can't be teed up and

10   filed in the -- certainly before -- I mean the fall, maybe

11   October.  And I am just grabbing a date.  But I don't see why

12   that couldn't be done in October if we are going to do it.  So

13   that would still place us six months in advance of trial.

14        Expert testimony, we have already inquired of the

15   government on this.  They got back to us, and they said they

16   weren't sure yet.  So far -- and Mr. Kravis can correct me if I

17   am wrong -- I think we are limited to a very, very narrow set of

18   stuff where it is basically the process used by the social media

19   companies to respond to the subpoenas and the search warrants

20   and is that expert -- is that going to ultimately be expert

21   testimony, is it going to be lay opinion testimony, or is it not

22   expert testimony at all.

23        And I just think, you know, in Mr. Kravis's defense on

24   this, he didn't indict the case.  He inherited this.  And these

25   are issues that he has to resolve before we can have a

1    productive conversation about it.  But I think that is going to

2    be the universe of what we are dealing with with respect to

3    expert testimony.  There may be some, may be not.

4         THE COURT:  Okay.  What remaining pretrial motions --

5    and just to be clear, I am looking for specificity here.  I am

6    looking for each side to identify any remaining motions it is

7    considering filing from now and trial.  If they are not on the

8    list, absent good cause, I will consider them untimely.

9         MR. DUBELIER:  Your Honor, I think the caveat here is,

10   and I want to be clear to the Court, we are still not through

11   the discovery we have, let alone having discussed it with the

12   client.  We have been working on this for almost a year.  It's

13   5 million pages of, you know, stuff.  So we are not through it

14   yet.  We probably won't be through the discovery before the end

15   of the year.  That is the current schedule we are on with the

16   staffing we have on it now.

17        And so as I stand before you now, the motions in limine,

18   litigation with respect -- possible litigation with respect to

19   expert witnesses --

20        THE COURT:  Wait, wait.  What kinds of motions in

21   limine have you identified now that you intend to file?

22        MR. DUBELIER:  Specifically with respect to individual

23   pieces of evidence, and that is, just for example, let's say,

24   because we've used this example before, ███████████████████

25   █████████████████████.  We would likely be filing a motion in

1  limine to challenge whether or not that document can be

2  authenticated and entered into evidence.

3       And so I do believe, Your Honor, very strongly that this is

4  going to be able to be done in batches.  And that is, you are

5  not going to have 20 different legal issues with respect to a

6  motion in limine.  Once we have the exhibit list, we will be

7  able to tell you, okay, with respect to these specific exhibits,

8  here are the evidentiary objections.  And I expect the

9  objections to be the same legally with respect to every account.

10      Now, the fact situation with relation to each account might

11  be different.  Meaning, there may be other stuff in one account

12  that the government's going to use to try and authenticate the

13  account that doesn't exist in another account.

14      And I'm sure the Court is aware of this, but, you know, the

15  law is not yet settled on this stuff with respect to what comes

16  out of e-mail and social media accounts like Facebook and

17  Instagram.  And there are certainly no settled law here in the

18  District of Columbia.  So I think the Court is going to be

19  dealing with at least some issues of first impression, but they

20  are going to be the same for everything.  It's not as if, if we

21  are challenging 50 documents, I have to file 50 motions in

22  limine.  It is going to be the same legal argument fundamentally

23  with respect to every one.

24           THE COURT:  Okay.  Is there, beyond motions in limine

25  that you have described, any other pretrial motions?

1      MR. DUBELIER:  The only thing I can think of, Your

2  Honor is, depending upon what the Court's ruling is on the

3  supplemental bill of particulars, there could be another motion

4  to dismiss.  But that's -- it's premature, and I wouldn't be

5  able to tell you that.  I tried to preview that a little bit in

6  the document we filed yesterday afternoon, the motion we filed.

7  But again, I can conceive of possibly filing another motion to

8  dismiss, depending upon your ruling in that.  And I'm trying --

9      THE COURT:  Walk me through that.  If I don't grant

10  it, then you are going to file a motion to dismiss?

11      MR. DUBELIER:  No, I don't think we would be able to

12  file a motion to dismiss if you don't grant it.

13      THE COURT:  Okay.  If I grant it --

14      MR. DUBELIER:  It would depend specifically what you

15  granted and required them to tell us.

16      THE COURT:  All right.  What about with respect to

17  jury instructions?  Is there any reason why this fall we can't

18  be addressing those, if you are telling me we have these

19  complicated issues of first impression coming in in January?

20      MR. DUBELIER:  I don't think there is any reason why

21  we couldn't, Your Honor.  I will tell you, we noticed that -- I

22  think both sides will agree what it is going to come down to.

23  It is going to come down to the knowledge charge with respect

24  to, you know, is it willfulness standard.  If it's willfulness,

25  what is required and wording out what that jury instruction is

1     going to be.  As far as I am concerned, that's 90 percent of the

2     case, and I would rather --

3              THE COURT:  All right.  Well, I have already held

4     willfulness is not required under 371.

5              MR. DUBELIER:  I understand that, but I think you have

6     made comments in some of the orders and on some of the

7     transcripts which I think -- at least it is my impression that

8     you haven't decided exactly what you are going to tell the jury

9     with respect to knowledge.  And I think that that's again

10    90 percent of the case.  I would rather resolve that sooner

11    rather than later.  I would like to know that well before the

12    end of this year as to what you are going to tell the jury with

13    respect to that, because that is critical in terms of how we are

14    going to defend the case.

15             THE COURT:  All right.  What is your position with

16    respect to a written jury questionnaire?  Do you think that we

17    need to send out a specific questionnaire, have the jurors come

18    in and answer questions in court, or do you think the standard

19    questionnaire that would go out for an extended trial is

20    sufficient here and we handle the rest in court in a normal voir

21    dire?

22             MR. DUBELIER:  Yeah, that's a tough one, Your Honor.

23    I will just confess to you, I don't know the answer.

24             THE COURT:  What are you waiting for?

25             MR. DUBELIER:  Well, I don't know that there is an

1    answer.  I don't know, if we pulled 10 people off the street

2    today and brought them in here, everyone would say Russia

3    interfered in the election and it was this Russian company's

4    fault or they would say I don't even know what you're talking

5    about, I haven't paid attention to any of that stuff.

6         And so to me, that's what's going to drive how complicated

7    the jury selection is going to be.

8              THE COURT:  No, no, I understand.  But we have to

9    decide up-front if the jury office is going to send out -- tell

10   people to come in to fill out a written questionnaire.

11        And you don't have a position on that?

12             MR. DUBELIER:  I don't have a position at this moment,

13   Your Honor, and I apologize.  I should have focused on that more

14   carefully.

15        So to the extent that we would be dealing with an April

16   deadline, again, I don't see why we couldn't resolve the jury

17   questionnaire issue this fall.  There is no reason to wait.

18             THE COURT:  What is your position on the Speedy Trial

19   Act?  Moving forward, I take it, you do think that I should

20   exclude time?

21             MR. DUBELIER:  We are willing to waive.

22             THE COURT:  And you have talked to your client?

23             MR. DUBELIER:  We have.

24             THE COURT:  All right.  Let me hear from Mr. Kravis.

25   Anything else you want to add, Mr. Dubelier?

1    MR. DUBELIER:  No, Your Honor.  Thank you.

2    THE COURT:  Okay.

3    MR. KRAVIS:  Good morning, Your Honor.

4    THE COURT:  Good morning.

5    MR. KRAVIS:  So I am in agreement with Mr. Dubelier

6    for once on --

7    THE COURT:  You let him take the lead on that?

8    MR. KRAVIS:  We had talked about this beforehand, and

9    his suggestions about the scheduling seemed reasonable from our

10   side.  If the Court were to agree to set a trial date in early

11   April, what we would intend to do is to provide the specific

12   items that the Court has identified in its pretrial scheduling

13   order on or before early January.  I think what we had expected

14   was -- what we had hoped to propose was that we would be

15   providing an exhibit list to the defense in early January.  I

16   expect that I will be able to provide Mr. Dubelier with a sort

17   of courtesy sneak peek of the exhibit list before then, because

18   I think we agree that many of the pretrial -- the motions in

19   limine and legal issues to be resolved are going to arise out of

20   the exhibits that the government intends to introduce at trial.

21   Also having the benefit of the Court's rulings will -- on those

22   issues will allow the government to tailor its presentation of

23   evidence in its case-in-chief.

24   So what we had intended to propose was that we would

25   provide an exhibit list in early January and that the Court

could then set the schedule for the motions in limine in mid-January into February so that those pretrial issues on the admissibility of documents could be resolved.  I think we had talked about also providing expert notice in January, approximately three months in advance of whatever trial date the Court set.

In terms of jury instructions, we can certainly work on those and submit jury instructions this fall.  I don't think we need to -- I don't think we will need any more time than that to get the Court's -- to get the Court something on that.  But I anticipate that there will be some instructions that the government and the defense will probably agree on, and then there will probably be a few instructions that we will have different views on.  I think we could submit that to the Court in a joint filing this fall.

THE COURT:  All right.  To be clear, I am looking for standard 371 instructions, not a lot of creative stuff based on case law.  There may be some need in some areas to do that, but I am looking for pattern-type instructions.

MR. KRAVIS:  Yes.  One of the questions the Court put to Mr. Dubelier, I think a jury questionnaire would be a good idea for this case, simply because the case has received some media attention.  So there may be some questions that the parties have for prospective jurors that can be answered in advance of voir dire to help sort of simplify the in-court part

1    of the voir dire process.

2           THE COURT:  And how much in advance of the actual voir

3    dire process would you propose we do that?

4           MR. KRAVIS:  I would propose that the Court ask the

5    jury office to summon the panel on a date between six weeks and

6    two months in advance of the first day of trial, depending on

7    schedule and availability, to have the jurors come in and fill

8    out a questionnaire in the courthouse that day.

9        I think that would be a reasonable amount of time for

10   the -- it would give a reasonable amount of time for the parties

11   to then review the written submissions and have a hearing with

12   the Court to discuss whether there are decisions that can be

13   made about the venire before even the jury -- the jury panel

14   arrives on the first day of jury selection.

15       I think that doing it in that way would greatly simplify

16   the actual in-court selection process, and I think that with

17   that piece built in, I don't think the jury selection should

18   take more than a few days in this case.

19          THE COURT:  All right.  I didn't raise this with

20   Mr. Dubelier, but I am thinking about four alternates for this

21   length of trial.

22       Do you all agree with that?

23          MR. KRAVIS:  I think that's reasonable, yes.

24          MR. DUBELIER:  Yes, Your Honor.

25          THE COURT:  All right.  Mr. Kravis, are there things

missing from this template deadlines, from the government's
perspective, that needed to be added?  For example, if the
language coming in on the proposed protective order on Friday
does not include a modification that you will make to the
protective order when you do turn over the exhibit list and
exhibits, I don't necessarily need that now, but I do want
things like that included here so that we have a clear schedule
moving forward.

     So even things like that, to the extent either side --
Mr. Dubelier, this includes you as well.  To the extent either
side intends to file motions ex parte, I want that included.  To
the extent you all need to do things separately, to let me know.
What I want is I don't want any surprises on my front.  I
understand there may be things that each side needs to file
separately potentially.

          MR. KRAVIS:  Right.

          THE COURT:  I am looking for that kind of specificity
here.  All right?  I don't want anyone holding anything back.
The government has said more than once it has withheld some
small portion of discovery, even from Mr. Dubelier.  I do want
to know when the government intends to produce that and the
basis for withholding it up until that date and what its
proposed date is.  I will determine whether I will agree with
the government on that, but I do want that in a filing as well.

          MR. KRAVIS:  Yes, Your Honor.  I can tell the Court

1   now that for most of the remaining materials in our possession

2   that have not yet been provided in discovery, we have collected

3   those, and we should be able to get those to defense counsel as

4   soon as the proposed protective order is submitted and signed.

5   There are some additional materials in the other matter that we

6   have been discussing that we are in the process of collecting,

7   and we will be turning those over as well.

8           THE COURT:  All right.  If you can just outline that

9   in a separate filing when you jointly submit the filing.

10          MR. KRAVIS:  Yes, Your Honor.

11          THE COURT:  How much time do you all need?  Friday?

12  Next week?  What is reasonable here?  I am not trying to be

13  unreasonable.

14          MR. KRAVIS:  For the --

15          THE COURT:  For a proposed template with all these

16  dates filled in, including by name any other motions, anything

17  ex parte you all are envisioning.  I really want a comprehensive

18  set of dates here.

19          MR. KRAVIS:  I think one week would be sufficient.

20      (Government counsel and defense counsel conferred.)

21          MR. KRAVIS:  We would ask for the end of next week, a

22  week from this Friday, so August 30th.

23          THE COURT:  All right.  So by August 30th, the parties

24  will file a joint proposed pretrial scheduling order.  And

25  separately, each side will alert me to any other issues that are

1    not included in that or not agreed upon in that.

2         And Mr. Kravis, I take it you agree time should be excluded

3    under the Speedy Trial Act?

4              MR. KRAVIS:  Yes, Your Honor.

5              THE COURT:  All right.  I did, by the way, have some

6    issues with what the parties suggested in the joint filing on

7    speedy trial.  The parties suggested that the clock began to run

8    as soon as Mr. Dubelier entered his appearance, and I am

9    wondering whether the appropriate date isn't the arraignment

10   date.

11        In addition, I believe Concord's May 14, 2018, motion for

12   an in-camera inspection of the grand jury instructions tolled

13   the speedy trial clock, and I think the parties said as much at

14   the May 23rd hearing.

15        Just so you know, my November 27th order, that excluded

16   time only from November 27th until December 21st.  That was

17   intentional.  I didn't think I had the authority to exclude time

18   retroactively.  So I am just alerting you all, to the extent --

19   I wasn't entirely on board with what was in your joint filing,

20   and if you are both agreeing prospectively that we exclude time,

21   I think that makes sense.  I intend to make that finding here.

22        But if I am correct about the speedy trial calculations, to

23   date, a total of 19 days have not been excluded under the Speedy

24   Trial Act.  If I am incorrect in terms of the date the clock

25   began to run, then more time has not been excluded.

1          So I want the parties to focus on this and -- I don't know

2     whether we need to file another -- get some agreement with you

3     all.  If you all are both in agreement that moving forward I

4     should exclude time -- I think that this case is complex.  It

5     raises novel issues of fact and law, and the defense has a lot

6     of discovery to review.  I think that there are good grounds

7     under the Speedy Trial Act to exclude time, and it is in the

8     interest of justice to do so.

9          But I am just flagging these issues for both parties to

10    think about, to the extent anything changes in the future on

11    that.

12              MR. KRAVIS:  Okay.

13              THE COURT:  And Mr. Kravis, with respect to the

14    government's intermediate sensitive discovery, when is that

15    going to get there?  What is your position with respect to the

16    motions to suppress?

17         I don't understand why we can't get to the bottom of this

18    through firewall counsel proceedings, but if both parties are

19    suggesting I wait, I am willing to wait for a reasonable but

20    short period of time.

21              MR. KRAVIS:  So we have been working on a designation

22    document, a letter essentially that would designate for defense

23    counsel our view of how the sensitive materials are to be

24    divided between U.S. sensitive and intermediate sensitive based

25    on the categories that we had previously identified for the

Court.

The reason that this has taken a little bit of time is because, as the Court is aware from our prior -- the prior hearing on this matter, there are a fair number of search warrant returns where some of the materials within the return are going to be designated as U.S. sensitive, and some of the materials are going to be designated as intermediate sensitive. And so we are taking the time now to make those designations as clear as we can with the -- fully expecting that defense counsel may come back to us with some questions on that.

We should be able to provide that information to defense counsel by the end of this week or, at the latest, the beginning of next week. And that should give them the information that they need once the protective order is entered and signed to begin -- to begin handling the intermediate sensitive discovery in accordance with the modified protections.

In terms of the status of the proposed protective order, I believe that we are largely in agreement and can get that filed with the Court in the next few days. As Mr. Dubelier said, there are some issues that we are working through with respect to the logistics of the actual transmission of the intermediate sensitive discovery, and we have been working with defense counsel to try to figure that out together and to resolve it without requiring the Court's intervention.

In terms of handling the motions to suppress, as

Mr. Dubelier represented, the defense is going to provide the government with a list of possible accounts in the near future, and we will then identify for the defense which, if any, of those accounts contain materials that the government may use in its case-in-chief so that the defense isn't wasting their time filing motions to suppress returns that the government wasn't intending to use anyway.

THE COURT:  All right.  Mr. Kravis, how long do you anticipate the government's case-in-chief to be?

MR. KRAVIS:  At this point my expectation is that the government's case would take between two and three weeks.  And the reason that that extra time is built in is I think that how expeditiously we are able to move a trial may depend on some of the Court's rulings on the motions in limine and where we are in terms of authentication of documents, how many records custodians we need to call, and that kind of thing.  That's my expectation of the sort of inner and outer bound.

THE COURT:  I hope both sides will work together to try to reach stipulations where we can for trial.

What about with respect to agreements with defense counsel over U.S. sensitive discovery?  Do you see that there will be -- will you have the ability to truncate some of what I am dealing with with firewall counsel?  Have you all had any discussions that narrows that in any way?

I know at one point you alluded that there might be --

1  defense might be able to classify some as intermediate

2  eventually.

3          MR. KRAVIS:  Yes.  So we are -- in the document that I

4  referenced a moment ago that we are preparing, we are

5  endeavoring to narrow the categories of U.S. sensitive materials

6  as much as possible along the lines that we had discussed in

7  other -- along the lines that we had discussed in other

8  hearings.

9      So the answer to the Court's question is yes, we are

10  working on that.

11          THE COURT:  Have you all had a chance to talk about a

12  time for another status hearing?  I was thinking around

13  September 17th having you all back.

14          MR. DUBELIER:  Your Honor, we haven't talked about it.

15  September 17th, I am just trying to think what we would have

16  done between now and then.

17          THE COURT:  I am looking then to set the schedule for

18  briefing the motions to suppress, for one.  So I will vacate

19  those dates today.  But I am looking to do that, and I want to

20  make sure that things are moving ahead and there are not

21  unexpected.  I just think it is good to have, from here on out,

22  monthly check-in dates, keep things on track, make sure we are

23  all on the same page.

24          MR. DUBELIER:  Sure.

25      There are two other issues I can also preview for the Court

with respect to the protective order and the U.S. sensitive

data.  It is our intent to use the firewall process some time

within the next two weeks on a very small sliver of the U.S.

data that we want to be able to discuss with the client.

And then the other thing to preview --

THE COURT:  Is firewall counsel in here, Mr. Kravis?

Is he present today?  I didn't request his presence, but I am

just wondering, is he in to hear any of that?

MR. KRAVIS:  Your Honor, Mr. McCullough is in trial,

but his supervisor on the firewall counsel side is here in

court.

THE COURT:  All right.  So in the next two weeks?

MR. DUBELIER:  Yes.

THE COURT:  Just give me some warning so I can be

available.  We want to resolve that expeditiously.

MR. DUBELIER:  We will.

And then, Your Honor, one other thing with respect to the

protective order, you will see when we file it with you, there

is some tweaking both sides did to make it more practical in

terms of, okay, we see what is here on this piece of paper, but

how are we actually going to do this.

THE COURT:  Are you in agreement?

MR. DUBELIER:  Yes, we are in agreement.

THE COURT:  Great.

MR. DUBELIER:  But I don't think we want to be

1     presumptuous that we are telling you --

2              THE COURT:  I appreciate that.  Agreement is good.

3              MR. DUBELIER:  One other thing I am going to say, Your

4     Honor, and I know everybody has scheduling and stuff like that,

5     and I am not attaching any bad motive to anything here other

6     than the last time I was before the court on a trial where the

7     government said it was going to take a month, it took four

8     months.  And so if we go in April, I just have this late May

9     date where I have to go to my daughter's college graduation.  So

10    if we are still in trial, I am going to be coming to the Court

11    and asking for a day or two.

12             THE COURT:  I will let you go to that.

13             MR. DUBELIER:  Okay.  All right.  I'm just one of

14    those people that --

15             THE COURT:  This case needs -- there are a lot of

16    other cases on my docket.  This case needs to be resolved.  So

17    if I am sensing that we might not be resolved by then, I am

18    likely to move this up, not back.

19             MR. DUBELIER:  Understood.  Thank you, Your Honor.

20             THE COURT:  All right.  So I will vacate the deadlines

21    that I set in the recent order on Concord's motions to suppress.

22    I do expect at the next status hearing to have a proposed

23    briefing schedule for those to be resolved in October.

24    Concord's motion for supplemental bill of particulars.

25        Mr. Kravis, is the government prepared -- I need you to

1    file an opposition by September 2nd to that motion.

2              MR. KRAVIS:  Yes, Your Honor.

3              THE COURT:  And if Concord is going to file a reply,

4    it needs to be filed by September 9th.

5         The parties will file the proposed modified protective

6    order by this Friday, August 23rd.

7         The joint filing for a schedule for further proceedings up

8    to and including trial will be filed by next Friday,

9    August 30th.

10             MR. DUBELIER:  Your Honor, if I may, I am sorry to

11   interrupt.  You set a September 2nd date for something, and

12   that's Labor Day, a federal holiday.

13             THE COURT:  The government's opposition is due the

14   3rd.  Thank you, Mr. Dubelier.  Concord's reply is due

15   September 10th.

16        I will enter a scheduling order after I have received the

17   parties' proposed schedule.  Again, I do want to emphasize, the

18   parties need to file a comprehensive proposal here informing me

19   of any necessary motions that it anticipates filing.  To the

20   extent you all can't agree on dates, let me know.  Just state

21   your respective positions.

22        The next status date we will set for Tuesday,

23   September 17th.  Does 10:00 a.m. work?

24             MR. KRAVIS:  I have another hearing on the 17th.

25   Could I ask for either the 16th or the 18th?

1              THE COURT:  Mr. Dubelier, do you have a preference?

2              MR. DUBELIER:  Either one is fine, Your Honor.

3              THE COURT:  Let me check my calendar.

4         While she is checking that, as I stated earlier, I do

5    continue to find that the ends of justice outweigh the best

6    interests of the public and the defendant in a speedy trial.

7    Therefore, I will exclude -- for the reasons I stated earlier,

8    with the consent of both parties, I will exclude the period of

9    time from today, August 20th, until the date of our next status

10   hearing, which will be, why don't we say, September 16th at

11   10:00 a.m.  I will exclude that time in calculating the time for

12   trial under Speedy Trial Act.

13        And before we briefly get into the sealed proceeding, I do

14   want to reiterate what we have discussed previously, and that

15   is, to the extent either party seeks to file documents under

16   seal, moving forward, I do understand that you can't seek leave

17   to file a document under seal without filing the motion itself

18   under seal, as well as the attachment, and I just want to remind

19   the parties that when you file that motion to seal, I am looking

20   for the grounds in the motion, and you need to understand that

21   even if I grant the motion to seal the attachment, that I will

22   immediately unseal the motion requesting that the attachment be

23   sealed.

24        Is that clear?  I don't want to have the laborious process

25   we had to go through in connection with the recent ruling.  So I

1    really want to be on top of this as these motions are coming in.

2        And also, I will ask the parties at the conclusion of the

3    sealed matter, which will happen shortly, to review it and

4    propose any necessary redactions, and I will release, to the

5    extent I can, the transcript of the sealed proceeding that we

6    are about to have.

7        All right.  Is there anything else that we need to cover

8    here?

9            MR. KRAVIS:  Nothing from the government, Your Honor.

10           THE COURT:  Mr. Dubelier?

11           MR. DUBELIER:  No, Your Honor.

12           THE COURT:  Very well.  I will ask the courtroom

13   deputy to seal the courtroom.

14       (Courtroom sealed.)

15           THE COURT:  Let the record reflect we are now in a

16   sealed proceeding.

17       Mr. Kravis, I just wanted to touch base.  Are there any

18   issues that we need to address with respect to the mechanics of

19   the firewall counsel process?  Anything that needs to be sorted

20   out here?

21       I just want to use these opportunities to make sure we can

22   resolve as much as possible without the need for briefing.

23           MR. KRAVIS:  Nothing from the government's

24   perspective, Your Honor.  As Mr. Dubelier mentioned in the

25   earlier proceeding, the parties, in working on the revised

1    protective order, have been trying to include in the revised

2    protective order some additional language about the mechanics of

3    the firewall process and how it will work.  I think we have been

4    in agreement on that.  And so I think when the Court sees the

5    revised protective order that we are submitting jointly, that

6    will address some of the questions that the Court had previously

7    raised about the mechanics and the logistics of the process.

8              THE COURT:  Okay.  Great.

9        Let me ask you one other question about my memorandum

10   opinion on the 7th.  So I anticipated that there might be

11   greater redactions than there ended up being, but there was one

12   sentence that the parties agreed should be redacted, and I asked

13   for more information as to why that one sentence needed to be

14   redacted.  And the parties gave me two reasons.  One was it

15   relates to an ongoing criminal investigation, and two, it

16   includes information supplied by Concord that had not previously

17   been publicly stated.

18       Both points are true, but I am having a hard time

19   understanding why that statement either reveals anything about

20   an ongoing criminal investigation or if Concord prior statements

21   regarding whether or not it had anything to do with it is under

22   seal, whether that is information that should not be under seal.

23       So can you help me understand the parties' position here?

24   I have read the sentence multiple times, and I just don't see

25   why it is redacted.

1          MR. KRAVIS:  I'm sorry.  Could I ask which sentence it

2    is?

3          THE COURT:  There is one sentence that says, "Although

4    Concord maintains that neither defense counsel nor Concord is

5    responsible for this incident" -- and we are talking about the

6    Twitter incident -- "it acknowledges that the similarities

7    between the file folder names and the structures are not a

8    coincidence."

9       Elsewhere in the opinion, it states that the file folder

10   names and structures were similar.  So clearly, that's not what

11   the parties were concerned about.  But it is this sentence that

12   Concord said in response to a public brief that you all filed,

13   which said there was this incident, Concord said we had nothing

14   to do with that and put that under seal, and it has remained

15   under seal.

16      But -- I mean, maybe this is a better question for

17   Mr. Dubelier.  But there were two grounds given.  One is that it

18   relates to an ongoing criminal investigation, and I just

19   don't -- I don't understand how that reveals anything about the

20   existence of an ongoing criminal investigation.  The government

21   revealed this incident publicly.  It is in the opinion.  It is

22   discussed at length in the opinion.  And why is it that this is

23   redacted?

24          MR. KRAVIS:  I see that Mr. Dubelier is --

25          THE COURT:  All right.

1        MR. DUBELIER:  Your Honor, Ms. Seikaly has informed me

2   that the citations after that sentence remain under seal, and

3   that's why she requested that the sentence remain under seal.

4   But we are okay with that sentence.

5        THE COURT:  Well, I thought, when I flagged this and

6   asked the parties -- and I know you all were having to do a lot

7   quickly, and I apologize for that.  The reason was, you know, we

8   are getting calls, when is this opinion coming out?  I was just

9   trying to get the record released as quickly as possible.

10      I thought when I put out the minute order asking the

11   parties to focus on this, that you would take a close look at

12   this.  And the response I got back was it relates to an ongoing

13   investigation.  True.  And two, it hasn't been unsealed before.

14   But the whole purpose of that process was to unseal as much as

15   possible.

16      So tell me why that needs to be under seal.

17        MR. DUBELIER:  It doesn't.

18        THE COURT:  It doesn't?

19        MR. DUBELIER:  It doesn't.  And again, Ms. Seikaly, I

20   think, was acting in an abundance of caution that the two

21   citations cite to information that is still under seal.  That

22   is, after the sentence, it says, "March 7th, 2019, hearing

23   transcript at 61 to 62."  Those pages are still under seal.

24        THE COURT:  Right.  I'm asking.  I don't --

25        MR. DUBELIER:  We have no objection to that being

1    public, that sentence.

2             THE COURT:  As well as the sentences that are

3    referenced in the transcript?  Is that -- you probably need a

4    chance to look at that.  But can you all just look at this?

5             MR. DUBELIER:  Yes.

6             THE COURT:  It's odd to put out an opinion with a

7    single sentence redacted that's not really meaningful.  And of

8    course, you are denying that you had anything to do with this

9    incident, and I just didn't see the sensitivity.  But if you all

10   can help me understand, I will leave it under seal.

11            MR. DUBELIER:  We will fix it before the end of the

12   day.

13            THE COURT:  Mr. Kravis, do you have an objection to it

14   being unsealed?

15            MR. KRAVIS:  I mean, I would want to talk -- I want to

16   talk with defense counsel about it.  The rationale that we had

17   had for the redaction was that it was specifically -- it was

18   providing information specifically about a denial of

19   responsibility by an organization that was involved in the

20   investigation.  That is to say, when law enforcement is

21   investigating allegations of criminal conduct, who is accepting

22   and who is denying responsibility for the alleged criminal

23   conduct is often something that is not discussed publicly.

24            THE COURT:  Understood.  But you made this

25   allegation -- I'm not pointing fingers at them.  But you raised

1    this in a public brief there was this incident.

2              MR. KRAVIS:  Yes.

3              THE COURT:  It is only natural that they would respond

4    in their brief, we had nothing to do with it.  It is not like

5    you're going and knocking on their door and revealing the

6    investigation by doing that.

7        I am not -- I am just asking you all to look at this

8    closely.  It's just not the sentence, of everything that was in

9    that opinion, that I would have thought would have been

10   redacted.

11       I will give you until Friday to file something, and if you

12   can articulate more than you have why it should remain under

13   seal, I am willing to leave it under seal.  But I just didn't

14   see it, and I want to be careful.  I want to be transparent

15   here.

16             MR. KRAVIS:  Very well.

17             THE COURT:  So I am not insisting that you unseal it.

18   If you can explain to me better why it should remain under seal,

19   I will leave it under seal, but right now, I don't understand.

20             MR. KRAVIS:  Very well.

21       And I think the court reporter is going to remind me in a

22   moment that I request that the Court order that the transcript

23   of this proceeding that we are in right now be unsealed for the

24   limited purpose of providing the transcript to the parties so

25   that the parties can propose redactions to the Court.

1          THE COURT:  I grant that motion, and I am also going

2   to ask if you all can turn it around and propose redactions by

3   Friday to this transcript --

4          MR. KRAVIS:  We can.

5          THE COURT:  -- that you do that.  So that is an order.

6          MR. KRAVIS:  And counsel has advised me, there may

7   have been one thing that was said in the open hearing that we

8   may want to ask to be redacted from the transcript,

9   notwithstanding that it was --

10          THE COURT:  Do you want to tell me what it is?

11          MR. KRAVIS:  I don't actually know what it is, but I

12   want to -- we will get that by Friday.

13          THE COURT:  Can you all do this jointly?

14          MR. KRAVIS:  Yes.

15          THE COURT:  And I am in a difficult position, and I

16   know you all are, too, knowing when to put things under seal or

17   not.  I really don't want to step into things and reveal for

18   either side things that shouldn't be revealed in open court.

19   But I just need you to do something at that moment so that we

20   don't have these issues.

21          MR. KRAVIS:  Understood.

22          THE COURT:  I regret that there was something I said

23   or you all said.  No?  They're shaking their heads no.

24      So moving forward, if there are times that you think that

25   we do need to have a sealed hearing -- I am probably going to

1    notice the potential for one every single hearing just so that

2    the outside world knows and you all have an opportunity to

3    refrain from saying things in open court that you feel compelled

4    to say because I am asking questions, and you can just say, we

5    will cover that in the sealed proceeding.  I want to protect the

6    interests that are at issue here for both sides.

7              MR. KRAVIS:  Yes, Your Honor.

8              THE COURT:  All right.  Anything else?

9              MR. KRAVIS:  Nothing from the government, Your Honor.

10   Thank you.

11        (Proceedings adjourned at 10:53 a.m.)

1         CERTIFICATE OF OFFICIAL COURT REPORTER

2

3              I, Sara A. Wick, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    /s/ Sara A. Wick                September 16, 2019

10   SIGNATURE OF COURT REPORTER           DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25