**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S MOTION TO CLARIFY
## OR, IN THE ALTERNATIVE, TO RECONSIDER

The United States of America, by and through undersigned counsel, respectfully requests that the Court clarify or in the alternative reconsider one aspect of its November 15, 2018 memorandum opinion denying defendant Concord Management and Consulting LLC's motion to dismiss the Indictment. Count One of the Indictment charges Concord and others with conspiring to defraud the United States by interfering with the lawful government function of three agencies: the Federal Election Commission ("FEC"), the Department of Justice Foreign Agents Registration Act ("FARA") Unit, and the State Department. Count One describes those functions in detail. With respect to the FEC, the Indictment explains that the agency administers the Federal Election Campaign Act (FECA), which prohibits certain foreign electioneering conduct and requires, among other things, that persons making independent expenditures report their activity. Doc. 1 ¶ 25. The Indictment further alleges these functions are interrelated and, with respect to foreign electioneering, are two sides of the same coin—obtaining the information that is required to be reported allows the FEC both to provide the public with information about election-related activity and to enforce prohibitions like the foreign source ban. *Id.* Quoting or paraphrasing a summary paragraph in the Indictment, the November 18 opinion refers in some

1

places to the cluster of government functions that the conspirators sought to impair through deceptive means as "administering federal requirements for disclosure of foreign involvement in certain domestic activities." The government understood that phrasing in the opinion, much as in the Indictment, as a shorthand which acknowledges the functions of each agency specifically described elsewhere in the Indictment—including the FEC's collection and use of information to enforce the foreign expenditures ban. If the government misunderstood the Court's opinion, the government respectfully requests that the Court reconsider its interpretation of the Indictment or, at the very least, clarify—as is made clear in the November 18 opinion—that the government can argue that a motive for interfering in the administration of disclosure regimes was to avoid enforcement of prohibitions like the foreign expenditures ban.

## BACKGROUND

### A.  The Indictment

On February 16, 2018, a grand jury returned an eight-count, 37-page Indictment against thirteen individuals and three corporate defendants. The Indictment alleges that the defendants engaged in a multi-year conspiracy, operating out of Russia, to defraud the United States by impairing, obstructing, and defeating the lawful function of three agencies, through fraud and deceit, for the purpose of interfering with the U.S. political and electoral processes.

The Indictment begins by describing the relevant government functions in general terms. It explains that "The United States of America, through its departments and agencies, regulates the activities of foreign individuals and entities in and affecting the United States in order to prevent, disclose, and counteract improper foreign influence on U.S. elections and on the U.S. political system." Doc. 1 ¶ 1. It further explains that "U.S. law bans foreign nationals from making certain expenditures or financial disbursements for the purpose of influencing federal

elections," that " U.S. law also bars agents of any foreign entity from engaging in political activities within the United States without first registering with the Attorney General," and that "U.S. law requires certain foreign nationals seeking entry to the United States to obtain a visa by providing truthful and accurate information to the government." *Id.* The Indictment makes clear that "[v]arious federal agencies, including the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State, are charged with enforcing these laws." *Id.* The Indictment then summarizes the allegation that the defendants conspired to impair these functions through deceptive means, the conspirators' goal of sowing discord in the U.S. political system, and the fact that they sought to impair the government's ability to police their election-related activities in order to achieve their election-related goals. *Id.* ¶¶ 2-7.

In the operative charging section, the Indictment then "re-allege[s] and incorporate[s]" the prior description of the conspiracy, and in an umbrella paragraph it alleges the timing and location of the charged conspiracy ("From in or around 2014 to the present" and "in the District of Columbia and elsewhere"), the required scienter ("knowingly and intentionally") and the basic elements of that crime tied to the particular conspiracy alleged here ("conspired to defraud the United States by impairing, obstructing, and defeating the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in administering federal requirements for disclosure of foreign involvement in certain domestic activities."). *Id.* ¶ 9.

The charging section then goes on to detail the charges. As relevant here, the Indictment describes the federal regulatory agencies at issue. *Id.* ¶¶ 25-27. With respect to the FEC, the Indictment explains that the agency "administers" FECA, and that the Act "prohibits foreign nationals from making any contributions, expenditures, independent expenditures, or

disbursements for electioneering communications" and "requires that individuals or entities who make certain independent expenditures in federal elections report those expenditures to the Federal Election Commission." *Id.* ¶ 25.  The Indictment further explains that "[t]he reporting requirements permit the Federal Election Commission to fulfill its statutory duties of providing the American public with accurate data about the financial activities of individuals and entities supporting federal candidates, and enforcing FECA's limits and prohibitions, including the ban on foreign expenditures." *Id.*

With respect to the deceptive means that were the object of the conspiracy, the Indictment alleges both affirmative misrepresentations and the failure to disclose information in violation of legal duties.  These include the use of false social media accounts, *id.* ¶¶ 32-34, 36, the creation and use of U.S.-based virtual computer infrastructure to "mask[] the Russian origin and control" of those false online identities, *id.* ¶¶ 5, 39, the use of email accounts under false names, *id.* ¶ 40, the destruction of records, *id.* ¶ 58, the transmission of false information and the failure to provide required information on visa applications, *id.* ¶ 30, the failure to report certain election-related expenditures to the FEC, *id.* ¶ 48, and the failure to register as foreign agents with DOJ, *id.* ¶ 51.

### B.  Concord's Motion To Dismiss Count One

On November 15, 2018, the Court denied Concord's motion to dismiss Count One of the Indictment.  Doc. 74.  "The Supreme Court has 'stated repeatedly,'" this Court explained, "that the 'defraud' clause of § 371 . . . 'reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'"  *Id.* at 6 (quoting *Tanner v. United States*, 483 U.S. 107, 128 (1987)).  The Court rejected Concord's argument that "the indictment cannot accuse Concord of conspiring to obstruct lawful

government functions 'without any identified or recognized statutory offense.'" *Id.* at 8 (quoting Concord's motion).  The Court made clear that the Indictment does, in fact, allege the three agencies' lawful functions, *id.*, and that it alleges various forms of deception, including the failure to provide information to the government in violation of a "legal duty" and the requirement to report independent expenditures to the FEC, *id.* at 10-16.  In a section of the opinion describing the Indictment, the Court quoted and cited what it described as the Indictment's "capsule summary," *id.* at 5—the umbrella paragraph that begins the charging section.  In so doing, the Court summarized the government functions at issue—the relevant functions of the State Department, FEC, and DOJ—as "the 'administ[ration]' of 'federal requirements for disclosure.'"  *Id.* at 6 (alterations in original) (quoting Doc. 1 ¶ 9).  In its description of the alleged deceptive means, the Court observed that the Indictment "alleges that FECA prohibits foreign nationals from making 'independent expenditures'" and that the conspirators possible violation of that ban "could be relevant to establishing the defendants' motive for failing to submit reports as required."  *Id.* at 12 n.4.

## ARGUMENT

As this Court explained in its November 18 opinion, "[t]he Supreme Court has 'stated repeatedly that the 'defraud' clause of § 371 . . . 'reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" Doc. 74, at at 6 (quoting *Tanner v. United States*, 483 U.S. 107, 128 (1987)).  The Indictment alleges that the conspiracy here concerned the function of three departments—State, DOJ, and the FEC—and describes each agency's relevant function.  With respect to the FEC, the Indictment explains that the FEC "administers" FECA, and that this Act "prohibits foreign nationals from making any contributions, expenditures, independent expenditures, or

disbursements for electioneering communications" and "requires that individuals or entities who make certain independent expenditures in federal elections report those expenditures to the Federal Election Commission."  Doc. 1 ¶ 25.  The Indictment further explains that "[t]he reporting requirements permit the Federal Election Commission to fulfill its statutory duties of providing the American public with accurate data about the financial activities of individuals and entities supporting federal candidates, and enforcing FECA's limits and prohibitions, including the ban on foreign expenditures."  *Id.*  The Indictment goes on the describe the "Object of the Conspiracy" in terms that include interfering with administration of both parts of FECA—that the "conspiracy had as its object impairing, obstructing, and defeating the lawful governmental functions of the United States by dishonest means in order to enable the Defendants to interfere with U.S. political and electoral processes, including the 2016 U.S. presidential election."  *Id.* ¶ 28.

    The government understood the November 18 opinion's reference to the three agencies "administering federal requirements for disclosure of foreign involvement in certain domestic activities" as paralleling the quoted and cited language in paragraph 9 of the Indictment that this Court correctly described as a "capsule summary."  That umbrella language both references back to the broader, introductory descriptions of the government functions and describes the timing and place of the Indictment.  It therefore uses the term "administering federal requirements for disclosure of foreign involvement in certain domestic activities" as shorthand for the functions described in further detail in the subsections that follow.  That makes perfect sense.  After all, that language in both the Court's opinion and the Indictment's capsule summary was addressing "the lawful function," *Tanner*, 483 U.S. at 128, of three different departments.  Indeed, FECA's reporting requirements are not even specific to "foreign involvement" but rather concern certain

expenditures undertaken by any person.  The capsule summary therefore could not even have

fully described the FECA reporting requirement described elsewhere in the Indictment.  *See id.* ¶

25.

The Court's use of similar shorthand makes particular sense in the November 18 opinion,

which properly addressed Concord's arguments—including that there could be disruption of a

government function without having violated a disclosure statute—and therefore focused on the

Indictment's allegations regarding interference with the FEC's administration of FECA's

reporting requirements.  Doc. 74, at 15.  This analysis required the Court to focus on the

Indictment's discussion of those reporting and registration requirements as relevant both to the

identification of lawful government functions and to the requirement that the conspirators

engaged in deceptive activity that targeted the federal government.

As the November 18 opinion and the Indictment both recognize, however, FECA's

reporting requirement is intertwined with its prohibition on certain foreign electioneering

activity, in that it is one means by which the FEC obtains the relevant facts that allow it to

determine whether the foreign source ban has been or is being violated.  Doc. 74, at 12 n.4; Doc.

1 ¶ 25 ("The reporting requirements permit the Federal Election Commission to fulfill its

statutory dut[y] of…enforcing FECA's limits and prohibitions, including the ban on foreign

expenditures."); *see also id.* ¶ 1 (explaining that the government "regulates the activities of

foreign individuals and entities in and affecting the United States" by "ban[ning] foreign

nationals from making certain" election-related expenditures, barring foreign agents from

engaging in political activities without registering, and requiring truthful and complete

information on visa applications).  In this Indictment, FECA's reporting requirements serve the

additional function of alleging the "legal duty" to report foreign expenditures that is necessary to

make the failure to report such information deceptive.  Thus, in its opposition to the motion to

dismiss, in its oral argument to the Court, and in a supplemental brief filed at the Court's

direction, the government identified the enforcement of the prohibition on certain expenditures

by foreign nationals as one of the lawful government functions targeted by the conspiracy.  *Id.*

("As the Indictment alleges, the Federal Election Campaign Act (FECA) 'prohibits foreign

nationals from making any contributions, expenditures, independent expenditures, or

disbursements for electioneering communications'….")  (quoting Doc. 1 ¶ 25); Doc. 69, at 2

("The indictment further alleges that Concord and its co-conspirators agreed to engage in

conduct that violated FECA's prohibitions on certain expenditures by foreign nationals.") (citing

Doc. 1 ¶¶ 1, 25, 48, 50); Tr. 10/15/18, at 54:8-16 ("[T]he *Bluman* case, which the defense cites

repeatedly in their briefs, squarely addressed one of the government functions that is alleged in

the indictment, namely the prohibition on foreign nationals making independent expenditures,

expenditures that expressly advocate the election or defeat of a candidate in a particular federal

election.").

    The FEC's enforcement of FECA's reporting requirements and the FEC's enforcement of

FECA's substantive prohibitions are part of the same lawful government function, in the sense

that the reporting requirements are a means by which the FEC enforces the substantive

prohibitions.  In fact, in *United States v. Kanchanalak*, 41 F. Supp. 2d 1 (D.D.C. 1999), which

this Court's November 18 opinion discussed (Doc. 74, at 7-9), the indictment alleged a similar

defraud clause conspiracy against the FEC.  The Court there understood the FEC's

administration of FECA's reporting requirement and prohibitions as the same function.  The

Court explained that the indictment there "allege[d] a conspiratorial agreement to use deceptive

or deceitful means to prevent the FEC from performing its lawful reporting function," "that the

defendants entered into an agreement to make contributions that were prohibited by the Federal Election Campaign Act 'without being detected by the FEC or the public,'" and "that they took a number of affirmative overt acts in furtherance of that conspiracy, *thereby impairing the FEC's reporting function*." *Id.* at 10 (emphasis added) (citation omitted).

For these reasons, the government respectfully understood the Court's reference to three agencies' administrations of disclosure requirements as encapsulating the three functions at issue. That included the FEC's administration of the FECA provisions specifically described in the operative charging language—the interrelated requirements that people report certain election-related expenditures and that certain foreign nationals not make such expenditures at all. *See* Doc. 1 ¶¶ 1, 25. If that was a misunderstanding, the government respectfully requests that the Court reconsider the description in its November 18 opinion of the government functions at issue in this case. As discussed, the Indictment repeatedly refers to FECA's prohibition on foreign electioneering activity. While the Indictment also refers to FECA's reporting requirement, both are part of the FEC's described function. The reporting requirement is also described separately because, separate and aside from the function that the conspirators sought to impair, the reporting requirement establishing a legal duty is necessary to show that the failure to register was deceptive. In all cases, the government apologizes for any misunderstanding and wishes to ensure that it understands the Court's interpretation of the Indictment.

Finally, if the Court concludes that the Indictment must be read as alleging only the goal of interfering with the FEC's administration of the requirement that persons report independent expenditures, the government respectfully requests that the Court clarify that the government is permitted to argue at trial that a motive for deceiving the FEC (and other agencies) was to avoid detection of activity that may itself have been prohibited, including under FECA's foreign

expenditures ban.   As the Court recognized in footnote 4 of the memorandum opinion, "[t]hat these alleged purchases may have violated FECA's ban on foreign independent expenditures could be relevant to establishing the defendants' motive for failing to submit reports as required."  Doc. 74, at 12 n.4.  For the same reasons, the government believes that this potential illegality is relevant to establishing the defendant's motive for other deceptive conduct as well.

Respectfully submitted,


JOHN C. DEMERS                                      JESSIE K. LIU
Assistant Attorney General for National Security    United States Attorney

By: /s/                                             By: /s/
Heather N. Alpino                                   Jonathan Kravis
U.S. Department of Justice                          Luke Jones
National Security Division                          Kathryn Rakoczy
950 Pennsylvania Ave. NW                            555 Fourth Street NW
Washington, D.C. 20530                              Washington, D.C. 20530
Telephone: (202) 514-2000                           Telephone: (202) 252-6886