1    BEFORE THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF COLUMBIA

3    UNITED STATES OF AMERICA,        .
                                      .  Case Number 18-CR-32
4              Plaintiff,             .
                                      .
5         vs.                         .
                                      .  Washington, D.C.
6    CONCORD MANAGEMENT AND           .  September 16, 2019
     CONSULTING LLC,                  .  10:02 a.m.
7                                     .
               Defendant.             .
8    - - - - - - - - - - - - - - - -

9              TRANSCRIPT OF STATUS CONFERENCE
           BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10               UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Government:           JONATHAN KRAVIS, AUSA
                                   KATHRYN RAKOCZY, AUSA
13                                 DEBORAH CURTIS, AUSA
                                   LUKE JONES, AUSA
14                                 U.S. Attorney's Office
                                   555 Fourth Street Northwest
15                                 Washington, D.C. 20530

16                                 HEATHER ALPINO, AUSA
                                   U.S. Department of Justice
17                                 National Security Division
                                   950 Pennsylvania Avenue Northwest
18                                 Washington, D.C. 20530

19   For Defendant Concord
     Management and Consulting LLC:  ERIC DUBELIER, ESQ.
20                                 Reed Smith LLP
                                   1301 K Street Northwest
21                                 Suite 1000, East Tower
                                   Washington, D.C. 20005

22                                 KATHERINE SEIKALY, ESQ.
23                                 Reed Smith LLP
                                   7900 Tysons One Place
24                                 Suite 500
                                   McLean, Virginia 22102

25

```
1    Official Court Reporter:        SARA A. WICK, RPR, CRR
                                     333 Constitution Avenue Northwest
2                                    U.S. Courthouse, Room 4704-B
                                     Washington, D.C. 20001
3                                    202-354-3284


4
     Proceedings recorded by stenotype shorthand.
5    Transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1          THE COURTROOM DEPUTY:  This is Criminal Case year

2   2018-032, United States of America versus Concord Management and

3   Consulting LLC, defendant number 2.

4          Counsel, please come forward and introduce yourselves for

5   the record.

6          MR. KRAVIS:  Good morning, Your Honor.  Jonathan

7   Kravis for the United States.  With me at counsel table are

8   Deborah Curtis, Luke Jones, and Kathryn Rakoczy from the D.C.

9   U.S. Attorney's Office and Heather Alpino from the National

10   Security Division.

11          THE COURT:  Good morning.

12          MR. DUBELIER:  Good morning, Your Honor.  Eric

13   Dubelier and Katherine Seikaly for Concord Management and

14   Consulting.

15          THE COURT:  Good morning, Mr. Dubelier and

16   Ms. Seikaly.

17          All right.  So we are here for two reasons.  I have

18   questions for both sides on Concord's motion for supplemental

19   bill of particulars.  I also want to discuss the parties'

20   proposed scheduling order for trial notices and motions that I

21   have not yet set.

22          Before I get into the merits of Concord's motion,

23   Mr. Kravis, I have a question for you.

24          MR. KRAVIS:  Yes, Your Honor.

1          THE COURT:  In your opposition to Concord's latest

2    motion, you state -- and I'm referring to footnote 3.  You state

3    that Concord misinterprets the indictment when it states that

4    the only FEC function that the defendants allegedly conspired to

5    impair was administering the FECA disclosure requirements.  You

6    say this is not so because the indictment also alleges that the

7    conspirators interfered with the FEC's function of enforcing the

8    statutory prohibition on certain expenditures by foreign

9    nationals.  You go on to say that the government identified the

10   foreign expenditure ban as one of the regulatory activities

11   impaired by the conspirators in its bill of particulars.

12        The problem I'm having is that when I denied Concord's

13   motion to dismiss nearly a year ago, I interpreted the

14   indictment to allege a conspiracy that targeted only the

15   administration of federal disclosure requirements and not some

16   other set of functions, such as the enforcement of the ban on

17   expenditures by foreign nationals.

18        So I am concerned.  If you disagreed with my interpretation

19   in that ruling, why didn't you bring that to my attention in

20   terms of a motion to reconsider, or is this just -- am I

21   misreading your footnote?

22        MR. KRAVIS:  You are not misreading the footnote, Your

23   Honor.  I had -- the government had interpreted the Court's --

24   the section of the Court's memorandum opinion denying the motion

25   to dismiss, the section dealing with the lawful government

1    functions at issue, the government had interpreted that section

2    as focusing on the disclosure requirements because the

3    disclosure requirements were a principal focus of the briefing

4    on the motion to dismiss.

5         And in particular, the Court's opinion, as I understood it,

6    was making the point that the issue of whether the defendants

7    had actually violated a disclosure or registration requirement

8    could be relevant to the government's ability to prove that the

9    acts of deception and concealment that were alleged in the

10   indictment were connected to impairment of a lawful government

11   function as opposed to merely an attempt to mislead American

12   voters.

13        And so the government's understanding of that portion of

14   the opinion was that it was focused on the lawful government

15   functions of the disclosure requirements for that reason,

16   because the disclosure requirements were a significant issue on

17   the motion to dismiss and because the disclosure requirements

18   raised issues about the government's -- the nature of the

19   government's proof at trial.

20        But the government did not understand the opinion to mean

21   that the government was precluded from arguing that there were

22   other lawful government functions if those functions were

23   properly identified in the indictment.

24        And I would add, the indictment is the charging instrument

25   in the case.  If the Court disagrees with the government's

1    interpretation of what is alleged in the indictment, then the

2    Court's interpretation of the indictment controls.  But to the

3    extent that there may be language in an opinion of the Court,

4    memorandum opinion that is not consistent with what is actually

5    alleged in the indictment, I don't think that precludes the

6    government from making that argument.  The indictment is the

7    charging document.  That is the controlling instrument here for

8    purposes of what the jury should be asked to decide.

9          THE COURT:  All right.  Well, I'm just concerned,

10   because -- and I'm looking at the opinion itself.  It held

11   that the text and structure of the indictment reveal that the

12   government functions targeted by the conspiracy are alleged

13   solely to be the administration of federal requirements for

14   disclosure.

15       So this indictment, the way in which it's drafted, is

16   difficult to follow in terms of what the objectives are.  And I

17   did my best back in October to try to discern what the

18   government's theory was.  I made it clear in that opinion that

19   the ban on foreign nationals might be relevant to show motive or

20   intent, for example, but as I see it, my motion -- my ruling on

21   the motion to dismiss clearly held that the sole functions

22   allegedly targeted by the conspiracy were the administration of

23   federal requirements by disclosure.

24       So to the extent you read that as not -- I mean, if I had

25   been on the receiving end of this, I would be concerned that

1    when it comes time for jury instructions you've got a court who

2    thinks the indictment says something other than what you are

3    telling me it meant.

4         MR. KRAVIS:  Obviously, there are issues here, and I

5    think this is one of the problems with the defendant's motion

6    for a second bill of particulars.  There are issues here about

7    what exactly the government will have to prove and what exactly

8    the jury will have to decide that will need to be resolved on --

9    in argument over jury instructions, motions in limine, and

10   motions for judgment of acquittal at the end of the government's

11   case.  But to the extent that the Court interpreted the

12   indictment not to allege one government function as the function

13   of the FEC to prohibit independent expenditures by foreign

14   nationals, the government respectfully submits that that

15   interpretation of the indictment is not correct.

16        In fact, the indictment does allege in two different

17   paragraphs that it is a function of the FEC to prohibit foreign

18   nationals from making any contributions, expenditures,

19   independent expenditures, or disbursements for election year

20   communications.  The indictment also alleges that the reporting

21   requirements aid the FEC in enforcing FECA's limitations and

22   prohibitions, including the ban on foreign expenditures.  The

23   government included the ban on foreign expenditures as one of

24   the government functions in its bill of particulars.

25        I think the government has the -- I think the government's

1    interpretation of the indictment is correct here, and if the

2    Court -- I will point out that the Court's -- to the extent the

3    Court has interpreted the indictment differently in its order on

4    the motion to dismiss, that is, I think, technically dictum

5    because the Court denied the motion to dismiss, and it denied it

6    on the basis of the other regulatory functions identified in the

7    indictment.  So --

8         THE COURT:  But to the extent Concord had a broader

9    challenge, I didn't address any of that in that opinion.

10        MR. KRAVIS:  I don't understand.  The Court held in

11   that ruling on the motion to dismiss that the government, that

12   the indictment articulated a viable theory of criminal liability

13   with respect to Concord.  And in doing so, it relied on the

14   lawful government functions of the Federal Election Commission

15   and the DOJ FARA Unit to enforce the registration and reporting

16   requirements that are identified in the indictment.

17        Whether there were other government functions that were

18   also alleged in the indictment that could also support a viable

19   legal theory of criminal liability was not necessary to the

20   Court's holding, because the Court denied the motion to dismiss

21   on the basis of those legal theories.

22        In any event, to the extent that the Court's ruling on this

23   intended to interpret the indictment to exclude those lawful

24   government functions, the government submits that interpretation

25   of the indictment is simply incorrect.  And if the Court wants

1    us to file a motion on that issue now, we can do that.  We can

2    also address it at the time.

3            THE COURT:  I'm just surprised you didn't fire that

4    off right when the opinion came.

5            MR. KRAVIS:  Again, our understanding of what was

6    being said in that section of the opinion was that the

7    government -- or excuse me, not the government, that the Court

8    was focusing on the issue of the disclosure requirements because

9    that was an issue that was -- that was a particular government

10   function that was heavily litigated in the context of the motion

11   to dismiss because the government and the defense had taken very

12   different positions on what exactly the government would have to

13   prove and what exactly the government had to allege with respect

14   to those -- with respect to those government functions and

15   because the Court was focused on a different element of the

16   defendant's challenge to the indictment, which was the issue of

17   whether the acts of concealment and deception alleged in the

18   indictment were directed towards impairing a lawful government

19   function.

20           THE COURT:  To be clear so I understand the

21   government's position now, is it the government's position that

22   the indictment alleges a conspiracy to impair not one, but two

23   FEC functions, is that correct, the first being administering

24   the disclosure requirements and the second being enforcing the

25   ban on foreign expenditures?  Is that correct?

1          MR. KRAVIS:  That's correct.  And as the --

2          THE COURT:  That's the government's view?

3          MR. KRAVIS:  Yes.  And as the indictment --

4          THE COURT:  All right.  Okay.  Well, again, I'm

5    baffled that this didn't trigger a motion from the government at

6    the time, because I start out the analysis saying to address

7    Concord's challenges to the indictment, it is necessary first to

8    identify the lawful government functions that the defendants

9    allegedly conspired to impair.

10         And I talk about the language, and I talk about the

11   ambiguity in the indictment.  At the time the government had

12   described the relevant functions broadly as regulating and

13   administering the participation of foreign nationals in the

14   American electoral process or promoting transparency in the

15   American political and electoral process.

16         Likewise, Concord has described the relevant function, to

17   the extent one exists, as electoral processes or administering

18   elections.  And then I go on to say, the text instruction of the

19   indictment, however, point to a narrow set of functions.

20         And it's after that that I define what I see the indictment

21   to allege.  And I understand you would like to have me

22   reconsider that, but -- and I do think we will need briefing on

23   this.

24         If I were to reconsider my ruling, what impact, if any,

25   does the bill have on how I should interpret the indictment?

1          MR. KRAVIS:  I'm sorry?

2          THE COURT:  The bill of particulars the government has

3     provided.

4          MR. KRAVIS:  I mean, the first bill of particulars is

5     a -- is the government's controlling interpretation of the

6     language of the indictment, and the bill of particulars did

7     identify the ban on certain expenditures by foreign nationals as

8     one of the lawful government functions impaired.

9          THE COURT:  Okay.  And to the extent I were to agree

10    and say that the indictment alleges a conspiracy to interfere

11    with the FEC's enforcement of the ban on expenditures by foreign

12    nationals, shouldn't I give Concord the chance to renew its

13    motion to dismiss to challenge this theory?

14         MR. KRAVIS:  No.  These aren't different theories that

15    Concord gets to challenge seriatim.  Concord had the indictment

16    before it.  Concord filed a motion to dismiss.  The government

17    opposed.  We had argument.  The Court ruled on it.  I'm not sure

18    what there is --

19         THE COURT:  But that initial motion that Concord filed

20    talked about the general policing and this is a broad

21    indictment.  There was a challenge in there that I did not

22    address in that first round of briefing, and I did not address

23    it because of the way in which I interpreted the indictment.  I

24    interpreted it more narrowly.

25         MR. KRAVIS:  I guess I'm not --

1          THE COURT:  So I think that there is an argument that

2     wasn't addressed in that opinion that they argued.

3          MR. KRAVIS:  I'm not sure I understand what that

4     argument would be.

5          THE COURT:  Well, it might be meritless, in your view,

6     but I do think there's --

7          MR. KRAVIS:  I don't mean -- I'm sorry.

8          THE COURT:  I do think -- we will hear from

9     Mr. Dubelier, but from what I recall from the motion at the

10    time, there was a broader attack on the indictment other than

11    just the FEC disclosure requirements.

12         MR. KRAVIS:  But it's not that I think the argument is

13    meritless.  It's that I don't know what the argument would look

14    like.  I mean, the only argument that I can think of standing

15    here today that Concord has not already made is, I guess, they

16    could argue the indictment does not actually allege that the ban

17    on expenditures by -- certain expenditures by foreign nationals

18    is a lawful function of the FEC that was impaired by the

19    conspiracy.  That is, they could challenge just the

20    interpretation of the indictment, is this lawful government

21    function sufficiently alleged to allow the government to argue

22    to the jury that Concord should be held liable on that basis.

23       If they want to file that motion, I'm not -- I don't oppose

24    putting it in the order.  I have to say, I think that motion is

25    frivolous.  I think we've pointed to language that clearly

1    alleges that lawful government function.

2        But setting -- so there's that argument of does the

3    indictment actually allege this government function.  I can't

4    conceptualize any other argument that Concord could make on a

5    motion to dismiss other than that argument.  I don't think -- it

6    is not like Concord gets to sort of seriatim challenge the

7    government's various theories of liability.  Concord had the

8    indictment before it.  Concord filed a motion to dismiss.  The

9    Court ruled on the motion to dismiss.  And in ruling on it, the

10   Court decided several thorny legal questions about the --

11   whether the indictment had to allege and the government had to

12   prove an actual violation of the election act, the mens rea

13   requirement, and so on and so forth.

14       But the Court has already held in that ruling that the

15   indictment alleges a sufficient theory of criminal liability to

16   allow the case to go to trial.  So if the Court already found

17   that the indictment alleges a sufficient theory of criminal

18   liability on that narrower interpretation, I don't see how

19   Concord could move to dismiss the indictment based on the

20   broader interpretation.

21       I understand that the Court could say, when we get to jury

22   instructions or pretrial motions, I do not think the indictment

23   actually alleges this lawful government function and so I'm not

24   going to allow you to make that argument to the jury.  But other

25   than that argument, I don't know what other argument Concord

should be allowed to make at this point.

THE COURT:  All right.  And that's what I am confused by.  Weren't you concerned, in light of the language in my opinion, that when it came time to look at jury instructions, that that would be my position?

MR. KRAVIS:  We were not, because again, what the government had understood the Court to be saying in that section of its ruling on the motion to dismiss was that the Court's opinion was focused on the requirements of registration and reporting because those, as the Court will recall from the argument on the motion, government functions were connected to the allegations of deception and concealment.

And in particular, the Court had a lot of questions at the oral argument, and the Court asked for supplemental briefing on the issue of how those reporting and registration requirements would affect the government's proof on the issue of -- on the element of deception and concealment that targeted lawful government functions.

The government understood the Court's opinion to be focused on that issue, but the government did not understand the Court's opinion to be excluding other lawful government functions that are properly alleged in the indictment.

To the extent that the government misread the Court's opinion on this, the government respectfully submits that that interpretation of the indictment is not correct, that language

was dictum, the indictment and the language in the indictment is the controlling document for purposes of deciding what the allegations are in the case.

Obviously, if the Court thinks that the opinion had it right and the government has it wrong, then that's the end of the matter, if that's what the Court thinks that the indictment actually says.  I respectfully submit that that is not a reasonable interpretation of the language in the indictment, particularly as language is -- that language is to be construed at this stage of the proceedings.  If the Court disagrees, then that's the end of the matter.

THE COURT:  And what if I do disagree?  Is it the end of the matter?  Does the government seek to supersede?

MR. KRAVIS:  Well, I mean, I'm not sure exactly what we could supersede with, because I think the language here is perfectly clear.

THE COURT:  I wouldn't say "perfectly clear."  It's a difficult indictment to follow.

MR. KRAVIS:  In two different places, the indictment specifically alleges that a lawful function of the Federal Election Commission is to enforce the ban on certain expenditures by foreign nationals.  And the indictment further alleges that that lawful government function is connected to the other lawful government function of FEC reporting requirements in paragraph 25.  In reporting requirements, (a), the FEC, in

1    quote, enforcing FECA's limits and prohibitions, including the

2    ban on foreign expenditures.

3         THE COURT:  What did you think about the paragraph

4    that I wrote that says paragraph 9 serves as a capsule summary

5    that distills the essence of the conspiracy and frames the

6    allegations that follow?  That paragraph, the heart of the

7    conspiracy charge alleges a conspiracy to impair three specific

8    lawful functions of three specific agencies.  It alleges that

9    the defendants conspired to impair the functions of the FEC, the

10   DOJ, the Department of State in administering federal

11   requirements for disclosure of foreign involvement in certain

12   domestic activities.

13        MR. KRAVIS:  I don't know how to answer the question

14   in any way other than I already have.  The government's

15   interpretation of this section of the Court's opinion on the

16   motion to dismiss was that it was focused on the disclosure --

17   on the registration and reporting requirements because at the

18   motion to dismiss stage the Court had connected those

19   requirements to the acts of concealment and deception and the

20   requirement that the government prove that those acts of

21   concealment and deception were directed, at least in part,

22   towards impairing a lawful government function.

23        To the extent that the government incorrectly interpreted

24   the Court's opinion on this, the government respectfully submits

25   that its interpretation of the indictment is the better

interpretation.  That language, it was not central to the
Court's holding because the Court's holding went the
government's way.  It ruled in favor of the government.

So the government respectfully submits that the correct
interpretation of the indictment is the one that's set forth
here and in the bill of particulars and that it is that language
that should be controlling for purposes of -- for purposes of
jury instructions and for purposes of trial.

THE COURT:  All right.  I'm just curious, Mr. Kravis.
If I were to find that the ban on foreign expenditures comes in
regardless to prove motive, even if I kept the narrower reading
of the indictment, does this really make a difference in terms
of the government's theory at trial?

I mean, if the defendant and the conspirators are evading
the disclosure requirements, in part they are motivated to do so
because of the ban on foreign expenditures.  Does this really
make a difference at all in the case that's presented?

MR. KRAVIS:  I mean, it's a little bit difficult to
answer that in the abstract because I think it might depend on
how the Court framed the instructions to the jury.  The reason,
I think, that this makes a difference is because the defense has
consistently argued, at least as I understand their argument,
that the defendants were not subject to the reporting
requirements of the FEC.

And as the Court has noted in its ruling on the motion to

dismiss and its questions at oral argument, the question of whether the government has to prove that the defendants actually violated -- actually were required to file reports with the Federal Election Commission, that the government may have to prove that the defendants were so required at trial in order to establish that the defendants' conduct, deceptive conduct was targeted, at least in part, towards the lawful government function.

The government has argued to the contrary.  But the reason that I think that that's significant here is because I do not believe that the defense has ever argued that the defendants are not subject to the foreign expenditure ban.  And so to the extent that the Court were to rule that the government has to prove that the defendants actually violated some portion of the election act in order to establish criminal liability, which again the government has consistently argued is not the case --

THE COURT:  I have made clear you don't have to prove the violation.  You don't have to prove a willful violation. But what I have said is, as a practical matter, in order to -- an evidentiary matter, in order to show that the intent of the conspiracy was to defraud the United States, you may need to show that they had a legal duty.

And you've told me in the briefing on the motion to dismiss that members of this conspiracy did have a legal duty to report to the FEC and the Department of Justice; correct?

1          MR. KRAVIS:  Correct.  And that is alleged in the

2     indictment.

3          THE COURT:  And that remains true; correct?  I

4     understand the government says we don't have to prove that, but

5     you have represented that you can and will prove that.

6          MR. KRAVIS:  Yes.

7          THE COURT:  All right.

8          MR. KRAVIS:  My point is just that the government can

9     and will also prove that the defendants were prohibited,

10    substantively prohibited from making certain expenditures that

11    they made in connection with the 2016 presidential election.

12         So to the extent that an actual, not willful, but an actual

13    violation of the requirements of the election act is necessary

14    to establish criminal liability, that is another area in which

15    the government can show such a violation.

16         THE COURT:  All right.  So the legal challenge on that

17    theory that you interfered with the FEC's enforcement of the ban

18    on foreign expenditures, all right, that legal theory is -- are

19    there cases in which -- let's take ATF, for example.  ATF

20    enforces the ban on felons not possessing firearms, for example;

21    right?

22         MR. KRAVIS:  Yes.

23         THE COURT:  So the government's position is you could

24    theoretically allege a 371 conspiracy to defraud the ATF if you

25    have a conspiracy with a bunch of people who are felons and have

1    firearms?  They're interfering with the ATF's ability to enforce

2    that provision?

3          MR. KRAVIS:  Well, it's not -- the element of the

4    defraud clause conspiracy, to establish a defraud clause

5    conspiracy, it's not sufficient to show that you were engaged in

6    the prohibited conduct.  You also have to show acts of deception

7    and concealment that were --

8          THE COURT:  Right.  They hid things.  I can't come up

9    right now with what the facts are.  But you have acts of

10   deception.  And that would be a viable legal theory, in the

11   government's view?

12         MR. KRAVIS:  Yes; yes.  It's just like the IRS in the

13   more traditional *Klein* conspiracy, which is that people have

14   obligations, obligations to -- they have obligations under the

15   tax code.  And if you engage in acts of concealment and

16   deception that are at least in part directed towards impairing

17   the IRS's functions of enforcing the tax code, you are engaged

18   in a conspiracy to defraud the United States.  And that's true

19   whether you violated the tax code willfully or otherwise or not.

20   The crime is the acts of deception and concealment that are

21   directed, at least in part, towards the function of the

22   government agency.

23       Here, the indictment alleges that there are several FEC

24   functions on the table, one of which is the reporting

25   requirement for certain expenditures, and the other is the flat

1    ban on certain expenditures by foreign nationals.  The

2    indictment alleges, and it's true, that those lawful government

3    functions are related to one another in the sense that the

4    reporting requirements are intended to help enforce the ban on

5    certain kinds of expenditures.  And acts of concealment and

6    deception that are directed towards interfering with the FEC's

7    ability to enforce those requirements, that is a conspiracy to

8    defraud the United States.

9          THE COURT:  All right.  Let me hear from Mr. Dubelier

10   on this.

11         MR. KRAVIS:  Thank you, Your Honor.

12         THE COURT:  All right.  Mr. Dubelier, what is your

13   position on whether the government's position here is correct?

14         MR. DUBELIER:  I don't think they allege it in the

15   indictment.  What they did was regurgitate the law.  Nowhere in

16   the indictment does it say that the defendants here violated the

17   foreign national ban on expenditures.  They don't allege it, and

18   we know why they don't allege it.

19         THE COURT:  Well, they don't allege a substantive

20   violation.  But to what extent in their 371 charge do they

21   fairly allege that this was one of the objects or functions,

22   rather, of the FEC?

23         MR. DUBELIER:  They don't.  Not only do they not

24   allege it in the indictment, which is what we have consistently

25   argued from the very beginning, and we know why they don't, and

1  it's transparently clear they have no proof of knowledge or

2  willfulness.

3          THE COURT:  I know.  But I have ruled on that.  I have

4  ruled that they don't have to show knowledge of the law.

5          MR. DUBELIER:  I understand that, Your Honor.  But

6  this is about the third or fourth time where we have been

7  through this exercise with the government where they say

8  something, you try and explain to them your understanding of it,

9  and they tell you your understanding is wrong.  And that's what

10  keeps occurring here, and it goes to the fundamental problem

11  with the indictment that 18 months later we still can't even

12  figure out what we are charged with.

13      Let me go to the heart of the question you're asking, and

14  that is, the FEC doesn't enforce the foreign national ban.  It's

15  a crime.  So if a foreign national --

16          THE COURT:  But don't they bring it to the attention

17  of the FBI or someone else?

18          MR. DUBELIER:  Well, only if the FEC knows about it.

19  How would they know about it as opposed to the FBI or -- the FEC

20  is not a law enforcement agency.  You used the example of ATF.

21  I get it, I think, where you are going, and you are absolutely

22  right on this, is if you accept this theory of liability, any

23  time anyone commits a crime, they can also be charged with 371

24  defrauding the government.

25      Let's say they robbed a bank and wore a mask and it was a

federally insured bank.  Well, they have interfered with the

ability of the Department of Justice to determine who the bank

robber was.  So you could take any single case and put it in

there.

The FEC is not a law enforcement agency.  They have no

ability to stop a foreign national from making a prohibited

contribution.  They just don't.  So this notion that that is

alleged in here, it's not alleged in here.  And even to the

extent they alleged it, it's not a proper function of the FEC.

THE COURT:  So I take it that if I were to reconsider

it -- and I haven't decided whether I will reconsider my

interpretation.  But if I were, you would like the opportunity

to challenge that legal theory?

MR. DUBELIER:  Absolutely.

THE COURT:  And you would like to do it through a

motion to dismiss or through jury instructions?

MR. DUBELIER:  Your Honor, I think we would have to

think about this.  Here is the complexity of this entire thing.

You have ruled on this already, but it's not going to stop me

from bringing it up again.  And that is, this all begs the

question of what instruction was given to the grand jury.  If 18

months later you and I can't figure out what the indictment

says, what was the grand jury instructed on?  What did they

indict?  What did they indict?

THE COURT:  Well, I think it's clear, based on what

1    Mr. Kravis said, that two theories were presented, that there

2    are two functions that were impaired.  And if that makes --

3              MR. DUBELIER:  I'm sorry, Your Honor.

4              THE COURT:  No.

5              MR. DUBELIER:  If I could find an unlimited amount of

6    money to bet on this, if you looked at the grand jury

7    instructions, none of this was discussed with the grand jury,

8    none of it.  None of the issues that we have raised as to

9    whether or not this indictment is properly crafted, whether or

10   not it charges a crime, none of this was shared with the grand

11   jury.

12       I think a worst-case scenario would be they were given an

13   incorrect legal instruction, but I think the second worst-case

14   scenario is they were given none.

15       And so -- and the critical thing here in terms of

16   interpreting the indictment is it always goes back to is this

17   consistent with what the grand jury did, because neither you nor

18   Mr. Kravis has the ability after the fact to change what the

19   indictment says.

20       And again, we are 18 months into this.  You looked at this

21   extensively.  We argued this from all angles with the motion to

22   dismiss.  And now it comes out 18 months later that the

23   government is saying you misunderstood what the indictment said.

24   I mean, that's just -- I understand they're saying it.  And I

25   think they're right.  But in terms of wanting to make that

1   argument, that's just staggering that we are this far into this

2   and it's not sorted out yet.

3       And I don't think you can correct this problem with a jury

4   instruction.  Again, it goes to if there's any defect or

5   potential defect with the indictment, it cannot be cured in any

6   way other than going back to the grand jury.  You said that in

7   the motion to dismiss.  I mean, that's just hornbook law.  We

8   can't fix this with a jury instruction.  It would have to go

9   back to the grand jury, if that's what -- if you find that's not

10  alleged and they want to allege that, they have to go back to

11  the grand jury.

12          THE COURT:  So you would seek to challenge this legal

13  theory if I were to reconsider?

14          MR. DUBELIER:  I think we already have, and I think

15  your order basically rejected it in that you laid out what

16  you -- they're still in denial, Your Honor, about what you said

17  they had to prove.  They are in denial on this.  They take

18  portions of what you say and feed it back.

19      What is so interesting about the opposition they filed on

20  this motion for bill of particulars, they kept repeating for

21  three or four pages what they argued, what they argued, what

22  they argued.  They never got to the substance of what you said.

23  The way you described the knowledge requirement, even absent

24  willfulness --

25          THE COURT:  But this is -- I made clear in the opinion

on the motion to dismiss and, I think, in subsequent orders,
maybe on the bill of particulars, that they may have a proof
problem at trial.  But as a matter of law, I have upheld the
indictment.  And they don't have to prove willfulness.  They
don't have to prove knowledge of the underlying law.  They
don't.

MR. DUBELIER:  Your Honor, first of all, I will say,
there's intervening case law at the Supreme Court on the issue
of what "knowledge" means, and I think it is arguably
inconsistent with what you said "knowledge" meant for purposes
of this case.  And that's not your fault.  It's more recent case
law.

But more importantly, you found they could go forward on
what you described they could go forward on.  That is, your role
on ruling on the motion to dismiss of the indictment was, what
is charged here and is it sufficient.  And you stated in your
order what you believed was charged, and you said it's
sufficient to go forward on your interpretation of the
indictment.

Well, your interpretation didn't include what they now say
the indictment alleges, and that's a fundamental problem for
them.  It's not a question of fixing it in a jury instruction or
what are they going to argue at trial.  It's are they precluded
from that, because it's not alleged in the indictment.

And again, even to the extent they were to allege it, there

1    is no enforcement function at the FEC with respect to the

2    foreign national ban.  They have no authority to do anything.

3    All they can do is they can see it.

4          THE COURT:  But they can refer matters.

5          MR. DUBELIER:  Well, I mean, that would be like

6    saying, okay, this also interfered with the operation of the FBI

7    because the FBI couldn't figure out who was making

8    contributions, and it interfered with the operation of the

9    Department of Justice because they couldn't see who was making

10   foreign contributions, and so they couldn't enforce their

11   enforcement authority to indict it.  It's endless.

12         And we have argued this in earlier pleadings, Your Honor.

13   That's the slippery slope with how they've gone with this 371

14   defraud conspiracy, for the sole reason of removing any

15   knowledge or willfulness requirement, and there is no case law

16   to go to to sort this out.  This is a one-of-a-kind indictment

17   in the history of our country.  There is nothing like this,

18   which goes to critical issues, Your Honor, with respect to due

19   process as well, and that is, we are entitled to notice of what

20   we are charged with, and we can't figure it out, because every

21   time they get up and start talking, it moves, and I don't know

22   what it is.

23         THE COURT:  All right.  Let's move on to the arguments

24   you raise in your motion for supplemental bill of particulars.

25         First of all, your questions on the indictment failing as a

matter of law, I am having a hard time following your arguments

that the indictment may fail as a matter of law depending on who

was required to register with DOJ or report to the FEC

expenditures.  I'm also having a hard time understanding why a

number of your other arguments aren't evidentiary in nature.

All right?

So let's start with the argument on independent

expenditures.  You suggest that the independent expenditures

that constitute express advocacy only marginally clear the $250

threshold; right?

MR. DUBELIER:  Uh-huh; yes.

THE COURT:  But they marginally clear it.

MR. DUBELIER:  Well, maybe, maybe not.

THE COURT:  That's an evidentiary issue at trial, and

I have to take the indictment as alleged.

MR. DUBELIER:  Well, you have to take the indictment

as alleged, but also, there's discovery that's occurred in the

case.

THE COURT:  But I don't look into discovery.

MR. DUBELIER:  Well, no, I think it's absolutely clear

that if the facts allege -- that they don't dispute, by the way,

and that is, we allege facts based on evidence in our

supplemental -- or in our motion for a second bill of

particulars.  We allege that.  They don't dispute it.  They

didn't comment on it.  They didn't say anything about it.

1     So there was a question about whether those facts could

2     cause violations of these laws.  And it could be something that

3     is purely a legal question, not even a factual question.  That's

4     where the complexity arises here, Your Honor.

5          THE COURT:  But I don't understand.  If you've said

6     it's over 250 --

7          MR. DUBELIER:  I can explain it, because I'm trying to

8     figure out -- I'm trying to figure out how they're going to try

9     this case, and that's my job.  Okay?  I have to figure that out.

10    They don't tell me.  I have to try and figure it out.

11         But in a worst-case scenario, if they produced evidence,

12    which they have not to date --

13         THE COURT:  Wait.  Just ignore me.  I have to stand up

14    because my hip is hurting.  Just ignore me.

15         MR. DUBELIER:  Oh, sure.  No problem.  Now you're

16    intimating me, though.  Can I stand on a box or something?

17         THE COURT:  I will sit down in a moment.

18         MR. DUBELIER:  Okay.  At least it wasn't me causing

19    you pain.  It was something --

20         THE COURT:  Both.

21      (Laughter.)

22         MR. DUBELIER:  All right.  Where was I?  What was I

23    saying?  I don't even remember.

24         THE COURT:  You have to figure out how they're going

25    to try this case.

1          MR. DUBELIER:  Oh, yeah, and that's my job, and I

2     understand that.  But they have not given us any information

3     that would allow them to establish that anything that was done

4     falls within the restrictions.  And that is, let's just take FEC

5     for a moment and not look at the others but let's look at FEC.

6     The Department of Justice and the grand jury don't have

7     authority to decide whether or not something qualifies as an

8     independent expenditure that is prohibited for purposes of a

9     foreign national making it.  They don't.  The only people who

10    can make that determination is the FEC, and they haven't done

11    it.  And they haven't given us any discovery which suggests that

12    they've taken any of this material to the FEC and said you've

13    got to rule on this, is this an expenditure that is prohibited

14    by a foreign national or would it have required some type of

15    disclosure because it meets a certain threshold.

16         There's just no evidence.  All they did, Your Honor, in

17    discovery was dump a bunch of social media stuff on us.

18         And so are we dealing with -- are they going to have an

19    expert witness who is going to testify as a matter of law?  Are

20    you going to decide as a matter of law and tell the jury whether

21    a particular expenditure was prohibited because it fits within

22    this narrow definition of what an independent expenditure is?

23         THE COURT:  But presumably they have that evidence,

24    whether it's by testimony or otherwise.

25         MR. DUBELIER:  Your Honor, they only have about

1    another two weeks to give it to us or three weeks.  We have been

2    at this for 18 months.  They have a deadline now of when they

3    have to produce discovery.

4              THE COURT:  But they've given you a bunch of

5    expenditures, if you will; right?

6              MR. DUBELIER:  Right.

7              THE COURT:  And why isn't that adequate if ultimately

8    you all have agreed on this -- I haven't accepted it, but you

9    all have agreed on when notice of experts are provided and the

10   reports and the like.  Why now, based upon what they've given

11   you, can I say as a matter of law this indictment fails?

12             MR. DUBELIER:  I think first you will have to

13   determine -- I will be candid with you.  I'm struggling with

14   this question as well.  And that is, if you look at a particular

15   expenditure that we all know they have alleged in the indictment

16   and we have the documents that relate to it, if you were to look

17   at that or I look at it or Mr. Kravis looks at it, is it a

18   purely question of law as to whether or not that fits into the

19   type of expenditure that has to be disclosed, or is it a mixed

20   question of fact and law?  I think you can argue it either way,

21   but you can certainly make the argument that it is purely a

22   question of law.

23        So then who is going to decide?

24             THE COURT:  But why is it purely a question of law?

25             MR. DUBELIER:  Because you can see the piece of paper

1   and see what it says at the outset.

2          THE COURT:  You've told me they've got over 250

3   already.

4          MR. DUBELIER:  I'm sorry?

5          THE COURT:  You've told me they've given you

6   documentation that shows that they spent over 250.

7          MR. DUBELIER:  Well, maybe cumulatively, but not with

8   respect to any particular one.

9          THE COURT:  What do you mean "with respect to any

10  particular one"?

11         MR. DUBELIER:  Ad, that is, what was spent on any

12  particular ad.

13         THE COURT:  And you think as a matter of law, during

14  the course of the year, you can't add together different

15  expenditures to get to that 250?  Isn't that the norm, or you

16  think it's got to be one expenditure has to be over 250?  Is

17  that an open question?

18         MR. DUBELIER:  Remember here, they've not alleged IRA

19  is a legal thing.  They just call it an organization.  The

20  people allegedly purchasing the ads are people.  They are just

21  individuals who go and purchase an ad.  So if you have 20

22  different people who purchased 20 different ads, can you

23  aggregate those because they sat in the same room or they had a

24  computer system that was hooked up?

25      I mean, I don't know that you can.  I don't know what the

1    FEC would say with respect to that.

2        One of the fundamental problems here, I think as Your Honor

3    knows, with respect to the FEC, right now they can't say

4    anything.  There isn't even a quorum.  If they went to the FEC

5    now and said, okay, here are the ads we allege -- first of all,

6    if they didn't do it before they indicted the case, how could

7    they possibly have instructed the grand jury as to what

8    particular ad would fall within or create a reporting

9    requirement.  So if they haven't done it already --

10            THE COURT:  How do you know they didn't?

11            MR. DUBELIER:  Well, I think they would have given it

12   to us by now, or they would have certainly argued it every time

13   we brought up this issue.  It's like indicting a drug case

14   before you have the lab test.  You can't do that.

15            THE COURT:  Again, my problem is I have to take the

16   indictment as true.  These proof problems may be a big problem

17   at trial.  But I've got a piece of paper in front of me, and

18   I've got to decide whether it fails as a matter of law, and to

19   date, I have not found that it does.

20            MR. DUBELIER:  If I could preview this for you, Your

21   Honor, maybe we are arguing about something we don't need to.

22   Every time I am too transparent here I get myself in trouble

23   because I wind up with another deadline, but I'm going to do it

24   anyway.

25            THE COURT:  You wind up what?

1          MR. DUBELIER:  With another deadline.  And I am not

2    being critical, but last time I previewed something for you, you

3    put a deadline on me.  I'm going to go ahead anyway because I

4    want to be transparent with you.

5       Regardless of how you rule on the motion for bill of

6    particulars, we are going to file another motion to dismiss, and

7    it's not on what we are discussing right now.

8          THE COURT:  I thought earlier you said that if I

9    denied the motion for bill of particulars, you wouldn't file a

10   motion to dismiss.

11         MR. DUBELIER:  Right, but you didn't make me raise my

12   hand and give the Boy Scout oath or anything.

13         THE COURT:  But I'm learning with you, Mr. Dubelier,

14   that I have to lock you down in every potential way with no

15   ambiguity on any aspect of our discussions or --

16         MR. DUBELIER:  I think -- we could go back to the

17   transcript, but I think what I said was, if you granted it, we

18   would file another motion to dismiss.  I'm not sure I said if

19   you denied it, we wouldn't.

20         THE COURT:  No, you said if --

21         MR. DUBELIER:  Did I?

22         THE COURT:  -- you deny it, I'm not filing it.  But

23   anyway, go ahead.  I will give you another opportunity, but you

24   are going to be on a short leash, and that was going to be

25   regardless of what you said here today.  I want all of these

1   motions resolved before the end of the year, all of them.

2           MR. DUBELIER:  Okay.  All --

3           THE COURT:  Not all of them, but any motion to

4   dismiss, motion to suppress, all of those sorts of things, and

5   we will get to the motions in limine and other things later.

6   But --

7           MR. DUBELIER:  Your Honor, I think Mr. Kravis and I

8   are in violent agreement with on you that.  We want them

9   resolved, too, because some of this stuff is going to

10  dramatically impact what this trial, if it ever occurs, is going

11  to look like.

12          THE COURT:  All right.  So preview your argument for

13  me.

14          MR. DUBELIER:  Oh, my new argument on the motion to

15  dismiss?

16          THE COURT:  Your new argument.

17          MR. DUBELIER:  I would rather not.

18          THE COURT:  Oh, okay.  Since I said I'm going to allow

19  you to file it now, you're --

20          MR. DUBELIER:  Well, no, no.  Even if you said I

21  wasn't allowed to file it, I would file it, and you would deny

22  it as out of time, but I would still file it, with all respect.

23          THE COURT:  All right.  So you don't think it will be

24  useful here for this argument for you to help me understand why

25  as a matter of law --

1      MR. DUBELIER:  I think I hinted at it, and that is,

2  there's two prongs to it.  One prong is, it's our position that

3  there is intervening case law at the Supreme Court with respect

4  to knowledge.  And so -- and you found in this case, there's no

5  question that you said no willfulness, they don't have to prove

6  willfulness, but they have to prove knowledge.  And the way you

7  described --

8      THE COURT:  No, what I said is -- the problem is, you

9  keep seizing on the fact that I said in order to show intent to

10  defraud the United States, as a practical matter, they may need

11  to show that they had a legal duty to file reports.

12      MR. DUBELIER:  No, I'm talking about a different

13  issue, Your Honor.  They allege knowledge in the indictment, and

14  you defined what you interpreted "knowledge" to be, not --

15      THE COURT:  I defined this where?

16      MR. DUBELIER:  In your order denying the motion to

17  dismiss.

18      THE COURT:  All right.

19      MR. DUBELIER:  And so there's discussion of what your

20  interpretation of "knowledge" is in that order, and there is an

21  argument.  And I'm not saying we prevail, but there's an

22  argument to be made that that standard that you set out, the bar

23  on that may have raised by intervening case law.

24      THE COURT:  All right.  And when did this case come

25  down?

1        MR. DUBELIER:  August or July of 2019.  It's *Rehaif*.

2        THE COURT:  So what are you waiting for on filing this

3   motion?  If you think that my earlier opinion is now incorrect

4   based on subsequent Supreme Court case law, I would hope you

5   would bring that to my attention immediately.

6        MR. DUBELIER:  Your Honor, I have a case that comes

7   out a month or two ago.  I have a foreign client who doesn't

8   speak English.  I'm just not a mad scientist sitting up there

9   trying to come up with stuff.  Sometimes I am, I guess.

10       THE COURT:  All right.  Let me move on to, you say it

11  is impossible for Concord to conduct its investigation without

12  knowing precisely who the government intends to establish was

13  required to report to the FEC.

14     But I addressed this argument in the first round on your

15  first motion for bill of particulars.  You now have -- because I

16  granted in part your motion, you now have the disclosure

17  requirements clearly stated.  You now have the full universe of

18  individuals who were supposed to file these reports or register

19  with the Department of Justice.

20     Why can't you determine from that information who may have

21  had the reporting duties?

22       MR. DUBELIER:  I tried to in our motion for bill of

23  particulars.  I set out why -- all possible options and why we

24  couldn't figure it out.

25     Remember, Your Honor, I think it is important, we are not

1   all one class of defendant here.  And that is, you have

2   individuals.  You have this IRA organization.  And you have

3   Concord.  So this is not like I'm coming to you and saying,

4   okay, there's 25 people at IRA or however many are indicted in

5   this case, 10 people indicted, tell me which one at IRA had this

6   obligation.

7              THE COURT:  But we're talking now about -- what's the

8   total number?  We're talking about -- with the individuals

9   charged in the indictment and the unindicted co-conspirators,

10  we're talking about how many?

11             MR. DUBELIER:  20 something.

12             THE COURT:  And you have documentation that shows

13  these expenditures?

14             MR. DUBELIER:  We do.

15             THE COURT:  Why can't you talk to these people and

16  say, did you do this?

17             MR. DUBELIER:  What do you mean?  Did they do what?

18             THE COURT:  Did they spend this money?

19             MR. DUBELIER:  I don't really think that matters,

20  whether or not they spent the money.  I don't think that

21  matters.

22             THE COURT:  Why doesn't it matter?

23             MR. DUBELIER:  Because the key here is figuring out,

24  for purposes of defending the case, who is the government going

25  to come to court and say was required to file this.  If you

1   have -- I don't know what the a/k/a's are in this case.   So

2   let's just say Boris Smith.   Okay?   That's a Russian name.

3   Boris is alleged in this indictment to be a part of this

4   conspiracy.   And let's say he bought one ad and spent X number

5   of rubles -- which by the way, it was always in rubles, never in

6   dollars.   Facebook knew.   Instagram knew.   All the ads were

7   purchased in rubles.   They knew they were coming from servers in

8   Russia, and they took the money, and they posted the ads anyway.

9       So let's say he posted an ad.   Whether or not he spent the

10   money and posted an ad doesn't matter to me.   It just doesn't.

11   What matters to me in terms of defending the case is, did that

12   cause, did that put an obligation on him to report that ad to

13   the FEC, report that expenditure to the FEC.   That's what I'm

14   trying --

15           THE COURT:   According to the government's theory,

16   anybody who is expending more than 250 on express advocacy is

17   required to report.   That's what the law, they state, requires.

18           MR. DUBELIER:   I think it is more complicated than

19   that, Your Honor, because you have to determine whether or not

20   the ad itself falls within this very narrow category of what the

21   FEC requires reporting for.

22       And look, the government has not disputed this.   We've been

23   through everything they've given us.   You're talking about 2,500

24   bucks, not hundreds of thousands and millions like it has been

25   reported in the media.

1          THE COURT:  But it's a 250 threshold.  That's what we

2     are working with here.

3          MR. DUBELIER:  $250, yeah, for a single --

4          THE COURT:  For a single?

5          MR. DUBELIER:  Yeah, for a single.

6          THE COURT:  Not cumulative?

7          MR. DUBELIER:  Right.

8          THE COURT:  There has to be one expenditure, in your

9     view, that's 250 or above?

10         MR. DUBELIER:  Oh, no, you can accumulate under

11    certain circumstances, but it gets complicated.  You have to go

12    into the regulations and figure it out.

13         THE COURT:  All right.  But that's what they've

14    alleged they can do.

15         MR. DUBELIER:  Your Honor, I understand what you are

16    saying, but let me flip the question for a second.  And that is,

17    isn't it exculpatory, isn't it *Brady* material if Concord was not

18    required to register or file?  It would seem to me it is.

19    Putting aside whether we get it through a bill of particulars,

20    they can't argue with a straight face that if Concord, my

21    client -- which remember, didn't post anything.  If my client

22    was not required to register under FARA or file under FERA, the

23    way this indictment is structured, that is exculpatory, and they

24    have to tell us.

25       Now, that doesn't get me the same answer, and that is, I

1   have to flip the question.  But one way or the other, they've

2   got to answer the question.

3            THE COURT:  I've got this motion for bill of

4   particulars right now.  So I want to focus on that.  They've got

5   a *Brady* notice that's due soon; right?

6            MR. DUBELIER:  Uh-huh.

7            THE COURT:  All right.  You also raise a possible

8   Fifth Amendment defense.  Again, why can't -- I don't understand

9   why you can't --

10           MR. DUBELIER:  Your Honor, if you would excuse me.

11  Yes.

12           THE COURT:  Again, I don't understand why you can't

13  evaluate that defense with the information you already have.

14  Putting aside the merits of your argument, which based on what

15  you've argued here I don't find particularly compelling, but

16  even if I did, aren't those appropriately addressed through a

17  motion to dismiss or a challenge to the jury instructions rather

18  than a motion for bill of particulars to say who did what?

19           MR. DUBELIER:  Your Honor, I don't think it's fair --

20  the government did this.  I do not think it's fair to

21  characterize what we have asked for as who did what.  You've

22  already said we can't have that.  So I'm not asking for, as the

23  government framed this, just another way of saying who committed

24  each overt act.  This has nothing do with overt acts.  You said

25  they don't have to tell us who committed each overt act.  That's

```
 1    fine.
 2                THE COURT:  You want to know who had the reporting
 3    requirement.
 4                MR. DUBELIER:  Because, Your Honor, I as my client's
 5    lawyer cannot even figure it out.  I can't figure out who had
 6    the reporting and the registration requirements.
 7                THE COURT:  So you've got the legal provisions, and
 8    you've got the documents that show the expenditures.
 9                MR. DUBELIER:  Correct.
10                THE COURT:  And you can't figure out what exceeds 250?
11                MR. DUBELIER:  Your Honor, that's not the issue.
12    You're simplifying this in a way that you can't simplify it.
13                THE COURT:  So you have to look at was it express
14    advocacy.  I get that.  But you can't do that as a lawyer?
15                MR. DUBELIER:  No.  You need to know who had --
16    look --
17                THE COURT:  Anyone has the duty.
18                MR. DUBELIER:  Your Honor, it's inconceivable to me,
19    inconceivable that the government wouldn't just tell us the
20    answer to this.
21                THE COURT:  I get that you want it, but I don't
22    understand why you can't try to figure it out.  You want
23    confirmation.
24                MR. DUBELIER:  I can try, and then we're going to
25    start a trial, and maybe I am wrong because they come up with
```

some other way they're going to spin up the thing and say we did

something wrong.

Why wouldn't they give us this?  It's no harm.

THE COURT:  But they have given you the documentation

that shows the expenditures.  You have it.

MR. DUBELIER:  So that, then, answers my question.

You're saying they gave it to me already.  Then what is the harm

to them of simply telling us who.  Who had an obligation --

THE COURT:  I don't know.  I don't know that they're

obligated at this stage.

MR. DUBELIER:  Your Honor, I will tell you --

THE COURT:  This was happening from Russia.  So maybe

they don't know the exact person but they know where it's coming

from.  I don't know.

MR. DUBELIER:  Oh, no, they've alleged who did it.

That's the way they allege it in the indictment.  I know why

they don't want to tell.  They don't know either.  They didn't

indict the case.  Mr. Kravis is the victim of the biggest dump

job I have ever seen.

THE COURT:  I'm sure the Special Counsel's Office is

communicating with the U.S. Attorney's Office to prosecute this

case.

MR. DUBELIER:  But the danger created here, though,

Your Honor, and Mr. Kravis knows it, he's a good lawyer, he

can't come in here and make arguments knowing what those grand

1    jury transcripts say and create problems for himself, because

2    that may lead to you wanting to look at whatever instruction was

3    given to the grand jury.

4         So again, if it's so obvious, if that's the argument -- and

5    the government, by the way, doesn't make that argument.  The

6    Court is making it.  The government never said in their

7    opposition, they should already know, we've already given them

8    the materials, they should figure it out for themselves.  No,

9    what they have said is, we don't want to tell, and we will tell

10   some time during trial when it comes out in the evidence.  And

11   that's just -- Your Honor, it's just not right.

12        THE COURT:  All right.  What about your arguments

13   about who could as a legal matter be required to register under

14   FARA?  Let's put aside the identity of the foreign principal for

15   a moment.  Let's talk about the agents.

16        Aren't all the individuals and entities that the

17   government's disclosed either through the indictment or the bill

18   of particulars foreign?  Aren't they all foreign?

19        MR. DUBELIER:  They allege that.  I don't know the

20   answer to that question.

21        THE COURT:  All right.  Well, they've alleged that, so

22   I think we have to assume that that's true.

23        MR. DUBELIER:  Okay.  Your Honor, just so you know I'm

24   not playing here, we could be dealing with people who have a

25   dual nationality.  I don't know the answer to that.  They're not

1    my clients.

2              THE COURT:  All right.  But you make the legal

3    argument that you can't violate FARA by doing stuff from Russia;

4    right?  Isn't that one of your arguments?

5              MR. DUBELIER:  Well, I think that simplifies it.  I

6    think it's a little more complicated than that.  And that is, I

7    can tell you that we can't find a FARA case ever where all the

8    activity occurred outside the United States, because that

9    contradicts FARA inherently.

10             THE COURT:  And as a matter of law, you don't believe

11   that the activity could occur outside as a matter of law?

12             MR. DUBELIER:  As a matter of law, yes.

13             THE COURT:  But again, the who doesn't matter here.

14   This is an argument you can make, you can assume, based on the

15   indictment.  They're all alleged to be foreign, that this is --

16             MR. DUBELIER:  Your Honor, the reason why I say I

17   don't think that's right is, again, the argument moves depending

18   upon which people fall into the specific categories.

19             THE COURT:  The indictment also alleges there were

20   people here in the United States spending money; right?

21             MR. DUBELIER:  Let's put aside for a second the three

22   people who came on vacation here that the government has made a

23   big deal about on the State Department thing.  We will put that

24   aside.  I think most of the -- I've basically conceded to you

25   that even if we knocked out all the rest of this stuff, your

1    earlier ruling would let that element go forward.  So I'm not

2    going to reargue that.

3              THE COURT:  "That element" being?

4              MR. DUBELIER:  The State Department visa thing.  We

5    pointed out early and you recognized that there is no evidence

6    that Concord had anything at all to do with that.  So they are

7    going to have to connect us to that somehow.  But the State

8    Department thing is different.  It's different than FARA and

9    FECA.

10         And that is, again, regardless of what they said in their

11   opposition, this is ultimately a crime of omission.  They say,

12   well, it's not an omission, we joined the conspiracy.  Well, if

13   we joined the conspiracy, we joined it to omit something.  At

14   the end of the day, it is an omission as to whether or not there

15   was a filing.  Totally different from the State Department where

16   you have allegedly, and they're going to have to prove it,

17   affirmative representations to a visa officer that were wrong,

18   just two different categories of stuff.

19             THE COURT:  All right.  So Mr. Dubelier, you've

20   alluded to this forthcoming motion to dismiss.  I want to make

21   sure I understand.  You don't have to spell out all the

22   arguments.  But on what grounds do you seek to move to dismiss

23   this indictment?

24             MR. DUBELIER:  Your Honor, the complexity here is we

25   are still working on it.  It's not written yet.  We're working

1    on it.  I can tell you that one of them is the Supreme Court

2    case and whether or not -- the way in which "knowledge" was

3    interpreted at the Supreme Court.  There's another element to it

4    again, but we are still working on it.  In fact, Mr. Martin and

5    I are going to have to make strategic decisions as to which we

6    want to argue, and that's not done yet.

7              THE COURT:  Okay.  So time is of the essence.

8              MR. DUBELIER:  I understand.

9              THE COURT:  And I am going to order the government to

10   file its motion to reconsider my ruling, and I am going to order

11   them to do that in short order, and I will make a decision on

12   that very quickly and give you an opportunity to respond on an

13   expedited basis.

14        But I am also going to order you to file any motion to

15   dismiss within two weeks.

16              MR. DUBELIER:  Three, please.

17              THE COURT:  Three.  That's it.  No extensions.  That's

18   it.

19              MR. DUBELIER:  I understand.  At least it gives me the

20   ability to go back and say to the people working on this, okay,

21   it's got to be three weeks.

22              THE COURT:  That's it.  And this is any further motion

23   to dismiss this indictment absent some -- I can't imagine a

24   reason why you can't bring any further challenge to dismiss the

25   indictment within three weeks of today.  All right?

1          MR. DUBELIER:  Do I have to say yes, or can I just
2     listen?
3          THE COURT:  No, I know you will try to wiggle out of
4     this, but I want to be really clear, really clear.
5          MR. DUBELIER:  Your Honor, that's not fair.  I'm not
6     wiggling.
7          THE COURT:  Three weeks from today, no matter when I
8     rule on this motion to reconsider -- so you need to assume for
9     purposes of this so that you are prepared and you are not asking
10    for more time, you need to assume that I am going to allow the
11    government to -- that I am going to reconsider my interpretation
12    of the indictment.  So you need to be crafting your motion to
13    dismiss assuming that that happens.  All right?  I want you to
14    have the time you need to draft it.  So just get started.  I may
15    not.  I'm not prejudging this.
16         MR. DUBELIER:  We've started.  I only type with two
17    fingers, but I'm fast.
18         THE COURT:  So within three weeks of today, that
19    motion is before me.
20         MR. DUBELIER:  Your Honor, the only caveat I have
21    hanging out there, again, is depending upon how you rule on this
22    bill of particulars issue --
23         THE COURT:  I'm going to rule, I hope, very soon,
24    perhaps even today at the bench.
25         MR. DUBELIER:  Okay.  We're good with three weeks,

1 then.  No sweat.

2     THE COURT:  All right.  Mr. Kravis?  I will allow you

3 to respond to any points that you would like to respond to here.

4 But on the foreign principal issue, I just want to make sure

5 that I am clear on this.

6   Am I correct to assume that the government has already

7 disclosed, either in the indictment or in the bill of

8 particulars that I ordered in the first round of briefing on the

9 motion for bill of particulars, every foreign principal, agent,

10 right, that the government seeks to prove in this case, that

11 they are in that bucket of people?

12     MR. KRAVIS:  Well, the bill of particulars sought

13 every -- the identity of every unindicted co-conspirator that

14 the government intended to --

15     THE COURT:  Rely on at trial?

16     MR. KRAVIS:  -- rely on at trial.

17     THE COURT:  And by that, I mean proof that that's your

18 theory, not call as a witness or anything like that.

19     MR. KRAVIS:  Yes.

20     THE COURT:  What I wanted in that bucket was I wanted

21 anyone who was required to report to the FEC.

22     MR. KRAVIS:  Right.

23     THE COURT:  Right?  Anyone that was required to

24 register with FARA.  And to the extent it wasn't clear to the

25 government, I also want anyone who is the foreign principal, not

1    just the agent.  So to the extent the bill of particulars did

2    not include that as well, I'm going to order the government to

3    provide it promptly.

4        Is that -- you're hesitating, which makes me think that you

5    did not read the order that broadly.

6        MR. KRAVIS:  I believe the answer to the Court's

7    question is yes.

8        THE COURT:  That you have?

9        MR. KRAVIS:  Yes, but I will check.

10       THE COURT:  To the extent that that's not complete,

11   again that we have every individual or entity that the

12   government will argue at trial is a foreign agent, is a

13   foreign -- is a principal, or is an individual or entity that

14   was required to make expenditures, reports about expenditures to

15   the FEC, all of those individuals and entities need to be

16   disclosed to the defense.

17       MR. KRAVIS:  Very well.  We will make the disclosure.

18   The only reason I'm hesitating is because I think those

19   categories are not necessarily all the same thing.

20       THE COURT:  No, I know, but your bill of particulars,

21   I didn't order you to delineate which is which, but I did expect

22   that the bucket of individuals and entities that are one of

23   those three things would be revealed to the defense through that

24   bill of particulars, to the extent it's not already in the

25   indictment as a defendant, co-defendant.

1          You look puzzled.

2          MR. KRAVIS:  No, I'm not puzzled.  The only reason I'm

3     hesitating is because the category -- it is possible that the

4     category of indicted and unindicted co-conspirators and the

5     category of people who may have been required to report and

6     register may not be -- those may not be the same thing.

7          But we will interpret the Court's order broadly and provide

8     the defense with any additional information as necessary.

9          THE COURT:  Okay.  But to the extent you did interpret

10    it narrowly, you would interpret it narrowly just to -- I mean,

11    I ordered you to provide the FARA and the FECA requirements;

12    right?

13         MR. KRAVIS:  Yes.

14         THE COURT:  To list those, the statutory provisions,

15    right, the code and regulations, which you did do; right?

16         MR. KRAVIS:  Yes.

17         THE COURT:  And then I thought I ordered the

18    individuals connected with those activities to be disclosed.

19         MR. KRAVIS:  It's not exactly the same thing.  Just to

20    give an example, it is possible for a conspirator to cause

21    someone to violate FEC or FARA reporting requirements without

22    that person being a member of the conspiracy.  That's why the

23    two categories are not exactly the same.

24         But I understand that the Court -- that the Court is

25    interpreting that broadly.  So we will go back and look and make

1    any additional disclosures to the defense that are necessary.

2            THE COURT:  And can you do that by Friday?

3            MR. KRAVIS:  Yes, Your Honor, we can.  I'm sorry.

4    Actually, could I ask for an additional week on that?  I'm going

5    to be out of the office for a couple of days on a personal

6    matter this week, and I would like to make sure I have the time

7    to devote to it.

8            THE COURT:  So you are asking for --

9            MR. KRAVIS:  A week from Friday rather than this

10   Friday, the 27th.

11           THE COURT:  The 27th, all right.

12           MR. KRAVIS:  Thank you, Your Honor.

13           THE COURT:  Okay.  Mr. Kravis, any points you want to

14   make in response to Mr. Dubelier's argument?

15           MR. KRAVIS:  I want to make two points very briefly.

16   The first relates to the motion for a second bill of particulars

17   itself, and the second relates sort of more broadly to how the

18   government alleges and proves lawful government functions in

19   this context.

20       On the first point, I think Mr. Dubelier's arguments make

21   clear that Concord's second motion for a bill of particulars is

22   really nothing more than a challenge to the various legal

23   theories that underlie the indictment in this case.  And as the

24   cases cited in the government's opposition made clear, further

25   refinement of the government's legal theory is not a proper

1    basis for a bill of particulars.

2        And so to the extent Mr. Dubelier argues that he does not

3    understand the legal theory, the theory of liability that's

4    articulated in the indictment, better understanding the

5    government's legal theory is not a sound basis for a request for

6    a bill of particulars.  So I think Mr. Dubelier's argument makes

7    clear that what Concord really has in mind here is further

8    challenges to the sufficiency of the indictment, not really a

9    request for a further bill of particulars.

10       The second point I wanted to make was, Mr. Dubelier, when

11   he was up here, was arguing that the government was somehow

12   required to go to the FEC to get an opinion from them before

13   proceeding with the case.  And that is not how a criminal 371

14   action works.  In the context of the defendant's original motion

15   to dismiss, the government cited numerous cases in which the

16   courts have upheld convictions of defendants for interfering

17   with regulatory functions of other government agencies.  There's

18   the First Circuit case about the Department of Housing and Urban

19   Development.  There are other examples.

20       The government is not required in those cases to seek some

21   sort of opinion from the regulatory agency about how the

22   regulations apply to the defendant's conduct.  In the context of

23   a criminal action, what the government is required to prove is

24   that the defendants engaged in concealment and deception that

25   was aimed, at least in part, at preventing the regulatory agency

1    from performing one or more lawful functions.

2         So what the FEC thinks about whether any particular

3    expenditure here may have violated the election act is not

4    relevant for the purposes of establishing criminal liability.

5         Obviously, the jury will have to be instructed on what it

6    has to find in order to find the defendants guilty, but what the

7    jury has to find is that the defendants engaged in acts of

8    deception and concealment that were at least in part targeted

9    towards lawful functions of the various agencies that were

10   identified.  So the jury has to be instructed about what those

11   agencies are and what the lawful functions at issue are, but the

12   FEC's opinion about how the election act applies to the facts of

13   the case are not relevant to a criminal trial.

14        THE COURT:  But to the extent the government seeks to

15   prove at trial that any of these individuals or entities had a

16   legal duty to report, the government's going to have to show

17   that this was express advocacy, right, and it exceeded 250 and

18   all of those things; right?

19        MR. KRAVIS:  For sure.  My point is just that, just as

20   in another case where the government charged a criminal

21   violation of the election act, the issue at trial is not what

22   the FEC thinks about the ads or the expenditures at issue.  The

23   question is what the jury thinks about those things after it has

24   heard testimony on the facts and been instructed by the Court on

25   the law.

1    The point I am making is just that Mr. Dubelier's arguments

2  about whether the government has consulted with the FEC or what

3  the FEC's view of this is and so on, that that is not relevant

4  to a criminal trial alleging a violation of Section 371.

5            THE COURT:  All right.  Understood.

6            MR. KRAVIS:  Thank you.

7            MR. DUBELIER:  May I have just a moment, Your Honor?

8            THE COURT:  Yes.

9            MR. KRAVIS:  Thank you, Your Honor.

10           THE COURT:  Thank you.

11           MR. DUBELIER:  Your Honor, I hear what Mr. Kravis is

12 saying.  I can't more strongly disagree.  The FEC -- let's take

13 the FEC for a second.  They're the victim; right?  I mean, this

14 is defrauding the FEC, not defrauding somebody else.  It's

15 defrauding the FEC.  And Mr. Kravis is saying their opinion

16 about whether these regulations apply is not relevant?  That's

17 crazy.  I mean, that's absolutely crazy.  It has to be relevant.

18 Otherwise, you could take any agency or department in the

19 government, and without any communication between the Department

20 of Justice and that agency or department, the Department of

21 Justice can unilaterally decide whether or not that agency's

22 normal functions were interfered with.

23    The government hasn't put forth any other case ever, ever.

24 They haven't cited to any other case ever where that proposition

25 would work.  And that's the heart of what's wrong with this

1    whole thing from the beginning.

2         And that is not Mr. Kravis.  The Special Counsel made

3    unilateral determinations about what these agencies --

4              THE COURT:  All right.  Mr. Dubelier, this argument

5    you are making, this isn't the proper vehicle, motion for bill

6    of particulars, to make this argument.

7              MR. DUBELIER:  Well, I think it's relevant, Your

8    Honor, but I understand.  I will sit down.  Thank you.

9              THE COURT:  All right.  Thank you.

10        So I will deny Concord's motion for supplemental bill of

11   particulars for several reasons.  First, Concord's latest motion

12   renews several requests that I previously denied ruling on its

13   first motion for bill of particulars.  Most notably, I denied

14   Concord's earlier request that the government specify which

15   conspirators committed each act alleged in the indictment,

16   including the failure to report expenditures to the FEC and the

17   failure to register with the Department of Justice.

18        As I explained in my earlier ruling, granting this request

19   is unnecessary because the detailed allegations in the

20   indictment, combined with the list of co-conspirators the

21   government plans to introduce at trial and the additional relief

22   the Court ordered in that opinion, provides Concord with more

23   than enough information to conduct its own investigation of the

24   charges against it.  Concord has articulated no sufficient

25   justification here for revisiting that reasoning.

1          Second, Concord's latest motion continues to advance legal

2     or evidentiary arguments that are unrelated to a bill of

3     particulars and that I have either ruled on or will properly

4     address later.  For example, Concord contends that to prevail at

5     trial the government will need to establish a disclosure

6     reporting duty, but my opinion on Concord's motion to dismiss

7     addressed this argument, and the jury instructions will address

8     this argument as well.

9          Concord argues that the government cannot prove that any of

10    the conspirators could have had such a duty, but that argument

11    is evidentiary in nature and not relevant to a bill of

12    particulars.  The viability of Concord's other legal arguments

13    similarly do not depend on a supplemental bill of particulars.

14         Put simply, Concord has what it needs to conduct its

15    investigation, evaluate its legal arguments, and prepare its

16    defense.  On that basis, I will deny motion -- Concord's motion

17    for supplemental bill of particulars.

18         All right.  Let's address scheduling matters.  I've ordered

19    the government to supplement its bill of particulars, if

20    necessary, on or before September 27th.  I will order the

21    government to file a motion to reconsider my ruling on or before

22    this Friday, and I will ask for a response from Concord within

23    seven days.

24         I also may put out an order directing additional briefing.

25    I'm not sure on that.  But -- I intended to discuss some of

1          these other scheduling matters that were raised in the proposed

2          scheduling order of the parties.  But Mr. Kravis, let me ask you

3          a couple of questions related to that proposed order.

4                    MR. KRAVIS:  Yes, Your Honor.

5                    THE COURT:  All right.  Can you give me some sense of

6          what kind of experts the government anticipates calling at

7          trial?  I'm not asking for the specific experts, but who you

8          anticipate needing to have at trial.

9                    MR. KRAVIS:  So as I have discussed with Mr. Dubelier

10         previously, it is -- the government will seek to introduce some

11         evidence of what was happening on the side of the social media

12         companies in terms of how these accounts were established, used,

13         and then eventually identified, and we've provided Mr. Dubelier

14         with discovery on that subject.

15            We are looking at whether we believe that that evidence

16         would be properly presented in the form of expert testimony or

17         simply in the form of a regular, lay, fact witness.  That's the

18         only expert testimony that we are considering.

19                    THE COURT:  So you don't expect to have any experts on

20         election law, as Mr. Dubelier has argued?

21                    MR. KRAVIS:  No, Your Honor.

22                    THE COURT:  All right.  So why -- I'm just curious.

23         Why does the government need until January 15th to give notice

24         of these experts?  If you wait until that, that means I am

25         waiting until March 23rd for any motions to exclude experts to

1    be ripe.

2         Even if I accept the parties' proposal that I start this

3    trial on April 6, the various dates you have all proposed means

4    that I am not ruling at the earliest until late March on all of

5    these significant issues.

6         And it seems to me, in order for the parties to prepare for

7    trial and know what exhibits are coming in and know what

8    testimony is coming in, that it makes sense to bump that

9    forward.  And one thing I considered is moving everything up a

10   month.  I'm not going to do that now given that we have to deal

11   with these other issues right now.

12        But I want to telegraph for you all, what I am envisioning

13   is that I am in a position, if we do set the trial date for --

14   if I set it for April 6, I want a pretrial conference in early

15   March where I'm in a position to rule on most, if not all, of

16   the motions on that date, and that means backing up and making

17   sure these various motions become ripe beginning in early

18   January and into mid-February in order to give me time to rule.

19        So I don't see any reason why motions in limine, for

20   example, can't be staggered.  I mean, there are a number of

21   motions in limine that each side would like to file, I'm sure,

22   that are completely independent of evidence or witness

23   testimony.  There are others that have to come after each side's

24   disclosed the exhibit list.  I understand that.  But it seems to

25   me these can be staggered, and it seems to me that we need to

1    move these up if we will be ready to go on the date of trial and

2    that the parties are ready to go.

3         The same with the SIPA motion and the 404(b) notice.

4    Mr. Kravis, am I correct to assume that any discovery related to

5    those, 404(b) or SIPA, will be disclosed to the defense by this

6    deadline that I have imposed that you all recommended,

7    October 18th, I think?

8              MR. KRAVIS:  Yes, Your Honor.

9              THE COURT:  So everything related to 404(b) and SIPA

10   will be a part of the discovery?  They have been provided, if

11   they haven't already been provided?

12             MR. KRAVIS:  Well, the SIPA motion may concern

13   information that is not provided to the defense.  But to the

14   extent there is any information to be provided, it will be

15   provided by the discovery deadline we set in this order.

16             THE COURT:  All right.  And when you're talking about

17   translations, what are we talking about?  Are we talking about

18   documents?  Are we talking about e-mails?  Is this a lot of

19   slang and idioms?  What are these -- are there going to be a lot

20   of objections?  Are these words that everyone knows what they

21   mean in Russian?  What is your expectation there?

22             MR. KRAVIS:  For most of the government's exhibits, we

23   have already provided our proposed translations.  We think

24   they're fine.  But most of the documents we are talking about

25   are -- most of the things we are talking about for translations

1    are either e-mails or attachments to e-mails.

2         We have not come across anything that we believe will be a

3    contested issue with respect to the translations.  For most of

4    the stuff, most of the exhibits that we intend to use at trial

5    we have already provided the proposed translations to the

6    defense, and we provided them in our discovery.

7              THE COURT:  All right.  I may need to set another

8    status hearing before the end of October, but I have a number of

9    trials coming up.  I definitely want to set a hearing for late

10   October.  I'm curious whether October 24th or October 25th works

11   for the parties at 10:00 a.m.?  I know, Mr. Kravis, you have a

12   trial coming up, but I presume other people can fill in for you.

13             MR. KRAVIS:  Yes, Your Honor, if I could just have one

14   moment.

15             THE COURT:  Yes.

16        (Government counsel conferred.)

17             MR. DUBELIER:  Your Honor, I'm okay with the 25th.

18   The 24th, I have a conflict.

19             THE COURT:  Okay.  So Friday, the 25th, at 10:00 a.m.,

20   would that work for the government?

21             MR. KRAVIS:  Yes, that's fine for the government.

22             MR. DUBELIER:  What is this for, Your Honor?

23             THE COURT:  This is just -- I'm just going to start

24   having monthly statuses.  Maybe I can rule on motions at that --

25   whatever is ripe.  You have a motion to strike surplusage coming

1    in, don't you?  I don't know.  But I want status.

2        I also think at that time I do need to set a date.  And so

3    I can do this one of two ways.  You get my goal here, which is

4    to back things up so that I am in a position to rule and have

5    these motions come in on a staggered basis.  One way to do this

6    is to have the government and the defense turn over exhibits

7    earlier.  Another way to do it is to compress the time that you

8    all have to object to these things.

9        I'm not inclined to set all of this myself and give you all

10   another stab at trying to do that before that October hearing

11   and see if you all can reach agreement and see if it's

12   consistent with what I envision.  But I really don't want to be

13   on the eve of trial making major evidentiary rulings and

14   decisions to exclude or admit testimony.

15           MR. DUBELIER:  Your Honor, if I may, I think one of

16   the problems that Mr. Kravis and I faced -- and this is

17   something I think we will agree about, we floated at the last

18   hearing this April trial date because of comments you had made

19   earlier on the record that seemed to suggest to us --

20           THE COURT:  That's the latest I'm going.

21           MR. DUBELIER:  Well, I think that became the problem,

22   then.  And that is, we put that date out there, and then we went

23   back and tried to work backwards from that.  And I understand

24   that some of this becomes very tight in terms of deadlines.

25       But Your Honor, just as a practical matter, again, and the

1    Court knows this, I don't want to belabor it, it's nobody's

2    fault, but not until a week or two from now will I first be able

3    to sit down with the client and go through documents that are

4    relevant to this.

5            THE COURT:  Understood, Mr. Dubelier, but you have had

6    this discovery now for a long time.  I get that you need to have

7    conversations, but I trust that you have done a lot of hard work

8    on narrowing this stuff down for your client.

9            MR. DUBELIER:  We have, Your Honor, but --

10           THE COURT:  We are not even six months out from trial.

11   We are not talking about an unusually fast trial date.  This is

12   the way trials go.  We are talking about April 6.  That is,

13   what, six, seven months?

14           MR. DUBELIER:  Yep, that's right.

15           THE COURT:  That's a lot of time.  I think that's

16   ample time.  And you have a lot to do.  But you have a lot of

17   motions you want to file, and you are going to be on a tight --

18   I mean, gone are the days of a month for you to file your motion

19   and them a month to respond.  We're now on a trial track, and

20   the latest I'm setting this is early April.

21      If the government needs to disclose its exhibits earlier,

22   the government's going to have to do that.  The government

23   indicted this case.  It's time to move.  And the parties are

24   going to be working hard from now until then, as am I.  But

25   we're not going to just let this case go for another year.  I

1    think if I left it up to you all, I would be trying this case in

2    2021.

3                   MR. DUBELIER:  No, actually, I really strongly

4    disagree with that, Your Honor.  I really do.  I think that

5    Mr. Kravis and I were of the mind that probably June, and then

6    all of these deadlines would work --

7                   THE COURT:  I'm not comfortable --

8                   MR. DUBELIER:  -- not 2021.

9                   THE COURT:  I'm going to be done by June.

10                  MR. DUBELIER:  Let me ask one question with respect to

11   deadlines, Your Honor.  You indicated that if Mr. Kravis wants

12   to ask you to reconsider your order with respect to the motion

13   to dismiss, he's going to do that by --

14                  THE COURT:  This Friday, and you are going to oppose

15   it by next Friday.

16                  MR. DUBELIER:  Your Honor, I'm going to ask you for

17   two weeks on that.

18                  THE COURT:  No.

19                  MR. DUBELIER:  We are entitled to two weeks under the

20   rules, Your Honor.

21                  THE COURT:  This is a simple issue, do I want to

22   reconsider it or not.

23                  MR. DUBELIER:  I take issue with this being a simple

24   issue.

25                  THE COURT:  Well, you can start working on your

1    opposition now.  You know what he's going to say.  I should

2    reconsider it.  You've got two weeks from now.  I'm not -- look,

3    I've been very generous with time and briefing, and you all are

4    going to have to start moving more quickly.

5            MR. DUBELIER:  Your Honor, all I'm asking for is what

6    I am entitled to under the rules.  Congress said if they file a

7    motion, we get 14 days.

8            THE COURT:  All right.  Well, I have the power to

9    expedite things.  All right?  And I think this is a pretty

10   discrete issue, do I or do I not reconsider the ruling that I

11   made with respect to how I interpreted the indictment.

12           MR. DUBELIER:  Are you asking me what do you do?

13           THE COURT:  No.  I'm just saying, I think that that's

14   a discrete issue.  Now you're going to raise a whole bunch of

15   more complicated issues with respect to whether the indictment

16   should be dismissed, and I am giving you three weeks for this.

17       The question teed up is whether or not I should reconsider

18   that decision.  It's very discrete.  It's not tied into all the

19   other complicated legal arguments you want to make that you are

20   going to have 21 days to brief.

21           MR. DUBELIER:  All right, Your Honor.  All I can do is

22   object and ask for the time, and you said no.  So thanks.

23           THE COURT:  All right.  Anything else from the

24   government?

25           MR. KRAVIS:  Nothing further from the government.

1    Thank you, Your Honor.

2              THE COURT:  All right.  Have you all talked about

3    speedy trial?  I don't know whether we have motions pending or

4    not.  I'm not sure we do.  Do both parties agree that I should

5    continue to exclude time under the Speedy Trial Act?

6              MR. DUBELIER:  Yes, Your Honor.  I think we did this,

7    that both parties, assuming that you would select the April 2nd

8    trial date --

9              THE COURT:  Which I haven't done yet.

10             MR. DUBELIER:  I understand, but our assumption was

11   that you would.  I think we waived speedy trial with respect to

12   the time to get to there.

13             THE COURT:  To get to there?  All right.  Since I

14   haven't set that deadline, I just want to confirm on the record

15   that you do waive the time under the Speedy Trial Act.  Both

16   parties consent.  I will waive the time from today through our

17   next status hearing, which is October 25th at 10:00 a.m., in

18   order to give the parties a chance to file the motions that they

19   need to file and defense to meet with the client on discovery.

20   I do find it is in the interest of justice to exclude this time.

21        Anything else?

22             MR. DUBELIER:  No, Your Honor.

23             THE COURT:  Okay.  Thank you.

24        (Proceedings adjourned at 11:24 a.m.)

25

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3         I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7

 8

 9    /s/ Sara A. Wick                  September 17, 2019

10    SIGNATURE OF COURT REPORTER        DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```