**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION TO STRIKE SURPLUSAGE PURSUANT TO RULE 7(d)**

Pursuant to Federal Rule of Criminal Procedure 7(d), Defendant Concord Management and Consulting LLC ("Concord" or "Defendant"), through counsel, respectfully moves to strike unnecessary surplusage in the Indictment. In support of its Motion, Concord states as follows:

**I.      INTRODUCTION**

The Indictment in this case contains many allegations that are inflammatory and do not relate to any alleged fraud against the United States. Even if the government's theory of liability is sound, which it is not, much of what is alleged was not unlawful, and will only serve to prejudice the jury in favor of the government and against Concord. As such, the portions of the Indictment discussed below should be stricken.

**II.     LAW & ARGUMENT**

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). "Such motions are permitted under [Rule 7(d)] . . . 'if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial.'" *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (quoting 1 Wright & Miller, *Federal Practice & Procedure* § 127 (1982)). In defining

"surplusage," courts have recognized that "[t]he language of an indictment that goes beyond alleging the elements of the statute is mere surplusage which need not be proven." *United States v. Jordan*, 626 F.2d 928, 931 (D.C. Cir. 1980); *see also United States v. Apodaca*, 275 F. Supp. 3d 123, 156 (D.D.C. 2017) ("Consequently, words used to describe essential facts relevant to the offense are not surplusage subject to being stricken."). The purpose of Rule 7(d) is to "protect[] the defendant against immaterial or irrelevant allegations in an indictment . . . which may, however, be prejudicial." Fed. R. Crim. P. 7, 1944 Advisory Committee Note.

All Rule 7(d) requires, therefore, is that the Indictment allege the elements of the § 371 defraud clause conspiracy charge alleged against Concord, which prohibits two or more persons from "conspir[ing] . . . to defraud the United States." 18 U.S.C. § 371. Under the government's theory, Concord violated § 371 by engaging in a so-called *Klein* conspiracy, which criminalizes conspiracies that "interfere with or obstruct one of [the government's] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *United States v. Klein*, 247 F.2d 908, 916 (2d Cir. 1957) (internal quotation marks omitted). Where—as here—"it is the practice of this Court to provide a copy of the indictment to the jury, inflammatory statements in the indictment that are not essential to allegations respecting the crimes charged may prejudice the defendant and should be stricken." *United States v. Hsia*, 24 F. Supp. 2d 14, 24 (D.D.C. 1998).[1]

When viewed in light of these minimal requirements, much of the Indictment here is pure hyperbole, as illustrated by its use of language that lists many alleged acts that are both lawful and

---

[1] Concord assumes that the Court will order the government to redact Counts 2 through 8 from the copy of the indictment provided to the jury since Concord is not charged in those counts.

irrelevant to whether or not Concord is guilty of the charged conspiracy.  Concord seeks to strike this as prejudicial surplusage, as discussed below.[2]

### A. All references to the political and electoral processes that are broader than the 2016 presidential election

The Indictment is replete with inflammatory and hyperbolic references to how the purpose of the alleged conspiracy was to "interfer[e] with the U.S. political and electoral processes." *See, e.g.,* Indictment ¶¶ 1-4, 6, 7, 10, 14, 22, 28.  This language appears to be aimed at inflaming the jury's sentiments by suggesting that the alleged conspiracy involves some broader effort to undermine the United States political system writ large—even though the specifics of the § 371 charge are aimed only at the 2016 presidential election.  Such references will prejudice Concord by making the jurors believe that a guilty verdict will serve a broader purpose than merely convicting for the alleged § 371 conspiracy—they will be saving U.S. democracy.  That is not the job of the courts or the criminal justice system.  *See United States v. Rainey*, 946 F. Supp. 2d 518, 545 (E.D. La. 2013) (in prosecution involving a narrow question related to the *Deepwater Horizon* oil spill, court struck indictment language invoking the spill as a whole and referencing the number of individuals killed in the explosion, because the defendant was "not alleged in this case to have any responsibility for the blow out, the velocity or volume of the oil spill, or the fact that oil continued to discharge for three months"), *rev'd on other grounds*, 757 F.3d 234 (5th Cir. 2014). Similarly, this Court has previously stricken language from an indictment as irrelevant and

---

[2] In the event the Court declines to strike the prejudicial surplusage identified in Concord's Motion to Strike, Concord would respectfully request that, in the alternative, the Court decline to provide the jury with a copy of the Indictment during their deliberations. *See United States v. Roy*, 473 F.3d 1232, 1237 n.2 (D.C. Cir. 2007) ("[W]hether to permit the jury to have the indictment during deliberations is [a] decision committed to the [trial] court's discretion.") (quoting *Dallago v. United States*, 427 F.2d 546, 553 (D.C.Cir.1969)); *see also Apodaca*, 275 F. Supp. 3d at 157 n.21 (D.D.C. 2017) ("This Judge's practice is not to provide a stand-alone copy of the indictment to the jury during deliberations . . . .") (Howell, C.J.).

prejudicial where such language referenced a foreign country's bad acts that were not directly at issue in the case. *See United States v. Quinn*, 401 F. Supp. 2d 80, 98-99 (D.D.C. 2005) (recognizing that jurors reading an indictment "would give improper weight to its references to [Iran's support for international] terrorism" and striking that language from the indictment).

Moreover, the language is irrelevant to the conduct charged in the Indictment. *See, e.g. Hsia*, 24 F. Supp. 2d at 27 (recognizing that "[i]t is inappropriate to use potentially inflammatory language in an indictment when not absolutely necessary," and granting in part motion to strike surplusage related to "phrases [that were] unnecessarily inflammatory and their omission would not essentially alter the substance of the indictment"). The allegations contained in the Indictment are limited to the 2016 presidential election and the government has made no effort to allege facts to suggest the alleged conspiracy was aimed more broadly at "electoral processes" or the entire United States political system. In fact, upon questioning from the Court the government conceded that allegations against Concord are not broad enough to encompass subsequent conduct. *See* July 17, 2019 Hr'g Tr. at 31:5-32:4, 53:21-24. Given this concession, any references to the U.S. political system or to the political processes in the United States, *see* Indictment at ¶¶ 1-4, 6, 10, 14, 22, 28, do not "essentially alter the substance of the [I]ndictment," which relates only to the 2016 presidential election, and thus should be stricken. *Hsia*, 24 F. Supp. 2d at 27.

      **B.**      **References to other crimes**

The Indictment references acts of concealment such as the "Destruction of Evidence" (Indictment at ¶ 58) and the use of "stolen" identities or "false" personas throughout (*id.* at ¶¶ 4, 40, 41, 45, 48, 52, 54-56, 57, 61, 62, 67-70, 72-81, 84). Such references should be stricken because of the risk of confusing the jury by suggesting that the alleged conspiracy involving Concord included the crimes of obstruction of justice and identity theft. This Court has stricken language from an indictment where such language "may lead the jury to infer accusations of crimes beyond

4

those actually charged." *United States v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979). The language at issue here goes beyond mere inference—the Indictment contains explicit allegations related to the "Destruction of Evidence" and the use of a "stolen identity," both of which are separate crimes. *See* 18 U.S.C. § 1510 (related to obstruction of a criminal investigation); 18 U.S.C. § 1028 (related to identity theft). Yet, because the Indictment **does not** allege either crime against Concord, any references that could give rise to an inference of other criminal activity are highly prejudicial.

As it relates to identity theft, the language in Count One referencing "stolen identities" threatens to prejudice Concord by confusing the jury. Specifically, other defendants, in Counts Three through Eight, are charged with aggravated identity theft. Concord is not. By peppering such language in with the § 371 charge, the government has virtually guaranteed that the jury will improperly consider the identity theft language as part of the conspiracy.

Moreover, as it relates to the destruction of evidence, the Indictment makes clear that any such activity was allegedly undertaken in 2017, and **after** the appointment of the Special Counsel and social media companies' disclosures. *See* Indictment ¶ 58 (alleging a 2017 email referring to "covering tracks" after explicitly noting that the media was already reporting that social media companies were working with the Special Counsel on the Russian government's efforts to interfere in the 2016 presidential election). This distinction is important because the destruction was not alleged to be a part of the overt acts of the conspiratorial agreement. *See Hsia*, 24 F. Supp. 2d at 26 (recognizing that "[i]f the alleged acts of concealment and cover-up were taken after the original conspiracy was completed or in furtherance of a subsequent and separate conspiratorial agreement . . . the acts are neither overt acts in furtherance of the alleged conspiracy charged in the indictment nor the manner and means of committing the alleged conspiracy"). Here, the Indictment obliquely

indicates that the destruction of evidence was designed to avoid detection and impede investigation of "Defendants' operations," but the only allegation is a reference to an email alleged to have been dated September 2017. Ind. ¶ 58(d). At most, this appears to be a separate course of conduct from the actual defraud clause conspiracy charged, and any reference to these efforts in the Indictment is unnecessary and prejudicial.

### C. References to specific 2016 presidential candidates and political groups

The government also attempts to politicize these proceedings by making repeated references to then-candidates Donald Trump and Hillary Clinton, *see* Indictment at ¶¶ 43-45, 46-48, as well as to contentious political issues, such as immigration, the Black Lives Matter movement, religion, politically-charged regions within the United States, and references to U.S. political parties. *Id.* at ¶¶ 34, 36.[3] As with the Indictment's references to the U.S. political system, these references are irrelevant to whether Concord and its co-defendants engaged in a § 371 defraud clause conspiracy, but more importantly, they raise a "hot topic" about which people—including jurors—have strong opinions. *See United States v. Singhal*, 876 F. Supp. 2d 82, 103 (D.D.C. 2012) (striking references to the "hot topic" of insider trading from indictment where defendant was not charged with that crime); *United States v. Awadallah*, 202 F. Supp. 2d 17, 54 (S.D.N.Y. 2002) (striking references in indictment indicating that the defendant possessed pictures

---

[3] The fact that the Indictment identifies statements of both prohibited express advocacy, *see* Indictment at ¶ 50 ("Vote Republican, vote Trump . . ."), and permitted issue advocacy, *id.* at ¶ 47 ("Hillary Clinton has already committed voter fraud during the Democrat Iowa Caucus") further demonstrates how the Indictment lacks clarity about what lawful functions of the Federal Election Commission were allegedly impaired as a result of Concord's alleged conduct. Given this imprecision and the jury confusion that could result from it, this Court should strike all such references. *See* Fed. R. Crim. P. 7(c)(1) (requiring that a criminal indictment "be a plain, concise, and definite written statement of the *essential* facts constituting the offense charged" (emphasis added)). The government has, in less inflammatory terms, alleged the violations related to the FEC. *See, e.g.,* Indictment at ¶ 48.

6

of Osama bin Laden, recognizing that "[i]t is beyond cavil that this material is highly inflammatory when our country is currently engaged in a war against terrorism in Afghanistan, a prime purpose of which is to arrest Osama bin Laden").

Moreover, such allegations will only serve to inflame the jury's partisan interests, particularly since they suggest that Defendants sought to help then-candidate Donald Trump (and, by extension, the Republican Party).  The jury here will be selected from a geographic area that is overwhelmingly Democratic and supported Hillary Clinton in the 2016 presidential election.  *See* https://www.nytimes.com/elections/2016/results/district-of-columbia (reflecting that 90.9% of voters in the District of Columbia voted for Hillary Clinton, while only 4.1% of voters voted for Donald Trump).  *See United States v. Wilson*, 565 F. Supp. 1416, 1439-40 (S.D.N.Y. 1983) (excluding excessive inflammatory detail in an indictment related to other charges pending against the defendant).  As if to increase the odds of inflaming the jury, the Indictment appears to focus on statements that are untruthful about certain candidates or groups.  *See, e.g.,* Indictment ¶¶ 46-47 (listing statements potentially advocating for Donald Trump and Jill Stein, and against Hillary Clinton).  But these false statements are of no moment to whether Concord engaged in illegal conduct—indeed, people lawfully lie on the internet every day.  These statements do nothing more than inflame those who may have supported Hillary Clinton.

Given this, the result of including these statements in the Indictment will be that jurors (who are likely to be Democrats opposed to President Trump and anyone—including Concord—who may have allegedly helped him to be elected) will be more likely to convict Concord on the basis of that opposition, rather than the facts adduced in evidence.  This is exactly the type of prejudicial surplusage Rule 7(d) aims to exclude.

### D.     Suggestions that Concord is connected to the Russian government

In the Indictment the government attempts to draw connections between Concord and the Russian government without ever actually making the allegation. *See* ¶ 11 (alleging that Concord and Concord Catering "are related Russian entities with various Russian government contracts"); ¶¶ 30-31 (suggesting that the co-conspirators engaged in "Intelligence-Gathering" and referencing efforts to "collect intelligence"). These efforts are designed to portray Concord in a negative light by trying to connect it to alleged conduct by the Russian government regarding the 2016 election that is not relevant to the instant Indictment. In fact, the Court has already found that the Indictment contains no such allegation. *See* May 28, 2019 Tr. at 4:10-13 ("Concord is correct that the indictment does not allege that the Russian government sponsored the activities charged in the indictment.").

Such language is particularly inflammatory when viewed in the context of this case, where other highly-publicized (and inaccurate) statements have similarly tried to draw a connection between Concord's alleged activities and the Russian government. *See* Concord Motion for Order to Show Cause, ECF No. 129, at 2-7 (listing repeated statements by Attorney General William Barr, the Mueller Report, and other media outlets purporting to connect the Russian government to alleged interference in the 2016 presidential election). Despite this Court's explicit finding that the Indictment does not allege that the Russian government was involved with the election interference, (*See* Mem. Op. at 6, July 1, 2017, ECF No. 148), the language that is in the Indictment, combined with the public's general knowledge of the Russian investigation and Mueller Report, is likely to create the inference that Concord is connected with the Russian government. Like the other language described above (related to broad efforts to undermine the U.S. political system and the references to controversial political issues), the efforts to connect Concord and the Russian government are inflammatory because they prey on jurors' sense of

patriotism and national pride, and will encourage a conviction on a basis that is unrelated to whether Concord (as part of the alleged conspiracy) violated § 371.

Courts have struck paragraphs from indictments that, like those here, discuss irrelevant and potentially prejudicial issues. *See United States v. Groos*, 616 F. Supp. 2d 777, 790 (N.D. Ill. 2008) (striking paragraphs that described a "political climate" between the United States and the United Arab Emirates that raised concerns about national security); *Quinn*, 401 F. Supp. 2d 98-99 (striking references to Iran's support for international terrorism). Here, as in *Groos*, Concord will be prejudiced by the false impression created by these allegations that it is somehow connected to the Russian government, even though it is not. Similarly, in *United States v. Weinberger*, No. 92-235, 1992 WL 294877, at *7 (D.D.C. Sept. 29, 1992), this Court expressed concern about permitting language in an indictment that "could create an atmosphere in the courtroom that suggests a larger conspiracy, rather than the discrete charges alleged against th[e] defendant." *Id.* (withholding judgment on the motion to strike). Put simply, these efforts to draw a connection between Concord and a historical geopolitical adversary of the United States are designed to prejudice Concord and paint it in a negative light by insinuating that it is involved in a larger conspiracy involving foreign governments—in stark contrast to what is actually charged.

### E.     References to issue advocacy

Lumped in among the other allegations of purported illegal conduct in the Indictment are several references to activity that amounts to issue advocacy—as opposed to potentially prohibited express advocacy—by foreign nationals. *See, e.g.,* Indictment at ¶¶ 34 (discussing thematic group pages on social media unrelated to specific candidates), 50 (outlining several advertisements that do not constitute express advocacy). This distinction is important because the paragraphs at issue largely discuss legal conduct. *See generally* Concord Motion for Supplemental Bill of Particulars at 9-11; *see also Bluman v. F.E.C.*, 800 F. Supp. 2d 281, 284 (D.D.C. 2011) (distinguishing

9

between prohibited expenditures that expressly advocate the election or defeat of a specific candidate and permitted expenditures by foreign nationals for issue advocacy). This Court has rejected language that could potentially confuse jurors about what is actually charged in the indictment, particularly where the government lumps legal and illegal conduct together without distinction. *See Hubbard*, 474 F. Supp. at 83 ("First, the Court finds that the inclusion of legal means in a list entitled 'illegal means' is prejudicial and irrelevant and should be stricken.").

Like in *Hubbard*, the allegations in ¶ 34 relate only to "thematic group pages" that do not constitute express advocacy. *See* 52 U.S.C. § 30101(17) (defining independent expenditures as those expressly advocating the election or defeat of a clearly identified candidate). Similarly, many of the advertisements listed in ¶ 50 are not express advocacy and as such are not independent expenditures. For example, the advertisements alleged to have been posted on April 19, 2016, June 7, 2016, July 20, 2016, and August 10, 2016 are not express advocacy because they contain no reference to an election or voting. By lumping legal and illegal conduct together, the government again raises the risk of prejudice by potentially confusing the jury about what Concord is actually charged with. *See Hubbard*, 474 F. Supp. at 82.

### F.     Trial demonstrative exhibits

Paragraph 50 of the Indictment essentially contains a trial demonstrative exhibit that should be stricken. Including such evidence in the Indictment (which Concord anticipates will be given to the jury while it deliberates) essentially allows the government to circumvent the rules of evidence and to put evidence before the jury that may or may not ever be admitted at trial. *See United States v. Smallwood*, No. 9-cr-249, 2011 WL 2784434, at *10 (N.D. Tex. July 15, 2011) (discussing the inclusion of "evidentiary allegations" in an indictment, and recognizing that "[t]he court can treat as surplusage 'the allegation of additional facts beyond those which comprise the elements of the crime'") (quoting *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010)).

Moreover, to the extent that evidence of the advertisements compiled in the chart are admitted as evidence at trial, the statements in the Indictment are redundant and should be excluded.  *See Singhal*, 876 F. Supp. 2d at 102 ("'Surplusage' is defined as 'redundant words in a statute or legal instrument' . . . " (quoting *Black's Law Dictionary* 1581 (9th ed. 2009))); *see also United States v. Hughes*, 766 F.2d 875, 879 (5th Cir. 1985) ("The charge in the indictment that Hughes knew his income asserted a fact that was not one of the elements of the offense.  As such it was redundant, and properly characterized as mere surplusage.").

### III.   CONCLUSION

Wherefore the Defendant respectfully requests that the portions of the indictment set forth above be stricken.

 Dated:   October 1, 2019                                    Respectfully submitted,

                                          CONCORD MANAGEMENT AND
                                          CONSULTING LLC

                                          By Counsel

                                          /s/ *Eric A. Dubelier*
                                          Eric A. Dubelier (D.C. Bar No. 419412)
                                          Katherine Seikaly (D.C. Bar No. 498641)
                                          Reed Smith LLP
                                          1301 K Street, N.W.
                                          Suite 1000 – East Tower
                                          Washington, D.C. 20005
                                          202-414-9200 (phone)
                                          202-414-9299 (fax)
                                          edubelier@reedsmith.com
                                          kseikaly@reedsmith.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CONCORD MANAGEMENT AND CONSULTING LLC <br><br> Defendant. | CRIMINAL NUMBER: <br><br> 1:18-cr-00032-2-DLF |

**PROPOSED ORDER**

With the Court having considered Defendant Concord Management and Consulting LLC's Motion to Strike Surplusage Pursuant to Rule 7(d), it is hereby

**ORDERED** that the motion is **GRANTED**, and the portions of the Indictment referred to in this Motion are stricken.


Date: _____       _____
                                                                                          DABNEY L. FRIEDRICH
                                                                                          United States District Judge