Exhibit 14 to Memorandum and Points of Authorities in Support of Defendant Concord Management and Consulting LLC's Renewed Motion to Dismiss the Indictment, 18-cr-32-DLF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Holding a Criminal Term
Grand Jury Sworn in on November 1, 2013

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | |
| v. | : | MAGISTRATE NO.: 13-mj-806 |
| | : | |
| KITIBORDEE YINDEEAR-ROM, | : | VIOLATIONS: |
| | : | 18 U.S.C. § 371 |
| and | : | (Conspiracy) |
| | : | |
| PHEERAYUTH BURDEN, | : | 22 U.S.C. § 2778 |
| | : | (Arms Export Control Act) |
| Defendants. | : | |
| | : | 22 C.F.R. Parts 120-130 |
| | : | (International Traffic in Arms |
| | : | Regulations) |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

At all times material to this Indictment:

1. Defendant KITIBORDEE YINDEEAR-ROM ("YINDEEAR-ROM") was a citizen of Thailand, residing in Thailand.

2. Defendant PHEERAYUTH BURDEN ("BURDEN") was a citizen of Thailand, residing in California.

### The Arms Export Control Act

3. The Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorized the President of the United States to control the export of "defense articles" by designating items on the United States Munitions List ("Munitions List"), which is codified at 22 C.F.R. Part 121.

4. The AECA and its attendant regulations, the International Traffic in Arms Regulations

("ITAR"), 22 C.F.R. Parts 120-130, required a person to apply for and obtain an export license from the United States Department of State, Directorate of Defense Trade Controls ("DDTC"), located in the District of Columbia, before exporting from the United States arms, ammunition, or articles of war, which were all categorized as defense articles under 22 U.S.C. §§ 2778(b)(2) and 2794(3), and 22 C.F.R. Parts 120.1 and 121.1. In the application for an export license, the exporter was required to state, among other things, the nature of the defense articles to be exported, the end recipient of the defense articles, and the purpose for which the defense articles were intended.

5. The defense articles which were subject to such licensing requirements were designated on the Munitions List. Those designations were made by the State Department with the concurrence of the Defense Department under 22 U.S.C. § 2778(a)(1) and 22 C.F.R. Part 120.2.

6. Category I of the Munitions List included firearms, as well as firearms components, parts, and accessories.

7. The AECA and ITAR were in effect at all times relevant to this Indictment.

8. At no time did YINDEEAR-ROM, BURDEN, and their co-conspirators apply for, receive, or possess, or cause others to apply for, receive, or possess a license from the DDTC, located within the District of Columbia, to export firearms components, parts, and accessories from the United States to Thailand. Nor at any time did YINDEEAR-ROM, BURDEN, and their co-conspirators register as defense article exporters or brokers.

## The Conspiracy

9. Beginning at least in or about July 2010 and continuing through in or about October

2013, YINDEEAR-ROM, BURDEN, and co-conspirators known and unknown to the Grand Jury willfully combined, conspired, confederated, and agreed with each other and with others known and unknown to the Grand Jury: (1) to violate AECA by exporting and attempting to export defense articles on the Munitions List, that is U.S.-origin firearms parts and accessories, without first obtaining licenses from the DDTC, located in the District of Columbia; and (2) to defraud the United States by impeding, impairing, obstructing, and defeating the lawful function of the United States in administering its export laws by attempting to export defense articles on the Munitions List from the United States by deceit, craft, trickery, and dishonest means.

### Objects of the Conspiracy

10. The objects of the conspiracy were:

    a. to make money for YINDEEAR-ROM, BURDEN, and their co-conspirators;

    b. to supply YINDEEAR-ROM, his customers, and other co-conspirators in Thailand with U.S.-origin defense articles on the Munitions List;

    c. to evade the prohibitions and licensing requirements of AECA and the ITAR; and

    d. to conceal the prohibited transactions from detection by the United States government so as to avoid penalties and disruption of the illegal activity.

### Manner and Means of the Conspiracy

11. The conspirators would and did use the following manner and means, among others, to accomplish the objects of the conspiracy:

    a. YINDEEAR-ROM was contacted by customers to help procure U.S.-origin goods for shipment to Thailand, and those goods included firearms parts and accessories

3

categorized as defense articles on the Munitions List;

      b.  YINDEEAR-ROM sent requests for purchases of those U.S.-origin defense articles to companies located in the United States on behalf of those customers;

      c.  YINDEEAR-ROM purchased those U.S.-origin defense articles from companies located in the United States;

      d.  YINDEEAR-ROM requested the purchased U.S.-origin defense articles be shipped, among other places, to BURDEN's place of business in California for reshipment to Thailand;

      e.  BURDEN allowed YINDEEAR-ROM to direct that the purchased U.S.-origin defense articles be shipped to BURDEN's place of business in California;

      f.  BURDEN received the purchased U.S.-origin defense articles at his place of business in California, and re-packaged the items for reshipment to, among other places, YINDEEAR-ROM in Thailand;

      g.  BURDEN caused shipments of the U.S.-origin defense articles to be made from the United States to Thailand, at the direction of YINDEEAR-ROM;

      h.  At times, YINDEEAR-ROM informed his customers to directly purchase the requested firearms parts and accessories, categorized as defense articles on the Munitions List, from companies located in the United States, and direct the parts and accessories be shipped to BURDEN's place of business in California for reshipping to YINDEEAR-ROM in Thailand;

      i.  BURDEN also would purchase the requested firearms parts and accessories, categorized as defense articles on the Munitions List, from companies located in the United States on behalf of YINDEEAR-ROM's customers, and direct the parts and accessories be shipped to

4

BURDEN's place of business in California for reshipping to YINDEEAR-ROM in Thailand.

j. BURDEN, YINDEEAR-ROM, YINDEEAR-ROM's customers and other co-conspirators used e-mail accounts and other forms of communication to communicate with each other regarding the U.S.-origin defense articles which would be purchased, sent to BURDEN and reshipped to Thailand;

k. BURDEN submitted false declarations on the shipping labels associated with the packages, containing the U.S.-origin defense articles shipped to YINDEEAR-ROM in Thailand, to avoid detection by the United States government;

l. YINDEEAR-ROM and BURDEN intentionally concealed from companies located in the United States the ultimate destination of the purchased U.S.-origin defense articles;

m. YINDEEAR-ROM would coordinate the distribution of the U.S.-origin defense articles to his customers in Thailand once those articles arrived;

n. YINDEEAR-ROM received money from customers for the purchase of the U.S.-origin defense articles, for the costs associated with shipping the U.S.-origin defense articles to Thailand, and a fee for YINDEEAR-ROM's own benefit;

o. BURDEN received money from YINDEEAR-ROM for the purchase of U.S.-origin defense articles, for the costs associated with shipping the U.S.-origin defense articles to Thailand, and a fee for BURDEN's own benefit; and

p. YINDEEAR-ROM and BURDEN caused and attempted to cause U.S.-origin defense articles on the Munitions List to be exported from the United States to individuals in Thailand without obtaining a license from the DDTC, located in the District of Columbia.

5

### Overt Acts

12. In furtherance of this conspiracy, YINDEEAR-ROM, BURDEN, and other co-conspirators committed overt acts, including but not limited to the following:

    a. On or about July 25, 2011, YINDEEAR-ROM sent an e-mail containing an attached invoice indicating that multiple U.S.-origin firearms parts were being billed to BURDEN, using a credit card in BURDEN's name, and shipped to BURDEN's place of business in California. The firearms parts included two AR-15 Upper Receivers, which were on the Munitions List, Category I(g), and an AR-15 Gas Tube and a Low Profile Gas Block, which were on the Munitions List, Category I(h).

### Absence of a License

13. YINDEEAR-ROM, BURDEN and other co-conspirators failed to apply for, receive, or possess, or caused others to fail to apply for, receive, or possess a license from the DDTC, located in the District of Columbia, to export defense articles from the United States to Thailand, nor are YINDEEAR-ROM, BURDEN and other co-conspirators registered as defense article exporters or brokers.

**(Conspiracy (1) to Violate the Arms Export Control Act and the International Traffic in Arms Regulations; and (2) to Defraud the United States**, in violation of Title 18, United States Code, Section 371; Title 22, United States Code, Section 2778(b)(2); Title 22, Code of Federal Regulations, Parts 120-130)

A TRUE BILL:

FOREPERSON.

*[signature]*

Attorney of the United States in
and for the District of Columbia.