Exhibit 19 to Memorandum and Points of
Authorities in Support of Defendant
Concord Management and Consulting
LLC's Renewed Motion to Dismiss the
Indictment, 18-cr-32-DLF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 3, 2016**

# SEALED

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | |
| | : | **VIOLATIONS:** |
| **KASSIM TAJIDEEN,** | : | |
| **also known as** | : | **18 U.S.C. § 371** |
| **HAJ KASSIM, BIG HAJ, BIG BOSS,** | : | **(Conspiracy)** |
| **QASIM TAJIDEEN, QASSIM TAJIDEEN,** | : | |
| **KASSEM TAJIDEEN, KASSIM TAJ ALDINE,** | : | **50 U.S.C. § 1705(a)** |
| **KASSIM TAJ ALDIN, KASSIM TAJ AL-DIN,** | : | **(International Emergency** |
| **KASSIM TAJ AL-DINE, and** | : | **Economic Powers Act)** |
| **KASSIM TAJADIN,** | : | |
| | : | **31 C.F.R. § 594** |
| **and** | : | **(Global Terrorism Sanctions** |
| | : | **Regulations)** |
| **IMAD HASSOUN,** | : | |
| **also known as** | : | **18 U.S.C. § 2** |
| **IMMAD HASSOUN,** | : | **(Aiding and Abetting and** |
| | : | **Causing an Act to Be Done)** |
| | : | |
| | : | **18 U.S.C. § 1956(h)** |
| | : | **(Conspiracy to Launder Monetary** |
| | : | **Instruments)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)** |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

Case: 1:17-cr-00046
Assigned To : Walton, Reggie B.
Assign. Date : 3/7/2017
Description: INDICTMENT (B)
Case Related to: 16-cv-64 (RBW)

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE

**(Conspiracy to Violate IEEPA and GTSR)**

[FILED IN OPEN COURT]

MAR **7** 2017

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

At all times relevant to the Indictment:

## INTRODUCTION

1.     Hizballah was designated as a Foreign Terrorist Organization by the United States Department of State ("DOS") on October 8, 1997. According to DOS, Hizballah's terrorist attacks have included the suicide truck bombings of the U.S. Embassy and U.S. Marine barracks in Beirut in 1983; the U.S. Embassy annex in Beirut in 1984; and the 1985 hijacking of TWA flight 847, during which a U.S. Navy diver was murdered. Elements of the group were responsible for the kidnapping, detention, and murder of Americans and other Westerners in Lebanon in the 1980s. Hizballah was implicated, along with Iran, in the 1992 attacks on the Israeli Embassy in Argentina and on the 1994 bombing of the Argentine-Israeli Mutual Association in Buenos Aires. In 2000, Hizballah operatives captured three Israeli soldiers in the Shebaa Farms area and, separately, kidnapped an Israeli non-combatant in Dubai. In 2012, Hizballah stepped up the pace of its terrorist plotting, and according to the DOS, has since been implicated in several terrorist plots around the world.

## THE DEFENDANTS

2.     At all times since May 27, 2009 to the date of this Indictment, KASSIM TAJIDEEN, a defendant herein, has been publicly designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") as a Specially Designated Global Terrorist ("SDGT"). According to the OFAC designation, KASSIM TAJIDEEN is an important financial contributor to Hizballah who operates a network of businesses in Lebanon and Africa, and who has contributed tens of millions of dollars to Hizballah. This designation by OFAC prohibits U.S. persons from participating in transactions with, or for the benefit of, KASSIM TAJIDEEN without receiving a license from OFAC.

2

3.     At all relevant times during the conspiracy, defendant KASSIM TAJIDEEN
owned, controlled, and benefited from Epsilon Trading FZE ("Epsilon") and International Cross
Trade Company ("ICTC"), but purposefully concealed his association with these entities from
vendors and banks in the United States.

4.     At all relevant times during the conspiracy, defendant IMAD HASSOUN was
employed by defendant KASSIM TAJIDEEN and helped operate Epsilon and ICTC.

## U.S. COMPANIES

5.     At all relevant times during the conspiracy, a U.S. person known herein as U.S.
Company A, was a seller of food commodities based in the Northern District of Georgia.

6.     At all relevant times during the conspiracy, a U.S. person known herein as U.S.
Company B, was a seller of food commodities based in the District of Massachusetts.

7.     At all relevant times during the conspiracy, a U.S. person known herein as U.S.
Company C, was a seller of security equipment having a physical presence in the Central District
of California.

## THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT

8.     The International Emergency Economic Powers Act ("IEEPA"), Title 50, United
States Code, Sections 1701 to 1706, grants authority to the President of the United States to "deal
with any unusual and extraordinary threat, which has its source in whole or substantial part
outside the United States, if the President declares a national emergency with respect to such
threat." Title 50, United States Code, Section 1701(a).

9.     Pursuant to IEEPA, the President of the United States is authorized, among other
things, to "investigate, regulate, or prohibit – (i) any transactions in foreign exchange, (ii)
transfers of credit or payments between, by, through, or to any banking institution, to the extent

3

that such transfers or payments involve any interest of a foreign country or national thereof [and] (iii) the importing or exporting of currency or securities." Title 50, United States Code, Section 1701(a)(1)(A).

10. Also pursuant to IEEPA, the President has the authority to "block... any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, any acquisition, holding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person..." Title 50, United States Code, Section 1702(a)(1)(B)

11. Section 1705 of IEEPA states, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title." Title 50, United States Code, Section 1705(a).

12. The term "United States Person" or "U.S. Person" means the following: U.S. Citizens and U.S. Permanent Residents regardless of where they live; all persons or entities within the United States; and all entities incorporated in the United States, including any foreign branches or subsidiaries that are owned or controlled by U.S. entities.

13. On September 23, 2001, pursuant to IEEPA and other statutes, the President of the United States issued Executive Order 13224, entitled, "Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism," declaring a national emergency with respect to the threat to the national security, foreign policy, and economy of the United States posed by grave acts of terrorism and threats of terrorism committed

4

by foreign terrorists, including the September 11, 2001, attacks in New York, Pennsylvania, and Virginia, and the continuing and immediate threat of further attacks on U.S. nationals or the United States.

14. Executive Order 13224, Section 1, states, among other things, "Except to the extent ... provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order, all property and interests in property of the following persons that are in the United States or that hereafter come within the United States, or that hereafter come within the possession or control of United States persons are blocked:

(a) foreign persons listed in the Annex to this order;

(b) foreign persons determined by the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States;

(c) persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General, to be owned or controlled by, or to act for or on behalf of those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order;

(d) except as provided in section 5 of this order and after such consultation, if any, with foreign authorities as the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, deems appropriate in the exercise of his discretion, persons determined by the Secretary of the Treasury, in consultation with the Secretary of State and the Attorney General;

5

(i) to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, such acts of terrorism or those persons listed in the Annex to this order or determined to be subject to this order; or

(ii) to be otherwise associated with those persons listed in the Annex to this order or those persons determined to be subject to subsection 1(b), 1(c), or 1(d)(i) of this order."

15. Executive Order 13224, Section 2, further states, among other things, "Except to the extent ... provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date:

(a) any transaction or dealing by United States persons or within the United States in property or interests in property blocked pursuant to this order is prohibited, including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of those persons listed in the Annex to this order or determined to be subject to this order;

(b) any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in this order is prohibited; and

(c) any conspiracy formed to violate any of the prohibitions set forth in this order is prohibited."

6

## GLOBAL TERRORISM SANCTIONS REGULATIONS

16.     Pursuant to IEEPA and Executive Order 13224, the Department of the Treasury, Office of Foreign Assets Control ("OFAC") subsequently promulgated the Global Terrorism Sanctions Regulations ("GTSR"), Title 31, Code of Federal Regulations, Part 594. Among other things, the GTSR provides,

> a. "Except as authorized by statutes, regulations, orders, directives, rulings, instructions, licenses or otherwise ... property and interests in property of the following persons [including SDGTs] that are in the United States, that hereafter come within the United States, or that hereafter come within the possession or control of U.S. persons, including their overseas branches, are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in..." Title 31, Code of Federal Regulations, Part 594.201(a)

> b. "Except as otherwise authorized, no U.S. person may engage in any transaction or dealing in property or interests in property of persons whose property or interests in property are blocked pursuant to § 594.201(a), including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of persons whose property or interests in property are blocked pursuant to § 594.201(a)." Title 31, Code of Federal Regulations, Part 594.204.

> c. "Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any transaction by any U.S. person or within the United States on or after the effective date that evades or avoids, has the purpose of evading or avoiding,

7

or attempts to violate any of the prohibitions set forth in this part is prohibited." Title 31, Code of Federal Regulations, Part 594.205(a).

d. Except as otherwise authorized, and notwithstanding any contract entered into or any license or permit granted prior to the effective date, any conspiracy formed for the purpose of engaging in a transaction prohibited by this part is prohibited." Title 31, Code of Federal Regulations, Part 594.205(b).

17. On May 27, 2009, KASSIM TAJIDEEN was designated an SDGT by the U.S. Department of the Treasury pursuant to IEEPA, Executive Order 13224, as well as the GTSR.

## THE CONSPIRACY

18. Beginning as early as on or about May 27, 2009, the exact date being unknown to the Grand Jury, and continuing through approximately the date of this Indictment, the defendants KASSIM TAJIDEEN and IMAD HASSOUN, did willfully combine, conspire, and agree with others known and unknown to the Grand Jury,

(a) to commit an offense against the United States, that is, to conduct transactions and cause U.S. persons to conduct transactions with an SDGT, without having first obtained the required licenses from OFAC, which was located in the District of Columbia, in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Part 594 (GTSR); and

(b) to defraud the United States Government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting dealing with SDGTs or in blocked property without having first obtained the required licenses from OFAC, by deceit, craft, trickery, and dishonest means, in violation of Title 18,

8

United States Code, Section 371.

19.     The conduct alleged in this Indictment occurred within the District of Columbia and elsewhere, and therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Section 3237(a). Additionally, the conduct alleged in this Indictment began outside the jurisdiction of any particular state or district of the United States, but within the extraterritorial jurisdiction of the United States and therefore, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

## OBJECTS OF THE CONSPIRACY

20.     The objects of the conspiracy were:

A.     to continue to transact business with U.S. persons despite the legal prohibition against such transactions imposed by the U.S. Government;

B.     to continue to receive financial profits and other benefits of goods and services from U.S. persons, in spite of the legal prohibition imposed by the U.S. Government;

C.     to conceal from U.S persons and mislead the U.S. Government, including OFAC, that KASSIM TAJIDEEN continued to benefit from business transactions conducted with U.S. persons;

D.     to evade and to cause others to evade or violate the regulations, prohibitions, and licensing requirements of IEEPA, Executive Order 13224, and the GTSR; and

9

E.  to willfully evade or violate, and cause others to evade or violate, the
regulations, prohibitions, and licensing requirements of IEEPA, Executive
Order 13224, and the GTSR.

## MANNER AND MEANS OF THE CONSPIRACY

21.  From at least on or about May 21, 2009, and continuing to the present day, the
defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the
Grand Jury, operated a business empire situated in Lebanon, the United Arab Emirates, Angola,
and elsewhere. The business empire utilized different corporate entities over the years, all
controlled by KASSIM TAJIDEEN, including Epsilon, ICTC, and Sicam Ltd., to procure and
distribute goods throughout the world, including the United States. KASSIM TAJIDEEN was the
ultimate owner and chief decision-maker of the business empire, with IMAD HASSOUN acting
as confidante and lieutenant. KASSIM TAJIDEEN benefited directly and indirectly from the
operation of the business empire.

22.  At all relevant times during the conspiracy, the defendant KASSIM TAJIDEEN
was designated a Specially Designated Global Terrorist by the United States Department of the
Treasury, Office of Foreign Assets Control, pursuant to the International Emergency Economic
Powers Act, Executive Order 13224, and the Global Terrorism Sanctions Regulations. As
discussed above, the SDGT designation resulted in any property in the United States, or in the
possession or control of U.S. persons, in which KASSIM TAJIDEEN had an interest, being
blocked, and all U.S. persons were generally prohibited from transacting business with, or for the
benefit of, KASSIM TAJIDEEN.

23. At all relevant times during the conspiracy, the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the Grand Jury, were aware that KASSIM TAJIDEEN was designated an SDGT by the United States Government, that KASSIM TAJIDEEN's assets were blocked from entering or exiting the United States, and that U.S. persons were legally prohibited from transacting business with, or for the benefit of, KASSIM TAJIDEEN.

24. During the conspiracy period, the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the Grand Jury, conducted approximately fifteen commercial transactions with U.S. persons using Epsilon and ICTC. The transactions were arranged through emails, text messages, and phone calls, and then were consummated by approximately forty-six foreign wire transfers, originating outside the United States, and twenty-three subsequent shipments of goods from American ports to places outside the United States. During these transactions, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the Grand Jury, took steps to conceal KASSIM TAJIDEEN's ownership of, and association with, Epsilon and ICTC.

25. At all relevant times during the conspiracy, no U.S. person or any other person participating in any commercial transactions, cargo shipments, and wire transfers with the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, acquired or attempted to acquire, the appropriate license from OFAC as required by law for all transactions with an SDGT.

## OVERT ACTS

26. In furtherance of said conspiracy, and to effect the illegal objects thereof, the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the Grand Jury, committed or caused to be committed the following overt acts, among others, in the

11

District of Columbia and elsewhere:

### Correspondence with OFAC

27.     On or about July 19, 2010, while located outside the United States, the defendant, KASSIM TAJIDEEN, sent a letter, signed by his own hand, with attachments to Michael Swanson, Office of Foreign Assets Control, at 1500 Pennsylvania Avenue, N.W., Washington, DC.  In the letter, KASSIM TAJIDEEN stated, in part, that the attachments thereto prepared by his attorneys contained "a complete picture" of his "financial holdings."

28.     On or about December 7, 2012, the defendant, KASSIM TAJIDEEN, through counsel, caused a letter to be sent with attachments to Adam J. Szubin, Office of Foreign Assets Control, at 1500 Pennsylvania Avenue, N.W., Washington, DC.  KASSIM TAJIDEEN's letter described one attachment as a report written based on an, "extensive forensics investigation of his banking, financial, and commercial records," and claimed that the report represented, "an unimpeded, objective view into Mr. Tajideen's life and business," when, in fact, KASSIM TAJIDEEN and others endeavored to conceal relevant facts and circumstances regarding his business dealings and the companies under his control from those preparing the report.

29.     On or about April 28, 2014, the defendant, KASSIM TAJIDEEN, through counsel, sent a letter with attachments to Greg Gatjanis, Office of Foreign Assets Control, at 1500 Pennsylvania Avenue, N.W., Washington, DC, which referenced in part, "Mr. Tajideen's commitment to OFAC compliance."  As part of the communication, KASSIM TAJIDEEN misrepresented to OFAC that he had undertaken the remedial steps of,

- "Formally divesting from entities affiliated with his brother, Ali Tajideen, and refraining from any financial or commercial dealings with Ali Tajideen, Husayn Tajideen, and entities owned or controlled by these or any other individuals

associated with any terrorist organization, such as Hizbollah."

when in fact, he knew these foregoing statements to be materially false or incomplete.

<u>Transactions with U.S. Companies</u>

<u>Transactions 1 through 8</u>

30.      Between in or about December of 2013 and the present day, as a result of emails,

phone calls, text messages, and electronic chats exchanged with representatives of U.S. Company

A, the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, agreed to a series of at least

eight purchases of food commodities from U.S. Company A, which caused at least fifteen wire

transfers in the name of ICTC and Epsilon to enter U.S. financial institutions from the United

Arab Emirates, and which further caused at least thirteen cargo shipments to leave U.S. ports

consigned to Sicam Ltd, all for the benefit of defendant KASSIM TAJIDEEN.

31.      Each of the following wire transfers received by U.S. Company A or other U.S.

persons constitutes a separate overt act caused by the defendants, KASSIM TAJIDEEN and

IMAD HASSOUN:

| | Date Received by US Account Holder | Approximate Amount | Originating Bank Account | Originator & Country of Origin |
|---|---|---|---|---|
| 1. | January 15, 2014 | $136,645.00 | Emirates NBD Bank PJSC ********************1302 | ICTC UAE |
| 2. | January 31, 2014 | $273,088.00 | Emirates NBD Bank PJSC ********************1302 | ICTC UAE |
| 3. | February 13, 2014 | $272,987.00 | Emirates NBD Bank PJSC ********************1304 | ICTC UAE |
| 4. | May 22, 2014 | $26,945.20 | Emirates NBD Bank PJSC ********************0902 | Epsilon UAE |
| 5. | June 20, 2014 | $102,280.80 | Emirates NBD Bank PJSC ********************0902 | Epsilon UAE |
| 6. | July 22, 2014 | $229,785.00 | Emirates NBD Bank PJSC ********************1302 | ICTC UAE |
| 7. | July 24, 2014 | $153,190.00 | Emirates NBD Bank PJSC ********************1302 | ICTC UAE |

| 8. | September 17, 2014 | $365,985.00 | Emirates NBD Bank PJSC \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | ICTC UAE |
|---|---|---|---|---|
| 9. | September 22, 2014 | $551,064.60 | Sharjah Islamic Bank \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*5003 | ICTC UAE |
| 10. | October 8, 2014 | $571,010.00 | Mashreq Bank \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*6789 | ICTC UAE |
| 11. | October 17, 2014 | $47,115.00 | Emirates NBD Bank PJSC \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | ICTC UAE |
| 12. | November 11, 2014 | $188,460.00 | Sharjah Islamic Bank \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*5003 | ICTC UAE |
| 13. | November 14, 2014 | $460,200.00 | Emirates NBD Bank PJSC \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | ICTC UAE |
| 14. | December 30, 2014 | $615,960.00 | Mashreq Bank \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*6789 | ICTC UAE |
| 15. | February 3, 2015 | $154,000.00 | Sharjah Islamic Bank \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*5003 | ICTC UAE |
| 16. | April 9, 2015 | $77,000.00 | Emirates NBD Bank PJSC \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*0902 | Epsilon UAE |

32.     Each of the following thirteen cargo shipments by U.S. Company A or other U.S. persons constitutes a separate overt act in furtherance of the conspiracy, which was caused by the defendants, KASSIM TAJIDEEN and IMAD HASSOUN:

| | Export Date | U.S. Port | Consignee | Destination | Export Value | Metric Tonnage |
|---|---|---|---|---|---|---|
| 1. | May 31, 2013 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $293,196 | 264,160 |
| 2. | October 16, 2013 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $306,546 | 281,840 |
| 3. | October 16, 2013 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $309,491 | 282,672 |
| 4. | October 23, 2013 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $307,146 | 281,840 |
| 5. | January 22, 2014 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $268,392 | 282,880 |
| 6. | January 29, 2014 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $269,345 | 283,088 |
| 7. | January 30, 2014 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $268,392 | 282,880 |
| 8. | August 30, 2014 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $387,089 | 335,057 |
| 9. | September 13, 2014 | MOBILE, AL | SICAM LDA | LUANDA, ANGOLA | $567,230 | 504,878 |

14

| | | | | | | |
|---|---|---|---|---|---|---|
| 10. | September 27, 2014 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $615,579 | 530,400 |
| 11. | December 20, 2014 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $638,808 | 542,880 |
| 12. | March 23, 2015 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $1,092,145 | 1,081,600 |
| 13. | March 29, 2015 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $637,784 | 540,800 |

Transactions 9 through 14

33.    Between in or about December of 2013 and the present day, as a result of emails,

phone calls, text messages, and electronic chats exchanged with representatives of U.S. Company

B, the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, agreed to a series of at least six

purchases of food commodities from U.S. Company B, which caused at least twenty-nine wire

transfers in the name of ICTC and Epsilon to enter U.S. financial institutions from the United

Arab Emirates, and which further caused at least ten cargo shipments to leave U.S. ports

consigned to Sicam Ltd, all for the benefit of the defendant, KASSIM TAJIDEEN.

34.    Each of the following twenty-nine wire transfers received by U.S. Company B or

other U.S. persons constitutes a separate overt act in furtherance of the conspiracy, caused by the

defendants, KASSIM TAJIDEEN and IMAD HASSOUN:

| | Date Received by US Account Holder | Approximate Amount | Originating Bank Account | Originator & Country of Origin |
|---|---|---|---|---|
| 1. | May 13, 2014 | $342,720.00 | Emirates NBD Bank PJSC ********************0902 | Epsilon UAE |
| 2. | May 16, 2014 | $342,694.80 | Emirates NBD Bank PJSC ********************0902 | Epsilon UAE |
| 3. | June 11, 2014 | $68,544.00 | Noor Islamic Bank ********************0033 | Epsilon UAE |
| 4. | May 7, 2014 | $500,000.00 | Noor Islamic Bank ********************0033 | Epsilon UAE |
| 5. | May 19, 2014 | $1,000,000.00 | Noor Islamic Bank ********************0033 | Epsilon UAE |
| 6. | May 27, 2014 | $1,200,000.00 | Emirates NBD Bank PJSC ********************0902 | Epsilon UAE |

15

| 7. | May 29, 2014 | $980,000.00 | Emirates NBD Bank PJSC ******************0902 | Epsilon UAE |
|---|---|---|---|---|
| 8. | June 4, 2014 | $965,368.84 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 9. | June 5, 2014 | $590,000.00 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 10. | July 2, 2014 | $310,950.00 | Emirates NBD Bank PJSC ******************1302 | ICTC UAE |
| 11. | July 23, 2014 | $1,100,000.00 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 12. | July 28, 2014 | $1,200,000.00 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 13. | August 6, 2014 | $621,901.00 | Emirates NBD Bank ******************1302 | ICTC UAE |
| 14. | August 8, 2014 | $450,508.48 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 15. | September 2, 2014 | $750,000.00 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 16. | September 4, 2014 | $1,100,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 17. | September 9, 2014 | $615,327.60 | Emirates NBD Bank ******************1302 | ICTC UAE |
| 18. | September 10, 2014 | $1,250,000.00 | Emirates NBD Bank ******************0902 | Epsilon UAE |
| 19. | September 22, 2014 | $900,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 20. | September 29, 2014 | $550,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 21. | October 7, 2014 | $1,032,673,48 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 22. | December 17, 2014 | $780,000.00 | Emirates NBD Bank PJSC ******************0902 | Epsilon UAE |
| 23. | December 23, 2014 | $950,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 24. | January 5, 2015 | $985,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 25. | January 30, 2015 | $754,278.49 | Emirates NBD Bank PJSC ******************0902 | Epsilon UAE |
| 26. | February 3, 2015 | $1,200,000.00 | Emirates NBD Bank PJSC ******************0902 | Epsilon UAE |
| 27. | February 10, 2015 | $1,400,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |
| 28. | February 11, 2015 | $300,000.00 | Noor Islamic Bank ******************0033 | Epsilon UAE |

16

| 29. | February 12, 2015 | $800,000.00 | Emirates NBD Bank<br>*******************0902 | Epsilon<br>UAE |

35.     Each of the following ten cargo shipments by U.S. Company B or other U.S.

persons constitutes a separate overt act in furtherance of the conspiracy, caused by the defendants,

KASSIM TAJIDEEN and IMAD HASSOUN:

|     | Export Date | U.S. Port | Consignee | Destination | Export Value | Metric Tonnage |
|-----|-------------|-----------|-----------|-------------|--------------|----------------|
| 1.  | May 14, 2013 | HOUSTON, TX | SICAM LDA | LUANDA, ANGOLA | $403,920 | 288,320 |
| 2.  | May 17, 2013 | MOBILE, AL | SICAM LDA | LUANDA, ANGOLA | $323,690 | 288,320 |
| 3.  | August 23, 2014 | SAVANNAH, GA | SICAM LDA | LUANDA, ANGOLA | $682,000 | 565,760 |
| 4.  | September 18, 2013 | NEW ORLEANS, LA | SICAM, LDA | LUANDA, ANGOLA | $611,655 | 576,640 |
| 5.  | September 25, 2013 | NEW ORLEANS, LA | SICAM, LDA | LUANDA, ANGOLA | $611,655 | 595,100 |
| 6.  | October 9, 2013 | HOUSTON, TX | SICAM, LDA | LUANDA, ANGOLA | $320,960 | 284,380 |
| 7.  | July 13, 2014 | NEW ORLEANS, LA | SICAM, LDA | LUANDA, ANGOLA | $593,750 | 537,472 |
| 8.  | July 25, 2014 | NEW ORLEANS, LA | SICAM, LDA | LUANDA, ANGOLA | $31,250 | 28,288 |
| 9.  | May 21, 2015 | HOUSTON, TX | SICAM, LDA | LUANDA, ANGOLA | $369,800 | 707,200 |
| 10. | June 4, 2015 | HOUSTON, TX | SICAM, LDA | LUANDA, ANGOLA | $428,968 | 820,352 |

Transaction 15

36.     Between in or about January of 2015 and in or about March of 2015, as a result of emails exchanged with a representative of U.S. Company C, the defendant, KASSIM TAJIDEEN, and others known and unknown to the Grand Jury, agreed to purchase security equipment from U.S. Company C and to wire transfer two separate sums to a financial institution in the United States.

37.     On or about March 10, 2015, defendant, KASSIM TAJIDEEN, and others known and unknown to the Grand Jury, caused a wire transfer of $14,029.05 to enter the United States

from the United Arab Emirates in the name of Epsilon.

38.     On or about May 7, 2015, the defendant, KASSIM TAJIDEEN, and others known and unknown to the Grand Jury, caused a wire transfer of $32,734.45 to enter the United States from the United Arab Emirates in the name of Epsilon.

## OTHER CONTACT WITH U.S. PERSONS IN FURTHERANCE OF THE CONSPIRACY

39.     On or about March 4, 2015 and March 5, 2015, the defendant, IMAD HASSOUN, sent emails to three people in the United States regarding a transaction between a U.S person, ICTC, and Sicam Ltd.

40.     On or about April 16, 2015, the defendant, IMAD HASSOUN, made a telephone call from a Lebanese telephone number to a U.S. telephone number belonging to a U.S. citizen living in the United States, and subsequently left a voicemail message regarding a transaction between U.S. Company A, ICTC, and Sicam Ltd.

41.     On or about April 17, 2015, the defendant, KASSIM TAJIDEEN, participated in a telephone call with a U.S. person and discussed logistics regarding payment and shipment for a specific commercial transaction between U.S. Company A, ICTC, and Sicam Ltd. During the call, KASSIM TAJIDEEN urged the U.S. person to lie and misrepresent himself to a U.S. financial institution in order to facilitate the transaction.

42.     On or about April 21, 2015, the defendant, KASSIM TAJIDEEN, participated in a telephone call with a U.S. person and discussed logistics regarding payment and shipment for a specific commercial transaction between U.S. Company A, ICTC, and Sicam Ltd. During the call, KASSIM TAJIDEEN urged the U.S. person to lie and misrepresent himself to a U.S. financial institution in order to facilitate the transaction.

18

## FAILURE TO OBTAIN A LICENSE

43. At all times relevant to the conspiracy, the defendants, KASSIM TAJIDEEN and

IMAD HASSOUN, and other conspirators known and unknown to the Grand Jury, failed to

apply for, receive, and possess, and caused others to fail to apply for, receive, and possess a

license from OFAC, located in the District of Columbia, to conduct business transactions with or

for the benefit of KASSIM TAJIDEEN or any other SDGT.

**(Conspiracy to Conduct Unlawful Transactions and Cause U.S. Persons to Conduct Unlawful Transactions with a Specially-Designated Global Terrorist ("SDGT"), and to Defraud the United States by Dishonest Means**, in violation of Title 18, United States Code, Section 371; Title 50, United States Code, Section 1705(a); and Title 31, Code of Federal Regulations, Sections 594.201, 594.204, 594.205 and 594.310.)

## **COUNTS TWO THROUGH TEN**

### **(Unlawful Transactions with a SDGT)**

44. The allegations in Paragraphs 1 through 17 of this Indictment are incorporated and

re-alleged by reference herein.

45. On or about the dates listed as to each count below, within the District of

Columbia and elsewhere, the defendant or defendants listed below, and other conspirators

known and unknown to the Grand Jury, did unlawfully, knowingly, and willfully commit an

offense against the United States, to wit, to violate Title 50, United States Code, Sections 1701 to

1706, Executive Order 13224, and Title 31, Code of Federal Regulations, Part 594 (GTSR), by

causing the transactions with U.S. persons, involving the sale of goods and services identified in

Counts Two through Ten, without a license from OFAC, to or for the benefit of KASSIM

TAJIDEEN, a Specially Designated Global Terrorist.

19

| Count | Applicable Defendant(s) | Approximate Date of Sale | U.S. Vendor | Description of Goods |
|-------|-------------------------|--------------------------|-------------|----------------------|
| 2. | IMAD HASSOUN | June 26, 2014 | U.S. Company B | Approximately 544,000 kilograms of frozen poultry |
| 3. | KASSIM TAJIDEEN | June 4, 2014 | U.S. Company B | Approximately 4,380,000 kilograms of frozen poultry |
| 4. | KASSIM TAJIDEEN & IMAD HASSOUN | July 16, 2014 | U.S. Company A | Approximately 335,057 kilograms of frozen poultry |
| 5. | KASSIM TAJIDEEN & IMAD HASSOUN | July 18, 2014 | U.S. Company B | Approximately 5,220,900 kilograms of frozen poultry |
| 6. | KASSIM TAJIDEEN & IMAD HASSOUN | January 19, 2015 | U.S. Company A | Approximately 550,000 kilograms of frozen poultry |
| 7. | KASSIM TAJIDEEN & IMAD HASSOUN | October 14, 2014 | U.S. Company A | Approximately 135,000 kilograms of frozen poultry |
| 8. | IMAD HASSOUN | October 30, 2014 | U.S. Company A | Approximately 1,070,000 kilograms of frozen poultry |
| 9. | KASSIM TAJIDEEN | August 28, 2014 | US Company B | Approximately 5,200,000 kilograms of frozen poultry |
| 10. | KASSIM TAJIDEEN | February 28, 2015 | U.S. Company C | Approximately 200 safes/strong boxes |

**(Unlawful Transactions with a Specially-Designated Global Terrorist ("SDGT")** in violation of Title 50, United States Code, Section 1705(a); Title 31, Code of Federal Regulations, Part 594.201, 594.204, 594.205 and 594.310; **Aiding and Abetting and Causing an Act to be Done,** in violation of Title 18, United States Code, Section 2.)

## COUNT ELEVEN

### (Conspiracy to Commit Money Laundering)

46.     The allegations in Paragraphs 1 through 17 of this Indictment are incorporated and

re-alleged by reference herein.

47.     Beginning as early as on or around May 27, 2009, the exact date being unknown to

the Grand Jury, and continuing through the present day, within the extraterritorial jurisdiction of

the United States, the District of Columbia, and elsewhere, the defendants, KASSIM TAJIDEEN

and IMAD HASSOUN, did knowingly, combine, conspire, confederate and agree with each

other, and others known and unknown to the Grand Jury, to violate:

(a) Title 18, United States Code, Section 1956(a)(2)(A), by transporting, transmitting, and

transferring and attempting to transport, transmit, and transfer, monetary instruments and

funds to or through a place in the United States from or through a place outside the United

States, that is, the United Arab Emirates, with the intent to promote the carrying on of

specified unlawful activity, that is, a violation of IEEPA;

(b) Title 18, United States Code, Section 1956(a)(2)(B)(i), by transporting, transmitting,

and transferring and attempting to transport, transmit, and transfer, monetary instruments

and funds to or through a place in the United States from or through a place outside the

United States, that is, the United Arab Emirates, knowing that the monetary instrument or

funds involved in the transportation, transmission, or transfers represent the proceeds of

some form of unlawful activity and knowing that such transportation, transmission, or

transfer was designed in whole or in part to conceal or disguise the nature, the location,

the source, the ownership, or the control of the proceeds of specified unlawful activity,

that is, a violation of IEEPA.

## OBJECTS OF CONSPIRACY

48.     The objects of the conspiracy were:

A.      to promote the conspirators' illegal business transactions with U.S. persons;

B.      to conceal and disguise the nature, the location, the source, the ownership,

and the control of the proceeds of illegal business transactions; and

C.      to illegally enrich the conspirators.

## MANNER AND MEANS OF CONSPIRACY

49.     At all relevant times during the conspiracy, ICTC maintained bank accounts in the UAE at Mashreq Bank, Sharjah Islamic Bank, and Emirates NBD Bank PJSC.

50.     At all relevant times during the conspiracy, Epsilon maintained bank accounts in the United Arab Emirates at Noor Islamic Bank and Emirates NBD Bank PJSC.

51.     The ICTC bank accounts in the United Arab Emirates at Mashreq Bank, Sharjah Islamic Bank, and Emirates NBD Bank PJSC, were utilized on at least sixteen separate occasions to wire transfer funds into the United States in exchange for goods and services outlawed by IEEPA, Executive Order 13224, and the GTSR.

52.     As a result of six commercial transactions with U.S. COMPANY A negotiated by the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the Grand Jury, the following amounts were wire transferred from ICTC accounts in the UAE into account number *********5251 at Branch Banking and Trust Company, and other accounts in the United States, as payments for goods bought by ICTC and consigned to Sicam Ltd. in Angola:

|    | Date Received by US Account Holder | Approximate Amount | Originating Bank Account (ICTC's account) | Country of Origin |
|----|-----------------------------------|--------------------|-------------------------------------------|-------------------|
| 1. | January 15, 2014 | $136,645.00 | Emirates NBD Bank ****************1302 | UAE |
| 2. | January 31, 2014 | $273,088.00 | Emirates NBD Bank ****************1302 | UAE |
| 3. | February 13, 2014 | $272,987.00 | Emirates NBD Bank ****************1304 | UAE |
| 4. | July 22, 2014 | $229,785.00 | Emirates NBD Bank ****************1302 | UAE |
| 5. | July 24, 2014 | $153,190.00 | Emirates NBD Bank ****************1302 | UAE |
| 6. | September 17, 2014 | $365,985.00 | Emirates NBD Bank ****************1302 | UAE |
| 7. | September 22, 2014 | $551,064.60 | Sharjah Islamic Bank ****************5003 | UAE |

| 8. | October 8, 2014 | $571,010.00 | Mashreq Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*6789 | UAE |
|----|-----------------|-------------|--------------------------------------------------|-----|
| 9. | October 17, 2014 | $47,115.00 | Emirates NBD Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | UAE |
| 10. | November 11, 2014 | $188,460.00 | Sharjah Islamic Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*5003 | UAE |
| 11. | November 14, 2014 | $460,200.00 | Emirates NBD Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | UAE |
| 12. | December 30, 2014 | $615,960.00 | Mashreq Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*6789 | UAE |
| 13. | February 3, 2015 | $154,000.00 | Sharjah Islamic Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*5003 | UAE |

53.     As a result of a commercial transaction with U.S. COMPANY B negotiated by the

defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to the

Grand Jury, the following amounts were wire transferred from ICTC accounts in the UAE into

account \*\*\*\*\*\*\*\*5232 at Bank of America, and other accounts in the U.S., as payments for

goods bought by ICTC and consigned to Sicam Ltd. in Luanda, Angola:

|    | Date Received by<br>US Account Holder | Approximate<br>Amount | Originating Bank Account<br>(ICTC's account) | Country<br>of<br>Origin |
|----|---------------------------------------|-----------------------|----------------------------------------------|-------------------------|
| 1. | July 2, 2014 | $310,950.00 | Emirates NBD Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | UAE |
| 2. | August 6, 2014 | $621,901.00 | Emirates NBD Bank<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | UAE |
| 3. | September 9, 2014 | $615,327.60 | Emirates NBD Bank PJSC<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1302 | UAE |

54.     The Epsilon bank accounts in the United Arab Emirates at Noor Islamic Bank and

Emirates NBD Bank PJSC were utilized on at least thirty separate occasions to wire transfer funds

into the United States in exchange for goods and services in violation of IEEPA, Executive Order

13224, and the GTSR.

55.     As a result of three commercial transactions with U.S. COMPANY A negotiated

by the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown

to the Grand Jury, the following amounts were wire transferred from Epsilon accounts in the UAE

into account number *********5251 at Branch Banking and Trust Company, and other accounts

in the U.S., as payments for goods bought by Epsilon and consigned to Congo Best Food

S.A.R.L. in the Democratic Republic of Congo, as well as Gitex Co Ltd. in Sierra Leone:

|   | Date Received by US Account Holder | Amount | Originating Bank Account (Epsilon's account) | Country of Origin |
|---|---|---|---|---|
| 1. | May 22, 2014 | $26,945.20 | Emirates NBD Bank *******************0902 | UAE |
| 2. | June 20, 2014 | $102,280.80 | Emirates NBD Bank *******************0902 | UAE |
| 3. | April 9, 2015 | $77,000.00 | Emirates NBD Bank *******************0902 | UAE |

56.     As a result of five commercial transactions with U.S. COMPANY B negotiated by

the defendants, KASSIM TAJIDEEN and IMAD HASSOUN, and others known and unknown to

the Grand Jury, the following amounts were wire transferred from Epsilon accounts in the UAE

into account number ********5232 at Bank of America, and other accounts in the U.S., as

payments for goods bought by Epsilon and consigned to Neptune Enterprise in Gambia, Congo

Stars in the Democratic Republic of Congo, as well as General Trade Company in the Democratic

Republic of Congo:

|   | Date Received by US Account Holder | Amount | Originating Bank Account (Epsilon's account) | Country of Origin |
|---|---|---|---|---|
| 1. | May 13, 2014 | $342,720.00 | Emirates NBD Bank *******************0902 | UAE |
| 2. | May 16, 2014 | $342,694.80 | Emirates NBD Bank *******************0902 | UAE |
| 3. | June 11, 2014 | $68,544.00 | Noor Islamic Bank *******************0033 | UAE |

24

| 4. | May 7, 2014 | $500,000.00 | Noor Islamic Bank *******************0033 | UAE |
|---|---|---|---|---|
| 5. | May 19, 2014 | $1,000,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 6. | May 27, 2014 | $1,200,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 7. | May 29, 2014 | $980,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 8. | June 4, 2014 | $965,368.84 | Noor Islamic Bank *******************0033 | UAE |
| 9. | June 5, 2014 | $590,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 10. | July 23, 2014 | $1,100,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 11. | July 28, 2014 | $1,200,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 12. | August 8, 2014 | $450,508.48 | Emirates NBD Bank *******************0902 | UAE |
| 13. | September 2, 2014 | $750,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 14. | September 4, 2014 | $1,100,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 15. | September 10, 2014 | $1,250,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 16. | September 22, 2014 | $900,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 17. | September 29, 2014 | $550,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 18. | October 7, 2014 | $1,032,673,48 | Noor Islamic Bank *******************0033 | UAE |
| 19. | December 17, 2014 | $780,000.00 | Emirates NBD Bank *******************0902 | UAE |
| 20. | December 23, 2014 | $950,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 21. | January 5, 2015 | $985,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 22. | January 30, 2015 | $754,278.49 | Emirates NBD Bank *******************0902 | UAE |
| 23. | February 3, 2015 | $1,200,000.00 | Emirates NBD Bank PJSC *******************0902 | UAE |
| 24. | February 10, 2015 | $1,400,000.00 | Noor Islamic Bank *******************0033 | UAE |
| 25. | February 11, 2015 | $300,000.00 | Noor Islamic Bank *******************0033 | UAE |

25

| 26. | February 12, 2015 | $800,000.00 | Emirates NBD Bank PJSC ******************0902 | UAE |

57.  As a result of a transaction with U.S. Company C negotiated in part by defendant,

KASSIM TAJIDEEN, and others known and unknown to the Grand Jury, the following amounts

were wire transferred from Epsilon accounts in the UAE into account number ******6380 at City

National Bank in Beverly Hills, California, and other accounts in the U.S., as payments for goods

bought by Epsilon and consigned to SOMODEC S.A.R.L in the Democratic Republic of Congo:

|  | Date Received by US Account Holder | Amount | Originating Bank Account (Epsilon's account) | Country of Origin |
|---|---|---|---|---|
| 1. | March 10, 2015 | $14,029.05 | Emirates NBD Bank ******************0902 | UAE |
| 2. | May 7, 2015 | $32,734.45 | Noor Islamic Bank ******************0033 | UAE |

(**Conspiracy to Commit Money Laundering**, in violation of Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

58.  Upon conviction of any of the offenses alleged in Counts One through Ten, the

defendants shall forfeit to the United States any property, real or personal, which constitutes or is

derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will

also seek a forfeiture money judgment against the defendants equal to the value of any property,

real or personal, which constitutes or is derived from proceeds traceable to these offenses.

59.  Upon conviction of the offense alleged in Count Eleven, the defendants shall

forfeit to the United States any property, real or personal, involved in this offense, or any property

traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The

United States will also seek a forfeiture money judgment against the defendants equal to the value

26

of any property, real or personal, involved in this offense, or any property traceable to such property.

      60.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

          a.     cannot be located upon the exercise of due diligence;

          b.     has been transferred or sold to, or deposited with, a third party;

          c.     has been placed beyond the jurisdiction of the Court;

          d.     has been substantially diminished in value; or

          e.     has been commingled with other property that cannot be divided without

              difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the

value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture,** in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p)).

A TRUE BILL

FOREPERSON

Channing D. Phillips | KK

Attorney of the United States in
and for the District of Columbia

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA D. CAESAR, Clerk
By_____ Deputy Clerk

27