# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| Plaintiff, | 1:18-cr-00032-2-DLF |
| v. | |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

## DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION FOR DISCLOSURE OF GRAND JURY INSTRUCTIONS[1]

Pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully moves for disclosure of the legal instructions provided to the grand jury regarding Count One of the Indictment, and in support thereof states as follows:

## I.      Preliminary Statement

The fundamental principles compelling disclosure of legal instructions given to the grand jury rest on the pivotal role of that body in a case like this one.  "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'"  *United States v. Calandra*, 414 U.S. 338, 342–43 (1974) (citation omitted).  In a federal prosecution, therefore, the "content of the charge, as well as the decision to charge at all, is entirely up to the grand jury[.]"  *Gaither v. United States*, 413 F.2d 1061, 1066 (D.C. Cir. 1969).

---

[1]     In June 2018, the Court denied Defendant's motion for an *in camera* inspection by the Court of the legal instructions provided to the grand jury.  ECF 28.

Moreover, "[t]he sweeping powers of the grand jury over the terms of the indictment entail very strict limitations upon the power of prosecutor or court to change the indictment found by the jurors, or to prove at trial facts different from those charged in that indictment." *Id.*  The settled rule is clear and brooks no exception—"a court cannot permit a defendant to be tried on charges that are not made in the indictment against him[,]" *Stirone v. United States*, 361 U.S. 212, 217 (1960), and "criminal prosecutions" therefore must "be limited to the unique allegations of the indictments returned by the grand jury[,]" *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (citations omitted).

While clear enough in their mandate, these principles have been under siege since the earliest stages of this case.  And they are under particularly grave and direct assault now.  Here, the charge the grand jury actually leveled against Concord has been modified and supplanted at the prosecution's whim.  Rather than prosecute the case the grand jury charged, the government has moved the target persistently as it rummages through the inventory of provisions in the statutes related to elections and foreign agent registration looking for something it thinks it can prove.  This process has left Concord to guess at what it must defend against at trial.

The most recent riddle from the prosecution?  A cryptic, first-time assertion, laid out in an October 4, 2019 letter from the U.S. Attorney, that Defendants and their alleged co-conspirators caused U.S. persons and organizations to unwittingly act as "agents" of an unspecified foreign "principal" which, in turn, imposed a "legal duty" on those persons or organizations—or the conspirators themselves—"to register under the Foreign Agents Registration Act [("FARA")]."  This latest accusation is notable for two things:  its vagueness and its lack of grounding in the Indictment itself.

This latest shift in the purportedly dispositive allegations makes it clear that the grand jury process, as envisioned by the Framers, is broken here.  It is equally clear that the government's penchant for offering up one theory after another is far from an academic concern given the role the indictment plays in a federal criminal proceeding.  At this point, to protect Concord's Fifth Amendment rights and enable it to fully defend this case, the legal instructions provided to the grand jury must be disclosed.  If the Special Counsel ***never*** instructed the grand jury on any of the government's ever-changing theories—the recent foreign-agent-registration riddle in particular—then this case should end for that reason.  And if the Special Counsel ***did*** instruct the grand jury on the government's constantly shifting theories, the absence of those theories from the Indictment supports the same result.

Either way, Concord is entitled to know what occurred, and any professed interest in secrecy—*de minimis* here since all Concord is asking for are the legal instructions; the Special Counsel's investigation is over; and the grand jury's work is complete—plainly is outstripped by that particularized need.  What the prosecutor said (or did not say) here goes directly to whether the prosecution can or should continue.  The Court should accordingly grant this motion to provide Concord with the legal instructions given to the grand jury here.

## II.    Factual and Procedural Background

It goes without saying that prosecutors are not "free to roam at large—to shift [their] theory of criminality so as to take advantage of each passing vicissitude . . . ."  *Russell v. United States*, 369 U.S. 749, 768 (1962).  Yet as Concord has highlighted in various pleadings, the government has forced Concord into an unending 19-month game of Whac-a-Mole that is stunning in its scope and seemingly unlimited in its permutations.

Start with the Indictment.  It alleges a vague conspiracy to interfere with generically stated "functions" of the U.S. government, leaving out key details such as what specific laws and regulations created those functions and which conspirators, if any, could have violated—or did violate—the purported legal duties alluded to.  ECF 210 at 7, 15.  Nor does it allege that any of the Defendants, including Concord, actually violated any specific statute other than § 371, or that Concord had a duty to file or register with respect to the Federal Election Campaign Act ("FECA") or FARA, or committed any other act specifically prohibited by U.S. election statutes applicable to foreign nationals.  When pressed by Concord's July 2018 motion to dismiss argument that these allegations did not supply the *mens rea* invoked by the underlying statutes and regulations, the government insisted that the Indictment did not allege that any Defendant was required to make any disclosures under FECA or to register with DOJ under FARA.  ECF 56 at 11.  Instead, the prosecution maintained it only needed to show some amorphous interference with undefined "regulatory functions" of the FEC or DOJ.  *Id.*  But at the hearing on the motion and in a post-hearing brief, the government changed course not once, but twice—first admitting that "when the only deceptive acts the government has alleged are a failure to disclose or a failure to report, well, then, [it is] going to have to show a duty to disclose or a duty to report[,]" Oct. 15, 2018 Hr'g Tr. 47:24–48:2; and later claiming that the Indictment *did* allege that Concord and the Defendants had legal duties to disclose and register under FECA and FARA.  ECF 69 at 3–4.

Confronted with these pivots, Concord moved for a bill of particulars, ECF 104, which led the Court to conclude that the "indictment *did* allege" violations of FECA and FARA and, therefore, that "the specific laws—and underlying conduct—that triggered such a duty [to disclose and register] are critical for Concord to know well in advance of trial so it can prepare

its defense." ECF 136 at 11–12.  The government complied, ECF 176, but it remains a mystery whether any of the specific FECA and FARA provisions the government's bill enumerated—or the willfulness burden for proving criminal violations of those provisions—was ever explained to the grand jury.

Because Concord still could not determine which specific Defendants had the duties the government now contends they had, but which the Indictment does not allege, Concord sought a supplemental bill of particulars.  ECF 181.  At the hearing on that motion, the government moved the target yet again.  In a colloquy at the start of the hearing, the Court stated that it had previously "interpreted the indictment to allege a conspiracy that targeted only the administration of federal disclosure requirements and not some other set of functions, such as the enforcement of the ban on expenditures by foreign nationals."  Sept. 16, 2019 Hr'g Tr. 4:13–17 (referring to ECF 174 at 6).  But the Court questioned the government's opposition to the motion for a supplemental bill of particulars, where the government asserted that the Indictment "also alleges that the conspirators interfered with the FEC's function of enforcing the statutory prohibition on certain expenditures by foreign nationals."  ECF 194 at 18 n.3.

The government then asked the Court to clarify or reconsider its previous order.  In that motion, the government said that it intends to prove that the co-conspirators did ***not*** comply with the duties now required by the Court for conviction because, as foreigners, they allegedly made expenditures, not charged in the Indictment (because it would require proof of willfulness), that were potentially separately prohibited under FECA (which amounted to the Russian ruble equivalent of just over $2,900).  ECF 201 at 2; ECF 181 at 11 & n.10; ECF 206 at 7.  The Court denied this motion, reaffirming that the Indictment did not allege that the Defendants conspired to interfere with the FEC's function of enforcing a foreign expenditure ban, ECF 209 at 3, which

is not a "ban" at all, but rather a highly complex set of rules that prohibits some expenditures, and permits others.  ECF 181 at 9–16.

But the government's efforts to move beyond the Indictment and keep Concord in the dark did not end there.  The prosecution followed with its two most recent maneuvers, crafted in typically labyrinthine form and leaving no doubt that the prosecution does not feel any need to adhere to the Indictment and fully intends to leave Concord guessing at what the prosecution actually intends to prove.  In replying to Defendant's request for production of Office of Foreign Assets Control materials relating to sanctions against the Defendants, which materials have been disclosed in this District in other cases, **Ex. 1**, June 5, 2019 letter from E. Dubelier to J. Kravis, the government stated it was "producing all discoverable materials of which it is aware[,]" **Ex. 2**, Sept. 19, 2019 letter from J. Kravis to E. Dubelier.  But the government's letter actually contained *no materials at all*, and when undersigned counsel pointed that out, the government said, "There is no separate production coming to you in response to your letter.  Rather, by the discovery deadline, the trial team will provide you with all discoverable materials of which it is aware, including discoverable materials from the sources referenced in your letter, if there are any such materials."  **Ex. 3**, Sept. 20, 2019 email correspondence between J. Kravis and E. Dubelier.  So while the Court is pressing for a trial, after patiently waiting over 3 months for the answer to a simple question, the government has provided an unsolvable riddle as to whether or not the materials requested even exist (even though the materials must exist as support for the Treasury Department sanctions).

Then, late on Friday, October 4, 2019, in response to the Court's oral order during a hearing on September 16, 2019, the government advised undersigned counsel that it intends to "argue at trial" that the defendants conspired to cause certain named U.S. persons and

organizations to unwittingly act as agents of an unspecified foreign principal and "therefore either the individuals or organizations or the conspirators (or both) would have had a legal duty to register under" FARA.  **Ex. 4**, Oct. 4, 2019 Letter from United States Attorney to E. Dubelier. Through the course of 19 months of pre-trial litigation, numerous hearings, and hundreds of pages of briefing related to Concord's motions to dismiss and for bills of particulars, the government never once notified Concord or the Court of its intention to use this new theory; nor did the government ever argue that the Indictment even charged such a theory.  And even then, the government still has not disclosed specifically who, if anyone, had any legal duty to register under FARA, or who, specifically, is the foreign "principal" in this instance.

To say the least, the timing of the government's most recent bout of gamesmanship is highly suspicious.  And to say that the charge here is being manipulated is an understatement. Consider the sequence.  In its motion for a supplemental bill of particulars, Concord noted that with respect to FARA, an agent of a foreign principal would be subject to FARA only for conduct within the United States.  ECF 181 at 22–24.  Concord further noted the absence of any case law to suggest that a foreign person using the internet *outside* of the United States would be subject to FARA.  *Id.*  In opposition, the government argued that the indictment alleged "that the *conspirators* were required ... to register under ... FARA . . . ."  ECF 194 at 13 (emphasis added).

Then, on September 27, 2019, the deadline set by the Court to supplement its bill of particulars, the government requested a one-week extension to do so, and Concord consented. ECF 205.  During that extension period, on October 1, 2019, Concord filed a motion to strike surplusage, requesting that allegations relating to lawful conduct with respect to racial issues in the United States be stricken as prejudicial.  ECF 208 at 9–10.  Just three days later, the government proffered its brand-new theory of culpability that includes the argument that U.S.

persons, who are predominantly African-American, were duped by the Defendants into failing to register under FARA.  **Ex. 4**.

And brand-new it is.  Count One of the Indictment references FARA in paragraphs 1, 7, 26, 48 and 51.  But none of these references supports a theory of culpability that the co-conspirators' use of unwitting U.S. persons or organizations created a duty for someone to register under FARA.  Paragraph 1 simply mimics the general FARA prohibition on "agents" of a "foreign entity ... engaging in" certain activities in the U.S. without first registering under FARA.  Paragraph 7 accuses the "Defendants" of failing to register under FARA.  With respect to the accusations regarding political advertisements and rallies, again the Indictment alleges the "Defendants and their co-conspirators did not ... register as foreign agents with the U.S. Department of Justice."  Ind. ¶ 48; *see also id.* ¶ 51 (same).  None of the alleged "Overt Acts" accuses the Defendants or co-conspirators of causing unwitting U.S. persons or organizations to fail to register under FARA either.[2]  *Id.* ¶¶ 59–85.  Nor does the Indictment anywhere indicate that any U.S. persons had an obligation to register under FARA.

Now, consider the context.  Prior to the October 4 letter, not a single filing or document in the case reflected the government's newly contrived theory.  The government's opposition to Concord's July 2018 motion to dismiss argued that the Indictment discussed in detail the charged conduct.  ECF 56 at 6–8.  In particular, the government stated that the Indictment specified the Defendants' deceitful practices, such as that "defendants did not register as foreign agents with the United States Department of Justice."  *Id.* at 7 n.4 (citing Ind. ¶ 48).  Similarly, in opposing Concord's motion for a bill of particulars, the government argued that the Indictment clearly

---

[2] It cannot be that the government believes the individuals disclosed in the October 4 letter are co-conspirators, since the government was required to identify any co-conspirators in the bill of particulars itself and none of these individuals or entities were named there.

described the charges, specifically referenced the above language in its opposition to the motion to dismiss, and stated that the opposition "describes in detail the government's theory of Concord's criminal liability, including an explanation of the relevant statutory provisions of" FARA. ECF 111 at 3. And more recently, in opposing Concord's motion for a supplemental bill of particulars, the government claimed the Indictment "alleges that the **_conspirators_** were required to ... register under FARA . . . ." ECF 194 at 13 (emphasis added).

But nowhere in these various submissions does the government argue—or even hint—that the theory of causing unwitting U.S. persons or organizations to fail to register under FARA is alleged in the Indictment. On the contrary, when specifically directing the government to provide a bill of particulars with respect to the FARA allegations, the Court determined that the Indictment alleged that "**_foreign nationals_**" were required to disclose certain information about themselves to U.S. agencies. ECF 136 at 1–2 (emphasis added). The Court further concluded that had Concord complied with FARA, "**_they_**" would have had to disclose their Russian identities and affiliations to U.S. regulators. *Id*. (emphasis added). Similarly, the Court stated that the "**_defendants and their co-conspirators_**" impaired government functions by failing to register under FARA. *Id*. (emphasis added); *see also id.* at 12 (ordering the government to identify with respect to FARA the disclosure provisions "**_the defendants or their co-conspirators_**" allegedly violated) (emphasis added).

In the end, the prosecution's constantly evolving approach to the charges here is emblematic of the need to grant this motion. The changing charges beg the questions of what the grand jury was or was not told and how the instructions to the grand jury related to the Indictment's charging allegations, as well as settled law. The prosecution's latest machinations make the point in the clearest fashion possible. There is no apparent justification for the

prosecution to have concealed its new FARA-based interpretation of the Indictment until now, and the prosecution has had every opportunity over the past 19 months to disclose it to Concord and the Court. Either the prosecution was hiding its new interpretation all along, or it very recently made it up. Neither explanation is acceptable in this criminal proceeding. And whichever is correct, it compels the need for the relief Concord seeks to get to the bottom of what the grand jury was told before it returned the Indictment here.

## III.    Law and Argument

As the foregoing indisputable facts establish, Concord has a critical and particularized need to see how the prosecution instructed the grand jury on the law in order to determine what remedies Concord might have—dismissal included. And since Concord's request is narrowly tailored to include only the legal instructions provided to the grand jury, the Special Counsel's investigation is long over, and the grand jury's work has been completed, there is no reason not to grant the relief Concord seeks.

### A.    Legal Framework

Grand juries "must lean heavily upon the United States Attorney as [their] investigator and legal advisor." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979). "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (citation omitted). "Although the prosecutor need not give legal instructions which approach the comprehensiveness of the trial judge's charge to the jury, an instruction may be 'so misleading' due to mistakes or omissions, that the ensuing indictment

'will not be permitted to stand even though it is supported by legally sufficient evidence.'" *Id.* (citations omitted).

While the prosecutor has a "dual role" when it comes to grand juries—"pressing for an indictment and [ ] being the grand jury adviser"—the "latter duty must take precedence" when the two "conflict." *Ciambrone*, 601 F.2d at 628 (Friendly, J., dissenting) (quoting *United States v. Remington*, 208 F.2d 567, 573-74 (2d Cir. 1953) (L. Hand, J., dissenting)). The modern-day "gain in [the] prosecutors' influence over grand juries is all the more reason to insist that these limitations [on instructing the grand jury] be observed strictly." *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) (remanding for dismissal of indictment due to prosecutorial misconduct before the grand jury). And, relevant here, "courts tend to look less leniently upon erroneous legal instructions where the instructions were made with the intent of precluding a line of relevant inquiry or when other misconduct by the prosecutor suggests a pattern of overreaching." *Twersky*, 1994 WL 319367, at *4 (citing *Hogan*, 712 F.2d at 760–62) (other citations omitted)).

Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure operates against this legal backdrop. It authorizes the disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." A defendant must show a particularized need for disclosure of a grand jury matter. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682–83 (1958). With regard to legal instructions provided to the grand jury, the defendant must identify facts that raise doubts about the accuracy of the instructions. *See United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) ("[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that

the decision to indict was free from the substantial influence' of the erroneous instruction.")
(quoting *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (citation omitted)).

Courts thus have ordered *in camera* inspection or disclosure of the legal instructions to
the grand jury when it appears from subsequent positions taken by the government in
prosecutions that the instructions it provided may have been erroneous or incomplete. *See
United States v. Bravo-Fernandez*, 239 F. Supp. 3d 411, 416 (D.P.R. 2017); *United States v.
Etienne*, No. 17-CR-00093, 2019 WL 2548790, at *3 (N.D. Cal. Jun 20, 2019) ("Disclosure of
the instructions is also sufficiently narrow and focused as it only addresses whether a []
misstatement was made" by the prosecution).   Courts have found such error where the
government incompletely or erroneously provides legal instructions to the grand jury. *See
United States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990) (finding that the prosecutor's "careless
instructions" hindered "the grand jury's understanding of the importance of evaluating the
reliability of the evidence" and discouraged "it from demanding eye witness testimony"); *United
States v. Kasper*, 10-cr-318 (HBS), 2011 WL 7098042, at *7 (W.D.N.Y. June 20, 2011).

Ultimately, the governing standard is "a highly flexible one, adaptable to different
circumstances and sensitive to the fact that the requirements of secrecy are greater in some
situations than in others." *United States v. John Doe, Inc. I*, 481 U.S. 102, 116–17 (1987)
(citation omitted); *Judicial Watch, Inc. v. Tillerson*, 270 F. Supp. 3d 1, 5 (D.D.C. 2017) (same).
Thus, for example, "after the grand jury's functions are ended, disclosure is wholly proper where
the ends of justice require it."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234
(1940) (citation omitted); *see also Twersky*, 1994 WL 319367, at *5 ("Generally, however, once
an investigation is over, most of the policies which warrant maintaining the secrecy of the grand
jury proceedings, including, preventing the escape of those not yet indicted, are no longer

present.") (citing *United States v. Moten*, 582 F.2d 654, 663 (2d Cir. 1978)). And, requests that "steer[] clear of Rule 6(e)'s bread and butter: 'the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like'"—implicate minimal secrecy concerns. *Judicial Watch*, 270 F. Supp. 3d at 5 (quoting *In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 500 (D.C. Cir. 1998)).

**B.**     **Disclosure Of The Grand Jury Instructions Is Needed To Determine Whether There Are Grounds For Dismissal Of The Indictment Or Other Relief.**

There are compelling justifications supporting Concord's request for disclosure of the grand jury instructions. The ever-changing nature of the charges in this proceeding raises serious doubts about the instructions received by the grand jury as related to what the government now claims it will prove. Controlling law, undergirded by fundamental constitutional principles, calls for disclosure of the instructions in these circumstances.

**1.**     **Concord Has A Particularized Need To See The Grand Jury Instructions.**

The record demonstrates multiple reasons furthering Concord's particularized need to see the grand jury instructions at this juncture in this prosecution. ***First***, as evidenced by the prosecution's ever-shifting interpretations of the Indictment, there is a real danger that Concord was in fact indicted for conduct that was not illegal. ECF 210 at 36–37. The Indictment itself reflects as much, replete as it is with allegations and overt acts which are not in and of themselves illegal. In particular, the government's allegations with respect to FARA—especially its most recent one, sprung on Concord in the October 4 letter—are not supported by any reported case or previously filed FARA indictment. *Id.* at 9–11, 18–19. Moreover, the Special

Counsel framed the Indictment as a conspiracy to "interfere" in the 2016 election, Ind. ¶¶ 2, 4, 7, but no such crime of "election interference" exists in the federal criminal code.

To be sure, as this Court previously noted, conduct that does not violate a statute or regulation nonetheless can support a § 371 defraud conspiracy where it is deceptive and it interferes with a "lawful government function." *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 51 (D.D.C. 2018).  But that is beside the point for this motion.  The focus now is on the prosecution's penchant for changing course on the charges involved, leaving doubt about how the grand jury was instructed in the first instance.  Indeed, the lengths to which the prosecution has gone—and is going—to gin up new interpretations of culpability that just might survive pre-trial scrutiny gives rise to the real possibility that the grand jury was instructed that it could indict for conduct that was not illegal—not only under various substantive laws (such as FECA and FARA), but under § 371's defraud clause itself.  And if that was the case, the grand jury was badly mis-instructed, reason enough to order disclosure of the instructions. *Stevens*, 771 F. Supp. 2d at 567 ("[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction.").

But the stakes raised by a mis-instruction are even higher here because one cannot constitutionally be convicted for lawful conduct.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 573 (1996) ("'To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort'") (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).  And if that is what the instructions given to the grand jury allowed for—or

even expressly directed—that certainly raises serious questions about the constitutionality of the charge and this proceeding.

*Second*, the instructions will shed light on whether the grand jury in fact charged the government's newly concocted theory of culpability based on FARA and unwitting U.S. "agents" of Concord and the other Defendants in the first place.  As noted, "the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury."  *Hitt*, 249 F.3d at 1016 (citations omitted).  And that means "that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form."  *Russell*, 369 U.S. at 770 (citations omitted).

The Indictment does not appear capable of being construed to encompass the government's new theory of FARA criminality.  *Supra* at 8–9.  And if it cannot be construed that way, then the prosecution's attempt to inject that theory now must be seen for what it is:  an impermissible constructive amendment of the indictment that must be blocked.  *See United States v. Mangieri*, 694 F.2d 1270, 1277 (D.C. Cir. 1982) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them.") (citation omitted).

Under any circumstances, the grand jury instructions can provide definitive proof on whether the government instructed the grand jury on its new interpretation of FARA and, as appears likely, is now trying to constructively amend the Indictment the grand jury returned to salvage this prosecution.

On the one hand, if the government did instruct the grand jury on its new FARA interpretation, given the plain terms of the Indictment, that will reinforce the grand jury's intentional decision not to charge that theory.  Or, if the prosecution presented its new FARA

interpretation to the grand jury prior to the February 2018 Indictment, but only now—after 19 months of vigorous battles over exactly what the Indictment does and does not charge—has disclosed it to Concord, that will further expose the unconstitutionally arbitrary conduct that has marked this prosecution from the start.  ECF 210 at 22–31.  It also bespeaks a belief on the part of the current prosecutors from the U.S. Attorney's Office for the District of Columbia and DOJ that the charge the grand jury returned is defective; that those prosecutors would not have brought it had they, and not the Special Counsel, been leading the investigation; and that they are now grasping for anything that might sustain the charge long enough to get to trial.

On the other hand, if the prosecution did ***not*** so instruct the grand jury on its newly minted FARA interpretation, the news for the prosecution is just as grim.  It will conclusively show the Indictment cannot be construed to include the prosecution's new FARA interpretation—and yet the government forges ahead with it unbowed, having yet to explain to Concord or the Court how it can justify its belated effort to stretch and contort the Indictment to save its case.  No explanation is possible, however, since the government is bound by the terms of the Indictment under the fundamental principles that underlie its purpose and use.

***Third***, the need for disclosure of the legal instructions takes on even greater dimension now because the departure of the prosecution's new FARA interpretation from the plain language of the Indictment generates serious Fifth Amendment concerns.  Concord had no notice of this new "charge" and is constitutionally entitled not to have "to answer" because it is "not contained in the indictment" itself.  *Hitt*, 249 F.3d at 1016 (citation omitted).  The truth is, "[i]f the government envisioned" its new FARA interpretation when it pursued the Indictment against Concord, "it was obligated to ensure that the Grand Jury stated that [interpretation] with certainty and thereby conformed to the 'basic principles of fundamental fairness' underlying the two key

purposes of an indictment—notice to the defendant and protection against double jeopardy." *Id.* at 1026 (citing *Russell*, 369 U.S. at 763, 765–66).

Apart from that, without any textual basis in the words of the Indictment, the government's new interpretation also threatens Concord's Fifth Amendment double-jeopardy right by preventing Concord, this Court, or future courts from knowing exactly what Concord will (or won't) be tried for in this case. A jury conceivably could convict Concord based on the government's new FARA interpretation, but since that theory makes no appearance in the Indictment, the government would be left free to charge Concord later with FARA violations based on the same theory. It therefore is far from "clear that a future prosecution for conduct arising out of the charges here would be barred." *United States v. Hillie*, 227 F. Supp. 3d 57, 79–80 (D.D.C. 2017) (citation omitted) (dismissing indictment based in part on Double Jeopardy Clause). For these reasons alone, the Court should order the grand jury instructions disclosed to Concord.

**Fourth**, it seems highly likely that whatever legal instructions the prosecution gave the grand jury here were erroneous, incomplete, or both. The government continuously has shifted its theories and interpretations of the charge against Concord and the subsidiary allegations supporting it. *Supra* at 4–9; ECF 210 at 14–19. Whether these various theories and interpretations are legally correct or not, their tardy, post-Indictment revelation raises serious concerns that none of them were actually presented to the grand jury before it returned the Indictment. The likelihood of incompleteness is further driven by the reasoning in the recent decisions in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019). As Concord's renewed motion to dismiss demonstrates, under *Rehaif* and *Burden*, the prosecution will have to prove beyond a reasonable doubt that Concord "knew []

its status as a foreign-national corporation imposed disclosure and registration duties on it under U.S. law that it was obligated, on pain of criminal sanction, to carry out; and, arguably, that Concord knew about the specific statutes and regulations invoked when it acted."  ECF 210 at 32.  The Indictment plainly does ***not*** allege this type and degree of scienter, and the prosecution very likely did not instruct the grand jury accordingly.

But if the instructions did not lay out the *mens rea* that *Rehaif* and *Burden* require, they were incorrect, and the grand jury very well may have declined to charge Concord had it been instructed correctly, consistent with those two precedents.  *See, e.g., United States v. Way*, No. 1:14-CR-00101-DAD-BAM, 2015 WL 8780540, at *6–7 (E.D. Cal. Dec. 15, 2015) (ordering disclosure of "the grand jury transcripts and instructions to the grand jury regarding the element of knowledge on the analogue crimes charged" based on the Supreme Court's intervening decision in *McFadden v. United States*, 135 S. Ct. 2298 (2015)).  In *Way*, for example, the court found a particularized need for disclosure where "[d]efendants have articulated that the proof presented to the grand jury may have been legally insufficient to establish probable cause in light of the Supreme Court's holding in *McFadden*." *Id.* at *4.  So too here after *Rehaif* and *Burden*.

On balance, therefore, this presents a textbook case for disclosing the legal instructions given to the grand jury.  "Where there has been a Supreme Court decision which changes an element of a crime charged against defendants since the indictment[,] . . . justice warrants balancing in favor of disclosure over institutional secrecy concerns." *Way*, 2015 WL 8780540, at *6–7; *see also United States v. Hoey*, No. S3 11–cr–337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y., July 2, 2014) (ordering inspection where intervening decision in *Burrage v. United States*, 571 U.S. 204 (2014), altered the causation standard in determining sentencing enhancement for drug offense); *United States v. Ho*, Criminal No. 08–00337 JMS, 2009 WL

2591345, at *4 (D. Haw. Aug. 20, 2009) (ordering inspection following decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)); *United States v. Morales*, No. CR. S-05-0443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) ("Release of grand jury instructions may be proper when the Supreme Court has altered precedent upon which instructions were based.") (citation omitted).

*Fifth*, given the evident arbitrariness of the government's conduct in prosecuting this case from its inception, there is good reason to suspect that this arbitrariness infected the grand jury charging process itself.   Concord has chronicled this pattern of arbitrary prosecutorial conduct, ECF 210 at 6–19, 26–30, conduct that has risen to the level of a due process violation and, as a result, engendered "grave doubt that the decision to indict was free from the substantial influence" of precisely that sort of conduct at the grand jury instruction and charging stage. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263–64 (1988).

### 2.      Any Countervailing Reasons To Maintain The Secrecy Of The Grand Jury Instructions Are Exceedingly Weak.

The Special Counsel concluded his investigation back in early 2019 and issued a report on his findings in March 2019.   In January 2019, the Court extended the grand jury's term for another 6 months.   *See Mueller grand jury extended for up to 6 months*, CNN Politics (Jan. 4, 2019), https://www.cnn.com/2019/01/04/politics/mueller-grand-jury/index.html.   But that 6-month extension expired in July, and early last week, DOJ represented to this Court that "[t]his grand jury only recently concluded their work."   **Ex. 5**, *In Re: Application of the Committee on the Judiciary and the U.S. House of Representatives for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 19-48, Oct. 8, 2019 Hr'g Tr. 80:4 (D.D.C.) (excerpt).   This drastically diminishes any justification for keeping the legal instructions secret.

The Supreme Court has made clear that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [material] will have a lesser burden in showing justification." *John Doe, Inc. I*, 481 U.S. at 115 (quoting *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)); *Petrol Stops Nw. v. Cont'l Oil Co.*, 647 F.2d 1005, 1008 (9th Cir. 1981) (same); *see also West v. United States*, No. 08 CR 669, 2010 WL 1408926, at *3 (N.D. Ill. Apr. 5, 2010) (noting that the "burden" to show a particularized need for disclosure "works on a sliding scale: as secrecy considerations become less relevant, so too does the burden lessen") (citation omitted). Thus, where, as here, "the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *Socony-Vacuum Oil Co.*, 310 U.S. at 234 (citation omitted); *see also United States v. Burge*, No. 08 CR 846, 2014 WL 201833, at *3 (N.D. Ill. Jan. 17, 2014) ("The need for grand jury secrecy is diminished once the grand jury has fulfilled its duties."); *Way*, 2015 WL 8780540, at *5 (going further and concluding that "where the grand jury has concluded its investigation [and] there are no security concerns to jurors or witnesses . . . the strong public policy [for secrecy] must yield to a disclosure").

Secrecy considerations also are substantially lessened here given the nature of the materials sought. Concord seeks the legal instructions the prosecution provided, not any testimony given, the identities of the witnesses that gave that testimony, or information on the particular evidence the grand jury reviewed in rendering its charging decision. Unlike the identities or testimony of grand jury witnesses, the legal instructions given to the grand jury "do not implicate any of the concerns typically cited in support of grand jury secrecy." *United States v. Facteau*, No. 1:15-CR-10076-ADB, 2016 WL 4445741, at *4 (D. Mass. Aug. 22, 2016); *see also United States v. Gurry*, No. 16-CR-10343-ADB, 2019 WL 247205, at *2 (D. Mass. Jan. 17,

2019) (observing that "the considerations justifying secrecy are less relevant given" defendant was seeking grand jury's instructions); *Greenberg v. United States Dep't of Treasury*, 10 F. Supp. 2d 3, 27 (D.D.C. 1998) ("[T]he relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation.") (internal quotations and citations omitted).  Simply put, grand jury "instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect." *United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also United States v. Diaz*, 236 F.R.D. 470, 477–78 (N.D. Cal. 2006) (noting that "instructions … would not reveal the substance or essence of the grand jury proceedings").

Nor, especially given the completion of the grand jury's work, would disclosure of the instructions make it easier for Concord or any other defendant or investigatory target to "escape" indictment, "importun[e] the grand jurors," "tamper[] with the witnesses[,]" or discourage "free and untrammeled disclosures" from witnesses.  *In re Grand Jury Subpoena*, 103 F.3d 234, 237 (2d Cir. 1996) (listing the "rationales" behind grand jury secrecy) (citations omitted).  At the same time, "allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in instructing a grand jury, and give some teeth to the grand jury's shield' function" against arbitrary or oppressive prosecutorial conduct.  *Facteau*, 2016 WL 4445741, at *5 (quoting *United States v. Mandujano*, 425 U.S. 564, 573 (1976)).

## IV.    Conclusion

Exercising its "duty in a case of this kind . . . to weigh carefully the competing interests in light of the relevant circumstances and the [governing legal standards[,]" *Douglas Oil*, 441

U.S. at 223, the Court should grant Concord's motion and order the disclosure of the grand jury instructions that led to the return of the Indictment of Concord.

Dated: October 16, 2019                              Respectfully submitted,

                                                     CONCORD MANAGEMENT
                                                     AND CONSULTING LLC


                                        By:   /s/ Eric A. Dubelier
                                              Eric A. Dubelier (D.C. Bar No. 419412)
                                              Katherine J. Seikaly (D.C. Bar No. 498641)
                                              REED SMITH LLP
                                              1301 K Street, N.W.
                                              Suite 1000 – East Tower
                                              Washington, D.C. 20005-3373
                                              202.414.9200 (phone)
                                              202.414.9299 (fax)
                                              edubelier@reedsmith.com
                                              kseikaly@reedsmith.com

                                              James C. Martin[*]
                                              Colin E. Wrabley[*]
                                              REED SMITH LLP
                                              225 Fifth Avenue
                                              Pittsburgh, PA 15222-2716
                                              412.288.3131 (phone)
                                              412.288.3063 (fax)
                                              jcmartin@reedsmith.com
                                              cwrabley@reedsmith.com
                                              [*]*Admitted Pro Hac Vice*

Exhibit 1 to Defendant Concord Management and Consulting LLC's Motion for Disclosure of Grand Jury Instructions, 18-cr-32-DLF



**Eric A. Dubelier**
Direct Phone: +1 202 414 9291
Email: edubelier@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA 22102-5979
Tel +1 703 641 4200
Fax +1 703 641 4340
reedsmith.com

June 5, 2019

**Via Electronic Mail**

Jonathan Kravis
United States Attorney's Office
555 Fourth Street NW
Washington, DC 20530

**Re:**   *United States v. Concord Management and Consulting LLC, 1:18-cr-00032-DLF*

Dear Mr. Kravis:

This letter constitutes a supplemental discovery request on behalf of our client Concord Management and Consulting LLC ("Concord").

Please produce any and all Designation and Blocking Memoranda, Evidentiary Memoranda, and related materials, including exhibits referenced therein, prepared by the Department of the Treasury, Office of Foreign Assets Control related to Concord Management and Consulting LLC, Concord Catering, and Yevgeniy Prigozhin in connection with their designation under any Executive Order as Specially Designated Nationals.

As you are aware, the government repeatedly has noted the Defendants' designations in its filings in this matter. *See, e.g.,* Government's Motion for a Protective Order (ECF No. 24) at 8 n.5; Government's Opposition to Defendant's Motion to Dismiss (ECF No. 47) at 8; Government's Opposition to Defendant's Motion to Dismiss (ECF No. 56) at 2. These types of documents have been disclosed in other litigation. *See, e.g., Deripaska v. Mnuchin,* 19-cv-272 (D.D.C. May 28,2019), ECF No. 6 (filing administrative record including Designation and Blocking Memoranda, Evidentiary Memoranda, and related documents); *Chichakli v. Szubin,* 06-cv-1546 (N.D. Tex. Dec. 8, 2006), ECF No. 14 (same). Further, these documents are subject to disclosure pursuant to FOIA. *See* 5 U.S.C. § 552(a)(2)(A).

We ask that you produce the requested information on or before Wednesday, June 19, 2019, if we do not hear from you by that date, we intend to file a motion to compel these materials.

Very truly yours,

Eric A. Dubelier

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

EME_ACTIVE-572340444.1

Exhibit 2 to Defendant Concord Management and Consulting LLC's Motion for Disclosure of Grand Jury Instructions, 18-cr-32-DLF



U.S. Department of Justice

Jessie K. Liu
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

September 19, 2019

Eric Dubelier, Esq.
Katherine Seikaly, Esq.
Counsel for Concord Management and Consulting, LLC

> Re:   *United States v. Concord Management and Consulting, LLC*, No. 18-CR-32-2

Dear Counsel:

We write to respond to your letter dated June 5, 2019.

The trial team has reviewed materials in the possession of the Treasury Department's Office of Foreign Assets Control related to Concord Management and Consulting LLC, Concord Catering, and Yevgeniy Prigozhin.  Consistent with its discovery obligations, the trial team is producing all discoverable materials of which it is aware to the defense.

Please do not hesitate to contact us if you have any questions about this information.

Sincerely,

/s/ Jonathan Kravis
Jonathan Kravis
Katherine Rakoczy
Luke Jones
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia

Heather Alpino
Trial Attorney
National Security Division
U.S. Department of Justice

1

Exhibit 3 to Defendant Concord Management and Consulting LLC's Motion for Disclosure of Grand Jury Instructions, 18-cr-32-DLF

| | |
|---|---|
| **From:** | Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov> |
| **Sent:** | Friday, September 20, 2019 9:38 AM |
| **To:** | Dubelier, Eric A.; Seikaly, Kate J; Curtis, Deborah (USADC); Rakoczy, Kathryn (USADC); Alpino, Heather (NSD) |
| **Subject:** | RE: Concord Discovery Request |

<mark>EXTERNAL E-MAIL</mark>

There is no separate production coming to you in response to your letter. Rather, by the discovery deadline, the trial team will provide you with all discoverable materials of which it is aware, including discoverable materials from the sources referenced in your letter, if there are any such materials.

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
202-252-6886

---

**From:** Dubelier, Eric A.
**Sent:** Friday, September 20, 2019 9:00 AM
**To:** Kravis, Jonathan (USADC) ; Seikaly, Kate J ; Curtis, Deborah (USADC) ; Rakoczy, Kathryn (USADC) ; Alpino, Heather (NSD)
**Subject:** RE: Concord Discovery Request

Jonathan:

What does this mean? There are no enclosures and no reference to a subsequent production? Thanks

**Eric A. Dubelier**
202-414-9291
edubelier@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005
202-414-9200
Fax 202-414-9299

---

**From:** Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>
**Sent:** Thursday, September 19, 2019 5:00 PM
**To:** Seikaly, Kate J <KSeikaly@ReedSmith.com>; Curtis, Deborah (USADC) <Deborah.Curtis@usdoj.gov>; Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** RE: Concord Discovery Request

1

EXTERNAL E-MAIL

Dear counsel:

Please see attached.

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
202-252-6886

---

**From:** Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Sent:** Wednesday, June 5, 2019 4:56 PM
**To:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Curtis, Deborah (USADC) <DCURTIS4@usa.doj.gov>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Alpino, Heather (NSD) (JMD) <Heather.Alpino@usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** Concord Discovery Request

Counsel,

Please see the attached letter.

Thank you,
Kate


**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA 22102-5979
+1 703 641 4200
Fax +1 703 641 4340

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01


External Signed

Exhibit 4 to Defendant Concord Management and
Consulting LLC's Motion for Disclosure of Grand
Jury Instructions, 18-cr-32-DLF



U.S. Department of Justice

Jessie K. Liu
United States Attorney

*District of Columbia*

Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530

October 4, 2019

Eric Dubelier, Esq.
Katherine Seikaly, Esq.

     Re:    <u>U.S. v. Concord Management and Consulting, LLC</u>, Case No. 18-CR-32-2 (DLF)

Dear Counsel:

    Pursuant to the Court's instructions at the September 16, 2019 status hearing, we write to supplement the government's bill of particulars as follows.

    The government intends to argue at trial that the defendants conspired to cause some or all of the following individuals or organizations to act as agents of a foreign principal while concealing from those individuals or organizations the fact that they were acting as agents of a foreign principal and therefore either the individuals or organizations or the conspirators (or both) would have had a legal duty to register under the Foreign Agents Registration Act:



1



Please do not hesitate to contact us if you have any questions about this information.

Sincerely,

/s/_____

Heather Alpino
Trial Attorney
National Security Division

/s/_____

Jonathan Kravis
Kathryn Rakoczy
Luke Jones
Assistant U.S. Attorneys

Exhibit 5 to Defendant Concord Management and Consulting LLC's Motion for Disclosure of Grand Jury Instructions, 18-cr-32-DLF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **In Re:**  Application of the Committee | ) | Grand Jury |
| on the Judiciary and the U.S. House | ) | 19-48 |
| of Representatives for an Order | ) | |
| Authorizing the Release of Certain | ) | |
| Grand Jury Materials, | ) | |
| **Petitioners:**  Committee on the | ) | October 8, 2019 |
| Judiciary and U.S. House of | ) | 9:59 a.m. |
| Representatives | ) | Washington, D.C. |
| **Respondent:** U.S. Department of Justice.) | | |
| | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

FOR PETITIONERS:        DOUGLAS N. LETTER
                        MEGAN BARBERO
                        JOSEPHINE MORSE
                        ADAM A. GROGG
                        U.S. House of Representatives
                        219 Cannon House Office Building
                        Washington, DC 20515
                        (202) 225-9700
                        Email: Douglas.letter@mail.house.gov


FOR RESPONDENT:         ELIZABETH J. SHAPIRO
                        JAMES BURNHAM
                        CRISTEN HANDLEY
                        STEVEN MEYERS
                        SERENA ORLOFF
                        JAMES GILLIGAN
                        U.S. Department of Justice
                        1100 L Street, NW
                        Washington, DC 20530
                        (202) 514-5302
                        Email: Elizabeth.Shapiro@usdoj.gov

Court Reporter:         Elizabeth Saint-Loth, RPR, FCRR
                        Official Court Reporter

Proceedings reported by machine shorthand,
transcript produced by computer-aided transcription.

1                           **P R O C E E D I N G S**

2                    THE DEPUTY:  Matter before the Court, Grand Jury

3      Matter 19-48, In Regards to an Application of the Committee

4      on the Judiciary and the U.S. House of Representatives for

5      an Order Authorizing the Release of Certain Grand Jury

6      Materials.  Petitioners:  Committee on the Judiciary and

7      U.S. House of Representatives; Respondent:  U.S. Department

8      of Justice.

9                    Counsel, please come forward and state your names

10     for the record.

11                   MR. LETTER:  Douglas Letter, the General Counsel,

12     the U.S. House of Representatives.  And if I may just for a

13     moment, Your Honor, with me I've got --

14                   THE COURT:  Yes, I would like that.

15                   MR. LETTER:  -- Associate Counsel Megan Barbero

16     and Jodi Morse and Assistant Counsel Adam Grogg, and members

17     of the House Judiciary Committee.

18                   THE COURT:  Okay.  What fun.  Touting from the

19     Hill.

20                   MS. SHAPIRO:  Good morning, Your Honor.

21     Elizabeth Shapiro from the Department of Justice.

22                   THE COURT:  Yes.  Good morning, Ms. Shapiro.

23                   Who is with you at counsel table?

24                   MS. SHAPIRO:  Good morning.

25                   Yes.  At counsel's table with me -- on this side

1    is James Burnham, Cristen Handley, Steven Meyers,

2    Serena Orloff, and James Gilligan, all colleagues from the

3    Department of Justice.

4            THE COURT:  Okay.  Well, thank you.

5            Mr. Letter, this is your petition so I will start

6    with you.

7            MR. LETTER:  Thank you, Your Honor.  And may it

8    please the Court.

9            As you know, we are here because the House is

10   seeking access to grand jury material that was redacted from

11   *The Mueller Report* or certain subjects that we have defined

12   for you is in the material that the Special Counsel,

13   Mr. Mueller, developed.

14           THE COURT:  Why don't we just begin so I can make

15   sure we're totally all clear about the scope of what the

16   House is seeking production of.

17           MR. LETTER:  Sure.

18           THE COURT:  Certainly, grand jury material is not

19   the only material redacted from *The Mueller Report*.  Also

20   redacted were -- was information that, in the Department's

21   view, could compromise sensitive sources and methods,

22   ongoing investigations, and the privacy and reputation of

23   third parties.

24           So the committee is not seeking production of any

25   of those three other categories of material; is that

1    correct?

2            MR. LETTER:  Not here, Your Honor.

3            We had -- we had worked out arrangements --

4    Attorney General Barr authorized disclosures to certain

5    members of Congress, the Speaker of the House, for example;

6    the judiciary committee had access to Volume II of the

7    report; the intelligence committee Volume I.  I had access

8    to both volumes.  So we have seen that redacted material.

9            The only thing that General Barr did not authorize

10   us to see was the grand jury material and that, therefore,

11   is within your authority.

12           THE COURT:  Okay.  And so it's fair to say that

13   the House Judiciary Committee if not as a whole, but certain

14   members of it, as well as HPSCI, have seen a lot more

15   information from *The Mueller Report* than the public has

16   seen, for example?

17           MR. LETTER:  That is correct, Your Honor, yes.

18   Again, the Attorney General determined to give a significant

19   percentage of Congress that access.

20           THE COURT:  All right.  And the House Judiciary

21   Committee has raised no question as to the accuracy of any

22   of the redactions made for grand jury secrecy; is that

23   correct?

24           MR. LETTER:  That is correct.

25           I am just going to check that to make absolutely

1     the particularized need to say -- for them to see the grand

2     jury material to evaluate whether or not when that witness

3     was under oath in front of a grand jury with tough

4     prosecutors, that witness might have given them a more

5     accurate story, a more consistent story with the truth.

6              MS. SHAPIRO:  But they haven't pointed to --

7              THE COURT:  And so why isn't that generalized need

8     to avoid being misled enough of a particularized need here

9     for me to have to go no further?

10             MS. SHAPIRO:  Because I think the Supreme Court

11    has told us that a generalized need is not sufficiently

12    particularized.  They need to point to why they think that a

13    witness has lied or why they think they need a particular

14    person's testimony.  It can't just be that, We have had a

15    lot of people come before us and we want to double-check to

16    make sure they were all telling the truth -- which is

17    essentially the argument.

18             It needs to be particularized.  And they don't get

19    a pass on that because they're talking about impeachment

20    because they want to put themselves within the normal rubric

21    of a judicial proceeding.

22             THE COURT:  All right.

23             MS. SHAPIRO:  I also --

24             THE COURT:  Yes.

25             MS. SHAPIRO:  I just wanted to address, also, on

1    the particularized need point, the sort of secrecy protocol

2    that the House is touting as reassuring us; but it doesn't

3    because, as we have pointed out, there are ongoing matters.

4    This grand jury only recently concluded their work.  There

5    are spin-off matters, investigations, law enforcement

6    matters, and --

7            THE COURT:  Well, perhaps you can clarify because

8    *The Mueller Report* redactions for both 6(e) secrecy reasons,

9    as well as for ongoing investigations, I had, in some ways,

10   assumed that the -- if a redaction was for both 6(e) and

11   ongoing criminal investigations, there were no redactions

12   that had two reasons given.  For example, they just had one;

13   and that the ongoing criminal investigations sort of

14   prevailed.  And so -- is that right?

15           MS. SHAPIRO:  Well, I think that you are right in

16   that there was one justification --

17           THE COURT:  So let me put it another way.

18           All of the 6(e) redactions are redactions that but

19   for 6(e) would be disclosed, are not subject to the other

20   three categories of redacted information --

21           MS. SHAPIRO:  I can't say definitively.  Maybe --

22           THE COURT:  Can you check with somebody at your

23   table?

24           MS. SHAPIRO:  I don't think so.

25           THE COURT:  They were not involved in the

1      This is the position of the House.

2              I think -- you said you are going to issue an

3      order because I had a couple of questions --

4              THE COURT:  Yes.  I have made different requests

5      from the different parties -- and my very reliable law clerk

6      is collecting all of the different things that I have asked

7      for --

8              MR. LETTER:  Thank you.

9              THE COURT:  -- so we will be issuing a minute

10     order shortly that will lay out for all of you what I have

11     requested.

12             MR. LETTER:  And just one more moment.

13             (Whereupon, Mr. Little consults with colleagues.)

14             MR. LETTER:  Thank you for your patience, Your

15     Honor.

16             THE COURT:  Okay.  Thank you.  You are all

17     excused.

18             (Whereupon, the proceedings conclude, 12:17 p.m.)

19                         * * * * *
                        **CERTIFICATE**
20

21             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
        certify that the foregoing constitutes a true and accurate
        transcript of my stenographic notes, and is a full, true,
22      and complete transcript of the proceedings to the best of my
        ability.
23

24         Dated this 9th day of October, 2019.

25         /s/ Elizabeth Saint-Loth, RPR, FCRR
           Official Court Reporter

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC

Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

## PROPOSED ORDER

With the Court having considered Defendant Concord Management and Consulting LLC's Motion for Disclosure of Grand Jury Instructions, it is hereby

**ORDERED** that the motion is **GRANTED**, and the government shall provide to Defendant the instructions provided to the grand jury regarding Count One of the Indictment.

Date: _____

_____
DABNEY L. FRIEDRICH
United States District Judge