```
 1                BEFORE THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLUMBIA

 3   UNITED STATES OF AMERICA,       .
                                     .  Case Number 18-CR-32
 4           Plaintiff,               .
                                     .
 5      vs.                          .
                                     .  Washington, D.C.
 6   CONCORD MANAGEMENT AND          .  August 26, 2019
     CONSULTING LLC,                 .  9:06 a.m.
 7                                   .
             Defendant.              .
 8   - - - - - - - - - - - - - - - -

 9            TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
                     (SEALED PORTIONS REDACTED)
10            BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                   UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
     For the Government:             JONATHAN I. KRAVIS, AUSA
13                                   U.S. Attorney's Office
                                     555 Fourth Street Northwest
14                                   Washington, D.C. 20530

15
     For Defendant Concord
16   Management and Consulting LLC:  ERIC A. DUBELIER, ESQ.
                                     Reed Smith LLP
17                                   1301 K Street Northwest
                                     Suite 1000, East Tower
18                                   Washington, D.C. 20005

19                                   KATHERINE J. SEIKALY, ESQ.
                                     Reed Smith LLP
20                                   7900 Tysons One Place
                                     Suite 500
21                                   McLean, Virginia 22102

22   Official Court Reporter:        SARA A. WICK, RPR, CRR
                                     333 Constitution Avenue Northwest
23                                   U.S. Courthouse, Room 4704-B
                                     Washington, D.C. 20001
24                                   202-354-3284

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

THE COURTROOM DEPUTY: Good morning, Your Honor. This is Criminal Case Year 2018-032, United States of America versus Concord Management and Consulting LLC, defendant number 2.

Counsel, please introduce yourselves for the record, beginning with the government.

MR. KRAVIS: Good morning, Your Honor. Jonathan Kravis for the United States.

MR. DUBELIER: Good morning, Your Honor. Eric Dubelier and Katherine Seikaly for Concord.

THE COURT: Good morning, Counsel.

So I scheduled this sealed teleconference to discuss some of the terms of the parties' proposed protective order. There is some language in the proposed order that I find a little ambiguous, and I want to talk to you all, and because it relates to the mechanics of how sensitive discovery will be handled, I scheduled this matter under seal to ensure that the parties can answer my questions without revealing any sensitive information.

But as we have done with recent sealed proceedings, I will direct the parties to review the transcript, and I will order the court reporter to unseal it for the limited purpose for you all to review it following this proceeding to determine whether any or all of the transcript may be released to the public with or without redactions.

So the particular questions I have primarily relate to

1  paragraphs 20, 23, and 26.  Each of these paragraphs includes
2  similar language stating that the provisions are not intended to
3  prevent direct, oral, or electronic communications regarding
4  factual information.  Paragraph 23 states so long as those
5  discussions do not involve explanation or description of the
6  techniques used to collect the discovery, whereas paragraphs 20
7  and 26 do not.
8       And as I said, this language is ambiguous to me, and if I
9  am to enter this protective order and potentially be called upon
10 to enforce its terms, I want to ensure that my understanding of
11 its meaning is consistent with the understanding of both
12 parties.
13      So Mr. Kravis, can you help me understand what this
14 language is intended by the parties to mean?
15           MR. KRAVIS:  Yes, Your Honor.  So the issue that this
16 language was intended to address was that as we were working on
17 the proposed revised protective order, defense counsel raised
18 with the government the question of if we, defense counsel, are
19 talking with possible fact witnesses in Russia, for example
20 Concord officers and employees, are we prohibited from raising
21 with them any fact that happens to be referenced in a piece of
22 U.S. sensitive discovery.  For example, if you have given us --
23 if the government has given the defense the return on an e-mail
24 account and the e-mail account is an account belonging to a
25 particular person, does this mean that defense counsel is not

1    allowed to ask people at Concord, do you know who this person
2    is, without revealing the content of the U.S. sensitive
3    discovery.
4         Our view of that was the answer to that question is no,
5    they would not be so prohibited.  The protective order was
6    intended to protect the content of discovery but was not
7    intended to protect every fact or alleged fact that is
8    referenced in U.S. sensitive discovery.
9         So these sentences reflect the parties' efforts to try to
10   make that distinction in the protective order, that is, to allow
11   defense counsel to discuss underlying facts that may happen to
12   appear in sensitive discovery, like the name of a particular
13   person, for example, allow them to have those conversations with
14   Concord officers and employees without revealing any information
15   about the content of the U.S. sensitive discovery, for example
16   by saying, you know, we're asking you about this person because
17   the government produced to us in discovery this and such e-mail
18   account, that kind of thing.
19             THE COURT:  All right.  Well, I guess the trouble I am
20   having is, isn't everything that's involved in the discovery, in
21   the e-mails, for example, factual information, and what is the
22   difference between factual information and content which you're
23   distinguishing here?  I don't know how we -- how you are going
24   to draw these lines.
25             MR. DUBELIER:  Your Honor, this is Eric Dubelier, if I

```
 1    may.
 2              THE COURT:  Of course.
 3              MR. DUBELIER:  I think one of the issues we were
 4    trying to get to here is, you will recall the government's
 5    argument throughout has been it's not really the facts that are
 6    in the sensitive discovery that make it sensitive.  ████████
 7    ████████████████████████████████████████████████████████
 8    ████████████████████████████████████████████████████████
 9    ████████████████████████████████████████████████████████████
10    ████████████████████████████████████████████████████████████
11    ████████████████████████████████████████████████████████
12    ████████████████████████████████████████
13         And so we have read -- but the way that the original
14    protective order was written, to read it literally would mean
15    things like Kate and I can't discuss something over our e-mail
16    that relates to sensitive discovery.  We can't e-mail each other
17    because we are on a computer connected to the Internet.  And we
18    can't ask basic questions of the client of does this person
19    named Joe Smith work here and during what period of time did
20    they work here if they did.
21         And so we were trying to deal with that.  Mr. Kravis and --
22    we went back and forth a lot on this language, and that is the
23    issue we are trying to deal with.  And I think I do understand
24    how you reading it, having not had access to any of the
25    discovery, this looks ambiguous.
```

```
 1        I had the feeling we had a meeting of the minds with
 2   Mr. Kravis, and the way he just described it, I agree, although
 3   I take your point that you, again not having access to the data
 4   itself, it sounds ambiguous.
 5             THE COURT:  Well, the other issue is, to the extent
 6   some of this sensitive information, I understand, ▮▮▮▮▮▮▮▮▮▮
 7   ▮▮▮▮▮▮▮▮▮▮ that in and of itself is factual information, is
 8   it not?
 9             MR. DUBELIER:  I think technically yes, but actually,
10   I am just trying to imagine a situation where we would have to
11   discuss ▮▮▮▮ with somebody at this point.
12             THE COURT:  Well, that's an extreme --
13        (Simultaneous crosstalk.)
14             MR. DUBELIER:  -- at some time in the future, there
15   would be U.S. sensitive data, and we would need to come to you
16   and say we need to discuss the ▮▮▮▮ on this particular
17   document with this person for this reason.  I think that's -- I
18   don't think we would view the ▮▮▮▮ as factual information
19   that we could discuss with the client.
20             THE COURT:  All right.  Well, that's an extreme
21   example that I gave.  I would assume that you wouldn't.  But,
22   you know, technically, it is factual information.
23        And I am just -- I can understand and I appreciate what the
24   parties are trying to do here to make this protective order,
25   this discovery, you know, these restrictions workable for the
```

1  defense.  I do understand.  I just -- I'm just concerned that if
2  there is ever an alleged breach of this, it's going to be very
3  hard to tease out what's permitted under this and what's not
4  permitted, and what this is basically doing is relying in good
5  faith on the defense to make those calls appropriately.
6      And I just want to make sure that we have done all we can
7  to make the protective order as clear as possible.  Because -- I
8  mean, with this language, I think literally defense counsel
9  could read entire documents in full, on and on and on and on.  I
10 don't think Mr. Dubelier is going to do that, but I don't see
11 the limitations here, and that's what concerns me.  If there
12 ever is an alleged breach of this, how do I draw a distinction
13 between what you are trying to achieve here and what the plain
14 language of this says?  It will be very difficult.
15      And why do paragraphs 20 -- 20, 23, and 26, why don't
16 they -- why don't all of them have the same qualifying language
17 that paragraph 23 has with respect to discussions involving any
18 explanation or description of the techniques used to collect the
19 intermediate or sensitive discovery materials?  Am I just not
20 reading these together as I should?  Is that -- does that apply
21 to both 20 and --
22          MR. DUBELIER:  Your Honor, I think you are pointing
23 out legitimate points, and that is, why isn't the language
24 consistent.  As we were making edits to the document, we were
25 editing different paragraphs at different times.  There was

1   discussion and negotiation with Mr. Kravis.  I don't think there
2   was any intent to be inconsistent in the way we wrote this up.
3        Specifically with -- with respect to paragraph 20, that is
4   probably the easiest one.  And that is, the only point we were
5   trying to make there is that we, the Reed Smith team, can
6   discuss the sensitive discovery in our own e-mails to each
7   other, that that's not prohibited.  Up until now, we have taken
8   the position that that was prohibited because our computers are
9   connected to the Internet.
10       The same thing with filing pleadings and draft pleadings,
11  exchanging draft pleadings.  The government has sent to us over
12  the Internet pleadings that they filed that contained
13  substantive sensitive discovery.  And our view is, well, that's
14  prohibited by the protective order.  So we were trying to get to
15  that on both sides, that that's not what the concern is here.
16  So that was the easy one.
17       The more complicated one --
18           THE COURT:  All right.  Wait.  Let's stop there,
19  Mr. Dubelier.
20       So on paragraph 20, why wouldn't that also include the
21  qualifier "so long as those discussions do not involve
22  explanation or description of the techniques used to collect the
23  intermediate or U.S. sensitive materials or the specific" --
24  again, I don't know what this means, "or the specific content of
25  any such document"?  That, I think, for attorneys they need.

1    But you know, Mr. Kravis, you have raised in the past
2    concerns about hacking and the like.  And I am just wondering,
3    if telephones and e-mails are wide open for discussions related
4    to how this sensitive discovery was collected, is that your
5    intention here?  Are you in agreement that that's appropriate?
6            MR. KRAVIS:  What we had discussed was that
7    discussions among defense counsel about the kind of, for lack of
8    a better way to put it, factual information that I had been
9    discussing previously, for example the identity of a particular
10   person who may be referenced in a document that is designated as
11   U.S. sensitive, that that kind of discussion can take place
12   among defense counsel without everyone being, you know, inside
13   the room at Reed Smith, so long as the discussion was confined
14   to the sort of underlying factual information as opposed to the
15   content of the U.S. sensitive discovery itself.  That was what
16   the language -- that was what the language was trying to
17   capture.
18           MR. DUBELIER:  And Your Honor, we would have no
19   objection to adding the caveat that's in the subsequent
20   paragraph with respect to methods of collection.  We wouldn't be
21   discussing that anyway over e-mail.
22           THE COURT:  All right.  You all --
23           MR. KRAVIS:  If the Court would like, we, the parties,
24   can take another crack at, perhaps, clarifying or refining the
25   language on this point in the proposed protective order.

1            THE COURT:  All right.  Well, I guess, you know, there
2   are two points.  One is, these paragraphs are worded slightly
3   differently.  And I assume that was intentional, but maybe it
4   wasn't.  And I was trying to understand why.  And two,
5   "regarding factual information" just seems like there is no
6   limitation attached to that.
7        Again, I do appreciate what you are trying to do.  You have
8   used different words here describing this to me.  You have
9   talked about specific content.  You've -- I don't know if there
10  is a better way to do this, but I am concerned that -- if there
11  is ever an alleged breach, how this language is to be
12  interpreted.  And I think it is difficult to craft.
13       And I think -- Mr. Dubelier, I think the onus is going to
14  have to be on you moving forward, no matter what language we
15  agree on, that if you feel like some language is potentially
16  close to the line, that you come to me first, that you have
17  tried to construe this narrowly.  I don't want to hinder your
18  ability to prepare your defense, but I do want to make sure that
19  there is a meeting of the minds between me and both parties here
20  and that we really are clear about what this language means.
21       Let me raise a couple of other questions for each of you.
22  On paragraph 18, paragraph 19, paragraph 20, these are
23  paragraphs that are talking about U.S. sensitive discovery, and
24  I take it we are talking in each of these about U.S. defense
25  counsel?

1   Paragraph 18, 19, and 20 talk about -- just say defense
2   counsel, and I assume it is referencing U.S. defense counsel.
3   Is that correct?  I can't hear if someone is speaking.
4           MR. DUBELIER:  Yes.
5           THE COURT:  Yes, that's correct?
6           MR. DUBELIER:  Yes.
7           THE COURT:  Okay.  And paragraph 21 talks about sealed
8   filings with U.S. sensitive materials.  I know we had a little
9   bit of a question in the past about whether counsel is talking
10  about sealed filings with the client.
11      And so I am wondering, what, if any, discussion
12  restrictions are on sealed filings that contain U.S. sensitive
13  discovery?  How do the parties read the protective order?
14      If -- I can't hear whoever is speaking now.  I don't know
15  if I am supposed to hear.  But I am hearing a voice in the
16  background.
17          MS. SEIKALY:  Sorry.  Good morning, Your Honor.  This
18  is Katherine Seikaly.
19      We were going -- we had intended to interpret that the same
20  as we have been, which is, to the extent any filings refer or
21  attach U.S. sensitive discovery, we would not be sharing those
22  with the Russian law firm or the client.  We would redact --
23          THE COURT:  Ms. Seikaly, the court reporter is having
24  a hard time hearing you.
25          MS. SEIKALY:  Sorry.  I was saying, we were going to

1  interpret that the way we had been, which is, we would -- to the
2  extent a filing itself references sensitive discovery or
3  discusses it, that we would make those redactions, and if there
4  was an exhibit attached that was from the U.S. sensitive
5  discovery, we would withhold that to the extent that was
6  shared -- to be able to share it with both the Russian law firm
7  and the client.
8              THE COURT:  All right.  And with respect to the timing
9  on the firewall counsel process, this briefing schedule is
10 really protracted.  You are giving 14 days for a particularized
11 showing by the government, another 14 days for the defense, and
12 I have got to consider it.  We are looking at well over a month
13 to resolve each issue before firewall counsel.  And if you
14 expect the process to be that protracted, we are going to run
15 into trouble with any trial date.  And if this is the time frame
16 the parties contemplate that they need, I would hope that your
17 proposed schedule that I am going to receive on Friday will
18 impose some end date to these proceedings.  Otherwise, we are
19 just -- we are going to be jammed.
20     And I am just curious, do you all really think you need two
21 weeks on each side to brief these issues?  It seems like this
22 could be a week at most for each side to respond to these.
23 Otherwise, we are just -- you know, we've got another year of
24 discovery fights.
25              MR. DUBELIER:  This is Eric Dubelier.  We don't need

```
 1    that time.
 2            THE COURT:  Mr. Kravis, do you --
 3            MR. DUBELIER:  So if you propose to change it to seven
 4    days, that's okay with us.
 5            THE COURT:  Mr. Kravis?
 6            MR. KRAVIS:  That's fine.  I mean -- that's fine with
 7    the government.  Obviously, the investigative team wouldn't be
 8    participating in that briefing process, but on behalf of
 9    firewall counsel, that change is fine.
10            THE COURT:  All right.  And Mr. Dubelier, for this
11    order, proposed scheduling order that's coming in, do you
12    contemplate having a cut-off date on firewall proceedings?
13            MR. DUBELIER:  Your Honor, I am hesitating because as
14    I advised the Court at the last hearing, we are not through all
15    of the discovery yet.  And so I can't say as I sit here today
16    with certainty that we have reviewed everything we need to
17    review to determine whether or not anything has to go through
18    the firewall process.
19            THE COURT:  Well, are you on track -- you mentioned
20    that you intend to make a request before firewall counsel.  Is
21    that coming this week?
22            MR. DUBELIER:  Yes.
23            THE COURT:  All right. And are you -- I trust you are
24    not doing this seriatim, that you will do these as they surface
25    and we do them all at once?  There is no need to do these one
```

1    after the other.  We can multitask, can we not, and deal with
2    all these firewall counsel -- to the extent you have identified
3    issues, deal with them as soon as they arrive than deal with
4    them en masse?
5              MR. DUBELIER:  I don't know that I can do that, Your
6    Honor, again because the requests are so document specific.  As
7    we identify documents that we think -- now that we know the U.S.
8    sensitive discovery is here and we are not going to be able to
9    transmit the entire set to Russia, we need to identify specific
10   items within the sensitive discovery that we feel like we need
11   to discuss with the client, and we are in the process of doing
12   that.
13      We have a small number that we need to discuss now, and we
14   think now that it is ripe.  But I don't know.  There are two
15   ways to do this, I guess, and I am open to however the Court
16   would prefer this.  That is, we could bundle -- wait a couple of
17   months until we are farther down the road --
18             THE COURT:  No, no, no, no waiting, no waiting.  I
19   want them as they arise, and I want them as soon as they arise.
20             MR. DUBELIER:  Okay.  Well, that's what we will do.
21             THE COURT:  I don't want them trickling out, you know,
22   one every two weeks.  I want them as soon as you have them.  It
23   seems like it should become pretty clear pretty quickly what you
24   need to push on once the intermediate discovery is resolved and
25   you know what is going and what is not going, and I want you to

1  bring them to me as many as you have as quickly as you have.
2              MR. DUBELIER:  Your Honor, one question about that.
3              MS. SEIKALY:  Yes.  Your Honor, I think as Eric
4  pointed out, we don't know yet precisely what is in the
5  intermediate discovery, and I know based on your ruling that the
6  government agrees to further narrow the U.S. sensitive discovery
7  from what they had in their filing.
8      The one -- the request that we had teed up to go this week
9  is about ▮▮▮▮.  My understanding from the discussion we had at
10 the hearing was the ▮▮▮▮ would remain U.S. sensitive
11 discovery.  I guess we don't know that with any certainty.  So
12 if Mr. Kravis could clarify that, that would help us at least
13 with this week's filing.
14             MR. KRAVIS:  That is correct.  The one narrowing with
15 respect to the ▮▮▮▮▮▮▮ that we had discussed -- and I
16 think this came up on a call with defense counsel last week --
17 involved the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20     So for those e-mails, basically, our designation, which we
21 are finalizing now, will state that the e-mails themselves can
22 be shown to -- to be treated as intermediate sensitive discovery
23 as long as they're provided in hard copy and not as a part of
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25             As I think we had mentioned in our prior filings, there are

1    a few -- yes, that's all I intend to say on that subject.  The
2    hard copies of the ▮▮▮▮▮▮▮▮▮▮ emails themselves, we will
3    agree to designate them as intermediate sensitive discovery.
4           MR. DUBELIER:  Your Honor, that said, I think it still
5    remains we don't exactly know how this thing is going to break
6    up.  There is no criticism of anybody here.  It's just we
7    haven't done it yet.
8       So the information that we intended to bring to firewall
9    counsel this week may wind up being --
10          MS. SEIKALY:  Based on what Mr. Kravis has said, the
11   documents that we have teed up for this week, we believe, will
12   be in the U.S. sensitive, and that is why we are teeing that one
13   up now.
14      So to your point, Your Honor, we are trying to bring these
15   to you as they arrive.  Once we determine they are in U.S.
16   sensitive, if they are in our set of key materials, we will
17   bring those to you as soon as we identify them.
18          THE COURT:  All right.  And Mr. Kravis, how soon are
19   you finalizing the intermediate discovery?
20          MR. KRAVIS:  We will be able this week to provide
21   defense counsel with a designation document that divides the
22   sensitive material into U.S. sensitive and intermediate
23   sensitive.  A few of my colleagues have been out of the office,
24   and I need to consult with them before sending the final version
25   over, but that will be ready this week.

1    THE COURT: Okay. Can that be ready before he has to
2  let me know any motions that are coming in? Can you get that
3  done by Thursday, or is that going to be Friday?
4    MR. KRAVIS: Yes. No, no, we can get it done by
5  Thursday.
6    THE COURT: All right. So you all are on track for
7  Friday; right? We are going to identify -- both of you are
8  going to identify any motions that you intend to file, and if
9  need be, you can do so separately in an ex parte filing. And as
10 I warned you, if a motion isn't specifically identified on the
11 proposed scheduling order, I am likely to deny it as untimely.
12   And Mr. Dubelier, I know some of yours are potential. You
13 have mentioned a potential motion to dismiss. I would add that
14 in there as well, understanding that you might not file it,
15 depending on how I rule on the pending motion for bill of
16 particulars.
17   MR. DUBELIER: I understand.
18   THE COURT: And I will direct you all to take another
19 stab at this language, particularly with respect to paragraphs
20 20, 23, and 26, trying to incorporate some of the clarifying
21 language you provided here on the call. I know it's difficult,
22 but I think this could be a little bit tighter and a little bit
23 clearer that would eliminate potential problems down the road.
24   So if you can do that by the close of business today -- I
25 am just looking for 20, 23, and 26. And to the extent I have

1  raised anything else that you want to tweak -- oh, the seven
2  days, are you in agreement with seven days on firewall counsel
3  process, to incorporate that as well?  And I will approve that
4  promptly.
5      I hesitate to monkey with the language you all propose
6  because I know that this is a long process and you all have
7  talked a lot about it, and I don't want to inadvertently change
8  the language -- do something that inadvertently changes the
9  meaning of what the parties have agreed to.  But I do think that
10 you all have shed light on what this means more than this
11 protective order reflects, and to the extent you can capture
12 that in the protective order, I would encourage you to do so.
13     And again, Mr. Dubelier, in the future, to the extent you
14 are walking close to the line or are concerned you are, you can
15 come to me.  This isn't a 14-day briefing process.  It's just in
16 an abundance of caution alerting me and alerting firewall and
17 having this kind of discussion, and it should be no problem at
18 all.  But let's be careful about this to ensure we don't have a
19 problem down the road.  All right?  Anything else either side
20 wants to raise?
21         MR. KRAVIS:  Nothing from the government.  Thank you,
22 Your Honor.
23         THE COURT:  Mr. Dubelier?
24         MR. DUBELIER:  Nothing on behalf of Concord.
25         THE COURT:  Okay.  Well, one other point.  I did agree

1   with the parties' proposed redactions at docket number 183.  So
2   I will direct the court reporter to post a redacted version on
3   the docket that is redacted identically to the parties'
4   submission.
5       And moving forward, I would like you all to continue to
6   file your proposed redactions under seal on the docket.  As I
7   have said before, I will immediately unseal, you know, motions
8   to file under seal when I receive them, regardless of how I rule
9   on the unsealing request.  But with respect to proposed
10  redactions, I will review them, and then I will issue a minute
11  order unsealing the motion to redact and indicating whether I
12  agree with the parties' proposed redactions.  At that point I
13  will also have the court reporter upload a redacted transcript
14  to the docket.
15      So just to be clear, the parties need to continue to file
16  their proposed redactions on the docket, but they do not need to
17  upload the redacted transcript once I have approved the proposed
18  redactions.
19      Do you understand?
20          MR. KRAVIS:  Yes, Your Honor.
21          MR. DUBELIER:  Yes, Your Honor.
22          THE COURT:  All right.  And finally, as I noted
23  already for the court reporter, I will unseal the transcript of
24  this proceeding for the parties to review it.
25      All right.  Anything else?  No?

```
1           MR. KRAVIS:  Nothing from the government.  Thank you,
2   Your Honor.
3           MR. DUBELIER:  Nothing from Concord.  Thank you.
4           THE COURT:  All right.  Thank you.
5       (Proceedings adjourned at 9:35 a.m.)
6
7   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
8
9               CERTIFICATE OF OFFICIAL COURT REPORTER
10
11          I, Sara A. Wick, certify that the foregoing is a
12  correct transcript from the record of proceedings in the
13  above-entitled matter.
14
15
16  /s/ Sara A. Wick                        October 16, 2019
17  SIGNATURE OF COURT REPORTER             DATE
```