IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CONCORD MANAGEMENT AND<br>CONSULTING LLC<br><br>Defendant. | CRIMINAL NUMBER:<br><br>1:18-cr-00032-2-DLF |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN SUPPORT OF MOTION TO STRIKE SURPLUSAGE PURSUANT TO RULE 7(d)**

Pursuant to Federal Rule of Criminal Procedure 7(d), Defendant Concord Management and Consulting LLC ("Concord" or "Defendant"), through counsel, respectfully submits this reply in support of its motion to strike unnecessary surplusage in the Indictment.

**I.   INTRODUCTION**

The current prosecutors need to go back and read the Indictment drafted by the Special Counsel, and also refresh themselves with the previous rulings of the Court which they continue to deny.  The Indictment charges that the alleged conspiracy had as its object, "impairing, obstructing and defeating the lawful government functions of the United States by dishonest means in order to enable the Defendants to interfere with the U.S. political process and electoral process, including the 2016 presidential election." ECF 1, ¶ 28.  Since interfering with the U.S. political process and electoral process is not a crime, the Court has determined that the alleged unlawful object of the conspiracy was to defraud the United States.  *See* ECF 74 at 16-17.  The Court has further determined that the alleged object of the conspiracy, that is, to defraud the United States by impairing a lawful government function, is based entirely on whether the Defendant has a duty to disclose information to the Department of State, Department of Justice and the Federal Election

1

Commission. *See id.* at 6. But in ignoring this current posture of the case, the government argues that highly prejudicial allegations of lawful conduct having no relationship at all to any duty to disclose should be placed before the jury. That is, instead of a trial on the very narrow sliver of alleged unlawful conduct, the government wants a free-for-all where it can toss up against the wall lawful conduct that will inflame the jury in hopes that it will stick. Any such process will create a distinct risk that the Defendant could be convicted on a theory of liability not charged, and for conduct that was not unlawful. For these reasons the Defendant's motion to strike should be granted.

**II.     LAW & ARGUMENT**

**A.     The jury should never see the Indictment**

As Concord noted in its Motion, if the Court declines to provide a copy of the Indictment to the jury, it need not decide whether to strike the specific references raised in the Motion. Mot. at 3 n.2. This exercise of discretion—which the government does not appear to challenge or oppose—would resolve this issue without a "judicial rewriting of the charging document," Opp. 12, but would still avoid prejudicing Concord by preventing the jury from seeing the irrelevant and inflammatory statements in the Indictment. Furthermore, the issues raised in Concord's Motion will also be the subject of subsequent motions in *limine* and may be excluded from trial on that basis.

**B.     "Context" is not the same as relevance, nor does it give the government carte blanche to include surplusage in the Indictment**

The government's refrain throughout its opposition is that the statements in the Indictment Concord identifies as surplusage provide "context" for the § 371 charge. Opp. 2, 3, 4, 5, 11, 12. It argues, in turn, that such context is relevant to establishing the underlying conspiracy. *See, e.g. id.* 4-5. But background context and relevance to the charge at issue are not the same thing—as

evidenced by the cases the government cites. In *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995), this Court recognized that "[b]ackground information is particularly useful in cases involving *perjury, false statements, and obstruction of justice*." (Emphasis added); *see also United States v. Poindexter*, 725 F. Supp. 13, 27 (D.D.C. 1989) (same; indictment involved allegations of false statements and obstruction of justice). Of course, Concord is charged with none of these crimes, and none of the surplusage identified in Concord's motion relates to the narrow defraud-clause conspiracy charged here.

More importantly, however, the government's argument ignores the purpose behind Rule 7(b), which merely requires that the Indictment allege the *elements* of the conspiracy charge alleged against Concord—that is, a prohibition against two or more persons from "conspir[ing] . . . to defraud the United States." 18 U.S.C. § 371. To that end, the D.C. Circuit has recognized that an indictment need only state the *essential facts* constituting the offense. *See United States v. Jordan*, 626 F.2d 928, 931 (D.C. Cir. 1980) (recognizing that "[t]he language of an indictment that goes beyond alleging the elements of the statute is mere surplusage which need not be proven"); *United States v. Apodaca*, 275 F. Supp. 3d 123, 156 (D.D.C. 2017) ("Consequently, words used to describe essential facts relevant to the offense are not surplusage subject to being stricken.").

Accordingly, the identified categories of surplusage should be stricken.

**1.   All references to the political and electoral processes that are broader than the 2016 presidential election**

The government argues that striking the unnecessary references to political and electoral processes would "misrepresent the Grand Jury's allegations." Opp. 5. But this request merely brings the Indictment in line with Rule 7's limited sufficiency requirements. Moreover, references to the broader political and electoral process outside the 2016 election have nothing to do with the

specific efforts to defraud at issue—which turn on an alleged failure to register under FARA, failure to disclose under FECA, and failure to provide truthful responses on a visa application.

### 2.     References to other crimes

References to the crimes of identity theft and obstruction of justice are, by their very nature, not relevant to the conspiracy charge at issue here because Concord is not charged with those crimes. Yet once again, by arguing that those other crimes are relevant, the government confuses its terms. Specifically, the government relies on cases involving questions about the admissibility of evidence at trial under Federal Rule of Evidence 404(b). Opp. 8; *see also United States v. Machado-Erazo*, 901 F.3d 326, 333-34 (D.C. Cir. 2018) (considering the admissibility of conduct under Rule 404(b)); *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (same); *United States v. Ramirez-Jiminez,* 967 F.2d 1321, 1327 (9th Cir. 1992) (same). Concord is not making a Rule 404(b) argument at this time; no 404(b) notice has been filed and is not due until November 1. The government offers no argument that the Rule 7 inquiry is anything like the admissibility inquiry under Rule 404(b); indeed, they are not the same. Rule 7 merely requires a recitation of the elements of the charge—not all evidence that may support the government's case at trial. None of the cases the government cites support the proposition that explicit references to other crimes are relevant for purposes of a motion to strike surplusage.

With respect to the identity theft allegations, the government cites cases that are distinguishable because they did not involve allegations of other criminal conduct that are as explicit as those here—particularly those that explicitly use the term "stolen" identities, *see* Indict. ¶¶ 4, 40, 70. Opp. 7. In *United States v. Hastie*, No. 14-cr-291, 2015 WL 13309605 (S.D. Ala. Mar. 17, 2015), the other allegations involved state ethics violations, not criminal activity. *Id.* at *2. In *United States v. Hsia*, 24 F. Supp. 2d 14, 25 (D.D.C. 1998), the defendant sought to strike "references to . . . to acts of concealment, cover-ups and the destruction and alteration of

documents." *Id.* It did not involve explicit allegations of "destruction of evidence" as is alleged here. ECF 1 at 24.[1]

With respect to the alleged obstruction of justice, neither of the cases the government cites relate to motions to strike. *See United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (discussing admissibility under Rule 404(b)); *Al-Adahi v. Obama*, 613 F.3d 1102, 1107 (D.C. Cir. 2010) (habeas case involving detention question). Moreover, the government completely fails to respond to Concord's argument that the allegations are irrelevant because they relate to activity that was allegedly undertaken in 2017, **after** the appointment of the Special Counsel and social media companies' disclosures. *See* Indictment ¶ 58 (alleging a September 2017 email referring to "covering tracks" after explicitly noting that the media was already reporting that social media companies were working with the Special Counsel on the Russian government's efforts to interfere in the 2016 presidential election). Thus, the government is wrong in arguing that this allegation "demonstrates the conspirator's awareness that the U.S. government regulates and acts in this area," Opp. 7, because the allegation merely suggests that this defendant learned that the government may view the conduct as criminal after the investigation was publicized. Further, these allegations are irrelevant because they relate to a separate course of conduct from the actual defraud clause conspiracy charged. *See Hsia*, 24 F. Supp. 2d at 26 (recognizing that "[i]f the alleged acts of concealment and cover-up were taken after the original conspiracy was completed or in furtherance of a subsequent and separate conspiratorial agreement . . . the acts are neither

---

[1] As Concord has noted, this Court in *Hsia* expressed its "concern[] about references in the indictment to acts of concealment, cover-ups and the destruction and alteration of documents . . . because references to the alleged acts of concealment and cover-up suggest the inclusion of offenses that are not part of the conspiracy charged in the indictment." *Hsia*, 24 F. Supp. 2d at 25.

overt acts in furtherance of the alleged conspiracy charged in the indictment nor the manner and means of committing the alleged conspiracy").

To the extent that the government argues the conduct is not prejudicial, this argument too is flawed. The government points to no case requiring that the conduct be either "violent" or have been carried out by Concord itself (as opposed to its co-conspirators) in order to be prejudicial. The fact that the Indictment uses language that will "lead the jury to infer accusations of crimes beyond those actually charged," *United States v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979), is sufficient for it to be stricken, particularly where the language at issue here goes beyond mere inferences—it explicitly describes the other uncharged crimes the co-conspirators allegedly engaged in.

### 3. References to specific 2016 presidential candidates and political groups

The government's response regarding the specific reference to particular 2016 presidential candidates and "hot button" political groups makes Concord's point for it. Indeed, the government presents its entire response, *see* Opp. 9-10, without a single mention of Donald Trump, Hillary Clinton, immigration, the Black Lives Matter movement, specific U.S. political parties, or specific geographic regions of the United States. The point, of course, is that those specifics are irrelevant to the charges alleged in the Indictment, and it can accomplish its purpose without specifically identifying any of those details. This underscores Concord's argument that this was merely an attempt to politicize these proceedings, by intentionally including references to "hot topic[s]" about which people—including jurors—have strong opinions. *See* Mot. 6-7.

Moreover, with respect to the prejudice requirement, the government once again engages in a gross understatement by suggesting that "any case that relates to an election . . . may touch on such matters." Opp. 10. This is not a run-of-the-mill election law case. The 2016 presidential

election was one of the most hotly-contested and bitter fights in recent memory, and the use of language in the Indictment that clearly is intended to inflame the jury's partisan interests should be stricken.  *See, e.g.,* Indictment ¶¶ 46-47 (listing statements potentially advocating for Donald Trump and Jill Stein, and against Hillary Clinton).

### 4. Suggestions that Concord is connected to the Russian government

The government attempts to dismiss Concord's efforts to strike references to its connection to the Russian government by calling those references a "passing suggestion."  Opp. 11.  This is not so.  The clear implication of the allegations in the Indictment is that there exists a connection between the Russian government and Concord—and by extension the charged conspiracy—even though this Court has expressly found that no such connection has been alleged.  *See* May 28, 2019 Tr. at 4:10-13 ("Concord is correct that the indictment does not allege that the Russian government sponsored the activities charged in the indictment.").  The government argues that the reference is relevant because it is "identifier information" and supposedly "explains the relationship between those two entities."  Opp. 11.  But the existence of government contracts provides no useful identification and does nothing to explain the relationship between the entities.  The government's remaining argument that the alleged existence of government contracts, however tenuous, is relevant to establishing motive and intent, its baseless assertion in support of that proposition borders on laughable: "[i]ndividuals and entities that are financially dependent on a government have far more significant geopolitical interests."  *Id.*  Apart from being wholly unsupported, this statement is absurd—it can hardly be said that a government contractor providing, for example, catering services (or office supplies, janitorial services, etc.), has any "geopolitical interest."

With respect to prejudice, the government recognizes that the language in the Indictment can—and likely will—cause jurors to conclude that there is a connection between the Russian

7

government.  Opp. 12.   And this inference will only be reinforced by other highly-publicized (and inaccurate) statements that have similarly tried to draw a connection between Concord's alleged activities and the Russian government.  *See* Concord Motion for Order to Show Cause, ECF No. 129, at 2-7 (listing repeated statements by Attorney General William Barr, the Mueller Report, and other media outlets purporting to connect the Russian government to alleged interference in the 2016 presidential election).  Given the unique circumstances of this case, there is no need to risk prejudicing Concord again because the challenged language (as shown above) is completely irrelevant to the charges.  *See* Mot. 9.

### 5. References to issue advocacy

The government's efforts to show that legal conduct is not irrelevant surplusage also fall short.  As a preliminary matter, the government makes no attempt to rebut Concord's argument that courts can strike allegations like those here where legal conduct is confusingly mixed in with other illegal conduct in the indictment.  *See Hubbard*, 474 F. Supp. at 83 ("First, the Court finds that the inclusion of legal means in a list entitled 'illegal means' is prejudicial and irrelevant and should be stricken.").  This alone is a basis to strike, because it runs the risk of the jury convicting Concord on the basis of legal conduct.

Moreover, the only case the government cites in support of its general assertion that legal conduct need not be stricken as surplusage involved a very different factual scenario.  In *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 10 (D.D.C. 1999), the indictment involved allegations that defendants violated FECA, and made references to legal soft money donations alongside allegations regarding illegal hard money donations.  *Id.*  But in that case, the court went on to discuss how the government intended to prove that a particular defendant could not possibly have funded all of the donations apparently funded from her account, and thus "[e]vidence of the amount of donations and contributions made from checks drawn on [that defendant's] account is relevant

to establish the government's theory." *Id.* Here, by contrast, the government's relevancy argument boils down to the notion that because Defendants allegedly engaged in legal conduct, they were more likely to have engaged in illegal conduct. *See* Opp. at 13.[2] This vague reasoning is not sufficient to allow such prejudicial language to remain in the Indictment.

### III.     CONCLUSION

Wherefore the Defendant respectfully requests that the portions of the indictment set forth in its Motion be stricken.

Dated:   October 22, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

---

[2] Of course, as the government is quick to point out, the notions of "legal" and "illegal" here are even further attenuated, because Concord is not charged with actually violating FECA. Opp. 13-14.