**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT CONCORD MANAGEMENT AND
CONSULTING LLC'S RENEWED MOTION TO DISMISS
COUNT ONE OF THE INDICTMENT**

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   ARGUMENT ............................................................................................... 4

    A.    The Government's Prosecution Of Concord Is Unprecedented, Arbitrary, And Violates The Due Process Clause. ................................................. 4

    B.    The Government's Attempt To Isolate And Refute The Evidence Of Arbitrariness Is Meritless. ...................................................................... 8

    C.    The Supreme Court's Decision In *Rehaif* Compels A Re-Examination Of The *Mens Rea* Requirement. ............................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of the Committee on the Judiciary, U.S. House of
    Representatives, for an Order Authorizing the Release of Certain Grand Jury
    Materials,*
    No. 19-48 (BAH), 2019 WL 5535218 (D.D.C. Oct. 25, 2019) ...........................13

*Bluman v. FEC,*
    800 F. Supp. 2d 281 (D.D.C. 2011) ....................................................................3, 9

*Burns v. Wilson,*
    346 U.S. 137 (1953).................................................................................................7

*Dennis v. United States,*
    384 U.S. 855 (1966)...............................................................................................12

*Kingsley v. Regents of the Univ. of N.Y.,*
    360 U.S. 684 (1959).................................................................................................7

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019)........................................................................................8, 11

*Lambert v. California,*
    355 U.S. 225 (1957)...............................................................................................16

*Morrissey v. Brewer,*
    408 U.S. 471 (1972).................................................................................................8

*New York v. United States,*
    505 U.S. 144 (1992).................................................................................................6

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019) ................................................................................. *passim*

*United States v. Bridges,*
    346 U.S. 209 (1953)...............................................................................................12

*United States v. Burden,*
    934 F.3d 675 (D.C. Cir. 2019) ..................................................................... *passim*

*United States v. Caldwell,*
    989 F.2d 1056 (9th Cir. 1993), *overruled on other grounds by Neder v. United
    States,* 527 U.S. 1 (1999) ......................................................................................20

*United States v. Craig*,
    No. 1:19-cr-00125-ABJ, 2019 WL 3604630 (D.D.C. Aug. 8, 2019) ......................................17

*United States v. Concord Mgmt. & Consulting LLC*,
    347 F. Supp. 3d 38 (D.D.C. 2018) ........................................................................................14

*United States v. Lopez*,
    514 U.S. 549 (1995).................................................................................................................7

*United States v. Rafiekian*,
    No. 1:18-cr-457-AJT-1, 2019 WL 4647254 (E.D. Va. Sept. 24, 2019) ...........................16–17

## Constitutional Provisions & Statutes

18 U.S.C. § 371 ...................................................................................................... *passim*

U.S. Const. amend. V............................................................................................... *passim*

## Other Authorities

Br. of U.S., *United States v. Woodard*,
    No. 19-5009 (10th Cir. Oct. 10, 2019), 2019 WL 5107398 ......................................................6

The Federalist No. 81 (A. Hamilton) ...........................................................................................11

## I.   PRELIMINARY STATEMENT

The following facts central to Concord's renewed motion to dismiss for arbitrary prosecution are not in dispute:  (1) there has never been in recorded U.S. history the indictment of a foreign company with no presence in the United States for a conspiracy to defraud the United States by posting content on the internet (the government has not identified any such case); (2) there has never been a criminal case where the prosecutors drafted and published a report while the case was pending trial concluding that the defendants were guilty (the government has not identified any such case); (3) the prosecutors purposely charged a § 371 defraud conspiracy in order to circumvent the willfulness burden of proof imposed by the statutes the conspiracy allegedly aimed to impede—Foreign Agents Registration Act ("FARA") and the Federal Election Campaign Act ("FECA")—because there is no evidence showing willfulness (the government does not deny this); and (4) had the United States Attorney for the District of Columbia been the prosecutor presenting this case to the grand jury, based on past practice, the indictment would have charged that the defendants acted willfully or, in the absence of any proof of willfulness, the indictment would not have been brought at all (the government entirely ignores this fact in its entirety).  While not disputing any of this, the government nevertheless responds with the conclusory claim that these facts simply do not sustain Concord's due process argument.  The government is wrong.

In its renewed motion to dismiss, Concord argued—for the first time, based on the record to date—that this prosecution, and other government conduct connected to it, is so arbitrary that it exceeds what the Due Process Clause can tolerate.  Concord also argued that, in light of the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 219 (2019) and the prosecution's ever-changing theories of liability, the government must charge and show a heightened level of *mens rea* in order to prove the defraud conspiracy the grand jury charged

against Concord. The government's querulous argument that all of this has been decided before is factually and legally wrong. Beyond this, the sum and substance of the government's response is that Concord has not identified any case like this where the indictment was dismissed on due process grounds. But the impossibility of meeting the requirement the government advances is evident from the fact that there has never been a criminal case just like this one.

To that end, the government's responsive argument is built on a singularly remarkable, but indefensible, proposition: that free of any constitutional constraints—due process included— the government can proceed with an arbitrary prosecution that (i) violates applicable regulations, policies, and practices, (ii) goes beyond the four corners of the indictment, (iii) rests on a vague and constantly changing charge whose end and aim is unknown, and (iv) needs no heightened criminal mental state because there is no case that has ever explicitly said the government can't do any of this, and this Court has already said that it can. But this Court has not previously considered in this case the due process argument Concord makes because it is raised now for the first time. Case law likewise makes clear that the protections of due process are afforded when arbitrary government conduct reveals itself, just as it does in this case.

Moreover, when it comes to whether the facts in this case actually do reveal a due process violation, the government has nothing of consequence to say—indeed, it makes virtually no effort to try to show that this prosecution is anything but systemically unjust, unfair, and unconstitutionally arbitrary. In the government's words, that just makes it "unusual." Gov't Opp. (ECF 219) at 7. But the government does not deny, because it cannot, that Concord has been singled out for a first-of-its-kind charge, invoked by a Special Counsel in pursuit of a declared mission to blame a Russian for the election of the current President. Nor does it cite a case that says a prosecution shown to be arbitrary because it contravenes established regulations,

charging practices, ethical principles, and the limitations imposed by an indictment is immune from a due process attack. No such case exists. And the government does not suggest, again because it cannot, that such a prosecution can nevertheless proceed where innocent conduct is threatened with punishment or recognized Fifth and Sixth Amendment principles are plainly put at risk. Yet that is exactly what is happening here.

The government's response to the avowed need for a willfulness *mens rea* element in the burden of proof suffers from similar flaws. Its recitation of *Rehaif* and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019)—as far as it goes—is disingenuously incomplete. It misses altogether why the two cases are so relevant now: because they stress the need to ensure, case-by-case, that innocent conduct is not criminally punished and that lack of knowledge can defeat a criminal charge where, as in this case, it negates a specific element of the offense. All § 371 defraud conspiracy cases are not fungible and if constitutional considerations, the statutory scheme, and the particular charge demand it, as they do here, the *mens rea* burden of proof in a § 371 defraud conspiracy case must be calibrated accordingly, just as *Rehaif* and *Burden* provide.

In the end, Concord's *mens rea* argument here also stands effectively unrebutted. Simply put, in a § 371 defraud conspiracy predicated on acts of omission relating to obscure statutes and regulations purportedly governing foreign actors—where there is a substantial risk that an arbitrary prosecution is involved and the threat that innocent conduct will be punished and Fifth or Sixth Amendment rights will be abridged is high—something more is required to make a defraud conspiracy charge stick. Justice Kavanaugh made that clear in *Bluman v. FEC*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011) (and there is no binding case law to the contrary), and the government cannot evade that requirement simply by facilely pleading around the relevant substantive statutes. If this is permitted here, the government will be free in any future case to

- 3 -

negate the *mens rea* requirements set forth by Congress by simply opting to reframe every case as a § 371 conspiracy to defraud.  Concord has provided an exhaustive analysis of why, consistent with *Rehaif*, *Burden* and the *mens rea* principles they are founded on, the government must be required to plead and prove that Concord was specifically aware of the alleged duties to the three government agencies it is accused of having conspired to defraud.  Nor can the absence of this standard in the Indictment be cured by jury instructions or a bill of particulars.

Concord's renewed motion to dismiss provides the factual and legal compulsion needed for dismissal.  This Court should grant its motion.

## II.    ARGUMENT

### A.    The Government's Prosecution Of Concord Is Unprecedented, Arbitrary, And Violates The Due Process Clause.

Concord's renewed motion outlines the facts showing the arbitrary manner in which the government has prosecuted Concord from the very beginning of this case until now.  ECF 210 at 4–19.  It likewise recites the settled precedents establishing both the Due Process Clause's core prohibition on arbitrary government conduct and its unique role among the Bill of Rights' protections—adapting, as needed, to address unprecedented government intrusions on the right to be free from arbitrary treatment by the State.  *Id.* at 22–25.

In its opposition, the government does not dispute the evidence of prosecutorial arbitrariness Concord lays out.  In fact, it ignores completely one of the pillars of Concord's case for unconstitutional arbitrariness:  the custom and practice in this District of the United States Attorney's Office for the District of Columbia ("USAO DC") charging willfulness in § 371 defraud conspiracy cases, which was abandoned here without explanation by a Special Counsel inherently driven to indict and convict a Russian—or else face a political and media assault like no other.  ECF 210 at 9–11.  This fact alone establishes that Concord was deprived of due

process and that the grand jury was permitted to indict in the absence of the requisite level of *mens rea*.  The importance of this cannot be overstated; that is, here, the Special Counsel engaged in a scheme, now embraced by the United States Attorney and the Department of Justice, to tortuously construct a charge to survive what they all know to be the complete absence of any evidence whatsoever that any of the alleged co-conspirators had ever heard of the government departments and agency in question, let alone knew about the registration and filing duties the government claims were neglected.

Instead, the government's principal contention is that the Court already has heard and rejected Concord's due process argument.  Gov't Opp. at 5–7.  That is wrong.  Concord's due process argument is both new—it was not raised before in any motion or other filing—and properly raised for the first time now—because it rests on the continuously evolving record, up through the present.  The government's piecemeal treatment of each prior motion and filing previously submitted also ignores the premise on which Concord's current argument is built.  It is the unique accumulation of the government's conduct judged against the strictures of due process that matters for the resolution of this motion.  To be sure, this Court has made a series of rulings that independently have addressed various legal issues related to several steps in the alleged conspiracy here.  But none of those rulings, individually or collectively, addresses the ***due process*** arguments Concord makes now.

When it finally gets around to addressing the argument Concord does make, the government has little to say.  It simply states, in conclusory fashion, that Concord fails to show how the government's conduct is arbitrary in violation of due process, and that Concord has no case of its own saying that such conduct rises to the level of such a violation.  Govt' Opp. at 7. Yet over the course of more than 20 pages of briefing, Concord built its due process argument on

a series of acts extant in this prosecution.  ECF 210 at 4–19, 26–31.  Those acts, which are not disputed, make one thing clear:  Concord has been singled out for unique treatment and targeted by an arbitrary prosecution, one that has no parallel to any other defraud conspiracy ever initiated.

As for Concord's purported failure to cite a case directly on point, that is a non-response as well.  If the government's approach was adopted, no new constitutional precedent— addressing novel fact patterns—could ever occur for the lack of a previous identical case.  As the government itself noted only a few weeks ago, however, "'[s]ilence by th[e] [Supreme] Court on a subject is not authority for anything.'"  Br. of U.S. at *30–31, *United States v. Woodard*, No. 19-5009 (10th Cir. Oct. 10, 2019), 2019 WL 5107398 (quoting *New York v. United States*, 505 U.S. 144, 203 (1992) (White, J., concurring in part and dissenting in part)); *see also New York*, 505 U.S. at 203 (White, J., concurring in part and dissenting in part) (reasoning that "it should go without saying that the absence of any on-point precedent from this Court has no bearing on the question" of what the Constitution means in a given case).

Beyond that, the constitutional analysis called for here is straightforward.  The prosecutor is a state actor and thus its conduct falls squarely within the ambit of the Due Process Clause. And due process, by its very nature, is an "as applied" concept, flexible and adaptable to deal with all manner of arbitrary government conduct that rises to constitutional dimension.  The Constitution, for its part, applies to criminal proceedings, demanding fairness and neutrality and a freedom from arbitrary prosecution.  Finally, many of the cases Concord cites arose on unique facts.  The resolution of those cases turned, as it does here, on the need to protect individuals from injustice, and it necessitated the "instance-by-instance, case-by-case application of th[e] [Due Process] [C]lause" that "inheres in the very nature of the judicial enforcement of the …

Clause." *Kingsley v. Regents of the Univ. of N.Y.*, 360 U.S. 684, 696 (1959) (Frankfurter, J., concurring in the judgment) (further reasoning that the Court "cannot escape such [case-by-case analyses] in all the varieties of situations that come before" it). That is the basic guarantee the Clause imparts. ECF 210 at 22–25 (discussing cases); *see also Burns v. Wilson*, 346 U.S. 137, 142–43 (1953) (plurality op.) (explaining that "the constitutional guarantee of due process is meaningful enough, and sufficiently adaptable, to protect [individuals] from the crude injustices of a trial so conducted that it becomes bent on fixing guilt by dispensing with rudimentary fairness rather than finding truth through adherence to those basic guarantees which have long been recognized and honored by the … courts").

By the same token, the government does not even attempt to provide its own views on what role the Due Process Clause does or does not play in regulating arbitrary prosecutions—and does very little to try to rebut Concord's description of the controlling due process principles that protect against such prosecutions. The government does not claim, for example, that: (i) the Due Process Clause plays no role in checking prosecutorial excess or the arbitrary targeting of defendants for criminal sanction; (ii) that courts have no duty to enforce the Clause against such prosecutorial overreach; or (iii) that prosecutors are not bound by the Clause's foundational prohibition against arbitrary treatment. Nor can it. The Due Process Clause stands as an essential bulwark against any of the countless forms arbitrary government conduct can take— and, historically, has taken.

The fact that Concord has no directly applicable precedent involving prosecutorial conduct accordingly carries no weight now in the analysis. Courts are "often called upon to resolve questions of constitutional law not susceptible to the mechanical application of bright and clear lines[,]" *United States v. Lopez*, 514 U.S. 549, 579 (1995) (Kennedy, J., concurring),

especially when they involve the reach of the Due Process Clause, *see*, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (reasoning that the Due Process Clause, by its "very nature, … negates any concept of rigid procedures universally applicable to every imaginable situation").  And they must, for "[a]bdication of [this judicial] responsibility is not part of the constitutional design.'" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2440 (2019) (Gorsuch, J., concurring in the judgment) (citation omitted).  In this case, settled due process principles establish that the government has crossed the line separating lawful from arbitrary protections, and this Court should say so.

**B.      The Government's Attempt To Isolate And Refute The Evidence Of Arbitrariness Is Meritless.**

The government recasts Concord's motion by separating the cumulative evidence Concord assembles into isolated and discrete parts.  Having done so, it claims that none of that evidence shows conduct in violation of various governing legal principles (but ***not*** due process), and thereby implies—and that's all the government ultimately does—that there was no due process violation here.  The government notably does not deny it engaged in the conduct Concord describes.  And its effort at reframing Concord's motion must fail.

First, the government's reframing willfully ignores what the undisputed evidentiary record is relied on to show—not merely violations of court rules (in the case of the Mueller Report and the Attorney General's congressional testimony) or legal doctrines (in the case of the decision to deviate from the settled custom and practice of the USAO DC and "cloak" an offense-clause conspiracy in a defraud-clause one), but flagrant arbitrariness in the way the government has carried out this prosecution, and otherwise treated Concord.  Concord is a criminal defendant entitled to the presumption of innocence, a neutral, disinterested prosecutor, and a fair process, regardless of the incendiary allegations in the Indictment.

Second, as noted, there's a material omission from the government's opposition.  It

doesn't even mention, much less offer an explanation for, one of the centerpieces of Concord's case for arbitrariness:  the fact that, in the decade leading up to the Indictment here, and with rare (and otherwise explainable and distinguishable) exceptions, the USAO DC consistently charged willfulness in § 371 defraud conspiracy indictments.  So why did the government repeatedly include willfulness in those indictments, until this case came along?  Why did the government fail to follow in this case its own election-crime and § 371 charging guidelines and practices, or the holding in *Bluman*?  Seemingly because the exigencies and political pressures of the moment, coupled with the vanishingly scant (if any) evidence of any criminal knowledge whatsoever on the part of Concord, forced the Special Counsel to press the only criminal charge he could concoct:  a single-count, non-willful conspiracy to defraud based on interference with unspecified government functions.  But none of these are constitutionally acceptable reasons for the prosecutorial choice here—they look, rather clearly, like arbitrary ones.

Intentionally or not, the government tries to justify its unexplained abandonment of the USAO DC's consistent practice with a rhetorical flourish, claiming that, "[e]ven if the government has not been fully consistent in its position about the defraud clause, it does not follow that the Due Process Clause forever compels the government to take what it believes to be an incorrect position, and to do so in contravention of extensive case law holding that willfulness is not required." Gov't Opp. at 12.  As for the government's "forever" claim, that is not remotely responsive to anything Concord has actually argued.  Moreover, instead of addressing this fatal fact, the government answers in a riddle suggesting that the United States Attorney at this moment, after the fact, has determined that ten years' worth of § 371 indictments in this District preceding this one were wrongly worded.

If the government has good-faith, legally supportable reasons for shifting dramatically

from a charging practice reflected in its own formal charging guidelines and practice manual—
documents created for the purpose of guiding and constraining prosecutorial discretion—it may
do so if it acts within constitutional limits.   But where the government departs from those
policies to charge, through a special counsel, a never-before-prosecuted defraud conspiracy
against a Russian entity under an obscure statutory scheme, there is reason and justification for
calling the departure from DOJ charging policies or guidelines arbitrary.   In this light, and at a
minimum, the Court is bound to consider whether this about-face by the government is evidence
of precisely the sort of arbitrary prosecutorial conduct due process forbids.

The government's effort to describe this departure as its "frequent litigating position"
indicating that willfulness is not required, *see* Gov't Opp. at 12, does not withstand analysis
either.   Concord's evidentiary showing establishes the USAO DC's consistent practice of
charging willfulness in cases like this one.   The still-unexplained departure from the customary
approach thus remains.   Nor is it sufficient for the government to rely (at 12) on an indictment
handed down in the Southern District of New York two days ***after*** Concord filed its renewed
motion to dismiss—which, contrary to the USAO DC's longstanding practice, but like the
Indictment here, also happens to omit any mention of willfulness.   The New York indictment is
quite timely and convenient for the government in this case, much like the after-the-fact
reinterpretation of DOJ charging policies the Special Counsel ginned up in August 2018 during
the litigation of Concord's previous motion to dismiss.   And now the government can argue in
the New York case that this case provides the necessary precedent for the non-willful charge
there.

As for Concord's assertion that the Special Counsel's very appointment reflected
arbitrariness because, as to Concord, it was pretextual and not in line with what the Special

Counsel Regulations require (ECF 210 at 6–7), the government recycles its prior contention that the Regulations do not "create judicially enforceable rights."  Gov't Opp. at 9 (citation and internal quotation marks omitted).  That's right, they don't.  But that does not mean unjustified deviations from the Regulations cannot be proof of arbitrary government conduct for constitutional due process purposes.  The Executive Branch cannot immunize itself from the constitutional scrutiny of an Article III court based on arbitrary violations of regulations simply by planting a clause in the regulations saying that they do not create judicially enforceable rights.  Courts, not the Executive Branch, are the judges of whether the Executive Branch's arbitrary conduct violates due process, as decades (and more) of settled precedent make clear.  ECF 210 at 22–25 (discussing cases).  Indeed, "[t]he founders afforded" the federal courts the "extraordinary powers" of judicial review "'free from potential domination by other branches of government'" specifically "so that an independent judiciary could better guard the people from the ***arbitrary*** use of governmental power."  *Kisor*, 139 S. Ct. at 2438 (Gorsuch, J., concurring in the judgment) (quoting The Federalist No. 81, at 482 (A. Hamilton) (emphasis added)).

Third, when the government gets to addressing its decision to manufacture a defraud-clause conspiracy out of an offense-clause conspiracy, the government invokes cases that say the prosecution has latitude to choose its charge when conduct violates more than one law, and rebukes Concord for supposedly not explaining how the decision to charge a defraud conspiracy is arbitrary.  Gov't Opp. at 11.  But here again, the government just ignores the facts of this case, the relevant case law, and what Concord actually argues.  While it is true the government has discretion to choose its charge when multiple laws might support it, that discretion is not unchecked, as the cases Concord cites make clear.  ECF 210 at 24–26, 30 (citing cases).  The government does not deny that it used § 371's defraud clause as a "cloak" to avoid the

willfulness *mens rea* requirement it indisputably would have faced had it brought the more natural offense-clause charge. *United States v. Bridges*, 346 U.S. 209, 223–24 (1953). Nor can it, because it is clear from the facts of this case. The government also does not even try to show—again because it can't—that its defraud-clause charge "properly reflect[ed] the essence of the alleged offense" and did "not involve an attempt by prosecutorial sleight of hand to overcome" the willfulness burden it would have faced had it charged under § 371's offense clause. *Dennis v. United States*, 384 U.S. 855, 863 (1966).

Fourth, the government's attempted rebuttal to the relevance of the Special Counsel and Attorney General's various public declarations of guilt is that the Court found them not "flagrant," and the two consulted with ethics experts to avoid any rule violations and purportedly were acting in the public interest. Gov't Opp. at 12. So what? The statements still reflect the arbitrary treatment of Concord. Who else did the Special Counsel and the Attorney General publicly declare guilty—other than Concord and some other Russians? By marked contrast, the government devotes substantial attention to the prejudicial public statements made by other government actors that Concord identified (ECF 210 at 12–14)—including the Secretaries of Treasury and State. Gov't Opp. at 12–14. The government's principal response to these statements is that they did not violate the Court's May 29, 2019 order, because they were not made "by lawyers representing the government in this case." *Id.* at 13.

But the Court's May 29 order is not so restricted—it applies to the "government." ECF 137 at 1. Moreover, whether or not those statements violated the Court's order or its rules, the evidence of arbitrariness remains—a concerted effort by the Executive Branch to "convict" Concord in the court of public opinion before a single witness is heard at trial. And this injustice is about to get a whole lot worse because this Court has ordered that Congress will have access to

the grand jury materials supporting the Indictment in this case, meaning we are just a very small step away from those materials being selectively made public for political purposes.[1]

Fifth, moving along the spectrum of absurdity, the government not only denies that its allegations against Concord have been a moving target—it goes so far as to say it "has consistently articulated a single theory of criminal liability" and that it's Concord that has changed its position. Gov't Opp. at 14. Huh? As Concord's detailed recitation of the dizzying history of the government's theories and interpretations in this case makes clear, the government's assertion that it has stuck to a "single theory" is not credible. ECF 210 at 14–19. The government's accusation that it is Concord that has changed its "position" not only is wrong, it ignores that undersigned counsel has merely done its best to try to comprehend and keep up with the government's own constant shifting and moving. Concord cites specifically to the words written and spoken by the prosecutors. *Id.* at 15–19, 29. Since the government cannot deny its own words, it instead engages the Court and Concord in a game of suggesting that those words have some other meaning than would be gathered by any reasonable person reading or hearing them.

Sixth, the government's resort to absurdity reaches its height when it claims that Concord's arguments aimed at the government's shifting theories and formulations of its allegations—including those conveyed in its bills of particulars—are nothing more than "complain[ts] that by giving [Concord] a more detailed preview of the government's factual and legal theories, the government has acted arbitrarily and deprived Concord of the process to which

---

[1]    *See In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 19-48 (BAH), 2019 WL 5535218, at \*3 (D.D.C. Oct. 25, 2019) (repeating that the Mueller Report concluded that the social media campaign was part of a Russian *government* operation).

it is due."  Gov't Opp. at 15.  But a "more detailed preview" in a bill of particulars is not a gift that the prosecutors unilaterally granted; in fact, they opposed it.  Nor is it a constitutionally adequate substitute for an indictment, capable of filling holes or ambiguities in an indictment's terms.  ECF 210 at 17 (citing cases).  And a "preview" that deviates from the indictment—as the government's "preview[s]" repeatedly have done in this case—is a constitutional violation of the Fifth Amendment's grand-jury presentment clause which, in its own right, points to arbitrary conduct.  Far from doing Concord a favor, the government's evasive tactics seek to accomplish only one thing:  undermining Concord's ability to defend itself, and assuring a trial and conviction.

   C.    **The Supreme Court's Decision In *Rehaif* Compels A Re-Examination Of The *Mens Rea* Requirement.**

   Concord separately argued in its renewed motion that, based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), the Court should revisit its preliminary *mens rea* ruling.  ECF 210 at § V.B.[2]  Concord contends that those cases, and the principles they espouse, require the government in this case to allege and prove that Concord knew its status as a foreign-national corporation imposed specific disclosure and registration duties on Concord that it was obligated, on pain of criminal sanction, to carry out; and, further, that Concord knew about the specific FECA and FARA statutes and regulations invoked when it acted.  *Id.*  The government does not take this argument seriously either.  But avoidance does not dispel what the controlling law now compels.

---

[2]    The Court previously found that the *mens rea* issue would be later addressed in litigation over the jury instructions.  *See United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 57 (D.D.C. 2018) ("Concord will have further opportunities—with jury instructions and in trial and post-trial motions, if any—to ensure that the government proves enough knowledge to support a specific intent to thwart at least one of the three government functions alleged in the indictment.").

*Rehaif*, as Concord explained, calls for rigorous scrutiny of criminal charges and strict application of *mens rea* requirements where, as alleged, there is a serious risk of ensnaring innocent conduct.  ECF 210 at 32–36.  Because that risk in this case is high, the *mens rea* burden on the government must be proportionately high.  And *Burden*, for its part, reinforces this aspect of *Rehaif* and what it requires in this case.  *Id.* at 38–39.  *Rehaif* also provides important clarity on the ignorance of the law defense and its continued vitality where, as here, knowledge of a law or legal requirement goes to a very element of the criminal offense.  *Id.* at 32–33, 37–40.

The government simply relies on the argument that these cases do not apply because § 371 itself does not spell out the mental state required for a fact pattern like the one the government has charged and advanced here.  But the need for a strict *mens rea* showing is a fundamental principle of criminal law, necessary to ensure that only blameworthy conduct is criminalized.  ECF 210 at 35–37.  On its own, the basic statement of a § 371 defraud conspiracy such as the one the government repeatedly incants—that "Concord knowingly conspired to impair lawful government functions through deceptive means" (Gov't Opp. at 19)—does not conceivably provide fair warning to Concord of what is or was illegal in this case.  Moreover, the word "knowingly" does not appear in § 371 either; and the government would not dare argue that such an absence means that the statute creates strict liability.

In certain kinds of defraud-conspiracy cases, where the illegality of the underlying conduct is apparent and a reasonable person would know that, a willfulness element is unnecessary.  But here, it was far from reasonably clear at the time Concord allegedly acted that what it was allegedly doing—conspiring to interfere with the government functions of obtaining disclosures and registrations relating to elections—was criminal.  Due process imparts the principle in these circumstances that the defendant should have fair warning of what the law

prohibits.   ECF 210 at 40–45.   Requiring willfulness, that is, knowledge of the specific prohibitions, as part of the charge and the burden of proof bridges this due process gap.   If that burden is met, then it becomes reasonably clear that the defendant did know.   The case brought here is no different from, for example, an American posting on social media a nude selfie that is later viewed over the internet in a foreign country that deems that American to have violated its local obscenity laws—which, of course, the American had no knowledge of.   Or, what if an American posts on the internet criticism of a Chinese policy that is later viewed in China and determined to be a threat to its own national security?   Is the U.S. government going to permit the extradition of these Americans to an unknown fate in a foreign land?

For these reasons, all defraud conspiracies cannot be viewed as fungible, and no case says they should be.   Remarkably, the government doesn't deny that it is seeking a conviction without proving Concord was aware of the relevant duties.   Instead they admit it.   But where the "lawful" government function lies, as in this case, in obscure statutory provisions, and acts of non-disclosure or omission related to those provisions are involved, an awareness of the statutes should be required as a matter of due process.   ECF 210 at 40–45.   That is because where an act of non-disclosure and omission is concerned and the defendant does not know his or her failure to act is unlawful, there is no way to avoid the adverse consequences.   The defendant does not know what conduct is forbidden.   These are the central lessons of *Lambert v. California*, 355 U.S. 225 (1957) (discussed at ECF 210 at 42)—another case the government's opposition noticeably omits.[3]

---

[3]   The government ignores most of the other authorities Concord cites in its discussion of *mens rea*, including relevant, recently decided § 371 defraud conspiracy and criminal FARA cases in this Court and the Eastern District of Virginia.   ECF 210 at 37 (citing *United States v. Rafiekian*,
(continued)

As *Burden* would say, *mens rea* needs to be "calibrated" to the statutes that are involved. 938 F.3d at 690.   What is required depends on the particular circumstances of the case and conspiracy alleged.   There can be willfulness in doing the act, but sometimes a requirement must be added that one knows its act violates the law.   *Rehaif* is to the same end.   Heightened scienter requirements are imposed to ensure that a defendant understands the wrongful nature of its alleged act.   A "mature system of law" reads this requirement in as necessary in the case at hand. *Rehaif*, 139 S. Ct. at 2196 (citation omitted).

These are the principles that drove the Supreme Court in *Rehaif*—as Concord's motion lays out in detail.   ECF 210 at 32–40.   But one would not know any of this from reading just the government's opposition.   It provides a technically accurate, but substantially incomplete, description of *Rehaif*, *see* Gov't Opp. at 16, ignoring outright the Court's overarching focus there on the *mens rea* function of sparing innocent conduct from the reach of a criminal statute and its discussion of the limits on the maxim that ignorance of the law is no excuse—and further ignoring how all of this impacts this Court's prior *mens rea* analysis in this case.   It is those particular aspects of *Rehaif*, though, that make it so critically important to the *mens rea* issue here, and why its reasoning should compel reconsideration of the government's burden of proof on that question is in this case.

Instead of grappling with these critical aspects of *Rehaif*, the government resorts once again to misdirection and mischaracterization.   It claims, for example, that "Concord would apparently extract from [*Rehaif*] a newly established rule that courts must read willfulness requirements into statutes where none exist."   Gov't Opp. at 16.   As Concord's motion—and

---

No. 1:18-cr-457-AJT-1, 2019 WL 4647254 (E.D. Va. Sept. 24, 2019)); *id.* at 42 (citing *United States v. Craig*, No. 1:19-cr-00125-ABJ, 2019 WL 3604630 (D.D.C. Aug. 8, 2019)).

*Rehaif* itself—make clear, however, there's nothing "newly established" about reading a *mens rea* requirement into a criminal statute that does not provide for one.  ECF 210 at 39; *Rehaif*, 139 S. Ct. at 2195.  Nor, obviously, is Concord claiming some broad and universal rule "that courts must read willfulness requirements into statutes where none exist."  As noted, Concord's argument is far narrower and case-specific—that willfulness is required in this particular § 371 defraud conspiracy case based specifically on the way the Indictment is structured and what the prosecution has alleged.

The government also attempts to confine *Rehaif* to instances where the criminal statute at issue requires proof of one's "status."  Gov't Opp. at 16–17.  That is not even close to a credible reading of *Rehaif*.  The Supreme Court's holding there is that *mens rea* must be shown as to each element of a criminal statute—whether it's one's status, any other element, or, as here, whether one (i) has knowingly engaged in deception that one (ii) knows interferes with a lawful government function.  *See Rehaif*, 139 S. Ct. at 2194.

The government is well wide of the mark, too, when it says *Rehaif* "distinguished" the very arguments it claims Concord is making:  "that *Rehaif* required some combination of a willful intent when entering the conspiracy and knowledge of FECA and FARA" and that Concord "cannot be held liable because it was unaware of the law regulating its conduct."  Gov't Opp. at 17.  The government says that these arguments are blocked by *Rehaif* because *Rehaif* says that "where a defendant has the requisite mental state in respect to the elements of the crime *but claims to be 'unaware of the existence of the statute proscribing his conduct.'"  Id.*  In other words, according to *Rehaif*, mere ignorance of the "statute proscribing [one's] conduct" and under which he is criminally charged is not a defense.

This is all just more government garbage.  As indicated, this reference from *Rehaif* was

addressing the typically unsuccessful argument that, even when one has the requisite *mens rea* as to each element of a statutory offense, one cannot be culpable unless he or she actually knows about the statute that creates the offense—*i.e.*, that one has to know about the law he or she has allegedly violated.  That is the classic case for applying the maxim that ignorance of the law is no excuse.

But Concord is not arguing that the government must prove Concord knew about § 371 and its defraud conspiracy clause—the "statute proscribing [its alleged] conduct" here.  Rather, Concord's argument is right in line with *Rehaif* and the recognized ignorance of the law defense—that the government must show that had knowledge as to the "lawful government function" **element** of the § 371 defraud conspiracy offense, and that knowledge has to include knowledge of the laws that give rise to the "functions" allegedly interfered with.  That is what *Rehaif* speaks to directly—the need to prove knowledge as to each statutory element.  Where a defendant lacks knowledge that goes directly to a statutory element on which the government bears the burden of proof, the law forbids him from being criminally punished.  And again, the government desperately tries to rebut a reasonable interpretation of *Rehaif* because everybody now knows that no such evidence of that knowledge exists here.  The government has completed discovery and there is not one iota of evidence that Concord or any other alleged co-conspirator was aware that their status as a foreign national created arguable duties under U.S. law to three agencies within the U.S. government.

The government is not done, though.  It proceeds to claim that "Concord would appear to seek a per se requirement that it must have known details of the statutory provisions administered by the government to have conspired to obstruct the government functions at all." Gov't Opp. at 17.  "Per se" is just silly because Concord argues nothing of the sort.  What it does

argue—as it has previously—is that in *this case*, as the government has charged it (and reinvented it), Concord must have known of the duties that the statutory provisions arguably created and the exercise of which it allegedly interfered.   And these foreign-national co-conspirators must have known of these duties despite the government never previously charging even one single similarly-situated defendant with the same charge.   *Rehaif*, among other binding precedents, supports precisely this type of knowledge here, focused as it is on the particulars of the underlying statutory scheme giving rise to the "functions" supposedly obstructed and the allegations at issue, and the need for a heightened *mens rea* where, as here, that is necessary to ensure that innocent conduct is not punished.   *See generally* ECF 210 at § V.B.

In its final rhetorical flourish, the government even goes so far as to say that § 371 "prohibits conspiring to impair the government through deceptive means, rather than any particular conduct or violation of any particular legal framework."   Gov't Opp. at 17.   But that is both wrong and beside the point.   It is wrong because mere impairment of "the government," without any reference to "any particular conduct or violation of any particular legal framework," is not enough and rightly would never pass constitutional muster, much less a fair statutory construction tied to controlling § 371 precedent.   *See*, *e.g.*, *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993) (noting that § 371's defraud clause does *not* "make it a federal crime to do anything, even that which is otherwise permitted, with the goal of making the government's job more difficult"), *overruled on other grounds by Neder v. United States*, 527 U.S. 1, 8–9 (1999).   And it is beside the point because the case the government has brought here against Concord—predicated, as it appears to be, on the "particular legal framework[s]" created by FECA and FARA and disclosure and registration duties flowing therefrom—would indeed require such a showing before Concord could be convicted of a crime.   The government cites no

case that says otherwise.

When *Burden* is considered, moreover, there is still more evasion.  The government focuses on the fact that in *Burden*, the jury was given a willfulness instruction, as the criminal statute at issue required.  Gov't Opp. at 18.  But Concord does not dispute any of that and it is not relevant to the arguments Concord actually makes.  *Burden* matters for the same reason *Rehaif* matters—it reinforces the critical need to ensure a guilty mind is shown as to each statutory element and that innocent conduct is not caught up in a criminal dragnet.  ECF 210 at 33–34.

The government closes by cramming Concord's due process and fair notice arguments into a few generic sentences in the final paragraph of its brief, claiming that any due process concerns are assuaged by the fact that the government has charged a § 371 defraud—not offense—conspiracy, and assuring that Concord's due process rights will be fully protected at trial.  Gov't Opp. at 19.  This hardly does justice to these serious concerns here, jeopardized in the extreme by the government's arbitrary prosecutorial and associated tactics against Concord over the past 20 months—with no signs of abating.

Dated: October 28, 2019

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By: /s/ Eric A. Dubelier
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

[*]*Admitted Pro Hac Vice*