UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CONCORD MANAGEMENT AND CONSULTING LLC,<br><br>Defendant. | Crim. No. 18-CR-32-2 (DLF) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR GRAND JURY INSTRUCTIONS**

The United States of America, by and through undersigned counsel, respectfully opposes the motion of Defendant Concord Management and Consulting LLC ("Concord") for disclosure of grand jury instructions pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). *See* Doc. 217. The motion is without merit and should be denied.

Rule 6(e)(3)(E)(ii) authorizes disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a defendant must show a "particularized need" or "compelling necessity" to justify such disclosure, given the "strong secrecy protections" surrounding grand jury matters. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 & n.6 (1958). This is a "heavy burden," *United States v. Apodaca*, 287 F. Supp. 3d 21, 47 (D.D.C. 2017), met only in "exceedingly rare cases." *United States. v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007).

Concord's primary argument is that disclosure is necessary because, as it claims, the government has repeatedly shifted its theory of criminal liability in this case, including through its

October 4, 2019, letter to the defense, in which the government supplemented its bill of particulars with regard to reporting requirements under the Foreign Agents Registration Act (FARA). *See* Doc. 217 at 1-10, 13-19; Doc. 217-4 (October 4 letter). Concord most recently pressed this same claim in its renewed motion to dismiss. *See* Doc. 210 at 28-29; *see also* Doc. 181 at 4-6 (making similar claim of a "changed theory of liability").

Even taken at face value, Concord's claim provides no basis for disclosure of grand jury instructions, because Concord fails to articulate how such disclosure would advance an argument for dismissal, as required by Rule 6(e)(3)(E)(ii), let alone how disclosure would satisfy a "particularized need" or "compelling necessity," as required by the Supreme Court. In any event, as the government most recently argued in response to the renewed motion to dismiss, Concord's central premise—that the government has improperly shifted its theory of criminal liability—is simply erroneous. *See* Doc. 219 at 14. For these reasons, the Court should deny Concord's motion.

## BACKGROUND

### I. The Indictment

On February 16, 2018, a grand jury returned an eight-count Indictment against thirteen individuals and three corporate defendants, including Concord. The Indictment alleges that the defendants "knowingly and intentionally conspired with each other . . . to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016." Doc. 1 ¶ 2. This conspiracy is charged in Count One as a violation of 18 U.S.C. § 371. *See id.* ¶¶ 8-85. According to the Indictment, the conspiracy included a Russian organization, defendant Internet Research Agency LLC (IRA), that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates"

in the 2016 election and "the political system in general" and to favor one candidate for President. *Id.* ¶¶ 3, 6, 10. Defendant Yevgeniy Prigozhin approved, supported, and funded the IRA's operations through other Russian entities that he directly controls, particularly defendant Concord Management and Consulting LLC and a second entity, defendant Concord Catering. *Id.* ¶¶ 3, 11-12.

Describing the lawful government functions relevant to Count One, the Indictment explains that the United States, "through its departments and agencies, regulates the activities of foreign individuals and entities in and affecting the United States in order to prevent, disclose, and counteract improper foreign influence on U.S. elections and on the U.S. political system" Doc. 1 ¶ 1. The Indictment also identifies certain U.S. government agencies—the Federal Election Commission (FEC), the Department of Justice (DOJ), and the Department of State—that are charged with enforcing laws and regulations concerning such activities. *Id.* For example, the FEC "administers the Federal Election Campaign Act ('FECA')," which imposes limitations on certain contributions and expenditures and imposes reporting requirements. *Id.* ¶ 25. The DOJ "administers the Foreign Agents Registration Act ('FARA')," which "establishes a registration, reporting, and disclosure regime for agents of foreign principals." *Id.* ¶ 26. And the State Department is responsible for the issuance of non-immigrant visas, applicants for which must provide truthful information in response to questions on the visa application form. *Id.* ¶ 27.

The Indictment does not charge any defendant with a criminal violation of FECA or FARA. Rather, the defendants are charged, pursuant to 18 U.S.C. § 371, with knowingly and intentionally conspiring to defraud the United States by impairing, obstructing, and defeating the lawful functions of the FEC, DOJ, and State Department, through fraud and deceit. Doc. 1 ¶¶ 7, 9. The Indictment alleges that the defendants' fraud and deceit included, among other conduct, "making

expenditures in connection with the 2016 U.S. presidential election without proper regulatory disclosure; failing to register as foreign agents carrying out political activities within the United States; and obtaining visas through false and fraudulent statements." *Id.* ¶ 7. The Indictment alleges a host of additional deceptive means employed by the defendants to hide their Russian origin and to impede U.S. government functions, including surreptitious intelligence gathering in the United States by foreign agents, influence operations conducted through false online personas, and staging U.S. political rallies in the United States. *See id.* ¶¶ 29-38, 51-57.[1]

## II. Bill of Particulars and Concord's Renewed Motion to Dismiss

On May 24, 2019, the Court partially granted Concord's motion for a bill of particulars (Doc. 104), in which the defendant sought additional information regarding, among other things, allegations in the Indictment regarding FECA and FARA. Doc. 136 (Order). The Court stated that "[t]he indictment alleges that the defendants agreed to a course of conduct that would violate FECA's and FARA's disclosure requirements . . . and provides specific examples of the kinds of expenditures and activities that required disclosure . . . , [b]ut the indictment does not cite the

---

[1] On May 14, 2018, Concord moved for *in camera* inspection of the legal instructions provided to the grand jury regarding Count One of the Indictment, "to determine whether the instructions provided could support a motion to dismiss." Doc. 11. Previewing its contemplated motion to dismiss, Concord asserted that the *mens rea* alleged in the Indictment (requiring defendants act "knowingly and intentionally") was incorrect, and that a "willfulness" standard should apply. Doc. 11 at 5-7. The Government opposed, arguing that (1) Concord had failed to meet its legal burden of showing a "particularized need" or "compelling necessity" for such relief and (2) in any event, the premise of Concord's motion—that Count One was defective for failing to allege "willfulness"—was erroneous.

On June 15, 2018, the Court denied the motion for *in camera* review without prejudice, noting that, if the Court were to rule against Concord regarding the applicable *mens rea*, the motion regarding grand jury material "would have no basis." Doc. 28 at 2. The Court concluded that "[t]his legal question should be decided before the Court considers reviewing secret grand jury proceedings." *Id*. On November 15, 2018, the Court ruled against Concord regarding the applicable *mens rea*, denying Concord's motion to dismiss and stating that the government "alleged the requisite intent" and "no more is required." Doc. 74 at 25.

specific statutory and regulatory disclosure requirements that the defendants violated. Nor does it clearly identify which expenditures and activities violated which disclosure requirements." *Id.* at 12. Accordingly, the Court ordered the government to "[i]dentify any statutory or regulatory disclosure requirements whose administration the defendants allegedly conspired to impair," and, with respect to FARA, to "identify each category of activities that the government intends to establish triggered a duty to register as a foreign agent under FARA" and "identify for each category of activities which disclosure provisions the defendants or their co-conspirators allegedly violated." *Id.*

On July 5, 2019, the government complied. *See* Doc. 176. With respect to FARA, the government stated: "The indictment alleges, and the evidence at trial will show, that the conspirators used social media platforms, political advertising, and political rallies to influence public opinion on political matters and to interfere in the 2016 U.S. presidential election. Doc. 1 ¶¶ 32-57. This conduct triggered FARA's reporting requirement. 22 U.S.C. § 612(a); *see* 22 U.S.C. § 611(c)(1)(i), (ii), (iv); *see also* 22 U.S.C. § 611(g), (h), (o)." Doc. 176 at 3.

On August 19, 2019, Concord moved for a supplemental bill of particulars, claiming that, with respect to FARA, the government's bill failed to indicate "who was supposed to register or the name of the foreign principal to be disclosed." Doc. 181 at 19. On September 16, 2019, the Court held argument on the motion, at the conclusion of which the Court ordered that the government identify, to the extent it had not already, every individual or entity that the government will argue at trial was required to register under FARA as a foreign agent or was a foreign principal. *See* Sept. 16, 2019 Hrg. Tr. 49-51. The government noted that the category identified by the Court was "not exactly the same thing" as the category of indicted and unindicted co-conspirators that the government had disclosed in its earlier bill of particulars, which the government filed based on

5

its understanding of the Court's May 24, 2019, ruling. *Id.* at 51. As the government explained, "it is possible for a conspirator to cause someone to violate . . . FARA reporting requirements without that person being a member of the conspiracy." *Id.*

On October 4, 2019, the Government complied with the Court's September 16, 2019, order, explaining to Concord by letter that:

> The government intends to argue at trial that the defendants conspired to cause . . . individuals or organizations to act as agents of a foreign principle while concealing from those individuals or organizations the fact that they were acting as agents of a foreign principle and therefore either the individuals or organizations or the conspirators (or both) would have had a legal duty to register under [FARA].

Doc. 217-4. The government's letter then listed the relevant individuals and organizations. *Id.*

In its October 7, 2019, renewed motion to dismiss, Concord presents a series of complaints that, in its view, amount to a violation of due process requiring dismissal. Doc. 210. Among those arguments are several of the same points made in the instant motion, including Concord's primary claim that "the government, from the inception of this case, treated the charges against Concord as a moving target," and, with its October 4 letter, "changed its FARA theory again." *Id.* at 28. The motion to dismiss also argues that the "changed" theory "deprives Concord of fair notice of the actual charge," raising a "double-jeopardy danger," *id.* at 28, 40, and that recent case law, including *Reihaf v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), calls for reexamination of the Court's ruling on *mens rea*. *Id.* at 31-40. The instant motion repeats these points. *See* Doc. 217 at 16-17 ("notice" and "double-jeopardy"); *id.* at 17-19 (*Reihaf* and *Burden*).

## LEGAL PRINCIPLES

Proceedings before the grand jury are surrounded by strong secrecy protections that serve compelling, historically grounded purposes. *See United States v. Procter & Gamble Co.*, 356 U.S.

677, 681 & n.6 (1958). "This indispensable secrecy of grand jury proceedings . . . must not be broken except where there is a compelling necessity." *Id.* at 682 (internal quotation marks and citation omitted). And there is "a presumption of regularity, with respect to grand jury proceedings, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Apodaca*, 287 F. Supp. 3d 21, 47 (D.D.C. 2017) (internal quotation marks and citation omitted).

Rule 6(e)(3)(E)(ii) provides a narrow exception: "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a court may only exercise its discretion under this rule "when the defendant succeeds in carrying the heavy burden of showing that a particularized need exists that outweighs the policy of secrecy." *Apodaca*, 287 F. Supp. 3d at 47.

Thus, only in "exceedingly rare cases" are defendants "able to make a factually based showing of particularized need for the production and inspection of grand jury materials." *United States. v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007) (allowing inspection of grand jury minutes because government misled the grand jury about the existence of a page of a document that had been the basis for "[a]t least five counts of the original eleven-count indictment"); *see also Apodaca*, 287 F. Supp. 3d at 47-48. "Where a defendant fails to provide a discrete reason, and instead relies on speculation or unsupported assumptions, courts have made clear that disclosure of grand jury minutes is not warranted." *Apodaca*, 287 F. Supp. 3d at 47 (collecting cases).

## ARGUMENT

**I.    Concord Has Not Demonstrated a "Compelling Necessity" or "Particularized Need" to Break Grand Jury Secrecy.**

Concord's primary argument is that disclosure of grand jury instructions is necessary

because, as it claims, the government has shifted its theory of criminal liability in this case, including through its October 4, 2019, letter to the defense. *See* Doc. 217 at 1-10, 13-19; Doc. 217-4 (October 4 letter). Concord claims that the letter reflects a "brand-new theory of culpability" and argues that "[t]he ever-changing nature of the charges in this proceeding raises serious doubts about the instructions received by the grand jury as related to what the government now claims it will prove." Doc. 217 at 7, 13.[2]

Even assuming that Concord's claim regarding the government's allegedly "brand-new theory of culpability" had merit (which it does not), the relief that Concord requests—disclosure of grand jury instructions—is a *non sequitur*. Concord is free to argue that, based on its interpretation of the Indictment, the government should be precluded at trial from presenting the argument noted in its October 4 letter regarding FARA. Indeed, it makes that argument in the instant filing: "The Indictment does not appear capable of being construed to encompass the government's new theory of FARA criminality . . . , [a]nd if it cannot be construed that way, then the prosecution's attempt to inject that theory now must be seen for what it is: an impermissible constructive amendment of the indictment that must be blocked." Doc. 219 at 15.

It is not at all necessary, however, to break grand jury secrecy for Concord to make this challenge to the Indictment, and Concord has thus failed to offer a "compelling necessity" or "particularized need" for the requested disclosure, as required for relief under Rule 6(e)(3)(E)(ii).

---

[2]   Concord pressed the same claim in its renewed motion to dismiss, arguing that due process requires dismissal of the Indictment because the government has "treated the charges against Concord as a moving target" and, with the October 4 letter, "changed its FARA theory again." Doc. 210 at 28-29. As the government noted in opposing the motion to dismiss, Concord had merely "dressed up in due process garb a list of arguments that this Court ha[d] previously rejected." Doc. 219 at 7. Here, Concord has dressed up one of those same arguments—the claim that the government "changed its FARA theory"—in the garb of a motion to disclose grand jury instructions. The claim fails in the renewed motion to dismiss, and it fails here.

Concord's own motion makes the government's point. First, Concord asserts in conclusory fashion that, "to protect Concord's Fifth Amendment rights and enable it to fully defend this case, the legal instructions provided to the grand jury must be disclosed." Doc. 217 at 3. In the next breath, however, Concord reveals that the grand jury instructions really make no difference: "If the Special Counsel *never* instructed the grand jury on any of the government's ever-changing theories—the recent foreign-agent-registration riddle in particular—then this case should end for that reason. And if the Special Counsel *did* instruct the grand jury on the government's constantly shifting theories, the absence of those theories from the Indictment supports the same result." *Id.*; *see also id.* at 15-16 (making the same point). In other words, the instructions are of no moment in Concord's view, because the Indictment, on its face, cannot support the government's supposed "brand-new theory of culpability." That is not a basis for disclosure, notwithstanding Concord's conclusory demand that it is "entitled to know what occurred" in the grand jury. *Id.* at 3.[3]

Concord has not cited any decision that has found a "compelling necessity" or "particularized need" to break grand jury secrecy under circumstances similar to those presented here. And members of this Court have not hesitated to deny motions for disclosure or even *in camera* review of grand jury material, including legal instructions, under circumstances where defendants identified arguably more compelling necessities than Defendant does here, but still failed to meet the "heavy burden" of breaking grand jury confidentiality. *See, e.g.*, *Apodaca*, 287 F. Supp. 3d at 21. (denying motion for *in camera* inspection of grand jury instructions where defendant claimed that extradition request contained an "incomplete statement of the law"); *United*

---

[3] The government, of course, disagrees with the suggestion that its October 4 letter reflects an impermissible "constructive amendment" of the Indictment. *See* Doc. 219 at 15. This Court, however, as court routinely do, will ensure that all charges and theories submitted to the trial jury will comport with the Indictment. Nothing about that process necessitates or justifies disclosure of grand jury instructions.

*States v. Wright*, 234 F. Supp. 3d 45, 47–48 (D.D.C. 2017) (denying motion for disclosure of grand jury material where defendant questioned the date on which the grand jury was sworn, as well as "attempt" language in the indictment and the omission of the foreperson's signature on the publicly docketed indictment); *United States v. Trie*, , 62 (D.D.C. 1998) (denying motion for disclosure of instructions given to grand jury where defendant alleged that government may have erred in defining "hard money" and "soft money" contributions under FECA).[4]

Concord's request for disclosure also recycles other arguments presented in its renewed motion to dismiss, and, as above, fails to connect those arguments to any need—let alone a "particularized need" or "compelling necessity"—for disclosure of grand jury material. For example, Concord asserts that the government's "new FARA interpretation" raises "serious Fifth Amendment concerns" regarding the need for an indictment to provide "notice" and protect against double jeopardy. Doc. 217 at 16-17; *see also* Doc. 210 at 28-29 (same argument). And Concord cites the recent decisions in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), as support for its argument regarding what *mens rea* should apply in Count One. Doc. 217 at 17-19; *see also* Doc. 210 at 32-40 (same argument). The government has responded to these arguments. *See* Doc. 219 at 13-19. In any event, neither argument turns on the substance of the grand jury instructions, as Concord can raise these claims (as it has) by directly challenging the sufficiency and scope of the Indictment. Accordingly, Concord has failed to establish that these arguments justify the requested disclosure.[5]

---

[4] Concord argues that any "countervailing" reasons for maintaining grand jury secrecy are diminished in this case. *See* Doc. 217 at 19-21. The government disagrees, but, regardless, this argument is of no moment given that Concord has failed to demonstrate any need—let alone a "compelling necessity" or "particularized need"—for disclosure.

[5] At a minimum, Concord's request for disclosure based on *Reihaf* and *Burden* is premature, because the Court has yet to pass on whether those cases impact the *mens rea* standard in this case. Facing a similar circumstance earlier in this case, the Court denied Concord's motion for *in camera*

Additional complaints and accusations by Concord, presented primarily in the "Factual and Procedural Background" of its filing, appear to suggest that disclosure of grand jury material is somehow justified based on alleged government misconduct. *See* Doc. 210 at 3-10. The complaints and accusations are meritless and add no value to Concord's request for relief. For example, Concord (at 4-6) rehashes earlier complaints regarding the adequacy of the indictment and alleged "shifts" in the government's theory that have been litigated not only in the renewed motion to dismiss but also through Concord's motions for a bill of particulars. *See, e.g.*, Doc. 181 at 4-8 (Concord's motion for a supplemental bill); Doc. 194 (government's opposition); Sept. 16, 2019 Minute Order (denying motion). Concord also complains about the government's response to a discovery request for production of material from the Department of the Treasury, Office of Foreign Assets Control. Doc. 217 at 6. This complaint, as far as the government can discern, is entirely unrelated to the instant motion.

Finally, Concord accuses the government of "gamesmanship," reciting portions of the procedural history of the case that Concord finds "highly suspicious." Doc. 217 at 7. In short, Concord posits that the government's October 4 letter was crafted in response to Concord's October 1, 2019, motion to strike as surplusage certain allegations regarding "racial issues." *Id.*; *see also id.* at 7-8 ("Just three days [after the motion to strike], the government proffered its brand-new theory of culpability that includes the argument that U.S. persons, who are predominantly African-American, were duped by the Defendants into failing to register under FARA.") This is preposterous. As noted above, the October 4 letter, which says nothing about "racial issues,"

---

review of jury instructions without prejudice, noting that, if the Court were to rule against Concord regarding the applicable *mens rea*, the motion regarding grand jury material "would have no basis." Doc. 28 at 2. As the Court concluded, the "legal question" regarding *mens rea*, should be decided before the Court considers reviewing secret grand jury proceedings." *Id*.

responded to the Court's order during the September 16, 2019, hearing, and, indeed, it echoed the government's explanation at that hearing that, with respect to FARA, "it is possible for a conspirator to cause someone to violate . . . FARA reporting requirements without that person being a member of the conspiracy." Sept. 16, 2019 Hrg. Tr. 51.

## II. Concord's Central Premise—that the Government's Theory of Criminality Has Shifted—is Erroneous.

As noted above, the central premise of Concord's motion is its claim that the government has shifted its theory of criminal liability in this case, including through its October 4, 2019, letter to the defense. *See* Doc. 217 at 1-10, 13-19; Doc. 217-4 (October 4 letter). As the government explained in its response to the renewed motion to dismiss, however, "the truth of the matter is that the government has consistently articulated a single theory of criminal liability: The defendants conspired to defraud the United States by engaging in a litany of deceptive conduct aimed, in part, at impairing the lawful government functions of the DOJ, the FEC, and the State Department." Doc. 219 at 14. As the government further explained:

> The government has consistently maintained that the deceptive conduct included, but was not limited to, failure to disclose in contravention of a legal duty. *See, e.g.,* Doc. 69 (supplemental government brief). Although the Indictment detailed the relevant activities at issue, the bill of particulars specifically identified the categories of activity alleged in the Indictment that required disclosure to the FEC and DOJ. Consistent with the conduct detailed in the Indictment, the recent letter sent to defense counsel at the Court's instruction explains that one of the ways in which this conduct triggered FARA's reporting requirement was by causing individuals within the United States to act. That letter in no way "changed" the government's "FARA theory." Doc. 210, at 28.

Doc. 219 at 14.

Here, Concord has simply repackaged the same claim it advanced in the motion to dismiss. The claim remains erroneous, and Concord's error is thus an additional reason why the Court should deny the instant motion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Concord's motion.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS | JESSIE K. LIU |
| Assistant Attorney General for National Security | United States Attorney |
| | |
| By: /s/ | By: /s/ |
| Heather N. Alpino | Jonathan Kravis |
| U.S. Department of Justice | Luke Jones |
| National Security Division | Kathryn Rakoczy |
| 950 Pennsylvania Ave. NW | 555 Fourth Street NW |
| Washington, D.C. 20530 | Washington, D.C. 20530 |
| Telephone: (202) 514-2000 | Telephone: (202) 252-6886 |