**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
MOTION TO COMPEL DISCOVERY OF MATERIALS FROM THE
U.S. DEPARTMENT OF JUSTICE, FEDERAL ELECTION COMMISSION,
AND U.S. DEPARTMENT OF STATE**

Pursuant to Fed. R. Crim. P. 16, Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this Motion to Compel disclosure of: (1) all materials from the Department of Justice ("DOJ") or Federal Election Commission ("FEC") related to the complaint filed with the FEC by Common Cause on or around September 7, 2017 captioned Common Cause and Paul S. Ryan v. Unknown Respondent(s) (the "Common Cause Request"); and (2) all documents or information that any Defendant or unindicted co-conspirator was not or would not have been required to file any report with the FEC, register with the Department of Justice's Foreign Agent Registration Act ("FARA") Unit, or provide additional information with respect to the visa applications alleged in the Indictment (the "*Brady* Request") (collectively, the "Requests").

Concord sought the requested documents and information in late August and mid-September 2019.  Despite multiple follow-up requests from undersigned counsel, the government did not respond to the Requests until November 14, 2019.  When the government finally responded, it asserted that the trial team was "not aware of" any such materials in the possession

of DOJ, and as to the FEC, the requested materials "would not be within the possession of the trial team for discovery purposes." **Ex. 1**, Nov. 14, 2019 Letter.

The government's position here is consistent with its past tortured use of the English language wherein it seeks to turn discovery in this case into a game of hide-and-seek.  Because the government's response is contrary to the law of this District, Concord brings the instant motion to compel the government to produce the documents and information requested.

## I.    BACKGROUND

The Superseding Indictment alleges that the Defendants committed fraud on the United States by impairing, obstructing and defeating the lawful functions of the FEC, the DOJ, and the Department of State ("DOS") for the purpose of interfering in the 2016 presidential election. Superseding Indictment ¶ 2, ECF No. 247 (the "Indictment").[1]

### A.    Concord's Request for Documents and Information Related to the Common Cause Complaint

On September 7, 2017, the organization Common Cause filed with the FEC a complaint raising many of the same allegations set forth in the Indictment.  **Ex. 2,** Common Cause Complaint. Like the Indictment, the Common Cause Complaint alleges that foreign nationals made undisclosed expenditures in connection with the 2016 presidential election in violation of the Foreign Election Campaign Act ("FECA").  *Id.* ¶ 2.  It further alleges that these undisclosed expenditures included "purchasing political advertising on Facebook using accounts likely operated out of Russia, in violation of 52 U.S.C. §§ 30121(a)(1)(C) and 30104(c), as well as [] 11 C.F.R. § 110.20(f)."  *Id.* ¶ 2.  These are the same allegations contained in the Indictment and the

---

[1] Concord issued the Requests before the government even conceived of the idea of seeking a Superseding Indictment.  However for ease of reference, Concord will refer to the Superseding Indictment in this Motion.

same statutory and regulatory provisions the government relies upon in this case. *See* Indictment ¶¶ 35, 48-50; Government's Bill of Particulars 1-2, ECF No. 176 (citing 52 U.S.C. §§ 30104(c), 30121 and 11 C.F.R. § 110.20). Additionally, the Common Cause Complaint alleges that some of these ads specifically mention Donald Trump and Hillary Clinton and refers to the September 6, 2017 Facebook statement referenced in the Superseding Indictment. *Compare* **Ex. 2 ¶¶** 6-7, *with* Indictment ¶ 58(b). At the same time that Common Caused filed its complaint with the FEC, it sent a copy to the Department of Justice. **Ex. 3**, Sept. 7, 2017 Letter to DOJ (*available at* https://www.commoncause.org/media/russian-facebook-political-ad-buys-during-2016-election-draw-doj-fec-complaints/).

On August 26, 2019, Concord requested that the government produce any and all materials from the FEC or DOJ related to the Common Cause Complaint. **Ex. 4**, Aug. 26, 2019 Letter. Any such materials would relate directly to whether or not the functions of the FEC and FARA Unit were in fact impaired. Here, the government has made unprecedented allegations about impairment while at the same time failing to produce a single document from the FEC or FARA Unit evidencing any such impairment. Any action or failure to act by the FEC or DOJ is relevant to the factual question of impairment, as opposed to impairment imagined by the prosecutors in this case, and also may be exculpatory.

## B.    Concord's Request for Exculpatory Information

On September 17, 2019, Concord issued the *Brady* Request, seeking:

(1) Any and all documents or information in the possession of the government, including but not limited to the FARA Unit of the Department of Justice and the Federal Election Commission that any indicted Defendant or unindicted co-conspirator was not, or would not have been required to file any report with the FEC or to register under FARA;

(2) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that any indicted Defendant or unindicted co-conspirator was not, or would not have been required to provide additional

information to what was actually provided for the travel visas referenced in ¶ 30 of the Indictment;

(3) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that the activity identified in ¶ 30 of the Indictment was not prohibited pursuant to the visas issued by the U.S. Department of State.

**Ex. 5**, Sept. 17, 2019 Letter.  In its letter, Concord noted that the government has stated that the Indictment alleges that the Defendants had a legal duty to file reports under FECA and to register under FARA.  *Id.*  As such, any documents or information in the possession of the government indicating that the Defendants and their co-conspirators did not have such a duty would be exculpatory.

### C.      The Government's Tortured Non-Response

Concord followed up on both of the Requests multiple times, including on September 17, September 30, and October 25 but the government ignored the Requests.  *See* **Ex. 6**, Sept. 17, 2019, Sept. 30, 2019 and Oct. 25, 2019 Emails.  On November 12, 2019, Concord again asked the government to respond to the Requests, as well as other outstanding discovery requests.  **Ex. 7**, Nov. 12, 2019 Email.

On November 14, 2019, the government finally responded but did not produce any of the requested materials or agree to do so.  *See* **Ex. 1**, Nov. 14, 2019 Letter.  With respect to the Common Cause Request, the government stated that the "trial team is not aware of any such materials in the possession of the Department of Justice" and that "[a]ny materials of the [FEC] related to this complaint would not be within the possession of the trial team for discovery purposes."  *Id.*  With respect to the *Brady* Request, the government similarly stonewalled by asserting that the "trial team does not possess any of the documents that fall into these categories." *Id.*  The government went on to state that "documents in the possession of the FEC, the State

Department, or 'the government' generally, materials in the possession of those agencies would not be within the possession of the trial team for discovery purposes." *Id.*[2]

The November 14 letter does not indicate whether the documents and information sought in the Requests currently exist or ever existed; whether in the months since receiving the Requests the trial team ever asked the relevant entities for the documents and information sought; whether the government placed a litigation hold on any such materials so they would not be destroyed; or whether the government believes that the documents and information sought are not otherwise discoverable under Rule 16 because they are not material to the defense.  Notably, in its email transmitting the November 14 letter, the government noted that with respect to other outstanding discovery requests relating to the visa applications, the trial team had "put in a request with the State Department" and was waiting for a response.  *See* **Ex. 8**, Nov. 14, 2019 Email.

## II.    LEGAL STANDARD

"Criminal discovery is not a game.  It is integral to the quest for truth and the fair adjudication of guilt or innocence." *United States v. Libby*, 429 F. Supp. 2d 1, 4-5 (D.D.C. 2006) (quoting *Taylor v. Illinois*, 484 U.S. 400, 419 (1988) (Brennan, J., dissenting)).  To that end, Fed. R. Crim. P. 16 requires the government to disclose upon the defendant's request documents and objects (1) "within the government's possession, custody, or control" and (2) that are "material to

---

[2]  The government's letter is yet another riddle that undersigned counsel must try to solve.  The government uses the term "possession" as opposed to "possession, custody, or control," which is the language of Rule 16.  So it is unclear if the government believes that the requested information is in the "custody or control" of the trial team, but not in its "possession."  Similarly, the government states that the requested materials "**would not be** within the possession of the trial team." (Emphasis added).  The use of this phrasing makes it impossible to determine whether any of the requested information exists.  This phrasing also suggests that the government is engaging in willful blindness about what may in the possession of DOJ or the FEC.  With respect to the *Brady* Request, the November 14 letter does not refer to the DOJ's FARA Unit, which is specifically mentioned in Concord's September 17 letter.

preparing the defense." *See* Fed. R. Crim. P. 16(a)(1)(E).  "The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *Libby*, 429 F. Supp. 2d at 5 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).

As to the possession, custody, or control prong of the test, courts have been primarily concerned with the fairness to the defendant, and the government's ease of access to the documents sought rather than with whether the documents are actually within the physical possession of the prosecutor.  *Id.* at 5-6.  This is a fact-intensive inquiry and must be resolved on a case-by-case basis. *Id*. at 9.  Additionally, "when determining whether the government has possession, custody, and control of documents, the District of Columbia Circuit has found, albeit in the *Brady* context, that documents maintained by other components of the government which are 'closely aligned with the prosecution' must be produced." *Id.* at 6 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1993)).  The "'bureaucratic boundary [between agencies is] too weak to limit the duty' to disclose." *Id.* (quoting *Brooks*, 966 F.2d at 1503).  This Court has summed up the requirement by noting that "documents will be presumed to be in the government's possession, custody and control if the government has both knowledge of and access to the documents." *Id.* at 7 n.11.

With respect to the materiality prong, a court must determine whether the requested documents are "material to preparing the defense." *Id.* at 7.  In the context of Rule 16, the "defense" means "the defendant's response to the Government's case in chief," and requires courts to refer to the indictment when determining materiality, "as the indictment delineates the evidence to which the defendant's case must respond." *Id*. at 7 (internal citations omitted).  Courts have

found that "evidence is material 'as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Slough*, 22 F. Supp. 3d 1, 4 (D.D.C. 2014) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1983)).  It does not matter whether such evidence is inculpatory or exculpatory.  *Id.* (internal citation omitted).  Although materiality "is not a heavy burden," the evidence must bear "more than 'some abstract logical relationship to the issues in the case."  *Id.* (internal citations omitted).  Thus, the government must disclose Rule 16 evidence "only if it enable[s] the defendant significantly to alter the quantum of proof in his favor."  *Id.* (internal citations omitted).

With respect to the government's obligations under *Brady*, "[t]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case . . . .'"  *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 896 (D.C. Cir. 1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).  "Because *Brady* obligates prosecutors to assure that all exculpatory material in the possession of its investigators is identified and disclosed, suppression by either a prosecutor or an investigator can violate *Brady*."  *United States v. Nelson*, 979 F. Supp. 2d 123, 131 (D.D.C. 2013) (citing *In re Sealed Case No. 99-3096*, 185 F.3d at 896).

As with disclosures under Rule 16, this Court has defined "favorable" under *Brady* to include "any information in the possession of the government—broadly defined to include ***all Executive Branch agencies***—that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses."  *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (emphasis added).  This duty includes the obligation to search files "that are not only maintained by the prosecutor's or investigative

agency's office, but also by other branches of government 'closely aligned with the prosecution.'"
*Id.* at 17 (quoting *Brooks*, 966 F.2d at 1503).

### III.   ARGUMENT

#### A.   The Documents and Information Sought are in the Government's Possession, Custody, or Control

The government's assertion that the requested materials "would not be within the possession of the trial team for discovery purposes" is contrary to the law of this District, which does not limit discovery obligations to the possession of the line prosecutor.  Rather, considering both fairness to Concord and the government's ease of access, the requested materials are subject to discovery under Rule 16.  With respect to fairness, Concord notes that the Requests seek documents and information from two discrete Departments and the FEC—the very entities that the government accuses Concord of conspiring to defraud.  Thus, this is not a situation where Concord is requesting that the "government . . . search the files of every agency in the Executive Branch" which courts have acknowledged could "wreak havoc."  *Libby*, 429 F. Supp. 2d at 6. Instead, Concord is asking for discovery that is easily accessible to the prosecution through requests to the entities allegedly victimized by the alleged conspiracy.  *See United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1082 (D. Mont. 2005) (in a case involving 371 conspiracy to defraud charge under the Clean Air Act, the court ordered government to produce under Rule 16 agency documents relating to the underlying crime).

In fact, the government acknowledges this ease of access by affirming that it made a request to one of these entities—the Department of State—in order to respond to other of Concord's discovery requests.  *See* **Ex. 8**, Nov. 14, 2019 Email.  If there is no obligation on the government to produce documents or information that are "not within the possession of the trial team," why would the trial team make a request to the State Department for documents requested by Concord,

while at the same time presumably refusing to request information from the DOJ and the FEC? This crafty language about what the trial team knows or has possession, custody, or control of is one more riddle created by the government.[3]

> **B.     The Documents and Information Sought in the Requests Are Material to Concord's Defense**

The materiality of the documents and information sought in the Requests cannot be seriously disputed and the government does not assert in its November 14 Letter that the information is not discoverable because it is not material.  Reference to the Indictment clearly demonstrates that the documents and information sought are material to the defense.  *See Libby*, 429 F. Supp. 2d at 7.

> **1.     The Common Cause Request**

The prosecutors should not be able to come to court to argue that the allegations in the Indictment constitute impairment of the FEC when the same allegations were before the FEC at an earlier time and then attempt to keep secret what in fact occurred at the FEC.  As set forth above, the allegations in the Common Cause Complaint mirror those in the Indictment.  The FEC has a statutory obligation to investigate the violation alleged in the Common Cause complaint,[4] but there

---

[3] It is worth noting that in response to Concord's discovery request for documents belonging to the Department of the Treasury's Office of Foreign Asset Control ("OFAC")—an agency whose functions are not alleged to have been impaired by the conspiracy—the trial team apparently requested the materials from that agency and reviewed them.  *See* Concord's Mot. to Compel 4-5, 7, ECF No. 229.  It defies logic that the trial team considers documents from OFAC to be within its possession, custody, or control, but that documents from the three entities at issue in this case are not.

[4] 52 U.S.C. § 30109(a)(2) (2018) provides that "[i]f the Commission, upon receiving a complaint . . . or on the basis of information ascertained in the normal course of carrying out its supervisory responsibilities, determines, by an affirmative vote of 4 of its members, that it has reason to believe that a person has committed, or is about to commit, a violation of this Act . . . , the Commission *shall* . . . notify the person of the alleged violation. . . . The Commission *shall* make an investigation of such alleged violation . . . ."  *Id.* (emphasis added).

is no publicly available information regarding any action taken by the FEC.  *See* FEC Matters Under Review Database ("MUR") (last checked on Nov. 15, 2019).   Any documents or information relating to actions taken by the FEC in response to the Common Cause Complaint would be material to Concord's defense of the allegations in the Indictment that the FEC's functions include enforcement of the statutory prohibition on certain election-related expenditures by foreign nationals and requirements for filing reports in connection with certain election-related expenditures, both of which are implicated by the allegations in the Common Cause Complaint.

Further, at the time of filing the complaint, Common Cause sent a copy directly to the DOJ. *See* **Ex. 3.**  Whether the DOJ or its FARA Unit conducted any investigation or took any action in response to the allegations set forth in the Common Cause Complaint would be material to Concord's defense of the government's allegations that the FARA Unit's functions were implicated by the conduct alleged in the Indictment.

Moreover, the *absence* of any such documents within those two entities related to the Common Cause complaint, would undermine the allegations in the Indictment and would be exculpatory.  In particular, if the FEC did not engage in any analysis or take any action in response to the Common Cause Complaint, that fact would suggest that the agency did not believe that the allegations raised in the Common Cause Complaint were relevant to its functions—the very functions that the government now asserts Defendants and their co-conspirators intended and conspired to interfere with.  Similarly, if the DOJ itself did not conduct any analysis or take any action in response to the Common Cause Complaint, this too would be exculpatory.

For this reason, the fact that the government's November 14 letter does not indicate whether it ever made a request of the relevant entities in connection with the Common Cause Complaint is telling.  Did the government make such an inquiry and learn that no documents exist?

If so, it must disclose that information to Concord.  On the other hand, if such an inquiry revealed that the entities do have responsive documents and information, then the trial team would have knowledge of and access to the documents, making them discoverable under Rule 16.  *Libby*, 429 F. Supp. 2d at 7 n.11.  Instead, it seems that the prosecutors are content to ignore Concord's discovery requests for months and then fail to inquire whether any responsive documents or information exist.

## 2.     The *Brady* Request

The materiality of the information sought in the *Brady* Request also cannot be disputed, and again the government does not make that assertion in its November 14 letter.  To the extent there are any documents or information in the possession, custody, or control of the FEC, DOJ FARA Unit, or the DOS—the entities allegedly victimized by the conspiracy—that suggest or indicate that the Defendants and their co-conspirators *did not* have duties to report to the FEC, register with the DOJ, or provide additional or different information to the DOS, this information would contradict the government's allegations in the Superseding Indictment that such duties did exist and would be exculpatory and material to preparing the defense.  *See, e.g.,* Sept. 16, 2019 Hr'g Tr. 18:23-19:6 (prosecutor confirming that government "can and will prove" that the members of the conspiracy had a legal duty to report to the FEC and to the DOJ); Government's Suppl. Br. Opp'n Def.'s Mot. to Dismiss 1, 3-4, ECF No. 69 (arguing that the Indictment expressly alleges that the conspirators had legal duties to report and register).  The government cannot possibly fulfill its *Brady* obligations without making this inquiry, but the government's November

14 letter suggests that the trial team has not even asked the entities whether any such documents or information exist.[5]

## IV.     CONCLUSION

Under Fed. R. Crim. P. 16, the government is required to produce documents and information sought in the Requests because they are (1) within the possession, custody, or control of the government and (2) are material to Concord's defense. Accordingly, the Court should compel the government to produce those documents to defense counsel.

 Dated:  November 19, 2019                         Respectfully submitted,

                                                   CONCORD MANAGEMENT AND
                                                   CONSULTING LLC

                                                   By Counsel

                                                   /s/ *Eric A. Dubelier*
                                                   Eric A. Dubelier (D.C. Bar No. 419412)
                                                   Katherine Seikaly (D.C. Bar No. 498641)
                                                   REED SMITH LLP
                                                   1301 K Street, N.W.
                                                   Suite 1000 – East Tower
                                                   Washington, D.C. 20005
                                                   202-414-9200 (phone)
                                                   202-414-9299 (fax)
                                                   edubelier@reedsmith.com
                                                   kseikaly@reedsmith.com

---

[5] If the government did not go to the requisite entities for these materials, there is a possibility that the government failed to require the entities to preserve these documents and Concord's constitutionally protected privilege to request and obtain material evidence has been spoiled. *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." (internal citation omitted)).

# Exhibit 1

To Defendant Concord Management and Consulting LLC's Motion to Compel Discovery of Materials from the U.S. Department of Justice, Federal Election Commission, and U.S. Department of State



U.S. Department of Justice

Jessie K. Liu
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

November 14, 2019

Eric Dubelier, Esq.
Katherine Seikaly, Esq.

  Re: <u>U.S. v. Concord Management and Consulting, LLC</u>, Case No. 18-CR-32-2 (DLF)

Dear Counsel:

  We write to respond to your letters dated August 26, 2019 and September 17, 2019.

  Your August 26 letter requests "any and all materials from the Department of Justice or the Federal Election Commission" related to a particular complaint filed with the FEC in September 2017.  The trial team is not aware of any such materials in the possession of the Department of Justice.  Any materials of the Federal Election Commission related to this complaint would not be within the possession of the trial team for discovery purposes.

  Your September 17, 2019 letter requests certain documents related to FARA registration obligations, FEC reporting obligations, and obligations regarding State Department travel visa applications.  The trial team does not possess any documents that fall into these categories.  To the extent your letter requests documents in the possession of the FEC, the State Department, or "the government" generally, materials in the possession of those agencies would not be within the possession of the trial team for discovery purposes.

  Please do not hesitate to contact us if you have any questions about this information.


    Sincerely,


/s/_____      /s/_____
Heather Alpino            Jonathan Kravis
Trial Attorney             Kathryn Rakoczy
National Security Division        Luke Jones
                 Assistant U.S. Attorneys

# Exhibit 2

To Defendant Concord Management and Consulting
LLC's Motion to Compel Discovery of Materials from the
U.S. Department of Justice, Federal Election Commission,
and U.S. Department of State

## BEFORE THE FEDERAL ELECTION COMMISSION

COMMON CAUSE
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

PAUL S. RYAN
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

     v.

MUR No. _____

UNKNOWN RESPONDENT(S)

### COMPLAINT

1.     This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information and belief that one or more unknown foreign nationals made undisclosed expenditures, independent expenditures or disbursements in connection with the 2016 presidential election in violation of the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101, *et seq.* and Commission regulations.

2.     Specifically, based on published reports, complainants have reason to believe that one or more foreign nationals made undisclosed expenditures, independent expenditures or disbursements in connection with the 2016 presidential election by purchasing political advertising on Facebook using accounts likely operated out of Russia, in violation of 52 U.S.C. §§ 30121(a)(1)(C) and 30104(c), as well as and 11 C.F.R. § 110.20(f).

3.     "If the Commission, upon receiving a complaint . . . has reason to believe that a person has committed, or is about to commit, a violation of [the FECA] . . . [t]he Commission shall make an investigation of such alleged violation . . . ." 52 U.S.C. § 30109(a)(2) (emphasis added); *see also* 11 C.F.R. § 111.4(a).

## FACTS

4.      In January 2017, U.S. intelligence agencies published a declassified version of a highly

classified assessment of Russian efforts to influence the 2016 U.S. presidential election.[1]

The report states national intelligence community's assessment that "Russian President

Vladimir Putin ordered an influence campaign in 2016 aimed at the US presidential

election," that "Russia's goals were to undermine public faith in the US democratic

process, denigrate Secretary Clinton, and harm her electability and potential presidency,"

and that the intelligence agencies "have high confidence in these judgments."[2] The

intelligence assessment concluded that "Moscow's influence campaign followed a

Russian messaging strategy that blends covert intelligence operations—such as cyber

activity—with overt efforts by Russian Government agencies, state-funded media, third-

party intermediaries, and paid social media users or 'trolls.'"[3] The intelligence

assessment concluded that the "likely financier" of the Internet troll activity "is a close

Putin ally with ties to Russian intelligence."[4]

5.      On September 6, 2017, Facebook published a statement authored by the company's Chief

Security Officer Alex Stamos explaining that the company had conducted an

investigation into whether there was a connection between "Russian interference in the

[2016 US] electoral process" and ads purchased on Facebook.[5]

---

[1]      Office of the Director of National Intelligence, "Assessing Russian Activities and
Intentions in Recent US Elections," NATIONAL INTELLIGENCE COUNCIL, January 6, 2017,
*available at* https://www.dni.gov/files/documents/ICA_2017_01.pdf.
[2]      *Id.* at ii.
[3]      *Id.*
[4]      *Id.* at 4.
[5]      Alex Stamos, "An Update On Information Operations On Facebook," FACEBOOK
NEWSROOM, September 6, 2017, *available at*
https://newsroom.fb.com/news/2017/09/information-operations-update/.

> [Facebook] found approximately $100,000 in ad spending from June of
> 2015 to May of 2017 — associated with roughly 3,000 ads — that was
> connected to about 470 inauthentic accounts and Pages in violation of our
> policies. Our analysis suggests these accounts and Pages were affiliated
> with one another and likely operated out of Russia.[6]

In this internal investigation, Facebook "also looked for ads that might have originated in Russia" including, for instance, "ads bought from accounts with US IP addresses but with the language set to Russian."[7] In this part of its review, Facebook "found approximately $50,000 in potentially politically related ad spending on roughly 2,200 ads."[8]

6.  On September 6, 2017, the *Washington Post* reported that Facebook on the same date told congressional investigators that the company "sold ads during the U.S. presidential campaign to a shadowy Russian company seeking to target voters" and that some of the ads "directly named Republican nominee Donald Trump and Democrat Hillary Clinton."[9] According to the *Washington Post*, "Facebook discovered the Russian connection as part of an investigation that began this spring looking at purchasers of politically motivated ads, according to people familiar with the inquiry. It found that 3,300 ads had digital footprints that led to the Russian company."[10]

---

[6]   *Id.*

[7]   *Id.*

[8]   *Id.*

[9]   Carol D. Leonnig, Tom Hamburger and Rosalind S. Helderman, "Russian firm tied to pro-Kremlin propaganda advertised on Facebook during election," THE WASHINGTON POST, September 6, 2017, *available at* https://www.washingtonpost.com/politics/facebook-says-it-sold-political-ads-to-russian-company-during-2016-election/2017/09/06/32f01fd2-931e-11e7-89fa-bb822a46da5b_story.html?hpid=hp_rhp-top-table-main_russianads-410pm%3Ahomepage%2Fstory&utm_term=.018b2fe30844.

[10]   *Id.*

7.    On September 6, 2017, the *New York Times* likewise reported Facebook's disclosure, noting that "some of the ads specifically mentioned the two candidates"—*i.e.*, Donald Trump and Hillary Clinton.[11]

### SUMMARY OF THE LAW

8.    FECA prohibits a foreign national from directly or indirectly making "an expenditure, independent expenditure, or disbursement for an electioneering communication." 52 U.S.C. § 30121(a)(1)(C).

9.    The Commission regulation implementing the statutory foreign national expenditure ban provides that a "foreign national shall not, directly or indirectly, make any expenditure, independent expenditure, or disbursement in connection with any Federal, State, or local election." 11 C.F.R. § 110.20(f).

10.   FECA defines "foreign national" as a "foreign principal" or "an individual who is not a citizen of the United States or a national of the United States." 52 U.S.C. § 30121(b).

11.   FECA defines "expenditure" to include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election[.]" 52 U.S.C. § 30101(9)(A)(i).

12.   FECA defines "independent expenditure" to mean an expenditure by a person "expressly advocating the election or defeat of a clearly identified candidate; and . . . that is not made in concert or cooperation with or at the request or suggestion" of a candidate or party committee. 52 U.S.C. § 30101(17).

---

[11]    Scott Shane and Vindu Goel, "Fake Russian Facebook Accounts Bought $100,000 in Political Ads," THE NEW YORK TIMES, September 6, 2017, *available at* https://www.nytimes.com/2017/09/06/technology/facebook-russian-political-ads.html?hp&action=click&pgtype=Homepage&clickSource=story-heading&module=first-column-region&region=top-news&WT.nav=top-news.

13.     Commission regulation defines "expressly advocating" to include any communication

that uses phrases such as "support the Democratic nominee," "Smith for Congress,"

"defeat" accompanied by a picture of a candidate, or communications that "in context can

have no other reasonable meaning than to urge the election or defeat of one or more

clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc.

which say 'Nixon's the One,' 'Carter '76,' 'Reagan/Bush' or 'Mondale!'" 11 C.F.R.

§ 100.22(a). Commission regulation further defines "expressly advocating" to include

any communication when:

> [T]aken as a whole and with limited reference to external events, such as
> the proximity to the election, could only be interpreted by a reasonable
> person as containing advocacy of the election or defeat of one or more
> clearly identified candidate(s) because . . . [t]he electoral portion of the
> communication is unmistakable, unambiguous, and suggestive of only one
> meaning; and . . . [r]easonable minds could not differ as to whether it
> encourages actions to elect or defeat one or more clearly identified
> candidate(s) or encourages some other kind of action.

*Id.* at § 100.22(b).

14.     Commission regulation defines "disbursement" to include "any purchase or payment"

made by any person that is subject to FECA. 11 C.F.R. § 300.2(d).

15.     FECA defines "person" to include an "individual, partnership, committee, association,

corporation, labor organization, or any other organization or group of persons[.]" 52

U.S.C. § 30101(11).

16.     FECA requires "[e]very person (other than a political committee) who makes

independent expenditures in an aggregate amount or value in excess of $250 during a

calendar year [to] file a statement" including information regarding "all contributions

received by such person," as well as information "indicating whether the independent

expenditure is in support of, or in opposition to, the candidate involved" and "a

certification whether or not such independent expenditure is made in cooperation, consultation, or concert, with, or at the request or suggestion of, any candidate or any authorized committee or agent of such candidate." 52 U.S.C. § 30104(c).

### CAUSES OF ACTION

### COUNT I:
### ONE OR MORE UNKNOWN FOREIGN NATIONALS MADE EXPENDITURES, INDEPENDENT EXPENDITURES OR DISBURSEMENTS IN CONNECTION WITH THE 2016 PRESIDENTIAL ELECTION IN VIOLATION OF THE FEDERAL ELECTION CAMPAIGN ACT

17.   Federal law prohibits any foreign national from directly or indirectly making any expenditure, independent expenditure, or disbursement in connection with any election. 52 U.S.C. § 30121(a)(1)(C), 11 C.F.R. § 110.20(f).

18.   Based on published reports, there is reason to believe that one or more unknown Russian foreign nationals made expenditures, independent expenditures or disbursements by purchasing from Facebook in 2015 and/or 2016 political advertising directly naming 2016 presidential candidates Hillary Clinton and Donald Trump in violation of 52 U.S.C. § 30121(a)(1)(C) and 11 C.F.R. § 110.20(f).

### COUNT II:
### ONE OR MORE UNKNOWN FOREIGN NATIONALS FAILED TO FILE DISCLOSURE REPORTS FOR EXPENDITURES, INDEPENDENT EXPENDITURES OR DISBURSEMENTS IN CONNECTION WITH THE 2016 PRESIDENTIAL ELECTION IN VIOLATION OF THE FEDERAL ELECTION CAMPAIGN ACT

19.   Federal law requires every person who makes independent expenditures in an aggregate amount or value in excess of $250 during a calendar year to file a disclosure statement with the Commission including information regarding contributions received by such person, information indicating whether the independent expenditure is in support of, or in opposition to, the candidate involved and a certification whether such independent expenditure is made in cooperation, consultation, or concert, with, or at the request or

suggestion of, any candidate or any authorized committee or agent of such candidate. 52 U.S.C. § 30104(c).

20.     Based on published reports, there is reason to believe that one or more unknown Russian foreign nationals made expenditures, independent expenditures or disbursements by purchasing from Facebook in 2015 and/or 2016 political advertising directly naming 2016 presidential candidates Hillary Clinton and Donald Trump and did not file required disclosure statements for such expenditures, independent expenditures or disbursements in violation of 52 U.S.C. § 30104(c).

## PRAYER FOR RELIEF

21.     Wherefore, the Commission should find reason to believe that one or more unknown foreign nationals violated 52 U.S.C. § 30101, *et seq.*, including 52 U.S.C. §§ 30121 and 30104, and conduct an immediate investigation under 52 U.S.C. § 30109(a)(2). Further, the Commission should determine and impose appropriate sanctions for any and all violations, should enjoin respondent(s) from any and all violations in the future, and should impose such additional remedies as are necessary and appropriate to ensure compliance with the FECA.

September 7, 2017

Respectfully submitted,

Common Cause, by
Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

<u>**VERIFICATION**</u>

The complainants listed below hereby verify that the statements made in the attached

Complaint are, upon their information and belief, true. Sworn pursuant to 18 U.S.C. § 1001.

**For Complainants Common Cause and Paul S. Ryan**

Paul S. Ryan

Sworn to and subscribed before me this *7th* day of September 2017.

*Karen B. Watson*
Notary Public



9

# Exhibit 3

To Defendant Concord Management and Consulting
LLC's Motion to Compel Discovery of Materials from the
U.S. Department of Justice, Federal Election Commission,
and U.S. Department of State

805 Fifteenth Street NW, Suite 800 Washington, DC 20005
T 202.833.1200  www.commoncause.org



**COMMON CAUSE**
*Holding Power Accountable*

September 7, 2017

Hon. Rod J. Rosenstein
Deputy Attorney General
Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

Hon. Robert Mueller
Special Counsel
Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530

Dear Deputy Attorney General Rosenstein and Special Counsel Mueller:

Common Cause requests that the Department of Justice exercise its authority to investigate whether one or more unknown foreign nationals made undisclosed expenditures, independent expenditures or disbursements in connection with the 2016 presidential election in violation of the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101, *et seq.*

Given Attorney General Sessions' recusal from any investigation into possible Russian involvement in the 2016 elections, we have not addressed this letter to the Attorney General. Further, given the subject matter of this investigation, we request that this matter be investigated by Special Counsel Mueller as part of his investigation into Russian interference in last year's election.

The attached complaint, filed on this date with the Federal Election Commission, details the relevant facts establishing a reason to believe that one or more foreign nationals made undisclosed expenditures, independent expenditures or disbursements in connection with the 2016 presidential election by purchasing political advertising on Facebook, using accounts likely operated out of Russia, in violation of 52 U.S.C. §§ 30121(a)(1)(C) and 30104(c), as well as 11 C.F.R. § 110.20(f).

Although the Federal Election Commission (FEC) has exclusive jurisdiction over civil enforcement of the campaign finance laws, 52 U.S.C. § 30109(a), the Department of Justice has its own separate responsibility to enforce the campaign finance laws against "knowing and willful" violations. 52 U.S.C. § 30109(d); *see generally* FEDERAL PROSECUTION OF ELECTION OFFENSES (7th ed. May 2007) (DOJ HANDBOOK).

The DOJ HANDBOOK observes that "American elections should be shielded against foreign influence," *id.* at 152, and takes note of the fact that Congress increased criminal penalties for campaign finance violations as part of the Bipartisan Campaign Reform Act of 2002 (BCRA). As the Handbook states, at pp. 198-99:

> BCRA significantly enhanced the criminal penalties for knowing and willful violations of the Federal Election Campaign Act. BCRA did so in response to identified anti-social consequences, namely, corruption and the appearance of corruption arising from FECA violations, and their adverse effect on the proper functioning of American democracy....

> In view of the enhanced criminal penalties for FECA crimes and the legislative history supporting their enactment, it is the Justice Department's position that all knowing and willful FECA violations that exceed the applicable jurisdictional floor specified in the Act's criminal provision should be considered for federal prosecution....

The violations of federal campaign finance law alleged in the attached complaint pose a direct threat to democracy and national security in the United States. We urge the Department of Justice to investigate.

Respectfully submitted,

Common Cause, by
Paul S. Ryan
Vice President, Policy and Litigation
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

Copy to:

Kenneth A. Blanco, Acting Assistant Attorney General, Criminal Division
Raymond Hulser, Chief, Public Integrity Section

## BEFORE THE FEDERAL ELECTION COMMISSION

COMMON CAUSE
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

PAUL S. RYAN
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

   v.        MUR No. _____

UNKNOWN RESPONDENT(S)

### COMPLAINT

1. This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information

and belief that one or more unknown foreign nationals made undisclosed expenditures,

independent expenditures or disbursements in connection with the 2016 presidential

election in violation of the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101,

*et seq.* and Commission regulations.

2. Specifically, based on published reports, complainants have reason to believe that one or

more foreign nationals made undisclosed expenditures, independent expenditures or

disbursements in connection with the 2016 presidential election by purchasing political

advertising on Facebook using accounts likely operated out of Russia, in violation of 52

U.S.C. §§ 30121(a)(1)(C) and 30104(c), as well as and 11 C.F.R. § 110.20(f).

3. "If the Commission, upon receiving a complaint . . . has reason to believe that a person

has committed, or is about to commit, a violation of [the FECA] . . . [t]he Commission

<u>shall</u> make an investigation of such alleged violation . . . ." 52 U.S.C. § 30109(a)(2)

(emphasis added); *see also* 11 C.F.R. § 111.4(a).

## FACTS

4.     In January 2017, U.S. intelligence agencies published a declassified version of a highly

classified assessment of Russian efforts to influence the 2016 U.S. presidential election.[1]

The report states national intelligence community's assessment that "Russian President

Vladimir Putin ordered an influence campaign in 2016 aimed at the US presidential

election," that "Russia's goals were to undermine public faith in the US democratic

process, denigrate Secretary·Clinton, and harm her electability and potential presidency,"

and that the intelligence agencies "have high confidence in these judgments."[2] The

intelligence assessment concluded that "Moscow's influence campaign followed a

Russian messaging strategy that blends covert intelligence operations—such as cyber

activity—with overt efforts by Russian Government agencies, state-funded media, third-

party intermediaries, and paid social media users or 'trolls.'"[3] The intelligence

assessment concluded that the "likely financier" of the Internet troll activity "is a close

Putin ally with ties to Russian intelligence."[4]

5.     On September 6, 2017, Facebook published a statement authored by the company's Chief

Security Officer Alex Stamos explaining that the company had conducted an

investigation into whether there was a connection between "Russian interference in the

[2016 US] electoral process" and ads purchased on Facebook.[5]

---

[1]     Office of the Director of National Intelligence, "Assessing Russian Activities and
Intentions in Recent US Elections," NATIONAL INTELLIGENCE COUNCIL, January 6, 2017,
*available at* https://www.dni.gov/files/documents/ICA_2017_01.pdf.

[2]     *Id.* at ii.

[3]     *Id.*

[4]     *Id.* at 4.

[5]     Alex Stamos, "An Update On Information Operations On Facebook," FACEBOOK
NEWSROOM, September 6, 2017, *available at*
https://newsroom.fb.com/news/2017/09/information-operations-update/.

> [Facebook] found approximately $100,000 in ad spending from June of
> 2015 to May of 2017 — associated with roughly 3,000 ads — that was
> connected to about 470 inauthentic accounts and Pages in violation of our
> policies. Our analysis suggests these accounts and Pages were affiliated
> with one another and likely operated out of Russia.[6]

In this internal investigation, Facebook "also looked for ads that might have originated in Russia" including, for instance, "ads bought from accounts with US IP addresses but with the language set to Russian."[7] In this part of its review, Facebook "found approximately $50,000 in potentially politically related ad spending on roughly 2,200 ads."[8]

6.      On September 6, 2017, the *Washington Post* reported that Facebook on the same date told congressional investigators that the company "sold ads during the U.S. presidential campaign to a shadowy Russian company seeking to target voters" and that some of the ads "directly named Republican nominee Donald Trump and Democrat Hillary Clinton."[9] According to the *Washington Post*, "Facebook discovered the Russian connection as part of an investigation that began this spring looking at purchasers of politically motivated ads, according to people familiar with the inquiry. It found that 3,300 ads had digital footprints that led to the Russian company."[10]

---

[6]      *Id.*

[7]      *Id.*

[8]      *Id.*

[9]      Carol D. Leonnig, Tom Hamburger and Rosalind S. Helderman, "Russian firm tied to pro-Kremlin propaganda advertised on Facebook during election," THE WASHINGTON POST, September 6, 2017, *available at* https://www.washingtonpost.com/politics/facebook-says-it-sold-political-ads-to-russian-company-during-2016-election/2017/09/06/32f01fd2-931e-11e7-89fa-bb822a46da5b_story.html?hpid=hp_rhp-top-table-main_russianads-410pm%3Ahomepage%2Fstory&utm_term=.018b2fe30844.

[10]      *Id.*

7.    On September 6, 2017, the *New York Times* likewise reported Facebook's disclosure,

noting that "some of the ads specifically mentioned the two candidates"—*i.e.*, Donald

Trump and Hillary Clinton.[11]

## SUMMARY OF THE LAW

8.    FECA prohibits a foreign national from directly or indirectly making "an expenditure,

independent expenditure, or disbursement for an electioneering communication." 52

U.S.C. § 30121(a)(1)(C).

9.    The Commission regulation implementing the statutory foreign national expenditure ban

provides that a "foreign national shall not, directly or indirectly, make any expenditure,

independent expenditure, or disbursement in connection with any Federal, State, or local

election." 11 C.F.R. § 110.20(f).

10.   FECA defines "foreign national" as a "foreign principal" or "an individual who is not a

citizen of the United States or a national of the United States." 52 U.S.C. § 30121(b).

11.   FECA defines "expenditure" to include "any purchase, payment, distribution, loan,

advance, deposit, or gift of money or anything of value, made by any person for the

purpose of influencing any election[.]" 52 U.S.C. § 30101(9)(A)(i).

12.   FECA defines "independent expenditure" to mean an expenditure by a person "expressly

advocating the election or defeat of a clearly identified candidate; and . . . that is not

made in concert or cooperation with or at the request or suggestion" of a candidate or

party committee. 52 U.S.C. § 30101(17).

---

[11]   Scott Shane and Vindu Goel, "Fake Russian Facebook Accounts Bought $100,000 in
Political Ads," THE NEW YORK TIMES, September 6, 2017, *available at*
https://www.nytimes.com/2017/09/06/technology/facebook-russian-political-
ads.html?hp&action=click&pgtype=Homepage&clickSource=story-heading&module=first-
column-region&region=top-news&WT.nav=top-news.

13. Commission regulation defines "expressly advocating" to include any communication

that uses phrases such as "support the Democratic nominee," "Smith for Congress,"

"defeat" accompanied by a picture of a candidate, or communications that "in context can

have no other reasonable meaning than to urge the election or defeat of one or more

clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc.

which say 'Nixon's the One,' 'Carter '76,' 'Reagan/Bush' or 'Mondale!'" 11 C.F.R.

§ 100.22(a). Commission regulation further defines "expressly advocating" to include

any communication when:

> [T]aken as a whole and with limited reference to external events, such as
> the proximity to the election, could only be interpreted by a reasonable
> person as containing advocacy of the election or defeat of one or more
> clearly identified candidate(s) because . . . [t]he electoral portion of the
> communication is unmistakable, unambiguous, and suggestive of only one
> meaning; and . . . [r]easonable minds could not differ as to whether it
> encourages actions to elect or defeat one or more clearly identified
> candidate(s) or encourages some other kind of action.

*Id.* at § 100.22(b).

14. Commission regulation defines "disbursement" to include "any purchase or payment"

made by any person that is subject to FECA. 11 C.F.R. § 300.2(d).

15. FECA defines "person" to include an "individual, partnership, committee, association,

corporation, labor organization, or any other organization or group of persons[.]" 52

U.S.C. § 30101(11).

16. FECA requires "[e]very person (other than a political committee) who makes

independent expenditures in an aggregate amount or value in excess of $250 during a

calendar year [to] file a statement" including information regarding "all contributions

received by such person," as well as information "indicating whether the independent

expenditure is in support of, or in opposition to, the candidate involved" and "a

certification whether or not such independent expenditure is made in cooperation,

consultation, or concert, with, or at the request or suggestion of, any candidate or any

authorized committee or agent of such candidate." 52 U.S.C. § 30104(c).

## CAUSES OF ACTION

### COUNT I:
ONE OR MORE UNKNOWN FOREIGN NATIONALS MADE EXPENDITURES, INDEPENDENT EXPENDITURES OR DISBURSEMENTS IN CONNECTION WITH THE 2016 PRESIDENTIAL ELECTION IN VIOLATION OF THE FEDERAL ELECTION CAMPAIGN ACT

17.     Federal law prohibits any foreign national from directly or indirectly making any

expenditure, independent expenditure, or disbursement in connection with any election.

52 U.S.C. § 30121(a)(1)(C), 11 C.F.R. § 110.20(f).

18.     Based on published reports, there is reason to believe that one or more unknown Russian

foreign nationals made expenditures, independent expenditures or disbursements by

purchasing from Facebook in 2015 and/or 2016 political advertising directly naming

2016 presidential candidates Hillary Clinton and Donald Trump in violation of 52 U.S.C.

§ 30121(a)(1)(C) and 11 C.F.R. § 110.20(f).

### COUNT II:
ONE OR MORE UNKNOWN FOREIGN NATIONALS FAILED TO FILE DISCLOSURE REPORTS FOR EXPENDITURES, INDEPENDENT EXPENDITURES OR DISBURSEMENTS IN CONNECTION WITH THE 2016 PRESIDENTIAL ELECTION IN VIOLATION OF THE FEDERAL ELECTION CAMPAIGN ACT

19.     Federal law requires every person who makes independent expenditures in an aggregate

amount or value in excess of $250 during a calendar year to file a disclosure statement

with the Commission including information regarding contributions received by such

person, information indicating whether the independent expenditure is in support of, or in

opposition to, the candidate involved and a certification whether such independent

expenditure is made in cooperation, consultation, or concert, with, or at the request or

suggestion of, any candidate or any authorized committee or agent of such candidate. 52 U.S.C. § 30104(c).

20.     Based on published reports, there is reason to believe that one or more unknown Russian foreign nationals made expenditures, independent expenditures or disbursements by purchasing from Facebook in 2015 and/or 2016 political advertising directly naming 2016 presidential candidates Hillary Clinton and Donald Trump and did not file required disclosure statements for such expenditures, independent expenditures or disbursements in violation of 52 U.S.C. § 30104(c).

### PRAYER FOR RELIEF

21.     Wherefore, the Commission should find reason to believe that one or more unknown foreign nationals violated 52 U.S.C. § 30101, *et seq.*, including 52 U.S.C. §§ 30121 and 30104, and conduct an immediate investigation under 52 U.S.C. § 30109(a)(2). Further, the Commission should determine and impose appropriate sanctions for any and all violations, should enjoin respondent(s) from any and all violations in the future, and should impose such additional remedies as are necessary and appropriate to ensure compliance with the FECA.

September 7, 2017

Respectfully submitted,

Common Cause, by
Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

## VERIFICATION

The complainants listed below hereby verify that the statements made in the attached

Complaint are, upon their information and belief, true. Sworn pursuant to 18 U.S.C. § 1001.

**For Complainants Common Cause and Paul S. Ryan**

Paul S. Ryan

Sworn to and subscribed before me this 7th day of September 2017.

*Karen B. Watson*
Notary Public



# Exhibit 4

To Defendant Concord Management and Consulting
LLC's Motion to Compel Discovery of Materials from the
U.S. Department of Justice, Federal Election Commission,
and U.S. Department of State



**Driving progress
through partnership**

**Eric A. Dubelier**
Direct Phone:  +1 202 414 9291
Email:  edubelier@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

August 26, 2019

**Via Electronic Mail**

Jonathan Kravis
United States Attorney's Office
555 Fourth Street NW
Washington, DC  20530

**Subject:** *United States v. Concord Management and Consulting LLC*, 1:18-cr-00032-DLF

Dear Mr. Kravis:

  This letter constitutes a supplemental discovery request on behalf of our client Concord Management and Consulting LLC ("Concord").

  Please produce any and all materials from the Department of Justice or Federal Election Commission ("FEC") related to the complaint filed with the FEC by Common Cause on or around September 7, 2017 captioned Common Cause and Paul S. Ryan vs. Unknown Respondent(s).[1]  This request specifically includes any documents related to any FEC investigation regarding the allegations in the Common Cause complaint pursuant to 52 U.S.C. § 30109(a)(2).

  We ask that you produce the requested information on or before Tuesday, September 3, 2019, if we do not hear from you by that date, we intend to file a motion to compel these materials.

Very truly yours,

Eric A. Dubelier

---

[1] The complaint is available at: https://www.commoncause.org/media/russian-facebook-political-ad-buys-during-2016-election-draw-doj-fec-complaints/

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

# Exhibit 5

To Defendant Concord Management and Consulting LLC's Motion to Compel Discovery of Materials from the U.S. Department of Justice, Federal Election Commission, and U.S. Department of State



**Eric A. Dubelier**
Direct Phone:  +1 202 414 9291
Email:  edubelier@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

September 17, 2019

**Via Electronic Mail**

Jonathan Kravis
United States Attorney's Office
555 Fourth Street NW
Washington, DC  20530

**Subject:**      _**United States v. Concord Management and Consulting LLC**_, **1:18-cr-00032-DLF**

Dear Mr. Kravis:

The government has stated that the indictment alleges that the Defendants has a legal duty to file reports under FECA and to register under FARA.  _See_ Government's Supplemental Brief in Opposition to Defendant's Motion to Dismiss, ECF No. 69, p. 1, 3-4.

As such, please provide the following pursuant to _Brady v. Maryland_, 373 U.S. 83 (1963):

(1) Any and all documents or information in the possession of the government, including but not limited to the FARA Unit of the U.S. Department of Justice and the Federal Election Commission that any indicted Defendant or unindicted co-conspirator was not, or would not have been required to file any report with the FEC or to register under FARA.

(2) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that any indicted Defendant or unindicted co-conspirator was not, or would not have been required to provide additional information to what was actually provided for the travel visas referenced in ¶ 30 of the Indictment.

(3) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that the activity identified in ¶ 30 of the Indictment was not prohibited pursuant to the visas issued by the U.S. Department of State.

For additional authority see _United States v. Trie_, 21 F.Supp. 2d 7, 24-25 (D.D.C. 1998).

Very truly yours,

Eric A. Dubelier

# Exhibit 6

To Defendant Concord Management and Consulting
LLC's Motion to Compel Discovery of Materials from the
U.S. Department of Justice, Federal Election Commission,
and U.S. Department of State

| | |
|---|---|
| **From:** | Seikaly, Kate J |
| **Sent:** | Tuesday, September 17, 2019 11:29 AM |
| **To:** | Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov); Rakoczy, Kathryn (USADC); Curtis, Deborah (USADC); Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov); Alpino, Heather (NSD) |
| **Cc:** | Dubelier, Eric A. |
| **Subject:** | Concord Request |
| **Attachments:** | Concord Brady Request Sept. 17, 2019.PDF |

Counsel,

Please see the attached letter.

Also, please let me know when we can expect to receive a response to our June 5, 2019 and August 26, 2019 discovery requests.  In your August 30, 2019 court filing you stated that you would be responding to those requests "promptly."

Thanks,
Kate

**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

| | |
|---|---|
| **From:** | Seikaly, Kate J |
| **Sent:** | Monday, September 30, 2019 2:46 PM |
| **To:** | Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov); Rakoczy, Kathryn (USADC); Curtis, Deborah (USADC); Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov); Alpino, Heather (NSD) |
| **Cc:** | Dubelier, Eric A. |
| **Subject:** | RE: Concord Request |

Jonathan,

Can you please let me know when we can expect a response to our September 17 letter, as well as our August 26 letter?

Thanks,
Kate

---

**From:** Seikaly, Kate J
**Sent:** Tuesday, September 17, 2019 11:29 AM
**To:** Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov) <Jonathan.Kravis3@usdoj.gov>; 'Rakoczy, Kathryn (USADC)' <Kathryn.Rakoczy@usdoj.gov>; Curtis, Deborah (USADC) <Deborah.Curtis@usdoj.gov>; Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov) <Jonathan.Kravis3@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** Concord Request

Counsel,

Please see the attached letter.

Also, please let me know when we can expect to receive a response to our June 5, 2019 and August 26, 2019 discovery requests.  In your August 30, 2019 court filing you stated that you would be responding to those requests "promptly."

Thanks,
Kate


**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

| | |
|---|---|
| **From:** | Seikaly, Kate J |
| **Sent:** | Friday, October 25, 2019 1:52 PM |
| **To:** | Rakoczy, Kathryn (USADC); Kravis, Jonathan (USADC); Jones, Luke (USADC); Alpino, Heather (NSD) |
| **Cc:** | Dubelier, Eric A. |
| **Subject:** | RE: Concord discovery |
| **Attachments:** | Concord October 25, 2019 Discovery Request.pdf |

Counsel,

Please see the attached letter, which relates to the email exchange below.

Please also let us know when we can expect a response to our August 26, 2019 and September 17, 2019 letters.

Thanks,
Kate

**From:** Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov>
**Sent:** Thursday, October 24, 2019 9:49 AM
**To:** Seikaly, Kate J <KSeikaly@ReedSmith.com>; Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>; Jones, Luke (USADC) <Luke.Jones@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** RE: Concord discovery

<mark>EXTERNAL E-MAIL</mark>

Hi Kate,

We do not have any additional documentation submitted with the visa applications referenced in the Indictment.  We will put in a request with the State Department.

Thanks,
Kate

**Kathryn L. Rakoczy**
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W., Room 5239
Washington, D.C. 20530
(202) 252-6928 (office phone)
(202) 740-3245 (cell phone)
Kathryn.Rakoczy@usdoj.gov

**From:** Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Sent:** Wednesday, October 23, 2019 2:10 PM
**To:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Jones, Luke (USADC) <LJones2@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** Concord discovery

Dear Counsel,

After extensive searching of the discovery materials produced to date, including the most recent production made on October 18, 2019, we have not been able to locate any documents submitted with the visa applications alleged in the indictment.  It is our understanding that additional documentation was submitted with these applications.

If you have already produced these documents, please let me know where we can find them in the discovery materials.  If not, please produce them immediately.  If no such documents exist, please let us know.

If we do not hear from you by Monday, October 28, we intend to file a motion to compel these materials.

Thank you,
Kate

**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# Exhibit 7

To Defendant Concord Management and Consulting
LLC's Motion to Compel Discovery of Materials from the
U.S. Department of Justice, Federal Election Commission,
and U.S. Department of State

| | |
|---|---|
| **From:** | Seikaly, Kate J |
| **Sent:** | Tuesday, November 12, 2019 1:41 PM |
| **To:** | Rakoczy, Kathryn (USADC); Jones, Luke (USADC); Kravis, Jonathan (USADC) (Jonathan.Kravis3@usdoj.gov); Alpino, Heather (NSD) |
| **Cc:** | Dubelier, Eric A. |
| **Subject:** | Concord outstanding discovery |
| **Attachments:** | Concord discovery ; Concord Discovery ; August 26 Discovery Request.PDF; Concord Brady Request Sept. 17, 2019.PDF |

Counsel,

Can you please respond to the following outstanding discovery requests, or let us know when we can expect to receive your written responses:

1. August 26, 2019 Discovery request relating to the common cause complaint filed with the FEC
2. September 17, 2019 Brady request
3. October 23, 2019 Discovery request relating to documentation submitted with the visa applications (on October 24, Kate indicated you were putting in a request with the State Department)
4. October 31, 2019 Discovery request relating to any two-step process used in connection with the execution of search warrants

For your convenience, I have attached each of the requests to this email.

**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

# Exhibit 8

To Defendant Concord Management and Consulting LLC's Motion to Compel Discovery of Materials from the U.S. Department of Justice, Federal Election Commission, and U.S. Department of State

| | |
|---|---|
| **From:** | Rakoczy, Kathryn (USADC) <Kathryn.Rakoczy@usdoj.gov> |
| **Sent:** | Thursday, November 14, 2019 6:05 PM |
| **To:** | Seikaly, Kate J; Jones, Luke (USADC); Kravis, Jonathan (USADC); Alpino, Heather (NSD) |
| **Cc:** | Dubelier, Eric A. |
| **Subject:** | RE: Concord outstanding discovery |
| **Attachments:** | Concord letter to defense counsel 11-14-19.pdf |

<mark>EXTERNAL E-MAIL</mark>

Dear Counsel,

Please find attached a letter that addresses the first two requests discussed below.  With respect to the October 23, 2019 request relating to documentation submitted with visa applications, we did put in a request with the State Department.  We were told we would hear back by mid-December and have not heard back yet.  We asked for more clarity on the date we can expect a response but have not heard back.

See you tomorrow morning,
Kate Rakoczy

**Kathryn L. Rakoczy**
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W., Room 5239
Washington, D.C. 20530
(202) 252-6928 (office phone)
(202) 740-3245 (cell phone)
Kathryn.Rakoczy@usdoj.gov

**From:** Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Sent:** Tuesday, November 12, 2019 1:41 PM
**To:** Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Jones, Luke (USADC) <LJones2@usa.doj.gov>; Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>
**Cc:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** Concord outstanding discovery

Counsel,

Can you please respond to the following outstanding discovery requests, or let us know when we can expect to receive your written responses:

1. August 26, 2019 Discovery request relating to the common cause complaint filed with the FEC
2. September 17, 2019 Brady request
3. October 23, 2019 Discovery request relating to documentation submitted with the visa applications (on October 24, Kate indicated you were putting in a request with the State Department)
4. October 31, 2019 Discovery request relating to any two-step process used in connection with the execution of search warrants

For your convenience, I have attached each of the requests to this email.

**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC,

    Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

**PROPOSED ORDER**

Upon consideration of Defendant Concord Management and Consulting LLC's Motion to Compel Discovery of Materials from the U.S. Department of Justice, Federal Election Commission, and U.S. Department of State, and any opposition or reply thereto, it is hereby **ORDERED** that the motion is **GRANTED**.

The government shall produce the requested materials to defense counsel.

**SO ORDERED.**

Dated: _____

_____
Dabney L. Friedrich
United States District Judge