## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO COMPEL COMPLIANCE WITH FED. R. CRIM. P. 16

The United States of America, by and through undersigned counsel, respectfully opposes the motion of defendant Concord Management and Consulting LLC ("Concord" or "defendant"), which alleges that the government has failed to comply with Rule 16 of the Federal Rules of Criminal Procedure. *See* Doc. 241. As the government does not intend to introduce any evidence at trial that rises to the level of expert testimony, Concord's motion should be denied.

On November 1, 2019, in accordance with the Court's Scheduling Order in this matter, the government provided the defense with notice that it does not intend to introduce expert testimony pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). *See* Doc. 241-4. The government also notified defense counsel, however, that it anticipates calling witnesses to provide testimony regarding the role of particular government agencies and to introduce certain evidence derived from Internet and social media websites. *Id.* As the government conveyed to defense counsel, such testimony will not rise to the level of expert opinion testimony.

## BACKGROUND

### I.     The Indictment and Superseding Indictment

On February 16, 2018, a grand jury returned an eight-count indictment against thirteen individuals, including Yevgeniy Prigozhin, and three corporate defendants, including Concord and Concord Catering.  Doc. 1.  On November 8, 2019, a grand jury returned a superseding indictment, which differs from the initial indictment but nonetheless charges the same defendants with the same offenses.  Doc. 247.[1]  The superseding indictment ("Indictment") alleges in Count One that the defendants, in violation of 18 U.S.C. § 371, "knowingly and intentionally conspired with each other . . . to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016."  Doc. 247 ¶ 2, 8-85.  The lawful government functions that the defendants allegedly conspired to obstruct were those "of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in monitoring, regulating, and enforcing laws concerning foreign influence on and involvement in U.S. elections and the U.S. political system," including, "(a) the enforcement of the statutory prohibition on certain election-related expenditures by foreign nationals; (b) the enforcement of the statutory requirements for filing reports in connection with certain election-related expenditures; (c) the enforcement of the statutory ban on acting as an unregistered agent of a foreign principal in the United States; (d) the enforcement of the statutory requirements for registration as an agent of a foreign principal; and (e) the enforcement of the requirement that

---

[1]     In the government's view, the differences between the original and superseding indictments do not impact the merits of the instant motion.  Accordingly, this filing will identify the charges by reference to the superseding indictment.

foreign nationals seeking entry into the United States provide truthful and accurate information to the government."  Doc. 247 ¶ 9.

According to the Indictment, the conspiracy included a Russian organization, defendant Internet Research Agency LLC (the "IRA"), which conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election and "the political system in general" and to favor one candidate for President.  *Id.* ¶¶ 3, 6, 10.  Defendant Prigozhin is alleged to have approved, supported, and funded the IRA's operations through other Russian entities that he directly controlled, particularly defendants Concord and Concord Catering. *Id.* ¶¶ 3, 11-12.

## II.    Anticipated Fact Testimony About the Roles of Certain Government Agencies and Certain Evidence Obtained from Internet and Social Media Sites

While the government has not finalized its witness or exhibit lists, and is not required to do so under the Court's Scheduling Order until January 6, 2020, the government anticipates calling witnesses to provide testimony regarding the role of particular government agencies and evidence obtained from certain Internet and social media sites.

With respect to the first category of testimony, in order to prove that the defendants conspired to interfere with the lawful functions of the Federal Election Commission, the U.S. Department of Justice, and the U.S. Department of State in monitoring, regulating, and enforcing laws concerning foreign influence and involvement in U.S. elections and the U.S. political system, as alleged in Paragraph 9 of the Superseding Indictment, the government intends to introduce evidence and testimony to establish the functions of those agencies.  The government intends to introduce testimony from fact witnesses discussing the statutory and regulatory responsibilities and authorities of these agencies and how they fulfill these responsibilities.  The government anticipates that such testimony would support the factual allegations contained in Paragraphs 7, 9,

and 25-27 of the Superseding Indictment.  Such witnesses will not be providing any opinion testimony about whether the alleged conduct of the defendants would have prompted regulation or triggered disclosure requirements, had these agencies known about the alleged conduct.

With respect to the second category of testimony, a portion of the government's evidence of the manner and means in which the defendants carried out this conspiracy will consist of messages and posts made by indicted and unindicted co-conspirators to and through various Internet and social media sites.  Such evidence will be introduced through the messages and posts themselves, which will come from search warrant returns.  Such evidence may be introduced through the testimony of a case agent or through the testimony of representatives of the Internet and social media companies from which this evidence was gathered.  To link these posts and messages to the defendants charged in this case, the government will introduce subscriber information obtained via legal process for the accounts posting and sending the messages in question, as well as subscriber information for any linked accounts.  The government will also introduce evidence about the Internet Protocol ("IP") addresses from which certain messages were sent/posted.  This evidence will also come from legal process returns gathered during the investigation.  Finally, in order to demonstrate that the co-conspirators attempted to hide their Russian identities, as alleged in Paragraph 39 of the Superseding Indictment, the government will introduce evidence and testimony that the co-defendants purchased space on computer servers located inside the United States in order to set up virtual private networks ("VPNs"), and the government will introduce evidence showing how some of the posts and messages at issue were posted through the use of VPNs.

The government flagged this anticipated testimony when informing defense counsel that it did not anticipate introducing expert testimony. The government did so, because it did not want

defense counsel to misinterpret the lack of expert notice as a signal that the government would not be introducing such testimony, especially in light of the government's prior representations regarding potential expert testimony that it was considering. *See* Sept. 16, 2019, Hr'g Tr. 58:5-21 (government responding to the Court's inquiry about potential expert testimony).  However, as described below and as will be more clear when the government provides its exhibit and witness lists to defense counsel early next year, none of this testimony defining the roles of government agencies or documenting where certain Internet and social media posts and messages came from rises to the level of expert testimony.

## LEGAL PRINCIPLES

Rule 16(a)(1)(G) requires that, upon the defendant's request, the government must provide the defendant "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  Fed. R. Crim. P. 16(a)(1)(G).  Rules 702, 703, and 705 of the Federal Rules of Evidence all lay out the requirements for the government to be able to introduce the testimony of a witness who is "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702. Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Not all testimony deriving from specialized knowledge, however, rises to the level of expert testimony.  Fact witnesses can testify about actions they personally took or observations

they personally made, even if technical in nature.  For example, in *United States v. Kelsey*, 917 F.3d 740 (D.C. Cir. 2019), this Circuit found that the district court properly allowed a lab technician to testify about processing DNA swabs and to confirm that the data ultimately sent to another lab for analysis was the data produced from her processing of the swabs.  *Kelsey*, 917 F.3d at 747-49 ("Because [the lab technician] was testifying on a factual matter within her own experience—the raw data she produced and that it was the same data as was presented to the outside laboratory—the district court did not abuse its discretion in allowing her to testify as a fact witness, not an expert.").

Additionally, a witness may offer lay opinion testimony pursuant to Rule 701 of the Federal Rules of Evidence if that testimony is based not on "experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his [ ] position in the business."  Fed. R. Evid. 701, Advisory Committee's Note.  "Lay opinion is proper when it is based upon personal knowledge of events that occurred in the case being tried."  *United States v. Williams*, 827 F.3d 1134, 1156 (D.C. Cir. 2016) (distinguishing between "[a]n individual testifying about the operations of a drug conspiracy because of knowledge of that drug conspiracy," who therefore "has 'particularized' knowledge and should be admitted as a lay witness," and "an individual testifying about the operations of a drug conspiracy based on previous experiences with other drug conspiracies," who "has 'specialized' knowledge and—provided his testimony meets the rule's enumerated requirements—should be admitted as an expert"); *see also Bank of China v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) ("The fact that [a witness] has specialized knowledge, or that he carried out the investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions. . . .  Such

opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his position in the business.").

## ARGUMENT

The government's anticipated testimony regarding the roles and functions of particular government agencies and testimony to authenticate and explain records demonstrating the origins of certain evidence derived from Internet and social media websites does not rise to the level of expert testimony.

First, with respect to testimony about and evidence of the lawful functions of certain government agencies, this evidence will largely derive from certain statutory and regulatory provisions laying out the lawful functions of the three agencies whose functions the Indictment alleges the defendants conspired to obstruct. This testimony likely will come from employees or officials of these three agencies. As such, this testimony will not rise to the level of opinion testimony; it will be much more in line with the testimony "on a factual matter within [the witness'] own experience" approved of in *Kelsey*, 917 F.3d at 747-49, since these witnesses will describe the work they do at their respective agencies.

The cases cited by Concord in asserting that testimony about the functions of certain government agencies is expert testimony are not on point. First, in *Adams v. United States,* CV-03-49-E-BLW, 2009 WL 1085481 (D. Idaho Apr. 20, 2009), the court approved certain areas of testimony by witnesses who had been proffered by one of the parties as experts not just to testify as to the roles of certain government agencies but also to offer certain opinions and legal conclusions. Second, *United States v. Carrillo-Morones*, 564 F. Supp. 2d 707 (W.D. Tex. 2008), concerned testimony regarding "law enforcement protocols and evidence gathering." Without any

explanation, the district court in that matter found that such testimony "is the product of specialized knowledge and thus, constitutes expert testimony under Rule 702." *Carrillo-Morones*, 564 F. Supp. 2d at 711 (citing *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007)).  The *Oriedo* decision, however, focused on how a law enforcement witness' opinion testimony can shift from proper lay opinion testimony to improper expert opinion testimony when it transitions from an opinion stemming from the witness' direct observation of a matter to an opinion deriving from the witness' prior experiences observing narcotics trafficking practices more generally.  498 F.3d at 604-04.  Here, the testimony envisioned by the government will not consist of opinion testimony at all, but, rather, factual testimony describing the responsibilities assigned to particular government agencies by law and statute and how they fulfill those responsibilities.

Next, the government anticipates introducing records from Internet and social media companies that document the posts and messages through which defendants allegedly sought to spread "distrust towards the candidates" in the 2016 election and "the political system in general," and through which they posted political advertisements and organized political rallies inside the United States. Doc. 247 ¶¶ 3, 6, 10, 32-38, 42-57.  For each account from which the government will introduce such records, the government will also seek to introduce records showing the subscriber/user information for these accounts, as well as records of the IP addresses from which these accounts were accessed.  On occasion, the government will take the further step of introducing records from a VPN company to show that certain of these IP addresses were hosted by a particular VPN service and show which customers utilized this service and from where.  All of these records will be introduced either through representatives of the Internet and social media companies from which they were obtained or through the testimony of a case agent.

Whether admitted during the testimony of a case agent or representatives of the companies from which the records were obtained, none of this testimony will rise to the level of expert testimony; rather, the government will lay a foundation for how these records were maintained and what they documented about the users and usage of the accounts that sent the messages and made the posts in question.  Unlike the type of testimony at issue in *Williams*, 827 F.3d at 1157-61, where a law enforcement witness interpreted the meaning of words and phrases used in certain recorded conversations and interactions between the alleged co-conspirators, the evidence here will come from the records.[2]  The witnesses introducing and authenticating the records will merely be explaining where the data in the records came from and how it was stored.  Aside from possibly defining a handful of terms, such as "IP" and "VPN," there will be no specialized or technical explanations offered by these witnesses.

For all these reasons, none of the anticipated testimony of the government's witnesses will rise to the level of expert testimony.

## CONCLUSION

WHEREFORE, the Court should deny Concord's motion.

Respectfully submitted,

JOHN C. DEMERS                                JESSIE K. LIU
Assistant Attorney General for National Security      United States Attorney


By: /s/_____                        By: /s/_____
Heather N. Alpino                              Jonathan Kravis
U.S. Department of Justice                      Luke Jones
National Security Division                      Kathryn Rakoczy
950 Pennsylvania Ave. NW                        555 Fourth Street NW
Washington, D.C. 20530                          Washington, D.C. 20530
Telephone: (202) 514-2000                       Telephone: (202) 252-6886

---

[2] The legal process returns from which these exhibits will be drawn were all provided to the defense in discovery, and many of the government's anticipated trial exhibits were flagged as "hot documents" in discovery provided in the summer of 2018.