**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN
SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

Pursuant to Fed. R. Crim. P. 16, Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this Reply in Support of its Motion to Compel disclosure of the Department of the Treasury, Office of Foreign Assets Control ("OFAC") Designation and Blocking Memoranda, Evidentiary Memoranda, and any exhibits referenced therein related to Concord, Concord Catering, and Yevgeniy Prigozhin (collectively, "Defendants"). *See* ECF 229.

## I.    INTRODUCTION

This is a simple motion.  Concord seeks documents from OFAC related to Defendants' designations under two different sanctions programs—the Cyber-related Sanctions and the Ukraine Sanctions, as defined in the Motion to Compel (the "Motion")—to which Concord is entitled under the Federal Rules of Criminal Procedure because the government is in possession of those documents and they are material to Concord's defense.[1]  In particular, Concord requested

---

[1] Concord noted in its Motion that to the extent there is classified information contained in the requested documents, at this stage Concord is seeking only unclassified information and assumes that classified information will be addressed in the government's CIPA filing, due on January 10, 2020.  Mot. at 4 n.3, ECF 229.  In its Opposition, the government does not raise any concerns about classified information.

Designation and Blocking Memoranda, Evidentiary Memoranda, and related materials, including exhibits referenced therein, prepared by OFAC related to the Defendants' designation as Specially Designated Nationals ("SDNs").  As set forth in Concord's Motion, OFAC prepares Designation and Blocking Memoranda and Evidentiary Memoranda to support its decision to designate an individual or entity as an SDN and the Memoranda contain the factual support for that decision, including references to incorporated exhibits.[2]

The government has already accessed and reviewed the OFAC documents, clearly demonstrating its ability to produce such documents.  The Cyber-related Sanctions are directly related to the allegations in the Indictment and the government itself has raised the Ukraine Sanctions multiple times in its briefing throughout this case.

The government has taken this simple discovery request and turned it into another guessing game.  The government concedes that it has accessed and reviewed the requested documents "as if those records were in the possession of the government[,]" Opp. at 2 n. 1, ECF 253, but then spends pages arguing that it is not in the possession, custody, or control of those documents because OFAC is not "closely aligned" with the government, *see, e.g.*, *id.* at 8-9.  The government also concedes that there is a "connection" between this litigation and the Cyber-related Sanctions but then simply declares that "it does not follow" that the documents relating to those sanctions are material.  *Id.* at 10.  The government also acknowledges having referred to the Ukraine Sanctions throughout this litigation to support various arguments, but then proclaims that these

---

[2] Concord referred to three cases where the government publicly filed Designation and Blocking Memoranda, Evidentiary Memoranda, and the related exhibits.  Mot. at 3-4.  Concord was clear with the Court about precisely the nature and procedural posture of each of these cases, making clear that it was not arguing that those cases present similar fact patterns supporting its argument. *Id.*  Rather, Concord drew the Court's attention to these cases to demonstrate the existence and content of the documents it was seeking and to establish that its request was not a speculative fishing expedition for documents that may or may not exist.  Accordingly, the government's efforts to distinguish these cases are meaningless.  Opp. at 12-13.

references "do not reflect any connection" to the Indictment and that the related documents cannot be material to Concord's defense. *Id*. at 11-12. The government's arguments are filled with inaccuracies and contradictions and defy any sense of logic or fairness.

The government has further perpetuated its gamesmanship by stealthily producing a small number of documents from OFAC—without even the slightest signal to defense counsel that it actually did so—and then asserting that it has met its discovery obligations. But the five documents that the government buried in its most recent production on the date that discovery closed are neither what Concord requested nor all that it is entitled to under the law.

## II.   LAW AND ARGUMENT

Rule 16 discovery "disputes should be resolved in the defendants' favor," given that the Rule is designed to provide the criminal defendant with the widest possible opportunity to inspect the materials in the prosecution's possession. *See United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003) (internal citations omitted); *see also* Fed. R. Crim. P. 16 Advisory Committee Note to 1974 Amendment (explaining that discovery under Rule 16 "contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence"). Here, the government has failed to abide by the Rule's guiding principle of fairness by refusing to produce a narrow set of documents from OFAC's files on Defendants' sanctions that the government has already accessed and reviewed, and that are directly material to Concord's defense, both of which the government has acknowledged in its briefing.

### A.   The Trial Team Has Possession, Custody, or Control of the Requested Documents

Despite admitting that the trial team actually reviewed the documents at issue in this Motion, the government nevertheless argues to the Court that it does not have "possession,

custody, or control" of these documents because OFAC was not part of the "'prosecution team' that investigated this case." Opp. at 9. In doing so, the government completely ignores the relevant test for determining "possession, custody, or control" in this Circuit, for which "courts have . . . been more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue of whether the documents are in the physical possession of the prosecutor." *Libby*, 429 F. Supp. 2d at 5 (quoting *Poindexter*, 727 F. Supp. at 1477); *see also United States v. Archbold-Manner*, 581 F. Supp. 2d, 22, 24 (D.D.C. 2008) ("The 'control' prong of the Rule 16 test generally focuses on the fairness to the defendants rather than the semantics of whether or not the prosecutors actually hold the evidence at the time that it should be produced.") (internal citations omitted). Based on the prevailing law on this issue, it is difficult to understand the government's position that it does not have "possession, custody, or control" over documents that it admits it accessed and reviewed.

It must be noted that this was not the first time that the prosecution obtained documents from OFAC. At the May 9, 2018 arraignment of Concord, the government admitted obtaining undersigned counsel's confidential submissions to OFAC regarding its representation of Concord. *See* May 9, 2018 Hr'g Tr. 7:21-8:11.

Rather than acknowledge the "ease of access" element and consider its implications, the government cites to two out-of-Circuit cases to support its position that the government's obtaining and reviewing the documents "does not alter the Rule 16(a)(1)(E) analysis with respect to 'possession, custody, or control.'" Opp. at 9 (citing *United States v. Ferguson*, 478 F. Supp. 2d 220, 239-40 (D. Conn. 2007) and *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006)). But *Ferguson* is not relevant to the current analysis and *Chalmers* actually supports Concord's argument, not the government's position.

In *Ferguson*, the defendants moved to compel all documents in the physical possession of the New York Attorney General's Office ("NYAG") pursuant to *Brady v. Maryland*, arguing that the United States worked with the NYAG in the initial stages of the investigation to conduct witness interviews, which imputed full knowledge of the NYAG's investigation to the government.  478 F. Supp. 2d at 238-39.  The government opposed the motion by arguing that it did not conduct a joint investigation with the NYAG and had no obligation or ability to produce the documents sought.  *Id.* at 238.  In relevant part, the government previously disclosed all notes taken jointly with the NYAG in the defendants' joint interviews and agreed to review the files again to ensure disclosure of any notes taken in the other joint witness interviews; however, the government "never had access to the NYAG's files, interview summaries, notes, or other work product."  *Id.* at 239.  In short, *Ferguson* did not involve the Rule 16 "possession, custody, or control" analysis or the "ease of access" inquiry applied by D.C. courts.

*Chalmers*, on the other hand, did involve a Rule 16 discovery request and supports Concord's position.  Pursuant to Rule 16(a)(1)(E) and *Brady,* the defendants moved to compel discovery of "materials within the custody and control of all government agencies that have investigated the United Nations Oil-for-Food Program or that oversaw the Program," which included the Department of State, its constituent agency the United States Mission to the United Nations, the Department of Treasury, and the Iraq Survey Group, which included participants from the Department of Defense and Central Intelligence Agency.  410 F. Supp. 2d at 287.  One defendant also requested documents from the National Security Agency and the United States Congress.  *Id.*  Much like this case, the government opposed the motion arguing "that Rule 16 and *Brady* only require production of documents within the possession, custody, or control of the prosecution, not the entirety of the Executive and Legislative Branches."  *Id*.  After examining the relevant authority, the court concluded that "the prosecution must disclose documents material to

the defense (1) *that it has actually reviewed*, or (2) that are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the 'prosecution team.'" *Id.* at 289-290 (emphasis added). The defendants had conceded that the documents that were actually reviewed by the prosecution team had already been disclosed or soon would be. *Id.* 290. It was only with respect to the second category that the portion quoted in the government's Opposition is relevant, which does not apply here. *Id.*

There is no question as to the trial team's "ease of access" to the documents from OFAC—the trial team was able to obtain and review the requested documents and had previously obtained other documents from OFAC. *See* Opp. at 2 n. 1 ("the government did review the requested records and provided Concord any records to which it would be entitled, under Rule 16 or otherwise, *as if those records were in the possession of the government*.") (emphasis added). In the interest of fairness and logic, the OFAC documents should be deemed to be in the possession, custody, or control of the prosecution for discovery purposes.

### B.    The Requested Documents are Material to the Defense

The government's argument regarding materiality also defies logic. "[E]vidence is material to preparing the defense 'as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Libby*, 429 F. Supp. 2d at 7 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). This is "not a heavy burden" and materiality includes both inculpatory and exculpatory evidence. *Id.*

The government has conceded—as it must, because it is true—that there is a connection between this allegations in the Indictment and the Cyber-related Sanctions. It also acknowledges its repeated references throughout these proceedings to the Ukraine Sanctions. Yet the government nevertheless argues that OFAC's documents relating to these sanctions cannot possibly be material

to the defense.  In short, the government believes that "fairness to the defendant" includes allowing a different government agency to rely on the allegations in the Indictment to designate the Defendants as SDNs and repeatedly referring to the Defendants' designation in its filings to the Court while keeping secret the materials and information related to those designations.

With respect to the Cyber-related Sanctions, the government acknowledges both that OFAC's announcement of the sanctions specifically referred to the Indictment in this case and that there is a "connection" between the Indictment and the sanctions. Opp. at 5, 10 ("OFAC's announcement referred to the initial indictment in this case.").[3]  However, on the *same page* where the government admits a connection between the Indictment and these sanctions, it also argues that these sanctions "play no role whatsoever in the Indictment."  *Id.* at 10.

But there is more than a mere "connection"—the Cyber-related Sanctions are directly related to the allegations in the Indictment.  Not only did OFAC refer to the Indictment in its press release announcing the designation, OFAC simultaneously designated each and every one of Concord's alleged co-conspirators (and no one else).  *See* Press Release, Department of the Treasury, Treasury Sanctions Russian Cyber Actors for Interference with 2016 U.S. Elections and Malicious Cyber-Attacks (Mar. 15, 2018), https://home.treasury.gov/news/press-releases/sm0312 (the "Press Release") (announcing designation of "three entities and 13 individuals," and listing the 16 defendants named in the Indictment).  Despite the fact that the Indictment was pending and no individual or entity had yet been convicted of any crime, OFAC's Press Release announced that:

> the Internet Research Agency (IRA) tampered with, altered, or caused a
> misappropriation of information with the purpose or effect of interfering with or

---

[3] In both instances, the government refers to "the initial indictment," seeming to suggest that there is some material difference in the factual allegations contained therein as it relates to the materiality analysis.  As the Court is well aware, there is virtually *no* difference in the factual allegations of the initial Indictment and the Superseding Indictment.

undermining election processes and institutions.  Specifically, the IRA tampered with or altered information in order to interfere with the 2016 election.  The IRA created and managed a vast number of fake online personas that posed as legitimate U.S. persons to include grassroots organizations, interest groups, and a state political party on social media.  Through this activity, the IRA posted thousands of ads that reached millions of people online.  The IRA also organized and coordinated political rallies during the run-up to the 2016 election, all while hiding its Russian identity.  Further, the IRA unlawfully utilized personally identifiable information from U.S. persons to open financial accounts to help fund IRA operations.

*Id*.  As to Mr. Prigozhin and Concord, the Press Release announced that they provided material assistance to the IRA: "Specifically, Prigozhin funded the operations of the IRA. . . . Concord Management and Consulting LLC, which is controlled by Prigozhin, provided funding to the IRA. . . . Concord Catering, which is controlled by Prigozhin, provided funding to the IRA." *Id.*  The Press Release then identifies each of the other individual co-defendants named in the Indictment and summarizes their connection to the IRA in the same way as is alleged in the Indictment. *Compare, e.g., id.* (identifying Dzheykhun Nasimi Ogly Aslanov and stating that he "acted as the head of the translator product, a department which focused on the United States and conducted operations on multiple social media platforms.  He also oversaw many of the operations that targeted the 2016 election.") *with* Indictment ¶ 19, ECF 1 (alleging Aslanov was "head of the translator project and oversaw many of the operations targeting the 2016 U.S. presidential election") and *id.* at ¶ 10(d) (alleging the "translator project" "focused on the U.S. population and conducted operations on social media platforms").  The same thing is true for each and every co-defendant—OFAC's press release relating to the Cyber-related Sanctions lifts verbatim from the Indictment.

As to the Ukraine Sanctions, the government takes the ludicrous position that even though it has repeatedly referred to these sanctions throughout the course of this case when describing the allegations in the Indictment, the sanctions "are entirely irrelevant to the underlying charge."  Opp.

at 11.[4]  But the government's effort to downplay its frequent references to the Ukraine Sanctions simply begs the question of why the government explained the sanctions in briefing on a wide range of legal issues if they are "entirely irrelevant."  Further, the government's insinuation that it has only raised the sanctions in the context of tangential matters unrelated to the allegations in the Indictment is incorrect.  On at least three separate occasions, the government referred to the sanctions immediately following its recitation of the allegations in the Indictment.  *See* ECF 20 at 4 (paragraph containing three sentences inaccurately describing the allegations in the Indictment and then stating "Prigozhin and both Concord entities charged in the Indictment are currently under sanctions by the U.S. Department of Treasury" and referring to both sets of sanctions in a footnote). *See also* ECF 47 at 8 & n.3 (noting that the Defendants were designated under the Ukraine Sanctions at the time of the Indictment); ECF 56 at 2 n. 2 (same).  So the government's suggestion that it has not raised the issue of the sanctions in connection with the allegations in the Indictment is simply incorrect.  *See* Opp. at 11.

Finally, the government's assertion that "[n]one of the allegations in the Indictment reference or relate to OFAC or any sanctions imposed on any of the defendants," Opp. at 4, may be true but it is irrelevant.  The test for materiality is not whether the allegations in the Indictment refer to the materials being requested, but whether there is a "strong indication" that the materials being requested will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.  *Libby*, 429 F. Supp. 2d at 7.  Concord is at a loss to say what would provide a stronger indication of materiality than direct quotes from the Indictment in the press release announcing the designation and multiple

---

[4] Ironically, while making the argument that OFAC's designation of the Defendants are not relevant to this case, the government goes out of its way to note for the Court that OFAC imposed additional sanctions just a few weeks ago.  *See* Opp. at 5.

references in relation to the allegations in the Indictment in briefing from the government. The requested Designation and Blocking Memoranda, Evidentiary Memoranda, and any exhibits referenced therein contain the government's justification for designating the Defendants under these sanctions programs. These documents are material to Concord's defense.

### C.   The Government Has Not Produced the Requested Documents

In its Opposition, the government boldly states that it "has provided to Concord any OFAC records to which it would be entitled, under Rule 16 or otherwise, as if those records were subject to Rule 16(a)(1)(E) discovery." Opp. at 7. This statement came as a shock to undersigned counsel who has been specifically looking for OFAC documents in the government's document productions. In every instance that the government has produced in discovery documents obtained from government agencies or departments, the government has indicated the agency or department in both the cover letter and the production itself, and the documents produced clearly stated that they came from a particular agency or department within the government.

On October 18, 2019, the deadline for the government to complete any final discovery and *Brady* notice pursuant to the Court's Scheduling Order (ECF 214), the government made a production of over 53,000 documents. In its cover letter transmitting the production, the government explained that it included two folders—one folder containing documents relating to a related investigation and the other folder containing "Additional Materials in the Government's Possession."[5] Within the folder titled "Additional Materials," there was a single pdf file titled "Additional Materials." This file contains what appears to be five separate, random documents including a printout of Concord's website, a Dun & Bradstreet report about Concord, Concord's Russian incorporation record, a printout of an article from a Russian newspaper, and document

---

[5] The October 18, 2019 letter contains information the government has designated as U.S. Sensitive pursuant to the Protective Order and so Concord is not attaching it to this filing.

identifying dates relating to a Russian entity other than Concord.  There was no indication in the production file, the cover letter, or the document itself that these documents came from OFAC.  It is worth noting that this obfuscation came after the government's cryptic written response that it would produce discoverable materials "if there are any such materials."  *See* Mot. at 5 and Ex. 6 thereto, ECF 229 and 229-6.

Because of the statement in the Opposition that the government had produced documents from OFAC, undersigned counsel asked the government for clarification.  **Ex. 1**, Nov. 20-21, 2019 Email.  The government responded that the single pdf file titled "Additional Materials," were the documents obtained from OFAC and that there "were no other OFAC records produced."  *Id*.  It remains a mystery why the government changed its practice of clearly indicating in its productions the source of the documents, including from within the government.

In other words, despite suggesting as much in its Opposition, the government has not produced the Designation and Blocking Memoranda or the Evidentiary Memoranda to Concord.

### III.    CONCLUSION

For the reasons set forth above, the requested records are in the possession, custody, or control of the government and are material to Concord's defense.  As such, the Court should grant Concord's Motion.

Dated:  November 26, 2019        Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/*Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar. No. 419412)
Katherine Seikaly (D.C. Bar. No. 419412)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

# Exhibit 1

To Defendant Concord Management and Consulting LLC's Reply In Support Of Its Motion to Compel Discovery, 18-cr-00032-2-DLF

| | |
|---|---|
| **From:** | Jones, Luke (USADC) <Luke.Jones@usdoj.gov> |
| **Sent:** | Thursday, November 21, 2019 6:16 PM |
| **To:** | Seikaly, Kate J |
| **Cc:** | Rakoczy, Kathryn (USADC); Kravis, Jonathan (USADC); Alpino, Heather (NSD); Dubelier, Eric A. |
| **Subject:** | RE: OFAC documents |

<mark>EXTERNAL E-MAIL</mark>

Hi Kate,

Thanks for your email.  Yes, I can confirm that the "additional materials" in the October 18, 2019, production were documents we identified in OFAC's files and produced to you.  There were no other OFAC records produced.

Let me know if that answers your question.

Best,
Luke


*Luke Jones*
*Assistant U.S. Attorney*
*District of Columbia*
*202-252-7066 (office)*
*202-815-4091 (cell)*


**From:** Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Sent:** Wednesday, November 20, 2019 2:03 PM
**To:** Jones, Luke (USADC) <LJones2@usa.doj.gov>
**Cc:** Rakoczy, Kathryn (USADC) <KRakoczy2@usa.doj.gov>; Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>; Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Subject:** OFAC documents

Luke,

In the opposition brief you filed last night you represent to the Court that "the government has provided to Concord any OFAC records to which it would be entitled."  I do not understand this statement.

If you are referring to Production 18, which the government made on October 18, 2019, there was a single pdf file entitled "Additional Materials" that appears to be five separate documents scanned in as one file.  The cover letter describes this as "Additional Materials in the Government's Possession," but there is nothing in the cover letter, the production file, or the document itself to indicate that it came from OFAC or is at all related to our June 5, 2019 discovery request.  Are these the OFAC records you were referring to in your filing?

Thanks,
Kate

**Kate Seikaly**
703.641.4231
kseikaly@reedsmith.com

Reed Smith LLP
7900 Tysons One Place
Suite 500
McLean, VA  22102-5979
+1 703 641 4200
Fax +1 703 641 4340

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01