**Exhibit 12** to Memorandum of Points and Authorities in Support of Defendant Concord Management and Consulting LLC's Motion to Dismiss Count One of the Superseding Indictment, 18-cr-00032-2-DLF

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

**Holding a Criminal Term**

**Grand Jury Sown in on November 12, 2010**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **: CRIMINAL NO. _____** |
| | **:** |
| **v.** | **: GRAND JURY ORIGINAL** |
| | **:** |
| **PARVIZ KHAKI (a/k/a "Martin") and** | **: VIOLATIONS** |
| | **:** |
| **ZONGCHENG YI (a/k/a "Yi Cheng,"** | **: 18 U.S.C. § 371** |
| **a/k/a "Kohler," a/k/a "Kohler Yi"),** | **: (Conspiracy to Defraud U.S. Government** |
| | **: and Violate the International Emergency** |
| **Defendants.** | **: Economic Powers Act)** |
| | **:** |
| | **: 18 U.S.C. § 554** |
| | **: (Smuggling)** |
| | **:** |
| | **: 50 U.S.C. § 1705** |
| | **: (International Emergency Economic** |
| | **:  Powers Act)** |
| | **:** |
| | **: 31 C.F.R. Part 560** |
| | **: (Iranian Transactions Regulations)** |
| | **:** |
| | **: 18 U.S.C. § 1956** |
| | **: (Conspiracy to Commit Money** |
| | **:  Laundering)** |
| | **:** |
| | **: 18 U.S.C. § 2** |
| | **: (Aid and Abetting)** |
| | **:** |
| | **: 18 U.S.C. § 982(a)(1); 28 U.S.C. § 2461(c)** |
| | **: (Criminal Forfeiture)** |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

**GENERAL ALLEGATIONS**

**Introduction**

1.      Defendant PARVIZ KHAKI, a/k/a Martin ("KHAKI"), was a citizen of Iran. KHAKI procured and attempted to procure United States-origin goods, including 20 tons of maraging steel, for customers located in Iran.

2.      Defendant ZONGCHENG YI, a/k/a Yi Cheng, a/k/a Kohler, a/k/a Kohler Yi ("YI"), was a resident of the People's Republic of China ("China").  YI assisted KHAKI in procuring United States-origin goods, including 20 tons of maraging steel, and exporting those goods to Iran.  YI purported to be the managing director of Monalila Co. LTD, a company located in Guangzhou City, China ("Monalila").

3.      Unindicted coconspirator 1 ("Conspirator 1") was a citizen and resident of the United States.  Conspirator 1 assisted KHAKI in procuring United States-origin goods and exporting those goods to Iran.

4.      Maraging steel is a special class of high-strength steel known for possessing superior strength without losing malleability.  The enhanced strength of maraging steel allows for a variety of high-end uses, including nuclear applications (such as uranium enrichment) and military applications (such as munitions).

**Export and Shipping Records**

5.      Pursuant to United States law and regulations, exporters, shippers, and freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those documents are filed electronically through the Automated Export System ("AES"), which is administered by the United States Department

of Homeland Security ("DHS"), Customs and Border Protection, which is headquartered in the District of Columbia.

6.     A Shipper's Export Declaration ("SED") was an official document submitted to DHS in connection with export shipments from the United States.  These forms were used by the United States Bureau of Census to collect trade statistics and by the Bureau of Industry and Security ("BIS"), Department of Commerce, which is located in the District of Columbia, for export control purposes.

7.     An essential and material part of the SED and AES, as well as other export filings, is information concerning the end-user or ultimate destination of the export.  The identity of the end-user may determine whether the goods may be exported: (a) without any specific authorization from the United States Government; (b) with the specific authorization or license from the United States Department of the Treasury, United States Department of State, or United States Department of Commerce; or (c) whether the goods may be prohibited for export from the United States.

8.     Statements made on these export filings are statements to the United States government that the transaction occurred as described.  Other United States government agencies located in the District of Columbia and elsewhere also rely upon the information provided by AES records.

### International Emergency Economic Powers Act

9.     The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, authorized the President to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or

economy of the United States when the President declares a national emergency with respect to that threat.

10.     On March 15, 1995, the President issued Executive Order 12957, finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States," and declared "a national emergency to deal with that threat."  Executive Order 12957, as expanded and continued by Executive Orders 12959 and 13059 and successive Presidential notices, was in effect at all times relevant to this Indictment.

11.     On May 6, 1995, the President issued Executive Order 12959 and imposed economic sanctions, including a trade embargo, against Iran ("the Iran Trade Embargo").  On August 17, 1997, the President issued Executive Order 13059, renewing the Iran Trade Embargo, which continued throughout the time of the acts set forth herein.

12.     To implement the Iran Trade Embargo, the United States Department of the Treasury, through the Office of Foreign Assets Control ("OFAC"), located in the District of Columbia, issued the Iranian Transactions Regulations ("ITR") (31 C.F.R. Part 560).  With certain limited exceptions not applicable here, the ITR prohibit, among other things, the export, re-export, sale, or supply, directly or indirectly, from the United States or by a United States person wherever located, to Iran or the Government of Iran, or the financing of such export, re-export, sale, or supply, of any goods, technology, or services, without prior authorization from OFAC.  These regulations further prohibit any transactions that evade or avoid or have the purpose of evading or avoiding any of the prohibitions contained in the ITR, including the

unauthorized exportation of goods from the United States to a third country if the goods are intended or destined for Iran.

13.     The Iran Trade Embargo and the ITR were in effect at all times relevant to this Indictment.

14.     At all times relevant to this Indictment, Defendants KHAKI, YI, and their coconspirators did not apply for, receive, or possess a license or authorization from OFAC to export goods, technology, or services, of any description, to Iran.

**Venue**

15.     The conduct alleged in this Indictment began outside of the jurisdiction of any particular State or district, and later occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia, as provided by 18 U.S.C. §§ 3237(a) and 3238.

**COUNT ONE**
**18 U.S.C. § 371**
**Conspiracy to Defraud the United States and Violate IEEPA**

1.     The Grand Jury realleges and incorporates by reference the General Allegations of this Indictment.

2.     Beginning as early as in or around December 2008, the exact date being unknown to the Grand Jury, and continuing through at least April 2010, the exact date being unknown to the Grand Jury, beginning outside of the jurisdiction of any particular State or district and later occurring within the District of Columbia and elsewhere, defendants, **PARVIZ KHAKI (a/k/a "Martin")** and **ZONGCHENG YI (a/k/a "Yi Cheng," a/k/a "Kohler," a/k/a "Kohler Yi")**,

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit the following offenses against the United States:

a.      To defraud the United States Department of the Treasury and the United States Government by interfering with and obstructing a lawful government function by deceit, craft, trickery, and dishonest means in violation of Title 18, United States Code, Section 371; and

b.      To export and cause the exportation of goods from the United States to Iran in violation of the embargo imposed upon that country by the United States, without having first obtained the required licenses or authorizations from the Department of the Treasury, OFAC, in violation of Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.

### I.      Objects of the Conspiracy

3.      The objects of the conspiracy were:

a.      to obtain money and property by exporting and causing to be exported US-origin goods in violation of the United States law;

b.      to conceal the prohibited activities and transactions from detection by the United States Government so as to avoid penalties and disruption of the illegal activity; and

c.      to evade the prohibitions and licensing requirements of the International Emergency Economic Powers Act and the Iranian Transactions Regulations.

### II.      Manner and Means of the Conspiracy

4.      The manner and means by which the defendant and his coconspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a.      Defendants KHAKI, YI, Conspirator 1, and others used email accounts and other forms of communication to communicate with each other, with other conspirators, and with others located in the United States, China, and Iran.

b.      Defendant KHAKI directed Defendant YI, Conspirator 1, and others to contact United States companies about purchasing United States-origin goods, in order to hide the fact that the end user of the goods was located in Iran.

c.      Defendant YI, Conspirator 1, and others sent requests for price quotes on behalf of Defendant KHAKI and other conspirators located in Iran to United States companies in order to purchase United States-origin goods.

d.      Defendant YI, Conspirator 1, and others placed orders and purchased United States-origin goods from United States companies on behalf of Defendant KHAKI and other conspirators located in Iran.

e.      Defendants KHAKI, YI, and Conspirator 1 engaged in acts of dishonesty, deceit, and false pretenses in order to obtain money and property by exporting United-States origin goods from the United States to Iran through China and Hong Kong, with knowledge that the export of United States-origin goods to Iran without a license violated United States law.

f.      Defendant YI, Conspirator 1, and others, on behalf of Defendant KHAKI and other conspirators located in Iran made misrepresentations and false statements to United States companies to convince the United States companies that no license was required by the United States government in order to ship United States-origin goods to YI in China and Hong Kong.

g.      Defendant YI, Conspirator 1, and others, on behalf of Defendant KHAKI and other conspirators located in Iran made misrepresentations and false statements to United States

companies to convince the United States companies to ship United States-origin goods to YI in China and Hong Kong.

h.      Defendant YI caused funds to be used for the purchase of United States-origin goods from United States companies on behalf of Defendant KHAKI and other conspirators located in Iran.

i.      Defendant YI and Conspirator 1 caused the United States-origin goods to be exported from the United States to Defendant KHAKI and other conspirators in Iran, by way of China and Hong Kong, without obtaining the requisite licenses from the respective export control authorities.

**III.      Overt Acts in Furtherance of the Conspiracy**

5      Beginning outside of the jurisdiction of any particular State or district, and later occurring within the District of Columbia and elsewhere, in furtherance of the conspiracy and to effect the illegal objects thereof, the defendants, **PARVIZ KHAKI (a/k/a "Martin")** and **ZONGCHENG YI (a/k/a "Yi Cheng," a/k/a "Kohler," a/k/a "Kohler Yi")**, and others known and unknown to the Grand Jury, committed the following overt acts and caused them to be committed, among others:

**Conspiracy to Illegal Export Maraging Steel to Iran through China**

(1)      On or about December 6, 2008, KHAKI asked an individual located in China ("Individual 1") to obtain twenty (20) tons of C-350 maraging steel from the United States for KHAKI's customer in Iran.

(2)    On or about December 10, 2008, in response to a question about the end user of the maraging steel, KHAKI informed Individual 1 that the C-350 maraging steel was for a company in Iran.

(3)    On or about December 11, 2008, Individual 1 emailed KHAKI that he did not have any samples of C-350 maraging steel because it is strictly limited by the United States and requires an export license.

(4)    On or about December 23, 3009, KHAKI sent an email to Individual 1, stating that KHAKI would send Individual 1 his address in Iran.  KHAKI discussed sending a payment for a sample of the maraging steel.

(5)    On or about December 23, 2008, Individual 1 responded to KHAKI 's email. Individual 1 conveyed to KHAKI that a United States company that sells C-350 maraging steel and with whom Individual 1 had been exchanging emails ("Company 1"), needed information about the end use of the maraging steel and confirmation that the maraging steel would not be used for nuclear activities.

(6)    On or about February 14, 2009, YI, located in China, forwarded to KHAKI email communications between YI and a sales manger for Company 1.  In the forwarded emails, YI had asked the sales manager for the price and deliver times for exporting 20 tons of maraging steel.  The sales manager informed YI that Company 1 needed to know the end use application for the maraging steel because it is "controlled for export by US Government."

(7)    On or about March 3, 2009, YI forwarded KHAKI a price quotation from Company 1 for over 20 tons of maraging steel.  The quotation states that maraging steel is "controlled for export by the United States government."

(8)     On or about March 20, 2009, KHAKI began communicating with an individual who represented he had experience exporting items illegally out of the United States, but who in actuality was an undercover federal agent.  The undercover federal agent told KHAKI that Company 1 could not sell KHAKI the maraging steel because exporting the maraging steel was illegal, but that the undercover agent could help export the item for a fee.  KHAKI replied to the undercover federal agent with questions about price and payment.

(9)     On or about May 14, 2009, KHAKI emailed the undercover federal agent in his continued efforts to acquire and export the maraging steel to Iran.  KHAKI remarked that "you know and I know this material are [sic] limited material and danger goods but another provider are here and they have connection out of iran . . ."  KHAKI also discussed his motivation to make money from this transaction.

(10)    From or about May 25 to December 8, 2009, KHAKI asked the undercover federal agent for his banking information and continued to ask him to attempt to purchase maraging steel and other U.S.-origin goods.

(11)    On or about April 30, 2010, Khaki emailed Conspirator 1 requesting pricing information on a specific U.S.-origin good.

**Illegal Export of Lathes to Iran through Hong Kong, China**

(12)    On or about February 1, 2009, KHAKI asked YI to contact a company located in the United States ("Company 2") about the price of two (2) Twister Speed Lathes ("lathes") and how long it would take to deliver the lathes to Monalila, located in China.  KHAKI acknowledged that the actual end user of the lathes was in Iran, explaining to YI that the lathes are "limited" for Iran because they are made in the United States.

-10-

(13)     On or about March 2, 2009, YI forwarded to KHAKI an official invoice from Company 2 for the two lathes.

(14)     On or about March 2, 2009, KHAKI emailed Conspirator 1 the official invoice for the lathes.  KHAKI asked Conspirator 1 to vet Company 2 to make sure they were a "true" company.  KHAKI acknowledged to Conspirator 1 that after YI received the lathes in China, he was going to send them to Iran.

(15)     On or about March 4, 2009, YI asked Company 2 that when Company 2 ships the lathes to China, to record the value of the lathes as less than the actual amount, in order to avoid fees from customs.

(16)     On or about April 13, 2009, YI asked Company 2 to ship the lathes to a trading company located in Hong Kong ("Hong Kong Company").

(17)     On or about April 21, 2009, YI sent KHAKI an email confirming that once YI received the lathes in Hong Kong, he would ship them to KHAKI's address in Iran.

(18)     On or about May 22, 2009, YI transferred money for the lathes from a bank in China ("China Bank") to Company 2.

(19)     On or about June 2, 2009, YI received the lathes from Company 2.  Two days later, YI shipped the lathes to Iran.

**Illegal Export of Nickel Alloy to Iran through Hong Kong, China**

(20)     On or about January 26, 2009, KHAKI asked Conspirator 1 to contact a company located in the United States ("Company 3") about purchasing nickel alloy 120.

-11-

(21)     On or about January 27, 2009, Conspirator 1 sent Company 3 a request for a price for nickel alloy 120.   Upon receipt of the price quote, Conspirator 1 forwarded the quote to KHAKI.

(22)     On or about February 1, 2009, KHAKI asked Conspirator 1 to ask Company 3 how much it would cost to ship the nickel alloy to China.

(23)     On or about February 3, 2009, Company 3 emailed Conspirator 1 the price for shipping the nickel alloy to China.  The email states that the shipment must have customs documents attached, including a Shipper's Export Declaration.  Conspirator 1 forwarded this email to KHAKI.

(24)     On or about February 15, 2009, in order to provide Company 3 with an end user address for the nickel alloy, KHAKI instructed YI to send Conspirator 1 the address for Monalila.

(25)     On or about April 16, 2009, Conspirator 1 sent Company 3 a purchase order for the nickel alloy, which falsely stated that Monalila was the purchaser.

(26)     On or about April 20, 2009, KHAKI sent an email to YI complaining that if he did not receive the nickel alloy in the next few weeks, he would have to pay a fine "to customer in iran."

(27)     On or about April 22, 2009, KHAKI informed Conspirator 1 that the payment to Company 3 would be sent from China because he wants Company 3 to believe, falsely, that the end user is in China.

(28)     On or about April 30, 2009, YI asked Company 3 to ship the nickel alloy to the Hong Kong Company.

(29)     On or about May 6, 2009, YI transferred money for the nickel alloy from China Bank to Company 3.

(30)     On or about June 2, 2009, Company 3 shipped the nickel alloy to YI at the Hong Kong Company.  The invoice included in the shipment stated that the nickel alloy was subject to United States export laws and diverting the nickel alloy to another country was prohibited by United States law.

(31)     On or about June 15, 2009, YI shipped the nickel alloy to Iran.

### Failure to Obtain a License from the United States Government

(32)     At no point during any of the transactions described in the overt acts enumerated above did the defendants or their coconspirators apply for or receive a license or other authorization from the Office of Foreign Assets Control, United States Department of the Treasury, located in the District of Columbia, to export directly or indirectly C-350 maraging steel, lathes or nickel alloy 120 from the United States to Iran.

All in violation of Title 18, United States Code, Section 371 and Title 50, United States Code, Section 1705.

### COUNTS TWO-THREE
### 18 U.S.C. § 554
### Smuggling

1.     The Grand Jury realleges and incorporates by reference the General Allegations and the Overt Acts listed in Count One of this Indictment.

2.     On or about the dates listed as to each count below, beginning outside of the jurisdiction of any particular State or district, and later within in the District of Columbia and elsewhere, the defendants, **PARVIZ KHAKI (a/k/a "Martin")** and **ZONGCHENG YI (a/k/a**

-13-

**"Yi Cheng," a/k/a "Kohler," a/k/a "Kohler Yi")**, did knowingly and fraudulently export and send from the United States, merchandise, articles, and objects, as described more fully below in Counts 2 and 3, contrary to the laws and regulations of the United States, specifically, Title 50, United States Code, Section 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204:

| COUNT | APPROX. DATE OF EXPORT | U.S.-ORIGIN GOODS |
|:-----:|:----------------------:|:-----------------:|
| 2 | May 28, 2009 | Twister Speed Lathe (2) |
| 3 | June 2, 2009 | Nickel Alloy 120 |

All in violation of Title 18, United States Code, Section 554 and Title 18, United States Code, Section 2.

## COUNTS FOUR-FIVE
### 50 U.S.C. § 1705
### Illegal Export of U.S. Goods to Iran

1.     The Grand Jury realleges and incorporates by reference the General Allegations and the Overt Acts listed in Count One of this Indictment.

2.     On or about the dates listed as to each count below, beginning outside of the jurisdiction of any particular State or district, and later within in the District of Columbia and elsewhere, the defendants, **PARVIZ KHAKI (a/k/a "Martin")** and **ZONGCHENG YI (a/k/a "Yi Cheng," a/k/a "Kohler," a/k/a "Kohler Yi")**, did knowingly and willfully violate United States laws with respect to the embargo against Iran by exporting and causing to be exported U.S.-origin goods, as described more fully below in Counts 4 and 5, from the United States to Iran, by way of Hong Kong, China, without having first obtained the required licenses and

-14-

authorizations from the  Office of Foreign Assets Control, United States Department of the

Treasury, located in the District of Columbia:

| COUNT | APPROX. DATE OF EXPORT | U.S.-ORIGIN GOODS |
|---|---|---|
| 4 | May 28, 2009 | Twister Speed Lathe (2) |
| 5 | June 2, 2009 | Nickel Alloy 120 |

All in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal

Regulations, Sections 560.203 and 560.204; and Title 18, United States Code, Section 2.

## COUNT SIX
## 18 U.S.C. § 1956
### Conspiracy to Commit Money Laundering

1.      The Grand Jury realleges and incorporates by reference the General Allegations

and the Overt Acts listed in Count One of this Indictment.

2.      Beginning as early as in or around December 2008, the exact date being unknown

to the Grand Jury, and continuing through at least April 2010, beginning outside of the

jurisdiction of any particular State or district, and later within the District of Columbia, and

elsewhere, the defendants, **PARVIZ KHAKI (a/k/a "Martin")** and **ZONGCHENG YI (a/k/a**

**"Yi Cheng," a/k/a "Kohler," a/k/a "Kohler Yi")**, and others known and unknown to the Grand

Jury, did unlawfully, wilfully, and knowingly combine, conspire, and agree with each other to

commit offenses against the United States in violation of Title 18, United States Code, Section

1956, specifically, to transport, transmit, and transfer, and attempt to transport, transmit, and

-15-

transfer, a monetary instrument and funds, specifically $6,442, to a place in the United States

from a place outside the United States, with the intent to promote the carrying on of specified

unlawful activity, to wit, illegally exporting U.S.-origin goods from the United States to Iran in

violation of Title 18, United States Code, Section 554, Title 50, United States Code, Section

1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204.

      All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h).


## FORFEITURE ALLEGATION

1.     The violations alleged in Count One through Count Six of this Indictment are re-

alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United

States of America pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code,

Section 2461(c).

2.     As a result of the offenses alleged in Count One through Count Six of this

Indictment, defendants shall forfeit to the United States any property constituting, or derived

from, proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One

through Count Five, and any property involved in the offense alleged in Count Six, and any

property traceable to such property, including, but not limited to:

    Money Judgment:

        a sum of money of at least $6,442, which represents a sum of money equal to property

        constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the

        offenses alleged in Count One through Count Six of this Indictment.

3.      By virtue of the commission of the felony offenses charged in Count One through Count Five of this Indictment, any and all interest that defendants have in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4.      By virtue of the commission of the felony offense charged in Count Six of this Indictment, any and all interest that defendants have in any property involved in the offense, and any property traceable to such property, is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

5.      If, as a result of any act or omission of the defendants, the property identified above:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of said property listed above as being subject to forfeiture.

All in violation of Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(1); and Title 28, United States Code, Section 2461(c).


A TRUE BILL:


_____
FOREPERSON


Attorney of the United States in
and for the District of Columbia