**Exhibit 13** to Memorandum of Points and Authorities in Support of Defendant Concord Management and Consulting LLC's Motion to Dismiss Count One of the Superseding Indictment, 18-cr-00032-2-DLF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on November 12, 2010

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| | : | **Grand Jury Original** |
| v. | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **JENG SHIH,** | : | **18 U.S.C. § 371** |
|      also known as | : | **(Conspiracy)** |
| **JAY SHIH,** | : | |
| | : | **50 U.S.C. § 1705** |
| and | : | **(International Emergency Economic** |
| | : | **  Powers Act)** |
| **SUNRISE TECHNOLOGIES AND** | : | |
| **TRADING CORPORATION,** | : | **31 C.F.R. Part 560** |
|      also known as | : | **(Iranian Transactions Regulations)** |
| **SUNRISE,** | : | |
|      also known as | : | **18 U.S.C. § 1001** |
| **ST&T,** | : | **(False Statements)** |
| | : | |
|           Defendants. | : | **18 U.S.C. § 2** |
| | : | **(Aiding and Abetting and** |
| | : | **Causing an Act to Be Done)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(c)** |
| | : | **28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture)** |

**I N D I C T M E N T**

The Grand Jury charges that:

**COUNT ONE**
(**Conspiracy to Unlawfully Export U.S.-Origin Goods to Iran and to Defraud the United States**)

At all times material to this Indictment:

**The Defendants**

1. Defendant SUNRISE TECHNOLOGIES AND TRADING CORPORATION, also known as SUNRISE, also known as ST&T ("SUNRISE"), is a company incorporated to do business in New York and operates in the United States at the address of 33-38 Farrington Street, Flushing, NY 11354. SUNRISE is owned and operated by defendant JENG SHIH, also known as JAY SHIH, along with two other individuals known to the grand jury. The business of SUNRISE is the domestic and international sale of electronic equipment, including computer-related goods.

2. Defendant SHIH is a citizen of the United States. SHIH is the primary owner and operator of SUNRISE with the authority to bind the company. Beginning as early as in or around 2007, and continuing through April 6, 2011, SHIH conspired with a company operating in Dubai, United Arab Emirates ("UAE"), and Tehran, Iran, to procure U.S.-origin computers through SUNRISE and export those computers from the United States to Iran, through Dubai, UAE.

**The International Emergency Economic Powers Act and the Iranian Transactions Regulations**

3. The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign

2

policy or economy of the United States when the President declared a national emergency with respect to that threat. Pursuant to the authority under the IEEPA, the President and the executive branch have issued orders and regulations governing and prohibiting certain transactions with Iran by U.S. persons or involving U.S.-origin goods.

4.   Beginning with Executive Order No. 12170, issued on November 14, 1979, the President has found that "the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declare[d] a national emergency to deal with that threat."

5.   On May 6, 1995, the President issued Executive Order No. 12959, adopting and continuing Executive Order No. 12170 (collectively, the "Executive Orders"), and prohibiting, among other things, the exportation, reexportation, sale, or supply, directly or indirectly, to Iran of any goods, technology, or services from the United States or by a United States person. The Executive Orders authorized the United States Secretary of the Treasury to promulgate rules and regulations necessary to carry out the Executive Orders. Pursuant to this authority, the Secretary of the Treasury promulgated the Iranian Transactions Regulations ("ITR"), implementing the sanctions imposed by the Executive Orders.

6.   The ITR generally prohibit any person from exporting or causing to be exported from the United States any goods or technology without having first obtained a validated export license from the United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia. The ITR imposed, among others, the following prohibitions:

>   Section 560.203 - Prohibition of any Transaction to Evade or Avoid the

3

>Embargo and any Attempt to Violate the Embargo:
>
>Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in this part is hereby prohibited.
>
>Section 560.204 - Prohibition of any Sale or Supply of any Goods, Technology, Services to Iran or the Iranian Government:
>
>Except as otherwise authorized [by a license issued by OFAC], the exportation, . . . sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited, including the exportation, . . . sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that:
>
>(a)  Such goods, technology, or services are intended specifically for supply . . . directly or indirectly, to Iran or the Government of Iran . . .

The ITR were in effect at all times relevant to this Indictment.

## Export and Shipping Records

7.  Pursuant to United States law and regulation, exporters and shippers or freight forwarders are required to file certain forms and declarations concerning exports of goods and technology from the United States. Typically, those filings are completed through the submission of a paper Shipper's Export Declaration ("SED") or the submission of Electronic Export Information ("EEI") via the Automated Export System ("AES"). AES is administered by the United States Department of Homeland Security, Customs and Border Protection, which is headquartered in the District of Columbia. The SEDs and EEIs are official documents submitted to the Department of Homeland Security in connection with exports from the United States.

8.  An essential and material part of the SED or EEI is information concerning the ultimate consignee (commonly known as "end-user") and the country of ultimate destination of the

export (commonly known as "end-use"). In many cases, the identity of the ultimate consignee determines whether the goods may be exported: (a) without any specific authorization from the United States Government; (b) with the specific authorization or a license from the United States Department of Commerce, the United States Department of State, or the United States Department of the Treasury; or (c) whether the goods may not be exported from the United States.

9.      The SED or EEI is equivalent to a statement to the United States Government that the transaction occurred as described. The SED or EEI is used by the United States Bureau of Census to collect trade statistics and by the United States Department of Commerce, Bureau of Industry and Security, which is located in the District of Columbia, for export control purposes.

### A. THE CONSPIRACY

10.     Beginning as early as in or about 2007, the exact date being unknown to the Grand Jury, and continuing through on or about April 6, 2011, defendants SHIH and SUNRISE did willfully combine, conspire, and agree with others known and unknown to the Grand Jury, to: (a) commit an offense against the United States, that is, to export and cause the exportation of goods from the United States to Iran in violation of the prohibitions imposed upon that country by the United States Government, without having first obtained the required licenses from OFAC, located in the District of Columbia, in violation of Title 50, United States Code, Section 1705 (IEEPA), and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204 (ITR); and (b) defraud the United States Government by interfering with and obstructing a lawful government function, that is, the enforcement of laws and regulations prohibiting the export or supply of goods from the United States to Iran without having first obtained the required licenses from OFAC, by deceit, craft, trickery, and dishonest means, in violation of Title 18, United States Code, Section 371.

11.     Other known members of the conspiracy included the following company and individuals: a company operating in Dubai, UAE, and Iran ("Company X"); an Iranian national who owned and operated Company A ("Individual A"); a second Iranian national who was an agent for Company A ("Individual B"); and two United States citizens who were also part owners and operators of defendant SUNRISE ("Individual C" and "Individual D").

12.     In or around 1999, Individual A, an Iranian national, established Company X in Dubai, UAE, for the purpose of purchasing U.S.-origin electronic goods and reselling those goods in Iran.

13.     In or around 2005 or 2006, Individual A on behalf of Company X had begun purchasing millions of dollars worth of laptop computers from defendant SUNRISE through defendant SHIH for shipment to Iran, through Dubai, UAE.

14.     In or around 2005 or 2006, Individual A on behalf of Company X began transshipping some of the U.S.-origin computer-related goods it was purchasing from defendant SUNRISE through defendant SHIH to Iran.

15.     The conduct alleged in this Count occurred within the District of Columbia and elsewhere, and is therefore within the venue of the United States District Court for the District of Columbia pursuant to Title 18, United States Code, Sections 3237(a) and 3238.

### B.  OBJECTS OF THE CONSPIRACY

16.     The objects of the conspiracy were:

A.      to acquire U.S.-origin goods, that is, computer-related goods, from the United States to supply to entities and end-users in Iran;

B.      to conceal from United States companies and the United States Government

6

that the U.S.-origin goods were destined for Iranian end-users;

  C. to make a financial profit for defendants SHIH and SUNRISE, and other conspirators;

  D. to conceal and redistribute financial profits arising from this unlawful business for the benefit of defendants SHIH and SUNRISE, and other conspirators; and

  E. to evade the regulations, prohibitions, and licensing requirements of the ITR.

### C. MANNER AND MEANS OF THE CONSPIRACY

 17. The manner and means by which defendants SHIH and SUNRISE, and other conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

  A. Defendants SHIH and SUNRISE, and other conspirators planned and acted inside and outside of the United States to acquire U.S.-origin goods.

  B. Defendants SHIH and SUNRISE, and other conspirators used e-mail and chat accounts (collectively "electronic communications") and other forms of communication to communicate with one another and with other individuals, including Individuals A, B, C, and D, located in the United States, Dubai, UAE, and Iran.

  C. Defendants SHIH and SUNRISE, and other conspirators solicited purchase orders for U.S.-origin goods from companies and customers operating in Dubai, UAE, and Iran, including Company A, for the purchase and shipment of said goods to Iran, through Dubai, UAE.

  D. Defendants SHIH and SUNRISE, and other conspirators received and filled purchase orders for U.S.-origin goods from companies and customers operating in Dubai, UAE, and Iran, including Company A, for the purchase and shipment of said goods to Iran, through Dubai,

7

UAE.

        E.      Defendants SHIH and SUNRISE, and other conspirators wired money from accounts inside and outside the United States to accounts of United States' companies inside the United States in payment for the purchase of U.S.-origin goods.

        F.      Defendants SHIH and SUNRISE, and other conspirators arranged to have their customers wire money from accounts inside and outside the United States to accounts held by defendants SHIH and SUNRISE, and other conspirators inside the United States in payment for the U.S.-origin goods sold by defendant SUNRISE.

        G.      Defendants SHIH and SUNRISE, and other conspirators intentionally concealed from companies, shippers, and freight forwarders located in the United States the true identity of the ultimate end-use and end-users of the U.S.-origin goods.

        H.      Defendants SHIH and SUNRISE, and other conspirators intentionally submitted or caused to be submitted false information on SEDs to the United States Government, concealing from the United States Government the true identity of the ultimate end-use and end-users of the U.S.-origin goods.

        I.      Defendants SHIH and SUNRISE, and other conspirators caused shipments of U.S.-origin goods to be made from the United States to Dubai, UAE, for subsequent transhipment to Iran.

        J.      Defendants SHIH and SUNRISE, and other conspirators caused the U.S.-origin goods to be exported from the United States to individuals and entities through Dubai, UAE, to Iran without obtaining a license from OFAC, located in the District of Columbia.

### D. OVERT ACTS

18. In furtherance of the above-described conspiracy, and in order to carry out the object thereof, defendants SHIH and SUNRISE, and others known and unknown to the Grand Jury committed or caused to be committed, in the District of Columbia and elsewhere, at least one of the following overt acts, among others:

(1) In or around 2007, Company X's business primarily consisted of the purchase of U.S.-origin computer-related goods from suppliers in the United States, such as defendant SUNRISE, for shipment from the United States to Iran. In furtherance of its business, in and around 2007, Company X employed Individual B as Company X's primary employee and point of contact in Iran.

(2) In or around 2007, Individual A informed defendant SHIH that Individual B resided in Tehran, Iran, and was facilitating Company X's business with defendant SUNRISE from that location.

(3) In or around 2007, Individual A informed defendant SHIH to contact Individual B directly via e-mail, chat messaging, or telephone concerning defendant SUNRISE's sale and shipment of U.S.-origin computer goods from the United States to Company X in Iran, through Dubai, UAE.

(4) Beginning in or around 2007, defendant SHIH and others on behalf of defendant SUNRISE communicated directly with Individual B in Iran via electronic and telephonic communications on an almost weekly basis in furtherance of defendant SUNRISE's sale and shipment of U.S.-origin computer goods from the United States to Company X in Iran, through Dubai, UAE.

(5)     In or around September 2009, defendant SHIH personally met with Individual A, during which defendant SHIH and Individual A openly discussed the fact that the computer-related goods that Company X purchased from defendant SUNRISE were being shipped from the United States through Dubai, UAE, to Iran.

(6)     In or around October 2009, defendant SHIH personally met with Individual A, during which defendant SHIH and Individual A openly discussed the fact that the computer-related goods that Company X purchased from defendant SUNRISE were being shipped from the United States through Dubai, UAE, to Iran.

(7)     In or around September or October 2009, defendant SHIH told Individual A that defendants SHIH and SUNRISE had completed certain paperwork required to clear Iranian Customs for his other clients doing business in Iran and would be willing to do it for Company X as well.

(8)     Between in or around 2007 and April 6, 2011, Individual A or Individual B, or both, have made numerous purchases of computer-related goods from defendant SUNRISE through defendant SHIH, averaging approximately $700,000 worth of computer-related goods each month.

### The Unlawful Export of 368 Units of Computer-related Goods from the United States to Iran, Through Dubai, UAE

(9)     On or about April 9, 2010, Individual B, while in Tehran, Iran, and on behalf of Company X, ordered 368 units of computer-related goods from defendant SUNRISE through defendant SHIH.

(10)    On or about April 9, 2010, defendant SUNRISE shipped 368 units of

computer-related goods from the United States to Company X in Dubai, UAE, for transhipment to Iran.

(11) On or about April 9, 2010, defendant SHIH or another on behalf of defendant SUNRISE e-mailed Individual B an invoice by defendant SUNRISE to Company X for the purchase and shipment of the 368 units of computer-related goods valued at approximately $330,404.

(12) On or about April 10, 2010, Company X received the 368 units of computer-related goods from defendant SUNRISE in Dubai, UAE.

(13) On or about April 17, 2010, Company X transshipped the 368 units of computer-related goods to Tehran, Iran.

(14) On or about April 11, 2010, defendant SUNRISE submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 368 units of computer-related goods was the UAE.

(15) On or about April 8 and 22, 2010, Individual B caused Company X to wire money from a bank account held by Company X in Dubai, UAE, to a bank account held by defendant SUNRISE in the United States, approximately $330,404 of which represented Company X's payment to defendant SUNRISE for the 368 units of computer-related goods, described in paragraphs (9) through (14) above.

### The Unlawful Export of 158 Units of Computer-related Goods from the United States to Iran, Through Dubai, UAE

(16) On or about April 28, 2010, Individual B, while in Tehran, Iran, and on behalf

11

of Company X, ordered 158 units of computer-related goods from defendant SUNRISE through defendant SHIH.

(17)    On or about April 28, 2010, defendant SUNRISE shipped 158 units of computer-related goods from the United States to Company X in Dubai, UAE, for transhipment to Iran.

(18)    On or about April 28, 2010, defendant SHIH or another on behalf of defendant SUNRISE e-mailed Individual B an invoice by defendant SUNRISE to Company X for the purchase and shipment of the 158 units of computer-related goods valued at approximately $253,926.

(19)    On or about April 29, 2010, Company X received the 158 units of computer-related goods from defendant SUNRISE in Dubai, UAE.

(20)    On or about May 5, 2010, Company X transshipped the 158 units of computer-related goods to Tehran, Iran.

(21)    On or about April 30, 2010, defendant SUNRISE submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 158 units of computer-related goods was the UAE.

(22)    On or about April 29, 2010, and May 3, 2010, Individual B caused Company X to wire money from a bank account held by Company X in Dubai, UAE, to a bank account held by defendant SUNRISE in the United States, approximately $253,926 of which represented Company X's payment to defendant SUNRISE for the 158 units of computer-related goods, described in paragraphs (16) through (21) above.

**The Unlawful Export of 185 Units of Computer-related Goods
from the United States to Iran, Through Dubai, UAE**

(23)     On or before May 7, 2010, Individual B, while in Tehran, Iran, and on behalf of Company X, ordered 185 units of computer-related goods from defendant SUNRISE through defendant SHIH.

(24)     On or about May 7, 2010, defendant SUNRISE shipped 185 units of computer-related goods from the United States to Company X in Dubai, UAE, for transhipment to Iran.

(25)     On or about May 7, 2010, defendant SHIH or another on behalf of defendant SUNRISE e-mailed Individual B an invoice by defendant SUNRISE to Company X for the purchase and shipment of the 185 units of computer-related goods valued at approximately $196,603.

(26)     On or about May 8, 2010, Company X received the 185 units of computer-related goods from defendant SUNRISE in Dubai, UAE.

(27)     On or about May 11, 2010, Company X transshipped the 185 units of computer-related goods to Tehran, Iran.

(28)     On or about May 8, 2010, defendant SUNRISE submitted or caused to be submitted an SED to the Customs and Border Protection, headquartered in the District of Columbia, that falsely stated that the country of ultimate destination for the shipment of the 185 units of computer-related goods was the UAE.

(29)     On or about May 6 and 10, 2010, Individual B caused Company X to wire money from a bank account held by Company X in Dubai, UAE, to a bank account held by defendant SUNRISE in the United States, approximately $196,603 of which represented Company

13

X's payment to defendant SUNRISE for the 185 units of computer-related goods, described in paragraphs (23) through (28) above.

## Failure to Obtain a License

(30)   Defendants SHIH, SUNRISE, and other conspirators failed to apply for, receive, and possess, and caused others to fail to apply for, receive, and possess a license from OFAC, located in the District of Columbia, to export any of the U.S.-origin goods set forth above from the United States to Iran.

## COUNTS TWO through FOURTEEN
### (Unlawful Exports or Attempted Unlawful Exports of U.S.-Origin Goods to Iran)

19.   The allegations in Paragraphs 1 through 15, and 18 of this Indictment are incorporated and re-alleged by reference herein.

20.   On or about the dates listed as to each count below, within the District of Columbia and elsewhere, defendants SHIH and SUNRISE, and other conspirators, did willfully export, attempt to export, and cause to be exported the U.S.-origin goods set out in Counts Two through Fourteen from the United States to Iran, without having first obtained the required license from OFAC, located in the District of Columbia.

| Count | Approx. Date of Export | Description of Goods | Approx. Value of Goods | Ultimate Destination |
|---|---|---|---|---|
| 2. (Overt Acts (9)-(15)) | 4/9/10 | 368 units of computer-related goods | $330,404 | Tehran, Iran |
| 3. | 4/15/10 | 95 units of computer-related goods | $104,575 | Tehran, Iran |
| 4. | 4/22/10 | 108 units of computer-related goods | $104,251 | Tehran, Iran |

| Count | Approx. Date of Export | Description of Goods | Approx. Value of Goods | Ultimate Destination |
|---|---|---|---|---|
| 5. | 4/26/10 | 127 units of computer-related goods | $152,501 | Tehran, Iran |
| 6. (Overt Acts (16)-(22)) | 4/28/10 | 158 units of computer-related goods | $253,926 | Tehran, Iran |
| 7. | 4/30/10 | 99 units of computer-related goods | $107,169 | Tehran, Iran |
| 8. | 5/6/10 | 176 units of computer-related goods | $208,806 | Tehran, Iran |
| 9. (Overt Acts (23)-(29)) | 5/7/10 | 185 units of computer-related goods | $196,603 | Tehran, Iran |
| 10. | 5/7/10 | 54 units of computer-related goods | $49,903 | Tehran, Iran |
| 11. | 5/13/10 | 212 units of computer-related goods | $218,125 | Tehran, Iran |
| 12. | 5/14/10 | 111 units of computer-related goods | $135,030 | Tehran, Iran |
| 13. | 5/28/10 | 257 units of computer-related goods | $214,050 | Tehran, Iran |
| 14. | 6/1/10 | 57 units of computer-related goods | $60,635 | Tehran, Iran |

(**Unlawful Exports or Attempted Exports of U.S.-Origin Goods to Iran**, in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 560.203 and 560.204; **Aiding and Abetting and Causing an Act to be Done**, in violation of Title 18, United States Code, Section 2.)

### COUNTS FIFTEEN through TWENTY-SEVEN
### (Material False Statements)

21. The allegations in Paragraphs 1 through 15, and 18 of this Indictment are incorporated and re-alleged by reference herein.

22. On or about the dates listed as to each count below, within the District of Columbia

15

and elsewhere, defendants SHIH and SUNRISE, and other conspirators, in a matter within the jurisdiction of the United States Department of Homeland Security, Customs and Border Protection, and the United States Department of Commerce, Bureau of Industry and Security, both of which are located in the District of Columbia, did knowingly and willfully falsify, conceal, and cover up and cause to be falsified, concealed, and covered up, by a trick, scheme, and device, material facts and made and caused to be made false, fictitious and fraudulent statements and representations as to a material fact, and made and used and caused to be made or used a false writing and document knowing the same to contain a false, fictitious and fraudulent entry, by creating false and fictitious shipping documents, including Shipper's Export Declarations ("SEDs"), which stated that the ultimate consignee of the shipments of units of computer-related goods units was Company X in Dubai, UAE, and the ultimate destination of the shipments of laptop computer units was Dubai, UAE, and that no license was required, when defendants SHIH and SUNRISE, and other conspirators there and then knew well that these statements were false.

| Count | Approx. Date of Export | Approx. Date of SED Filing | Ultimate Consignee and Destination Indicated on SED | Ultimate Consignee and Destination for Actual Shipment |
|---|---|---|---|---|
| 15. (Overt Acts (9)-(15)) | 4/9/10 | 4/9/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 16. | 4/15/10 | 4/16/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 17. | 4/22/10 | 4/23/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 18. | 4/26/10 | 4/27/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |

| Count | Approx. Date of Export | Approx. Date of SED Filing | Ultimate Consignee and Destination Indicated on SED | Ultimate Consignee and Destination for Actual Shipment |
|---|---|---|---|---|
| 19. (Overt Acts (16)-(22)) | 4/28/10 | 4/28/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 20. | 4/30/10 | 4/30/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 21. | 5/6/10 | 5/6/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 22. (Overt Acts (23)-(29)) | 5/7/10 | 5/7/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 23. | 5/7/10 | 5/7/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 24. | 5/13/10 | 5/13/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 25. | 5/14/10 | 5/14/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 26. | 5/28/10 | 5/28/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |
| 27. | 6/1/10 | 6/1/10 | Company X, Dubai, UAE | Company X, Tehran, Iran |

(**Material False Statements**, in violation of 18 U.S.C. § 1001; **Aiding and Abetting and Causing an Act to be Done**, in violation of 18 U.S.C. § 2.)

### FORFEITURE ALLEGATION

23.   The violations alleged in Count One through Count Fourteen of this Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C),

17

and Title 28, United States Code, Section 2461(c).

24. As a result of the offenses alleged in Count One through Count Fourteen of this Indictment, defendants shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses alleged in Count One through Count Fourteen, including, but not limited to:

Money Judgment:

judgment in favor of the United States for a sum of money equal to the value of the property constituting or derived from, any and all proceeds the defendants obtained, directly or indirectly, as a result of the offenses alleged in Count One through Count Fourteen of this Indictment.

Property:

$179,321.17 seized from Citibank account number #xxxxx6823, held in the name of Sunrise Technologies and Trading Corporation.

By virtue of the commission of the felony offenses charged in Count One through Count Fourteen of this Indictment, any and all interest that defendants have in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

25. If, as a result of any act or omission of the defendants, the property identified above:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without

difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of said property listed above as being subject to forfeiture.

(**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

FOREPERSON

/s/
Attorney of the United States in
and for the District of Columbia