# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC,

Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

---

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION FOR
DISCLOSURE OF LEGAL INSTRUCTIONS GIVEN TO THE GRAND JURIES THAT
RETURNED THE ORIGINAL AND SUPERSEDING INDICTMENTS[1]**

Pursuant to Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure, Defendant

Concord Management and Consulting LLC ("Concord"), by and through undersigned counsel,

respectfully moves for disclosure of the legal instructions provided to (i) the grand jury that

returned the Original Indictment in this case (the "Original Grand Jury" and "Original

Instructions") and (ii) the grand jury that returned the Superseding Indictment in this case (the

"New Grand Jury" and "New Instructions").  In support, Concord states as follows:

## I.      Preliminary Statement

If the fact that the Original Grand Jury indicted a company that did not exist at the time of

the alleged violation (Concord Catering) was not reason enough to seriously question the legal

---

[1]     In June 2018, the Court denied Concord's motion for an *in camera* inspection by the Court
of the legal instructions provided to the grand jury that returned the original indictment (ECF 1,
hereafter "Original Indictment").  ECF 28.  On October 16, 2019, Concord moved for disclosure
of those same instructions.  ECF 217.  After that motion was filed, the government revealed that
it was seeking a superseding indictment, which a new grand jury returned on November 8, 2019,
and which was docketed on November 12.  ECF 247 (hereafter "Superseding Indictment").
Based on the Superseding Indictment, the Court denied Concord's motion without prejudice.
*See* Nov. 12, 2019 Minute Order denying without prejudice renewed motion to dismiss (ECF
210) and motion for disclosure of grand jury instructions (ECF 217).

instructions the prosecutors provided, now the New Grand Jury has indicted on a theory of Foreign Agent Registration Act ("FARA") liability that is both contrary to law and unsupported by any case authority, ever.  In both instances, it is apparent from the plain language of the respective Indictments that the prosecutors improperly instructed these grand juries as to a *mens rea* that will allow indictment and conviction because both fail to require proof that Concord had any knowledge whatsoever of the existence or responsibilities of any of the government entities it is alleged to have defrauded.  Beyond that, the prejudicial timing of the Superseding Indictment is just the latest breach of the principles of fairness and neutrality that should be, but aren't, governing the prosecutors' conduct in this case.  Here, the singular desire to convict Concord at any cost—fully evident in the path to the new indictment and the indictment itself— has created a particularized need for this Court to order disclosure of the legal instructions given to the grand juries that returned the Original and Superseding Indictments.  Controlling law allows for disclosure in these circumstances and the interests of justice compel it.

In particular, the compulsion for disclosing the legal instructions is founded on the pivotal role of the grand jury and the limits that are imposed by its written charge.  "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.'"  *United States v. Calandra*, 414 U.S. 338, 342–43 (1974) (citation omitted).  In a federal prosecution, therefore, the "content of the charge, as well as the decision to charge at all, is entirely up to the grand jury[.]"  *Gaither v. United States*, 413 F.2d 1061, 1066 (D.C. Cir. 1969).  Moreover, "[t]he sweeping powers of the grand jury over the terms of the indictment entail very strict limitations upon the power of prosecutor or court to change the indictment found by the jurors, or to prove at trial facts different from those charged in that

indictment." *Id.* The settled prohibition thus is clear and brooks no exception—"a court cannot permit a defendant to be tried on charges that are not made in the indictment against him[,]" *Stirone v. United States*, 361 U.S. 212, 217 (1960), and "criminal prosecutions" therefore must "be limited to the unique allegations of the indictments returned by the grand jury[,]" *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (citations omitted).

While clear enough in their mandate, these principles plainly have been under siege since the earliest stages of this case and now find themselves under particularly grave assault. Over the past several months, the original grand jury charge from February 2018 has been modified, repackaged, and contorted at the prosecution's whim through various letters and briefs. In its myopic drive to convict, the government has conspicuously and assiduously moved the target, rummaging through the inventory of federal statutes related to elections and foreign agent registration looking for something—anything—it thinks it can prove. Through that process, what actually is set forth in the Original Indictment has become nothing more than a dim memory. The result? A circumstance where Concord is improperly left to guess at what it will ultimately have to defend against at trial.

Abridgment of Concord's fundamental constitutional rights thus has been, and is, the price paid for this deeply flawed prosecution, now engineered by the United States Attorney's Office for the District of Columbia ("USAO DC"). The latest piece of this shell game has played out with the announcement and presentation of the Superseding Indictment. The timing and content of this pleading makes its strategic purpose clear, most notably to try to subvert Concord's prior request for the Original Instructions, for which the government offered no plausible defense. Of course, the Superseding Indictment—*unlike* the Original—explicitly contains the very allegations the government diligently and deliberately tried to inject into this

case through letters and briefs in recent months. But the path requiring disclosure of the instructions nevertheless remains the same. The evolution in the charge made reveals the arbitrary nature of this prosecution. The legal instructions likely will confirm as much, providing further evidence of the unfairness and duplicity that has characterized this prosecution from its inception. Indeed, there is every reason to believe—from the face of the Superseding Indictment itself—that more mischief is afoot and that the New Instructions failed to instruct the grand jury on the *mens rea* required for the defraud conspiracy now alleged in this case. And, given the Superseding Indictment's new "unwitting Americans" theory of liability under FARA—a theory without any basis in law or statutory text—it is apparent that the grand jury was misinstructed there as well.

Finally, there is nothing to balance against this particularized need for disclosure of the legal Instructions, old or new. Any professed interest in maintaining the secrecy of the two sets of Instructions is *de minimis* at best. As for the Original Instructions, the Special Counsel's investigation is over and the Original Grand Jury's work is complete and was disclosed in a lengthy public report. As for the new ones, their disclosure will not reveal the workings of the grand jury or compromise the details of its investigations since the New Grand Jury's only involvement in this case was to supersede the Original Indictment. The sanctity of grand jury proceedings is one thing. But the abuse of them is another. The exceptions to the secrecy principle exist to facilitate prosecutorial neutrality and avoid arbitrary injustice. Where the balance tips to disclosure, as it does here, the policy of the law shifts along with it. This Court should order disclosure of the legal instructions given to both grand juries.

## II.     Factual and Procedural Background

It goes without saying that prosecutors are not "free to roam at large—to shift [their] theory of criminality so as to take advantage of each passing vicissitude . . . ." *Russell v. United States*, 369 U.S. 749, 768 (1962).  Yet, as Concord has highlighted in numerous pleadings and briefs, over the last many months the government has forced Concord into an unending 19-month game of Whac-a-Mole that is expansive in its scope and seemingly unlimited in its permutations.  *See*, *e.g.*, ECF 210 at 14–19; ECF 217 at 3–10; ECF 256 at 14–24.

Most pertinent here, in March 2019, Concord moved for a bill of particulars, ECF 104, which led the Court to conclude that the Original "[I]ndictment *did* allege" violations of the Federal Election Campaign Act ("FECA") and FARA and, therefore, that "the specific laws—and underlying conduct—that triggered such a duty [to disclose and register] are critical for Concord to know well in advance of trial so it can prepare its defense."  ECF 136 at 11–12.  Because the Original Indictment (and the Superseding Indictment) failed to identify to whom these duties applied, Concord still could not determine which specific Defendants had the duties the government contended they had, but which the Original Indictment itself does not allege, Concord sought a supplemental bill of particulars.  ECF 181.  This raised serious questions about whether the grand juries were instructed on this duty issue.  If not, Concord may have been improperly indicted.  And if so, the exact wording of the instruction is essential to determining whether the prosecutors are proceeding on the same or a different theory than the one charged.

At the September 16, 2019 hearing on Concord's motion for a supplemental bill of particulars, the government moved the target yet again.  In a colloquy at the start of the hearing, the Court stated that it had previously "interpreted the indictment to allege a conspiracy that targeted only the administration of federal disclosure requirements and not some other set of

functions, such as the enforcement of the ban on expenditures by foreign nationals." Sept. 16, 2019 Hr'g Tr. 4:13–17 (referring to ECF 174 at 6). The Court accordingly questioned the government's opposition to the motion for a supplemental bill of particulars, where the government asserted that the Original Indictment "also alleges that the conspirators interfered with the [Federal Election Commission's ("FEC's")] function of enforcing the statutory prohibition on certain expenditures by foreign nationals." ECF 194 at 18 n.3.

Faced with this observation, the government then asked the Court to clarify or reconsider its previous order. ECF 201. In that motion, the government said that it intends to prove that unidentified co-conspirators did **not** comply with the duties now required by the Court for conviction because, as foreigners, they allegedly made expenditures, not charged in the Indictment (because it would require proof of willfulness), that were potentially separately prohibited under FECA (which amounted to the Russian ruble equivalent of just over $2,900). ECF 201 at 2; ECF 181 at 11 & n.10; ECF 206 at 7. The Court denied this motion, reaffirming that the Indictment did not allege that the Defendants conspired to interfere with the FEC's function of enforcing a foreign expenditure ban, ECF 209 at 3, which is not a "ban" at all, but rather a highly complex set of rules that prohibits some expenditures, and permits others. ECF 181 at 9–16.

But the government's efforts to move beyond the Original Indictment notwithstanding what was actually alleged did not end there. Late on Friday, October 4, 2019, in response to the Court's oral order during the September 16 hearing on the motion for a supplemental bill of particulars, and three days before Concord's renewed motion to dismiss was due, the government advised undersigned counsel in a letter that it intends to "argue at trial" that the defendants conspired to cause certain named U.S. persons and organizations to unwittingly act as agents of

an unidentified foreign principal and "therefore either the individuals or organizations or the conspirators (or both) would have had a legal duty to register under" FARA.  **Ex. 1**, Oct. 4, 2019 Letter from United States Attorney to E. Dubelier.  Through the course of 19 months of pre-trial litigation, numerous hearings, and hundreds of pages of briefing related to Concord's motions to dismiss and for bills of particulars, to that point the government had never once notified Concord or the Court of its intention to use this new theory.  Nor did the government ever argue that the Original Indictment charged such a theory.  Instead the government made this up after the fact when things were not looking good.  And its October 4 letter did not disclose specifically who, if anyone, had any legal duty to register under FARA, or who, specifically, is the foreign "principal" in this instance.

In fact, the government's eleventh-hour revelation of its brand-new FARA theory underscored the arbitrariness of this prosecution.  Consider the sequence.  In its late-August 2019 motion for a supplemental bill of particulars, Concord noted that with respect to FARA, an agent of a foreign principal would be subject to FARA only for conduct within the United States.  ECF 181 at 22–24.  Concord further noted the absence of any case law to suggest that a foreign person using the internet ***outside*** of the United States would be subject to FARA.  *Id.*  In its September 3 opposition, the government argued that the indictment alleged "that the ***conspirators*** were required ... to register under ... FARA . . . ."  ECF 194 at 13 (emphasis added).

Following the Court's September 16 oral order, the government sought to delay the time to comply with that order and supplement its bill of particulars, resulting in the 18-day gap between the order and the October 4 letter.  ECF 205.  In the meantime, during that 18-day period, on October 1, 2019, Concord filed a motion to strike surplusage, requesting that allegations relating to lawful conduct with respect to racial issues in the United States be stricken

as prejudicial.  ECF 208 at 9–10.  Then, just three days later, the government proffered its brand-new FARA theory that includes the argument that U.S. persons, some of whom from the discovery materials appear to be African-American, were duped by the Defendants into failing to register under FARA.  **Ex. 1**.  Yet, that theory had no grounding in the Original Indictment either.  Here, the prosecutors thought they could solve two problems:  first, they made race a part of the case in order to defeat the surplusage argument; and second, they alleged "in the United States" to try to overcome the jurisdictional limitations of FARA.  Nothing in the Original Indictment, however, indicated that any U.S. persons had an obligation to register under FARA.

Specifically, Count One of the Original Indictment references FARA in paragraphs 1, 7, 26, 48 and 51.  But none of these references supports a theory of culpability that the co-conspirators caused unwitting U.S. persons or organizations to engage in conduct that gave rise to a duty for someone to register under FARA.  Paragraph 1 simply mimics FARA's statutory prohibition on "agents" of a "foreign entity ... engaging in" certain activities in the U.S. without first registering under FARA.  Paragraph 7 accuses the "Defendants" of failing to register under FARA.  With respect to the accusations regarding political advertisements and rallies, again the Indictment alleges the "***Defendants and their co-conspirators*** did not ... register as foreign agents with the U.S. Department of Justice."  Orig. Ind. ¶ 48; *see also id.* ¶ 51 (same).  None of the alleged "Overt Acts" accused the Defendants or co-conspirators of causing unwitting U.S. persons or organizations to fail to register under FARA either.[2]  *Id.* ¶¶ 59–85.

In fact, prior to the October 4 letter, not a single filing or document in the case reflected the government's newly contrived FARA theory.  The government's opposition to Concord's

---

[2]    It cannot be that the government believes the individuals disclosed in the October 4 letter are co-conspirators, since the government was required to identify any co-conspirators in the bill of particulars itself and none of these individuals or entities were named there.  ECF 176.

July 2018 motion to dismiss argued that the Original Indictment discussed in detail the charged conduct.  ECF 56 at 6–8.  In particular, the government stated that the Original Indictment specified the Defendants' deceitful practices, such as that "defendants did not register as foreign agents with the United States Department of Justice."  *Id*. at 7 n.4 (citing Orig. Ind. ¶ 48).  Similarly, in opposing Concord's motion for a bill of particulars, the government argued that the Original Indictment clearly described the charges, specifically referenced the above language in its opposition to the motion to dismiss, and stated that the opposition "describes in detail the government's theory of Concord's criminal liability, including an explanation of the relevant statutory provisions of" FARA.  ECF 111 at 3.  And more recently, in opposing Concord's motion for a supplemental bill of particulars, the government claimed the Original Indictment "alleges that the ***conspirators*** were required to ... register under FARA . . . ."  ECF 194 at 13 (emphasis added).  But nowhere in these various submissions did the government argue—or even hint—that the theory of causing unwitting U.S. persons or organizations to fail to register under FARA is alleged in the Original Indictment.  Quite the opposite.

For its part, the Court didn't perceive the theory either.  When directing the government to provide a bill of particulars with respect to the FARA allegations, the Court determined that the Original Indictment alleged that "***foreign nationals***" were required to disclose certain information about themselves to U.S. agencies.  ECF 136 at 1–2 (emphasis added).  The Court further concluded that had Concord (and the other Russian defendants) complied with FARA, "***they***" would have had to disclose their Russian identities and affiliations to U.S. regulators.  *Id*. (emphasis added).  Similarly, the Court stated that the "***defendants and their co-conspirators***" impaired government functions by failing to register under FARA.  *Id*. (emphasis added); *see also id*. at 12 (ordering the government to identify with respect to FARA the disclosure

provisions "**_the defendants or their co-conspirators_**" allegedly violated) (emphasis added).

Three days after the October 4 letter, Concord filed a renewed motion to dismiss the Original Indictment in which it fully exposed the government's new FARA theory and its lack of grounding in the Original Indictment.  ECF 210 at 18–19, 28–29.  Concord also demonstrated the settled custom and practice in the USAO DC—consistent with DOJ policy—of alleging willfulness when charging § 371 defraud conspiracies and how the Original Indictment here broke sharply from that settled practice.  ECF 210 at 9–11.  On October 16, Concord filed a motion for disclosure of the Original Grand Jury Instructions, which further exposed the government's baseless new FARA theory.  ECF 217 at 2–3, 6–10; *see also* ECF 230 at 4.

Yet, in its October 21 and October 30 oppositions to those motions, the government barely acknowledged Concord's challenges to its new theory, and it didn't dispute that the theory represented an unconstitutional constructive amendment of the Original Indictment.  Nor did the government dispute that the Original Indictment was a sharp break from the USAO DC's own custom and practice in charging § 371 defraud conspiracies.  Now we know why.  The government clearly was planning to include the new FARA allegation in its then-forthcoming Superseding Indictment in hopes that that might moot Concord's then-pending motion seeking disclosure of the Original Instructions, all the while using as a pretext that it was seeking that Indictment merely to include allegations relating to the foreign-national expenditure ban.

Notably, the government twice had assured the Court that it would **_not_** even seek a superseding indictment in this case.  Mar. 7, 2019 Hr'g Tr. at 9:25–10:2; Sept. 16, 2019 Hr'g Tr. at 15:12–16.  After going back on its assurance and revealing to the Court its intent to do just that—days *after* the proposed petit jury instructions for trial originally were due (and a little more than a week before the extended due date for those same instructions) (ECF 214, 216), and

two weeks *after* Concord had provided draft instructions to the government—the prosecutors engaged in more misdirection.  On October 25, 2019, they advised the Court of their intention to seek a Superseding Indictment.  ECF 244.

In response to an Order from the Court directing the prosecutors to provide additional information to the Court regarding the Superseding Indictment, on October 29, 2019, they advised the Court that the Superseding Indictment would be sought solely for the purpose of adding the allegation the Court found lacking in the Original Indictment:  that the alleged § 371 conspiracy included an agreement to interfere with the FEC's enforcement of the ban on certain election-related expenditures by foreign nationals.  ECF 245 at 1–2.  The prosecutors stated unequivocally that "[i]n light of the Court's decision" denying the government's motion to reconsider:

> [T]he government intends to ask the Grand Jury to issue a superseding indictment that alleges a conspiracy to interfere with more than one lawful function of the [FEC]; that is, that the defendants not only conspired to interfere with the enforcement of the disclosure requirements set forth in the [FECA], but that they also conspired to interfere with the related FEC function of enforcing the statutory ban on certain expenditures by foreign nationals.

*Id.*  That's it.  No mention of FARA or the new FARA theory.  Not even a hint.

The government stayed on task in ensuing communications with the Court.  In a sealed *ex parte* hearing on October 29, it was abundantly clear that the Court believed—understandably—that the government sought a superseding indictment strictly to add the foreign-national expenditure restriction allegation that the Court said the Original Indictment lacked.  *See generally* Oct. 29 Hr'g Tr.  The government played along, never mentioning FARA or the new FARA theory the government planned to add to the Superseding Indictment despite the Court's expressed understanding of the limited scope of any such new Indictment.  *Id.*

Moreover, when the government finally revealed to Concord the next day (October 30)

its intent to seek a superseding indictment—two days *after* Concord's filing of its reply brief in support of its renewed motion to dismiss (ECF 221)—it said exactly the same thing.  **Ex. 2**, Oct. 30, 2019 Letter from United States Attorney to E. Dubelier.  Again, no mention of FARA or the new FARA theory.  And when Concord, in its November 6 reply in support of its motion for the Original Instructions, pointedly stated that the government had "offered no reason to believe the new instructions [resulting in the Superseding Indictment] will extend beyond the purported new allegation that Concord and the Defendants 'conspired to interfere with the related FEC function of enforcing the statutory ban on certain expenditures by foreign nationals'—indeed, it has represented they won't'" (ECF 230 at 8 (quoting Oct. 29 Suppl. Notice at 2))—the government didn't say a word.

But of all things, when the Superseding Indictment was revealed two days later on November 8, the new FARA theory was stage center with new specifics never urged before.[3] Superseding Indictment ¶ 48, ECF 247 (alleging that "Defendants and their co-conspirators … caused unwitting persons to produce, purchase, and post advertisements on U.S. social media and other online sites expressly advocating for the election of then-candidate Trump or expressly opposing Clinton" and that "Defendants and their co-conspirators did not report these expenditures to the Federal Election Commission, or register as foreign agents with the U.S. Department of Justice, nor did any of the unwitting persons they caused to engage in such activities"); *id.* ¶ 51 (alleging that "Defendants and their co-conspirators … caused unwitting persons to organize and coordinate political rallies in the United States" and that those "unwitting persons" "did not register as foreign agents with the U.S. Department of Justice").

---

[3]    According to the government, the Original Grand Jury did *not* return the Superseding Indictment—a new one did.  **Ex. 3**, Nov. 11, 2019 Email from Assistant U.S. Attorney to E. Dubelier.

And these were not the only new allegations. The Superseding Indictment also refers to unspecified "influence-related conduct" that supposedly must be disclosed to the Attorney General. *Id.* ¶ 1.

## III.    Law and Argument

Concord has a critical and particularized need to see how the prosecution instructed the grand juries on the law in order to determine what remedies Concord might have—dismissal included. The revelation of the prosecution's new FARA-based allegations, offered so late in this proceeding, with a trial date now set, leave open whether the prosecution was hiding its new interpretation all along (which would be evidence of fatal prosecutorial misconduct), or very recently made it up (likewise evidence of prosecutorial misconduct for having argued that it existed in the Original Indictment, which plainly it did not). Neither explanation is acceptable in this criminal proceeding. Whichever is correct, there is a need to get to the bottom of what the government told the grand jury before both the Original and the Superseding Indictments were returned. And since Concord's request is narrowly tailored to include only the legal instructions given, the Special Counsel's investigation is long over, and the Original Grand Jury's work has been completed, there is no reason not to grant the relief Concord seeks.

Here, the constantly changing charges beg the questions of what the Original Grand Jury was or was not told and how the instructions to that Grand Jury related to the Original Indictment's charging allegations, as well as settled law, and whether or not the prosecutors have been telling the truth from the onset of this case. Beyond that, the prosecution's conduct leading up to the revelations in the Superseding Indictment reinforces the need for disclosure in the clearest fashion possible—given the further extension of the allegations and theories, there is a particularized need to see the instructions leading to that Indictment as well.

A.     **Legal Framework**

Grand juries "must lean heavily upon the United States Attorney as [their] investigator and legal advisor." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979).  "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (citation omitted).  "Although the prosecutor need not give legal instructions which approach the comprehensiveness of the trial judge's charge to the jury, an instruction may be 'so misleading' due to mistakes or omissions, that the ensuing indictment 'will not be permitted to stand even though it is supported by legally sufficient evidence.'" *Id.* (citations omitted).

While the prosecutor has a "dual role" when it comes to grand juries—"pressing for an indictment and [ ] being the grand jury adviser"—the "latter duty must take precedence" when the two "conflict." *Ciambrone*, 601 F.2d at 628 (Friendly, J., dissenting) (quoting *United States v. Remington*, 208 F.2d 567, 573-74 (2d Cir. 1953) (L. Hand, J., dissenting)).  The modern-day "gain in [the] prosecutors' influence over grand juries is all the more reason to insist that these limitations [on instructing the grand jury] be observed strictly." *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983) (remanding for dismissal of indictment due to prosecutorial misconduct before the grand jury).  And, relevant here, "courts tend to look less leniently upon erroneous legal instructions where the instructions were made with the intent of precluding a line of relevant inquiry or when other misconduct by the prosecutor suggests a pattern of overreaching." *Twersky*, 1994 WL 319367, at *4 (citing *Hogan*, 712 F.2d at 760–62) (other citations omitted)).

Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure operates against this legal backdrop.  It authorizes the disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  A defendant must show a particularized need for disclosure of a grand jury matter.  *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682–83 (1958).  With regard to legal instructions provided to the grand jury, the defendant must identify facts that raise doubts about the accuracy of the instructions.  *See United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) ("[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction.") (quoting *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (citation omitted)).  Where instructions are "'needed to avoid a *possible injustice* in'" the case, however, that meets the movant's burden under the law of this Circuit.  *In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 19-48 (BAH), 2019 WL 5485221, at *33 (D.D.C. Oct. 25, 2019) (Howell, C.J.) (quoting *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (Scalia, J., joined by Mikva & Bork, JJ.)) (emphasis added) (other citation omitted).

Ultimately, the governing standard is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others."  *United States v. John Doe, Inc. I*, 481 U.S. 102, 116–17 (1987) (citation omitted); *Judicial Watch, Inc. v. Tillerson*, 270 F. Supp. 3d 1, 5 (D.D.C. 2017) (same). Thus, for example, "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234

(1940) (citation omitted); *see also Twersky*, 1994 WL 319367, at *5 ("Generally, however, once an investigation is over, most of the policies which warrant maintaining the secrecy of the grand jury proceedings, including, preventing the escape of those not yet indicted, are no longer present.") (citing *United States v. Moten*, 582 F.2d 654, 663 (2d Cir. 1978)).  And requests that "steer[] clear of Rule 6(e)'s bread and butter:  'the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like'"—implicate minimal secrecy concerns. *Judicial Watch*, 270 F. Supp. 3d at 5 (quoting *In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 500 (D.C. Cir. 1998)).

> **B.**  **Disclosure Of The Original Grand Jury Instructions Is Needed Because Those Instructions Likely Will Provide Additional Support For Concord's Motion To Dismiss The Superseding Indictment.**

Controlling law, undergirded by fundamental constitutional principles, calls for disclosure of the Original Grand Jury Instructions.

> **1.**  **Concord Has A Particularized Need To See The Original Grand Jury Instructions.**

Up until the very eve of the return of the Superseding Indictment on November 8, 2019, the government argued that the Original Indictment, contrary to this Court's decision, charged a theory of liability relating to restrictions on foreign national expenditures, and also sought to inject an entirely new theory of FARA culpability into this case at the eleventh hour—one without any basis in the federal statute on which it rests or the terms of the Original Indictment on which it constitutionally must be based.  In this light, Concord needs to see the Original Instructions that resulted in the Original Indictment because they will help establish whether the prosecutors have been truthful about what they said the Original Indictment charged.

"[T]he Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *Hitt*, 249 F.3d at 1016 (citations omitted).  And that means "that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form." *Russell*, 369 U.S. at 770 (citations omitted).   The Original Indictment is not capable of being construed to encompass the government's new theory of FARA criminality, or its theory based on FECA's regulation of certain foreign expenditures.   And if it cannot be construed that way, then the prosecution's attempt to inject the former theory by letter and brief so late in the case—19 months after the Original Indictment was returned—or to argue the foreign expenditure restriction into the case, must be seen for what it was:  an unconstitutional effort to constructively amend that Indictment. *See United States v. Mangieri*, 694 F.2d 1270, 1277 (D.C. Cir. 1982) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them.") (citation omitted).

Additionally, without any textual basis in the words of the Original Indictment, the government's FARA theory also threatened Concord's Fifth Amendment double-jeopardy right by preventing Concord, this Court, and future courts from knowing exactly what Concord would (or would not) be tried for in this case.  A jury conceivably could have convicted Concord based on the government's new FARA interpretation, but since that theory makes no appearance in the Original Indictment, the government would have been left free to charge Concord later with FARA violations based on the same theory.

Viewed against this backdrop, the Original Instructions can provide definitive proof on whether the government instructed the Original Grand Jury on its new interpretation of FARA and the argued theory under FECA, or, as appears likely, tried to constructively amend the

Original Indictment in order to salvage this prosecution. On the one hand, if the government did instruct the Original Grand Jury on its new FARA interpretation, given the plain terms of the Original Indictment, that will reinforce the Original Grand Jury's intentional decision not to charge that theory. Or, if the prosecution presented its new FARA interpretation to that Grand Jury, but only much later—after 19 months of vigorous battles over exactly what the Original Indictment does and does not charge—had disclosed it to Concord, that will further expose the unconstitutionally arbitrary conduct that has marked this prosecution from the start. And as to the foreign expenditure restrictions, the Original Grand Jury instructions will reveal whether that Grand Jury really indicted on this theory, or—as is more likely—the government made it up after the fact, which would be evidence of prosecutorial misconduct.

On the other hand, if the prosecution did ***not*** so instruct the Original Grand Jury on its newly minted FARA interpretation or the allegedly applicability of the foreign expenditure restrictions to the facts of this case, the news for the government is just as grim. It will conclusively show the Original Indictment cannot be construed to include either theory—and yet the government forged ahead with it unbowed, never even trying to explain to Concord or the Court, despite multiple opportunities to do so, how the government could justify its belated effort to stretch and contort the Original Indictment to save its case. The government's eagerness to circumvent—actually, ignore—these fundamental constitutional rights reinforces yet a further constitutional invasion: the government's arbitrary treatment of Concord throughout this proceeding, evidenced no better than by the government's recent effort to smuggle the new FARA theory into this case. The Original Instructions bear directly on this conduct—the same conduct that supports Concord's pending motion to dismiss. ECF 256. In such circumstances, there is "grave doubt that the decision to indict was free from the substantial influence" of

precisely that sort of conduct at the grand jury instruction and charging stage.  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263–64 (1988).

When Concord previously sought the Original Instructions, the government responded dismissively and half-heartedly to the grounds for disclosure—and that's being charitable.  There is little doubt the government took such a muted approach because it was manipulating the timing of various pleadings to either moot Concord's request or at least give the government a fresh opportunity to make arguments it intentionally held back the first time around.  If the former is true, the instructions to the Original Grand Jury will prove that what the prosecutors were arguing all along is inconsistent with those instructions.  And if the latter, the same result should follow for the same reason.

In any case, as Concord's reply in support of its prior disclosure motion makes clear, what little the government did say in opposing that motion has nothing to commend it.  *See generally* ECF 230.  In fact, some of it is flatly misleading.  The government actually went so far as to say—5 days *after* it told the Court it was seeking a Superseding Indictment—that any argument Concord had that the government had constructively amended the ***Original Indictment*** could be made at trial.  **Ex. 2**.  To be sure, the government made herculean efforts to constructively amend the Original Indictment, which reinforces Concord's due-process argument for dismissal on grounds of this arbitrary prosecution.  But the government knows full well that if the Superseding Indictment otherwise stands and this case proceeds to trial over Concord's due-process objection, any argument at trial that the government previously tried to constructively amend the Original Indictment in violation of the Fifth Amendment would be dead on arrival.  This is a legal issue for the Court that is ripe now, not a fact issue for the jury at some later time.

The Superseding Indictment does nothing to counter these justifications compelling disclosure.  Rather, the timing and content of the Superseding Indictment only underscores how arbitrary—even nefarious—this prosecution had become.  In the final pre-trial stages of this proceeding, after 18 months of intensive litigation, the government suddenly asserted a new theory without any basis in the Original Indictment or the text of FARA itself.  Then, when it was called to account for the new theory by Concord's renewed motion to dismiss and first motion for the Original Instructions, the government barely lifted a finger, seemingly secure in the knowledge that the fundamental defects in its theory could be cured later by inserting the new allegations in the Superseding Indictment only it, the government, knew it was going to seek.

Yet rather than clue the Court and Concord in, the government stayed mum, claiming that it sought the new Indictment to add allegations relating to the statutory ban on certain foreign-national expenditures.  If this isn't still another example of the arbitrariness of this prosecution, it's difficult to imagine what is.  And surely, the need to see the Original Instructions to determine the scope and degree of this arbitrariness is "'needed to avoid a possible injustice in'" this case, which is all the law of this Circuit requires.  *In re Application of the Committee on the Judiciary*, 2019 WL 5485221, at *33.

## 2. Any Countervailing Reasons To Maintain The Secrecy Of The Original Grand Jury Instructions Are Exceedingly Weak.

In its October 30 opposition to Concord's prior disclosure motion, the government said, without any elaboration, that it "disagree[d]" with Concord's showing that secrecy interests "are diminished in this case."  ECF 224 at 10 n.4 (citing ECF 217 at 19-21).  In fairness, since Concord's arguments related to those secrecy interests remain the same, the government shouldn't be allowed to expand beyond the response it made previously.  In any case, there's nothing that the government could say now to refute Concord's showing that there are no

countervailing secrecy concerns that militate in favor of keeping the Original Instructions under wraps.

The Supreme Court has made clear that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [material] will have a lesser burden in showing justification." *John Doe, Inc. I*, 481 U.S. at 115 (quoting *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)).  Thus, where, as here, "the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *Socony-Vacuum Oil Co.*, 310 U.S. at 234 (citation omitted); *see also United States v. Way*, No. 1:14-CR-00101-DAD-BAM, 2015 WL 8780540, at *5 (E.D. Cal. Dec. 15, 2015) (going further and concluding that "where the grand jury has concluded its investigation [and] there are no security concerns to jurors or witnesses . . . the strong public policy [for secrecy] must yield to a disclosure").

The record in this case triggers these settled principles and precedents.  Specifically, not only is the Original Grand Jury's work done, but its findings have been disclosed in various indictments brought by the Special Counsel, as well as in a lengthy report made public by the Attorney General.  As Chief Judge Howell recently noted, the Original Grand Jury's work, like the Special Counsel's investigation, is "concluded." *In re Application of the Committee on the Judiciary*, 2019 WL 5485221, at *37 (concluding that "[a]ny 'considerations justifying' continued grand jury 'secrecy bec[a]me less relevant' once the Special Counsel's investigation, and attendant grand jury work, concluded") (quoting *Douglas Oil*, 441 U.S. at 223).  That is obviously material because "[o]nce a grand jury has ended, interests in preventing flight by those who might be indicted and in protecting sitting jurors and witnesses disappear, or lessen considerably." *Id.* (citing *Douglas Oil*, 441 U.S. at 222); *see also Butterworth v. Smith*, 494 U.S. 624, 632 (1990) ("When an investigation ends, there is no longer a need to keep information

from the targeted individual in order to prevent his escape—that individual presumably will have been exonerated, on the one hand, or arrested or otherwise informed of the charges against him, on the other.").  Nor, in this circumstance, is there any "longer a need to prevent the importuning of grand jurors since their deliberations will be over."  *Butterworth*, 494 U.S. at 633; *see also* ECF 217 at 20–21.

Finally, secrecy considerations also are substantially lessened given the nature of the materials sought.  Concord seeks only the legal instructions the prosecution provided, not any testimony given, the identities of the witnesses that gave that testimony, or information on the particular evidence the grand jury reviewed in rendering its charging decision.  Unlike the identities or testimony of grand jury witnesses, the legal instructions given to the grand jury "do not implicate any of the concerns typically cited in support of grand jury secrecy."  *United States v. Facteau*, No. 1:15-CR-10076-ADB, 2016 WL 4445741, at *4 (D. Mass. Aug. 22, 2016); *see also United States v. Gurry*, No. 16-CR-10343-ADB, 2019 WL 247205, at *2 (D. Mass. Jan. 17, 2019) (observing that "the considerations justifying secrecy are less relevant given" defendant was seeking grand jury's instructions); *Greenberg v. United States Dep't of Treasury*, 10 F. Supp. 2d 3, 27 (D.D.C. 1998) ("[T]he relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation.") (internal quotations and citations omitted).  Simply put, grand jury "instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect."  *United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *see also United States v. Diaz*, 236 F.R.D. 470, 477–78 (N.D. Cal. 2006) (noting that "instructions … would not reveal the substance or essence of the grand jury proceedings").  And at the same

time, "allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in instructing a grand jury, and give some teeth to the grand jury's shield' function" against arbitrary or oppressive prosecutorial conduct. *Facteau*, 2016 WL 4445741, at \*5 (quoting *United States v. Mandujano*, 425 U.S. 564, 573 (1976)).

Concord made these same arguments and relied on these same authorities in its prior disclosure motion, and the government did its best to ignore them. It didn't deny that the Original Grand Jury's work had ended or that, consequently, any secrecy concerns were substantially diminished—if not eliminated completely. Nor did the government claim that the specific materials sought—the legal instructions given to the Original Grand Jury—required special protection from disclosure. Nothing has changed and the government cannot make any contrary showing now. Concord should be permitted to see the Original Instructions.

**C.     Disclosure Of The New Grand Jury Instructions Is Needed Because They May Also Support Concord's Motion To Dismiss The Superseding Indictment.**

Concord also seeks disclosure of the New Grand Jury Instructions because they very likely will reveal still more arbitrary government conduct that (i) contravenes due process guarantees and (ii) reveals misstatements on the law applicable to the single § 371 defraud-conspiracy count charged against Concord.

*First*, given the government's well-chronicled arbitrariness throughout this prosecution, and its constantly shifting of theories and allegations, there is good reason to believe the legal instructions it gave to the New Grand Jury were faulty, incomplete, inconsistent with DOJ directives—or all of the above. DOJ's own Federal Grand Jury Practice Manual provides that a second "grand jury should be advised that a superseding indictment is being presented, the date of the original testimony and indictment, the nature of the intended change in the indictment, and

the manner in which the case will be re-presented."  U.S. Dep't of Justice, Criminal Division, *Federal Grand Jury Practice Manual*, Vol. I, I.G.3 at p. 18 (1983) (available at https://www.ncjrs.gov/pdffiles1/Digitization/134763NCJRS.pdf).   Here, however, the government's track record engenders good reason to doubt that the prosecution actually adhered to these strictures in advising the New Grand Jury.  And if it didn't abide by them—which the New Instructions would show—that would be still more proof of the arbitrary way in which the government has conducted this criminal proceeding, routinely departing from settled prosecutorial practice and directive when that suits the interest in obtaining a conviction.

*Second*, given the absence from the Superseding Indictment of any allegation that Concord engaged in the alleged § 371 defraud conspiracy with requisite heightened *mens rea*, there is good reason to believe the government misinstructed the New Grand Jury on that critical element.  As Concord's motion to dismiss the Superseding Indictment demonstrates, under *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), the prosecution at a minimum will have to prove beyond a reasonable doubt "that Concord knew that because of its status as a foreign corporation, its alleged funding of [the Internet Research Agency] created a duty for one or more of the alleged co-conspirators to register with the DOJ and to file reports with the FEC, and that the failure to do so was unlawful."  ECF 256 at 35.  The Superseding Indictment plainly does ***not*** allege this type and degree of scienter, and the prosecution very likely did not instruct the New Grand Jury that it should include such an allegation.  And critically, with discovery complete in this case, the government has not produced one iota of evidence that Concord or any of the Defendants had even a general knowledge of the existence and responsibilities of the government offices in question.  As a result, even putting aside the failure to use the word "willful," there should not

even have been an indictment on the legal duties as described in the Court's previous denial of Concord's motion to dismiss the Original Indictment.

*Third*, if the instructions did not lay out the heightened *mens rea* that *Rehaif* and *Burden* now require, they are incorrect, and the New Grand Jury very well may have declined to charge Concord had it been instructed correctly, consistent with those two precedents. *See*, *e.g.*, *United States v. Way*, No. 1:14-CR-00101-DAD-BAM, 2015 WL 8780540, at *6–7 (E.D. Cal. Dec. 15, 2015) (ordering disclosure of "the grand jury transcripts and instructions to the grand jury regarding the element of knowledge on the analogue crimes charged" based on the Supreme Court's intervening decision in *McFadden v. United States*, 135 S. Ct. 2298 (2015)). In *Way*, for example, the court found a particularized need for disclosure where "[d]efendants have articulated that the proof presented to the grand jury may have been legally insufficient to establish probable cause in light of the Supreme Court's holding in *McFadden*." *Id.* at *4. So too here after *Rehaif* and *Burden*.

*Fourth*, as discussed more fully in Concord's contemporaneously filed motion to dismiss, the New Instructions likely misstated the law in instructing the New Grand Jury on the government's novel "unwitting Americans" FARA theory of § 371 defraud-conspiracy liability. This Court "presumes" that grand juries followed the instructions given them by the prosecution, *United States v. Slough*, 36 F. Supp. 3d 37, 57 (D.D.C. 2014) (citation omitted), and the emergence of the new FARA theory—not contained in the Original Indictment—almost certainly is the result of instructions from the government advocating the inclusion of that theory. But the new theory is fundamentally flawed and, even if proven, cannot support the government's § 371 defraud conspiracy charge against Concord. ECF 256 at 43–45. That furnishes an independent basis for disclosure of the New Instructions. Neither DOJ's FARA

materials posted online, nor any reported case, supports any legal basis for this new theory cooked up by the prosecutors to rebut Concord's argument that none of the alleged activity occurred within the United States.

As for any countervailing non-disclosure considerations, while there is a generalized need for secrecy as long as the New Grand Jury sits, the limited nature of Concord's request leaves these generalized secrecy concerns intact.  As noted, Concord seeks only the legal instructions themselves—not "Rule 6(e)'s bread and butter:  'the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'"  *Judicial Watch*, 270 F. Supp. 3d at 5; *see also Greenberg*, 10 F. Supp. 2d at 27 ("[T]he relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation.") (internal quotations and citations omitted). The limited disclosure contemplated here can, and likely will, expose reasons to halt this prosecution.  That tips the balance to disclosure consistent with controlling law.

On balance, therefore, this presents a textbook case for disclosing the New Instructions given to the New Grand Jury.  "Where there has been a Supreme Court decision which changes an element of a crime charged against defendants since the indictment[,] . . . justice warrants balancing in favor of disclosure over institutional secrecy concerns."  *Way*, 2015 WL 8780540, at *6–7; *see also United States v. Hoey*, No. S3 11–cr–337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y., July 2, 2014) (ordering inspection where intervening decision in *Burrage v. United States*, 571 U.S. 204 (2014), altered the causation standard in determining sentencing enhancement for drug offense); *United States v. Ho*, Criminal No. 08–00337 JMS, 2009 WL 2591345, at *4 (D. Haw. Aug. 20, 2009) (ordering inspection following decision in *Arthur*

*Andersen LLP v. United States*, 544 U.S. 696 (2005)); *United States v. Morales*, No. CR. S-05-0443 WBS, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) ("Release of grand jury instructions may be proper when the Supreme Court has altered precedent upon which instructions were based.") (citation omitted).

## IV.    Conclusion

Exercising its "duty in a case of this kind . . . to weigh carefully the competing interests in light of the relevant circumstances and the [governing legal standards[,]" *Douglas Oil*, 441 U.S. at 223, the Court should grant Concord's motion and order the disclosure of both the Original and the New Grand Jury Instructions.

Dated: November 26, 2019

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By:  /s/ Eric A. Dubelier
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

[*]*Admitted Pro Hac Vice*