**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

The United States of America, by and through undersigned counsel, respectfully opposes the motion of defendant Concord Management and Consulting LLC ("Concord" or "defendant") to compel disclosure of materials, documents, and information from the U.S. Department of Justice (DOJ), Federal Election Commission (FEC), and Department of State. *See* Doc. 251. The motion should be denied.

Concord seeks discovery in two categories. In the first category, Concord seeks "materials" from DOJ or the FEC related to a 2017 complaint filed with the FEC by an organization, Common Cause, alleging civil violations of the Federal Election Campaign Act (FECA) and FEC regulations by "unknown Russian foreign nationals." *See* Doc. 251-4 (discovery request); 251-2 (Common Cause complaint). In the second category, Concord seeks "documents and information" from DOJ (in particular, the Foreign Agents Registration Act (FARA) Unit), the FEC, and the State Department, regarding certain legal conclusions—for example, whether the defendants were required to file reports with the FEC or register under FARA. *See* Doc. 251-5 (discovery request).

As explained below, internal DOJ, FEC, or State Department materials, documents, or information reflecting opinions, legal conclusions, or other action within those agencies—with respect to the Common Cause complaint or the possible legal obligations of the defendants or others identified by Concord—would not be relevant to the charge against Concord.  Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371; thus, although evidence of the conspirators' state of mind is certainly relevant, evidence of government employees' state of mind is not.  For this reason alone, the Court should deny Concord's motion to compel discovery of such materials or information, even assuming they exist.[1]

Concord's motion should also be denied to the extent it seeks records that, as a legal matter, would not be considered within the prosecution team's "possession, custody, or control" for purposes of Federal Rule of Criminal Procedure ("Rule") 16(a)(1)(E) or *Brady v. Maryland*, 373 U.S. 83 (1963).  With respect to records related to the Common Cause complaint, any FEC records would not be within the prosecution team's possession, custody, or control, under Rule 16 or *Brady*, because the FEC is not "closely aligned with the prosecution" in this case.  *United States v. Libby*, 429 F. Supp. 2d 1, 6, 11 (D.D.C. 2006).[2]  Similarly, internal FEC or State Department records regarding the legal conclusions identified by Concord would not be in the prosecution team's possession, custody, or control.  The government did seek to locate any records from DOJ's FARA Unit that would fall within Concord's request for documents showing that "any indicted

---

[1]     Hereinafter, the government will use "records," "documents," or "materials" to refer to the discovery sought by Concord.  Those terms should be read broadly to include any materials, documents, or information that might be subject to discovery.

[2]     The trial team is not aware of records regarding the Common Cause complaint within DOJ. To the extent any such records exist within DOJ, such records would not be material in this case and therefore would not be discoverable, even assuming the records were considered within the government's possession, custody, or control.  In other words, the government has no duty to search for such records.

Defendant or unindicted co-conspirator was not, or would not have been required to file any report with the FEC or to register under FARA." Doc. 251-5. None were located.

Because the government has satisfied its discovery obligations with respect to the defendant's requests, the Court should deny defendant's motion.

## BACKGROUND

### I.     The Indictment and Superseding Indictment

On February 16, 2018, a grand jury returned an eight-count indictment against thirteen individuals, including Yevgeniy Prigozhin, and three corporate defendants, including Concord and Concord Catering. Doc. 1. On November 8, 2019, a grand jury returned a superseding indictment, which differs in some respects from the initial indictment but nonetheless charges the same defendants with the same offenses. Doc. 247. The superseding indictment ("Indictment") alleges in Count One that the defendants, in violation of 18 U.S.C. § 371, "knowingly and intentionally conspired with each other . . . to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016." Doc. 247 ¶ 2, 8-85.

According to the Indictment, the conspiracy included a Russian organization, defendant Internet Research Agency LLC (the "IRA"), which conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election and "the political system in general" and to favor one candidate for President. *Id.* ¶¶ 3, 6, 10. Defendant Prigozhin is alleged to have approved, supported, and funded the IRA's operations through other Russian entities that he directly controlled, particularly defendants Concord and Concord Catering. *Id.* ¶¶ 3, 11-12.

As this Court explained in denying one of Concord's earlier motions to dismiss, there are four elements of the offense charged in Count One—that is, a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. *See* Doc. 74 at 6-7 (Mem. Op. Nov. 15, 2018). The government must prove that "'(1) [the defendants] entered into an agreement, (2) to obstruct a lawful function of the government or an agency of the government, (3) by deceitful or dishonest means, and (4) at least one overt act was taken in furtherance of that conspiracy.'" *Id.* (quoting *United States v. Kanchanalak*, 41 F. Supp. 2d 71, 9 (D.D.C. 1999), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999)).

Describing the lawful government functions relevant to Count One, the Indictment explains that the United States, "through its departments and agencies, regulates the activities of foreign individuals and entities in and affecting the United States in order to prevent, disclose, and counteract improper foreign influence on U.S. elections and on the U.S. political system." Doc. 247 ¶ 1; *see id.* ¶ 7. The Indictment also identifies certain U.S. government agencies—the Federal Election Commission, the Department of Justice, and the Department of State—that are charged with enforcing laws and regulations concerning such activities. *Id.*

## II.     Defendant's Discovery Requests and the Government's Responses

### A.     *Requests Regarding 2017 Common Cause FEC Complaint*

By letter on August 26, 2019, the defendant requested:

> any and all materials from the Department of Justice or Federal Election Commission ("FEC") related to the complaint filed with the FEC by Common Cause on or around September 7, 2017 captioned Common Cause and Paul S. Ryan vs. Unknown Respondent(s). This request specifically includes any documents related to any FEC investigation regarding the allegations in the Common Cause complaint pursuant to 52 U.S.C. § 30109(a)(2).

Doc. 251-4 (providing a link to the Common Cause website, which displayed a copy of the FEC complaint). The Common Cause complaint alleged that there was "reason to believe" that "one or

more unknown Russian foreign nationals" committed civil violations of the Federal Election Campaign Act and FEC regulations. Doc. 251-2 at 6-7. As Concord notes (at 3), Common Cause sent a copy of the FEC complaint to the Deputy Attorney General and the Special Counsel on September 7, 2017. Doc. 251-3. In that communication, Common Cause, referring to the complaint, "request[ed] that this matter be investigated by Special Counsel Mueller as part of his investigation into Russian interference into last year's election." *Id.* at 2.[3]

By letter on November 14, 2019, the government responded to the defendant's August 26, 2019, request, stating that "[t]he trial team is not aware of any such materials in the possession of the Department of Justice." Doc. 251-1. As explained below, to the extent any such records exist within DOJ, such records would not be material in this case and therefore would not be discoverable. With respect to the defendant's specific request for records "from the [FEC]," the government's response stated—and the government maintains—that "[a]ny materials of the [FEC] related to [the Common Cause] complaint would not be within the possession of the trial team for discovery purposes." Doc. 251-1. To address the defendant's confusion (at 5 n.2), the government has not requested material from the FEC regarding the Common Cause complaint, because, in the government's view, any such FEC material (even assuming it exists) would not fall within the government's "possession, custody, or control" for discovery purposes under Rule 16(a)(1)(E), or, for that matter, under *Brady*. More importantly, as noted below, such records would not be material anyway, so they are not subject to the government's Rule 16(a)(1)(E) or *Brady* obligations.

---

[3]     To be clear, the Common Cause complaint is entirely distinct from the prosecution in this case, which resulted from the investigation by the Special Counsel's Office that began well before the complaint was filed. The complaint was not the basis for the government's investigation, and the complaint did not inform the investigation.

B.    **Brady** *Requests Regarding Department of Justice, FEC, and State Department*

By letter dated September 17, 2019, the defendant, indicating that its request was pursuant to *Brady v. Maryland*, requested:

> (1) Any and all documents or information in the possession of the government, including but not limited to the FARA Unit of the U.S. Department of Justice and the Federal Election Commission that any indicted Defendant or unindicted co-conspirator was not, or would not have been required to file any report with the FEC or to register under FARA.
>
> (2) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that any indicted Defendant or unindicted coconspirator was not, or would not have been required to provide additional information to what was actually provided for the travel visas referenced in ¶ 30 of the Indictment.
>
> (3) Any and all documents or information in the possession of the government, including but not limited to the United States Department of State that the activity identified in ¶ 30 of the Indictment was not prohibited pursuant to the visas issued by the U.S. Department of State.

Doc. 251-5.  In its November 14, 2019, letter, the government responded to the defendant's *Brady* request, stating:

> The trial team does not possess any documents that fall into these [three] categories. To the extent your letter requests documents in the possession of the FEC, the State Department, or "the government" generally, materials in the possession of those agencies would not be within the possession of the trial team for discovery purposes.

Doc. 251-1.  Prior to sending its letter, the government contacted DOJ's FARA Unit to request any responsive records regarding indicted defendants or unindicted co-conspirators; none were located. Consistent with its view that the FEC and State Department are not part of the "prosecution team," the government did not make such inquiries of those agencies.[4]

---

[4]    Although not a subject of the instant motion to compel, the defendant refers (at 5, 8) to a separate discovery request, sent by email on October 23, 2019, and stating:

## LEGAL PRINCIPLES

Rule 16(a)(1)(E) requires that, upon the defendant's request, the government must disclose documents, among other things, that are "within the government's possession, custody, or control" and that are "material to preparing the defense." Rule 16(a)(1)(E); *see United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006).

The "possession, custody, or control" inquiry is fact-intensive and must be resolved on a case-by-case basis. *Libby*, 429 F. Supp. 2d at 9. As a general matter, however, documents maintained by other components of the government are only discoverable if those components are "closely aligned with the prosecution." *Id.* at 6 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). Courts have declined to define the prosecution team so broadly so as to adopt "a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see also Libby*, 429 F. Supp. 2d at 6 (declining to "give the defense access to information not readily available to the prosecution") (internal quotation marks and citation omitted). And "the government is not under an obligation to obtain and disclose all information in the possession of other arms of the

---

> [W]e have not been able to locate [in discovery] any documents submitted with the visa applications alleged in the indictment. It is our understanding that additional documentation was submitted with these applications.
>
> If you have already produced these documents, please let me know where we can find them in the discovery materials. If not, please produce them immediately. If no such documents exist, please let us know.

Doc. 251-6 at 5. By email the next day, the government indicated that it did not have any "additional documentation submitted with the visa applications referenced in the Indictment," but that the government "will put in a request with the State Department." *Id.* at 4. The government is continuing to pursue this request with the State Department, because the request relates to potential fact discovery.

government that are not involved in the particular prosecution." *United States v. Pelullo*, 299 F.3d 197, 217 (3d Cir. 2005) (in *Brady* context); *see also Libby*, 429 F. Supp. 2d at 8-11.

In addition, "[t]he mere fact that the Government may have requested and received documents from [another agency] in the course of its investigation does not convert the investigation into a joint one." *United States v. Ferguson*, 478 F. Supp. 2d 220, 239-40 (D. Conn. 2007) (citation omitted)); *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006) (holding that federal entities do not become part of the prosecution team—thereby triggering the attendant duty to search and discovery—merely because they "made documents available to the prosecution").

In assessing whether requested records are "material to preparing the defense," "defense" means "the defendant's response to the Government's case in chief." *Libby*, 429 F. Supp. 2d at 7 (quoting *United States v. Armstrong*, 517 U.S. 456, 462 (1996)); *see also United States v. Apodaca*, 287 F. Supp. 3d 21, 38-39 (D.D.C. 2017). "Accordingly, a court must first start with the indictment when determining what is material, as the indictment delineates the evidence to which the defendant's case must respond." *Libby*, 429 F. Supp. 2d at 7 (citation omitted). Furthermore, it is well established in this circuit that "evidence is material to preparing the defense as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)); *see also United States v. Slough*, 22 F. Supp. 3d 1, 4 (D.D.C. 2014) (same). As the *Libby* court further explained, "although the materiality burden is not onerous, the evidence must not simply bear some abstract relationship to the issues in the case . . . and the government must disclose Rule 16 evidence *only* if such evidence

enables the defendant significantly to alter the quantum of proof in his favor." *Libby*, 429 F. Supp. 2d at 7 (emphasis added) (quotation marks and citations omitted).

Apart from Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny require the disclosure of evidence "favorable to an accused" that is "material" to a defense or punishment. *Id.* at 87. And the government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). The scope of the government's *Brady* obligation is "identical" to its obligation under Rule 16(a)(1)(E), insofar as the government is responsible for producing *Brady* material that is in its "possession, custody, or control," that is, records of agencies "closely aligned with the prosecution." *See Libby*, 429 F. Supp. 2d at 10 n.15 (noting that "the possession, custody, or control analysis under *Brady* is identical to the analysis under Rule 16").[5]

## ARGUMENT

### I.     The Court Should Deny Concord's Motion to Compel because Concord Seeks Records that Are Not Material, even Assuming they Exist.

Concord's motion appears to misapprehend the crime charged. The Indictment does not allege that the defendants "committed fraud" (Doc. 251 at 2), or that the relevant agencies "were in fact impaired" (*id.* at 3). The defendants are charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. Doc. 247 ¶ 2. In short, the Indictment alleges that the

---

[5]     In laying out the legal standard for its motion, Concord (at 7) quotes *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005), which states that *Brady* material is "any information in the possession of the government—broadly defined to include all Executive Branch agencies— that relates to guilt or punishments . . . ." This overstates the government's *Brady* and Rule 16 obligations by suggesting those obligations extend to "all Executive Branch agencies," and the *Libby* decision recognized *Safavian* as an outlier in this respect. *Libby*, 429 F. Supp. 2d at 6 n.10. As Concord notes (at 7-8), *Safavian* elsewhere hews to circuit precedent when it states that the government's obligations extend only to other agencies that are "closely aligned with the prosecution." *Id.* at 17 (quoting *Brooks*, 966 F.2d at 1503).

conspirators engaged in what they called "information warfare" to spread distrust about the U.S. political system and to influence the outcome of the 2016 presidential election. *Id.* ¶¶ 3, 6, 10. To carry out their interference activities without detection of their Russian affiliation, the Indictment charges that the defendants "conspired to obstruct through fraud and deceit the lawful functions of the United States government in monitoring, regulating, and enforcing laws concerning foreign influence on and involvement in U.S. elections and the U.S. political system," to wit, certain functions of DOJ, the FEC, and the State Department. *Id.* ¶ 7. According to the Indictment, the defendants' intent to deceive is evidenced by affirmative acts, such as lying on visa forms, using proxy servers to mask IP addresses, and using false identities, as well as by the defendants' and others' failure to provide information to government agencies that the law required them to provide. *See, e.g., id.* ¶¶ 3-7.

The Court will instruct the jury as to any legal obligations—under FECA, FARA, or otherwise—that are relevant to the jury's consideration of the evidence. It will be the jury's role to determine whether there was, in fact, a failure to satisfy a legal obligation and, if so, whether and to what degree that is probative of the conspirators' intent. The views of persons within the federal government about whether, based on certain facts, the defendants or others would have had to file disclosures under FECA, register under FARA, or provide additional information to the State Department are simply not material to the jury's evaluation of the facts in this case. Accordingly, Concord has failed to establish a "strong indication" that the requested material "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Libby*, 429 F. Supp. 2d at 7 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)). Indeed, evidence about the views within DOJ, the FEC, or the State Department about certain statutes or regulations—in the

context of the Common Cause complaint or otherwise—could have no bearing on the nature of the conspirators' agreement—the crime that is charged here—*unless* the conspirators possessed that information when they formed the conspiracy. *See, e.g., United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006) (information about "what others were told" is "simply irrelevant to the defendant's state of mind"); *United States v. Secord*, 726 F. Supp. 845, 848-849 (D.D.C. 1989) (a defendant's "state of mind" can be affected only by information read or heard by him).[6]

Any after-the-fact views about whether the defendants' election interference activities violated certain statutes or regulations is irrelevant for additional reasons. Separate from the fact that the crime charged is conspiracy and not "interference," a party can obstruct lawful government functions, including the enforcement and administration of statutes and regulations, even if, at the end of the day, the responsible agencies conclude that the statutes or regulations they enforce do not apply to the party's conduct or if, for whatever reason, the agencies decline to take any enforcement action. It is for DOJ, the FEC, and the State Department to obtain and review relevant information, to evaluate whether and how the potentially-applicable laws apply, and to exercise their authority and discretion in deciding how to proceed (or not proceed). But regardless of what that agency does or does not do, it would still be the case that a party who concealed information from an agency that the party was obligated to disclose would have obstructed or interfered with that agency's lawful function. In determining whether such obstruction or interference occurred, the materials sought by Concord—that is, internal records of views and opinions within an agency—would be irrelevant. And Concord is not entitled to fish through records at DOJ, the

---

[6]    To the extent that Concord wishes to introduce such evidence to demonstrate the conspirators' intentions and understandings, it should be precluded from doing so insofar as it would allow Concord to "portray [the conspirators'] own state of mind without allowing the government any effective means of challenging it through cross-examination. *See United States v. Libby*, 475 F.Supp.2d 75, 89 (D.D.C. 2007).

FEC, or the State Department seeking support for an irrelevant argument regarding whether or to what degree an agency "believe[d]" there was obstruction or interference and whether that obstruction or interference caused the agency any harm.  *See* Doc. 251 at 10 ("believe[d]").

## II.    Insofar as Concord Seeks Records Not in the Possession, Custody, or Control of the Government, the Court Should Deny Concord's Motion to Compel.

As to records that Concord seeks from the FEC or the State Department, any such records would not be in the government's possession, custody, or control for purposes of Rule 16(a)(1)(E) or *Brady*, because neither agency was part of the "prosecution team" that investigated this case. Indeed, the FEC and State Department did not participate in the investigation that resulted in the charges in this case, and neither agency can be considered "closely aligned with the prosecution" as is necessary to trigger the government's discovery obligations.  *Libby*, 429 F. Supp. 2d at 6, 11; *see, e.g.*, *Pelullo*, 399 F.3d at 216-19 (ruling that a civil component of U.S. Department of Labor (DOL) was not part of the "prosecution team," even where DOL criminal agents investigated the case, because there was "no indication that the prosecution and [the civil component] engaged in a joint investigation or otherwise shared labor and resources" and no "indication that the prosecution had any sort of control over [the civil component]"); *United States v. Morris*, 80 F.3d 1151, 1169-70 (7th Cir. 1996) (in *Brady* context, IRS and other federal agencies excluded because not "part of the team that investigated this case or participated in its prosecution").

In *Libby*, upon which Concord relies (at 5-6, 8), the court determined that the discovery obligations of the prosecution—in that case, the Office of Special Counsel—extended to the Office of the Vice President (OVP).  429 F. Supp. 2d at 11 ("Thus, this Court concludes that it has been established that the Office of Special Counsel has knowledge of and access to the documents responsive to the defendant's requests for Rule 16 purposes.")  But the *Libby* court reached that conclusion based on, among other things, the "free flow of documents" from the OVP to the

prosecutor that were "used to investigate" and "used as the basis for obtaining the indictment," as well as the court's conclusion that the OVP had "contributed significantly to the investigation, and without [its] contribution it is unlikely that the indictment in this case would ever have been secured." *Id.* The same cannot be said for the FEC or State Department in this case.[7]

Concord contends (at 8-9) there is an inconsistency between the government's position that the State Department is not part of the prosecution team for discovery purposes and the government's willingness to inquire of the State Department whether it has "additional documentation submitted with the visa applications referenced in the Indictment," which the government requested based on the defendant's "understanding that additional documentation was submitted with [certain visa] applications." *See* Doc. 251-6. But the government's effort to obtain potentially relevant records from an agency in response to a defendant's request does not alter the Rule 16(a)(1)(E) or *Brady* analysis with respect to "possession, custody, or control." Notwithstanding the government's request of the State Department, that agency is not part of the "prosecution team." *See United States v. Ferguson*, 478 F. Supp. 2d 220, 239-40 (D. Conn. 2007) ("The mere fact that the Government may have requested and received documents from [another

---

[7]   Concord's reliance (at 8) on *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1082 (D. Mont. 2005) is misplaced. In that case, the court expressly noted that the law of the Ninth Circuit, in which the case was decided, differed from several other circuits as to the scope of the government's Rule 16 and *Brady* obligations. *Id.* at 1078 ("The 'prosecution team' concept upon which the government relies is a product of case law from other circuits; it has not been embraced by the Ninth Circuit"); *id.* n.6 (citing other circuits). *Libby* makes a similar point. 429 F. Supp. 2d at 6 (describing Ninth Circuit precedent on this question "arguably slightly more expansive" than the D.C. Circuit's holding in *Brooks*, but concluding that it "largely comports with the conclusions reached by other Circuit Courts that prosecutors' discovery obligations were not violated by their failure to produce documents that were possessed by agencies which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents.") Accordingly, this Court should look to *Libby* and not *W.R. Grace* in deciding the instant motion.

agency] in the course of its investigation does not convert the investigation into a joint one" (citation omitted)); *Chalmers*, 410 F. Supp. 2d at 290 (holding that federal entities do not become part of the prosecution team—thereby triggering the attendant duty to search and discovery— merely because they "made documents available to the prosecution").

## CONCLUSION

For the foregoing reasons, the Court should deny Concord's motion.

Respectfully submitted,


JOHN C. DEMERS
Assistant Attorney General for National Security

By: /s/_____
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

JESSIE K. LIU
United States Attorney

By: /s/_____
Jonathan Kravis
Luke Jones
Kathryn Rakoczy
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886