## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CONCORD MANAGEMENT AND CONSULTING LLC,<br><br>Defendant. | CRIMINAL NUMBER:<br><br>1:18-cr-00032-2-DLF |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH FED. R. CRIM. P. 16**

Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this reply brief in support of its Motion to Compel Compliance with Fed. R. Crim. P. 16. ECF 241. In support of its Motion, Concord states as follows:

### I.     Introduction

The government seeks a trial by surprise where it will present technical information beyond the scope of knowledge of an average juror, and unknown to Concord. This tactic will make it impossible for Concord to prepare cross-examination or to determine in advance if defense experts are needed in rebuttal. And the government's strategy is based solely on its unilateral classification of this unknown evidence as fact, not expert testimony. In support, the government cites only to appellate cases applying an abuse of discretion standard. The government does not cite to a single district court case where the court did what the government expects this Court to do.

The government's categorical declaration that its proffered testimony is "fact testimony" from "fact witnesses" does not make it so, and the cases it cites do not support its pronouncement. This is just the latest example in this case of the government initially withholding information, and then changing its story when it works to the government's advantage—with the result that Concord

is forced to defend its rights on incomplete and misleading information and is prejudiced by an even more compressed pre-trial schedule.  As such, the Court should grant Concord's motion and order the government to make the required disclosures under Rule 16.

> **II.     Law and Argument**

The government's opposition overlooks an important point Concord emphasized in its motion:  that the categories of evidence at issue here are not pure opinion testimony under *either* FRE 701 or 702, but instead reflect "specialized knowledge" that is exclusively within the ambit of FRE 702, and by extension, trigger the notice requirement in Rule 16.  The government's efforts to minimize the testimony and to characterize it as merely fact-based are completely unsupported.  And in doing so, the government is depriving Concord of important information that is required by Rule 16 for it to present a full defense.  Only if the government gives the required notice can Concord effectively prepare for cross examination of those witnesses and determine whether its own experts are necessary.

> **A.     Roles and Functions of Particular Government Agencies**

The government asserts that it will likely call "employees or officials" of the Federal Election Commission ("FEC"), U.S. Department of Justice ("DOJ"), and U.S. Department of State ("DOS"), to testify about "certain statutory and regulatory provisions laying out the lawful functions of the three agencies whose function the [Superseding] Indictment alleges the defendants conspired to obstruct." Opp. 7.  The government insists that such testimony "will not rise to the level of opinion testimony," and "will be much more in line with the testimony 'on a factual matter within [the witness'] [sic] own experience' approved of in [*United States v. Kelsey*, 917 F.3d 740,

747-49 (D.C. Cir. 2019)], since these witnesses will describe the work they do at their respective agencies." Opp. 7.[1]  The government's argument fails for three reasons.

*First*, the government improperly assumes that "opinion testimony" is a prerequisite for application of FRE 702 and Rule 16, when it is not. *See* Opp. 8 ("the testimony envisioned by the government will not consist of opinion testimony"). As Concord pointed out in its Motion, opinion testimony is only one of several possible grounds for testimony that requires qualification under FRE 702. Mot. 3-4. Specifically, the rule provides that experts "may testify in the form of an opinion *or otherwise* under Rule 702." Thus a witness need not testify as to his or her opinion in order to cross the threshold into expert territory and to trigger the notice requirement of Rule 16—any testimony based on technical or specialized knowledge triggers the application of Rule 702. The purpose of the Rule 16 notice requirement is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 adv. comm. note. *See also United States v. Brown*, No. CRIM 7:06CR00044, 2007 WL 1228551, at *1-2 (W.D. Va. Apr. 26, 2007) (in ruling on motion to exclude expert

---

[1] The government insists that these witnesses "will not be providing any opinion testimony about whether the alleged conduct of the defendants would have prompted regulation or triggered disclosure requirements, had these agencies known about the alleged conduct." Opp. 4. This is directly contrary to what the government previewed to the Court last year when defending the sufficiency of the Indictment. In that context, the government asserted that it will have to prove at trial "that the defendants knowingly and intentionally engaged in deceptive acts that interfered with the regulatory functions of the FEC or DOJ in a way that precluded those entities from ascertaining *whether* those substantive statutes were violated." Gov't Opp. to Def's Motion to Dismiss, ECF 56, at 11. Thus, according to the government, it will prove a § 371 violation if it "establishes that, had federal agents known of the defendants' Russian affiliation," which it asserts the defendants deceptively concealed from the United States, "those agents would naturally have initiated an investigation to ascertain whether the defendants were in fact complying with the election-contribution or agent-registration laws." *Id*. So here we have yet another example of the government's arguments changing depending on the precise issue in front of the Court at any given moment.

3

testimony relating to computer forensics, noting that "the purpose of the rule is to provide fair notice of the content of the expert's opinion and fair notice as to how those conclusions have been reached" and finding that the government's disclosures were insufficient "to avoid surprise and properly focus cross-examination in all important respects").

*Second*, the primary case the government cites in support of its assertion that the proffered testimony related to the functions of government agencies "will not rise to the level of opinion testimony" does not consider the relevant issue. Opp. 7. In *Kelsey*, the D.C. Circuit, on appeal, recently addressed testimony from a DNA lab technician that the trial court deemed to be properly admitted as lay fact testimony. 917 F.3d at 747-48. The testimony there related to simple chain of custody issues and whether the DNA sample data the lab technician obtained was the same data that was provided to the expert witness who actually performed the DNA testing. *Id*. at 746-48. Thus, the Court of Appeals in *Kelsey* never considered whether FRE 702 even applied, and instead concluded that "[t]he record fully supports the district court's conclusion that [the witness] testified as one of multiple lay witnesses who accounted for the chain of custody and physical processing of the DNA evidence, *as distinct from its expert analysis*." *Id.* at 748 (emphasis added).

Moreover, the witness in *Kelsey* was properly deemed a fact witness because the lab technician was personally involved in the analysis of the evidence at issue in that particular case. By contrast, the government does not claim that the "employees or officials" of the FEC, DOJ, and DOS that it anticipates calling to testify about the functions of those government agencies were actually involved in the investigation or review of the evidence related to the conspiracy alleged in this case. To that end, the D.C. Circuit has held that "knowledge derived from pervious professional experience falls squarely 'within the scope of Rule 702.'" *United States v. Williams*, 827 F.3d 1134, 1156 (D.C. Cir. 2016) (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011)). Because these witnesses apparently will testify about the functions of the government

agencies at which they work based on specialized knowledge obtained in the course of their employment and *not* their personal involvement about the specific conspiracy alleged in the Indictment, their testimony is properly the subject of Rule 702.

The government cites in its Opposition *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), which also makes Concord's point. This is a civil case in which the court of appeals overturned a jury verdict. The challenged witness was employed by the plaintiff, had years of experience in international banking, and conducted an investigation of the defendants' activities. As noted by the government, the Second Circuit ruled that "[t]he fact that [the witness] has specialized knowledge, or that he carried out his investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his position in the business." 359 F.3d at 181 (quotations and alterations omitted).

But what the government does not mention in its Opposition is that the Second Circuit went on to state that "to the extent [the witness's] testimony *was not* a product of his investigation, but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error. Thus, [the witness's] explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted." *Id*. at 182. The same is true here.

***Third***, the proffered testimony regarding the agency functions at issue here will involve impermissible legal opinions in the form of legal interpretations of the "statutory and regulatory provisions"—particularly as it relates to testimony setting forth what constitutes a "lawful

5

function[] of the three agencies" at issue. Opp. 7. Such legal interpretations are inadmissible as a matter of law. *See, e.g., Burkhart v. Washington Metropolitan Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997) (noting the "danger in allowing experts to testify as to their understanding of the law" and that "[e]ach courtroom comes equipped with a 'legal expert,' called a judge"); *United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 69 n.4 (D.D.C. 2018) (refusing to consider expert report authored by a former GSA employee when deciding a motion to dismiss where the report contained the "proposed expert's interpretation of obligations under [government] regulations," and noting that "interpreting the relevant law and regulations is the job of the Court"). Without notice and a report in advance of trial it will be impossible for Concord to file any relevant motion *in limine* to exclude such improper testimony; and instead, the Court will have to deal with this critical legal issue in the middle of trial.

It is "generally prohibited for a lay witness to interpret statues and to give legal opinions." *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011). In *El-Mezain*, the government introduced testimony from an official in the Treasury Department's Office of Foreign Assets Control, but did not notice him as an expert witness. *Id.* at 511. Nevertheless, he explained that the Treasury Department typically does not designate every sub-group or component of a designated terrorist organization because it focuses its limited resources on designating key parts of the organization. *Id.* at 512. He also read from Treasury Department regulations and answered a hypothetical question about a specific group. *Id*. The Fifth Circuit found error in admitting the testimony about the Treasury Department's practice of designating or not designating sub-groups of terrorist organizations, finding that it was "not within the realm of an ordinary lay witness." *Id*. The government argued that the testimony was based on the official's personal knowledge, but the court found that his "opinions and explanations were the product of specialized knowledge." *Id*. "It is true that lay witnesses may sometimes give opinions that require specialized knowledge, but

6

the witness must draw *straightforward conclusions* from observations informed by his own experience," and "[r]ather than make straightforward conclusions from his observations, [the witness] explained the procedures of" the agency where he worked.  *Id*. (emphasis added);[2] *see also United States v. Griffin*, 324 F.3d 330, 347-48 (5th Cir. 2003) (finding error in admitting lay witness, a former employee of the relevant state agency, to testify about her interpretation of state statutes).

In this case, the government seeks to introduce precisely the type of testimony that was deemed improper in *El-Mezain*—agency employees "discussing the statutory and regulatory responsibilities and authorities of these agencies and how they fulfill these responsibilities."  Opp. 3.  This would inherently include testimony about any alleged duties of a foreign national; or it would be meaningless to the jury.  But it is the responsibility of the Court alone to instruct the jury as to the relevant law; a government employee dressed up as a fact witness cannot do so.[3]  The employees are offering testimony based on specialized knowledge, including their experience and training.  This constitutes expert testimony under Rule 702.

B. **Evidence Derived From Internet and Social Media**

The government also proffers and claims that "evidence derived from Internet and social media websites" does not fall within the ambit of Rule 702.  Opp. 1.  The government

---

[2] While finding error in the admission of the witness's testimony, the Fifth Circuit ultimately concluded that the error was harmless because it was cumulative of a government *expert* witness who testified about Treasury Department practices.  *Id*. at 512-13.

[3] The government itself acknowledges this to be true.  *See* ECF 262 at 10 ("The Court will instruct the jury as to any legal obligations—under FECA, FARA, or otherwise—that are relevant to the jury's consideration of the evidence.  It will be the jury's role to determine whether there was, in fact, a failure to satisfy a legal obligation and, if so, whether and to what degree that is probative of the conspirators' intent.  The views of persons within the federal government about whether, based on certain facts, the defendants or others would have had to file disclosures under FECA, register under FARA, or provide additional information to the State Department are simply not material to the jury's evaluation of the facts in this case.").

acknowledges that this evidence will include technical issues relating to the "messages and posts made by indicted and unindicted co-conspirators to and through various Internet and social media sites," including subscriber and user information for the accounts, as well as any linked accounts, and the IP addresses from which certain messages were sent or posted, or from which the accounts were accessed. *Id*. at 4, 8.[4]

This proposed testimony implicates the "specialized knowledge" component of Rule 702 because it will involve a technical explanation of the origins of the data purportedly captured by the Internet and social media companies. *See* Opp. 9 (noting that the witnesses will "be explaining where the data in the records came from and how it was stored"). Despite the government's efforts to downplay the technical nature of this evidence and the explanations needed to understand it, *see id.* ("[t]he witnesses . . . will merely be explaining . . ."), it nevertheless will involve "technical and specialized knowledge" that brings it within the ambit of Rule 702. For example, it will include explanation of the computer systems on which the data were captured and maintained, the terminology and technology needed to interpret the data, the accuracy of the data and the records, and the ability to manipulate or alter them. In other words, it will not be possible for either a case agent or the representatives of the Internet and social media companies to explain this evidence to the jury without relying on "technical, or other specialized knowledge." Fed. R. Evid. 702. Thus, regardless of whether these proffered witnesses will be testifying as to opinions or facts, the testimony is deemed to be that of an expert and must be disclosed in advance.

---

[4] While the government gives some explanation of how it intends to introduce evidence regarding messages and posts, noticeably absent from the government's Opposition is how it intends to prove that the defendants and their co-conspirators "deleted and destroyed data, including emails, social media accounts, and other evidence of their activities." Sup. Ind. ¶ 58. To the extent any such evidence and testimony involves "technical or specialized knowledge" of what *should have been* in the email or social media accounts, this, too, would fall within Rule 702 and require disclosure.

In support of its position, the government cites and then attempts to distinguish *United States v. Williams*, 827 F.3d 1134 (D.C. Cir. 2016). Opp. 9. But *Williams* involved the reversal of a conviction where an FBI agent offered lay opinion testimony interpreting audio and video recordings of a drug conspiracy. 827 F.3d at 1155. Distinguishing a case that has no similarities to the issue before the court is meaningless and it does not follow that simply because the government's proposed witnesses are not interpreting code words or offering opinions about their meaning, the testimony is not based on technical and specialized knowledge required to comply with Rule 702.[5]

By contrast, *United States v. Gainer*, 468 F.3d 920 (6th Cir. 2006), involved charges of endeavoring to obstruct justice and altering, destroying, or concealing documents based on defendant's alleged deletion of certain computer files. The government sought to admit testimony from a forensic computer specialist about searches he ran on the defendant's computer. *Id.* at 923. The government did not notice the witness pursuant to Rule 16 (a)(1)(G), arguing that the proposed testimony was not based on scientific, technical, or other specialized knowledge, but was "simply lay testimony available by 'running commercially-available software, obtaining results, and reciting them." *Id.* at 925. The government argued that the testimony "is of the same type as facts that could be observed by any person reasonably proficient in the use of commonly used computer software." *Id.* at 925-26 (internal quotation marks and alterations omitted). The Sixth Circuit disagreed, finding that the witness's interpretation of the reports would require the witness "to apply knowledge and familiarity with computers and the particular forensic software well beyond that of the average layperson" and that this constitutes scientific, technical, and other specialized

---

[5] Further, the government's logic for distinguishing *Williams* ("the evidence here will come from the records") is baffling. That the evidence to be introduced comes from "records" as opposed to "recorded conversations and interactions" is of no moment. The records still must be explained using technical or specialized knowledge.

9

knowledge within the scope of Rule 702. *Id.* at 926. This is the same type of testimony the government seeks to elicit here.

### III. Conclusion

The government's efforts to minimize its proffered testimony and to simply characterize it as lay fact (or opinion) are belied by the nature of the evidence itself. None of the cases the government has cited support its position, and as such it should be ordered to comply with its obligations under Rule 16.

Dated: December 2, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/*Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com