FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Crim. No. 18-CR-32-2 (DLF) |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS

The United States of America, by and through undersigned counsel, respectfully opposes the renewed motion of defendant Concord Management and Consulting LLC to dismiss Count One of the Indictment. Concord's revised motion largely comprises a collection of arguments that this Court has already rejected, this time stitched together and repackaged as a due process claim. This Court has already properly rejected Concord's challenges to the propriety of the Special Counsel's investigation, the decision to charge Concord, and the *mens rea* alleged in the Indictment, and Concord's renewed motion does not offer any persuasive reason to revisit these decisions. And Concord's attacks on the propriety and legal foundations of the Superseding Indictment are equally unavailing. Accordingly, Concord's renewed motion to dismiss should be denied.

## FACTUAL BACKGROUND

### A. The Indictment

On February 16, 2018, a grand jury returned an eight-count, thirty-seven-page Indictment against thirteen individuals and three corporate defendants. The Indictment alleges that the defendants engaged in a multi-year conspiracy, operating out of Russia, to defraud the United

1

States by impairing, obstructing, and defeating the lawful functions of the government, through fraud and deceit, for the purpose of interfering with the U.S. political and electoral processes.  Doc. 1 ¶¶ 1–7.  The conspiracy included a Russian organization, defendant Internet Research Agency LLC (the "Organization"), that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election and "the political system in general" and to favor one candidate for President.  *Id.* ¶¶ 3, 6, 10.  The Indictment further alleges that defendant Yevgeniy Viktorovich Prigozhin approved, supported, and funded the Organization's operations through other entities that he directly controls, particularly defendant Concord Management and a second entity, defendant Concord Catering.  *Id.* ¶¶ 3, 11-12.  Concord "was the Organization's primary source of funding for its interference operations."  *Id.* ¶ 11.  Concord also "controlled funding, recommended personnel, and oversaw the Organization's activities through reporting and interaction with Organization management."  *Id.*  Among other things, when the defendants began in or around 2015 to purchase social media advertisements, spending thousands of dollars each month, "[t]hese expenditures were included in the budgets that the Organization submitted to Concord."  *Id.* ¶ 35.

To carry out their interference activities without detection of their Russian affiliation, the Indictment charges that the defendants "knowingly and intentionally" conspired to obstruct the lawful functions of the Federal Election Commission, the Department of Justice, and the Department of State.  Doc. 1 ¶¶ 7, 9.  The Indictment further alleges that the defendants used a host of deceptive means to impede these entities' functions, including surreptitious intelligence gathering in the United States by foreign agents, influence operations conducted through false online personas, and fraudulent visa applications for entry to the United States.  *Id.* ¶¶ 10–11; *see, e.g.*, *id.* ¶¶ 5, 32-34, 36, 39, 40.

### B.  The Superseding Indictment

On November 8, 2019, the grand jury returned a Superseding Indictment.  The Superseding Indictment included new language clarifying the lawful government functions that the conspirators are alleged to have impaired.  In particular, the Superseding Indictment specifically alleges that the lawful government functions impaired by the conspirators included the FEC's duty to enforce the statutory prohibition on certain election-related expenditures by foreign nationals and the DOJ Foreign Agents Registration Act ("FARA") Unit's duty to enforce the statutory prohibition on acting as an unregistered foreign agent in the United States.  Doc. 247 ¶¶ 1, 7, 9; *see id.* ¶¶ 25-27. The Superseding Indictment does not add any new Count or defendant.

Contrary to Concord's suggestion, *see* Doc. 247, at 21, the Superseding Indictment does not "include [a] new FARA allegation."  Rather, both the original Indictment and the Superseding Indictment allege that the defendants acted, among things, through unwitting individuals from whom they concealed their Russian identity, Doc. 1 ¶¶ 6, 45; Doc. 247 ¶¶ 6, 45, such as by "organiz[ing] and coordinat[ing] political rallies in the United States…while pretending to be U.S. grassroots activists who were located in the United States but unable to meet or participate in person."  Doc. 1 ¶ 51; Doc. 247 ¶ 51.  Both the original Indictment and the Superseding Indictment identify specific communications with U.S. persons and social media advertisements used to further these efforts.  Doc. 1 ¶¶ 52-57; Doc. 247 ¶¶ 52-57.  The Superseding Indictment clarifies that the conspirators' use of innocent intermediaries was not limited to organizing rallies, and that the innocent intermediaries did not, themselves, report the Russian role in these various influence activities.  Doc. 247 ¶ 51.  But the conspirators' use of innocent intermediaries to effectuate their surreptitious influence campaign and to deceive the government agencies charged with

monitoring, regulating, and enforcing laws concerning foreign influence was a part of the original Indictment and had been identified to the defense before the Superseding Indictment was returned.

### C.  Concord's Prior Motions

This is not the first time that Concord has made many of the arguments contained in its current motion.   Rather, Concord's latest motion to dismiss rehashes arguments that Concord has previously raised and this Court has rejected.

On June 25, 2018, Concord moved to dismiss the Indictment, arguing that the attorney who signed the Indictment, Special Counsel Robert Mueller, III, was improperly appointed, that the regulations governing Special Counsel were unlawful, and that the Special Counsel's appointment did not authorize the prosecution of Concord.  Doc. 36; *see* Doc. 47 (government's opposition); Doc. 48 (Concord reply).  On August 13, 2018, this Court denied Concord's motion.  Doc. 54 (order); Doc. 58 (memorandum opinion).  The Court held, among other things, that the Special Counsel was a properly appointed inferior officer in the Department of Justice and that the Special Counsel had the authority to investigate and prosecute Concord.

On July 16, 2018, Concord filed a further motion to dismiss, urging that the Indictment (1) does not properly allege a conspiracy to defraud the United Sates in violation of 18 U.S.C. § 371; (2) fails to allege the *mens rea* necessary to support such an offense; (3) was unconstitutionally vague; (4) violates the Due Process Clause by resting on a broad, novel, and vague understanding of that crime; and (5) fails to allege a deprivation of government property. Doc. 46; *see* Doc. 56 (government opposition); Doc. 62 (Concord reply); Doc. 69 (government supplemental filing); Doc. 71 (Concord's further response).  On November 15, 2018, the Court denied Concord's motion.  Doc. 73 (order); Doc. 74 (memorandum opinion).  The Court held that the Indictment adequately alleged all elements of a conspiracy to defraud the United States in

violation of 18 U.S.C. § 371, including the obstruction of particular lawful government functions and the use of deceitful or dishonest means. The Court further held that the Indictment was not required to allege that Concord acted "willfully" because the *mens rea* required for this offense is that the defendant acted "knowingly." Finally, the Court held that the Indictment was not unconstitutionally vague and that Supreme Court precedent did not require the government to allege a deprivation of government property.

On August 29, 2018, Concord sought discovery on a claim of selective prosecution based on the Justice Department's purported failure to prosecute other foreign nationals who had allegedly engaged in election interference activities. Doc. 61; *see* Doc. 63 (government opposition); Doc. 65 (Concord reply). On October 16, 2018, the Court denied Concord's motion. Doc. 66. The Court held that Concord's motion failed to make the requisite showing either that similarly situated persons were treated differently or that the prosecution was motivated by discriminatory intent.

On January 22, 2019, Concord renewed its request for discovery on a claim of selective prosecution based on a letter from the Justice Department's Foreign Agents Registration Act ("FARA") Unit to a law firm. Doc. 93; *see* Doc. 100 (government opposition); Doc. 101 (Concord reply). On February 13, 2019, the Court denied the motion. Doc. 102. The Court ruled that the conduct described in the letter was "not similar in nature or scope to the conspiracy charged here," *id.* at 2, and therefore did not support a claim of selective prosecution.

On April 25, 2019, Concord asked the Court to initiate criminal contempt proceedings against the Attorney General and former Special Counsel, positing that the redacted Special Counsel's report and remarks by the Attorney General at a press conference and during testimony to Congress violated a Local Rule concerning case-related public statements that pose a risk of

prejudice.  Doc. 129; *see* Doc. 130 (government's opposition); Doc. 131 (Concord's reply); Doc.

134 (government's supplemental filing); Doc. 139 (government's further supplemental filing);

Doc. 140 (Concord's supplemental filing); Doc. 142 (Concord's response to government's further

supplemental filing); Doc. 143 (government's response to Concord's supplemental filing).  The

Court concluded that the set of statements related to the Special Counsel's report violated the local

rule, but that these were not "flagrant," and were a "[g]ood faith pursuit of a plausible though

mistaken alternative."  Doc. 148, at 16.  Among other things, the Court found that the Attorney

General was trying to comply with that rule, including through consultation with ethics experts,

and was also trying to keep the public informed of important matters.  *Id.* at 15-17.

## ARGUMENT

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and

fairly informs a defendant of the charge against which he must defend, and, second, enables him

to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling*

*v. United States*, 418 U.S. 87, 117 (1974).  An indictment alleging a conspiracy to defraud the

United States in violation of 18 U.S.C. § 371 meets this standard so long as it includes "'such a

statement of the facts and circumstances as will inform the accused of the specific offense,

coming under the general description, with which he is charged.'"  *United States v. Treadwell*,

760 F.2d 327, 336 (D.C. Cir. 1985) (citation omitted).

Concord's renewed motion to dismiss does not argue that the Superseding Indictment

fails to meet this standard.  Nor does Concord argue that the Superseding Indictment should be

dismissed on any of the other grounds set forth in Federal Rule of Criminal Procedure 12(b).

Instead, Concord's renewed motion to dismiss consists largely of arguments that this Court has

already rejected, and Concord does not provide any sound basis for the Court to reconsider them.

In any event, Concord's arguments are without merit.  This prosecution does not (as Concord contends) violate the Due Process Clause, and the government is not required to allege or to prove that Concord acted willfully.  Moreover, Concord's arguments concerning the Superseding Indictment are misguided.  The government's decision to obtain a Superseding Indictment in this case does not violate the Due Process Clause, and Concord's challenge to one of the theories of criminal liability set forth in the Superseding Indictment is without merit.

## I.      Concord Provides No Basis for The Court To Reconsider Its Prior Decisions

Concord contends that the Indictment should be dismissed because it was brought by the Special Counsel, Doc. 256, at 29; because it charges a conspiracy to defraud the United States that relates to possible violations of FARA and the Federal Election Campaign Act ("FECA"), *id.*; because the Attorney General and Special Counsel made certain public statements relating to this Indictment, *id.* at 30-31; because the government's charging theory has assertedly shifted, *id.* at 31; and because the Indictment does not allege willfulness, *id.* at 34-43.  The Court has already considered and rejected these arguments.  Although Concord has, in places, relabeled some of these arguments, these are all issues that Concord raised in its prior motions to dismiss, motions for discovery on selective prosecution, and motion for contempt or other sanctions, among others. (Concord has raised the contention that government's theories have changed in a number of other motions as well.  *See, e.g.,* Doc. 181, at 4-6, 7 n.5, 24.)

While the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration of interlocutory orders, the Court has applied the Federal Rules of Civil Procedure to such motions, granting reconsideration if "justice requires."  *See, e.g.*, *United States v. Lieu*, No. 17-cr-50, 2018 WL 5045335, at *2 (D.D.C. Oct. 17, 2018) (citing *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015)); *United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C.

2014).   Whether "justice requires" reconsideration generally depends on whether the Court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not out of reasoning but out of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'"  *Lieu*, 2018 WL 5045335, at *3 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); *see also United States v. Hemingway*, 930 F. Supp. 2d 11, 12-13 (D.D.C. 2013); *Slough*, 61 F. Supp. 3d at 108.   Ultimately, "[t]he burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied."  *Hemingway*, 930 F. Supp. 2d at 13.

Concord provides no sound reason for the Court to reconsider its prior decisions on these issues.   The Court understood Concord's arguments and based its decisions on careful consideration of the parties' submissions and applicable law and fact.   As discussed below, Concord's assertedly new arguments are neither new nor correct.   Concord has instead merely repackaged its prior arguments, by citing entirely inapplicable cases and attaching the label "due process" to each of its arguments.   (Even the due process label is not entirely new: Concord framed some of the same arguments in due process terms in its July 16, 2018 motion to dismiss.  *See* Doc. 46, at 12, 14-15, 28, 38-41.)   Concord provides no explanation for why adding this label warrants reconsideration of a number of issues on which the Court has already ruled.

## II.   Concord's Arguments Lack Merit

### A.  No Basis Exists For Reconsidering The Claims That Form The Basis Of Concord's Due Process Argument

Concord dresses up in due process garb a list of arguments that this Court has previously rejected and declares that they amount to an "Arbitrary Prosecution" that violates the Due Process

Clause.  Doc. 256, at 25-34.  This newly-discovered due process theory is misguided, and each of

the individual claims that Concord places under that header is baseless.

   1.   As a threshold matter, Concord's due process theory lacks merit.   Concord cites no

case, and the government is aware of none, where a party transformed a list of arguments like those

that Concord repeats here into a singular violation of the Due Process Clause.  Concord concedes

the absence of case law supporting its theory but posits that is because "there has never been a case

like this before."  Doc. 256, at 31.  Concord, however, is not the first criminal defendant to raise

myriad allegations of misconduct.  And to the extent that some of Concord's allegations are

unusual, such as those that concern the particular charging theory in this case, that is because the

defendants' conduct alleged in this case is itself unusual.  *See* Doc. 66, at 2-3 (noting the absence

of other cases that are similar to the conspiracy alleged here).  Concord also does not explain, even

as a matter of primary principles or by analogy to other areas of due process law, why its list of

assertedly "arbitrary" actions would violate that clause.  Indeed, it is not even entirely clear if

Concord's argument sounds in substantive or procedural due process.  While Concord quotes and

cites a number of cases (Doc. 256, at 25-28), these are nothing more than a series of unrelated

decisions, some of which do not even concern due process at all, that address burdens of proof,

judicial bias, *Brady*, public trial rights, vagueness, prosecutorial self-interest, and selective

prosecution.[1]

---

   [1] *See Daniels v. Williams,* 474 U.S. 327 (1986) (civil suit for negligence by prison guard);
*Wolff v. McDonnell*, 418 U.S. 539 (1974) (civil suit about procedures in prison disciplinary
proceedings); *Champion Lumber Co. v. Fisher*, 227 U.S. 445 (1913) (mandamus petition seeking
land patent); *Rivera v. Minnich*, 483 U.S. 574 (1987) (burden of proof for determining paternity);
*Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868 (2009) (standard for judicial recusal given risk of
bias created by campaign contribution); *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016)
(appellate judge reviewing his own prior decision as trial judge); *Tumey v. Ohio*, 273 U.S. 510
(1927) (judge with pecuniary interest in the case); *Marinello v. United States*, 138 S. Ct. 1101
(2018) (interpreting required nexus between tax obstruction and tax-related proceeding); *Strickler*

2.   In all events, Concord's due process argument is nothing more than a repackaging of claims that this Court has already rejected, and Concord's motion to dismiss provides no sound reason for the Court to reconsider those decisions.

a.   Concord declares (Doc. 256, at 29) that its prosecution is unconstitutionally "arbitrary" because the Indictment was obtained by the Special Counsel, "who justified his appointment on the basis of a pretextual 'conflict of interest' that later disappeared without explanation." This appears to be a reference to the provision in the Special Counsel regulation authorizing appointment of a special counsel where there is "a conflict of interest for the Department or other extraordinary circumstances." 28 C.F.R. § 600.1. This is the same argument that Concord raised in its June 25, 2018 motion about the Special Counsel's authority (Doc. 36, at 46), and that this Court rejected (Doc. 58, at 38-40).

As the Court explained, "the Special Counsel regulations do not create judicially enforceable rights." Doc. 58, at 39 (citing *United States v. Manafort*, 312 F. Supp. 3d 60, 75-79 (D.D.C. 2018), and *United States v. Manafort*, 321 F. Supp. 3d 640, 655-658 (E.D. Va. 2018)); *see In re Grand Jury Subpoena,* 438 F.3d 1141, 1152-1153 (D.C. Cir. 2005); *United States v.*

---

*v. Greene*, 527 U.S. 263 (1999) (applying *Brady v. Maryland*, 373 U.S. 83 (1963) to particular facts); *Berger v. United States*, 295 U.S. 78 (1935) (intemperate and misleading representations by the prosecutor during cross-examinations and closing argument); *Gannett Co. v. DePasquale*, 443 U.S. 368, (1979) (Sixth Amendment public trial right); *Smith v. Goguen*, 415 U.S. 566 (1974) (applying vagueness doctrine to flag desecration statute); *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (applying vagueness doctrine to provision of immigration law); *Johnson v. United States*, 135 S. Ct. 2551 (2015) (applying vagueness doctrine to residual clause of Armed Career Criminal Act); *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966) (applying vagueness doctrine to statute authorizing order that acquitted defendants pay costs of trial); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) (plurality op.) (private attorney appointed to prosecute criminal contempt cannot have conflicting, personal interest); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, (1980) (applying more flexible understanding of bias to administrative official acting in a prosecutorial capacity than one acting in a quasi-judicial capacity); *Wayte v. United States*, 470 U.S. 598  (1985) (explaining how the Equal Protection Clause applies to claims of selective prosecution).

*Blackley*, 167 F.3d 543, 548-549 (D.C. Cir. 1999); *see also United States v. Caceres*, 440 U.S. 741, 749-754 (1979).  This Court has similarly ruled that the appointment of a Special Counsel to investigate Russian election interference does not constitute evidence of discriminatory intent with respect to Concord.  Doc. 66, at 3.  Concord's motion does not even attempt to explain why this exercise of the Acting Attorney General's statutory authority or his application of the Special Counsel regulation could amount to a due process violation.

In any event, contrary to Concord's assertion, the Special Counsel did not "justif[y] his appointment on the basis of a pretextual 'conflict of interest.'"  The Acting Attorney General appointed the Special Counsel and chose to apply the Special Counsel regulations.  Concord provides no basis for its assertion of "pretext."  And this Court correctly held (Doc. 58, at 39-40) that the Special Counsel's decision to bring this case is fully consistent with that regulation's reference to conflicts of interest.  Section 600.1's "[g]rounds for appointing a Special Counsel" are not defendant-specific.  Rather, the Acting Attorney General "will appoint a Special Counsel when he or she determines that criminal investigation of a person or *matter* is warranted," when "investigation or prosecution of that person or *matter* . . . would present a conflict of interest for the Department or other extraordinary circumstances," and where "it would be in the public interest to appoint an outside Special Counsel to assume responsibility for the *matter*."  28 C.F.R. § 600.1 (emphases added). Here, the core "matter" to be investigated was Russian interference in the election, including links and/or coordination to individuals associated with the Trump Campaign. *See* Appointment Order (introduction); *id.* ¶ (b).  After "[c]onsidering the unique circumstances of this matter," the Acting Attorney General determined that "a Special Counsel is necessary in order for the American people to have full confidence in the outcome."  Press Release, Appointment of

Special Counsel (May 17, 2017), *available at* https://www.justice.gov/ opa/pr/appointment-special-counsel.

b. Concord next contends (Doc. 256, at 29-30) that its prosecution violates due process because the government attempted "to skirt the heightened *mens rea* requirements of the FECA and FARA provisions it relies on by cloaking the Original Indictment, and now the Superseding Indictment, in defraud-clause language."

As the Court well knows, a conspiracy to defraud the United States is a different crime than a conspiracy to violate FECA and/or FARA.  This Court has already, and correctly, rejected Concord's contention that the government was required to charge a conspiracy to violate FECA and FARA rather than a conspiracy to defraud the United States.  The Court correctly explained that "courts have repeatedly rejected requests, like Concord's, to borrow willfulness requirements from related substantive statutes even when the defraud conspiracy is premised on interfering with an agency's administration of those statutes."  Doc. 74, at 19.  As the Court also recognized (*id.* at 19-20 & n.7), it is black letter law that "[t]he fact that the [alleged] events include" conduct that violates another criminal statute "does not, in and of itself, make the conspiracy-to-defraud clause of § 371 unavailable to the prosecution."  *Dennis v. United States*, 384 U.S. 855, 862-863 (1966).

To the extent that Concord suggests that the decision to charge this case as a conspiracy to defraud the United States is "arbitrary" and violates the Due Process Clause, Concord does not explain why that is so.  The Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."  *United States v. Batchelder*, 442 U.S. 114, 124-125 (1979).  Much as is the case when the government charges *Klein* conspiracies in other contexts, there is a litany of legitimate reasons that the government may choose to pursue particular charging

theories.  *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016); *Nader v. Saxbe*, 497 F.2d 676, 679 n.18 (D.C. Cir. 1974).  Concord's motion does not explain how or why the government's charging decision here violates the Due Process Clause.

c. Concord next declares (Doc. 256, at 30) that the apparent tension between the scienter charged in the Indictment and certain language in two Department of Justice Manuals (the prior version of the Federal Prosecution of Election Offenses handbook and the Criminal Resource Manual) demonstrates some form of unconstitutional arbitrariness.  The government respectfully disagrees with Concord's reading of this language.  In fact, the Criminal Resource Manual expressly states that "[t]he intent required for a conspiracy to defraud the government" is that the defendant intended to defraud and to deceive the government to obtain property or disrupt a government function.  *Criminal Resource Manual* § 923, *available at* https://www.justice.gov/jm/criminal-resource-manual-923-18-usc-371-conspiracy-defraud-us. Concord instead relies on a discussion of the fact that the defraud clause is distinct from the offense clause of Section 371.  That discussion quotes a decision that explains the point and uses the word "willful."

In any event, the Court has rejected this argument, noting that internal Department manuals "are not entitled to legal deference" and that "the government's frequent litigating position" is that willfulness is not the required scienter in a conspiracy to defraud the United States.  Doc. 74, at 23.  *See also* Doc. 56, at 29 & n.12 (listing other examples of the government's taking that position); *see also, e.g.,* Indictment ¶ 26a, *United States v. Parnas*, No. 19-cr-725 (S.D.N.Y.) (Oct. 9, 2019).  Even if the government has not been fully consistent in its position about the defraud clause, it does not follow that the Due Process Clause forever compels the government to take

what it believes to be an incorrect position, and to do so in contravention of extensive case law holding that willfulness is not required.

d.   Concord additionally asserts (Doc. 256, at 30-31) that public statements by the government violate due process.  This Court previously concluded that certain unredacted material in the Special Counsel's report and public statements by the Attorney General violated Local Rule 57.7, but that these were not "flagrant," and were a "[g]ood faith pursuit of a plausible though mistaken alternative."  Doc. 148, at 16.  Among other things, the Attorney General was trying to comply with that rule, including through consultation with ethics experts, and was also trying to keep the public informed of important matters.  *Id.* at 15-17.

Concord suggests (Doc. 256, at 30-31) that more recent statements about some of Concord's conspirators—including public statements in connection with sanctions imposed on Prigozhin and an indictment in another district—violated the Court's subsequent order and Concord's due process rights.  That argument fails at every turn.  Initially, the statements that Concord points to do not violate any order of this Court.  The Court's May 29, 2019 order imposed three conditions:  (1) the parties shall abide by Local Criminal Rule 57.7(b), which restricts extra-judicial statements of attorneys representing parties in criminal matters; (2) the government shall "refrain from making or authorizing any public statement that links the alleged conspiracy in the indictment to the Russian government or its agencies;" and (3) any public statements about the allegations in the Indictment must make clear that the statement is summarizing allegations that remain unproven and the government is not expressing an opinion on the defendants' guilt or innocence or the strength of the evidence in the case.  Doc. 137.  The recent statements cited in Concord's motion violate none of these conditions.  Those statements were made by the Treasury Department and the State Department, not by lawyers representing the government in this case.

14

Those statements did not mention the conspiracy alleged in the Indictment, which runs up to January 2018.  And those statements did not express an opinion on the allegations in the Indictment or the strength of the evidence.  Rather, the statements concerned conduct that occurred after the conduct described in the original Indictment in this case.

More to the point, Concord does not connect its factual allegation to its theory of due process.  Concord does not explain how or why the statements that it identifies could reasonably be expected to impact the trial in this case.  Concord does not so much as offer a legal standard for when statements by a government agency about other matters could warrant dismissal of a criminal indictment.  Nor does Concord engage with the Executive's need to charge other crimes, to protect the national security through sanctions, or to keep the public aware of ongoing criminal activity or national security threats—a need that may persist indefinitely in this case, where some defendants remain at large.  *Cf. Gilbert v. Homar*, 520 U.S. 924, 930 (1997)  (due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," but rather "calls for such procedural protections as the particular situation demands").

e.  Next, Concord argues (Doc. 256, at 31) that due process requires dismissal of the Superseding Indictment because the government has "treated the charges against Concord as a moving target."  That contention fails as both a matter of fact and law.  Although Concord's recent filings have strained to characterize the government's theory of criminal liability as shifting or inconsistent, the truth of the matter is that the government has consistently articulated a single theory of criminal liability:  The defendants conspired to defraud the United States by engaging in a litany of deceptive conduct aimed, in part, at impairing the lawful government functions of the DOJ, the FEC, and the State Department.  The government has consistently maintained that the deceptive conduct included, but was not limited to, failure to disclose in contravention of a legal

duty.  *See, e.g.,* Doc. 69 (supplemental government brief).  Although the Indictment detailed the relevant activities at issue, the bill of particulars specifically identified the categories of activity alleged in the Indictment that required disclosure to the FEC and DOJ.  Consistent with the conduct detailed in the Indictment, a recent letter sent to defense counsel at the Court's instruction explains that one of the ways in which this conduct triggered FARA's reporting requirement was by causing individuals within the United States to act.

If anyone is changing its position, it is Concord.  Last year, Concord argued to the Court that the prosecution was fatally flawed because the government could not show that the conspirators actually violated any provision of FECA or FARA.  Doc. 46, at 15, 17.   This year, Concord argues that the prosecution is fatally flawed because the government will show that the conspirators actually violated provisions of FECA and FARA.  Doc. 256, at 31.  Concord was wrong then and it is wrong now.  While a conspiracy to defraud the United States does not require the violation of any statute or regulation, the government's evidence will show that the conspirators' deceptive conduct included the failure to file required reports with the FEC and registrations with the DOJ FARA Unit in contravention of a legal duty.   In addition, the government's evidence will show that the conspirators also violated FECA's foreign national independent expenditure ban and FARA's prohibition on certain activities by unregistered foreign agents.

Even more importantly, Concord again does not explain how these alleged "change[s]" violate due process.   Indeed, Concord's contention appears to get matters exactly backward.  Concord is essentially complaining that by giving it a more detailed preview of the government's factual and legal theories, the government has acted arbitrarily and deprived Concord of the process to which it is due.  This is little more than a continuation of Concord's ongoing effort to

transform this case into a prosecution for violations of FARA and FECA—crimes that the government did not charge here.   Nothing about the theory of criminal liability charged in the Superseding Indictment violates due process.   *See* Doc. 74, at 29-31 (rejecting Concord's due process vagueness challenge to Count One).

f. Finally, Concord argues (Doc. 256, at 33-34) that the Superseding Indictment "reinforces and compounds" the asserted Due Process violation.   But Concord does not even attempt to argue how or why the return of the Superseding Indictment could amount to—or "reinforce"—a due process violation.   The government would have had every right to present this Indictment when it initially charged the defendants in this case.   And the government's decision to present a Superseding Indictment to the grand jury that clarifies some of the very points on which Concord has claimed a lack of clarity only serves to protect, rather than undermine, the process to which Concord is due.

The litany of complaints set forth in Concord's motion do not implicate due process.   Thus, Concord notes that the government's notice of intention to seek a superseding indictment identified only the principal alteration to the original Indictment—the clarification of the lawful government functions at issue—and did not mention another modification, the addition of a sentence clarifying one of the ways in which the conspiracy interfered with the lawful government functions of the DOJ FARA Unit.   Doc. 256, at 33.   But this clarification only provides further notice and clarity of the government's theory and, in all events, is not a basis to dismiss a Superseding Indictment.

Next, Concord claims that the Superseding Indictment "amounts to nothing more than a convenient litigating position aimed, *post hoc*, at Concord's unrebutted showing of the USAO DC's consistent practice of alleging willfulness in § 371 defraud conspiracies." *Id.*   This sentence is inexplicable.   Neither the original Indictment nor the Superseding Indictment alleges that the

conspirators acted willfully, and this Court has already held that willfulness is not required. To the extent Concord means to argue that the Superseding Indictment amounts to a due process violation because, in other cases, the Justice Department has alleged willfulness when charging a defraud clause conspiracy, this Court has already rejected that argument. Doc. 74.

Finally, Concord contends that "the Superseding Indictment further confirms that the government's previous attempts to insert its new 'unwitting Americans' FARA theory by letter and brief were unconstitutional efforts to constructively amend the Original Indictment." *Id.* That is not so—as described above, the original Indictment alleged the facts that would support this theory of criminal liability, and it is not necessary that an indictment describe in detail all such theories—but more to the point, this argument provides no basis to dismiss the Superseding Indictment, which clearly and expressly describes this theory.

### B. No Basis Exists For Reconsidering Concord's Willfulness Argument

Concord again contends that a conspiracy to defraud the United States requires willfulness. Doc. 256, at 34-43. This Court has rejected this argument. Although Concord recycles many of its prior arguments about vagueness, notice, and lenity, Concord also now claims (*id.* at 35-38) that the Court must reexamine its prior holding in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019). Those cases have no bearing on the question presented here.

*Rehaif* interpreted 18 U.S.C. § 924(a)(2), which makes it a crime to "knowingly violate[]" the ban on felons and illegal aliens possessing firearms, 18 U.S.C. § 922(g). "The question," the Court explained, was "the scope of the word 'knowingly,'" and whether a defendant must know "both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?"

139 S. Ct. at 2194.  The Court carefully parsed the "statutory text" and concluded that it comported

with the ordinary presumption "that Congress intends to require a defendant to possess a culpable

mental state regarding 'each of the statutory elements that criminalize otherwise innocent

conduct.'"  *Id.* at 2195-2197 (citation omitted).  As a matter of "ordinary English grammar," the

term "knowingly" applied "to all the subsequently listed elements of the crime," including the

element that the defendant be a felon or an illegal alien.  *Id.* at 2196 (citation omitted).

Concord would apparently extract from this case a newly established rule that courts must

read willfulness requirements into statutes where none exist.  But *Rahaif* stands for no such

proposition.  As noted, it carefully identified the elements in the statute—there the term

"knowingly."  While *Rehaif* concluded that the defendant must have known his legal status, that

is because the statute itself required a knowing violation, and one element was having a certain

legal status.  Here, in contrast, a conspiracy to defraud requires neither any status nor knowledge

of a status.  As the Court already concluded, it requires an agreement to obstruct a lawful

government function by deceitful or dishonest means, as well as an act in furtherance of that

agreement. Doc. 74, at 7 (citing *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 9 (D.D.C. 1999),

*rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999)); *see United States v. Davis*, 863 F.3d

894, 901 (D.C. Cir. 2017); *United States v. Mellen*, 393 F.3d 175, 180-81 (D.C. Cir. 2004)

(Roberts, J.); *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985).

Concord appears to argue (Doc. 256, at 35-38) that *Rehaif* required some combination of a

willful intent when entering the conspiracy and knowledge of FECA and FARA.  That is exactly

the sort of argument that the Court distinguished in *Rehaif*, "where a defendant has the requisite

mental state in respect to the elements of the crime *but claims to be 'unaware of the existence of

the statute proscribing his conduct*.'"  139 S. Ct. at 2198 (emphasis added).  In other words, unlike

*Rehaif*, Concord is not arguing that it cannot be held liable because it was unaware of its status. Instead, Concord is arguing that it cannot be held liable because it was unaware of the law regulating its conduct.  That is precisely the argument that this Court has already rejected, and that the Court took pains to distinguish in *Rehaif*.  Indeed, Concord's argument goes even a step further. The government does not dispute that it must prove that one of the purposes of the conspirators' deceptive conduct was to interfere with lawful government functions.  But Concord would appear to seek a per se requirement that it must have known details of the statutory provisions administered by the government to have conspired to obstruct the government functions at all. *Rehaif* supports no such position.  And that position finds no support in Section 371, which prohibits conspiring to impair the government through deceptive means, rather than any particular conduct or violation of any particular legal framework.  "It is not the form of the combination or the particular means used but the result to be achieved that the statute condemns." *American Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *see also Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962) (same).  And it is an argument that this Court has already rejected.  Doc. 74, at 25 ("Concord goes too far in asserting that the Special Counsel must *also* show that Concord knew with specificity 'how the relevant laws described those functions.'").

Concord's reliance on *Burden* fares no better.  In *Burden*, the D.C. Circuit vacated a conviction under the Arms Export Control Act, 22 U.S.C. § 2778, which "criminalizes willfully exporting defense articles without a license."  934 F.3d at 681.  There was no dispute that the statute by its plain language required willfulness. *Id.* at 689-690.  Indeed, the Court explained that "[m]ost criminal prohibitions require only proof that the crime was committed knowingly" and that "[w]hen Congress wants to ensure that defendants will be convicted only if they have a more

culpable state of mind, it limits the crime to conduct that a defendant engages in willfully." *Id.* at 690 (quotation marks omitted).  The court considered what the term "willful" meant in that particular statute and held that government "need not prove defendants knew the specific law their conduct violated." *Id.* at 692.  The court also considered whether the jury instruction on willfulness sufficiently explained to the jury that the "guilty mind" required to establish willfulness was connected to the defendant's violation of the Act, rather than to the defendant's violation of foreign law.  *Id.* at 692-693.  Given the facts of the case and the wording of the willfulness instruction, which "required only that the defendants acted with knowledge that 'the conduct' was unlawful," the court found "some chance that the jury convicted based in part on defendants' evasiveness in importing to Thailand." *Id.* at 693.  Accordingly, the court concluded that on retrial, the jury should be instructed that "a willfulness finding cannot draw on evidence that [the defendants] knew the related, but legally and factually distinct, import of th[e] items into Thailand was illegal." *Id.*

*Burden* does not warrant revisiting the Court's conclusion about the mental state required to establish a conspiracy to defraud the United States.  The word "willfully" appears in the text of the statute at issue in *Burden*, the Arms Export Control Act, and so *Burden* had nothing to do with identifying the necessary *mens rea*.  Rather, the issue in *Burden* was the interaction between the district court's willfulness instruction and the evidence that the defendants may have had a guilty mind with respect to foreign law rather than with respect to the statute under which they were charged.  Those considerations do not apply here.  Concord has never argued that the conspirators' deceptive conduct arose out of concern that they might be violating Russian law.  And as *Burden* explains, any concerns about the jury's evaluation of evidence related to *mens rea* can be addressed through jury instructions.  Nothing in *Burden* supports the relief that Concord seeks here—

dismissal of Count One for failure to include language that this Court has already held is not required.

Finally, Concord again repeats its myriad assertions about vagueness and fair notice.  As was true when Concord made these arguments in various forms, these ignore that the crime charged here is not a violation of FECA or FARA but rather a conspiracy to impair the lawful government functions of three government agencies through deceptive means.  Concord is free to argue to the jury that it did not enter into an agreement with the other defendants, that its object was not to impair the lawful functions of the State Department, Justice Department, or FEC, or that none of the contemplated conduct constituted deception aimed at the government.  But if, as the Superseding Indictment alleges, Concord knowingly conspired to impair lawful government functions through deceptive means, then Concord committed a crime.  Notwithstanding Concord's claimed lack of fair notice, the Court need not engraft an additional scienter requirement onto a conspiracy to defraud the United States.

## C.  <u>Concord's Challenge To The Superseding Indictment Lacks Merit.</u>

Finally, Concord argues (Doc. 256, at 43-45) that one theory of criminal liability clarified in the Superseding Indictment "fails as a matter of law."  The Superseding Indictment (like the original Indictment) alleges that the conspirators acted, among other things, through unwitting individuals whom the conspirators caused to engage political influence activities while concealing the Russian involvement in those activities.  Doc. 247 ¶¶ 48, 51.  The Superseding Indictment clarifies that one of the ways in which this conduct interfered with the lawful government functions of the DOJ FARA Unit was that the unwitting individuals did not, themselves, report the Russian role in these various influence activities.  Doc. 247 ¶ 51.  Again seeking to treat Count One as a

substantive FARA charge, Concord urges that its use of innocent intermediaries did not violate FARA.

As an initial matter, questions about the metes and bounds of theories under which Concord can be found guilty by the trier of fact are better resolved through jury instructions and motions *in limine*.  But in any event, Concord's argument is without merit.  First, Concord is not charged with violating FARA but rather with conspiring to defraud the United States, *i.e.,* joining an agreement to obstruct or interfere with one of the United States government's lawful functions, by deceit, craft, trickery, or dishonest means.  Conduct need not violate FARA to shed light on the object of the conspiracy or to constitute deception of and interference with the federal government's lawful functions, including the Department of Justice's administration of FARA.

Second, as for whether the failure to register this conduct was itself a contravention of a legal duty imposed by FARA, it was.  Organizing rallies and buying political advertisements are the kinds of influence activities covered by FARA.  *See, e.g.,* 22 U.S.C. § 611(c)(1)(i)-(iii), (g), (h), (o), (p).  FARA's registration requirements apply to those who engage in such activities "directly or through any other person." 22 U.S.C. § 611(c)(1).  The Superseding Indictment alleges that some Russian conspirators directed other Russian conspirators to direct innocent Americans to act on the Russians' behalf.  That subterfuge is not a legally permissible end run around FARA's framework of casting light on foreign influence campaigns conducted in secrecy.  If anything, it arguably requires multiple levels of reporting, *none* of which occurred here.  Despite Concord's apparent interest in addressing FARA, Concord does not so much as cite that statute.  Concord does not address the defined categories of triggering conduct, or engage with the statutory provisions that govern acting indirectly or the required degree of foreign control.  *See* 22 U.S.C. § 611(c)(1).  Nor does Concord engage with the broader legal principles that apply when acting

through intermediaries.  *See, e.g.,* 18 U.S.C. § 2(b) (criminal liability when causing innocent intermediary to act); *United States v. Dodd*, 43 F.3d 759, 762-763 (1st Cir. 1995) (same); *Hyde & Schneider v. United States*, 225 U.S. 347, 362-363 (1912) (discussing common law rule of "constructive presence" for all coperpetrators where acts occur); Caleb Nelson, *State and Federal Models of the Interaction Between Statutes and Unwritten Law*, 80 U. Chi. L. Rev. 657, 702 n.182 (2013) (same).   Concord merely urges that the First Amendment ensures the right of Americans to engage in political speech.  But that does not address whether anyone had to disclose the true nature of those activities.  *See Meese v. Keene*, 481 U.S. 465, 478 (1987) (noting that FARA "neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals" when considering a First Amendment challenge to the labeling of certain materials as political propaganda).

*     *     *     *     *

There is nothing arbitrary, unconstitutional, or legally infirm about this prosecution.  A Special Counsel, duly appointed by the Acting Attorney General pursuant to DOJ regulations, conducted an investigation into Russian election interference.  That investigation uncovered evidence of the conspirators' criminal conduct.  The Special Counsel's Office presented that evidence to a federal grand jury, which returned an indictment charging Concord and the other defendants with conspiracy to defraud the United States by interfering with lawful government functions.  This Court has upheld the legal validity of that indictment.  Concord's protestations notwithstanding, this is not the first case in which the United States has charged that defendants conspired to defraud the United States by "knowingly" (rather than "willfully") interfering with lawful government functions.  The facts of this case are unique, but unique is not the same thing

as arbitrary.  Concord's motion to dismiss the Superseding Indictment should be denied.


Respectfully submitted,


JOHN C. DEMERS                                          JESSIE K. LIU
Assistant Attorney General for National Security        United States Attorney

By: /s/                                                 By: /s/
Heather N. Alpino                                       Jonathan Kravis
U.S. Department of Justice                              Luke Jones
National Security Division                              Kathryn Rakoczy
950 Pennsylvania Ave. NW                                555 Fourth Street NW
Washington, D.C. 20530                                  Washington, D.C. 20530
Telephone: (202) 514-2000                               Telephone: (202) 252-6886