**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR GRAND JURY INSTRUCTIONS REGARDING ORIGINAL AND SUPERSEDING INDICTMENTS

The United States of America, by and through undersigned counsel, respectfully opposes the motion of Defendant Concord Management and Consulting LLC ("Concord") for disclosure of grand jury instructions—regarding the original and superseding indictments—pursuant to Federal Rule of Criminal Procedure ("Rule") 6(e)(3)(E)(ii).  *See* Doc. 257.  The motion is without merit and should be denied.

Rule 6(e)(3)(E)(ii) authorizes disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  However, a defendant must show a "particularized need" or "compelling necessity" to justify such disclosure, given the "strong secrecy protections" surrounding grand jury matters.  *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 & n.6 (1958).  This is a "heavy burden," *United States v. Apodaca*, 287 F. Supp. 3d 21, 47 (D.D.C. 2017), met only in "exceedingly rare cases."  *United States. v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007).

Regarding the original indictment, Concord's motion (at 16-20) is based on unsupported and speculative allegations of government misconduct that are insufficient to justify the requested relief. *Apodaca*, 287 F. Supp. 3d at 47 ("speculation and unsupported assumptions" are no basis for breaching grand jury secrecy). In making these unsupported allegations, Concord repeats its earlier arguments in support of disclosure of grand jury instructions—primarily, that the government had shifted its theory of criminal liability as to the Foreign Agents Registration Act (FARA). *See* Doc. 217 (Concord's earlier motion). Concord's earlier arguments are "moot to the extent that they are corrected in the superseding indictment." *United States v. Wright*, 234 F. Supp. 3d 45, 48 (D.D.C. 2017). Even taken at face value, however, Concord's earlier claims provide no basis for disclosure of grand jury instructions, because Concord fails to articulate how such disclosure would advance an argument for dismissal, as required by Rule 6(e)(3)(E)(ii), let alone how disclosure would satisfy a "particularized need" or "compelling necessity," as required by the Supreme Court.

Regarding the Superseding Indictment, Concord repeats arguments presented in its recent motion to dismiss—regarding alleged violations of due process and the *mens rea* standard applicable in this case (*see* Doc. 256)—and speculates (at 23) that disclosure of grand jury instructions "very likely will reveal still more arbitrary government conduct that (i) contravenes due process guarantees and (ii) reveals misstatements on the law applicable to the single [18 U.S.C.] § 371 defraud-conspiracy count . . . ." Here again, Concord's unsupported allegations of government misconduct are not a basis for breaching grand jury secrecy. And Concord's legal challenges to the Superseding Indictment—regarding *mens rea* or otherwise—do not necessitate or justify disclosure of grand jury instructions. Accordingly, this is not one of the "exceedingly

rare cases" in which disclosure of grand jury material is justified, and Concord's motion should be denied.  *Naegele*, 474 F. Supp. 2d at 10-11.

## BACKGROUND

### I.     The Original and Superseding Indictments

On February 16, 2018, a grand jury returned an eight-count indictment against thirteen individuals and three corporate defendants, including Concord.  Doc. 1.  On November 8, 2019, a grand jury returned a superseding indictment, which differs in some respects from the initial indictment but nonetheless charges the same defendants with the same offenses.  Doc. 247.  The Superseding Indictment alleges (as did the original indictment) that the defendants "knowingly and intentionally conspired with each other . . . to defraud the United States by impairing, obstructing, and defeating the lawful functions of the government through fraud and deceit for the purpose of interfering with the U.S. political and electoral processes, including the presidential election of 2016."  Doc. 247 ¶ 2.  This conspiracy is charged in Count One as a violation of 18 U.S.C. § 371.  *See id.* ¶¶ 8-85.[1]

---

[1]     On May 14, 2018, Concord moved for *in camera* inspection of the legal instructions provided to the grand jury regarding Count One of the original indictment, "to determine whether the instructions provided could support a motion to dismiss."  Doc. 11.  Previewing its contemplated motion to dismiss, Concord asserted that the *mens rea* alleged in the original ndictment (requiring defendants act "knowingly and intentionally") was incorrect, and that a "willfulness" standard should apply.  *Id.* at 5-7.  The Government opposed, arguing that (1) Concord had failed to meet its legal burden of showing a "particularized need" or "compelling necessity" for such relief and (2) in any event, the premise of Concord's motion—that Count One was defective for failing to allege "willfulness"—was erroneous.  *See* Doc. 20.

On June 15, 2018, the Court denied the motion for *in camera* review without prejudice, noting that, if the Court were to rule against Concord regarding the applicable *mens rea*, the motion regarding grand jury material "would have no basis."  Doc. 28 at 2.  The Court concluded that "[t]his legal question should be decided before the Court considers reviewing secret grand jury proceedings."  *Id.*  On November 15, 2018, the Court ruled against Concord regarding the applicable *mens rea*, denying Concord's motion to dismiss and stating that the government "alleged the requisite intent" and "no more is required."  Doc. 74 at 25.

As this Court explained in denying one of Concord's earlier motions to dismiss, there are four elements of the offense charged in Count One—that is, a conspiracy to defraud the United States in violation of 18 U.S.C. § 371.  *See* Doc. 74 at 6-7 (Mem. Op. Nov. 15, 2018).  The government must prove that "'(1) [the defendants] entered into an agreement, (2) to obstruct a lawful function of the government or an agency of the government, (3) by deceitful or dishonest means, and (4) at least one overt act was taken in furtherance of that conspiracy.'"  *Id.* (quoting *United States v. Kanchanalak*, 41 F. Supp. 2d 71, 9 (D.D.C. 1999), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999)).

Count One alleges that the conspiracy included a Russian organization, defendant Internet Research Agency LLC (IRA), that conducted what it called "information warfare" against the United States to spread "distrust towards the candidates" in the 2016 election and "the political system in general" and to favor one candidate for President.  Doc. 247 ¶¶ 3, 6, 10.  Defendant Yevgeniy Prigozhin approved, supported, and funded the IRA's operations through other Russian entities that he directly controls, particularly defendant Concord Management and Consulting LLC and a second entity, defendant Concord Catering.  *Id.* ¶¶ 3, 11-12.

Describing the lawful government functions relevant to Count One, the Superseding Indictment explains that the United States, "through its departments and agencies, regulates the activities of foreign individuals and entities in and affecting the United States in order to prevent, disclose, and counteract improper foreign influence on U.S. elections and on the U.S. political system"  Doc. 247 ¶ 1; *see id.* ¶ 7.  The Superseding Indictment also identifies certain U.S. government agencies—the Federal Election Commission (FEC), the Department of Justice (DOJ), and the Department of State—that are charged with enforcing laws and regulations concerning such activities.  *Id.*  For example, the FEC "administers the Federal Election Campaign Act

('FECA')," which imposes limitations on certain contributions and expenditures and imposes reporting requirements. *Id.* ¶ 25.  DOJ "administers the Foreign Agents Registration Act ('FARA'), which makes it illegal to act in the United States as an "agent of a foreign principal . . . without following certain registration, reporting, and disclosure requirements established by the Act." *Id.* ¶ 26.  And the State Department is responsible for the issuance of non-immigrant visas, applicants for which must provide truthful information in response to questions on the visa application form. *Id.* ¶ 27.

The Superseding Indictment alleges that the defendants' fraud and deceit included, among other conduct, "obtaining visas through false and fraudulent statements, camouflaging their activities by foreign nationals as being conducted by U.S. persons, making unlawful expenditures and failing to report expenditures in connection with the 2016 U.S. presidential election, and failing to register as foreign agents carrying out political activities within the United States, and by causing others to take these actions."  Doc. 247 ¶ 7.  The Superseding Indictment alleges a host of additional deceptive means employed by the defendants to hide their Russian origin and to impede U.S. government functions, including surreptitious intelligence gathering in the United States by foreign agents, influence operations conducted through false online personas, and staging U.S. political rallies in the United States.  *See id.*  ¶¶ 29-38, 51-57.

## II.      Concord's Motion for Bill of Particulars and Subsequent Litigation

On May 24, 2019, the Court partially granted Concord's motion for a bill of particulars (Doc. 104), in which the defendant sought additional information regarding, among other things, allegations in the original indictment regarding FECA and FARA.  Doc. 136 (Order).  The Court stated that "[t]he indictment alleges that the defendants agreed to a course of conduct that would violate FECA's and FARA's disclosure requirements . . . and provides specific examples of the

kinds of expenditures and activities that required disclosure . . . , [b]ut the indictment does not cite the specific statutory and regulatory disclosure requirements that the defendants violated.  Nor does it clearly identify which expenditures and activities violated which disclosure requirements." *Id.* at 12.  Accordingly, the Court ordered the government to "[i]dentify any statutory or regulatory disclosure requirements whose administration the defendants allegedly conspired to impair," and, with respect to FARA, to "identify each category of activities that the government intends to establish triggered a duty to register as a foreign agent under FARA" and "identify for each category of activities which disclosure provisions the defendants or their co-conspirators allegedly violated." *Id.*

On July 5, 2019, the government complied.  *See* Doc. 176.  With respect to FARA, the government stated:  "The indictment alleges, and the evidence at trial will show, that the conspirators used social media platforms, political advertising, and political rallies to influence public opinion on political matters and to interfere in the 2016 U.S. presidential election.  Doc. 1 ¶¶ 32-57.  This conduct triggered FARA's reporting requirement. 22 U.S.C. § 612(a); *see* 22 U.S.C. § 611(c)(1)(i), (ii), (iv); *see also* 22 U.S.C. § 611(g), (h), (o)."  Doc. 176 at 3.

On August 19, 2019, Concord moved for a supplemental bill of particulars, claiming that, with respect to FARA, the government's bill failed to indicate "who was supposed to register or the name of the foreign principal to be disclosed."  Doc. 181 at 19.  On September 16, 2019, the Court held argument on the motion, at the conclusion of which the Court ordered that the government identify, to the extent it had not already, every individual or entity that the government will argue at trial was required to register under FARA as a foreign agent or was a foreign principal. *See* Sept. 16, 2019 Hrg. Tr. 49-51.  The government noted that the category identified by the Court was "not exactly the same thing" as the category of indicted and unindicted co-conspirators that

the government had disclosed in its earlier bill of particulars, which the government filed based on its understanding of the Court's May 24, 2019, ruling.  *Id.* at 51.  As the government explained, "it is possible for a conspirator to cause someone to violate . . . FARA reporting requirements without that person being a member of the conspiracy."  *Id.*

On October 4, 2019, the Government complied with the Court's September 16, 2019, order, explaining to Concord by letter that:

> The government intends to argue at trial that the defendants conspired to cause . . . individuals or organizations to act as agents of a foreign principal while concealing from those individuals or organizations the fact that they were acting as agents of a foreign principal and therefore either the individuals or organizations or the conspirators (or both) would have had a legal duty to register under [FARA].

Doc. 217-4.  The government's letter then listed the relevant individuals and organizations.  *Id.*

Following the September 16, 2019, hearing, the government also moved the Court to clarify or reconsider its interpretation of the original indictment as alleging a conspiracy to impair the FEC's administration of federal election disclosure requirements but not its related function of enforcing the ban on certain foreign election expenditures.  Doc. 201.  The Court denied that motion.  Doc. 209 (Oct. 2, 2019, Order denying Motion to Clarify).

On October 16, 2019, Concord moved for disclosure of instructions given to the grand jury, presenting claims that are repeated in the instant motion.  Doc. 217.  On October 30, 2019, the Government opposed Concord's motion (Doc. 224) and, on November 6, 2019, Concord filed its reply.  Doc. 230.

On November 8, 2019, a grand jury returned the Superseding Indictment.  Doc. 247.  On November 26, 2019, at the same time Concord filed the instant motion, Concord filed a motion to dismiss Count One of the Superseding Indictment.  Doc. 256.  On December 3, 2019, the government filed its opposition.  Doc. 266.

## LEGAL PRINCIPLES

Proceedings before the grand jury are surrounded by strong secrecy protections that serve compelling, historically grounded purposes. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 & n.6 (1958). "This indispensable secrecy of grand jury proceedings . . . must not be broken except where there is a compelling necessity." *Id.* at 682 (internal quotation marks and citation omitted). And there is "a presumption of regularity, with respect to grand jury proceedings, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Apodaca*, 287 F. Supp. 3d 21, 47 (D.D.C. 2017) (internal quotation marks and citation omitted).

Rule 6(e)(3)(E)(ii) provides a narrow exception: "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a court may only exercise its discretion under this rule "when the defendant succeeds in carrying the heavy burden of showing that a particularized need exists that outweighs the policy of secrecy." *Apodaca*, 287 F. Supp. 3d at 47.

Thus, only in "exceedingly rare cases" are defendants "able to make a factually based showing of particularized need for the production and inspection of grand jury materials." *United States. v. Naegele*, 474 F. Supp. 2d 9, 10-11 (D.D.C. 2007) (allowing inspection of grand jury minutes because government misled the grand jury about the existence of a page of a document that had been the basis for "[a]t least five counts of the original eleven-count indictment"); *see also Apodaca*, 287 F. Supp. 3d at 47-48. "Where a defendant fails to provide a discrete reason, and instead relies on speculation or unsupported assumptions, courts have made clear that disclosure

of grand jury minutes is not warranted." *Apodaca*, 287 F. Supp. 3d at 47 (collecting cases); *see also United States v. Borda*, 905 F. Supp. 2d 201, 204-06 (D.D.C. 2012) ("unsupported speculation" does not constitute a "particularized need").

## ARGUMENT

### I.     Concord Has Not Demonstrated a "Compelling Necessity" or "Particularized Need" to Break Grand Jury Secrecy Regarding the Original Indictment.

Concord asserts (at 16) that it "needs to see the [original grand jury instructions] because they will help establish whether the prosecutors have been truthful about what they said the Original Indictment charged." As purported support for its baseless suggestion of prosecutorial misconduct, Concord repeats (at 16-23) arguments presented in its earlier filing seeking disclosure of grand jury instructions that are now moot and, in any event, without merit. *See* Doc. 217 at 13-19 (earlier filing). Concord's claims, including its additional, unsupported allegations of misconduct, fail to establish a "compelling necessity" or "particularized need" for the requested disclosure, as required for relief under Rule 6(e)(3)(E)(ii).

Repeating its earlier claims, Concord contends that disclosure of the original grand jury instructions is necessary because, as Concord claims, the government "shifted" its theory of criminal liability in this case, and "the government's new theory of FARA criminality" and "its theory based on FECA's regulation of certain foreign expenditures" amounted to "an unconstitutional effort to constructively amend that Indictment." *Id.* at 17. Concord further claims (at 17), as it did before, that "the government's FARA theory also threatened Concord's Fifth Amendment double-jeopardy right by preventing Concord, this Court, and future courts from knowing exactly what Concord would (or would not) be tried for in this case." *See* Doc. 217 at

16-17.

Even assuming that Concord's claims had merit (which they do not), the claims are now moot in light of the Superseding Indictment.  *Wright*, 234 F. Supp. 3d at 49 (ruling that defendant's "concerns" regarding original indictment concerns were "moot to the extent that they are corrected in the superseding indictment"); *see also United States v. Wilson*, 26 F.3d 142, 152 (D.C. Cir. 1994) (supporting the view that a prosecutor may "seek[ ] a superseding indictment in order to cure procedural defects of the first one"); *United States v. Kanchanalak*, 37 F.Supp.2d 1, 3 (D.D.C. 1999) (finding that "the government can easily correct this defect by asking the grand jury to return a second superseding indictment containing the correct language" when the initial indictment did not match the text of the statute).  Concord appears to acknowledge that its arguments are moot based on the Superseding Indictment.  *See* Doc. 257 at (17) ("And that means 'that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form,'" quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)).

Even taking Concord's claims at face value, the relief sought—disclosure of grand jury instructions—is a *non sequitur*.  It was not necessary to break grand jury secrecy for Concord to present its asserted legal challenges to the sufficiency and scope of the original indictment—that is, its arguments alleging a "constructive amendment" or the risk of a double-jeopardy violation.  Both of those arguments turn principally on the language (or absence of language) in the charging document.  *See, e.g.*, *United States v. Hitt*, 249 F.3d 1010, 1016, 1026 (2010) (rejecting government's reading of indictment and affirming dismissal of charge).  They do not provide a

"compelling necessity" or "particularized need" for the requested disclosure, as required for relief under Rule 6(e)(3)(E)(ii).[2]

Throughout its filing, Concord repeatedly seeks to twist the events in this litigation to support a broad—but ultimately baseless—theory that the government has committed misconduct. For example, Concord asserts (at 19) that the government's opposition to Concord's earlier motion for disclosure of grand jury instructions was "muted" because the government "was manipulating the timing of various pleadings to either moot Concord's request or at least give the government a fresh opportunity to make arguments it intentionally held back the first time around."  This bizarre claim is untrue and unsupported, and it does not provide support for relief sought here.  *See Apodaca*, 287 F. Supp. 3d at 47 ("speculation and unsupported assumptions" are no basis for breaching grand jury secrecy).  Concord also contends (at 19) that the same government filing was "flatly misleading," because, in short, the government argued that Concord's motion for disclosure of grand jury instructions was meritless, even though the government was aware at the time that it was seeking a superseding indictment that would also moot Concord's arguments.  This claim is likewise bizarre.  Unless and until the grand jury returned a superseding indictment in this case, the government was required to prosecute this case based on the original indictment.[3]

Elsewhere, for example, Concord posits (at 7-8) that the government's October 4 letter was crafted in response to Concord's October 1, 2019, motion to strike as surplusage certain allegations regarding "racial issues," stating: "Just three days [after the motion to strike], the government proffered its brand-new theory of culpability that includes the argument that U.S. persons, who are

---

[2]    The government has elsewhere responded to Concord's premise that the government's theory of liability has impermissibly shifted.  *See, e.g.*, Doc. 266 at 15-17.

[3]    Contrary to Concord's description (at 19), the government did not argue that Concord could only present its "constructive amendment" claim at trial.  *See* Doc. 224.  In any event, there was nothing improper, or incorrect, about the government's argument.

predominantly African-American, were duped by the Defendants into failing to register under FARA.")  This is preposterous.  As noted above, the October 4 letter, which says nothing about "racial issues," responded to the Court's order during the September 16, 2019, hearing, and, indeed, it echoed the government's explanation at that hearing that, with respect to FARA, "it is possible for a conspirator to cause someone to violate . . . FARA reporting requirements without that person being a member of the conspiracy."  Sept. 16, 2019 Hrg. Tr. 51.  Here again, as with Concord's other baseless suggestions of government misconduct, Concord relies on speculation that is insufficient to justify breaching grand jury secrecy.[4]

## II.  Concord Has Not Demonstrated a "Compelling Necessity" or "Particularized Need" to Break Grand Jury Secrecy Regarding the Superseding Indictment.

Concord's purported grounds for disclosure of grand jury instructions regarding the Superseding Indictment all fail to provide the requisite "compelling necessity" or "particularized need" to justify the requested relief.  Taking Concord's arguments in turn, Concord first speculates (at 23-24) that the government failed to follow its own internal guidance regarding superseding indictments, citing only Concord's own notion of the government's "well-chronicled arbitrariness."  This is false.  More fundamentally, it is pure speculation, which is not a sufficient ground for requiring disclosure of grand jury material.  *Apodaca*, 287 F. Supp. 3d at 47.

---

[4]     Concord's accusations of misconduct (at 10-12) regarding paragraphs 48 and 51 of the Superseding Indictment, which describe, among other things, the role of "unwitting persons" in the conspiracy, likewise ring hollow.  Concord suggests (at 10) that the government concocted a pretext for seeking a superseding indictment—that is, its intention to incorporate allegations regarding the functions of the FEC—while nefariously hiding its intention to add a "new FARA theory."  This is false.  As the government has articulated elsewhere, there is no "new FARA theory."  *See* Doc. 266 at 15-17.  And there was nothing improper about the government's decision, in seeking a superseding indictment, to conform language in that document with the government's previous representations—in the context of a bill of particulars—regarding one of the ways in which the conspiracy interfered with the lawful functions of DOJ's enforcement of FARA.  *See id.* at 17.

Concord's second and third arguments (at 24-25) are based on the recent decisions in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019).  Concord cites these cases as support for its argument regarding what *mens rea* should apply in Count One, an argument presented in Concord's recent motions to dismiss.  *See* Doc. 256 at 34-43; Doc. 210 at 32-40 (same argument).  And Concord's fourth argument (at 25-27) likewise restates an argument presented in Concord's recent motion to dismiss, contending that the government's "unwitting Americans" "FARA theory" is "fundamentally flawed."  *See* Doc. 256 at 43-45.

The government has responded to these arguments, and it incorporates those responses here.  *See, e.g.*, Doc. 266 at 18-22 (responding to arguments regarding *Rehaif* and *Burden*), 22-24 (responding to argument regarding "FARA theory").  In any event, none of these arguments turns on the substance of the grand jury instructions, as Concord can raise these claims (as it has) by directly challenging the sufficiency and scope of the Indictment.  Accordingly, Concord has failed to establish that these arguments justify the requested disclosure.[5]

Concord argues (at 20-23, 26) that it is entitled to the relief it seeks because any "countervailing" reasons for maintaining grand jury secrecy are diminished in this case.  This argument is of no moment given that Concord has failed to demonstrate any need—let alone a "compelling necessity" or "particularized need"—for disclosure.  Concord has not cited any

---

[5]    At a minimum, Concord's request for disclosure based on *Reihaf*, *Burden*, and the "FARA theory" is premature, because the Court has yet to pass on whether the cited cases impact the *mens rea* standard in this case or whether the "FARA theory" is somehow invalid.  Facing a similar circumstance earlier in this case, the Court denied Concord's motion for *in camera* review of grand jury instructions without prejudice, noting that, if the Court were to rule against Concord regarding the applicable *mens rea*, the motion regarding grand jury material "would have no basis."  Doc. 28 at 2.  As the Court concluded, the "legal question" regarding *mens rea*, "should be decided before the Court considers reviewing secret grand jury proceedings."  *Id*.  The same reasoning applies here.

decision that has found a "compelling necessity" or "particularized need" to break grand jury secrecy under circumstances similar to those presented in this case, and Concord's arguments fail to justify doing so here.[6]

Members of this Court have not hesitated to deny motions for disclosure or even *in camera* review of grand jury material, including legal instructions, under circumstances where defendants identified arguably more compelling necessities than Defendant does here, but still failed to meet the "heavy burden" of breaking grand jury confidentiality. *See, e.g.*, *Apodaca*, 287 F. Supp. 3d at 21. (denying motion for *in camera* inspection of grand jury instructions where defendant claimed that extradition request contained an "incomplete statement of the law"); *United States v. Wright*, 234 F. Supp. 3d 45, 47–48 (D.D.C. 2017) (denying motion for disclosure of grand jury material where defendant questioned the date on which the grand jury was sworn, as well as "attempt" language in the indictment and the omission of the foreperson's signature on the publicly docketed indictment); *United States v. Trie*, 62 (D.D.C. 1998) (denying motion for disclosure of instructions given to grand jury where defendant alleged that government may have erred in defining "hard money" and "soft money" contributions under FECA). This Court should reject Concord's request for similar relief.

---

[6] The cases Concord cites (at 20-23, 26) in support of its argument that "countervailing secrecy concerns" are diminished in this case do not support its motion. *See, e.g.*, *United States v. John Doe, Inc.*, 481 U.S. 102 (1987) (a case regarding DOJ prosecutors' disclosure of grand jury material to DOJ civil division attorneys); *United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150 (1940) (affirming the district court's refusal to require the government to provide defendant grand jury transcripts upon which the government relied to refresh witnesses' recollections at trial); *In re Application of the Committee on the Judiciary*, 2019 WL 5485221 (D.D.C. Oct. 25, 2019) (weighing grand jury secrecy concerns against Congress's need to access material relevant to potential impeachable conduct by a President). These and other cases cited by Concord do not support a conclusion that this is one of the "exceedingly rare cases" in which disclosure of the requested material is justified under Rule 6(e)(3)(E)(ii). *Naegele*, 474 F. Supp. 2d at 10-11. Concord has simply not met its "heavy burden." *United States v. Apodaca*, 287 F. Supp. 3d at 47.

## CONCLUSION

For the foregoing reasons, the Court should deny Concord's motion.

Respectfully submitted,


JOHN C. DEMERS                                          JESSIE K. LIU
Assistant Attorney General for National Security        United States Attorney

By: /s/                                                 By: /s/
Heather N. Alpino                                       Jonathan Kravis
U.S. Department of Justice                              Luke Jones
National Security Division                              Kathryn Rakoczy
950 Pennsylvania Ave. NW                                555 Fourth Street NW
Washington, D.C. 20530                                  Washington, D.C. 20530
Telephone: (202) 514-2000                               Telephone: (202) 252-6886