IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CONCORD MANAGEMENT AND<br>CONSULTING LLC,<br><br>Defendant. | CRIMINAL NUMBER:<br><br>1:18-cr-00032-2-DLF |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S
REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY OF
MATERIALS FROM THE U.S. DEPARTMENT OF JUSTICE,
FEDERAL ELECTION COMMISSION, AND U.S. DEPARTMENT OF STATE**

Pursuant to Fed. R. Crim. P. 16, Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by and through undersigned counsel, respectfully submits this Reply in Support of its Motion to Compel Discovery of Materials from the U.S. Department of Justice ("DOJ"), Federal Election Commission ("FEC"), and U.S. Department of State ("DOS"). *See* ECF No. 251 (the "Motion to Compel" or "Mot.").

I.   **INTRODUCTION**

Months ago, Concord made two straightforward requests for documents and information from the three government agencies whose functions are at the heart of the government's conspiracy charge. In that regard, the Common Cause Request sought all materials from the DOJ or FEC related to a complaint filed by Common Cause containing allegations that mirror those in the Indictment, and the *Brady* Request sought documents and information from DOJ, FEC, or DOS that any Defendant or unindicted coconspirator was not required to register with the DOJ, file any report with the FEC, or provide additional information to DOS. *See* Mot. at 1. The requested materials are from the government agencies that are alleged in the Indictment to be the victims of this make-believe crime. The government has offered no principled or credible reasons that this

1

discovery should not be ordered. The documents are easily accessible by the prosecutors and material to Concord's defense and thus the requested discovery should be provided.

Simply put, the government's positions in responding to these requests—which went unanswered for months—are indefensible. The government maintains that any documents or information within these agencies are not discoverable because they are not within the possession, custody, or control of the trial team, and unilaterally declares that the documents or information could not possibly be material to Concord's defense, *see* Opp. at 5, 6, 9-12, ECF No. 262, even though these agencies are the alleged victims, and the government intends to call witnesses to testify about the operations of each agency. *See* Govt Opp. Mot. Compel Compliance R. 16 at 7, ECF No. 254. On one hand the government says that the documents are not relevant because in this conspiracy case it only has to prove an unlawful agreement as opposed to actual interference, while on the other hand the government is proceeding to trial on an Indictment that alleges actual interference. The government cannot have it both ways. Here, it is apparent that the requested documents relate directly to the alleged functions of these government entities—an issue which the parties have been litigating for well over a year and about which the government intends to call witnesses at trial. Concord's requests accordingly seek information that is both within the possession, custody, and control of the prosecution and material to Concord's defense. The Court should grant Concord's Motion to Compel.

## II.   LAW AND ARGUMENT

The parties are in agreement that the government must disclose documents that are material to preparing the defense and within the government's possession, custody or control. Fed. R. Crim. P. 16(a)(1)(E)(i). Both requirements are met as far as the requested discovery is concerned. Nothing in the government's Opposition provides to the contrary.

### A. The Requested Documents and Information Are In the Government's Possession, Custody, or Control

The government argues that because the FEC and DOS are not "part of the 'prosecution team' that investigated this case," they cannot be considered closely aligned with the prosecution, and so any records would not be in the government's possession, custody, or control for purposes of Rule 16. Opp. at 12. This argument ignores the controlling law and the positions taken by the government in this case.

As to the law, the government disregards the relevant test in this Circuit for determining "possession, custody, or control," which "has been more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue of whether the documents are in the physical possession of the prosecutor." *United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006) (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989)); *see also United States v. Archbold-Manner*, 581 F. Supp. 2d, 22, 24 (D.D.C. 2008) ("The 'control' prong of the Rule 16 test generally focuses on the fairness to the defendants rather than the semantics of whether or not the prosecutors actually hold the evidence at the time that it should be produced.") (internal citations omitted). Here, both factors—fairness to Concord and the government's ease of access—weigh in favor of disclosure.

The government admittedly intends to introduce testimony from "employees or officials" from the FEC, DOJ, and DOS regarding "the lawful functions of the three agencies whose functions the Indictment alleges the defendants conspired to obstruct." Govt Opp. Mot. Compel Compliance R. 16 at 7. According to the government, this testimony will include "the statutory and regulatory responsibilities and authorities of these agencies and how they fulfill these responsibilities." *Id.* at 3. So while the government has possession and control of the FEC, DOJ, and DOS employees for its purposes, it argues that it lacks such possession and control when Concord's interests are concerned. The law condemns this type of duplicity. *See Libby,* 429 F.

3

Supp. 2d at 11 ("Such a result would clearly conflict with the purpose and spirit of the rules governing discovery in criminal cases [. . .] because [the prosecutor] 'has benefitted from the cooperation of [another agency], . . . he cannot now, in fairness, be permitted to disclaim all responsibility for obtaining [that agency's] documents . . . .'") (citation omitted).

In support of its position, the government ignores cases in this circuit and instead relies solely on two irrelevant out-of-circuit cases, *United States v. Pelullo*, 399 F.3d 197 (3rd Cir. 2005) and *United States v. Morris* 80 F.3d 1151 (7th Cir. 1996), dealing with post-trial *Brady* issues. In *Pelullo*, the court described the general principal as "the prosecution is only obligated to disclose information known to others acting on the government's behalf in a particular case." 399 F.3d at 218. It concluded that the civil component of the Department of Labor (DOL) was not part of the prosecution team because there was no joint investigation, no shared labor or resources, or any indication that the prosecution had control over the agency officials who were collecting the documents. *Id. Pelullo* is irrelevant because the DOL office in question was not the victim agency, the court determined on appeal that there was no *Brady* violation, and the defendant had knowledge of and access to the documents. Further, there is no indication in the decision that the prosecution requested documents from that DOL office or called witnesses from the agency to testify at trial. Likewise, *Morris* held that no *Brady* violation occurred regarding documents allegedly held by the Office of Thrift Supervision, SEC, and IRS where none of these agencies were the victims of the charged conduct, the documents were available to the defense through the exercise of reasonable due diligence, and the prosecutor was unaware that the agencies held any exculpatory evidence and agencies were not part of investigative or prosecution team. *Id.* at 1169. Here, however, the facts are different and the result must be as well. Employees or officials from each of these

agencies apparently will be witnesses at the trial, and these agencies are the alleged victims of the

conspiracy, and as such a corresponding discovery obligation must follow.[1]

### B.   The Documents and Information Sought in the Requests are Material to Concord's Defense

With respect to materiality, the government acknowledges that "material to preparing the

defense" means "the defendant's response to the government's case in chief."  In support, the

government cites *Libby*, as well as *United States v. Apodaca*, 287 F. Supp. 3d 21, 38-39 (D.D.C.

2017), which recognized that "Rule 16 establishes 'the minimum amount of discovery to which

the parties are entitled" and that "'[i]t is not intended to limit the judge's discretion to order broader

discovery in appropriate cases.'"  287 F. Supp. 3d at 39 (citing *United States v. Karake*, 281 F.

Supp. 2d 302, 306 (D.D.C. 2003)).   In applying these basic legal principles, however, the

government sets up, and then knocks down, a strawman.

Thus, the government starts by condescendingly asserting that Concord "appears to

misapprehend the crime charged," and argues that the requested materials "could have no bearing

on the nature of the conspirators' agreement . . . *unless* the conspirators possessed that information

when they formed the conspiracy."  Opp. at 9-11.   But Concord never argued that the requested

information is material to its state of mind.  Rather, as plainly set forth in Concord's Motion, the

requested materials are directly relevant to the allegations in the Superseding Indictment relating

to the functions of the FEC, DOJ, and DOS, *Id.* at ¶¶ 7, 9, 25-27, and therefore are material to

Concord's defense.  The government admits that it has not asked the FEC or the DOS for any of

the requested information, and that it has not asked DOJ for any information regarding the

Common Cause Complaint.  Opp. at 2, 5, 6.  Instead, it simply has declared that pursuant to its

---

[1] The government also argues that its request for other documents from the DOS "does not alter the Rule 16(a)(1)(E) or Brady analysis with respect to 'possession, custody, or control.'" Opp. at 13.  Again, in making this argument the government ignores the controlling "ease of access" element in *Libby* and the fact that the government intends to call witnesses from the DOS at trial.

reformulation of Concord's argument, the requested information cannot possibly be material or exculpatory. The core of the government's argument is that this case involves only theoretical interference with DOJ, FEC and DOS because only a conspiracy is alleged. But this argument ignores the plain language of the Indictment that charges actual interference.

The government cannot have it both ways. Here, materiality is established because of the plain language of the Indictment and the fact that the government intends to call witnesses from the FEC, DOJ, and DOS to testify about the functions of these agencies. Having taken that step, it cannot turn around and claim that Concord's requests for information from those agencies about their functions relating specifically to the Indictment here is not material to Concord's defense. *See* Govt Opp. Mot. Compel Compliance R. 16 at 3, 7. To make the point more emphatically, in the government's own words, in order to prove that the Defendants conspired to defraud the United States by "interfere[ing] with the lawful functions of the [FEC, DOJ, and DOS] in monitoring, regulating, and enforcing laws concerning foreign influence and involvement in U.S. elections and the U.S. political system . . . *[t]he government intends to introduce testimony from fact witnesses discussing the statutory and regulatory responsibilities and authorities of these agencies and how they fulfill these responsibilities*." *Id.* at 3 (emphasis added). Yet in its Opposition to the Motion to Compel, the government argues against the materiality of the requested records by insisting that the "Court will instruct the jury as to any legal obligations—under FECA, FARA, or otherwise—that are relevant to the jury's consideration of the evidence" and the "views of persons within the federal government about whether, based on certain facts, the defendants would have had to file disclosures under FECA, register under FARA, or provide additional information to the State Department are simply not material to the jury's evaluation of the facts of this case." Opp. at 10. These positions are irreconcilable and the government's argument in response to Concord's Motion is not credible in light of the manner in which it intends to prove its case.

6

The Common Cause Request seeks documents and information related directly to the Indictment and to the issue of how the FEC and DOJ functioned and responded to allegations mirroring those set forth in the Indictment. This information is material to Concord's defense of rebutting the allegations in the Indictment regarding the function of these agencies and whether the defendants' alleged deception was capable of impairing, obstructing, or defeating those functions.[2] This meets even the government's articulated standard of materiality, because it relates directly to allegations in the Indictment. *See* Opp. at 8 (citing *Libby*, 429 F. Supp. 2d at 7, for proposition that starting place for materiality is the indictment). Similarly, the *Brady* Request seeks information material to Concord's defense that the Defendants and their unindicted co-conspirators did not have an obligation to report with the FEC, register with FARA, or provide additional information on visa applications. The government repeatedly has argued that the Indictment alleges that the defendants had a duty to report to the FEC and register with FARA, and that their failure to do so constitutes deception sufficient to prove guilt. *See, e.g.,* Govt Opp. Renewed Mot. Dismiss at 15, ECF No. 219; Sept. 16, 2019 Hr'g Tr. at 18:23-19:6. Accordingly, if the information sought in the *Brady* Request exists, it is material to Concord's defense and the government should be compelled to produce it.

---

[2] Concord has long argued the materiality of the Common Cause Complaint, citing it as early as August 2019 in its Motion for Supplemental Bill of Particulars at 12-13, ECF No. 181 ("FEC had the opportunity to make determinations whether the advertisements allegedly posted by IRA constituted express advocacy, and apparently declined to do so. In particular, Common Cause filed a complaint with the FEC in September 2017 alleging that prohibited political advertisements were posted to Facebook by accounts operating out of Russia and constituted violations of FECA. The FEC has taken no action on this complaint. . . . There has been no discovery provided to date regarding the FEC's position on any of the advertisements alleged in the Indictment or otherwise identified in the discovery.")

### III. CONCLUSION

For the reasons set forth above, the requested records are material to Concord's defense and in the possession, custody, or control of the government. As such, the Court should grant Concord's Motion.

Dated:  December 4, 2019

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar. No. 419412)
Katherine Seikaly (D.C. Bar. No. 419412)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com