**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION FOR DISCLOSURE OF LEGAL INSTRUCTIONS GIVEN TO THE GRAND JURIES THAT RETURNED THE ORIGINAL AND SUPERSEDING INDICTMENTS**

## I.     Preliminary Statement

In reviewing its opposition to Concord's motion for disclosure of the legal instructions given to both grand juries, one is left to wonder what the government is fighting about. Controlling law calls for the disclosure of grand jury instructions when there are doubts about their accuracy, secrecy concerns are not paramount, and a possible injustice can be avoided. The government never disputes that there are no secrecy concerns at work here. Indeed, just last week, the government produced in discovery a subset of grand jury transcripts from both grand juries. While the timing of this production—unilaterally labeled by the government as "U.S. Sensitive discovery"—remains a mystery, it clearly shows that the government relied at least in part on the novel concept of ███████████████████████████ in seeking and then obtaining the Superseding Indictment. That disclosure not only reflects that secrecy concerns are absent, but it begs the question of what legal instructions—concerning the relevant complex and obscure statutory schemes—were given to the grand jury as well.

As for the doubts on accuracy, the government cannot credibly deny that its charge against Concord has shifted and evolved to the point where it now encompasses allegations that go beyond anything actually stated in the Original Indictment.  When the machinations leading up to the Superseding Indictment and the allegations in that Indictment are folded in, the record leaves the indelible impression that a profound disparity exists between what the grand jury was told and what this criminal case has become.  Indeed, with the disclosure of the ████████ ████████████████████████████████████████████ relevant to the conspiracy charge sought and later obtained, that impression has hardened even more.  In its particulars, ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ The latter omission is particularly pertinent given the government's intended desire to try to prove obstruction of the Department of Justice's ("DOJ") administration of FARA through the conduct of non-U.S. persons acting *outside* the United States.

As to a possible injustice, if a grand jury is misinstructed or the instructions are incomplete or misleading—particularly in the fashion already described—there is a prejudicial injustice supporting dismissal of this prosecution based on the departure from the black-letter constitutional safeguards that govern grand juries.  Beyond that, given the disparities between the two Indictments and the way the Superseding Indictment came to be, there is ample reason to think that disclosure of the legal instructions will provide further evidence substantiating the arbitrariness of this prosecution.

So, with the departure from the Original Indictment, the prosecutorial machinations, the disclosure of the misleading ████████████████████████████████████████, the undisputed absence of any secrecy concerns, and the apparent threat of an injustice, one would expect the prosecution—bound as it is to do "justice[,]" *Berger v. United States*, 295 U.S. 78, 88 (1935)—to agree that there *should* be disclosure of the legal instructions here in order to satisfy Concord and this Court that the efficacy of the grand jury process has been preserved and no arbitrariness is evident.  But the government takes a different tack, vigorously protesting that Concord is not entitled to the legal instructions because it has staked its claim for disclosure solely on prosecutorial misconduct and its case for misconduct is based on speculation and conjecture, which is not enough.  Since the government is the only one who knows what instructions actually were given to each grand jury—beyond the witness testimony already disclosed—accusing Concord of speculating while the government knows the truth comes off as unfair to say the least.  Moreover, Concord's grounds for disclosure go beyond attorney misconduct—namely, that the instructions were incomplete, erroneous, or even misleading.  And equally importantly, there is a more-than-credible case, built on the record of the government's own making and reasonable inferences from it, that the sort of arbitrary treatment that has characterized this prosecution from inception will be exposed by the legal instructions given. The particularized need for disclosure thus arises directly from the record the government made in its incessant efforts to formulate and re-formulate its conspiracy claims, up to and including the Superseding Indictment, in order to obtain a conviction no matter what the cost.

Here, the government's cavalier approach to the charges—in and out of court—and its lack of regard for the binding limitations in an indictment, raise serious doubts about the substance of what the grand juries were told with respect to the charges being made and the

burden of proof needed to sustain them.  These doubts are not based on an isolated remark or some perceived ambiguity, but on a persistent course of conduct that evokes a distinct lack of regard for the principles governing indictments on the one hand, and the arbitrary nature of this prosecution on the other.  For both reasons, disclosure of the legal instructions given to the grand jury should be ordered "'to avoid a possible injustice'" in this unprecedented criminal proceeding.  *In re Application of the Committee on the Judiciary, U.S. House of Representatives, for an Order Authorizing the Release of Certain Grand Jury Materials*, No. 19-48 (BAH), 2019 WL 5485221, at *33 (D.D.C. Oct. 25, 2019) (Howell, C.J.) (quoting *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (Scalia, J., joined by Mikva & Bork, JJ.)) (other citation omitted). The motion should be granted.[1]

## II.    Argument

### A.    The Government's Primary Argument On Why Concord Has Not Shown A Particularized Need For Disclosure Is Misdirected.

In the face of Concord's particularized showing supporting disclosure of the grand jury instructions, the government pivots to an argument it thinks it can win:  it narrowly describes Concord's particularized need for disclosure of the instructions as one involving prosecutorial misconduct, an assertion it labels as unsubstantiated and based on speculation and conjecture. ECF 268 ("Gov't Opp.") at 2, 12.  Since speculation and conjecture are insufficient to justify disclosure in the first instance, the government claims, that ends the inquiry and secrecy considerations need not even be addressed.  *Id.* at 13.  There are multiple problems with this line of argument infecting both its premise and conclusion.

Starting with the premise, as to either set of grand jury instructions, Concord's arguments for disclosure are not based solely on prosecutorial misconduct.  To be sure, Concord makes the

---

[1]    The government studiously avoids mentioning *In re Sealed Case*, *In re Application of the Committee on the Judiciary*, and the controlling standard those cases set forth.

case—based on the undisputed record and reasonable, even ineluctable, inferences from that record—that if the grand jury instructions were revealed to be incomplete or misleading, that likely would reveal the government's arbitrary conduct as well.  ECF 257 at 13, 18, 20.  But Concord also staked its particularized need for disclosure elsewhere.  What it argues—clearly and unmistakably—is that the government's machinations, right up to the newly-minted allegations in the Superseding Indictment, have created the requisite particularized need to see what instructions actually were given to both grand juries.  *Id.* at 16–20.  Whether attorney misconduct ultimately is revealed, as Concord believes it will be, the rationales for disclosure remain.  The factual substantiation for Concord's showing is chronicled in its motion and comes from the record the government has made through months and months of litigation.  *Id.* at 5–13.  With respect to what is being charged or prosecuted in this case, from the start there has been only duplicity and evasion.

As for the government's conclusions, controlling law brings it up short here as well.  To demonstrate the requisite particularized need for disclosure, Concord need only raise doubts about the accuracy of the instructions given and show the possibility of an injustice, and that threshold has been met for reasons Concord has articulated.  The government stridently denies that it was engaged in any manipulation or arbitrariness in arriving at its legal theories and contends Concord's assertions to the contrary are unfounded.  Gov't Opp. at 11–12.  But the government does not say—because it cannot—that Concord has the chronology wrong, or the government's acts and omissions wrong, or the Court's responses wrong, or any other fact wrong that manifests the need for disclosure for the reasons Concord advances.  Nor, in fact, does the government ever say that Concord's showing does not meet the controlling "possible-injustice" standard—again, because it can't.  And the hand-off from the Special Counsel, who originally

indicted the case without any participation from the United States Attorney in this district, to the

U.S. Attorney who, without any participation from the Special Counsel, then sought and

obtained a second, superseding indictment, likewise warrants not even a mention.

The recently disclosed ███████████████████, as noted, only serves to heighten

the particularized need for disclosure in this case.  For one thing, the ██████████████████

████████████████████████████████████████████████████████████████████████

begging the question of how the grand jury was actually instructed on these complex and obscure

statutes.[2]  **Ex. 1**.  The testimony also leaves the distinct—but erroneous—impression that ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████.  *Id. generally*; *see also* ECF 274 at 14-21; *Bluman v. FEC*, 800 F. Supp. 2d

281, 292 (D.D.C. 2011) (Kavanaugh, J.) (observing that "[t]here are many aliens in this country

who no doubt are unaware of the statutory ban on foreign *expenditures*" and stating that the

government must prove a "defendant's knowledge of the law" to support "criminal penalties for

violations of" FECA's prohibition of certain election-related expenditures by foreign nationals)

(citations omitted).  And, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

---

[2]     *See Citizens United v. FEC*, 558 U.S. 310, 334 (2010) ("Campaign finance regulations now impose 'unique and complex rules'" (citation omitted)); Covington Alert, *The Foreign Agents Registration Act ("FARA"): A Guide for the Perplexed* (July 27, 2019), *available at* https://tinyurl.com/sahpcpy (FARA is a "famously vague criminal statute"—"complicated, arcane, and loosely worded"); *see also United States v. Craig*, 401 F. Supp. 3d 49, 83–84 (D.D.C. 2019) (dismissing FARA criminal count under rule of lenity due to ambiguity in provisions).



**Ex. 1** at 17:2–6; 17:17–20; 17:21–18:1 (emphasis added).

Worse still, while the

*See* 22 U.S.C. § 611(c)(i)-(iv).  Although the

.  And that incomplete and misleading depiction could very well explain how the grand jury here could charge the government's flawed new FARA theory—which, as the government itself has recently described it, extends to non-U.S. persons engaged in conduct outside the U.S.  ECF 274 at 15-16, 22-23.  Given the vagaries in the description offered, the need to see the instructions given becomes even more compelling.

Turning to the secrecy considerations, the government's effort to take them off the table is just as infirm.  Secrecy considerations are an inherent part of the disclosure calculus and the extent to which those considerations are, or are not, in the balance matters in this case as it would in any other.  That is, when grand jury disclosures are in issue, a court "*must* 'weigh carefully the competing interests in light of the relevant circumstances and standards[,]'" including secrecy considerations, in resolving requests for disclosure of grand jury materials.  *In re Sealed Case*,

801 F.2d at 1381–82 (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983) (internal citation and quotation marks omitted) (emphasis added)). Most importantly here, "'as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [material] will have a lesser burden.'" *In re Application of the Committee on the Judiciary*, 2019 WL 5485221, at *33 (quoting *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)). A defendant satisfies his burden under Rule 6(e)(3)(E)(ii) by showing "that the information 'is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only material so needed.'" *United States v. Campbell*, 324 F.3d 497, 489–99 (7th Cir. 2003) (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979)).

In this regard, that the government's failure to advance any particularized secrecy considerations, or to even suggest such considerations are in play, is enormously consequential. It is, after all, the need for, and interest in, secrecy that is the linchpin for maintaining confidentiality. When that need or interest is absent, as it indisputably is with respect to the legal instructions here, there is nothing to balance against the need for disclosure. Why keep something secret when there's no reason to keep it secret? "Just because" is no answer. Here, Concord has provided a factual record supporting a particularized need for disclosure and none of the rationales for protecting sitting grand juries or witnesses or evidence are present. As Chief Judge Howell recently concluded in a decision implicating the same underlying Special Counsel investigation, all of this tilts the balance in favor of disclosure. *See In re Application of the Committee on the Judiciary*, 2019 WL 5485221, at *36.

Here again, the ▮▮▮▮▮▮▮ already disclosed reinforces the point. As noted, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



**Ex. 1** at 3:18-18:1.

. *Id.* at 18:15-34:4.  This disclosure only further confirms that there are no genuine secrecy concerns implicated here.  If anything, the government's selective stand on disclosure of the legal instructions, even while it willingly discloses grand jury witness testimony, and                                                        , only raises further misinstruction and arbitrariness concerns.  Concord thus has made its case for disclosure and the government has offered nothing that should stand in the way of granting it.

> **B.**    **The Government's Remaining Arguments For Withholding Disclosure Are Meritless.**

The government makes a handful of additional responses to Concord's explanation of why disclosure likely will provide further support for the arbitrary nature of this prosecution.  It advances the notion that there has been no arbitrariness, rejects the contention that there is any controversy over the burden of proof, claims Concord has shown no basis for dismissal, and offers a catch-all refrain that since Concord is already making its arbitrariness argument in its motion to dismiss, there is no need for disclosure in any event.  Gov't Opp. at 9–13.

Turning to its last catch-all first, the fact that Concord has made a motion to dismiss based on arbitrary prosecution is hardly a reason to reject its attempt to add further evidence of arbitrariness—here, as revealed by the legal instructions given or not given to the grand jury in pursuit of the government's relentless march to convict Concord of something at all costs.[3]

Looking next at the burden of proof, if, as Concord has established, *Rehaif v. United States*, 139

---

[3]    This same rejoinder applies to the government's assertions that Concord can independently raise its constructive amendment or Fifth Amendment concerns at trial.  Gov't Opp. at 11 n.3.  That does not in any way change the relevance of these concerns to Concord's arbitrary prosecution claim or reflect on why they provide further support for a particularized need for disclosure here.

S. Ct. 2191 (2019) and *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019) compel a heightened burden of proof for the government's § 371 defraud conspiracy, then that provides a basis, as the authorities cited by Concord's motion establish, for disclosing the instructions, not refusing to do so.

As for the asserted lack of arbitrariness, the government makes (and repeats) the point that the Original Indictment encompassed all the theories it now advances and the Superseding Indictment simply has lent further clarity to those theories.   Gov't Opp. at 12 n.4.   As the government would have it, there is no reason to complain about the way its theories have evolved and no conceivable doubts are raised by how they have evolved—just business as usual with the transition from the Original to the Superseding Indictment.   Whatever deficiencies may have existed before, the government continues, they are mooted by the Superseding Indictment, which clarified and fixed them—just the proverbial "no harm, no foul."   Gov't Opp. at 10.   At first glance, this sounds good in the telling, but it collapses on analysis.

If everything was so clearly set forth in the Original Indictment, it is hard to explain the tortuous process that has moved from a motion for a bill of particulars, to a supplemental bill of particulars, and now to a further supplemental bill of particulars.   These pleadings expose that the Original Indictment gave no indication of the "expenditure" or "unwitting individual" theories related to FECA or FARA, despite the government's assertions to the contrary.   ECF 274 at 12-13.   These pleadings and the record further expose that the government has moved the target—constantly—up to and including the Superseding Indictment, which amends, in material ways, the Original.   *Id.* at 23-24.   All of this followed in the wake of the government's assurance first, that there would be no Superseding Indictment, and then, that there would be one, but just to clarify its expenditure theory.   Simply put, the entire course of conduct raises grave doubts

about what the grand jury was or was not told about the charges actually being made.  These doubts translate into equally grave concerns that the grand jury was misinstructed or that arbitrary conduct is again at work based on the instructions given.  And these concerns have been elevated to a whole new level in light of the ████████████████████████, ████

████████████████████████████████████████████████████████████████

████████  *See* **Ex. 1**.  The need for disclosure in these circumstances, unburdened by any secrecy concerns, is exactly what controlling law envisions to avoid a possible injustice.

Perhaps more fundamentally, if the government is so sure that its legal instructions to the grand jury, including with respect to its newly-minted FARA theory, are untainted by arbitrariness as Concord suggests—and the government never actually says they are—why not disclose them and settle the matter?  Rather than assuming the conclusion the government says the record provides, why not make the record?  Absent that, Concord has demonstrated why the legal instructions, old and new, would substantiate its case for dismissal on arbitrariness grounds, and the recently disclosed grand jury testimony only reinforces that argument.  An arbitrary prosecution is unjust and unconstitutional.  Averting and halting it is a reason for disclosing the instructions, not concealing them.

Finally, the government inexplicably insists that Concord's motion should be denied because Concord has not indicated how disclosure of the grand jury instructions will support dismissal.  Gov't Opp. at 2.  Concord has, however, advanced two independent grounds for dismissal, each of which would be supported by the requested disclosure.  ECF 257 at 13, 16–20.

First, as Concord noted, if the legal instructions are determined to be misleading due to mistakes or omissions or inaccuracies, that can support the dismissal of an indictment.  "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information

concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, No. S2 92 Cr. 1082 (SWK), 1994 WL 319367 at *4 (S.D.N.Y. June 29, 1994) (quoting *People v. Calbud, Inc.*, 402 N.E.2d 1140, 1143 (N.Y. 1980)). "[W]here a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from the substantial influence' of the erroneous instruction." *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) (quoting *United States v. Peralta*, 763 F. Supp. 14, 21 (S.D.N.Y. 1991) (dismissing indictment for "misleading statements of law")); *see also United States v. Anderson*, 61 F.3d 1290, 1296-97 (7th Cir. 1995) (weighing claim that prosecutor's instruction to grand jury "had the effect of misinforming the jury on the applicable law"). The government does not suggest that these principles have no application here, and the recently disclosed grand jury testimony shows, at a minimum, the likelihood the grand jury was misinstructed on the law.

Second, Concord also explained how and why disclosure could support its pending motion to dismiss on the basis that this is an arbitrary prosecution that violated due process. The government acknowledges the argument but finds it unpersuasive for various reasons based on its view of its own conduct. Once again, however, the government does not suggest that the presence of an arbitrary prosecution violating due process would not support dismissal. Plainly, it would—and does—and this case is no exception.

## III.   Conclusion

Disclosure of the grand jury instructions—both the previous ones and the new ones— manifestly is "need[ed] to avoid a possible injustice" to Concord, *In re Application of the Committee on the Judiciary*, 2019 WL 5485221, at *33, and there are no countervailing secrecy reasons for keeping them under lock and key. The Court should therefore grant Concord's

motion seeking the instructions and rule accordingly.

Dated: December 10, 2019

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By:  /s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

James C. Martin[*]
Colin E. Wrabley[*]
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
412.288.3131 (phone)
412.288.3063 (fax)
jcmartin@reedsmith.com
cwrabley@reedsmith.com

[*]*Admitted Pro Hac Vice*

# Exhibit 1

To Reply in Support of Defendant Concord Management and Consulting LLC's Motion for Disclosure of Legal Instructions Given to the Grand Juries that Returned the Original and Superseding Indictments, 18-cr-32-2-DLF

## (FILED UNDER SEAL)