**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S REPLY IN SUPPORT OF
## MOTION FOR EARLY RETURN TRIAL SUBPOENA

The records sought by the government's proposed trial subpoena to defendant Concord Management and Consulting LLC are relevant and likely admissible under the Federal Rules of Evidence. Moreover, the document requests set forth in the proposed trial subpoena are reasonably specific because there is a sufficient likelihood, based on information gathered in the course of the investigation, that the documents sought constitute relevant and admissible evidence. Concord's objections to the proposed subpoena are without merit. Concord has not met its burden to show that the proposed subpoena requires it or any other entity to violate Russian law, and in any event the foreign laws cited by Concord do not render the trial subpoena unreasonable or oppressive. Concord cannot avoid the jurisdiction of this Court to authorize a trial subpoena by invoking its status as a foreign corporation because Concord has voluntarily entered an appearance in this case and thereby subjected itself to the jurisdiction of this Court. Finally, the trial subpoena will not jeopardize the Court's trial schedule. Accordingly, the government's motion should be granted.

### I.      The Proposed Trial Subpoena Meets the Requirements of Rule 17(c)

A party seeking an early-return trial subpoena under Federal Rule of Criminal Procedure 17(c) must show "(1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Binh*

*Tango Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)).   Concord does not dispute that the requested documents are relevant.   Instead, Concord argues that the requested documents are not admissible and that the subpoena is insufficiently specific.   Those arguments are without merit.

Because "it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents," the first two prongs of the test are satisfied so long as the documents sought are "arguably… admissible under the Rules of Evidence."   *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006).   Here, the requested documents are not just "arguably" admissible, they are almost certainly admissible under multiple rules of evidence.   The records sought in categories one through six and nine are business records.   *See* Fed. R. Evid. 803(6); *see, e.g.*, *United States v. Ford*, 435 F.3d 204, 214-215 (2d Cir. 2006) (upholding admission of calendar as business record); *United States v. McPartlin*, 595 F.2d 1321, 1348 (7th Cir. 1979) (same and collecting cases to the same effect); *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988) (upholding admission of ledger of company financial transactions as business record and collecting cases to the same effect).   The records sought in categories seven and eight are likely admissions of a party opponent and co-conspirator statements in furtherance of the conspiracy charged in the Indictment.   *See* Fed. R. Evid. 801(d)(2)(D) (statement of agent or employee of an opposing party is not hearsay); Fed. R. Evid. 801(d)(2)(E) (statement by co-conspirator in furtherance of conspiracy is not hearsay).   Contrary to Concord's suggestion (Doc. 273, at 7), the Court need not "assume that there was, in fact, a conspiracy, and that Concord participated in the alleged conspiracy in exactly the way" that the Superseding Indictment describes in order to grant the government's motion.   Rather, as *Libby* makes clear, because a trial subpoena is issued at the pretrial stage, the evidence need only be "arguably" admissible.   With

respect to co-conspirator statements, the "general practice in this jurisdiction" is to allow the government to conditionally admit the statements and defer ruling on the admissibility of the statements until the conclusion of the government's case in chief. *United States v. Apodaca*, 275 F. Supp. 3d 123, 138-139 (D.D.C. 2017). Under that general practice, the Court need not "assume" the existence of the conspiracy in order to grant the government's request for an early-return trial subpoena requesting documents that likely would constitute co-conspirator statements. Rather, the Court can (and should) conclude from the allegations in the Superseding Indictment that the requested documents are at least arguably admissible subject to connection at trial and authorize the trial subpoena on that basis.

The proposed subpoena is also sufficiently specific. Rule 17 does not require "exquisite specificity," *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989). Instead, the Rule requires only that the proponent can "reasonably specify the information…believed to be contained in the documents sought" based on information gathered during the course of the investigation. *Libby*, 432 F. Supp. 2d at 31 (quoting *Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)). Here, each of the document requests in the subpoena is based on information that the government obtained during its investigation providing a basis to conclude that the request will yield evidence of the conspiracy.

Thus, the Superseding Indictment alleges that defendant Yevgeniy Prigozhin controlled Concord. Doc. 247 ¶ 12. This allegation is supported by evidence gathered during the investigation and produced in discovery, including a Russian Federation tax record listing Prigozhin as the Founder of Concord Management and Consulting. The records requested in categories one and two of the proposed subpoena call for records relevant to this allegation.

The Superseding Indictment further alleges that the conspirators used computer infrastructure to conceal their Russian identities.  Doc. 247 ¶¶ 39-40.  This allegation is supported by evidence gathered during the investigation and produced in discovery, including search warrant returns for social media accounts and subpoena returns showing that the conspirators accessed the social media accounts that they used to further the conspiracy through virtual private networks and virtual private servers hosted in the United States.  The records requested in category three call for Internet Protocol address records that would further connect Concord to that activity.  In addition, the Superseding Indictment references email communications among the conspirators in furtherance of the conspiracy.  *Id.* ¶¶ 13b, 33, 37, 38, 42, 43a.  The Internet Protocol address records requested in category three would further connect Concord to those communications.

The Superseding Indictment further alleges that Concord participated in the conspiracy by funding the operations of the Internet Research Agency.  Doc. 247 ¶ 11.  The Superseding Indictment also identifies other Russian entities that Concord used to conceal its conduct.  *Id.*  This allegation is supported by evidence gathered during the investigation and produced in discovery, including budget information spreadsheets emailed between an accountant for the Internet Research Agency and employees of Concord.  The records requested in categories four through seven are relevant to these allegations.

Finally, evidence gathered during the investigation and produced in discovery shows contacts between employees of the Internet Research Agency and employees of Concord.  In addition to the emails regarding budget spreadsheets discussed above, the government has obtained screenshots of calendar entries showing Prigozhin meeting with at least one IRA employee.

The evidence discussed above establishes that the categories of records sought by the proposed subpoena do not constitute the sort of fishing expedition prohibited by Rule 17(c).  On

the contrary, the courts have upheld trial subpoenas seeking these kinds of records. *See, e.g.*, *United States v. Nosal*, 291 F.R.D. 403, 409 (N.D. Cal. 2013) (upholding in part trial subpoena issued by defendant to third party requesting "any and all…documents" related to particular allegations in indictment); *United States v. Rajaratnam*, 2011 U.S. Dist. LEXIS 10176, at *8-*9 (S.D.N.Y. Feb. 2, 2011) (granting government's application for trial subpoena to corporation seeking certain trading records, corporate documents, and "any and all e-mails sent or receiving by" the defendant regarding certain subjects on the ground that the subpoena requested categories of documents "in furtherance of the alleged conspiracies"); *Libby*, 432 F. Supp. 2d at 35-36 (upholding trial subpoena requesting "all documents" referencing certain individuals or discussing certain topics); *United States v. McCollom*, 651 F. Supp. 1217, 1219-25 (N.D. Ill. 1987) (denying in relevant part motion to quash trial subpoena requesting "any and all original checks, check registers, or withdrawal slips, or other information reflecting withdrawals of funds or the drawing on funds from accounts" owned by defendant and ruling that "[d]esignation of kinds of documents with reasonable particularity will suffice"); *United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1220 (E.D.N.Y. 1985) (denying motion to quash trial subpoena issued to corporate defendant requesting "records regarding the shipment and importation of certain foods" and concluding that Rule 17(c) "provides for the subpoena of corporate records").

The case relied upon by Concord, *United States v. North*, 708 F. Supp. 402 (D.D.C. 1989), only underscores the government's argument.  In *North*, the Court denied the government's motion for a trial subpoena requesting notebooks used by the defendant over a nearly four-year period on the ground that the government could not "identify any material entry or practice that assures the Court that the standards of relevance, materiality and necessity" would be satisfied.  *Id.* at 404.  The Court further noted that "the massive documentation already in the case suggests that further

data would be superfluous." *Id.* Here, by contrast, for each category of requested records, the government has identified evidence and information that would show that the documents within each category are reasonably likely to be relevant and admissible.

## II.     Concord's Other Objections to the Proposed Subpoena Lack Merit

Concord contends (Doc. 273, at 8-17) that the motion "ignores" certain "complexities." Specifically, Concord posits that producing the requested records may violate Russian law (*id.* at 8-13), that this Court lacks authority to issue an order to produce records in this case to a party that has appeared in this case (*id.* at 13-16), and that the motion should be denied because any records produced now would come too close in time to the scheduled April trial date (*id.* at 16-17). Each argument lacks merit.

### A.   Concord's Asserted Conflict with Russian Law Does Not Render the Subpoena Unreasonable or Oppressive

#### 1.   Concord has not met and cannot meet its burden of showing that compliance would violate Russian law

As "the party who 'relies on foreign law,'" Concord "assumes the burden of showing that such law prevents compliance." *In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019) (quoting *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) (per curiam)). Concord has not come close to meeting that burden. Instead, Concord purports to quote what is presumably its own translation of Russian statutes. (Concord does not provide that translation to the Court or the government but merely links to Russian-language text.) Concord then asserts that compliance with this subpoena would violate those statutes without providing any detailed textual argument or citing any example of a Russian court taking that position. *Cf. In re Grand Jury Subpoena*, 912 F.3d at 634 (discounting declarations of retained experts and foreign "regulatory body" that cited no court case). Indeed, although Concord sometimes states that compliance with the requested subpoena would require Concord to violate Russian law, it elsewhere hedges by stating only that

there is "*potential* legal peril" or that compliance would "*arguably*" violate a statute.  Doc. 273, at 8, 9 (emphases added).  Although Concord (a Russian company) and its Russian lawyers are far better positioned than the government to review Russian law, the most that it can do is offer qualified assertions based on translations that it has not even provided to the government or the Court.

Concord's asserted conflicts with Russian law are, in any event, implausible to say the least.  First, Concord suggests that turning over its own business records would "arguably" constitute "rendering financial, logistical, consultancy or other assistance to a foreign government . . . in activities directed against the security of the Russian Federation."   Doc. 273, at 9 (quoting Concord's translation).[1]  Yet Concord has repeatedly declared that it is not part of the Russian government and has sought to distance its activities from that of the Russian government.  The only apparent reason that Concord views providing business records for this trial as an action "directed against the security of the Russian Federation" is that the United States sanctioned the defendants in this case based on the election interference activities that the Indictment alleges was the motive for the conspiracy to defraud the United States government.  Concord, however, does not explain why sanctions of non-governmental persons in Russia concern "the security of the Russian federation."   *Id.*   Indeed, Concord's acknowledgement (*id.* at 10 n.3) that Russia is "considering" a bill barring the provision of information "that leads to the imposition of sanctions" underscores the implausibility of the argument under the existing statute.  Nor, in any event, does Concord explain why providing records that concern entities and individuals who have already

---

[1] Other translations available online only further suggest that "treason" concerns rending assistance "in hostile activities to the detriment of the external security of the Russian Federation." https://www.wipo.int/edocs/lexdocs/laws/en/ru/ru080en.pdf.   It is unclear if that particular formulation is out of date, but then again suggests the intuitive point that merely providing business records to the United States is not "treason."

been sanctioned could be "directed against" Russia's interest in preventing sanctions of private persons.

Additionally, although Concord has not provided whatever translation its American attorneys presumably reviewed before making these representations to the Court, a Google translation of the cited treason provision states that persons "shall be exempted from criminal liability" if they "voluntarily and promptly communicate[] to the authorities or otherwise contribute[] to the prevention of further damage" and their "actions do not contain another composition crime."  Although the government is not currently in a position to opine on this exception, it appears to provide a potentially-broad exemption from liability.  Concord's failure to address the full section underscores the failure to meet its burden.

Second, Concord states (Doc. 273, at 10-11) that "[p]roviding information on Russian computer networks" would run afoul of what appears to be a cyber-security law.  Here Concord does not even provide its own translation of that law but instead paraphrases it as barring "any violation of the rules of access or operation of computer networks that leads to a major loss, blocking, modification or copying of computer information."  *Id.* at 11.  As an initial matter, Concord does not explain what network access rule would be violated.  Indeed, insofar as the putative subpoena seeks Concord's own business records, it is unlikely that a network access rule prevents Concord from removing or transferring those records.

Concord also acknowledges that this law applies only where the activity has a serious, detrimental effect.   Concord's paraphrasing states that there must be "a major loss, blocking, modification or copying of computer information."  *Id.*  A Google translation of the source cited by Concord similarly states that there must be "destruction, blocking, modification, or copying of computer information," but adds "which caused major damage."  One English-language source

describes this as governing "violations of special rules and protocols for storage, processing or transfer of digital data or equipment, as well as violations of network access rules that lead to serious harm."[2]  Yet Concord provides scant explanation for how providing records such as corporate documents or calendar entries could result in such serious damage to a computer network.  Concord speculates that "information provided by Concord could or would be used for surveillance purposes" or "cyberattacks."  Doc. 273, at 11.  Concord does not begin to explain why the categories of information sought here—which include corporate registration documents, financial records, and calendar entries—would be useful for mounting a cyber attack or why the alleged intervening cause of further U.S. government action would constitute Concord's having caused the hypothetical damage.

Finally, with respect to three categories of records—records of meetings and both categories of communications—Concord declares (Doc. 273, at 10-11) that producing the records would violate Russian privacy laws governing "personal data" and "privacy."  Concord, however, provides no explanation for whether and what information in Concord's possession constitutes personal data or why particular data or identifiers could not be redacted if appropriate.  Nor does Concord support the implausible assertion that giving someone corporate emails or records of meetings to a court is illegal.  In fact, one secondary source states that "no protection is granted against disclosure to the responsible authorities in the course of an official investigation"[3]

**2.      Even if Concord had or could meet its burden to shown a conflict with foreign law, the requested subpoena would not be unreasonable or oppressive**

Even if Concord could show that the subpoena would subject it to conflicting legal obligations, the subpoena would not be unreasonable or oppressive.  Courts have long recognized

---

[2] http://www.mondaq.com/russianfederation/x/641110/Crime/Business+Crime+2018

[3] http://www.mondaq.com/russianfederation/x/641110/Crime/Business+Crime+2018

that the operation of foreign law "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 n.29 (1987); *see In re Sealed Case*, 932 F.3d 915, 931-939 (D.C. Cir. 2019). "[A]lthough courts recognize comity as an important objective, there is little doubt that '[a] United States Court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary.'" *In re Sealed Case*, 832 F.2d 1268, 1283 (D.C. Cir. 1987) (citation omitted).

If confronted with such a conflict, courts must engage in a comity balancing that considers a "constellation of factors" including the importance of the requested records, the degree of specificity, whether the information originated in the United States, the availability of alternative means to obtain the same records, the extent to which noncompliance would undermine important interests of the United States or of the country where the information is located, hardship on the subpoenaed party, and whether that party has acted in good faith. *Sealed Case*, 932 F.3d at 931-932; *see Société Nationale*, 482 U.S. at 544 n.28; Restatement (Third) of the Foreign Relations Law of the United States § 442(1)(c) (1987); *see also, e.g., In re: Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 827 (11th Cir. 1984); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1288 (9th Cir. 1981).

Most significantly, the United States has an overwhelming interest in obtaining evidence that bears on this case. "The United States has a strong national interest in the effective enforcement of its criminal laws." *United States v. Davis*, 767 F.2d 1025, 1035 (2d Cir. 1985); *see Vetco*, 691 F.2d at 1288 n.9 (in conducting comity analysis, "[i]t is important to distinguish between action brought by the government . . . and private suits"); *see also Davis,* 767 F.2d at

1035 (noting that "the subpoena . . . arose in the course of a criminal suit brought by the United States government" and therefore "accord[ing] some deference" to the government's decision that the "benefits of disclosure" outweigh any diplomatic friction); *cf. Pasquantino v. United States*, 544 U.S. 349, 369 (2005); *United States v. Sinovel Wind Group*, 794 F.3d 787, 792 (7th Cir. 2015). This is all the more so in a case that does not just concern any alleged violation of U.S. criminal law, but rather a systematic effort to interfere in a presidential election and a conspiracy to deceive and impair the government agencies charged with monitoring, regulating, and enforcing laws concerning foreign influence.  The government believes that the requested evidence is important in this case.  While the government has reason to believe that the requested records exist and are in Concord's control, the government believes that it cannot obtain the same records elsewhere. And as discussed above, the requested subpoena is specific and tailored to those categories of documents that are believed to exist.

Additionally, Concord voluntarily chose to appear in this case.  And, as the Court well knows, Concord has obtained substantial discovery and continues to seek additional information about how the United States detected its activities and detects and responds to related activities more generally.  Foreign entities should not lightly be permitted to come to U.S. courts while shielding themselves from the same obligations that would apply to American defendants.  *Cf. In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 828 (11th Cir. 1984) (explaining that where a bank "voluntarily elected" to do business abroad, it "accepted the incidental risk of occasional inconsistent governmental actions" and "cannot expect to avail itself of the benefits of doing business here without accepting the concomitant obligations").

Requiring compliance would do little, if any, violence to Russian sovereign interests. Although Russia's generalized interests in national security, computer network integrity, and

privacy may be weighty in some sense, the harm to those interests incurred by disclosing the particular records requested here is non-existent or minimal. *Cf. Societe Nationale*, 482 U.S. at 544 n.29 (foreign state's "blocking" statute "is relevant" to "comity analysis only to the extent that its terms and its enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material."); *United States v. First Nat'l City Bank,* 396 F.2d 897, 903 (2d Cir. 1968) ("mere existence of a bank secrecy doctrine" does not automatically mean that its violation would undermine "an important public policy of [the enacting country]").

Even if compliance with the subpoena violated Russian law, Concord has also provided little reason to believe that it would, in fact, be prosecuted. At most, Concord's "violation" would appear to be a tangential application of the statutes compelled by a U.S. court order. Any claimed hardship warrants little if any weight where there is no example of someone being prosecuted under similar circumstances. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 114 (2d Cir. 2013); *Vetco, Inc.*, 691 F.2d at 1289; *see also* Restatement (Fourth) of the Foreign Relations Law of the United States § 442, comment b (foreign-state-compulsion defense "requires," *inter alia*, that "risk of punishment must not be purely hypothetical"). And countries are generally less likely to prosecute their citizens for disclosing business records to foreign governments and as ordered by a foreign court than if disclosing to private parties or doing so voluntarily. *See, e.g., Linde*, 706 F.3d at 114. Indeed, Concord's suggestion that the Russian State has an interest in Concord and the sanctions levied against it further calls into question whether Russia would prosecute Concord. *Cf. Aerospatiale*, 482 U.S. at 528 n.10, 544 n.29 (corporation owned by government "stand[s] in most advantageous position" in decision whether to prosecute); *Societe Internationale v. Rogers*, 357 U.S. 197, 205 (1958) (Swiss banking company was "in a most advantageous position to plead with its own sovereign for relaxation of penal laws" relating to bank secrecy).

Rather than engage with the controlling legal standard, Concord declares that if the subpoena required it "to violate Russian law on Russian soil," that would be "improper under controlling law."  Doc. 273, at 9 (citing *In re Sealed Case*, 825 F.2d at 498); *see id.* at 8 (asserting that "under circumstances like those here" a foreign law conflict would render the subpoena "unreasonable or oppressive).  Concord, however, misunderstands the "controlling law."  The primary case Concord cites, *Sealed Case*, 825 F.2d at 498, itself appears to have conducted a multi-factor balancing.  The court made clear that its decision turned on and was expressly limited to "the peculiar facts of th[at] case." *Id.*; *see id.* at 499 ("emphasiz[ing] again the limited nature of [its] holding").  The court deemed it "[m]ost important" that the contempt order at issue "represent[ed] an attempt by an American court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory," *id.*—that is, that the order compelled a bank owned by one country to violate a second country's laws.  The court also stressed that the subpoena was directed to "a third party that has not been accused of any wrongdoing," that there was no dispute about the application of foreign law, and that there were likely alternative means to obtain at least some of the same evidence. *Id.* at 498-499.  Here, by contrast, the subpoena is directed to an indicted defendant, the application of foreign law proffered by Concord is dubious at best, and there are no alternative means to obtain the evidence.   In any event, as discussed, the Supreme Court and D.C. Circuit have subsequently made clear that even a proven violation of foreign law does not necessarily render a subpoena unreasonable or oppressive. *See* pp. 9-10, *supra*; *see also* Note, *The Aerospatiale Dilemma: Why U.S. Courts Ignore Blocking Statutes and What Foreign States Can Do About It*, 106 Cal. L. Rev. 231, 245 (2018) (surveying post-*Societe Nationale* federal authorities and finding "[c]ourts compelled foreign parties to produce discovery in violation of foreign law in thirty-seven of . . . forty-two contemplated orders").

In sum, Concord has not made a credible argument the subpoena would force Concord to violate Russian law.  And, in all events, the asserted conflict with Russian law would not render the subpoena invalid.  "No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum."  *Laker Airways v. Sabena*, 731 F.2d 909, 937 (D.C. Cir. 1984).  Concord has not come close to demonstrating that the requested subpoena would be unreasonable or oppressive.

## B. This Court Can Issue An Order In This Case To A Party Who Has Chosen To Appear In The Case

Concord next contends (Doc. 273, at 13-16) that because it is a foreign corporation located abroad, it cannot be issued a subpoena to produce documents in connection with this case.  In particular, Concord urges that its trial counsel "has no authority to accept" a trial subpoena (*id.* at 14) and that the Court, in any event, lacks personal jurisdiction over Concord and therefore cannot order it to produce records (*id.* at 14-16).  Concord ignores the critical fact that it is properly a party in this case.  The Court therefore can issue orders to Concord concerning this case.  That includes a trial subpoena—an order to produce records that are relevant to and admissible in the case.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (a "tribunal has jurisdiction over those appearing before it" and therefore can "order them to produce evidence") (discussing authority of foreign courts); Restatement (Fourth) of the Foreign Relations Law of the United States § 426(1) (2018)  ("A court in the United States, when authorized by law, may order a person subject to its jurisdiction to produce documents or other forms of evidence"); *cf., e.g., Shi v. New Mighty United States Trust*, 918 F.3d 944, 951 (D.C. Cir. 2019) (explaining that "U.S. witnesses are subject to subpoena by U.S. courts and those courts can reach foreign *non-party* witnesses" through other, specified means) (emphasis added).  Concord's reliance on cases that

concern the personal jurisdiction over foreign corporations who are not parties to the relevant case therefore have no bearing on this Court's authority to issue a subpoena to Concord.

Lest there be any doubt, Concord is a corporation that voluntarily chose to appear and is participating in this case through counsel.  *See* Fed. R. Crim. P. 43(b)(1); Def. Opp. to Mot. to Continue Initial Appearance and Arraignment (Doc. 8), at 2 (citing *United States v. Kolon Industs. Inc.*, 926 F. Supp. 2d 794, 798 (E.D. Va. 2013) for the proposition that "voluntary appearance by a defendant can give rise to jurisdiction").   Separate and aside from establishing personal jurisdiction based on a person's physical presence or business contacts with a forum, a court may establish personal jurisdiction based on consent.  *In re Sealed Case*, 932 F.3d at 922; *see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703-704 (1982) (describing various examples of parties consenting); *see also* Restatement (Fourth) of the Foreign Relations Law of the United States § 423(1) (2018) ("A court in the United States may exercise in personam jurisdiction over a defendant only if the defendant has been properly served *or has waived service*.") (emphasis added).  When a foreign corporation chooses to appear in litigation in the District of Columbia, that corporation subjects itself to process arising out of that litigation.  *See Kelberine v. Societe Internationale*, 363 F.2d 989, 993 (D.C. Cir. 1966) (foreign corporation that filed civil suit in the District of Columbia "voluntarily subjected itself to the jurisdiction of the court" and therefore "the agent of the corporation present in the District for the purpose of conducting the litigation in the courts here was subject to process").  That is the case here.

In fact, after Concord initially disputed whether it had been properly served with a summons in this case, the Court confirmed that defense counsel was authorized "to enter a voluntary appearance in this matter and to subject [Concord] to the jurisdiction of this Court." 5/9/18 Tr. 4-5.  The Court clarified that Concord understood "that by doing so, it must also comply

with the Federal Rules of Criminal Procedure, the rules of this Court, and with the orders of this Court," and defense counsel agreed. *Id.* at 5.  A trial subpoena is an order of this Court issued in this case pursuant to the Federal Criminal Rules.  Yet Concord (through that same counsel) now suggests that the Court has no authority to issue such an order to Concord.  Indeed, this raises the question whether Concord believes that the Court has personal jurisdiction with respect to other orders issues in this case, such as the protective order governing the extensive discovery provided to the defense, or the Court's scheduling order requiring Concord to provide the government with trial exhibits.[4]

### C.  Concord's Scheduling Argument Lacks Merit

Finally, the trial subpoena to Concord will not "completely derail the Court's pretrial scheduling order."  Doc. 273, at 16.  The government filed its motion requesting authority to issue an early-return trial subpoena to Concord over four months before the scheduled trial date in this case.  That gives Concord plenty of time to produce the requested documents, most of which should be easy to gather and all of which should be easy to identify, on a rolling basis.  Concord does not even attempt to explain, for example, why it cannot produce its own corporate registration documents, or its payment records, or calendar entries, well in advance of the April 2020 trial date.  Nor does Concord explain why it would be so difficult to identify communications with particular

---

[4] Concord additionally observes (Doc. 273, at 13) that the cases cited by the government in its motion for an early return trial subpoena did not concern a foreign corporation and records located abroad.  Concord does not explain what, if any, further relevance that has to its argument. As discussed, where courts have jurisdiction over a person, courts can order that person to produce records wherever they may be located.  That includes corporations located abroad.  *See, e.g., Sealed Case*, 932 F.3d at 924-927.  Concord has chosen to appear and participate in this case.  This Court therefore has jurisdiction over Concord to issue orders concerning this case.  As for the asserted "importan[ce]" of obtaining an immunity order for a subpoenaed witness, Doc. 273, at 13, it is black-letter law that corporations have no privilege against self-incrimination.  *Braswell v. United States*, 487 U.S. 99, 102 (1988).

identified individuals.  The government expects that the trial subpoena return will yield a limited number of documents that the government would designate as additions to its exhibit list.  These limited number of documents likely would generate very little pretrial litigation, since the categories of documents identified in the proposed subpoena are plainly relevant and admissible as business records and admissions of a party opponent.  And if Concord truly were prejudiced by the timing, then Concord could seek a continuance of the trial date or any other relief it deemed appropriate at that point.  There is no legal authority to support the proposition that the government must serve a trial subpoena more than four months in advance of a trial date in order to obtain the requested documents.

*     *     *     *     *

Like any criminal defendant, Concord has received the protections and the benefits of the Federal Rules of Criminal Procedure, including the right to file pretrial motions challenging the validity of the indictment, the right to pretrial discovery, the right to a bill of particulars, and the right to file motions to compel documents and information.  Having received those benefits, Concord now looks to inapplicable foreign laws and inapposite cases concerning non-party subpoenas to avoid the basic obligation of every criminal defendant—the obligation to subject itself to the jurisdiction of the Court, an obligation that Concord's counsel assumed in their representations to the Court from their first appearance in this case.  Concord's arguments should be rejected and the government should be permitted to issue an early-return trial subpoena requesting the categories of documents set forth in the proposed attachment with a return date that the Court deems appropriate.

Respectfully submitted,

JOHN C. DEMERS                                JESSIE K. LIU

17

Assistant Attorney General for National Security

By: /s/_____
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

United States Attorney

By: /s/_____
Luke Jones
Kathryn Rakoczy
Jonathan Kravis
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886