**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S BRIEF IN
SUPPORT OF PROPOSED JURY INSTRUCTIONS**

Defendant Concord Management and Consulting LLC ("Defendant" or "Concord"), by
and through undersigned counsel, respectfully submits this response to this Court's November 14,
2019 Order directing the parties to submit briefs addressing any points of difference between the
parties' proposed jury instructions.  In support, Defendant states its position as it relates to the
disputed instructions as follows:

**Notetaking By Jurors**

The government proposes reading the Red Book Instructions regarding juror notetaking at
the beginning and end of trial.  Concord's position is that the jurors should not be permitted to take
notes and that these instructions are unnecessary.

The Court should exercise its discretion to prevent jurors from taking notes so that they
can focus on the testimony at hand and avoid simply deferring to those jurors who take the best
notes.  *See Goodloe v. United States*, 188 F.2d 621, 621-22 (D.C. Cir. 1950) (noting that whether
to allow jurors to take notes is within the sound discretion of the trial court); D.C. Jury Instruction
1.105, Instruction When Notetaking is Not Permitted (noting reasons for not permitting jurors to

take notes, including importance of jurors observing the witnesses). Accordingly, the government's proposed instruction on notetaking by jurors is unnecessary.

The government argues that jurors should be permitted to take notes because of the anticipated length and complexity of the trial. *See* ECF 248-1 at 4. But, contrary to the government's assertion, courts have prohibited juror notetaking for exactly those same reasons. *See United States v. Baker*, 10 F.3d 1374, 1403 (9th Cir. 1993) (observing that the district court properly articulated several reasons for prohibiting notetaking, including distraction, selective recording of evidence, and reliance on inaccurate notes in a trial estimated to take six months but actually lasting a year), *overruled on other grounds*, *United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Darden*, 70 F.3d 1507, 1536-37 (8th Cir. 1995) ("Note taking by jurors is not a favored procedure. As we have stated, trial courts are properly concerned that the juror with the most detailed notes, whether accurate or not, may dominate jury deliberations. . . . The length and complexity of this trial does not diminish that concern. Indeed, in a long and complex trial the juror with the better notes may more easily dominate deliberations."); *Cavanagh v. LaManna*, No. 05-cv-2842, 2007 WL 895473, at *3 (D.S.C. Mar. 21, 2007) (outlining arguments against allowing juror notetaking, including the potential that a juror will "concentrate on their own notes rather than the demeanor or manner of the witness," and that "the jurors who take the notes take a more important position in the minds of the jurors who didn't take notes and they tend to rely on those jurors rather than their own observation").

As these courts have acknowledged, lengthy, complex trials often pose the most risk with respect to juror note-taking because of the risk that jurors, afraid of forgetting information given the length of the trial, will focus more intently on note-taking than on their role as judges of the credibility and believability of the witnesses. Moreover, given the length of the anticipated trial,

there is another—perhaps greater—risk that those jurors who take more or better notes will become the *de facto* keepers of the jury's collective knowledge and leading other jurors to defer to those note-takers' interpretation of the evidence.  Such deference is improper and undercuts the jurors' obligation to judge the facts for themselves.  *See United States v. Brown*, 508 F.3d 1066, 1074 (D.C. Cir. 2007) (approving a jury instruction indicating that jurors "are the sole judges of the facts").  Furthermore, allowing jurors to take notes presents a risk that the jurors will improperly discuss the evidence prior to the conclusion of the trial.  *See United States v. Lipscombe*, Cr. No. 8:12-24-HMH, 2016 WL 4719999, at *2 (D.S.C. Jan. 21, 2016) (court admonished jurors for sharing notes during trial); *Evans v. Justin Jones*, No. CIV 10-139, 2013 WL 5366385, at *28 (E.D. Okla. Sept. 24, 2013) (same).  Accordingly, the jurors should be instructed that they are not to take notes during the trial.

**<u>Corporate Defendant Can Appear Through Counsel</u>**

Concord and the government generally agree about this proposed instruction except that the government opposes Concord's proposal to include the following sentence: "A corporate defendant may appear in court through its counsel who is present."

This disputed sentence parallels the language contained in the federal criminal rules as it relates to a corporate defendant's presence.  *See* Fed. R. Crim. P. 43(b)(1) (providing that a defendant need not be present when "[t]he defendant is an organization represented by counsel who is present").  Given that Concord's proposed addition simply reiterates the Federal Rule of Criminal Procedure applicable to a defendant's presence, the jurors should be instructed accordingly. Without this instruction there is a risk that the jurors will develop a negative inference because of the absence of a corporate representative.

## Corporate Responsibility

The parties generally agree on the formulation of this instruction, except for a single sentence relating to when an act is within the scope of an agent's employment.  Concord's position is that the instruction should state that: "For an act to be within the scope of an agent's employment, it must relate directly to the performance of the agent's general duties for the corporation."  The government's position is that the instruction should state that: "For an act to be within the scope of an agent's employment, it must concern a matter that the corporation generally entrusted to the agent."

The government's proposal is unacceptably broad and contrary to the accepted legal standard in this Circuit, which requires that the action in question must "relate directly" to the employee's duties.  *See United States v. Burden*, No. 14-CR-69, 2016 WL 5800423, Instruction 9 (D.D.C. Sept. 29, 2016) (instructing the jury on corporate responsibility by explaining that "[f]or an act to be within the scope of an agent's employment, it must relate directly to the performance of the agent's general duties for the corporation").  Concord's proposed language tracks the language in *Burden* to the letter.  The government's proposed instruction on corporate responsibility sweeps too broadly.  Under it, an employee's acts would fall within the scope of his employment—and thus would be imputed to the corporation—if those acts merely "concern a matter that the corporation generally entrusted to the agent."  ECF 248-1 at 8.  This proposed instruction is contrary to the well-settled law on corporate responsibility and risks imposing liability on a corporation for conduct by its employees that falls outside the scope of their employment duties, and thus should be rejected.

In determining whether an employee acted within the scope of their employment, "the Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency (1957)."  *Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995), overruled on other

grounds, *Osborn v. Haley*, 549 U.S. 225 (2007).   According to the Restatement, an employee's conduct falls within the scope of their employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."   Restatement (Second) of Agency § 228 (1958).   An employee's act must meet *all* of these criteria to fall within the scope of their employment.  *See Haddon*, 68 F.3d at 1424.

The government's proposed instruction—which only calls for the act to *concern* a matter generally entrusted to the agent—completely disregards the first prong of the Restatement test and inappropriately expands the universe of conduct that could potentially fall within the scope of employment.  There is a marked distinction between conduct related to a "matter . . . entrusted to the agent" (as the government proposes) and conduct "of the kind [the agent] is employed to perform" (as set forth in the Restatement).  For example, the government alleges that Internet Research Agency LLC "employed hundreds of individuals for its online operations . . . ."  Sup. Ind. ¶ 10.  The nature of this employment necessarily results in those individuals being "entrusted" with the use of computers and other internet-connected devices.  Were the Court to issue the government's proposed instruction, the jury could potentially find any act that merely "concerns" computers and internet connected devices to fall within the scope of those individual's employment, regardless of whether that conduct was "of the kind [the agent] was employed to perform."

The government cites *Burden* but then takes liberties with the definition of what falls within the scope of employment, relying instead on a pattern jury instruction from the Seventh Circuit. While it should go without saying that instructions that have actually been given by this Court are

more persuasive and legally accurate than out-of-circuit pattern jury instructions, it also appears

that the Seventh Circuit pattern jury instruction cited by the government is an aberration.   The

Third and Eighth Circuits have published pattern jury instructions nearly identical to the one

Concord proposes here.   S2 Modern Federal Jury Instructions-Criminal 5.03 (2019) (8th Circuit)

("For an act to be within the scope of an agent's employment it must *relate directly* to the

performance of the agent's general duties for the corporation.") (emphasis added); S1 Modern

Federal Jury Instructions-Criminal 7.06 (2019) (3rd Circuit) ("[T]he evidence must prove that the

act *related directly* to the general duties that (name of agent) (this type of agent) was expected to

perform by (name of corporate defendant).") (emphasis added).   And while the Second and Sixth

Circuits do not have pattern jury instructions on "Corporate Responsibility," those courts have

described the scope of employment test in language similar to that proposed by Concord.   *See*

*Cont'l Baking Co. v. United States*, 281 F.2d 137, 149 (6th Cir. 1960) ("the courts have held that

so long as the criminal act is *directly related* to the performance of the duties which the officer or

agent has the broad authority to perform, the corporate principal is liable for the criminal act also

. . . .") (emphasis added); *United States v. Koppers Co.*, 652 F.2d 290, 298 (2d Cir. 1981) (holding

instruction to jury "that a corporation could be held criminally liable for the acts of managerial

agents 'done on behalf of and to the benefit of the corporation and *directly related* to the

performance of the duties the employee has authority to perform . . . .'" was proper) (emphasis

added).

   In other words, not only has a court in this District issued the jury instruction proposed by

Concord here, the clear weight of outside authority supports the propriety of Concord's jury

instruction as well.   Accordingly, the Court should adopt Concord's proposed instruction, which

properly focuses the jury on what duties the employee was hired to perform.  This is the legal standard, and is in line with the Restatement test and precedent from this Court.

## Suppression Or Fabrication Of Evidence By Defendant

The government's position is that an instruction regarding the suppression of evidence should be given.[1]  Concord's position is that there is no basis on which to include this instruction; that this instruction should be given only if the evidence at trial merits it; and that if the instruction is given it should refer only to "certain defendants" and/or "certain co-conspirators."

The government lacks a sufficient basis to argue that Concord engaged in suppression of evidence to warrant giving this instruction.  As Concord has previously argued, the only allegation in either the Indictment or the Superseding Indictment regarding the destruction of evidence is a reference to a single inadmissible email from one named defendant to her mother that was sent after the Special Counsel was appointed and news of the allegations of election interference had been reported worldwide.  *See* Ind., ECF 1, ¶ 58(d) ("On or about September 13, 2017, KAVERZINA wrote in an email to a family member: 'We had a slight crisis here at work: the FBI busted our activity (not a joke). So, I got preoccupied with covering tracks together with colleagues.'"); Sup. Ind., ECF 247, ¶ 58(d) (same); *see also* Oct. 25, 2019 Hr'g Tr. 12:3-15.

Although the government points to this email as support of its destruction of evidence claim, it actually proves the opposite—that is, the email account was successfully collected as part of the government's investigation, and thus *was not destroyed*.  Moreover, Concord will show, based on its own review of this same defendant's emails, that the same individual frequently sent misleading and outright false statements to her mother by email.  Given this, the statement is not only contradictory, but it is likely inadmissible.  *See* Fed. R. Evid. 402 (indicating that irrelevant

---

[1]    It appears that the government's position is not limited to providing this instruction only if it is applicable based on the evidence presented at trial.

evidence is not admissible); *see also United States v. Ali*, 870 F. Supp. 2d 10, 17 (D.D.C. 2012) (same).

Absent this single email (which contains the sum total of the government's specific allegations of evidence destruction), Concord would be prejudiced if the jury were given instructions suggesting that the defendants and their co-conspirators deleted and destroyed evidence. *See, e.g.*, *United States v. Frady*, 636 F.2d 506, 511-12 (D.C. Cir. 1980) (finding the defendant suffered prejudice from the faulty malice instructions because the evidence produced at trial suggested that the defendant acted without malice).

In any event, this instruction should be included only if the evidence *at trial* warrants it. And, to the extent that the evidence produced at trial does so, Concord's position is that the instruction should refer only to "certain defendants and certain co-conspirators" or to the specific defendants and co-conspirators who engaged in such obstructive conduct by name, rather than generally to all "the defendants and their co-conspirators" as the government proposes. This will properly focus the jury only on those defendants/co-conspirators whose obstructive conduct is supported by evidence, and will prevent jurors from improperly imputing such conduct to other defendants.

**Unanimity – Special and Verdict Form With Special Interrogatories**

Concord's position is that this case warrants a special unanimity instruction. The government's position is that a general unanimity instruction is sufficient.

The conspiracy charge brought against Concord—although filed as a single count in the Indictment—alleges a conspiracy to defraud the United States by impairing, obstructing, and defeating the functions of three separate government agencies: the Federal Election Commission ("FEC"), the U.S. Department of Justice ("DOJ"), and the U.S. Department of State ("DOS"). Accordingly, the government alleges three distinct factual predicates—interference with the function of the FEC, DOJ, or DOS, respectively—upon which a guilty verdict could lie. The nature of this three-pronged conspiracy charge presents precisely the type of "genuine risk of juror confusion or of conviction resulting from different jurors concluding the defendant committed different acts" that requires a special unanimity instruction in order to protect Concord's Sixth Amendment right to a unanimous jury verdict. *See United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992). The government has acknowledged this point in open court, conceding that in order to convict, the jury must "be unanimous as to the lawful government function that's interfered with." Oct. 15, 2018 Hr'g Tr. 29:7-9. Despite this clear-cut concession, the government inexplicably continues to insist that a general unanimity instruction is sufficient and that a special verdict form is unnecessary. Given the multiple theories under which the government is pursuing its conspiracy charge, there is simply no way to ensure the jury's unanimity as to Concord's intent to impair, obstruct, or defeat a particular government function without a special unanimity instruction and a special verdict form.

The D.C. Circuit has found that a rule "requiring an instruction on the need for unanimity on the particular acts on which a guilty verdict is based . . . is sensible and appropriate" and "urge[s] trial courts to employ the instruction without request . . . ." *United States v. Mangieri*, 694 F.2d

1270, 1281 (D.C. Cir. 1982); *United States v. Hubbard*, 889 F.2d 277, 278 (D.C. Cir. 1989) ("This Circuit strongly approved a District of Columbia Court of Appeals rule requiring an instruction on the need for unanimity on the particular acts on which a guilty verdict is based.")  Where, as is the case here, "several factual predicates support a guilty verdict, a defendant is entitled to unanimous agreement among the jury as to which of those 'alternative factual predicates' provided a basis for conviction."  *United States v. North*, 910 F.2d 843, 876 (D.C. Cir.), opinion withdrawn and superseded in part on reh'g, 920 F.2d 940 (D.C. Cir. 1990).[2]

Due to the multiple theories advanced by the government, a special unanimity instruction is necessary to prevent jury confusion and a potentially wrongful conviction.  That is because the government "cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict."  *United States v. Beros*, 833 F.2d 455, 462 (3d Cir. 1987).   For example, after the trial, four jurors may find that Concord conspired to interfere with the function of the DOS, four jurors may find that Concord conspired to interfere with the function of FEC, and four jurors may find that Concord conspired to interfere with the function of the DOJ.  With a general unanimity instruction, the jury may nevertheless vote to convict Concord of violating § 371 despite the fact that the jury could not unanimously agree that Concord intentionally conspired to defraud a single one of the federal agencies in question.  Such an instruction violates Concord's right to a unanimous jury verdict because it would permit the jury to convict Concord "even though there

---

[2]     Although an *en banc* court reversed its original finding that the trial court's refusal to issue a specific unanimity instruction was erroneous, the court's reversal was due to the fact that "the majority opinion . . . failed to note that the district court had instructed the jury to limit its consideration to a single incident . . . ." *United States v. North*, 920 F.2d 940, 951 (D.C. Cir. 1990). As such, the original opinion's statement of the law on specific unanimity remains instructive.

may have been significant disagreement among the jurors as to what [Concord] did." *United States v. Gipson*, 553 F.2d 453, 458–59 (5th Cir. 1977).

Put differently, it is simply not enough for the jury to unanimously agree that Concord engaged in *some* conspiracy to interfere with *some* government function. *See United States v. Mastelotto*, 717 F.2d 1238, 1247–48 (9th Cir. 1983), abrogated on other grounds by *United States v. Miller*, 471 U.S. 130 (1985) ("The requirement of trial by jury demands not merely agreement among the jurors that the defendant did participate in some scheme to defraud, whatever the scheme, but also unanimous agreement that the defendant participated in one particular fraudulent scheme."); *United States v. Payseno*, 782 F.2d 832, 837 (9th Cir. 1986) (holding that general unanimity instruction was improper because of "genuine possibility that some jurors may have believed [defendant] used extortionate means on one occasion while others may have believed that he was guilty of engaging in extortion at a different time and place"). As the government concedes, the jury must also unanimously agree on the specific lawful government function that Concord interfered with. Oct. 15, 2018 Hr'g Tr. 29:7-9.

For these same reasons, the Court should adopt the verdict form with special interrogatories proposed by Concord.[3] While special interrogatories in a criminal case are generally disfavored, the use of special interrogatories is advisable where the offense charges is particularly complex and "require[s] proof of a specific number of predicate facts." *United States v. Ogando*, 968 F.2d

---

[3]    The government has elected not to propose a verdict form with special interrogatories, and instead "ask[s] for leave to propose an alternative to Concord's Proposed Verdict Form" at a later time. ECF 248-1 at 15. In the event that the Court determines that a special unanimity instruction is necessary, the government's failure to propose a verdict form should be deemed a waiver, and the Court should adopt Concord's proposed verdict form. The Court directed the parties "jointly file a proposed verdict form and proposed jury instructions." Sept. 5, 2019 Minute Order. The Court did not direct the parties to submit proposals in a piecemeal fashion, as the government proposes.

146, 149 (2d Cir. 1992).  This is particularly true in a conspiracy case where "the multiplicity of objects afforded by the indictment might make a compromise verdict possible," rendering a special verdict form necessary to ensure that the verdict is reached unanimously.  *United States v. Recognition Equip., Inc.*, 711 F. Supp. 1, 6 (D.D.C. 1989); *see also United States v. Shorter*, 608 F. Supp. 871, 881 (D.D.C. 1985) (noting court's intention to instruct jury with special interrogatories to "protect against the danger that . . . [defendant] will be convicted not on the basis of one unanimous verdict on a single set of facts").  Without a special verdict form, it would be impossible to determine which, if any, lawful government function the jury unanimously determined Concord interfered with.  *See, e.g. Gipson*, 553 F.2d at 459.

What is more, the principle that disfavors the use of special interrogatories in criminal cases is meant to protect the *criminal defendant's* right to a unanimous jury verdict.  *See United States v. Acosta*, 149 F. Supp. 2d 1073, 1076 (E.D. Wis. 2001) ("Because the protections of a general verdict run to the defendant . . . a properly advised defendant may waive any right to a general verdict.").  Because Concord is the party requesting the use of special interrogatories, the considerations that normally militate against the use of special interrogatories are simply not present here.

For these reasons, the Court should issue a special unanimity instruction and the special verdict form proposed by Concord.

**Proof of State Of Mind**

The government proposes giving the standard instruction 3.101 regarding proof of state of mind.  Concord's position is that this instruction is inappropriate for a corporate defendant.

The government's proposed pattern instruction is inappropriate for a corporate defendant and will open the door for the jury to impose lability based on a legally-improper finding of "collective intent."  *See United States v. Phillip Morris, USA, Inc.*, 566 F.3d 1095, 1118-22 (D.C. Cir. 2009) ("Because a corporation only acts and wills by virtue of its employees, the proscribed corporate intent depends on the wrongful intent of specific employees.") (citing *Saba v. Compagnie National Air France*, 78 F.3d 664, 670 (D.C. Cir. 1996)).  Thus, when determining whether a corporation acted with specific intent, courts refer to the state of mind of the specific corporate officers and employees who were involved in the charged conduct.  *Id.*

Instead of focusing on the state of mind of specific employees who were involved in the charged conduct, the government's proposed instruction broadly allows the jurors to "consider any statement made or acts done or omitted by the alleged conspirators, and all other facts and circumstances received in evidence which indicate their intent and knowledge."  ECF 248-1 at 16. The D.C. Circuit and other courts have expressed doubt about the viability of any such theory.  *See Phillip Morris, USA*, 566 F.3d at 1122 ("Like Defendants and other courts, we are dubious of the legal soundness of the 'collective intent' theory.") (citing *Saba*, 78 F.3d at 670 n.6 ("corporate knowledge of certain facts [can be] accumulated from the knowledge of various individuals, but the proscribed intent (willfulness) depend[s] on the wrongful intent of specific employees"); *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 366 (5th Cir. 2004); *Nordstrom, Inc. v. Chubb & Son*, 54 F.3d 1424, 1435 (9th Cir. 1995); *United States v. Bank of New Eng., N.A.*,

821 F.2d 844, 855 (1st Cir. 1987); *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1959);

and *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988)).

Accordingly, the Court should reject the government's proposed instruction because it impermissibly allows the jury to aggregate the state of mind of multiple individuals in an effort to find the requisite state of mind for Concord.  This misstates the law.  *See United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("In non-FCA cases, we have expressed a good deal of skepticism about corporate intent theories that rely on aggregating the states of mind of multiple individuals.").  To the extent a proof of state of mind instruction is required by the Court, the jurors should be instructed to refer to the state of mind of the individual corporate officers and employees who were involved in the charged conduct to determine whether Concord possessed specific intent.

**Good Faith**

Concord's position is that the Court should provide a good faith instruction regardless of whether Concord chooses to present evidence at trial.  The government's position is that a good faith instruction should be included only if the evidence at trial merits it.

Because the government bears the burden of establishing the absence of good faith beyond a reasonable doubt, *see United States v. Hurt*, 527 F.3d 1347, 1351-52 (D.C. Cir. 2008), and because the intent to defraud is an essential element of the conspiracy charge, the jury should be instructed that it must acquit if it finds that Concord was acting in good faith.  *See* Ex. 1, *United States v. Middendorf*, 18-cr-36 (JPO) (S.D.N.Y.), Jury Charge; *see also United States v. Coughlin*, 610 F.3d 89, 98 (D.C. Cir. 2010) (affirming mail fraud conviction where district court gave good faith instruction); *Hurt*, 527 F.3d at 1352 ("The district court made abundantly clear that the jury must acquit Hurt if they believed that he had a good faith but mistaken belief that the money was his."); *United States v. Bowser*, 318 F. Supp. 3d 154, 175-76 (D.D.C. 2018) (giving good faith instruction in context of a prosecution for making false statements); *cf. Richardson v. United States*, 403 F.2d 574, 575-76 (D.C. Cir. 1968) ("A defendant is not guilty of robbery unless he has a specific intent to take the property of another. . . . Viewing the evidence most favorably to the defendant, . . . [he] believed in good faith that he was entitled to the money.  If so, he did not have that specific intent.  We therefore find that the requested instruction should have been given.").

Although the government will argue that a good faith instruction is unnecessary absent evidence of good faith presented at trial, its position ignores the government's burden to prove a *lack of good faith*—regardless of whether Concord presents such evidence.  *See Bowser*, 318 F. Supp. 3d at 176 ("The burden of establishing lack of good faith and criminal intent rests on the government.  A defendant is under no burden to prove his good faith; rather, the government must prove bad faith or knowledge of falsity beyond a reasonable doubt.") (internal quotation marks

omitted).   Given the centrality of the intent element in this case, and the fact that the government

bears the burden of proving an absence of good faith, this concept should be put in front of the

jury regardless of whether Concord choses to present a defense at trial.

Similarly, while the government may argue that some courts of appeals have countenanced

trial courts' decisions to not give a good faith instruction where the jury is adequately instructed

on the intent element, other courts have found reversible error.   *See United States v. Casperson*,

773 F.2d 216, 223-24 (8th Cir. 1985) ("Nor do we believe that the error was harmless in the context

of this case.   The trial was long and complex . . . .   The evidence of guilt was not overwhelming. .

. . In the circumstances, we cannot say that the trial court's failure to draw the jury's attention to

appellants' [good faith defense] was harmless beyond a reasonable doubt.").   Accordingly other

courts have avoided such error by simply including a good faith instruction.   *See, e.g., United

States v. Allen*, 670 F.3d 12, 17 (1st Cir. 2012) (approving instruction in § 371 defraud clause

conspiracy that stated:   "[i]n proving willfulness, it is the government's burden to prove beyond a

reasonable doubt that the defendant did not act with a good faith belief as to what the law required

of him.   If you find the defendant believed in good faith he or she was acting in compliance with

the law as to any count, you must find him or her not guilty as to that count."); *United States v.

Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993) (approving good faith instruction in bank fraud case).

**Conspiracy**

Despite the drastically different formats of the proposed Conspiracy instruction, the parties generally agree about the substance of much of this instruction.  The disputes are addressed individually below.

INTRODUCTION

Concord's proposal includes identifying in the introductory paragraph the three agencies the functions of which the government alleges the conspiracy intended to impede.  The government's proposal does not refer to these agencies until the section entitled "Objects of the Conspiracy."  Concord believes these agencies should be identified earlier in the instruction so that the jurors can understand in appropriate context the specific agencies to whom the conspirators' alleged conduct was purportedly directed.

Further, Concord's proposal explains the concept of "defrauding the United States" using the language in the Indictment—"impair[], obstruct[], and defeat[] the lawful function of" a department of the government.  *Compare* Concord's Proposed Conspiracy Instruction *with* Sup. Ind. ¶¶ 2, 9, 28 (alleging conspiracy "to defraud the United States by impairing, obstructing, and defeating" the lawful functions of the government).  By contrast, the government's proposal includes "to cheat the United States government or any of its agencies out of money or property." While this is, of course, included in the definition of the crime of defrauding the United States, it has nothing to do with the allegations in this case and there is no reason to introduce the concept to the jury.  Further, the government's proposal defines defrauding the United States using the terminology "obstruct or interfere" with a lawful government function.  This is the terminology used in the Third Circuit's model instruction, but it is not the terminology used in the Superseding Indictment.

The parties generally are in agreement with respect to the following concepts for this section of the instruction:

- Concord is charged with conspiring to defraud the United States;
- It is against the law to agree with someone to commit the crime of defrauding the United States;
- Defrauding the United States requires "deceit, craft, trickery or dishonest means";
- The government is not required to prove that the objective was achieved.

ESSENTIAL ELEMENTS OF THE CONSPIRACY

Again, the parties agree as to some portion of this section of the instruction, but disagree as to significant components.

First Element[4]

The parties agree that the first essential element of a conspiracy is an agreement. The parties disagree about the timeframe to be included in the instruction. Concord proposes using the timeframe "From in or around 2014 until November 8, 2016." The government proposes using the timeframe "between in and around 2014 until February 28, 2018." Concord's position is based on the fact that the Indictment alleges that the conspiracy was aimed at interfering with U.S. political and electoral processes, including the presidential election of 2016, Sup. Ind. ¶¶ 2, 3, 4, 6, 10, 14, 28, 42-48, *see also, id.* ¶¶ 20, 22, 57, (referring to 2016 U.S. presidential election). Because the Indictment alleges that the conspiracy was aimed at the 2016 presidential election, the

---

[4]     The government's proposal includes in the first element the following language from the D.C. pattern instruction: "This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things, does not necessarily show that an agreement exists to defraud the United States. It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime of defrauding the United States." Concord's proposal includes identical language to be included in a different element of the conspiracy charge—that Concord joined the agreement. Concord believes that the language more logically fits in that portion of the instruction, but does not object to the inclusion of this language wherever the Court deems most appropriate.

jury should be instructed that the conspiracy ended on that date.  The Indictment contains no allegations against the co-conspirators that could even arguably be unlawful except for those related to the 2016 election.

In any event, the government's proposed end date of February 28, 2018 is categorically incorrect.  First because the Original Indictment was obtained on February 16, 2018, and there is no reason to extend the date of the conspiracy beyond that date.  Even more significantly, the Superseding Indictment itself alleges that the conspiracy ended in or around January 2018.  Sup. Ind. ¶ 2.

The parties further disagree about whether the first element of the conspiracy charge should include a reference to the FEC, DOJ, and DOS—the agencies that the conspiracy allegedly intended to interfere with.  Concord's proposal is to instruct the jury that an agreement existed to commit the crime of defrauding the United States, specifically the FEC, DOJ, and DOS, and that the government must prove beyond a reasonable doubt that Concord had the specific intent to impair, obstruct, or defeat the lawful functions of those particular agencies.  The Court has already agreed that this is what the government must prove at trial, *see* Oct. 15, 2019 Hr'g Tr. 27:13-17 (Court stating "I agree, at trial, if this case survives, [the government is] going to have to show that Concord and others conspired and had the specific intent to defraud the FEC, the DOJ, and the State Department"), and the jury should be so instructed.  The government's proposed instruction entirely omits this element of the charge, and instead only generally states that "[i]t is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to defraud the United States."  This proposal is not sufficiently specific as to the definition of "defraud the United States" as alleged in this case, and it does not adequately capture the burden of proof that the Court has already found must be met.

Apart from that, as all agree, the Superseding Indictment charges a "*Klein* conspiracy"[5] to defraud under § 371 that allegedly implicates federal elections and political speech. Where, as here, complex regulatory schemes are implicated, free speech considerations are in play, and the threat of criminalizing innocent conduct is high, a court must ensure, to the greatest extent possible, that conspiracy jury instructions will ensnare only actual unlawful conduct driven by knowing criminal intent.[6]

Based on this imperative, Concord proposes instructing the jury that the conspirators need to have known about the specific statutes creating the "functions" with which the conspirators allegedly conspired to interfere, acted intentionally to violate those statutes, and that their conduct was unlawful under those statutes. "Knowingly" and "intentionally" is the language used in the Indictment, Sup. Ind. ¶¶ 2, 9, and the burden of proof Concord proposes is necessary because *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Burden*, 934 F.3d 675 (D.C.

---

[5]     The term "*Klein* conspiracies" originates from the Second Circuit's decision in *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), where the court of appeals—without any textual support—held that § 371 criminalizes conspiracies not only directed at "cheating … the government out of property or money" but also those aimed at "interfer[ing] with or obstruct[ing] one of [the government's] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *Id.* at 916 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). Although the Supreme Court held in *Hammerschmidt* that § 371 extends to conspiracies to defraud aimed at interfering with "lawful governmental functions" even where the government is not deprived of "property or money," that atextual interpretation is plainly wrong as a matter of statutory construction, *see United States v. Coplan*, 703 F.3d 46, 59–62 (2d Cir. 2012), and has been eroded by more recent Supreme Court decisions that hew more closely, as they should, to the text of criminal statutes, *id.*

[6]     In its motions to dismiss, Concord has maintained that a willfulness standard should be adopted to comport with administrative, statutory and constitutional norms. ECF 210 at 31-45; ECF 256 at 34-43. This Court has rejected such a requirement for this § 371 conspiracy. Concord reiterates, for reasons it has noted, that a willfulness standard should be utilized in the instructions given here. It makes this point for preservation purposes in light of this Court's rulings.

Cir. 2019), read together, demand strict adherence to a knowing and intentional *mens rea* requirement in the circumstances of this case.[7]

To begin with, the risk of punishing innocent conduct is already great in the mine run of conspiracy cases, and greater still in § 371 defraud clause conspiracy cases. *See Dennis v. United States*, 384 U.S. 855, 860 (1966). It is especially high where, as here, the government's case rests on the Defendants'—and certain unwitting foreign nationals' status and purported failures to act— conduct that would not, if engaged in by a U.S. citizen, violate FECA or FARA. That conduct is also charged under arcane and obscure statutes and regulations that impose duties that themselves require proof of willfulness or knowledge of the law itself and the unlawfulness of one's actions before criminal sanctions can be attached for violations of their requirements. Moreover, now that the government has fully spelled out a theory that the conspirators caused unwitting foreign nationals, who failed to register with DOJ under FARA, to post and purchase advertisements, the need for Concord's proposed instruction is magnified further still. This conduct does not, and could not, violate the plain terms of FARA either. ECF 256 at 43–45. Here, the risk of punishing innocent conduct is both apparent and real.

In these circumstances, *Rehaif*, *Burden*, and like precedents make clear that the government must "establish that the defendant knew it violated the material elements of" § 371—just as Concord's proposed instruction provides. As *Burden* would say, *mens rea* must be "calibrated" to the statutes involved. 938 F.3d at 690. A knowing and intentional requirement is imposed to ensure that a defendant understands the wrongful nature of its alleged act. A "mature system of

---

[7]     The government seemingly argued in previous briefs that *Rehaif* does not apply because there the statute contained the word knowingly as opposed to 371 which contains no *mens rea*. ECF 266 at 18-20. But the government provides no authority to limit the holding in *Rehaif*, and only to apply that knowingly standard where the statute contains the word—as opposed to the word being used in the indictment. Certainly the language in *Rehaif* provides no such limitation.

law" reads this requirement in as necessary in a case like this one.  *Rehaif*, 139 S. Ct. at 2196 (citation and internal quotation marks omitted).

Moreover, here, as in *Rehaif*, the maxim ignorance of the law is no excuse has no place because the relevant "ignorance of the law"—ignorance of both the specific statutes and regulations with which the government claims Concord conspired to interfere, and of the legal duties that flow from Concord's status—"'concern[s] the legal effect of some collateral matter" which would "result[] in [a] misunderstanding [of] the full significance of" the conduct alleged, and "thereby negat[e] an element of the [§ 371] offense": interference with a lawful governmental function.  *Rehaif*, 139 S. Ct. at 2198 (citation and internal quotation marks omitted).  For these reasons, too, the knowing and intentional requirement Concord advances should be included.

This Court, in *Bluman v. FEC*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011), made this very point.  It explicitly "caution[ed] the government that seeking criminal penalties for violations of [laws regulating foreign nationals' political contributions or expenditures] will require proof of defendant's knowledge of the law."  *See United States v. Moore*, 612 F.3d 698, 704 (D.C. Cir. 2010) (Kavanaugh, J., concurring), *aff'd*, 568 U.S. 1104 (2012) (explaining that "the Supreme Court's precedents arguably require district courts in [18 U.S.C.] § 1001 cases to give a willfulness instruction that requires proof that the defendant knew his conduct was a crime").  Just as "[t]here are many aliens in this country who no doubt are unaware of the statutory ban on foreign *expenditures*," *Bluman*, 800 F. Supp. 2d at 292, there are many aliens—inside this country and out—who no doubt are unaware of the complex and technical requirements of campaign-finance laws, the FECA, and the FARA.[8]  This complexity supports a heightened *mens rea* standard for a

---

[8]    *See Citizens United v. FEC*, 558 U.S. 310, 334 (2010) ("Campaign finance regulations now impose 'unique and complex rules'" (citation omitted)); Covington Alert, *The Foreign Agents Registration Act ("FARA"): A Guide for the Perplexed* (July 27, 2019), available at

foreign national who is implicated in a conspiracy that is based on statutes the foreign national doesn't know exist, and on conduct that does not even violate those statutes.

Similarly, in *United States v. Trie*, even though the conspiracy to defraud count did not use the word "willful," this Court required willfulness as part of a criminal indictment under § 371 in the context of an alleged election conspiracy. 21 F. Supp. 2d 7, 15 (D.D.C. 1998). In count one of the indictment there, the government alleged that the defendant conspired to defraud the United States under § 371 by making various fraudulent contributions without satisfying applicable reporting obligations. *Id*. at 13. Defendant moved to dismiss the § 371 count on grounds that the government was required to prove the defendant knew of the reporting obligations. Based in part on the complexity of the federal election laws invoked and its concern—consistent with due process—that innocent conduct might be ensnared, the court concluded that the government was required to show the "defendant knew of the [political party] treasurers' reporting obligations, that he attempted to frustrate those obligations, and that he knew his conduct was unlawful." *Id*. at 14; *see United States v. Licciardi*, 30 F.3d 1127, 1132 (9th Cir. 1994) (court applied a willfulness standard to the § 371 defraud conspiracy relating to federal regulations on the labelling of wine to show the requisite intent to frustrate federal regulations implemented by AFT); *United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987) (holding that government had to prove in § 371 defraud-clause case that defendant "had specific knowledge of the reporting requirements and intended to cause them to be evaded") (citations omitted). That level of familiarity likewise is precisely what is required in this case.

---

https://tinyurl.com/sahpcpy (FARA is a "famously vague criminal statute"—"complicated, arcane, and loosely worded"); *see also United States v. Craig*, 401 F. Supp. 3d 49, 83–84 (D.D.C. 2019) (dismissing FARA criminal count under rule of lenity due to ambiguity in provisions).

Inserting a knowing and intentional *mens rea* requirement into the conspiracy instruction is appropriate for a number of additional reasons that further constitutional requirements and the interests of justice:

**First**, *Klein* conspiracy cases like this one raise a precipitous "danger that prosecutors may use [§ 371] to punish activity not properly within the ambit of the federal criminal sanction." *United States v. Shoup*, 608 F.2d 950, 955–56 (3d Cir. 1979); *see United States v. Minarik*, 875 F.2d 1186, 1191 (6th Cir. 1989) (observing that the "problem" of "loose interpretations of criminal fraud statutes which allow the fact situation to define the crime . . . is particularly acute under the 'defraud' clause of § 371 because *Hammerschmidt* stripped the word 'defraud' of its common law roots . . . ."); *United States v. Rosenblatt*, 554 F.2d 36, 41 n.6 (2d Cir. 1977) (noting the "[t]he potential for abuse in allowing the government to manipulate prosecution by easy access to the conspiracy-to-defraud clause is clear").

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citation omitted). A knowing and intentional *mens rea* requirement thus is needed to avoid such an unconstitutional outcome. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (reading statute to require *mens rea* to avoid constitutional problem of criminalizing innocent conduct); *Liparota v. United States*, 471 U.S. 419, 425 n.9 (1985) (requiring knowledge that defendant knew his use of food stamps violated the law where the statute at issue required proof that stamps were used in a "manner not authorized by the statute or regulations") (reaffirmed and discussed approvingly by *Rehaif*, 139 S. Ct. at 2198); *cf. United States v. Rafiekian*, No. 1:18-cr-457-AJT-1, 2019 WL 4647254, at *18 (E.D. Va. Sept. 24, 2019) (conditionally granting new trial on § 371 conspiracy conviction where jury was required to be (but was not) instructed that "the

Government must prove not only that the [underlying conduct] the defendant was engaged in was illegal [under the offense-defining statute] but also that the defendant knew it was illegal[,]" an instruction necessary to prevent "'criminaliz[ing] a broad range of apparently innocent conduct'") (quoting *Liparota*, 471 U.S. at 426).

A knowing and intentional requirement further comports with the need to prove specific intent in conspiracy cases generally. As the D.C. Circuit has explained, the "'law of inchoate offenses such as attempt and conspiracy[]'" requires a "'heightened mental state [which] separates criminality itself from otherwise innocuous behavior.'" *United States v. Childress*, 58 F.3d 693, 707 (D.C. Cir. 1995) (quoting *United States v. Bailey*, 444 U.S. 394, 405 (1980)). Conspiracies, therefore are "'specific intent' crime[s]" that, at a minimum, "require[] proof of specific intent to . . . advance or further the unlawful object of the conspiracy.'" *Id.* at 707–08 (citation omitted); *see also United States v. Wilson*, 160 F.3d 732, 737 (D.C. Cir. 1998) (conspiracy requires "'an agreement . . . to commit a specific offense" and "'knowing[] participat[ion] in the conspiracy with the intent to commit the offense'") (citation and omitted).

**Second**, for many of the same reasons just noted, a knowing and intentional requirement is needed to satisfy basic constitutional requirements of fair notice. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Due process "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes" and "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citations omitted); *see Fox Television*

*Stations*, 567 U.S. at 253 ("This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.") (citation omitted).

By parity of reasoning, inclusion of a heightened knowledge requirement follows from the "rule of lenity," "a sort of 'junior version of the vagueness doctrine,'" which directs that criminal statutes be applied "only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (citations omitted); *see Yates v. United States*, 135 S. Ct. 1074, 1088 (2015) (plurality) (invoking the rule that ambiguity should be resolved in favor of lenity). The "rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota*, 471 U.S. at 427. In keeping with due process, the rule of lenity, and the safeguards they are intended to further, a knowing and intentional *mens rea* requirement is needed here precisely because the "proliferation of statutes and regulations sometimes ma[kes] it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by . . . law[]." *Cheek v. United States*, 498 U.S. 192, 199–200 (1991); *see Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (analyzing criminal cash-deposit "structuring" cases).

*Third*, until this case, the government itself—and the United States Attorney's Office for the District of Columbia in particular (ECF 256 at 9–11)—agreed that election-based § 371 defraud conspiracies like the one charged here required a showing readily analogous to the knowing and intentional requirement as described in Concord's proposed instruction. There is no reason to abandon that requirement now—and every reason to strictly adhere to it. In the 2017 edition of its "Guidelines for Federal Prosecution of Election Offenses," the DOJ made clear that charges of conspiracy to defraud under § 371 based on election offenses require proof that the defendant "was aware that his or her conduct was generally unlawful" *and* "*must also show* that

the defendant intended to disrupt and impede the lawful functioning of the FEC." *See* Dep't of Justice, *Federal Prosecution of Election Offenses*, 162–63 (Dec. 2017 8th Ed.) (the "DOJ Guidelines") (emphasis added). Thus, the Guidelines require proof that the defendant intended to disrupt and impede the FEC *in addition to* willfulness, defined as the awareness of unlawfulness required for an underlying offense of FECA. The Guidelines specifically note that this standard is "a higher factual burden than is required under 18 U.S.C. § 1001," which requires proof that a defendant act "knowingly and willfully; that is, the defendant intended to cause the recipient to record false statements and knew, generally, that making such a false statement as unlawful." *Id.* at 162–63.

**Fourth**, a knowing and intentional requirement likewise should be mandated because, as Concord's motion to dismiss makes clear (ECF 256 at 29), the government patently is "cloak[ing]" an offense-clause charge—predicated on FECA and FARA—in the guise of a defraud-clause one. *See United States v. Bridges*, 346 U.S. 209, 223–24 (1953) (rejecting government's attempt to use defraud clause as a "cloak" to avoid adverse consequences of charging under the offense clause); *see also Rosenblatt*, 554 F.2d at 41 (rejecting government's contention that it was free to elect between the clauses "in cases where they overlap, in such a way as to produce the most favorable result" for the government); *Dennis*, 384 U.S. at 863 (accepting government's charge under defraud clause instead of offense clause, but only because the defraud allegation there "properly reflect[ed] the essence of the alleged offense" and, unlike the charge here, did "not involve an attempt by prosecutorial sleight of hand to overcome" a limitation on the government were it to make an offense-clause charge). Controlling precedent forbids this sort of charging work-around. At a minimum, where the government pursues such circumvention at the charging stage (and beyond) for the apparent purpose of avoiding a heightened *mens rea* burden of proof, the

government should be held to the *mens rea* standard that would indisputably apply had it properly charged the case.  Here, the proper charge should be analogous to an offense-clause conspiracy under § 371, with a knowing and intentional *mens rea* requirement adopted for this reason.

*Fifth*, a knowing and intentional requirement also is needed because it is not enough that the defendant allegedly conspired to take some generic action or even conspired to defraud a private actor and, in doing either, engaged in deception that foreseeably hindered the government's lawful functions.  To the contrary, there is no criminal violation of § 371 unless an object of the conspiracy was the use of deception to interfere with *the government's* lawful function.  Thus, as the Supreme Court explained in *Tanner v. United States*, 483 U.S. 107 (1987):  "[t]he conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy but also—and most importantly—by the *target* of the conspiracy."  *Id.* at 130.  "Section 371 covers conspiracies to defraud 'the United States or any agency thereof,' a phrase that [even] the Government concedes fails to describe [private parties]."  *Id.*  Following *Tanner*, courts repeatedly have acknowledged that the purported deception of the United States government "has to be a *purpose* or *object* of the conspiracy, and not merely a foreseeable consequence of the conspiratorial scheme."  *United States v. Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997) (citing *Dennis*, 384 U.S. at 861).  The knowing and intentional requirement Concord proposes is needed in this case to meet the standard *Tanner* demands.

*Sixth*, and finally, without a requirement that Concord knew about the specific statutes and regulations with which it is alleged to have interfered, and knew its (or its conspirators) status imposed duties that they breached in violation of those statutes and regulations, the threat of tactical and discriminatory enforcement of § 371 by the government far exceeds what the Constitution can tolerate.  *See Kincaid v. Gov't of Dist. of Columbia*, 854 F.3d 721, 729 n.2 (D.C.

Cir. 2017) (Kavanaugh, J.) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.") (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)); ECF 256.  Concord cannot, consistent with principles of fairness and neutrality embedded in due process, be singled out for prosecution without a critical element of the burden of proof for purported violation of the election-related statutes on which the government's charge is based.

For all the forgoing reasons, Concord proposes that the conspiracy instruction should include the following:

> For Concord to have acted knowingly and intentionally the government must prove beyond a reasonable doubt (1) that Concord specifically agreed with others to defraud the FEC, DOJ and/or DOS, (2) there was a legal duty on the co-conspirators or unwitting persons to provide certain specific information to the FEC, DOJ and DOS that was not provided, (3) that Concord knew that the co-conspirators' or unwitting foreign nationals' status as foreign persons and foreign entities created a duty to disclose certain specific expenditures to the FEC, to possibly register at the DOJ FARA Unit and to provide certain specific information on visa applications to the DOS, and (4) that Concord knew that its, the co-conspirators', or unwitting persons' failure to disclose certain information was a violation of U.S. law for which Concord could be charged and prosecuted.

ECF 248-1 at 19.[9]

<u>Second Element</u>

Concord proposes that the second element of the conspiracy charge instruct the jury that Concord and the co-conspirators had an affirmative duty to disclose specific information to the FEC, DOJ, and/or DOS.  The Court has previously acknowledged that the government probably would have to prove such a duty at trial in order to establish that any failure to report or disclose

---

[9]     Because the government's unwitting person FARA theory appeared more specifically in the Superseding Indictment—which was docketed the same day the parties' Proposed Jury Instructions were filed—Concord's proposed conspiracy instruction did not account for that theory.  Concord therefore proposes a slight revision to its proposed conspiracy instruction, as reflected above.  Concord's proposal is that this summary replace the summary that appears on page 19 of the Parties' Proposed Jury Instructions, ECF 248-1.

constituted deceit.  *See* Nov. 15, 2018 Mem. Op., ECF 74, at 15 ("When coupled with a duty to report, the various acts of deception immediately directed a private parties become relevant as a way to avoid detection for failing to comply.  But it is difficult to see how the defendants' deception would impair agencies' ability to 'administer' disclosure requirements if those requirements did not apply to the defendants' conduct.").   Furthermore, the Court has already held that the Indictment alleges a duty to register and/or report, and so while this element may not be necessary in all § 371 defraud conspiracies, it should be included in the instruction in this case.  *See id.* ("To be sure, not *all* conspiracies to defraud the United States by impairing the lawful functions of the FEC and DOJ must allege a duty to report or register.  But because this indictment alleges a conspiracy to impair those agencies' functions of 'administering federal requirements for disclosure," Indictment ¶ 9, the government may ultimately have to prove that the defendants agreed to a course of conduct that, if carried out, would require disclosure to the FEC or DOJ.") *See also, id.* at 10 ("a failure to disclose information can only be deceptive—and thus serve as the basis for a § 371 violation—if there is a legal duty to disclose the information in the first place").

Instead of including a duty to disclose or report as an element of the conspiracy, the government proposes including a vague and confusing instruction: "If you conclude that a duty to disclose is relevant to your decision about whether Concord conspired to defraud the United States, there are two duties to disclose that are at issue in this case."  Instead of completing this proposed instruction, the government states that it anticipates that the evidence at trial will establish two legal duties to disclose information and proposes deciding language regarding this aspect of the jury instruction after the parties have exchanged exhibit lists.  With this proposal, the government again fails to follow the Court's order regarding the submission of jury instructions and takes it upon itself to modify the Court's pretrial schedule.

Third Element

The parties agree that an essential element of the conspiracy is that Concord joined the agreement,[10] but disagree as to two components of this instruction.

First, Concord's position is that the jury should be instructed that Concord "knowingly and willfully" joined this agreement; the government proposes that the jury be instructed only that Concord "intentionally" joined the agreement.  For the reasons set forth above regarding including a willfulness instruction as to the first element of the conspiracy, Concord believes willfulness should be included in this instruction as well.

Second, Concord proposes including the following in the conspiracy instruction:

> But before determining that Concord has become a member of a conspiracy, the evidence must prove beyond a reasonable doubt that the defendant knowingly participated in the unlawful plan with the specific intent to advance or further the objective or purpose of the conspiracy.  The government must prove beyond a reasonable doubt that Concord was aware of the common purpose, had knowledge that the conspiracy existed, and was a willing participant with the intent to advance the purposes of the conspiracy.

This language was used to instruct the jury in a drug conspiracy case and was approved by the D.C. Circuit in *United States v. Bostick*, 791 F.3d 127, 144 (D.C. Cir. 2015).  Inclusion of this instruction will ensure that the jury adequately considers whether Concord had the requisite intent to join the conspiracy and that the jury does not convict if it finds that Concord had "no knowledge or intent to join the conspiracy, but just happens to act in a way that is of benefit to the conspiracy, or to a conspirator." *Id.*[11]

---

[10]    Concord's proposal calls this the third element because of its proposal to include the duty to report or register as the second element. In the government's proposal, this is the second element.

[11]    It is worth noting that this concept ("one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not become a conspirator") is included in the 9th Circuit Pattern Instruction upon which the government relies elsewhere in its proposed instruction. *See* 9th Circuit Pattern Jury Instruction 8.21 Conspiracy to Defraud the United States.

<u>Fourth Element</u>

The parties agree that the final element of the conspiracy charge relates to overt act(s), and generally agree as to the first portion of this instruction, including that the charged overt acts will be provided to the jury separately.

Concord's proposal includes the following, which is not included in the government's proposal: "In other words, it is not sufficient for you to agree that some overt act was committed without agreeing on which overt act was committed." This precise language was included in the jury instructions provided in *United States v. Baylor*, Case No. 6-cr-180-ESH (D.D.C.). The government's proposal acknowledges that the jury "must all agree on at least one overt act that was done," and Concord's proposal simply reinforces that point.

The government's proposal with respect to overt acts includes the following instruction: "Similarly, you need not find that the defendant in this case committed the overt act. It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy. An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy." This language does not appear in the D.C. pattern instructions and the government does not cite any D.C. case supporting inclusion of this instruction. Instead, the government pulls this language from the 9th Circuit pattern instruction.

But the substance of this proposal is captured in the portions of the instruction on which the parties agree and is therefore unnecessary. The agreed-upon instructions state that "one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy," from which it is clear that it is not required that the defendant commit the over act and only one of

the conspirators did so.  Additionally, the parties agree that the instruction should include the D.C. pattern instruction that "[w]hen persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators."

### OBJECTS OF THE CONSPIRACY

The parties disagree significantly over the instructions to be given to the jury regarding the objects of the conspiracy.[12]  Concord's proposal is modeled off of the instruction recently provided by the Southern District of New York in *United States v. Middendorf*, 18-cr-36 (JPO) (S.D.N.Y.) (attached as Exhibit 1), a prosecution involving a § 371 conspiracy to defraud charge involving the SEC.

Concord's proposal instructs the jury about what an object of a conspiracy is and the three objects of the conspiracy alleged in this case—impairing, obstructing, or defeating the lawful functions of three separate government entities, the FEC, DOJ, and DOS.  Concord's proposal also reiterates the concept of unanimity as to the specific government functions alleged to be part the object of the conspiracy.  Concord's proposal makes clear that while the government must prove beyond a reasonable doubt that Concord knew with specificity how the relevant laws described the functions of the relevant agencies as they relate to the administration of disclosure requirements and visa regulations, it is not necessary for the government to show that Concord was aware of a specific law, rule, or regulation that the conduct may have violated.  This instruction comports with the D.C. Circuit's decision in *United States v. Burden*, 934 F.3d 675, 690-93 (D.C. Cir. 2019).

---

[12] Concord did not use a separate heading to delineate specific sections of the conspiracy instruction.  Its proposal regarding the objects of the conspiracy appears on pages 21 through 23 of the Parties' Proposed Jury Instructions.

Finally, Concord's proposal regarding the object of the conspiracy includes a detailed explanation of the functions of the three agencies at issue—the FEC, DOJ, and DOS—that the government alleges the defendants conspired to interfere with.  The government's proposed instructions relegates these functions to a single sentence.  *See* Government's Proposed Instruction on the Elements of the Charged Offense, 248-1, at 29.  But the functions of these government agencies are critical to the jury's understanding of the charge and must be explained in detail.

CONCLUSION

Concord's proposed instruction concludes with the following explanation: "Interfering with the U.S. political and electoral process of the United States, alone is not a crime.  For Concord to be found guilty of conspiracy you must find that Concord acted with specific intent to defraud the specific functions alleged and not some other functions of the Federal Election Commission, the Department of Justice, and/or the Department of State.  You cannot convict Concord unless you are unanimous in your decision regarding one or more of these government departments and agency."

The first sentence represents an accurate statement of the law, and the Court has acknowledged this.  *See* May 24, 2019 Mem. Op. and Order, ECF 136, at 1 ("According to the indictment, the conspirators' ultimate goal was to sow discord among U.S. voters through divisive social media posts and political rallies.  That goal, by itself, was not illegal.").  Similarly, as set forth above, the second sentence represents an accurate statement of the law, as the Court has previously acknowledged.  *Supra* at 20.  The third sentence summarizes the specific unanimity instruction that Concord proposes is required in this case, and should be provided to remind the jury of the importance of its unanimity as to the specific government departments and agency and functions, which the government has already acknowledged.  *Supra* at 10-12.

<u>MEANS OF DECEPTION</u>

The government's proposed instruction includes a separate section titled "Means of Deception." This section repeats much of what is included elsewhere in Concord's proposed instruction. For example, Concord's proposed introduction instructs that it is against the law to agree with someone to defraud the United States and that the government is not required to prove that the objective was achieved. *See* Concord's Proposed Instruction: Conspiracy, ECF 248-1, at 18.[13] Additionally, the instruction that the jury may consider acts taken by the alleged conspirators when deciding whether they entered a conspiracy and whether defrauding the United States was an objective of that conspiracy, is included elsewhere in the government's proposed instruction and in Concord's proposed instruction. *See* ECF 248-1 at 24 (Concord's proposed instruction) and 28 (government's proposed instruction).

As for the rest of the instruction, the government does not include specific authority for the propositions, but simply includes a string cite to three different cases (two from different circuits) at the end of the instruction. The citations provided do not appear to support the propositions the government includes in this portion of the instruction. More specifically, neither *United States v. Gricco*, 277 F.3d 339, 348 (3d Cir. 2002) nor *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), provide a basis to include a specific jury instruction that "the object of obstructing or interfering with one of the United States government's lawful functions, by deceit, craft, trickery, or dishonest means can occur in either of two ways: (1) through acts of deceit, craft, trickery, or dishonest means, or (2) through the failure to provide information to the government that is legally required," as the government suggests.

---

[13] These concepts are also included in the government's proposed section entitled "Overview of Conspiracy to Defraud the United States," *see* ECF 248-1 at 26, and there is no reason to include them again in a separate section.

In the final paragraph of the proposed "Means of Deception" instruction, the government proposes instructing the jury that it can "find that the defendants conspired to use deceptive or deceitful means to prevent government agencies from performing their lawful functions, even if there was no duty to disclose information to those agencies.   For the mere failure to submit information to the government to constitute deception, however, there must have been a legal duty to disclose that information."   This instruction is repetitive of what Concord proposes in elsewhere in the instruction, *see* ECF 248-1 at 22, and is therefore unnecessary in a separate section as the government proposes.

Dated: December 16, 2019

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By:   /s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

**Exhibit 1** to Defendant Concord Management
and Consulting LLC's Brief In Support of
Proposed Jury Instructions,
18-cr-00032-2-DLF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

DAVID MIDDENDORF and
JEFFREY WADA,

                                    Defendants.

18-CR-36 (JPO)

**JURY CHARGE**

Court
exhibit 1

3/8/19

**Table of Contents**

INTRODUCTORY INSTRUCTIONS ............................................................................................. 4

A.   Introductory Remarks and Role of the Court ...................................................... 4

B.   Role of the Jury ..................................................................................................... 5

C.   Role of Counsel ..................................................................................................... 5

D.   All Persons Are Equal before the Law ................................................................. 6

E.   Presumption of Innocence .................................................................................... 6

F.   Proof Beyond a Reasonable Doubt ...................................................................... 7

G.   Do Not Be Swayed by Sympathy or Prejudice .................................................... 8

H.   What Is and Is Not Evidence ................................................................................ 9

1.     Stricken or Excluded Testimony Is Not Evidence ............................... 9

2.     Exhibits Not Received into Evidence Are Not Evidence ..................... 10

3.     Arguments by Lawyers Are Not Evidence .......................................... 10

4.     Statements of the Court Are Not Evidence .......................................... 10

I.   Direct and Circumstantial Evidence .................................................................. 10

J.   Stipulations ......................................................................................................... 12

K.   Summary Charts – Admitted as Evidence .......................................................... 12

L.   Rulings on Evidence and Objections .................................................................. 12

M.   Witness Credibility ............................................................................................. 13

N.   Defendant's Testimony ....................................................................................... 15

O.   Cooperating Witness Testimony ......................................................................... 15

P.   Expert Witnesses ................................................................................................ 17

Q.   Character Testimony ........................................................................................... 18

R.   Bias of Witnesses ............................................................................................... 18

S.   Persons Not on Trial ........................................................................................... 19

T.   Preparation of Witnesses .................................................................................... 19

U.   Uncalled Witnesses – Equally Available ........................................................... 20

V.     Particular Investigative Techniques Not Required ............................................. 20

SUBSTANTIVE INSTRUCTIONS ........................................................................................... 21

A.   Meaning of the Indictment ................................................................................. 21

B.   Conspiracy and Substantive Counts ................................................................... 23

C.   Counts Three Through Five: Wire Fraud – The Nature of the Offense Charged ... 24

D.   Counts Three Through Five: Wire Fraud – The Statute Defining the Offenses ... 25

E.   Counts Three Through Five: Wire Fraud – Elements of the Offense ................. 25

F.   Counts Three Through Five: Wire Fraud – First Element ................................... 25

G.   Counts Three Through Five: Wire Fraud – Second Element (Knowledge, Willfulness, Intent to Defraud) ............................................................................................................... 28

H.   Counts Three Through Five: Wire Fraud – Third Element (Interstate Nexus) ..... 30

I.   Aiding and Abetting ........................................................................................... 31

J.   Count Two: Conspiracy to Commit Wire Fraud – The Nature of the Offense Charged ...... 33

K.   Count Two: Conspiracy to Commit Wire Fraud – Elements of Conspiracy......................... 34

L.   Count Two: Conspiracy to Commit Wire Fraud – Object of the Conspiracy ...................... 34

M.   Count Two: Conspiracy to Commit Wire Fraud – First Element ........................................ 34

N.   Count Two: Conspiracy to Commit Wire Fraud – Second Element (Membership) ............. 36

O.   Count One: Conspiracy to Defraud the United States -- Nature of the Offense Charged ..... 38

P.   Count One: Conspiracy to Defraud the United States – Elements....................................... 39

Q.   Count One: Conspiracy to Defraud the United States – Object of the Conspiracy............... 42

R.   Good Faith ........................................................................................................................ 44

S.   Defense ............................................................................................................................. 45

T.   Venue................................................................................................................................ 46

U.   Variance in Dates and Times............................................................................................. 46

FINAL INSTRUCTIONS ................................................................................................................ 47

A.   Duty to Deliberate and Reach a Unanimous Verdict ......................................................... 47

B.   Right to See Exhibits and Hear Testimony; Communications with Court............................ 48

C.   Notes ................................................................................................................................ 49

D.   Verdict Form .................................................................................................................... 49

E.   Duties of Foreperson ........................................................................................................ 49

F.   Return of Verdict.............................................................................................................. 50

G.   Jury Oath ......................................................................................................................... 50

H.   Exceptions ........................................................................................................................ 50

CONCLUSION............................................................................................................................. 50

INTRODUCTORY INSTRUCTIONS

## A. Introductory Remarks and Role of the Court

Members of the jury, you have now heard all of the evidence in the case as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

My duty at this point is to instruct you as to the law. There are three parts to these instructions. First, I'm going to give you some general instructions about your role and about how you are to decide the facts of the case. These instructions really would apply to just about any trial. Second, I'll give you some specific instructions about the legal rules applicable to this particular case. Third, I'll give you some final instructions about procedure.

It is your duty to accept these instructions of law and to apply them to the facts as you determine them. With respect to legal matters, you must take the law as I give it to you. If any attorney or witness has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You must not substitute your own notions or opinions of what the law is or ought to be.

Listening to these instructions may not be easy. It is important, however, that you listen carefully and concentrate. I ask you for patient cooperation and attention. You'll notice that I'm reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised. But it's important that I not do that. The law is made up of words, and those words are very carefully chosen. So it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully and try to concentrate on what I'm saying.

Remember, you are to consider these instructions together as a whole; you are not to isolate or give undue weight to any single instruction.

## B. Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts. You pass on the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Do not conclude from any of my questions or any of my rulings on objections or anything else that I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any opinion I might have regarding the facts is of absolutely no consequence. It is *your* sworn duty, and you have taken the oath as jurors, to determine the facts.

## C. Role of Counsel

Just as I have my duties as a judge and you have your duties as jurors, it has been the duty of each attorney in this case to object when the other side offered testimony or other evidence that the attorney believed is not properly admissible. It has been my job to rule on those objections. Therefore, why an objection was made or how I ruled on it is not your business. You should draw no inference from the bare fact that an attorney objects to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences outside of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

5

To be clear, the personalities and the conduct of counsel in the courtroom are not in any way at issue.  If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### D.  All Persons Are Equal before the Law

In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States.  The fact that the Government is a party and the prosecution is brought in the name of the United States does not entitle the Government or its witnesses to any greater consideration than that accorded to any other party.  By the same token, you must give it no less deference.  The Government and the Defendants stand on equal footing before you.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about the Defendants' race, religion, national origin, gender, sexual orientation, or age.  All persons are entitled to the same presumption of innocence and the Government has the same burden of proof with respect to all persons.  Similarly, it would be improper for you to consider any personal feelings you have about the race, religion, national origin, gender, sexual orientation, or age of any other witness or anyone else involved in this case.  The Defendants are entitled to a trial free from prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

### E.  Presumption of Innocence

Now I will instruct you on the presumption of innocence.  The law presumes the Defendants to be innocent of all charges against them.  In this case, the Defendants before you have pleaded not guilty.  In so doing, they have denied the charges in the Indictment.  Thus, the

6

Government has the burden of proving the Defendants' guilt beyond a reasonable doubt.

This burden never shifts to the Defendants.  In other words, the Defendants do not have to prove their innocence.  They are presumed to be innocent of the charges contained in the Indictment.  The Defendants thus began the trial here with a clean slate.  The presumption of innocence was in their favor when the trial began, continued in their favor throughout the entire trial, remains with them even as I speak to you now, and persists in their favor during the course of your deliberations in the jury room.

This presumption of innocence alone requires you to acquit the Defendants unless you as jurors are unanimously convinced beyond a reasonable doubt of their guilt, after a careful and impartial consideration of all the evidence in this case.  It is removed if and only if, as members of the jury, you are satisfied that the prosecution has sustained its burden of proving the Defendants guilty beyond a reasonable doubt.

### F.   Proof Beyond a Reasonable Doubt

Now, the question naturally arises: what, exactly, is a reasonable doubt?  The words almost define themselves.  A reasonable doubt is a doubt that a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and arising out of the evidence in the case—or the lack of evidence.  Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, your common sense.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

I must emphasize that beyond a *reasonable* doubt does not mean beyond all *possible* doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that, by its very nature, cannot be proved with mathematical certainty.  In the

criminal law, guilt must be established beyond a *reasonable* doubt, not all *possible* doubt.

Further, the Government is not required to prove each element of the offense by any particular number of witnesses. The testimony of a single witness may be enough to convince you beyond a reasonable doubt of the existence of the elements of the charged offense—if you believe that the witness has testified truthfully and accurately related what he has told you.

That all said, if, after a fair and impartial consideration of all the evidence (or the lack of evidence), you have an abiding belief of the Defendants' guilt beyond a reasonable doubt—a belief that you would be willing to act upon without hesitation in important matters in the personal affairs of your own life—then it is your sworn duty to convict the Defendants.

On the other hand, if after a fair and impartial consideration of all the evidence (and the lack of evidence), you are not satisfied of the guilt of the Defendants with respect to the charges in the Indictment; if you do not have an abiding conviction of the Defendants' guilt; in sum, if you have such a doubt as would cause you, as prudent persons, to hesitate before acting in matters of importance to yourselves—then you have a reasonable doubt, and in that circumstance it is your sworn duty to return a verdict of not guilty.

## G. Do Not Be Swayed by Sympathy or Prejudice

In reaching that determination, your oath as jurors commands that you are not to be swayed by sympathy or prejudice. You are to be guided solely by the evidence in this case and you are to apply the law as I instruct you. As you sift through the evidence, you must ask yourselves whether the prosecution has proven the Defendants' guilt. Once you let fear or prejudice, or bias or sympathy, interfere with your thinking, there is a risk that you will not arrive at a true and just verdict. Thus, if you have a reasonable doubt as to the Defendants' guilt, then you must render a verdict of not guilty. But if you should find that the prosecution has met its

burden of proving the Defendants' guilt beyond a reasonable doubt, then you should not hesitate because of sympathy, or for any other reason, to render a verdict of guilty.

The question of possible punishment of the Defendants is of no concern to the jury and should not enter into or influence your deliberations. The duty of imposing sentence in the event of a conviction rests exclusively upon the Court. Your function is to weigh the evidence or the lack of evidence in the case and to determine whether or not the Defendants are guilty beyond a reasonable doubt, solely upon the basis of such evidence. Under your oath as jurors, you cannot allow any consideration of the punishment that may be imposed upon the Defendants, if they are convicted, to influence your verdict.

Similarly, it would be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process. Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

## H. What Is and Is Not Evidence

Now, I have repeatedly referred to the evidence in this case. This raises an important question: what is evidence? I instruct you that evidence consists of the sworn testimony of the witnesses, the exhibits received in evidence, and the stipulations of the parties. In determining the facts, you must rely upon your own recollection of the evidence.

What, then, is *not* evidence? I instruct you that the following does not count as evidence:

### 1. Stricken or Excluded Testimony Is Not Evidence

*First*, testimony that I have stricken or excluded is not evidence. You may not use it in rendering your verdict. If certain testimony was received for a limited purpose, you must follow the limiting instructions I have given, and use the evidence only for the limited purpose I indicated.

9

## 2.   Exhibits Not Received into Evidence Are Not Evidence

*Second*, any exhibit that was not received into evidence is not evidence.  Thus, exhibits marked for identification but not admitted are not evidence, nor are materials that were used only to refresh a witness's recollection.

## 3.   Arguments by Lawyers Are Not Evidence

*Third*, arguments by the lawyers are not evidence.  The reason is simple: advocates are not witnesses.  The opening and closing arguments of both sides explain how each side wants you to analyze the evidence, which consists of the testimony of witnesses, the documents and other exhibits that were entered into evidence, and the stipulations of the parties.  What the lawyers have said to you is intended to help you understand the evidence—or the lack of evidence—as you deliberate to reach your verdict.  However, if your recollection of the facts differs from the lawyers' opening statements, questions to witnesses, or summations, it is *your* recollection that controls, not theirs.  For the same reasons, you are not to consider a lawyer's or a party's questions as evidence.  Only the witnesses' answers are to be considered evidence, not the questions.

## 4.   Statements of the Court Are Not Evidence

*Finally*, any statements that I may have made do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

I will now discuss at slightly greater length some important matters related to evidence.

## I.   Direct and Circumstantial Evidence

There are two types of evidence that you may properly consider in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard. For example, if a witness testified that when he left his house this morning, it was raining, that would be direct evidence about the weather.

The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly, by proof of other facts. There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day outdoors. Assume that the courtroom shades were drawn and that you could not look outside. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet and then, a few moments later, somebody else walked in with a raincoat that was dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of your reason, experience, and common sense from one fact that's established the existence or the nonexistence of some other fact.

As you can see, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.

11

Many material facts, such as someone's state of mind, are rarely easily proven by direct evidence. Usually such facts are established by circumstantial evidence and the reasonable inferences that you draw. Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting a defendant, the jury must be satisfied that the Government has proven the defendant's guilt beyond a reasonable doubt, based on all of the evidence in the case.

There are times when different inferences may be drawn from the evidence. The Government asks you to draw one set of inferences. The Defendants ask you to draw another. It is for you, and for you alone, to decide what inferences you will draw.

**J.  Stipulations**

You have heard evidence in the form of stipulations. A stipulation of testimony is an agreement between the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given the testimony. However, it is for you to decide what effect that testimony should be given.

You also heard evidence in the form of stipulations that contain facts that were agreed to be true. In such cases, you must accept those facts as true. However, it is for you to decide what weight, if any, to give to those facts.

**K.  Summary Charts – Admitted as Evidence**

Now, some of the exhibits that were admitted into evidence were in the form of charts and summaries. You should consider them as you would any other evidence.

**L.  Rulings on Evidence and Objections**

As I have already explained, you should draw no inference or conclusion for or against

any party by reason of lawyers making objections or my rulings on such objections.

By the same token, nothing I say is evidence. If I commented on the evidence at any time, do not accept my statements in place of your recollection or your interpretation. It is your recollection and interpretation that govern.

Further, do not concern yourself with what was said at side-bar conferences or during my discussions with counsel. Those discussions related to rulings of law.

At times I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up. At times I asked a question myself. Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine. Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you. That is entirely your role.

**M. Witness Credibility**

You have had the opportunity to observe the witnesses. It will now be your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

To that end, I am going to give you a few general instructions on how you may determine whether witnesses are credible and reliable, whether witnesses told the truth at this trial, and whether they knew what they were talking about. It is really just a matter of using your common sense, your good judgment, and your experience.

First, consider how well the witness was able to observe or hear what he or she testified

about. The witness may be honest, but mistaken. How did the witness's testimony impress you? Did the witness appear to be testifying honestly and/or candidly? Were the witness's answers direct or were they evasive? Consider the witness's intelligence, demeanor, manner of testifying, and the strength and accuracy of the witness's recollection. Consider whether any outside factors might have affected a witness's ability to perceive events.

Consider the substance of the testimony. How does the witness's testimony compare with other proof in the case? Is it corroborated or is it contradicted by other evidence? If there is a conflict, does any version appear reliable, and if so, which version seems more reliable?

You may consider whether a witness had any possible bias or relationship with a party or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness unworthy of belief, but it can. These are simply factors that you may consider.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

In summary, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in the light of all the other testimony, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness's testimony in its entirety or you may accept only those parts that you believe to be truthful or that are corroborated by other independent evidence in the case.

14

It is for you, the jury, and you alone—not the lawyers, not the witnesses, and not me as the judge—to decide the credibility of witnesses who testified and the weight that their testimony deserves. The ultimate question for you to decide in passing upon credibility is: Did the witness tell the truth before you?

### N.  Defendant's Testimony

In a criminal case, the defendant cannot be required to testify, but, if he chooses to testify, he is, of course, permitted to take the witness stand on his own behalf. In this case, Mr. Middendorf decided to testify. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case. However, the burden of proof remains on the Government at all times, and the defendant is presumed innocent.

Mr. Wada did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that Mr. Wada did not testify. No adverse inference against him may be drawn because he did not take the witness stand. You may not consider this against Mr. Wada in any way in your deliberations in the jury room.

### O.  Cooperating Witness Testimony

You have also heard from two witnesses, Brian Sweet and Thomas Whittle, who testified that they pled guilty to criminal charges. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that prosecution witnesses have pled guilty to criminal charges. A witness's decision to plead guilty is a personal

15

decision about his or her own guilt. It may not be used by you in any way as evidence against or unfavorable to the defendants on trial here.

Mr. Sweet and Mr. Whittle each testified pursuant to an agreement to cooperate with the Government. The law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of an accomplice may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt. It is also the case, however, that accomplice testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. Nevertheless, let me say a few things that you might want to consider during your deliberations on the subject of accomplices. You should ask yourself whether Mr. Sweet and Mr. Whittle would benefit more by lying or by telling the truth. Was either witness's testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely? Or did he believe that his interests would be best served by testifying truthfully? If you believe that the witness you are considering was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony? In sum, you should look at all of the evidence in deciding what credence and what weight, if any, to give to an accomplice witness.

Keep in mind that it does not follow that, simply because a person has admitted to participating in one or more crimes, that he is incapable of giving a truthful version of what happened. Like the testimony of any other witness, the testimony of someone who has participated in a crime should be given such weight as it deserves in light of the facts and

16

circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of a witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.

One final note in this regard. It is no concern of yours why the Government made agreements with witnesses. Your sole concern is to decide whether the witness was giving truthful testimony in this case before you. In sum, you should look at all the evidence in deciding what credence and what weight, if any, you will give to a witness's testimony.

## P. Expert Witnesses

You have heard testimony from what we call expert witnesses. An expert is a witness who by education or experience has acquired learning or experience in a specialized area of knowledge. Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be an expert and give their reasons for their opinions. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Now, your role in judging credibility applies to experts as well as other witnesses. You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve. If you should decide that the opinion of an expert was not based on sufficient education or experience or on sufficient data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert was outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

On the other hand, if you find the opinion of an expert is based on sufficient data,

education and experience, and the other evidence does not give you reason to doubt his conclusions, you would be justified in placing reliance on his testimony.

## Q. Character Testimony

During the trial, you heard testimony bearing on the character of defendant David Middendorf/. Character testimony should be considered together with all the other evidence in the case in determining the guilt or innocence of the defendant. Evidence of good character may in itself create a reasonable doubt where, without such evidence, no reasonable doubt would have existed.

But if, on considering all the evidence, including the character evidence, you are satisfied beyond a reasonable doubt that the defendant is guilty, a showing that he previously enjoyed a reputation of good character does not justify or excuse the offense and you should not acquit Mr. Middendorf merely because you believe he is a person of good reputation.

The testimony of a character witness is not to be taken by you as the witness's opinion as to the guilt or innocence of a defendant. The guilt or innocence of a defendant is for you alone to determine and that should be based on all the evidence you have heard in the case.

## R. Bias of Witnesses

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witnesses may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or

18

her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and by applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

## S.  Persons Not on Trial

During the trial, you heard the names of several other individuals mentioned in connection with this case. Some of those other individuals have been mentioned in connection with what the Government alleges was illegal activity.

I instruct you that you may not draw any inference, favorable or unfavorable, towards the Government or the Defendants from the fact that any other person is not on trial here. Further, you may not speculate as to the reasons why those other people are not on trial, or what became of them in the legal system. Those matters are wholly outside your concern and have no bearing on your duties as jurors in this case.

## T.      Preparation of Witnesses

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned

19

about, focus on those subjects and have the opportunity to review relevant exhibits before being

questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact,

it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or

her testimony and what inferences you draw from such preparation are matters completely within

your discretion.

## U.  Uncalled Witnesses – Equally Available

There are several people whose names you have heard during the course of the trial but

who did not appear here to testify.  I instruct you that each party had an equal opportunity, or

lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any

inferences or reach any conclusions as to what they would have testified to had they been called.

You should, however, remember my instruction that the law does not impose on a

defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

The burden remains with the Government to prove the guilt of the Defendants beyond a

reasonable doubt.

## V.  Particular Investigative Techniques Not Required

You have heard reference, in the arguments and cross-examination of defense counsel in

this case, to the fact that certain investigative techniques were or were not used by the

Government.  There is no legal requirement, however, that the Government prove its case

through any particular means.  While you are to carefully consider the evidence adduced by the

Government, you are not to speculate as to why they used the techniques they did or why they

did not use other techniques.  The Government is not on trial.  Law enforcement techniques are

not your concern.  However, you are free to consider a lack of evidence in your determination of

whether the government proved the charged crimes beyond a reasonable doubt.  Your concern is to determine whether, on the evidence or lack of evidence, the Government has proven the defendant's guilt beyond a reasonable doubt.

## W. Consider Each Defendant Separately

Defendants David Middendorf and Jeffrey Wada are on trial together.  In reaching a verdict, however, you must bear in mind that innocence or guilt is individual.  Your verdict must be determined separately with respect to each Defendant, solely on the evidence, or lack of evidence, presented against him, without regard to the guilt or innocence of anyone else.

In this regard, you must be careful not to find any defendant guilty merely by reason of relationship or association with other persons.  The fact that one person may be guilty of an offense does not mean that his or her friends, relatives, or associates were also involved in the crime.  You may, of course, consider those associations as part of the evidence in the case, and may draw whatever inferences are reasonable from the fact of the associations taken together with all of the other evidence in the case.  But you may not draw the inference of guilt merely because of such associations.  In short, for each defendant, the question of guilt or innocence as to each count of the indictment must be individually considered and individually answered, and you may not find any defendant guilty unless the evidence proves his or her guilt beyond a reasonable doubt.

Now I am going to turn to the substantive instructions.

SUBSTANTIVE INSTRUCTIONS

## A.  Meaning of the Indictment

Let us first turn to the charges against the Defendants as contained in the Indictment.  The

Indictment is not evidence. It is an accusation, a statement of the charges made against the Defendants. It gives the Defendants notice of the charges against them. It informs the Court and the public of the nature of the accusation.

A defendant begins trial with an absolutely clean slate and without any evidence against him. Remember that the charges in the Indictment are merely accusations. What matters is the evidence or lack of evidence that you heard and saw in the trial.

The Indictment in this case consists of five counts, or charges. I will, at times, refer to each count by the number assigned to it in the Indictment. You should know that there is no significance to the order of these numbers or the specific number of counts charged, and indeed my instructions will follow a different order than the order in which the various counts appear in the Indictment.

Each count is a separate offense or crime. Each count must therefore be considered separately by you, as to each Defendant named in that count, and you must return a separate verdict of guilty or not guilty on each count, as to each Defendant. Whether you find a Defendant guilty or not guilty as to one count should not affect your verdict as to any other count charged.

In Count One of the Indictment, the Defendants are charged with conspiracy to defraud the Securities and Exchange Commission, commonly referred to as the "SEC," which is an agency of the United States. In Count Two, the Defendants are charged with conspiracy to commit wire fraud against the Public Company Accounting Oversight Board, commonly referred to as the "PCAOB." In Count Three, Mr. Middendorf is charged with wire fraud itself, which is sometimes called a substantive count. Mr. Wada is not charged in Count Three of the Indictment.

In Counts Four and Five, both defendants are charged with substantive counts of wire fraud.

In a moment, I will instruct you on each of these charges in more detail. At the outset, however, let me instruct you that you must consider each individual charge separately, and each Defendant separately, and evaluate each on the proof or lack of proof that relates to that charge with respect to each Defendant.

## B. Conspiracy and Substantive Counts

As I have just described, there are certain counts in the Indictment that are conspiracy counts, while others are what are referred to as substantive counts. Unlike the conspiracy charges, which allege agreements to commit certain offenses, the substantive counts are based on the actual commission of offenses, or aiding others to actually commit offenses.

A conspiracy to commit a crime is an entirely separate and different offense from the substantive crime which may be the object of the conspiracy. Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the object of the conspiracy is not achieved. The essence of the crime of conspiracy is an agreement or understanding to violate other laws. Thus, if a conspiracy exists, even if it fails, it is still punishable as a crime. Consequently, in a conspiracy charge there is no need to prove that the crime that was the objective of the conspiracy was actually committed.

By contrast, the substantive counts require proof that the crime charged was actually committed, but do not require proof of an agreement. Of course, if a defendant both participates in a conspiracy to commit a crime and then actually commits that crime, that defendant may be guilty of both the conspiracy and the substantive crime, as I will instruct you shortly.

We will turn first to the substantive charges in the Indictment, which are more convenient to consider before the conspiracy charges.

## C. Counts Three Through Five: Wire Fraud – The Nature of the Offense Charged

Let us turn first to the three substantive counts, which are listed as Counts Three through Five in the Indictment. I will turn later to Counts One and Two.

Counts Three, Four, and Five each charge certain defendants with a substantive count of the crime of wire fraud. Specifically:

Count Three charges that, from at least in or about April 2015 through at least in or about May 2015, Mr. Middendorf participated in a scheme to defraud the PCAOB by misappropriating, embezzling, obtaining, sharing, and using the PCAOB's property in the form of valuable confidential information and documents concerning planned PCAOB inspections in 2015, and by transmitting such information by email, all in breach of duties of confidentiality owed to the PCAOB by former and current PCAOB employees. Mr. Wada is not charged in Count Three.

Count Four charges that, from at least in or about March 2016 through at least in or about May 2016, Mr. Middendorf and Mr. Wada each participated in a scheme to defraud the PCAOB by misappropriating, embezzling, obtaining, sharing, and using the PCAOB's property in the form of valuable confidential information and documents concerning planned PCAOB inspections in 2016, and by transmitting such information by email and telephone, all in breach of duties of confidentiality owed to the PCAOB by former and current PCAOB employees.

Count Five charges that, from at least in or about January 2017 through at least in or about February 2017, Mr. Middendorf and Mr. Wada each participated in a scheme to defraud the PCAOB by misappropriating, embezzling, obtaining, sharing, and using the PCAOB's property in the form of valuable confidential information and documents concerning planned PCAOB inspections in 2017, and by transmitting such information by email and telephone, all in breach of duties of confidentiality owed to the PCAOB by former and current PCAOB

employees.

**D.  Counts Three Through Five: Wire Fraud – The Statute Defining the Offenses**

Counts Three through Five of the Indictment charge violation of Title 18, United States

Code, Section 1343, which provides, in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be [guilty of a crime].

**E.  Counts Three Through Five: Wire Fraud – Elements of the Offense**

Turning to the elements of Counts Three through Five, in order to meet its burden of

proof, the Government must establish beyond a reasonable doubt the following elements of the

crime of wire fraud:

*First*:  That there was a scheme or artifice to defraud or to obtain money or property by

false or fraudulent pretenses, representations, or promises.

*Second*:  That the defendant you are considering knowingly and willfully participated in

the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent

to defraud.

*Third*:  That in execution of that scheme, the defendant you are considering used or

caused the use of interstate wires.

I will discuss each in turn.

**F.  Counts Three Through Five: Wire Fraud – First Element**

As to the first element, a "scheme or artifice" is merely a plan for the accomplishment of

an object.

A scheme to defraud is any plan, device, or course of action to obtain money or property by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.

"Fraud" is a general term that embraces all the various means that human ingenuity can devise and that are resorted to by an individual to gain an advantage over another by false representations, suggestions, or suppression of the truth, or deliberate disregard for the truth. Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick, deceit, deception or swindle.

The Government alleges that there was a scheme to misappropriate, embezzle, obtain, share, and use the PCAOB's confidential information concerning inspections. The words "misappropriate" and "embezzle" are synonyms for these purposes and mean the fraudulent appropriation of property by a person to whom such property has been entrusted. A person commits "embezzlement" when he, with the intent to defraud, converts to his own use property belonging to another where the property initially lawfully came within his possession or control.

In the context of a criminal scheme to defraud, the words "obtain, share, and use" likewise mean to do those things fraudulently, that is, willfully and with the intent to defraud, which I will define for you in a moment.

A "scheme to defraud" must have money or property as its object. You are instructed that the definition of property for purposes of the wire fraud statute includes an organization's or entity's confidential information that is of value to that organization or entity. In this case, the Indictment alleges that certain PCAOB information and documents concerning planned PCAOB inspections constituted such property.

Information is "confidential" if, at the time it was subject to a scheme to defraud, the information was both considered and treated by an entity in a way that maintained the entity's exclusive right to the information. The entity must both consider the information to be confidential and take affirmative steps to treat the information as confidential and maintain exclusivity. Factors you may consider in determining whether the PCAOB treated the information at issue as confidential include, but are not limited to: written policies, employee training, measures taken to guard the information's secrecy, the extent to which the information is known outside the organization, and the ways in which employees may access and use the information.

Now I will say a little more about what it means for a person to "embezzle" confidential information. A person is entrusted with confidential information when he is expected to keep the information confidential, or at least that the relationship between the person and the owner of the information implied such a duty. The person entrusted with the information embezzles information from the owner only if he deceives the owner about his intent to violate his duty of trust and confidentiality by not disclosing to the owner that he intends to use the confidential information for his own personal gain.

Although whether or not the scheme actually succeeded is really not the question, you may consider whether it succeeded in determining whether the scheme existed. A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

There is one more thing I must tell you about schemes to defraud. If you find that a scheme to defraud the PCAOB existed, it is irrelevant whether the PCAOB inspection process was onerous or whether the PCAOB was a difficult regulator. However, the actions of the

PCAOB—as well as Defendants' opinions of this organization—may be relevant to the respective Defendants' states of mind and intent, which the Court now turns to.

## G. Counts Three Through Five: Wire Fraud – Second Element (Knowledge, Willfulness, Intent to Defraud)

As to the second element of wire fraud, the Government must establish beyond a reasonable doubt that the Defendants devised or participated in the fraudulent scheme knowingly, willfully, and with the specific intent to defraud.

To "devise" a scheme to defraud is to concoct or plan it. To "participate" in a scheme to defraud means to associate oneself with the scheme, while it is ongoing, with a view and intent toward making it succeed. While a mere onlooker is not a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and visibly executes the scheme to defraud.

In order to satisfy this element, it is not necessary for the Government to establish that the Defendant you are considering originated the scheme to defraud. It is sufficient if you find that a scheme to defraud existed, even if originated by another, and that the Defendant, while aware of the scheme's existence, knowingly participated in it.

It is also not required that the Defendant you are considering participated in or had knowledge of all of the operations of the scheme. The guilt of the Defendant is not governed by the extent of his participation.

It also is not necessary that the Defendant you are considering participated in the alleged scheme from the beginning. A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all of its details, and intentionally acts in a way to further the unlawful goals, becomes a member of the scheme and is legally responsible

for all that may have been done in the past in furtherance of the criminal objective and all that is done thereafter.

Even if the Defendant participated in the scheme to a lesser degree than others, he is nevertheless equally guilty, so long as that defendant became a member of the scheme to defraud with knowledge of its general scope and purpose. As I have previously noted, before the Defendant may be convicted of the fraud charged here, he must also be shown to have acted knowingly and willfully and with a specific intent to defraud.

A person acts "knowingly" when he acts voluntarily and deliberately, and not because of ignorance, mistake, accident, or carelessness.

To act "willfully" means to act voluntarily and with a wrongful purpose.

"Intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

Circumstantial evidence, if believed, is of no less value than direct evidence. In either

case, the essential elements of the crime charged must be established beyond a reasonable doubt.

Now, evidence has been admitted relating to PCAOB by-laws and ethics rules governing the conduct of PCAOB employees. Whether a PCAOB employee complied with the PCAOB's by-laws and ethics rules is not determinative of the innocence or guilt of any defendant in this case. Nor does a purposeful violation of a workplace rule, standing alone, mean that a defendant acted with the requisite criminal intent.

As a practical matter, then, in order to sustain the charges against the Defendant you are considering, the Government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive—as opposed to merely transgressing ethical standards or workplace rules—and, nonetheless, he associated himself with the alleged fraudulent scheme.

### H. Counts Three Through Five: Wire Fraud – Third Element (Interstate Nexus)

The third and final element that the Government must establish beyond a reasonable doubt is the use of an interstate wire communication in furtherance of the scheme to defraud. Wire communications include telephone calls, emails, and text messages. The wire communication must pass between two or more states as, for example, a telephone call or email between two states.

The use of the wires need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud. It is not necessary for the defendant you are considering to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which that defendant is accused of participating.

In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant you are considering caused the wires to be used by others. This does not mean that that defendant must specifically have authorized others to, for example, make a call or send an email. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.

The jury must unanimously agree that at least one such wire communication in furtherance of a scheme to defraud was proven by the Government beyond a reasonable doubt.

## I. Aiding and Abetting

With respect to these substantive counts – that is, Counts Three through Five – each of these counts also charges the respective Defendants with violating 18 U.S.C. § 2, the "aiding and abetting" statute. That is, each Defendant is charged not only as a principal who committed the crime, but also as an aider and abettor.

"Aiding and abetting" is set forth in Section 2(a) of the statute. That section reads, in part, as follows: "Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal."

Under the aiding and abetting statute, it is not necessary for the Government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the Defendant guilty. Thus, even if you do not find beyond a reasonable doubt that the Defendant you are considering himself committed the crime charged, you may, under certain circumstances, still find the Defendant guilty of that crime as an aider or abettor.

A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself. Accordingly, you may find a defendant guilty of the substantive

31

crime if you find beyond a reasonable doubt that the Government has proved that another person

actually committed the crime, and that the Defendant aided and abetted that person in the

commission of the crime.

As you can see, the first requirement is that another person has committed the crime

charged.  Obviously, no one can be convicted of aiding and abetting the criminal acts of another

if no crime was committed by the other person in the first place.  But if you do find that a crime

was committed, then you must consider whether the Defendant aided or abetted the commission

of the crime.

In order to aid or abet another to commit a crime, it is necessary that a defendant act

willfully, knowingly, and with the intent to defraud, to associate himself in some way with the

crime and seek by some act to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally, or, in the

case of a failure to act, with the specific intent to fail to do something the law requires to be

done; that is to say, with an improper purpose.

The mere presence of a defendant where a crime is being committed, even coupled with

knowledge by the defendant that a crime is being committed, or the mere acquiescence by a

defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to

establish aiding and abetting.  An aider and abettor must have some interest in the criminal

venture.

Furthermore, a person cannot be found guilty of aiding and abetting a crime that has

already been committed.  In order to be an aider and abettor, a person must knowingly, willfully

and with the intent to defraud, associate with the scheme to defraud while the scheme was

ongoing.  If the wire fraud scheme you are considering for a particular count was already

complete by the time the defendant you are considering was made aware of it, you cannot find that defendant guilty as an aider and abettor.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

- Did he participate in the crime charged as something he wished to bring about?

- Did he associate himself with the criminal venture knowingly and willfully?

- Did he seek by his actions to make the criminal venture succeed?

If he did, then the Defendant you are considering is an aider and abettor, and is therefore guilty of the offense.  If he did not, then the Defendant is not an aider and abettor, and is not guilty as an aider and abettor of that offense.

## J.  Count Two: Conspiracy to Commit Wire Fraud – The Nature of the Offense Charged

Now that we have discussed the three substantive Counts in the Indictment, let us turn to the Conspiracy counts.  Count Two of the Indictment charges that Defendants David Middendorf and Jeffrey Wada conspired and agreed with others to commit wire fraud between in or about April 2015 to in or about February 2017.

A conspiracy is a kind of criminal partnership.  It is an agreement of two or more persons to join together to accomplish some unlawful purpose.

As I explained earlier, the crime of conspiracy — or agreement — to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find the respective Defendants guilty of the crime of conspiracy even if you find that the substantive crimes that were the objects or goals of the charged conspiracy were never actually committed.

**K.  Count Two: Conspiracy to Commit Wire Fraud – Elements of Conspiracy**

To sustain its burden of proof with respect to Count Two of the Indictment, the

Government must prove beyond a reasonable doubt the following two elements:

*First*, the existence of the conspiracy charged in Count Two of the Indictment; that is, the

existence of any agreement or understanding to commit the unlawful object of the charged

conspiracy.

*Second*, that the Defendant you are considering knowingly and willfully became a

member of that alleged conspiracy during the applicable time period.

**L.  Count Two: Conspiracy to Commit Wire Fraud – Object of the Conspiracy**

The object of a conspiracy is the illegal goal that the co-conspirators seek to achieve.

The object of the conspiracy charged in Count Two is to commit wire fraud.  I have previously

explained to you the elements of the substantive offense of wire fraud.

**M.  Count Two: Conspiracy to Commit Wire Fraud – First Element**

Now let us consider the first element of the conspiracy charge.  The first element which

the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is

that two or more persons entered into the unlawful agreement charged in Count Two of the

Indictment.  That Count alleges that Defendants David Middendorf and Jeffrey Wada conspired

with others to commit wire fraud.

In order for the Government to satisfy this element, you need not find that the alleged

members of the conspiracy met together and entered into any express or formal agreement.

Similarly, you need not find that the alleged conspirators stated, in words or writing, what the

scheme was, its object or purpose, or every precise detail of the scheme or the means by which

its object or purpose was to be accomplished.  What the Government must prove is that there was

34

a mutual understanding, either spoken or unspoken, between two or more persons to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law, as charged in Count Two of the Indictment, has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an unlawful agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

You will recall that I have admitted into evidence against the Defendants the acts and statements of others because these acts and statements were committed by persons who, the Government charges, were also co-conspirators of the Defendants on trial.

The reason for allowing this evidence to be received against the Defendants has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

If you find, beyond a reasonable doubt, that the respective Defendants were members of the conspiracy charged in the Indictment, then, any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that Defendant. This is so even if such acts were done and statements were made in the Defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a Defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

## N. Count Two: Conspiracy to Commit Wire Fraud – Second Element (Membership)

If you find that the Government has proven beyond a reasonable doubt that the conspiracy charged in Count Two of the Indictment existed, then you must consider the second element of the crime. The second element the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the respective Defendants knowingly, willfully, and voluntarily became a member of the alleged conspiracy.

I have already instructed you on the definitions of "knowingly" and "willfully," and you should apply those definitions here.

In deciding whether the Defendant you are considering was, in fact, a member of the conspiracy, you must consider whether the Defendant knowingly and willfully joined the conspiracy, intending to advance or achieve its goals. Did he participate in the conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its objective?

It is important for you to note that the respective Defendants' participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators and the reasonable inferences which may be drawn from them.

A defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant you are considering need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant you are considering need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. The defendant must, however, have agreed to participate in the conspiracy charged with knowledge of its object.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the alleged conspiracy. Similarly, mere association with one or more members of the alleged conspiracy does not automatically make any defendant a member. A person may know, supervise, work for or with, or be friendly with a member of a conspiracy, without being a conspirator himself. Mere similarity of conduct or the fact that individuals may have worked together and discussed common aims and interests does

37

not make them members of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan does not make a defendant a member of the conspiracy. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of a conspiracy does not make him a member of the conspiracy. More is required under the law. What is necessary is that the Defendant must have participated with knowledge of the purpose or objective of the conspiracy and with the specific intention of aiding in the accomplishment of that unlawful end. The Government is not required to prove that the members of the alleged conspiracy were successful in achieving the object of the conspiracy.

## O. Count One: Conspiracy to Defraud the United States – Nature of the Offense Charged

We turn now to the final count in the Indictment. Count One charges Mr. Middendorf and Mr. Wada with conspiracy to defraud the United States or an agency thereof.

The relevant statute covering this charge is Section 371 of Title 18 of the United States Code. That section provides as follows:

> If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each [ is guilty of a crime].

Count One charges the Defendants with participating in a conspiracy with the following object: to defraud an agency of the United States, the SEC.

The Indictment alleges that from in or about April 2015 to in or about February 2017, the Defendants and other individuals conspired and agreed together to defraud the United States and the SEC. The Indictment charges Defendants and their alleged coconspirators with employing deceit, craft, trickery, and dishonest means to impede, impair, defeat, and obstruct a lawful

function of the SEC.  The Indictment also alleges in Count One several overt acts that are alleged to have been committed in furtherance of the conspiracy, which I will describe for you later.

As I instructed you earlier, conspiracy is a kind of criminal partnership—an agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy—or agreement—to defraud the United States, as charged in this Indictment, is an independent offense.

## P.  Count One: Conspiracy to Defraud the United States – Elements

In order to sustain its burden of proof with respect to the conspiracy charged in Count One, the Government must prove beyond a reasonable doubt each of the following three elements:

First, the Government must prove beyond a reasonable doubt the existence of the conspiracy charged in Count One; that is, an agreement or understanding between two or more people to defraud the SEC.  Therefore, the first question for you on Count One is:  Did the conspiracy alleged in Count One exist?

Second, the Government must prove beyond a reasonable doubt that the Defendant you are considering knowingly and willfully became a member of the conspiracy; that is, that he knowingly associated himself with and participated in the alleged conspiracy with intent to further its unlawful objectives.

Third, the Government must prove beyond a reasonable doubt that at least one of the members of the conspiracy committed at least one overt act in furtherance of the conspiracy.

I have already instructed you on the first two elements, and you should apply those instructions here.

As to the third element, the Government must prove beyond a reasonable doubt that some member of the conspiracy knowingly and willfully committed at least one overt act in furtherance of the objective of the conspiracy, and that this overt act was performed during the existence or life of the conspiracy, and was done to somehow further the goal of the conspiracy or agreement.

The term "overt act" means some type of outward, objective action performed by one of the members of a conspiracy that furthers the objectives of the conspiracy. An overt act may itself be a lawful act; however, the act must be a step in achieving the conspiratorial objectives.

The Indictment alleges the following overt acts:

a. In or about May 2015, Thomas Whittle sent an email from KPMG's Manhattan office, soliciting confidential PCAOB information concerning which of KPMG's engagements would be subject to inspection by the PCAOB in 2015.

b. In or about June 2015, David Britt sent an email from KPMG's Manhattan office, soliciting confidential PCAOB information concerning which of KPMG's engagements would be subject to inspection by the PCAOB in 2015.

c. In or about March 2016, Jeffrey Wada called Cynthia Holder and provided confidential PCAOB information concerning the identity of certain of KPMG's engagements that would be subject to inspection by the PCAOB in 2016.

d. On or about March 28, 2016, during the Documentation Period for most of the engagements at issue, David Middendorf, Thomas Whittle, David Britt, and others, participated in a conference call in KPMG's Manhattan office during which they discussed the utilization of valuable confidential PCAOB information concerning the identity of certain of KPMG's engagements that would be inspected by the PCAOB in 2016.

e. On or about March 28, 2016, David Britt sent an email from KPMG's Manhattan office directing that access be given to various audit files in order to allow secret re-reviews to occur.

f. In or about January 2017, Jeffrey Wada and Cynthia Holder spoke on the telephone, during which conversation Mr. Wada shared valuable confidential PCAOB information concerning the identity of KPMG's engagements that would likely be subject to inspection by the PCAOB in 2017.

g. In or about February 2017, Jeffrey Wada and Cynthia Holder spoke on the telephone, during which conversation Mr. Wada shared valuable confidential PCAOB information concerning the identity of certain of KPMG's engagements that would be subject to inspection by the PCAOB in 2017.

h. In or about February 2017, David Middendorf, Thomas Whittle, and others participated in a conference call in KPMG's Manhattan office during which they acquired and discussed the utilization of valuable confidential PCAOB information concerning the identity of certain of KPMG's engagements that would be subject to inspection by the PCAOB in 2017.

In order for the Government to satisfy this element, it is not required that all of the overt acts alleged in the Indictment or even any of the overt acts contained in the Indictment be proven, however you must unanimously agree that the same overt act was committed.

Similarly, you need not find that Mr. Middendorf or Mr. Wada committed the overt act. It is sufficient for the Government to show that one of the alleged conspirators—other than the Defendant you are considering—knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment. It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated.

Now I will instruct you on the object of the charged conspiracy in Count One.

## Q. Count One: Conspiracy to Defraud the United States – Object of the Conspiracy

The objects of a conspiracy are the illegal goals the co-conspirators agree or hope to achieve. The Indictment here charges that the conspiracy alleged in Count One had one object: defrauding the SEC. You must find beyond a reasonable doubt that that this object was proven.

Specifically, the Indictment charges that the Defendants, and others known and unknown, willfully and knowingly, using deceit, craft, trickery and dishonest means, impeded, impaired, defeated, and obstructed a lawful function of the SEC.

A conspiracy to defraud the United States need not necessarily involve cheating the government out of money or property. The statute also includes conspiracies to interfere with or obstruct any lawful government function by fraud, deceit, or any dishonest means. I instruct you that the SEC is an agency of the United States government. The term "conspiracy to defraud the United States" in this Indictment therefore means that the Defendants and their alleged coconspirators are accused of conspiring to impede, impair, obstruct, or defeat, by fraudulent or dishonest means, the lawful regulatory and enforcement functions of the SEC.

Dishonestly obstructing the lawful function of a government agency must be a purpose of the conspiracy, not merely a foreseeable consequence of it. However, defrauding the SEC need not be the Defendant's sole or even primary purpose, so long as it is a purpose of the scheme. The intent to defraud the SEC may be incidental to another primary motivation or purpose. All

that is required is that an object of the conspiracy was to interfere with or obstruct one of the

SEC's lawful governmental functions by deceit, craft or trickery, or by means that are dishonest.

Count One does not require proof that the Defendants intended to directly commit the

fraud themselves.  Proof that the Defendant intended to use a third party as a go-between may be

sufficient.  But the Government must prove that the United States or one of its agencies or

departments was the ultimate target of the conspiracy that the Defendants intended to defraud.

I have instructed you that the SEC is an agency of the United States.  But I instruct you

now that the PCAOB is not an agency of the United States or part of the United States

government.  With respect to Count One, the Government must prove that the Defendants

intended to defraud the SEC as the ultimate target of the conspiracy.  Fraudulent conduct

directed solely at a third party—here, the PCAOB—is not a fraud against the United States.

Therefore, if you conclude that the Government has proven that the only target of the conspiracy

was the PCAOB, and not also the SEC, then you must find the Defendants not guilty as to Count

One.

In addition, only conduct that both is intended to impede the lawful functions of a

government agency and is fraudulent or dishonest will support a charge of conspiracy to defraud

a government agency.  A conspiracy to impede the functions of a government agency by

fraudulent or dishonest means may include such things as altering documents after they have

been demanded by the government agency, creating false documents, destroying records, making

false statements, attempting to induce others to make false statements, or engaging in any other

fraudulent or deceptive conduct that would have the effect of impairing the ability of the

government agency to determine material aspects of a transaction.  By citing these examples, I

certainly do not mean to suggest that these are the only actions that could impede the SEC by

43

fraudulent or dishonest means, nor do I express any view as to whether conduct similar to these examples took place here.

Not all conduct that impedes the lawful functions of a government agency is illegal—to be unlawful such conduct must entail fraud, deceit, or other dishonest means. Thus, it is not illegal simply to make the SEC's job harder. Only an agreement to engage in conduct that t impedes the SEC, and also involves fraudulent, deceitful, or dishonest means, constitutes an illegal agreement to defraud the United States.

It is not necessary that the government or the SEC actually suffer a financial loss from a scheme, or that the scheme violated any separate law. A conspiracy to defraud exists when there is an agreement to impede, impair, obstruct, or defeat, in any fraudulent or dishonest manner, the lawful functions of the SEC.

Where, however, there is an agreement to impede, impair, obstruct, or defeat the lawful functions of the SEC by fraudulent, deceptive, or dishonest means, the first element is satisfied regardless of whether the means of doing so in that particular instance are or are not unlawful in and of themselves.

In sum, if you find the Government proved, beyond a reasonable doubt, that the charged conspiracy to defraud the SEC existed, that the Defendant you are considering joined it, and that, with respect to Count One only, at least one overt act was committed in furtherance of the conspiracy, then you should find the Defendant you are considering guilty. On the other hand, if you find that the Government has not proved, beyond a reasonable doubt, any of those essential elements, then you must find the Defendant you are considering not guilty.

## R. Good Faith

In considering the various charges alleged in this case, you must consider whether Mr.

Middendorf and Mr. Wada acted in good faith. The Defendants maintain that they acted in good faith at all times. Good faith is a complete and absolute defense to each of the charges in this case.

If the Defendant you are considering believed in good faith that he was acting properly, even if he was mistaken in his belief and even if someone was injured as a result of his conduct, there is no crime. An honest mistake of judgment or negligence is not unlawful intent, and a defendant who acts on such a basis can still be acting in good faith.

The burden of establishing lack of good faith and criminal intent rests on the Government. A defendant is under no burden to prove his good faith. Rather, the Government must prove beyond a reasonable doubt that a Defendant acted in bad faith, *i.e.*, knowingly, willfully, and with the unlawful intent for the charge you are considering. If the evidence in this case leaves you with a reasonable doubt as to whether Mr. Middendorf or Mr. Wada acted in bad faith, you must find him not guilty.

## S. Defense

Mr. Middendorf and Mr. Wada deny the Government's allegations. Mr. Middendorf maintains that he acted in good faith at all times and without the intent alleged in each count of the Indictment.

Mr. Wada contends that the Government has failed to prove beyond a reasonable doubt that he was the source of the inspection list information obtained by Brian Sweet in 2015, March 2016, January 2017, or February 2017. Mr. Wada further contends that he was not a member of any agreement to embezzle and misuse confidential PCAOB information to improve KPMG's inspection results, that there was no such scheme to defraud, and that he did not participate in any such scheme to defraud. As to Count One, Mr. Wada further contends that the Government

has failed to prove any purpose on his part directed at impairing or impeding the United States in any way.

That concludes the substantive instructions. I just have a few general instructions now.

## T.  Venue

Now, in addition to dealing with the elements of each of the offenses, you must also consider the issue of venue as to each offense, namely, whether any act in furtherance of the unlawful activity occurred within the Southern District of New York. The Southern District of New York includes Manhattan, the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan Counties.

For the conspiracy counts—Counts One and Two—it is sufficient to satisfy the venue requirement if any act by anyone in furtherance of the crime charged occurred within the Southern District of New York. The act itself need not be a criminal act. And the act need not have been taken by the defendant you are considering, so long as the act was part of the crime that you find the defendant you are considering committed. For the wire fraud counts, it is sufficient if an interstate wire transmission in furtherance of the scheme originated or terminated in this District.

To satisfy this venue requirement only, the Government need not meet the burden of proof beyond a reasonable doubt. The Government meets its burden of proof for venue if it establishes by a preponderance of the evidence that an act in furtherance of the crime occurred within the Southern District of New York. A preponderance of the evidence means that something is more likely than not.

## U.  Variance in Dates and Times

46

As we have proceeded through the Indictment, you have noticed that it refers to various dates or times. It does not matter if the Indictment provides that specific conduct is alleged to have occurred on or about a certain date, month, or time and the evidence indicates that in fact it was on a different date, month, or time. As I mentioned earlier, the law only requires a substantial similarity between the dates alleged in the Indictment and the date established by testimony and exhibits.

## FINAL INSTRUCTIONS

### A.     Duty to Deliberate and Reach a Unanimous Verdict

You will now retire to decide the case. Your function is to weigh the evidence in this case and to determine the guilt or lack of guilt of the Defendants with respect to the charges in the Indictment. You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

Your verdict must be unanimous. This means that each and every one of you must agree upon your verdict. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your duty to consult with one another and to deliberate with a view to reaching an agreement. If you start with one point of view, but after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is one that truly satisfies your judgment and conscience. But you are not to surrender a view of the case that you conscientiously believe, merely because you are outnumbered or because other jurors appear firmly committed to their views. You should vote with the others only if you are convinced on the evidence, the facts, and

47

the law that it is the correct way to decide the case.

In sum, you, the jury, must deliberate as a body, but each of you, as an individual juror, must discuss and weigh your opinions dispassionately, and adopt that conclusion which in your good conscience appears to be in accordance with the truth. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

I instruct you that you are not to discuss the case unless all jurors are present. Four or five or ten jurors together are only a gathering of individuals. Only when all jurors are present do you constitute a jury and only then may you deliberate.

Remember at all times, you are not partisans. You are judges – judges of the facts. Your sole interest is impartially to assess the evidence to determine whether the Government has met its burden of proving guilt beyond a reasonable doubt as to each of the charges.

If you are divided, do not report how the vote stands. Simply state that you are divided. If you have reached a verdict, do not report what it is until you are asked in open court. Simply inform me that you have reached a verdict.

### B.    Right to See Exhibits and Hear Testimony; Communications with Court

You are about to go into the jury room and begin your deliberations. The exhibits that were received into evidence will be provided to you in the jury room. In addition to paper copies of many exhibits, you will be provided with a laptop that contains certain exhibits that could not be presented in hard copy. You will be given an exhibit list that will explain which exhibits can be accessed on the laptop.

If you want any of the testimony to review, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting portions of the testimony. If you want any further explanation of the law as I have

explained it to you, you may also request that.

Your requests for testimony – in fact any communications with the Court – should be made to me in writing, signed by your foreperson, and given to the Marshal or the deputy clerk. In any event, do not tell me or anyone else how the jury stands on any issue until there is a unanimous verdict.

### C.    Notes

If you took notes during the trial, those notes are only an aid to recollection – they are not evidence, nor are they a substitute for your recollection of the evidence in the case. Your notes are not entitled to any greater weight than your actual recollection or the impression of each juror as to what the evidence actually is. I emphasize that if you took notes, you should not show your notes to any other juror during your deliberations, they are only for yourself.

If you did not take notes during the trial, you should not be influenced by the notes of another juror, but instead you should rely upon your own recollection of the evidence. The fact that a particular juror has taken notes does not entitle that juror's views to any greater weight.

### D.    Verdict Form

I have prepared a verdict form for you to use in recording your decision. Please use that form to report your verdict. The verdict form does not represent either evidence or instructions on the law.

### E.    Duties of Foreperson

At the beginning of deliberations, you must choose a foreperson. The foreperson does not have any more power or authority than any other juror, and his or her vote or opinion does not count for any more than any other juror's vote or opinion. The foreperson is merely your

49

spokesperson to the Court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the Marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

**F.      Return of Verdict**

After you have reached a unanimous verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict that is announced in Court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be revoked.

**G.      Jury Oath**

You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law.

I am sure that if you follow your oath, listen to the views of your fellow jurors, and apply your own common sense, you will reach a fair verdict here.  Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

**H.      Exceptions**

Members of the jury, this concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have me give to you or anything I may not have covered in my previous statement.

CONCLUSION

Before you retire into the jury room I must inform you that the law provides for a jury of

50

twelve people in this case. Therefore, three people—jurors number 13, 14, and 15—are alternates. You will be allowed to leave the courthouse during deliberations, but you are not yet excused as jurors in the case. In the event that one of the non-alternate jurors can no longer deliberate, you will be recalled to continue your service, so I am releasing you for now but I am not excusing you from jury service yet. For now, though, you may leave. You have been very attentive and very patient. I am sorry that you will in all likelihood miss the experience of deliberating with the jury but the law provides for a jury of twelve people in this case. Before the rest of the jury retires to the jury room, if you have any clothing or objects there you are asked to pick them up and to withdraw before any deliberations start.

Please do not discuss the case with anyone over the next few days. If you would like to be advised of the outcome of the trial, please make sure that Mr. Hampton has a phone number at which you can be reached.

(Alternates released)

Members of the jury, you may now retire.

(Marshal sworn)

51