**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>**Defendant.** | **Crim. No. 18-CR-32-2 (DLF)** |

**GOVERNMENT'S DISCUSSION OF DIFFERENCES BETWEEN THE PARTIES' PROPOSED JURY INSTRUCTIONS**

The United States of America, by and through undersigned counsel, respectfully submits this brief addressing points of difference between the parties' proposed jury instructions. On November 12, 2019, the parties filed a joint submission regarding proposed jury instructions. Doc. 248. Although the parties agreed on a number of instructions, there were differences concerning eight sets of instruction: (A) Notetaking by Jurors; (B) Corporate Defendant Appearing Through Counsel; (C) Corporate Responsibility; (D) Suppression or Fabrication of Evidence; (E) Unanimity and Verdict Form; (F) Proof of State of Mind; (G) Good Faith; and (H) Elements of Count One. On several of these instructions, the differences are minor. On others, however, the differences are substantial. As discussed below, several of Concord's requested instructions misstate the applicable law or are likely to confuse the jury or cause prejudice. In particular, in several instructions Concord seeks to insert additional elements to the charged crime that this Court has rejected, including willfulness, a duty to disclose information, and specific knowledge of the statutory disclosure requirements that are not charged here.

**A. Notetaking by Jurors**

Concord opposes the government's proposed instruction on notetaking by jurors on the ground that the jury should not be permitted to take notes during the trial. Doc. 248-1, at 4. As Concord recognizes, whether to allow jurors to take notes is subject to the Court's discretion. Jurors are commonly allowed to take notes. Some people find that notetaking helps them pay attention, serves as a useful memory aid, and is a useful resource if later trying to locate particular exhibits. In this trial, several case-specific considerations further counsel in favor of permitting the jury to take notes. The government expects its presentation of evidence to last at least a week and to include a large number of documents. Notetaking will be a valuable memory aid when the jury begins its deliberations and may assist jurors who want to locate and review particular documents by exhibit number. The government also expects that the evidence it presents in its case-in-chief will include topics that may be unfamiliar to some jurors or that may seem technical or complex, including the use of virtual private servers to mask Internet Protocol addresses, the linking of various email accounts through records provided by social media companies and Internet service providers, and budget spreadsheets, rosters, and other business records. Allowing jurors to take notes may aid their memories and deliberations.

**B. Corporate Defendant Appearing Through Counsel**

Concord next requests (Doc. 248-1, at 6) an instruction about Concord's appearance through counsel. The disagreement on this instruction is slight. Although Concord has not identified any examples of such an instruction, the government generally does not object to an instruction that the jury should not consider the fact that Concord appeared through counsel. *See id.* In the proposed instructions, the government identified one narrow area of disagreement—whether to include the additional statement that "[a] corporate defendant may appear in court

through its counsel who is present." In the government's view, this language is unnecessary and poses some risk of misstating the applicable law. The apparent purpose of an instruction on appearing through counsel is to ensure that jurors do not draw improper inferences from the absence of any corporate representative. The part of the instruction with which the government agrees does exactly that, directing the jury that it "must not consider in any way in your deliberations the fact that Concord has elected to lawfully appear through counsel and that no other corporate representative is present." Doc. 248-1, at 6.

The additional language appears to add nothing and risks misstating the law by suggesting that corporate defendants have a categorical right to appear through counsel and can never be required to appear through appropriate corporate representatives. Federal Rule of Criminal Procedure 43(b) is an exception to Rule 43(a)'s mandate about when defendants "must be present." But courts nonetheless retain their authority "to decide whether a defendant must be present in order for the proceeding to be conducted efficiently and fairly." *United States v. Gonzales-Flores*, 701 F.3d 112, 119 (4th Cir. 2012) (Wilkinson, J.) (explaining that this is part of a court's "traditional trial-management functions"). Because the disputed language serves no purpose and risks misstating the law, the government respectfully submits that it not be included. The government does not otherwise oppose Concord's requested instruction on corporate presence at trial.

**C. Corporate Responsibility**

The parties agree that there should be an instruction about corporate responsibility and agree on most of the substance of that instruction. *See* Doc. 248-1, at 7-8. The sole area of disagreement is the description of when a corporate agent's acts were "within the scope of employment." Concord requests an instruction that such an act "must relate directly to the

performance of the agent's general duties for the corporation." *Id.* at 7. The government requests an instruction that such an act "must concern a matter that the corporation generally entrusted to the agent." *Id.* at 8. The government's proposed language is drawn from the Seventh Circuit's Pattern Jury Instructions. *See* 7th Circuit Pattern Jury Instruction 5.03 (Entity Responsibility). Although the formulations are similar, Concord's requirement that the acts "relate directly" to the agent's duties may suggest too tight of a connection between the agent's assigned duties and the act(s) at issue. In particular, it may incorrectly suggest that the act itself had to have been authorized by corporate officers or a broader corporate body. *See, e.g.*, *United States v. Agosto-Vega*, 617 F.3d 541, 552-553 (1st Cir. 2010) (explaining that typically in addition to requiring intent to benefit the corporation, the agent must be "performing *acts of the kind* which he is authorized to perform") (emphasis added); *see also* Restatement (Third) of Agency § 7.07 (2005) (explaining that "[a]n employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control" and "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer") (discussing civil liability). And Concord's language may incorrectly suggest excluding circumstances where an employee has apparent, even if not actual, authority to take the act. *See, e.g.*, *United States v. Inv. Enters., Inc.*, 10 F.3d 263, 266 (5th Cir. 1993) ("a corporation is criminally liable for the unlawful acts of its agents, provided that the conduct is within the scope of the agent's authority, whether actual or apparent").

**D. Suppression or Fabrication of Evidence**

The government suggested a standard instruction that if the jury finds there was intentional suppression of evidence, the jury may consider that fact in determining guilt. Doc. 248-1, at 10.

Concord suggests that no relevant trial evidence could warrant such an instruction. *Id.* The Superseding Indictment alleges incidents where members of the alleged conspiracy "deleted and destroyed data, including emails, social media accounts, and other evidence of their activities." Doc. 247 ¶ 58 (further describing examples). These are likely admissible as admissions of a party opponent, co-conspirator statements in furtherance of the conspiracy charged in the Superseding Indictment, and statements against penal interest. *See* Fed. R. Evid. 801(d)(2)(D); Fed. R. Evid. 801(d)(2)(E); Fed. R. Evid. 804(b)(3). Concord does not explain its assertion (Doc. 248-1, at 10) that such evidence is inadmissible. Concord's further supposition that evidence the government obtained was, by definition, "not deleted," *id.*, ignores that investigations can unearth evidence that defendants tried to delete, that was backed up by service providers even if deleted from consumer facing portals, or that was deleted from some but not all platforms. Whether, in fact, defendants sought to suppress evidence is a determination for the jury to make.

The government recognizes that if the Court were to exclude all evidence of these activities, then no such instruction would be warranted. However, the jury instructions being briefed right now are preliminary and subject to change based on how the evidence comes in at trial. In light of the government's intention to show evidence suppression and the likelihood of admissibility, the government suggests that the Court include this instruction and revisit it as appropriate.

**E. Unanimity and Verdict Form**

The government requested a standard unanimity instruction. Doc. 248-1, at 11. Concord instead requested an elaborate special unanimity instruction requiring unanimity as to precisely what government function was the object of the conspiracy to defraud the United States and appears also to require some form of "specific intent." *Id.* at 12. Concord additionally seeks a multi-page special verdict form that separately addresses each function, again uses a concept of

"specific intent," and requires jurors to "identify" particular acts that resulted in duties to disclose information. *Id.* at 13-14.

**1.** With respect to the unanimity instruction, as an initial matter no special unanimity instruction is needed. A jury's verdict must be unanimous, but "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict," *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality op.); *see Richardson v. United States*, 526 U.S. 813, 817 (1999). The Supreme Court has "never suggested" that "jurors should be required to agree upon a single means of commission." *Schad*, 501 U.S. at 631 (plurality op.). And "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* at 631-632; *see id.* at 649 (Scalia, J., concurring in part and concurring in the judgment) ("[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."); *see also United States v. Hurt*, 527 F.3d 1347, 1352-1353 (D.C. Cir. 2008) (summarizing Sixth Amendment right to unanimous jury finding and residual due process concerns).

In a conspiracy, "the agreement itself is the crime," and the government "need not show that the conspirators agreed on the details of their criminal scheme" but rather the "essential nature of the plan," *i.e.*, "what kind of agreement or understanding existed" and the "type of conduct" agreed to. *United States v. Treadwell*, 760 F.2d 327, 336-337 (D.C. Cir. 1985). Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. Doc. 247 ¶ 2. In short, the Superseding Indictment alleges that the conspirators engaged in what they called "information warfare" to spread distrust about the U.S. political system and to influence the outcome of the 2016 presidential election, *id.* ¶¶ 3, 6, 10, and that to carry out their interference activities the defendants "conspired to obstruct through fraud and deceit the lawful functions of

the United States government in monitoring, regulating, and enforcing laws concerning foreign influence on and involvement in U.S. elections and the U.S. political system." *Id.* ¶ 7; *accord id.* ¶ 28 (object of the conspiracy). The Superseding Indictment specifies that this set of functions includes (a) the enforcement of the statutory prohibition on certain election-related expenditures by foreign nationals; (b) the enforcement of the statutory requirements for filing reports in connection with certain election-related expenditures; (c) the enforcement of the statutory ban on acting as an unregistered agent of a foreign principal in the United States; (d) the enforcement of the statutory requirements for registration as an agent of a foreign principal; and (e) the enforcement of the requirement that foreign nationals seeking entry into the United States provide truthful and accurate information to the government. *Id.* ¶¶ 7, 9.

This is a conspiracy with a single object: impairing through deception the United States government's ability to monitor and regulate the conspirators' influence activities aimed at the 2016 election. The conspiracy entailed interrelated and overlapping deceptive conduct aimed at impairing a cluster of interrelated and overlapping functions of the United States government. The jury need not further agree on exactly what facet of those functions the conspirators hoped the scheme would impede. *See Treadwell*, 760 F.2d at 335-337 (upholding jury instruction that described as one "object" a conspiracy "[t]o defraud the United States and its agencies of their lawful right to conduct their business and affairs, particularly HUD's housing programs for low and moderate income tenants and IRS' administration and enforcement of the tax laws of the United States"); *see also United States v. Tham*, 960 F.2d 1391, 1400 (9th Cir. 1992) (explaining in the context of a sentencing decision that a defendant "was charged with conspiring to defraud the United States by three *means*" where the conspiracy entailed overlapping deceitful conduct aimed at impeding an FBI's investigation and corrupting related judicial proceedings) (emphasis

added); *cf.* Doc. 74, at 24-25 (this Court's memorandum opinion explaining that the government need not show specific knowledge about the government's administration of disclosure requirements but "general knowledge that U.S. agencies are tasked with collecting" certain kinds of information suffices). This charge no more requires a special unanimity instruction than a conspiracy to deprive the government of several parcels of money or property. *See Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) (explaining that a "conspiracy to defraud the United States" is "not confined to fraud as that term has been defined in the common law," *i.e.*, to obtain money or property, but also "reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government") (quotation marks omitted); *cf. United States v. Kayode*, 254 F.3d 204, 214 (D.C. Cir. 2001) (holding that where statute required possession of five false documents, jury need not agree on which five documents were false); *United States v. Harris*, 959 F.2d 246, 255 (D.C. Cir. 1992) (per curiam) (holding that where statute required five members of criminal enterprise, jury need not agree on which five people were members).

Were the Court to give a special unanimity instruction, the government suggests that the Court identify each agency rather than each function. The two Federal Election Commission ("FEC") functions and two Department of Justice ("DOJ") functions that are now alleged in the Superseding Indictment are particularly interwoven with each other. Much as an instruction in a *Klein* conspiracy case would typically describe "administration of the tax laws" rather than each more granular IRS function, the Court should follow a similar model for the FEC and DOJ functions identified in this Indictment.

Concord's unanimity instruction also departs from the standard, simpler model commonly used in this Court. *See* Standardized Criminal Jury Instructions for the District of Columbia,

Instruction No. 2.406. And it contains language that appears to misstate the law or at least risks juror confusion. For example, Concord's proposal refers to "the intent to impair, obstruct, or defeat a lawful function" of three agencies and then states that the jury can convict if Concord "committed any one of these acts." Doc. 248-1, at 12. That language creates ambiguity about whether the "acts" that must have been committed were the singular act of joining a conspiracy with a particular purpose or the acts of impairing, obstructing, and deceiving an agency, which Concord need not have committed to be guilty of a conspiracy. The instruction again speaks in terms of what agency was "defrauded," which is not an element of the crime, rather than in terms of the conspiracy's goal. *Id.*

    **2.** If a special unanimity instruction were warranted, the government does not believe that a further interrogatory or special verdict form is appropriate. Special verdicts are disfavored and "may in fact be more productive of confusion than of clarity." *United States v. Stonefish*, 402 F.3d 691, 697 (6th Cir. 2005); *see Black v. United States*, 561 U.S. 465, 472 & n.11 (2010). In light of the complexity of the charged conspiracy—including the interrelated government functions just discussed, the various means of deception discussed below, and the potential role of the jury to consider duties to disclose under the Federal Election Campaign Act ("FECA") and Foreign Agents Registration Act ("FARA")—the government believes that adding a special verdict form risks confusing the jury. Juries "are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and the government sees no reason that this presumption should give way here.

    Additionally, even were a special verdict form necessary, Concord's proposed form (Doc. 248-1, at 13-14) is improper for at least three reasons. First, the form uses language that departs from the accepted jury instructions for a conspiracy to defraud the United States. This

includes stating that Concord intentionally "entered" rather than "joined" the conspiracy and requiring a "specific intent."

Second, Concord does not justify requiring the jury to provide a further written explanation for its verdict. Even if the jury must unanimously agree on what government function the conspirators hoped to impede, the jury need not agree on what facts or acts supported each such conclusion. *See Richardson*, 526 U.S. at 817; *Schad*, 501 U.S. at 631-632. That is particularly true for a conspiracy. It is unnecessary, for example, to show that any information on a "visa application" was, in fact, "false or omitted" to conclude that the conspiracy's goal included impairing the State Department's function of excluding and monitoring foreigners who come to the United States. Jurors also can find that such a conspiracy existed without agreeing on exactly what visa application or piece of information supported that conclusion.

Third, Concord's proposed special verdict form again tries to insert as an element the violation of FECA and FARA by requiring the jury to find and agree unanimously on "expenditure(s)" and "conduct" that required disclosure and registration under those statutes. As the Court well knows, a duty to disclose is necessary for the mere failure to disclose information to constitute an act of deception. But a conspiracy can occur without such an act taking place. And, as the Court also well knows, the government has also alleged affirmative acts of deception rather than mere failures to disclose information. Doc. 74, at 11. To be sure, deception through failure to disclose or register can support the conclusion that the deception was aimed at the United States. But so too can the conspirators' other deceptive conduct, such as disguising IP addresses that the public would never see. And so too could efforts to evade the bans on foreign electioneering and influence activities that are alleged with clarity in the Superseding Indictment. In all events, a party can obstruct lawful government functions, including the enforcement and

administration of statutes and regulations, even if, at the end of the day, those provisions may not apply. It is for DOJ, the FEC, and the State Department to obtain and review relevant information, to evaluate whether and how the potentially-applicable laws apply, and to exercise their authority and discretion in deciding how to proceed (or not proceed) while making that determination. A defendant who suspects or fears the United States government might investigate, might conclude that certain statutes apply, or might counter the influence operation merely by investigating could plausibly seek to deceive and impair the government's function of carrying out those tasks.

**F. Proof of State of Mind**

The government has requested a standard instruction stating that intent and knowledge cannot ordinarily be proved directly and that a jury can infer intent and knowledge from speech, acts, omissions, and other facts and circumstances. Doc. 248-1, at 16. Concord opposes that instruction, stating that it wrongly "allows for liability based on the collective knowledge of a corporation." *Id.* (citing *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009)). Concord's objection, however, does not appear to concern the obvious point that intent and knowledge can be inferred from acts and other surrounding facts. In fact, Concord's cited case makes clear that a corporation's intent is formed by the intent of its employees and that such intent may be inferred from the totality of the circumstances. *Philip Morris*, 566 F.3d at 1118. To the extent that Concord believes that some further instruction is necessary for evaluating an entity's intention in joining a conspiracy, Concord is free to propose such an instruction but has not done so. But this proposed instruction does not suggest any theory of "collective knowledge" as Concord suggests (Doc. 248-1, at 16).

**G. Good Faith**

Concord proposes a "good faith" instruction, and the government disagrees. Doc. 248-1,

at 17. As an initial matter, the crime charged here includes a scienter requirement—that the defendant intentionally joined an agreement to obstruct or interfere with one of the United States government's lawful functions, by deceit, craft, trickery, or dishonest means. If the government cannot prove that element beyond a reasonable doubt, then of course the jury cannot convict. But that does not automatically warrant a further instruction about good faith. If Concord's theory of the case is that Concord or other relevant conspirators acted in good faith in such a way that negates the elements of the crime, then Concord can present that argument to the jury. *See United States v. Bowling*, 619 F.3d 1175, 1183 (10th Cir. 2010). Concord also can ask this Court to include it in an instruction about the defense theory of the case *See United States v. Given*, 164 F.3d 389, 394-395 (7th Cir. 1999) (a defendant "is not entitled to a specific good faith instruction, however, so long as, considering the instructions as a whole, the jury was adequately instructed upon his theory of defense").

Further, Concord's asserted "good faith" instruction again misstates the law. Among other things, the instruction provides that if Concord "believed in good faith that it was acting properly . . . there is no crime." That appears to be a restatement of the willfulness requirement that this Court has repeatedly rejected. Concord must have knowingly joined in an agreement to impair the government's functions through deceptive means. But the crime charged here does not require willfulness, and Concord's belief that it was acting properly does not negate the required scienter here.

Finally, and in any event, even if some kind of good faith instruction could be warranted, that will depend on the defense theory of the case and the evidence adduced at trial. It would therefore be premature to include any such instruction at this stage. *See Hurt*, 527 F.3d at 1351 ("A theory-of-defense instruction is in order if there is sufficient evidence from which a reasonable

jury could find for the defendant on his theory.") (internal quotation marks omitted); *Given*, 164 F.3d at 394 (a defendant "is entitled to have the jury consider any theory of defense supported by the law *if it has some foundation in the evidence*") (emphasis added) (discussing good faith instruction).

**H. Conspiracy to Defraud the United States**

Concord's and the government's proposed instructions on conspiracy to defraud the United States differ structurally and substantively. *See* Doc. 248-1, at 18-30.

**1.** The government instruction begins (Doc. 248-1, at 26-28) with a standard instruction in this Court on the elements of conspiracy. *See* 1 Criminal Jury Instructions for DC Instruction 7.102. The proposed instruction draws on the Third and Ninth Circuit pattern jury instructions, as well as Sand, Modern Federal Jury Instructions, to define the alleged object of the conspiracy charged here, *i.e.*, what it means to defraud the United States. (In light of the Superseding Indictment, the instruction will need to reflect the additional government functions now alleged.) In light of Concord's and the Court's stated question whether the conspiracy sought to deceive the American people or also the United States government, the instruction includes language drawn from then-Judge Alito's opinion in *United States v. Gricco*, 277 F.3d 339 (3d Cir. 2003), which explains that impeding the government "need not be the sole or even a major objective of the conspiracy" and "need not be an objective that is sought as an end in itself." *Id.* at 348.

Because the government has alleged that the conspirators did not just conspire but did, in fact, engage in deceptive conduct, the government has suggested a further set of instructions explaining the relevance of that conduct. Initially, the instructions explain that the crime of conspiracy is the agreement itself but that the jury can consider acts taken by the conspirators when evaluating the existence and nature of that agreement. Doc. 248-1, at 29. As the Court knows, the

government has alleged two broad categories of deception—(1) affirmative acts of deceit and dishonesty, and (2) the failure to disclose information to the government, and failure to disclose can be viewed as deceptive conduct only if there was a duty to disclose. Doc. 74, at 10-11. The government has therefore further proposed to instruct the jury as to existence of these two broad categories and, as to the second category, to instruct the jury that there must be a duty to disclose for the failure to provide information to the government to constitute deception. Doc. 248-1, at 29-30. The government recognizes that the Court will ultimately have to instruct the jury on the relevant duties to disclose imposed by FECA and FARA. But FARA includes many sub-provisions, and the government recognizes that not all relevant provisions will apply to the conduct presented to the jury. The government has therefore suggested filling in the specific legal duties that are potentially applicable here after the parties have exchanged exhibit lists. *Id.* at 30.

**2.** Concord's proposed instruction (Doc. 248-1, at 18-25) vastly departs from the standard jury instruction on conspiracy and from any model instruction of which the government is aware about conspiracy to defraud the United States. In so doing, it misstates the law in a number of ways and risks confusing the jury.

First, Concord against asks for a willfulness instruction, which this Court has correctly held is not an element of the crime charged here. *Id.* at 18 & n.4; *see id.* at 19 (requiring that Concord "willfully joined in the[e] agreement").

Second, Concord would instruct the jury that Concord must have a "specific intent" to impair the relevant government functions and have "specifically agreed" to defraud the relevant agencies. *Id.* at 18-19; *see id.* at 25 (same). To be sure, defrauding the United States must be a subject of the agreement. But it is unclear what Concord means by "specific intent" and

"specifically agreed," and the government is not aware of model instructions for conspiracies to defraud the United States that use this potentially-confusing language.

Third, Concord would instruct the jury that the government must prove a "legal duty on the co-conspirators to provide specific information" to the government "that was not provided." *Id.* at 19; *see id.* (repeating that purported element in at least three other places); *id.* at 24 (similar). The Court has already held that a duty to disclose is not an element of a conspiracy to defraud the United States. Rather, a duty to disclose information would be necessary for the failure to disclose that information to constitute "deceptive" conduct. Concord's proposed instruction mistakenly transforms a duty to disclose into an element of the conspiracy itself, which it is not. Concord would also require that such a duty fell on the conspirators themselves, *id.* at 19, even though causing someone who is not a member of the conspiracy to conceal information that they would have been required to disclose would itself be a deceptive act.

Fourth, echoing the requirement of willfulness, Concord's instruction would require specific knowledge of the legal duties to disclose under FECA and FARA. *See, e.g., id.* at 19, 21. But as the parties have briefed a number of times, Concord is not charged with violating FECA and FARA and need not understand the detailed operation of those statutes. *See* Doc. 74, at 24-25 (this Court's explaining that the government need not show specific knowledge about the government's administration of disclosure requirements but "general knowledge that U.S. agencies are tasked with collecting" certain kinds of information suffices).

Fifth, Concord describes each government function as a separate "object" of the conspiracy. Doc. 248-1, at 21. As discussed, the interrelated and overlapping government functions that the conspirators sought to impair are not separate objects of the conspiracy any more

than is each parcel of money or piece of property that conspirators seek to obtain in a conspiracy to defraud the United States of money or property.

Sixth, Concord would state that "only conduct that is both intended to impede the lawful functions of a government agency and is fraudulent or dishonest" can "support" the charge of conspiracy to defraud the United States. Doc. 248-1, at 22. This instruction is a misstatement of the law and likely to confuse a jury. The crime of conspiracy to defraud the United States requires the government to prove that the defendants entered into an agreement to impair lawful government functions and that at least one conspirator committed an overt act in furtherance of the conspiracy. There is no legal requirement that the overt act itself be "fraudulent or dishonest." Similarly, there is no requirement that every act in furtherance of the conspiracy must be fraudulent or dishonest to support the charge, as Concord's proposed instruction suggests.

Seventh, Concord seeks to describe in some detail the relevant functions of the FEC, DOJ, and State Department. *See* Doc. 248-1, at 22-23. As discussed, it will ultimately be necessary to instruct the jury on the potentially-applicable statutes that give rise to a duty to disclose that may be relevant at trial. The government does not necessarily agree with all aspects of Concord's description of those duties, but it is premature to address which duties the jury will need to be instructed on. As for describing the relevant government functions, courts do not typically instruct a jury in detail on the nature of the government functions, which are factual predicates that the government will present at trial. The details of the lawful government functions at issue will be provided to the jury through evidence—including testimony and requests for judicial notice where appropriate—rather than through lengthy jury instructions. Indeed, those functions are broader than a description of the statutes being administered. When enforcing or administering a statute, the government's function includes reviewing relevant information and determining for itself

whether certain conduct is covered and whether it wishes to take further action. It is for DOJ, the FEC, and the State Department to obtain and review relevant information, to evaluate whether and how the potentially-applicable laws apply, and to exercise their authority and discretion in deciding how to proceed (or not proceed). Concord's description of these statutes again incorrectly suggests that the conspirators must have had a detailed understanding of these functions. *But see* Doc. 74, at 24-25 (this Court's contrary conclusion).

Finally, Concord states that "[i]nterfering with the U.S. political and electoral processes of the United States, alone, is not a crime." Doc. 248-1, at 25. To be sure, Concord is not charged with interfering in the 2016 presidential election and political system. But depending on what Concord means by "interfering," it may or may not be a crime. *See, e.g.*, 52 U.S.C. § 30121(a)(1) (prohibiting campaign contributions and expenditures by foreign nationals). More to the point, this appears to be a defense theory that, depending on the evidence presented at trial, would more appropriately appear in a defense theory of the case instruction. To include what is essentially a defense argument about the evidence adduced at trial in an instruction on the elements of the charged crime is inappropriate and risks confusing the jury.

Respectfully submitted,

JOHN C. DEMERS
Assistant Attorney General for National Security

By: /s/____________________
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

JESSIE K. LIU
United States Attorney

By: /s/____________________
Luke Jones
Kathryn Rakoczy
Jonathan Kravis
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886