BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,            .
                                     .   Case Number 18-CR-32
            Plaintiff,               .
                                     .
       vs.                           .
                                     .   Washington, D.C.
CONCORD MANAGEMENT AND               .   December 12, 2019
CONSULTING LLC,                      .   10:00 a.m.
                                     .
            Defendant.               .
- - - - - - - - - - - - - - - - -

            PUBLIC TRANSCRIPT OF STATUS CONFERENCE
                 (SEALED PORTION REDACTED)
          BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:              JONATHAN I. KRAVIS, AUSA
                                 KATHRYN RAKOCZY, AUSA
                                 LUKE JONES, AUSA
                                 U.S. Attorney's Office
                                 555 Fourth Street Northwest
                                 Washington, D.C. 20530

For Defendant Concord
Management and Consulting LLC:   ERIC A. DUBELIER, ESQ.
                                 Reed Smith LLP
                                 1301 K Street Northwest
                                 Suite 1000, East Tower
                                 Washington, D.C. 20005

                                 KATHERINE J. SEIKALY, ESQ.
                                 Reed Smith LLP
                                 7900 Tysons One Place
                                 Suite 500
                                 McLean, Virginia 22102

Official Court Reporter:         SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
                                 U.S. Courthouse, Room 4704-B
                                 Washington, D.C. 20001
                                 202-354-3284

P R O C E E D I N G S

THE COURTROOM DEPUTY:  Your Honor, we are in Criminal Action 18-32, United States of America versus Concord Management and Consulting LLC, et al.

If I can have counsel approach the podium and identify yourselves for the record, please.

MR. JONES:  Good morning, Your Honor.  Luke Jones for the United States.  With me at counsel table is Jonathan Kravis and Kathryn Rakoczy from the U.S. Attorney's Office.  And I also notice that firewall counsel is also in the courtroom.

THE COURT:  Good morning.

MR. DUBELIER:  Good morning, Your Honor.  Eric Dubelier and Katherine Seikaly for defendant Concord.

THE COURT:  Good morning.

All right.  We have a lot to cover today.  Before the Court are the following motions:  Concord's motion to dismiss Count 1 of the superseding indictment; Concord's motion for grand jury instructions regarding the original and superseding indictments; Concord's motion to compel discovery materials from the Department of Justice, the FEC, and the Department of State; and the government's motion for an early return trial subpoena.

I want to go through these pending motions, and then I want to take a short break and return for the firewall counsel proceeding.  So those of you who are here for that, this is probably going to take a little while.  I would say in an hour

1   we will go forward with that, but I'm going to take a brief

2   break in between.  I need to handle something in between, 10, 15

3   minutes.

4       So with respect to Concord's motion to dismiss Count 1 of

5   the indictment and the motion for grand jury instructions, I

6   have reviewed the briefs.  I am prepared to rule, but if either

7   side would like to make additional arguments, I'm happy to hear

8   it.

9       Mr. Dubelier?

10          MR. DUBELIER:  Nothing, Your Honor, unless you have

11   any questions.

12          THE COURT:  Anything for the government?

13          MR. JONES:  Your Honor, briefly.

14          THE COURT:  All right.

15          MR. JONES:  Having read defense's reply brief, I would

16   point the Court to the *Apodaca* case that we cited in our brief.

17   I think it's most on point in response --

18          THE COURT:  On which issue?

19          MR. JONES:  On the grand jury issue.  And that's 287

20   F.Supp.3d 21.  There's an *Apodaca* case that comes up in the

21   Rule 16 context as well, but this opinion by Chief Judge Howell

22   speaks directly to a request for grand jury instructions.

23          THE COURT:  Okay.  And tell me what the point of it

24   is.

25          MR. JONES:  Chief Judge Howell, in that circumstance,

1    had an indictment which she had found was facially valid.   The

2    defendant had requested the grand jury instructions, suspecting

3    that there was a misinstruction with respect to a legal

4    question.   The Court found that that wasn't sufficient to pierce

5    grand jury secrecy, even with respect to grand jury instruction,

6    and didn't, in fact, in that circumstance look to the balance of

7    whether there was a secrecy consideration but, rather, in light

8    of circuit precedent, proceeded from the presumption that 6(e)

9    provides regarding grand jury secrecy and the defendant's burden

10   under 6(e), the second exception under 6(e) with respect to the

11   defendant's burden to show the reason a indictment should be

12   dismissed based upon something occurring before the grand jury.

13        And so that circumstance, I think, most parallels the

14   arguments that defense made in their reply.

15             THE COURT:  All right.

16        Mr. Dubelier, would you like to respond?

17             MR. DUBELIER:  Yes, Your Honor.

18        There's a big difference between that case and this one.

19   That is, in this case they just gave us a grand jury transcript

20   that appears to provide the grand jury with legal information

21   about the relevant statutes through testimony of an FBI agent.

22             THE COURT:  Okay.  I don't want to get into the

23   particulars in open court.

24             MR. DUBELIER:  I'm not going to get into it.

25        But there's at least 10 things wrong with that.  There's at

1    least 10 things in that testimony that are wrong as a matter of

2    law, and they've already given us that.

3         So this is a very unique situation.

4              THE COURT:  But how can I, Mr. Dubelier, based on that

5    alone -- by the way, which I think was a number of different

6    points stated as generalized points.  How can I conclude that

7    that's the sole instruction the grand jury received?

8              MR. DUBELIER:  Well, I think at a minimum, you would

9    have to ask the government.  I mean -- and again, it's -- the

10   government has never explained why they gave us this transcript

11   now.  They didn't claim it was *Brady* material.  There was no

12   other deadline pending upon which they needed to give it to us.

13   But they gave it to us, and the fact is, they did give it to us,

14   and it's wrong.

15        So if that information was communicated to the grand jury,

16   you know, as a matter of law, that incorrect information was

17   given to the grand jury on the law.  We know that now.  That's

18   beyond any doubt or beyond any argument.

19        And so then to say, Well, we're not sure whether that was

20   the only instruction and maybe it was corrected in some other

21   instruction, well, at a minimum, I think we would have to know

22   the answer to that.

23             THE COURT:  All right.  Well, I'm not sure I agree

24   with you that all of it was wrong.

25             MR. DUBELIER:  Your Honor, I'm happy to go through the

1     points that are wrong.  There's at least 10 of them.

2              THE COURT:  I've reviewed it, and I don't reach that

3     conclusion.

4              MR. DUBELIER:  I don't know what I can say to that.

5     We will have to agree to disagree about that.  But it's wrong.

6     There's information in that stuff that is wrong.  There's public

7     newspaper articles that contain statements about the law that

8     are wrong that they entered in furtherance of obtaining an

9     indictment.  They took a news article from BuzzFeed and gave it

10    to the grand jury -- that's crazy -- that talks generally about

11    what the Russians allegedly did in connection with the 2016

12    election.

13         Honestly, I've never heard of anything like that or

14    anything close to that.  They put a newspaper article in --

15             THE COURT:  Mr. Dubelier, I don't want to get into the

16    specifics of what happened.

17             MR. DUBELIER:  I'm not touching anything that is U.S.

18    sensitive, because --

19             THE COURT:  You're talking about what's before the

20    grand jury, and if you want to make specific points about that,

21    come up to the bench, and we will talk about it.  Don't do that

22    in open court.

23             MR. DUBELIER:  Well, Your Honor, if you disagree with

24    me and you don't want to hear the argument, I'm not going to

25    waste your time.

```
1              THE COURT:  No, come on up.

2              MR. DUBELIER:  May we approach?  Or would you rather

3    wait and do this when we're alone?

4              THE COURT:  Let's go ahead and approach.

5         Mr. Jones?

6         (Sealed bench conference.)
```













1 ████████████████████████████████████████████

2 ██████████

3 ████████████████████████████████████████████

4 ███████████████████

5 ████████████████████

6      (End of sealed bench conference.)

7         THE COURT:  Before the Court is Concord's motion to

8 dismiss Count 1 of the superseding indictment.

9         On November 8, 2019, the grand jury returned a superseding

10 indictment.  This indictment is identical to the original

11 indictment in all but a few key respects.  It now specifies that

12 among the lawful functions the conspirators allegedly sought to

13 impair were the FEC's function of enforcing the ban on certain

14 election-related expenditures by foreign nationals and the DOJ's

15 function of enforcing the ban against acting in the United

16 States as an unregistered agent of a foreign principal, and it

17 clarifies two ways the conspirators allegedly interfered with

18 these and other lawful functions:  By causing unwitting persons

19 to make election-related expenditures that expressly advocated

20 for Trump and against Clinton without disclosing those

21 expenditures to the FEC and by acting as foreign agents without

22 registering as such with the DOJ.

23        Concord's motion to dismiss Count 1 of the superseding

24 indictment makes three main points.  It argues that several

25 aspects of the prosecution combined to make this prosecution

1    unconstitutionally arbitrary under the due process clause.

2    Concord argues that recent Supreme Court and D.C. Circuit

3    precedent require this Court to revisit its prior holding that

4    the mens rea required for the offense is knowingly, not

5    willfully.  And it argues that the government's theory that

6    Concord caused unwitting persons to register as foreign agents

7    with the DOJ fails as a matter of law.

8         For the reasons that follow, I will reject these arguments.

9    I will start with Concord's due process argument.

10        Concord argues that the government's cumulative conduct in

11   this prosecution constitutes a pattern of flagrant arbitrariness

12   that compels dismissal of the indictment.  This latest due

13   process challenge is based on arguments that Concord has already

14   raised in earlier motions that the Court has already rejected

15   and that, whether viewed alone or together, do not amount to due

16   process clause violations.  In short, Concord fails to establish

17   that the government has used improper methods calculated to

18   produce a wrongful conviction.  *Berger v. United States*, 295

19   U.S. 78.

20        First, Concord argues that this prosecution is

21   unconstitutionally arbitrary because the Special Counsel

22   obtained the indictment and the Special Counsel justified his

23   appointment on the basis of a pretextual conflict of interest

24   that later disappeared without explanation.

25        The Court disagrees.  For starters, Concord already argued

in its first motion to dismiss that there was no conflict of interest, and in denying that motion, the Court rejected this argument, concluding that the Special Counsel had acted consistently with the Special Counsel's regulations' conflicts of interest provisions.  Concord provides no reason to revisit that holding, and its latest motion to dismiss contains no support for its conclusory allegation of pretext.

Second, Concord maintains that the government violated the due process clause by indicting a defraud clause conspiracy under 18 U.S.C. 371 instead of a conspiracy to violate the Foreign Election Campaign Act, FECA, or the Foreign Agents Registration Act, FARA, in an alleged attempt to skirt the heightened mens rea requirements of the FECA and FARA provisions.

This argument is a nonstarter, because the Court already rejected it in denying Concord's second motion to dismiss.  I noted then that Concord had accused the government of trying to evade the willfulness standard that must be met to show violations of the FECA and FARA provisions.  The Court explained the Supreme Court has rejected similar arguments, reasoning that the fact that the alleged events include conduct that violates another criminal statute does not in and of itself make the conspiracy to defraud clause of 371 unavailable to the prosecution.

Concord gives no reason to revisit this holding, and in any

event, the Supreme Court has long recognized that when an act violates more than one criminal statute, the government may prosecute under either, so long as it does not discriminate against any class of defendants. *U.S. v. Batchelder*, 442 U.S. 114.

The Court has already rejected Concord's claims of selective prosecution, and Concord's most recent arguments do not alter my earlier conclusions.

Third, Concord asserts that the government violated the due process clause by departing from two Department of Justice manuals:  The prior version of the Federal Prosecution of Election Offenses Handbook and the Criminal Resource Manual.  In Concord's view, these manuals specify willfulness as a prerequisite to a 371 defraud clause conspiracy.

As for the Federal Prosecution of Election Offenses Handbook, the Court already held that it is not entitled to legal deference.  More importantly, for Concord's due process clause argument, a departure from the prior version of this handbook does not manifest unconstitutional arbitrariness, given that, as the Court also held, the view expressed in it appears to contradict the government's frequent litigating position.

As for the Criminal Resource Manual, the Court disagrees with Concord's interpretation of the manual.  Concord is correct that in describing the general purpose behind the defraud clause, the manual quotes a Ninth Circuit case that says the

defraud part of Section 371 criminalizes any willful impairment of legitimate function of government, and that is plainly true. If the defraud clause criminalizes knowing impairments, then it criminalizes willful ones.

But the manual does not cite this case or any other to specify that willfulness is required in these prosecutions. Instead, it provides only that the intent required for a conspiracy to defraud the government is that the defendant possessed the intent, A, to defraud and, B, to make false statements or representations to the government or its agencies in order to obtain property of the government or that the defendant performed acts or made statements that it knew to be false, fraudulent, or deceitful to a government agency which disrupted the functions of the agency or of the government.

This passage does not specify willfulness as a prerequisite for a Section 371 defraud clause conspiracy. More to the point, to the extent there is any tension between this passage and the prosecution's decision here to allege knowledge rather than willfulness, that tension is not strong enough to contribute to a due process clause violation, either in isolation or in combination with other alleged arbitrariness.

This is doubly true when this is not the only time the government has charged a Section 371 defraud clause conspiracy without alleging willfulness.

Fourth, Concord submits that certain public statements by

the government violate the due process clause.  The Court has already addressed most of these statements, concluding that although they violated Local Rule 57.7, they were a good faith pursuit of a plausible, though mistaken, alternative and not flagrant.  Concord has not given cause for revisiting the Court's ruling on those statements.

As for the more recent statements, Concord fails to explain why these statements are unconstitutional or how they will impact the upcoming trial.  The Court will address during jury selection any effects such statements may have had on potential jurors, and the Court trusts that the prosecutors in this case have advised other U.S. Attorney's Offices of the Court's orders on these issues and its concerns about protecting Concord's right to a fair trial.

Finally, Concord revives its recurring argument that the government has treated the charges against Concord as a moving target.  The Court disagrees.  The charge against Concord has always been that it conspired to defraud the government through deceptive means with the goal of impairing the lawful functions of the FEC, the DOJ, and the State Department.

While the Court has recognized that the original indictment could have been clearer in describing the details of the charge and has generated unnecessary litigation, that does not mean that the original indictment lacked enough clarity to satisfy the due process clause, nor does it mean that the government's

1    theory has changed.

2         The Court flatly rejects Concord's theory that the

3    superseding indictment embodies an apparent deception when it

4    comes to the government's unwitting persons theory, which the

5    superseding indictment makes explicit.  Concord is incorrect

6    that the government did not develop, preview, or identify this

7    theory prior to the filing of the superseding indictment on

8    November 8th, 2019.

9         In a hearing on September 16, 2019, the government

10   disclosed that, quote, the category of indicted and unindicted

11   co-conspirators and the category of people who may have been

12   required to report and register may not be the same thing.  The

13   government explained that, quote, it is possible for a

14   conspirator to cause someone to violate FECA or FARA reporting

15   requirements without that person being a member of the

16   conspiracy.

17        This disclosure is consistent with the government's view

18   that the unwitting persons theory is not new.  Though the

19   original indictment did not plainly spell this theory out, the

20   original indictment did describe numerous times that the

21   co-conspirators recruited unwitting persons to engage in

22   political activities here.  And the superseding indictment

23   resolved whatever questions lingered about whether the original

24   indictment specified this means of the conspiracy.

25        By superseding, the government sought to correct what it

saw as the Court's mistaken interpretation of the original indictment.  That course was prudent, not arbitrary, and though it took unnecessary litigation to get here, through the bill of particulars, a supplement to the bill of particulars, and now the superseding indictment, Concord now has more detail about the government's theory than ever and more than enough to satisfy the due process clause.

In sum, Concord has not established that these alleged instances of arbitrariness form a unified due process clause violation.  They are not arbitrary on their own, and they are not arbitrary in total.  They simply do not add up to an improper method calculated to produce a wrongful conviction. *Berger*, 295 U.S. at 88.

I'll turn next to Concord's second main argument that the Supreme Court six-month-old opinion in *Rehaif v. United States* and the D.C. Circuit's slightly more recent opinion in *United States v. Burden* require revisiting the Court's holding that a 371 defraud clause conspiracy requires knowledge, not willfulness.  These cases do not.

The question presented in *Rehaif* concerns the scope of the word "knowingly" in a statute that fined or imprisoned for up to 10 years anyone who knowingly violates a related statute barring felons and aliens who are illegally or unlawfully in the United States from possessing firearms.  The Supreme Court held that the word "knowingly" applies both to the defendant's conduct,

i.e. possessing a firearm, and to the defendant's status, i.e. that he is either a felon or an alien who is illegally or unlawfully in the United States.

It reached, after interpreting the statutory text, noting that this interpretation was consistent with the presumption that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct.  As such, the term "knowingly" had to apply to all the subsequently listed elements of the crime, including the element that specified the defendant's status.

This case, thus, bears on which elements a given mens rea applies to, not on what level of mens rea applies.  And so it does not require revisiting this Court's previous holding that this indictment need only challenge -- allege knowledge, not willfulness.

This case may be relevant later in determining what knowledge the government must prove.  Yet, as Concord recognizes in its reply, the Court has previously said that Concord will have further opportunities with jury instructions and in trial and post-trial motions, if any, to ensure that the government proves enough knowledge to support a specific intent to thwart at least one of the government functions alleged in the indictment.  At this stage, given what the indictment alleges, the government has alleged the requisite intent, and no more is

required.

The D.C. Circuit's opinion in *Burden* likewise does not affect the Court's prior holdings.  That case involved no dispute about whether the mens rea of willfulness applied.  So it does not bear on whether willfulness is a correct mens rea here.  If anything, it strengthened this Court's prior holding that willfulness is not required, explaining that most criminal prohibitions require only proof that the crime was committed knowingly and that when Congress wants to ensure that defendants will be convicted only if they have a more culpable state of mind, it limits the crime to conduct that the defendant engages in willfully.

Beyond *Rehaif* and *Burden*, Concord also revives various arguments about purported fair notice problems endemic to FECA- and FAR-based prosecutions.  These arguments are not new, and the Court has already rejected them in holding that knowledge, not willfulness, is the appropriate mens rea in a 371 defraud clause conspiracy.  Concord provides no sound reason for revisiting those arguments.

Concord's last argument, that the government's unwitting person theory fails as a matter of law, is also unavailing. Concord maintains that FARA does not prohibit causing a U.S. citizen to violate FARA's registration requirements.  But that is beside the point, because the government has not charged Concord with conspiring to violate FARA.  The government alleges

instead that Concord conspired to impede the DOJ's
administration and enforcement of FARA's registration
requirements by, among other things, deceiving unwitting persons
into acting as unregistered foreign agents.  This theory does
not depend on whether FARA makes that a crime.

A similar flaw mars Concord's other argument that an
attempt to base criminal liability on encouraging U.S. citizens
to purchase, produce, or post such political advertisements in
the course of a U.S. presidential election steers directly into
the heart of the First Amendment's core protections for
political speech.

The government's theory does not criminalize the act of
encouraging people to engage in political speech.  It
criminalizes the act of deceiving people into engaging in
political speech on a foreign principal's behalf without
disclosing that affiliation to the Department of Justice.

As the Supreme Court has explained, FARA neither prohibits
nor sensors the dissemination of advocacy materials by agents of
foreign principals.  The government's unwitting persons theory
does not fail as a matter of law, and the Court rejects
Concord's request to strike it.

So for these reasons, Concord's motion to dismiss Count 1
of the superseding indictment is denied.

Also before the Court is Concord's motion to disclose grand
jury instructions.  In June 2018 the Court denied Concord's

1    initial motion to view the grand jury instructions in camera,

2    and the Court will again deny Concord's motion today.

3        Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii),

4    Concord faces a heavy burden of showing a particularized need to

5    justify disclosure of grand jury material.  Mere suspicion that

6    the grand jury may not have been properly instructed is

7    insufficient to show a particularized need to disclose grand

8    jury materials.  *United States v. Trie*, 23 F.Supp.2d 55.

9    Concord has not met this heavy burden.

10       Concord first argues that the original indictment does not

11   encompass one of the government's FARA theories that Concord and

12   its co-conspirators caused unwitting persons to act as agents of

13   a foreign principal, triggering a duty to register under FARA.

14   But the superseding indictment clearly alleges that the

15   defendants and their co-conspirators caused unwitting persons to

16   produce, purchase, and post advertisements on U.S. social media

17   and other online cites and to organize and coordinate political

18   rallies in the United States.  And it also charges that none of

19   the defendants or any of the unwitting persons registered as

20   foreign agents.  The superseding indictment thus addresses any

21   alleged notice defects with the legal theories in the original

22   indictment.

23       Moreover, disclosing the grand jury instructions would not

24   have aided Concord's due process argument concerning the

25   government's FARA theory and its motion to dismiss, because as

1    I've explained already in my ruling on the motion to dismiss,

2    the language of the original indictment is consistent with the

3    theory set forth in the superseding indictment.

4        I have also already, in my ruling on the motion to dismiss,

5    addressed Concord's other arguments relating to the sufficiency

6    of the indictment, namely whether the grand jury was instructed

7    on the correct mens rea standard and whether the unwitting

8    person's FARA theory is legally deficient.  Concord demonstrates

9    no particular need as to why the disclosure of the grand jury

10   instructions would bolster those arguments.

11       Finally, I've reviewed Exhibit 1, the grand jury transcript

12   attached to Concord's reply brief, and it does not lead me to

13   conclude that the grand jury was improperly instructed on the

14   law.  I will not reveal details of the testimony here except to

15   say that it was general in nature and based on the witness's

16   understanding of the law.  The government has also represented

17   that other instructions were given before the grand jury.

18       I conclude that the transcript does not seriously misstate

19   the law in a way that casts grave doubt that the decision to

20   indict was improper.  *United States v. Stevens*, 771 F.Supp.2d

21   556.

22       Because Concord has failed to show a particularized need to

23   disclose either the original or the new grand jury instruction,

24   the motion is denied.

25       All right.  I will turn to Concord's discovery motion to

1    disclose -- to obtain documents from the FEC, the State

2    Department, and DOJ.

3         Mr. Dubelier?

4              MR. DUBELIER:  I have nothing, Your Honor.

5              THE COURT:  Nothing on your discovery?  I have some

6    questions for you.

7              MR. DUBELIER:  Oh, okay.

8              THE COURT:  Okay.  On your discovery motion, as I

9    understand it, you seek two categories of discovery from the FEC

10   and DOJ.  You seek all materials related to the common cause

11   complaint, and you seek any documentation or information in

12   which these agencies express the view that Concord or its

13   co-conspirators would not have been required to file any report

14   with the FEC, register with the DOJ's FARA unit, or provide

15   additional information to the State Department in connection

16   with the visa application; is that right?

17             MR. DUBELIER:  Yes.

18             THE COURT:  All right.  So help me understand why the

19   actions or inactions or legal conclusions of these respective

20   agencies are material to your defense?

21             MR. DUBELIER:  Well, they're material to our defense

22   as the way we read the indictment.  Unfortunately, I think the

23   Court reads it differently, and that is, these are the alleged

24   victims.  It's not just some amorphous the United States.  It's

25   these three agencies.

1      THE COURT:  But how does their mental state have any

2  bearing on Concord's?

3      MR. DUBELIER:  This doesn't have anything to do with

4  their mental state.  It has to do with what they may have said

5  in regard to what the charges are here in this case.

6      THE COURT:  But why is that relevant?

7      MR. DUBELIER:  Because the government treats this as

8  all theoretical, because they have charged it as a conspiracy to

9  defraud, that nothing that actually happened or could have

10  happened is relevant.  The only thing that's relevant is was

11  there a conspiracy, was there an agreement to defraud.  If

12  that's what they go forward on, and it seems to me that's what

13  they're going forward on, you have a situation here where the

14  company could be convicted of having done nothing, I mean

15  literally nothing that runs afoul of the law.

16  So if the common cause complaint is basically a layman's

17  version of what's contained in this superseding indictment, it

18  basically is that.  And that's how the FEC investigates

19  anything.  If somebody doesn't make a complaint, there's nothing

20  to investigate.

21  So if they've determined, if they've determined that there

22  was no violation or anything for them to do with respect to what

23  IRA did, how is that not relevant to the case?

24      THE COURT:  Well, again, your client is charged with a

25  conspiracy to defraud.  So I'm going to instruct the jury on the

1    elements of that offense.

2         And how does the views of the FEC on whether a FARA

3    violation was committed bear on those elements?

4              MR. DUBELIER:  In the same way that their views of

5    what their responsibilities are.  They're going to call people

6    in, either -- well, now with the grand jury testimony, I don't

7    know what they're going to do.  They're either -- let's just

8    take FEC and not the other two, but I think it applies to both.

9         Are they going to call someone from the FEC to come in here

10   and explain what the FEC does and what its responsibilities are

11   and how any duty would have arisen?

12        How is it not relevant to cross-examine that person about,

13   Well, you had this complaint.  What did you do with the

14   complaint when you got it?  We didn't do anything with it.

15        How is that not relevant?

16             THE COURT:  But I don't understand why it is relevant.

17             MR. DUBELIER:  Your Honor, I don't know how to explain

18   it any better than I have.  I will just submit to the Court,

19   because I don't know how to explain it.  We've explained it in

20   the papers, and I've explained it again.

21             THE COURT:  If you had another criminal case and it

22   was -- the case could have been charged in EDVA but EDVA passed

23   on it and then came into D.C. and the D.C. U.S. Attorney's

24   Office charged it, you wouldn't be getting into what the

25   prosecutor's views in the other district were about the strength

1    of the case.

2          MR. DUBELIER:  That's an example that has nothing to

3    do with the fact situation we have here.  I'm not talking about

4    another criminal case in another district.  I'm talking about

5    the same complaint.

6          THE COURT:  You're talking about whether they thought

7    a violation occurred.

8          MR. DUBELIER:  So if the Court is taking the position,

9    and apparently the government is taking the position, that it is

10   of no moment whether or not these victim agencies actually view

11   themselves as having been victimized, I don't know what to say

12   any more.  I give up.  I will just submit it to the Court, and

13   you can rule, because I don't know what to say.

14         THE COURT:  I just don't understand how their views on

15   the complaint are relevant to what the government has to prove

16   here.

17         MR. DUBELIER:  Your Honor, we're at a standoff.  I

18   don't understand how you cannot understand it, and you say you

19   can't understand it.  I don't know what else to say.  I will

20   just submit.  With all due respect, there's no reason arguing

21   about it.  We just disagree.

22         THE COURT:  So tell me your position on -- we've

23   talked about the materiality prong.  But in terms of your

24   position on documents in the government's possession, custody,

25   or control, what is your position on that?

1          MR. DUBELIER:  I'm pretty shocked at the extreme

2     position they took here, and that is, they're saying if the

3     trial team does not have documents in their possession, then

4     they're not viewed to be in possession of the government.  We've

5     laid out the cases which say that's wrong, and that's not the

6     standard.  But that's what they insist.

7          Their argument here is, the trial prosecutors can willfully

8     blind themselves to evidence, whether it's exculpatory or not,

9     and simply say, We didn't have it because we didn't look for it.

10    And in this case they don't even really succeed in doing that

11    because they've already conceded that they went and looked at

12    some of the stuff.

13          THE COURT:  In the State Department?

14          MR. DUBELIER:  Yeah; yeah.

15          THE COURT:  But what if -- with respect to some of

16    these agencies, they haven't looked at all.  They've made no

17    requests.  There's been no joint investigation.

18          Are they obligated to go around to every federal agency?

19          MR. DUBELIER:  Not every federal agency, but the three

20    that are the alleged victims here, they are.  Again, they want

21    to try the case where everything is hypothetical and nothing

22    that actually occurs at any one of those agencies could be

23    relevant.

24          And we just fundamentally disagree with that.  They can't

25    try it that way.  And if they try and try it that way, we're

1    going to go after it on cross-examination of these witnesses.

2    And you can rule then as to whether or not I can ask the

3    questions.

4            THE COURT:  But you also -- I denied, but I didn't

5    reach the issue of whether it was in the custody, possession, or

6    control of the government.  I denied the motion for documents

7    from Treasury.

8         So not a victim agency here; right?  Why would that be in

9    the possession, custody, and control of this trial team?

10           MR. DUBELIER:  Your Honor, I just don't -- let me flip

11   it around and say it in a different way.  I don't think the

12   government can take the position that something is not in their

13   custody and control when they don't even know whether it exists

14   but not having knowledge of whether it exists is based on the

15   fact that they don't ask the question.

16        It's like --

17           THE COURT:  But again, do they have to go to every

18   federal agency and ask questions?

19           MR. DUBELIER:  No, but I think they have to go to the

20   federal agencies that are impacted in this case.

21           THE COURT:  And how is Treasury impacted in this case?

22           MR. DUBELIER:  The way we argued it, Your Honor.  I

23   won't go beyond what we said in the papers.

24           THE COURT:  Okay.  All right.  Any other points you

25   want to make?

1          MR. DUBELIER:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  Mr. Jones?  Mr. Kravis?  Walk

3     me through -- and I want you to address Treasury as well.

4          MR. JONES:  Certainly.

5          THE COURT:  Walk me through the contact that either

6     the Special Counsel's Office or the trial team has had with

7     these respective agencies.

8          MR. JONES:  To my knowledge, Your Honor, the Special

9     Counsel's Office and the trial team has not had contact with the

10    Federal Election Commission regarding this case.

11         THE COURT:  But you must have.  You're going to call a

12    witness.  You've had no contact?

13         MR. JONES:  No, we haven't had that contact.

14         THE COURT:  You've had no contact with the FEC about

15    this case?

16         MR. JONES:  I will confer with my colleague, but I

17    don't believe so, no.

18         (Government counsel conferred.)

19         MR. JONES:  My colleague clarifies that the Special

20    Counsel's Office, we understand, did consult with the Public

21    Integrity Section in the Department of Justice, which enforces

22    and prosecutes election crimes, but that's, obviously, separate

23    from the Federal Election Commission.

24         I think the government does intend --

25         THE COURT:  You've had contact with the State

1    Department.

2              MR. JONES:  Yes, we have.  That's with respect to fact

3    discovery.

4              THE COURT:  Right.  So what if these other entities,

5    hypothetically, what if they have fact discovery?

6              MR. JONES:  If the conspirators or other people

7    related to the conduct had interactions with the FARA unit or

8    the FEC, if they had made filings, obviously, those documents

9    and facts surrounding those documents would be relevant.

10        Here, of course, the allegations are that there weren't any

11   interactions.

12        And defendant's argument appears to be that conspiracy

13   simply isn't a crime.  Of course, that isn't the case.  The idea

14   that there was -- there must be actual interference or some

15   impact on these agencies is just not true.  The allegations

16   relate to the conspiracy, the crime of the agreement of the

17   conspirators to defraud the United States through deception, as

18   the elements require.

19        What these agencies may think about that is entirely

20   irrelevant.  Success of the conspiracy is not an element.  I

21   mean, eventually, this conspiracy was discovered by the FBI.

22   And so in that sense, it wasn't successful.

23        But regardless, there was no interaction with these

24   agencies, and there can't, therefore, be facts within these

25   agencies that would be relevant to the elements of the offense.

1          THE COURT:  But you've already admitted that you've

2     gone to State to seek factual information, whether it exists or

3     not.

4          MR. JONES:  Correct.  And that's because part of the

5     conspiracy was the conspirators' engagement with officers of the

6     State Department in obtaining visas.  And so deception, you

7     know, affirmative lies or omissions in encounters with the State

8     Department are material and relevant to the case.  We don't deny

9     that.

10         THE COURT:  But what if -- we don't know.  What if

11    they engaged with the FEC?  You're saying you don't even have to

12    ask that question?  That's your position; right?

13       This is charged as kind of a victim agency here, and you

14    don't even have to ask them if they've had any engagement with

15    the defendant or the co-conspirators in this case?

16       I get your point that there may not be any, but it seems to

17    me that you've asked State for documents, and you should have to

18    ask the FEC and --

19         MR. JONES:  I think the State Department --

20         THE COURT:  -- FARA, for that matter.  What if they've

21    reached out to them?

22         MR. JONES:  As we represented in our papers, we did,

23    in response to the discovery request, reach out to the FARA unit

24    to confirm whether or not they had records related to the

25    defendants and the additional conspirators that we identified in

1     the bill of particulars, and there were no responsive documents.

2              THE COURT:  And do you know, as you stand here today,

3     whether any of these other entities investigated the common

4     cause allegations?

5              MR. JONES:  I don't know as to whether or not the FEC

6     took actions with respect to the common cause complaint.  My

7     understanding is there is no public decision or --

8              THE COURT:  But don't you have to at least ask?  What

9     if they have a wealth of factual information they've gathered

10    related to the common cause complaint?

11             MR. JONES:  Again, I don't --

12             THE COURT:  It may not be there, but doesn't the

13    government have an obligation to ask the entities that it's

14    charged in the indictment, Do you have factual information

15    related to the allegations here?

16             MR. JONES:  I think given that the FEC played no role

17    in the investigation and the FEC, therefore, isn't closely

18    aligned with the prosecution here and given that the allegations

19    in the indictment are that there was a conspiracy and not

20    allegations of actual violations of -- criminal violations or

21    civil violations of these statutes, records, discovery within

22    those agencies is simply outside the scope of what would be

23    considered, A, within the custody, possession, or control of the

24    government and, B, what would be material.

25         So I think that's where we're -- that's where we see the

line in terms of our discovery obligation and materiality.

THE COURT:  Okay.  But I take it you concede that in those instances -- and I'm thinking of the State Department -- where you've requested and if you received documents, that that's in the possession, custody, and control of you?

MR. JONES:  Yes, we would concede that, and we would concede that because the allegations in the indictment speak to those encounters between conspirators and State Department employees.  The State Department Diplomatic Security Service didn't investigate this crime, and therefore, we wouldn't be obligated to consult with State Department agents as to whether they had possession of records related to the case.

But in terms of the facts of the case, what happened, what are the overt acts, what are the other allegations of conduct, those include engagement with the State Department.  And so certainly, we are willing to request those types of documents from the State Department.

It doesn't, therefore, follow that the State Department is a part of the prosecution team or closely aligned with the prosecution team.  Rather, it's essentially a fact witness that possesses material --

THE COURT:  What has been your request of the State Department?  What have you requested from them?

MR. JONES:  To my knowledge, we've passed along the specific requests made by the defendants regarding additional

materials that were submitted by the conspirators or the alleged conspirators to the State Department.

The defense represented to us that when the alleged conspirators provided information in application for a visa, that there were additional materials provided, additional to the materials that we in discovery provided to the defense.

Based on that representation, we reached out to the State Department to determine -- to ask, Is there more stuff, are we missing stuff, we have a representation there might be more stuff.  To my knowledge, the response we have to date is that there aren't additional records in that regard.

But that type of fact discovery in response to requests from the defense is quite different from discovery generally speaking as to internal records of an agency that may have -- of employees that may have passed on questions that relate to the conduct in this case.

THE COURT:  All right.  You do have to prove that the defendants had the intent to impair the lawful functions, right, of these three agencies; right?

MR. JONES:  Yes.

THE COURT:  And what if the defendants have had contact with the FEC or DOJ about FARA and FECA and had received some advice?  That would be *Brady*.

MR. JONES:  That certainly would be *Brady*.

THE COURT:  Have you made that inquiry of those

1    entities to ensure that there's nothing of that nature there?

2           MR. JONES:  Let me just confirm with my colleague

3    before I answer that question.

4           THE COURT:  All right.

5       (Government counsel conferred.)

6           MR. JONES:  As I indicated earlier, Your Honor, with

7    respect to the FARA unit, we did make that inquiry as to any

8    records related to engagement with the defendants or other

9    conspirators and confirmed that there were no such records.

10      With respect to the FEC, we have no reason to believe there

11   was such encounters, in large part because FEC expenditure

12   reports are publicly available, and FEC decisions would be

13   publicly available, and therefore, the absence of those types of

14   records lead us to conclude that there was no such engagement.

15   And we certainly don't have any other indication based on the

16   representations that defense counsel in their request that there

17   would be that type of record.

18      If we had some indication of that, I think perhaps we had

19   approached this -- we would approach this differently, but those

20   are the reasons why we haven't made that specific request.

21          THE COURT:  All right.  Thank you.

22          MR. JONES:  Thank you, Your Honor.

23          THE COURT:  Mr. Dubelier?

24          MR. DUBELIER:  Yes, Your Honor, just briefly.

25      This is where I suspected we were going from the very

1  beginning.  Now we've actually heard it.

2       So the government's position is that we're dealing here

3  with complicated regulations of which only the agencies that

4  administer those regulations can make determinations about, and

5  they don't intend to call anybody from those agencies.

6       So the Court has already ruled that to proceed here, they

7  have to establish there was a duty and there was a duty on

8  behalf of some defendant --

9       THE COURT:  I haven't held that they have to -- we're

10  going to get into jury instructions, but I haven't reached that.

11  I said as a practical matter, they may have to show that in

12  terms of proof, but we're going to address all of this in jury

13  instructions in January.

14       MR. DUBELIER:  I think what you said, though, Your

15  Honor, was you couldn't imagine how they could go forward

16  otherwise.  And there is no way to go forward.  They're going to

17  have to establish there was a duty.

18       How can they establish there was a duty if they don't have

19  testimony from the alleged victim agencies?  I just don't get

20  it.  If they're alleging that something is express advocacy --

21       THE COURT:  I didn't hear them to say they're not

22  calling someone to talk about the duties of the FEC.

23       MR. DUBELIER:  They're not calling someone from the

24  FEC.  They haven't even talked to the FEC.  They just said the

25  Special Counsel did not talk to the FEC.

1          MR. JONES:  We do intend to call a representative from

2     these agencies.

3          THE COURT:  Remarkably, they haven't had contact with

4     them yet, but they do intend to call one of them.

5          MR. DUBELIER:  Okay.  That's remarkable, and I agree.

6     Thank you.

7          THE COURT:  All right.  Before the Court is Concord's

8     motion to compel discovery from the Department of Justice, the

9     Federal Election Commission, the Department of State.  Concord

10     seeks two categories of discovery from these agencies:  One, all

11     materials from the DOJ or FEC related to the complaint filed

12     with the FEC by common cause on or around September 7th, 2017,

13     and any documents or information in which these agencies

14     expressed the view that any defendant or unindicted

15     co-conspirator was not or would not have been required to file

16     any report with the FEC, register with the DOJ's FARA unit, or

17     provide additional information with respect to the visa

18     applications referenced in the indictment.

19          Federal Rule of Criminal Procedure 16 requires the

20     government to disclose upon the defendant's request all

21     documents and objects that are within the government's

22     possession, custody, or control and material to preparing the

23     defense.

24          The Court will address the second category of requested

25     discovery materials first.

The superseding indictment charged the defendants with a conspiracy to defraud the United States in violation of 18 U.S.C. 371.  In order to convict Concord under this statute, the government must prove, one, that the defendants entered into an agreement; two, to obstruct a lawful function of the government or agency of the government; three, by deceitful or dishonest means; and four, at least one overt act was taken in furtherance of the conspiracy.  *U.S. v. Kanchanalk*, 41 F.Supp.2d 1.

Evidence of legal conclusions reached internally by federal government officials would not enable the defendant significantly to alter the quantum of proof in his favor. *United States v. Libby*, 429 F.Supp.2d at 7.

Because such evidence would not go to any of these four elements, at trial, the Court will instruct the jury regarding the relevant legal obligations under FECA, FARA, or any other statute.  The views of any federal government employees regarding those legal obligations, however, will have no bearing on the Court's instructions to the jury or the jury's consideration of the evidence before it.

With respect to the first category of requested discovery, any materials from the DOJ or FEC related to the common cause complaint filed with the FEC, the Court reaches a different conclusion.

Starting with the first prong of the Rule 16 inquiry,

materials are within the government's possession, custody, or control when the government entities in possession of those materials are closely aligned with the prosecution in the context of that particular case. *Libby*, 429 F.Supp.2d at 11. The possession, custody, or control inquiry is fact intensive and must be resolved on a case-by-case basis, but courts have in the main been more concerned with fairness to the defendant on the one hand and the government's ease of access to the documents sought on the other than with the issue whether the documents are actually within the physical possession of the prosecutor. *U.S. v. Poindexter*, 727 F.Supp. at 1477.

The Court also notes that the language and spirit of Rule 16 is designed to provide to a criminal defendant in the interest of fairness the widest possible opportunities to inspect and receive such materials in the possession of the government as may aid the defendant in presenting the case.

Applying these standards, the Court concludes that materials within the possession of the DOJ or the FEC are within the government's possession, custody, or control under the circumstances of this case.

As for the Department of Justice, federal prosecutors exist and operate within that very agency and can generally take steps to obtain access to information contained therein. *U.S. v. Santiago,* 46 F.3d at 894.  But the circumstances of this case render the FEC closely aligned with the prosecution as well.

*Libby,* 429 F.Supp.2d at 11.  The superseding indictment explicitly alleges a conspiracy to impair, obstruct, and defeat the lawful functions of the FEC, the DOJ, and the U.S. Department of State.  The indictment then proceeds to enumerate several lawful government functions of each of these victim agencies, including the FEC.

In prosecuting this case, the government will necessarily maintain close contact with the FEC at least by calling one or more FEC officials to testify to the lawful functions of the FEC that the defendants allegedly conspired to obstruct.

Accordingly, the Court concludes that the materials Concord seeks from the FEC are within the government's possession, custody, or control.

With respect to the second prong of the Rule 16 inquiry, whether the documents are material to preparing Concord's defense, the Court concludes that the materiality of any information relating to the common cause complaint will depend on the nature of that information.  Materials documenting any action that the government may have taken in response to the common cause complaint or any failure to take such action have no bearing on Concord's guilt or innocence of the crime charged.

For the reasons explained earlier, the legal conclusions of federal government officials do not establish whether Concord used deceitful or dishonest means to obstruct a lawful function of the government or of its agencies.

1    However, any factual information obtained by the FEC or the

2    Department of Justice in connection with the allegations

3    contained in the complaint might well enable the defendant

4    significantly to alter the quantum of proof in his favor.

5    *Libby,* 429 F.Supp.2d at 7.

6    Therefore, to the extent that the FEC or DOJ has obtained

7    factual information in connection with the common cause

8    complaint, that material is discoverable under Rule 16.  The

9    prosecution team must, therefore, seek and obtain any such

10   information from the FEC and the Department of Justice and

11   provide any such information to Concord in order to comply with

12   the rule.  And that applies to *Brady* as well.

13   The Court will also take this opportunity to clarify its

14   ruling on Concord's earlier motion to compel discovery.

15   On October 27, 2019, the Court denied this motion on the

16   ground that the materials Concord sought from the Office of

17   Foreign Assets Control were not material to preparing its

18   defense.  The Court stands by its original reason for denying

19   this motion.  Concord sought memoranda and exhibits prepared by

20   the Department of Treasury without supplying the requisite

21   strong indication that these materials would play an important

22   role in uncovering admissible evidence, aiding witness

23   preparation, corroborating testimony, or assisting impeachment

24   or rebuttal.  *Libby,* 429 F.Supp.2d at 7.

25   However, the Court also notes that the information sought

1    from OFAC was not within the government's possession, custody,

2    or control because OFAC is not closely aligned with the

3    prosecution under the circumstances of this case.  *Libby* at 11.

4         The Treasury Department is not a victim agency in this

5    case, and notwithstanding the prosecution's intermittent

6    references to OFAC sanctions at various points in these

7    proceedings, Concord has made no showing that the prosecution is

8    in regular contact with OFAC or otherwise enlisted the

9    assistance of the Treasury Department in prosecuting this case.

10        Accordingly, materials held by the Treasury Department are

11   sufficiently remote from the prosecution team as to fall outside

12   its possession, custody, or control.

13        So for those reasons, Concord's motion to compel discovery

14   from DOJ, FEC is denied in part.

15        All right.  That leaves us with the government's motion for

16   a trial subpoena.

17        And to the extent I didn't reference the Department of

18   State in there, I meant to.  The same factual information that

19   the Department of State may have applies here.  All right?  The

20   government should make the same inquiry.

21             MR. JONES:  Understood.

22             THE COURT:  All right.  Who is arguing the

23   government's motion for a trial subpoena?

24             MR. KRAVIS:  Good morning, Your Honor.  I will argue

25   this motion.  This is Jonathan Kravis for the United States.

1          THE COURT:  All right.  Mr. Kravis, I have to tell you

2     that -- where is it?  Looking at Attachment A, I will entertain

3     your motion with respect to the corporate registration documents

4     for Concord, documents identifying the corporate officers,

5     documents identifying any Internet protocol address.  But the

6     rest, to me, appear far too broad for a 17(c) trial subpoena.

7          MR. KRAVIS:  Your Honor, I guess I would just say a

8     couple of things about that, and then I will move on to the

9     other requests.

10         The first is that the cases that the government cited, both

11    in its initial motion and in reply, make clear that the

12    government is not required in a -- a party, I should say, is not

13    required in a trial subpoena to identify specific documents

14    themselves.  Categories of documents are acceptable.  And the

15    cases, in particular, cited in the reply --

16         THE COURT:  Let me stop you there.  Any and all -- I

17    mean, payments, any meetings, any and all communications?  These

18    are -- yes, you've blocked them in by four years, and you've

19    named certain entities, but extraordinarily broad.  It looks

20    much more like a fishing expedition for evidence than a targeted

21    trial subpoena.

22         MR. KRAVIS:  So in this instance, on the facts of this

23    case and the evidence gathered in the course of the

24    investigation, the government has found no reason to believe and

25    the defense has not alleged that these entities that we are

1    talking about here, Concord Management and Consulting and the

2    Internet Research Agency, have any kind of legitimate business

3    relationship such that there would be 10s of thousands of

4    communications between them that would have nothing to do with

5    the case.

6         On the contrary, as we noted in the opening motion and in

7    the reply, the evidence gathered in the investigation suggests

8    that there were a very, very limited number of communications

9    between these two entities involving limited numbers of people

10   and for only one purpose, which was the furtherance of the

11   conspiracy.

12        Under those circumstances, we believe that these requests

13   in the trial subpoena are not overly broad.

14        To the extent the Court's concern is that the categories

15   requested in the attachment do not specify particular topics or

16   are not sufficiently specific in terms of the individuals who

17   are -- whose communications are being requested, the Court can

18   narrow the subpoena or order the government to narrow the

19   subpoena to focus more closely on particular subjects,

20   particular individuals, particular time periods, particular

21   methods of communication.  But the evidence gathered in the

22   investigation, I think, gives the -- provides reasonable basis

23   to believe that these categories of materials requested will

24   yield relevant and at least arguably admissible evidence and are

25   not merely requests that have no basis in the record.

1          THE COURT:  All right.  With respect to Concord's

2     argument about legal exposure in Russia and the service

3     argument, starting with the exposure in Russia, the legal

4     exposure, is that an argument that I should entertain through a

5     motion to quash?

6          MR. KRAVIS:  I believe the Court can entertain the

7     argument -- I believe the Court can entertain the argument now

8     or on motion to quash.

9          THE COURT:  Why did you file a motion for a trial

10    subpoena rather than just attempted to serve the subpoena?

11         MR. KRAVIS:  For the early return.  Rule 17 requires

12    us to --

13         THE COURT:  A motion, actual motion?  All right.

14         MR. KRAVIS:  Yes.  In the *Vo* case -- I think it's

15    pronounced *Vo* -- cited in Concord's opposition, while I don't

16    think it supports their opposition, it does make clear that the

17    government is not permitted to issue a trial subpoena to an

18    entity, even suggesting that the entity can comply by returning

19    the records early.  If we want the records before the trial

20    date, I think the rule says we have to file a motion seeking the

21    Court's permission.

22         THE COURT:  All right.  To the extent we have

23    follow-on briefing on this, we're going to have to consolidate

24    the motion for the subpoena, to the extent you renew your

25    subpoena, with arguments on a motion to quash.

1          MR. KRAVIS:  Agree.  I would also suggest -- and of

2    course, the government would be prepared to address those issues

3    on an expedited schedule, as expedited as the Court desires.

4          I would suggest that in the interest of sort of keeping

5    things moving, Concord can start looking for documents now.  It

6    doesn't have to produce them, obviously, while a motion to quash

7    or a motion for the subpoena is pending --

8          THE COURT:  No, I'm not going to order that now with

9    respect to 4 through 9.  It's just far too broad.  Maybe 9.

10         MR. KRAVIS:  It's just a suggestion, because Concord

11   raised the argument in its opposition about the timing of the

12   trial date and so on.  This is just a suggestion for keeping

13   things moving.

14         THE COURT:  All right.  Well, I will allow you to come

15   back with another more narrowed subpoena as fast as you can.

16   All right?  No later than December 30th, because we do need to

17   get moving.

18         MR. KRAVIS:  Yes.  Very well.  What I heard the Court

19   to say, and I just want to make sure that I understand clearly,

20   is that the Court has asked us to narrow categories 4 through 9.

21         THE COURT:  That's correct.

22         MR. KRAVIS:  Very well.

23         THE COURT:  Mr. Dubelier?

24         MR. DUBELIER:  Yes, Your Honor.

25         THE COURT:  It seems to me, with respect to at least

1, 2, and 3, that the government has shown that these are

relevant, admissible, and sufficiently specific.

Do you disagree?

MR. DUBELIER:  I do, Your Honor.

THE COURT:  On what grounds?

MR. DUBELIER:  We got their pleading late yesterday.

So I haven't looked at all of the cases, but as far as I could

tell from the cases I was able to get to, they haven't cited a

single case where a criminal defendant who has no business

presence in the United States other than appearing to defend

itself in a case and has no records within the United States was

compelled by a trial subpoena to produce any kind of records,

whether they are from the first three categories or the last

seven categories.

THE COURT:  Well, novel actions raise novel legal

issues.

MR. DUBELIER:  I'm sorry, Your Honor?

THE COURT:  Novel actions raise novel legal issues.

MR. DUBELIER:  Okay.  So let's just go to the

practicalities here.  I'm not accepting service of a subpoena

for Concord.  I'm not authorized to.  So if they can get a

subpoena through you and they can serve it through whatever

relationship they have with the Russian government and get the

subpoena served, that's one thing.

THE COURT:  Okay.  I don't see how you can validly

resist service of a subpoena when you voluntarily entered an
appearance in this court, submitted to the jurisdiction of this
court, agreed to follow all the Federal Rules of Criminal
Procedure, local rules, and court orders, and sit here and say,
I'm going to get all this discovery and all these rights
attached, and then I refuse to accept a subpoena when the
government has a right to, if I determine, an early return on
documents.

MR. DUBELIER:  There's simply no case that says what
you just said, that they're entitled to that.

THE COURT:  And I don't think there's any case that
you can give me where a foreign corporation has entered an
appearance in a criminal case through counsel.

MR. DUBELIER:  Well, first of all, there would be no
way for anybody to determine that other than going through, you
know, millions and millions of records in PACER.  But you're
saying --

THE COURT:  We are where we are.  I'm telling you
that -- you can brief this, but my view is, you have submitted
to the jurisdiction of this court, and that includes accepting
service of a trial subpoena.

MR. DUBELIER:  And I disagree, because there's no law
or rule that says they can do that or you can order me to do it.
So I can't stop you from ordering it.

THE COURT:  I'm ordering that with respect to 1, 2,

1    and 3.

2              MR. DUBELIER:  Ordering what specifically?

3              THE COURT:  I'm granting the government's motion in

4    part, all right, for the trial subpoena with respect to, in

5    Attachment A, 1, 2, and 3.  All right?  Do you understand that?

6              MR. DUBELIER:  I get it.

7              THE COURT:  Okay.  So I have narrowed the subpoena.

8              MR. DUBELIER:  Right.

9              THE COURT:  In addition, I will give them -- I will

10   allow them to try to narrow the other requests, and they shall

11   do so no later than December 30th.  All right?

12       In addition, you can file a motion to quash, motion to

13   reconsider, whatever you would like, and I'm going to order you

14   to do that by December 20th.  I'm going to order them to respond

15   by December 30th.  And you can file a reply by January 3rd.  And

16   that's with respect to the trial subpoena for the first three

17   items.

18       Understood?

19             MR. DUBELIER:  Well, I understand.  But how are they

20   going to serve the subpoena?  You're saying that they can just

21   give it to me, and that's valid service of the subpoena?

22             THE COURT:  That's -- yeah.

23             MR. DUBELIER:  There's no case that says that.  So I

24   have to determine whether or not we have to pursue some other

25   avenue here.

1          THE COURT:  You can file a motion to reconsider.  You

2     can file a motion to quash.  You can raise all of these

3     arguments in a brief that you can file December 20th.  You've

4     submitted to the jurisdiction of this court.

5          MR. DUBELIER:  Your Honor, there's no case that says

6     that I have to accept service of a subpoena for foreign

7     documents that are located overseas where there's potential

8     jeopardy to me and my law firm if we get involved in this.

9          THE COURT:  On the Russian law point, I just don't

10    think you've established sufficiently -- I'm interested in that

11    point.  I want you to brief that point.  But based on what

12    you've given me so far, I can't determine that this would

13    violate Russian law.  You haven't given me enough on that.  So

14    you're going to have to brief that with more detail than you've

15    done.

16       And I get that you got the subpoena and this is what you

17    did on the time constraints you have.  But you've got to make a

18    stronger argument for that than you've made.

19          MR. DUBELIER:  And are you saying that I have to take

20    this subpoena, and I have to communicate it to my client?

21          THE COURT:  Yes.

22          MR. DUBELIER:  I have to give it to them, and I have

23    to treat it just as I would any other subpoena of a domestic

24    company, and that is, they should put a hold notice in effect

25    and make sure that nothing gets -- all that stuff, you're

1    ordering me I have to do that?

2         THE COURT:  Yes.  And you can file a motion to

3    reconsider, a motion to quash.

4         MR. DUBELIER:  I'm not going to file a motion to

5    reconsider because you're not going to reconsider.

6         THE COURT:  No, on the service issue, if you think

7    that I'm wrong, convince me.  You haven't convinced me in your

8    filings.

9         MR. DUBELIER:  I don't think it's through a motion to

10   reconsider.  It could be through a mandamus and to go up to the

11   Court of Appeals.  I don't know.  I have to determine through

12   consultation with my own counsel, our own law firm, whether or

13   not you've put me in a position of jeopardy here.  Maybe I will

14   have to fire myself.

15        THE COURT:  To be clear, Mr. Dubelier, my point is

16   this:  You can't come into this court and voluntarily submit to

17   the jurisdiction of the court and then say, I'm not going to --

18   I'm not going to have a representative from the company here,

19   because I don't have to under the federal rules, and that's

20   true, but by not having a representative sit at this table who

21   could accept service, that you can avoid complying with a

22   subpoena.

23        MR. DUBELIER:  So now what you're saying is, if I had

24   a person here, a Russian person from the company sitting here,

25   they would be able to take a subpoena, hand it to that person,

1  and that would be binding for a company that does no business

2  here in the United States and has no records here in the United

3  States?  There's no case that says that.

4         THE COURT:  Mr. Kravis?

5         MR. KRAVIS:  I'm sorry.  I didn't want to interrupt.

6         THE COURT:  No, go ahead.

7         MR. KRAVIS:  There is a case that says that.  Now,

8  it's a civil case, not a criminal case.  It is from the D.C.

9  Circuit.  The case is *Kelberine v. Societe Internationale*.  The

10  citation is 363 F.2d 989.  We cited it at page 15 of our reply.

11      In *Kelberine*, a foreign corporation who had no business in

12  the United States, entered into civil litigation in the courts

13  in the District of Columbia.  And then the party who was

14  opposing them in the civil litigation attempted to serve

15  *Kelberine* with a subpoena, and *Kelberine* resisted service,

16  making exactly the arguments that Concord is making now.  And

17  the D.C. Circuit rejected those arguments, holding that a

18  foreign corporation that subjected itself to litigation in the

19  District of Columbia, quote, voluntarily subjected itself to the

20  jurisdiction of the court, end quote, and therefore, quote, the

21  agent of the corporation present in the district for the purpose

22  of conducting the litigation in the courts here was subject to

23  process, end quote.

24      As the Court just observed, a corporation is not required

25  under the Rules of Criminal Procedure to bring a corporate

representative for purposes of presence for critical stages of the proceedings.  But if the corporation chooses to proceed that way, that means the corporate representative conducting the litigation is counsel for the corporation.

And under that precedent and the others cited in our reply, we believe that a subpoena can validly be served on counsel for Concord.

Thank you.

MR. DUBELIER:  Just very briefly, Your Honor.  I said there was no criminal case, and Mr. Kravis got up and said, Well, there is a case, and it's a civil case.

And under those circumstances, if I understand what he's saying correctly, a company who instituted a lawsuit against somebody else, a foreign company who came in court and sued someone --

THE COURT:  You voluntarily came into this courtroom, too.

MR. DUBELIER:  Nobody voluntarily came into this courtroom.

THE COURT:  You did.  You didn't have to appear.

MR. DUBELIER:  We didn't institute this case.

THE COURT:  You didn't have to appear.

MR. DUBELIER:  That's right.  But we didn't institute the case either.  The case he just cited has nothing to do with the facts of this case.  Nothing.  It's not binding on the

1     Court.  It's not binding on anything.  It has nothing to do with

2     the facts in this case.

3         And I will stand by what I said.  There is no reported case

4     where they get what they want here or what you're ordering me to

5     do.

6              THE COURT:  On the other hand, do you have a reported

7     case where a corporation has voluntarily appeared in a criminal

8     case and refused to accept service of a subpoena?  Do you have

9     that case either?

10             MR. DUBELIER:  No, but it's not my burden.  It's their

11    motion.

12             THE COURT:  But this is an issue of first impression.

13             MR. DUBELIER:  Like everything else.

14        Thank you.

15             THE COURT:  All right.  So to be clear, Concord may

16    file a motion to reconsider, may file a motion to quash by

17    December 20th.  The government needs to respond by

18    December 30th.  If the government seeks to narrow Attachment A

19    of the subpoena, I would advise the government, you've got a lot

20    of narrowing to do.  You can do so by December 30th.  Concord

21    can file a reply by January 3rd.

22             MR. DUBELIER:  Your Honor, if I may briefly.

23             THE COURT:  And one other point, Mr. Dubelier.

24        If the government does seek to narrow this subpoena, all

25    right, and does so by December 30th, then I will set a briefing

schedule on that, because I know that that's going to raise new

issues that we don't have before us now.

      And it seems to me that the motion for the 17(c) subpoena

and the motion to quash can be consolidated into one motion like

cross-motions for summary judgment.  And so once I know whether

they're doing that, then I will set a briefing schedule that

consolidates the briefing on that motion.

            MR. DUBELIER:  Okay.

            THE COURT:  All right.  Before we go into sealed

hearing, I want to review what's coming.  We have a January 14th

hearing schedule and a February 11th hearing schedule, as well

as an initial pretrial conference for March 9th.

      During the break, I'm going to ask you all to look at your

calendars and talk to the courtroom deputy -- and if you need

more time, I will give you more time to do that and get back to

him.  But I'm interested in reserving a couple other dates.  We

have some motions we didn't expect here.  I'm looking in

particular at January 24th and February 19th.  If you can give

him a sense as to whether you're available the mornings of those

dates, that would be helpful.

      At the January 14th hearing, the jury instructions should

be fully briefed.  The jury questions and voir dire is going to

be submitted on the 8th.  We can address that then and perhaps

the motion to quash, if there is such a motion, but we may need

more time.  So I want backup dates for potential hearings.

1    February 11th hearing, we have motions in limine, unrelated

2    exhibits or witnesses that should be ripe by January 24th.  We

3    also have CIPA motion which should be ripe by January 30th.  It

4    seems to me that we may need to break those up, too, depending

5    upon the number of motions.

6        So I want to have some backup dates tentatively scheduled.

7    And if we don't need them, I will vacate them.  All right?

8        Okay.  Anything else we should address?

9            MR. JONES:  Just to confirm whether or not the trial

10   team is a part of the sealed hearing or not.

11           THE COURT:  Oh, no.  This is with firewall.  Wait,

12   wait.  There are issues I do want to raise with respect to the

13   mechanics of the firewall counsel process that would require

14   deviating from the protective order.  So I forgot to mention

15   this.  You can have a seat, Mr. Jones.

16       And that is, the current protective order

17   contemplates seven days -- contemplates Concord making a request

18   for documents, firewall counsel having seven days to provide the

19   Court with a particularized showing as to why these documents

20   raise national security or law enforcement interests, and then

21   Concord another seven days to explain why it's important for

22   Concord to have it for trial.  This is just taking too long.

23   Then at that point, I've had some briefing on weighing the

24   competing interests.

25       And so what I would like to do moving forward is I would

1    like to have Concord files its request, and then firewall, I'm

2    wondering -- this is a question for firewall counsel, whether we

3    can reduce the time in which he responds to five days.

4        Is that doable?

5            MR. MC CULLOUGH:  Your Honor, may I approach?

6            THE COURT:  Absolutely.  Good morning, Mr. McCullough.

7            MR. MC CULLOUGH:  Good morning, Your Honor.  Jason

8    McCullough as firewall counsel for the government.

9        Your Honor, I would want to confer with my colleagues to

10   ensure that we can obtain the necessary information to respond

11   on that time frame, and that would be my only concern, is that

12   the information that I would be responding with is not always

13   entirely within my control, and I would want to ensure that I

14   can source that information and provide that information to the

15   Court on that schedule.

16       The second thing is that I would respectfully request that

17   I obtain additional information from Reed Smith as they make the

18   request that would identify the documents with more

19   particularity, which I think we've now worked out through our

20   process.

21           THE COURT:  Well, the other issue I wanted to raise is

22   that when Concord makes the request, I don't need to see the

23   documents right away, but it seems that you should, and then

24   when I get into a situation, if I found there's been a

25   particularized showing made, I should get the documents then.

1      And to the extent you want me to consider any documents in

2      weighing the various interests, that you should provide those,

3      too, at the time you all are filing those subsequent briefs.  So

4      I want to raise that issue as well.

5           MR. MC CULLOUGH:  Yes, Your Honor, and I understand

6      that, and I understand the Court's interest in expediting the

7      process.  I do -- I will say that having had the experiences

8      that we have had, I do know that seven days is a very tight

9      schedule for a turnaround on this.

10          THE COURT:  Are you asking that you make that

11     determination request by request, or you need time now to

12     consult and see if moving forward you can do it in five days for

13     any request?

14          MR. MC CULLOUGH:  Your Honor, I would like to make it

15     on a request-by-request basis, and I would be very happy to come

16     back to the Court and tell you that we can do it in all cases in

17     five days.  But I would prefer to continue with the seven-day

18     time period and address that on a request-by-request basis.

19          THE COURT:  All right.  Well, the other change that I

20     was going to propose is that if I find that the government has

21     met its burden in making a particularized showing, that Concord

22     then files the next day its brief on why it wants the documents.

23     You then have two days to respond to that, and then Concord has

24     two days after that to respond to your filing.

25          All right?  We've just got to expedite this.

1       Also, I would like to set an end date for the filing of

2    these motions.  Concord is due to file its exhibits on, what

3    date, February -- I don't have the date in front of me, but I

4    think February 7th.

5       I was going to propose that Concord make any firewall

6    counsel requests on or before January 20th in order -- at that

7    point Concord has the exhibits of the government on January 6.

8    Concord ought to have adequate time to review that and file any

9    requests by January 20th.

10      Absent good cause, I'm not inclined to entertain firewall

11   requests after that date, because you have the government's

12   exhibits on January 6th.  You have to file your exhibits in

13   early February.  So your request for sensitive discovery should

14   be made by January 20th, absent good cause.  All right?

15      So Mr. McCullough, how quickly can you let me know whether

16   five rather than seven days would suffice across the board?

17         MR. MC CULLOUGH:  Your Honor, I believe that I can

18   give you further information on that when we resume during our

19   sealed hearing.

20         THE COURT:  All right.  I will take a 15-minute break.

21   Anything else?  And when we come back, this will be a sealed

22   hearing.

23         MR. JONES:  Your Honor, I just wanted to make sure

24   that time was excluded under the Speedy Trial Act.  I admit I

25   can't recall off the top of my head if Your Honor excluded time

1    through the end of the year or through this hearing.

2              THE COURT:  I think it's through this hearing, I

3    think.

4              MR. JONES:  To the extent it hasn't been excluded

5    going forward, we would ask the Court to enter --

6              THE COURT:  Mr. Dubelier, any objections?

7              MR. DUBELIER:  No.

8              THE COURT:  For all of the reasons I've stated several

9    times on the record, I will exclude time under the Speedy Trial

10   Act, and it is in the interest of justice to exclude time from

11   now until -- when is our next hearing?  January --

12             MR. JONES:  January 14th.

13             THE COURT:  January 14th in calculating the time for

14   speedy trial in this case.

15        And the trial team does not -- should not be present for

16   the sealed hearing.

17        Anything else?

18             MR. JONES:  No, Your Honor.

19             MR. DUBELIER:  No, Your Honor.

20        (Proceedings adjourned at 11:22 a.m.)

21

22

23

24

25

```
 1                 CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3          I, Sara A. Wick, certify that the foregoing is a

 4     correct transcript from the record of proceedings in the

 5     above-entitled matter.

 6

 7

 8

 9     /s/ Sara A. Wick                 December 16, 2019

10     SIGNATURE OF COURT REPORTER      DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```