**Exhibit 9** to Concord Management and Consulting LLC's Motion to Quash Unserved Early Return Trial Subpoena and Opposition to the Government's Renewed Motion for Early Return Trial Subpoena, 18-cr-00032-2-DLF

Decision on the criminal case

Case No. 1-62/2019
Submitted to the court on
January 24, 2019
SENTENCE IN THE NAME OF THE RUSSIAN FEDERATION
Novosibirsk
February 26, 2019

Dzerzhinskiy District Court of Novosibirsk consisting of:
Presiding Judge V. A. Shchukina
in the presence of L. V. Kolykhanova, Secretary,
with participation of:

State Accuser being Chief Assistant Prosecutor of Dzerzhinskiy District of Novosibirsk E. V. Balmaeva,

Defense Counsel I. A. Shuvalova, which provided a certificate and warrant of attorney from Partner bar association No. 420 (in defense of N. V. Chernitsov),

Defense Counsel M. N. Kungurtseva, which provided a certificate and warrant of attorney from the bar association of Leninskiy District No. 463 (in defense of V. N. Ivanov),

Accused persons being N. V. Chernitsov, V. N. Ivanov,

Representatives of the injured person XXX PJSC being Full Name1, Full Name13 (under the power of attorney),

having considered in the open court session the files of the criminal case with regard to:

N. V. CHERNITSOV, ...

being accused of the crime provided for by part 3 of Article 183 of the Criminal Code of Russia

V. N. IVANOV, ...

being accused of the crime provided for by part 3 of Article 183 of the Criminal Code of Russia, the court

FOUND:

Accused persons N. V. Chernitsov and V. N. Ivanov collected the information constituting the commercial secret in other illegal way out of mercenary interest.

The crime was committed in Dzerzhinsk District of Novosibirsk in the following circumstances:

XXX Public Joint-Stock Company (hereinafter "XXX PJSC") was registered on DD.MM.YYYY by the State Registration Chamber at the Ministry of Justice of the Russian Federation, main activity of XXX PJSC is the activity in communications based on wireless technologies. XXX PJSC has the Branch in Novosibirsk Region located at ..., another Branch of XXX PJSC in Novosibirsk Region is located at ... subject to real estate rental agreement (non-residential premises) No. ...–...) dated DD.MM.YYYY and concluded between XXX PJSC and "..." LLC.

In accordance with Article 3 of the Federal Law No. 98-FZ "On Commercial Secrets" of July 29, 2004, information constituting a commercial secret is information of any nature (industrial, technical, economic, organizational and other), including as the result of intellectual activity in the field of science and technology, as well as information about the means of carrying out professional activity, which has an actual or potential commercial value by virtue of its being unknown to third parties, and to which third parties lack free, lawful access, and in

relation to which the owner of such information has imposed a regime of commercial secrecy.

In accordance with Article 4 of Federal Law No. 98-FZ, "On Commercial Secrets" of July 29, 2004, the right to define information as information constituting a commercial secret, and to determine the list and content of such information, belongs to the owner of such information subject to the provisions of this Federal Law..

In accordance with Annex 5 to the policy "Regulation on information safety procedures (confidentiality) of XXX OJSC", approved by order of the President of XXX PJSC No. ...P dated DD.MM.YYYY, information containing the commercial secret includes, among others:

- Subscriber contracts;

- Bills to subscribers, clients, dealers;

- Input and output data (in electronic form) of the billing system.

01.04.2018 the Branch of XXX PJSC in Novosibirsk Region being the "customer" and N. V. Chernitsov being the "contractor" concluded paid services agreement No. .../DP for the period from April 01, 2018 to March 31, 2019. Pursuant to the obligation to keep confidential the commercial secret and other confidential information dated April 01, 2018 being Annex No. ... to the services agreement, N. V. Chernitsov obliges (during the period of civil law relations with XXX PJSC and within three years after its termination):

- Not to disclose to any third parties the information constituting the commercial secret of XXX PJSC and any other confidential information which became known to him during performance of his contractual duties;

- Not to transfer to any third parties and not to disclose in public the information constituting XXX PJSC's commercial secret;

- In case of an attempt by any unauthorized persons to obtain from him any protected information, report this immediately to the Personnel and Facilities Security Department of the Corporate Security and Procedures Unit of the Corporate Center (Regional Security Service) of XXX PJSC;

- To keep in confidence any official secret of ministries and agencies, which became known to him due to civil law relations, as well as any commercial secret of any counterparties, with whom XXX PJSC has business (partner) relationships;

- Not to use information of confidential nature of XXX PJSC to run a business and gain personal benefit;

- Immediately report to the Security Department of the Corporate Center (Personnel and Facilities Security Department of the Corporate Security and Procedures Unit of the Corporate Center (Regional Security Service)) in case of loss or lack of any media containing the Employer's commercial secret and any other confidential information, authorizations, passes, keys (of restricted access rooms, depositories, vaults (steel cabinets)), personal seals and other facts which may result in disclosure or leakage of the protected information.

12.07.2018 Agreement No. .../DP dated DD.MM.YYYY between the Branch of XXX PJSC in Novosibirsk Region and N. V. Chernitsov was terminated.

During the period from February 11, 2016 to March 19, 2018, V. N. Ivanov worked at the branch of XXX PJSC in Novosibirsk Region as a supervisor. Upon entering employment, V. N. Ivanov signed an obligation (agreement) to keep confidential the commercial secret and other confidential information, in which the latter obliged (during the period of civil law relations with the employer and within three years after their termination):

- Not to disclose the information constituting the commercial secret of the employer and any other confidential information which became known to him during performance of his labor duties;

- Not to transfer to any third parties and not to disclose in public the information constituting the employer's commercial secret;

- Not to use information of confidential nature of MTC PJSC to run a business and gain personal benefit.

07.05.2018 SSS LLC providing services for outsourcing of merchandising for clients of FFF LLC, including XXX PJSC, under services agreement No. .../GR dated DD.MM.YYYY

Original Text Available at https://dzerzhinsky--nsk.sudrf.ru/modules.php?name=sud_delo&srv_num=1&name_op=doc&number=109770042&delo_id=1540006&new=0&text_number=1

and concluded between FFF LLC and SSS LLC, and FFF LLC providing services to XXX PJSC under framework agreement No. ... concluded on DD.MM.YYYY between FFF LLC (since DD.MM.YYYY FFF LLC is referred to as FFF LLC) and XXX PJSC, referred in the agreement as the "employer", represented by director Full Name5, acting under the Articles of Association, and V. N. Ivanov, referred to as the "employee", labor agreement No. ... is concluded, pursuant to clause 1.1 of which the employer employs the employee to the Department for Sales of Fixed Business Services on Retail Market as a direct sales professional since May 07, 2018.

According to subclause 2.20, the employee shall not disclose the commercial secret and other confidential information in accordance with the "Obligation to keep confidential the commercial secret and other confidential information", which is to be signed by the employee when concluding the labor agreement and which constitute its integral part.

According to the obligation to keep confidential the commercial secret and other confidential information dated May 07, 2018, V. N. Ivanov confirms that he is familiarized with the Regulation on Information Safety Procedures (Confidentiality) of XXX OJSC and, inter alia, obliges (during the period of civil law relations with XXX PJSC and within three years after its expiration):

- Not to disclose to any third parties the information constituting the commercial secret of XXX PJSC and any other confidential information, which became known to him during performance of his contractual duties, without XXX PJSC's authorization;

- Not to transfer to any third parties and not to disclose in public the information constituting XXX PJSC's commercial secret;

- Not to use information of confidential nature of XXX PJSC to run a business and gain personal benefit.

During the period from April 01, 2018 to July 12, 2018, N. V. Chernitsov received a proposal from a person, which was not identified during the preliminary investigation and which knew a place and nature of employment of N. V. Chernitsov at XXX PJSC, to provide him/her for monetary reward with the information about subscribers of XXX PJSC, including information about subscriber contracts, bills being issued to subscribers, which, in accordance with Annex 5 to the policy "Regulation on information safety procedures (confidentiality) of XXX OJSC", approved by order of the President of XXX PJSC No. ...P dated DD.MM.YYYY, is referred to the information containing the commercial secret, due to which N. V. Chernitsov developed, because of mercenary interest, a criminal intent to collect the information constituting the commercial secret of XXX PJSC in other illegal way, while implementing which he proposed his acquaintance, V. N. Ivanov, to commit this crime together, to which proposal the latter agreed

During the period from July 10, 2018 to July 18, 2018, in the circumstances, not identified during the investigation, V. N. Ivanov, while implementing his criminal intent aimed at collection of the information constituting the commercial secret of XXX PJSC in other illegal way, out of mercenary interest, found an unidentified person being ready to purchase from him the information about subscribers of XXX PJSC, including about subscriber contracts and bills being issued to subscribers of Novokuznetsk, about which he informed N. V. Chernitsov during this period.

Thus, during the period from July 10, 2018 to July 18, 2018 N. V. Chernitsov and V. N. Ivanov being aware that the information about subscriber contracts and bills being issued to subscribers of XXX PJSC constituted the commercial secret and having obliged to keep it confidential, entered into previous concert to collect the information constituting the commercial secret in other illegal way to further transfer it for monetary reward to an unidentified person, that means out of mercenary interest, namely to illegally collect the information about subscriber contracts and bills being issued to subscribers of XXX PJSC which constituted the commercial secret at XXX PJSC, having outlined roles in the prospective crime.

18.07.2018 at about 5:15 p. m., implementing the common criminal intention aimed at illegal collection of the information on subscriber contracts and bills issued to subscribers of XXX PJSC in Berdsk, Barnaul, Novokuznetsk, which constitutes the commercial secret at

Original Text Available at https://dzerzhinsky--nsk.sudrf.ru/modules.php?name=sud_delo&srv_num=1&name_op=doc&number=109770042&delo_id=1540006&new=0&text_number=1

XXX PJSC, N. V. Chernitsov and V. N. Ivanov together arrived at the office of the Branch of XXX PJSC for Novosibirsk Region located at ..., Dzerzhinskiy District of Novosibirsk, where, using the passes they had, they went to room ...".

After that, in order to exclude any suspicion of Full Name14 and Full Name15, employees of Branch of XXX PJSC in Novosibirsk Region being in the room, with regard to the purpose of their staying in the room, V. N. Ivanov, acting pursuant to his role in the crime, called the customers of XXX PJSC to offer them additional services of the company.

N. V. Chernitsov, acting pursuant to his role in the crime, without having any username and password assigned to him (as well as to V. N. Ivanov) and required to log in to the corporate computer network (domain of XXX PJSC) and ... information system, contacted Full Name2, who was working at the Branch of XXX PJSC in Novosibirsk Region, requesting to provide him with a username and a password required to log in to the corporate network (domain of XXX PJSC) without informing him of his criminal intentions and of his dismissal from XXX PJSC on July 12, 2018.

Full Name2, not realizing that by his actions he procures a crime and being mistaken about the true intentions of N. V. Chernitsov, provided the latter with the username and password assigned to him and required to log in to the corporate computer network (domain of XXX PJSC) through the WhatsApp application from the subscriber number used by him to the subscriber number used by N. V. Chernitsov.

After that, from 5:15 p. m. to 5:49 p. m., still staying in room ... at the specified address, through the WhatsApp application from the subscriber number used by him to the subscriber number used by N. V. Chernitsov, V. N. Ivanov sent the latter a list of streets located in Novokuznetsk, for the subscribers of which it was not required to collect information, accordingly, for the remaining addresses of Novokuznetsk it was required to collect the information constituting the commercial secret of XXX PJSC, whereafter N. V. Chernitsov logged in to the corporate network (domain of XXX PJSC), through the corporate computer installed at the work place, using the username and password provided to him by Full Name2, and then logged in, using the username and password belonging to Full Name12, group head of the Branch of XXX PJSC in Novosibirsk Region, and automatically saved by Full Name2, using the means of the Google Chrome browser, to ... information system, through which he requested the information on the subscribers of XXX PJSC in Novosibirsk, Berdsk, Barnaul, and Novokuznetsk, in the scope specified by V. N. Ivanov, including the information on subscriber contracts and bills issued to subscribers of XXX PJSC, which constituted a commercial secret of XXX PJSC. The information contained in ... information system on the subscribers of XXX PJSC in Novosibirsk, Berdsk, Barnaul, and Novokuznetsk, including the information on subscriber contracts and bills issued to subscribers of XXX PJSC, was sent by N. V. Chernitsov to his e-mail ...; however, the files containing the specified information were not delivered due to the large volume of information, whereof N. V. Chernitsov informed V. N Ivanov, who informed N. V. Chernitsov that it was necessary to split the file into several files, whereafter N. V. Chernitsov split the file containing, among other things, the information on subscriber contracts and bills issued to the subscribers of XXX PJSC with regard to 506,185 subscribers, which constituted a commercial secret of XXX PJSC, into two files bearing similar name "Archive WinRAR.rar", which were sent by him to his e-mail ....

Then, V. N. Ivanov checked e-mail ... for receipt of the above information, found two files bearing similar name "WinRAR.rar Archive" received on it and containing the information on the subscribers of XXX PJSC in Novosibirsk, Berdsk, Barnaul, and Novokuznetsk, including the information on subscriber contracts and bills issued to the subscribers of XXX PJSC, with regard to 506,185 subscribers, which constituted a commercial secret of XXX PJSC, whereof he informed N. V. Chernitsov.

Thus, on July 18, 2018, N. V. Chernitsov and V. N. Ivanov collected the information constituting the commercial secret of XXX PJSC in other illegal way, out of their mercenary interest, by a group of persons by previous concert.

<REDACTED SECTION>

Original Text Available at https://dzerzhinsky--nsk.sudrf.ru/modules.php?name=sud_delo&srv_num=1&name_op=doc&number=109770042&delo_id=1540006&new=0&text_number=1

Guilt of the said persons in commitment of the crime is confirmed both by confessionary statements by accused person V. N. Ivanov that on July 18, 2018, upon preliminary coordination with N. V. Chernitsov, being at the office of XXX PJSC at ..., using the user account of Full Name2 and the user account of Full Name12, they entered the corporate network of the company, from which they downloaded the information about personal data of subscribers in order to further sale the obtained information to interested persons, by explanations given by N. V. Chernitsov to the extent the court recognizes them as true, namely that on July 18, 2018 he was at the office of XXX PJSC at ..., together with V. N. Ivanov, where he, having received a login and password of the user account of Full Name2, entered the corporate network, from which he started to download the information, further sending it to his e-mail, and by testimony of the representative of injured person Full Name1, witnesses Full Name23, Full Name24 that the security system of XXX PJSC identified transfer on July 18, 2018 of a large volume of personal data from the corporate e-mail of the company to the external e-mail address, due to which checking of the obtained information began and it was found that using the e-mail address of employee Full Name2, an archive, containing personal data of subscribers of XXX PJSC, was sent to an external media; testimony of witness Full Name6 that having been informed about occurred information leakage he found that on July 18, 2018 Full Name2 was absent at the office in the afternoon but provided his credentials for entering the user account to former employee N. V. Chernitsov, which was also stated by Full Name2 examined at the court, having explained that upon request of P. V. Chernitsov, with whom he was on friendly terms, he provided the login and password to enter the user account, besides he previously saved the credentials provided by his manager Full Name12 to enter ... software application, to which he had not his own access; testimony by witness Full Name12 that previously Full Name2 worked under his direction at the team and subsequently he provided to Full Name2 credentials to enter ... software application but he was not informed that the latter performed autosaving of data, furthermore, he specified that on July 18, 2018 he saw N. V. Chernitsov and V. N. Ivanov at the office and N. V. Chernitsov requested him to provide a user account, which request he declined; testimony by witnesses Full Name14 and Full Name15 that on July 18, 2018 they were at the office of ... at ..., which was also visited by V. N. Ivanov and N. V. Chernitsov, who sat down at the computer installed at the office; testimony by witness Full Name18 that on July 21, 2018, being at work at XXX PJSC, during one of the breaks she met N. V. Chernitsov, who informed that he downloaded the client base and sold it, about which she further informed Full Name20, when it became known that someone downloaded client base of XXX, explanations by Full Name20 that in July 2018 Chernitsov and Ivanov requested her for a user account to enter the corporate system, which request she declined, and when she became aware about occurred information leakage one of the employees being Full Name18 informed her that Chernitsov told that he downloaded the client base and sold it; testimony by witnesses Full Name19, Full Name21, Full Name22, Full Name16 that they were in the commission for internal investigation of information leakage, during which it was found that on July 18, 2018 V. N. Ivanov, working under the outsourcing agreement, and N. V. Chernitsov, dismissed from XXX PJSC but having not returned his pass, were at the office of ... at ..., where they, using the user account of Full Name2, where credentials of Full Name12 to enter ... software application were saved, entered the corporate network, where they downloaded information about subscribers from ... software application, containing personal data of subscribers, which constitute the commercial secret, after which they sent the information to the external e-mail address using the corporate e-mail; testimony by witnesses Full Name25 and Full Name17 that in their official capacity they performed law enforcement intelligence operations with regard to leakage of the information constituting the commercial secret of XXX PJSC, during which N. V. Chernitsov and V. N. Ivanov were found, who, being present at the office of XXX PJSC, using the credentials provided by Full Name2, entered the corporate network, from which they downloaded data and then sent them to the external media; testimony by witness Full Name3 to the extent the court recognizes her testimony as corresponding to other evidence, namely that she received a proposal about purchase of personal data of subscribers of XXX PJSC from V. N. Ivanov and she received letters with files from the sender with name ...@....ru to her e-mail address; testimony by

witness Full Name4 that, while working at TTT PJSC, he more than once received from N. V. Chernitsov, who worked at XXX PJSC, proposals to purchase a base with telephone numbers; which the court finds logical, true, mutually supportive and consistent with written evidence on the case, given in the descriptive and analytical part of the sentence, in particular: statement by representative of XXX PJSC Full Name1 that sending of personal data of clients to the external media was found; report on discovery of indicia of crime; resolution on provision of results of law enforcement intelligence operations; protocols of inspection of premises during which computers as well as user accounts of employees were examined at the office of XXX PJSC with the involvement of a specialist, during which it was recorded that letters were sent from the corporate e-mail registered to employee Full Name2 and such letters contained files which, in their turn, contained archived files being a result of generation of reports from ... software application which were downloaded using the credentials of employee Full Name12, which were sent to the external media being ...@....ru, and, according to viewed records from video surveillance cameras installed at the office of the company at ..., Full Name12 and Full Name2 were absent at the office of the company, V. N. Ivanov and N. V. Chernitsov were at the room where the computer, from which the corporate network was entered, is installed, and the latter, on July 18, 2018, had not already had any labor relations with XXX PJSC, which, in its turn, is confirmed by the agreement dated DD.MM.YYYY for termination of Agreement No. .../DP dated DD.MM.YYYY; protocol of voluntary surrender by N. V. Chernitsov of a laptop and the protocol of its inspection, during which downloads of files from e-mail addresses ...@....ru on July 18, 2018 and July 19, 2018, containing personal data of clients, were recorded in the browser's log; protocol of inspection of N. V. Chernitsov's mobile phone, which contains correspondence with the subscriber number of V. N. Ivanov, containing messages about downloading of information about subscribers of XXX, as well as e-mail addresses ...@....ru; protocols of inspection of telephone connections, provided by mobile network operators, according to which connections between subscriber numbers being used by V. N. Ivanov and N. V. Chernitsov and subscriber numbers being used by Full Name2 and Full Name3 were recorded

The court finds the above testimonies of the injured person's representatives and prosecution witnesses as mutually supportive and reliable, since the court did not find any grounds for these persons to defame accused persons N. V. Chernitsov and V. N. Ivanov, and the accused persons themselves did not indicate such facts.

The initial arguments of accused person N. V. Chernitsov on his non-involvement in this crime, given by him at the preliminary investigation and in court, were checked in the court session and were not confirmed; they were not confirmed either by accused person N. V. Chernitsov himself, therefore the court assesses them as unreliable, given pursuant to the chosen position in defense on the case, since it follows from the testimonies of the prosecution witnesses, who are employees of XXX PJSC, in particular, Full Name12 and Full Name20, that in July 2018 N. V. Chernitsov requested account information to log in to the corporate network, which was denied, since such data was not given to the agents; in addition, Chernitsov terminated his employment at XXX PJSC; furthermore, as the company's employees explained, the corporate network of XXX PJSC has a number of protection levels, the network is accessed by entering the username and password assigned to a particular employee, and access to the corporate network programs is restricted, even if there is an account, according to the position held in the company.

The court finds accused person N. V. Chernitsov's references at the preliminary investigation to the fact that he had not read the regulation on keeping information confidential, did not know that the personal data on subscribers was a commercial secret as meritless, since a copy of annex ... to the services agreement being an obligation to keep confidential the commercial secret and other confidential information (volume 1, case file sheets 90–91), which N. V. Chernitsov had personally read as evidenced by his signature, is available in the files of the criminal case; in addition, the interviewed representatives of the injured person and prosecution witnesses that worked previously and currently work at XXX PJSC pointed out that when entering into an agreement, both employment and civil law agreements for provision of services, the employees mandatorily signed an obligation to keep confidential the commercial secret, which includes personal information of the subscribers being the clients of

XXX PJSC, and these provisions were communicated by the immediate supervisor of employee, thus, all employees of XXX PJSC were aware that the information on the subscribers constitutes a commercial secret and assumed the obligations to keep it confidential not only during fulfilment of their duties, but also after termination of the employment relations for 3 years.

Thus, the court has found that, on July 18, 2018, accused persons N. V. Chernitsov, who terminated the contractual relations for provision of the services to XXX PJSC since July 12, 2018, and V. N. Ivanov, who was the employee of SSS and who provided the services to XXX PJSC under an outsourcing agreement, both aware that the information on subscriber contracts and bills issued by XXX PJSC to the subscribers constitute a commercial secret, staying in the office of XXX PJSC at ... office ..., acting as a group of persons by previous concert, in other illegal way, using the account data of Full Name2 and Full Name12, without informing them of their criminal intentions, logged in to the corporate network of XXX PJSC using ... program, generated reports containing the subscribers' personal data, whereafter sent the generated files to e-mail ... @ .... ru used by N. V. Chernitsov, for further sale of information to interested parties, i. e. they illegally collected the information constituting the commercial secret.

The fact that there was previous concert between the accused persons is evidenced by the testimony of accused person V. N. Ivanov, who pointed out that, as offered by N. V. Chernitsov, he agreed to download the client database of PJSC XXXX for further sale, and by the cumulative evidence examined by the court, which indicates that N. V. Chernitsov and V. N. Ivanov acted jointly, in concert, each playing an assigned role in the crime.

The classifying attribute "out of mercenary interest" was confirmed in the court session, based on the explanations of accused person V. N. Ivanov that, as offered by N. V. Chernitsov, they decided to download the client database of PJSC XXX for further sale of the information on the subscribers' personal data, as well as of the witnesses that, according to N. V. Chernitsov, they became aware that he had sold the client database of XXX PJSC; therefore, the information constituting the commercial secret of XXX PJSC was collected by N. V. Chernitsov and V. N. Ivanov out of mercenary interest and was aimed at obtaining financial gains.

The court classifies the actions of accused persons N. V. Chernitsov and V. N. Ivanov under part 3 of Article 183 of the Criminal Code of Russia as collection of the information constituting the commercial secret in other illegal way out of mercenary interest.

Proceeding to imposition of a sentence, the court takes into account the nature and degree of a danger of the committed crime to the public, which is moderately serious, the data on a personality of each accused person, the circumstances mitigating or aggravating the sentence, an effect of the imposed sentence on reformation of the convicted persons, and the living conditions of their families.

The court takes into account the data on a personality of N. V. Chernitsov, who was not previously convicted (volume 3, case file sheet 2); ... is characterized satisfactorily as a competent employee (volume 2, case file sheet 86); is not under dispensary observation at State Budget-Funded Healthcare Institution of Novosibirsk Region Novosibirsk Regional Clinical Narcological Dispensary (volume 3, case file sheet 3); is not under observation of a psychiatrist at State Budget-Funded Healthcare Institution of Novosibirsk Region State Novosibirsk Regional Psychiatric Clinical Hospital … (volume 3, case file sheet 5); is characterized positively by the head          at the previous place of residence (volume 3, case file sheet 8)

The court takes into account the plea of guilty and active assistance in the investigation of the crime by giving confessionary explanations about the crime committed with his involvement as the circumstances mitigating the punishment of N. V. Chernitsov.

The court takes into account the data on a personality of V. N. Ivanov, who was not previously convicted (volume 3, case file sheets 55, 69); ... is characterized by his manager as proved himself as an employee with low responsibility (volume 2, case file sheet 87); is not under dispensary observation at State Budget-Funded Healthcare Institution of Novosibirsk Region Novosibirsk Regional Clinical Narcological Dispensary (volume 3, case file sheet 56); is not under observation of a psychiatrist at State Budget-Funded Healthcare Institution of

Novosibirsk Region State Novosibirsk Regional Psychiatric Clinical Hospital ... (volume 3, case file sheet 58); is not under dispensary observation at State Budget-Funded Healthcare Institution Territorial Psychiatric Clinical Hospital (volume 3, case file sheet 70); is not under dispensary observation at State Budget-Funded Healthcare Institution Territorial Narcological Dispensary (...) (volume 3, case file sheet 71)

The court acknowledges the plea of guilty, regret of the committed crime, having a child of tender years born in ..., active assistance in the investigation of the crime by submitting the information on the circumstances of the crime to the investigative authorities from the inspection and by giving faithful and complete testimony that contributed to the investigation of the crime as the circumstances mitigating the punishment of V. N. Ivanov.

The court takes into consideration that accused persons N. V. Chernitsov and V. N. Ivanov were not previously convicted, but does not acknowledge this circumstance as mitigating for each of the accused persons, taking into account the seriousness of the crime and the absence of a matter of chance.

In accordance with clause "c" of part 1 of Article 63 of the Criminal Code of Russia, the court acknowledges commission of the crime by a group of persons by previous concert as the circumstance aggravating the punishment for each of the accused persons.

Taking into account the facts of the case, nature and degree of a danger of the committed crime to the public, the information on a personality of each of the accused persons, circumstances mitigating and aggravating the punishment, in order to restore social justice and prevent new crimes, the court considers that it is necessary to impose on N. V. Chernitsov and V. N. Ivanov a sentence in the form of deprivation of liberty, which is reasonable, fair and sufficient to reform them and achieve the punishment purpose. The court does not see a ground for imposing on N. V. Chernitsov and V. N. Ivanov any other, milder types of punishment. However, taking into account the combination of circumstances mitigating the punishment, information on a personality of each of the accused persons who have a permanent place of residence, stable social ties, absence of previous prosecution, the court believes that reformation of each of them is possible without social isolation and that a punishment applying the requirements of Article 73 of the Criminal Code of Russia may be imposed on each accused person.

Taking into account the aggravating circumstance, the court concludes that there are no grounds for changing the crime category to a less serious one in accordance with part 6 of Article 15 of the Criminal Code of Russia with regard to N. V. Chernitsov and V. N. Ivanov.

When imposing a sentence on the accused persons, the court takes into account the requirements of Articles 6, 43, 60, 61, and 63 of the Criminal Code of Russia.

No stated claims on the case were asserted.

During the preliminary investigation, N. V. Chernitsov was defended by defense attorneys I. A. Shuvalova and D. V. Plakhova, while V. N. Ivanov was defended by defense attorney M. N. Kungurtseva, and the court costs amounted to 7,488 Russian roubles and 3,816 Russian rubles, respectively. Taking into account the financial situation of the accused persons, information on a personality of each of them, and the fact that they are able-bodied persons and in the court session agreed to pay the court costs, there are no grounds for exemption of N. V. Chernitsov and V. N. Ivanov from paying the same, for which reason, in accordance with Article 132 of the Criminal Procedure Code of Russia, the said amounts shall be charged from the accused persons.

The issue of the fate of physical evidence shall be resolved in accordance with the requirements of Article 81 of the Criminal Procedure Code of Russia.

Based on the foregoing and being guided by Articles 307–309 of the Criminal Procedure Code of Russia, the court

SENTENCED:

To find N. V. CHERNITSOV guilty of the crime provided for by part 3 of Article 183 of the Criminal Code of Russia and, based on the sanction of this Article, sentence him to imprisonment for one (1) year six (6) months.

Original Text Available at https://dzerzhinsky--nsk.sudrf.ru/modules.php?name=sud_delo&srv_num=1&name_op=doc&number=109770042&delo_id=1540006&new=0&text_number=1

In accordance with Article 73 of the Criminal Code of Russia, the sentence imposed on N. V. Chernitsov shall be considered as conditional with a test period of one (1) year six (6) months.

To impose on convict N. V. Chernitsov the following duties:

-To appear at a designated state authority monitoring the behavior of the probationer at the place of his residence for registration once a month;

-Not to change the place of residence without a notice to the said authority.

To find V. N. IVANOV guilty of the crime provided for by part 3 of Article 183 of the Criminal Code of Russia and, based on the sanction of this Article, sentence him to imprisonment for one (1) year three (3) months.

In accordance with Article 73 of the Criminal Code of Russia, the sentence imposed on V. N. Ivanov shall be considered as conditional with a test period of one (1) year three (3) months.

To impose on convict V. N. Ivanov the following duties:

-To appear at a designated state authority monitoring the behavior of the probationer at the place of his residence for registration once a month;

-Not to change the place of residence without a notice to the said authority.

To discontinue the preventive measure being recognizance not to leave and to be of good behavior with regard to N. V. Chernitsov and V. N. Ivanov upon entry of the sentence into legal force.

To charge for the federal budget the court costs associated with involvement of defense attorneys in the preliminary investigation: from N. V. Chernitsov in the amount of seven thousand four hundred eighty-eight (7,488) Russian rubles, from V. N. Ivanov in the amount of three thousand eight hundred sixteen (3,816) Russian rubles.

Upon entry of the sentence into legal force, the following physical evidence on the case:

-CD-R containing the information from e-mail ... @ .... ru on sending files on DD.MM.YYYY and inability to deliver them (volume 1, case file sheet 51); CD-R containing the information on sending the message dated DD.MM.YYYY from Full Name23 to Full Name1 and on sending the messages dated DD.MM.YYYY (volume 1, case file sheet 71); DVD-R disc containing the records from the surveillance cameras dated DD.MM.YYYY at the office of XXX PJSC (volume 1, case file sheet 123); CD-R containing the records of electronic copies of letters and file attachments (volume 1, case file sheet 130); information on the connections of subscriber number ... (volume 2, case file sheet 138); CD-R containing the details of connections by subscriber numbers ..., ..., ... (volume 2, case file sheet 146); information in the form of printed images from the telephone screen of N. V. Chernitsov showing the messages with subscriber number ... (volume 3, case file sheet 37); DVD-R containing the information on cash flow on account ... in the name of N. V. Chernitsov (volume 3, case file sheet 115) should be still stored in the files of the criminal case;

- Mobile telephone ... IMEI ... was returned to N. V. Chernitsov during the preliminary investigation (volume 3, case file sheet 40);

- external magnetic hard drive ... s/n ... containing the information copied from the laptop used by N. V. Chernitsov, stored in the files of the criminal case in the physical evidence storage room of the Dzerzhinskiy District Court of Novosibirsk (entry ... in book 55) should be returned to the Directorate of the Federal Security Service for Novosibirsk Region (...).

The sentence may be appealed to the Novosibirsk Regional Court within 10 days from its announcement date.

If an appeal or appellate submission is filed, the convicts may, within 10 days from delivery of its copy, petition for their involvement in consideration of the case by the court of appeal.

Presiding Judge:                                       V. A. Shchukina

Original Text Available at https://dzerzhinsky--nsk.sudrf.ru/modules.php?name=sud_delo&srv_num=1&name_op=doc&number=109770042&delo_id=1540006&new=0&text_number=1