**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

## DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION IN LIMINE TO EXCLUDE EVIDENCE

Pursuant to Federal Rules of Evidence ("FRE") 401, 402, 403, and 404, Defendant Concord Management and Consulting LLC ("Concord"), by and through undersigned counsel, brings this motion *in limine* to preclude the government from offering certain evidence at trial.

In particular, Concord requests that the Court issue an order precluding the government at trial from:

(1) offering any evidence or argument that the Russian government sponsored or was in any way involved in the conspiracy alleged in the Superseding Indictment ("Indictment") or that Concord or any of its alleged co-conspirators are connected to the Russian government;

(2) offering any evidence or argument referring to co-defendant Yevgeniy Prigozhin as "Putin's Chef," "Putin's Cook," or an "oligarch";

(3) offering any evidence or argument regarding any sanctions imposed on Concord or any of the other Defendants[1] in the case by Department of the Treasury, Office of Foreign Assets Control ("OFAC") or any other agency;

---

[1] For purposes of this motion, any reference to "Defendants" includes all Defendants named in the Superseding Indictment.

(4) offering any evidence or argument of Defendants' alleged involvement in election interference in other countries;

(5) offering any evidence or argument of Concord and/or other Defendants' lawful conduct;

(6) offering any evidence or argument that Concord and/or other Defendants violated the restrictions on foreign national expenditures; and

(7) offering any evidence or argument regarding any conduct of Concord or its alleged co-conspirators beyond the January 2018 end date of the charged conspiracy.[2]

## LEGAL STANDARD

Motions *in limine* are designed to narrow the evidentiary issues at trial. *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010).  Such motions are an important mechanism of insulating the jury from inadmissible evidence and of adhering to the goal of conducting proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination." *United States v. Bikundi*, No. 14-CR-030 (BAH), 2015 WL 5915481, at *3 (D.D.C. Oct. 7, 2015) (*citing* Fed. R. Evid. 102 and *Banks v. Vilsack*, 958 F. Supp. 2d 78, 82 (D.D.C. 2013)).  Rulings on motions *in limine* in advance of the trial may generally be the better practice, for it permits counsel to make the necessary strategic determinations.  *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980); *Burns v. Levy*, Civ. No. 13-898, 2019 WL 6465142, at *3 (D.D.C. 2019).

Irrelevant evidence is not admissible.  FRE 402.  Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would without the evidence; and [] the fact is of consequence in determining the action."  FRE 401.  Evidence is therefore relevant only if it

---

[2] Undersigned counsel conferred with government counsel and was advised that the government has no intention to present evidence as to items (1) and (3).

logically relates to matters that are at issue in the case.  *E.g.*, *United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016); *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). The burden is on the introducing party to establish relevancy, as well as admissibility.  *United States v. Mosquera–Murillo*, 153 F.Supp.3d 130, 175 (D.D.C., 2015) (*citing Sprint/United Mgmt. Co.*, 552 U.S. at 387).   The Court has broad discretion to evaluate the relevance of proffered evidence.  *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1168 (2017) ("District courts decide . . . whether evidence is relevant at trial.").

Relevance, however, is not the only test of admissibility of evidence at trial.  Rule 403 of the Federal Rules of Evidence directs the court to exclude otherwise admissible evidence where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.   "Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403."  *Sprint/United Mgmt. Co.*, 552 U.S. 379 at 384 (alteration in original) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).   "This is particularly true with respect to Rule 403."  *Id.*   Under Rule 403, the court must "engage in on-the-spot balancing of probative value and prejudice and . . . exclude even factually relevant evidence when it fails the balancing test."  *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Jennings v. Thompson*, 792 F. Supp. 2d 1, 4 (D.D.C. 2011) (relevant evidence should be excluded when there is danger of unfair prejudice at trial); *Burns*, 2019 WL 6465142, at *4 (quoting *Sprint/United Mgmt. Co.*, 551 U.S. at 384) (Rule 403 "requires an 'on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant'").   This balancing test is "fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's

circumstances and theory of the case." *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) (*quoting Sprint/United Mgmt. Co.*, 552 U.S. at 387–88). "[U]nfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes).

Federal Rule of Evidence 404(b) bars the admission of evidence of a "crime, wrong, or other act" offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In other words, such evidence cannot be admitted "when offered for the purpose of proving that a defendant acted in conformity with his character . . . ." *United States v. Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015) (citing *U.S. v. Lawson*, 410 F.3d 735, 741 (D.C. Cir. 2005)); *see also United States v. Moore*, 709 F.3d 287, 296 (4th Cir. 2013) (evidence that "serve[s] only to establish [defendant]'s criminal disposition [is] inadmissible").

While Rule 404(b) provides for limited circumstances under which propensity evidence may be admissible, Fed. R. Evid. 404(b)(2) ("evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"), even then, the probative value of such evidence must be weighed against the potential for prejudice under Rule 403. As the D.C. Circuit has instructed, "[c]ompliance with Rule 404(b) does not itself assure admission of the other crimes evidence. If the defendant moves under Rule 403, the court may exclude the evidence on the basis that it is unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000); *see also Bikundi*, 2015 WL 5915481, at *5. "Even if it is concededly relevant, unduly prejudicial evidence may be excluded to prevent jurors from impermissibly relying on biases, dislikes, or the emotional impact of the evidence, for example by

drawing on assumptions about a defendant's bad character, rather than proof of the criminal conduct charged." *Straker*, 800 F.3d at 589.  "This two-step analysis—certification of a 'proper' and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403—is firmly rooted in the law of this circuit." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Sitzmann*, 856 F. Supp. 2d 55, 61–62 (D.D.C. 2012) (applying the two-step analysis described in *Miller*).

## ARGUMENT

I.   **The Government Should Be Precluded From Offering Evidence or Argument That The Russian Government Sponsored The Conspiracy Alleged In The Indictment Or That Concord Or Any Of Its Alleged Co-Conspirators Is Connected To The Russian Government**

As noted elsewhere in the record, the government, including the Department of Justice, in violation of this Court's Local Rules, improperly linked the Russian government to the conspiracy alleged in this case.  *See, e.g.*, Concord's Motion to Show Cause, ECF 129, and related briefing. But the Court has correctly recognized, the Indictment "does not link the defendants to the Russian government . . . alleg[ing] only private conduct by private actors." July 1, 2019 Mem. Op. & Order ("July 1 Opinion") at 6, ECF 148.  Because the Indictment does not allege any involvement of the Russian government in the alleged conspiracy and since the prosecution has already acknowledged on the record that it does not intend to introduce evidence or argue to the jury that the Russian government was behind the charged conspiracy,[3] Concord seeks an order from the Court

---

[3] *See* Oct. 25, 2019 Hr'g Tr. 7:24-8:3 (prosecutor acknowledging that the government does not intend to "introduce evidence or argue to the jury that the Russian government was behind the conspiracy that is charged in the case").

It should also be noted that the Court has explicitly ordered the government to identify any individual or entity it intends to establish at trial was the "foreign principal" on whose behalf any alleged conspirator was acting as a "foreign agent" under FARA.  Sept. 19, 2019 Hr'g Tr. 49:24-50:3.  The government has not identified the Russian government.  *See* Sup. Ind., ECF 247; Gov't Bill of Particulars, ECF 146; Gov't Oct. 4, 2019 Letter, ECF 210-33.  *See also* Oct. 25, 2019 Hr'g Tr. 4:25-5:2 (prosecutor confirming that these documents identify any individual or entity the

precluding the government from introducing any evidence or argument regarding a connection between the Russian government and the alleged conspiracy.

And even if evidence showing that the Russian government was behind the alleged conspiracy or linking Concord to the Russian government had any probative value—it does not—it should nevertheless be excluded because it amounts to "guilt by association" evidence that is highly prejudicial to Concord.  *United States v. Hernandez*, 780 F.2d 113, 118 (D.C. Cir. 1986) (holding that it was abuse of discretion for the trial court to admit evidence that "would naturally lead a jury to assume that [defendant] had the motive of his associates: a slightly refined version of guilt by association"); *United States v. Aranda-Diaz*, 31 F. Supp. 3d 1285, 1298 (D.N.M. 2014) (excluding evidence of defendant's gang membership as prejudicial because "it has the potential to elicit an unfavorable reaction from the jury and cause the jury to condemn him for his gang membership, rather than decide the case on the evidence that the United States presents against him at trial on this specific drug transaction"); *United States v. Kane*, No. 2:13-CR-250-JAD-VCF, 2015 WL 3823023, at *2 (D. Nev. June 19, 2015) (excluding testimony of expert who intended to testify on "motorcycle gangs and their propensity to commit acts of violence on behalf of the club" because of "the unfairly prejudicial risk of painting a defendant guilty by mere association").

The risk of prejudice is particularly prevalent here where the government, in briefing before this Court, has referred to Russia as a "foreign adversary," ECF 141-2 at 4, and has made numerous unsupported public statements insinuating that the alleged conspiracy was sponsored by the Russian government, most notably in the Special Counsel's "Report On The Investigation Into Russian Interference In The 2016 Presidential Election" (the "Mueller Report")—a redacted version of which was made available to the public in April 2019—and Attorney General William

---

government intends to establish at trial was the foreign principal on whose behalf the alleged foreign agents acted).

Barr's ("AG Barr") public statements regarding this case after the release of the Mueller Report. The Mueller Report contains numerous statements declaring that the Russian government did indeed commit acts of election interference in relation to the 2016 Presidential Election.  *See* Mueller Report at 1 ("The Russian government interfered in the 2016 presidential election in sweeping and systematic fashion."); Mueller Report at 35 ("the investigation established that Russia interfered in the 2016 presidential election through the 'active measures' social media campaign carried out by the IRA, an organization funded by Prigozhin and companies that he controlled").  AG Barr's remarks on the Muller Report echo these sentiments.  *See* U.S. Dep't of Justice, Att'y Gen. William P. Barr Delivers Remarks on the Release of the Report on the Investigation into Russian Interference in the 2016 Presidential Election (April 18, 2019), available at        https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-remarks-releasereport-_investigation-russian ("As the Special Counsel's report makes clear, the Russian government sought to interfere in our election . . . ."; "The Special Counsel's report outlines two main efforts by the Russian government to influence the 2016 election . . . ."; "[T]he Special Counsel confirmed that the Russian government's sponsored efforts to illegally interfere with the 2016 presidential election . . . .").  Making matters even worse, both the Mueller Report and AG Barr's remarks on the Mueller Report were widely reported by the media.  *See* ECF 129 at 4-7 (collecting articles).

   To be clear, this is a problem of the government's own making.  As the Court previously found, by making these extrajudicial statements the government violated Local Rule 57.7, which prohibits prosecutors from publicly disseminating any "information or opinion . . . if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  Local Crim. R. 57.7(b)(1).  In so finding, the Court determined that "it is significant and prejudicial that the government itself drew a link between [the

Defendants] and the Russian government." July 1 Opinion at 8. Recognizing the undue prejudice

that may result from these types of statements and insinuation, on May 29, 2019, the Court issued

an order prohibiting the government "from making or authorizing any public statements that links

the alleged conspiracy in the indictment to the Russian government or its agencies." ECF 137. As

the Court noted, despite the government's extensive and prejudicial statements to the public, the

Indictment itself does not link the Defendants to the Russian government. July 1 Opinion at 6-8

(noting that the "Attorney General 'confirmed' what the indictment does not allege—that

Concord's and its co-defendants' activities were 'sponsored' by the 'Russian government'"). To

allow the government to introduce evidence or argue at trial that the Russian government was

behind the alleged conspiracy or linking the Russian government to Concord would only

exacerbate the prejudice already inflicted on Concord by the government's extrajudicial

statements.[4]

Given the government's public proclamations declaring the Russian government guilty of

election interference, combined with the public's general knowledge of the Special Counsel's

investigation and the Mueller Report, evidence or argument that suggests the Russian government

sponsored the alleged conspiracy or that improperly and implicitly links Concord to the Russian

government has the potential to inflame the jury's passions and lead it to convict on improper bases

such as patriotism and national pride. The introduction of evidence or argument linking Concord

to the Russian government—a nonparty to this action that has been declared "guilty" of election

interference in the eyes of the public—unnecessarily and prejudicially injects "an invidious

criminal element into the case" and may lead the jury to convict Concord "on a theory of guilt by

---

[4] Prejudicial statements to this effect are also found in the Indictment. To that end, Concord has moved to strike the allegation in the Indictment that Concord and Concord catering "are related Russian entities with various Russian government contracts." ECF 208 at 8. The Court has not yet ruled on this motion.

association." *United States v. St. Michael's Credit Union*, 880 F.2d 579, 602 (1st Cir. 1989). The risk of unfair prejudice is of particular concern here because "election interference" is neither a crime nor defined by statute. A clear distinction must therefore be drawn between undefined and nebulous concept of "election interference"—not itself an unlawful act—and what is actually being prosecuted here: conspiring to defraud the United States by impairing, obstructing, or defeating the lawful functions of the Federal Election Commission ("FEC"), Department of Justice ("DOJ"), and Department of State ("DOS").[5] Introducing evidence that suggests a link between Concord and the Russian government, which the U.S. government has announced engaged in election interference, blurs that line to a prejudicial degree. As a result, if the prosecution is permitted to tie Concord or its co-Defendants to the Russian government, the jury may attempt to punish Concord for "election interference" based on that prejudicial association rather than the evidence presented at trial relating to the elements of the § 371 conspiracy charge set forth in the Indictment.

For these reasons, the prosecution should be precluded from making any suggestion that the Russian government in any way directed or was involved in the conduct alleged in the Indictment or that Concord or any of its alleged co-conspirators are associated with the Russian government.

---

[5] Evidence that suggests a link between Concord and the Russian government also has the potential to confuse the jury. Whether the Russian government was directing the conduct charged in the Indictment is completely irrelevant to the elements of the charge, which alleges that Defendants— not the Russian government—conspired to impair the lawful functions of the FEC, DOJ, and DOS. Introducing evidence that suggests that Russia was behind that conduct will only serve to muddy the waters in an already convoluted prosecution that relies on a highly technical and novel application of 18 U.S.C. § 371.

**II.      The Government Should Be Precluded From Offering Evidence or Argument Referring To Defendant Yevgeniy Prigozhin As "Putin's Chef," "Putin's Cook," or an "Oligarch" During Trial**

The moniker "Putin's Chef" or "Putin's Cook"[6] was first coined by the Russian media (and later adopted by the Western media) "because of [Mr. Prighozin's] restaurants and catering businesses that once hosted the Kremlin leader's dinners with foreign dignitaries," and as a result many media reports have referred to Mr. Prigozhin as an oligarch.[7]   Concord anticipates that the government will attempt to introduce evidence of Mr. Prigozhin's media-created monikers, or refer to Mr. Prigozhin by these monikers, at trial.  Reference to these monikers and evidence of the same should be excluded at trial because it is irrelevant, and improperly and implicitly links Concord to Vladmir Putin and the Russian government, which would be unduly prejudicial to Concord for the reasons set forth above.

Evidence of a nickname or alias is relevant only insofar as it is "necessary to identify the defendant in connection with the acts charged in the indictment."  *United States v. Brodie*, 326 F. Supp. 2d 83, 90 (D.D.C. 2004) (citing *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976)). "In order to make an alias relevant and its admission permissible, there must be proof of the alias and the alias must hold some relationship to the acts charged . . . ."  *United States v. Brown*, 5 F.

---

[6] The Russian word "chef" or "шеф" literally translates to "boss" or "chief."  Accordingly, Russian persons are unlikely to refer to Mr. Prighozin as "Putin's Chef" and are more likely to use the phrase "Putin's Cook."

[7]  *Thousands of Russian private contractors fighting in Syria*, Associated Press (Dec. 12, 2017), https://apnews.com/7f9e63cb14a54dfa9148b6430d89e873  (noting that Mr. Prigozhin was "dubbed 'Putin's chef' by Russian media because of his restaurants and catering businesses that once hosted the Kremlin leader's dinners with foreign dignitaries"); *see also, e.g.,* Adrian Chen, *The Agency,* The New York Times Magazine (June 2, 2015), https://www.nytimes.com/2015/06/07/magazine/the-agency.html (referring to Mr. Prigozin as "an oligarch restauranteur called 'the Kremlin's chef' in the independent press for his lucrative government contracts and his close relationship with Putin"); *Yevgeny Prigozhin, Russian Oligarch Indicted by U.S., Is Known as 'Putin's Cook'*, New York Times (Feb. 16, 2018), https://www.nytimes.com/2018/02/16/world/europe/prigozhin-russia-indictment-mueller.html.

Supp. 3d 786, 788 (E.D. Va. 2014).  Even if evidence of a nickname is relevant, "a trial court should consider seriously whether the probative value is substantially outweighed by any danger of unfair prejudice . . . and whether introduction of the nickname is truly needed to identify the defendant, connect him with the crime, or prove some other matter of significance."  *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir. 2009).

The identification of the Defendants is not a concern here, making it clear that Mr. Prigozhin's "nicknames" are irrelevant and therefore inadmissible at trial.  These monikers are the creation of and solely used by the media, and Mr. Prigozhin is the only Defendant named in the Indictment with the surname Prigozhin.  And to the extent that there are any other individuals named Prigozhin that are relevant to this case (Concord is not aware of any), the government could easily distinguish them by using Mr. Prigozhin's first name, Yevgeniy.  Accordingly, the government does not need to refer to Mr. Prigozhin as "Putin's Chef," "Putin's Cook," or an "oligarch" to fully identify him or distinguish him from the other alleged participants in the conspiracy.  Furthermore, the use of these nicknames is completely avoidable because they appear only in media reports, which are, in any case, inadmissible.

Although the complete irrelevance of Mr. Prigozhin's "nicknames" should end the inquiry into their admissibility, references to Mr. Prigozhin's media-created monikers should also be excluded because their admission would be unfairly prejudicial.  Were the government allowed to refer to Mr. Prigozhin as "Putin's Chef" or "Putin's Cook" or an "oligarch" at trial, the jury would undoubtedly draw the inference that Mr. Prigozhin (and by extension, Defendant Concord) acted on behalf of, or is somehow associated with, Vladmir Putin or the Russian government.  As discussed above, evidence that impermissibly and implicitly suggests a link between Concord and the Russian government amounts to nothing more than "guilt by association" evidence that is highly prejudicial to Concord.

For these reasons, the government should be precluded from referring to Mr. Prigozhin as "Putin's Chef," "Putin's Cook," or an "oligarch" at trial or introducing any evidence of the same.

## III.   The Government Should Be Precluded From Offering Evidence Or Argument Of Any Sanctions Imposed On Defendants During Trial

As Concord has previously raised with the Court, in briefing throughout this case the government has raised the issue of various sanctions imposed by the United States Treasury Department's Office of Foreign Assets Control ("OFAC") on Concord, Mr. Prigozhin, and their co-Defendants. *See, e.g.*, Concord's Motion to Compel Discovery at 2-3, ECF 229 (collecting the government's references to the sanctions throughout the litigation); Concord's Reply in Supp. of Mot. to Compel Discovery at 9, ECF 255 (same).   On December 20, 2016 and June 20, 2017, OFAC sanctioned Mr. Prigozhin and Concord, respectively, pursuant to Executive Order 13661, related to Russia's alleged activity in the Ukraine ("the Ukraine Sanctions"); on March 15, 2018, OFAC sanctioned Mr. Prigozhin and Concord, as well as the other Defendants, pursuant to Executive Order 13964 based on the allegations contained in the Indictment ("the Cyber-related Sanctions").  *Id*. at 1-2.

In resisting Concord's motion to compel discovery on the issue of both the Ukraine Sanctions and the Cyber-related Sanctions, the government responded very clearly, asserting that "[t]he sanctions are entirely irrelevant to the underlying charge."  *See* Gov't Opp. to Def.'s Mot. to Compel Discovery, ECF 253, at 11 (referring to both the Ukraine Sanctions and the Cyber-related Sanctions).  The Court agreed, noting that the "[I]ndictment itself does not reference OFAC or any of the sanctions imposed on the defendants" and that the government's repeated reference to the sanctions "concerned collateral matters, rather than the actual allegations contained in the indictment or the merits of the government's case."[8]  November 27, 2019 Minute Order.  *See also*

---

[8] Moreover, the government cannot introduce documents it refused to disclose in discovery.  Under Rule 16 of Criminal Procedure, Concord is entitled to disclosure of information which is (1)

Dec. 12, 2019 Hr'g Tr. 44:16-18 (Court noting that the "materials Concord sought from [OFAC] were not material to preparing its defense").  As such, Concord seeks an order prohibiting the government from introducing evidence or argument referring to these sanctions at trial.

Although the irrelevance of evidence relating to economic sanctions should end the inquiry into its admissibility, this evidence should also be excluded because the only conceivable basis for introducing such evidence would be to show Concord's tendency to engage in other bad acts—a basis that is expressly prohibited under Rule 404.  As noted above, Rule 404(b) expressly precludes the admission of evidence of a "crime, wrong, or other act" offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  And even if this evidence was introduced for a permissible purpose under Rule 404, the Court should nevertheless exclude it under Rule 403 because of the danger of unfair prejudice.   Evidence of the sanctions—particularly the Cyber-related Sanctions, which were specifically based on the allegations in the Indictment, *see* ECF 255 at 7-8—may lead the jury to conclude that Concord and co-Defendants are bad actors who have been sanctioned as a result of proven misconduct, when the reality is the conduct for which they were sanctioned was not proven at all.

---

"within the government's possession, custody, or control" and (2) "material to preparing the defense."  *See* Fed. R. Crim. P. 16(a)(1)(E)(i).   "The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case."  *United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006) (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).  The government has refused to disclose any information relating to the OFAC sanctions and the Court determined it to not be material to the present case.  November 27, 2019 Minute Order.  The government should not be allowed to use at trial previously undisclosed documents and any evidence not provided to Concord during the discovery period.  *United States v. Robinson*, 258 F.Supp.3d 85, 86 (D.D.C. 2017).  The grant of this request is fair and in the interest of justice.

Rather, the Executive Branch unilaterally imposed sanctions on Defendants without any proof of any illegal conduct and without providing Defendants an opportunity to defend themselves.  What is more, to allow the government to refer to the OFAC sanctions at trial would necessarily amount to revisiting some of the issues which the Court already addressed, and would unfairly prejudice the jury against Concord.  *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. 216CV08962CASKSX, 2019 WL 266970, at *6 (C.D. Cal. Jan. 15, 2019) (in case involving judicial sanctions relating to spoliation, finding that where court already addressed sanctions and awarded relief, providing additional remedy by allowing references to sanctions at trial would be unfairly prejudicial).  To permit the government to introduce any evidence or argument regarding the Cyber-related Sanctions would create extreme prejudice by improperly suggesting that the sanctions were imposed because Concord is guilty of the conduct with which it has been charged.

For these reasons, the government should be precluded from referring to any sanctions imposed on Defendants during trial and introducing any evidence of the same.

## IV.     The Government Should Be Precluded From Offering Evidence Or Argument Of Defendants' Alleged Involvement In Election Interference In Other Countries

Since the initiation of this case, numerous media outlets have reported on their speculations regarding some of the Defendants' alleged involvement in "election interference" in other countries.[9]  Such speculation has no tendency to prove any fact that is of consequence to the determination of this action, and should therefore be precluded under Rules 401 and 402.

 The speculation itself—often spruced up with sensational embellishments and conjured guesswork—provides no facts which were tested and proven in any court of law.  For this reason, reference to Defendants' alleged involvement in election interference in other countries should

---

[9] *See, e.g.*, Michael Schwirtz, et al., *How Russia Meddles Abroad for Profit: Cash, Trolls and Cult Leader, The New York Times* (Nov. 11, 2019) available at https://www.nytimes.com/2019/11/11/world/africa/russia-madagascar-election.html.

also be excluded under Rules 403 and 404.   The only fathomable basis for introduction of this type of evidence would be government's impermissible attempt to show that Defendants have a propensity to interfere in foreign elections by holding political rallies and by engaging in disinformation campaigns on social media.   Even if this propensity evidence were admissible for some other purposes—it is not—any mention or reference to these allegations should be excluded because they would be highly unfair and prejudicial to Concord.   Given that "election interference" is not a crime or charged in the Indictment, evidence of alleged "election interference" outside the United States would only serve to confuse the jury by distracting from the crime that is charged here—conspiring to defraud the United States by impairing, obstructing, or defeating the lawful government functions of the DOJ, FEC, and DOS for the purpose of interfering in the 2016 presidential election.   Such evidence also has the potential to inflame the jury's passions and lead it to convict on an improper basis.

For these reasons, the government should be precluded from referring to Defendants' alleged involvement in election interference in other countries and from introducing any evidence of the same.

## V.   The Government Should Be Precluded From Offering Prejudicial Evidence Or Argument Of Lawful Conduct At Trial

The government's exhibit list makes it clear that it will attempt to introduce evidence of lawful activity to support the conspiracy charged.   Notably, the Indictment contains several references to activity that amounts to lawful conduct, even when engaged in by a foreign individual or entity.   *See, e.g.*, Sup. Ind. ¶¶ 34 (discussing thematic group pages on social media unrelated to specific candidates, which amounts to lawful issue advocacy), 50 (outlining several advertisements that do not constitute express advocacy).   To be clear, to the extent that Defendants—who are foreign nationals located outside of the United States—engaged in such conduct, it would not be unlawful under either FECA or FARA.   That is because FECA "does not bar foreign nationals

from issue advocacy," *Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281, 284 (D.D.C. 2011),

and FARA only applies to conduct occurring within the United States.   22 U.S.C. § 611(c)

(defining "agent of a foreign principal" as person who engages or acts "within the United States

. . ." in certain activities).   Accordingly, evidence that Defendants, while outside the United States,

posted content related to social issues or purchased advertisements that constitute permissible issue

advocacy are entirely irrelevant to the charges brought against Concord.

Because this evidence is irrelevant to the charge at hand, the only basis the government

might have to introduce such evidence is to show Concord's criminal disposition or its propensity

to—as the government puts it—"interfere with the U.S. political system, including the 2016 U.S.

presidential election."  Sup. Ind. ¶ 3.   In other words, the government may attempt to introduce

evidence of Defendants' issue-advocacy related activities—which are not unlawful—to

prejudicially suggest that Concord is likely to have been involved in prohibited express-advocacy

related activities.   However, this is precisely the type of evidence that Rule 404(b)(1) prohibits,

and while Rule 404 does permit such evidence to be admitted under limited circumstances, no such

circumstances are present here.   Defendants are not charged with actually violating FECA or

FARA, but are instead charged with conspiring to defraud the United States by impairing,

obstructing, or defeating the lawful functions of the FEC, DOJ, and DOS for the purpose of

interfering in the 2016 presidential election.   Thus, the connection between Defendants' lawful

activities and the crime that is actually charged is even more attenuated.   Defendants' various

lawful activities do not tend to show motive, opportunity, or intent in impairing the lawful

government function of the FEC, DOJ, or DOS.

Even if evidence of Defendants' lawful activities was somehow admissible under Rule 404,

such evidence should be excluded under Rule 403 because it has the potential to confuse the jury

and is highly prejudicial to Concord.   As discussed above, the government's convoluted and highly

technical conspiracy charge already has the potential to confuse the jury.  Apparently, the government will introduce evidence of potential FECA violations not to show that Concord violated FECA itself, but to show that Concord conspired to impair the lawful functions of the FEC in administering FECA.  But to inject evidence of lawful activity into that equation will further confuse the jury as to what lawful functions of the FEC were allegedly the target of the conspiracy and runs the risk of the jury convicting Concord on the basis of legal conduct.

More importantly, the introduction of such evidence would be inflammatory and highly prejudicial to Concord.  As shown in the Indictment, the government raises particularly contentious political issues, such as immigration, the Black Lives Matter movement, religion, politically-charged regions within the United States, and references to U.S. political parties about which the jurors will undoubtedly have strong opinions.  *See* Sup. Ind. ¶¶ 34, 36.   The introduction of such evidence will inflame the jury's passions and has the potential to bias certain jurors against Concord depending on how those jurors feel about these contentious issues.  The risk of prejudice is of particular concern here given the context and notoriety of this case.  Introduction of such evidence will support the narrative that—as the government puts it—Defendants sought "to sow discord in the U.S. political system" and lead the jury to improperly convict Concord on that basis. *Id*. ¶ 6.  In other words, evidence of statements regarding contentious social issues may persuade the jury to punish Concord for "election interference," even though statements regarding social issues are not unlawful and "election interference" is not a crime that has been—or can be— charged against Concord.  Such evidence could lead the jury to convict on an emotional basis, and should therefore be excluded at trial.  *See Ring*, 706 F.3d at 472 (quoting Fed. R. Evid. 403 advisory committee's notes) (describing unfair prejudice as "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

**VI.    The Government Should Be Precluded From Offering Evidence Or Argument that Concord And Other Defendants Violated The FEC's Foreign National Expenditure Restrictions**

The Superseding Indictment now alleges that Concord and other Defendants conspired to interfere with the FEC's functions in two ways: (1) by failing to file reports for certain advertising expenditures, and (2) by making prohibited advertising expenditures.  As set forth in previous filings, the sum and substance of these prohibited expenditures produced in discovery is at most the equivalent of $2,930.  *See* Concord's Mot. for Supp. Bill of Particulars at 11, ECF 181.

The Superseding Indictment does not charge a FECA violation; and if it had charged a violation of the foreign national expenditure restrictions the government would have to prove beyond a reasonable doubt that Concord or other defendants were specifically aware that a small number of advertisements allegedly purchased on Facebook violated that restriction.  *See Bluman v. F.E.C.*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011) (noting that the restriction on foreign expenditures "require[s] proof of the defendant's knowledge of the law").  It is undisputed that the government did not bring such a charge because it could not prove it.[10]  So if this evidence of the statutory restrictions on certain expenditures by foreign nationals is put before the jury, it would likely result in jury confusion which could cause the jury to convict Concord on that provision alone even in the absence of proof that Concord was aware of those restrictions.

**VII.   The Government Should Be Precluded From Offering Evidence Or Argument Regarding Any Conduct Of Concord Or Its Alleged Co-Conspirators Beyond The January 2018 End Date Of The Alleged Conspiracy**

The Superseding Indictment alleges that the conspiracy existed "in or around 2014 to in or around January 2018."  *See* Sup. Ind. ¶ 2.[11]  As such, the government should be precluded from

---

[10] Instead the government has consistently argued that it was not unlawful for it to circumvent the higher *mens rea* requirement for a FECA violation by charging a § 371 defraud prong conspiracy.

[11] Consistent with this allegation, in the briefing regarding the parties' proposed jury instructions, the government agreed that January 2018 "is the appropriate end date to include in the jury

offering any evidence or argument that Concord or its alleged co-conspirators, continued to engage in similar conduct beyond January 2018.

As noted in previous filings, the government has made public statements suggesting that the Defendants are continuing to engage in the conduct alleged in this case, and unsealed and publicly announced a criminal complaint filed in another district alleging as much.  *See, e.g.,* Concord's Mot. to Dismiss Count One of the Sup. Ind. at 12-14, ECF 256 (collecting recent instances of such statements by government officials); *United States v. Khusyaynova*, 1:18-mj-464 (E.D. Va.); Press Release, Department of Justice, Russian National Charged with Interfering in U.S. Political System (Oct. 19, 2018), https://www.justice.gov/opa/pr/russian-national-charged-interfering-us-political-system.  Any evidence of conduct that allegedly took place beyond the end date of the alleged conspiracy is irrelevant to the charges and should be excluded.  *See United States v. Lyles*, 593 F.2d 182, 195 (2d. Cir. 1979) (finding that trial court abused its discretion in admitting evidence of uncharged conduct that occurred after the charged conspiracy). Furthermore, given that the upcoming trial will take place during an election year, any such evidence would be highly prejudicial to Concord because it would likely elicit an emotional response from the jury who will likely have the 2020 U.S. Presidential election at the forefront of their minds.

The upcoming trial should focus solely on whether the government can prove beyond a reasonable doubt that Concord and other Defendants participated in a conspiracy to defraud the United States from "in or around 2014 to in or about January 2018," as charged by the grand jury in the Superseding Indictment.  Any evidence or argument about conduct beyond the conspiracy end date would be highly prejudicial evidence that federal courts routinely preclude.  *See Straker*,

---

instructions."  Gov't Disc. of Diff. Between the Parties' Proposed Jury Instructions at 19 n.6, ECF 292.

800 F.3d at 589. ("[U]nduly prejudicial evidence may be excluded to prevent jurors from impermissibly relying on biases, dislikes, or the emotional impact of the evidence, for example by drawing on assumptions about a defendant's bad character, rather than proof the criminal conduct charged.").  For these reasons, the Court should issue an order requiring the government to limit its evidence and argument to the conduct of Concord and the other Defendants during the time period charged in the Superseding Indictment.

## CONCLUSION

Based on the foregoing, the Court should exercise its discretion and grant Concord's motion *in limine* in its entirety.

Dated: January 10, 2020

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By:   /s/ *Eric A. Dubelier*
      Eric A. Dubelier (D.C. Bar No. 419412)
      Katherine J. Seikaly (D.C. Bar No. 498641)
      REED SMITH LLP
      1301 K Street, N.W.
      Suite 1000 – East Tower
      Washington, D.C. 20005-3373
      202.414.9200 (phone)
      202.414.9299 (fax)
      edubelier@reedsmith.com
      kseikaly@reedsmith.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**PROPOSED ORDER**

Upon consideration of Defendant Concord Management and Consulting LLC's Motion in Limine to Exclude Evidence, and any opposition or reply thereto, it is hereby **ORDERED** that the motion is **GRANTED**.

The Government is precluded at trial from:

(1) offering any evidence or argument that the Russian government sponsored or was in any way involved in the conspiracy alleged in the Superseding Indictment or that Concord or any of its alleged co-conspirators are connected to the Russian government;

(2) offering any evidence or argument referring to co-defendant Yevgeniy Prigozhin as "Putin's Chef," "Putin's Cook," or an "oligarch";

(3) offering any evidence or argument regarding any sanctions imposed on Concord or any of the other Defendants in the case by Department of the Treasury, Office of Foreign Assets Control or any other agency;

(4) offering any evidence or argument of Defendants' alleged involvement in election interference in other countries;

(5) offering any evidence or argument of Concord and/or other Defendants' lawful conduct;

(6) offering any evidence or argument that Concord and/or other Defendants violated the restrictions on foreign national expenditures; and

(7)  offering any evidence or argument regarding any conduct of Concord or its alleged co-conspirators beyond the January 2018 end date of the alleged conspiracy.

**SO ORDERED.**

Dated: _____          _____
                                         Dabney L. Friedrich
                                         United States District Judge