## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

**DECLARATION OF PROFESSOR PAUL B. STEPHAN AS AN EXPERT WITNESS WITH RESPECT TO ISSUES OF RUSSIAN LAW RELEVANT TO DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S MOTION QUASH UNSERVED EARLY RETURN TRIAL SUBPOENA AND THE GOVERNMENT'S RENEWED MOTION FOR EARLY RETURN TRIAL SUBPOENA**

## I.    *Introduction*

1.    My name is Paul B. Stephan. The United States has asked me to provide an expert opinion on Russian law as it pertains to the motion ("Defendant's Motion) by Defendant Concord Management and Consulting LLC ("Defendant") to quash the early return subpoena ("subpoena") and the government's renewed motion for that subpoena.

2.    To summarize my conclusions in this report, it is my opinion that:

    a.    Russian law does not create significant legal jeopardy for Defendant were it to comply with the early return subpoena.

    b.    In particular, compliance with the subpoena would not put Defendant in violation of Articles 183, 272, or 275 of the Russian Criminal Code or Russian Federal Law No. 152-FZ of July 27, 2006, as amended ("Personal Data Law").

## II.   *Qualifications and Expertise*

3.   I am the John C. Jeffries, Jr., Distinguished Professor of Law at the University of Virginia. I also am a member of the bars of the Supreme Court of the United States, the United States Court of Appeals for the District of Columbia Circuit, the United States Tax Court, the District of Columbia, and the Commonwealth of Virginia. From 1993 through 1998 I served as a consultant to the U.S. Department of the Treasury with respect to its program to assist tax reform in the former Soviet Republics, with a particular focus on the Russian Federation. From August 2006 until December 2007, I served as Counselor on International Law in the Office of the Legal Adviser, U.S. Department of State, on leave from my university. From 2012 until 2018, I served as coordinating reporter for the American Law Institute's Restatement (Fourth) of the Foreign Relations Law of the United States. I obtained my B.A. and M.A. degrees from Yale University in 1973 and 1974, respectively, and my J.D. degree from the University of Virginia in 1977. The full details of my academic career, my experience as a consultant and adviser on matters of Russian law, and my research and publications are provided in my resume, attached to this report as Exhibit 1.

4.   From the start of my academic career I have concentrated on Soviet and Russian law, politics, and economics, in addition to tax law, international law, and the organization and regulation of international business transactions. I have taught a course related to Soviet or Russian law in virtually every one of the 41 years I have worked as a law professor. I read Russian and have substantial facility with Russian legal terminology; my scholarship has been published in Russian as well as English. The English version of most of the Russian legal sources that I attach to this Declaration (exhibits 2-3, 5-7, 9-11) are my own

translations; I also correct one mistake in the translated document identified as Exhibit 2 to Defendant's Motion and clarify the translation of the document identified as Exhibit 11 to Defendant's Motion.

5.  After the dissolution of the Soviet Union, I took part in the law reform process in the former republics of the Soviet Union, with the bulk of my activities involving the Russian Federation. In 1992-1993, legal specialists working on behalf of the Russian government solicited my advice concerning the framing of the Russian Federation's new Constitution, which was ratified at the end of 1993. During this period, I also advised members of the State and Law Administration of the Office of the President of the Russian Federation concerning organization of the judicial system and the conditions for promoting judicial independence. I played a central role in establishing the presence of the American Bar Association's Central and East European Law Initiative in Russia.

6.  From 1993 to 1998, I was employed by a number of government and international bodies in connection with law reform projects in this region, including the International Monetary Fund, the World Bank, the Organization for Economic Cooperation and Development, the U.S. Department of the Treasury, and the U.S. Federal Bureau of Investigation. I also organized or directed programs to train Russian lawyers and judges, which were funded by the U.S. Agency for International Development. The details of this work are provided in my resume.

7.  For the last twenty-plus years, I have appeared as an expert on Russian law in numerous cases in U.S. and foreign courts as well as various international arbitrations. These bodies have cited my opinions in multiple cases, not only in those where I participated as an expert. In all, seven U.S. federal courts, three state courts, four English courts, and one Canadian

court have published opinions citing my submitted expert opinions on Russian law as reliable authority.[1] A full list of my experience as an expert witness and of citations of my expert opinions by courts and arbitration tribunals appears in my resume.

## III.   *Basic Principles of Russian Law*

8.    All Russian law rests ultimately on the 1993 Constitution, as amended. Pursuant to that Constitution, only the Russian legislature (the Federal Assembly, a bicameral body comprising the State Duma and the Council of the Federation) has the authority to adopt legislation. In accordance with the civil law tradition, Russia legislation may take the form of Code, the purpose of which is to occupy a particular field of law in a comprehensive, coherent, and systematic manner. In the case of criminal law, the 1996 Criminal Code of the Russian Federation, as amended (Criminal Code), sets out the exclusive basis for criminal liability under the Russian legal system.

9.    Russian law, consistent with other legal systems that fall within the civil law family, for the most part does not regard judicial decisions in particular cases as a source of law. An exception exists for rulings of the Constitutional Court of the Russian Federation, whose decisions are binding on other courts not only as to outcome but as to reasoning.[2] In addition, the Plenum of the Supreme Court of the Russian Federation on occasion provides guiding explanations that address and resolve general interpretive issues regarding the application of Russian law.[3] These guiding explanations, which do not arise out of any

---

[1]   One of these matters involved a federal criminal prosecution, specifically addressing the scope of the "lawful under the written laws and regulations" defense to a prosecution under the Foreign Corrupt Practices Act. United States v. Kozeny, 582 F. Supp. 2d 535 (S.D.N.Y. 2008), 664 F. Supp. 2d 369 (S.D.N.Y. 2009). The court there accepted my characterization of Azeri criminal law, which was based on Russian law, but ruled that, so characterized, the defense provided by that law did not render a corrupt payment to a government official "lawful."

[2]   Resolution No. 19-P of the Constitutional Court of the Russian Federation of June 16, 1998, point 4, Exhibit 3 to this Declaration.

[3]   Federal Constitutional Law on the Judicial System Article 19(4), Exhibit 5 to this Declaration. Exhibit 5 to Defendant's Motion contains a different article from this legislation.

particular case but rather represent the Court's response to the general pattern of practice of the lower courts, are regarded as binding on the lower courts. As best I have been able to determine, neither the Constitutional Court nor the Supreme Court has issued any resolutions or guiding explanation that bear directly on the questions of Russian law presented by Defendant's Motion.[4] In the absence of such authority, actors in the Russian

---

Under Russian Law, a federal constitutional law must satisfy more stringent voting requirements than normal legislation and has the effect of amending those provisions of the Constitution not included in Chapters 1 (Fundamentals of the Constitutional System), 2 (Rights and Freedoms of the Person and Citizen), and 9 (Constitutional Amendments and Review of the Constitution). Russian Constitution Articles 108, 135, 136, Exhibit 2 to this Declaration.

[4]    The Constitutional Court did address questions with respect to Article 64 of the R.S.F.S.R. Criminal Code, the predecessor to Article 275 of the 1996 Criminal Code. Resolution 17-P of the Constitutional Court of the Russian Federation of December 20, 1995 "In the case of the constitutionality of a number of provisions of Article 64 of the Criminal Code of the Russian Federation in connection with the complaint of citizen V.A. Smirnov"), 37 Statutes and Decisions, No. 2, Mar.-Apr. 2001, Exhibit 4 to this motion. The principal issue in that case was the constitutionality of the provision, subsequently eliminated in the 1996 Code, that classified as treason a refusal to return from a foreign country to the U.S.S.R. The Court in passing observed that the criminalization as treason of rendering assistance to hostile actions of foreign states aimed against the security of the Russian Federation did comply with the Constitution. In a separate opinion, Judge Vitruk expressed reservations about the constitutionality of the "rendering assistance" language in then-Article 64:

And, finally, the complaint of V. A. Smirnov challenges the constitutionality of such a form of treason against the Motherland as rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation, in view of the lack of clarity of the given elements of the crime. One must agree that such a formulation does not exhibit the necessary level of social danger of rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation that would make it possible with a sufficient degree of objectivity, clarity, and explicitness to view such deeds as treason against the Motherland. However, this shortcoming (albeit a serious one!), as well as other shortcomings of the formulation of the elements of crimes, especially as concerns their subjective side (guilt, reasons, purposes), must be corrected by the legislator itself.

Id. at  45. In another separate opinion, Judge Kononov also criticized the definition of treasonable assistance in the former Article 64:

Thus, the element of point "a" of Article 64 of the Criminal Code of the RSFSR under consideration gives all grounds for its contradictory and arbitrary interpretation by the applier of the law, including the possibility of conviction for purely political reasons.

This contradicts generally accepted principles and norms of international law, which in accordance with part 4 of Article 15 of the Constitution of the Russian Federation constitute a component part of the legal system and the requirements made of a criminal law, which must clearly and explicitly define the elements of a crime (point 5.18 of the document of the Copenhagen meeting of the Conference on the Human Dimension of the Conference on Security and Cooperation in Europe) and the requirements of fair and impartial justice (the first part of Article 14 of the International Covenant on Civil and Political Rights of 1966).

Id. at 52. Although the 1996 Criminal Code addressed these concerns, the staff of the Duma cited these separate opinions as providing some of the motivation for the amendments to the "assisting" prong to Article 275 in 2012. See this Declaration at ¶ 16 n. 10.

legal system typically look to interpretations of statutes issued by the relevant government authorities as well as scholarly commentary as guides to the proper application of legislation.

10.   Both the Russian Constitution and the Criminal Code adopt the principle of legality, that is the requirement that a person can be subjected to criminal sanctions only on the basis of enacted and published legislation.[5] The Constitution and the Criminal Procedure Code also provide that all doubts about a person's guilt under the criminal law must be resolved in favor of the accused.[6] As a result, Russian authorities may not extend criminal liability beyond activity that is clearly proscribed by the Criminal Code.

11.   Russian law recognizes a field of administrative law that addresses delegation of regulatory authority to various branches of the executive branch. In Russia, the executive branch comprises the President and the Government, the latter of which is subordinate to the President and is governed by a Council of Ministers headed by a Prime Minister. The Federal Assembly has not adopted an administrative code, but in 2001 it enacted a Code of Administrative Offenses that covers non-criminal sanctions for violations of regulatory norms.[7]

12.   The Russian Constitution establishes a legal hierarchy within the Russian legal system. In particular, Article 15(4) of the Constitution states that the provisions of treaties of the Russian Federation have direct effect within the legal system and, in the event of any

---

[5]   Russian Constitution Article 49(1), Exhibit 2 to this Declaration; Russian Criminal Code Article 3, Exhibit 6 to this Declaration.
[6]   Russian Constitution Article 49(3), Exhibit 2 to this Declaration; Russian Criminal Procedure Code Article 14(3), Exhibit 7 to this Declaration.
[7]   Exhibit 18 to Defendant's Motion contains an excerpt from this Code.

contradiction between those provisions and Russian legislation, those of the treaty must prevail.[8]

13. The Russian legal system, like all human institutions, is not immune from political interference or private corruption. Instances where political authorities have perverted the legal system in support of what are considered to be matters of high national policy are not unknown, but they also are not common. Corruption of prosecutors and judges by private interests also occurs, but this phenomenon is not so pervasive, and judicial integrity so lacking, as to render the legal system as a whole irrelevant.

## IV. *Relevance of Russian Criminal Code to Compliance with the Early Return Subpoena*

14. None of the provisions of the Criminal Code cited in Defendant's Motion appears to be relevant to actions Defendant would have to undertake to comply with the early return subpoena. I discuss each in turn.

## A. Article 275

15. Defendant's Motion asserts that compliance with the subpoena would result in a violation of Article 275 of the Criminal Code. To assess this claim, one must look primarily at the statutory language. It describes two categories of offense, transmission of state secrets and the rendering of assistance to a foreign power in actions that threaten Russian national security. It is my understanding that Defendant does not claim that any of the information covered by the subpoena qualifies as state secrets, that is secret information belonging to

---

[8]     It provides:

> The universally recognized principles and norms of international law and the international treaties of the Russian Federation shall be a component part of its legal system. If an international treaty of the Russian Federation establishes rules other than those provided for by law, the rules of the international treaty shall be applied.

Exhibit 2 to this Declaration.

the Russian state. It is my further understanding that the subpoena covers only information with respect to private persons, which would not qualify as state secrets. Accordingly, the first portion of Article 275 dealing with transmittal of state secrets is irrelevant to Defendant's Motion

16.   Rather, the relevant portion of Article 275 is that addressing assistance to foreign powers. This part of the statute criminalizes "financial, material, technical, consulting or any other assistance rendered to a foreign state, . . . in activities aimed against the security of the Russian Federation." This language was introduced in 2012: The previous version of the statute applied to "any other assistance rendered to a foreign State, a foreign organization, or their representatives in hostile activities to the detriment of the external security of the Russian Federation, committed by a citizen of the Russian Federation."[9] The amendment gave greater definition to the term "assistance" and removed the modifier "hostile" from the term "activities" and the modifier "external" from the term "security."[10] The Duma rejected language in the original version of the proposed amendment that would have expanded the concept of actions against state security to include activities directed "against sovereignty, constitutional order, territorial and state integrity."[11]

---

[9]   Criminal Code of the Russian Federation No. 63-FZ of June 13, 1996, with amendments through March 1, 2012, Exhibit 9 to this Declaration.

[10]   Federal Law No. 190-FZ of November 12, 2012, "On introducing changes into the Criminal Code of the Russian Federation and in Article 151 of the Criminal Procedure Code of the Russian Federation, Exhibit 8 to this Declaration. The translation of Article 275 in Exhibit 2 to Defendant's Motion retains the modifier "hostile," which the 2012 amendment struck. The explanatory memorandum prepared by Duma staff accompanying the bill stated that the striking of "hostile" responded to uncertainty among prosecutors as to whether they had to establish that the provision of assistance was motivated by hostility to Russian security in cases where the foreign activity assisted was objectively hostile to Russian security. Explanatory Note to the draft federal law on amending to the Criminal Code of the Russian Federation and article 151 of the Criminal Procedure Code of the Russian Federation, Exhibit 10 to this Declaration. As amended, Article 275 still requires that the assisted foreign action be "aimed against the security of the Russian Federation." As a result, conduct to be treasonable would have to assist foreign activity that has a hostile purpose, whether or not the assisting person shared that motivation. I discuss the role of purpose in Russian criminal law below at ¶¶ 30-32.

[11]   Ekaterina Vinokurova, A Law of Particular Application, Which the Opposition Considers Repressive, @gazetaru, Oct. 23, 2012, https://www.gazeta.ru/politics/2012/10/23_a_4821625.shtml, Exhibit 11 to this Declaration.

17.   It is clear from this legislative history that the Russian legislature, while expanding somewhat the category of national security threats posed by foreign powers the provision of assistance to which by a Russian citizen would constitute treason, did not intend to treat as treasonable any assistance rendered to foreign activities to which the government of the Russian Federation might be opposed. Rather, the foreign activity in question has to pose a threat to the nation's security, not merely to what its government views as its range of interests.

18.   This definition of treason in Article 275 must be contrasted with its counterpart under Soviet law, namely Article 64 of the R.S.F.S.R. Criminal Code. That provision regarded as a serious criminal offense any conduct that could be viewed as against the interests of the Soviet system, including its economic and ideological basis. The broad scope of Soviet criminal law allowed the authorities to treat any opposition to Soviet policy as a grave offense. In the words of one member of the Constitutional Court of the Russian Federation, describing this provision (which had remained in force in the Russian Federation until 1996):

> Article 64 of the Criminal Code of the RSFSR, over the course of many years, with the rare exception of instances of genuine espionage, was a factual instrument of political repression and of the battle against dissent and political opponents, a method of brutal suppression of the generally accepted rights and freedoms of the person and the citizen, and [a method] of protection of the Soviet socialist state, the name of which, incidentally, is preserved both in the name of the Code and in the text of the article itself.

Separation Opinion of Judge Kononov in Resolution 17-P of the Constitutional Court of the Russian Federation of December 20, 1995, reprinted and translated in 37 Statutes and Decisions, No. 2 (Mar.- Apr. 2001) at 34, 47, Exhibit 4 to this Declaration.

19.     The present Criminal Code was drafted as a means of preventing the abuse of concepts

such as treason by distinguishing political embarrassment of political authorities from

conduct that threatened the essential security interests of the state. In the words of a

prominent Russian legal scholar and criminal law expert writing shortly after adoption of

the 1996 Code:

> The Criminal Code of the RSFSR, as well as of other Soviet republics,
> proceeded from the principle of protection of state interests first, public
> interests next, and only afterward the interests of the individual . . . . For the
> first time in the history of Russian criminal legislation, the following
> principles of criminal law are recognized: legality (article 3), equality of all
> citizens before the law (article 4), culpability (article 5), justice (article 6),
> and humanism (article 7).

Anatolyi V. Naumov, *The New Russian Criminal Code as a Reflection of Ongoing*

*Reforms*, 8 Criminal Law Forum 191 (1997), Exhibit 12 to this Declaration. The new Code,

in short, represented the culmination of a movement since the mid-1980s to shift the

priority of criminal law away from state protection and toward safeguarding individuals

from harm.

20.     In light of these policies as expressed in the Criminal Code, there are several reasons why

compliance with the subpoena would not put Defendant in any significant risk of

prosecution under Article 275. First, it is far from clear that complying with a lawful order

of a foreign court with jurisdiction over the person concerned would count as assistance.

Using the principle of legality as a means of limiting a criminal statute to its plain meaning,

one normally would not consider complying with legal obligations as a form of assistance,

any more than not destroying evidence is a form of assistance. Notably, as amended Article

275 refers to "financial, material, technical, consulting or any other assistance." As a

general rule of interpretation in Russian law, the concrete terms are understood as

modifying "any other" so as to limit the possible applications of those words. Hence indirect acts based on existing legal obligations would not be considered "other assistance" within the meaning of Article 275.

21. Second, even if complying with an investigation into criminal activity were considered a kind of assistance, it is my opinion that Russian law does not regard the prosecution of private persons not accused of acting at the direction of or on behalf of the Russian government as an activity aimed at the national security of the Russian Federation. Even after its amendment, Article 275 is limited to conduct  facilitating foreign actions "aimed against the security of the Russian Federation," not conduct opposed to a current policy of the country's political leadership. This provision gives "security" a limited definition, and does not confuse it with general policy interests of the Russian political leadership.

22. Defendant's Motion refers to six cases where Russian nationals were charged with treason for revealing information regarding Russian military or clandestine activity. Defendant's Motion pp. 17-19. As best one can tell from the facts given, all these cases involved the state-secrets prong of the treason definition, not the providing-assistance prong. As indicated above in ¶ 15 of this motion, I am aware of no argument under Russian law that would permit the classification of the information sought by the subpoena as a state secret.

23. Defendant might be arguing that Russian prosecutors are so unconstrained by law that they can prosecute someone for treason even when the objective facts do not satisfy the statutory definition of the crime. If so, I reject this assertion. While prosecutorial abuse can exist and first-instance courts may not always provide a sufficient check, the Russian court system as a whole strives to uphold the law. The possibility that compliance with foreign law might

irritate the political leadership does not mean that prosecution and conviction are a likely consequence.

24.     Defendant's Motion also suggests that compliance with the subpoena might fuel efforts in the United States to impose economic sanctions on Russian officials and businesses. Defendant's Motion pp. 19-20. But actions that might increase the exposure of the Russian Federation or its officials to foreign trade, travel, or financial sanctions could not be considered as implicating "the security of the Russian Federation" within the meaning of Article 275, unless those measures would pose an existential threat to Russia. The Duma, in adopting its 2012 amendments, made clear that such inflation of the concept of "Russian security" is inadmissible. The Motion does not identify any existential threats from the United States on the horizon, and I find the prospect of the United States wielding any implausible.

25.     Finally, Defendant's Motion argues that "manipulating the rules to allow an extra-judicial fishing expedition into Russian territory" would be regarded by Russian authorities as "subverting Russia's inherent sovereign interest" and thus an attack on Russian security. Defendant's Motion pp. 20-22. But, putting aside the issue of whether the subpoena constitutes "an extra-judicial fishing expedition into Russian territory," the Russian Duma in 2012 rejected an attempt to rewrite Article 275 that would have equated Russian sovereignty with Russian security. Russian law on this point is clear.

26.     I further note that a portion of Article 275 provides an exclusion from criminal liability for persons who desist in activity otherwise deemed treasonable and disclose what they had done to the government voluntarily and in a way that will avoid further harm. How this exclusion would apply to compliance with the subpoena is unclear. The assertion in

Defendant's Motion that "the crime would be committed in the open, in the context of public judicial proceedings," Defendant's Motion at p. 23, is not necessarily correct. For example, if the judicial order to enforce the subpoena were made under seal, it would be possible for Defendant to comply and then inform the government, bringing its conduct within the terms of the exclusion.

27. In conclusion, it is my opinion that compliance with the subpoena would not compel Defendant to violate Article 275 of the Criminal Code.

**B.    Article 272**

28.    Article 272 of the Criminal Code criminalizes unauthorized intrusions into computer databases. In particular, it criminalizes "illegal access to legally protected computer information, if such action entails the destruction, blocking, modification or copying of computer information."

29. As I understand Defendant's Motion at p. 24, there is no assertion that compliance with the subpoena would require Defendant to engage in conduct proscribed under Article 272. Rather, the concern is that information provided pursuant to the subpoena might be exploited by third parties, in particular agencies of the U.S. government, to engage in activity that would violate Article 272, such as by copying legally protected computer information. The Motion expresses the concern that such exploitation then would expose Defendant to the risk of being prosecuted as an accessory before the fact, as defined by Article 33(5) of the Criminal Code, to a violation of Article 272.

30. This argument overlooks an important feature of Russian criminal law: An essential requirement of criminal responsibility is satisfaction of the mental element or *mens rea* in

accordance with the principle of culpability.[12] The Criminal Code lays out the requisite mental element for a crime to exist:

> Article 24. Forms of Guilt
> 1. Guilt for a crime shall be recognized if a person commits a deed purposively or negligently.
> 2. A deed committed only negligently shall be recognized as a crime only in cases where this is specially provided by an article of the Special Part of this Code.

Exhibit 6 to this Declaration.

31.     As this provision makes clear, Russian law permits the imposition of criminal liability only if a person has engaged in proscribed conduct purposively, unless the provision defining the particular crime expressly permits liability for negligent behavior. Article 272 of the Criminal Code does not impose liability for negligent behavior. As a result, pursuant to Article 24(2), it applies only to purposeful conduct.

32.     Russian law does not regard the provision of information under compulsion of law as constituting purposive assistance to any and all uses to which that information may be put. A person who complies with a subpoena would be regarded as having the purpose of not obstructing a particular criminal prosecution. Russian law would regard the possibility that the U.S. government might exploit the information provided to commit a crime on Russian territory as a contingency over which the person providing the information would have no control. Lacking any knowledge of the U.S. government's determination to violate Article 272, and having no purpose to facilitate such a violation, Defendant, were it to comply with

---

[12]   Article 5 of the Criminal Code provides:

> 1. A person shall be subject to criminal liability only for those socially dangerous actions (inactions) and socially dangerous consequences in respect of which his guilt has been established.
> 2. Objective imputation, that is criminal liability for innocent injury, shall not be allowed.

Russian scholars understand this provision as prohibiting strict liability for the infliction of harm. Naumov, *supra*, at 203.

the subpoena, would not satisfy the mental element necessary for commission of a crime under Articles 33(5) and 272.

33.    Moreover, Russian law provides a complete defense to criminal liability for a person "acting in execution of an order or instruction binding on him." Article 42(1) of the Russian Criminal Code, Exhibit 6 to this Declaration. This provision applies to all binding orders or instruction, whether the authority was domestic or foreign. Article 42(2) restores criminal liability in instances where a person commits an intentional offense in execution of an order or instruction known to be illegal. Id. Taken as a whole, Article 42 represents a special instance of the general duress defense, and therefore applies to all activity undertaken in compliance with lawful authority except where the "known to be illegal" exception applies.

34.    In my view, a valid subpoena issued with respect to a person properly within the jurisdiction of the issuing authority would constitute a binding order or instruction within the meaning of Article 42(1) of the Criminal Code. Nor would such an order be "known to be illegal" within the meaning of Article 42(2), as long as it did not require sharing of state secrets in violation of Article 275 or similarly specific legislation. The risk that compliance with an order might, through no fault of the person complying with the order, facilitate a later illegal act by a third party would not make compliance illegal. As indicated above, no Russian legislation makes it illegal per se to cooperate with a foreign criminal investigation.

35.    As a result, compliance with the subpoena would not put Defendant at risk of violation of Article 272, either directly or as an accessory.

**C.**    **Article 183**

36.    Article 183 of the criminal code prohibits the illegal receipt or disclosure of commercial, tax, or banking secrets. The focus of this provision is on expropriation of other persons' information for personal benefit. It applies not to all transfers of third-party information, but only to "illegal" disclosures.

37.    As an initial matter, it is not clear that a record reflecting payments from Defendant to the persons designated in the subpoena would qualify as a commercial, tax, or banking secret. I understand Defendant's Motion as not asserting that any information covered by the subpoena would qualify as a tax or banking secret. It also is doubtful that the information sought has commercial value, as defined by Russian legislation. To qualify as a commercial secret under Russian law, confidentiality must enable its possessor to derive a commercial benefit.[13] Russian law would not regard avoidance of criminal liability through the hiding of information as itself a commercial benefit. The information sought here would qualify as a commercial secret only if its owner derived some economic benefit from its secrecy other than the avoidance of liability for wrongful conduct.

38.    I further understand Article 183 as applicable only to the gathering of another person's information. Accordingly, it would not apply to any information belonging to Defendant, even if that information were to qualify as Defendant's commercial secret.

39.    In any event, Article 183 limits criminal liability to the gathering of trade secrets by "illegal" means. In my opinion, Russian law would not regard compliance with a valid subpoena issued by another country to a person over whom that country has jurisdiction as

---

[13]    Federal Law No. 98-FZ of July 29, 2004, on Commercial Secrecy, Article 3(1), Exhibit 10 to Defendant's Motion.

illegal in the absence of Russian legislation outlawing such compliance. No such provision

exists in the Criminal Code.

40.     One may not infer from the express provisions in Russian law that authorize compliance

with the treaties of the Russian Federation an implicit prohibition of any forms of

cooperation not required by such treaties.[14] Article 457 of the Criminal Procedure Code,

Exhibit 6 to Defendant's Motion, expressly authorizes Russian authorities to extend

cooperation on the basis of the principle of comity. More to the point, it does not forbid

private persons who are Russian nationals from cooperating in other ways. As I discuss

below, Article 6(1)(3) of the Personal Data Law contains an express exemption from its

strictures with respect to compliance with a valid order in the context of legal proceedings,

without limitation to Russian legal proceedings.

41.     It is therefore my conclusion that the transmission of any information within the

Defendant's possession in compliance with a valid subpoena issued by an appropriate U.S.

authority would not be regarded as "illegal" within the meaning of Article 183, even if the

information transmitted might be regarded as a commercial secret belonging to a third

party.

42.     Moreover, as noted above in ¶¶ 33-34, Russian law excuses from criminal liability an

person "acting in execution of an order or instruction binding on him." Article 42(1) of the

Russian Criminal Code, Exhibit 2 to this Declaration. This provision applies to all binding

---

[14]   Provisions recognizing the primacy of international treaties of the Russian Federation, such as Article 457 of the Criminal Procedure Code, are widespread in Russian legislation. They reflect and repeat the constitutional rule found in Article 15(4) of the Constitution, Exhibit 2 to this Declaration. Because the constitutional rule applies regardless of any language in the legislation, references to international treaties in this legislation are in some sense unnecessary, but serve as useful reminders of the applicable law. The reference to international comity in Article 457, by contrast, is not redundant and has a broader scope than the specific obligation in Article 21 of the U.S.-Russia Mutual Legal Assistance Treaty to grant legal assistance in accordance with "national laws and practice." Exhibit 13 this Declaration.

orders or instruction, whether the authority was domestic or foreign. Article 183 by its terms proscribes only "illegal" transmission of trade secrets, while Article 42 permits compliance with foreign orders not known to be illegal. There is no Russian law that would make illegal an order to share information (state secrets aside) within the possession of the person subject to the order. Hence Article 42 confirms the interpretation of Article 189 as not applying to transmissions made in compliance with a binding order by a foreign authority with jurisdiction over the person making the transmission.

43.     In my view, a valid subpoena issued with respect to a person properly within the jurisdiction of the issuing authority would constitute a binding order or instruction within the meaning of Article 42(1) of the Criminal Code. Nor would such an order be "known to be illegal" within the meaning of Article 42(2). As noted above, no Russian legislation makes cooperation with a foreign criminal investigation per se illegal.

44.     As a result, compliance with the subpoena would not put Defendant at risk of violation of Article 183.

**V.      *Relevance of the Personal Data Law to Compliance with the Early Return Subpoena***

45.     The Federal Assembly adopted the Personal Data Law in 1996 and amended it several times since. This law regulates data collection, storage, processing, and transmittal. It is not a criminal statute and provides no sanctions for violations of its provisions. Rather, Article 13.11 of the Code on Administrative Offenses, Exhibit 18 to Defendant's Motion, imposes a fine of one thousand to three thousand rubles ($16 to $55 at current exchange rates) on non-governmental persons who violate rules regarding the storage, processing, and transmission of personal data, include those rules found in the Personal Data Law.

46.     Article 3(1) of the Personal Data Law defines as "personal data" any information relating

        to a "which directly or indirectly identifies or makes identifiable a physical person

        (personal data subject)."[15] Accordingly, the Law does not apply to any information covered

        by the subpoena with respect to legal entities. Information with respect to any individual,

        however, would come within the Law, absent any exclusion provided by the law. Such an

        exclusion, however, does exist.

47.     Article 6(1)(3) of the Personal Data Law excludes from its regulatory scope any

        transmission of personal data, whether through electronic means or otherwise, that occurs

        "in connection with a person's participation in constitutional, civil, administrative, or

        criminal court proceedings." This provision treats activity that complies with a judicial

        order as excluded from the regulation of personal data. It does not by its terms limit this

        exclusion from liability to compliance with orders made only by Russian courts. Thus acts

        taken to comply with a subpoena issued by a foreign court as part of a criminal case are

        not covered by the Personal Data Law.[16] This exclusion is consistent with the overall focus

        of the Personal Data Law on exploitation of personal data for commercial gain.[17]

---

[15]   The translation of the Personal Data Law provided in Exhibit 11 to Defendant's Motion uses the term "individual," which is not incorrect but also not as precise as the actual term used in the statute (физическому лицу), literally physical person. In Russian law, a physical person is a flesh-and-blood person, as distinguished from a legal entity (legal person).

[16]   Defendant's Motion reads an article by a Russian practitioner as limiting Article 6(1)(3) of the Personal Data Law to investigations by Russian authorities. Defendant's Motion at 30. I do not understand the source cited as making this claim. At the beginning of the article, the author addresses the question of what Russian authorities are competent to prosecute business crimes. Vasily Torkanovskiy, Russian Federation: Business Crime 2018, Mondaq, Oct. 30, 2017, http://www.mondaq.com/russianfederation/x/641110/Crime/Business+Crime+2018. He provides the obvious answer that only persons identified by Russian law can prosecute a case in Russia. Later in the article he addresses the grounds under Russian law for resisting seizure of documents by Russian authorities. At that point he indicates that the Personal Data Law does not protect such documents. At no point in his article, however, does the author address, much less provide an opinion on, the application of the Personal Data Law with respect to foreign criminal investigations carried out under the authority of foreign law.

[17]   The Russian Ministry of Communications and Mass Media has issued a clarifying instruction regarding the interpretation of the Personal Data Law. Exhibit 14 to Defendant's Motion. It confirms that any activity coming within clauses 2 to 11 of Article 6(1) of that Law do not require the consent of the owner of the personal data involved. It is noteworthy that the instruction does not limit the application of clause 3 to compliance with the orders of Russian authorities only.

48.     As indicated above, Russian law limits the binding force of foreign official acts within its own legal system to instances prescribed by treaties or legislation. At the same time, Russian law does not proscribe compliance by Russian persons with foreign judicial orders, absent a specific provision of Russian law prohibiting such compliance. There is no provision of Russian law requiring Russian persons generally not to cooperate with foreign legal authorities.

49.     In addition, Article 6(1)(7) of the Personal Data Law creates another exclusion for a copying of personal data "for the purpose of exercising the rights and lawful interests of the operator." Here Defendant, as holder of the data, has a clear lawful interest in complying with a binding order of a legal authority that has jurisdiction over the Defendant.

50.     In any event, were a Russian court to restrict Article 6(1)(3)'s exclusion to acts taken to comply with only Russian judicial proceedings, and Article 6(1)(7)'s exclusion to lawful interests created only by Russian law, glosses that are not supported by the language of the statute or the spirit of the Mutual Legal Assistance Treaty into which the Russian Federation has entered with the United States, Exhibit 13 to this Declaration, the consequences for Defendant would be inconsiderable. The sanction applicable to a private entity such as Defendant for failure to comply with the provisions of the Personal Data Law potentially implicated by the early return subpoena would be at most a very modest fine.

51.     Accordingly, the Personal Data Law does not create a significant impediment to Defendant's compliance with the subpoena.

**VI.**    ***Other Enactments of Russian Law***

52.     To my knowledge, the Russian Federation has not adopted a general blocking law prohibiting persons subject to its jurisdiction from cooperating with a criminal investigation carried out by another state. It would regard as a violation of its law any acts by a foreign state carried out on Russian territory to seize persons or property. I am unaware, however, of any Russian law that would bar a Russian subject not acting as an official of the Russian state or otherwise representing the Russian state from transmitting information otherwise within that subject's lawful possession and control to foreign law enforcement authorities.

## VII.  *Russian Legal Policy*

53.     The Russian legal system does not regard the obstruction of foreign criminal investigations as a valid policy goal. To the contrary, the Russian Federation is a party to multiple mutual legal assistance treaties. In particular, the United States since 1999 has maintained and complied with a Mutual Legal Assistance Treaty with the Russian Federation. This treaty creates a specific procedure for collection of evidence, among other matters, by one party at the request of the other. As noted above in ¶ 40 n. 13, its Article 21 more generally provides for cooperation in legal matters beyond the specific commitments found in the treaty's other provisions.

54.     As discussed in ¶ 40 above, Russian law, in keeping with the U.S. approach to such treaties, does not regard compliance with a treaty as the exclusive means of international cooperation with respect to law enforcement and legal assistance. In particular, Russian law does not regard such cooperation as inherently illegal unless required by a treaty to which the Russian Federation is a party or Russian legislation. In addition, the Russian Federation belongs to international organizations, such the Financial Action Task Force,

that promote international investigative and prosecutorial cooperation with respect to white-collar crime. In my opinion, Russian law would not regard enforcement of the subpoena as posing a threat to Russian sovereignty or any fundamental state policy.

**VII.** *Conclusion*

55.    It is my conclusion that compliance with the early return subpoena will not require Defendant to violate Russian criminal law.

56.    It is also my opinion that compliance with the early return subpoena will not require Defendant to violate any Russian statute that imposes substantial administrative (noncriminal) sanctions for its violation.

57.    Accordingly, it is my conclusion that compliance with the early return subpoena would not put Defendant in any significant legal jeopardy with respect to the Russian Federation.

58.    It is also my conclusion that enforcement of the subpoena would not interfere with any significant Russian policy interest.

Paul B. Stephan

1/16/20

January 16, 2020