*Statutes and Decisions*, vol. 37, no. 2, March–April 2001, pp. 34–53.
© 2002 M.E. Sharpe, Inc. All rights reserved.
ISSN 1061–0014/2002 $9.50 + 0.00.

**(48)**

# IN THE CASE CONCERNING VERIFICATION OF THE CONSTITUTIONALITY OF A NUMBER OF PROVISIONS OF POINT "A" OF ARTICLE 64 OF THE CRIMINAL CODE OF THE RSFSR IN CONNECTION WITH THE COMPLAINT OF CITIZEN V. A. SMIRNOV

Decree No. 17–P of the Constitutional Court
of the Russian Federation, 20 December 1995;
*Sobranie zakonodatel´stva Rossiiskoi Federatsii,*
1995, No. 1, Item 54;
translated by Bruce Collins

The Constitutional Court of the Russian Federation, in the composition of Presiding [Judge] B. S. Ebzeev and Judges M. V. Baglai, N. V. Vitruk, G. A. Gadzhiev, A. L. Kononov, Iu. D. Rudkin, N. V. Seleznev, O. I. Tiunov, and V. G. Iaroslavtsev,

with the participation of advocate I. L. Petrukhin, representative of the party that made recourse with a complaint to the Constitutional Court of the Russian Federation,

being guided by Article 125 (part 4) of the Constitution of the Russian Federation, point 3 of part one and parts two and three of Article 3, point 3 of part two of Article 22, and Articles 36, 74, 96, 97, and 99 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation,"

has considered in open session the case concerning the verification of the constitutionality of a number of provisions of point "a" of Article 64 of the Criminal Code of the RSFSR.

The justification for consideration of the case was the complaint of citizen V. A. Smirnov concerning the violation of his constitutional rights

Case 1:18-cr-00032-DLF   Document 306-6   Filed 01/17/20   Page 2 of 20

and freedoms by point "a" of Article 6 of the Criminal Code of the RSFSR, which was applied in his case.

The [legal] basis for consideration of the case was the revealed uncertainty in the question of whether the challenged provisions of point "a" of Article 64 of the Criminal Code of the RSFSR, which establishes criminal liability for treason against the Motherland in the form[s] of provision of state or military secrets to a foreign state, flight abroad, or refusal to return from abroad, and rendering assistance to a foreign state in the conduct of hostile activity, are in accord with the Constitution of the Russian Federation.

Having heard the report of Reporting-Judge N. V. Seleznev, the explanations of the representative of the party that made recourse with the complaint, and the presentations of experts and a specialist, as well as of a representative of the General Procuracy of the Russian Federation who was invited the session, and having studied the materials in hand, the Constitution of the Russian Federation

*has established*:

1. The court collegium for criminal cases of the Moscow City Court on 26 October 1982 recognized citizen V. A. Smirnov as guilty of committing a crime envisioned by point "a" of Article 64 of the Criminal Code of the RSFSR ("treason against the Motherland").

The cassational and subsequent appeals of V. A. Smirnov concerning the illegality and lack of substantiation of the judgment were left unsatisfied. On 19 June 1991, the Presidium of the Supreme Court of the RSFSR, having considered the case on the basis of a protest of the first deputy procurator-general of the RSFSR, left the judgment in force, thereby confirming the conclusion concerning V. A. Smirnov's guilt in committing treason against the Motherland, as expressed in a refusal to return from abroad, provision of state secrets to foreign states, and rendering assistance to them in the conduct of hostile activity.

In his appeal to the Constitutional Court of the Russian Federation, the petitioner asserts that the indicated provisions of point "a" of Article 64 of the Criminal Code of the RSFSR contradict a number of norms of the Constitution of the Russian Federation concerning the rights and freedoms of citizens and are not in accord with generally accepted principles and norms of international law; and that as a result of their application in the concrete criminal case, his rights and freedoms were violated, the consequences of which persist to the present time.

2. The Constitution of the Russian Federation embodies the sovereign statehood of Russia and the integrity and inviolability of its territory as one of the foundations of the constitutional order (Preamble and parts 1 and 3 of Article 4). Within the bounds of their authority, bodies of state power carry out measures envisioned by the Constitution of the Russian Federation and federal laws for the protection of the sovereignty of the Russian Federation, its independence and state integrity, and provision for the defense of the country and the security of the state (Articles 71, 80, 82, 83, 87, 114, and others of the Constitution of the Russian Federation).

The citizen and the state in the Russian Federation are connected by mutual rights, responsibility, and obligations. In guaranteeing the rights and freedoms of the person and the citizen and providing for their protection, the state simultaneously has the right to establish in federal law restrictions of rights and freedoms for the purposes of provision for the defense of the country and the security of the state (part 3 of Article 55 of the Constitution of the Russian Federation), including the right to envision criminal liability for intentionally committed deeds that are to the detriment of the basic values of the constitutional order. However, the lawful exercise by the citizen of his constitutional rights and freedoms cannot be viewed as inflicting damage on the sovereignty of the Russian Federation, the defense of the country, and the security of the state; [nor can it] entail for him adverse legal consequences, specifically in the form of criminal liability for treason (treason against the Motherland).

3. The appeal of citizen V. A. Smirnov contains a demand to recognize as unconstitutional the provision of point "a" of Article 64 of the Criminal Code of the RSFSR, in accordance with which flight abroad or refusal to return from abroad are qualified as one of the forms of treason against the Motherland—that is, as a deed intentionally committed by a citizen to the detriment of [state] sovereignty, territorial inviolability, or state security and defense capability. In the opinion of the petitioner, this provision contradicts Article 27 (part 2) of the Constitution of the Russian Federation.

In accordance with Article 27 (part 2) of the Constitution of the Russian Federation, each person can freely travel beyond the bounds of the Russian Federation; and a citizen of the Russian Federation has the right to return to the Russian Federation without hindrance.

The elaboration of the powers that make up the content of this right and the procedure and conditions of its realization are determined by

the Law of the USSR "On the Procedure for Exit from the Union of Soviet Socialist Republics and Entry into the Union of Soviet Socialist Republics of Citizens of the USSR," the effect of which, in accordance with Decree No. 4183–I of the Supreme Soviet of the Russian Federation of 22 December 1992 "On the Entry into Force on the Territory of the Russian Federation of the Law of the USSR 'On the Procedure for Exit from the USSR and Entry into the USSR of Citizens of the USSR,' " was extended to the territory of the Russian Federation as of 1 January 1993. That law envisions restrictions on the right of exit connected with provision for security and other interests protected by the state, but these restrictions are of a temporary character and do not deprive a citizen of the right itself to freely exit from the country and to return to it without hindrance.

This provision conforms to the enactments contained in point 2 of Article 12 of the International Covenant on Civil and Political Rights and other international acts concerning the right of each person to leave any country, including his own, and concerning his lack of any obligation to return to that country.

Restrictions of the right to freely travel beyond the bounds of the Russian Federation, as well as of any other constitutional right, are admissible for the purposes strictly defined by Article 55 (part 3) of the Constitution of the Russian Federation. These restrictions cannot be interpreted broadly and must not lead to the impairment of other civil and political and other rights guaranteed to citizens by the Constitution and laws of the Russian Federation nor entail criminal liability for flight abroad and refusal to return from abroad, which are qualified in accordance with point "a" of Article 64 of the Criminal Code of the RSFSR as treason against the Motherland. The deed envisioned by the challenged norm, on the strength of the Constitution of the Russian Federation and international treaties with the participation of the Russian Federation, cannot be viewed as a crime infringing on the defense, sovereignty, territorial inviolability, state security, or defense capability, or by itself serve as grounds for criminal liability for treason against the Motherland.

4. The petitioner likewise challenges the constitutionality of another form of treason against the Motherland—provision of state or military secrets to a foreign state—in connection with the circumstance that the blanket disposition of this norm includes lists of information constituting state secrets (*taina*) that are [themselves] secret (*sekretnyi*) and therefore not accessible to citizens. This provision, in his opinion, is not in

accord with the constitutional requirements concerning the conditions and bounds of regulation of the rights, obligations, and responsibility of citizens, in particular the requirement that any normative legal acts affecting the rights, freedoms, and obligations of the person and the citizen cannot be applied if they are not published officially for public information (part 3 of Article 15 of the Constitution of the Russian Federation).

The freedom of thought and speech and the right of each person to freely seek, obtain, transfer, produce, and disseminate information guaranteed in Article 29 of the Constitution of the Russian Federation may be exercised in any legal manner. These rights and freedoms of the person and the citizen can be restricted by federal law only to the extent necessary, in particular for purposes of provision for the defense of the country and the security of the state.

Consequently, the state has the right to categorize as state secrets various kinds of information in the sphere of military, economic, and other types of activity, the dissemination of which can cause damage to the defense of the country and the security of the state. In connection with this, Article 29 (part 4) of the Constitution of the Russian Federation envisions that the list of information constituting state secrets is to be determined by federal law. The state likewise has the right to determine the means and methods of the protection of state secrets, including the right to establish criminal liability for their disclosure and provision to a foreign state.

However, on the strength of the indicated constitutional norm, criminal liability for the provision of a state secret to a foreign state is lawful only on the condition that the list of information constituting state secrets is contained in a federal law officially published for general information. A decision applying the law, including the judgment of a court, cannot be based on an unpublished normative legal act, which follows from Article 15 (part 3) of the Constitution of the Russian Federation.

Realization of the requirement of Article 29 (part 4) of the Constitution of the Russian Federation is provided for by the Law of the Russian Federation of 21 July 1993 "On State Secrets," which defines the concept of a state secret and indicates information categorized as state secrets.

Consequently, the establishment of criminal liability for the provision of a state or military secret to a foreign state does not contradict the Constitution of the Russian Federation, Articles 15 (part 3), 29 (part 4), and 55 (part 3).

5. The complaint of V. A. Smirnov likewise raises the question of recognition as not in accord with the Constitution of the Russian Federation of such a form of treason against the Motherland as rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation, in view of the lack of clarity of the elements of the given composition of the crime.

The establishment of criminal liability for treason against the Motherland in the form of rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation, intentionally committed by a citizen to the detriment of the sovereignty, territorial inviolability, or state security and defense capability [of the Russian Federation] does not contradict the Constitution of the Russian Federation, Articles 4 (parts 1 and 3), 55 (part 3), and 59 (part 1).

Definition of the degree of formalization of the elements of any crime as a component part of the norm-creating process is within the exclusive competence of the legislator. On the other hand, the necessary explanations concerning questions of the application of the norms of criminal legislation arising in court practice, in accordance with Article 126 of the Constitution of the Russian Federation, are to be given by the Supreme Court of the Russian Federation.

Proceeding from that set forth [above] and being guided by part one of Article 71 and Articles 72, 75, and 100 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the Constitutional Court of the Russian Federation

*has decreed*:

1. The provision of point "a" of Article 64 of the Criminal Code of the RSFSR qualifying flight abroad or refusal to return from abroad as a form of treason against the Motherland shall be recognized as not in accord with the Constitution of the Russian Federation, Articles 27 (part 2) and 55 (part 3).

In accordance with the first and third parts of Article 79 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the indicated provision of point "a" of Article 64 of the Criminal Code of the RSFSR shall lose force as of the moment of pronouncement of this Decree.

2. The provision of point "a" of Article 64 of the Criminal Code of the RSFSR qualifying the provision of state or military secrets to a foreign state as a form of treason against the Motherland shall be recognized as in accord with the Constitution of the Russian Federation.

3. The provision of point "a" of Article 64 of the Criminal Code of the RSFSR qualifying provision of assistance to a foreign state in the conduct of hostile activity against the Russian Federation as a form of treason against the Motherland shall be recognized as in accord with the Constitution of the Russian Federation.

4. In accordance with the second part of Article 100 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the criminal case in relation to V. A. Smirnov in the part [concerning] application of the provision of point "a" of Article 64 of the Criminal Code of the RSFSR that is recognized by the present Decree as unconstitutional shall be subject to review by the Supreme Court of the Russian Federation through the established procedure, if there are no other obstacles to this.

5. In accordance with the first and second parts of Article 79 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the present Decree is final, is not subject to appeal, shall enter into force immediately after its pronouncement, and has direct effect.

6. In accordance with Article 78 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the present Decree shall be subject to publication in *Sobranie zakonodatel'stva Rossiisskoi Federatsii, Rossiiskaia gazeta*, and other official publications of bodies of state power of the Russian Federation. The Decree must also be published in *Vestnik Konstitutsionnogo Suda Rossiiskoi Federatsii*.

## SEPARATE OPINION OF
## JUDGE N. V. VITRUK OF THE
## CONSTITUTIONAL COURT
## OF THE RUSSIAN FEDERATION

Verification of the constitutionality of a number of provisions of point "a" of Article 64 of the Criminal Code of the RSFSR on the basis of the complaint of citizen V. A. Smirnov can be carried out on the basis of a preliminary resolution of the general theoretical question of the volume of the content and the permissible bounds of realization of the constitutional rights of citizens and the possibility for their restriction. The con-

stitutional rights of the citizen are not unbounded: Their content and bounds of exercise are dependent on the relationship with other constitutional rights and freedoms of the citizen and his constitutional obligations. Moreover, the rights and freedoms of the person and the citizen, in accordance with part 3 of Article 55 of the Constitution of the Russian Federation, can be restricted by federal law to the extent necessary for purposes of the protection of the foundations of the constitutional order, morality and health, the rights and lawful interests of other persons, and provision for the defense of the country and the security of the state.

For purposes of the rational combination and harmony of the interests of society, the state, and the individual, the legislator, together with the determination of the content of a constitutional right, establishes the procedure for its realization. The purpose of a procedural order for the realization of a right consists in providing for (guaranteeing) the use of the concrete benefits and values on which the content of the right is based. The procedural order for the realization of a right can also take the form of a certain means of its restriction for a specific category of citizens. Restriction of the rights and freedoms of the citizen can be carried out by means of the exclusion of one or other possibility (power) from the content of a right (freedom), as well as by way of the establishment of a special procedure for its realization. Let us trace this in the example of the constitutional right established by Article 27 (part 2) of the Constitution of the Russian Federation: "Each person can freely travel beyond the bounds of the Russian Federation." The present constitutional norm conforms to the requirements of international-legal documents (part 2 of Article 13 of the Universal Declaration of Human Rights, point 2 of Article 12 of the International Covenant on Civil and Political Rights, and others). Realization of the given constitutional right can be dependent on fulfillment by the citizen of his legal obligations. For example, a citizen serving a measure of criminal punishment in the form of deprivation of freedom cannot freely leave the bounds of the Russian Federation.

In accordance with the provisions of part 3 of Article 55 of the Constitution of the Russian Federation, the constitutional right of each person to freely travel beyond the bounds of the Russian Federation can be restricted by competent bodies for a specific category of citizens by way of the establishment of a special procedure for travel abroad that presupposes the receipt of permission to exit and the possibility of refusal

of exit, given the presence of grounds established in law or permission to exit on the condition of fulfillment by the citizen of certain obligations, for example the obligation to return to the Motherland within an established time period.

A certain restriction of the right of each person to freely travel beyond the bounds of the country is likewise contained in the establishment by other states of their own conditions and rules of entry into their country (the receipt, for example, of a visa).

The complaint of citizen V. A. Smirnov challenges the constitutionality of the provision of point "a" of Article 64 of the Criminal Code of the RSFSR, in accordance with which flight abroad and refusal to return to the Motherland from abroad intentionally committed by a citizen to the detriment of the sovereignty, territorial inviolability, or state security and defense capability of the country are viewed as an autonomous form of treason against the Motherland, in view of the fact that, in the opinion of the petitioner, this provision contradicts Article 27 (part 2) of the Constitution of the Russian Federation, the content of which was cited above.

Flight abroad can be deemed only an illegal means by which a citizen leaves the territory of his country, that is, a crossing of the border in violation of the rules of travel abroad, while a refusal to return to the Motherland from abroad in a criminal-legal sense can only exist in instances of the effect of the obligation of a citizen—for example, one who possesses a state secret—to return to the Motherland within an established time period, which can be determined, for example, by the time period of a business trip abroad. Violation of the established rules of travel and return to the Motherland in instances of the presence of such an obligation to the state can be qualified by the legislator as an administrative- or criminal-law violation, depending on the degree of their social danger. Such a qualification is carried out by the legislator at the constitutional or legislative level.

The question of the criminalization of flight abroad and refusal to return to the Motherland is not a subject of constitutional regulation, much less [the question of its suitability] in the capacity of an autonomous form of treason against the Motherland. An affirmative answer to the given question was given by the legislator at the legislative level in the content of point "a" of Article 64 of the Criminal Code of the RSFSR. However, the judicial practice of the application of point "a" of Article 64 of the Criminal Code of the RSFSR has shown that the indicated

actions—flight abroad and refusal to return to the Motherland—as an autonomous form of treason against the Motherland cannot exist de facto. The indicated actions organically enter into the composition of other forms of treason against the Motherland (the provision to a foreign state of a state or military secret, the rendering of assistance to a foreign state in the conduct of hostile activity against the Russian Federation) on their objective side.* This same position has also been taken by criminal law theory in recent years. Courts of general jurisdiction that have considered the given category of criminal cases have incriminated citizens for flight abroad and refusal to return to the Motherland as treason against the Motherland together with other forms of treason against the Motherland. In this instance, the courts of general jurisdiction have guided themselves more by ideological-political precepts than by the principles and logic of rights and law and acted as a tool of persecution of citizens for political convictions. The Constitution of the Russian Federation, which envisions the right of each person to freely travel beyond the bounds of the Russian Federation, does not deny but rather presupposes the effect of Article 55 (part 3), which establishes that the rights and freedoms of the person and the citizen can be restricted by federal law. The establishment of restrictions of the constitutional right of each person to freely travel beyond the bounds of the Russian Federation is permissible if they conform to the requirements of part 3 of Article 55 of the Constitution of the Russian Federation. On the strength of this, likewise permissible is the establishment of special legal obligations of citizens in the realization of the constitutional right to freely leave the country, as well as a legal obligation to return to the Motherland for a special category of persons possessing, for example, state secrets. The definition of concrete types of violations as violation of obligations in the exercise of the constitutional right to freely leave the country, including the criminalization and decriminalization of the composition of [specific] crimes, is not a subject of constitutional regulation, but constitutes the exclusive competence of the legislator and is resolved by it at the legislative level. This provision applies in equal measure to qualification of the provision to a foreign state of a state secret or military secret or the rendering to a foreign state of assistance in the conduct of hostile activity against the Russian Federation as autonomous elements of crimes or as autonomous forms of treason against the Motherland.

---

*i.e., as an objective element of action of the violator—Ed.

Proceeding from criminal law theory and judicial practice, it is possible to recognize that the content of point "a" of Article 64 of the Criminal Code of the RSFSR relating to flight abroad or refusal to return to the Motherland from abroad as an autonomous form of treason against the Motherland is imperfect and perhaps even erroneous from the position of legislative regulation of the given type of relations between the state and the individual, for the given instance lacks the necessary clarity and explicitness in the resolution of the question of the extent of social danger of the indicated unlawful actions on the part of a special category of persons. However, this question is not a subject of constitutional regulation.

From the standpoint of constitutional provisions, the legislator has the right to establish restrictions in the content and realization of the constitutional right to freely travel beyond the bounds of the Russian Federation, as well as to establish a special procedure for the exercise of the given right, which presupposes, among other things, the obligation of return to the Motherland from abroad for a special category of persons. Transcending the bounds of the constitutional right to freely leave the country and violating the procedure for the realization of the indicated right, including the obligation to return to the Motherland from abroad, can be recognized by the legislator as an administrative delict or a criminal offense, depending on the extent of social danger of the indicated law violations. This is in full accord with the provisions of the Constitution of the Russian Federation in effect.

The complaint of citizen V. A. Smirnov challenges the constitutionality of the provision of point "a" of Article 64 of the Criminal Code of the RSFSR concerning the provision to a foreign state of a state or military secret, which makes it possible, in the opinion of the author of the complaint, on the strength of the existence of normative-legal acts concerning information constituting state secrets that are not published for general information, to subject [a person] to criminal liability for treason against the Motherland without [their] fault.

Part 4 of Article 29 of the Constitution of the Russian Federation establishes that the list of information constituting state secrets is to be determined by federal law, which, on the strength of the fact that it affects the rights, freedoms, and obligations of the person and the citizen, must be published officially for general information (part 3 of Article 15 of the Constitution of the Russian Federation). However, this requirement cannot be turned into an absolute. It is known that acts below the

level of a law which elaborate the provisions of the federal law on state secrets in terms of their type, subject (carrier), and so forth are published in practice. They envision organizational and other measures directed at the provision for and protection of state secrets. In the opinion of the petitioner, all these acts must be officially published for general information and only in that instance is a citizen who provided a state secret to a foreign state subject to criminal liability on the basis of point "a" of Article 64 of the Criminal Code of the RSFSR. One cannot agree with this argument; since the given acts are acts of special effect, they must be known only to those persons for whom they are intended, since they concern state secrets.

The question of the citation in court judgments of normative acts regulating questions of state secrets is a question of sufficiency for legal qualification of criminally punishable deeds, and it must be resolved in each concrete instance proceeding from the established circumstances of the case, not *a priori*.

At the same time, one can agree with the author of the complaint that to the shortcomings of the formulation of the provision to a foreign state of state or military secrets as a form of treason against the Motherland one must ascribe insufficient clarity and explicitness in the determination of the subjective side (fault, reasons, purposes). Shortcomings of this kind can and must be eliminated by the legislator itself.

And, finally, the complaint of V. A. Smirnov challenges the constitutionality of such a form of treason against the Motherland as rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation, in view of the lack of clarity of the given elements of the crime. One must agree that such a formulation does not exhibit the necessary level of social danger of rendering assistance to a foreign state in the conduct of hostile activity against the Russian Federation that would make it possible with a sufficient degree of objectivity, clarity, and explicitness to view such deeds as treason against the Motherland. However, this shortcoming (albeit a serious one!), as well as other shortcomings of the formulation of the elements of crimes, especially as concerns their subjective side (guilt, reasons, purposes), must be corrected by the legislator itself.

A certain influence on the formation of practice in the application of the challenged provisions of point "a" of Article 64 of the Criminal Code of the RSFSR can be exerted by superior court instances during their summaries of judicial practice concerning the given category of criminal cases.

The complaint of citizen V. A. Smirnov challenges the establishment of a number of elements of the objective and subjective side of the [crime of] provision to a foreign state of a state secret (for example, whether the characterization by V. A. Smirnov of researcher-colleagues and officials that was provided to a representative of a foreign state is a state secret). This is part of the establishment of the factual circumstances of the criminal case of V. A. Smirnov. It is possible to assume that judicial errors were made in the criminal case of V. A. Smirnov, but they cannot be a subject of consideration by the Constitutional Court.

On the basis of that set forth [above], I come to the conclusion that all the questions raised in the appeal of V. A. Smirnov and resolved in point "a" of Article 64 of the Criminal Code of the RSFSR did not receive resolution in the Constitution of the Russian Federation, and also that, in terms of their content, character, and meaning, they are not attributable to constitutional [questions]. On the strength of the indicated reasons and on the basis of the requirements of Article 68 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the case concerning verification of the constitutionality of the challenged provisions of point "a" of Article 64 of the Criminal Code of the RSFSR in connection with the appeal of V. A. Smirnov is not under the jurisdiction of the Constitutional Court of the Russian Federation and proceedings in the case are subject to dismissal.

## SEPARATE OPINION OF JUDGE A. L. KONONOV OF THE CONSTITUTIONAL COURT OF THE RUSSIAN FEDERATION

1. In accordance with Article 74 of the Federal Constitutional Law "On the Constitutional Court of the Russian Federation," the Constitutional Court, in adopting a decision on a case, assesses both the literal meaning of the act under consideration and the meaning imparted to it by an official or other interpretation or by the practice of application of the law that has arisen, as well as proceeding from its place in the system of legal acts. And the practice of application of Article 64 of the Criminal Code of the RSFSR is too serious and glaring to be completely ignored in the Court's decision.

Case 1:18-cr-00032-DLF   Document 306-6   Filed 01/17/20   Page 14 of 20

Article 64 of the Criminal Code of the RSFSR, over the course of many years, with the rare exception of instances of genuine espionage, was a factual instrument of political repression and of the battle against dissent and political opponents, a method of brutal suppression of the generally accepted rights and freedoms of the person and the citizen, and [a method] of protection of the Soviet socialist state, the name of which, incidentally, is preserved both in the name of the Code and in the text of the article itself.

In the historical-legal respect, this article inherits all the attributes of Article 58 of the previous Criminal Code, notorious in the years of the Stalinist terror, on counterrevolutionary crimes. The extremely ideologized nature of this type of crime is graphically perceived from the highly typical definition of it in the "Course in Soviet Criminal Law": "Treason against the Motherland is treason against the political and social environment to which a person belongs. It constitutes an infringement on the unity of the citizen with that environment, an unnatural break with it, and a profoundly negative social fact. It is treason against the people building a communist society and direct assistance to imperialist reaction, the instigators of war, and the most evil foes of progressive mankind" (Leningrad State University, 1973).

The name itself of the crime—"treason against the Motherland"—does not have an explicit legal content but is more of a moral-political assessment. It is characteristic that instead of the legal concept of "travel abroad," the negative assessment "flight" is used. The concepts of "damage to the sovereignty, territorial inviolability, or state security and defense capability of the USSR" are absolutely indeterminate and permit any interpretation whatsoever. The deed identified as "rendering assistance to a foreign state in the conduct of hostile activity" does not lend itself to formalized analysis and elaboration.

It appears that the lack of clarity of both the terminology and the legal content of a whole number of elements of crimes included in Article 64 of the Criminal Code of the RSFSR was intentionally permitted by the legislator precisely for purposes of the possibility of their broad interpretation and freedom of discretion of bodies that apply the law, which contradicts general principles of law and the principles of criminal law in particular.

The refusal to petitioner V. A. Smirnov in 1991 and 1995 of a reconsideration of his case through supervisory proceedings, as well as a number of analogous problems of the rehabilitation of victims of political

repression, show that the applier of the law takes these same positions up to the present time. The political practice of recent years, with elements of the revival of great-power patriotism and totalitarian legal consciousness, attests to the danger of the use of the provisions, not disqualified to this day, of Article 64 of the Criminal Code of the RSFSR in combating political opponents—"defectors," "traitors," "enemies of the people," and so forth—for purposes of restriction of the political and other constitutional rights of citizens. All this speaks to the high degree of relevancy of the question under consideration.

2. The decision of the Constitutional Court correctly indicates that "flight abroad or refusal to return from abroad" as a norm of point "a" of Article 64 of the Criminal Code of the RSFSR contradicts the provisions of part 2 of Article 27 and part 3 of Article 55 of the Constitution of the Russian Federation, as well as that such actions by their character cannot be an infringement on the sovereignty, territorial inviolability, state security, and defense capability of the state.

However, the decision does not sufficiently thoroughly substantiate the impossibility of qualification of such deeds as treason against the Motherland.

A literal interpretation of the elements of the crime under consideration leads to the conclusion that the fact itself of the crossing over by a citizen of the USSR to the territory of a foreign state, it being not even material whether by legal or unlawful means, already constitutes treason. It is characteristic that criminal law doctrine and practice have never been able to work out a common, noncontradictory approach to the subjective side of the given acts, inasmuch as its formulation itself presupposes objective imputation and a political assessment of the subject's purposes and reasons as defection to the camp of the class opponent, as disagreement and disloyalty and, consequently, as treason in relation to the existing order, policy, and so forth. Such an assessment of this type of action arose back in the first years of Soviet rule and was legally embodied, for example, in the decree of the Presidium of the Central Executive Committee of the USSR of 21 November 1929, "On the Declaration of Officials/Citizens of the USSR Abroad Who Defected to the Camp of Enemies of the Working Class and the Peasantry and Who Refuse to Return to the USSR as Outside the Law."

On the other hand, in practice this led to a recognition of such political reasons as criminal regardless of the actions, which is seen in the case of petitioner V. A. Smirnov. Thus, the proof of his treasonous anti-

Soviet motivations was "his regular listening to subversive Western ra-
dio stations, negative attitude toward Soviet reality, discontent with the
order existing in the USSR and with the international policy conducted
by the Soviet state, solidarity with persons who engaged in anti-Soviet
activity, and request to the Norwegian authorities that he be granted
political asylum."

Consequently, the elements of point "a" of Article 64 of the Criminal
Code of the RSFSR under consideration, both in terms of their content
and with due regard for their interpretation and application in practice,
contradict the provisions embodied in the Constitution of the Russian
Federation concerning the presumption of innocence and liability for
the commission of a crime [only with] fault (Article 49) and, contrary to
the sense of the provisions of Article 55 of the Constitution of the Rus-
sian Federation, obstruct the exercise of the basic political rights and
freedoms of the person and the citizen: the freedom of travel and choice
of place of sojourn, the freedom to leave the country and to return to it
without hindrance (Article 27), and the freedom of thought and of ex-
pression of one's opinions and convictions (Article 29, parts 1, 3), and
contradict the principle of the inadmissibility of persecution for politi-
cal convictions (part 2 of Article 63) and the right to seek asylum from
persecution in other countries (point 1 of Article 14 of the Universal
Declaration of Human Rights and part 4 of Article 15 and Article 63 of
the Constitution of the Russian Federation).

3. The Constitutional Court recognized without any stipulations the
provision of point "a" of Article 64 of the Criminal Code of the RSFSR
concerning the provision of a state or military secret as in accord with
the Constitution of the Russian Federation, citing the fact that the Law
of the Russian Federation of 21 July 1993 "On State Secrets" realizes
the requirement of part 4 of Article 29 of the Constitution; in doing so,
however, the substantive aspects of the petitioner's argumentation are
left without attention.

In the court session it was confirmed that, as before, a whole number
of lists of information constituting state secrets exists at the present time.
These lists are not confirmed by federal law, have a departmental char-
acter, and in connection with their secrecy are not published.

The formulation of Article 64 of the Criminal Code of the RSFSR, as
well as the existing practice of its application, permit criminal liability
for the provision of information contained in any of these lists. More-
over, as seen from the text, criminal liability arises as well for the provi-

sion of military information not related in terms of content to state secrets. At the same time, the fact itself of whether one or other item of information is categorized as a state or military secret is so unclear that, as a rule, special expert testimony is appointed in each concrete instance.

The case of petitioner V. A. Smirnov provides a characteristic example. The latter was convicted of having disclosed [to foreign officials] exporters of output prohibited for import into the Soviet Union by Western countries. This information was known to Smirnov from open sources. He had not been warned and had not given any signed statement concerning their nondisclosure, and he had not been given access to secret documents. Information of this type is not identified as secret in either the open list of information constituting state secrets that existed earlier or in the Law of the Russian Federation "On State Secrets" that is now in effect. However, the investigation and the court, in imputing to Smirnov treason in the form of providing state secrets, cited the secret and unpublished List of Key Information Constituting State Secrets confirmed by a Decree of the Council of Ministers of the USSR of 3 December 1980, about which Smirnov could not have known. The possibility of objective imputation [of criminal intent] under these circumstances is obvious.

Such an interpretation of the elements of point "a" of Article 64 of the Criminal Code of the RSFSR under consideration is utterly impermissible from the viewpoint of the following constitutional norms:

—part 3 of Article 15, in accordance with which any normative legal acts affecting the rights, freedoms, and obligations of the person and the citizen cannot be applied if they were not published officially for public information;

—part 3 of Article 55, in accordance with which the rights and freedoms of the person and the citizen can be restricted by federal law;

—part 4 of Article 29, in accordance with which the right to information can be restricted by a list defined by federal law of information constituting state secrets.

An analysis of the indicated provisions of the Constitution of the Russian Federation leads to the obvious conclusion that no other lists of information constituting state secrets except those officially published in federal law can serve as grounds for restriction of the right to freely seek, obtain, transfer, produce, and disseminate information by any le-

gal methods (and independently of state borders, as stated in part 2 of Article 19 of the International Covenant on Civil and Political Rights of 1966), let alone be grounds for criminal liability for treason.

In addition, treason in the form of providing state or military secrets is set out in the text of Article 64 of the Criminal Code of the RSFSR as an autonomous composition [of the crime] that is supposedly different from the preceding form—espionage. However, theoretically and practically it appears absolutely impossible to differentiate these two compositions and to draw any substantive distinctions between them. Both the one and the other formally constitute the intentional transfer (provision) of a state secret to a foreign state. Given the absence of attributes of treason or espionage, such a deed, as is well known, is qualified according to Article 75 of the Criminal Code of the RSFSR as disclosure of a state secret.

Thus, the presence in Article 64 of the Criminal Code of the RSFSR of an autonomous form of treason expressed in the provision of a state or military secret that does not constitute espionage or the disclosure of a state secret does not have a logical and legal substantiation and in practice leads either to objective imputation [of criminal intent], as in the case of Smirnov, or to an artificial doubling of guilt and punishment, which contradicts the provisions of Articles 4 and 50 (part 1) of the Constitution of the Russian Federation. The absence of clearly expressed legal distinctions among the indicated compositions of the crimes leads to obvious arbitrariness on the part of the applier of the law and, consequently, violates the constitutional principle of the equality of all before the law and the court (part 1 of Article 19).

4. Rendering assistance to a foreign state in the conduct of hostile activity against the USSR is one of the most indeterminate elements of point "a" of Article 64 of the Criminal Code of the RSFSR.

Theoretically, all that is not encompassed by the other elements of this article fall under this formulation, although in practice it is used as a kind of generalized form of treason that is without fail inherent in all the other elements, artificially doubling and complicating the qualification of the deed.

The location and sense of the formulation of the given composition attest to the fact that the list of forms of treason is not closed and the applier of the law can attribute to this as well certain other deeds that it subsequently deems necessary to qualify as treason.

Criminal law doctrine and practice long ago indicated the defective

nature of the given composition and the absence of concretely defined, criminally censurable forms of manifestation of so-called assistance in hostile activity; however, the legislator has yet to manage to do this on the strength of the fundamental impossibility, in my opinion, of giving an adequate formulation of this element as any special form of treason.

All of the examples known from practice either indicate different forms of involvement and coparticipation in espionage (recruitment of agents, the gathering of espionage information, and so on); subversion; terrorist acts or other crimes requiring a different qualification; or concern instances in which the concept of hostile activity has been given a purely political meaning in such characteristic terms as "subversive propaganda," "ideological subversion," "anti-Soviet actions," and so on. It was very easy to qualify such "activity" as treason "causing damage to the interests of the USSR" or "undermining" or "weakening the Soviet state."

The Smirnov case is one of the examples of this kind. He was convicted, in particular, for the fact that he communicated to representatives of Norway routine characterizations of his colleagues that, in the opinion of the investigation and the court, "could be used by foreign intelligence services for the conduct of ideological subversion, the inclining of Soviet citizens to commit treason against the Motherland, and the organization of other hostile actions" directed at undermining and weakening the Soviet state.

Thus, the element of point "a" of Article 64 of the Criminal Code of the RSFSR under consideration gives all grounds for its contradictory and arbitrary interpretation by the applier of the law, including the possibility of conviction for purely political reasons.

This contradicts generally accepted principles and norms of international law, which in accordance with part 4 of Article 15 of the Constitution of the Russian Federation constitute a component part of the legal system and the requirements made of a criminal law, which must clearly and explicitly define the elements of a crime (point 5.18 of the document of the Copenhagen meeting of the Conference on the Human Dimension of the Conference on Security and Cooperation in Europe) and the requirements of fair and impartial justice (the first part of Article 14 of the International Covenant on Civil and Political Rights of 1966).

The Constitutional Court in its decision indirectly recognized the defective nature of the norm of the Criminal Code of the RSFSR under consideration; however, despite the previously formulated position, it did not find this norm to be not in accord with the Constitution. In the

decree of 25 April 1995 concerning the complaint of citizen L. N. Sitalova, the Constitutional Court unambiguously stated: "The possibility of the arbitrary application of the law is a violation of the equality of all persons before the law and the court declared by the Constitution of the Russian Federation (Article 19, part 1)."*

It appears that an analogous conclusion is all the more substantiated in the given instance.

---

*See the Decree of the Constitutional Court of the Russian Federation of 25 April 1995, "In the Case Concerning Verification of the Constitutionality of Parts One and Two of Article 54 of the Housing Code of the RSFSR in Connection with the Appeal of L. N. Sitalova," in *Statutes and Decisions*, vol. 31, no. 4 (July–August 1995), p. 83.