| 106TH CONGRESS<br>*2d* Session | SENATE | TREATY DOC.<br>106–22 |
|---|---|---|

## TREATY WITH RUSSIA ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

————

# MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE RUSSIAN FEDERATION ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS, SIGNED AT WASHINGTON ON JUNE 17, 1999, AND A RELATED EXCHANGE OF NOTES



FEBRUARY 10, 2000.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

————

U.S. GOVERNMENT PRINTING OFFICE
79–118                WASHINGTON : 2000

# LETTER OF TRANSMITTAL

————————

THE WHITE HOUSE, *February 10, 2000.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty Between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters, signed at Moscow on June 17, 1999. I transmit also, for the information of the Senate, a related exchange of notes and the report of the Department of State with respect to the Treaty.

The Treaty is one of the series of modern mutual legal assistance treaties being negotiated by the United States in order to counter criminal activities more effectively. The Treaty should be an effective tool to assist in the prosecution of a wide variety of crimes, including terrorism, money laundering, organized crime and drug-trafficking offenses. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes obtaining the testimony or statements of persons; providing documents, records and other items; serving documents; locating or identifying persons and items; executing requests for searches and seizures; transferring persons in custody for testimony or other purposes; locating and immobilizing assets for purposes of forfeiture, restitution, or collection of fines; and any other form of legal assistance not prohibited by the laws of the Requested Party.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

(III)

# LETTER OF SUBMITTAL

—————

DEPARTMENT OF STATE,
*Washington, December 30, 1999.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty Between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters (the "Treaty"), signed at Moscow on June 17, 1999. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification. Accompanying the Treaty is a related exchange of notes that I recommend be transmitted for the information of the Senate.

The Treaty covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force with a number of countries. This Treaty contains many provisions similar to those in the other treaties and all of the essential provisions sought by the United States. It will enhance our ability to investigate and prosecute a variety of crimes, including terrorism, money laundering, organized crime and drug-trafficking offenses of particular interest to the U.S. law enforcement community with respect to the Russian Federation.

The Treaty is designed to be self-executing and will not require new legislation.

Article 1 states that the Parties shall provide to each other, in accordance with the Treaty, comprehensive mutual legal assistance in criminal matters. Article 1(2) defines legal assistance in criminal matters for purposes of the Treaty as assistance provided by the Parties in connection with: prevention, suppression, and investigation of crimes; criminal prosecutions; and other proceedings related to such criminal matters. Article 1(3) provides for legal assistance where the conduct that is the subject of the request constitutes a crime under the laws of both Parties. The Requested Party may, in its discretion, also provide legal assistance where the conduct that is the subject of the request would not constitute a crime under the laws of the Requested Party. Article 1(4) states explicitly that the Treaty is intended to apply solely between the Parties; it does not give rights to any other persons to obtain or exclude any evidence, or to impede the execution of a request. Article 1(5) defines the term "person" to include both individuals and legal entities in Article 1(4), Article 2(4), Article 5(3) subparagraphs 1–5, Article 10(1), Article 14, and Article 15(2).

Article 2 sets forth a non-exclusive list of the major types of assistance to be provided under the Treaty, including obtaining testimony and statements; providing documents, records, and other

VI

items; serving documents; locating and identifying persons and items; executing requests for searches and seizures; transferring persons in custody for testimony or other purposes under the Treaty; locating and immobilizing assets for purposes of forfeiture, restitution, or collection of fines; and providing any other legal assistance not prohibited by the laws of the Requested Party.

Article 3 provides for the establishment of Central Authorities and defines Central Authorities for purposes of the Treaty. Each Party must implement the provisions of the Treaty, including the making and receiving of requests, through its Central Authority. For the United States, the Central Authority is the Attorney General or persons designated by the Attorney General. For the Russian Federation, the Central Authority is the Office of the Procurator General of the Russian Federation or persons designated by the Procurator General. Article 3(3) provides that the Central Authorities will communicate directly with one another for the purposes of the Treaty, and may agree upon such practical measures as may be necessary to facilitate the implementation of the Treaty.

Article 4 deals with the denial of legal assistance. Article 4(1) sets forth the circumstance under which a Requested Party's Central Authority may deny assistance under the Treaty. A request may be denied if: (i) it relates to a crime under military law that is not a crime under general criminal law, (ii) its execution would prejudice the security or other essential interests of the Requested Party, or (iii) it does not conform to the requirements of the Treaty. In an exchange of diplomatic notes dated June 17, 1999, September 22, 1999, and October 20, 1999, the Parties restated the understanding of the negotiating delegations that the "security or other essential interests" provision in Article 4(1) provides an adequate basis upon which to deny assistance requests in cases the United States would consider political offenses. Under Article 4(2), the Requested Party may not decline execution of a request on the grounds of bank secrecy.

Before denying assistance, the Central Authority of the Requested Party is required under Article 4(3) to consult with its counterpart in the Requesting Party to consider whether legal assistance can be given subject to such conditions as the Central Authority of the Requested Party deems necessary. If the Requesting Party accepts assistance subject to such conditions, it is required to comply with the conditions. If the Central Authority of the Requested Party denies assistance, it is required under Article 4(4) to inform the Central Authority of the Requesting Party of the reasons for the denial.

Article 5 prescribes the form and content of written requests under the Treaty, specifying in detail the information required in each request. The article permits requests to be made in other forms in urgent situations but requires written confirmation within ten days unless the Central Authority of the Requested Party agrees otherwise.

Article 6 provides that, except as otherwise agreed by the Central Authority of the Parties, requests for legal assistance and documents attached to them must be accompanied by a translation into the language of the Requested Party.

VII

Article 7 addresses the execution of requests. Article 7(1) requires the Central Authority of the Requested Party to execute a request promptly or to transmit it to the authority having jurisdiction to do so. It obligates the competent authorities of the Requested Party to do everything in their power to execute a request in a timely manner. Article 7(2) requests the Central Authority of the Requested Party to represent the interests of the Requesting Party in executing the requests.

Under Article 7(3), requests are to be executed in accordance with the laws of the Requested Party except if the Treaty provides otherwise. It provides that the competent authorities of the Requesting Party will have the authority to issue subpoenas, search warrants, or other orders necessary for the execution of requests. Except if prohibited by its laws, the Requested Party must follow procedures specified in the request. Under Article 7(4), if the Central Authority of the Requested Party considers that execution of a request will interfere with a criminal investigation, criminal prosecution, or proceeding related to a criminal matter ongoing in that State, it may postpone execution or impose conditions on execution after consultation with the Central Authority of the Requesting Party. If the Requesting Party accepts legal assistance subject to such conditions, it must comply with them.

Article 7(5) further requires the Requested Party, if so requested, to use its best efforts to keep confidential a request and its contents, and to inform the Requesting Party's Central Authority if the request cannot be executed without breaching such confidentiality. This provides the Requesting Party an opportunity to decide whether to pursue the request or to withdraw it in order to maintain confidentiality.

Article 7(6) requires the Requested Party's Central Authority to respond to inquiries by the Requesting Party's Central Authority regarding the status of the execution of a request. Article 7(7) states that, upon request of the Central Authority of the Requesting Party, the Central Authority of the Requested Party must furnish information in advance about the date and place of the execution of a request. During the execution of a request, the Requested Party must permit the presence of such persons as are specified therein.

Article 7(8) requires the Central Authority of the Requested Party to inform promptly the Central Authority of the Requesting Party of the outcome of the execution of the request. If the request is not executed, or if execution is delayed or postponed, the Central Authority of the Requested Party must inform the Central Authority of the Requesting Party of the reasons for non-execution, delay, or postponement.

Article 8 apportions between the two Parties costs incurred in executing a request. It provides that the Requested Party pay all costs, except for the following items to be paid by the Requesting Party: fees of experts, costs of translation, interpretation, and transcription, and the allowances expense related to travel of persons pursuant to Articles 11 and 12. If it becomes apparent that the execution of the request requires expenses of an extraordinary nature, the Central Authorities of the Parties must consult to determine

VIII

the terms and conditions under which legal assistance can be provided.

Article 9 requires the Requesting Party to comply with any request by the Central Authority of the Requested Party not to use the results of the execution of a request obtained under the Treaty for purposes other than those described in the request without its prior consent. Nothing in the Article prevents the use or disclosure of the results of an executed request to the extent that there is an obligation to do so under the Constitution of the Requesting Party in a chemical prosecution. The Central Authority of the Requesting Party is obliged to notify the Central Authority of the Requested Party in advance of any such possible or proposed use or disclosure. Once the results of an executed request have been used for the purpose for which they were provided, and in the course of such use have been made public in the Requesting Party in accordance with the Treaty, no further limitations on use apply.

Article 10 addresses the procedures for obtaining testimony and evidence in the Requested Party. Article 10(1) provides that a person requested to testify and produce documents, records, or items in the Requested Party be summoned, if necessary by subpoena or order, to appear and testify and produce such documents, records, or items, in accordance with the requirements of the law of the Requested Party. Article 10(2) further states that, in accordance with procedures used in the Requested Party, persons present at the execution of a request must be permitted to pose questions directly or to formulate questions to be posed to the person being questioned, and to make a verbatim transcript of the proceeding using, if necessary, technical means. In the event that a person whose testimony or evidence is being taken asserts a claim of immunity, incapacity or privilege under the laws of the Requesting Party, Article 10(3) provides that the evidence will still be taken and the claim made known to the Requesting Party for resolution by its authorities.

Article 11 addresses the procedures for obtaining testimony in the Requesting Party. Article 11(1) provides a mechanism for the Requesting Party to invite the voluntary appearance in its territory of a person located in the Requested Party. As part of its invitation, the Requesting Party must indicate the extent to which the expenses and allowances will be paid. The Central Authority of the Requested Party is required to inform promptly the Central Authority of the Requesting Party of the response of the person. A person who agrees to appear may ask that the Requesting Party advance money to cover these expenses. This advance may be provided through the Embassy or a consulate of the Requesting Party. Article 11(2) provides that a person appearing in the Requesting Party pursuant to this Article will not be subject to service of process, or be detained or subjected to any restriction of personal liberty by reason of any acts or convictions that preceded the person's departure from the Requested Party. If this guarantee cannot be provided for any reason, the Central Authority of the Requesting Party is obligated to indicate this in the request to inform the invited person and to allow that person to decide whether to appear taking these circumstances into account.

IX

Under Article 11(3), any safe conduct provided for by this Article ceases seven days after the Central Authority of the Requesting Party has notified the Central Authority of the Requested Party that the person's presence is no longer required, or if the person has left the Requesting Party and has voluntarily returned to it. The Central Authority of the Requesting Party may, in its discretion, extend this safe conduct period up to fifteen days if it determines that there is good cause to do so.

Article 12 provides that a person who is in the custody of either Party and whose presence in the other Party is sought for purposes of legal assistance under the Treaty will be transferred to that Party for that purpose if the person consents and the Central Authorities of both Parties agree. Under this article, for example, a witness incarcerated in the Requested Party could be transferred to the Requesting Party to have his deposition taken in the presence of the defendant or a defendant in the Requesting Party could be transferred to attend a witness deposition in the Requested Party.

Article 12(2) further establishes both the express authority and the obligation of the receiving Party to maintain the person transferred in custody unless otherwise authorized by the sending Party. The return of the person transferred is to occur as soon as circumstances permit or as otherwise agreed by both Central Authorities, and the sending Party is not required to initiate extradition proceedings for return of the person transferred. The person transferred receives credit for service of the sentence imposed in the sending Party for time served in the custody of the receiving Party. Where the sentence imposed expires, or where the sending Party advises the receiving Party that the transferred person is no longer required to be held in custody, the person is to be treated as a person invited pursuant to Article 11 or returned to the sending Party.

Article 13 requires that, upon request, the Requested Party Provide the Requesting Party with copies of publicly available records, including documents or information of any nature and in any form that are in the possession of an executive, legislative, or judicial authority in the Requested Party. The Requested Party may further provide copies of records, including documents or information of any nature and in any form that are in the possession of an executive, legislative, or judicial authority in that Party, but that are not publicly available, but only to the same extent and under the same conditions as these records would be available to the competent authorities of that Party. The Requested Party has the discretion to deny the latter type of request entirely or in part.

Article 14 requires the Requested Party to use its best efforts to ascertain the location or identity of persons or information about items in the Requested Party specified in a request.

Article 15 obligates the Requested Party to use its best efforts to effect service of documents pursuant to a request. A request for the service of a document requiring a person to appear in the Requesting Party must be transmitted a reasonable time before the scheduled appearance. Proof of service is to be provided in the manner specified in the request.

Article 16 provides the conditions through which items can be located, seized and transferred. Article 16(1) obligates the Requested

x

Party to execute requests for search, seizure, and transfer of any item to the Requesting Party if the request includes the information justifying such action under the laws of the Requested Party. Article 16(2) provides that, if requested, every official of the Requested Party who has custody of a seized item certify the identity of the item, the continuity of its custody, and the integrity of its condition. Article 16(3) further provides that the Requested Party may require that the Requesting Party agree to the terms and conditions deemed necessary to protect third-party interests in items to be transferred.

Article 17 addresses the transfer of documents, records, and other items. When a request for legal assistance concerns the transfer of documents or records, Article 17(1) requires the Requested Party to transfer true copies of them, unless the Requesting Party expressly requests the originals, in which case the Requested Party must make every effort to comply with the request. Article 17(2) further provides that, insofar as not prohibited by its laws, the Requested Party is obligated to transfer documents, records, or other items in such a manner or accompanied by such certification as may be requested by the Requesting Party in order to make them admissible according to the law of the Requesting Party. For this purpose, the Central Authorities of the Parties will exchange information pursuant to Article 3(3) with respect to the requirements for admissibility in their respective legal systems. Documents, records, and other items transferred as requested under this paragraph require no further certification to make them admissible. Article 17(3) states that the Central Authority of the Requested Party may require the Central Authority of the Requesting Party to return, as soon as possible, any documents, records, or other items furnished to it in execution of a request under the Treaty.

Article 18 obligates the Parties, in accordance with their laws, to assist each other in locating, immobilizing, and seizing proceeds, including earnings from, or that are the result of, criminal activities, as well as instrumentalities of crime, for purposes of forfeiture, restitution to victims of crime, and collection of fines imposed pursuant to judicial decisions in criminal matters. Article 18(2) provides that if the Central Authority of one Party becomes aware that proceeds and instrumentalities of crime that may be subject to forfeiture are located in the territory of the other Party, it may so inform the Central Authority of the other Party so that the other Party may take appropriate measures under Article 18(3). The Central Authority receiving the information is obligated to notify the Central Authority providing the information of the action taken.

Under Article 18(3), the Party that has immobilized, seized, or forfeited the proceeds and instrumentalities of crime is required to dispose of them in accordance with its laws. That Party shall transfer all or part of such forfeited assets, or the proceeds of their sale, to the other Party, including for the purpose of forefeiture and restitution, insofar as permitted by its laws and to the extent it deems it appropriate and within the time frame and under the conditions it deems acceptable.

XI

Article 19 provides that the Central Authorities will consult, at times mutually agreed, to promote the most effective use of the Treaty.

Article 20 states that the Treaty applies to any requests presented after its entry into force even if the relevant acts or omissions occurred before that date.

Article 21 provides that the provisions of the Treaty will not prevent either of the Parties from cooperating and granting legal assistance in accordance with the provisions of other applicable international treaties and agreements, national laws, and practices.

Article 22 provides that the Treaty is subject to ratification and will enter into force upon the exchange of instruments of ratification, which is to take place as soon as possible. Article 22(2) provides further that, upon entry into force of the Treaty, the Agreement between the Government of the United States of America and the Government of the Russian Federation on Cooperation in Criminal Matters, signed on June 30, 1995, will no longer be in force. Article 22(3) states that either Party may terminate the Treaty by written notice to the other Party through the diplomatic channel, and that such termination will take effect six months following the date of receipt of notification.

A Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation, consisting of representatives from the Departments of Justice and State, and will be transmitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate as soon as possible.

Respectfully submitted.

STROBE TALBOT.

**TREATY BETWEEN**
**THE UNITED STATES OF AMERICA**
**AND**
**THE RUSSIAN FEDERATION**
**ON**
**MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS**

(1)

2

The United States of America and the Russian Federation (hereinafter referred to as "the Parties"),

Striving to broaden and deepen American-Russian cooperation to prevent and fight against crime, and

Reaffirming their determination to enhance legal assistance in criminal matters,

Have agreed as follows:

3

-2-

## ARTICLE 1

### GENERAL PROVISIONS

1.     The Parties shall provide to each other, in accordance with this Treaty, comprehensive mutual legal assistance in criminal matters.

2.     For the purposes of this Treaty, legal assistance in criminal matters shall mean any assistance provided by the Parties in connection with:  prevention, suppression, and investigation of crimes; criminal prosecutions; and other proceedings related to such criminal matters.

3.     Legal assistance shall be provided in accordance with the provisions of this Treaty where the conduct that is the subject of the request constitutes a crime under the laws of both Parties.  The Requested Party may, in its discretion, also provide legal assistance where the conduct that is the subject of the request would not constitute a crime under the laws of the Requested Party.

4.     This Treaty is intended solely for cooperation and legal assistance between the Parties.  The provisions of this Treaty shall not give rise to a right on the part of any other persons to obtain evidence, to have evidence excluded, or to impede the execution of a request.

5.     For purposes of this Treaty, the term "person" shall mean both individuals and legal entities in the following articles: Article 1(4), Article 2(4), Article 5(3) subparagraphs 1-5, Article 10(1), Article 14, and Article 15(2).

## ARTICLE 2

### SCOPE OF LEGAL ASSISTANCE

Legal assistance under this Treaty shall include:

    (1)     obtaining testimony and statements;

    (2)     providing documents, records, and other items;

    (3)     serving documents;

    (4)     locating and identifying persons and items;

    (5)     executing requests for searches and seizures;

    (6)     transferring persons in custody for testimony or other purposes under this Treaty;

    (7)     locating and immobilizing assets for purposes of forfeiture, restitution, or collection of fines; and

    (8)     providing any other legal assistance not prohibited by the laws of the Requested Party.

4

-3-

## ARTICLE 3

### CENTRAL AUTHORITIES AND PROCEDURES
### FOR COMMUNICATIONS

1.    Each Party shall implement the provisions of this Treaty, including the making and receiving of requests, through its Central Authority.

2.    For the United States of America, the Central Authority shall be the Attorney General or persons designated by the Attorney General.  For the Russian Federation, the Central Authority shall be the Office of the Procurator General of the Russian Federation or persons designated by the Procurator General.

3.    The Central Authorities shall communicate directly with one another for the purposes of this Treaty and may agree upon such practical measures as may be necessary to facilitate the implementation of this Treaty.


## ARTICLE 4

### DENIAL OF LEGAL ASSISTANCE

1.    The Central Authority of the Requested Party may deny legal assistance if:

   (1)    the request relates to a crime under military law that is not a crime under general criminal law;

   (2)    the execution of the request would prejudice the security or other essential interests of the Requested Party; or

   (3)    the request does not conform to the requirements of this Treaty.

2.    The Requested Party shall not decline execution of a request on the ground of bank secrecy.

3.    Before denying legal assistance pursuant to paragraph 1 of this Article, the Central Authority of the Requested Party shall consult with the Central Authority of the Requesting Party to consider whether legal assistance can be given subject to such conditions as it deems necessary.  If the Requesting Party accepts legal assistance subject to these conditions, it shall comply with the conditions.

4.    If the Central Authority of the Requested Party denies legal assistance, it shall inform the Central Authority of the Requesting Party of the reasons for the denial.

5

-4-

**ARTICLE 5**

**FORM AND CONTENTS OF REQUESTS**
**FOR LEGAL ASSISTANCE**

1.      A request for legal assistance shall be in writing, but in urgent situations the Central Authority of the Requested Party may accept a request in another form.  If the request is not in writing, the request shall be confirmed in writing within ten days of its receipt by the Requested Party unless the Central Authority of the Requested Party agrees otherwise.

2.      The request shall include:

     (1)      the identity of the authority on whose behalf the request is made;

     (2)      a description of the facts and circumstances of the case;

     (3)      the text of the law under which the conduct constitutes a crime;

     (4)      a description of the legal assistance sought; and

     (5)      a statement of the purpose for which the legal assistance is sought.

3.      To the extent necessary and possible, a request shall also include:

     (1)      information on the identity and suspected location of a person to be located;

     (2)      information on the identity and location of a person to be served, that person's relationship to the proceeding, and the manner in which service is to be made;

     (3)      information on the identity and location of a person from whom evidence is sought;

     (4)      a list of questions to be asked of a person identified in the request;

     (5)      a precise description of the place or person to be searched and of the item to be seized;

     (6)      a description of procedures for the execution of the request;

     (7)      information as to the allowances and expenses to which a person asked to appear in the territory of the Requesting Party will be entitled; and

     (8)      any other information that may be brought to the attention of the Central Authority of the Requested Party to facilitate the execution of the request.

4.      The request shall be prepared and signed in accordance with the regulations of the Requesting Party.

6

-5-

## ARTICLE 6

### LANGUAGE

Except as otherwise agreed by the Central Authorities of the Parties, requests for legal assistance and documents attached thereto shall be accompanied by a translation into the language of the Requested Party.

## ARTICLE 7

### EXECUTION OF REQUESTS

1.    The Central Authority of the Requested Party shall promptly execute the request or shall transmit it to the authority having jurisdiction to do so.  The competent authorities of the Requested Party shall do everything in their power to execute the request in a timely manner.

2.    The Central Authority of the Requested Party shall represent the interests of the Requesting Party in executing the request.

3.    Requests shall be executed in accordance with the laws of the Requested Party except if this Treaty provides otherwise.  The competent authorities of the Requested Party shall have the authority to issue subpoenas, search warrants, or other orders necessary for the execution of requests.  Except if prohibited by its laws, the Requested Party shall follow procedures specified in the request.

4.    If the Central Authority of the Requested Party considers that execution of a request will interfere with a criminal investigation, criminal prosecution, or proceeding related to a criminal matter ongoing in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting Party.  If the Requesting Party accepts the legal assistance subject to these conditions, it shall comply with the conditions.

5.    The Requested Party shall use its best efforts to keep confidential a request and its contents if so requested by the Central Authority of the Requesting Party.  If execution of the request would require a breach of this confidentiality, the Central Authority of the Requested Party shall so inform the Central Authority of the Requesting Party, which shall then determine whether the request should be executed under such circumstances.

6.    The Central Authority of the Requested Party shall respond to inquiries by the Central Authority of the Requesting Party concerning progress toward execution of the request.

7.    Upon request of the Central Authority of the Requesting Party, the Central Authority of the Requested Party shall furnish information in advance about the date and place of the execution of a request.  During the execution of a request, the Requested Party shall permit the presence of such persons as are specified therein.

8.    The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the outcome of the execution of the request.  If the request is not executed, or if execution is delayed or postponed, the Central Authority of

7

-6-

the Requested Party shall inform the Central Authority of the Requesting Party of the reasons for non-execution, delay, or postponement.

## ARTICLE 8

### COSTS

1.    The Requested Party shall pay all costs relating to the execution of the request, except that the Requesting Party shall pay for the fees of experts, the costs of translation, interpretation, and transcription, and the allowances and expenses related to travel of persons pursuant to Articles 11 and 12 of this Treaty.

2.    If it becomes apparent that the execution of the request requires expenses of an extraordinary nature, the Central Authorities of the Parties shall consult to determine the terms and conditions under which the requested legal assistance can be provided.

## ARTICLE 9

### LIMITATIONS ON USE
### OF THE RESULTS OF EXECUTED REQUESTS

1.    The Central Authority of the Requested Party may require that the Requesting Party not use the results of the execution of a request obtained under this Treaty for purposes other than those described in the request without the prior consent of the Central Authority of the Requested Party.  In such cases, the Requesting Party shall comply with such limitations on use of the results of the executed request.

2.    Nothing in this Article shall preclude the use or disclosure of the results of an executed request to the extent that there is an obligation to do so under the Constitution of the Requesting Party in a criminal prosecution.  The Central Authority of the Requesting Party shall notify the Central Authority of the Requested Party in advance of any such possible or proposed use or disclosure.

3.    The results of an executed request that have been used for the purpose for which they were provided and, in the course of such use, have been made public in the Requesting Party in accordance with this Treaty may thereafter be used for any purpose.

## ARTICLE 10

### OBTAINING TESTIMONY AND EVIDENCE IN
### THE REQUESTED PARTY

1.    A person requested to testify and produce documents, records, or items in the Requested Party shall be summoned, if necessary by subpoena or order, to appear and testify and produce such documents, records, or items, in accordance with the requirements of the law of the Requested Party.

2.    In accordance with procedures used in the Requested Party, persons present at the execution of a request shall be permitted to pose questions directly or to formulate

8

-7-

questions that shall be posed to the person being questioned, and to make a verbatim transcript of the proceeding using, if necessary, technical means.

3.     If the person referred to in paragraph 1 of this Article asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting Party, the evidence shall nonetheless be taken and the claim made known to the Requesting Party for resolution by the authorities of the Requesting Party.

## ARTICLE 11

### OBTAINING TESTIMONY IN
### THE REQUESTING PARTY

1.     When the Requesting Party requests the appearance of a person in its territory, the Requested Party shall invite the person to appear before the appropriate authority in the Requesting Party.  The Requesting Party shall indicate the extent to which the expenses and allowances will be paid.  The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the response of the person.  A person who agrees to appear may ask that the Requesting Party advance money to cover these expenses.  This advance may be provided through the Embassy or a consulate of the Requesting Party.

2.     A person appearing in the Requesting Party pursuant to this Article shall not be subject to service of process, or be detained or subjected to any restriction of personal liberty, by reason of any acts or convictions that preceded the person's departure from the Requested Party.  If such guarantee cannot be provided for any reason, the Central Authority of the Requesting Party shall indicate this in the request in order to inform the invited person and to allow that person to decide whether to appear taking these circumstances into account.

3.     The safe conduct provided for by this Article shall cease seven days after the Central Authority of the Requesting Party has notified the Central Authority of the Requested Party that the person's presence is no longer required, or if the person has left the Requesting Party and voluntarily returned to it.  The Central Authority of the Requesting Party may, in its discretion, extend this period up to fifteen days if it determines that there is good cause to do so.

## ARTICLE 12

### TRANSFER OF PERSONS
### IN CUSTODY

1.     A person in the custody of either Party whose presence in the other Party is sought for purposes of legal assistance under this Treaty shall be transferred from the sending Party to the receiving Party for that purpose if the person consents and if the Central Authorities of both Parties agree.

9

-8-

2.   For the purposes of this Article:

   (1)   the receiving Party shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending Party;

   (2)   the receiving Party shall return the person transferred to the custody of the sending Party as soon as circumstances permit or as otherwise agreed by both Central Authorities;

   (3)   the receiving Party shall not require the sending Party to initiate extradition proceedings for the return of the person transferred;

   (4)   the person transferred shall receive credit for service of the sentence imposed in the sending Party for time served in the custody of the receiving Party; and

   (5)   where the sentence imposed expires, or where the sending Party advises the receiving Party that the transferred person is no longer required to be held in custody, that person shall be treated as a person invited pursuant to Article 11 or returned to the sending Party.

## ARTICLE 13

### PRODUCTION OF OFFICIAL RECORDS

1.   Upon request, the Requested Party shall provide the Requesting Party with copies of publicly available records, including documents or information of any nature and in any form in the possession of an executive, legislative, or judicial authority in the Requested Party.

2.   The Requested Party may provide copies of any records, including documents or information of any nature and in any form that are in the possession of an executive, legislative, or judicial authority in that Party, but that are not publicly available, but only to the same extent and under the same conditions as such records would be available to the competent authorities of that Party.  The Requested Party may in its discretion deny a request pursuant to this paragraph entirely or in part.

## ARTICLE 14

### LOCATION OR IDENTIFICATION OF PERSONS AND ITEMS

   If the Requesting Party seeks the location or identity of persons or information about items in the Requested Party, the Requested Party shall use its best efforts to execute the request.

10

-9-

## ARTICLE 15

### SERVICE OF DOCUMENTS

1.     The Requested Party shall use its best efforts to effect service of documents pursuant to a request.

2.     The Requesting Party shall transmit any request for the service of a document requiring the appearance of a person before a competent authority in the Requesting Party a reasonable time before the scheduled appearance.

3.     The Requested Party shall return to the Requesting Party a proof of service in the manner specified in the request.

## ARTICLE 16

### SEARCH AND SEIZURE

1.     The Requested Party shall execute a request for the search, seizure, and transfer of any item to the Requesting Party if the request includes the information justifying such action under the laws of the Requested Party.

2.     If requested, every official of the Requested Party who has had custody of a seized item shall certify the identity of the item, the continuity of its custody, and the integrity of its condition.

3.     The Requested Party may require that the Requesting Party agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

## ARTICLE 17

### TRANSFER OF DOCUMENTS, RECORDS, AND OTHER ITEMS

1.     When a request for legal assistance concerns the transfer of documents or records, the Requested Party shall transfer true copies thereof, unless the Requesting Party expressly requests the originals, in which case the Requested Party shall make every effort to comply with the request.

2.     Insofar as not prohibited by its laws, the Requested Party shall transfer documents, records, or other items in such manner or accompanied by such certification as may be requested by the Requesting Party in order to make them admissible according to the law of the Requesting Party.   For this purpose, the Central Authorities of the Parties shall exchange information pursuant to Article 3(3) with respect to the requirements for admissibility in their respective legal systems.  Documents, records, and other items transferred as requested under this paragraph shall require no further certification to make them admissible.

11

-10-

3.    The Central Authority of the Requested Party may require that the Central Authority of the Requesting Party return, as soon as possible, any documents, records, or other items furnished to it in execution of a request under this Treaty.


### ARTICLE 18

### PROCEEDS AND INSTRUMENTALITIES OF CRIME

1.    The Parties, in accordance with their laws, shall assist each other in locating, immobilizing, and seizing proceeds, including earnings from, or that are the result of, criminal activities, as well as instrumentalities of crime, for the purpose of:  forfeiture; restitution to victims of crime; and collection of fines imposed pursuant to judicial decisions in criminal matters.

2.    If the Central Authority of one Party becomes aware that proceeds and instrumentalities of crime that may be subject to forfeiture are located in the territory of the other Party, it may so inform the Central Authority of the other Party so that the other Party may take appropriate measures under paragraph 3 of this Article.  The Central Authority receiving the information shall notify the Central Authority providing the information of the action taken.

3.    The Party that has immobilized, seized, or forfeited the proceeds and instrumentalities of crime shall dispose of them in accordance with its laws. That Party shall transfer all or part of such assets, or the proceeds of their sale, to the other Party, including for the purpose of forfeiture and restitution (which includes returning them to the rightful owner) insofar as permitted by its laws and to the extent it deems it appropriate and within the time frame and under the conditions it deems acceptable.


### ARTICLE 19

### CONSULTATION

The Central Authorities shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty.


### ARTICLE 20

### SCOPE OF APPLICATION

This Treaty shall apply to any requests presented after its entry into force even if the relevant acts or omissions occurred before that date.

12

-11-

## ARTICLE 21

### OTHER LEGAL BASES FOR COOPERATION

The provisions in this Treaty shall not prevent either of the Parties from cooperating and from granting legal assistance in accordance with the provisions of other applicable international treaties and agreements, national laws, and practices.

## ARTICLE 22

### ENTRY INTO FORCE AND TERMINATION

1.      This Treaty shall be subject to ratification, and shall enter into force upon the exchange of the instruments of ratification, which shall take place as soon as possible.

2.      Upon entry into force of this Treaty, the Agreement between the Government of the United States of America and the Government of the Russian Federation on Cooperation in Criminal Matters, signed on June 30, 1995, shall no longer be in force.

3.      Either Party may terminate this Treaty by means of written notice to the other Party through the diplomatic channel.  Termination shall take effect six months following the date of receipt of such notification.

DONE at *Moscow* , this *17th* day of *June* , 1999, in duplicate, in the English and Russian languages, both texts being equally authentic.

FOR THE  UNITED STATES OF AMERICA:      FOR THE RUSSIAN FEDERATION:

13

EMBASSY OF THE
UNITED STATES OF AMERICA

LES/063                                    Moscow, June 17, 1999

Excellency:

      I have the honor to refer to the treaty between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters (the "Treaty",) signed on this date.

      In connection with the treaty, my government notes that during its negotiation the United States delegation agreed to delete from Article 4(1) its proposal for the inclusion of an express reference to a "political offense" exception among the bases for denial of assistance under the treaty.  In so doing, the United States took into account the view of the Russian delegation that the term "political offense" is not used in Russian law and that Article 4(1) (2) of the treaty provided an adequate basis upon which to deny assistance requests in cases the United States would consider "political offenses."  Article 4(1) (2) permits each party to deny assistance if the execution of the request would prejudice the "security or other essential interests" of the requested party.  I hereby confirm that it is the view of the United States that Article 4(1) (2) is sufficient to meet the

His Excellency

    Igor Ivanov,

        Minister of Foreign Affairs,

           The Russian Federation.

14

- 2 -

concerns of the United States in this area, and the United States will implement the treaty accordingly.

Accept, Excellency, the renewed assurances of my highest consideration.

15

**DEPARTMENT OF STATE**
OFFICE OF LANGUAGE SERVICES
(Translation Division)

LS No.    0992972
          JS/
          Russian

His Excellency
J. Collins
Ambassador Extraordinary and Plenipotentiary
of the United States of America
n the Russian Federation

Moscow

No. 3729/dsa

Moscow, September 22, 1999

Your Excellency:

I have the honor to confirm receipt of your note no. LES/063 of June 17, 1999, concerning the Treaty between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters signed on June 17, 1999, which [note] reads as follows:

[The Russian translation of the aforesaid note corresponds in all substantive respects to the text of the English original, with the following exception;

English: ...is sufficient to meet the concerns of the United States in this area...
Russian [translated]: ...is sufficient grounds for concern in this area...]

I have the honor to report that the Russian side shares the understanding in regard to Article 4(1)(2) set forth in the above-mentioned note.

Please accept, Your Excellency, the assurances of my highest consideration.

[s] A. Avdeyev

/Stamp of the RF Ministry of Foreign Affairs/

16

**DEPARTMENT OF STATE**
OFFICE OF LANGUAGE SERVICES
(Translation Division)

|  |  |
|---|---|
| LS No. | 1000193 |
|  | JS/ |
|  | Russian |

MINISTRY OF FOREIGN AFFAIRS
OF THE RUSSIAN FEDERATION

No. 4289/dsa

     The Ministry of Foreign Affairs of the Russian Federation presents its compliments to the Embassy of the United States of America and, referring to its note no. 3729 of September 22, 1999, concerning paragraph 1(2) of Article 4 of the Treaty between the Russian Federation and the United States of America on Cooperation in Criminal Law Matters, has the honor to request that the final sentence in the first paragraph on the second page of the aforesaid note read as follows: "I hereby confirm that, from the viewpoint of the United States, paragraph 1(2) of Article 4 is sufficient to meet the concern in this area, and that the United States will apply this Treaty accordingly."

     The Ministry avails itself of this opportunity to renew to the Embassy the assurances of its high consideration.

                    Moscow
                    October 20, 1999

           /Stamp of the MFA of the Russian Federation/

To the Embassy of the United States of America
Moscow