**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

CONCORD MANAGEMENT AND
CONSULTING LLC

      Defendant.

CRIMINAL NUMBER:

1:18-cr-00032-2-DLF

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN
SUPPORT OF MOTION TO QUASH UNSERVED EARLY RETURN TRIAL
SUBPOENA AND OPPOSITION TO THE GOVERNMENT'S RENEWED MOTION
FOR EARLY RETURN TRIAL SUBPOENA**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION ........................................................................................ 1

II.    LAW & ARGUMENT.............................................................................. 2

    A.    The Government's Request Is A Fishing Expedition Because It Is Not
           Reasonably Specific Enough To Meet Its Burden Under Nixon............................. 2

         1.    The government's broad interpretation of Rule 17 is not the law .............. 3

         2.    The proper Rule 17 standard requires much more than the
                government offers in its renewed subpoena request .................................... 5

         3.    The legal authority the government cites does not change the
                outcome.......................................................................................................... 8

    B.    Compliance with Requests Three, Four, Five, and Six threaten violations
           of Russian law...................................................................................................... 10

    C.    Neither personal jurisdiction nor appearance through an attorney is
           sufficient to serve Concord with a trial subpoena under Rule 17 ........................ 17

         1.    The notion that personal jurisdiction is sufficient to permit service
                of a subpoena on Concord is a red herring ................................................ 17

          2.    Appearance through counsel does not open the door to service of a
                trial subpoena on a foreign corporation defending itself in a
                criminal prosecution yet has no presence in the United States................. 22

III.   CONCLUSION........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998)................................................................................21, 22

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*,
  706 F. Supp. 2d 11 (D.D.C. 2009) ...............................................................................4

*In re Grand Jury Subpoenas Issued to Thirteen Corporations*,
  775 F.2d 43 (2d Cir. 1985)...........................................................................................24

*In re Sealed Case*,
  932 F.3d 915 (D.C. Cir. 2019) .....................................................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)......................................................................................................19

*Kelberine v. Societe Internationale, Etc.*,
  363 F.2d 989 (D.C. Cir. 1966) .....................................................................................23

*Ott v. City of Milwaukee*,
  682 F.3d 552 (7th Cir. 2012) .......................................................................................24

*SEC v. Pence*,
  322 F.R.D. 450 (S.D.N.Y. 2017) .................................................................................24

*United States v. Ali*,
  718 F.3d 929 (D.C. Cir. 2013) .....................................................................................21

*United States v. Grooms*,
  6 F. App'x 377 (7th Cir. 2001) ....................................................................................20

*United States v. Libby*,
  432 F. Supp. 2d 26 (D.D.C. 2006) .........................................................................3, 4, 6

*United States v. McCollom*,
  651 F. Supp. 1217 (N.D. Ill. 1987) ..........................................................................9, 10

*United States v. Nixon*,
  418 U.S. 683 (1974)............................................................................................. *passim*

*United States v. Poindexter*,
  727 F. Supp. 1501 (D.D.C. 1989) .................................................................................3

*United States v. Rajaratnam*,
    No. 09-cr-1184, 2011 WL 335170 (S.D.N.Y. Feb. 2, 2011) ....................................9

*United States v. Scala*,
    432 F. Supp. 2d 395 (S.D.N.Y. 2006)................................................................8, 9

*United States v. Vo*,
    78 F. Supp. 3d 171 (D.D.C. 2015)............................................... *passim*

*Waste Conversion, Inc. v. Rollins Envtl. Servs.*,
    893 F.2d 605 (3d Cir. 1990).............................................................................20

**Statutes**

28 U.S.C. § 1782(a) .............................................................................................19

28 U.S.C. § 1783(a) .............................................................................................19

**Rules**

Fed. R. Civ. P. 45.................................................................................................24

Fed. R. Crim. P. 17 ........................................................................................18, 19

Fed. R. Crim. P. 49 .............................................................................................22

**Other Authorities**

9 *Moore's Federal Practice – Civil* § 45.22 ...............................................................20

Federal'ny Zakon o Personal'nykh Dannykh [Personal Data Law] art. 6(1)(3)
    (Russia), available at http://ips.pravo.gov.ru:8080/document/285, English
    translation at 287-11 ...............................................................................15, 16

Konstitutsiya Rossiiskoi Federatsii [Russian Constitution] art. 118 (Russia)
    (emphasis added), *available at* http://ips.pravo.gov.ru:8080/document/513/.........................16

Poyasnitel'naya Zapiska k Proyektu Federal'nogo Zakona [Explanatory Note to
    Draft Law] (Russia) (Oct. 6, 2016), *available at*
    http://sozd.duma.gov.ru/download/FDFC2590-D52A-4206-B15E-
    8B7FD055585E ..........................................................................................17

Treaty Between the United States of America and the Russian Federation on
    Mutual Legal Assistance in Criminal Matters, June 17, 1999, S. Treaty Doc.
    No. 106-22, available at https://www.state.gov/13046.......................................7, 11

Pursuant to Federal Rule Criminal Procedure 17(c), Defendant Concord Management and Consulting LLC ("Concord" or "Defendant"), through counsel, submits this reply supporting its Motion to Quash the Early Return Trial Subpoena and Opposition to the Government's Renewed Motion for Early Return Trial Subpoena.  In reply, Concord states as follows:

## I.      INTRODUCTION

The government occupies a lofty perch in its defense of its over-broad and unlawful trial subpoena, ultimately accusing Concord of a lack of good faith for having the temerity to resist it. Indeed, the government chastises Concord for alternatively failing to perceive the relevance of its document requests, or understanding that its subpoena is really quite narrow, or ignoring their settled truism that once counsel appears to defend a criminal case, the obligation of a party to respond to a subpoena is a *fait accompli*.  Not content, the government piles on by dismissing as inconsequential or illusory Concord's reliance on the provisions of Rule 17, the apparent conflicts engendered by its representation, and concerns about jeopardy under Russian law.  Remarkably, the government's condemnations lack the one thing you would expect, given its high-handed tone—an on point case that authorizes what it is up to.  Rather, the government just bends the rules and stretches the case law in pursuit of its goal to improperly obtain discovery.

To be clear, undersigned counsel has no knowledge whether responsive documents even exist, and has no authority to make that determination without facing potential ramifications under Russian law.  And the opinions of an alleged government expert—an academic who is not a Russian lawyer and who has no skin in the game—do not change these facts.

Here, the threat of prosecution under Russian law is not determined by how the prosecutors intend to try this case or whether they will implicate the Russian government in doing so.  What matters is how the Russian government could treat Concord's responses, no matter what the government's trial counsel intends.  When the proper perspective is adopted, it becomes critical

1

that Attorney General Barr and Special Counsel Mueller have written and stated that (1) the Russian government is behind the activities at issue in this proceeding; and (2) this criminal proceeding is part of an effort to deter the Russian government from interfering with U.S. elections. If the Russian government holds that same view—and there is no reason given these pronouncements to think it does not—then responding to the discovery sought would be punishable under Russian law for the reasons Concord advances. Apart from that, Professor Stephan's affidavit that downplays any supposed conflicts is riddled with misperceptions about this case and the strictures of Russian law. Any attempt to rely on it would perpetrate an injustice.

The trial subpoena should be rejected because it conflicts with Rule 17, fails to meet legally-required specificity requirements, threatens violations of Russian law and, ultimately, transgresses constitutional and comity principles that deserve respect in this proceeding as they would in any other.

## II.    LAW & ARGUMENT

### A.    The Government's Request Is A Fishing Expedition Because It Is Not Reasonably Specific Enough To Meet Its Burden Under *Nixon*

The government is seeking untranslated documents which—if they exist—are stored overseas, that theoretically would help prove the government's case. The government says that its proffered theoretical relevance argument carries the day but it has cited no case allowing a Rule 17 subpoena to be issued to the defendant seeking this breadth of material on this flimsy a reed—because there is none. Instead, the government's requests stray into "fishing expedition" territory, beyond what Rule 17 permits. *See United States v. Nixon*, 418 U.S. 683, 698, 700 (1974) (recognizing that a subpoena *duces tecum* is "not intended to provide a means of discovery for criminal cases," and cannot be "intended as a general 'fishing expedition'").

1.      **The government's broad interpretation of Rule 17 is not the law**

Under the government's reading of *Nixon*, the only factor that limits a trial subpoena request is the government's own imagination about what might be relevant—if it can fantasize it, it can have it.  To establish its construct, the government first sets up a straw man to knock down, noting that an early-return trial subpoena "does not require 'exquisite specificity.'"  Opp. 5 (quoting *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006)).  But this miscasts what *Libby* actually provides.  The complete text from *Libby* states that "while 'exquisite specificity' is not required, . . . courts *will not approve a subpoena* for documents based upon requests for disclosure from *broad categories of documents*."  432 F. Supp. 2d at 31 (citations omitted) (emphasis added).  In support of this proposition, *Libby* cites *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989), which also involved a subpoena issued by the defendant, and so the court ruled that it "will not place the *defendant* in the impossible position of having to provide exquisite specificity as a prerequisite to enforcement of the subpoena" (emphasis added).  Thus, the government's crucial language actually arises out of a desire to help *defendants* overcome the *Nixon* specificity requirement—presumably because they (unlike the government here) lack the resources and investigative tools that would allow them to be more specific.

But the critical point is that specificity still is required, particularly from the government, and the benchmark for specificity is not, as the government suggests, all of the evidence that ultimately might prove relevant to its case against Concord.  This sort of vague assertion in pursuit of relevance is not enough.  *United States v. Vo*, 78 F. Supp. 3d 171, 181 (D.D.C. 2015) (rejecting government's argument that requested subpoena would produce evidence for its case-in-chief, finding it amounted to a "vague justification" and attempted to use Rule 17 as a discovery device).  Nor is it sufficient for the government to identify a "general category of document at issue" along with allegations "that the target was involved in the crime," in the "hopes that something will turn

3

up."  *Id.*; *see also Libby*, 432 F. Supp. 2d at 35 ("In essence the [subpoena requestor] is simply seeking to examine general categories of documents with the hope that they contain information that may be helpful to his [case].").  Instead, a party seeking a Rule 17 subpoena must offer a "link that explains what [it] expect[s] to find and why it expect[s] to find it."  *Vo*, 78 F. Supp. 3d at 181. Here, the government's filings deliberately avoid the concrete link it is required to make.

The government further bends Rule 17 by minimizing the requirement that it must identify why it cannot properly prepare for trial without the requested documents and why the failure to obtain such inspection may tend unreasonably to delay the trial.  Opp. 5-6 (citing Mot. 35).  This Court has analyzed the question of "why" in the context of a Rule 17 subpoena request.  *See Libby*, 432 F. Supp. 2d at 33, 35 (outlining the defendant's arguments for why the subpoenaed materials would be useful at trial and recognizing that the Court "consider[ed] the basis for the defendant's requests to obtain them"); *see also Nixon*, 418 U.S. at 700 (requiring, as part of the Rule 17 calculus, that the evidence also be relevant and admissible).  Once again, the "link" between what the government expects and "*why*" it expects to find it is inextricably tied to the specificity of the request, the context of the case, and the manner of proof at trial.  *Vo*, 78 F. Supp. 3d at 181 (emphasis added); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 706 F. Supp. 2d 11, 14 (D.D.C. 2009).  Indeed, this Court has acknowledged that "[i]t is important to remember that 'one of the major purposes of the specificity requirement is to provide the subpoenaed party . . . with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility.'"  *Libby*, 432 F. Supp. 2d at 32 (quoting *United States v. Anderson*, 31 F. Supp. 2d 933, 945 (D. Kan. 1998)).  And once again, the government's refrain that the documents sought would prove to be relevant does not account for these requirements.

### 2. The proper Rule 17 standard requires much more than the government offers in its renewed subpoena request

When the focus shifts back, as it must, to the specificity of the request and the conduct of trial, the government's analysis loses any persuasive force and its effort to defend its over-broad subpoena collapses.  Under the controlling standard, it is apparent that the government's requests, inclusively, remain insufficient.

*Request Four*.  The government abjectly fails to establish a link between its request for all records reflecting payments from Concord to "fund the activities of the Internet Research Agency" and what it hopes to find.  In particular, the government fails to respond to Concord's argument that it did not identify a single document that actually reflects a payment from Concord funding the activities of IRA.  *See* Mot. 39.  Instead, it continues to rely on the oblique language that Request Four is "likely to" produce records showing financial transactions that may have occurred.  Renewed Mot. 4.  In its brief, the government's argument becomes even further attenuated, by stating that the government has a "strong basis to believe that Concord [(1)] made payments to fund the IRA's activities and that [(2)] Concord keeps records of those payments."  Opp. 6.  But wait, Concord's alleged payments are the basis upon which it is connected to IRA, Ind. ¶ 11, and if the government can't prove that with the documents it already has then the case should not go forward to trial.  The government makes yet another unsupported leap of faith by stating that "[g]iven the limited nature of the IRA's activities and the nature of the conspiracy charged here, it is highly likely that any payment from Concord funding the IRA's activities is pertinent."  Opp. 7.  This ask plainly refers only to a "general category of document," made in conjunction with

allegations that Concord "was involved in the crime" by funding IRA, all in the "hopes that something [incriminating] will turn up." *Vo*, 78 F. Supp. 3d at 181. That does not suffice.[1]

**Request Five**. By its very terms, Request Five remains insufficiently specific because it asks for "all communications" between "any individual affiliated with Concord" (whatever that means) and thirteen individuals "concerning the activities of [IRA]." The government fails to explain how this will provide Concord with any "knowledge about what documents are being requested so [Concord may] lodge any objections on relevancy or admissibility." *Libby*, 432 F. Supp. 2d at 32 (internal quotation marks omitted). Instead, the government maintains that there is a series of "rational inferences" demonstrating that the documents sought will contain relevant and admissible evidence. Opp. 8 (internal quotation marks omitted). But the only "inference" the government draws is that Concord is guilty because the only IRA activities the identified individuals would have discussed with Concord employees were illegal. Aside from the glaring Sixth Amendment problems with assuming Concord's guilt, the government's argument is not an inference—it is a hope that incriminating documents will be found. Contrary to the government's ruminations, Rule 17 does not allow for subpoena requests based on a hope that evidence will be found.[2] *Vo*, 78 F. Supp. 3d at 181.

---

[1] As further evidence that the government has no idea what it is seeking with Request Four, it reverts to a semantic argument that it "has no way of knowing the terms—in Russian or English—that Concord would use to describe the records" it is seeking. Opp. 7. In addition to being a stark admission that the government doesn't know with any specificity what it is looking for, this argument is unsupported by any legal authority. After investigating this case for over a year, obtaining over 4 million documents (most of which are in Russian), and charging Concord with "funding" IRA, for the government to now come to the Court and plead ignorance of the Russian or English words for "ledger, bank statements, spreadsheet, QuickBooks file" is silly.

[2] The government erroneously assumes that its purportedly "narrowed" request will "cover only those communications that would be relevant to the allegations in this case." Opp. 9. It does not. Rather, the government ignores the possibility that Concord and IRA had other business dealings that had nothing to do with the allegations in the Superseding Indictment. Such evidence would

***Request Six***.  Request Six suffers from similar flaws.  Here, the government once again fails to draw a concrete link between "what [it] expect[s] to find and *why* it expect[s] to find it." *Vo*, 78 F. Supp. 3d at 181 (emphasis added).  The government has not offered any explanation in discovery or motion practice as to why it has concluded that the ███████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████.  Unsurprisingly, the government ignores this argument in its brief—for good reason.  This point identifies the crucial link between what the government says it expects to find in the subpoena response (Mr. Prigozhin's calendar) and *why* it expects to find it ███████████████████████████████████████████████████████).

***Requests One and Two***.[3]  Simply put, the government's response with respect to the specificity of Requests One and Two ignores its burden.  In the face of Concord's point that the information is available by other means, the government argues that "[n]o good reason exists to conclude that the few documents obtained from [the Russian tax authorities] are the *only* such records or contain all of the information requested."  Opp. 3-4.  But the government does not address whether it has even attempted to gather the information it seeks from publicly available sources or through Article 13 (*Production of Official Records)* of the U.S.-Russia MLAT.  *See* Treaty Between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters, June 17, 1999, S. Treaty Doc. No. 106-22, available at

---

fall within the scope of even the renewed subpoena request, yet it would be completely irrelevant to the issues in this case (except perhaps as *Brady* material).  *See Nixon*, 418 U.S. at 699-700.

[3] To the extent that the government suggests that reconsideration is not warranted with respect to Requests One and Two, it ignores the Court's directive.  Specifically, at the December 12, 2019 hearing, the Court expressly invited reconsideration of its rulings on the government's initial subpoena motion through the filing of a motion to quash.  Hr'g Tr. 52:12-17.

https://www.state.gov/13046 (the "MLAT").  As set forth in Concord's brief, the information the

government is seeking—including historical information—is available through other means.

Moreover, the government is silent as to what other records it believes might exist, which means

that its argument doesn't even get out of the starting gate, because as the requesting party, it is

charged with specifically identifying what it expects to find.  *Vo*, 78 F. Supp. 3d at 181.[4]  To that

end, the government has offered no reason to believe that the documents in Requests One and Two

are not "otherwise procurable reasonably in advance of trial by exercise of due diligence," and

these requests should be denied.  *Nixon*, 418 U.S. at 699.

### 3.    The legal authority the government cites does not change the outcome

The government largely relies on three cases to support its argument that its requests are

adequate, Opp. 5-7, yet not one of them supports its requested subpoena—underscoring that the

law does not permit this unbridled exercise of government authority.  It starts with *United States*

*v. Scala*, 432 F. Supp. 2d 395 (S.D.N.Y. 2006) for the proposition that the 'trial preparation'

language in *Nixon* has no bearing on specificity.  Opp. 5.  As an initial matter, an explanation for

why evidence is necessary is a critical piece of the analysis of whether a subpoena request is

adequately specific.  *See supra*, 5-7.  But in any event, *Scala* is otherwise inapposite.  It involved

a motion to quash a government Rule 17 subpoena that was issued to the defendant's lawyer on

the eve of trial seeking evidence related to payments to the lawyer.  *Id.* at 397.  That motion was

based on the fact that a new AUSA had taken over the case and discovered new evidence about

suspicious payments to the lawyer, thus warranting the subpoena.  *Id.* at 398.  The court was never

---

[4] The government also downplays what it has already obtained, acknowledging that it received a "few documents" from the website of Russian tax authorities, but incorrectly stating that that "just one of [these documents] concerns Concord."  Concord's motion cites to ECF 40-1, in which an FBI agent declares that he, on two separate occasions in 2018, was able to obtain information about Concord—specifically, its general director.  *See* ECF 40-1 at ¶¶ 3, 5.

presented with an argument that the subpoena request was not adequately specific.  To the contrary, it analyzed the timing aspect of *Nixon* in a vacuum and rejected the defendant's argument that "the government was prepared for trial in January and . . . therefore is prepared now, even without this evidence." *Id.* at 401.  But the government here is not asserting that it has discovered new evidence making the trial subpoena necessary, and so *Scala* is irrelevant.

The government then continues with its reliance on *United States v. Rajaratnam*, No. S2 09 Cr. 1184, 2011 WL 335170 (S.D.N.Y. Feb. 2, 2011), urging two distinct propositions.  The first one is that courts purportedly have rejected the argument that a motion for a trial subpoena should be denied because the requesting party could go to trial without the evidence.  Opp. 6.  But the government's argument that the public interest favors going to trial with "all relevant evidence," *id.*, ignores it is admittedly seeking documents it already has, presumably in hopes of solving its authentication problem.  Thus, this isn't a situation where the government is being deprived of the whole story; instead, it is merely confronted with the shortcomings in evidence it already has.  As for the second, the government relies on *Rajaratnam* for the proposition that "[c]ourts regularly uphold trial subpoenas framed in the terms of documents related to particular categories of financial transactions."  Opp. 6.  But the "particular categories" at issue in *Rajaratnam* were far narrower than those at issue here.  *See* Mot. 42.  Specifically, the subpoena in *Rajaratnam* sought (1) e-mails and particular documents; (2) for three individuals; (3) during a maximum time period of six months; and (4) related to trades in stock for specifically-identified companies.  2011 WL 335170 at *2.  The two situations are hardly the same.

Lastly, the government again turns to *United States v. McCollom*, 651 F. Supp. 1217 (N.D. Ill. 1987), to support its argument that "particular categories of financial transactions" are sufficient under Rule 17.  But as Concord has already pointed out, the "particular categories" in

*McCollom* involved "original checks," "check registers," and "withdrawal slips" and where the court ordered the subpoena to be narrowed to "particular accounts at particular institutions." *Id.* at 1219. Again, this is not the same as "records reflecting any payments."

**B.      Compliance with Requests Three, Four, Five, and Six threaten violations of Russian law.**

Concord's counsel, as noted at the outset, has no knowledge of whether documents responsive to the trial subpoena exist and no authority to make that determination without facing potential ramifications under Russian law. Thus, in reliance on actual Russian lawyers practicing law in Russia, counsel laid out why it is that responding to the government's trial subpoena creates the very real threat of jeopardy to Concord or its employees. The government's rejoinder has two prongs. The first is a series of assumptions it asks the Court to make about why asserted violations of Russian law can be ignored. The second is the affidavit of Professor Stephan, suggesting that no violations of Russian law will occur. But the assumptions are unfounded and the affidavit is misdirection. Thus, the potential conflict with Russian law remains and principles of comity should take hold.

Looking first at the assumptions, the government declares that all of the secondary material that Concord cites to substantiate the threat of prosecution under Russian law can be ignored because none of it relates to a case like this one. As a result, the government opines that Concord is offering speculation, not fact, in explaining how Russia could interpret the law that is in play. In making its rhetorical point, the government does not say that Concord has misquoted the authorities, the cases, or the statutes. It simply says that the inferences Concord draws from that material need not be credited because they are not likely to transpire. The government's assurances are small comfort to Concord and they do not refute the plausibility of Concord's analysis as it relates to prosecutions that *have* occurred, scholarly commentary that *credits* Concord's fears, and

10

*the language* of the laws that encompasses both. The government carries its *ipse dixit* over to the MLAT as well. Here, the notion is that the bilateral treaty can safely be ignored because it is unworkable, cumbersome and not likely to be efficacious. Again, the government does not say it does not apply; rather, in this instance, bilateral relations between governments don't matter. No authority is cited for that proposition and it refutes itself.[5]

This brings us to Professor Stephan, the alleged expert on Russian law who purportedly can speak with assurance on the behavior of the Russian government when, of course, he is not the one who faces actual risk. The government asserts that the "most apparent problem with Concord's position is that this criminal trial is not an 'activity aimed against the security of the Russian Federation.'" Opp. 28 (quoting Art. 275 of the Russian Criminal Code). The government goes on to state that this is a "prosecution of a private company that has repeatedly declared it is not part of the Russian government" and notes that it does not intend to argue at trial that the conduct at issue was undertaken at the command of the Russian government. *Id.* Professor Stephan makes a similar point, asserting that that "even if complying with an investigation into criminal activity were considered a kind of assistance, it is [his] opinion that Russian law does not regard the prosecution of private persons not accused of acting at the direction of or on behalf of the Russian government as an activity aimed at the national security of the Russian Federation." Stephan Dec. ¶ 21.

---

[5] The government claims that "████████████████████████████████████████████████████████████████████." Opp. 4. The docket reflects that the government attempted to serve summonses upon an official of the Russian Prosecutor General's Office (ECF 124, 125, and 126), but these cannot be MLAT requests because they do not contain the information required in Article 5 (*Form and Contents of Requests for Legal Assistance*) and they are not accompanied by a translation into Russian as required under Article 6 (*Language*).

Be that as it may, this analysis cannot be circumscribed by what the prosecution intends to argue at trial, and the government and its expert ignore the realties surrounding this prosecution. Accordingly, the Court cannot ignore the statements from multiple United States government officials and agencies asserting, either directly or indirectly, that the conduct alleged in the Indictment was undertaken at the direction of or on behalf of the Russian government.  *See, e.g.,* Mem. Op. & Order, July 1, 2019, at 6-7, ECF 148 (noting that the Mueller Report directly links the allegations in the Indictment to the Russian government: describing social media efforts as one of "two principal interference operations in the 2016 U.S. presidential election"; referring to these as "active measures" defined as "operations conducted by Russian security services"; and stating that the Special Counsel's "investigation established that *Russia* interfered in the 2016 presidential election through the 'active measures' social media campaign carried out by" Concord's co-defendant, "suggest[ing] that the activities alleged in the indictment were undertaken on behalf of, if not at the direction of, the Russian government"); *id.* at 7-8 (explaining the way the Attorney General directly linked the co-conspirators to the Russian government—including by describing "two main efforts *by the Russian government* to influence the 2016 election," including "efforts by [co-defendant IRA], a Russian company *with close ties to the Russian government*, to sow social discord among American voters" and equating it to allegations of efforts by the Russian intelligence agency).

So while the prosecutors may not seek to convince the jury that the Russian government directed the alleged conspiracy, the United States government has repeatedly and officially declared such a link.  Thus, the Russian government could deem any assistance provided to the same government agency that has declared that the Russian government sponsored the alleged conduct to be aimed at the national security of the Russian federation.

In many of its particulars, Professor Stephan's affidavit is based on misperceptions concerning this controversy and the requisites of Russian law. For these reasons, the interests of justice compel that it not be given weight in balancing whether violations of Russian law are threatened or could occur. To begin with, Professor Stephan's declaration makes clear that his analysis hinges on his assumption that a subpoena issued by this Court for documents located in Russia and relating to Russian individuals and companies would be treated as a binding obligation under Russian law, thereby serving as a legal excuse for Concord and its personnel to engage in conduct that would otherwise be unlawful. *See* Stephan Dec. ¶¶ 20, 33-34, 39, 40, 42-43. But as Professor Stephan concedes, "Russian law limits the binding force of foreign official acts within its own legal system to instances prescribed by treaties or legislation," *id.* ¶ 48, and "[Russia] would regard as a violation of its law any acts by a foreign state carried out on Russian territory to seize persons or property[]," *id.* ¶ 52. *See also* Mot. 22 n.4. Professor Stephan's only attempt to reconcile the fact that the Russian law he cites clearly contradicts his threshold assumption is to note that Russia does not generally prohibit cooperation with foreign law enforcement authorities, as if there were nothing about this case—which this Court has acknowledged to be unprecedented—that Russian authorities might find unusual as well.

That is not the only contradiction. Professor Stephan similarly asserts, without any citation, that "actions that might increase the exposure of the Russian Federation or its officials to foreign trade, travel or financial sanctions could not be considered as implicating 'the security of the Russian Federation' within the meaning of [the treason statute] unless those measures would ***pose an existential threat*** to Russia." Stephan Dec. ¶ 24 (emphasis added). So according to Professor Stephan, the applicable standard when it comes to Russians who facilitate foreign sanctions against Russia and Russians is an "existential threat," i.e., a threat to the very existence of the country; a

higher threshold can scarcely be conceived.  But the concept of an "existential threat" appears only in Professor Stephan's own unsupported assertion and, in fact, contradicts his concession that the treason statute "expand[s] somewhat the category of national security threats posed by foreign powers the provision of assistance to which by a Russian citizen would constitute treason[,]" stating the standard as "the foreign activity in question has to **_pose a threat_** to the nation's security[.]"  *Id*. ¶ 17 (emphasis added).  Needless to say, there is a world of difference between "a threat" and "an **_existential_** threat."

Still discussing the subject of the Russian treason statute, Professor Stephan suggests that Concord might take advantage of "an exclusion from criminal liability for persons who desist in activity otherwise deemed treasonable and disclose what they had done to the government voluntarily and in a way that will avoid further harm[]" by conspiring with the prosecutors and this Court to ensure that the subpoena is filed under seal so that "it would be possible for Defendant to comply and then inform the [Russian] government, bringing its conduct within the terms of the exclusion."  Stephan Dec. ¶ 26.  Leaving aside the ridiculous notion that Russian law contains a magic loophole in the form of a get out of jail free card for those clever enough to conspire with representatives of a foreign government to conceal evidence of treason from the Russian government, there is irony, almost satire, in the fact that the government's expert is proposing a conspiracy to conceal information from the Russian government to a defendant accused of conspiring to conceal information from the U.S. government.

Professor Stephan likewise asserts that "[l]**_acking any knowledge of the U.S. government's determination to violate_** [**_the Russian statute prohibiting unlawful access to computers_**], and having no purpose to facilitate such a violation, Defendant, were it to comply with the subpoena, would not satisfy the mental element necessary for commission of a crime

14

under [the statutes establishing accessory liability for computer crime]." Stephan Dec. ¶ 34 (emphasis added). He does not say what would happen, however, in the real world, where the assumption his opinion is based on is false, and senior officials from U.S. Cyber Command have not only publicly stated that they are responsible for a November 2018 cyberattack on co-defendant IRA, but have warned that they intend to mount cyber-attacks on broader Russian interests if deemed necessary to deter "election interference." *See* Mot. 20 n.3. There is, again, tremendous irony in the U.S. government arguing that Concord and its personnel face no risk of criminal prosecution in Russia because of a lack of the requisite *mens rea*, when Concord has argued since the beginning of this case that the prosecutors have not alleged and cannot prove the requisite *mens rea* for the charge Concord faces here in the U.S.

As for Concord's argument that complying with the subpoena would violate Russia's Personal Data Law, Professor Stephan admits, as he must, that "[i]nformation with respect to any individual . . . would come within the [Personal Data Law], absent any exclusion provided by the law." Stephan Dec. ¶ 46. But then Professor Stephan proceeds to claim he has found such an exclusion in Article 6(1)(3) of the Personal Data Law, which allows "processing" of personal data in connection with court proceedings. Stephan Dec. ¶ 47; *see also* Federal'ny Zakon o Personal'nykh Dannykh [Personal Data Law] art. 6(1)(3) (Russia), available at http://ips.pravo.gov.ru:8080/document/285, English translation at 287-11. The professor finds it highly significant that this article does not specify that the provision refers to **Russian** court proceedings, as opposed to proceedings in the courts of each and every country in the world, and he stakes his legal opinion on it. Stephan Dec. ¶ 47.

Professor Stephan, in analyzing other provisions of Russian law, also attributes great significance to the Russian Constitution, Stephan Dec. ¶¶ 8, 10, 12, as well as its legislative history,

*id.* ¶¶ 16, 17.  But while he touts his experience advising on the drafting of the Russian Constitution and the structure of the Russian judicial system a quarter-century ago, *id.* ¶ 5, he apparently does not recognize that the language in Article 6(1)(3) of the Personal Data Law that he cites in ¶ 47 of his affidavit is lifted nearly verbatim from clause 2 of Article 118 of the Russian Constitution:

| | |
|---|---|
| Constitution: | Judicial power shall be exercised by way of ***constitutional, civil, administrative and criminal court proceedings***. |
| Personal Data Law: | Personal data are processed due to involvement of a person in ***constitutional, civil, administrative, [or] criminal court proceedings***, or proceedings of commercial courts[.] |

*See* Konstitutsiya Rossiiskoi Federatsii [Russian Constitution] art. 118 (Russia) (emphasis added), *available at* http://ips.pravo.gov.ru:8080/document/513/, English translation attached as Exhibit 1; Federal'ny Zakon o Personal'nykh Dannykh [Personal Data Law] art. 6(1)(3) (Russia) (emphasis added), available at http://ips.pravo.gov.ru:8080/document/285, English translation at ECF 287-11.  Article 118 of the Russian Constitution is the first article of Chapter 7, entitled "Judicial Power and Public Prosecution Office," which, as can be seen in Exhibit 1, deals exclusively with the workings of the Russian—not American—legal system.  However, Professor Stephan would have the Court believe that by failing to mention in clause 2 of Article 118 that the courts in question are Russian, the Russian Constitution's framers (whom he says he advised) meant to refer to every court in the world.  Professor Stephan thus would also have the Court believe that the Russian lawmakers who passed Article 6(1)(3) of the Personal Data Law, by lifting a phrase directly from the Russian Constitution, actually meant to refer to the courts of the United States as well.  This notion is farfetched on its own, but the legislative history of Article 6(1)(3), which took effect in 2017, casts further doubt.  Article 6(1)(3) was part of a package of amendments which were accompanied by an Explanatory Note, of the same type cited by the professor in note 10 of his declaration.  This Explanatory Note contains granular discussion of

amendments to data protection-related laws in the context of the Russian court system, without a hint of suggestion that the lawmakers intended for the word "court" to refer to every court in the world.  *See* Poyasnitel'naya Zapiska k Proyektu Federal'nogo Zakona [Explanatory Note to Draft Law] (Russia) (Oct. 6, 2016), *available at* http://sozd.duma.gov.ru/download/FDFC2590-D52A-4206-B15E-8B7FD055585E, English translation attached as Exhibit 2.

When the government's unfounded assumptions and Professor Stephan's misdirection are put aside, Concord's conflict and comity analysis remains.  No stated U.S. government interest in this prosecution can overcome the perceived threat or the need for comity.  Here, the trial subpoena re-plows ground where the prosecution's interests have more than been met through the millions of documents already obtained.  There is no basis to use the subpoena to press further given the deleterious consequences that could follow.

## C.     Neither personal jurisdiction nor appearance through an attorney is sufficient to serve Concord with a trial subpoena under Rule 17

When the issue of serving Concord with the proposed trial subpoena first arose, both parties and the Court acknowledged the complexities involved.  Dec. 12, 2019 Hr'g Tr. 50:19-51:10, 54:6-57:21.  Yet in its response to Concord's Motion, the government has now reversed course, suggesting that service of a Rule 17 subpoena *duces tecum* on a foreign corporation criminal defendant's counsel is an unremarkable application of several Rules of Criminal Procedure. Paradoxically, however, none of those rules apply to subpoenas under Rule 17—thus exposing that this issue is not quite as straightforward as the government mistakenly suggests.

## 1.     The notion that personal jurisdiction is sufficient to permit service of a subpoena on Concord is a red herring

The government's argument related to personal jurisdiction misses the mark because it does not ask the right question—that is, it does not ask what authority the Court has to issue a trial subpoena under Rule 17 to a foreign corporation that has no presence in the United States and has

only appeared through its defense counsel.  *See* Opp. 12-16.  In that vein, the government starts with the assertion that "[i]t is black-letter law . . . that a district court has personal jurisdiction over any party who appears before it."  Opp. 12 (citations and internal quotation marks omitted).  But the government conveniently overlooks that Rule 17 says nothing about personal jurisdiction; instead, it provides detailed instructions about how a subpoena should be served—including how such service should be effectuated on individuals located outside the United States.  *See* Fed. R. Crim. P. 17(d), (e).  Had the drafters wanted to add a jurisdictional component or exception to the service requirements in Rule 17, it would have been easy to do so—but no such provision exists.

A personal jurisdiction analysis is, of course, made at the outset of a lawsuit to determine whether it is fair and just to hail a non-resident party into court.  Meeting that standard—whether by minimum contacts or consent—says nothing about the conduct of the litigation or the requirements that go along with it.  And as for appearing counsel, an acknowledgment to abide by orders of court or applicable procedural rules stands on the same footing.  It is not a commitment to waive a substantive argument that might become available as the case proceeds.

The legitimacy of a trial subpoena, by comparison, stands on an entirely different footing. It is a discrete event in the ongoing litigation and its validity is not judged by principles of personal jurisdiction or consent to be bound, in general, by court orders or rules.  Rather, the legitimacy issue is resolved by the particulars of the rules and statutes governing such subpoenas, including their scope, requirements for service, and any constitutional constraints on criminal proceedings. Jurisdiction over a party or an appearance by counsel does not provide a basis to avoid the requirements of Rule 17, which set the limits of a court's subpoena power.  And Rule 17 does not provide for a personal jurisdiction exception to its limitations.  The government's analogies, at

their essence, refuse to acknowledge any of this.  As a result, the government's argument, from beginning to end, is sleight-of-hand, nothing more.

Thus, the government begins its sleight-of-hand by outlining various principles of personal jurisdiction and criticizing Concord for not challenging jurisdiction at the outset of the prosecution. It then goes on to argue that "a court's authority to issue orders to parties . . . is part and parcel of a court's power to hear the case."  Opp. 13.  But this argument (and the cases cited to support it) has nothing to do with issuing a subpoena.  Instead, the government merely states—without analysis or elaboration—that "[t]his principle applies equally to a trial subpoena, which is a court order commanding a person to testify or to produce documents or objects for use in a trial."  Opp. 13 (citing Fed. R. Crim. P. 17(a), (c)(1)).  And Rule 17, for its part, does not make the leap the government supplies.  Rather, any request for documents is governed by the Rule's terms, requires service on the witness (not the witness's counsel), Mot. 5-7, and expressly confines the subpoena power outside the U.S. to only a "national or resident of the United States who is in a foreign country."  28 U.S.C. § 1783(a) (referenced in Fed. R. Crim. P. 17(e)(2)).  The Rule makes Concord's point, not the government's.

The cases the government cites in an effort to link personal jurisdiction with the authority to subpoena documents from a criminal defendant who is not located in the United States expose the flaw in its leap of logic.  Opp. 13.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), for example, involved precisely the reverse situation to what is at issue here.  Specifically, that case concerned "the authority of federal district courts to assist in the production of evidence for use in a foreign tribunal" in the context of 28 U.S.C. § 1782(a), a statute expressly permitting such discovery to assist in a foreign tribunal.  *Id.* at 246, 264.  No subpoena was at issue.  Next, the government cites several cases in a footnote to the proposition that "[t]his principle applies

equally to a trial subpoena . . .," yet those cases conspicuously lack any references connecting personal jurisdiction to the subpoena authority.  *See United States v. Grooms*, 6 F. App'x 377, 381 (7th Cir. 2001) (subpoena to third party issued by defendant; did not involve questions of personal jurisdiction); *Waste Conversion, Inc. v. Rollins Envtl. Servs.*, 893 F.2d 605, 613 (3d Cir. 1990) (deposition subpoena; did not involve questions of personal jurisdiction).  Finally, the government's reference to the civil rules in *Moore's Federal Practice* for the proposition that "a district court must have personal jurisdiction over a *nonparty* in order to compel it to comply with a subpoena," Opp. 13, ignores the context for that statement:  "A corporation or other artificial entity *must have sufficient minimum contacts with the district* [(which Concord does not)] *to be subject to service of a subpoena* . . . .  This is because a district court must have personal jurisdiction over a nonparty in order to compel it to comply with a subpoena."  9 *Moore's Federal Practice – Civil* § 45.22 (emphasis added).  None of these authorities demonstrate that personal jurisdiction alone (even if it exists) is sufficient to confer subpoena authority on a court.

The government's sleight-of-hand persists when it shifts to arguments that Concord has waived any right to challenge personal jurisdiction, and tying that waiver principle to a personal jurisdiction "minimum contacts" analysis.  Opp. 14-15.  But exercising personal jurisdiction still is not the same thing as having the authority to enforce a Rule 17 subpoena.  Thus, the government's derivative arguments just extend its flawed premise.  As for waiver of a jurisdictional challenge, the government argues that "a court may establish personal jurisdiction based on consent."  Opp. 14.  So it may be, but Concord has never challenged the Court's personal jurisdiction as it relates to Concord's appearance and involvement in these proceedings.  As for the purported "minimum contacts," the government again twists the case law to suit its own ends.  Specifically, it suggests that "Concord has . . . 'purposefully directed its relevant activities at the

20

forum['] . . . [b]y appearing and participating in this case, challenging the charges, demanding and obtaining extensive discovery in preparation for trial, and moving forward to trial." Mot. 14 (citations omitted). In support of this statement, the government cites *In re Sealed Case*, 932 F.3d 915, 922 (D.C. Cir. 2019). But the "consent[]" to jurisdiction in *Sealed Case* stemmed from the fact that two of the subpoenaed banks in that case had "signed an agreement with the Federal Reserve permitting them to open branches in the United States" which involved an express consent to jurisdiction. *Id.* at 921-23. Although a third subpoenaed bank did not have a branch in the United States, it did, in any event, maintain accounts here—thus satisfying the minimum contacts requirement. *Id.* at 924-27. In short, the court's jurisdictional analysis in *Sealed Case* turned on existing contacts with the United States—not litigation conduct. The case is inapposite.

The government also cites *United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013), for the proposition that "[p]ersonal jurisdiction is more expansive in criminal cases than in civil cases." But, again, no subpoena appears anywhere in its four corners. Moreover, the government mischaracterizes *Ali*, because that case involved questions of whether personal jurisdiction was appropriate based on whether U.S. criminal law applies extraterritorially. But because the hostage taking statute at issue there explicitly did apply extraterritorially, the D.C. Circuit expressly stated that it "need not decide . . . whether the Constitution limits the extraterritorial exercise of federal criminal jurisdiction." *Id.* at 943-44. Finally, the government cites *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) with the cryptic parenthetical "personal jurisdiction for subpoena served on non-party with loose connection to case." Opp. 15. This "loose connection," however, was again not related to the litigation conduct undertaken by the non-party. To the contrary, the court relied on a New York state procedural rule to conclude that the subpoena was properly served in person on a partner of the foreign entity (Price Waterhouse United

Kingdom)—without consideration of the relationship between the UK firm and its U.S. affiliate. *First Am. Corp.,* at 19-21. In sum, the government has failed to cite a single case that stands for the proposition that personal jurisdiction (assuming it exists) determines whether a court may enforce a Rule 17 trial subpoena to a foreign criminal defendant with no presence in the United States. Without such authority, the first prong of the government's service argument must fail.

> **2.  Appearance through counsel does not open the door to service of a trial subpoena on a foreign corporation defending itself in a criminal prosecution yet has no presence in the United States**

The government continues its sleight-of-hand by importing accepted concepts of "service" onto Rule 17 subpoenas, particularly as those concepts relate to service on a party's attorney. But once again, these arguments do not get out of the starting gate. The government cannot cite a single case, and Concord is aware of none, for the proposition that service of a Rule 17 trial subpoena on a criminal defendant's counsel is sufficient to obtain production of documents requested from the defendant that resides overseas. No provision in the Rule provides for that either. The arguments the government advances likewise fail to sustain its assertion as well.

*First*, the government argues that Federal Rule of Criminal Procedure 49(a)(2) should govern service here, and permit the trial subpoena to be served on Concord's counsel. Rule 49 provides: "Unless the court orders otherwise, when these rules or a court order requires or permits service on a party represented by an attorney, service must be made on the attorney instead of the party." Fed. R. Crim. P. 49(a)(2). But Rule 17 requires service on the individual witness, not on the witness's counsel. *See* Mot. 7-9. The civil cases the government cites, Opp. 17, support this conclusion because none of them involved Rule 17. Needless to say, Concord is aware of no case in which a court has either considered or accepted this novel argument permitting service of a Rule 17 trial subpoena on a defendant's counsel based on Rule 49.

22

*Second*, the government argues that, by entering an appearance, counsel has been implicitly authorized to accept service on Concord's behalf.  Opp. 18-20.  In support, the government turns again to *Kelberine v. Societe Internationale, Etc.*, 363 F.2d 989 (D.C. Cir. 1966) for the proposition that "by choosing to send an attorney into a court in this district to litigate *a related matter*, the corporation had implicitly rendered that attorney as its representative on such matters . . . ."  Opp. 19 (emphasis added).  Concord has exhaustively explained why *Kelberine* is inapposite here, Mot. 6-7, and the emphasized language above further underscores why it should not apply here. Specifically, the court in *Kelberine* dealt with whether service of process on a party's lawyer was appropriate when that party had availed itself of the court system by filing a separate lawsuit.  363 F.2d at 993-94.  Concord has done no such thing here.

Indeed, the government's argument that Concord is "reap[ing] our criminal justice system's benefits" by defending itself is strained hyperbole.  Opp. 20.  Congress determined that a corporate defendant can appear only through counsel.  The government apparently is unhappy about that, and repeatedly tried to use the discovery process to obtain a human hostage.  But the rights provided to a criminal defendant flow from the Constitution and are intended only to protect the accused.  They are benefits provided to ensure a fair trial, not a platform for an affirmative recovery.  By comparison, the "benefits" in *Kelberine* are benefits—they involved using the U.S. legal system to pursue a private benefit by bringing suit against a third party.  Here, by contrast, Concord appeared through counsel to defend itself against a criminal prosecution that involved widely publicized charges and related extrajudicial economic sanctions.  The D.C. Circuit limited its holding in *Kelberine*, deliberately so, lest someone (like the government here) pervert its reasoning.  By its own language, *Kelberine* animates the fact pattern it confronted, nothing more.

The other case the government cites in support of finding an implicit authorization for acceptance of service is *In re Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43 (2d Cir. 1985), and that case is equally distinguishable. *Thirteen Corporations* dealt with subpoenas to 13 U.S. corporations delivered to counsel for the corporations' representative (identified as "'the major guru' of the corporations"). Thus, the question wasn't whether service on the representative's attorney was appropriate; rather, it was whether service on the representative himself constituted valid service on the corporation. *Id.* at 46. Contrary to the government's assertion here, therefore, the "officer or agent" issue at work in *Thirteen Corporations* was not the same as here, because the "agent" in that case was an actual employee of the corporations. Counsel is not Concord's employee.

On analysis, the government again has not cited a single case standing for the proposition that a foreign corporation defendant can be served with a Rule 17 trial subpoena through its counsel. Concord, by contrast, has identified a number of cases under Rule 17 and the analogous civil subpoena rule (Fed. R. Civ. P. 45) that require in-person service of a subpoena on a party witness. *See* Mot. 5-6. In attempting to rebut these cases, the government makes perhaps its biggest misstep. It cites several cases for the proposition that "the emerging trend in interpreting Rule 17 and its civil counterpart is that service is proper where the subpoena is delivered to the witness by intermediaries." Opp. 23 n.10. But neither *Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012), nor *SEC v. Pence*, 322 F.R.D. 450 (S.D.N.Y. 2017) are criminal cases, and neither so much as makes a passing mention of Rule 17. Moreover, the "intermediaries" discussed by the government are not attorneys, but instead the U.S. Postal Service (*Ott*), and certified mail (*Pence*). Thus, to say that there is an "emerging trend" in interpretation of Rule 17 is disingenuous at best.

*Third*, the government's argument fails to account for the constitutional principles that would be abridged if its subpoena is upheld.  In that regard, the government devotes less than a page to Concord's Sixth Amendment argument, Opp. 24-25, and only mentions, but does not respond to, Concord's due process argument in a two-line parenthetical, *id*. 12.  The government comes by its lack of concern by dismissing the premises of Concord's argument as inconsequential. The Sixth Amendment conflict purportedly can be dispensed with because "[a]ttorneys representing clients in criminal cases regularly receive orders that a client may not wish to be bound by."  *Id*. 25.  But there is, in fact, no legal basis for this Court to enforce the government's Rule 17 subpoena and the government's glib assertion does not create one.  As a result, there is a conflict between counsel's obligations to their client and forcing counsel to comply with this subpoena.  Mot. at 10-11.  With respect to lack of notice, the government imparts that no due process concerns follow from requiring compliance with routine court orders because parties are always on notice that such compliance will be necessary.  But this rejoinder, too, breaks down on consideration of Concord's actual argument—its lack of notice that the express limitations in Rule 17 would be eliminated to accomplish the government's unlawful ends.  In no sense should Concord have anticipated that result by participating in this litigation, or for any other reason.

## III.    CONCLUSION

The government has failed to meet the high standards for serving and properly structuring an early return trial subpoena under Rule 17.  As such, its subpoena should be quashed.

Dated:   January 22, 2020                              Respectfully submitted,

                                                       CONCORD MANAGEMENT AND
                                                       CONSULTING LLC

                                                       By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com

**Exhibit 1** to Concord Management and Consulting LLC's Reply in Support of its Motion to Quash Unserved Early Return Trial Subpoena and Opposition to the Government's Renewed Motion for Early Return Trial Subpoena, 18-cr-00032-2-DLF

TRANSLATION FROM RUSSIAN

## Constitution of the Russian Federation
December 12,1993 (edition of July 21, 2014)
[excerpts]

## CHAPTER 7. JUDICIAL POWER AND PUBLIC PROSECUTION OFFICE <25>

--------------------------------

<25> The amended version of Chapter 7's name is given according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

### Article 118

1. Justice in the Russian Federation shall be administered by courts alone.

2. Judicial power shall be exercised by way of constitutional, civil, administrative and criminal court proceedings.

3. The judicial system of the Russian Federation shall be established by the Constitution of the Russian Federation and the federal constitutional law. Establishment of extraordinary courts shall not be allowed.

### Article 119

Judges may be citizens of the Russian Federation over 25 years of age with a higher education in law and a law service record of no less than five years. The federal law may introduce additional requirements for judges of the courts of the Russian Federation.

### Article 120

1. Judges shall be independent and submit only to the Constitution of the Russian Federation and the federal law.

2. If, after considering a case, the court finds that an act of a state or other body contradicts the law, it shall pass a decision according to the law.

### Article 121

1. Judges shall be irremovable.

2. The powers of a judge may be ceased or suspended only according to the procedure and on the grounds established by the federal law.

1

Original Text Available at http://ips.pravo.gov.ru:8080/document/285

**Article 122**

1. Judges shall possess immunity.

2. A judge may be held criminally liable only according to the procedure established by the federal law.

**Article 123**

1. Examination of cases in all courts shall be open. Examinations in private may be allowed only in the cases stipulated by the federal law.

2. Criminal trials in absentia shall not be allowed in criminal courts except for the cases stipulated by the federal law.

3. Judicial proceedings shall be held on the basis of the adversarial principle and the principle of equality of parties.

4. In the cases stipulated by the federal law, justice shall be held in jury trials.

**Article 124**

The courts shall be financed only from the federal budget and such financing shall ensure a possibility of complete and independent administration of justice according to the federal law.

**Article 125**

1. The Constitution Court of the Russian Federation consists of 19 judges.

2. Upon requests of the President of the Russian Federation, Federation Council, State Duma, one fifth of the members of the Federation Council or of the deputies of the State Duma, Government of the Russian Federation, Supreme Court of the Russian Federation as well as bodies of legislative and executive power of the constituent entities of the Russian Federation, the Constitution Court of the Russian Federation shall consider cases on the correspondence to the Constitution of the Russian Federation of:

a) Federal laws, regulatory acts of the President of the Russian Federation, Federation Council, State Duma, Government of the Russian Federation;

b) Constitutions of republics, charters as well as laws and other regulatory acts of the constituent entities of the Russian Federation adopted on the issues under the jurisdiction of the state bodies of the Russian Federation or under the joint jurisdiction of the state bodies of the Russian Federation and the state bodies of the constituent entities of the Russian Federation;

c) Treaties concluded between the state bodies of the Russian Federation and the state bodies of the constituent entities of the Russian Federation, treaties concluded between the state bodies of the constituent entities of the Russian Federation;

d) International treaties of the Russian Federation which have not come into force <26>.

2

3. The Constitution Court of the Russian Federation shall resolve disputes on jurisdiction matters:

a) Between the federal state bodies;

b) Between the state bodies of the Russian Federation and the state bodies of the constituent entities of the Russian Federation;

c) Between the supreme state bodies of the constituent entities of the Russian Federation.

4. Upon complaints about violations of constitutional rights and liberties of citizens and upon court requests, the Constitution Court of the Russian Federation shall check, according to the procedure established by the federal law, constitutional compliance of a law applied or subject to be applied in a certain case.

5. Upon the requests of the President of the Russian Federation, Federation Council, State Duma, Government of the Russian Federation, bodies of the legislative power of the constituent entities of the Russian Federation, the Constitution Court of the Russian Federation shall give its interpretation of the Constitution of the Russian Federation.

6. Acts or their certain provisions recognized as unconstitutional shall become invalid; international treaties of the Russian Federation not corresponding to the Constitution of the Russian Federation may not be enforced and applied.

7. Upon the request of the Federation Council, the Constitution Court of the Russian Federation shall provide its opinion on the observance of the established procedure for pressing any charges of state treason or of another grave crime against the President of the Russian Federation.

--------------------------------

<26> The amended text of Part 2 is given according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

## Article 126

The Supreme Court of the Russian Federation shall be the supreme judicial body for civil cases, resolution of economic disputes, for criminal, administrative and other cases under the jurisdiction of courts established according to the federal constitutional law, it shall carry out judicial supervision over their activities according to the procedural forms provided for by the federal law and shall provide explanations on the court practice issues <27>.

--------------------------------

<27> The amended text of Article 126 is given according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

## Article 127

Deleted by the amendment to the Constitution of the Russian Federation (Law of the Russian Federation on an amendment to the Constitution of the Russian Federation On the Supreme Court of the Russian Federation and the Public Prosecution Office) <28>.

--------------------------------

<28> Article 127 is deleted according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

## Article 128

1. The judges of the Constitution Court of the Russian Federation and Supreme Court of the Russian Federation shall be appointed by the Federation Council as proposed by the President of the Russian Federation.

2. Judges of other federal courts shall be appointed by the President of the Russian Federation according to the procedure established by the federal law.

3. The powers, procedure for establishment and operation of the Constitution Court of the Russian Federation, of the Supreme Court of the Russian Federation and other federal laws shall be established by the federal constitutional law <29>.

--------------------------------

<29> The amended text of Article 128 is given according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

## Article 129

1. The powers, organization and the procedure for operation of the Public Prosecution Office of the Russian Federation shall be determined by the federal law.

2. The General Prosecutor of the Russian Federation and his/her deputies shall be appointed and dismissed by the Federation Council as proposed by the President of the Russian Federation.

3. The prosecutors of the constituent entities of the Russian Federation shall be appointed by the President of the Russian Federation as proposed by the General Prosecutor of the Russian Federation upon agreement with the constituent entities of the Russian Federation. The prosecutors of the constituent entities of the Russian Federation shall be dismissed by the President of the Russian Federation.

4. Other prosecutors, except for prosecutors of cities, districts and prosecutors with equal status, shall be appointed and dismissed by the President of the Russian Federation.

5. Prosecutors of cities, districts and prosecutors with equal status shall be appointed and dismissed by the General Prosecutor of the Russian Federation <30>.

--------------------------------

<30> The amended text of Article 129 is given according to Law of the Russian Federation on an amendment to the Constitution of the Russian Federation No. 2-FKZ dated February 5, 2014 On the Supreme Court of the Russian Federation and the Public Prosecution Office of the Russian Federation, which entered into force on the day of its official publication (February 6, 2014) (Official Internet Portal of Legal Information (www.pravo.gov.ru), February 6, 2014, No. 0001201402060001).

**Exhibit 2** to Concord Management and Consulting LLC's Reply in Support of its Motion to Quash Unserved Early Return Trial Subpoena and Opposition to the Government's Renewed Motion for Early Return Trial Subpoena, 18-cr-00032-2-DLF

# EXPLANATORY NOTE

## to the Draft Federal Law On Amending Certain Legislative Acts of the Russian Federation

The draft federal law On Amending Certain Legislative Acts of the Russian Federation (hereinafter the "draft law") was developed in pursuance of sub-clauses "s" and "t" of clause 2 of Decree of the President of the Russian Federation No. 601 dated May 7, 2012 On Main Directions of Improvement of the Public Administration System and instruction of the Deputy Chairman of the Government of the Russian Federation — Chief of Staff of the Government of the Russian Federation No. VS-P4-622 dated February 4, 2013.

The draft law is aimed at improving the system for placing court decisions using the Internet (hereinafter the "Internet") and ensuring access to these decisions as well as at improving the legal regulation of broadcasting court sessions using the Internet.

Currently, it is necessary to resolve an issue on the correspondence between the provisions of the legislation on personal data and of the legislation on ensuring access to information on courts' activity in the Russian Federation.

So, for example, in accordance with clause 5 of part 2 of Article 1 of Federal Law No. 152-FZ dated July 27, 2006 On Personal Data (hereinafter the "Federal Law On Personal Data"), it shall not apply to the relations arising from provision by the competent authorities of the information on courts' activities in the Russian Federation in accordance with Federal Law No. 262-FZ dated December 22, 2008 On Ensuring Access to Information on Courts' Activities in the Russian Federation.

At the same time, part 3 of Article 15 of the Federal Law On Ensuring Access to Information on Courts' Activities in the Russian Federation proceeds from the general principle of inadmissibility of disclosure of personal data of parties to legal proceedings and the necessity to exclude it from texts of court decisions when publishing the same and when disseminating information on courts' activities in any other forms.

In view of the foregoing, it appears advisable to legally determine the conditions for application of these federal laws in public justice.

Clause 3 of part 1 of Article 6 of the Federal Law on Personal Data sets forth that personal data processing shall be allowed without a consent of a subject of this personal data if it is necessary for administering public justice or enforcing a judicial act. The similar provisions are contained in clause 6 of part 2 of Article 10 and part 2 of Article 11 of the Federal Law on Personal Data.

However, the concept "administering public justice" is not explained in the said Federal Law.

In this regard, it is proposed to clarify by the draft law that personal data processing shall be allowed without a consent of the personal data subject in case the person is a party to constitutional, criminal, administrative, or civil proceedings, or to legal proceedings in commercial courts.

It is proposed to amend Article 15 of Federal Law No. 262-FZ dated December 22, 2008 On Ensuring Access to Information on Courts' Activities in the Russian Federation (hereinafter "Federal Law No. 262-FZ") by Article 5 of the draft law, which amendments are aimed at setting forth a uniform procedure for posting all judicial acts on the Internet.

In addition, it is proposed to supplement the said Federal Law with Article 15[1] "Specific Features of Broadcasting Court Sessions on Radio, Television, and the Internet".

These specific features include: broadcasting upon an authorization or on the initiative of a court, compliance with the requirements of the procedural legislation, ensuring the interests of public justice and the safety of parties to legal proceedings, and preventing confidential information disclosure.

Court sessions may be broadcast in the Internet live, with a delay, or partially. The broadcasting type shall be determined by a court subject to the interests of public justice, the safety of parties to legal proceedings, and prevention of disclosure of the information classified as the information constituting a state or other secret protected by law according to the procedure set forth by the federal law.

For example, use of a delayed or partial broadcasting of a court session will make it possible to exclude any possibility of access for unexamined witnesses to view an open court session on the Internet (Article 163 of the Civil Procedure Code of the Russian Federation, clause 6 of part two of Article 153 of the Commercial Procedure Code of the Russian Federation).

Closed court sessions and court sessions related to consideration of the cases, on which a decision cannot be posted on the court's official website, shall not be broadcast on the Internet.

The procedure for organizing broadcasting of and broadcasting court sessions on the Internet shall be determined, within their powers, by the Constitutional Court of the Russian Federation, the Supreme Court of the Russian Federation, and the Judicial Department at the Supreme Court of the Russian Federation.

In addition, it is proposed to amend by the draft law the Civil Procedure Code of the Russian Federation, the Commercial Procedure Code of the Russian Federation, the Administrative Offences Code of the Russian Federation, and the Administrative Court Procedure Code of the Russian Federation, which amendments are aimed at setting forth uniform principles for broadcasting court sessions on the Internet.

In particular, it is proposed to set forth that court proceedings shall be conducted in the conditions ensuring good order in a court session and the safety of parties to proceedings. The actions of the persons present in the court room and engaged with photo and film shooting, video recording, or broadcasting of a court session on radio, television, and the Internet should not interfere with the order in such court session. These actions may be time-limited by a court and shall be performed at the places in the court room designated by the court, taking into account an opinion of the parties to the case.

When broadcasting court sessions on radio, television, or the Internet, the court session minutes shall specify the name of the mass media or website on the Internet, using which it has been broadcast.

At the same time, the draft law provisions are of a discretionary nature and stipulate that broadcasting of a court session may be organized by the court if it is technically feasible for this court to do so.

The procedure for posting judicial acts on the Internet and period for storing judicial acts in the court's information system shall be determined, within their powers, by the Constitutional Court of the

Russian Federation, the Supreme Court of the Russian Federation, and the Judicial Department at the Supreme Court of the Russian Federation.

The financial support for expenditure commitments related to implementation of the draft law will be carried out within the set number of staff of the judicial authorities and will not result in additional appropriations from the federal budget.

The draft law complies with the provisions of the Treaty on the Eurasian Economic Union and the provisions of other international treaties of the Russian Federation.

Original text available at https://sozd.duma.gov.ru/bill/1119011-6