UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CONCORD MANAGEMENT<br>AND CONSULTING LLC,<br><br>            Defendant. | Criminal No. 18-CR-32-2 |

**GOVERNMENT'S REPLY IN FURTHER SUPPORT OF
MOTION IN LIMINE TO PRECLUDE IMPROPER ARGUMENT AND EVIDENCE**

Allegations of government misconduct and evidence of prior prosecutorial decisions are generally irrelevant and in any event pose significant and unjustified risks of unfair prejudice, jury confusion, and delay. Concord suggests that in this particular case, it has specific categories of evidence or lines of argument that are relevant to the charged crime. Concord, however, offers vague, varied, and conflicting descriptions of what it has in mind and never concretely argues why those categories of evidence are admissible. That is not a proper response to a motion in limine, which serves to narrow the evidentiary issues that may arise at trial and to avoid presenting prejudicial evidence to the jury. The varied forms of evidence that Concord appears to be referencing are in any event inadmissible. Although Concord repeatedly declares that this evidence sheds light on "intent," Concord fails to connect the actual categories of evidence it has in mind to the factual issues bearing on intent. Concord also entirely fails to address the government's concern that evidence about government motivations or suggesting government misconduct would create a significant danger of unfair prejudice, confusion, and delay that outweighs any minimal probative value.

1

**A.** As the party seeking to introduce evidence, Concord bears the burden of establishing relevancy. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. To adjudicate that charge, the jury will have to decide whether an agreement existed to impede the relevant lawful government functions by deceptive means, whether Concord intentionally joined in that agreement, and whether one of the conspirators performed an overt act in furtherance of the conspiracy. Allegations of government misconduct could not bear on those elements. For example, Concord's allegations that the government has not previously charged a conspiracy to defraud the United States on these facts (Doc. 305, at 1), that "investigators suffered from tunnel vision and bias" (*id.* at 2), that "the government went 'too far'" (*id.* at 4), and that this case is "the first of its kind" (*id.* at 4) could not bear on the actual question in this case—whether the government proved the elements of the charged crime. Instead, those are arguments for jury nullification—encouraging or confusing a jury to acquit for reasons unrelated to whether the government met its burden to prove the crime charged. Those purposes do not justify admitting otherwise irrelevant evidence at trial. *See United States v. Gorham*, 523 F.2d 1088, 1097-1098 (D.C. Cir. 1975); *see also, e.g., United States v. Rushin*, 844 F.3d 933, 942 (11th Cir. 2016); *United States v. Castro*, 411 Fed. App'x 415, 420 (2d Cir. 2011); *United States v. Funches*, 135 F.3d 1405, 1408-1409 (11th Cir. 1998). And even if such evidence or argument had some relevance, it would pose a significant and unjustified risk of unfair prejudice, jury confusion, and delay. *See, e.g., United States v. Reed*, 641 F.3d 992, 993 (8th Cir. 2011); *United States v. Blowers*, 268 F. App'x 504, 506 (9th Cir. 2008); *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997).

Concord broadly declares (Doc. 305, at 2-4) that it "has the right to present its theory of the defense." That is true but beside the point. A defendant is entitled to "a meaningful opportunity

to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319 (2006).  But "that guarantee extends only to relevant evidence," *United States v. Libby*, 475 F.Supp.2d 73, 90-91 (D.D.C. 2007), and "it is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence."  *United States v. Ruggiero*, 791 F.3d 1281, 1290 (11th Cir. 2015).  A defendant is not entitled to present "irrelevant evidence" or "other types of evidence whose relevance is outweighed by other important considerations."  *United States v. Beavers*, 756 F.3d 1044, 1052 (7th Cir. 2014); *accord, e.g.*, *United States v. Rivas-Estrada*, 761 Fed. App'x 318, 328 (5th Cir. 2019) (unpub); *United States v. Rand*, 835 F.3d 451, 459-460 (4th Cir. 2016); *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) (right to present even relevant evidence "is not unlimited, but rather is subject to reasonable restrictions"); *Crane v. Kentucky*, 476 U.S. 683, 689-690 (1986) (courts may exclude evidence that is "marginally relevant," or "poses an undue risk of . . . prejudice, [or] confusion of the issues").

    **B.**  Concord urges that although evidence and argument about the government's conduct is generally inadmissible, Concord has particular categories of evidence that bear on the elements of the crime charged here.  It is unclear exactly what Concord has in mind.  The introduction to Concord's filing states that Concord wishes to establish that the government has not previously charged a case "on the theory of liability used here," "interpreted or applied statutory and regulatory provisions as it has done here," or "provided guidance consistent with [the] applications of relevant statutes and regulations here."  Doc. 305, at 1.  Concord never makes clear what it means.  By "theory of liability used here," it must be referring to the charged conspiracy to defraud

the United States. But its references to statutes and regulations also appear to address the Federal Election Campaign Act (FECA) and Foreign Agents Registration Act (FARA).

More to the point, Concord never mentions those three "facts" again. Rather than making any argument about the admissibility of the government's prior charging practices or guidance—for conspiracies to defraud the United States, FECA, or FARA—Concord instead then shifts to other categories of evidence and argument. Concord begins its argument by urging that at trial it should be able to attack "the propriety of the government's investigation—including by raising the possibility that investigators suffered from tunnel vision and bias against the defendant." Doc. 303, at 2-3. It then shifts again and urges that it will present evidence that "the government went 'too far'" and that such evidence bears (for reasons left unexplained) on whether Concord had the "intent" required to commit the crime charged. *Id.* at 3-4. Concord concludes its affirmative argument by stating that there are "a number of relevant facts" it wishes to establish at trial. Concord gives only one example—"the fact that this case is the first of its kind"—whatever that means, and simply asserts that "[s]uch facts are both relevant and admissible." *Id.* at 4. The remainder of Concord's submission simply seeks to distinguish on their facts some of the cases cited by the government and urges that the government has not provided a good "roadmap" for an order the Court can enter. *See id.* at 4-8.

Concord's opposition is insufficient. "Motions *in limine* are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2014). The government's motion in limine to exclude improper evidence and argument allows for the pretrial resolution of this issue without having to present potentially prejudicial evidence to the jury. It will also help the parties prepare their trial strategies and evidence and assist the Court in conducting a fair and expeditious trial. Although it is Concord's burden to show that whatever

4

categories of evidence it has in mind are admissible, Concord instead offers vague and shifting descriptions of what it intends to admit or to argue. Other than generalized assertions that its "facts" bear on "intent," Concord offers no concrete argument for why that category or categories of evidence are admissible, *i.e.,* Concord does not make the connection between these shifting categories and the requisite intent. Concord also does not address the obvious risks of prejudice, jury confusion, and delay.

To be sure, the government recognizes that the precise pertinence of a line of argument or category of evidence may only become clear as trial progresses. But rulings on motions *in limine* "are not binding on the trial judge, and the judge may always change his [or her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). Resolution of this issue before trial will set a background rule, provide useful guidance to the parties, and prevent an unnecessary situation where Concord presents prejudicial evidence or argument to the jury. For the reasons set forth in the government's motion, evidence and argument regarding allegations of misconduct related to the investigation and prosecution of this and related cases should not be presented at trial. If the defense believes that events during trial warrant revisiting this issue, then defense counsel should be required to ask the Court to reconsider its ruling on this motion outside the presence of the jury before presenting any such evidence or argument.

**C.** In all events, each of the categories of evidence that Concord references in its opposition is not admissible.

**1.** Concord primarily argues (Doc. 305, at 2-4) that it should be permitted to present evidence and argument "that investigators suffered from tunnel vision and bias." Even were those allegations correct (which they are not), they would have no bearing on "intent" or any other

element of the charged crime.  Indeed, it is difficult to understand how the intent of those investigating this case could bear on the intent of those whose core conduct occurred before the investigation began.

Concord relies primarily (Doc. 305, at 3) on three unpublished district court decisions, which describe evidence in those cases as having suggested that investigators acted with "tunnel vision."  But none of those cases held that "tunnel vision" arguments were permissible.  Rather, the courts either noted in passing that defense counsel had made such an argument or assessed, after the fact, the effect of those arguments.  *See Drawn v. Nueschid*, No. 19-cv-02150, 2019 WL 5191017, at *6 (N.D. Cal. Oct. 15, 2019) (noting, in ruling on petition for writ of habeas corpus, that the state trial judge had properly permitted the prosecution to introduce evidence probative of the police having conducted an unbiased investigation after the defense argued the police had tunnel vision); *Lovell v. United States*, Nos. 15-cv-764, 12-cr-26, 2018 WL 4743654, at *15 (M.D. Fla. Oct. 2, 2018) (finding that defense counsel "attacked, not bolstered" a law enforcement agent's credibility by, among other ways, arguing the agent had "examined evidence with a 'tunnel vision'"); *United States v. Feliciano*, Nos. 12-cv-1650, 08-cr-932, 2013 WL 1882402, at *7 (D. Ariz. Mar. 29, 2013) (finding that, in light of the overwhelming evidence of a defendant's participation in a robbery, "there was no reasonable probability that the jury would have returned a different verdict if [defense] counsel had adopted a different defense theory or used different tactics," where defense counsel had conceded the defendant's participation in that one robbery while arguing that the prosecution had not met its burden to prove the defendant was guilty of other robberies).  None of these cases supports the admission of the kind of evidence that Concord proposes to introduce.

Concord is on no firmer footing when it cites (Doc. 305, at 3-4) a smattering of cases that assertedly bear on "specific intent to commit the crime charged." These cases instead stand for the obvious proposition that in certain circumstances, a defendant's contemporaneous view of misconduct can shed light on his intent, or that government misconduct can shed light on the credibility of a government witness. For example, in *United States v. Lovelien*, No. 16-cr-46, 2017 WL 486263 (D. Nev. Feb. 6, 2017), the court found that the defendants' "perception" and "belief" that the government was actively engaging in wrongdoing at the time of the charged crime could bear on the applicable intent elements. *Id.* at *2-*3. The defendants' belief that "that the government was basically [ ]stealing people's personal property, killing cows, and limiting free speech" provided an alternate and non-criminal explanation for why they engaged in certain interstate travel, potentially rebutting the government's allegation that they did so "to commit a crime"—"with intent to carry on 'extortion,' . . . [and] "with the purpose of obstructing justice." *Id.* at *2-*3. It also bore on an "excessive use of force defense" to a charge of assaulting a federal agent. *Id.* at *3. In *United States v. Miller*, 891 F.2d 1265 (7th Cir. 1989), a defendant argued that "the government engaged in 'outrageous conduct' by employing a drug addict with whom Miller was romantically involved to induce him to sell drugs." *Id.* at 1266. The court rejected that argument. *Id.* Judge Easterbrook wrote separately to reject the theory that "outrageous government conduct" constitutes a defense. *Id.* at 1271 (Easterbrook, J., concurring). In so doing, he explained that "[d]efendants who think that the government went 'too far' may make an entrapment defense or say that they lack the mens rea required of the offense." *Id.*[1] In *United*

---

[1] Concord also cites (Doc. 303, at 4) a government filing in *United States v. Boyce*, No. 10-CR-533 (N.D. Ill. Apr. 18, 2011). That filing simply quoted Judge Easterbrook's concurrence and explained that in "limited circumstances," evidence of government misconduct may be admissible, "such as to 'make an entrapment defense or say that [the defendants] lack the mens rea required of the offense." 2011 WL 7898682.

7

*States v. Ferrell*, No. 09-cr-249, 2010 WL 3239293 (E.D. Wis. Aug. 13, 2010), a court concluded that "[t]estimony about the officers' encounter with defendant, pursuant to which they allegedly recovered the gun and drugs, . . . would assist the jury in understanding and evaluating the events that immediately followed" and "may also be relevant to the credibility of the officers." *Id*. at *2-*3. And in *United States v. Hurn*, 368 F.3d 1359 (11th Cir. 2004), the court observed that in some instances a defendant may be permitted to introduce evidence that does not bear directly on an element of the charged crime but "tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently." *Id.* at 1363. The court clarified that this sort of evidence is admissible if it would "discredit the key government witness" or otherwise support "an inference of bias concerning the government's witness." *Id.* at 1366 (quotation mark omitted). "Because [the defendant's] proffered testimony did not concern the credibility of a government witness," the Court explained that "this doctrine is inapplicable." *Id.*

    **2.** As noted, the introduction to Concord's filing states that Concord wishes to submit evidence that the government has not previously charged a case "on the theory of liability used here," "interpreted or applied statutory and regulatory provisions as it has done here," or "provided guidance consistent with [the] applications of relevant statutes and regulations here." Doc. 305, at 1. Concord suggests (without explanation) that these asserted facts bear on the defendants' "knowledge . . . of the existence of the Federal Election Commission ("FEC") or the FARA Unit," "knowledge of the responsibilities of those offices," and knowledge of the "application and interpretation of regulations administered by those offices." *Id.* Concord has not come close to establishing that whatever unknown evidence it wishes to elicit about these facts is relevant or otherwise admissible under Rule 403.

Initially, to the extent that Concord urges (as it has previously) that this case is a novel application of 18 U.S.C. § 371, that could have no bearing on Concord's intent or any necessary knowledge government functions.  To be guilty of the crime charged, the conspirators must have intended to deceive and to impair lawful government functions.  But knowledge (or lack of knowledge) as to whether, how often, and by means of what statutes the government administers those functions is an entirely separate question.  "I thought the government would not prosecute me for engaging in the charged conduct" is simply not a legally cognizable defense.  And even if prior prosecution bore on knowledge of illegality, this Court has already (and correctly) held that willfulness is not an element of a conspiracy to defraud the United States.  Doc. 74 at 16-17.  Any argument that "no person or entity has ever before been prosecuted on the theory of liability utilized here" (Doc. 303, at 1) is simply a back-door effort to argue selective prosecution or to solicit jury nullification.  As the government has explained, that is not a proper basis for the admission of evidence or argument at trial, and any potential probative value is vastly outweighed by the risk of unfair prejudice and jury confusion.

To the extent that Concord wishes to present evidence that the government has not previously prosecuted a case or issued public guidance documents applying FECA or FARA to the precise facts at issue here, that evidence is not admissible for at least four reasons.  First, the question is not is not whether the conspirators had a granular understanding of FECA, FARA, or the roles played by the FEC and DOJ.  To constitute a conspiracy to defraud the United States, one objective of the conspiracy must have been to obtain money or property or, as relevant here, to impede lawful government functions. But the conspirators need not have known specifics about those functions.  *See* Doc. 74, at 24-25 (this Court's memorandum opinion explaining that the government need not show specific knowledge about the government's administration of

disclosure requirements but "general knowledge that U.S. agencies are tasked with collecting" certain kinds of information suffices).

Second, evidence about FEC or DOJ practice or lack of guidance documents could have no bearing on the nature of the conspirators' agreement—the crime that is charged here—unless the conspirators possessed that information when they formed the conspiracy. *See, e.g., United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006) (information about "what others were told" is "simply irrelevant to the defendant's state of mind"); *United States v. Secord*, 726 F. Supp. 848-849 (D.D.C. 1989) (a defendant's "state of mind" can be affected only by information read or heard by him). Information about the administration and enforcement of relevant statutes and regulations can affect Concord's state of mind only if Concord knows that information. Yet Concord's opposition proffers no evidence that would establish Concord's knowledge of such "facts." Given Concord's reluctance to this point to bring anyone affiliated with the company to the United States for purposes of this litigation, it seems unlikely that Concord will present any evidence of its knowledge. Indeed, as discussed below, Concord's introduction of evidence of these "facts" without also showing that Concord was aware of the "facts" would be enormously prejudicial to the United States and confusing to the jury.

Third, Concord's asserted "facts" are untrue or misleading. Concord claims that the prosecution here and legal interpretations potentially at issue here are novel. As discussed in the government's oppositions to Concord's motions to dismiss Count One, the United States regularly charges defendants with conspiracy to defraud the United States by interfering with lawful government functions, which is the "theory of liability utilized here." The government has charged in other cases violations of the FECA foreign source ban, failures to file FECA disclosures, FARA, efforts to conceal such conduct, and conspiracies to commit these offenses. To be sure, every case

is different. And the government has not charged a case with the exact facts here or issued a guidance document addressing the exact facts here. But many defendants could make the same point. Concord fails to explain why at that level of generality, any evidence about prior charging practice is relevant to Concord's intent, particularly for a crime that does not require willfulness.

Fourth, and in any event, evidence on these asserted facts should be excluded because it poses significant risks of unfair prejudice, confusing or misleading the jury, undue delay, and wasting time. *See* Fed. R. Evid. 403. Each of these dangers would substantially outweigh any minimal probative value. And taken together, these considerations require excluding the evidence and argument at issue here. Given the "marginal relevance" of prior DOJ or FEC prosecutions and guidance, the "likely (and presumably intended) effect" of admitting evidence and argument on those issues would be "to shift the focus away from the relevant evidence of [Concord's] wrongdoing" to matters that are, at most, "tangentially related." *See United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997). That creates a serious risk of prejudicing the case by potentially leading the jury to believe these matters are more relevant than they are (which is not at all), or by inviting the jury to acquit based not on the elements of the crime charged in the Indictment but on other issues. *See, e.g., United States v. Spence*, 721 F.3d 1224, 1229-1230 (10th Cir. 2013) (upholding exclusion of testimony that "appeared to be a back-door approach" to asserting an improper defense).

These kinds of evidence and argument pose a related and significant risk of confusing or misleading the jury. For example, it could involve detailed and competing testimony about how FECA and applicable case law have been understood. Given its volume and subject matter, such evidence may appear to have greater importance than it does. Even worse, depending on what Concord has in mind, the evidence could be technical and complex, exacerbating the risk of jurors

not following what, if any, relevance it has.  *See, e.g., Renfro Hosiery Mills Co. v. National Cash Register Co.*, 552 F.2d 1061, 1069 (4th Cir. 1977) ("voluminous and complex" exhibits that "might well have been confusing to a layman" can create "confusion of the issues").  Indeed, if Concord invited a mini-trial about understandings in the U.S. legal community about conspiracies to defraud the United States, FECA, and FARA, the government would be compelled to present a detailed case in response.  *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1346-1347 (3d Cir. 2002) (upholding exclusion of evidence with "low probative value" where "rebut[ting]" its "expansive allegations" would require "a great deal of time" and create "a trial within a trial").  Whatever minimal probative value Concord's evidence may have cannot justify those risks.

**CONCLUSION**

Concord goes to great lengths to obtain the ability to present a range of evidence and argument related to prosecutions other than the instant case. Somehow, Concord simultaneously claims it is puzzled as to why the government is concerned about the potential for jury nullification. Doc. 305 at 3. The various lines of evidence and argument Concord wishes to present are irrelevant andwould confuse the jury or encourage the jury to nullify. Concord should therefore not be permitted to introduce evidence or to argue to the jury that its prosecution is selective, arbitrary, or otherwise improperly motivated.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS<br>Assistant Attorney General for National Security | JESSIE K. LIU<br>United States Attorney |
| By: /s/_____<br>Heather N. Alpino<br>U.S. Department of Justice<br>National Security Division<br>950 Pennsylvania Ave. NW<br>Washington, D.C. 20530<br>Telephone: (202) 514-2000 | By: /s/_____<br>Luke Jones<br>Peter Lallas<br>Jonathan Kravis<br>Adam Jed<br>555 Fourth Street NW<br>Washington, D.C. 20530<br>Telephone: (202) 252-6886 |