# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CONCORD MANAGEMENT AND<br>CONSULTING LLC,<br><br>Defendant. | CRIMINAL NUMBER:<br><br>1:18-cr-00032-2-DLF |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE EVIDENCE**

Defendant Concord Management and Consulting LLC ("Concord"), by and through undersigned counsel, submits this Reply in Support of its Motion *In Limine* To Exclude Evidence.

The government concedes that it does not intend to offer the following evidence in its case-in-chief: (1) that the Russian government sponsored the conspiracy alleged in the Superseding Indictment ("Indictment"); (2) regarding any sanctions imposed by the Department of Treasury, Office of Foreign Assets Control or any other agency on Concord or any of the other Defendants in this case; or (3) alleged conduct after January 2018. Notwithstanding the government's agreement not to offer the above-referenced evidence, Concord respectfully requests that the Court issue an order specifically precluding the presentation of any such evidence or argument relating to these issues. Such an order would properly cement the parties' positions, and prevent any potential confusion or surprise at trial.

As to the evidence that remains in dispute, the government fails to show that the evidence Concord seeks to exclude is relevant, and even if relevant, that its probative value outweighs the danger of unfair prejudice to Concord. Accordingly, Concord respectfully submits that its Motion be granted in its entirety.

**ARGUMENT**

1. **The Government Should Be Precluded From Offering Evidence or Argument Linking Concord Or Any Of Its Alleged Co-Conspirators To The Russian Government**

As noted above, the government concedes that it does not intend to introduce evidence in its case-in-chief that the Russian government sponsored the alleged conspiracy, which is all that Concord sought in its Motion. Opp. 3. But the government then complicates matters by asserting that "Concord appears to be asking for more," arguing that Concord's request could even include corporate registration documents filed with a Russian government agency. *Id*. But no rational reading of Concord's Motion could lead to this conclusion. To be clear, Concord's Motion is limited to a connection between the Russian government and the alleged conspiracy, not every incidental mention of the country or government of Russia. In particular, Concord does not oppose the government's proffer that it be allowed to introduce limited evidence for the purpose of proving the identities of the alleged co-conspirators and the connections between them. However, any evidence that is beyond incidental references to the Russian government should be expressly excluded.

2. **The Government Should Be Precluded From Offering Evidence Or Argument Referring To Defendant Yevgeniy Prigozhin As "Putin's Chef," Or "Putin's Cook" During Trial Because It Is Irrelevant, Unfairly Prejudicial And Misleading**

Again the government takes a straightforward request and makes it overly complicated. Here, Concord sought an order that the government be precluded from offering evidence or argument referring to Mr. Prigozhin as "Putin's Chef," "Putin's Cook," or an "Oligarch." Such evidence would provide the government with a backdoor to suggest to the jury that the Russian government sponsored the activity alleged in the Indictment. In opposition, the government takes positions regarding "Prigozhin's various nicknames," including simply "boss" or "chief." Opp. 6. But Concord did not seek relief as to any and all possible nicknames, just the ones that carry with

them the prejudicial association with the Russian government. By proposing the redaction of the word "Putin" from its evidence, the government appears to acknowledge that Concord's request is appropriate. *Id.* 6.

With respect to the specific monikers "Putin's Chef" and "Putin's Cook," the government argues they are relevant because they were "'not solely used by the media,' but were also used by members of the conspiracy and by an unwitting American." *Id.* 7. This argument is misleading at best. Contrary to the government's suggestion, there is no evidence in the exhibits identified by the government indicating that either co-conspirators or unwitting Americans referred to Mr. Prigozhin as "Putin's Chef" or "Putin's Cook."[1] The only specific exhibits the government refers to are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 6.[2] The government argues that "taken together with evidence that one of [Mr.] Prigozhin's nicknames is 'Putin's Chef,' the images are probative of the allegation that [Mr.] Prigozhin led and oversaw the IRA." *Id.* Setting aside the absurdity of this for now, because these ▮▮▮▮▮▮ do not contain any reference to the nickname "Putin's Chef," evidence of that nickname—as opposed to the nickname "chef"—is entirely unnecessary for the government to attempt to draw this connection.

As Concord accurately represented in its Motion, the nicknames "Putin's Chef" and "Putin's Cook" were in fact coined and subsequently grossly overused by the media simply because Concord provided catering services to the Russian government. The media stories had the effect of sensationalizing and exaggerating Mr. Prigozhin's alleged connection with the

---

[1] Concord is referring to the exhibit lists proffered by the government on January 6, 2020, January 9, 2020, and on January 17, 2020.

[2] Moreover, there is not a single document in the nearly four million documents produced by the government in discovery in which a defendant or unindicted co-conspirator referred to Mr. Prigozhin as "Putin's Chef" or "Putin's Cook."

3

Russian government.[3]  They bear no relevance to the alleged conspiracy and hold no relationship to the acts charged, and, thus, should be excluded.  *United States v. Brown*, 5 F. Supp. 3d 876, 788 (E.D. Va. 2014) (holding that alias should not be admitted as relevant evidence unless it bears a relationship to the acts charged).

Even if "Putin's Chef" and "Putin's Cook" are somehow relevant—which they are not—"a trial court should consider seriously whether the probative value is substantially outweighed by any danger of unfair prejudice . . . and whether introduction of the nickname is truly needed to identify the defendant, connect him with the crime, or prove some other matter of significance." *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir. 2009).  Here the risk of misleading and confusing the jury and of unfairly prejudicing Concord is particularly objectionable in light of the limited probative value of the monikers "Putin's Chef" or "Putin's Cook."  The government concedes that it has no intention to use these monikers to either suggest that Russian President Vladimir Putin was in any way involved in the conspiracy or to distinguish Mr. Prigozhin from any other men with a similar name, but wants to use this evidence to show Mr. Prigozhin's controlling role at Concord, and his connection to the IRA and its activities.  Opp. 7.  However, the government's suggestion that "Putin's Chef" moniker somehow demonstrates Mr. Prigozhin's executive role at Concord is absurd, especially considering that Mr. Prigozhin's role and title can be established through other evidence that does not carry the improper association to the Russian government.  Likewise, the alleged depiction of Mr. Prigozhin ▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌ may be sufficiently established by the neutral fact that Concord is an entity

---

[3] *Overhyped: How "Putin's Chef" Became One of the Most Influential People in Russia,* Carnegie Moscow Center (Feb. 19, 2019) available at https://carnegie.ru/commentary/78390 (noting that the Western media's fascination with Prigozhin's moniker, "Putin's chef," only serves to further emphasize his closeness to the Russian president and that "Prigozhin's role has been grossly exaggerated and mythologized" by the media).

4

engaged in a restaurant and catering business instead of the highly prejudicial and confusing "Putin's Chef" moniker.  And while Concord disputes the government's assertion that there was any conspiracy or improper connection between Mr. Prigozhin and IRA, to the extent such connection exists, it should be proven by less prejudicial evidence like correspondence, transaction documents, or means other than a media-coined moniker.

Finally, there is no question that identifying someone as "Putin's Chef" or "Putin's Cook" is highly and unfairly prejudicial.  As mentioned in Concord's Motion, were the government allowed to refer to Mr. Prigozhin as "Putin's Chef" or "Putin's Cook" at trial, the jury would undoubtedly draw the inference that Mr. Prigozhin (and by extension, Concord) acted on behalf of, or is somehow associated with Vladmir Putin (and by extension, the Russian government), the exact thing that the government explicitly says it will not prove.  Considering the obvious bias against the Russian government and Vladimir Putin, such evidence would impermissibly and implicitly suggest a link between Concord and the Russian government and would severely prejudice Concord at trial because of the massive number of news stories and the Mueller Report claiming that Russia interfered in the 2016 U.S. election.

**3. The Government Should Be Precluded From Offering Evidence Or Argument Of Defendants' Alleged Involvement In Election Interference In Other Countries**

The government conjures up a convoluted explanation as to how IRA's alleged "election interference" activities in other countries—which are not only unproven, but also not alleged in the Indictment—supposedly connects Mr. Prigozhin to the IRA and its activities.  ██████

██████████████████████████████████████████████████████

████████████████████.  Opp. 8-9.  ██████████████████

██████████████████

5

███ to defraud the United States. *Id*. at 9. In particular, the government intends to introduce this evidence to show that Mr. ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███ *Id*. The government attempts to salvage this irrelevant and impermissible propensity evidence by arguing that it intends to introduce it to prove that ██████████████████

█████████████████████████████████████████████████ *Id*. This attempt fails because mentioning ████████████████████████ does not make the description of the meeting, or of Mr. Prigozhin's role in it, any more or less significant. That is, even if true, █ █████████████████████████████████████ is irrelevant to the allegations in the Indictment of activities of IRA directed at U.S. government agencies. Regardless of the reasons why the government intends to introduce particular evidence, the Court must nevertheless balance that evidence against the danger of unfair prejudice to Concord. *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000) (citing *Old Chief v. U.S.*, 519 U.S. 172, 179 (1997) (relevant evidence inadmissible under Rule 403 if it is "unfairly prejudicial, cumulative or the like, its relevance notwithstanding"). For all the reasons stated in Concord's Motion, references to unproven and irrelevant allegations that Defendants engaged in "election interference" activities in other countries is highly prejudicial and should be excluded on that basis.

What is more, the probative value and unfair prejudice of an item of evidence "may be calculated by comparing evidentiary alternatives," and "[t]he probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point." *Old Chief*, 519 U.S. at 184-85 (quoting 22 Wright & Graham, Federal Practice & Procedure: Evidence § 5250 (1978)); *see also id*. at 183 (observing that "a judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point"); *see also* Fed. R. Evid. 403,

Advisory Committee Notes, 1972 Proposed Rules (noting that "[i]n reaching a decision whether to exclude on grounds of unfair prejudice . . . [t]he availability of other means of proof may also be an appropriate factor").

> 4. **The Government Should Be Precluded From Offering Prejudicial Evidence Or Argument Of Lawful Conduct At Trial**

In its Motion, Concord asked the Court to preclude the government from introducing evidence and argument related to lawful conduct, such as posted content related to social issues or purchased advertisements that constitute permissible issue advocacy, on the grounds that such evidence is irrelevant and would be prejudicial. In its Opposition, the government states its intention to introduce evidence of Facebook and Twitter accounts controlled by alleged co-conspirators which were allegedly "related to the conspirators' overarching goal of sowing discord in the American political system and favoring one candidate over another." Opp. 15. The government contends the question of whether these advertisements were actually independent expenditures that trigger FECA's disclosure requirement and prohibition on foreign independent expenditures is a question for the jury to decide. *Id*. But as Concord has previously pointed out, whether a particular advertisement is properly categorized as an independent expenditure that expressly advocates for the election or defeat of a clearly identified federal candidate under FECA is a highly fact-specific legal analysis and, in some cases, one in which the FEC itself is unable to make. *See* ECF 181 at 12-14 (identifying advertisements that mention a candidate by name and criticize that candidate but were not determined by the FEC to be express advocacy and identifying instances where the FEC could not make the determination). Yet here, the government wants to introduce this evidence and have the jury decide these issues, which will only cause prejudice, confusion, and undue delay.

The government's arguments miss the point for another reason as well. By arguing that this evidence is relevant to Defendants "goal of sowing discord in the American political system,"

7

the government once again attempts to frame this case as a prosecution for "election interference" even though "election interference" is not a crime that has been—or can be—charged against Concord. The completely lawful actions of the IRA in posting content that would not have triggered any reporting or registration obligations cannot be relevant to a conspiracy to defraud three specific U.S. agencies. Instead, the government seeks to use the proverbial *throw all the stuff up against the wall and see what sticks*. This will create massive confusion for the jury in attempting to determine what activity, if any, created a filing, registration, or disclosure requirement on any of the defendants.

The government suggests that evidence of posted content or advertisements that constitute permissible issue advocacy is relevant to establishing intent or motive. Opp. 11. The government does not explain how this evidence would be probative of intent or motive to defraud three specific government agencies, but even if it were, the Court must nevertheless weigh its probative value against the potential for prejudice. *Bowie*, 232 F.3d at 930 ("[c]ompliance with Rule 404(b) does not itself assure admission of the other crimes evidence . . . the court may exclude [] evidence . . . that it is unfairly prejudicial, cumulative or the like, its relevance notwithstanding"). As discussed in Concord's Motion, evidence related to contentious political issues, such as immigration, the Black Lives Matter movement, religion, politically-charged regions within the United States, and references to U.S. political parties has the potential to inflame the jury's passions and could result in creating bias against Concord. Moreover, many of the advertisements and posts on the government's exhibit list related to these issues are dated after the 2016 election and none of it is relevant to a conspiracy to defraud three specific government agencies.

5. **The Government Should Be Precluded From Offering Evidence Or Argument that Concord And Other Defendants Violated The FEC's Foreign National Expenditure Restrictions**

In seeking to introduce evidence that Defendants violated the FEC's restrictions on election expenditures by foreign nationals, the government once again attempts to cram as many uncharged crimes as possible into this prosecution. While the Indictment alleges certain activities that could be construed as a violation of the restrictions on foreign election expenditures, the government has not charged that conduct as a crime. If that evidence were introduced, the jury's attention would be diverted to allegedly criminal activities that are not charged in this case and which are not probative to the conspiracy charge that the government is attempting to prove. The jury would "undoubtedly lose sight of what is important to this case." *United States v. Libby*, 467 F. Supp. 2d 1, 18 (D.D.C. 2006) (excluding portions of classified documents containing notes taken by the defendant at various meetings because the abundance of information "would mislead and confuse the jury"). The government's case should be focused on what it actually needs to prove, that Defendants conspired to defraud the United States by impairing, obstructing, or defeating the lawful functions of the Federal Election Commission, Department of Justice, and Department of State. Anything beyond that is superfluous, and will serve no purpose other than to confuse the jury.

**CONCLUSION**

Based on the foregoing, the Court should exercise its discretion and grant Concord's motion *in limine* in its entirety.

Dated: January 28, 2019

Respectfully submitted,

CONCORD MANAGEMENT
AND CONSULTING LLC

By: /s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine J. Seikaly (D.C. Bar No. 498641)

9

REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005-3373
202.414.9200 (phone)
202.414.9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com