**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S RENEWED MOTION FOR EARLY RETURN TRIAL SUBPOENA

The United States of America, by and through undersigned counsel, respectfully requests that the Court approve a subpoena to defendant Concord Management and Consulting LLC. On January 24, the Court granted the government's request to subpoena three categories of records, and the government has now served that subpoena, as modified by the Court, on Concord. The Court denied the government's request for three additional categories of records, concluding that aspects of those requests were not sufficiently specific. The Court made clear that the government could narrow its requests, provide a more detailed justification for the prior requests through more detailed evidence, and/or offer a more thorough account of why the government believes that these categories are calculated to obtain records for use at trial. This motion does all three. The motion provides a detailed factual basis and logical argument for why the requests at issue are proper and narrows the categories of requested documents.

## BACKGROUND

### A.    Rule 17 Trial Subpoenas

Federal Rule of Criminal Procedure 17 authorizes a party to a criminal case to issue a subpoena commanding a person to testify or to produce documents or objects for use in a "proceeding." *See* Fed. R. Crim. P. 17(a), (c)(1). Rule 17 authorizes subpoenas for testimony or

evidence pertinent to any kind of court proceeding.   *See* Fed. R. Crim. P. 17(a), (c)(1); *see also* Wright & Miller, *Federal Practice and Procedure* § 272 (3d ed.) (explaining that in addition to trials, "[a] subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, for determination of an issue of fact raised by a pre-trial motion, or for post-trial motions"). Although Rule 17 does not expressly define what constitutes a proper subpoena, those limits derive from the requirement that a subpoena is calculated to obtain evidence for a particular proceeding. *See United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (summarizing requirements for trial subpoena); *United States v. R. Enterprises*, 498 U.S. 292, 299-300 (1991) (establishing different requirements for grand jury subpoena).

When determining whether a trial subpoena seeking documents complies with Rule 17, the key question is whether the subpoena is calculated to obtain records for use at trial. The Supreme Court has explained that a subpoena may be used to reach any materials "so long as they are evidentiary," and therefore every subpoena must be "a good-faith effort . . . to obtain evidence." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-220 (1951). A court's decision "to quash or modify" a subpoena must be calculated "to that end," *i.e.,* to whether the requested subpoena is "a good-faith effort . . . to obtain evidence." *Id.* at 220. In the context of a trial subpoena, the question is therefore whether the subpoena is a good faith effort to obtain evidence for trial. The three guideposts for answering that question are "(1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700; *see, e.g., United States v. Libby*, 432 F. Supp. 2d 26, 29-32 (D.D.C. 2006). The significance of the first two requirements—relevancy and admissibility—is straightforward. Only material that is arguably relevant and admissible could constitute evidence that can be used at trial. The further requirement of specificity recognizes that without having already seen the potential evidence, it is impossible to describe fully or with specificity what will

ultimately constitute evidence.  *See Nixon*, 418 U.S. at 700.  The question is whether "there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700).  Where the requesting party has not previously seen the documents sought, this often entails "reasonably specify[ing] the information contained or believed to be contained in the documents." *Id.*

### B.  Factual Background

The Superseding Indictment alleges that the conspirators sought to engage in what they called "information warfare" directed at the American political system.  The Superseding Indictment further alleges that, in order to carry out their interference activities without detection of their Russian affiliation, the defendants conspired to obstruct the lawful functions of the United States government agencies that monitor and police foreign influence.  The Superseding Indictment alleges, and the government will prove at trial, that the conspirators, in fact, executed their plan.  The government will show that the Internet Research Agency ("IRA") and its employees (several of whom are indicted defendants) carried out the day-to-day efforts to influence the U.S. political system without detection, including efforts to impede the relevant government functions through deceitful means.  The government will further show that defendant Concord Management and Consulting, and its controlling officer, Yevgeniy Prigozhin, funded and oversaw the influence and interference activities through reporting and interaction with IRA management.

Because this charged crime is a conspiracy, one of the key issues in the case will be the relationship between Concord and the IRA.  The government's evidence shows that Concord (including its officers and employees) and the IRA (including its officers and employees)

interacted regularly and kept records of those interactions.  The argument section below provides further detail about that evidence and why it shows a sufficient likelihood, through rational inferences, that the documents being sought contain relevant and admissible evidence.  But for present purposes, the government here outlines the most pertinent background.



### C.    Subpoena Categories

The government respectfully submits that in light of the detailed evidence and discussion

of the government's inferences contained below, the government has now met its burden to show

that there is a sufficient likelihood, demonstrated through rational inferences, that the documents

requested contain relevant and admissible evidence.  In the alternative, for each category, the

government has also proposed sub-categories that are even narrower.

### 1.  Calendar Entries

a.  For the time period from January 1, 2014 to February 1, 2018, calendar entries reflecting meetings between Yevgeniy Prigozhin and Jay Aslanov, Michael Burchik, Michael Bystrov and/or an individual identified as "Misha Lakhta."

b.  For the time period from January 1, 2014 to February 1, 2018, calendar entries reflecting meetings between Yevgeniy Prigozhin and Michael Burchik, "Burchik M," or "Misha Lakhta."

c.  Calendar entries reflecting meetings between Prigozhin and "Burchik M." on or about April 13, 2016 and on or about April 22, 2016.

d.  Calendar entries reflecting meetings between Prigozhin and "Misha Lakhta" on or about January 27, 2016, February 1, 2016, February 2, 2016, February 14, 2016, February 23, 2016, February 29, 2016, May 22, 2016, May 23, 2016, May 28, 2016, May 29, 2016, June 7, 2016, June 27, 2016, July 1, 2016, September 22, 2016,

October 5, 2016, October 23, 2016, October 30, 2016, November 6, 2016, November 13, 2016, November 26, 2016, December 3, 2016, December 5, 2016, December 29, 2016, January 19, 2017, and February 1, 2017.

**2. Payment Records**

a. For the time period from January 1, 2014 to February 1, 2018, records reflecting any payments from Concord Management and Consulting LLC to fund the activities of the Internet Research Agency, made directly or through another organization.

b. For the time period from January 1, 2014 to February 1, 2018, records reflecting any payments from Concord Management and Consulting LLC to fund overhead costs, salaries, or social media activities of the Internet Research Agency, made directly or through another organization.

c. For the time period from January 1, 2014 to February 1, 2018, records reflecting any payments from Concord Management and Consulting LLC to fund the purchase of social media advertising or the use of computer infrastructure such as proxy servers or virtual private servers in the United States by the Internet Research Agency, made directly or through another organization.

**3. Communications**

a. For the time period from January 1, 2014 to February 1, 2018, communications between Concord Management and Consulting LLC and Elena Khusyaynova concerning the activities of the Internet Research Agency.

b. For the time period from January 1, 2014 to February 1, 2018, communications among Elena Khusyaynova, Mairna Poloreltseva, and Svetlana Polikarpova concerning payments to the Internet Research Agency.

## DISCUSSION

The requested subpoena is "a good-faith effort . . . to obtain evidence" for use at trial. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-220 (1951). As the government has previously explained and Concord no longer disputes (*see* Doc. 288, at 35-44), the records sought by the government are directly relevant to this case and likely admissible at trial. Because the government has obtained only a subset of these records ███████████████████████ ████████████████████████████████████████ the government cannot describe fully or with

precise specificity the records that it seeks. But as laid out here, substantial evidence and rational inferences establish a "sufficient likelihood" that the responsive records "contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700). And because the government does not know the exact form the records take, the government has properly described them in terms of "the information contained or believed to be contained in the documents." *Id.*

### 1. Calendar Entries

The proposed trial subpoena requests pertinent calendar entries that show meetings between Yevgeniy Prigozhin and IRA leadership. The first category (1a) narrows the prior request to calendar entries for the time period from January 1, 2014 to February 1, 2018 for Prigozhin's meetings with Jay Aslanov, Mikahil Burchik, Michael Bystrov and/or an individual identified as "Misha Lakhta"—

The second category (1b) further narrows that request to calendar entries for the time period from January 1, 2014 to February 1, 2018, reflecting meetings between Yevgeniy Prigozhin and Michael Burchik, "Burchik M," or "Misha Lakhta"—

The third and fourth categories (1c and 1d) request                                          For the reasons set forth below, the government believes that the first formulation is sufficiently specific to satisfy Rule 17. If the Court disagrees, then the government requests that the Court authorize a subpoena for the second category or, if not, the third and fourth categories.

Evidence gathered during the course of the investigation shows that this request is likely to lead to the discovery of admissible evidence because





If the Court disagrees, then the government requests (1b) that the Court approve an even narrower version of this request that requires Concord to produce ██████████████████ ████████████████████████████████████████████████████ If the Court disagrees, then the government requests (1c and 1d) ████████████████ ████████████████████████████ Concord has already stated that it intends to dispute the authenticity of this evidence. And resolving disputes regarding authenticity is a proper function of a trial subpoena. Digital calendar entries also bear metadata ████████████████████

At the January 24, 2020 hearing, the Court raised the possibility that calendar entries might reflect meetings with IRA leadership that has nothing to do with the allegations in the Superseding Indictment. As an initial matter, because the Superseding Indictment charges a broad conspiracy, evidence of the relationship between Prigozhin and the IRA is itself significant. "In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence . . . to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (internal quotation marks and citations omitted); *see also, e.g., United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (prior bad acts by conspirators relevant to show "the relationship" between conspirators, "the complete story of the crimes charged" and "the basis for trust" among them); *United States v. Kuehne*, 547 F.3d 667, 688-689 (6th Cir. 2008) (relationship among coconspirators relevant to show knowledge and common plan); *United States v. Morrow*, No. 04-cr-355, 2005 WL 3159572, at *10 (D.D.C. Apr. 7, 2005) (other joint activity relevant "to show association, a developing

relationship, and identity"); *United States v. Moore,* 149 F.3d 773, 780-781 (8th Cir. 1998) (evidence relevant to "explain[] the circumstances of the alleged crime or the relationship between alleged conspirators"); *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993) ("Association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant."); *United States v. O'Leary*, 739 F.2d 135, 136-137 (3d Cir. 1984) (in conspiracy trial, evidence is relevant to show "the parties' familiarity with one another, and their concert of action").

The Superseding Indictment further alleges that the nature of the relationship was that Concord oversaw the IRA's activities, received updates, and exercised financial control.  The fact that Prigozhin met with IRA leadership and the frequency of those meetings—particularly in conjunction with ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ supports an inference that Prigozhin was aware of and part of the IRA's influence activities.  *See generally Old Chief v. United States*, 519 U.S. 172, 179 (1997) (evidence is relevant if it is "a step on one evidentiary route"); *see, e.g., United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) (uncharged hostage taking by defendants "relevant to both how those defendants started to work together as kidnappers, and their motive and intent to kidnap"); *United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (evidence relevant in conspiracy trial "to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme") (alteration in original); *United States v. Nosal*, No. 08-cr-237, 2013 WL 11327121, at *6 (N.D. Cal. 2018) (evidence of "relationship between the parties" sheds light on one conspirator's knowledge of another's "thoughts, motives, and intentions during the course of events").  A jury can rationally infer that if the IRA was engaging in deceptive influence activities targeting the United States and dedicating significant resources to those efforts,

then briefings about IRA activities likely covered those U.S.-directed efforts.  As discussed, the

Indeed, the inferences drawn here parallel those drawn by the Supreme Court in *Nixon* itself.  There, the government sought a number of tapes that contained recordings of oval office meetings.  The government did not know the content of many of these tapes, and many would surely include information that was irrelevant to the trial of Watergate conspirators.  The Court recognized, however, that "statements of one or more of the participants" in some conversations shed light on the likely relevance.  418 U.S. at 700.  And "the identity of the participants and the time and place of the conversations, taken in their total context, permit[ted] a rational inference that at least part of the conversations relate to the offenses charged in the indictment."  *Id.*

### 2.    Payment Records

The proposed trial subpoena requests documents related to payments from Concord to the IRA.  The first category (1a) encompasses Concord's payments to fund the IRA's activities.  The second and third categories (1b and 1c) encompass specific categories of payments that would directly support the activities at issue in this case—generalized overhead, salaries, social media, and U.S.-based computer infrastructure.

Evidence gathered during the course of the investigation shows that this request is likely to yield admissible evidence.   In particular, the government has obtained





This evidence provides a sufficient basis to conclude that a trial subpoena to Concord for

records of payments to fund the activities of the IRA will yield admissible, relevant evidence.  The

This evidence is more than sufficient to show that a subpoena to Concord for records related to payments to fund the activities of the IRA is not a fishing expedition.  If the Court disagrees, then the government requests permission to issue a trial subpoena to Concord for the more limited category of financial records reflecting

At the January 24 hearing, the Court raised questions whether the budgets obtained by the government relate to the allegations in the Superseding Indictment, and the Court noted that some or many of the payments the government seeks do not pertain to allegations contained in the indictment.  As with Prigozhin's calendar entries, because the crime charged here is a conspiracy, the nature of the relationship between Concord and the IRA—as well as other indicted co-conspirators who are listed as running shell corporations that received payments—is highly relevant, separate and aside from particular acts in furtherance of the conspiracy.  Moreover, even payments that do not directly concern acts in furtherance of the conspiracy are probative to

understanding Concord's role with respect to the specific "information warfare" that required defrauding the United States.  Establishing that Concord generally funded the IRA's activities, did so through shell corporations, monitored the IRA's spending, and even paid specific invoices goes a long way to demonstrating that Concord funded and monitored the particular influence activities at issue here.  *See Butch*, 256 F.3d at 176 (evidence relevant in conspiracy trial "to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme") (alteration in original); *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 10 (D.D.C. 1999) (in conspiracy to defraud the United States by interfering in FEC function to monitor "hard money," conspirators' "soft money" activity "may establish a pattern of conduct by defendants and help support the allegations with respect to hard money").

Additionally, as discussed,

To be sure, it is possible that some records may reflect activity aimed at other countries. But as discussed, Concord's financing of any IRA influence activity sheds light on Concord's role in the conspiracy charged here.  And the question is not whether there is a certainty but only whether there is a "sufficient likelihood." *Nixon*, 418 U.S. at 700.  In fact, the Supreme Court's short discussion of specificity in *Nixon* relied on a decision in *United States v. Gross*, 24 F.R.D.

138 (S.D.N.Y. 1959), which is similar in many ways to request 2a. *Gross* concerned a prosecution

for violating the Fair Labor Standards Act. *Id.* at 140.  The government there sought "payroll, time

cards and piece work records for all employees" over a two-year period. *Id.* at 139.  The district

court stressed that "if a subpoena is directed towards a good-faith effort to obtain evidence there

is no reason why such evidence may not be reached under Rule 17(c)." *Id.* at 140 (citing *Bowman*,

341 U.S. at 219-220).  The court there noted that "some entries" would not concern FLSA

violations but explained that inspecting all of the payment records would allow the government

"to see whether [the prosecution] can use it or whether [the prosecution] wants to use it." *Id.* at

141.  The court further found that "the motion is made in good faith and that it is an honest effort

to obtain evidence for use on trial." *Id.*  The court recognized that "[i]t [wa]s not a general fishing

expedition to determine whether a crime was committed." *Id.*  Among other things, the

government had "prima facie evidence" to show that the defendant engaged in the charged

conduct, and the requested documents concerned the charged crimes and "the precise period

covered." *Id.*  Court after court has upheld similar subpoenas. *See also, e.g., United States v.

Skelos*, No. 15-cr-317, 2018 WL 2254538, at *6 (S.D.N.Y. May 17, 2018) (the subpoena requests

sufficiently specific "because they are for specific categories of documents concerning or

reflecting payments to Dorego from specifically identified individuals"); *United States v.

Rajaratnam*, No 09-cr-1184, 2011 WL 335170, at *2 (S.D.N.Y. Feb. 2, 2011) (data regarding

trades in the securities of identified issuers); *United States v. McCollom*, 651 F. Supp. 1217, 1219-

25 (N.D. Ill. 1987) (trial subpoena seeking documents related to particular accounts).

### 3.    Communications

Finally, the government has substantially narrowed its request for communications.  The

government now first seeks (3a) only Concord's communications with Elena Khusyaynova—the

IRA accountant ████████████████████████████████████████████████████

████     Alternatively, the government seeks (3b) an even narrower set of communications,
limited to those among the three individuals ████████████████████████████████████
████████     and further limited to the subject of payments to the IRA.  Because the crime charged
here is a conspiracy, the existence, nature, and frequency of communications among conspirators
is itself relevant.  The requests for communications in the proposed trial subpoena are further
limited to the individuals and subject matter that bear directly on the conspiracy charged in this
case and are based on ████████████████████████████████  Courts regularly permit
the government to issue trial subpoenas based on similar forms of rational inference.  *See, e.g.,
United States v. Binday*, No. 12-cr-152, 2013 WL 4494659, at *3 (S.D.N.Y. Aug. 15, 2013)
(upholding subpoena for any recordings or transcripts of interviews regarding certain policies
because "*Nixon* does not require any greater specificity about these telephone
interviews/transcripts than simply identifying the policy with which they were (or were not)
undertaken"); *Rajaratnam*, 2011 WL 335170, at *2 (any and all e-mails regarding defined
subjects); *In re Martin Marietta Corp.*, 856 F.2d 619, 621-622 (4th Cir. 1988) (upholding subpoena
for "internal audit reports, workpapers and related supporting documentation" regarding the
"relationship" between certain companies and all  "[n]otes, transcripts and electronic recordings
of interviews" with six people "concerning the relationship" of one individual and three entities);
*United States v. Gel Spice Co.*, 60l F. Supp. 1214, 1220 (E.D.N.Y. 1985) (denying motion to quash
trial subpoena issued to corporate defendant requesting "records regarding the shipment and
importation of certain foods").

As already explained, the government ████████████████████████████████████
████████████████████████████████████████████████████████████████████████████



*See United States v. Haldeman*, 559 F.2d 31, 76 & n.92 (D.C. Cir. 1976) (suggesting that parties have greater leeway when there is an "informational handicap") (citing *United States v. Burr*, 25 Fed.Cas. 187, 191 (No. 14694) (Marshall, C.J.) ("Now, if a paper be in possession of the opposite party, what statement of its contents or applicability can be expected from the person who claims its production, he not precisely knowing its contents?")).

At the January 24 hearing, the Court questioned whether the government has a basis to seek all communications between Concord and 13 listed individuals and why those communications are unlikely to encompass irrelevant information.   The government has now significantly narrowed the request.   As discussed, request 3a is limited to communications with only one IRA employee, and request 3b is further limited to communications with only two Concord employees and solely to subject matter of payments to the IRA.   These categories mirror

It is of no matter that these communications may include certain irrelevant information. The question is whether "there is a 'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700). It is that fact that separates "an honest effort to obtain evidence for use on trial" from "a general fishing expedition to determine whether a crime was committed." *Gross*, 24 F.R.D. at 141 (cited in *Nixon*); *see Bowman Dairy*, 341 U.S. at 219-220. Thus, in *Nixon*, the subpoenaed tapes likely contained irrelevant information along with relevant information. 418 U.S. at 700 (explaining that the facts "taken in their total context, permit a rational inference that at least *part* of the conversations relate to the offenses charged in the indictment.") (emphasis added). In *Gross*, which the Court cited in *Nixon*, the two years of "payroll, time cards and piece work records for all employees" likely contained some irrelevant information. Indeed, in the many other cases cited by the government where courts approved all records of payments for certain purposes or emails on certain subjects, the responsive records likely included irrelevant information along with relevant information. It was the sufficient likelihood that those records contained relevant evidence that demonstrated the good-faith nature of the trial subpoena, *i.e.*, that it was calculated to obtain evidence for trial.

## CONCLUSION

For the foregoing reasons, the Court should issue the requested early return trial subpoena.

Respectfully submitted,

JOHN C. DEMERS                                          JESSIE K. LIU

Assistant Attorney General for National Security

By: /s/ _____
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

United States Attorney

By: /s/ _____
Luke Jones
Peter Lallas
Jonathan Kravis
Adam C. Jed
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886