**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
| v. | 1:18-cr-00032-2-DLF |
| CONCORD MANAGEMENT AND CONSULTING LLC | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S OPPOSITION
TO THE GOVERNMENT'S SECOND RENEWED MOTION FOR EARLY RETURN
TRIAL SUBPOENA**

Pursuant to Federal Rule of Criminal Procedure 17(c), Defendant Concord Management
and Consulting LLC ("Concord" or "Defendant"), through counsel, submits this Opposition to the
Government's Second Renewed Motion for Early Return Trial Subpoena.  In support, Concord
states as follows:

## I.   INTRODUCTION

We are now to the government's third attempt at obtaining a trial subpoena, and instead of
the government clearly identifying what it is seeking, it pleads in the alternative giving the court a
menu of options to choose from in the hopes of getting some, if not any, relief.  But now, just two
months before trial, and after two years of pretrial litigation, the government prefers to have
Concord searching for evidence the government lacks rather than preparing to defend the case.
But the government's arguments in support of its Motion are nothing more than *reductio ad
absurdum*, wherein it must have the documents from Concord or it can't prove the case the grand
jury already indicted and about which the Attorney General already has said Concord is guilty.
This is akin to saying that *the earth cannot be flat, otherwise people would be falling off the edges*.

## II.    BACKGROUND

Two months ago, on December 3, 2019, the government filed its first Motion for Early Return Trial Subpoena, seeking the Court's approval to subpoena nine overbroad categories of documents. ECF 267. Concord opposed that motion as a matter of law and because of its breadth. ECF 273. With respect to categories four through nine in that subpoena, the Court agreed with Concord, noting that these categories were "far too broad," Dec. 12, 2019 Hr'g Tr. at 49:9, and directed the government to attempt to "significantly narrow[] categories four through nine." Dec. 12, 2019 Order at 4, ECF 279.

On December 20, 2019, the government tried again, filing its first Renewed Motion for Early Return of Trial Subpoena, which slightly revised the prior requests and sought: records reflecting any payments from Concord to fund the activities of the Internet Research Agency ("IRA"), made directly or through another organization, from January 1, 2014 to February 1, 2018; all communications between any individual affiliated with Concord and any of thirteen individuals listed by the government, from January 1, 2014 to February 1, 2018; and calendar entries for Yevgeniy Prigozhin reflecting meetings between January 1, 2014 and February 1, 2018, with any of fifteen names listed by the government. Concord moved to quash the early return trial subpoena and opposed the government's motion. ECF 288-1.

On January 24, 2020, the Court again agreed with Concord and granted Concord's motion to quash as to these requests on the grounds that they failed to meet the specificity requirement under Rule 17(c) and *United States v. Nixon*, 418 U.S. 683 (1974). Jan. 24, 2020 Hr'g Tr. 32:25- 35:8. As it pertains to the request for payment records, the Court found that the government failed to demonstrate that payment records it sought relate to the allegations in the Indictment, and even if they did, how that justifies its request for *all* records of payments between Concord and the IRA. *Id.* 33:10-24. With respect to the request for communications, the Court similarly found that the

government failed to justify its request for *all* communications concerning the IRA between Concord employees and its list of thirteen individuals. *Id*. 33:25-34:16.  And as to the request for calendar entries, the Court found that the government failed to demonstrate that the calendar entries it sought would likely contain admissible relevant information rather than information about meetings that had nothing to do with the allegations in the Indictment. *Id*. 34:14-35:1.  The Court nevertheless provided the government yet a third opportunity to "further narrow its request, or [] provide additional justifications through more detailed evidence or a more thorough account of the rational inferences it is relying on for its current request, or [] both." *Id*.  35:2-8.

In its latest attempt to craft valid subpoena requests for calendar entries, payment records, and communications, the government not only swings and misses a third time (strike three), but also attempts to stay at bat for fourth, fifth, and sixth swings as well.  That is, the government proposes, without any legal authority to support this approach, multiple menu-like options in each category requested "in the alternative," Mot. 5, just in case the Court again determines it has failed to meet its burden in crafting an appropriate subpoena request, essentially reducing its Motion to a jeremiad as opposed to a motion for relief.  Imagine the endless litigation that would arise if parties could simply present for each issue in dispute multiple options for the Court, never making clear where the party believes the line should be drawn.  The use of this tactic, for this reason alone, should result in quashing of the subpoena.

### III.    LAW & ARGUMENT

Rule 17(c)(2) provides that "on motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).  What constitutes "unreasonable or oppressive" for purposes of Rule 17 is guided by several fundamental characteristics of subpoenas in criminal cases, the most important being that a Rule 17 subpoena "was not intended to provide a means of discovery for criminal cases . . . ." *Nixon*, 418 U.S. at

698; *United States v. Ferguson*, 37 F.R.D. 6, 7 (D.D.C. 1965) ("Rule 17 is not a rule for discovery."); *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) ("a criminal subpoena should not be used as 'a discovery device,' but instead should be used only as 'a mechanism for obtaining specific admissible evidence'"). Rather, the purpose of the rule "was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 699. Given the principles underlying this rule, a party seeking documents under Rule 17 must demonstrate that it "cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial." *Id.*[1] Because of the limited reach of Rule 17, the subpoenaing party carries a higher burden to show that it is entitled to the documents it seeks and it is not sufficient justification to simply want more documents. *See id.* at 700 (application must be "made in good faith and is not intended as a general 'fishing expedition'"). Accordingly, a party invoking Rule 17 "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700.[2]

As the Court noted in quashing the government's prior attempt to subpoena these records, "the specificity requirement can be satisfied if there's a sufficient likelihood demonstrated through rational inference that the documents being sought contain relevant and admissible evidence." Jan. 24, 2020 Hr'g Tr. 33:2-5. Not only that, "[b]ut the government must provide a link that explains

---

[1] Any argument that the sought-after materials are required for trial preparation is absolutely contradicted by the Attorney General's published opinion that Concord and its co-defendants are guilty.

[2] The government asserts that Concord "no longer disputes" that the records it is seeking are "directly relevant to this case and likely admissible at trial." Mot. 6. This statement is bizarre and untrue, and of course it is not supported by the government's citation to Concord's prior motion challenging the subpoena requests. To be clear, Concord does dispute that the proposed subpoena requests seek relevant and admissible evidence.

what the government expects to find and why it expects to find it." *Id*. 33:5-7 (citing *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 181 (D.D.C. 2015)).

Although the parties agree that the *Nixon* standard must be applied in assessing the propriety of a trial subpoena (*see* Mot. 2), in a misguided attempt to draw parallels to this case, the government mischaracterizes the factual context of *Nixon* and grossly overstates its analogy to this case.  *Nixon* involved a trial subpoena for certain tapes containing conversations between the President and one or more defendants named in the indictment.  418 U.S. at 687-88.  In analogizing to *Nixon*, the government suggests that the enforcement of the subpoena was affirmed because "'statements of one or more of the participants' in some conversations shed light on the likely relevance . . . [a]nd 'the identity of the participants and the time and place of the conversations, taken in their total context, permit[ted] a rational inference that at least part of the conversations relate to the offenses charged in the indictment.'" Mot. 12 (quoting *Nixon*, 418 U.S. at 700).  What the government conveniently fails to acknowledge, however, is the rigorous factual showing the government made in *Nixon* to overcome its heavy burden and demonstrate that its requests were sufficiently specific to be enforceable.  The "rational inference" that was permitted in *Nixon* was not based on speculation or conjecture alone.  Rather, it was grounded in a factual foundation that was established by "White House daily logs and appointment records," "edited transcripts of 43 conversations" which included "portions of 20 conversations subject to the subpoena," and  "sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time." *Id.*  at 688, 700.  Only after that factual groundwork was laid did the Supreme Court "permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment" that was based on "the identity of the participants and the time and place of the conversations, *taken in their total context*." *Id.* at 700 (emphasis added).

Thus, *Nixon* instructs that the specificity requirement called for more than speculation or conjecture.  As this Court has observed, baldly asserting that the subpoena seeks "'things that would be evidence that we could potentially even use in our case-in-chief' . . . is the type of vague justification that makes clear the subpoenas were 'a general "fishing expedition" that attempts to use the rule as a discovery device.'"  *Vo*, 78 F. Supp. 3d at 181.  And that is precisely what the government does here.  As shown below, each of the government's requests is supported by nothing more than "vague justifications," speculation, and conjecture.  For this reason, the government's renewed motion should be denied.

### A.    Calendar Entries

Possessing for over two years only inadmissible ███████ of what the government claims to be random ████████████████, the government posits that Concord must have the originals of these items and should be compelled to search for and produce them for trial. The government purports to have narrowed its second renewed subpoena as it pertains to its request for Mr. Prigozhin's calendar entries, but it has not.

The government's request for Mr. Prigohzin's calendar entries is premised on two arguments, neither of which is sufficient under *Nixon* to permit a "rational inference" that the calendar entries the government seeks are relevant or admissible.  First, the government asserts

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ The government's suggestion that this ███████████████ properly

supports any of the new formulations of the subpoena requests for Mr. Prigozhin's calendar entries

is based on speculation, not a reasonable inference. *See United States v. North*, 708 F. Supp. 402,

404 (D.D.C. 1989) (rejecting subpoena language that was so broad that it swept irrelevant material

up within its scope); *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006) (finding that

requests for telephone records and calendar was "nothing more than a fishing expedition" because

proponent failed to provide the court "with any basis upon which it can draw a reasonable inference

that there is a real likelihood that the telephone records and calendar would contain relevant and

admissible evidence").

The government also refers to ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ No amount of logical gymnastics can connect this to the

allegations in the Indictment, as the government contends.

Next the government represents that the ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ the government grossly overstates the significance of this phrase in an attempt to

support its requested subpoena demand.

The government asserts over and over again that the term "Lakhta" was supposedly used

by the alleged co-conspirators to refer to the activities of the IRA.  Mot. 4, 5, 9, 13, 15.  But the

government fails to inform the Court that "Lakhta" actually means a multitude of other things,

including: Lake Lakhta, a lake in the St. Petersburg area, and Lakhta Center, the tallest building in

Europe, which is located in an area within St. Petersburg called the Lakhta-Olgino Municipal Okrug.  Furthermore, the government insists that it is a "reasonable inference" that a reference to ███████████████████████████████████ must be a reference to Concord's alleged co-conspirators Mikhail Burchik or Mikhail Bystrov, apparently not at all concerned that it could be a reference to anyone named Mikhail—an exceedingly common name in Russia.  Mot. 9.[3]  The sheer number of assumptions and logical leaps one must take to get from "█████████ ████████████████████ that is relevant to the allegations in the Indictment demonstrates that this inference, on its face, is neither reasonable nor rational.

Critically, none of these ████████████████████████████ ████████████████████████████████████████████████████ ██████████████████ As such, the government is not making a "reasonable inference" that the subpoena requests for Mr. Prigozhin's calendar entries—however that request may be phrased— would lead to relevant and admissible evidence.  Jan. 24, 2020 Hr'g Tr. 33:2-5.  Rather, the government is purely speculating about the nature and significance of these ██████████ in hopes that the Court will allow it to conduct a fishing expedition of any records that may be in Concord's possession regarding Mr. Prigozhin's schedule.  This does not satisfy the government's burden and the request should be denied.

Given the speculative nature of the government's proffer, it is unsurprising that it is unable to cite to any authority that supports its position.  *See* Mot. 10-11.  The government starts with *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000), which it cites for the proposition that "[i]n a conspiracy prosecution, the government is usually allowed considerable leeway in offering

---

[3] It is unclear why the government refers to both of these individual as "Michael" when the Indictment identifies them both as having the first name "Mikhail."

evidence . . . to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." But what the government omits using an ellipsis is the phrase "of other offenses" and the government fails to advise the Court that the issue in *Mathis* was the introduction of "other crimes" evidence under Rule 404(b), in particular an alleged conspiracy different from the one charged. *Id.* at 25-26. The government has already stated that it does not intend to introduce evidence under Rule 404(b) and it has never argued that it is using the trial subpoena to obtain evidence of other crimes.

The government follows its citation to *Mathis* with a lengthy string cite. Mot. 10-11. However, like *Mathis*, most of those cases dealt with issues relating to Rule 404(b) evidence and for that reason are equally inapt. *See United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (finding evidence properly admitted under Rule 404(b)); *United States v. Morrow*, No. 04-cr-355, 2005 WL 3159572, at *10 (D.D.C. Apr. 7, 2005) (finding that "evidence of prior bad acts or uncharged conduct to show association, a developing relationship, and identity is considered valid under Rule 404(b)")[4]; *United States v. Moore*, 149 F.3d 773, 780-81 (8th Cir. 1998) (stating basic rule of 404(b) and finding no abuse of discretion); *United States v. O'Leary*, 739 F.2d 135, 136-37 (3d Cir. 1984) (same).

The government also cites two more cases which are even further afield. In *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir. 1993), the Fifth Circuit declined to overturn a drug conviction because it found evidence sufficient to prove all of the elements in the conspiracy charge. Here, the government quotes *Cardenas* out of context for the general proposition that "[a]lthough presence at the scene of the crime or a close association with a co-conspirator alone

---

[4] Again the government omits critical language that puts the cited quotation in context.

cannot establish voluntary participation in a conspiracy, presence or association is a factor that, along with other evidence may be relied upon to find conspiratorial activity by the defendant." *Id.* This is as unremarkable as it is irrelevant to the inquiry here, because it has nothing to do with the *Nixon* standard or whether a particular request is sufficiently specific to warrant a trial subpoena under Rule 17.

The government also cites to *United States v. Kuehne*, 547 F.3d 667, 688-89 (6th Cir. 2008), for the proposition that a "relationship among coconspirators [is] relevant to show knowledge and common plan." Mot. 10. But the issue in *Kuehne* was whether the prosecutor engaged in misconduct when he elicited testimony from witnesses regarding the defendant's time in prison. On a plain error review, the Sixth Circuit found that the questioning was not improper, noting that the relationship between the defendant and his alleged co-conspirator was relevant to proving a number of counts in the indictment. *Id.* at 688-89. These cases do not support the government's position that every possible piece of evidence suggesting a connection between alleged co-conspirators, no matter how attenuated, is relevant to the conspiracy and admissible at trial such that it is the appropriate subject of a Rule 17 trial subpoena.

The government continues by citing *Old Chief v. United States*, 519 U.S. 172 (1997) for the proposition that "evidence is relevant if it is 'a step on one evidentiary route.'" Mot. 11 (quoting *Old Chief*, 519 U.S. at 179). *Old Chief* involved a defendant indicted under a statute which makes illegal for anyone with a prior felony conviction to possess a firearm. *Id.* at 174. What the government neglects to mention is that the ultimate issue in *Old Chief* was not the relevance of evidence, but whether a district court abused its discretion by admitting the full record of defendant's prior criminal conviction despite defendant's offer to concede that fact. *Id. Old Chief* is completely inapposite to the current Motion. The government then provides another string

cite of inapplicable cases.  *See United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) (finding that prior bad acts evidence was admissible under Rule 404(b)); *United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (finding certain evidence of pre-conspiracy activities admissible and declining to overturn sentence); *United States v. Nosal*, No. 08-cr-237, 2013 WL 11327121, at *6 (N.D. Cal. 2018) (denying motion *in limine* to exclude extramarital affair because it was relevant to the relationship between defendant and co-conspirator).

While relevance is certainly one consideration in assessing the propriety of a subpoena under Rule 17, it is not the entire story.  Here, the government's request is improper because it lacks the required specificity and fails to "provide a link that explains what it expects to find and why it expects to find it."  *Vo*, 78 F. Supp. 3d at 181.

### B.    Payment Records

In quashing the government's second attempt to obtain payment records, the Court determined that the government's reference to budgets exchanged between an IRA accountant and Concord employees apparently showing payments from Concord to IRA was insufficient support because the "government has not demonstrated that these budgets relate to the allegations in the indictment."  Jan. 24, 2020 Hr'g Tr. at 33:18-22.  The Court also concluded that even if the relevance of these budgets were established, the government failed to "justify its request for records pertaining to *all* payments between Concord and the IRA," observing that "[i]t is possible that some or many of the payments the government seeks do not pertain to allegations contained in the indictment and would, thus, likely be inadmissible or irrelevant."  *Id*. (emphasis added). Nevertheless, in its third attempt to subpoena payment records, the government seeks Court approval of the same request the Court previously denied.  *Compare* ECF 294-1 request 4, *with* ECF 322-1 request 2(a).

In arguing that its request is sufficiently specific, the government attempts to draw an analogy to *United States v. Gross*, 24 F.R.D. 138 (S.D.N.Y. 1959). *Gross*, which did not involve a conspiracy charge, is of no moment and is factually inapposite. The criminal charges brought in that case were for violations of the Fair Labor Standards Act ("FLSA") and the government, quite understandably, subpoenaed records consisting of "payroll, time cards and piece work records for all employees." *Gross*, 24 F.R.D. at 139. In other words, the records sought in *Gross* were directly relevant on their face to the FLSA charges at hand. Thus, it is completely unsurprising that the court in *Gross* denied the defendants' motion to quash the subpoena and gave little credence to the argument "that not every part of the documents is relevant because there are some entries in them that would not prove violations of the [FLSA,]" because even the documents that did not prove violations of FLSA were relevant in the sense that they demonstrated the scope of the violation. *Id.* at 140. In contrast, the documents sought here—records of *any payments* made by Concord to fund "the activities of the IRA"—are not relevant on their face, if they are relevant at all. More importantly, even if those documents were relevant, the way the government's subpoena is crafted—i.e., seeking records related to *any payments*—will necessarily result, if such records even exist, in the production of irrelevant and inadmissible material. That consideration is dispositive, and the government's request should be denied.

Moreover, the government's attempt to support its overbroad request further underscores the speculative nature of it. The government weaves an intricate narrative involving ██

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████



Despite representing that ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████   Further, the government has not pointed to any evidence or example of

an actual payment by Concord to fund the activities of IRA.  Thus, the government still fails in its

task of drawing a concrete link between what it has requested and what it expects to find.  *See Vo,*

78 F. Supp. 3d at 181.  Instead, all we have is the government's speculation that because an ███

█████████████████████████████████████████████, the government is

now entitled to seek records of any payment from Concord to fund the activities of IRA.  This

despite the fact that the Superseding Indictment itself alleges that IRA was involved in projects

involving Russian domestic audiences and foreign countries other than the United States.  Sup.

Ind. ¶ 11(a).  There is no link, there is only the government's hope that it will find evidence to

support its allegations, which is insufficient under Rule 17.

---

[5] Undersigned counsel notes that the discovery materials produced by the government contain no
evidence supporting the government's assertion that ███████████████████████████
█████████████████████████████████████████████████
█████████"  Mot. 14.  To the extent the government has such evidence, Concord requests that it
be immediately produced and reserves the right to object to its admission at trial given that
discovery closed over three months ago.

For all of these reasons, the government's "alternative" requests are also based on sheer speculation that Concord made payments to IRA, not any actual evidence or even rational inference.

## C.      Communications

The government relies on the same speculation for its latest request for communications between Concord and IRA.  In particular, it now seeks communications from a four year period between Concord and Khusyaynova "concerning the activities of [IRA]."  The government attempts to support this request by pointing to the same documents it cites to support its request for payments—██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████        ██████████  Concord disputes the relevance of those documents to the allegations in the Indictment and, as currently constructed, compliance with the government's subpoena will undoubtedly result, if any such documents exist at all, in the production of communications that are unrelated to the activities alleged in the Indictment, and are unquestionably irrelevant.  Perhaps recognizing the flaw in its request, the government again proposes variations of this request in piecemeal fashion, tacitly acknowledging the likelihood that the request is overbroad.

In an effort to justify its requests, the government again attempts to draw analogy from *Nixon*.  But as discussed above, the government in *Nixon* provided tangible evidence that allowed the Supreme Court to draw a rational inference that the subpoena would result in relevant and admissible evidence.  Here, the government provides no such evidence, instead relying on conjecture and unsubstantial assertions that have nothing to do with the allegations made in the Indictment.

Notwithstanding the foregoing, there are numerous flaws in the government's logic and the inferences drawn in it.  For starters, as noted above, the government has not offered any support for its speculation that ███████████████████████████████████████████████ ███████████████████████████████.  What the government offers instead is the unsupported assertion that ████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████.  The government provides absolutely no rational basis for this contention. The only possible basis for such an inference is that Concord did, in fact, engage in the conduct alleged in the Superseding Indictment.  But as Concord has argued all along, that is not the standard the government is up against here.  To the contrary, the government's argument amounts to nothing more than a bald assertion that Khusyaynova, Poloreltseva, and Polikarpova "would undoubtedly 'say things that would be evidence that [it] could potentially even use in our case-in-chief.'"  *Vo*, 78 F. Supp. 3d at 181.  This is precisely the type of "vague justification" that reveals the government's true purpose in issuing this subpoena—to engage in a "fishing expedition" and misuse Rule 17 as a discovery device.  *Id.*

## IV.    CONCLUSION

In its third attempt to craft a valid subpoena request, the government has once again failed to meet the high standards for serving and properly structuring an early return trial subpoena under Rule 17.  As such, the government's second Renewed Motion for Early Return Trial Subpoena should be denied, and it should not be given any further attempts to remedy its flawed requests.

Dated:  February 3, 2020                              Respectfully submitted,

                                                      CONCORD MANAGEMENT AND
                                                      CONSULTING LLC

                                                      By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com