### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 18-CR-32-2** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

### GOVERNMENT'S MOTION IN LIMINE TO ADMIT DOCUMENTS

The United States of America, by and through undersigned counsel, respectfully moves to admit certain categories of documentary evidence.  The government's documentary evidence includes the following:  (1) the contents of social media accounts used by the conspirators to further the conspiracy, including both business records from the accounts and content created by the conspirators; (2) business records of various companies; (3) emails between members of the Internet Research Agency ("IRA") furthering the conspiracy; (4) communications between IRA members and agents of defendant Concord Management and Consulting; (5) documents connecting Concord's controlling officer Yevgeniy Prigozhin to the IRA; and (6) other statements by members of the conspiracy.  For the reasons set forth below, each category meets the requirements of relevance, authenticity, and admissibility.[1]

### FACTUAL BACKGROUND

Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371.  In short, the Superseding Indictment alleges the conspirators engaged in what they called "information warfare" to spread distrust about the U.S. political system and to influence the

---

[1] This motion does not address every document on the government's exhibit list.  Rather, this motion discusses the documents that fall into the broader categories set forth above.

outcome of the 2016 presidential election, and that to carry out their interference activities without detection of their Russian affiliation, the defendants conspired to obstruct the lawful functions of the Federal Election Commission ("FEC"), the Department of Justice, and the Department of State.

The government expects the evidence at trial to show that the conspirators used social media to influence the American political system while concealing their foreign identities.  The evidence will show that the defendants operated individual Facebook accounts with American-sounding names (like "Matt Skiber," "Helen Christopherson," and "Taylor Brooks"), operated Facebook pages with American-sounding names and themes (like "Being Patriotic," "Born Liberal," and "Blacktivist"), and operated Twitter accounts with similarly American-sounding names and themes (like "March for Trump" and "@TENGOP").   The conspirators used these accounts in a variety of ways.  Among other things, the conspirators used the accounts to contact unwitting individuals to undertake political activity in the United States that implicates the Foreign Agents Registration Act ("FARA") such as speaking and performing at rallies.  The conspirators used the individual Facebook accounts to purchase political advertisements, many of which constituted "independent expenditures" for purposes of FECA.  The conspirators used all of the social media accounts to disseminate messages about candidates and issues that also implicated FARA.  The conspirators developed false online personas by and for operating these accounts, used virtual and proxy servers in the United States to mask their location, failed to disclose and register their activities, and concealed from unwitting Americans the fact that the unwitting Americans were acting at the direction of Russian nationals.

Emails obtained from the conspirators' ███ accounts show that this social media activity was part of a concerted effort to sow discord in the American political system undertaken by an organization called the Internet Research Agency ("IRA").  ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

Finally, evidence gathered during the course of the investigation shows that Concord knowingly participated in this conspiracy. That evidence includes emails between the IRA chief accountant Elena Khusyaynova and Concord employees regarding budgets and spending for the activities of the IRA.[2]  These documents outline pathways for moving money and describe vouchers and specific offices within Concord involved in the payment process. That evidence also includes testimony and documentary evidence connecting Yevgeniy Prigozhin, who controlled Concord, to the IRA.

## LEGAL BACKGROUND

Evidence is generally admissible at trial if it is authentic, relevant, and not impermissible hearsay.  *See* Fed. R. Evid. 402, 901.

<u>Authenticity</u>

Federal Rule of Evidence 901(a) governs the authentication or identification of evidence. *See United States v. Haight*, 892 F.3d 1271, 1277 (D.C. Cir. 2018).   That rule requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). To admit the evidence, the Court must find that the proponent "has 'offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is.'"  *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (quoting 5 Stephen A. Saltzburg *et al.*, *Federal Rules of Evidence Manual* § 901.02[1] at 901-5–901-6 (8th

---

[2] Khusyaynova has been charged by criminal complaint in the Eastern District of Virginia with one count of conspiracy to defraud the United States.

ed. 2002)).  While the proponent must satisfy its burden under Rule 901(a), "[t]he 'threshold for the Court's determination of authenticity is not high," and the proponent's 'burden of proof for authentication is slight.'"  *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)).  The proponent must only "make a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims."  *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982).  "The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence so that the jury ultimately might do so."  *Safavian*, 435 F. Supp. 2d at 38 (emphasis omitted).

Under Federal Rule of Evidence 902(11), certified domestic records of regularly-conducted business activity are "self-authenticating," which means that these records "require no extrinsic evidence of authenticity in order to be admitted."  To admit a self-authenticating business record under Rule 902(11), the proponent must "give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection— so that the party has a fair opportunity to challenge them."  Fed. R. Evid. 902(11).[3]

Relevance

"The general rule is that relevant evidence is admissible."  *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993); *see* Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see, e.g.*, *Foster*, 986 F.2d at 545; *see*

*also Old Chief v. United States*, 519 U.S. 172, 178-179 (1997) (evidence is relevant if it is "a step on one evidentiary route" to establishing an element of an offense).  Relevance is therefore "determined in the context of the facts and arguments in a particular case."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

<u>Hearsay</u>

Hearsay is generally an out-of-court statement offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Statements are not considered hearsay if they were made by an opposing party, including "by the party's agent or employee on a matter within the scope of that relationship," Fed R. Evid. 801(d)(2)(A), (D).  Statements are also not considered hearsay if made by the opposing party's "coconspirator during and in furtherance of the conspiracy," Fed. R. Evid 801(d)(2)(E).  Hearsay is not admissible unless it falls into a set of delineated exceptions.  Fed. R. Evid. 802; *see* Fed. R. Evid. 803-807.  These include exceptions for records of regularly conducted activity, Fed. R. Evid. 803(6), statements against interest made by witnesses who are unavailable, Fed. R. Evid. 804(3), as well as a residual exception for statements that are otherwise "supported by sufficient guarantees of trustworthiness" and more probative than other available evidence, Fed. R. Evid. 807.

## ARGUMENT

## I.    The Contents of the Social Media Accounts Used by the Conspirators Are Admissible

At trial, the government intends to introduce the entirety of search warrant returns from Facebook and Twitter social media accounts that the conspirators used to achieve their objectives. Portions of these search warrant returns—including subscriber information, Internet Protocol

("IP") address records,[4] and Facebook machine cookie data[5]—constitute business records of the social media companies and are admissible on that basis.  These business records establish that the social media accounts were used by the conspirators.  The business records thereby authenticate the remainder of the social media account search warrant returns, which consist of direct messages with unwitting Americans and public statements (in the form of Facebook posts or Twitter tweets) about political candidates and issues.[6]  That content from the social media accounts is not hearsay because it is not offered for its truth and in any event constitutes co-conspirator statements in furtherance of the conspiracy.  Because some of the social media account returns are quite large, the government intends to publish to the jury only certain pages from those returns.  The pages that the government intends to show the jury have been identified for the defense.  However, because the government believes that the contents of these accounts are admissible in their entirety to show the scope and magnitude of the conspirators' conduct, the government proposes to admit the entirety of the returns and to allow the jury to view the entirety of the returns during their deliberations.

The social media account search warrant returns include the following information:  (1) subscriber information; (2) IP address records; (3) Facebook machine cookie data; (4) posts written

---

[4] "An IP address is the unique address assigned to every machine on the internet," and typically "consists of four numbers separated by dots, e.g., 166.132.78.215."  *United States v. Kearney*, 672 F.3d 81, 84 n.1 (1st Cir. 2012) (citation omitted).

[5] In the context of Facebook accounts, a "cookie" is "a small text file that a server creates and sends to a browser, which then stores the file in a particular directory on an individual's computer."  *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 926 (N.D. Cal. 2015); *see id.* at 926-28 (discussing Facebook cookies).

[6] Some of the Facebook accounts were also used to purchase political advertisements.  The evidence of those Facebook advertisement purchases consists of advertisement records produced by Facebook that are admissible under the business records exception, *see infra*, and the attribution evidence discussed above linking the Facebook accounts used to purchase the ads to the conspirators.

by the conspirators; and (5) direct message chats between the conspirators and unwitting Americans.  Subscriber information shows the names, email addresses, and phone numbers associated with the account creators and (for groups and pages) the administrators.  IP address records show the IP addresses used to access the accounts at various times.  Machine cookie data shows the "cookies," or digital identifiers, of the machines (that is, the computers) that were used to access the accounts and is used to show that multiple accounts were accessed from the same machine.

The government will admit this evidence as follows.  The records containing subscriber information, IP address records, and machine cookie data are admissible as business records of the social media companies (Facebook and Twitter) that maintained the accounts.  The government seeks to authenticate those records using business record certifications provided by Facebook and Twitter under Federal Rule of Evidence 902(11).  The subscriber information, IP address records, and machine cookie data in turn connect the conspirators to the social media accounts.  That connection is sufficient to authenticate the content in the social media accounts created by the conspirators, namely the posts and direct messages, under Rule 901.

1.      The subscriber information, IP address records, and machine cookie data are admissible as business records.  The business records exception to the rule against hearsay applies to records "kept in the course of a regularly conducted activity of a business, organization, occupation or calling, whether or not for profit" when the record was created "at or near the time" and "making the record was a regular practice."  Fed. R. Evid. 803(6).

The subscriber information, IP address records, and machine cookie data for each of the social media accounts meet this standard.  As certifications provided by the social media companies attest, this information is collected and maintained in the regular course of the business

activity of the companies.  Courts have upheld the admission of this kind of information under the business records exception to the hearsay rule.  *See, e.g.*, *United States v. Hunter*, 862 F.3d 725, 728 (8th Cir. 2017) (IP address evidence); *United States v. Cameron*, 699 F.3d 621, 641-42 (1st Cir. 2012) (same); *United States v. Taylor*, 2017 WL 11458484, at *1 (D. Az. Nov. 2, 2017) (telephone subscriber records).

      2.    The subscriber information, IP address records, and machine cookie data from the social media accounts authenticate the other content in the account search warrant returns— specifically the direct messages, public posts, and tweets, for purposes of Rule 901 by connecting the accounts to the conspirators.

███████████████████████████████████████████████████████████

███████████████████████████████████████[7]  And the machine cookie data shows that many of these social media accounts were accessed by the same computers.[8]  This evidence linking the social media accounts to the conspirators through business records is sufficient to authenticate the content of the accounts created by the conspirators, namely the posts and direct messages.

In addition, several of the social media accounts are connected to the conspiracy through direct evidence. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

This approach is consistent with the recent decisions of courts of appeals to consider the issue of authentication of social media account content.  Those cases have recognized that the contents of a social media account can be authenticated for purposes of Rule 901 by a business record certification combined with circumstantial evidence attributing the account to the



defendant.  Thus, in *United States v. Hassan*, 742 F.3d 104, 133-134 (4th Cir. 2014), the court upheld the admission of Facebook pages and YouTube videos based on such evidence.  The court explained that the authentication standard set forth in Rule 901 is "not high," as "only a prima facie showing is required."  *Id.* at 133 (quoting *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009)).  Applying this standard, the Fourth Circuit concluded that the trial court properly admitted the contents of the social media accounts based on business record certifications from Facebook and Google in tandem with evidence "tracking the Facebook pages and Facebook accounts to [the defendants'] mailing and email addresses via internet protocol addresses."  *Id.* Other courts of appeals to consider the question have similarly concluded that the contents of a social media account can be authenticated through circumstantial evidence linking the account to the defendant.  *See, e.g.*, *United States v. Farrad*, 895 F.3d 859, 878-79 (6th Cir. 2018) (photos from Facebook account sufficiently authenticated based on evidence that "the details of the account match" the defendant); *United States v. Recio*, 884 F.3d 230, 237 (4th Cir. 2018) (upholding admission of Facebook post authenticated through circumstantial evidence including photographs of the defendant posted to the account); *United States v. Brinson*, 772 F.3d 1314, 1320-21 (10th Cir. 2014) (upholding admission of Facebook messages authenticated through circumstantial evidence including the signature on one of the messages and a phone number linking the account to the defendant).

The posts and direct messages in the social media accounts are not barred by the rule against hearsay for at least two reasons.  First, this content is not offered for the truth of the matter asserted.  The conspirators' divisive social media messages and posts are not offered to establish that the things the conspirators were saying about political candidates and social issues were true. Rather, they are offered because these statements were the instruments by which the crime was

committed.   Among other things, they constitute the conspirators' very acts of encouraging political activity, spreading propaganda, and doing so in ways that mask their Russian identity.

Second, in any event, the statements are admissible as co-conspirator statements in furtherance of the conspiracy.   Under Federal Rule of Evidence 801(d)(2)(E), "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not barred by the rule against hearsay.   If a statement "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy, then the statement is in furtherance of the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).   A statement "need not be necessary or even important to the conspiracy . . . as long as it can be said to advance the goals of the conspiracy in some way."   *United States v. Wright*, 285 F. Supp. 3d 443, 456 (D. Mass. 2018) (alterations in original, internal quotation marks and citation omitted) (admitting under Rule 801(d)(2)(E) posts on social media accounts controlled by conspirators on the ground that the posts "all appear designed to advance the conspiracy's objectives, recruit new members, or promote the Twitter account itself").   Here, the posts and direct messages were plainly made in furtherance of the conspiracy.   Indeed, the posts and direct messages were the very means by which the conspirators achieved their goals of sowing discord in the American political system while frustrating the lawful government functions of the agencies charged with regulating foreign influence in United States elections.

## II.     Other Business Records Are Admissible

In addition to the business records in the social media account returns, the government intends to introduce the following business records at trial.   For each set of records, the government has produced or will produce to the defense a certification provided by the company attesting that

the documents are authentic business records of the company.  *See* Fed. R. Evid. 902(11) (business records with certificate are self-authenticating).

*Facebook ad records*.  The conspirators used Facebook personas with American-sounding names to purchase advertisements advocating the election or defeat of particular candidates for federal office.  The purchase of these ads using American-sounding Facebook personas operated by the conspirators was one of the ways in which the conspirators interfered with the lawful government functions of the FEC.  Facebook has produced to the government a record for each advertisement showing how the ad was purchased ██████████████████████, where the ad was displayed, and the ad's content.  Facebook has also produced a spreadsheet linking each ad to a particular Facebook user.  These documents are self-authenticating and admissible as business records.





The WHOIS records are admissible as business records pursuant to a certification that the government is in the process of obtaining from WHOIS. The WHOIS records are also admissible under Federal Rule of Evidence 803(17) as a "director[y]" that is "generally relied on by the public." Fed. R. Evid. 803(17); *see EarthLink, Inc. v. Ahdoot*, 2005 WL 8154298, at *8 (N.D. Ga. Feb. 1, 2005) (admitting WHOIS record in civil litigation under Rule 803(17)).

## III.    Internal IRA Documents and Communications Are Admissible

Documents obtained from personal email accounts used by the conspirators show that the social media activity discussed above was part of a larger plan. These documents show that the conspirators chose their topics, their social media platforms, and even their tone with precision.

---

[9] Unless otherwise noted, the quotations from emails and attachments appearing in the remainder of this motion are translated from Russian. The government has provided the defense with both the original Russian documents and the translations for the Russian-language documents it intends to introduce at trial, including the documents discussed in this motion. (In some instances, the government is still awaiting the final translations of trial exhibits. Those instances are noted on the exhibit list that the government will provide the Court next week.)

██████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████

███████████████████████████████████████

<u>Authenticity</u>

These documents will be authenticated using evidence attributing these email accounts to

the conspirators. ████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████  ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████  ▪ As with social media accounts (*see supra*),

documents from email accounts can be authenticated through circumstantial evidence linking the

defendant to the account.  *See United States v. Fluker*, 698 F.3d 988, 999-1000 (7th Cir. 2012)

(upholding admission of emails authenticated through circumstantial evidence); *United States v.*

---



*Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (same).  Under this well-settled principle, the documents from the email accounts linking the accounts to particular conspirators discussed above is sufficient to authenticate the accounts for purposes of Rule 901.

<u>Hearsay</u>

These documents are admissible for two reasons.  First, the documents are not offered for their truth but rather to show the state of mind of the conspirators.  That is, a document suggesting divisive issues for comment on social media is being introduced not to show that its content is true—that the issues identified are in fact divisive—but rather to show that the conspirators coordinated their efforts and chose their topics for particular reasons.

Second, these documents are admissible as co-conspirator statements in furtherance of the conspiracy. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

**IV.     Communications Between the IRA and Concord Are Admissible.**

The government's evidence also includes several email communications between ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

<u>Authenticity and Relevance</u>



███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

<u>Hearsay</u>

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████     ████████████████████████

███████████████████████████████████████████████

███████████████████

In any event, both sets of emails would be admissible under the residual hearsay exception, Fed. R. Evid. 807.  Although this exception is narrow, it plays a particularly important role in unusual situations like these where communications take place abroad, witnesses are unavailable, but there is little reason to doubt the accuracy of the statements.  *See United States v. Slatten*, 865 F.3d 767, 806-811 (D.C. Cir. 2017).  ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████     *See United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986) ("Business records are reliable to the extent they are compiled consistently and conscientiously"). The volume and detail of these records provide further indicia of trustworthiness.  *See Singletary v. Reilly*, 452 F.3d 868, 874 (D.C. Cir. 2006) ("a high level of detail in a hearsay statement can indicate reliability"). Similarly, the emails are consistent and some corroborate each other.  *See Slatten*, 865 F.3d at 808-

██████████████████████████████████████████████████████████

████████████████████████

## V.       Documents Linking Prigozhin to the IRA Are Admissible

The government intends to introduce several categories of records linking Prigozhin to the

IRA and its activities.

█████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████









## VI.    Other Statements By The Conspirators Are Admissible

Finally, the government intends to introduce two emails written by conspirators that are relevant to the state of mind of members of the conspiracy.



███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ *See United States v. Wilson*,

160 F.3d 732, 740 (D.C. Cir. 1998). ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████



[REDACTED]

Respectfully submitted,

JOHN C. DEMERS                                          TIMOTHY J. SHEA
Assistant Attorney General for National Security        United States Attorney

By: /s/                                                By: /s/
Heather N. Alpino                                       Luke Jones
U.S. Department of Justice                              Peter Lallas
National Security Division                              Jonathan Kravis
950 Pennsylvania Ave. NW                                Adam Jed
Washington, D.C. 20530                                  555 Fourth Street NW
Telephone: (202) 514-2000                               Washington, D.C. 20530
                                                        Telephone: (202) 252-6886