Case 1:18-cr-00032-DLF   Document 349   Filed 02/18/20   Page 1 of 11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>Defendant. | **Criminal No. 18-CR-32-2** |

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENSE EXHIBITS

The United States of America, by and through undersigned counsel, respectfully moves to exclude the proposed defense exhibits, many of which were just recently provided to the government in translated form. The defense's documentary evidence appears to constitute: (1) emails from Facebook to individual email accounts containing the content of posts made to Facebook pages or news websites; (2) emails between individual accounts related to paying the owner of a social media page to post the payer's content on the page and emails from payment processors to individuals confirming recent payments for, in many cases, posts made on social media sites; (3) images that appear to reflect posts on social media platforms; (4) transaction records for accounts at payment processors; and (5) the entire contents of certain social media accounts. Concord provided the government with its exhibit list and over 500 exhibits on February 11, 2020. Concord's exhibit list does not indicate the intended use of these exhibits. Based on the information currently available to the government, it is not apparent that Concord's proposed exhibits are relevant or that, in all events, any probative value would not be substantially outweighed by risks of unfair prejudice, jury confusion, and delay. It also appears that the exhibits contain significant inadmissible hearsay. Unless and until Concord provides a sufficient explanation for why these exhibits bear on matters at issue in the case and how Concord intends

to use them at trial, the government respectfully asks that the exhibits be excluded. The government further asks that Concord not reference these exhibits in the presence of the jury, unless and until Concord provides an appropriate proffer, the parties can present a more concrete argument to the Court, and the Court can reconsider the admissibility of these exhibits.

## BACKGROUND

### A.   Factual Background

Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. The Superseding Indictment alleges that the defendants engaged in what they called "information warfare" directed at the American political system, and that to carry out their interference activities without detection of their Russian affiliation, the defendants conspired to obstruct the lawful functions of the government agencies that monitor and police foreign influence. The government will show that the Internet Research Agency "IRA" and its employees (several of whom are indicted defendants) carried out the day-to-day efforts to influence the U.S. political system without detection, including efforts to impede the relevant government functions through deceitful means. The government will further show that defendant Concord Management and Consulting, and its controlling officer, Yevgeniy Prigozhin, controlled funding and oversaw the influence and interference activities through reporting and interaction with IRA management.

### B.   Procedural History and Concord's Exhibits

On October 19, 2019, the parties submitted a join motion for a scheduling order requiring that both parties submit exhibit lists and copies of exhibits well in advance of trial. Doc. 213. The Court entered the jointly proposed order, Doc. 214. On January 30, 2020, however, Concord moved to amend the scheduling order, urging that it should not be required to submit an exhibit list or copies of its exhibits. Doc. 323. Concord averred that it "will not be in a position to

determine whether it will present a case-in chief or to identify defense witnesses until after the government presents its case-in-chief," and "will not be in a position to identify exhibits to be used in cross-examination until after the witness testifies on direct examination." *Id.* at 2; *see id.* at 3 (similar). On February 3, the Court denied Concord's motion. Doc. 328. The Court observed that "Concord negotiated an unusually early disclosure of government exhibits and witnesses, and in return, Concord agreed to disclose its potential exhibits and witnesses on February 10." *Id.* at 2. The Court ordered that Concord adhere to its proposed schedule and provide the government by February 10 with an exhibit list, witness list, and proposed exhibits. *Id.* at 10.

On February 10, Concord submitted to the government a list of 544 exhibits, many of which contain short, duplicative descriptions. For example, dozens are exhibits are described solely as "Social media comments," and dozens more are described simply as "[payment processor] records." Additionally, over 100 of the exhibits were in Russian. On February 12, Concord provided an updated exhibit list and indicated that it would soon begin providing translations. On February 13, Concord delivered translation to the U.S. Attorney's Office, and the government received the translations on February 14.

Concord's proposed exhibits appear to fall into the following categories: (1) emails from Facebook to individual email accounts containing the content of posts made to Facebook pages or news websites; (2) emails between individual accounts related to paying the owner of a social media page to post the payer's content on the page and emails from payment processers to individuals confirming recent payments for, in many cases, posts made on social media sites; (3) images that appear to reflect posts on social media platforms; (4) transaction records for accounts at payment processors; and (5) the entire contents of certain social media accounts.

# ARGUMENT

Evidence is admissible if it is relevant, authentic, not impermissible hearsay, and not unduly prejudicial, confusing, or dilatory. *See* Fed. R. Evid. 401, 402, 403, 802, 901. In this case, Concord is charged with conspiring to defraud the United States in violation of 18 U.S.C. § 371. To adjudicate these charges, the jury will, in short, have to decide whether Concord (1) entered into an agreement, (2) to obstruct a lawful function of the government or an agency of the government, (3) by deceitful or dishonest means, and (4) at least one overt act was taken in furtherance of that conspiracy. Doc. 74, at 7 (this Court's opinion denying the motion to dismiss); *see, e.g.*, *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 9 (D.D.C. 1999), *rev'd on other grounds*, 192 F.3d 1037 (D.C. Cir. 1999). Concord has provided no proffer to the government about why its over 500 proposed exhibits are relevant to these charges, and Concord's intended use of these exhibits is far from apparent. Based on the government's preliminary review of these exhibits—many of which the government has had in English form for just a few days—the exhibits appear to be irrelevant and would in any event present risks of prejudice, jury confusion, and delay that likely outweigh any minimal probative value. Many of the exhibits also appear to contain extensive inadmissible hearsay.

**I.     Legal Standards**

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. The definition of relevance is inclusive, Fed. R. Evid. 401(a), but it depends on the possibility of establishing a fact that "is of consequence in determining the action," Fed. R. Evid. 401(b). Evidence is therefore relevant only if it relates to matters that are at issue in the case. *E.g.*, *United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016); *see Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

The party seeking to introduce evidence bears the burden of establishing relevancy. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).

Even when evidence is relevant, it should be excluded if it poses a significant risk of unfair prejudice, confusing or misleading the jury, undue delay, or wasting time that outweigh its probative value. *See* Fed. R. Evid. 403. This rule applies with particular force where despite some "marginal relevance," the "likely (and presumably intended) effect" is "to shift the focus away from the relevant evidence" to matters that are "tangentially related." *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997). This rule also applies with particular force to exhibits that are voluminous, technical, or otherwise risk confusing or distracting the jury. *See, e.g., United States v. Litvak*, 889 F.3d 56, 69 (2d Cir. 2018); *United States v. Fonseca*, 435 F.3d 369, 373-376 (D.C. Cir. 2006)

Even if relevant, hearsay evidence is inadmissible unless it satisfies one of several delineated hearsay exceptions. Fed. R. Evid. 802; *see* Fed. R. Evid. 803-807. Hearsay is generally an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c); *United States v. Slatten*, 865 F.3d 767, 803 (D.C. Cir. 2017).

**II.     Based On The Information Currently Available To The Government, Concord's Exhibits Do Not Appear To Be Admissible**

Concord provided its over 500 exhibits to the government last week and provided English translations of the many Russian-language exhibits just days ago. Concord's exhibit list does not indicate why the proposed exhibits are relevant, and the exhibits are not self explanatory. In the limited the time the government has had to review these materials, they do not appear to the government to line up with theories of the defense that defense counsel has alluded to in its filings or hearings before the Court. Compounding the government's difficulty in ascertaining the way in which the proposed exhibits may be offered is the fact that Concord's witness list includes only

5

individuals named in the government's witness list, as well as a notation that Concord may call witnesses from social media companies. Based on the information currently available to the government, these exhibits do not appear to be admissible. If, in Concord's response or at some later point in time, Concord provides an appropriate indication of how it intends to use these exhibits and why they may be admissible, the government may revise its position. But at this time, the government respectfully seeks to exclude the defense exhibits.

1. **Emails Containing the Content of Social Media Posts**

Many of the proposed exhibits are email notifications from Facebook that, within them, contain the content of posts to various social media accounts. These include posts such as "He's such a troll," "You're the biggest troll!" and "[t]hat tweet is fake." Other emails reflect that a post has been made to a Facebook page but do not include the text of the post itself.

The relevance of these exhibits is not apparent. These social media posts do not appear to bear on whether Concord entered into an agreement with its co-conspirators to obstruct a lawful function of the United States. Comments that, perhaps correctly in some cases, identify a social media account as the work of a "troll" do not evidence an agreement or lack thereof. The documents similarly do not bear on whether the defendants employed deceitful or dishonest means to accomplish their unlawful objective since, even if some individuals recognized the social media accounts as the work of "trolls," that would not negate that the conspirators sought to convince Americans that the accounts were legitimate. Indeed, whether an American was deceived by the conspirators' social media posts is not an element of the offense. Finally, none of these posts relate in any presently apparent way to the overt acts charged in the Superseding Indictment. To be sure, as the government has argued, the fact that the conspirators engaged in the influence campaign

they did is intricately tied to the charged conspiracy. But it is entirely unclear how a handful of social media posts calling out "trolls" bears on that issue.

If Concord were able to establish the relevance of these documents, the emails and social media posts contained therein would still be inadmissible if they were offered for the truth of the matters asserted. *See* Fed. R. Evid. 801. The content of these emails and posts are out of court statements and, therefore, absent a showing that they are not being offered for the truth of the matters asserted, are hearsay.

### 2. Emails and Payment Confirmations for Paid Promotions on Social Media

Scores of proposed defense exhibits are email exchanges between the owners of various social media sites and individuals interested in paying for their content to be posted on those sites. The communications relate to the pricing, timing, and content of these posts. Other emails from PayPal appear to confirm payments between individuals, some of which may have been made for posts to various social media pages.

These proposed exhibits also appear to be irrelevant and, absent of showing of relevance and admissibility, should be excluded. . Communications related to payments for posts on various social media sites are not probative of the first or second elements of the defraud-clause conspiracy with which Concord is charged as those documents do not bear on whether Concord entered into an agreement with its co-defendants to obstruct a lawful function of the United States. These paid social media promotions do not evidence an agreement or lack thereof to defraud the United States. They are similarly not probative of whether Concord and its co-conspirators used deceitful or dishonest means in furtherance of the charged conspiracy. The fact that some individuals were interested in paying for promotion on certain social media platforms, none of which appear to be among those used by the conspirators here, does not bear on the deceitful means the conspirators

are alleged to have used in order to accomplish the object of their conspiracy. Even if some of the accounts in these proposed exhibits were connected to the conspirators, the fact that these individuals accepted payments for promotion on their sites does not tend to disprove that these accounts were used in other instances to further the unlawful objectives of the conspirators to sow discord among Americans and obstruct the lawful functions of government agencies. Finally, none of the negotiations for paid promotions or the resulting payments relate in any way presently apparent to the overt acts charged in the Superseding Indictment.

Even if these exhibits were relevant, which they are not, their use at trial would only add confusion to the issues and risk misleading the jury by suggesting that the selling of social media site promotions is appropriate to consider in weighing whether the government has established the elements of the conspiracy to defraud with which Concord is charged.

Indeed, all of the proposed exhibits in this category contain out of court statements negotiating for paid promotions on social media sites and paying for the same. They therefore are hearsay if offered for the truth of the matters asserted.

### 3. Standalone Images

Concord's proposed exhibits include roughly two dozen image files with no obvious connection to other proposed exhibits. Some of these are pictures of social media posts and others are pictures of t-shirts depicting messages such as "Stop Police Brutality" and "Racism is Not Over. But I'm Over Racism." It is not clear how Concord would seek to introduce these images or their possible relevance.

First, these pictures do not in any way evidence or negate an agreement by the defendants to obstruct the lawful functions of the Federal Election Commission, the Foreign Agents Registration Act Unit of the Justice U.S. Department of Justice, or the U.S. Department of State.

Second, the images are not probative of whether the conspirators employed deceitful means to carry out the conspiracy. Lastly, these t-shirts and other images do not relate in any apparent way to the alleged overt acts in furtherance of the conspiracy. They might be probative of the types of messages some individuals sought to promote on social media but, particularly without information tying the images to particular communications, the defense has not yet met its burden of establishing their relevance.

Moreover, both the images of social media posts and the pictures of t-shirts contain hearsay if they are offered for the truth of the matters asserted.

### 4. Transaction Records of Payment Processors

Concord's exhibits include transaction records for certain accounts with internet-based companies used to transmit payments. In the absence of additional information as to how Concord intends to use these records, they do not have obvious probative value as to the question of whether the conspirators agreed to obstruct lawful functions of the United States. The fact that the accounts identified in these exhibits engaged in certain transactions with other parties is not probative of the deceitful and dishonest means with which the conspirators are alleged to have furthered their conspiracy to defraud. They also do not appear to be relevant to any of the alleged overt acts in furtherance of the conspiracy.

### 5. Entire Social Media Accounts

The defense exhibits included several files that appear to contain the entire contents of certain social media accounts. Among other things, these accounts appear to celebrate the use of marijuana and to promote "African-American apparel." Some of these files contain over 10,000 pages and the government has not reviewed every each of these thousands of pages. When the government included similar files on its exhibit list, the government further informed the defense

of the specific pages it intended to show to the jury at trial. Without that type of additional information from the defense, Concord has not met its burden of establishing the relevance of the tens of thousands of pages contained in these proposed exhibits. At least among the pages the government has been able to review in the short period of time it has had these exhibits, there is no obviously probative value to any agreement to obstruct a lawful function of the United States government. It is certainly possible that there is some relevance to these records, but, without any proffer as to how these exhibits will be used and which pages Concord will seek to show the jury, that relevance is not apparent. Finally, for the same reasons, there is not presently any clear tie to the charged overt acts.

Even if Concord were able to prove relevance, if Concord intends to offer the content of these social media accounts for the truth of the matters asserted, the contents of these exhibits would be impermissible hearsay.

## CONCLUSION

In the short span of time the government has had the proposed defense exhibits, the government is unable to discern their relevance, let alone their admissibility by the defense. In the absence of additional information provided by Concord, the government respectfully requests that the Court exclude the proposed defense exhibits or, in the least, permit the government to preserve any objections to their admissibility. The government believes that pre-trial proffers from Concord on its theories of admissibility of these documents would promote early resolutions of these evidentiary questions and would avoid the trial delay and disruption from hearing the proffers for the first time during trial.

Respectfully submitted,

JOHN C. DEMERS  
Assistant Attorney General for National Security

TIMOTHY J. SHEA  
United States Attorney  
D.C. Bar No. 437437

*/s/ Heather Alpino*  
Heather N. Alpino  
U.S. Department of Justice  
National Security Division  
950 Pennsylvania Ave. NW  
Washington, D.C. 20530  
Telephone: (202) 514-2000

*/s/ Peter Lallas*  
Luke Jones, VA Bar 75053  
Peter Lallas, NY Bar 4290623  
Adam Jed  
555 Fourth Street NW  
Washington, D.C. 20530  
Telephone: (202) 252-7066

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT AND CONSULTING LLC,**<br><br>Defendant. | Criminal No. 18-CR-32-2 |

# ORDER

Upon consideration of the Government's Motion in Limine to Exclude Defense Exhibits, it is hereby

**ORDERED** that the Motion is **GRANTED**; and it is further

**ORDERED** that the defendant's proposed exhibits produced to the government on February 12, 2020, are excluded from trial.

**SO ORDERED** this _____ day of February, 2020.

_____
HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE