## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** |  |
| **v.** | **Crim. No. 18-CR-32-2 (DLF)** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** |  |
| **Defendant.** |  |

## GOVERNMENT'S REPLY IN SUPPORT OF
## RENEWED MOTION FOR EARLY RETURN TRIAL SUBPOENA

The government's renewed motion for a trial subpoena to Concord Management and Consulting LLC is "a good-faith effort . . . to obtain evidence" for use at trial. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219-220 (1951). The government has narrowed its prior requests and, more significantly, has provided substantially more detailed evidence and a vastly more thorough account of why the government believes that these requests are calculated to obtain evidence for trial. *Compare* Doc. 284-1, at 3-7, *with* Doc. 322-1, at 1-20. The government has proffered witness testimony and documentary evidence showing that Yevgeniy Prigozhin, Concord's controlling officer, ███████████████████████████████████████ ████████████████████████████████████████████████████████. The government has further detailed why evidence of any link between Prigozhin and these IRA officers is relevant to the conspiracy charge in this case and why, in conjunction with other evidence, the fact and frequency of these meetings is also probative of Prigozhin's (and therefore Concord's) involvement in the acts undertaken in furtherance of the conspiracy. As for the requested financial records and communications, the government has proffered ██████████ ████████████████████████████████████████████████████████████

██████████████████████████████.  This included ████████████████████████

█████████████████████████████████████, alleged in the Superseding

Indictment.  The government has further explained why any records showing Concord's financial

oversight of the IRA is relevant to this charged conspiracy and why those records are also likely

to concern funding of acts in furtherance of the charged conspiracy.

Concord's opposition fails to come to grips with the critical question—whether the

subpoena is "a good-faith effort . . . to obtain evidence." *Bowman Dairy Co.*, 341 U.S. at 219-220

(described in *United States v. Nixon*, 418 U.S. 683, 698 (1974), as "[t]he leading case"); *accord*

*United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y.) ("honest effort to obtain evidence for use

on trial") (cited in *Nixon*).  This standard does not require the requesting party to "describe fully"

the documents sought or to prove that each and every responsive record would be used at trial.

*United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *Nixon*, 418 U.S. at 700).

The standard recognizes that the party seeking production cannot tell what it "can or will use until

it has had the opportunity to see the documents."  *Gross*, 24 F.R.D. at 141; *see, e.g., Bowman*, 341

U.S. at 220 n.5 (quoting with approval a statement that Rule 17(c) permits pre-trial production "for

the purpose of course of enabling the party to see whether he can use it or whether he wants to use

it").  As Chief Justice Marshall observed in considering a trial subpoena duces tecum directed to

President Jefferson: "It is objected that the particular passages of the letter which are required are

not pointed out.  But how can this be done while the letter itself is withheld?" *United States v.*

*Burr*, 25 Fed. Cas. 187, 191 (No. 14694)*.  Accordingly, the requesting party must show merely a

"'sufficient likelihood,' demonstrated through rational inferences, that the documents being sought

contain relevant and admissible evidence."  *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S.

at 700).  Such a "rational inference" can be based on multiple pieces of evidence, both direct and

circumstantial, "taken in their total context." *Nixon*, 418 U.S. at 700.  Concord's opposition, however, dismisses any rational inference as mere "speculation."  And Concord takes each piece of evidence offered by the government, considers it in isolation from the other evidence, and then offers an alternative inference that can be drawn from that piece of evidence.  *See, e.g.*, Doc. 330-1, at 8-9 (dismissing references to ███████ as possibly describing ██████████████████

███████).  In so doing, Concord also appears to dismiss any evidence that is circumstantial as requiring "speculation."

Concord also fails to engage with the government's account of why the requested records are sufficiently likely to contain relevant evidence.  In particular, the government's renewed motion explained that given the nature of the charges here—a conspiracy in which Concord is alleged to have provided oversight and funding—evidence about the relationship between Concord and the other conspirators is relevant even if it does not bear directly on acts in furtherance of the conspiracy.  Doc. 322-1, at 10-12, 15-16, 19-20.  Concord attempts to distinguish on their facts some of the cases cited by the government.  Doc. 330-1, at 9-12.  But Concord does not and cannot deny the basic point that in a conspiracy prosecution, evidence of the conspirators' dealings is generally relevant.  *E.g.*, *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000).  Concord also does not address the fact that the requested evidence concerns the very role that Concord is alleged to have played in this conspiracy—oversight and funding.  *See, e.g.*, Doc. 322-1, at 11, 15-16.  Such evidence, even if not directly tied to acts in furtherance of the conspiracy, is "a step on one evidentiary route" to showing Concord's oversight and financial role in this conspiracy. *Old Chief v. United States*, 519 U.S. 172, 179 (1997); *see* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action").  As for the many bases to believe that the requested records also concern acts alleged

in the Superseding Indictment—including the persons involved in meetings, line items on budgets describing U.S.-focused activity, and rational inference—Concord falls back on attacking each piece of evidence in isolation and declaring that any inference is "speculation" or "conjecture."

One additional observation is necessary. Concord appears subtly to question the facts proffered by the government, complaining that certain documents were not attached to the motion as exhibits or fully translated, or describing some of the government's factual representations in quotes, as "claims," and similar. The defense has all of the documents the government is describing and relying on. If Concord wishes to dispute a piece of evidence, it is free to do so. But the government has accurately conveyed the underlying facts, and the only question is whether those facts, along with rational inferences, establish a sufficient likelihood that the requested records are relevant and admissible. If anything, it is Concord that is making arguments without sufficient factual underpinning. Parties challenging subpoenas often proffer basic facts to justify their positions. But while Concord argues, for example, that the requests may sweep in records that have no bearing on this case (for reasons unexplained), Concord provides no proffer about what those records are. As a result, the parties must argue about hypotheticals. Indeed, Concord appears to contradict itself by simultaneously suggesting both that the requested records may not exist and that they are extensive and mostly irrelevant. Subpoena litigation is not a game of cat and mouse. The government has provided a detailed evidentiary proffer and a thorough account of why that evidence "taken in [its] total context, permit[s] a rational inference" that the requested records are "sufficient[ly] likel[y]" to be "relevant to the offense[] charged in the indictment." *Nixon*, 418 U.S. at 700. That showing more than suffices to authorize the requested trial subpoena under Federal Rule of Criminal Procedure 17(c).

1. *Calendar Entries*

The government has proffered ███████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████. Doc. 322-1, at 7-9.

The government's proposed subpoena requests only those calendar entries that pertain to

individuals who appear on calendar entries ████████████████████████████

█████████████████████████████████. The government has

explained that because the crime charged here is a conspiracy, records of any meetings between

Prigozhin—Concord's controlling officer and a named defendant—and other conspirators is

relevant.   The government has further explained that particularly in conjunction with other

evidence (██ ██████████████████████████████████████

███████████████████████████████████████), the fact and

frequency of these meetings is relevant as to whether Prigozhin was aware of and part of the IRA's

U.S.-facing activities.    Concord's arguments in response (Doc. 330-1, at 6-12) take each

supporting fact in isolation and attempt to dismiss any rational inference as impermissible

"speculation."

Concord contends (Doc. 330-1, at 6-7), that because ███████████████████████

███████████████████████████████, it is not sufficiently likely that the

calendar entries are relevant.  As an initial matter, ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

In any event, ███████████████████████████████████████████

the calendar entries would still be relevant.  As the government explained in its motion, "[i]n a

conspiracy prosecution, the government is usually allowed considerable leeway in offering

evidence . . . to inform the jury of the background of the conspiracy charged, to complete the story

of the crimes charged, and to help explain to the jury how the illegal relationship between the

participants in the crime developed."  *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000).

Under that well-settled proposition, calendar entries showing meetings between Prigozhin and IRA

officers would be relevant and admissible even setting aside the rational inference that such

meetings likely concerned the charged conduct.  Here, the fact and frequency of those meetings—

████████████████████████████████—would bear directly on Prigozhin's (and

therefore Concord's) knowledge and role.  Concord argues (Doc. 330-1, at 9-12) that the cases

cited by the government involve different facts and many involve evidence subject to Rule 404(b).

But Concord does not dispute the government's general propositions.  Indeed, the fact that several

cases arose in the context of Rule 404(b) only strengthens the government's argument.

Notwithstanding the risk of jurors' viewing prior bad acts as evidence of bad character, those courts

recognized that evidence connecting conspirators is highly probative to conspiracy charges.  In

this case, by contrast, the relationship evidence that the government seeks to introduce—calendar

entries showing meetings—is not prejudicial, and therefore the case for the admissibility of that

evidence is even stronger.

Concord also seeks to dismiss (Doc. 330-1, at 7-9) ██████████████████████

discussed in the government's motion. Concord first questions (Doc. 330-1, at 7, 9) whether ████

██████████████████████████████. But Concord, ████████████████████

████████████ does not deny that is the case.  More to the point, just as "[c]ircumstantial

evidence is sufficient to authenticate an email," *United States v. Lundergan*, No. 18-cr-106, 2019

WL 4125618, at *1 (E.D. Ky. Aug. 29, 2019), so too circumstantial evidence is sufficient to

authenticate ████████████████████████.  Here, the circumstantial

evidence linking ██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

Concord next questions (Doc. 330-1, at 7-9) whether ████████████ suggest anything

about relevant calendar entries. ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ *Nixon*, 418 U.S. at 700.  For example, Concord notes (Doc. 330-1, at 8) that ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████  ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ And to obtain a trial subpoena under Rule 17, the government is not required to rebut every possible alternative inference that could be drawn from its evidence.

Concord also repeatedly complains (Doc. 330-1, at 7-9) that the exhibits attached to the motion do not show dates. ████████████████████████████████████

████████████████████████████████████████████████



2. *Financial Records*

The government has proffered

Doc. 322-1, at 12-15.

The government has further explained why any records showing Concord's financial oversight of the IRA would be relevant to this charged conspiracy, which alleges that Concord's role was oversight and funding, and why those records are also likely to concern funding of acts in furtherance of the charged conspiracy. *Id.* at 15-16.

Concord's primary response (Doc. 330-1, at 13) is a bare assertion that the requested records "are not relevant on their face" and that given "the way the government's subpoena request

---

[1]

is crafted," it will yield some records that are not relevant.   Concord again simply ignores black-letter law that in a conspiracy, evidence of the relationship between the conspirators is generally relevant.  Concord also ignores that the particular charges here allege that Concord's role involved financing and financial oversight of the IRA and its activities—the very subject matter covered in the subpoena request. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ *See, e.g.*, *United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (evidence relevant in conspiracy trial "to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme") (alteration in original); *United States v. Kanchanalak*, 41 F. Supp. 2d 1, 10 (D.D.C. 1999) (in conspiracy to defraud the United States by interfering in Federal Election Commission function to monitor "hard money," conspirators' "soft money" activity "may establish a pattern of conduct by defendants and help support the allegations with respect to hard money").  In other words, each responsive record is likely relevant even if it does not specifically touch on U.S.-facing activities.

Concord's argument is also flawed as a legal matter.  A trial subpoena does not have to be guaranteed to yield only relevant evidence.  The government's motion provides ample connections between ██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ In any event, Concord also ignores the alternative formulations offered by the government.  Requests 2b and 2c encompass specific categories of payments that would directly support the activities at issue in this case—generalized overhead, salaries, social media, and U.S.-based computer infrastructure.  Concord does not address these alternatives at all.

Concord's effort to distinguish (Doc. 330-1, at 13) one of the several cases cited by the government, *United States v. Gross*, 24 F.R.D. 138 (S.D.N.Y. 1959) (relied on in *Nixon*), only underscores the point.  As Concord notes, *Gross* did not involve a conspiracy.  In a prosecution for violating the Fair Labor Standards Act, the government subpoenaed "payroll, time cards and piece work records for all employees" over a two-year period.  *Id.* at 139-140.  It was clear that "some entries" would not concern FLSA violations.  *Id.* at 141.  Nonetheless, those sorts of records were "related to the charges" and "for the precise period covered."  *Id.*; *see also United States v. Iozia*, 13 F.R.D. 335, 339-340 (S.D.N.Y. 1952) (authorizing early return trial subpoena for records concerning corporate officer "in the best position to know what was transpiring" with respect to "irregularities [that] may be closely related to the subject matter of the indictment") (also relied on in *Nixon*).  Here, the charged crime is a conspiracy in which Concord's alleged role was funding and financial oversight of the IRA.  Like the extensive pay records sought in *Gross*, the payment records sought here may not all concern U.S.-focused activities.  But they are "related to the charges" and "for the precise period covered."  *Gross*, 24 F.R.D. at 141.

Concord additionally contends (Doc. 330-1, at 13-14) that this request is "overbroad,"

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████   As an initial matter, if Concord's supposition were correct, then it would likely have no responsive records.  But Concord does not actually say that is the case, and Concord's suggestion that there are zero responsive records is hard to square with its view that the subpoena requests are "overbroad."  More to the point, Concord misunderstands the factual bases for the government's motion and again discounts any rational inference as impermissible speculation.  ████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████[2] ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████   From that evidence, it is rational

to infer that the responsive records exist and are relevant and admissible in this case.

   *3.  Communications*

   The proposed trial subpoena requests communications between IRA Chief Accountant

Elena Khusyaynova and Concord regarding the IRA, or in the alternative communications between

Khusyaynova and two individuals, Mairna Poloreltseva and Polikarpova, regarding payments to

the IRA.   As explained in the government's motion, ████████████████████

███████████████████████████████████████   Concord

therefore cannot argue that the government's evidence is too speculative to establish the likely

existence of these records.

   Concord contends (Doc. 330-1, at 16) that the requested records are unlikely to be relevant

because there is no evidence that Poloreltseva or Polikarpova actually worked for Concord.

Concord, again, does not actually deny that these individuals worked for Concord.   ██████

████████████████████████████   ████████████

███████████████████████████████████████████

---

   [2] Contrary to Concord's assertion (Doc. 330-1, at 14 n.5), the government provided
Concord with data in discovery establishing this fact—██████████████████████
████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████     ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

Concord also appears to dispute (Doc. 330-1, at 16) the inference that the narrow set of communications requested here "relate to the allegations in the Indictment." As discussed, because the crime charged here is a conspiracy and because Concord's alleged role in the conspiracy concerned funding and oversight, all of the requested emails are likely relevant even if they do not all concern funding for U.S.-facing activities. As also discussed, ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Even if those communications had to specifically concern U.S.-focused activities to be relevant (which they do not), it is rational to infer that this funding would be subject to the greatest oversight, because they would be among the most salient and expensive IRA activities. Concord simply declares that the government has not provided a "rational basis for this contention." *Id.* This response has a head in the sand quality. True, the government has not surveyed Concord and IRA employees to find out what categories of expenditures it most carefully tracked. But ██

█████████████████████████████████████████████   And it is

rational to infer ████████████████████████████████████████████

███████████████████████████ that the acts in furtherance of the conspiracy alleged here are likely covered in these communications.

*     *     *

The evidence described in the government's motion is more than sufficient to establish that the requested trial subpoena meets the applicable legal standard. ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████ all show that the government's proposed trial subpoena is "a good-faith effort . . . to obtain evidence" for use at trial, *Bowman Dairy Co.*, 341 U.S. at 219-220, and not a general fishing expedition. Concord's opposition asks this Court to examine each piece of evidence in isolation, rather than considering the totality, and to reject the rational inferences drawn by the government in favor of far less likely inferences.  In so doing, Concord fundamentally misapprehends the relevant legal standard for issuance of a trial subpoena.  For these reasons, the government's motion should be granted.

Respectfully submitted,

JOHN C. DEMERS
Assistant Attorney General for National Security

By: /s/
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

TIMOTHY J. SHEA
United States Attorney

By: /s/
Luke Jones
Peter Lallas
Jonathan Kravis
Adam C. Jed
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-6886