**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 18-CR-32-2** |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | |
| **Defendant.** | |

## GOVERNMENT'S MOTION FOR AN ORDER TO SHOW CAUSE WHY CONCORD SHOULD NOT BE HELD IN CIVIL CONTEMPT

The United States of America, by and through undersigned counsel, respectfully moves for an order requiring defendant Concord Management and Consulting LLC to show cause why it should not be held in civil contempt for failure to comply with the two early-return trial subpoenas directed by this Court. Concord has produced no responsive records for four of the six categories of records that the Court already found Concord is likely to possess. Concord has not even produced the very records that the government obtained through other sources. And Concord has not so much as claimed that it complied with the trial subpoenas, let alone explained its search process or the absence of responsive records. Because Concord's challenges to this Court's authority to issue a subpoena to Concord have already resulted in significant delay, the government respectfully requests that the Court order Concord to file any opposition to this motion promptly and to schedule any hearing in short order.

## STATEMENT

### A.    Background

**1.**  On February 16, 2018, a grand jury in this district returned an Indictment alleging that Concord conspired to defraud the United States government in violation of 18 U.S.C. § 371.

Doc. 1.   In short, the Indictment alleged that the defendants engaged in what they called "information warfare against the United States of America"—a systematic effort to influence the outcome of the 2016 U.S. presidential election and sow discord, as well as to impede through deception the government agencies charged with monitoring and policing foreign influence.  The Indictment alleged that the conspirators did so through a variety of deceptive means including intelligence gathering by individuals who used false identities, developing and using elaborate fictitious online personas, operating from virtual private servers that masked the Russian origin of the internet traffic, and manipulating unwitting Americans to act on their behalf.

2.   On April 11, 2018, defense counsel entered appearances on behalf of Concord. Docs. 2, 3.  On the same day, Concord submitted (through defense counsel) various demands for information about what the government had learned in its investigation and how the government discovered the defendants' activity.  *See* Docs. 7-1, 7-2.  Concord sought, among other things, all information the government had gathered about Concord or its officers, any statements or recordings from Concord employees, information about any recordings or electronic surveillance of Concord or its agents, and "each and every instance" from "1945 to present" where the U.S. government "engaged in operations to interfere with elections and political processes in any foreign country."   Doc. 7-1, 7-2.   Notwithstanding the broad rules authorizing service of summonses by any "means that gives notice," Fed. R. Crim. P. 4(c)(3)(D)(ii); *see, e.g.*, *In re Pangang Grp. Co.*, 901 F.3d 1046 (9th Cir. 2018), when the government emailed a copy of the summons to Concord's counsel, counsel nonetheless "return[ed]" the summons, stating that it "does not comply with F.R.Cr.P. 4."  Doc. 7-4.

On May 9, 2018, after Concord initially disputed whether it had been properly served with a summons in this case, the Court (Magistrate Judge Harvey) confirmed that defense counsel was

authorized "to enter a voluntary appearance in this matter and to subject [Concord] to the jurisdiction of this Court." 5/9/18 Tr. 4-5.  The Court clarified that Concord understood "that by doing so, it must also comply with the Federal Rules of Criminal Procedure, the rules of this Court, and with the orders of this Court," and defense counsel agreed.  *Id.* at 5.  The Court further clarified that defense counsel is "authorized" to appear "and to make representations on [Concord's] behalf," and defense counsel again agreed.  *Id.*

In the subsequent months, Concord filed numerous motions to dismiss, motions for bills of particulars, motions to conduct discovery of prosecutorial decision making, requests for grand jury materials, and motions to compel discovery.  Concord also received substantial discovery and engaged in extensive litigation aimed at housing that discovery in Russia.

### B. Trial Subpoenas and Subpoena Litigation

**1.**  On December 3, 2019, the government filed a motion for an early return trial subpoena. Doc. 267.  Concord's response suggested, among other things, that the Court lacks authority to require Concord to produce records located abroad, that it is legally impossible to serve a subpoena on Concord even while it is litigating in this Court, and that compliance with the subpoena risks violating Russian law.  Doc. 273, at 8-16.  The Court granted the government's motion to direct Concord to produce three categories of records: (1) Concord's corporate registration documents; (2) documents sufficient to identify Concord's corporate officers from January 1, 2014 to February 1, 2018; and (3) documents sufficient to identify any Internet Protocol address used by Concord during that same time period.  Doc. 279.  The Court also permitted Concord to file a motion to quash further addressing its jurisdiction, service, and foreign law arguments.  *Id.*

**2.**  After the government filed a renewed motion for a subpoena as to certain categories of documents, Concord filed a motion to quash and opposition to the renewed motion for a trial

subpoena.  Doc. 288.  Concord urged (*id.* at 4-12) that because it is a foreign corporation organized abroad and conducting business abroad, it cannot be issued a subpoena to produce documents in connection with this case.   Concord posited (*id.* at 10-11) that transmitting a trial subpoena to its counsel in this case would "threaten[] [its] Sixth Amendment right to effective representation by counsel."  And Concord contended (*id.* at 15-34) that complying with the subpoena risked violating Russian law on treason, cyber security, commercial secrets, and personal data.

On January 24, 2020, the Court denied Concord's motion to quash.  1/24/20 Tr. 14-35.  The Court cited the "well-established principle" that courts can require parties within the courts' jurisdictions to produce evidence even if located abroad, *id.* at 15-20, and the Court held that any required service can be made on Concord's counsel as "a straightforward application of Federal Rule of Criminal Procedure 49," as well as governing case law governing service on corporations, *id.* at 20-22.  The Court similarly rejected Concord's foreign law arguments.  The Court observed that "Concord's arguments about Russian law stand on conjecture, hypotheticals, and overly broad interpretations of Russian law" and that Concord offered no expert willing to agree with its asserted view of foreign law, even though expert declarations are "typically the basic method by which foreign law is proved."  *Id.* at 24; *see id.* at 24-29.  The Court also held that "even if" Concord could establish a foreign law conflict, "comity would still favor granting the subpoena" because "[n]early all" of the applicable factors "favor the government."  *Id.* at 29-30.

The Court held that "aspects of requests 4, 5, and 6," which were additional subpoena categories proposed by the government, were not sufficiently specific, but the Court permitted the government to narrow its requests, provide a more detailed justification for the prior requests through more detailed evidence, and/or offer a more thorough account of why the government believes that these categories are calculated to obtain records for use at trial.  1/24/20 Tr. 34-35.

**3.** On January 29, 2020, the government filed a renewed motion providing a detailed factual basis and logical argument for why the requests at issue were proper and also narrowing the categories of requested documents. Doc. 322-1. Relying on extensive evidence gathered by the government—including calendar entries, financial records, and communications collected during the investigation, as well as ███████████████—the government explained why Concord likely has custody or control of the requested records and why such records likely contain relevant and admissible evidence. *Id.* at 3-20. Concord, in turn, argued that the government's requests were still "overbroad" and suggested that the requests may sweep in broad swaths of irrelevant records. *See* Doc. 330-1, at 13, 15.

On February 7, 2020, the Court granted the government's motion and approved an early return trial subpoena for the three additional categories of records—(4) calendar entries reflecting meetings between Yevgeniy Prigozhin and Jay Aslanov, Michael Burchik, Michael Bystrov and/or an individual identified as "Misha Lakhta" from January 1, 2014 to February 1, 2018; (5) records reflecting any payments from Concord to fund the activities of the Internet Research Agency, made directly or through another organization; and (6) electronic mail from January 1, 2014 to February 1, 2018, between Concord and Elena Khusyaynova concerning the activities of the Internet Research Agency ("IRA"). Doc. 333. The Court found, among other things, that the government had presented evidence that Concord's controlling officer, Prigozhin, met regularly with IRA employees and that several calendar entries reflect those meetings, *id.* at 2-3; that "Concord approved and funded IRA's efforts and kept records documenting this approval and funding," *id.* at 3; and that email communications likely exist between Concord and Khusyaynova that likely contain pertinent information, *id.* at 3.

### C.      Concord's Responses to the Trial Subpoenas

**1.** Pursuant to this Court's orders, the government served on Concord, through its defense counsel, two trial subpoenas calling for a total of six categories of business records. The first trial subpoena had a return date of February 7, 2020, and called for:

(1) All corporate registration documents for Concord Management and Consulting LLC,

(2) Documents sufficient to identify the corporate officers of Concord Management and Consulting LLC from January l, 2014 to February l, 2018, and

(3) Documents sufficient to identity any Internet Protocol address used by Concord Management and Consulting LLC from January l, 2014 to February l, 2018.

The second trial subpoena had a return date of February 21, 2020, and called for:

(4) For the time period from January 1, 2014 to February 1, 2018, calendar entries reflecting meetings between Yevgeniy Prigozhin and Jay Aslanov, Michael Burchik, Michael Bystrov, and/or an individual identified as "Misha Lakhta,"

(5) For the time period from January 1, 2014 to February l, 2018, records reflecting any payments from Concord Management and Consulting LLC to fund the activities of the Internet Research Agency, made directly or through another organization, and

(6) For the time period from January 1, 2014 to February 1, 2018, electronic mail (i.e. email) between Concord Management and Consulting LLC and Elena Khusyaynova concerning the activities of the Internet Research Agency.

**2.** With respect to the first subpoena, on February 3, 2020, the government sought defense counsel's position on whether the parties should contact the Court to make arrangements for the return on February 7. Ex. 1, at 1, 2. Defense counsel responded: "The judge said twice that we don't have to do anything. That said, we will send you what the client provides to us." *Id.* at 1. The government clarified that Concord "does have to do something" and asked defense counsel to notify the government if Concord "does not intend to produce all documents in its possession responsive to the subpoena" so that the government could promptly file an appropriate motion. *Id.* Defense counsel responded: "The Court said twice explicitly that we (Reed Smith) did not have to

6

do anything.  Despite this, we will transmit what if anything the client sends to us on the return date."  *Id.*

On February 7, 2020, defense counsel transmitted to the government 164 pages of Russian language tax and corporate registration documents, *see* Ex. 2, reflecting, among other things, that Prigozhin is the owner of Concord and that the title of General Director has repeatedly transferred between several people, including Prigozhin and Anastasia Sautina, who is Prigozhin's assistant (*see* Doc. 332-1, at 8).  The defense did not submit any records that identify any Internet Protocol address used by Concord during the four years identified in subpoena category 3.  In submitting the documents to the government, the defense made no representation that Concord had, in fact, complied with the subpoena.[*]  On the same day, Concord filed a "Notice Regarding Early Return Trial Subpoena," stating that Concord "transmitted documents from Concord to the United States Attorney's Office in connection with the trial subpoena dated January 24, 2020."  Doc. 334.  The notice similarly made no representation that Concord, in fact, had complied with the subpoena.

On February 10, 2020, the government emailed defense counsel and asked whether counsel could represent that Concord had actually complied with the subpoena.  Ex. 4, at 4.  The

---

[*]     Counsel's cover letter accompanying the documents stated:

Enclosed are documents provided by [Concord] in response to the trial subpoena dated January 24, 2020, which you sent to us via email on January 27, 2020. The documents have been labeled CMC 1 - CMC 157.

Please note that at the January 24, 2020 hearing, Judge Friedrich stated that "the subpoena is not directed at defense counsel and would not require defense counsel to assist Concord in searching for responsive documents" and that "other than transmitting the subpoena, [the subpoena] requires no further involvement from defense counsel in complying with the subpoena." Jan. 24, 2020 Hr'g Tr. 23: 1-3 and 31 : 12-14. Thus, as directed by the Court, Reed Smith has transmitted the subpoena to Concord and is now transmitting to you the enclosed documents.

Ex. 3.

government further asked whether the government was right that Concord produced no records responsive to category 3 (concerning Concord's Internet Protocol ("IP") address), and if so why that is.  *Id.*  On February 13, 2020, defense counsel stated: "(1) we cannot attest to compliance with the subpoena because we had nothing to do with any collection or review of potentially responsive documents, and (2) we gave you all of the documents Concord gave to us so I think it is fair for you to conclude that they do not have anything else related to the first subpoena."  *Id.* at 2.

**3.**  With respect to the second subpoena, on the February 21, 2020, return date, defense counsel emailed the government: "We are informed that Concord does not have any documents related to the second subpoena."  Ex. 4, at 1.  Concord again filed a "Notice Regarding Early Return Trial Subpoena," which stated that Concord "has responded to the United States Attorney's Office in connection with the trial subpoena dated February 10, 2020."  Doc. 356.  As with its prior notice, Concord made no representation that it had, in fact, complied with the subpoena.  The government clarified whether defense counsel's prior representations, *i.e.*, that it cannot attest to compliance, apply to this further subpoena response, and defense counsel stated that they do. Ex. 4, at 1.

## ARGUMENT

The American justice system has a paramount interest in conducting trials with all admissible evidence.  *See United States v. Nixon*, 418 U.S. 683, 709-710 (1974).  Courts accordingly have an expansive and well-established power to compel the production of evidence for use at trial.  *See, e.g.*, Fed. R. Crim. P. 17; *see American Lithographic Co. v. Werckmeister*, 221 U.S. 603, 609 (1911).  Pursuant to that authority, this Court directed Concord to produce six categories of records that are likely in Concord's possession, custody, or control and that bear

directly on this case.  Concord responded by producing a limited set of what appear to be official governmental records and nothing more.  Concord has not so much as claimed that it complied with the trial subpoenas, let alone explained its search process or the surprising absence of other responsive records.  Concord thus produced no responsive records for four of the six categories of subpoenaed records, including one category—records that identify IP addresses used by Concord—for which virtually any business would possess responsive records.  Concord has also not even produced the very records that the government obtained through other sources.  Concord's counsel and sole representatives for purposes of this case, *see* Fed. R. Crim. P. 43(b), has made clear that they cannot attest to compliance with the subpoena or make any representations on Concord's behalf about the surprising absence of responsive records.  In light of these troubling facts, the government respectfully requests that the Court issue an order to Concord to show cause why it should not be held in civil contempt.

**A.**  Concord is subject to court orders requiring the production of six categories of records. A trial subpoena is a court order commanding a person to testify or to produce documents or objects for use in a trial.  *See* Fed. R. Crim. P. 17(a) and (c)(1); *see* Wright & Miller, Federal Practice and Procedure § 2451 (3d ed.) ("A 'subpoena' is a mandate lawfully issued in the name of the court."); *see, e.g.*, *United States v. Grooms*, 6 Fed. App'x 377, 381 (7th Cir. 2001) (unpub.) ("A subpoena is a court order—not merely a demand of a party to litigation"); *Waste Conversion, Inc. v. Rollins Envtl. Servs.*, 893 F.2d 605, 613 (3d Cir. 1990) (Scirica, J., dissenting) ("I doubt there is any lawyer in the United States who does not know that a subpoena is a court order."). Here, pursuant to the Federal Rules of Criminal Procedure, the Court also itself ordered Concord to produce the designated items in advance of trial.  *See* Fed. R. Crim. P. 17(c)(1).

A witness who fails to comply with a subpoena may be held in contempt.  Fed. R. Crim. P. 17(g).  Contempt proceedings can result in either criminal or civil sanctions or both.  *See, e.g.*, 28 U.S.C. § 1826(a) (civil); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt"); 18 U.S.C. § 401(3) (criminal).  "Criminal contempt is a crime in the ordinary sense," and generally requires "the protections that the Constitution requires of such criminal proceedings."  *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994) (citations and quotation marks omitted); *see id.* at 829.  "In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."  *Id.* at 827; *see id.* at 828, 829.  Courts ordinarily "first consider the feasibility of prompting testimony through the imposition of civil contempt, utilizing criminal sanctions only if the civil remedy is deemed inadequate."  *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 801 (1987).

While there are express procedures for criminal contempt, *see* Fed. R. Crim. P. 42, civil contempt is governed by longstanding procedures.  *See In re Investigation before April 1975 Grand Jury*, 531 F.2d 600, 608 n.13 (D.C. Cir. 1976).  The required notice and opportunity to be heard ordinarily occurs through issuance of an order to show cause and a hearing.  *See, e.g.*, *In re Special Counsel Investigation*, 332 F. Supp. 2d 33, 33-34 (D.D.C. 2004); *In re Grand Jury Proceedings*, 491 F.2d 42, 43 (D.C. Cir. 1974) (per curiam).

**B.**  The government respectfully requests that the Court issue an order to show cause why Concord should not be held in civil contempt and to schedule a hearing on the first available date

that is convenient for the Court.  Ample basis exists to believe that Concord has not complied with the two trial subpoenas, and further proceedings are necessary.

**1.**  As an initial matter, Concord has not even claimed that it complied with the two trial subpoenas.   Ordinarily, when a party is required to produce records, the party makes a representation that is has or has not complied and why.  *See, e.g.*, *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 147 (D.C. Cir. 2015) (company "certified compliance with the subpoena," and withheld documents based on privilege assertions); *In re Lusane*, No. 11-889, 2013 WL 1728990, at *8 (Bankr. D.D.C. Apr. 22, 2013) ("The debtor's counsel represented that the debtor produced all he had that was required to be produced.").  A party's representation that it complied with a court order does not necessarily mean that it has done so.  But that is a standard and helpful starting point.  Indeed, detailed representations about compliance are often the critical first step in determining whether a party complied.  *See, e.g.*, *Food Lion, Inc., v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1018 (D.C. Cir. 1997) (order violated by "failing to search or to notify the district court of the existence of the 600 off-site storage boxes containing documents covered by the September 5 order until two months after the order issued").

Here, by contrast, Concord has made no representation—through its counsel (and sole representative in this case) or otherwise—that it complied with the two trial subpoenas.  Nor, of course, has Concord made any representations about how it understood the subpoena and conducted a search for responsive records.  Even defense counsel's "transmission" statements do not suggest that Concord complied.  Defense counsel do not represent their understanding that Concord (rather than Concord's counsel) conducted any kind of a search, let alone a sufficient search.  And defense counsel's statement that they "are informed that Concord does not have"

categories of records, Ex. 4, at 1; *see id.* at 2 (similar), does not address documents that may be in Concord's control even if not in its possession. *See, e.g.*, *In re Various Grand Jury Subpoenas*, 248 F. Supp. 3d 525, 530 (S.D.N.Y. 2017) (witness must produce documents within its control but not custody). Defense counsel also has made no representation about what Concord may have previously possessed or controlled when these proceedings began. Concord has been quick to make all sorts of claims in this Court—all through its chosen counsel. Defense counsel's notable silence on this issue speaks volumes.

**2.** In all events, Concord's failure to produce any records responsive to subpoena categories 3-6 is prima facie evidence of its failure to comply with these trial subpoenas. Substantial evidence suggests that Concord has custody or control of additional responsive records. Among other things, as the Court already found, significant evidence shows that Concord used dedicated IP addresses, that Prigozhin attended meetings with the designated IRA officials reflected in his calendar, and that Concord made payments to fund the IRA's activities and kept detailed records (including budgets, vouchers, and emails) related to those payments and activities.

As the Court well knows, the government has already gathered certain records that would be responsive to this subpoena. Yet Concord has not even produced those records. *Cf. Sigety v. Abrams*, 632 F.2d 969, 974 (2d Cir. 1980) ("Clearly, an inference of continuing possession may be properly drawn in a case involving books and records known to be in the possession of a subpoenaed witness shortly before the issuance of a subpoena demanding their production."). In fact, these records included ██████████████████████████████████████ ███████████████████████. The limited records that Concord has produced—all of which appear to be public records theoretically accessible in Russia—confirm that Prigozhin owns Concord, that Prigozhin has been and is formally designated as Concord's General Director, and

that Sautina herself was designated as Concord's General Director during the time period covered by the subpoenas.  These facts only further suggest that the requested calendar entries are in Concord's control.

The absence of any responsive records for subpoena category 3 underscores the conclusion that Concord has not even seriously attempted to comply with the trial subpoenas, and perhaps has no intent to do so.  Category 3 requires Concord to produce documents sufficient to identity any IP address used by Concord from January 1, 2014 to February 1, 2018.  Initially, as Concord well knows, metadata of many kinds of electronic files—including emails sent from Concord's computer systems—would reflect those IP addresses.  *See, e.g.*, Doc. 332-1, at 12-13 & n.2 (explaining that ███████████████████████████████████████████████████████ ███████████████████████████████████).  It is therefore difficult to fathom that Concord has no responsive records whatsoever.  Digital evidence gathered during the government's investigation suggests that Concord had dedicated IP addresses during the relevant time period. Among other things, █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████.

Where an entity leases servers or IP addresses, one would expect an entity to control (even if not possess) records showing its purchase or lease of IP addresses, whether through invoices, receipts, or purchase orders, or through records maintained by the entity to track such information.

In deciding whether other records likely exist, the Court can make "reasonable deduction[s]."  *Barnes v. District of Columbia*, 289 F.R.D. 1, 25 (D.D.C. 2012) (discussing discovery).  Here, ample basis exists to believe that Concord possesses or controls responsive records.  *Sec. Investor Prot. Corp. v. Executive Sec. Corp.*, 433 F. Supp. 470, 474 (S.D.N.Y. 1977) ("the failure . . . to account in any way for his nonproduction of the books coupled with the . . .

reasonable belief that [the subpoenaed party] is the custodian of any such records, is prima facie evidence of [his] contempt of the subpoenas duces tecum"). Concord's apparent gamesmanship in connection with these subpoenas—including its efforts to avoid service and its patently meritless foreign law arguments—further call into question why Concord has not provided additional records. In fact, the likely relevance of these records in the government's criminal case against Concord (the very reason that these constituted proper subpoena categories) is a further reason to be skeptical of any unsupported assertions—let alone the non-assertion submitted by defense counsel—that Concord has no such records. *Cf. United States v. Goldstein*, 105 F.2d 150, 152 (2d Cir. 1939) (relied on in *McPhaul v. United States*, 364 U.S. 372, 378 (1960)) (crediting district court's conclusion that responsive records likely exist where having such records was, *inter alia*, "consistent with the ordinary practice" of others and with the witness's "own practice" with respect to other matters, particularly given an "obvious motive" to conceal records).

**3.** The complete absence of any explanation from Concord only exacerbates these problems. The government's and Court's "reasonable basis for believing" that Concord has responsive records, "coupled with" the absence of any explanation for not producing them establishes "a prima facie case of willful failure to comply." *See McPhaul*, 364 U.S. at 377-379 (upholding criminal contempt conviction arising from congressional subpoena where the defendant "never claimed . . . that the records called for by the subpoena did not exist or that they were not in his possession or subject to his control"); *United States v. Bryan*, 339 U.S. 323, 332-333 (1950) (similar). The "burden" accordingly should "shift" to Concord to explain or justify the non-production of records. *See McPhaul*, 364 U.S. at 379; *see also United States v. Fleischman*, 339 U.S. 349, 360-363 (1950) (explaining that a witness is better positioned to give a justification where "the relevant facts are peculiarly within her knowledge" and thus the witness should

"introduce evidence as to what steps she took after receiving the subpoena, or, if she took no action, any evidence tending to excuse her omission."). Indeed, even if Concord has no responsive records, some form of contempt may still be appropriate if Concord "is responsible for their unavailability or is impeding justice by not explaining what happened to them." *McPhaul*, 364 U.S. at 378 (citation omitted); *see United States v. Goldstein*, 105 F.2d at 152 (relied on in *McPhaul*, 364 U.S. at 378).

With no evidence from Concord about whether and how it searched for records, it is difficult even to engage with Concord's position. For example, even a "good faith effort to comply does not amount to full and actual compliance." *In re Various Grand Jury Subpoenas*, 248 F. Supp. 3d at 527; *see Pigford v. Veneman*, 307 F. Supp. 2d 51, 58 (D.D.C. 2004) ("When a district court determines . . . that a contemnor has not done all within its power to comply with the court's orders, contempt may be appropriate even where compliance is difficult.") (internal quotation marks omitted); *Stewart v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002) ("It is not necessary in civil contempt proceedings for the violation of the Court Order to be intentional or for the putative contemnor to have acted in bad faith."). But Concord has not even asserted any good faith efforts. And if, for example, Concord lacks a good filing system (an assertion that would be in stark contrast to evidence gathered by the government), that would not excuse Concord's non-response but would aid the Court in crafting an appropriate remedy. *See Food Lion*, 103 F.3d at 1019 (noting "neglectful management practices," such as defective file indexing systems, does not "excuse compliance with a subpoena").

**C.** As discussed, Concord's counsel have not even represented that Concord complied with the trial subpoenas. And when asked about the obvious absence of documents responsive to subpoena category 3 (records sufficient to identify Concord's IP addresses), defense counsel could

state only that "it is fair" for the government "to conclude" that Concord does not "have anything

else." That is woefully insufficient. Defense counsel is correct that the trial subpoenas are orders

to Concord and not to Concord's attorneys, even though Concord voluntarily appeared in this case

and, as a corporate defendant, chose to appear solely through counsel. Accordingly, this is a

motion for Concord to show cause why Concord should not be held in civil contempt. Concord

has not even made a bare representation—through its attorneys and sole representatives in Court

or otherwise—that it complied. Nor has Concord provided any explanation of whether or how it

conducted a search and why it returned no responsive documents for four of the six trial subpoena

categories. As noted, even defense counsel's statement about assuming that Concord has no

further records appears to refer only to records in Concord's physical possession—what they

"have"—rather than the pertinent question of what records are also in Concord's custody or

control.

Concord has made all of its prior representations to the government and to the Court

through defense counsel. These have included repeated representations about Concord's asserted

willingness to submit to the jurisdiction of this Court and to be bound by orders of this Court,

including, for example, the protective order. Consistent with those representations, presumably

defense counsel can apprise itself of the relevant information regarding its client's compliance or

non-compliance with the subpoenas and then represent that information as officers of the Court.

If defense counsel is unable to gather that information or to make any such representations

to the Court, then Concord must address whether it has complied with the subpoena—including

whether and how Concord searched for records—through equally reliable means. *Sec. Investor

Prot. Corp.*, 433 F. Supp. at 473 (finding that sworn affidavit about inability to make court-ordered

payment was insufficient because he must show "that he has no assets of any kind out of which he

can satisfy the order of this Court, and he must do so under penalty of perjury"). In particular, the government suggests that if Concord's counsel and sole representative in this case cannot address the defense's compliance with court orders concerning trial evidence, then Concord should send an appropriate representative to a hearing on this matter who can address these issues. *Cf. Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 581 (D.C. Cir. 1967) ("genuine issue of fact regarding . . . compliance" with court order required hearing to resolve) (due process standard for contempt proceeding). "'A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must [comply] only if cornered at the end of the chase.'" *United States v. Rylander*, 460 U.S. 752, 762 (1983) (quoting *Bryan*, 339 U.S. at 331). With trial fast approaching and in light of Concord's previous gamesmanship in connection with these subpoenas, it is critical that Concord thoroughly explain its surprising response to the trial subpoenas in this case.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order Concord to show cause why it should not be held in civil contempt. The government asks that the Court order Concord to file an expedited response, schedule a hearing on the first available date that is convenient for the Court, and compel the attendance of an appropriate representative of Concord who can speak to whether and how Concord attempted to comply fully with the two trial subpoenas.

Respectfully submitted,


JOHN C. DEMERS                                      TIMOTHY J. SHEA
Assistant Attorney General for National Security    United States Attorney
                                                    D.C. Bar No. 437437


By: */s/ Heather Alpino*                            By: */s/ Adam Jed*
Heather N. Alpino                                   Adam Jed, NY 4978532
U.S. Department of Justice                          Luke Jones
National Security Division                          Peter Lallas
950 Pennsylvania Ave. NW                            555 Fourth Street NW
Washington, D.C. 20530                              Washington, D.C. 20530
Telephone: (202) 514-2000                           Telephone: (202) 252-7066

# EXHIBIT 1

| | |
|---|---|
| **From:** | Dubelier, Eric A. <EDubelier@ReedSmith.com> |
| **Sent:** | Monday, February 3, 2020 6:36 PM |
| **To:** | Kravis, Jonathan (USADC) |
| **Cc:** | Seikaly, Kate J; Jones, Luke (USADC); Lallas, Peter (USADC); Jed, Adam (USADC); Alpino, Heather (NSD) |
| **Subject:** | RE: Trial subpoena to Concord Management and Consulting LLC |

You are not listening.  The Court said twice explicitly that we (Reed Smith) did not have to do anything.  Despite this, we will transmit what if anything the client sends to us on the return date.

---

**From:** Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>
**Date:** Monday, Feb 03, 2020, 6:33 PM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Cc:** Seikaly, Kate J <KSeikaly@ReedSmith.com>, Jones, Luke (USADC) <Luke.Jones@usdoj.gov>, Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>, Jed, Adam (USADC) <Adam.Jed@usdoj.gov>, Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** Re: Trial subpoena to Concord Management and Consulting LLC

<mark>EXTERNAL E-MAIL - From Jonathan.Kravis3@usdoj.gov</mark>

Now it is I who does not understand. At the last hearing the court granted in part our motion for an early return trial subpoena to Concord. So I think your client does have to do something—comply with the subpoena. If your client does not intend to produce all documents in its possession responsive to the subpoena served last Monday please tell me now so that we can file a motion to compel promptly.

Sent from my iPhone

On Feb 3, 2020, at 6:27 PM, Dubelier, Eric A. <EDubelier@reedsmith.com> wrote:

> The judge said twice that we don't have to do anything.  That said,     we will send you what the client provides to us.

---

**From:** Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>
**Date:** Monday, Feb 03, 2020, 6:24 PM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>, Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>, Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>, Jed, Adam (USADC) <Adam.Jed@usdoj.gov>, Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** RE: Trial subpoena to Concord Management and Consulting LLC

<mark>EXTERNAL E-MAIL - From Jonathan.Kravis3@usdoj.gov</mark>

I'm sorry if the question wasn't clear.  I just intended to ask how you want to handle the logistics of the production of documents responsive to the subpoena.

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
█████████

---

**From:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Sent:** Monday, February 3, 2020 6:22 PM
**To:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>; Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <LJones2@usa.doj.gov>; Lallas, Peter (USADC) <PLallas@usa.doj.gov>; Jed, Adam (USADC) <AJed@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>
**Subject:** RE: Trial subpoena to Concord Management and Consulting LLC

I don't understand the question.

---

**From:** Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>
**Date:** Monday, Feb 03, 2020, 6:16 PM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>, Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>, Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>, Jed, Adam (USADC) <Adam.Jed@usdoj.gov>, Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** RE: Trial subpoena to Concord Management and Consulting LLC

EXTERNAL E-MAIL - From Jonathan.Kravis3@usdoj.gov

Dear counsel,

The trial subpoena that we sent you last Monday calls for the production of documents on February 7.  What is your position on whether we should contact the Court to make arrangements for the return on that date?

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
█████████

---

**From:** Kravis, Jonathan (USADC)
**Sent:** Monday, January 27, 2020 9:07 AM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>; Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <LJones2@usa.doj.gov>; Lallas, Peter (USADC) <PLallas@usa.doj.gov>; Jed, Adam (USADC) <AJed@usa.doj.gov>; Alpino, Heather (NSD) (JMD) <Heather.Alpino@usdoj.gov>
**Subject:** Trial subpoena to Concord Management and Consulting LLC

Dear counsel,

Per the Court's order on Friday, attached is an early return trial subpoena to Concord requesting production of documents on or before February 7, 2020, pursuant to Federal Rule of Criminal Procedure 17.

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia
██████████

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT 2

| From: | Seikaly, Kate J <KSeikaly@ReedSmith.com> |
|---|---|
| Sent: | Friday, February 7, 2020 4:19 PM |
| To: | Kravis, Jonathan (USADC); Dubelier, Eric A. |
| Cc: | Jones, Luke (USADC); Lallas, Peter (USADC); Jed, Adam (USADC); Alpino, Heather (NSD) |
| Subject: | RE: Trial subpoena to Concord Management and Consulting LLC |
| Attachments: | CMC_1 through CMC_157.PDF |

Jonathan,

Please see attached.

Thanks,
Kate

---

**From:** Kravis, Jonathan (USADC) <Jonathan.Kravis3@usdoj.gov>
**Sent:** Monday, January 27, 2020 9:07 AM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>; Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>; Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>; Jed, Adam (USADC) <Adam.Jed@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** Trial subpoena to Concord Management and Consulting LLC

EXTERNAL E-MAIL - From Jonathan.Kravis3@usdoj.gov

Dear counsel,

Per the Court's order on Friday, attached is an early return trial subpoena to Concord requesting production of documents on or before February 7, 2020, pursuant to Federal Rule of Criminal Procedure 17.

Thanks,
Jonathan

Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

EXHIBIT 3



**Driving progress**
through partnership

**Eric A. Dubelier**
Direct Phone:
Email: edubelier@reedsmith.com

Reed Smith LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, D.C. 20005-3373
+1 202 414 9200
Fax +1 202 414 9299
reedsmith.com

February 7, 2020

**Via Electronic Mail**

Jonathan Kravis
U.S. Attorney's Office for the District of
Columbia
Judiciary Center
555 Fourth Street, NW
Washington, DC

*United States v. Concord Management and Consulting LLC*, 18-cr-32-DLF

Dear Jonathan,

Enclosed are documents provided by Concord Management and Consulting LLC's ("Concord") in response to the trial subpoena dated January 24, 2020, which you sent to us via email on January 27, 2020. The documents have been labeled CMC_1 – CMC_157.

Please note that at the January 24, 2020 hearing, Judge Friedrich stated that "the subpoena is not directed at defense counsel and would not require defense counsel to assist Concord in searching for responsive documents" and that "other than transmitting the subpoena, [the subpoena] requires no further involvement from defense counsel in complying with the subpoena." Jan. 24, 2020 Hr'g Tr. 23:1-3 and 31:12-14. Thus, as directed by the Court, Reed Smith has transmitted the subpoena to Concord and is now transmitting to you the enclosed documents.

Very truly yours,

Eric A. Dubelier

# EXHIBIT 4

| | |
|---|---|
| **From:** | Dubelier, Eric A. <EDubelier@ReedSmith.com> |
| **Sent:** | Friday, February 21, 2020 9:36 AM |
| **To:** | Jones, Luke (USADC) |
| **Cc:** | Seikaly, Kate J; Lallas, Peter (USADC); Jed, Adam (USADC); Alpino, Heather (NSD) |
| **Subject:** | RE: Concord trial subpoena return |

Correct.  Thanks

**From:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>
**Date:** Friday, Feb 21, 2020, 9:32 AM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Cc:** Seikaly, Kate J <KSeikaly@ReedSmith.com>, Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>, Jed, Adam (USADC) <Adam.Jed@usdoj.gov>, Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** RE: Concord trial subpoena return

EXTERNAL E-MAIL - From Luke.Jones@usdoj.gov

Thanks, Eric.  I'm assuming the same representations in your Feb. 13 email (further below) apply here, but please confirm.

Thanks again,

Luke

**From:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Sent:** Friday, February 21, 2020 9:08 AM
**To:** Jones, Luke (USADC) <LJones2@usa.doj.gov>
**Cc:** Seikaly, Kate J <KSeikaly@ReedSmith.com>; Lallas, Peter (USADC) <PLallas@usa.doj.gov>; Jed, Adam (USADC) <AJed@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>
**Subject:** RE: Concord trial subpoena return

Luke:

We are informed that Concord does not have any documents related to the second subpoena.

Eric

**Eric A. Dubelier**

edubelier@reedsmith.com
Reed Smith LLP

1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005
202-414-9200
Fax 202-414-9299

**From:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>
**Sent:** Thursday, February 13, 2020 9:13 AM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>
**Cc:** Seikaly, Kate J <KSeikaly@ReedSmith.com>; Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>; Jed, Adam (USADC) <Adam.Jed@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** Re: Concord trial subpoena return

EXTERNAL E-MAIL - From Luke.Jones@usdoj.gov

Understood. Thank you.

Luke


On Feb 13, 2020, at 8:52 AM, Dubelier, Eric A. <EDubelier@reedsmith.com> wrote:

Luke:

The judge said there was no 6th A issue because all we had to do was transmit the subpoena to Concord and transmit any production to you.  That is exactly what we did.  So in answer to your two questions (1) we cannot attest to compliance with the subpoena because we had nothing to do with any collection or review of potentially responsive documents, and (2) we gave you all of the documents Concord gave to us so I think it is fair for you to conclude that they do not have anything else related to the first subpoena.  This is what I explained to Jonathan.   We are happy to discuss by phone.

Thanks, Eric

**Eric A. Dubelier**
███████████
edubelier@reedsmith.com
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 - East Tower
Washington, D.C. 20005
202-414-9200
Fax 202-414-9299

**From:** Jones, Luke (USADC) <Luke.Jones@usdoj.gov>
**Sent:** Wednesday, February 12, 2020 4:08 PM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>; Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Lallas, Peter (USADC) <Peter.Lallas@usdoj.gov>; Jed, Adam (USADC) <Adam.Jed@usdoj.gov>; Alpino, Heather (NSD) <Heather.Alpino@usdoj.gov>
**Subject:** RE: Concord trial subpoena return

EXTERNAL E-MAIL - From Luke.Jones@usdoj.gov

Counsel,

I know this came up in conversation yesterday at the hearing, but, to be sure we understand your position, can you please respond to the two questions below by email?

Thanks,

*Luke*

*Luke Jones*
*Assistant U.S. Attorney*
*District of Columbia*

*(office)*
*(cell)*

---

**From:** Kravis, Jonathan (USADC) <JKravis1@usa.doj.gov>
**Sent:** Monday, February 10, 2020 5:51 PM
**To:** Dubelier, Eric A. <EDubelier@ReedSmith.com>; Seikaly, Kate J <KSeikaly@ReedSmith.com>
**Cc:** Jones, Luke (USADC) <LJones2@usa.doj.gov>; Lallas, Peter (USADC) <PLallas@usa.doj.gov>; Jed, Adam (USADC) <AJed@usa.doj.gov>; Alpino, Heather (NSD) <halpino@jmd.usdoj.gov>
**Subject:** Concord trial subpoena return

Dear counsel,

We write concerning Concord's trial subpoena return.  We have two questions.

First, the notice you filed on Friday says that Concord "has transmitted documents…in connection with the trial subpoena," but does not represent that Concord has actually complied with the subpoena.  Can you make that representation to us?

Second, based on an initial review of the production, it does not appear to us that Concord produced any documents responsive to category #3.  Can you tell us whether we are correct about that, and if so why that is?

Thanks,
Jonathan


Jonathan Kravis
Deputy Chief, Fraud and Public Corruption Section
U.S. Attorney's Office for the District of Columbia

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **CONCORD MANAGEMENT AND CONSULTING LLC,** | **Criminal No. 18-CR-32-2** |
| **Defendant.** | |

## <u>ORDER</u>

Upon consideration of the Government's Motion, it is hereby

**ORDERED** that the Motion is **GRANTED**; it is further

**ORDERED** that defendant Concord Management and Consulting LLC is required to

show cause why it should not be held in civil contempt for violating the trial subpoenas issued in

this case, as well as the Court's orders to produce all responsive records in advance of trial; it is

further

**ORDERED** that a hearing is scheduled for _____, 2020; and it is further

**ORDERED** that an appropriate representative of Concord who can address Concord's

process for keeping records and responding to the trial subpoenas shall appear at that hearing.

**SO ORDERED** this _____ day of February, 2020.


_____
HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE