**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NUMBER |
| | 1:18-cr-00032-2-DLF |
| v. | |
| CONCORD MANAGEMENT AND CONSULTING LLC, | |
| Defendant. | |

**DEFENDANT CONCORD MANAGEMENT AND CONSULTING LLC'S RESPONSE
TO THE GOVERNMENT'S MOTION FOR AN ORDER TO SHOW CAUSE WHY
CONCORD SHOULD NOT BE HELD IN CIVIL CONTEMPT AND PROPOSED
<u>CONTEMPT ORDER</u>**

Defendant Concord Management and Consulting LLC ("Concord"), through counsel, submits this Response to the Government's Motion for an Order to Show Cause Why Concord Should Not Be Held in Civil Contempt and Proposed Contempt Order.

## I.      PRELIMINARY STATEMENT

The government's request for a civil contempt citation as it relates to Concord's responses to its early return trial subpoenas is fatally flawed in its premises and legally unjustified in its demand for relief.  There is no conceivable basis for a civil contempt finding on this record as a matter of fact or law and no case cited by the government provides otherwise.  Nor could it.  Civil contempt manifestly is not the all-purpose discovery tool the government makes it out to be, and in a criminal case it does not entitle the government to the equivalent of an interrogatory.  It is instead reserved for flagrant disregard of court directives, in circumstances where that disregard is supported by clear and convincing evidence.  The government does not recite the controlling

standard but the record related to Concord's response to the trial subpoenas does not reach that threshold; it does not come close.

As to the government's flawed premises, it makes its contempt demand without a prior motion, meet and confer, or asserted violation of any express court order.  And the primary foundation for its  demand — that Concord's counsel did not thoroughly explain the bases for Concord's responses to the subpoenas — not only is not found in any court order but this Court expressly rejected the notion that such an explanation could be required.  The same goes for the government's alternative demand that a Concord witness should be required to appear to explain Concord's responses.  No court order required an explanation of any kind, and this Court made it clear that the subpoenas sought documents, not anything from Concord's lawyers.  If more were needed, Concord did provide documents in its possession or control in response to one of the subpoenas and a further explanation from Concord's counsel on the responses made.  And here again, the government's incredulity over the adequacy of the response, real or feigned, does not reveal a failure to respond, much less a violation of any court order related to such a response. Simply put, the basis for a contempt finding is a product of the government's argument, not the relevant record.

Turning to the lack of legal support, the government does not even acknowledge where the legal analysis must start:  Civil contempt is an extraordinary remedy available only in the clearest of cases where an express court directive plainly has been violated.  The government's cases are not to the contrary and the controlling law establishes that there is no basis to bring the machinery of civil contempt to bear here.  Once again, the government's belief that Concord's counsel should have explained its responses or that Concord should have done so as well is not part of any order of this Court.  Nor has Concord or its counsel breached any court order or in any way evinced a

refusal to comply with one.  Any citation for civil contempt in such circumstances would not just be erroneous as a matter of law, it would be an abuse of the contempt remedy and its purpose.  No prosecutor in any context should be provided with the coercive power of contempt the government seeks here.

The government colors its flawed and legally erroneous demand with the suggestion that contempt is particularly appropriate for the responses to the trial subpoenas because Concord's counsel made frivolous arguments and engaged in gamesmanship in making its objections.  But the record does not sustain that characterization either.  Perhaps the government has forgotten that the Court addressed Concord's arguments on the merits without calling them frivolous.  Perhaps it also forgot that the Court agreed with Concord that the trial subpoena was overbroad in material respects.  Perhaps it likewise forgot that the issues raised by the trial subpoena occurred in a unique context and were ones of first impression.  Or perhaps the government just wanted to take an unwarranted cheap shot at Concord's counsel.  Whatever it might be, Concord's counsel's vigorous efforts to defend against oppressive prosecutorial tactics does not furnish any support for a civil contempt citation either, and it would be a miscarriage of justice to find to the contrary as the government urges.  The government's motion should be denied in all its particulars.

## II.     BACKGROUND

The government manufactures its contempt request out of whole cloth. It begins with a timeline of the litigation in an apparent attempt to make it look like the responses to the subpoenas are just the latest piece of foot-dragging by Concord's counsel in an effort to delay the trial.  That

insinuation lacks record support on its face, but it has no credence at all as applied to the timeline for the trial subpoena and Concord's response.[1]

The government issued its first early return trial subpoena on December 3, 2019, and after Concord objected, on December 12, this Court agreed with Concord that categories four through nine of the subpoena request were too broad.  The Court authorized the subpoena with respect to categories one through three in the government's motion, and allowed Concord to file a motion to quash the government's renewed subpoena request.  ECF 279.  Consistent with that directive, the government tried again and Concord's motion to quash followed on January 3, 2020.  Once again, the Court agreed that certain categories of the government's second subpoena request were too broad in an order made on January 24.  The government sent its first subpoena on January 27.  The government tried a third time and Concord replied, and it was not until February 7 that this Court made its final order relating to the second subpoena, authorizing it with respect to categories four through six.  ECF 333.  Concord  responded timely to the subpoenas when issued for each category requested.

After Concord's response to the first subpoena was made on February 11, 2020, Mr. Dubelier and AUSA Kravis discussed the position of the defense, and Mr. Kravis indicated that he would think about it and get back to Mr. Dubelier with any questions.  Mr. Kravis quit his job a few hours later.  After that discussion, emails were exchanged between counsel concerning both subpoenas.  At no point in those exchanges did the government ask for a meet and confer, profess

---

[1] More broadly, if there needs to be finger-pointing about delay, the government should take a hard look in the mirror, starting with its protracted dance over supplying State Department information, its purposeful delays in providing *Giglio* and Jencks material, its failure to respond to repeated queries about its exhibit list and a missing search warrant, or its refusal, despite the Scheduling Order, to provide a complete witness list.  Concord has lived with these tactics from inception without a thought being given to calling the government out for civil contempt.  But if incredulity over how an adversary responds to discovery is all that is needed, it will rethink the matter.

to have any material issues, indicate that a motion was contemplated, or suggest that a contempt proceeding was about to be initiated.

Throughout this process, Concord complied with every Court deadline and there was no violation of any Court order.  Thus, when viewed in the proper context, any inordinate delay rests with the government, which did not (apparently for tactical reasons) begin requesting a subpoena until December 2019, and even then, made overbroad requests that required Court resolution. More to the point, nothing in that entire sequence reveals any conceivable basis for a contempt citation and the government's effort to insinuate otherwise is meritless.

The government's motion also is based on a purported set of premises that do not appear from the record, are contradicted by it, or both.  For example, it makes much of Concord's counsel's abject failure to explain how the documents were obtained, what search was conducted, or why some documents were provided but not others.  And it describes Concord's counsel's clarification of what the responses meant in response to the government's inquiries as duplicitous. But Concord's counsel is not a corporate representative, and there is no order from this Court requiring any of this.

Indeed, requiring Concord's counsel to participate in the document collection process and to explain how it was undertaken or what was or was not discovered and why plainly threatens to abrogate the attorney-client privilege and likewise would force counsel to breach pertinent ethical obligations by potentially becoming a witness against his own client.  Moreover, even if counsel could reveal information about the subpoena response without breaching the privilege or pertinent ethical obligations, counsel would have no way of verifying the information provided.  In light of these extant Sixth Amendment and ethical issues, the Court properly ruled that Concord's counsel only needed to transmit the subpoena to Concord, which he did.  No further involvement was

contemplated or considered, Jan. 24 Tr. at 22:24-23:4; 31:10-14, and that comports fully with applicable case law.  *See United States v. Bergeson*, 425 F.3d 1221, 1225-26 (9th Cir. 2005) (affirming district court's decision to quash Rule 17 subpoena where the government would have compelled an attorney to offer testimony that would have irreparably damaged the attorney-client relationship); *United States v. Klubock*, 832 F.2d 649, 654 (1st Cir. 1987) (where a grand jury subpoena would potentially require an attorney to be a witness against his client and violate the Rules of Professional Conduct, "counsel will possibly be required to resign as attorney for his client.  Not only the right to counsel of choice under the Sixth Amendment but also due process is thus implicated, because the attorney/prosecutor is potentially given control over who shall be his attorney/adversary").

The motion also expresses its indignation for Concord's responses, making similar charges that no explanation was given for why documents did or did not exist, or were or were not obtainable.  But no Court order required that either.  Nor was there any expectation that Concord would be providing a witness who could explain its responses.  On the contrary, the Court made it clear that was not contemplated either.  Jan. 24 Tr. at 20:2-7.  The two orders issued by this Court in connection with the subpoenas do not change this calculus in any respect.  They simply authorize the government to subpoena the documents, no more and no less.

What happened after Concord responded is equally significant for this motion:  nothing.  In discussions with the government's counsel, Concord's counsel provided an explanation for the responses based on his impressions.  No issue was raised over that explanation, orally or in writing, and after that, there was no request for a meet and confer, no indication that Concord had violated any government order by responding to the subpoena, and no hint dropped that a contempt motion

was about to be made.  Concord's first and only opportunity to address the contempt issue came in this brief.[2]

## III.   ARGUMENT

The government's motion has no colorable justification and shows a manifest disregard of the record and controlling law.  No rule of this Court and no case it has cited authorizes a civil contempt motion to be filed and granted simply because a party disagrees with the adequacy of a response to a subpoena or the explanation of a party's counsel for that response.  Civil contempt is reserved for extraordinary cases where there is an apparent and patent violation of a court order.  There is nothing like that here, only the government's professed incredulity about Concord's counsel's or Concord's failure to explain the responses to the subpoena and the response itself.  But the government leaves out that Concord's counsel is not a corporate representative, he is a lawyer appearing on behalf of a client, *see* Fed. R. Crim. P. 43(b)(1), and he was not required to make any explanation at all given the Court's own directives.  No order of this Court required Concord to make such an explanation either.  Nor can civil contempt be brought to bear over the government's displeasure where there has been no violation of a court order and every court order has been complied with.  The government demands deployment of a nuclear option to respond to its proffered parade of horribles, but there is no parade and no horribles.

Nothing in the government's litany of cited cases alters this observation in any respect.  Those cases all have contempt-worthy records where court orders have been ignored after efforts

---

[2] In that regard, it is worth noting that Concord's prior motion for an order to show cause on criminal contempt followed a very different path than the government's motion.  ECF 129.  Those proceedings involved Concord's motion, a briefing schedule with ordinary response times, a hearing, supplemental briefing and a ruling.  From filing to ruling took nearly two months.  Here, by contrast, the government made its motion and requested an immediate contempt finding and this Court did not give Concord an opportunity to even respond to the government's show cause motion.  It granted the motion and gave Concord just over 24 hours to formulate a response.

to obtain compliance were made or court orders were ignored with an indication that no response would be forthcoming.  The fact patterns, in short, look like a situation where a contempt citation would be called for.  Importantly, however, they look nothing like this case.  Nowhere is that more true than in the government's constant refrain—that a subpoena response must be accompanied by a full scale explanation on how it came to be, the legal equivalent of an interrogatory response, whether offered by the lawyer or the client.  That is not a legal requirement in the subpoena itself, nor is it required by any court rule or legal authority.  It resides instead in the government's imaginative description of the cases it cites.

If a contempt request is going to be made against a criminal defendant by a prosecuting lawyer, one would and should expect that something extraordinary has occurred where it is clear a court's processes and directives have been trifled with or disregarded.  There is nothing of that ilk here, and the government is attempting to draw this Court down a path it should not and cannot traverse.[3]

### A.  Civil Contempt is an Extraordinary Remedy

The government makes no effort to articulate the relevant standard for holding a party in civil contempt, most likely because that standard is extraordinarily high and it cannot meet it.  In any event, when the standard is contemplated and considered, there is no basis for a contempt finding on this record.  Indeed, there is no basis for contempt proceedings at this stage because the government has not even made a *prima facie* showing that Concord violated a Court order.

---

[3] To be clear, Concord is not suggesting that a response to a subpoena can never furnish the basis for a civil contempt citation if the requisite facts are present and a willful violation of a court order is shown.  But there likewise is no relaxation of the controlling requirements for contempt where a subpoena is issued and it is those requirements that are missing in this case.

To be sure, the Court has an inherent power to enforce compliance with its orders through the remedy of civil contempt. *See SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000). But it may only do so where "[a] party … violates a definite and specific court order requiring him to perform … a particular act or acts with knowledge of that order." *Id.* (internal quotation marks omitted). The party seeking a contempt citation must prove, by ***clear and convincing evidence***, that (1) court orders were in effect, (2) the orders required certain conduct by the non-moving party, and (3) the non-moving party failed to comply with the court orders.[4] *Id.*; *see also Food Lion, Inc. v. United Food & Comm. Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997) (recognizing that the moving party caries the burden).

Once a *prima facie* showing is made that the non-moving party did not comply with the court orders, then the burden shifts to the non-moving party to produce evidence justifying non-compliance. *Bilzerian*, 112 F. Supp. 2d at 16. The non-moving party "may defend against a finding of contempt that he is unable to comply with the orders." *Id.*; *see also United States v. Gewin*, 759 F.3d 72, 76 (D.C. Cir. 2014) (acknowledging that "inability to comply with a court order is a complete defense to a finding of civil contempt"). Given the "'extraordinary nature'" of a civil contempt citation, courts have imposed such remedy "'with caution.'" *See SEC v. Life Partners, Inc.*, 912 F. Supp. 4, 11 (D.D.C. 1996) (quoting *Joshi v. Professional Health Services, Inc.*, 817 F.2d 877, 879 n. 2 (D.C. Cir. 1987)); *see also Apple Corps. v. International Collectors*

---

[4] In the prior contempt proceedings, this Court noted the same heavy burden for the exercise of a still lesser sanction than civil contempt based on its inherent authority. The Court also noted that such disciplinary action must be based on clear and convincing evidence of sanctionable misconduct "tantamount to bad faith." The Court likewise observed that in considering whether to act, "restraint" was the order of the day, and even when action was required, the least restrictive sanction should be used. ECF 148 at 20-21. The government, however, clearly does not believe that evidence, restraint, or a least restrictive alternative are called for when Concord is concerned.

*Soc'y*, 15 F. Supp. 2d 456, 466 (D.N.J. 1998) ("Civil contempt is a 'severe remedy.'") (citations omitted).

Importantly, contempt is not warranted if there is any ground for doubt as to the wrongfulness of the defendants' conduct. *Life Partners*, 912 F. Supp. at 11. In *Life Partners*, the SEC moved to hold defendants in contempt and to compel discovery. 912 F. Supp. at 5. The SEC alleged that defendants continued to engage in the practice of selling unregistered securities in violation of the registration and anti-fraud provision of federal securities laws. *Id.* By doing so, the SEC argued that defendants violated the court's prior orders requiring defendants to bring their operations into compliance or, in the alternative, that they made a good faith effort to do so. *Id.* The court denied the SEC's motion, finding that "contempt is not warranted" because defendants took steps toward complying with the court's orders "so as not to display contempt for this court and its mandate" and otherwise complied with the court's orders. *See id.* at 11-12. In this case, the record demonstrates that the government cannot meet the *prima facie* test for civil contempt, nor has it even tried to do so.

### B.  The Government Offers no Facts or Authority Warranting Contempt

#### 1.      Counsel for Concord is under no obligation to certify the subpoena response

As noted, the government has not shown that Concord violated any order of this Court. Illustrating this point, the government quotes the representation from counsel that "we gave you all of the documents Concord gave to us so I think it is fair for you to conclude that ***they do not have anything else related to the*** [subpoena requests]," Mot. 8 (emphasis added), and argues from that that Concord "has not claimed that it complied with the two trial subpoenas," *see, e.g.,* Mot. 11. But counsel's purported failure to provide an expression of compliance is not part of any Court order, much less clear and convincing evidence that such a violation has occurred. And, with

regard to the government's expression of compliance refrain as a source of civil contempt, it is best to stick with what we know.

*First*, it ignores what Concord was ordered to do—namely, comply with the subpoenas that the Court issued and counsel transmitted. Nothing more. *See* ECF Nos. 279, 333. Consistent with this obligation, the Court on two occasions explicitly told counsel that they did not have to engage with the subpoena response. Jan. 24, 2020 Tr. at 22:24-23:4 ("First, the subpoena is not directed at defense counsel and would not require defense counsel to assist Concord in searching for responsive documents …."); 31:10-14 ("The subpoena does not mention defense counsel and, other than transmitting the subpoena, requires no further involvement from defense counsel in complying with the subpoena."). And, presumably because the government knew that counsel would not be able to provide any insight about a search conducted in Russia without counsel's involvement, the exhibits attached to the government's motion reveal that the government never asked him to provide a justification for why Concord provided the documents it did. [5]

*Second*, the cases the government cites do not support the notion that Concord has a legal obligation to do any more than what it did—respond to the subpoena. Neither *FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142 (D.C. Cir. 2015), a civil case, nor *In re Lusane* No. 11-889, 2013 WL 1728990, at *8 (Bankr. D.D.C. Apr. 22, 2013), a bankruptcy case, stand for the proposition that a subpoenaed party *must* "certify" or "represent" that its subpoena response is complete. Indeed, neither decision even expressed an opinion about doing so, because they merely

---

[5] The Court's admonition that counsel should play no part in the subpoena response other than transmitting it to Concord demonstrates that counsel was not Concord's corporate representative in responding to the subpoenas. Jan. 24 Tr. at 22:24-23:4; 31:10-14. Nevertheless, if this Court has questions for Concord's counsel on the steps taken to respond to the subpoena, counsel can provide that information in a confidential, *ex parte* proceeding to the extent the disclosures can be made consistent with the Sixth Amendment and counsel's ethical obligations.

set that fact out as background information.  *Boehringer Ingelheim*, 778 F.3d at 147 (company "certified compliance with the subpoena," and withheld documents based on an assertion of privilege); *Lusane*, 2013 WL 1728990, at *8 (in a bankruptcy discovery dispute, the court noted "[t]he debtor's counsel represented that the debtor produced all he had that was required to be produced").  And *Food Lion* goes even farther afield, because that case involved evidence that the subpoenaed party's search for responsive documents was deficient.  103 F.3d at 1018.  Here, by contrast, there is no evidence of a deficiency beyond the government's speculation, which is not the required "clear and convincing evidence" of a failure to comply with the court's Order. *Bilzerian*, 112 F. Supp. 2d at 16.

*Third*, the government's chain of inferences that attempt—but fail—to bridge the gap between unsupported speculation and violation of a court order goes something like this:  our investigation unearthed lots of documents we think should be in Concord's possession and control; the subpoena calls for many of those documents but Concord has not produced them; and what it did produce (in categories one and two) is publicly available or government documents.[6] Therefore Concord should be held in contempt for its deliberate non-responsiveness because it is withholding documents in its possession or control it should have produced.  Apart from what the government's investigation uncovered, however, this entire progression has no foundation except in the government's belief about what occurred.  But a belief, no matter how strongly held, is not a fact for which a finding could be made, much less clear and convincing evidence from which a contempt finding could be made.  And, nothing in the government's litany shows a deliberate

---

[6] The government's denigration of Concord's production in response to categories one and two is unfounded as well.  It describes the entire production as "publicly available" or "government documents."  But of the 22 documents, seven are internal to Concord and eight are government documents that are not publicly available.  There is, therefore, no inference to be drawn here either.

violation of an order of this Court.  On this record, therefore, the government's motion must fail

because nothing contemptuous has occurred.

> **2.     The government's speculation about what documents Concord may or may not have in its possession is not sufficient to warrant a contempt citation**

The government's next argument asks the Court to infer that Concord acted

contemptuously merely because it produced a limited number of documents in response to the trial

subpoenas.  Mot. 12-14.  The government, as noted, finds this incredible but the government's

speculation and conjecture about Concord's response is a bridge too far, for several reasons.

*First*, to the extent that the government tries to create a "gotcha" moment by suggesting

that Concord did not produce the documents called for, there is nothing but unsupported

assumptions, followed by the sweeping assertion that it is "difficult to fathom that Concord has no

responsive records whatsoever."  Mot. 13.  Yet none of this conjecture, despite all the incredulity

the government musters, amounts to "clear and convincing evidence" that Concord is somehow in

violation of an order of this Court.  Irrelevant speculation will not support a contempt finding in

this context or any other.

*Second*, none of the case law cited by the government supports the argument that a

contempt finding can be built solely on the government's speculation.  Start with *Sigety v. Abrams*,

632 F.2d 969, 974 (2d Cir. 1980), which involved a habeas petition from a state-court finding of

contempt.  In affirming the finding, the Court of Appeals noted that the state court there (without

elaboration) relied "to some degree" on an "inference of continuing possession" based on the fact

that the subpoenaed party was the "sole proprietor" of the business for which the missing records

were sought.  *Id.* at 970-71.  Given the standard of review, a factual foundation existed to affirm

the finding and the court did not inquire further.  Thus it is important to recognize what *Sigety* is

not:  A holding that a "suggestion" by a party that documents have been withheld is tantamount to

clear and convincing evidence that a federal court order has been violated.  *Sigety* is, accordingly, on point in none of its particulars.

The government also cites *Barnes v. District of Columbia*, 289 F.R.D. 1, 25 (D.D.C. 2012), for the proposition that the Court can make "reasonable deduction[s]" in deciding if other documents exists.  But the government appears confused, because *Barnes* involved a motion to compel additional discovery—not a motion to hold the subpoenaed party in contempt.  *Id.*  The government similarly misleads with its citation to *Securities Investor Protection Corp. v. Executive Securities Corp.*, 433 F. Supp. 470, 474 (S.D.N.Y. 1977), because the court in that case did not find the subpoenaed individual in contempt.  Instead, it was speaking ***prospectively*** about what would happen if the subpoenaed individual failed to obey the court's order directing him to comply with a subpoena.  There, the court recognized that the subpoenaed individual could testify "either that he does not have possession of the subpoenaed records and is not the custodian of such records or that he has another valid excuse for failing to produce them."  *Id.*  Put another way, *Executive Securities* is irrelevant here because, as noted, the government has not offered anything beyond conjecture and speculation to support a finding that Concord could have produced other records.

Finally, the government cites *United States v. Goldstein*, 105 F.2d 150, 152 (2d Cir. 1939) for the proposition that Concord's "patently meritless" arguments in opposition to the trial subpoenas and the "likely relevance of these records" provides another ground for finding contempt.  Mot. 14.  This is insulting—particularly because at least some of Concord's arguments won the day on the government's first two attempts to obtain a trial subpoena, which reveals the government's real thoughts about the merit of the Court's repeated denials of the subpoenas.  But more importantly, nothing about *Goldstein*—a nearly century-old, out-of-circuit case—is applicable, because the witness in that case testified on no fewer than three occasions that he had

the records in question before responding to a subpoena indicating that he did not have the records in his possession.  *Id.* at 151.  No such clear and convincing evidence of possession has ever been presented here, and as such, the government's speculation does not rise to the level of proof required to hold Concord in contempt.

### 3.    Concord does not owe an explanation for its production

The government next argues that "[t]he burden … should shift to Concord to explain or justify the non-production of records."  Mot. 14 (internal quotation marks omitted).  This has it exactly backwards.  The burden still remains on the government—because, as Concord has demonstrated above, it has not made the requisite showing by "clear and convincing evidence" that Concord has violated any Court order.  Instead, the government offers speculation and conjecture about what other documents it suspects might exist, without evidence tying any of that suspicion to Concord.  Absent such a showing, the burden never shifts to Concord to justify its subpoena response.  *Bilzerian*, 112 F. Supp. 2d at 16.

The 60 and 70-year-old cases the government cites confirm that it has put the cart before the horse.  In all three decisions, *McPhaul v. United States*, 364 U.S. 372 (1960); *United States v. Bryan*, 339 U.S. 323 (1950); and *United States v. Fleischman*, 339 U.S. 349 (1950), the statements quoted by the government arose in the context of a criminal contempt prosecution, where the witnesses had been subpoenaed to appear before the House Un-American Activities Committee and produce documents; appeared but refused to produce the documents; and were thus criminally charged with contempt of the House of Representatives.  *See McPhaul*, 364 U.S. at 375-76 (discussing defendant's refusal to produce records and assertion of his Fifth Amendment privilege); *Bryan*, 339 U.S. at 325-26 (recognizing that the defendant appeared before the Committee and refused to produce records she admitted to possessing); *Fleischman*, 339 U.S. at 359 (recognizing that the defendant's statement to the Committee "was, of course, a patent evasion

of the Committee's demands").  None of this aligns with what transpired in this case.  This is not a criminal contempt prosecution, no refusal to produce documents has occurred, and there is no proof of a deliberate attempt to evade an order of this Court regarding the production of any documents.

To the extent that the government tries to connect what it calls Concord's "'good faith effort to comply'" with the subpoena into grounds for contempt on the record it made, it has gone off the rails completely.  *See* Mot. 15 (quoting *In re Various Grand Jury Subpoenas*, 248 F. Supp. 3d 525, 527 (S.D.N.Y. 2017)).  There is nothing in this record to substantiate a lack of good faith, nor do any of the government's cited cases suggest that its non-showing would meet the standard for civil contempt.  Its principal case of choice—*Various Grand Jury Subpoenas*, addressed a "good faith" argument as part of a motion to purge contempt—not as a basis for a contempt citation in the first instance.  *Id.* at 526-27.  *Pigford v. Veneman*, 307 F. Supp. 2d 51 (D.D.C. 2004), did not even involve a subpoena request.  But in any event, it, too, involved a motion to vacate sanctions, not an effort to obtain a contempt citation in the first instance.  *Id.* at 54-56.  Finally, the government cites *Stewart v. O'Neill*, 225 F. Supp. 2d 6 (D.D.C. 2002), for the proposition that a contemnor need not have acted intentionally or in bad faith.  Mot. 15.  But this case, too, had something the government here manifestly does not—a factual record related to the alleged failure to comply with settlement terms that substantiated consideration of contempt in the first place.  *Id.* at 10-16.

The end does not justify the means in this context.  It is the government's burden to supply "clear and convincing evidence" supporting Concord's violation of the express terms of an order from this Court.  That evidence does not exist and there is no basis to substitute attorney assertions for what the record does not show.

## C.  A Concord Representative Cannot Come to the United States

A final word is needed on the government's demand, and the Court's apparent agreement, that Concord should do the impossible by "send[ing] an appropriate representative to [the] hearing on this matter who can address these issues."  Mot. 17.  As noted, this Court made it clear on the record that the subpoenas did not require Concord to produce any witnesses and nothing has changed since that pronouncement was made.  This Court also has noted that it cannot compel anyone from Concord to make an appearance and the law has not changed in that regard either. *See* Apr. 20, 2019 Hr'g Tr. at 58:9 (in context of discussion about the government's proposed resolution for showing sensitive discovery to Concord employees in the United States, the Court acknowledged "I can't force them to come").  In any event, this, quite simply, cannot be done in the timeframe the government seeks to impose, so it cannot form the basis of a contempt citation. *See SEC v. Ormont Drug & Chem. Co., Inc.*, 739 F.2d 654, 656 (D.C. Cir. 1984) (recognizing that "[a] contempt order should not issue if the court finds no willful disobedience but only an incapacity to comply").  Here, a Concord employee would need to obtain a visa and make travel arrangements in less than three days—an impossibility given waiting times for an interview for visitor visas from Russia. *See* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/wait-times.html, which indicates that the current appointment wait time for a visitor visa in Moscow is 300 calendar days.

Further, as noted above, if for some reason apart from this groundless motion some explanation is needed, Concord's counsel could provide it with appropriate safeguards from this Court. *See* Note 5, *supra*.

## IV.    CONCLUSION

For the reasons set forth above, the government's Motion should be denied.

Dated:   February 28, 2020

Respectfully submitted,

CONCORD MANAGEMENT AND
CONSULTING LLC

By Counsel

/s/ *Eric A. Dubelier*
Eric A. Dubelier (D.C. Bar No. 419412)
Katherine Seikaly (D.C. Bar No. 498641)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
edubelier@reedsmith.com
kseikaly@reedsmith.com