```
1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,        ) Criminal Action
                                      ) No. 18-CR-032
4                    Plaintiff,       )
                                      ) ORDER TO SHOW CAUSE
5    vs.                              )
                                      ) Washington, DC
6    Concord Management and           ) March 2, 2020
     Consulting, LLC,                 ) Time:  10:00 a.m.
7                                     )
                     Defendants.      )
8    _____

9            TRANSCRIPT OF ORDER TO SHOW CAUSE HEARING
                           HELD BEFORE
10          THE HONORABLE JUDGE DABNEY FRIEDRICH
                  UNITED STATES DISTRICT JUDGE
11   _____

12                     A P P E A R A N C E S

13   For Plaintiff:      Adam C. Jed
                         Luke Jones
14                       Peter Lallas
                         Heather Alpino
15                       U.S. ATTORNEY'S OFFICE FOR THE
                            DISTRICT OF COLUMBIA
16                       555 Fourth Street, NW
                         Washington, DC 20530
17                       (202) 252-1793
                         Email:  Adam.jed@usdoj.gov
18                       Email:  Luke.jones@usdoj.gov
                         Email:  Peter.Lallas@usdoj.gov
19                       Email:  Heather.alpino@usdoj.gov

20   For Defendant:      Eric A. Dubelier
                         REED SMITH LLP
21                       1301 K Street, NW, Suite 1000 - East Tower
                         Washington, DC 20005
22                       (202) 414-9291
                         Email:  Edubelier@reedsmith.com
23                       Katherine Joanne Seikaly
                         REED SMITH, LLP
24                       7900 Tysons One Place, Suite 500
                         McLean, VA 22102
25                       (202) 414-2919
                         Email: Kseikaly@reedsmith.com
```

2

```
1    Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                              Official Court Reporter
2                             United States Courthouse, Room 6523
                              333 Constitution Avenue, NW
3                             Washington, DC  20001
                              202-354-3267
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, we're in criminal
 2      action 18-032, the United States of America versus Concord
 3      Management and Consulting, LLC
 4              Counsel, please approach the podium, state your name
 5      for the record.
 6              MR. JONES:  Good morning, Your Honor.  Luke Jones for
 7      the United States, joined by Heather Alpino, Peter Lallas, and
 8      Adam Jed, who will be arguing for the government.
 9              THE COURT:  Good morning.
10              MR. DUBELIER:  Good morning, Your Honor.  Eric
11      Dubelier and Katherine Seikaly for Concord.
12              THE COURT:  Mr. Dubelier, if you could stay up at the
13      podium.
14              MR. DUBELIER:  May I get my notes?
15              THE COURT:  What's that?
16              MR. DUBELIER:  My notes.
17              THE COURT:  Yes.  Okay.
18              So, Mr. Dubelier, I've reviewed your filing, and so
19      far as I can tell, your filing does not indicate whether
20      Concord has in fact complied with the subpoena, nor does it
21      indicate what steps Concord took to comply with the subpoena.
22      I understand you think, based on my earlier ruling, that you
23      have no obligation to do anything more than what you've done.
24      I disagree with that, and I'll get to that in a minute.
25              But I'm wondering, as you stand here, is there any
```

 1    additional information you'll share with the Court on whether

 2    Concord has complied with the subpoena and, if so, what steps

 3    to do so?

 4              MR. DUBELIER:  Yes, Your Honor.  And our pleading

 5    indicates we're willing to do it ex parte.

 6              THE COURT:  I've asked for a response from a

 7    corporate representative.

 8              MR. DUBELIER:  No.

 9              THE COURT:  Nothing more you will add?

10              MR. DUBELIER:  Again, I'm willing to do it ex parte,

11    in camera.  Specifically, it causes me -- it creates a Sixth

12    Amendment problem, it creates a waiving attorney-client

13    privilege problem.  I'm willing to communicate the information

14    ex parte to the Court.

15              THE COURT:  The order to show cause was to Concord.

16              MR. DUBELIER:  I understand that.

17              THE COURT:  So Concord needs a representative to do

18    so, if you can't do so.

19              MR. DUBELIER:  Actually, I can do so ex parte,

20    in camera.

21              THE COURT:  Well, now, I'm looking for a response

22    from Concord on the record.  What authority do you have to

23    provide that ex parte?

24              MR. DUBELIER:  I'm willing to go on the record, and I

25    have authority to provide it.

1          THE COURT:  Provide -- you have authority to provide

2     what?

3          MR. DUBELIER:  An explanation.

4          THE COURT:  What authority do you have that justifies

5     doing so ex parte?

6          MR. DUBELIER:  Of course, I don't want to waive

7     attorney-client privilege and have the government privy to

8     that.  I don't want to make myself a witness against my own

9     client and have the government privy to that.

10          THE COURT:  All right.  So you're allowed, under Rule

11     43, to appear as a representative of the corporation for

12     purposes of these proceedings.  Corporate representative

13     doesn't have to be here.  But I don't think Rule 43 insulates

14     your client from answering orders of the Court.  Your client,

15     not you.  Your client has to respond to orders of this Court,

16     and I've ordered a response from your client.

17          MR. DUBELIER:  And I have a response that I can

18     communicate to you orally.

19          THE COURT:  All right.  I'm looking for a response on

20     the record.  I don't see why your client has to respond to my

21     order ex parte.

22          MR. DUBELIER:  I'm not sure I understand, Your Honor.

23          THE COURT:  I'm looking for a response from a

24     corporate representative, Concord itself.

25          MR. DUBELIER:  Right.  I'm not a corporate

1   representative, I think we all agree to that; I'm their lawyer.

2           THE COURT:  Understood.  But Concord needs to provide

3   a representative who can answer directly to the Court.

4           MR. DUBELIER:  And we've explained to you that that's

5   physically impossible.

6           THE COURT:  And that's impossible because you can't

7   get someone here or they're not willing to do so?

8           MR. DUBELIER:  They're willing to, because they've

9   already given me the explanations that I can communicate to

10  you.

11          THE COURT:  So if the government could expedite quick

12  passage to the United States to get a corporate representative

13  here, you have someone who could come here and answer my

14  questions?

15          MR. DUBELIER:  No, I haven't identified that person

16  yet.

17          THE COURT:  All right.  Well, you need to identify

18  that person promptly.  And I'm going to give you until

19  Wednesday to do so.

20          MR. DUBELIER:  Okay.

21          THE COURT:  All right.

22          MR. DUBELIER:  I mean --

23          THE COURT:  A company has a representative, has a

24  custodian of records or someone else who's familiar with

25  document-keeping of the company who should be able to answer

1    questions related to a Court order.

2             MR. DUBELIER:  I think you're making assumptions

3    based on the way public corporations operate in the United

4    States.  They're not valid assumptions, they're just not.

5             THE COURT:  You don't have custodians of records to

6    deal with records?

7             MR. DUBELIER:  Your Honor, we addressed this on the

8    discovery issue.  We addressed this.  We'd have to have not

9    only a name, but we would have to have free passage from the

10   government, that person could come in and come out without any

11   interference whatsoever.

12            THE COURT:  Right.  Right now I'm just asking for the

13   name.  We'll get to the passage in a minute.  But you can't

14   even, as you stand here now, give me the name of a

15   representative who could come here, if the government could

16   facilitate that, to answer my questions with regard to the

17   subpoena?

18            MR. DUBELIER:  No, I can't.

19            THE COURT:  All right.  To be clear about my previous

20   order, my order did not envision that you yourself had to go

21   roll up your sleeves and conduct the search of Concord's

22   records.  But I did envision that you would communicate the

23   subpoena to your client and help your client understand what

24   its obligations are in response to that subpoena.

25            MR. DUBELIER:  I did that.

1        THE COURT:  And be in a position to communicate back

2     to the Court your client's compliance.

3        MR. DUBELIER:  You never said that, or anything

4     remotely close to that.

5        THE COURT:  To the extent I didn't, I want to make

6     perfectly clear here, I don't think your obligation ends with

7     just the transmission of the subpoena, hands off, nothing more.

8     All right?  I think your duty to the Court, as an officer of

9     the Court, is to communicate Concord's obligations to it and

10    then to communicate back to the Court what Concord has done.

11    So to the extent that wasn't clear, I'm going to give you

12    another opportunity to do so.

13        MR. DUBELIER:  Your Honor, again, there's never been

14    an order that we have to communicate back what we did.  Never

15    been a order like that.  That doesn't come along with the

16    obligation of responding to a subpoena, it just doesn't.

17        THE COURT:  Again, a representative of Concord needs

18    to be able to do that, and if a representative can't do that,

19    then you need to do that.

20        MR. DUBELIER:  I just told you, I'm willing to do it.

21    Why don't we at least try that?  Why can't we try me

22    communicating it to you and see if the Court is satisfied?

23        THE COURT:  I'll hear from the government, but --

24        MR. DUBELIER:  Your Honor, we're not going to be able

25    to get anybody here.  We're just --

1          THE COURT:  At a minimum, by Wednesday I think you

2     can get an affidavit from a corporate representative, a sworn

3     affidavit.  That's what I'm going to seek, by Wednesday, and

4     we'll take up more at that point, whether it's necessary to do

5     so.

6          MR. DUBELIER:  But if -- you want an affidavit

7     explaining what they did to collect and why they don't have the

8     other documents that the government is asking for?

9          THE COURT:  Yes.

10         MR. DUBELIER:  And you're ordering me to --

11         THE COURT:  And to be clear, have they even responded

12    to the subpoena?  You haven't answered that.

13         MR. DUBELIER:  Documents were produced.

14         THE COURT:  All right.  So they have complied with

15    the subpoena?

16         MR. DUBELIER:  No, they complied with the -- Your

17    Honor, I'm not going to say any more in public about this, I'm

18    just not.  I'm going to get in a position where I'm

19    communicating to you information that has been communicated to

20    me by a client, and then they're going to stand up and say I've

21    waived attorney-client privilege.

22         THE COURT:  Your understanding is that they have

23    complied because they have produced some small portion of those

24    documents?

25         MR. DUBELIER:  They either -- they produced what they

1    had, and what they didn't have they didn't produce.  So, yes,

2    it's our position they have complied with the subpoena.

3              THE COURT:  All right.

4              MR. DUBELIER:  They don't have it.

5              THE COURT:  All right.

6              MR. DUBELIER:  And I can provide more context to that

7    to you, if you want to hear it.  If you don't want to hear it,

8    there's nothing I can do.

9              THE COURT:  Okay.  All right.  Thank you.

10             Mr. Jed?

11             MR. JED:  Good morning, Judge Friedrich.

12             THE COURT:  Good morning.

13             MR. JED:  I would be happy to address the points you

14   were just discussing with my friend, Mr. Dubelier, but I don't

15   know if the Court had any questions --

16             THE COURT:  Well, let me ask you this:  If Concord

17   were to identify a representative, could the government help

18   facilitate expedited passage to the United States?

19             MR. JED:  We certainly wanted a representative to

20   come here, obviously; we mentioned that in our filing.  And we

21   would be happy to work with Concord and the State Department to

22   facilitate it.  I don't know that I've really heard Concord say

23   that they have someone they're willing to send.

24             THE COURT:  They haven't said that.  But if they get

25   there, that's something --

1          MR. JED:  We would be happy to work with them.

2     Obviously, as a interim matter we need to know who the person

3     is and then, of course, if you're dealing with visa issues or

4     other security issues, you know, just identifying who the

5     person is then allows us to be able to have the necessary

6     communications with law enforcement partners and with the State

7     Department.

8          The one flag that I would just add -- and isn't a

9     reason that we won't do it, we're happy to do this, but I do

10    just want to make sure the Court is aware of this, is my

11    understanding is that when there was original discussion of a

12    protective order in connection with extensive discovery, it

13    ended up going over to Russia.

14          There was some discussion of having Concord employees

15    or officers come to the United States to review the discovery,

16    and that for a number of weeks various components of the

17    government were working with defense counsel as defense counsel

18    submitted various asks, just sort of the practicalities of how

19    some of this would work.  I don't know if they actually got to

20    the point of visas.  First it was just where and how the

21    information would be reviewed.

22          My understanding is, after having worked on that for

23    weeks, defense counsel came into court and just pulled the rug

24    out from under and suddenly said, My client has decided that

25    nobody is going to come.

1          So we're certainly happy to work with defense counsel

2     if they identify someone, and to work with the State

3     Department, but there's a little bit of a situation of twice

4     bitten, once shy.  We just want to make sure that we're not

5     going to have a repeat of what previously occurred.

6          THE COURT:  All right.  Understood.

7          Mr. Jed, what's your position on Mr. Dubelier's offer

8     to provide, ex parte, an explanation as to what Concord has

9     done to comply with the subpoena?

10          MR. JED:  So, you know, obviously, any information is

11    better than no information, but I do have a couple of concerns

12    with it, just to raise it for the Court.  I mean, as an initial

13    matter, just to be clear, it's Concord who has been ordered to

14    comply with the subpoena, not Mr. Dubelier.  So ultimately the

15    question is, What information does Concord have?  How can

16    Concord get that information to the Court and, ordinarily, to

17    the government?  And why is it that there's some reason that

18    Concord's information would need to be submitted ex parte?

19          So Mr. Dubelier, for example, stands up here and

20    makes passing references to attorney-client privilege.  Perhaps

21    if Mr. Dubelier had learned something in the course of the

22    representation that might prevent him from making

23    representations to the Court, or might require him to make

24    those representations ex parte, but certainly Concord can make

25    representations to the Court.  And all this time, in the

1    process of explaining how somebody complied with a court order

2    where an attorney was involved in compliance, the client

3    sometimes has to say, Here's what happened and here's what I

4    did with my lawyer.

5            So to be perfectly honest, I'm just kind of

6    scratching my head to understand the privilege issue.  I'm

7    similarly scratching my head to understand the Sixth Amendment

8    issue.  I know Mr. Dubelier, when originally moving to quash

9    the subpoena, made the Sixth Amendment argument, which seemed

10   to reduce to the idea that if he passed an order on to his

11   client that his client didn't want to have to comply with, that

12   that somehow created a conflict between Mr.  Dubelier and his

13   client.

14           Now, to be honest, I'm struggling even more to

15   understand what his argument is.  He cited two cases in his

16   brief to support the idea that there's a Sixth Amendment

17   problem here.  Both of them concern what were essentially local

18   rules governing whether a grand jury subpoena could be issued

19   to a lawyer.  I should actually point out one of those

20   decisions he cited was vacated en banc.  But both of them just

21   concerned whether you can subpoena a lawyer to go into a grand

22   jury and testify against their client.

23           So, you know, look, obviously I realize when you get

24   into these ex parte situations it's a little bit tricky,

25   because maybe it's hard even to explain why it needs to be

1    ex parte without itself going ex parte.  But, you know, I

2    recognize now and again the government needs to make ex parte

3    submissions, as occasionally happens with law enforcement-

4    sensitive information or classified information.

5            You know, I don't want to stand here and say ex parte

6    information is never permissible, but it is a pretty big deal.

7    Normally when ex parte information is submitted to a Court,

8    they're doing it because there's a kind of a well-trodden path

9    and established set of rules governing why it's appropriate to

10   do so in a particular case.  And I haven't heard even really a

11   hint that I can grasp onto for why that would be the case here.

12           One just, sort of, further point in ex parte

13   information is I notice that when you were asking Mr. Dubelier

14   about whether Concord would send a representative to the

15   United States, he seemed to indicate, well, of course, someone,

16   or -- or, he seemed to suggest maybe someone could come and

17   communicate the same information to the Court that whoever in

18   Russia has already communicated to Mr. Dubelier, which in turn

19   he would communicate to the Court ex parte.

20           So I guess what I'm wondering, does that mean that if

21   Concord sent a representative, that representative would be

22   here making some kind of an ex parte submission?  Or is there

23   some reason that because it's been transmitted to Mr. Dubelier

24   for the purposes of passing it on to the Court, that that's

25   what gives rise to those privilege issues?

1          I should point out that there is pretty clear case

2     law that if you transmit something to your lawyer for the

3     purposes of passing it along to the Court, that is not

4     privileged, and/or it waives privilege, depending on the

5     precise details.

6          So, again, I apologize, I wish I could give a more

7     granular, concrete answer, but with the very little information

8     that I have, I just don't see how an ex parte presentation

9     would be appropriate.  But as I said, you know, obviously some

10    information is better than no information.

11         If I could just briefly address the question of sworn

12    declarations, if the Court would allow?

13         THE COURT:  Sure.

14         MR. JED:  Again, obviously, more information is

15    better than less information.  And so in that sense I suppose a

16    sworn declaration would be a good first step.

17         I do have three particular concerns that I just sort

18    of wanted to make sure the Court is aware of.  I mean, first,

19    just as an initial matter, as the Court well knows, something

20    like a sworn affidavit or a sworn declaration, even in the best

21    of circumstances, is no substitute for having a live witness.

22    Obviously, when the witness is on the stand they sometimes take

23    something much more seriously.  They're sitting there and

24    they're making representations to the Court.  And, importantly,

25    questions can be asked of them.

1          I mean, I think even a few of the cases that we cited

2     that did involve declarations, what you ended up with, the

3     Court saying, Okay, we have a sworn declaration that makes some

4     high level assumptions, but just isn't providing enough of the

5     granular detail.

6          THE COURT:  And to be clear, I don't see that as the

7     end of the inquiry.  It at least makes, it seems to me, an

8     appropriate first step.

9          MR. JED:  Of course, I understand that.  I just

10    wanted to flag that.

11         I should say, second -- I mean, you know, not to make

12    light of this, but we do have a number of defendants who are

13    charged with essentially conspiring to create various

14    fraudulent materials to deceive the U.S. government.  So,

15    obviously, gives us a little bit of pause when the potential

16    solution is, well, they're just going to sort of write

17    something down and submit it to the U.S. government.

18         But the third concern that I have is just a, sort of,

19    further case specific one, which is I think that the defense

20    has raised a number of arguments here about whether the Court

21    actually has jurisdiction over the defendant, whether that

22    might be different when someone is in Russia than here.

23         So, for example, in the defendant's motion to quash

24    the trial subpoenas, I was not entirely clear on their

25    jurisdictional argument, but some of the personal jurisdiction

1   argument seemed to revolve around the idea that the records and

2   information were in Russia, rather than in the United States,

3   and the Court doesn't have jurisdiction.  They've made some

4   incredibly aggressive extraterritoriality arguments.  I mean,

5   essentially trying to claim that they're impermissibly

6   extraterritorial, even where, basically, the text of the

7   statute would apply to the particular conduct.

8           And so for all of those reasons I do have additional

9   pause that somebody sitting in Russia, even if they're told,

10  look, a U.S. court takes this very seriously and if you sign

11  something that is false or misleading you are potentially

12  committing a crime, that, nonetheless, they may have some

13  doubts about whether the Court actually has authority over

14  them, particularly when they're back in Russia.

15          So, of course, Your Honor, a declaration and

16  affidavit, it's information, more information is better than

17  less information.  But I do just want to share with the Court

18  some of our concerns about proceeding in that fashion.

19          THE COURT:  All right.  Thank you.

20          MR. JED:  Thank you, Your Honor.

21          THE COURT:  Before you sit down, you have concerns

22  about proceeding in that fashion; what would your

23  recommendation be?

24          MR. JED:  Well, I mean, I think we would ultimately

25  like an individual representative, but at this point our view

1    is that Concord is in contempt, that we've submitted a variety

2    of information which all points in the same direction, that

3    Concord has not complied with this trial subpoena.

4            And again, to be clear, this is not a trial subpoena

5    to Mr. Dubelier, it's a trial subpoena to Concord.  There is

6    various information to suggest that they have these categories

7    of records.  We've seen some of these records obtained through

8    other means, as the Court is aware.  They're still not coming

9    in and, really, even asserting that they've complied with the

10   subpoena.

11           And so I think at this point what we would ask for is

12   the, kind of, standard remedy in this situation, which is to

13   enter a daily fine that is meant to essentially coerce Concord.

14   I mean, Concord has the key to their own jail cell.  Right now

15   they are not complying with the Court order, so far as all the

16   evidence can indicate.  We think they should be paying a daily

17   fine and either, in fact, comply with the Court order or

18   ultimately be able to prove that they have complied with the

19   Court order.

20           THE COURT:  I agree with you, I think there's a

21   strong likelihood that they failed to comply with the subpoena.

22   But given the confusion around my last order, I feel like I

23   should give Concord one last chance, and give them until

24   Wednesday to do more than they've done.

25           MR. JED:  I do understand that, Your Honor.  I also

1    just want to raise one additional flag.  I don't know if

2    there's a particular remedy that we're seeking here, but just

3    to kind of bring this to the Court's attention.  Obviously, as

4    this episode and I think a number of other episodes show, we

5    have some concern about whether Concord is really participating

6    in this case.

7          At times it seems like they have hired Mr. Dubelier

8    as an attorney to come in here and litigate, but they -- I

9    mean, as Mr. Dubelier pointed out, he's not their

10   representative.  It seems like they're not complying with this

11   trial subpoena, as I think is supposed to be argued either on

12   Wednesday or Thursday.  We've basically gotten a response where

13   they kind of refused to explain why any of their purported

14   exhibits are admissible.

15         I think we're starting to have some concerns about

16   whether Concord is really participating in this case.  And, I

17   mean, you know, we have a trail date coming up very quickly, we

18   obviously have a motions date this week.  This gives us

19   concerns about, kind of, how this case is moving forward, and

20   we just wanted to make sure that the Court is aware of those.

21         And, you know, certainly to the extent that we end up

22   in a situation where we're not going to be able to proceed to

23   trial as scheduled, obviously I understand that some work has

24   already been done to try to assemble a jury panel and we

25   certainly don't want to be in a position where we're pulling

1    the rug out from under things, kind of right before trial.  So

2    we wanted to bring that to the Court's attention and either --

3    maybe it would be prudent at this point to start thinking about

4    delaying the trial.  We just wanted to make sure that the Court

5    is aware of that.

6             THE COURT:  I'm not quite sure what you're saying.

7             MR. JED:  Your Honor, I think we're saying we

8    envision a possible situation where it would not be either

9    possible or prudent to adhere to the current trial date.

10            THE COURT:  What would change with more time?

11            MR. JED:  Potentially with more time Concord would

12   essentially decide whether they're really participating in this

13   case, with either --

14            THE COURT:  Concord needs to do that now.

15            MR. JED:  We certainly agree with that, Your Honor.

16   We just wanted to make sure the Court is aware that we have

17   real concerns.  This is, sort of, one of many episodes where in

18   some sense it seems like Concord isn't really here, even though

19   they claim to be here.  And we wanted to make sure the Court is

20   aware of that because we do have a trial date coming up

21   quickly.

22            THE COURT:  Thank you.

23            MR. JED:  Thank you, Your Honor.

24            THE COURT:  Mr. Dubelier?

25            MR. DUBELIER:  Your Honor, Mr. Jed's a young guy and

1    he's been a prosecutor about a year, so I'm not going to go

2    after him.  But he got up here and said things that are

3    absolutely outrageous.  He has no basis whatsoever to allege

4    that Concord is not participating in this process.  That's

5    just -- it's bogus, it's a ridiculous argument.

6              THE COURT:  Well, Concord will have another chance,

7    by Wednesday, to participate on this motion.

8              MR. DUBELIER:  All right.  Let me explain, Your

9    Honor.  It's already nighttime Monday in Russia.  So basically

10   what you're doing is you're giving me a day, 24 hours, to get

11   an affidavit from a Russian national and get that here.  That's

12   completely unfair.  It's as unfair as you ordering us to

13   respond to this pleading in the 24-hour period of time.

14             And let me add, Your Honor.  There is nothing that

15   would be in there that I couldn't communicate to you right now.

16             THE COURT:  But I want a response from Concord, not

17   from you.  From Concord.  A representative of Concord.  And if

18   you're not wearing that hat, I want one from a representative

19   from Concord.  I will decide, once the affidavit comes, whether

20   I need that representative to appear here in court.  But you

21   cannot fill the role that's needed here, clearly, because you

22   say you don't have the authority to so, which I understand.

23             I'm not faulting you, Mr. Dubelier.  But Concord

24   needs to understand, when you set foot in this courtroom before

25   Judge Harvey and Judge Harvey said you're prepared to follow

1    all court orders and you said yes, there's now a court order

2    for Concord to respond and comply with the subpoena.

3              MR. DUBELIER:  Your Honor, they have complied with

4    the subpoena.  So you keep saying you're going to issue an

5    order to comply with the subpoena.  They've complied with it.

6    What they had they produced; they don't have the other

7    documents.  They just don't have them.

8              THE COURT:  I want an explanation and I want it from

9    Concord.

10             MR. DUBELIER:  I don't know what to tell you, Your

11   Honor.

12             THE COURT:  All right.  I will --

13             MR. DUBELIER:  You know, when we went through the

14   criminal process of contempt, where we were the ones bringing

15   the motion, you ordered them to produce a testifying person

16   from the Department of Justice who could testify as to why the

17   redactions were made in the Mueller report.  And they defied

18   you.  We came to court that day and they didn't have anybody

19   here.  Kravis just got up and started saying stuff that he had

20   no firsthand knowledge of and didn't know what he was talking

21   about.  And you gave them, through that whole process, the

22   normal amount of time to file pleadings, to respond.  And now

23   with us, it's flipped here, and everything becomes a fire

24   drill.

25             And there's an assumption in the tone you use with me

1     as well as the things you say to me that I'm doing something

2     sneaky or wrong --

3               THE COURT:  No, I'm not --

4               MR. DUBELIER:  -- and I'm not.

5               THE COURT:  I'm not accusing you, Mr. Dubelier.  This

6     has been a live issue since December 3rd, when the government

7     filed the motion for early trial subpoena.

8               MR. DUBELIER:  It took them three rounds to get the

9     motion right that you would grant, Your Honor.

10              THE COURT:  But the point is, Concord is aware for

11    months now, three months, that these documents are sought.  I

12    get that I didn't rule on the final piece of it until early

13    February, but this is not an issue that's just popped up now.

14    We're a month away from trial and there are documents that the

15    government seeks to admit at trial, and these are documents

16    that -- I believe there's a strong likelihood that Concord has

17    these documents.

18              MR. DUBELIER:  Your Honor, what are you basing that

19    on?  What do you base that on?  You don't know anything about

20    the company.  You don't know anything about the document

21    process.  What do you base it on?

22              THE COURT:  I find it implausible that Concord cannot

23    indicate the IP address for a four-year period, from 2014 to

24    2018.

25              MR. DUBELIER:  Then we're wasting our time.  And the

1   reason we're wasting our time is you're going to ask for an

2   affidavit and you're going to look at the affidavit and say

3   this is implausible and we're going to be right where we are

4   today.  We will have gained nothing.

5           THE COURT:  Well, try me.  Try me.

6           MR. DUBELIER:  You've already reached a decision, as

7   you had the last time -- the last five or six times we've come

8   here to argue anything before the Court, we get up, we do some

9   argument and you read a pre-prepared order that rules against

10  us.  So you've already reached a conclusion.

11          THE COURT:  Mr. Dubelier --

12          MR. DUBELIER:  Excuse me.

13          THE COURT:  No, no, excuse me.  No court is required

14  to hold a hearing on every motion, and there are times when

15  it's clear from the briefs what I should rule.

16          MR. DUBELIER:  We shouldn't come here.  We just come

17  here and we sit here and you read a predetermined order after

18  you ask us a couple questions.

19          THE COURT:  Mr. Dubelier, I'm not going to argue with

20  you about how I'm running my courtroom.

21          MR. DUBELIER:  I'm not going to argue either.  It

22  seems to me that there's two rules here; there's the rules for

23  them and there's the rules for us.  And that's all I can say.

24  That's the way I feel, in terms of the way you're dealing with

25  us.

1          THE COURT:  All right.  I will give you until

2    Wednesday at 5 p.m. to file an affidavit.  All right?  I'll

3    give you extra time, given the time change.  But if Concord has

4    done the search that it sounds like it has, this should be

5    documented.  This should not be a heavy lift for someone just

6    to put onto paper the steps that Concord has taken.

7          MR. DUBELIER:  Which you've already determined are

8    insufficient, because you say the documents subpoenaed have to

9    exist, like you have some basis to know that.

10         THE COURT:  When you asked me why I think there's a

11   strong likelihood that Concord has failed to comply, I gave you

12   an example with respect to the IP address.  It's hard, sitting

13   here, to conclude that they don't have documents in their

14   possession or in their control that might reflect an IP address

15   for a four-year period.

16         MR. DUBELIER:  I have two letters here that I could

17   give the Court ex parte, in camera, that would explain why they

18   don't have the IP address.

19         THE COURT:  I want the explanation from the

20   representative from Concord, and I'm going to give you until

21   5 p.m. so that you can reduce that into a sworn affidavit that

22   someone there can sign and you can provide it to the Court.

23         MR. DUBELIER:  Understood.

24         THE COURT:  All right.  To be clear -- Mr. Jed, do

25   you want to add anything?

1          MR. JED:  I was going to ask a brief scheduling

2     question, but I didn't mean to interrupt.

3          THE COURT:  No, go ahead.

4          MR. JED:  Your Honor, I was just going to ask, since

5     it sounds like maybe Mr. Dubelier will be engaged for the next

6     couple of days, through close of business on Wednesday, getting

7     this declaration, I think we have a motions hearing scheduled

8     for during the day on Wednesday.  And I was going to ask him,

9     we're prepared to argue it on Wednesday, but would Mr. Dubelier

10    prefer that it get pushed back by a couple of days, or --

11         THE COURT:  Mr. Dubelier, would you like to change

12    that to Thursday?

13         MR. DUBELIER:  No.  I can walk and chew gum at the

14    same time.

15         THE COURT:  Okay.

16         MR. JED:  I'm sorry.  Could I have just a moment,

17    Your Honor?

18         (Pause.)

19         MR. JED:  Your Honor, given that we're perhaps

20    expecting a declaration to come in Wednesday evening, we're

21    wondering whether the Court would want to schedule a further

22    hearing on the contempt issue on Thursday or Friday, or as

23    appropriate?

24         THE COURT:  I'll let you all confer and propose some

25    times.  I don't want to try to do that right now.  But you can

1    work with the courtroom deputy to do that.

2            MR. DUBELIER:  All right.  Thank you.

3            MR. JED:  Okay.

4            THE COURT:  All right.  Based on the record before me

5    now, I do think there's a strong likelihood that Concord has

6    failed to comply with the subpoena.  Although Concord has

7    produced documents related to its corporate structure, it has

8    produced no records that reflect Concord's IP address, any

9    calendar records, communications or financial records called

10   for by the subpoena.

11           The government has proposed by exhibits and referred

12   to throughout this litigation to numerous documents that appear

13   to fall within the categories requested by the subpoena.  The

14   government's proposed exhibits are the subject of a motion in

15   limine, which the Court will address on March 4th.

16           Based on my review of the briefs on this motion, I

17   believe that a substantial percentage of the documents that the

18   government seeks to introduce as exhibits meet the standard for

19   authenticity.  As I previously determined in connection with

20   the motion for Rule 17(c) subpoena, there is a strong

21   likelihood that Concord possesses these documents.

22           I thus order Concord, to the extent it has not done

23   so already, to comply with the subpoena.  If it has not already

24   done so, it shall do so by March 4th.  If it has already

25   complied with the subpoena, it shall provide a detailed

1    description of its good-faith substantial compliance efforts to

2    comply with the subpoena.

3              To be clear, good faith substantial compliance

4    includes Concord taking all steps within its power to comply

5    with the subpoena and this Court's order to comply.  And

6    Concord's description must describe these efforts, explain the

7    steps Concord has taken to retrieve the requested documents and

8    explain why it has failed to produce any such documents.

9              This description shall be accompanied by a sworn

10   affidavit from a corporate representative of Concord, a

11   custodian of records or other employee that's familiar with

12   Concord's recordkeeping system and the searches that Concord

13   conducted to comply with the subpoena.

14             The affidavit shall include the employee's name,

15   position, duties, as well as the employee's knowledge of

16   Concord's recordkeeping systems, and it shall set forth the

17   specific steps Concord took to search for the requested records

18   and an explanation as to why the requested records are not in

19   Concord's custody or control.

20             Concord shall file the subscription and accompanying

21   affidavit on or before March 4th at 5 p.m.

22             All right.  See you back on Wednesday.

23                          *   *   *

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3      I, JANICE DICKMAN, do hereby certify that the above and

4  foregoing constitutes a true and accurate transcript of my

5  stenographic notes and is a full, true and complete transcript

6  of the proceedings to the best of my ability.

7                      Dated this 2nd day of March 2020

8

9

10                    _____

11                    Janice E. Dickman, CRR, CMR, CCR
                      Official Court Reporter
12                    Room 6523
                      333 Constitution Avenue, N.W.
13                    Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25