

78 А Б 8242182

**В ОКРУЖНОЙ СУД США
ПО ОКРУГУ КОЛУМБИЯ**

| | |
|---|---|
| СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ | |
| против | УГОЛОВНОЕ ДЕЛО НОМЕР: 1:18-cr-00032-2-DLF |
| ООО «КОНКОРД МЕНЕДЖМЕНТ И КОНСАЛТИНГ» | |
| Ответчик. | |

### ЗАЯВЛЕНИЕ ЕВГЕНИЯ ВИКТОРОВИЧА ПРИГОЖИНА

Я, Евгений Викторович Пригожин, 01 июня 1961 года рождения, место рождения: гор. Ленинград, гражданство: Российская Федерация, пол: мужской, паспорт серии 40 07 № 136936 выдан 28 о/м Центрального района Санкт-Петербурга 29 января 2007 года, зарегистрированный по адресу: Санкт-Петербург, ул. Пушкинская, д. 4, кв. 35 заявляю следующее:

1. Я являюсь гражданином Российской Федерации и был в Соединенных Штатах Америки 1 раз, ориентировочно в период с 1992 по 1993 год.

2. В настоящее время я являюсь Генеральным директором ООО «Конкорд Менеджмент и Консалтинг», ИНН 7825100880 ОГРН 1037843002515 (далее «Конкорд») и занимаю эту должность с 1 марта 2018 года. В период с 1 января 2014 года до 1 февраля 2018 года я не был ни Генеральным директором компании «Конкорд», ни ее должностным лицом или сотрудником. В настоящее время я также являюсь единственным участником «Конкорд» и приобрел долю в «Конкорд» 28 февраля 2017 года. В период с 1 января 2014 года до 28 февраля 2017 года я не был участником «Конкорд».

3. Мне разъяснено юридическим консультантом «Конкорд», что дача ложных показаний в рамках судебного разбирательства является преступлением в США, и я подтверждаю, что насколько мне известно, заявления, содержащиеся в настоящем документе, являются правдивыми.

4. Я осведомлен о практике документооборота в «Конкорд», поскольку, будучи Генеральным директором, я лично несу ответственность за текущую деятельность «Конкорд», включая практику документооборота общества. Я также осведомлен о всех действиях «Конкорд» с целью выполнить требования судебного запроса и решения окружного суда США по округу Колумбия от 2 марта 2020 года, поскольку лично участвовал в обсуждении по этим двум вопросам.

5. По состоянию на 04 марта 2020 года в «Конкорд» работает 40 сотрудников, в основном занимающиеся кейтеринговой деятельностью, за исключением ряда сотрудников, занятых административно-управленческими функциям, таких как: Главный бухгалтер, Юрист, Секретарь, Аудитор и одно должностное лицо – Генеральный директор. Компания значительно сократила штат сотрудников за последние несколько лет в связи с изменениями на рынке, санкциями Министерства финансов США и продажей

части ключевых активов. В «Конкорд» отсутствует сотрудник с должностью «хранитель документов», а лицом, в чьи должностные обязанности входит хранение бумажной документации или электронных документов «Конкорд» является Генеральный директор. В «Конкорд» отсутствует Отдел или сотрудник, специализирующийся на информационных технологиях (далее «ИТ-отдел/специалист»); вместо этого привлекаются сторонние поставщики ИТ-услуг по мере необходимости.

6. В соответствии с законодательством РФ «Конкорд» является обществом с ограниченной ответственностью, и ни российское законодательство, ни российские регуляторные органы, ни какие-либо бывшие или нынешние кредиторы «Конкорд» не устанавливают и не устанавливали когда-либо какие-либо правила в отношении сроков хранения корреспонденции «Конкорд» (будь то в электронной или иной форме), записей об операциях и платежах, расписания или аналогичных документов. Практики документооборота «Конкорд» должны пониматься в контексте российских, а не американских, практик и фактический порядок документооборота «Конкорд» осуществляется с учетом того, что «Конкорд» стал жертвой нескольких кибератак и имеет основания полагать возможность новых кибератак со стороны правительства США и третьих лиц.

7. С 17 апреля 2014 года в «Конкорд» установлен порядок хранения электронных почтовых сообщений и записей сроком не более трех месяцев, и этот порядок заключается в автоматическом уничтожении электронных писем как на уровне почтового сервера, так и на уровне рабочих станций. Копия приказа, установившего настоящий порядок хранения электронной корреспонденции прилагается в Приложении 1, вместе с переводом на английский язык. Согласно распространенной практике многих российских компаний, «Конкорд» как правило не хранит электронные копии документов о своей хозяйственной деятельности, в связи с чем договоры, корреспонденция (за исключением электронных писем, которые уничтожаются), корпоративные и аналогичные документы хранятся в бумажных папках локально в офисе «Конкорд». Что касается документов о платежах, то «Конкорд» использует программное обеспечение 1С (известную также под английским названием «1S»), популярное российское готовое программное решение учета деятельности компании, в отношении платежей, а также бухгалтерской и налоговой отчетности. Компания «Конкорд» не имеет доступ к мобильным телефонам своих сотрудников и не ведет учет звонков, сообщений с мобильных телефонов своих сотрудников или иного их использования. «Конкорд» не использует какую-либо электронную резервную систему, в том числе облачные системы, и не имеет сторонних дубликатов бумажных документов.

8. Компания «Конкорд» считает, что документы, предоставленные в ответ на категории 1 (один) и 2 (два) судебного запроса от 24 января 2020 года, полностью соответствуют тем документам, которыми могло бы располагать любое российское общество с ограниченной ответственностью. Для ответа на категорию 3 (три) судебного запроса от 24 января 2020 года, я ознакомился с договорами «Конкорд» с поставщиками интернет-услуг, с которыми у «Конкорд» были договорные отношения в период с 1 января 2014 года по 1 февраля 2018 года. Эти договоры не содержат указания конкретного IP-адреса, предоставленного компании «Конкорд» в тот период, и никаких иных записей не хранилось, ввиду того, что наличие конкретного IP-адреса никогда не имело значения для коммерческой деятельности «Конкорд». С учетом изложенного для установления IP-адресов, которые могли бы использоваться «Конкорд» мне пришлось отправить запросы компаниям, поставлявшим нам интернет-услуги в соответствующий период, как указано в абзаце 10 ниже. Учитывая практики документооборота, описанные в абзаце 7 выше, произвести поиск по некоторым категориям запрашиваемых документов не



78 А Б 8242185

представлялось возможным ввиду их отсутствия. В том, что касается категории 1 (один) судебного запроса от 10 февраля 2020 года, компания «Конкорд» никогда не вела записи моего расписания в течение периода до моего назначения Генеральным директором, а я стал Генеральным директором после 1 февраля 2018 года, в связи с чем в документах «Конкорд» не удалось произвести какой-либо поиск. У «Конкорд» отсутствовал и отсутствует доступ к телефону предыдущего Генерального директора, с которого, по заявлениям стороны обвинения, были получены фотографии расписаний и других документов, таким образом, «Конкорд» не может подтвердить источник таких фотографий. В отношении категории 2 (два) судебного запроса от 10 февраля 2020 года, я поручил Главному бухгалтеру «Конкорд» произвести поиск как бумажных, так и электронных записей о каких-либо платежах в пользу ООО «Агентство интернет-исследований», ООО «Медиасинтез», ООО «Главсеть», ООО «Миксинфо», ООО «Азимут» и ООО «Новинфо» за период с 1 января 2014 по 1 февраля 2018 года, а также платежах в пользу третьих лиц, в которых упоминаются такие компании. Каких-либо записей обнаружено не было. Я также поручил Главному бухгалтеру «Конкорд» произвести дополнительный поиск в системе 1С путем ввода различных вариантов написания, учитывающих опечатки. Дополнительный поиск не дал результатов. В том, что касается категории 3 (три) первого судебного запроса от 10 февраля 2020 года, я подтверждаю, что в соответствии с внутренней политикой «Конкорд», упомянутой выше в абзаце 7, на почтовых серверах «Конкорд» и иных электронных устройствах нет электронных писем за период с 1 января 2014 года по 1 февраля 2018 года, в связи с чем произвести поиск данных электронной переписки не представлялось возможным.

9. Я ознакомился с переводом на русский язык судебных запросов от 24 января 2020 года и от 10 февраля 2020 года и могу утверждать, что компания «Конкорд» выполнила оба запроса полностью, предоставив все документы, находившиеся у нее на хранении, под ее контролем или в ее собственности, которые соответствуют категориям судебных запросов.

10. Никто из должностных лиц или сотрудников компании «Конкорд» не владеет информацией, запрашиваемой в категории 3(три) судебного запроса от 24 января 2020 года. Для выполнения требований категории три судебного запроса от 24 января 2020 года, я нашел в документах «Конкорд» договоры «Конкорд» с АО «Северн-Телеком» и ООО «Юнител», двумя поставщиками интернет-услуг, с которыми у «Конкорд» были договорные отношения в период с 1 января 2014 года по 1 февраля 2018 года. В связи с тем, что в данных договорах не указаны адреса интернет-протоколов («IP»), которые компания «Конкорд» использовала в тот период, 7 января 2020 г. я направил письма от имени «Конкорд» в адрес АО «Северн-Телеком» и ООО «Юнител» с копиями этих договоров и запросами на предоставление информации о том, какие IP-адреса были предоставлены «Конкорд» или использовались ею в тот период. Копии этих писем и их переводы на английский язык, а также договоры приложены в Приложениях 2 и 3. АО «Северн-Телеком» ответило в письменной форме, что запрашиваемая информация не может быть предоставлена. Копия письма АО «Северн-Телеком» и его перевод на английский язык приложены в Приложении 2. ООО «Юнител» ответило, что информация в отношении IP-адресов не может быть предоставлена. Копия письма ООО «Юнител» и его перевод на английский язык приложены в Приложении 3. Соответственно у

«Конкорд» нет никаких документов, которые можно было бы предоставить в ответ на категорию 3 (три) судебного запроса от 24 января 2020 года.

11. Компания «Конкорд» не предоставила документы в ответ на категорию 1 (один) судебного запроса от 10 февраля 2020 года, так как у «Конкорд» нет каких-либо соответствующих документов. Как указано выше, в период с 1 января 2014 года по 1 февраля 2018 года. я не был ни генеральным директором, ни должностным лицом, ни сотрудником «Конкорд». Я стал участником 28 февраля 2017 года. Соответственно в распоряжении «Конкорд» не было никаких записей из расписания или распорядка дня, составленных мною или для меня. У «Конкорд» нет никаких документов, которые можно было бы предоставить в ответ на категорию 1 (один) судебного запроса от 10 февраля 2020 года.

12. Компания «Конкорд» не предоставила документы в ответ на категорию 2 (два) судебного запроса от 10 февраля 2020 года, так как компания «Конкорд» не совершала ни прямых, ни косвенных платежей в пользу Агентства интернет-исследований в период, обозначенный в судебном запросе.

13. Компания «Конкорд» не предоставила документы в ответ на категорию 3 (три) судебного запроса от 10 февраля 2020 года, как указано выше, так как компания «Конкорд» хранит все свои электронные письма не более 3 (трех) месяцев в соответствии с внутренней письменной политикой компании. Следовательно, для «Конкорд» не представляется возможным предоставить переписку по электронной почте за период с 1 января 2014 года по 1 февраля 2018 года.

14. В отношении того, активно ли участвует «Конкорд» в данном деле – вопрос, который подняли прокуроры во время слушания 2 марта 2020 года – я могу заверить суд, что «Конкорд» проделала огромный путь, чтобы участвовать в данном деле и всячески намерена участвовать в судебном разбирательстве через своих адвокатов в соответствии с законодательством США.

Дата: 4 марта 2020 г.                    Подпись: _____

                                         Евгений Викторович Пригожин

*Пригожин Евгений Викторович* (подпись)

**Российская Федерация**

**Санкт-Петербург**

**Четвёртого марта две тысячи двадцатого года**

Я, Лакман Диана Анатольевна, временно исполняющая обязанности нотариуса нотариального округа Санкт - Петербург Акуленко Анатолия Ивановича, свидетельствую подлинность подписи Пригожина Евгения Викторовича.
Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

Зарегистрировано в реестре: № 78/6-н/78-2020-3-488
Взысканы государственной пошлины (по тарифу):    100 руб. 00 коп.
Уплачено за оказание услуг правового и технического характера: 800 руб. 00 коп.

                                                              Д.А.Лакман

Итого в настоящем документе две лист а
Нотариус

[TRANSLATION FROM RUSSIAN]

78 A B 8242182

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CONCORD MANAGEMENT AND CONSULTING LLC,<br><br>    Defendant. | CRIMINAL NUMBER<br>1:18-cr-00032-2-DLF |

## DECLARATION OF YEVGENIY VIKTOROVICH PRIGOZHIN

I, Yevgeniy Viktorovich Prigozhin, date of birth June 1, 1961, place of birth: Leningrad, citizenship: Russian Federation, sex: male, passport series 40 07 № 136936 issued by the 28th Police Precinct of the Central District of St. Petersburg on January 29, 2007, registered at the address: 4 Pushkinskaya Ulitsa, Apt. 35, St. Petersburg, state the following:

1.   I am a citizen of the Russian Federation and have visited the United States of America one time, in approximately the period of 1992 to 1993.

2.   At present, I am the General Director of Concord Management and Consulting LLC, Individual Taxpayer Number 7825100880, Main State Registration Number 1037843002515 ("Concord"), and have held this position since March 1, 2018. During the period from January 1, 2014 to February 1, 2018, I was neither Concord's General Director, nor its officer nor its employee. I am also currently the sole shareholder of Concord and acquired this stake in Concord on February 28, 2017. During the period from January 1, 2014 to February 28, 2017, I was not a shareholder of Concord.

[TRANSLATION FROM RUSSIAN]

3.      Concord's counsel has explained to me that giving false testimony in a court proceeding is a crime in the United States, and I affirm that the statements contained herein are truthful to the best of my knowledge.

4.      I am familiar with Concord's recordkeeping practices because, as General Director, I am responsible for the ongoing operation of Concord's business, including the company's recordkeeping practices. I am also familiar with all of Concord's efforts to comply with the trial subpoena and Order of the U.S. District Court for the District of Columbia dated March 2, 2020 because I have been personally involved in discussions on these two issues.

5.      As of March 4, 2020, Concord has 40 employees, who primarily work in the catering business, with the exception of a number of employees engaged in administrative and managerial functions such as Chief Accountant, Lawyer, Secretary, Auditor, and one officer – the General Director. The company has significantly reduced its number of employees in the past several years due to market changes, U.S. Treasury sanctions, and divestment of core assets. Concord does not have an employee with the title "custodian of records," and the person whose responsibilities include maintaining Concord's paper records and electronic documents is the General Director. Concord does not have an Information Technology ("IT") department or employee, and instead engages outside vendors for IT services on an as-needed basis.

6.      Pursuant to the laws of the Russian Federation, Concord is a limited liability company and neither Russian law, nor Russian regulators nor any of Concord's lenders, past or present, imposes or has ever imposed any rules on Concord regarding how long records must be maintained of correspondence (electronic or otherwise), records of transactions and payments, calendars and the like. Concord's recordkeeping practices must be understood in the context of Russian, not American, practices, and Concord's actual recordkeeping is effected with due account

of the fact that Concord has been the victim of several cyberattacks and has reason to expect future cyberattacks from the United States government and third parties.

7. Since April 17, 2014, Concord has had an established policy for maintaining electronic mail messages and records for no more than three months, and this policy is enforced by automated destruction of electronic messages at both the mail server and workstation levels. A copy of the order establishing this policy for maintaining electronic correspondence is attached as Exhibit 1 along with a translation into English. As is common practice for many Russian organizations, Concord does not as a rule keep electronic copies of business documents; therefore, contracts, correspondence (other than electronic mail which is destroyed), corporate documents and the like are kept in paper folders on-premises at Concord's office. As for records of payments, Concord uses 1C (also known as 1S in English), a popular Russian off-the-shelf business software solution, for payments as well as accounting and tax compliance. Concord does not have access to its employees' mobile phones or keep records of its employees' mobile phone calls, text messages or other usage. Concord does not use electronic back-up systems, including cloud systems, and does not have an off-site duplicate of paper records.

8. Concord believes that the records supplied in response to categories one (1) and two (2) of the January 24, 2020 subpoena are the full and complete records that any Russian limited liability company would possess. In order to respond to category three (3) of the January 24, 2020 subpoena, I reviewed the contracts between Concord and internet service providers with which it contracted between January 1, 2014 and February 1, 2018. These contracts do not specify a particular IP address provided to Concord during that period, and no other records have been kept, because having a particular IP address has never been relevant to Concord's business. Given the above, in order to establish the IP addresses which Concord could have used, I had to make

inquiries with the companies that were our internet service providers during the relevant period as described in paragraph 10 below. Given Concord's recordkeeping practices as described in paragraph 7 above, it was not possible to perform searches for some categories of requested documents due to the absence of such. With respect to category one in the February 10, 2020 trial subpoena, Concord never had any calendar entries for me during the period before I became General Director, and I became General Director after February 1, 2018, so no searches were able to be performed in Concord's documents. Concord did not and does not have access to the previous General Director's telephone from which the prosecution claims to have obtained photographs of calendars and other documents, so Concord is unable to confirm the origin of such photographs. With respect to category two (2) in the February 10, 2020 trial subpoena, I tasked Concord's Chief Accountant with conducting search both paper and electronic records for any payments to Internet Research Agency LLC, Mediasintez LLC, Glavset LLC, Mixinfo LLC, Azimut LLC and Novinfo LCC for the period from January 1, 2014 to February 1, 2018, as well as payments made to third parties that mention such companies. No records were found. I further tasked Concord's Chief Accountant with conducting additional searches in the 1C system by entering some spelling variations that would account for typographical errors. Nothing further resulted from the additional searches. With respect to category three (3) in the February 10, 2020 trial subpoena, I confirm that in accordance with Concord's internal policy referenced above in paragraph 7, there are no electronic messages on Concord's mail servers or other electronic devices for the period from January 1, 2014 through February 1, 2018, so no searches of electronic correspondence were able to be performed.

9.      I have reviewed Russian translations of the trial subpoenas dated January 24, 2020 and February 10, 2020, and I can state that Concord has fully complied with both subpoenas,

having provided all records in its possession, custody, or control that are responsive to the categories in the subpoenas.

10.  No officer or employee of Concord possesses the information requested in category three (3) of the trial subpoena dated January 24, 2020.  In order to comply with category three in the trial subpoena dated January 24, 2020, in Concord's records I found contracts between Concord and Severen-Telecom JSC and Unitel LLC, the two internet service providers with which Concord contracted between January 1, 2014 and February 1, 2018. Because these contracts do not identify the internet protocol ("IP") addresses used by Concord during that period, on January 7, 2020 I sent letters on behalf of Concord to Severen-Telecom JSC and Unitel LLC transmitting copies of these contracts and requesting that the companies advise as to which IP addresses were provided to or used by Concord during that period.  Copies of these letters and English translations, as well as the attached contracts, are attached as Exhibits 2 and 3.  Severen-Telecom JSC responded in writing that the requested information cannot be provided.  A copy of Severen-Telecom JSC's letter and an English translation are attached as Exhibit 2.  Unitel LLC responded that information regarding IP addresses cannot be provided.  A copy of Unitel LLC's letter and an English translation of is attached as Exhibit 3.  Accordingly, Concord does not have any documents that could be provided in response to category three (3) of the January 24, 2020 subpoena.

11.  Concord has produced no documents in response to subpoena category one of the trial subpoena dated February 10, 2020 because Concord does not possess any responsive documents.  As stated above, during the period January 1, 2014 through February 1, 2018, I was neither Concord's general director, nor an officer nor an employee of Concord. I became a shareholder on February 28, 2017.  Accordingly, Concord would never have been in possession of any daily schedules or calendars that I may have created or may have been created for me.  Concord

[TRANSLATION FROM RUSSIAN]

does not have any documents to provide in response to category one (1) of the February 10, 2020 subpoena.

12. Concord has produced no documents in response to subpoena category two (2) of the trial subpoena dated February 10, 2020 because Concord made no direct or indirect payments to the Internet Research Agency during the period covered by the subpoena.

13. Concord has produced no documents in response to subpoena category three (3) of the trial subpoena dated February 10, 2020 because, as noted above, none of Concord's electronic mail is kept longer than three (3) months, in accordance with written company policy. As a result, it is not possible for Concord to produce electronic mail correspondence from the period of January 1, 2014 through February 1, 2018.

14. As to whether Concord is actively participating in this case, a question raised by the prosecutors at the March 2, 2020 hearing, I can assure the Court that Concord has gone to great lengths to participate in this case and has every intention of participating in the trial, appearing through our counsel as U.S. law provides.

Dated: March 4, 2020           Signed: _____[signature]_____
                                       Yevgeniy Viktorovich Prigozhin

[handwritten] Yevgeniy Viktorovich Prigozhin [signature]

**Russian Federation**

**Saint Petersburg**

**March Fourth, Two Thousand Twenty**

I, Diana Anatolievna Lakman, temporarily performing the duties of Anatoly Ivanovich Akulenko, notary of the Saint Petersburg Notary District, certify the authenticity of the signature of Yevgeniy Viktorovich Prigozhin.
The signature was made in my presence.
The signatory's identity was verified.

Registered in the register: № 78/6-I/78-2020-3-488
State duty collected (according to the schedule): 100 rubles, 00 kopecks
Payment of legal and technical services: 800 rubles, 00 kopecks

                                       D.A. Lakman [signature, seal]
                    In this document *two* sheets / Acting notary [signature]