# Exhibit 3 to Declaration of Yevgeniy Prigozhin

*United States v. Concord Management and Consulting LLC*, Case No. 18-cr-00032-2-DLF

**Translated from Russian**

[on letterhead of Unitel LLC]

Ref. No.306 dated 01.20.2020

Attn: Ye.V. Prigozhin
General Director
Concord Management & Consulting LLC

Dear Yevgeniy Viktorovich!

In response to your query Ref. No.3 dated 01.07.2020, we hereby confirm that contract No.846-17 was indeed in effect between Concord Management & Consulting LLC and Unitel LLC from January 01, 2014 to February 01, 2018.

We inform you that due to partial loss of archive documents for the period in question, the information regarding IP addresses cannot be provided.

Sincerely,

Business Development Director
Unitel LLC                                          [signature]            A.N. Temeev
[seal: St. Petersburg * Unitel Limited Liability Company]

**Translated from Russian**

[on letterhead of Concord Management & Consulting LLC]

Ref. No.3 dated 01.07.2020

Attn: Director of Unitel LLC
A.N. Temeev

Dear Andrey Nikolayevich!

Concord Management & Consulting Limited Liability Company (hereinafter the "Company") and Unitel LLC entered into contract No.846-17 dated 04.28.2017 being effective during the period from January 01, 2014 to February 01, 2018.

Due to ongoing proceedings in a US court in case No.1:18-CR-00032-DLF the Company needs to provide to the US Department of Justice information that will identify IP addresses the Company was using during the period from January 01, 2014 to February 01, 2018.

Since the Company does not have such information, please advise as to which IP addresses were provided to the Company (used by the Company) during the period from January 01, 2014 to February 01, 2018 pursuant to contract No.846-17 dated 04.28.2017.

Attachment:
1. Copy of contract No.846-17 dated 04.28.2017

Sincerely,

General Director
Concord Management & Consulting LLC  [signature]
Ye.V. Prigozhin

[seal: St. Petersburg * Limited Liability Company
* Concord Management & Consulting * "Concord
Management & Consulting" Co.]



197342, Санкт-Петербург, Кантемировская, 4, офис 510
+7 (812) 244-244-4, info@unitelecom.net, www.унител.рф

Исх. № 306 от 20.01.2020г.

Генеральному директору
ООО «Конкорд Менеджмент и консалтинг»
Е.В. Пригожину

Уважаемый Евгений Викторович!

В соответствии с Вашим запросом исх. №3 от 07.01.2020 г. подтверждаем, что действительно между ООО «Конкорд Менеджмент и консалтинг» и ООО «Унител» в период с 01 января 2014 года по 01 февраля 2018 действовал договор № 846-17.

Сообщаем Вам, что в связи с частичной утерей архивов документов за запрашиваемый период, информацию об адресах межсетевых протоколов IP предоставить возможности нет.

С уважением,

Коммерческий директор
ООО «Унител»



Темеев А.Н.

ООО «Унител»: ИНН 7814534043 / КПП 781401001 / ОГРН 1127847222007, р/сч 40702810500000023928
в АО Банк «ПСКБ», БИК 044030852, к/сч 30101810000000000852



**Concord Management & Consulting**
Общество с ограниченной ответственностью
«КОНКОРД МЕНЕДЖМЕНТ И КОНСАЛТИНГ»

---

191028, г. Санкт-Петербург, ул. Моховая, д. 37, лит. Б, офис №1, 2
ИНН/КПП 7825100880/784101001

Исх № 3 от 7.01.2020

Директору ООО «Унител»
А.Н. Темееву

Уважаемый Андрей Николаевич!

Между Обществом с ограниченной ответственностью «Конкорд менеджмент и консалтинг» (далее – «Общество») и ООО «Унител» был заключен и в период с 01 января 2014 года по 01 февраля 2018 действовал договор № 846-17 от 28 .04.2017.

В связи с имеющимся в производстве суда США делом 1:18-CR-00032-DLF. Обществу необходимо представить Министерству юстиции США сведения, которые позволяют идентифицировать адреса межсетевых протоколов IP, использовавшихся Обществом в период с 01 января 2014 по 01 февраля 2018.

Поскольку у Общества отсутствует данная информация прошу Вас сообщить какие адреса межсетевых протоколов IP, которые предоставлялись Обществу (использовались Обществом) в период с 01 января 2014 по 01 февраля 2018 в соответствии договором № 846-17 от 28 .04.2017.

Приложение:
1. Копия договора № 846-17 от 28 .04.2017.

С уважением,

Генеральный директор
ООО «Конкорд менеджмент и консалтинг»
Е.В.Пригожин

ДОГОВОР № 846-17

НА ПРЕДОСТАВЛЕНИЕ УСЛУГ СВЯЗИ МЕЖДУ

ООО «Унител» и

ООО «Конкорд Менеджмент и Консалтинг»



г. Санкт-Петербург

ДОГОВОР № 846-17
НА ПРЕДОСТАВЛЕНИЕ УСЛУГ СВЯЗИ

28.04.2017 г.                                                                                                                          г. Санкт-Петербург

ООО «Унител», в лице Коммерческого Директора Темеева Андрея Николаевича, действующего на основании Доверенности № 1 от 01.01.2017 г., именуемое в дальнейшем **Оператор** (лицензии №№ 117605, 117606, 117607, 117608, 117609 от 13 ноября 2012 г., выдана Федеральной службой по надзору в сфере связи), с одной стороны, и ООО «Конкорд Менеджмент и Консалтинг», в лице Генерального директора Саутиной Анастасии Витальевны, действующего на основании Устава, именуемый в дальнейшем **Клиент** с другой стороны, вместе именуемые Стороны, заключили настоящий Договор, именуемый в дальнейшем Договор, о нижеследующем:

## 1. ТЕРМИНЫ И ОПРЕДЕЛЕНИЯ

1.1. «Договор» - настоящий Договор с Описанием Услуг и Приложениями, а также все дополнения и изменения, оформленные надлежащим образом.
1.2. «Клиент» - пользователь Услугами, с которым заключен Договор.
1.3. «Описание услуг» - документ, содержащий описание, условия и порядок предоставления каждой Услуги (нескольких Услуг), а также процедуру взаимодействия Сторон в рамках предоставления Услуги (нескольких Услуг), технические показатели Услуг связи и другую необходимую информацию. Описание Услуг размещается **Оператором** связи на соответствующем сайте и по усмотрению **Оператора** связи может передаваться Клиенту в момент подписания Договора.
1.4. «Абонентская линия» - линия связи, соединяющая Пользовательское (оконечное) оборудование с Узлом связи Сети **Оператора** связи, находящаяся в собственности **Оператора** связи.
1.5. «Узел связи» - оборудование, средства связи, выполняющие функции систем коммутации и маршрутизации.
1.6. «Оборудование» - технические средства и программное обеспечение, которые могут быть установлены в Помещениях в целях предоставления Услуг по Договору. Адрес установки, вид (тип) и/или стоимость Оборудования, а также Сторона, которая его предоставляет для оказания Услуг связи, указываются в Акте сдачи-приемки Услуг по предоставлению доступа.
1.7. «Пользовательское (оконечное) оборудование» – оборудование, необходимое Клиенту для подключения к Узлу связи с помощью Абонентской линии, находящееся в собственности Клиента. Вид (тип) Пользовательского (оконечного) оборудования указываются в Приложении.
1.8. «Помещение» – помещение, находящееся вне зоны ответственности **Оператора** связи, где может быть установлено Оборудование для предоставления Услуг по Договору, принадлежащее Клиенту на каком-либо вещном праве.
1.9. «Прерывание предоставления Услуги связи» – означает перерыв в предоставлении Услуги связи, зарегистрированный технической службой **Оператора** связи.
1.10. «Услуга» - все Услуги, предоставляемые в рамках Договора и включают в себя телематические услуги.
1.11. «Услуга связи» – деятельность по приему, обработке, хранению, передаче, доставке сообщений электросвязи.
1.12. «Услуга по предоставлению доступа» - совокупность действий **Оператора** связи, направленных на обеспечение возможности оказания Клиенту Услуг связи и включающих формирование Абонентской линии и присоединение с ее помощью Пользовательского (оконечного) оборудования Клиента к Узлу связи, оформление Договора, регистрацию Клиента. В зависимости от вида предоставляемой Услуги связи Услуги по предоставлению доступа могут включать в себя осуществление **Оператором** связи иных действий, предусмотренных выбранных Клиентом Тарифом предоставления доступа.
1.13. «Дополнительная услуга» - услуга, технологически связанная с Услугами связи и направленная на повышение их потребительской ценности, предоставляемая **Оператором** связи при наличии технической возможности.
1.14. «Сеть связи» (Сеть) - все распределительные сети, принадлежащие **Оператором** связи на любом вещном праве и предназначенные для оказания Услуг связи.
1.15. «Расчетный период» - текущий календарный месяц с 00 часов 00 минут первого числа до 24 часов 00 минут последнего дня того же календарного месяца, в котором оказываются Услуги по настоящему Договору.
1.16. «Тарифы на Услуги» (**Тарифы Оператора** связи) – условия оплаты Услуг **Оператора** связи, которые включают в себя: тарифы предоставления доступа, тарифные планы, тарифы на дополнительные услуги.
1.17. «Тарифы предоставления доступа» - условия предоставления доступа Клиенту к Сети и оплаты Услуги по предоставлению доступа.
1.18. «Тарифные планы» - условия пользования и оплаты Услуг связи.
1.19. «Тарифы на дополнительные услуги» – условия предоставления и оплаты Дополнительных услуг, оказываемых **Оператором** связи Клиенту.

Свидетельством полного и безоговорочного акцепта (принятия) условий данного Договора и его приложений является подписание данного Договора.

## 2. ПРЕДМЕТ ДОГОВОРА

2.1. **Оператор** предоставляет, а **Клиент** оплачивает Услуги и иные технологически неразрывно связанные с ними услуги, описанные в настоящем Договоре и соответствующих Приложениях к нему. Приложения являются неотъемлемыми частями настоящего Договора.

2.2. Приложения, подписанные Сторонами, определяют дополнительные условия, такие как: цены, сроки установки Оборудования и предоставления Услуг, спецификация Оборудования и состав Услуг.
Во исполнение условий настоящего Договора в случае необходимости, **Оператор** установит свое телекоммуникационное оборудование.

### 3. ПРАВА И ОБЯЗАТЕЛЬСТВА СТОРОН

3.1. **Обязательства Оператора:**

3.1.1. **Оператор** предоставляет Клиенту Услуги, перечисленные в Приложении к Договору, а также последующих Дополнительных Соглашениях. Во время действия настоящего Договора Клиент имеет право давать новые заказы на Услуги, оформляемые Дополнительными Соглашениями, которые после соответствующего подтверждения **Оператора** будут считаться составной частью настоящего Договора.

3.1.2. Планируемый срок начала предоставления Услуг будет указан в Приложении к настоящему Договору.

3.1.3. **Оператор** при предоставлении Клиенту Услуг связи, обеспечивает соответствие качественных показателей стандартам и техническим нормам, установленным уполномоченными государственными органами РФ.

3.1.4. В случае возникновения неисправностей не по вине Клиента в линейно-кабельных сооружениях или оборудовании **Оператора**, **Оператор** обязуется обеспечивать устранение таких неисправностей. Устранение неисправностей линейно-кабельных сооружений и ремонтно-восстановительные или монтажные работы волоконно-оптических линий связи и Оборудования производятся в срок установленный руководящими документами отрасли, если иное не установлено настоящим Договором и Приложениями к нему.

3.2. **Оператор вправе:**

3.2.1. В случае, если в ходе работ по предоставлению доступа к Услугам, возникнет необходимость проведения дополнительных работ, в том числе ремонта или строительства телефонной канализации, вызванная не прохождением кабеля или в соответствии с техническими условиями телефонных узлов или другой уполномоченной организации, стоимость выполнения работ по настоящему Договору могут быть изменены по согласованию Сторон, что должно быть отражено в Дополнительном Соглашении к настоящему Договору.

3.2.2. **Оператор** вправе увеличить срок проведения работ, связанных с прокладкой кабеля в следующих случаях:
- наличие документов или устных предписаний контролирующих организаций (органов), временно запрещающих выполнение работ по данному Договору.
- возникновение внеплановых ситуаций, в том числе: необходимость выполнения работ по устранению провалов телефонной канализации, строительства телефонной канализации, восстановлению целостности проложенной линии связи поврежденной из-за действий третьей стороны.

3.2.3. Прерывать полностью или частично предоставление Услуг, связанное с заменой оборудования, программного обеспечения или с проведением других работ в целях поддержания работоспособности и развития сети **Оператора** с уведомлением Клиента не менее чем за 24 (Двадцать четыре) часа.

3.2.4. В случае нарушения Клиентом требований, связанных с оказанием Услуг связи, установленных Законодательством Российской Федерации и настоящим Договором, в том числе нарушения сроков и порядка оплаты оказанных Клиенту Услуг, нарушение технических и иных норм и условий эксплуатации Оборудования **Оператора**, включая использование Клиентом несертифицированного Оборудования, а также необеспечение права доступа сотрудников **Оператора** в случае возникновения плановых профилактических работ и устранения аварийных ситуаций, **Оператор** имеет право приостановить оказание Услуг до устранения нарушения. Возобновление предоставления Услуг осуществляется после полного устранения нарушений. Возобновление оказания приостановленных Услуг производится **Операторогм** в течение следующего рабочего дня с момента получения заявления от Клиента либо когда **Оператору** стало известно об устранении Клиентом нарушений. В случае если допущенные нарушения не будут устранены Клиентом в течение 6 (шести) месяцев с даты его уведомления о намерении **Оператора** приостановить оказание Услуг, **Оператор** вправе использовать выделенные в соответствии с Договором телекоммуникационные ресурсы для оказания Услуг третьему лицу.

3.2.5. **Оператор** не гарантирует установку охранной сигнализации на своих линиях.

3.2.6. Оборудование **Оператора** может быть использовано **Оператором** для оказания Услуг третьим лицам и как транзитный узел, вследствие чего Клиент не вправе препятствовать **Оператору** производить необходимые для этого работы, не влияющие на оказание Услуг Клиенту

3.2.7. **Оператор** вправе отказать Клиенту в предоставлении Услуг, а также дополнительных Услуг при наличии одного из следующих обстоятельств:
- предоставление Услуги может создать угрозу безопасности и обороноспособности государства, здоровью и безопасности людей;
- предоставление Услуги невозможно ввиду каких-либо физических, топографических или иных естественных препятствий;
- Клиент без веских оснований не соглашается на условия предоставления Услуги, своевременно не производит платежи за предоставленные ранее Услуги;

- Клиент использует или намерен использовать аппаратуру связи для каких-либо незаконных целей, или же получает Услуги незаконным способом, эксплуатирует предоставленное Оборудование с нарушением правил технической эксплуатации, или использует несертифицированное оборудование.

Отказ в каждом конкретном случае должен быть обоснован.

3.3. **Клиент обязуется:**
3.3.1. Обеспечить круглосуточный доступ персонала **Оператора** в Помещения Клиента для проведения работ по предоставлению Клиенту доступа к Услугам **Оператора**. Клиент за свой счет обеспечивает все изменения и приготовления Помещения, необходимые для предоставления Услуг;
3.3.2. При необходимости предоставить помещение под размещение оборудования связи **Оператора** и обеспечивать сохранность установленного оборудования;
3.3.3. Завершение любых работ по настоящему Договору оформляется двусторонним Актом выполненных работ, подписанным уполномоченными представителями обеих сторон. В день установки Клиент обязан обеспечить присутствие уполномоченного представителя для подписания от имени Клиента Акта выполненных работ, нарядов, Акта приема-передачи оборудования. В случае отказа и/или отсутствия уполномоченного представителя Клиента при проведении работ по установке, акт (наряд) направляется Клиенту с курьером или по почте. В случае, если Акт не будет подписан Клиентом в течение 3 (трех) рабочих дней после его получения, и по нему в течение 3 (трех) дней не будут представлены обоснованные письменные замечания, работы будут считаться выполненными **Оператором** в полном объеме и в соответствии с настоящим Договором.
3.3.4. Осуществлять оплату Услуг своевременно и в полном объеме в соответствии с условиями настоящего Договора;
3.3.5. Не передавать и не продавать предоставляемые в соответствии с настоящим Договором Услуги, требующие обязательного лицензирования, используя при этом телекоммуникационные услуги, предоставляемые **Оператором** по настоящему Договору.
3.3.6. При подписании настоящего Договора предоставить **Оператору** следующие документы
- копию свидетельства о государственной регистрации Клиента в качестве юридического лица;
- копию документа, подтверждающего право владения или пользования Помещением, в котором устанавливается оборудование связи;
- копию документа, подтверждающего полномочия лица, подписывающего Договор со стороны Клиента.

3.3.6.1. Клиент обязан предоставить Оператору список лиц, использующих пользовательское (оконечное) оборудование Оператора (их фамилию, имя, отчество, место жительства, реквизиты основного документа, удостоверяющего личность) в течение 5(пяти) рабочих дней, заверенный Клиентом. Данный список должен быть заверен уполномоченным представителем юридического лица или индивидуального предпринимателя и обновляться Клиентом не реже одного раза в квартал (согласно Постановлений Правительства РФ от 31.07.2014 N 758, от 03.02.2016 N 57)

3.3.7. Клиент обязуется использовать исключительно такое пользовательское (оконечное) оборудование, на которое имеется документ о подтверждении соответствия этих средств связи установленным требованиям. Клиент обязуется содержать в исправном состоянии абонентскую линию и оборудование, находящиеся в Помещении Клиента, соблюдать правила эксплуатации оборудования.
3.3.8. Ежемесячно Клиент принимает на себя обязательство подписывать Акты об оказанных услугах в случае отсутствия обоснованных претензий к их качеству в течение 3 (трех) рабочих дней с момента получения Клиентом экземпляров Акта, подписанных **Оператором**. В случае не подписания Акта, Клиент в течение 3 (трех) рабочих дней с момента получения экземпляров Акта должен предоставить **Оператору** письменное обоснование отказа от подписания Акта. В случае непредставления такого письменного обоснования, Услуги считаются оказанными надлежащим образом и в полном объеме, а Акт подписанным с обеих сторон.
3.3.9. Извещать **Оператора** обо всех изменениях в схеме организации связи Клиента, составе и размещении оборудования, подключаемого к сети **Оператора**. Оператор вправе осуществлять проверку соответствия организации схемы связи и оборудования Клиента.
3.3.10. Самостоятельно получить письменное разрешение от Арендодателя/Собственника на ввод кабеля в здание и/или в Помещение Клиента, а также на использование в своих интересах существующих линейно-кабельных сооружений Арендодателя/Собственника.
3.3.11. Не нарушать прав собственности **Оператора** на Оборудование **Оператора**, установленное **Оператором** в Помещениях Клиента и исключительных прав **Оператора** на программное обеспечение в рамках оказания Услуг.
3.3.12. Письменно уведомить **Оператора** о не согласии получать услуги по новым тарифам или условиям (п.п. 4.2 и 4.8 Договора), до их введения.
3.3.13. Письменно уведомить **Оператора** не менее чем за 30 (тридцать) календарных дней, о прекращении своего права владения и/или пользования Помещением, а также в течение 5 (пяти) календарных дней об изменении наименования, места нахождения, банковских реквизитов и т.п.
3.3.14. Обязанность по предоставлению оконечного оборудования, подлежащего подключению к абонентской линии, возлагается на Клиента, если иное не установлено Сторонами в Дополнительном соглашении к настоящему Договору.

3.3.15. Услуги по настоящему Договору предоставляются по адресу, указанному в Приложении к Договору. Клиент принимает на себя расходы по любому перемещению Услуг, предоставляемых по настоящему Договору в случае изменения адреса Клиента. Такое перемещение предоставляется при наличии технической возможности у **Оператора**.

3.4. **Клиент вправе:**

3.4.1. Получать Услуги **Оператора**, а также пользоваться дополнительными услугами, предоставляемыми **Оператором**.

3.4.2. Потребовать возврата средств, уплаченных за пользование Услугами, за период отсутствия возможности воспользоваться Услугами, возникшей по вине **Оператора**.

3.4.3. Сообщать о нарушении работы Услуг связи в службу технической поддержки в соответствии с реквизитами, указанными в пункте 10.1 настоящего Договора.

3.4.4. Клиент в своей деятельности имеет право использовать товарные знаки **Оператора** только с его письменного согласия. Клиент признает права **Оператора** на все товарные знаки и знаки обслуживания **Оператора** в связи с предоставлением Услуг.

## 4. ЦЕНЫ И УСЛОВИЯ ОПЛАТЫ

4.1. Платежи осуществляются Клиентом за предоставленные Услуги по ценам, указанным в Приложениях к настоящему Договору и последующих Дополнительных Соглашениях.

4.2. Цены на услуги могут быть изменены **Оператором** в одностороннем порядке с направлением уведомления Клиенту не менее чем за 10 (десять) календарных дней до вступления изменений в силу.

4.3. Счет на оплату единовременных (инсталляционных) платежей за доступ к Услугам выставляется Клиенту **Оператором** в течение 45 (сорока пяти) дней с даты подписания настоящего Договора и Приложений к нему.

4.4. **Оператор** посредством электронной почты, с последующим предоставлением оригиналов, до 15 числа текущего месяца выставляет Клиенту счет на оплату:
   4.4.1 ежемесячных фиксированных (абонентских) платежей за отчетный период;
   4.4.2 услуг, оказанных в расчетном периоде;
   4.4.3 в последующий счет включается задолженность согласно данным оборудования, используемого для учета объема оказанных Услуг (при превышении лимита услуг, включенных в абонентские платежи).

4.5. В случае неполучения счета Клиентом, он может получить счет в офисе Оператора до 15 числа. Если до 15 числа текущего месяца, счет Клиентом не получен, то датой получения счета считается 15 число.
   Счет считается полученным:
   - в случае получения счета с курьером Оператора - с даты, указанной в расписке о получении;
   - в случае получения счета в офисе Оператора - с даты, указанной в расписке о получении;
   - в случае получения факсимильной копии счета - с даты, указанной в подтверждении о прохождении факса.
   - в случае не получения Клиентом счета до 15 числа – 15 число.
   4.5.1. Счета на оплату Услуг выставляются в рублях РФ. Тарификация Услуг осуществляется в рублях РФ.

4.6. Оплата счетов выставленных **Оператором** в соответствии с условиями настоящего Договора производится Клиентом ежемесячно авансом по реквизитам, указанным в счетах **Оператора** в течение 10 (десяти) календарных дней с даты выставления счета (далее – «Срок платежа»), но не позднее 25 числа соответствующего месяца.

4.7. При осуществлении платежа Клиент указывает номер настоящего Договора с тем, чтобы **Оператор** мог идентифицировать получаемые платежи. **Оператор** вправе засчитать поступивший от/за Клиента платеж в счет погашения любой ранее возникшей задолженности Клиента. Клиент самостоятельно несет ответственность за правильность производимых им платежей.

4.8. Датой оплаты счета считается дата списания денежных средств с расчетного счета Клиента.

4.9. В случае нарушения Клиентом сроков оплаты оказанных Услуг, **Оператор** имеет право приостановить оказание Услуг до устранения нарушения. При этом, **Оператор** оставляет за собой право взимать с Клиента абонентскую плату/гарантированные платежи за весь период времени, в течение которого Услуга была приостановлена.

4.10. **Оператор** вправе в одностороннем порядке изменять условия настоящего Договора, в том числе, если это обусловлено принятием новых нормативных актов, которые прямо или косвенно затрагивают деятельность по оказанию Услуг, а также изменением уровня инфляции. Указанные изменения вносятся посредством направления уведомления Клиенту не менее чем за 10 (десять) календарных дней до даты вступления изменений в силу.

4.11. Клиент вправе отказаться от принятия изменений, направив об этом письменное уведомление Оператору до вступления предполагаемых изменений в силу. Изменения считаются вступившими в силу, а настоящий Договор соответственно измененным или расторгнутым, с даты, указанной в уведомлении Оператора, как дата вступления изменений в силу, что не освобождает Клиента от оплаты **Оператору** любой имеющейся задолженности по Договору.

4.12. Счета, счета-фактуры и акты оказанных услуг направляются Клиенту по адресу, указанному в настоящем Договоре.

4.13. В случае утраты Договора или документов, относящихся к договору, таких как счета, счет-фактуры, дополнительные соглашения и др., по вине Клиента, восстановление вышеуказанных документов подлежит оплате согласно прейскуранту на дополнительные услуги, размещенном на официальном сайте Оператора.

## 5. СРОК ДЕЙСТВИЯ ДОГОВОРА

5.1. Договор вступает в силу с даты подписания Сторонами и заключен на неопределенный срок.

## 6. ОТВЕТСТВЕННОСТЬ СТОРОН

6.1. Ответственность Стороны перед другой Стороной за неисполнение обязательств по Договору ограничивается видами и размерами, предусмотренными законодательством Российской Федерации, условиями Договора, а также Правилами оказания Услуг связи. Помимо указанной ответственности Сторона не отвечает за убытки, причиненные другой Стороне.

6.2. **Оператор** не несет ответственности за сбои программного обеспечения и оборудования, если они не являются собственностью **Оператора** и/или не находятся на обслуживании **Оператора**. Все ответственные лица, указанные в Договоре или письменном уведомлении должны быть доступны по контактным телефонам или электронной почте в течение рабочего времени : 9:00 – 18:00.

6.3. В случае недоступности ответственных лиц, **Оператор** не несет ответственности за неполучение ими информационных сообщений. Клиент принимает на себя обязательства письменно сообщить **Оператору** по факсу: 8122442443 и/или по электронной почте: info@unitelecom.net, о замене ответственных лиц и/или изменении контактных данных.

6.4. **Оператор** не предоставляет никаких других гарантий, выраженных или подразумеваемых, в том числе гарантий по использованию Услуг в конкретных целях, за исключением гарантий, прямо указанных в Договоре.

6.5. Перерасчет абонентской платы является единственным видом Ответственности **Оператора**.

6.6. Ни одна из Сторон ни при каких обстоятельствах не несет никакой ответственности перед другой Стороной за остановку производства, утраченный бизнес, потерю данных, упущенную выгоду или любые другие косвенные потери или их последствия, в том числе возникшие в результате перерывов в предоставлении Услуг, вне зависимости от того, могла или нет Сторона предвидеть возможность таких потерь в конкретной ситуации.

6.7. Клиент несет всю ответственность за использование Услуг, предоставляемых **Оператором**, и обеспечивает за свой счет защиту **Оператора** от любых претензий и исков третьих лиц, связанных с использованием Услуг Клиентом.

6.8. В случае повреждения (хищения, порчи) или неправомерного удержания по вине Клиента Оборудования **Оператора**, переданного в пользование Клиенту, последний обязуется возместить реальный ущерб, обусловленный подобными действиями.

6.9. За использование неисправного, не сертифицированного или несогласованного с **Оператором** (в случае необходимости такого согласования) оконечного устройства, вызывающего повреждение сооружений связи, Клиент возмещает **Оператору** нанесенный реальный ущерб, подтвержденный **Оператором** в установленном законом порядке

6.10. Если в отчетном периоде имелись перерывы в оказании Услуг продолжительностью более одного часа, которые не являлись следствием виновных действий или бездействия Клиента и не являлись перерывами для проведения необходимых профилактических и ремонтных работ, проводимыми **Оператором** с предварительным уведомлением Клиента, **Оператор** уменьшит сумму счета на оплату ежемесячной фиксированной платы на 1/720 от суммы ежемесячной фиксированной платы за Услуги за каждый полный час прерывания Услуг. Течение срока перерыва начинается с момента, когда **Оператор** получил от Клиента письменную заявку (с использованием почтовой или факсимильной связи) на предмет устранения повреждения, и окончанием перерыва считается момент, когда оказание Услуг возобновлено.

## 7. ОБСТОЯТЕЛЬСТВА НЕПРЕОДОЛИМОЙ СИЛЫ

7.1. Стороны не несут ответственности за задержки в исполнении или неисполнение обязательств по настоящему Договору, если задержки или неисполнение произошли вследствие обстоятельств непреодолимой силы. В число таких обстоятельств входят: войны, военные действия, мятежи, саботаж, забастовки, пожары, взрывы, наводнения или иные стихийные бедствия, издание нормативных актов запретительного характера государственными органами Российской Федерации либо субъектов Федерации, или органами местного самоуправления.

7.2. Немедленно после получения информации о наступлении любых обстоятельств, задерживающих исполнение или иным образом препятствующих исполнению настоящего Договора, Стороны письменно уведомляют об этом друг друга.

7.3. Стороны не несут ответственности за любой ущерб, включая убытки, а также расходы, связанные с претензиями или требованиями третьих лиц, которые могут возникнуть в результате обстоятельств непреодолимой силы.

7.4. Если обстоятельство непреодолимой силы вызывает существенное нарушение или неисполнение обязательств по настоящему Договору, длящееся более 180 (ста восьмидесяти) календарных дней, каждая Сторона имеет право прекратить действие настоящего Договора после подачи другой Стороне предварительного, за 30 (тридцать) календарных дней письменного уведомления о своем намерении прекратить действие Договора.

## 8. АРБИТРАЖ

8.1. В случае возникновения между **Оператором** и **Клиентом** любых споров или разногласий, связанных с настоящим Договором или выполнением либо невыполнением любой Стороной обязательств по Договору, Стороны приложат все усилия для их дружественного разрешения путем переговоров. Претензионный порядок рассмотрения споров обязателен.

8.2. Если споры не будут разрешены путем переговоров, спорные вопросы передаются в Арбитражный суд г. Санкт-Петербурга и Ленинградской области в порядке, установленном действующим законодательством РФ.

8.3. До обращения в суд по вопросам, связанным с отказом в оказании Услуг, несвоевременным или ненадлежащим исполнением обязательств, вытекающих из Договора и/или Приложений к Договору, Клиент предъявляет **Оператору** претензию в течение 6 (шести) месяцев со дня оказания Услуг, отказа в их оказании или со дня выставления счета за оказанные Услуги. К претензии прилагаются копия Договора и иные документы, которые необходимые для рассмотрения претензии по существу и в которых должны быть указаны сведения о неисполнении или ненадлежащем исполнении обязательств по Договору, а в случае предъявления претензии о возмещении ущерба - о факте и размере причиненного ущерба. Претензия должна быть рассмотрена в течение 30 (тридцати) календарных дней с даты ее регистрации. О результатах рассмотрения претензии должно быть сообщено Клиенту в письменной форме.

8.4. До обращения в суд по вопросам, связанным с неоплатой Услуг и возмещением ущерба **Оператор** предъявит Клиенту обоснованную претензию, которая должна быть рассмотрена Клиентом в течение 10 (десяти) календарных дней со дня ее получения.

## 9. ПОРЯДОК ИЗМЕНЕНИЯ И РАСТОРЖЕНИЯ ДОГОВОРА

9.1. Все изменения Договора производятся по согласованию Сторон в письменной форме и подписываются обеими Сторонами, если иной порядок не предусмотрен иными положениями Договора.

9.2. Стороны вправе расторгнуть настоящий Договор в целом или вчасти, письменно уведомив об этом другую Сторону не позднее, чем за 30 (тридцать) календарных дней до даты расторжения, если иное не установлено иными положениями настоящего Договора и Приложениями к нему.

9.3. По расторжению настоящего Договора, отказа Клиента от Услуг **Оператор** прекратит предоставление Услуг Клиенту и Клиент прекратит использование Услуг. После такого расторжения настоящего Договора, **Оператор** вправе вернуть свое Оборудование и другую собственность, если таковые передавались Клиенту.

9.4. В случае одностороннего расторжения договора со стороны Клиента, **Оператор** вправе потребовать возмещения фактически (понесенных) затрат) доказанного ущерба, согласно действующему законодательству РФ.

## 10. УВЕДОМЛЕНИЯ

10.1. Стороны обязуются информировать друг друга в письменном виде об изменении своих адресов и иных данных и реквизитов, указанных в настоящем Договоре. Любые уведомления или иные сообщения, подлежащие передаче от одной Стороны другой Стороне должны передаваться в письменной форме по следующим адресам:

| Если получатель Оператор: | Если получатель Клиент: |
|---|---|
| Российская Федерация, Фактический адрес: 197342, г. Санкт-Петербург, Кантемировская ул., д. 4, 5 этаж | Российская Федерация, Фактический адрес: 191011, г. Санкт-Петербург, наб. реки Фонтанки, д. 13, лит. А, пом. 2-Н №4 |
| Коммерческий директор: Темеев А.Н. | Генеральный директор: Саутина А.В. |
| Факс: 8122442443 | Тел.: 8126770585 |
| E-mail: info@unitelecom.net | E-mail: |

## 11. КОНФИДЕНЦИАЛЬНАЯ ИНФОРМАЦИЯ.

11.1. Стороны пришли к соглашению, что в рамках Настоящего Договора конфиденциальной признается конкретная информация, касающаяся предмета Договора, хода его исполнения и полученных результатов.

11.2. Каждая из Сторон обязана обеспечить защиту конфиденциальной информации, ставшей доступной ей в рамках Договора, обеспечить невозможность от несанкционированного использования, распространения и/или публикации.

11.3. Любой ущерб, вызванный нарушением условий конфиденциальности, определяется и возмещается в соответствии с действующим законодательством Российской Федерации.

11.4. Оператор может передавать полученную конфиденциальную информацию полученную им в ходе исполнения настоящего Договора третьим лицам только по письменному согласованию с Клиентом при условии, что третьи лица используют полученную конфиденциальную информацию только в рамках оказываемых услуг, проводимых на договорной основе между Заказчиком и Исполнителем, при этом Исполнитель гарантирует соблюдение третьими лицами условий конфиденциальности Договора

## 12. РЕКВИЗИТЫ СТОРОН

**ООО «Унител»**
ИНН 7814534043 КПП 781401001
Юридический адрес:
197342, г. Санкт-Петербург, Кантемировская ул., д.4, лит. А, пом.11Н
Почтовый адрес, а также отдел обслуживания абонентов:
197342, г. Санкт-Петербург, Кантемировская ул., д. 4, 5 этаж
Тел/факс. 8122442444/8122442445.
Банковские реквизиты:
Расчетный счет № 40702810500000023928
В АО «ПСКБ», БИК 044030852
К/с 30101810000000000852
ОГРН 1127847222007

**Клиент:**
**ООО «Конкорд Менеджмент и Консалтинг»**
ИНН 7825100880 КПП 784101001
Юридический адрес:
191011, г. Санкт-Петербург, наб. реки Фонтанки, д. 13, лит. А, пом. 2-Н №4
Почтовый адрес:
191011, г. Санкт-Петербург, наб. реки Фонтанки, д. 13, лит. А, пом. 2-Н №4
Тел/факс: 8126770585
Банковские реквизиты:
Расчетный счет № 40702810255200183118
В Северо-Западный банк ПАО Сбербанк г. Санкт-Петербург БИК 044030653
К/с 30101810500000000653



| От имени ООО «Унител»: | От имени ООО «Конкорд Менеджмент и Консалтинг»: |
|---|---|
| «29» мая 2017 г.<br>Темеев А.Н.<br>Коммерческий директор | _____ 2017 г.<br>Саутина А.В.<br>Генеральный директор |