UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CONCORD MANAGEMENT<br>AND CONSULTING LLC,**<br><br>**Defendant.** | **Criminal No. 18-CR-32-2** |

### SUPPLEMENTAL FILING IN SUPPORT OF GOVERNMENT'S MOTION
### FOR AN ORDER TO HOLD CONCORD IN CIVIL CONTEMPT

After repeatedly declining even to assert that it complied with this Court's early-return trial subpoenas, refusing to send a corporate representative when ordered by the Court, and then claiming (through counsel) that an *ex parte* submission is necessary, Concord now submits a short declaration by Yevgeniy Prigozhin, a thrice sanctioned individual and an indicted defendant who has refused to appear in this case. Rather than meaningfully justify Concord's surprising production, the declaration attempts to distance Prigozhin from Concord's operations during the relevant time period, represents that Concord maintains few, if any, electronic files and conveniently adopted a broad email destruction policy around the same time as the start of the charged conspiracy, and claims that Concord has no further responsive records.

The declaration is not credible and includes a number of factual representations that the government has reason to believe are false or misleading or that are otherwise implausible. These include representations about Prigozhin's role in the company and Concord's handling of information technology issues. It is also implausible that Prigozhin, an oligarch who runs several multi-million dollar companies, is positioned to describe Concord's actual record retention practices. Even taken on its own terms, the declaration does not seriously engage with various

ways that the requested records may be in Concord's control—even if not in its possession—or even describe a reasonable search process given the subject matter at issue. The declaration also conspicuously makes no mention of why, until now, Concord would not even assert it had complied and what, if any, information Concord believed would raise issues of attorney-client privilege that could justify an *ex parte* submission. Prigozhin's declaration does not come close to rebutting the significant evidence of Concord's noncompliance with the Court's orders, and it only underscores the necessity of Concord's bringing a corporate representative (or representatives) to a hearing on this matter. The Court should hold Concord in civil contempt and impose a per diem sanction until it purges contempt by sending a corporate representative or representatives to adequately answer the Court's concerns, or until it otherwise comes into compliance by producing the sought after records.

## DISCUSSION

**A.** As a threshold matter, the Court should be skeptical of Yevgeniy Prigozhin as a declarant. Not only has the United States sanctioned Prigozhin three times[1] but Prigozhin is a charged defendant in this case with a personal and non-pecuniary interest in preventing the government from obtaining the records ordered to be produced. *Cf. United States v. Goldstein*, 105 F.2d 150, 152 (2d Cir. 1939) (relied on in *McPhaul v. United States*, 364 U.S. 372, 378 (1960)) (relying on, *inter alia*, an "obvious motive" to conceal responsive documents). As the Court well knows, evidence collected by the government also shows Prigozhin's oversight and strategy role on foreign disinformation efforts.

---

[1] *See* https://www.treasury.gov/press-center/press-releases/Pages/jl0688.aspx; https://home.treasury.gov/news/press-releases/sm0312; https://home.treasury.gov/news/press-releases/sm787.

It is also surprising, to say the least, that Prigozhin could really attest to Concord's record keeping practices. Prigozhin is an extraordinarily wealthy owner and operator of several multi-million dollar companies engaged in a wide range of global business activities, including the provision of services to the Russian military. It is difficult to fathom that he has personal knowledge of Concord's day-to-day records practices including, for example, whether employees regularly destroyed records as assertedly required by company policy. It is also difficult to believe that Prigozhin is the Concord officer or employee best positioned to address those issues.

Concord's selection of Prigozhin as the declarant should give rise to additional concerns. Given his substantial wealth and ties to the Russian government, Prigozhin is particularly well suited to evade any consequence of making false or misleading statements to the Court in a written declaration. At the same time, because Prigozhin is a sanctioned individual and under indictment, expediting a visa for him would be particularly complicated. It is therefore notably convenient that after Concord sent no representative when ordered to do so by the Court, did not contact the government for assistance in obtaining a visa, and still refused to say it would send a representative or identify who it might send, Concord then submitted a declaration signed by Prigozhin.

**B.** Prigozhin's declaration makes a number of representations that are implausible, misleading, or likely false. Even with just a few hours to review it, the government has identified a number of such claims. Not only do these problems undermine several linchpins of the declaration, but they also cast great doubt on other claims contained therein.

**1.** Prigozhin appears to suggest that while he is the only person who can presently speak to Concord's record keeping practices and its document search, his connection to Concord during the relevant time period is more tenuous. He thus states that he was "neither Concord's General Director, nor its officer nor its employee" during the relevant four year period and "acquired" his

3

"stake" in Concord in 2017.  Decl. ¶ 2; *see id.* ¶ 11.  Prigozhin then states that "Concord never had any calendar entries for me during the period before I became General Director" and that "Concord did not and does not have access to the previous General Director's telephone from which the prosecution claims to have obtained photographs of calendars and other documents."  Decl. ¶ 8; *see id.* ¶ 11.

As even the records produced by Concord make clear, this is a grossly misleading description of Prigozhin's ties to Concord.  For example, notwithstanding Prigozhin's statement that he "acquired this stake in Concord on February 28, 2017" (Decl. ¶ 2), Prigozhin founded Concord more than 20 years ago, and a 1997 founding document identifies him as a 50% owner and the Secretary of the Board of Directors.  CMC_1.[2]  Years later, in 2006, Prigozhin signed an order appointing a new General Director.  CMC_26.  And the only company bylaws produced in response to the government's subpoena (dated May 2018) are signed by Prigozhin.  CMC_5.

Although it unclear exactly when and how Prigozhin's 50% ownership stake changed, a 2016 document appointing a new general director—before Prigozhin says he "acquired" his "stake" in Concord in 2017 (Decl. ¶ 2)—was signed by Violeta Prigozhin, CMC_28, who is Mr. Prigozhin's elderly mother.  Prigozhin's mother, in turn, appointed Anastasia Sautina as General Director, *id.*—the person who Prigozhin describes as "the previous General Director."  Decl. ¶ 8.  As the Court knows, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.  In litigation over these subpoenas, the government explained, among other things, that ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒

---

[2] Citations of the form "CMC" adhere to the Bates numbering system used in Concord's limited response to the first trial subpoena.

███████████████████████████████████████████████████
█████████████████████████████

Even if not literally false, Prigozhin's description of his relationship to Concord and to Sautina is misleading. His efforts at careful wordsmithing, half-truths, and material omissions gut his explanation for why Concord could not have possession or control of his calendars. This gamesmanship also calls into question the veracity of his other factual claims.

2. Prigozhin also states that "Concord does not have an Information Technology ('IT') department or employee, and instead engages outside vendors for IT services on an as-needed basis." Decl. ¶ 5. This statement apparently limits the possibility of in-house file backups, IT logs that might contain Internet Protocol addresses, evidence of whether and when files were deleted, or other competent witnesses. Evidence gathered by the government, however, suggests that at least during the relevant time period, Concord had an internal IT provider. ███████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███[3]

Other evidence suggests that Concord did not rely solely on "outside vendors," as Prigozhin's declaration suggests. ████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

---

[3] ████████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████ [4]

This evidence suggests either that Prigozhin's claims about an IT employee are false or that, like his claims about ownership and control of Concord, they are carefully wordsmithed to paint a misimpression of pertinent facts. Again, this calls a number of Prigozhin's representations into question.

3. Separate and aside from outright misrepresentations, Prigozhin's declaration also contains a number of claims that are, if nothing else, implausible.

First, the declaration states that Prigozhin, as General Director, has "responsibilities" that "include maintaining Concord's paper records and electronic documents." Decl. ¶ 5. As noted, Yevgeniy Prigozhin is a wealthy businessman engaged in several enterprises with global reach. Even if his responsibilities formally include records management, it is implausible that he is actually the person, or even a person, managing Concord's records. The Court ordered Concord to identify "all" people "responsible for maintaining records," Doc. 368, at 1, and it is doubtful that this reference to Prigozhin is a true and complete response.

Second, the declaration claims that "neither Russian law, nor Russian regulators nor any of Concord's lenders, past or present, imposes or has ever imposed any rules on Concord regarding how long records must be maintained." Decl. ¶ 6. In the hours since Concord filed this declaration, the government has not been able to research these questions of Russian law. But the government notes that Russia has an elaborate tax system and that Concord does extensive business with the

---

[4] As the Court may recall, ████████████████████████████████████

████████████████████████████████████████████████████████████████

Russian government and military. Even if regulators have not expressly "imposed any rules" about records retention, *id.*, it would be surprising if, as a matter of practice, companies did not retain records relevant to audits by tax authorities or military contracting officers. This representation appears to be a carefully crafted phrase that may conceal further pertinent information.

Third, the declaration states that "[a]s is common practice for many Russian organizations, Concord does not as a rule keep electronic copies of business documents" and "does not use electronic back-up systems." Decl. ¶ 7. As the Court knows, the government recovered budgets and similar spreadsheets related to the alleged conspiracy and recovered emails that discuss the budget process and vouchers. Even if most of these documents were created by the Internet Research Agency rather than Concord, it is surprising that they would have such vastly different practices and that Concord would regularly email business documents around but never keep copies of those documents. More broadly, it is surprising that Concord would not keep electronic copies of contracts, correspondence, or other business documents. In fact, as the Court knows, it appears that Concord registered and maintained multiple dedicated IP addresses during the relevant time period. That practice is in some tension with Prigozhin's description of an analog company that stores few documents electronically and backs up nothing.

Fourth, the declaration states (Decl. ¶ 7) that on April 17, 2014, Concord adopted a regular policy of destroying emails older than three months old. Initially, this date aligns with the beginning of the time period at issue in the subpoenas (January 2014) and with the U.S.-focused activity alleged in the Superseding Indictment. *See, e.g.*, Doc. 247 ¶ 10(d) (alleging that the Internet Research Agency formed a U.S.-focused department in April 2014). It therefore provides a convenient explanation for having no emails from the relevant time period. But it is also somewhat surprising that employees of Concord actually followed that policy. It would be difficult

for any business to function without access to emails going back more than three months. Concord, in particular, appears to have had a highly articulated structure for budgeting and monitoring of expenses, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as discussed in the prior subpoena briefing. It is hard to imagine how those employees carried out their day-to-day functions if they, in fact, adhered to the formal document retention policy purportedly established in 2014.

**C.** In addition to the many reasons to doubt what Prigozhin's declaration does say, it is also noteworthy what the declaration does not say. In the single paragraph addressing search methodology, the declaration only minimally explains how Prigozhin, who says he conducted searches personally (Decl. ¶ 8), actually searched for records. Those few descriptions of how the search occurred only confirm that Concord has made minimal efforts to locate responsive records. The declaration suggests that in light of Concord's asserted policies of keeping few if any electronic files, Prigozhin conducted virtually no electronic searches. The declaration describes no efforts to identify whether employees, in fact, maintain electronic files or even whether it is well known and accepted that employees do so.

With respect to payment records, the declaration states only that Prigozhin directed the "Chief Accountant" to search for references to the Internet Research Agency or certain associated corporate shells that the government has identified. *Id.* But that is not the scope of the final subpoena category related to payments. The subpoena calls for: "records reflecting any payments from Concord Management and Consulting LLC to fund the activities of the Internet Research Agency, made directly or through another organization." As proffered during the subpoena litigation, significant evidence shows that Concord was making such payments. Although perhaps Concord did not list these corporate shells on payment vouchers, other steps could be taken to search for responsive payment records, such as reviewing all payments in the relevant time period,


searching for references to the categories of activity described in the emails and budgets that the government has disclosed to Concord, or interviewing employees who may be familiar with Concord's payment activity and can provide further guidance. Concord's search method would likely be inadequate in the best of circumstances. But here, where Concord is firmly in control of the pertinent information, choosing minimal search terms and then declaring an absence of incriminating records is not an adequate response to the Court's orders.

Prigozhin's declaration is also almost primarily focused on records in Concord's possession, with little discussion of what may nonetheless be in Concord's control. For example, the declaration states that it could not recover records of leased IP addresses from two internet service providers. It does not address whether records held by Prigozhin or by other related corporate entities are within Concord's control. Nor does it address whether Concord may have used other contractors over the years who may have retained responsive documents.

Finally, the declaration is surprisingly silent on why Concord is just providing these explanations now. Concord's counsel previously refused to tell the government that Concord complied. And even when the Court issued an order to show cause, Concord's formal response, apparently prepared in conjunction with Prigozhin himself, did not so much as assert that Concord complied or engage with the many reasons to believe that Concord possesses, or at least controls, additional records. This response is hard to square with the declaration that Concord now submits. Perhaps even more anomalous, Concord's response to that show cause order made passing references to the Sixth Amendment and an *ex parte* presentation. At the subsequent hearing, defense counsel made clear that he had certain relevant information that, for reasons explained, could only be presented to the court *ex parte*. Nothing in Prigozhin's declaration, however, seems to square with defense counsel's myriad references to privilege and the Sixth Amendment. If

Concord was previously making bad faith assertions of privilege or unjustifiably seeking to shield the very information presented in this declaration from government analysis, that is a further reason to doubt Concord's compliance. If, instead, Concord has additional relevant information but has omitted it from this declaration, that too is a further reason to question Concord's efforts at compliance.

* * *

In sum, Concord's eleventh (or fourteenth) hour assertion that it complied with the two trial subpoenas is grossly deficient. The declaration is replete with statements that range from the improbable to the patently misleading. It does not seriously engage with the many reasons to believe that Concord possesses additional records. And the representations it does make raise as many questions as they answer.

## CONCLUSION

For the foregoing reasons, the Court should hold Concord in civil contempt and impose a per diem sanction until it purges contempt by sending a corporate representative or representatives to adequately answer the Court's concerns, or until it otherwise comes into compliance by producing the sought after records.

Respectfully submitted,

| | |
|---|---|
| JOHN C. DEMERS<br>Assistant Attorney General for National Security | TIMOTHY J. SHEA<br>United States Attorney<br>D.C. Bar No. 437437 |
| By: */s/ Heather Alpino*<br>Heather N. Alpino<br>U.S. Department of Justice<br>National Security Division<br>950 Pennsylvania Ave. NW<br>Washington, D.C. 20530<br>Telephone: (202) 514-2000 | By: */s/ Adam Jed*<br>Luke Jones (VA 75053)<br>Peter Lallas (NY 4290623)<br>Adam Jed (NY 4978532)<br>555 Fourth Street NW<br>Washington, D.C. 20530<br>Telephone: (202) 252-7066 |