**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**CONCORD MANAGEMENT**<br>**AND CONSULTING LLC and**<br>**CONCORD CATERING,**<br><br>**Defendants.** | **Criminal No. 18-CR-32 (DLF)** |

## MOTION TO DISMISS CONCORD DEFENDANTS

On February 16, 2018, a grand jury in this district returned an eight-count indictment against thirteen Russian individuals and three corporate defendants, including Concord Management and Consulting LLC (hereinafter, "Concord") and Concord Catering (collectively with Concord Management and Consulting LLC, the "Concord Defendants"). The indictment alleges that the defendants engaged in what they dubbed "information warfare against the United States of America"—a systematic effort to sow political discord and influence the outcome of the 2016 U.S. presidential election—and charged the defendants with conspiring to defraud the federal agencies responsible for preventing and counteracting improper foreign influence on U.S. elections. On April 11, 2018, Concord voluntarily entered an appearance in this case through its U.S.-based counsel. *See* ECF Nos. 2, 3. Soon thereafter, at the May 9 initial hearing, counsel confirmed to the Court that it was authorized "to enter a voluntary appearance in this matter and to subject [Concord] to the jurisdiction of this Court." 5/9/18 Tr. 5 (ECF No. 9). And the Court confirmed Concord's understanding that by submitting to the Court's jurisdiction, Concord "must also comply with the Federal Rules of Criminal Procedure, the rules of this Court, and with the orders of this Court." *Id.* Recent events reveal Concord's intent to do otherwise.

Although Concord has availed itself of the Court's jurisdiction to obtain discovery from the United States regarding efforts to detect and deter foreign election interference (some of which was leaked online, in violation of the Court's protective order and, apparently, to discredit the investigation, *see* ECF No. 94, at 8-11), when pressed to comply with its obligations as a party to this litigation, it has refused to do so.  Most recently, in the government's view, Concord failed to comply with two Court-issued trial subpoenas, *see* ECF Nos. 362, 367, ignored a Court order to make available a corporate representative, *see* ECF Nos. 364, 367, and submitted a misleading (at best) declaration from an incredible declarant, Yevgeniy Prigozhin, the Russian oligarch and co-defendant who controls Concord and is alleged in the indictment as having funded and directed the defendants' election interference campaign.  *See* ECF Nos. 376-1, 377, 378.  In short, Concord has demonstrated its intent to reap the benefits of the Court's jurisdiction while positioning itself to evade any real obligations or responsibility.

Upon careful consideration of all of the circumstances, and particularly in light of recent events and  a change in the balance of the government's proof due to a classification determination, as well as other facts described in more detail in a classified addendum to this motion, the government has concluded that further proceedings as to Concord, a Russian company with no presence in the United States and no exposure to meaningful punishment in the event of a conviction, promotes neither the interests of justice nor the nation's security.  The government has therefore decided that the calculation of whether a substantial federal interest is served by this prosecution, *see* Justice Manual § 9-27.230, has changed since the indictment was returned, and the better course is to cease litigation as to the Concord Defendants.[1]

---

[1]     Although Concord Catering has not appeared in this case, the government is seeking its dismissal based on the likelihood that its approach to litigation would be the same as Concord if it did appear.  Like Concord, Concord Catering is a Russian company controlled by Prigozhin that

Accordingly, and respectfully, pursuant to Federal Rule of Criminal Procedure 48(a), the government moves to dismiss with prejudice Count One of the indictment as to the Concord Defendants.

## LEGAL PRINCIPLES

Under Federal Rule of Criminal Procedure 48(a), the government may move to dismiss charges in a pending case. *See, e.g.*, *United States v. Poindexter*, 719 F. Supp. 6, 10-11 (D.D.C. 1989).  When the government moves to dismiss a criminal case before trial, courts do not play a "substantial role" in "the determination whether to dismiss." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016).  Rather, a court's determination is a "narrow one." *Id.*  A court "reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges." *Id.* (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)).  Here, there is no danger of such prosecutorial harassment, as the government is moving to dismiss the charge against Concord with prejudice.

A court may not deny the government's motion to dismiss charges "based on a disagreement with the prosecution's exercise of charging authority" such as "a view that the defendant should stand trial." *Fokker Servs.*, 818 F.3d at 742.  The decision whether to proceed to trial or to dismiss a charge "lie[s] squarely within the ken of prosecutorial discretion." *Id.*.  The government's exercise of prosecutorial discretion must take into account myriad factors beyond simply the strength of the government's case and likelihood of conviction. *See, e.g.*, *United States*

---

has no presence in the United States and no exposure to meaningful punishment in the event of a conviction.

*v. Armstrong*, 517 U.S. 456, 465 (1996); *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see also Heckler v. Chaney*, 470 U.S. 821, 831-832 (1985).

Among other things, the government must weigh the benefits of securing a guilty verdict against the costs of presenting the case at trial, including the potential harms of exposing information and sensitive techniques of great importance to law enforcement, the intelligence community, or both. "[N]o governmental interest is more compelling than the security of the Nation." *United States v. Poindexter*, 725 F. Supp. 13, 34 (D.D.C. 1989) (quoting *Haig v. Agee*, 453 U.S. 280, 307 (1981)); *see also CIA v. Sims*, 471 U.S. 159, 175 (1985) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.").  In protecting that interest, the government must remain vigilant about safeguarding even "bits and pieces of data," which can aid sophisticated actors intent on harming this country. *Id.* at 178.  "Even a small chance" of disclosing national security information is a serious matter. *Tenet v. Doe*, 544 U.S. 1, 11 (2005).  Sometimes in a criminal case, the government should "drop the charges if it fears that litigation presents unacceptable security risks." *Sterling v. Tenet*, 416 F.3d 338, 344 (4th Cir. 2005); *see United States v. Reynolds*, 345 U.S. 1, 12 (1953).

## DISCUSSION

Typically, it is a requirement of federal criminal proceedings that a defendant be "present." *See* Fed. R. Crim. P. 43(a).  This requirement protects the rights of a defendant; it also subjects the defendant to the court's authority and orders, and ensures the enforcement of consequences if the defendant flouts the court's authority, violates the court's orders, or is ultimately convicted of a crime.  In this case, Concord, a corporate legal entity organized in Russia, is "present" only through

its U.S.-based counsel.  *See* Fed. R. Crim. P. 43(b)(1) (permitting organizational defendants to appear through counsel).

When defense counsel first appeared on behalf of Concord, counsel stated that they were "authorized" to appear and "to make representations on behalf" of Concord, and that Concord was fully subjecting itself to the Court's jurisdiction.  5/9/18 Tr. 5 (ECF No. 9).  Though skeptical of Concord's (but not counsel's) asserted commitments at the initial appearance, the government has proceeded in good faith—expending the resources of the Department of Justice and other government agencies; incurring the costs of disclosing sensitive non-public information in discovery that has gone to Russia; and, importantly, causing the Court to expend significant resources in resolving dozens of often-complex motions and otherwise ensuring that the litigation has proceeded fairly and efficiently.  Throughout, the government's intent has been to prosecute this matter consistent with the interests of justice.  As this case has proceeded, however, it has become increasingly apparent to the government that Concord seeks to selectively enjoy the benefits of the American criminal process without subjecting itself to the concomitant obligations.

Concord has been eager and aggressive in using the judicial system to gather information about how the United States detects and prevents foreign election interference.  Concord filed numerous motions to dismiss, motions for bills of particulars, motions to conduct discovery of prosecutorial decision-making, motions seeking grand jury materials, and motions to compel other discovery.  *See, e.g.*, ECF Nos. 11, 36, 46, 78, 93, 104, 181, 229, 241, 251, 256, 257, 264.  Concord also received substantial discovery and engaged in extensive litigation aimed at housing that discovery in Russia.  *See, e.g.*, ECF Nos. 27, 37, 39, 77, 121, 187.  But Concord has failed to protect at least some of that discovery from improper use.  *See* ECF No. 94, at 8-11; Classified Addendum.  And Concord has been reticent, to say the least, to comply with obligations that cannot

simply be handled by American counsel. Thus, when the government sought to serve trial subpoenas on Concord through its counsel in this case, Concord claimed that service was a legal impossibility and argued that because it is a foreign corporation, the Court lacks jurisdiction to require Concord to produce records located abroad. *See* ECF Nos. 287, 311; 12/12/2019 Tr. 50-55. Concord even asserted that to serve a subpoena on its counsel created an unconstitutional conflict of interest because Concord would be better off if the attorneys never transmit the subpoenas to Concord. *See* ECF Nos. 287, 311; 1/24/2020 Tr. 22-23. When Concord ultimately produced records, the government believes that it concealed responsive documents pertinent to the upcoming trial. *See, e.g.*, ECF Nos. 361, 362, 377, 378. Indeed, the Court ordered Concord to show cause regarding its compliance and to produce a corporate representative. 2/27/20 Minute Order. In response, Concord initially did not even so much as assert that it had complied with the Court's order, and Concord made no effort to make available a representative. *See* ECF Nos. 364, 367. Throughout this case, although Concord has "appeared" through counsel, counsel has always been explicit that they were *not* a representative of the company. *See, e.g.*, ECF Nos. 287; 3/2/2020 Tr. 5-6. Ultimately, when the Court required that Concord submit an affidavit regarding its response to the subpoena, Prigozhin, the thrice-sanctioned Russian oligarch who has declined to subject *himself* to the Court's jurisdiction, filed a purportedly "sworn" declaration. *See* ECF No. 376-1. That declaration, the government has reason to believe, contains false and misleading statements—it is evidently calculated to conceal facts that are relevant to this case and that a typical defendant would be required to reveal or else face sanctions. *See* ECF Nos. 377, 378; Classified Addendum.

While a corporate defendant is not required by Rule 43(b) to have a corporate representative physically present in the courtroom for court proceedings, there is no question that,

for a criminal case to proceed, a corporate defendant must at all times be "present" in the sense that it must be available to respond to court orders to produce evidence or to produce a corporate representative qualified to testify concerning relevant issues.  It is now apparent to the government that Concord is "present" only to the extent it benefits Concord—that is, to seek dismissal of the charge against it, to gather discovery, and generally to impugn the government—but Concord is, in effect, absent to the extent the rules and orders of the Court require it to take actions that are against its own interests.  That is not consistent with Concord's assurances at its initial appearance, nor is it consistent with the interests of justice or the purposes of a criminal prosecution.  Informed by the recent events described above, the United States will not permit Concord to continue to garner the benefits of its appearance while evading other consequences thereof.

The government must also weigh the potential risks to the national security that are necessarily associated with a trial of this nature.  A trial of this case risks publicizing sensitive law enforcement information regarding measures used to investigate and protect against foreign influence over the political system.  The government and the Court have invoked and utilized the Classified Information Procedures Act, 18 U.S.C. App. III, to protect classified information.  *See United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989) ("The Supreme Court has long recognized that a legitimate government privilege protects national security concerns.").  But even with those procedures in place, trial in this matter would expose additional details about law enforcement's tools and techniques for investigating malign foreign influence, among other crimes, potentially undermining their effectiveness. Moreover, as described in greater detail in the classified addendum to this motion, a classification determination bearing on the evidence the government properly gathered during the investigation, limits the unclassified proof now available to the government at trial.  That forces the prosecutors to choose between a materially weaker case

and the compromise of classified material.  These risks must be weighed against the benefit of trying a corporate defendant that is, effectively, a fugitive from justice and just punishment for the offense.  *See* Justice Manual § 9-27.230 ("In assessing the strength of the federal interest in prosecution, the attorney for the government should consider the sentence, or other consequence, that is likely to be imposed if prosecution is successful, and whether such a sentence or other consequence would justify the time and effort of prosecution.").

Fundamental principles of our criminal justice system include that individual defendants must be physically present before the court in order for proceedings against them to commence, and that to enjoy the benefits attendant to our criminal justice system, defendants must simultaneously accept its obligations and consequences.  Indeed, fugitives from justice who refuse to subject themselves to the jurisdiction of the Court cannot avail themselves of the benefits of such an appearance by contesting or challenging the charges against them.  *See United States v. Halkbank*, --- F.Supp.3d ---, 2019 WL 6618026 (S.D.N.Y. 2019) ("There is no reason . . . why a corporate defendant . . . should be permitted to simultaneously ignore and invoke the court's authority.") (quotation marks and citation omitted); *see generally Degen v. United States*, 517 U.S. 820, 824 (1996); *see also In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) (noting the "principle of mutuality" that "if a defendant is not willing to suffer the penalties of the crime," the court "should not afford the defendant an opportunity to improve his or her position").  These principles weigh strongly against trying a foreign company not meaningfully present before the Court, particularly when the national security is implicated.

## CONCLUSION

There is a substantial federal interest in defending American democratic institutions, exposing those who endeavor to criminally interfere with them, and holding them accountable,

which is why this prosecution was properly commenced in the first place.  In light of the defendant's conduct, however, its ephemeral presence and immunity to just punishment, the risk of exposure of law enforcement's tools and techniques, and the post-indictment change in the proof available at trial, the balance of equities has shifted.  It is no longer in the best interests of justice or the country's national security to continue this prosecution.  And although the time and resources expended to-date have been considerable, that factor "deserves no weight and should not influence" our decision.  Justice Manual § 9-27.230. "No amount of investigative effort warrants commencing a federal prosecution that is not fully justified on other grounds." *Id.*  Nor does it justify *continuing* such a prosecution. The United States will continue its efforts to apprehend the individual defendants and bring them before this Court to face the pending charges, but because substantial federal interests are no longer served by continuing with the proceedings against the Concord Defendants, the government moves, respectfully, to dismiss with prejudice Count One of the indictment as to them.

Respectfully submitted,

JOHN C. DEMERS
Assistant Attorney General for National Security

By: */s/ Heather Alpino*
Heather N. Alpino
U.S. Department of Justice
National Security Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-2000

TIMOTHY J. SHEA
United States Attorney
D.C. Bar No. 437437

By: */s/ Luke M. Jones*
Luke M. Jones (VA 75053)
Peter Lallas (NY 4290623)
Adam Jed (NY 4978532)
555 Fourth Street NW
Washington, D.C. 20530
Telephone: (202) 252-7066

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **CONCORD MANAGEMENT AND CONSULTING LLC, and CONCORD CATERING,** | **Criminal No. 18-CR-32 (DLF)** |
| **Defendants.** | |

**ORDER**

This matter comes before the Court upon the motion of the United States to dismiss with prejudice Count One of the indictment as to Concord Management and Consulting LLC and Concord Catering (the "Concord Defendants"), pursuant to Federal Rule of Criminal Procedure 48(a).  The government's motion is **GRANTED** and it is hereby

**ORDERED** that Count One of the Indictment (ECF No. 1) and Superseding Indictment (ECF No. 247), as to the Concord Defendants, is dismissed with prejudice.

_____
Date

_____
DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE